IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
                                  :

*In re*                                :        Chapter 11

WASHINGTON MUTUAL, INC., et al.,[1]    :        Case No. 08-12229 (MFW)

        Debtors.                 :        (Jointly Administered)

                                  :        Proposed Hearing Date:
                                  :           October 30, 2008 at 2:00 p.m. (EDT)
                                  :        Proposed Objection Deadline:
---------------------------------------------------------------x        At the Hearing

## MOTION OF DEBTORS PURSUANT TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE FOR INTERIM AND FINAL ORDERS (i) ESTABLISHING NOTIFICATION PROCEDURES AND APPROVING RESTRICTIONS ON CERTAIN TRANSFERS OF INTERESTS IN THE DEBTORS AND (ii) SCHEDULING A FINAL HEARING

Washington Mutual, Inc. ("WMI") and WMI Investment Corp. ("WMI Investment"), as debtors and debtors in possession (the "Debtors" and, collectively with WMI's wholly-owned non-debtor domestic subsidiaries, "WaMu"), as their motion (the "Motion"), for entry of interim and final orders, pursuant to sections 105(a) and 362 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), (i) authorizing the Debtors to establish procedures as set forth herein to protect the potential value of WaMu's consolidated net operating tax loss carryforwards ("NOLs") and certain other tax attributes (together with NOLs, the "Tax Attributes"), and (ii) scheduling a final hearing on the Motion, respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

## Background

1. On September 26, 2008 (the "Commencement Date"), the Debtors commenced with this Court a voluntary case pursuant to the Bankruptcy Code. As of the date hereof, the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 3, 2008, this Court entered an order pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the joint administration of the Debtors' chapter 11 cases. No trustee or examiner has been appointed in these cases. On October 15, 2008, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").

## WMI's Business

2. WMI is a holding company incorporated in the State of Washington and headquartered at 1301 Second Avenue, Seattle, Washington 98101. WMI is the direct parent of WMI Investment, which serves as an investment vehicle for WMI and holds a variety of securities. WMI Investment is incorporated in the State of Delaware.

3. Prior to the Commencement Date, WMI was a savings and loan holding company that owned Washington Mutual Bank ("WMB") and such bank's subsidiaries, including Washington Mutual Bank fsb ("WMBfsb"). WMI also has certain non-banking, non-debtor subsidiaries.

4. Prior to the Commencement Date, WMI, like all savings and loan holding companies, was subject to regulation by the Office of Thrift Supervision (the "OTS"). WMB and WMBfsb, like all depository institutions with federal thrift charters, were also subject to regulation and examination by the OTS. In addition, WMI's banking and non-banking subsidiaries were overseen by various federal and state authorities, including the Federal Deposit

Insurance Corporation ("FDIC"). On September 25, 2008, the Director of the OTS, by order number 2008-36, appointed the FDIC as receiver for WMB and advised that the receiver was immediately taking possession of WMB (the "Receivership"). Immediately after its appointment as receiver, the FDIC sold substantially all the assets of WMB, including the stock of WMBfsb, to JPMorgan Chase Bank, National Association ("JPMorgan Chase") pursuant to that certain Purchase and Assumption Agreement, Whole Bank, dated as of September 25, 2008.

5. WMI's assets include its common stock interest in WMB, its interests in its non-banking subsidiaries, and in excess of $4 billion of cash that WMI and its non-banking subsidiaries (including WMI Investment) had on deposit at WMB and WMBfsb immediately prior to the time the FDIC was appointed as receiver. WMI is in the process of evaluating these and other assets for purposes of ultimate distribution to its creditors.

## Jurisdiction

6. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

7. By this Motion, the Debtors request, pursuant to sections 105(a) and 362 of the Bankruptcy Code, entry of an interim order (the "Interim Order") and a final order (the "Final Order" and, together with the Interim Order, the "Orders") authorizing the Debtors to establish procedures as set forth herein to protect the potential value of WaMu's Tax Attributes. The procedures would apply with respect to the common stock and certain classes of preferred stock of WMI, and any options or similar interests to acquire such stock. The procedures also would impose restrictions and notification requirements, to be effective *nunc pro tunc* to the date of filing of the Motion. Parties would be notified of the procedures through (i) publication of a

3

notice, substantially in the form annexed hereto as Exhibit "A" (the "Interim Procedures Notice"), which notice shall describe the trading restrictions and notification requirements established in the Interim Order and the date of the final hearing to determine whether the procedures described herein will be approved on a final basis and (ii) publication of a final notice of the approved procedures, substantially in the form annexed hereto as Exhibit "B" (the "Final Procedures Notice"). Copies of the Debtors' proposed Interim Order and Final Order are annexed hereto as Exhibit "C" and Exhibit "D," respectively.

### Net Operating Loss Carryforward Amounts

8. The Debtors estimate that, as of the date hereof, WaMu has NOLs and/or built-in (unrecognized) losses in excess of $20 billion, in addition to certain other Tax Attributes.

9. The Tax Attributes may be valuable assets because title 26 of the United States Code (the "Tax Code") generally permits corporations to carry over their losses and tax credits to offset income. *See, e.g.,* 26 U.S.C. § 172 (NOLs) (can be carried back two years and carried forward 20 years). The Debtors may recognize gain or other income in connection with, among other things, the ownership of its assets, and the sale of a significant portion, if not substantially all, of their assets during the pendency of these bankruptcy cases. Absent any intervening limitations, the Tax Attributes could substantially reduce the Debtors' future federal, state and local income tax liability in respect of such amounts. The Debtors also expect to carry back a significant portion of their NOLs and built-in (unrecognized) losses in an attempt to obtain a refund of prior year taxes. Any reduction in the Debtors' tax liability would enhance the Debtors' cash position for the benefit of all parties in interest.

10. The ability of the Debtors to use the Tax Attributes to offset future income (and in certain cases, prior year income) is subject to certain statutory limitations. Sections 382

and 383 of the Tax Code limit a corporation's use of its NOLs, tax credits and other tax attributes to offset future income after that corporation has undergone an "ownership change," and in the case of certain losses recognized following an ownership change, may preclude the carry back of such losses. For purposes of section 382 of the Tax Code, an ownership change generally occurs when the percentage of a company's equity held by one or more persons or entities holding 5% or more of that company's stock (and certain groups of less-than-5% shareholders) increases by more than 50 percentage points above the lowest percentage of ownership owned by such shareholder(s) at any time during the relevant three-year testing period.

11. WaMu's tax department has been displaced in connection with the Receivership and subsequent sale to JPMorgan Chase (having been part of WMB, and now employees of JPMorgan Chase), and the Debtors therefore are uncertain as to whether a section 382 ownership change has already occurred with respect to the Tax Attributes. Whether or not an ownership change has already occurred prior to the date of this Motion, the Debtors estimate that there could remain available a multi-billion dollar net operating loss that would be adversely affected and could be eliminated by a subsequent ownership change thereby resulting in a potential loss of value.

12. In furtherance of the automatic stay provisions of section 362 of the Bankruptcy Code and pursuant to section 105 of the Bankruptcy Code, the Debtors seek authority to monitor and object to certain changes in the ownership of WMI Stock (as defined below) to protect against the occurrence of an initial or subsequent ownership change during the pendency of these bankruptcy cases and, thus, preserve the potential value of the Tax Attributes during such time.

## Trading Restrictions and Notification Requirements

13. To preserve the potential value of the Tax Attributes, the Debtors propose the following trading restrictions and notification requirements applicable to an acquisition or disposition of WMI Stock effective *nunc pro tunc* to the date of the filing of this Motion (the "Motion Date"):

(1) Notice of Substantial WMI Stock Ownership. Any person or entity that beneficially owns, at any time on or after the filing date of this Motion, WMI Stock in an amount sufficient to qualify such person or entity as a Substantial Equityholder (as defined below) shall file with the Court, and serve upon the Debtors, Debtors' counsel, and the Creditors' Committee's counsel, a Notice of Substantial Stock Ownership (a "Substantial Ownership Notice"), in the form attached hereto as Exhibit "E," specifically and in detail describing the WMI Stock ownership of such person or entity, on or before the date that is the later of: (a) ten (10) days after the entry of the Court's order or (b) ten (10) days after that person or entity qualifies as a Substantial Equity Holder. At the holder's election, the Substantial Ownership Notice to be filed with the Court may be redacted to exclude such holder's taxpayer identification number and the number of shares of WMI Stock that such holder beneficially owns.

(2) Acquisition of WMI Stock or Options. At least twenty (20) calendar days prior to the proposed date of any transfer of equity securities (including Options, as defined below, to acquire such securities) that would result in an increase in the amount of WMI Stock beneficially owned by any person or entity that currently is or becomes a Substantial Equityholder or that would result in a person or entity becoming a Substantial Equityholder (a "Proposed Equity Acquisition Transaction"), such person, entity or Substantial Equityholder (a "Proposed Equity Transferee") shall file with the Court, and serve upon the Debtors, Debtors' counsel, and the Creditors' Committee's counsel, a Notice of Intent to Purchase, Acquire or Otherwise Accumulate WMI Stock (an "Equity Acquisition Notice"), in the form attached hereto as Exhibit "F," specifically and in detail describing the proposed transaction in which WMI Stock would be acquired. At the holder's election, the Equity Acquisition Notice to be filed with the Court may be redacted to exclude such holder's taxpayer identification number and the number of shares of WMI Stock that such holder beneficially owns and proposes to purchase or otherwise acquire.

(3) Disposition of WMI Stock or Options. At least twenty (20) calendar days prior to the proposed date of any transfer of equity securities (including Options to acquire such securities) that would result in a decrease in the amount of WMI Stock beneficially owned by a Substantial Equityholder or that would result in a person or entity ceasing to be a Substantial Equityholder (a "Proposed Equity Disposition Transaction" and together with a Proposed Equity Acquisition

6

Transaction, a "Proposed Equity Transaction"), such person, entity or Substantial Equityholder (a "Proposed Equity Transferor") shall file with the Court, and serve upon the Debtors, Debtors' counsel, and the Creditors' Committee's counsel, a Notice of Intent to Sell, Trade or Otherwise Transfer WMI Stock (an "Equity Disposition Notice"), in the form attached hereto as Exhibit "G," specifically and in detail describing the proposed transaction in which WMI Stock would be transferred. At the holder's election, the Equity Disposition Notice to be filed with the Court may be redacted to exclude such holder's taxpayer identification number and the number of shares of WMI Stock that such holder beneficially owns and proposes to sell or otherwise transfer.

(4) Objection Procedures. The Debtors and the Creditors' Committee shall have fifteen (15) calendar days after the filing of an Equity Acquisition Notice or an Equity Disposition Notice (the "Equity Objection Deadline"), as the case may be, to file with the Court and serve on a Proposed Equity Transferee or a Proposed Equity Transferor, as the case may be, an objection to any proposed transfer of WMI Stock described in such Equity Acquisition Notice or Equity Disposition Notice on the grounds that such transfer may adversely affect the Debtors' ability to utilize the Tax Attributes (an "Equity Objection") as a result of an ownership change under section 382 or section 383 of the Tax Code.

    a) If the Debtors or the Creditors' Committee file an Equity Objection by the Equity Objection Deadline, then the Proposed Equity Acquisition Transaction or the Proposed Equity Disposition Transaction shall not be effective unless approved by a final and nonappealable order of this Court.

    b) If the Debtors or the Creditors' Committee do not file an Equity Objection by the Equity Objection Deadline, or if the Debtors and the Creditors' Committee provide written authorization to the Proposed Equity Transferor approving the Proposed Equity Acquisition Transaction or the Proposed Equity Disposition Transaction, as the case may be, prior to the Equity Objection Deadline, then such Proposed Equity Acquisition Transaction or the Proposed Equity Disposition Transaction, as the case may be, may proceed solely as specifically described in the Equity Acquisition Notice or the Equity Disposition Notice. Any further Proposed Equity Transaction proposed by the Proposed Equity Transferor or Proposed Equity Transferee, as the case may be, shall be the subject of additional notices as set forth herein and an additional twenty (20) calendar day waiting period.

(5) Unauthorized Transactions in WMI Stock or Options. Effective as of the date of the filing of this Motion and until further order of the Court to the contrary, any acquisition, disposition or other transfer of WMI Stock in violation of the

7

procedures set forth herein shall be null and void *ab initio* as an act in violation of the automatic stay under sections 362 and 105(a) of the Bankruptcy Code.

(6) Definitions. For purposes of this Motion and the Orders:

    a) Substantial Equityholder. A "Substantial Equityholder" is any person or entity that beneficially owns at least:

        (i) 80,700,000 shares of WMI's common stock ("WMI Common Stock") (representing approximately 4.75% of all issued and outstanding shares of WMI's common stock); or

        (ii) 4.50% of the total number of outstanding shares of WMI's 7.75% Series R Non-Cumulative Perpetual Convertible Preferred Stock, as of the date immediately prior to the date of filing of the Equity Acquisition Notice or the Equity Disposition Notice;[2] or

        (iii) 4.75% of the total number of outstanding shares of any of the following classes of WMI preferred stock: Series I Perpetual Non-Cumulative Fixed-to-Floating Rate; Series J Perpetual Non-Cumulative Fixed Rate; Series L Perpetual Non-Cumulative Fixed-to-Floating Rate; Series M Perpetual Non-Cumulative Fixed-to-Floating Rate; and Series N Perpetual Non-Cumulative Fixed-to-Floating Rate;

    b) Beneficial Ownership. "Beneficial ownership" (or any variation thereof of WMI Stock and Options to acquire WMI Stock) shall be determined in accordance with applicable rules under section 382 of the Tax Code, the U.S. Department of Treasury regulations ("Treasury Regulations") promulgated thereunder and rulings issued by the Internal Revenue Service, and, thus, to the extent provided in those rules, from time to time shall include, without limitation, (i) direct and indirect ownership (*e.g.*, a holding company would be considered to beneficially own all stock owned or acquired by its subsidiaries), (ii) ownership by a holder's family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of stock and (iii) in certain cases, the ownership of an Option to acquire WMI Stock;

---

[2] Because the Series R has conversion rights, the application of a lower percentage (4.5% rather than 4.75%) allows a cushion for the reduced number of shares of preferred stock that may be outstanding as of the actual acquisition or disposition of the shares that are the subject of the Equity Acquisition Notice or the Equity Disposition Notice.

8

c) <u>Option</u>. An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest regardless of whether it is contingent or otherwise not currently exercisable; and

d) <u>WMI Stock</u>. "WMI Stock" shall mean WMI Common Stock, the 7.75% Series R Non-Cumulative Convertible Preferred Stock, and any of the following classes of WMI preferred stock: Series I Perpetual Non-Cumulative Fixed-to-Floating Rate; Series J Perpetual Non-Cumulative Fixed Rate; Series L Perpetual Non-Cumulative Fixed-to-Floating Rate; Series M Perpetual Non-Cumulative Fixed-to-Floating Rate; and Series N Perpetual Non-Cumulative Fixed-to-Floating Rate. For the avoidance of doubt, by operation of the definition of beneficial ownership, an owner of an Option to acquire WMI Stock may be treated as the owner of such WMI Stock.

(7) The Debtors, in consultation with the Creditors' Committee (with a reasonable opportunity to consider a request), may waive, in writing, any and all restrictions, stays, and notification procedures contained in this Motion.

**Ample Support Exists for the Proposed Restrictions and Notification Requirements**

14. Section 362(a) of the Bankruptcy Code operates as a stay of, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Accordingly, "where a non-debtor's action with respect to an interest that is intertwined with that of a bankrupt debtor would have the legal effect of diminishing or eliminating property of the bankrupt estate, such action is barred by the automatic stay." *Official Comm. of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines Inc.)*, 928 F.2d 565, 574 (2d Cir. 1991), *cert. denied*, 502 U.S. 821 (1991).

15. NOLs are property of a debtor's estate protected by section 362 of the Bankruptcy Code. *See Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) ("It is beyond peradventure that NOL carrybacks and carryovers are property of the estate of the loss corporation that generated them."). The United States Court of Appeals for the Second Circuit, in its seminal *Prudential*

9

*Lines* decision, affirmed the application of the automatic stay and upheld a permanent injunction prohibiting a parent corporation from taking a worthless stock deduction for the stock of its debtor subsidiary because doing so would have adversely affected the subsidiary's ability to use its NOLs under the special relief provisions of section 382 of the Tax Code. 928 F.2d 565. The Second Circuit stated:

> Including NOL carryforwards as property of a corporate debtor's estate is consistent with Congress' intention to "bring anything of value that the debtors have into the estate." Moreover, "[a] paramount and important goal of Chapter 11 is the rehabilitation of the debtor by offering breathing space and an opportunity to rehabilitate its business and eventually generate revenue." Including the right to a NOL carryforward as property of [the debtor's] bankruptcy estate furthers the purpose of facilitating the reorganization of [the debtor].

*Id.* at 573 (internal citations omitted); s*ee also In re Fruehauf Trailer Corp.*, 444 F.3d 203 (3d Cir. 2006) ("Property of the estate 'includes all interests, such as . . . contingent interests and future interests, whether or not transferable by the debtor.'") (quoting *Prudential Lines*, 928 F.2d at 572);; *Gibson v. United States (In re Russell)*, 927 F.2d 413, 417 (8th Cir. 1991) (concluding the "right to carry forward the [debtor's] NOLs" was a "property interest" of the estate); *In re Delta Air Lines, Inc.*, Ch. 11 Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Sept. 16, 2005) (finding that tax credit carryforwards were property of the debtors' estates and approving notification procedures and restrictions on certain transfers of claims against and interests in the debtors to protect, among other things, $346 million in non-NOL tax credits); *In re Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. 2003) (finding that the debtors' NOL carryforwards "are property of the debtors' estates and are protected by the automatic stay prescribed in section 362 of the Bankruptcy Code"). In *Prudential Lines*, the Second Circuit further held that the parent corporation's attempt to claim a worthless stock deduction in stock of its debtor subsidiary effectively would eliminate the value of the debtor's NOLs, and thus, would be an act to exercise

control over estate property in violation of the automatic stay extant under section 362 of the Bankruptcy Code. *Prudential Lines*, 928 F.2d at 573-574.

16. In *Prudential Lines,* the parent corporation's interest in its worthless stock deduction was intertwined with the debtor's NOLs. The Second Circuit determined that, if the parent were permitted to take a worthless stock deduction, it would have an adverse impact on the debtor subsidiary's ability to carry forward its NOLs. Therefore, the Second Circuit noted that, "despite the fact that the [parent corporation's] action is not directed specifically at [the debtor subsidiary], it is barred by the automatic stay as an attempt to exercise control over property of the estate." *Id.*

17. The Second Circuit also held that the permanent injunction was supported by the court's equitable powers pursuant to section 105(a) of the Bankruptcy Code, which authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]." *Id.*; *see also* 11 U.S.C. § 105(a). Because the NOLs were valuable assets of the debtor, the Second Circuit refused to disturb the bankruptcy court's determination that elimination of the right to apply its NOLs to offset income on future tax returns would impede the debtor's reorganization. *Prudential Lines*, 928 F.2d at 574.

18. Similarly, in *In re Phar-Mor, Inc.*, 152 B.R. 924 (Bankr. N.D. Ohio 1993), chapter 11 debtors moved to prohibit the transfer of their stock that could have an adverse effect on their ability to use NOLs. The court held that the NOLs qualified as property of the estate and issued an injunctive order and enforced the automatic stay, thereby protecting the assets of the debtors' estates. Significantly, the court granted the relief requested even though the stockholders did not state any intent to sell their stock and even though the debtors did not show that a sale was pending that would trigger the prescribed ownership change under section 382 of

11

the Tax Code. *See id.* at 927. Despite the "ethereal" nature of the situation, the court observed that "[w]hat is certain is that the *NOL has a potential value, as yet undetermined*, which will be of benefit to creditors and will assist debtors in their reorganization process. This asset is entitled to protection while debtors move forward toward reorganization." *Id.* (emphasis added). The court also concluded that, because the debtors were seeking to enforce the stay, they did not have to meet the more stringent requirements for preliminary injunctive relief:

> The requirements for enforcing an automatic stay under 11 U.S.C. § 362(a)(3) do not involve such factors as lack of an adequate remedy at law, or irreparable injury, or loss and a likelihood of success on the merits. The key elements for a stay . . . are the existence of property of the estate and the enjoining of all efforts by others to obtain possession or control of property of the estate.

*Id.* at 926 (quoting *In re Golden Distribs., Inc.*, 122 B.R. 15, 19 (Bankr. S.D.N.Y. 1990)).

19. Restrictions on equity trading to protect a debtor against the possible loss of its NOLs are regularly applied by courts.[3] *See, e.g., In re Northwest Airlines Corp.*, Ch. 11 Case No. 05-17930 (ALG) (Bankr. S.D.N.Y. Dec. 22, 2005) (approving notification procedures and restrictions on certain transfers of claims against and equity interests in the debtors); *In re Delta Air Lines, Inc.*, Ch. 11 Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Dec. 19, 2005) (approving notification procedures and restrictions on certain transfers of claims against and equity interests in the debtors); *In re WorldCom, Inc.*, Ch. 11 Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. March 4, 2003) (restricting acquisitions of stock above a certain threshold and establishing notification requirements for certain acquisitions of claims); *In re Metrocall, Inc.*, Ch. 11 Case No. 02-11579 (Bankr. D. Del. July 8, 2002) (approving procedures where debtor would provide 5 business days' notice to object to proposed transfers of stock that would result

---

[3] Because of the voluminous nature of the unreported orders cited herein, they are not annexed to this Motion. Copies of these orders are available upon request of the undersigned counsel.

12

in a transferee holding 5% or more of the debtor's stock or a reduction in the ownership interest of an existing 5% or greater shareholder); *In re Finova Group, Inc.*, Ch. 11 Case No. 01-0697 (PJW) (Bankr. D. Del. July 31, 2001) (providing debtor with 30 days notice to object to proposed transfers of the debtor's stock that would result in a transferee holding 5% or more of debtor's shares); *In re Reliance Acceptance Group Inc.*, Ch. 11 Case No. 98-288 (PJW) (Bankr. D. Del. 1998) (providing debtor with 30 days notice to object to proposed transfers that would result in a transferee holding 5% or more of debtor's common stock).

20. These cases establish that it is well settled that the automatic stay under section 362(a)(3) of the Bankruptcy Code stays actions that would adversely affect a debtor's tax attributes. These actions, including the trading of stock in a debtor, may be determined to be null and void *ab initio*.

### The Proposed Restrictions and Notice Procedures are Necessary and in the Best Interests of the Debtors, Their Estates, and Creditors

21. The proposed restrictions and notice procedures are necessary to preserve the Debtors' potential ability to use the Tax Attributes, which may be valuable assets of the Debtors' estates. The Debtors' ability to meet the requirements of the tax laws to preserve the Tax Attributes may be seriously jeopardized unless procedures and restrictions are established immediately to ensure that trading in WMI Stock is either curtailed or closely monitored. The Debtors recognize that some trading in WMI Stock may not pose a serious risk to the Tax Attributes, and, thus, it generally seeks to impose only an advance notice and objection procedure and limits the relief sought to transactions implicating a holder of WMI Stock that is or seeks to become, or cease to be, a Substantial Equity Holder.

22. Depending on the circumstances (including asset sales and potential changes in the value of any retained assets), the Tax Attributes may be valuable assets of the

Debtors' estates and are entitled to the protection of the automatic stay. The exercise of this Court's equitable powers under section 105(a) of the Bankruptcy Code is appropriate.

23. The relief requested is narrowly tailored to permit certain stock trading to continue, subject to applicable securities, corporate, and other laws. The Debtors are seeking only to enforce the provisions of the automatic stay in connection with certain types of stock trading that pose a serious risk under the ownership change tests and to monitor other types of trading that potentially pose a serious risk. The proposed restrictions on trading are crucial because once an interest is acquired, the acquisition might not be reversible for tax purposes absent such restrictions. Once a transfer acts to limit the Debtors' ability to use the Tax Attributes under section 382 or section 383 of the Tax Code, such ability may be permanently lost. The relief requested is, therefore, necessary to prevent an irrevocable loss of the Debtors' use of the Tax Attributes.

24. It is in the best interests of the Debtors and their stakeholders to restrict stock trading that could result in an ownership change under section 382 of the Tax Code during the pendency of the bankruptcy case. This permits the use of the Tax Attributes, if needed, to offset gain or other income recognized in connection with the Debtors' ownership of their assets and asset sales. If an ownership change were to occur prior to the recognition of any such gain or income, the Tax Attributes may be unavailable due to the annual limitation imposed by section 382 and section 383 of the Tax Code. In addition, in the case of certain losses recognized following an ownership change, section 382 of the Tax Code may preclude the carry back of such losses.

25. Following entry of the Interim Order, the Debtors propose to serve the Interim Procedures Notice, describing the authorized trading restrictions and notification

requirements (including the requested *nunc pro tunc* relief) on: (i) the United States Trustee for the District of Delaware; (ii) each of the Debtors' twenty (20) largest unsecured creditors; (iii) the OTS; (iv) the FDIC ; (iv) the Securities and Exchange Commission (the "<u>SEC</u>"); (v) the Internal Revenue Service; (vi) counsel to JPMorgan Chase; (vii) counsel to Bank of New York Mellon; (viii) all parties who have requested notice in these chapter 11 cases; (ix) any transfer agent(s) of WMI's Stock; and (x) those certain holders of WMI stock who have filed Forms 13D and 13G with the SEC (collectively, the "<u>Notice Parties</u>"). The Debtors are requesting that upon receipt of the Interim Procedures Notice, any transfer agent shall send the Interim Procedures Notice to all holders of WMI Stock registered with the transfer agent. Any registered holder shall, in turn, provide the Interim Procedures Notice to any holder for whose account the registered holder holds WMI Stock. Any holder shall, in turn, provide the Interim Procedures Notice to any person or entity for whom the holder holds WMI Stock. The Interim Procedures Notice will be posted on the website established by the Debtors' claim agent, Kurtzman Carson Consultants, LLC, at http://www.kccllc.net (the "<u>Website</u>").

26. Following the entry of the Final Order, the Final Procedures Notice describing the authorized trading restrictions and notification requirements will be sent to the Notice Parties. Upon receipt of the Final Procedures Notice, any transfer agents shall send the Final Procedures Notice to all holders of WMI Stock registered with the transfer agent. Any registered holder shall, in turn, provide the Final Procedures Notice to any holder for whose account the registered holder holds WMI Stock. Any holder shall, in turn, provide the Final Procedures Notice to any person or entity for whom the holder holds WMI Stock. The Final Procedures Notice would be posted on the Website.

27. The above measures constitute a sufficient and cost-effective way of providing notice of the interim and final procedures described above.

28. Entry of an order granting the relief requested herein shall be without prejudice to any person or entity that believes it is unjustifiably aggrieved by these restrictions and desires to transfer WMI Stock from requesting relief from this Court at any time.

## Interim Approval Should Be Granted

29. Absent granting the interim relief requested herein, the Debtors may be irreparably harmed by the mere filing of this Motion. If the Debtors filed this Motion in accordance with the usual notice procedures set forth in the applicable Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the District of Delaware, it is possible that a flurry of equity trading would immediately follow. Parties holding WMI Stock may rush to transfer their WMI Stock or others may rush to acquire WMI Stock before any prohibition on trading is approved by this Court. Such trading would put the Tax Attributes in jeopardy, as described above, and would thereby be counterproductive to the Debtors' objectives in seeking this relief. Accordingly, it is requested that the procedures described herein be approved on an interim basis and that a hearing be scheduled to consider the entry of a final order.

30. Responses or objections (the "Objections"), if any, to the interim relief requested in the Motion, may be made at the hearing.

31. Within three (3) business days of the entry of an interim order, the Debtors shall send the Interim Procedures Notice to the Notice Parties.

32. Until the Court enters a Final Order, and thereafter, subject to any modifications pursuant to the Final Order, any acquisition, disposition or other transfer of WMI Stock as of the date of the Motion in violation of the procedures set forth above shall be null and void *ab initio* as an act in violation of the automatic stay prescribed by section 362 of the

Bankruptcy Code and pursuant to this Court's equitable power prescribed in section 105(a) of the Bankruptcy Code.

33. The foregoing notice procedures satisfy due process and the strictures of Bankruptcy Rule 9014 by providing the counterparties with notice and an opportunity to object and be heard at a hearing. *See, e.g., Harada v. DBL Liquidating Trust (In re Drexel Burnham Lambert Group, Inc.)*, 160 B.R. 729, 733 (S.D.N.Y. 1993) (indicating that an opportunity to present objections satisfies due process); *Flynn v. Eley (In re Colo. Mountain Cellars, Inc.)*, 226 B.R. 244, 246 (D. Colo. 1998) (noting that a hearing is not required to satisfy Bankruptcy Rule 9014). Furthermore, the proposed notice procedures protect the due process rights of the parties in interest without unnecessarily exposing the Debtors' estates to unwarranted administrative expenses. Similar notice and objection procedures were approved in the cases discussed above.

34. The granting of interim approval will benefit the Debtors and their stakeholders by preventing the loss of the Tax Attributes pending determination of final approval of the requested procedures while allowing holders of WMI Stock and other parties in interest ample time to consider the proposed procedures.

**Notice**

35. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to the Notice Parties. In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

**No Previous Request**

36. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

17

WHEREFORE the Debtors respectfully request entry of an interim order, substantially in the form attached hereto as Exhibit C, granting the relief requested herein and such other and further relief as is just.

Dated: October 24, 2008
       Wilmington, Delaware

Respectfully submitted,

_____
Mark D. Collins (No. 2981)
Chun I. Jang (No. 4790)
Lee E. Kaufman (No. 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Marcia L. Goldstein, Esq.
Brian S. Rosen, Esq.
Michael F. Walsh, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys to the Debtors
and Debtors in Possession*