**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| WASHINGTON MUTUAL, INC., et al.,  ) | Case No. 08-12229 (MFW) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |

## OPINION[1]

Before the Court is the Debtors' Motion for an Order Pursuant to Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004.1 Directing the Examination of JPMorgan Chase Bank, National Association ("JPM"). For the reasons set forth below, the Court will grant the Debtors' Motion.

I.  FACTUAL BACKGROUND

Prior to the filing of a chapter 11 petition, Washington Mutual, Inc. ("WMI") was a savings and loan holding company,[2] which owned Washington Mutual Bank ("WMB"). WMB owned the subsidiary bank Washington Mutual Bank fsb ("WMBfsb"). Before failing, WMB was the nation's largest savings and loan association, with over 2,200 branches and $188.3 billion in deposits.

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to contested matters by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

[2] See 12 U.S.C. § 1467a.

Beginning in mid-2007, the slowdown in the nation's economy and, in particular, the deterioration in the residential housing market resulted in decreased revenue and earnings at WMI and trouble in the asset portfolio of WMB. By September 2008, in the midst of a global credit crisis of unprecedented proportions (which included the bankruptcy of Lehman Brothers Holdings Inc.[3]), WMI and WMB faced a wave of ratings downgrades by the major credit rating agencies. Deteriorating confidence in WMB fueled a bank run beginning September 15, with $16.7 billion in deposits withdrawn over a ten-day period.

On September 25, 2008, WMB's primary regulator,[4] the Office of Thrift Supervision (the "OTS"), closed WMB and appointed the Federal Deposit Insurance Corporation (the "FDIC") as receiver. WMB's takeover by the FDIC was the largest bank failure in the nation's history. Immediately after its appointment as receiver, the FDIC sold substantially all the assets of WMB to JPM. On September 26, the Debtors filed chapter 11 petitions.

On December 30, 2008, the Debtors asserted various claims against the WMB receivership by filing proofs of claim with the FDIC in its capacity as receiver of WMB. Specifically, the

---

[3] See In re Lehman Brothers Holdings Inc., No. 08-13555 (Bankr. S.D.N.Y. filed Sept. 15, 2008).

[4] WMB was also subject to regulatory oversight by the Office of the Comptroller of the Currency ("OCC"), the Board of Governors of the Federal Reserve System (the "Fed"), and the FDIC.

Debtors' claims are claims for damages related to intercompany loans and receivables, taxes paid on behalf of WMB, tax refunds, capital contributions, certain trust preferred securities, preferential transfers, vendor contract claims, subrogation claims, improper asset sales, cash in demand deposit accounts, administrative claims, employment-related costs and insurance claims, and indemnification claims.  The FDIC denied all claims filed by the Debtors in a letter dated January 23, 2009.

On March 20, 2009, the Debtors filed suit in the United States District Court for the District of Columbia (the "DC Court") against the FDIC (the "DC Action")[5] with the following five counts: (1) seeking review of the FDIC's denial of the Debtors' proofs of claim; (2) wrongful dissipation of WMB's assets; (3) taking of the Debtors' property without just compensation; (4) conversion of the Debtors' property; and (5) seeking a declaration that the FDIC's disallowance of the Debtors' claims is void.  JPM moved to intervene in the DC Action; the Debtors have opposed JPM's motion to intervene.

On March 24, 2009, JPM filed an adversary proceeding in this Court naming the Debtors as defendants (the "JPM Adversary Action").[6]  In it, JPM seeks a series of declaratory judgments

---

[5] See Washington Mutual, Inc., et al. v. Federal Deposit Insurance Corp., No. 1:09-cv-00533 (D.D.C. filed Mar. 20, 2009).

[6] See JPMorgan Chase Bank, National Association v. Washington Mutual, Inc. et al., Case No. 08-12229, Adv. No. 09-

regarding the ownership of various assets which JPM asserts it acquired in good faith and for value from the FDIC as receiver for WMB.  Specifically, the assets at issue include approximately $4 billion in trust securities, a $3.7 billion book entry at WMBfsb purporting to create a deposit account in the name of WMI, tax refunds, judgments from certain prior litigation, assets of certain trusts supporting deferred compensation of former and current employees of WMB, shares of Class B common stock in Visa, Inc., intellectual property and contractual rights.  JPM characterizes the JPM Adversary Action as "in many ways the flip side of the DC Action," as JPM "broadly asserts claims that result from Debtors' efforts to assert ownership rights over assets [JPM purportedly] purchased from the FDIC."[7]

On April 27, 2009, the Debtors filed an adversary proceeding in this Court naming JPM as defendant (the "Turnover Action").[8] In that action, the Debtors seek turnover of approximately $4 billion in cash held in demand deposit accounts in the name of the Debtors at WMB and WMBfsb at the time WMB was seized and sold

---

50551 (Bankr. D. Del. filed Mar. 24, 2009).  The JPM Adversary Action also names the FDIC as an additional defendant solely on an interpleader claim related to the deposit account liabilities.

[7] JPM Objection at 2.

[8] See Washington Mutual, Inc. et al. v. JPMorgan Chase Bank, National Association, Case No. 08-12229, Adv. No. 09-50934 (Bankr. D. Del. filed Apr. 27, 2009).

4

to JPM.  JPM has filed a motion to dismiss the Turnover Action; the Debtors have filed a motion for summary judgment.[9]

A fourth action was filed on February 16, 2009, in the 122d Judicial District Court of Galveston County, Texas (the "Texas Action") by a group of insurance companies[10] which held common stock of WMI and debt securities of WMI and WMB (collectively, the "Insurance Company Plaintiffs") against defendants JPM and its parent company, JPMorgan Chase & Co. ("JPMC").  On March 25, 2009, the FDIC, as an intervening defendant, JPM and JPMC removed the Texas Action to the United States District Court for the Southern District of Texas.[11]  In addition, the FDIC filed a motion to transfer the Texas Action to the DC Court.  The Insurance Company Plaintiffs opposed the motion to transfer venue and sought to remand the action to the Texas state court.  The District Court has yet to rule on the motion to transfer venue.

---

[9] The FDIC has filed a motion to intervene in the Turnover Action.  In addition, both the FDIC and JPM seek to stay the Turnover Action pending the result of the DC Action.

[10] The plaintiffs in the Texas Action are: American National Insurance Company, American National Property and Casualty Company, American National General Insurance Company, Farm Family Life Insurance Company, Farm Family Casualty Insurance Company, Pacific Property and Casualty Company, American National Lloyds Insurance Company, National Western Life Insurance Company, and Garden State Life Insurance Company.

[11] See American National Insurance Company et al. v. JPMorgan Chase & Co., No. 3:09-CV-00044 (S.D. Tex. Mar. 25, 2009).

The Complaint in the Texas Action ("Texas Complaint") alleges causes of action for tortious interference with an existing contract, breach of a confidentiality agreement, and unjust enrichment. Specifically, the Texas Complaint alleges that JPM, which had long coveted WMB's depositor base and branch network, drove down WMB's value so it could purchase WMB's assets at a fire-sale price well below their fair market value. Key aspects of the alleged scheme include entering into false negotiations with WMI and WMB under the guise of a good-faith bidder during the summer of 2008, gaining access to confidential and proprietary information, and disseminating that confidential information, as well as false information, to the media and investors in an effort to drive down WMI's credit rating and stock price.

The instant dispute is based on the Debtors' Motion for an Order Pursuant to Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004.1 Directing the Examination of JPM (the "Motion"), which was filed on May 1, 2009. Specifically, the Debtors' Motion seeks production of documents and related depositions regarding four areas of investigation:

- potential business tort claims against JPM based on the allegations in the Texas Action;

- potential fraudulent transfer claims against JPM arising from approximately $6.5 billion of capital contributions made by WMI to WMB since December 2007;
- potential turnover claims against JPM related to (i) approximately $177 million owed by WMB under outstanding promissory notes held by non-Debtor subsidiaries of WMI, and (ii) approximately $22.5 million in intercompany receivables owed to WMI by WMB; and
- potential preferential transfer claims against JPM arising from approximately $152 million transferred to WMB or third parties on behalf of WMB in the one-year period preceeding the filing of the Debtors' chapter 11 petitions.

JPM opposes the Motion, asserting that the requested Rule 2004 examination seeks information related to the pending DC Action, as well as the JPM Adversary Action and the Turnover Action, and thus the applicable discovery rules of the Federal Rules of Civil Procedure should apply.  The Court held a hearing on May 20, at which the parties presented oral argument on the Motion.  At the conclusion of the hearing, the Court took the matter under advisement.  Upon consideration of the parties' pleadings and arguments, the Motion is ripe for decision.

II.  JURISDICTION

This Court has jurisdiction over this matter, which is a core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A).

III. DISCUSSION

   A.  Rule 2004 Examination Standards

Rule 2004(a) of the Federal Rules of Bankruptcy Procedure states that "[o]n motion of any party in interest, the court may order the examination of any entity."  The scope of a Rule 2004 examination is "unfettered and broad."  In re Bennett Funding Group, Inc., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996).

> The examination . . . may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate. [Additionally, in a] case under chapter 11 . . . the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

Fed. R. Bankr. P. 2004(b).  A Rule 2004 examination "is commonly recognized as more in the nature of a 'fishing expedition.'"  Bennett Funding, 203 B.R. at 28.  The purpose of the examination is to enable the trustee to discover the nature and extent of the bankruptcy estate.  In re Drexel Burnham Lambert Group, Inc., 123

B.R. 702, 708 (Bankr. S.D.N.Y. 1991). Legitimate goals of Rule 2004 examinations include "discovering assets, examining transactions, and determining whether wrongdoing has occurred." In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002). There are, however, limits to the use of Rule 2004 examinations. Id. "It may not be used for 'purposes of abuse or harassment' and it 'cannot stray into matters which are not relevant to the basic inquiry.'" In re Table Talk, Inc., 51 B.R. 143, 145 (Bankr. D. Mass. 1985) (quoting In re Mittco, Inc., 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984)).

At issue in this case is the potential limitation on the use of the Rule 2004 examination device caused by the shadow of pending adversary proceedings or litigation in other forums. The "pending proceeding" rule states "that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to Federal Rules of Bankruptcy Procedure 7026 et seq., rather than by a [Rule] 2004 examination." Bennett Funding, 203 B.R. at 28. See also Enron, 281 B.R. at 840; In re 2435 Plainfield Ave., Inc., 223 B.R. 440, 455-56 (Bankr. D.N.J. 1998) (collecting cases); Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson & Co., Inc.), 127 B.R. 267, 274 (D. Colo. 1991) (quoting In re Valley Forge Plaza Assocs., 109 B.R. 669, 674-75 (Bankr. E.D. Pa. 1990)). In addition to restricting the use of Rule 2004 examinations when proceedings

are pending against the examinee in the bankruptcy court, courts have also recognized that Rule 2004 examinations may be inappropriate "where the party requesting the Rule 2004 examination could benefit their pending litigation outside of the bankruptcy court against the proposed Rule 2004 examinee." Enron, 281 B.R. at 842.  See also, Snyder v. Soc'y Bank, 181 B.R. 40, 42 (S.D. Tex. 1994), aff'd sub nom., In re Snyder, 52 F.3d 1067 (5th Cir. 1995) (mem.) (characterizing the use of Rule 2004 to further a state court action as an abuse of Rule 2004 and stating that the bankruptcy court did not abuse its discretion by denying production under a subpoena issued under Rule 2004, where appellant's primary motivation was to use those materials in a state court action against the examinee).

The reasons supporting these restrictions on the use of Rule 2004 examinations are twofold.  First, the discovery rules apply both in adversary proceedings and contested matters.  See Fed. R. Bankr. P. 7001 & 9014(c).  Furthermore, a Rule 2004 examination does not provide the same procedural safeguards as Rule 7026.  For example, a witness has no general right to representation by counsel during a deposition, and the right to object to immaterial or improper questions is limited.  In re Dinubilo, 177 B.R. 932, 940 (E.D. Cal. 1993).

The prohibition on use of Rule 2004 examinations once an adversary proceeding or litigation in another forum is commenced,

10

however, has an exception best expressed by the court in <u>Bennett Funding</u>: "[d]iscovery of evidence <u>related</u> to the pending proceeding must be accomplished in accord with more restrictive provisions of [the Federal Rules of Bankruptcy Procedure], while <u>unrelated</u> discovery should not be subject to those rules simply because there is an adversary proceeding pending."  203 B.R. at 29 (emphasis in original).  <u>See also</u> <u>In re Buick</u>, 174 B.R. 299, 305 (D. Colo. 1994) (noting that "even after the trustee has commenced adversary proceeding(s), the trustee may conduct Rule 2004 examinations of entities which are not parties to or are not affected by the pending adversary proceeding(s)"); <u>Blender, Robinson</u>, 127 B.R. at 275 ("Entities not affected by the adversary proceeding do not require the greater protections afforded under the Federal Rules, and the Trustee should be permitted to examine them under Rule 2004"); <u>In re Int'l Fibercom, Inc.</u>, 283 B.R. 290, 292 (Bankr. D. Ariz. 2002) ("Consequently when the Rule 2004 examination relates not to the pending adversary litigation, but to another matter, the 'pending proceeding' rule does not apply"); <u>In re M4 Enters., Inc.</u>, 190 B.R. 471, 475 n.4 (Bankr. N.D. Ga. 1995) (finding that the 2004 examination did not relate to the pending adversary proceeding and thus the 'pending proceeding' rule did not apply).

   The primary concern of courts is the use of Rule 2004 examinations to circumvent the safeguards and protections of the

Federal Rules of Civil Procedure. <u>Enron</u>, 281 B.R. at 841. Yet aggressive application of the "pending proceeding" rule may prevent legitimate Rule 2004 examinations on matters wholly unrelated to the pending proceeding, thereby interfering with the trustee's fiduciary duty to maximize estate assets. <u>See</u> <u>Bennett Funding</u>, 203 B.R. at 29 (noting that precluding the use of the 2004 examination device when <u>any</u> adversary proceeding has been commenced would allow entities unaffected by the proceeding to avoid examination); <u>Drexel Burnham Lambert</u>, 123 B.R. at 708 ("A trustee in bankruptcy . . . is under a duty to maximize the realization of estate liquidation").

In this Court's view, the proper approach is that of <u>Bennett Funding</u>. Where a party requests a Rule 2004 examination and an adversary proceeding or other litigation in another forum is pending between the parties, the relevant inquiry is whether the Rule 2004 examination will lead to discovery of evidence related to the pending proceeding or whether the requested examination seeks to discover evidence unrelated to the pending proceeding.

    B.   <u>Relatedness of the Requested 2004 Examination to the Pending Proceedings</u>

In this case, JPM argues that the Debtors' requested Rule 2004 examination is improper because it seeks to elicit information directly related to issues and parties already named

in the JPM Adversary Action as well as the DC Action.[12]

1.  The JPM Adversary Action

JPM argues that the Debtors' requested 2004 examination seeks documents related to the JPM Adversary Action. In support of this, JPM created a detailed chart which purports to delineate the overlapping areas between the Complaint in the JPM Adversary Action and the Debtors' document production requests.[13] The overlap, however, is premised on a single alleged fact in the JPM Adversary Action Complaint: "[T]he OTS placed WMB in receivership because of significant concerns over the safety and soundness of the institution. To ensure continuity of operations, maximize public confidence and minimize cost to the public treasury, the FDIC ran an accelerated bidding process." JPM Adversary Action Complaint at ¶ 25. Simply because JPM chose to include background information regarding the relationship of the parties

---

[12] JPM does not argue that the Debtors' 2004 examination request is improper due to its relationship to either the Texas Action or the Turnover Action. Nothing in the document production request seeks any information related to the Turnover Action, thus the Turnover Action is not an obstacle to Debtors' examination request.

The requested Rule 2004 examination does seek extensive discovery related to the Texas Action. However, the Debtor is not a party to the Texas Action. Nor has the Texas Action been transferred to the DC Court, nor consolidated with the DC Action. Therefore, because the Debtor is not a party to the Texas Action, the requested 2004 examination is proper, even though it seeks information related to the Texas Action.

[13] See JPM Objection at 11-12.

involved in the JPM Adversary Action in its Complaint does not mean that any Rule 2004 examination request dealing with those background facts is "related" to the JPM Adversary Action. Rather, the Court must determine whether the requested 2004 examination will result in the "<u>discovery of evidence</u> related to the pending proceeding." <u>Bennett Funding</u>, 203 B.R. at 29 (emphasis added).

The JPM Adversary Action primarily seeks a series of declaratory judgments that JPM owns a number of disputed assets it asserts that it purchased when it acquired the assets of WMB from the FDIC. The Debtors' Motion seeks production of documents and related depositions relating to potential business tort claims, potential fraudulent transfer claims, potential turnover claims against JPM, and potential preferential transfer claims against JPM.

The Court concludes that the Debtors' Motion does not seek the discovery of evidence "related" to the JPM Adversary Action. With respect to the potential business tort claims, the Debtors seek to investigate conduct which occurred <u>before</u> the OTS closed WMB. In contrast, the JPM Adversary Action seeks to have the Court determine the ownership of certain disputed assets from the sale of WMB's assets to JPM, which occurred <u>after</u> the OTS closed WMB.

Furthermore, the Debtors' document requests for information related to fraudulent transfer claims, turnover claims and preference claims are also unrelated to the JPM Adversary Action. Specifically, the JPM Adversary Action Complaint <u>does not</u> seek a determination of ownership of the potential assets the Debtors seek to investigate: (1) the $6.5 billion of capital contributions made by WMI to WMB since December 2007; (2) the $177 million owed by WMB under outstanding promissory notes held by non-Debtor subsidiaries of WMI; (3) the $22.5 million in intercompany receivables owed to WMI by WMB; and (4) the $152 million transferred to WMB or to third parties on behalf of WMB in the one-year period preceding the Debtors' filing of chapter 11 petitions.

Accordingly, the Court finds that the Debtors' Motion does not seek to discover evidence related to the JPM Adversary Action.

### 2. <u>The DC Action</u>

JPM also argues that the Debtors' requested 2004 examination seeks documents related to the DC Action. However, JPM is not a party to the DC Action. JPM admits it is not a party to the DC Action, but notes there is a "substantial likelihood" that JPM's motion to intervene in the DC Action will be granted. JPM then argues that since it has a "clear interest" in the DC Action, any

discovery related to the DC Action is improper.  The Court disagrees.

The possibility that JPM may intervene in the DC Action is not a sufficient reason to deny the Debtors' Motion at this time. The "pending proceeding" rule is predicated on there actually being a pending action involving the two parties.  <u>Bennett Funding</u>, 203 B.R. at 28.  JPM has not cited any authority for the proposition that a Rule 2004 examination of an entity is improper when a proceeding is pending in another venue against a third party and there is a "substantial likelihood" that the examinee may intervene.

Thus, the Court concludes that there is no justification to prevent the Rule 2004 examination of JPM simply because the Debtors may obtain evidence which could be used in a pending proceeding in which <u>JPM is not yet a party</u>.  One of the primary purposes of a Rule 2004 examination is as a pre-litigation device.  <u>See</u> <u>Table Talk</u>, 51 B.R. at 145-46.  Consequently, the Court should not permit a party to avoid examination by simply filing a motion to intervene in a pending proceeding against a third party.  Since JPM is not a party to the DC Action, the concern that the Debtors are attempting to circumvent the Federal Rules of Civil Procedure is not present.  The "relatedness" of

the DC Action to the Debtors' requested 2004 examination is not relevant.[14]

Accordingly, the Court concludes that the Debtors' Motion to conduct a Rule 2004 examination of JPM is appropriate. The Court will grant the Debtor's Motion.

IV. CONCLUSION

For the reasons set forth above, the Court will grant the Debtors' Motion.

An appropriate order is attached.

Dated: June 24, 2009                    BY THE COURT:

                                        */s/ Mary F. Walrath*

                                        Mary F. Walrath
                                        United States Bankruptcy Judge

---

[14] With respect to the business tort claims, even if JPM successfully intervened in the DC Action, the requested 2004 examination does not seek to discover evidence related to the DC Action. The Debtors seek to discover evidence regarding JPM's alleged malfeasance prior to the seizure and sale of WMB. JPM argues that discovery of this evidence is related to the Debtors alleged causes of action against the FDIC for dissipation of WMB's assets and the taking of Debtors' property without just compensation. However, these causes of action are premised on the FDIC's failure to maximize the value of the receivership's assets in the sale of WMB to JPM. Specifically, the Debtors assert the FDIC would have received a higher value through the liquidation of WMB than the sale to JPM. The requested 2004 examination does not seek to discover evidence related to the hypothetical liquidation analysis implicated in the dissipation and takings causes of action asserted in the DC Action.