IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | ) |
| | ) CHAPTER 11 |
| WASHINGTON MUTUAL, INC., et al., | ) |
| | ) Case No. 08-12229 (MFW) |
| *Debtors.* | ) |
| | ) Jointly Administered |
| | ) |
| | ) **Hearing Date: October 28, 2009** |
| | ) |
| | ) **Objection Deadline: October 21, 2009** |
| | ) |

**PLAINTIFFS' BUUS *ET AL.* MOTION FOR RELIEF FROM
THE AUTOMATIC STAY**

**I. INTRODUCTION**

Plaintiffs Gary Buus, Sydney Flor, Kellie Plumb, Tom Shoenleber, and Margaret Weber, class representatives in the certified class action, *Buus v. WaMu Pension Plan*, No. 07-903 (W.D. Wash.) (the "ERISA Action"), ("Movants") move this Court for an order that the automatic stay under 11 U.S.C. § 362 does not apply, or, alternatively, request relief from the stay under 11 U.S.C. § 362(d)(1) to permit the ERISA Action to proceed. The basis for this Motion is two-fold. First, in the ERISA Action, Plaintiffs seeks equitable relief reformulating the Washington Mutual Cash Balance Pension Plan ("Plan"); such relief is sought from the Plan and from Washington Mutual Pension Plan Administrative Committee (the "PAC"), not the Debtor, Washington Mutual, Inc. ("WMI"). Accordingly, the automatic stay does not extend to the

1

ERISA Action.[1] Further, even if the automatic stay does apply, cause exists for it to be lifted pursuant to 11 U.S.C. §362(d)(1).

## II. PROCEDURAL AND FACTUAL BACKGROUND

The ERISA Action is brought by class representatives on behalf of plan participants against the Plan and the PAC. The Complaint alleges that the Plan unlawfully reduced participants' benefits on several occasions without providing adequate notice of the reduction in violation of ERISA §204(h). The Complaint, filed on June 12, 2007, pertains solely to these ERISA violations. *See* Swope Decl. Ex. A (June 12, 2007 Complaint). By the ERISA Action, Plaintiffs seek equitable relief which would reformulate the Plan and the benefits to which Plan participants are entitled. Plaintiffs do not seek money damages though if Plaintiffs prevail participants would as a result of the Plan reformulation receive larger benefit payments from the Plan.

The ERISA Action is in the advanced stages of litigation. Initial expert reports were disclosed on July 11, 2008, discovery was completed on August 11, 2008, and the parties filed cross-motions for summary judgment on September 16, 2008. Swope Decl. Ex. B (Scheduling Order). The court presiding over the case is intimately familiar with the case, having decided several discovery motions, denied Defendants' motion to dismiss, and granted Plaintiffs' motion for class certification. Swope Decl. Ex. C & D (Orders on Motion to Dismiss and Class Certification).

---

[1] As discussed *infra.*, the Debtor and the Non-Debtor Defendants have asserted in the ERISA Action that the automatic applies to the ERISA Action even though no debtor is a Defendant, and Judge Pechman, before whom the ERISA Action is pending, has indicated on the record that she wishes this Court's guidance as to whether the automatic stay in fact applies to the ERISA Action.

On October 2, 2008, in light of uncertainties resulting from the FDIC takeover of Washington Mutual Bank and the WMI bankruptcy, the district court stayed the ERISA Action for 30 days or sooner until the status of the case "becam[e] clear." Swope Decl., Ex E, Oct. 2, 2008 Order of Stay. From November 3, 2008 until July 13, 2009, the parties filed five joint status reports, and the district court entered two 30-day stays and two 60-day stays under its discretionary authority to control its docket. In the joint status reports, Plaintiffs argued that the automatic stay does not apply to the ERISA Action. *See* Swope Decl., Ex. F (attaching Joint Status Reports). On July 13, 2009, in open court, without deciding the issue, Judge Pechman ordered "that this matter continue to be STAYED until the United States Bankruptcy Court for the District Court of Delaware rules on the status of the automatic stay in the Delaware Bankruptcy action as it pertains to the parties in this case." *See* Swope Decl., Ex. G, Transcript of July 13, 2009 Hearing & Minute Order. This motion ensued.

### III. ARGUMENT

#### A. The Automatic Stay Does Not Apply to the ERISA Action.

Because WMI is not a party to the ERISA Action, and because the relief sought in the ERISA Action is limited to the equitable remedy of reformulation of the Plan, the automatic stay simply does not apply to the ERISA Action.[2] The Defendants in the ERISA action, the Plan, and the PAC are legally separate entities from WMI and its bankruptcy estate.

---

[2] Because the inapplicability of the automatic stay is so clear, Plaintiffs have not previously sought this Court's confirmation thereof. They bring this motion at this time because, as noted above, in a July 13, 2009, status conference, Judge Pechman continued the discretionary stay she had entered in the ERISA Action pending this Court's ruling on the applicability of the automatic stay.

3

Under ERISA, the sponsor of a defined benefit plan such as the Plan has certain on-going obligations and rights. These include the obligation to fund shortfalls under certain circumstances,[3] and the right to receive a reversion of any surplus that exists upon the termination of the plan and the satisfaction of all of its liabilities.[4]

Currently, WMI is the sponsor of the Plan.[5] In the District Court, the Debtor and the Defendants have suggested that the nexus between WMI as Plan sponsor and the Plan is such that automatic stay applies to the ERISA Action, particularly because of the potential for any Plan surplus to revert to WMI. But this nexus is entirely inadequate to trigger the automatic stay.

The potential reversion to WMI of a Plan surplus is contingent upon a series of events, each of which is uncertain at best at this time. First, WMI must be the Plan sponsor at the time of termination; as noted above, JP Morgan Chase asserts that it should succeed to the status of Plan sponsor. Second, the Plan must in fact be terminated. Neither WMI nor JP Morgan Chase has given any indication of intent to terminate the Plan. Third, at the time of termination and after satisfaction of all Plan liabilities, there must be a surplus remaining. ERISA § 404(d)(1)(A), 29 U.S.C. § 1344(d)(1)(A) (providing that after termination, "any residual assets of a single-employer plan" may revert to the employer, but only after "all liabilities of the plan to participants and their beneficiaries have been satisfied"). Here, the Debtor's and the Defendants'

---

[3] *See* ERISA § 303, 29 U.S.C.§ 1083 (obligating defined benefit plan sponsors to meet "minimum required contribution" amounts, which include "shortfall amortization charge(s)," as defined therein.

[4] *See* ERISA § 404(d)(1)(A), 29 U.S.C. § 1344(d)(1)(A) (providing that after termination, "any residual assets of a single-employer plan" may revert to the employer, but only after "all liabilities of the plan to participants and their beneficiaries have been satisfied").

[5] JP Morgan Chase has filed an adversary proceeding asserting that it is entitled to succeed to sponsorship of the Plan. *See* Dkt. 807, JP Morgan Complaint, p. 41, filed March 24, 2009.

possession is hopelessly circular. The liabilities to the Plan participants are key among the liabilities that must be fixed before the existence of a surplus can be determined. Those liabilities are the very subject of the ERISA Action. Thus, until the ERISA Action is concluded, no surplus could revert to the Plan sponsor even if the Plan were to be terminated.[6]

The principles that compel the conclusion that the automatic stay does not apply to the ERISA Action are hardly controversial. Generally, the automatic stay applies only to actions involving a debtor. *See, e.g.*, *Maritime Electric Co., Inc., v. United Jersey Bank,* 959 F.2d 1194, 1205 (3d Cir. 1992)("the automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor."). Here, the debtor is not a party to the ERISA action. The Defendants in the ERISA Action are the Plan and the Plan Administrative Committee. The Plan Administrative Committee obviously is not the debtor. Likewise, the Plan is unequivocally a separate legal entity from WMI, the employer that sponsors it." *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Star Co.*, 543 F. Supp. 906, 910 (D.D.C. 1982)( "[ERISA] established, in clear and unmistakable terms, that a pension fund is an independent entity, separate from the employer."); *accord Holloway v. HECI Exploration Co. Employees' Profit Sharing Plan*, 76 B.R. 563, 568 (N.D. Tex. 1987), *aff'd*, 862 F.2d 513 (5th Cir. 1988). The Plan itself provides that "[a]ll benefits of the Plan shall be payable solely from the Trust, and neither the Employer, Committee nor Trustee shall have any liability

---

[6] Indeed, even the amount of the current Plan surplus, before any reformulation that may result from the ERISA Action, is unclear. WMI's On Feb. 24, 2009, Second Amended Schedule of Assets and Liabilities (Dkt.709, p. 4 of Schedule B – Personal Property), sets forth a net book value of $638 million for the Plan. Defendants have represented to the District Court, however, that as of July 9, 2009, the Plan's surplus was $39 million. See Swope Decl., Ex. F, July 9, 2009 Joint Status Report, p. 13. No explanation of the nearly $600 million decline in under 5 months has been offered.

5

or responsibility therefor except as expressly provided herein," and that "[a]ny person having any claim under the Plan will look solely to the assets of the Trust for satisfaction.") Swope Decl, Ex. H (1998 Plan, Art. 9.12 & Art. 13.4).

Further, the ERISA Action does not challenge WMI's status as Plan sponsor or the right of the Plan sponsor to a reversion of any Plan surplus upon Plan termination and the satisfaction of its liabilities. WMI's contingent interest in a surplus reversion upon Plan termination is analogous to the interest of a debtor in a non-debtor subsidiary that is involved in litigation. It is well established that the automatic stay does not apply to that separate litigation. *See, e.g.*, *Funding Systems Railcars, Inc. v. Pullman Standard, Inc.*, 34 B.R. 706, 709 (N.D. Ill. 1983)(where a debtor owns shares in a separate corporation—even where the debtor is the *sole* owner of the separate corporation, the corporate is considered separate from the debtor and the bankruptcy estate); *Kreisler v. Goldberg*, 478 F.3d 209, 214-15 (4th Cir. 2007); *Conti v. Blau*, 234 B.R. 627, 628-29 (S.D.N.Y. 1999); *In re Palumbo*, 154 B.R. 357, 358-59 (Bankr. S.D. Fla. 1992); *In re Winer*, 158 B.R. 736, 743 (N.D. Ill. 1993) (citing numerous cases); *accord, e.g.*, *Park W. Real Estate Corp. v. Calvert (In re Calvert)*, 135 B.R. 398, 402 (S.D. Cal. 1991).

The result should be the same here. The ERISA action may affect the value of the surplus that may revert to WMI, but it will not affect at all the existence of the contingent interest itself. *Kreisler*, 478 F.3d at 214-15. Thus, the automatic stay does not apply to the ERISA Action.[7]

---

[7] That the Plan sponsor is obligated to fund certain shortfalls does not change the automatic stay analysis because Plaintiffs do not through the ERISA Action seek to impose liability on WMI. As noted above, the Debtor has

6

Indeed, in WMI's Fifth Omnibus Objection to Claims, June 26, 2009 (Doc. #1233) ("WMI Obj."), WMI itself, in an effort to expunge claims brought against it for pension benefits, argued that because the plan assets of the WaMu Pension Plan are in a "separate segregated trust," and are *not* part of the bankruptcy estate, any claims filed against the Debtor to recoup these plan assets are "improper" and should be expunged.[8] *See* Swope Decl., Ex. I, at 3. Further, WMI argued as follows:

> "[E]ven in the event the Plan is ultimately under-funded and terminated by WMI, the Plan sponsor, all Plan beneficiaries would nonetheless be limited in their recovery on account of their benefits claims to the assets of the Plan Trust. The Pension Benefit Guaranty Corporation ("PBGC"), an insurer of the Plan, would thereafter be responsible for any deficiency between the benefits accrued and the assets in the Plan Trust. However, in that situation, while the PBGC might have a claim against the Debtors for the under-funding, the Plan beneficiaries themselves would still only have a claim against the Plan or the Plan Trust, and *not* WMI.

*Id.,* at 5-6 (emphasis in original).

WMI's acknowledgement of the fundamental separation of the assets and liabilities of the Plan from those of WMI is hopelessly inconsistent with any assertion that the automatic stay applies to the ERISA Action.

---

indicated that there is currently a substantial Plan surplus. If the Debtor believes that the ERISA Action may result in the exhaustion of that surplus and the creation of a deficit, it is free to seek to intervene in the ERISA Action (something it chose not to do for over two years before its bankruptcy petition), or perhaps to seek relief under § 105 of the Bankruptcy Code. While Plaintiffs reserve all rights to respond to these or other actions that WMI might choose to take, they respectfully submit that there is simply no basis to conclude that WMI's responsibilities as Plan sponsor trigger application of the automatic stay to an equitable action against non-debtors. *See McCartney v. Integra National Bank, North*, 106 F.3d 506, 510 (3rd Cir. 1997)(discussing two types of unusual circumstances such that the stay applies against a non-debtor)( citing, *A.H. Robins Co., Inc., v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).

[8] Specifically, WMI argued in its brief that "certain of the claims objected to herein seek a recovery on account of asserted pension plan benefits and/or distributions pursuant to the WaMu Pension Plan. Pursuant to the Plan, all Plan assets are held in a separate, segregated trust, which is administered by the WaMu Pension Plan Administration Committee. Because, pursuant to the terms of the Plan, all benefits are paid from the Plan Trust, the claims filed against the Debtors on account of alleged Plan benefits are improper." WMI Obj. at p. 3.

### B. In the Event that the Automatic Stay Applies to the ERISA Action, Plaintiffs Request Relief.

In the event that the Court were to find that the automatic stay does apply to the ERISA Action, relief from that stay pursuant to 11 U.S.C. § 362(d)(1) is warranted in this case. Section 362(d) provides, in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subjection (a) of this section, such as terminating, annulling, modifying or condition such stay – …(1) for cause …

Section 362(d) must be read in conjunction with § 362(g) which provides that the party requesting relief from the automatic stay has the burden of proof on the question of the debtor's equity in property and that the party opposing relief has the burden on all other issues. "Generally, … section 362(g) is interpreted as placing the initial burden on the moving party to establish its prima facie case which must then be rebutted by the party opposing such relief." *Matter of Rexene Products Co.,* 141 B.R. 574, 577 (Bankr. D.Del. 1992); *In re Continental Airlines, Inc.,* 152 B.R. 420, (D.Del. 1993) (once the party has established a prima facie showing of cause to lift the stay, the Court will require the party opposing the stay to meet its burden of showing why the stay should not be lifted.)

"Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case." *In re Wilson*, 116 F.3d 87, 90 (3rd Cir. 1997) (citation omitted). There is no rigid test for determining whether sufficient cause exists to modify an automatic stay. *Id.*; *In re Continental Airlines, Inc.*, 152 B.R.at 424.

The legislative history to section 362(d)(1) addresses the applicability of the automatic stay to proceedings in another tribunal. "It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that can be handled elsewhere." H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6297. This Court has developed a three-part balancing test to determine whether to grant relief from the stay:

1. Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;

2. Whether the hardship to the non-bankrupt party by maintenance of the stay outweighs the hardship to the debtor;

3. The probability of the creditor prevailing on the merits.

*In re SCO Group, Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007)(holding relief from stay was justified); *In re Continental Airlines, Inc*., 152 B.R. at 424. (adopting three-part test originally set forth in *Matter of Fernstrom Storage & Van Co*., 938 F.2d 731, 734-37 (7th Cir.1991)).

This Court has also considered general policies underlying the automatic stay when deciding whether to grant a motion to lift the stay. These policies, which have been outlined by the United States Court of Appeals for the Second Circuit, and adopted by this Court, are:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether

> litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms

*In re SCO Group, Inc.,* 395 B.R. 852 (citing and applying *In re Sonnax Indus. Inc. v. Tri-Component Prods. Corp.,* 907 F.2d 1280, 1287 (2d Cir. 1990)).

In applying the three-part test, first, neither WMI nor its bankruptcy estate would be prejudiced from the continuation of the ERISA Action. Typically courts consider prejudice in terms of the harm caused by forcing the debtor to focus its attention to a civil case to the detriment of the reorganization efforts. *In re SCO Group, Inc.*, 395 B.R. at 857(holding that a trial in a civil case will not harm the estate); *Matter of Rexene Products Co.,* 141 B.R. at 577 (distraction of separate litigation will not harm estate.). Here, WMI is not a defendant in the ERISA Action, and therefore is expending no effort litigating the case. In the three years that the ERISA Action has been litigated, WMI has not moved to intervene. Any claim that WMI would be distracted by the separate civil proceeding when it has not been appeared in that litigation for years prior to the bankruptcy filing is clearly disingenuous.[9] Moreover, this Court can fashion an order so as to ensure that the debtor and the bankruptcy estate would not be prejudiced, such as prohibiting the collection of any judgment against the debtor. *See, In re Dongington Karcher,*

---

[9] Indeed, not only is there no hardship to WMI from the continuation of the ERISA Action, there is actually a benefit in the form of a determination of the reformulation issue, which would enable WMI to ascertain the extent, if any, to which a surplus exists which might revert to it upon a Plan termination.

10

*Salmond*, 194 B.R. 750, (D.N.J. 1996)(allowing civil case to proceed against individual non-debtor guarantors, but prohibiting collection of a judgment against debtor law firm).[10]

The second factor balances the hardship to Plaintiffs in continuing the stay with the hardship to WMI in lifting the stay. Plaintiffs were eight weeks away from trial when WMI filed bankruptcy and the district court stayed the ERISA Action. The ERISA Action has been stayed for almost a year. The class consists of thousands of Plan participants whose retirement benefits may be materially affected by the outcome of the ERISA Action. There is a strong public policy in favor of promptly resolving this matter, particularly in light of the extreme personal and financial turmoil that many of the class members have experienced as a result of the demise of WMI and general economic conditions over the past year. Further, Plaintiffs will be burdened by further delay, and the fact that they will have to prepare again for trial. *See* Swope Decl. Ex. J, (Plaintiffs' Declarations attesting to the hardships incurred by a stay). *See e.g. In re SCO Group*, Inc., 395 B.R. at 858 (ruling that hardship existed to moving party where it had already prepared for trial, and deciding liability in civil action would assist debtor, not harm it).

Finally, the Court must consider whether the movant has some probability of success on the merits. "Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *Matter of Rexene Products Co.,* 141 B.R. at 578 (denial of defendants summary judgment motion satisfied this requirement). Plaintiffs have met their burden here. Plaintiffs have withstood Defendants' motion to dismiss, and successfully

---

[10] As noted above, in the ERISA Action, Plaintiffs do not seek a judgment against WMI, nor a money judgment against anyone; they seek the equitable remedy of Plan reformulation from the Plan and the PAC.

certified a class in the ERISA Action. Swope Decl., Ex. C & D (Orders on Motion to Dismiss and Class Certification).

Consideration of the policies listed in *Sonnax,* to the extent they are applicable, also support Plaintiffs' position, some of which are duplicative to the three-factor test also adopted by this Court.

First, relief would result in a complete resolution of the issues underlying the ERISA action.

Second, there would be no interference with the bankruptcy case because the ERISA issues have nothing to do with the reorganization of the debtors.

Third, Judge Pechman has developed an expertise in this ERISA action having presided over it for three years, and ruled on dispositive motions. ERISA is a famously complex and sometimes counter-intuitive statute. The district courts are far more used to ERISA litigation than are the bankruptcy courts. Moreover, given the demands on this Court in administering this huge bankruptcy, taking on the management of an ERISA class action completely unrelated to any issue in the bankruptcy proceedings would be extremely burdensome.

Fourth, the action primarily involves the third parties of the Plan and the PAC. WMI, the debtor, is not even a party to the litigation.

Fifth, the ERISA action will not prejudice the interests of other creditors because other creditors have no claim to the Plan assets, which are not the property of the bankruptcy estate.

Sixth, the interests of judicial economy and the expeditious resolution of litigation weigh in the Plaintiffs favor. The ERISA Action is in its advanced stages of litigation, with discovery

closed and summary judgment motions filed. "Judicial economy dictates a prompt resolution in a single forum with the same judge who was originally assigned to the case." *Matter of Rexene Products Co.,* 141 B.R. at 577 (granting motion to lift stay and allow proceeding to occur against debtor is separate civil proceeding). Indeed, Judge Pechman has indicated that she is not opposed to proceeding, but seeks guidance from this Court as to whether it is allowed to proceed under the automatic stay provisions of the Bankruptcy Code. Swope Decl., Ex. G (Tr at p. 16).

Seventh, the parties were eight weeks away from trial when the litigation was stayed, and Plaintiffs are prepared for trial in the ERISA Action. Consideration of the applicable *Sonnax* factors which underlie the purpose of the automatic stay decidedly weigh in favor of this Court granting Plaintiffs' motion for relief under the automatic stay.

Plaintiffs have established a prima facie case under both the three-prong test and applying the *Sonnax* factors. Consequently, the burden shifts to the Debtor to show why the stay should not be lifted. Plaintiffs respectfully submit that the facts submitted in support of this motion, which mostly relate to the procedural posture of the ERISA Action, and the legal relationship between the Plan and the debtor are not disputed, and Defendants cannot rebut Plaintiffs' prima facie case.

## IV. CONCLUSION

In sum, Plaintiffs submit that the automatic stay does not apply to an equitable action against separate, non-debtor legal entities in which the debtor claims a remote and contingent interest. Even if the stay did apply, cause exists to lift it. Accordingly, Plaintiffs request that the Court enter its order allowing the ERISA Action to proceed.

DATED this 1st day of September, 2009.

        KELLER ROHRBACK L.L.P.

        \s\ Derek W. Loeser
        Derek W. Loeser, (WSBA 24274)
        Lynn L. Sarko (WSBA 16569)
        Gary A. Gotto, (ASBA 007401)
        Karin B. Swope, (WSBA #24015)

        Attorneys for Movants