UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

----------------------------------------------------------------x
: 
*In re* : Chapter 11
:
WASHINGTON MUTUAL, INC., et al.,[1] : Case No. 08-12229 (MFW)
:
Debtors. : (Jointly Administered)
:
: Hearing Date: September 25, 2009 at 10:30 a.m. (ET)
----------------------------------------------------------------x Objection Deadline: September 18, 2009 at 4:00 p.m. (ET)

## MOTION FOR ORDER AUTHORIZING DEBTORS TO ENTER INTO LETTER OF INTENT WITH GOLDMAN, SACHS & CO. AND APPROVING REIMBURSEMENT OF DUE DILIGENCE EXPENSES AND EXCLUSIVITY

Washington Mutual, Inc. ("WMI") and WMI Investment Corp. ("WMI Investment"), as debtors and debtors in possession (collectively, the "Debtors"), hereby move for an order, (a) pursuant to sections 105(a), 363(b)(1), and 503(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing WMI Investment to enter into a letter of intent (the "Letter of Intent") with Goldman, Sachs & Co. ("Goldman") in connection with Goldman's potential purchase of WMI Investment's membership interest (the "Wind Power Investment") in JPMC Wind Investment Portfolio LLC, pursuant to which WMI Investment will (i) reimburse Goldman for its reasonable out-of-pocket professional fees and expenses, up to a maximum of $300,000, subject to certain conditions and limitations described herein and in the Letter of Intent, and (ii) enter into exclusive negotiations with Goldman regarding the Wind Power Investment for the period described herein and in the Letter of Intent, and (b)

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

RLF1-3430716-1

pursuant to section 107(b) of the Bankruptcy Code and Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") treating certain information as confidential. In support of the Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2. On September 26, 2008 (the "Commencement Date"), each of the Debtors commenced with this Court a voluntary case pursuant to chapter 11 of the Bankruptcy Code. As of the date hereof, the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On October 3, 2008, this Court entered an order pursuant to Bankruptcy Rule 1015(b) authorizing the joint administration of the Debtors' chapter 11 cases.

4. On October 15, 2008, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). No trustee or examiner has been appointed in these cases.

## WMI's Business

5. WMI is a holding company incorporated in the State of Washington and headquartered at 1301 Second Avenue, Seattle, Washington 98101. WMI is the direct parent of WMI Investment, which serves as an investment vehicle for WMI and holds a variety of securities. WMI Investment is incorporated in the State of Delaware.

6. Prior to the Commencement Date, WMI was a savings and loan holding company that owned Washington Mutual Bank ("WMB") and such bank's subsidiaries, including Washington Mutual Bank fsb ("WMBfsb"). WMI also has certain non-banking, non-debtor subsidiaries. Like all savings and loan holding companies, WMI was subject to regulation by the Office of Thrift Supervision (the "OTS"). WMB and WMBfsb, in turn, like all depository institutions with federal thrift charters, were subject to regulation and examination by the OTS. In addition, WMI's banking and nonbanking subsidiaries were overseen by various federal and state authorities, including the Federal Deposit Insurance Corporation ("FDIC").

7. On September 25, 2008, the Director of the OTS, by order number 2008-36, appointed the FDIC as receiver for WMB and advised that the receiver was immediately taking possession of WMB. Immediately after its appointment as receiver, the FDIC sold substantially all the assets of WMB, including the stock of WMBfsb, to JPMC pursuant to that certain Purchase and Assumption Agreement, Whole Bank, dated as of September 25, 2008 (publicly available at http://www.fdic.gov/about/freedom/popular.html).

### The Wind Power Investment

8. The Wind Power Investment is comprised of WMI Investment's membership interest in JPMC Wind Investment Portfolio LLC, a portfolio holding company (the "Portfolio Holding Company"), which owns an equity interest in each of four (4) project companies: (a) Airtricity Sand Bluff WF Holdco, LLC, which owns the Airtricity-Sand Bluff wind farm, near Sterling City, Texas, (b) UPC Hawaii Wind Partners II, LLC, which owns the UPC-Kaheawa Pastures wind farm, located in Maui, Hawaii, (c) Whirlwind Energy, LLC, which owns the RES-Whirlwind wind farm, located in Floyd County, Texas, and (d) Buffalo

3

Gap Holdings 2, LLC, which owns the AES-Buffalo Gap 2 wind farm, located in Nolan and Taylor Counties, Texas.

9. By order, dated February 25, 2009 [Docket No. 724], the Debtors were authorized to retain CP Energy Group, LLC ("CP Energy"), as their investment banker, in order to, among other things, (a) identify potential purchasers of the Wind Power Investment and (b) coordinate technical due diligence and assist in negotiations with prospective purchasers' and/or their representatives, as necessary or appropriate. The Debtors selected CP Energy as their investment banker because of CP Energy's familiarity with the renewable energy sector and, specifically, the divestiture of tax equity investments and wind powered electric generation facilities.

10. CP Energy generated a list of approximately 30 potential purchasers, including all known experienced investors in wind tax equity transactions, as well as certain potential new investors. On May 21, 2009, CP Energy distributed materials regarding the Wind Power Investment and a form of confidentiality agreement to 23 of these potential purchasers.[2] In response thereto, seven (7) parties contacted CP Energy to express their interest in the Wind Power Investment and executed confidentiality agreements with the Debtors. After preliminary due diligence regarding the Wind Power Investment, potential purchasers submitted non-binding written offers to purchase the Wind Power Investment.

---

[2] The Limited Liability Company Agreement (the "LLC Agreement") of the Portfolio Holding Company contains restrictions regarding, among other things, the identity of proposed solicitees or transferees of WMI Investment's interest. The original list of potential purchasers was modified to exclude certain potential purchasers based on the transferee restrictions in the LLC Agreement. In addition, WMI Investment's solicitations were required to comply with the confidentiality provisions of the LLC Agreement.

4

The Debtors determined that the bid submitted by Goldman is the highest and best bid remitted to date.

11. Subsequent to the selection of Goldman, WMI Investment and Goldman entered into a non-binding Letter of Intent, a copy of which is annexed hereto as Exhibit "A," pursuant to which Goldman has expressed interest in acquiring the Wind Power Investment. Goldman's Letter of Intent is based solely on preliminary information provided by CP Energy and is conditioned on, among other things, Goldman's completion of due diligence satisfactory to Goldman, in its sole discretion and execution of definitive agreements concerning the transaction. Additionally, WMI Investment and Goldman have agreed, subject to this Court's approval, that WMI Investment will reimburse Goldman for its reasonable out-of-pocket professional fees and expenses incurred in conducting due diligence, preparing and negotiating definitive documentation, and consummating the transaction, in an amount not to exceed $300,000 in the aggregate (the "Expense Reimbursement"), provided, that, WMI Investment will only be required to reimburse Goldman if the purchase price, as set forth in the definitive agreements, as the same may have been adjusted in accordance therewith, is greater than $15 million. Furthermore, such obligation would cease if definitive agreements are entered into between Goldman and WMI Investment with respect to the Wind Power Investment, but the transaction is not consummated as a result of Goldman's material breach.

12. The Letter of Intent also provides that Goldman will have the exclusive right to negotiate with WMI Investment with respect to the Wind Power Investment from and after the date of the Letter of Intent until the earliest to occur of any of the following, at which time such exclusive right will automatically terminate (the "Exclusivity Period"):

5

RLF1-3430716-1

(a) if the Court does not enter an order authorizing WMI Investment to enter into the Letter of Intent and approve the Expense Reimbursement and exclusivity provisions thereof, prior to November 4, 2009;

(b) on the date that is sixty days following the entry of an order authorizing WMI Investment to enter into the Letter of Intent and approving the Expense Reimbursement and exclusivity provisions thereof;

(c) if the purchase price that Goldman offers WMI Investment in respect of the Wind Power Investment, after taking into account any purchase price adjustments that may be agreed between the parties, is less than $15 million;

(d) upon the entry of a bidding procedures order by the Court in respect of the proposed sale of the Wind Power Investment to Goldman pursuant to agreed documentation; or

(e) upon WMI Investment's receipt of written notice from Goldman that Goldman has elected not to proceed with the purchase of the Wind Power Investment.

**The Purchase Price Should Remain Confidential Pursuant to Section 107(b) of the Bankruptcy Code and Rule 9018 of the Bankruptcy Rules**

13. Goldman has presented an indicative purchase price in excess of the $15 million minimum described above. However, Goldman has requested that the purchase price offered and set forth in the Letter of Intent be treated as confidential information pursuant to section 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018. To the extent that, after completion of due diligence, and subject to the conditions identified in the Letter of Intent, Goldman and WMI Investment determine to consummate the sale of the Wind Power Investment, the Debtors will file a motion with this Court seeking approval of bidding procedures and any definitive documentation or "stalking horse" agreement with Goldman, subject to higher and better offers, which motion will disclose the actual purchase price.

14. A copy of the Letter of Intent, with the indicative purchase price redacted, has been filed as Exhibit "A" hereto.[3] An un-redacted copy of the Letter of Intent has been provided to the Creditors' Committee's advisors.

## Relief Requested

15. By this Motion, the Debtors request entry of the proposed order, substantially in the form attached hereto as Exhibit "B," (a) pursuant to sections 105(a), 363(b)(1), and 503(b)(1) of the Bankruptcy Code, authorizing WMI Investment to enter into the Letter of Intent with Goldman pursuant to which WMI Investment will (i) reimburse Goldman for its reasonable out-of-pocket professional fees and expenses, up to a maximum of $300,000, subject to the conditions and limitations described herein and in the Letter of Intent, and (ii) enter into exclusive negotiations with Goldman regarding the Wind Power Investment for the period described herein and in the Letter of Intent, and (b) treat the indicative purchase price contained in the Letter of Intent as confidential pursuant to section 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018.

## The Relief Requested Herein Should Be Granted

16. Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

---

[3] An unredacted copy of the Letter of Intent will be available for the Court's review at the hearing to consider the Motion.

*Id.* § 105(a). Moreover, section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In determining whether to authorize the use, sale, or lease of property of the estate, courts require a debtor to show a sound business purpose justifying the same. See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (requiring judges deciding motions pursuant to section 363(b) to find a "good business reason" to grant such motions); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999) (holding that the debtor must show a sound business purpose to justify the use, sale, or lease of property of the estate); In re Del. & Hudson Ry. Co., 124 B.R. 169, 178-79 (D. Del. 1991) (adopting the Lionel court's approach to determining whether a sound business purposes exists and approving a sale pursuant to section 363(b) because it was based on reasonable business judgment).

17. "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citations omitted). When a valid business justification exists, the law vests the debtor's decision to use property out of the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985) (quotation

marks and citations omitted), superseded by statute on different grounds, 65 Del. Laws §102(b)(7) (1986), as recognized in Emerald Partners v. Berlin, 787 A.2d 85 (Del. 2001).

18. The Debtors submit that sound business reasons exist to grant the relief requested herein. After marketing the Wind Power Investment over the last several months, the Debtors determined that the initial bid submitted by Goldman is the best and highest offer received to date. Accordingly, the Debtors believe that it is in the best interests of their estates and creditors to move forward with the proposed sale transaction with Goldman. Goldman has advised the Debtors that it will only conduct further due diligence in connection with the Wind Power Investment if the Debtors agree, in advance, and obtain Court approval, to compensate Goldman for its out of pocket expenses, including professional fees up to an aggregate amount of $300,000. This up-front payment of expenses is standard practice in the marketplace for similar tax equity investments.

19. In light of the potential benefits to the Debtors' estates from a sale transaction with Goldman (or another bidder, if a higher or better offer is made at an auction),[4] the Debtors believe that it is appropriate to proceed in this manner. Furthermore, as described herein, pursuant to the terms of the Letter of Intent, the parties have agreed that WMI Investment will only be required to reimburse Goldman for its fees and expenses if the purchase price, as set forth in the definitive agreements, as the same may have been adjusted in accordance therewith, is greater than $15 million. Furthermore, such obligation would cease if definitive agreements are entered into between Goldman and WMI Investment with

---

[4] It should be noted that pursuant to the LLC Agreement, JPMC Wind Investment LLC, the managing member of the Portfolio Holding Company, has a right of first refusal to purchase WMI Investment's interest in the Portfolio Holding Company.

respect to the Wind Power Investment but the transaction is not consummated as a result of Goldman's material breach.

20. The terms of the Letter of Intent were negotiated in good faith and the preliminary, non-binding, terms and conditions of the proposed transaction, including the fees and expenses to be paid or reimbursed in connection therewith, are the most favorable of the proposals received by the Debtors to date. The Debtors submit that the "capped" amounts requested as fees and expenses are reasonable in comparison to the potential purchase price for the Wind Power Investment. Accordingly, the Debtors believe that the amount of the fees and expenses to be paid are reasonable in light of the opportunity to sell the Wind Power Investment to Goldman or another higher or better bidder.

21. Furthermore, the Debtors believe that it is reasonable to treat the indicative purchase price offered by Goldman as confidential information at this time pursuant to section 107 of the Bankruptcy Code.[5] The indicative purchase price offered by Goldman is commercially sensitive information which Goldman does not wish to disclose at this time. However, to the extent the parties determine, after the completion of due diligence, to proceed toward the consummation of a sale of the Wind Power Investment, the Debtors will disclose – in the very near term – the purchase price in their motion for approval of the sale and bidding procedures.

22. Based on the foregoing, WMI submits that the relief requested herein is necessary and appropriate, is in the best interests of its estate and creditors, and should be granted in all respects.

---

[5] An unredacted copy of the Letter of Intent will be available for the Court's review at the hearing to consider the Motion.

## Notice

23.     No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) counsel for the Creditors' Committee; and (iii) parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

## No Previous Request

24.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: September 4, 2009
      Wilmington, Delaware

                    /s/ *Andrew C. Irgens*
                    Mark D. Collins (No. 2981)
                    Chun I. Jang (No. 4790)
                    Andrew C. Irgens (No. 5193)
                    RICHARDS, LAYTON & FINGER, P.A.
                    One Rodney Square
                    920 North King Street
                    Wilmington, DE 19801
                    Telephone: (302) 651-7700
                    Facsimile: (302) 651-7701

                    – and –

                    Marcia L. Goldstein, Esq.
                    Brian S. Rosen, Esq.
                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone: (212) 310-8000
                    Facsimile: (212) 310-8007

                    ATTORNEYS TO THE DEBTORS
                    AND DEBTORS IN POSSESSION