IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | : Chapter 11 |
| WASHINGTON MUTUAL, INC., *et al.*,[1] | : Case No. 08-12229 (MFW) |
| Debtors. | : (Jointly Administered) |
| | : Ref. No. 1701 |
| | : Hearing Date: October 28, 2009 at 3:00 p.m. (ET) |
| | : Objection Deadline: October 21, 2009 at 4:00 p.m. (ET) |

**OBJECTION OF JPMORGAN CHASE BANK, N.A. TO THE MOTION
OF DEBTORS PURSUANT TO SECTIONS 105 AND 363 OF THE
BANKRUPTCY CODE FOR ORDER APPROVING PROCEDURES FOR THE
SALE OF CERTAIN INTELLECTUAL PROPERTY**

JPMorgan Chase Bank, N.A. ("JPMC"), by its undersigned attorneys, submits this objection to the Motion of Washington Mutual, Inc. ("WMI") and WMI Investment Corp. ("WMI Investment") (collectively, the "Debtors") dated October 7, 2009 for an Order pursuant to Sections 105 and 363 of the Bankruptcy Code for authorization to sell, and approval of procedures for the sale of, certain intellectual property (the "Motion"). In support of this objection, JPMC respectfully submits as follows:

**Preliminary Statement**

1. With their Motion, Debtors seek the Court's authorization to sell 448 domain names and 135 trademarks listed respectively in Exhibits A and B to the Motion (defined

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (a) Washington Mutual, Inc. (3725); and (b) WMI Investment Corp. (5395). The Debtors continue to share their principal offices with the employees of JPMorgan Chase located at 1301 Second Avenue, Seattle, Washington 98101.

{683.001-W0003564.}

therein as the "<u>Non-Core IP Assets</u>"),[2] which Debtors characterize as simply "property of the estate" against which "Debtors do not believe that any liens, *claims*, or encumbrances . . . exist." (Motion at ¶¶ 14, 22 (emphasis added).)

2. However, under settled principles of bankruptcy law, the right to seek a bankruptcy court's authorization to sell assets pursuant to Section 363 of the Bankruptcy Code requires, as a prerequisite, that the assets that the Debtors seek to sell are in fact established to be the property of the Debtors' estate.

3. If in fact the Debtors' rights in the assets in question are open to dispute—and, as demonstrated below, they undeniably are—then there must be a resolution of that dispute, establishing that the Debtors have such rights, before a sale of the assets is appropriate. Moreover, when there are substantial factual issues to be explored, including the history of payment for, and use of, the domain names and trademarks at issue here, then a Section 363 motion is not an available method to resolve these issues. Instead, such a dispute must be resolved by discovery and, if necessary, trial. Here, the ownership of the very assets that Debtors seek this Court's authorization to sell is in dispute between WMI and JPMC in: (a) *Washington Mutual, Inc.* v. *FDIC*, Civ. Action No. 1:09-cv-00533 (RMC) (D.D.C.) filed by the Debtors in federal court in the District of Columbia (the "<u>D.C. Action</u>"); (b) Adversary Proceeding No. 09-50551 (MFW) pending in the above-captioned Chapter 11 case (the "<u>JPMC Adversary Proceeding</u>"); and (c) Debtors' Chapter 11 Proceeding in which JPMC's Proof of Claim asserted ownership to all of the intellectual property used in WMB's banking operations ("<u>JPMC's Proof</u>

---

[2] Debtors state that they define the domain names and trademarks at issue in the Motion as "Non-Core IP Assets" because these domain names and trademarks "do not include domain names and trademarks containing the phrases 'Washington Mutual' or 'WaMu.'" (Motion at ¶ 8.) As explained below, however, the distinction between these "Non-Core IP Assets" and the remainder of the domain names and trademarks has nothing to do with the issues in dispute and does not salvage Debtors' Motion.

of Claim"). Moreover, merely two months ago, in an attempt to delay JPMorgan Chase & Co. ("JPMC & Co.") from registering certain trademarks, WMI affirmatively represented to the United States Patent and Trademark Office (the "USPTO") (i) that certain JPMC & Co. trademarks are similar to one of the trademarks over which WMI claims ownership (and by this Motion seeks the Court's authorization to sell), and (ii) that WMI's ownership of that trademark is in dispute in the JPMC Adversary Proceeding.

4. The present Motion must therefore be denied in its entirety, due to the fact that "Debtors have not met their burden of establishing that the [Non-Core IP Assets] are property of the estate under Section 363(b)" and "therefore are not permitted to sell" the Non-Core IP Assets pursuant to Section 363(f). *E.g.*, *In re Whitehall Jewelers Holdings, Inc.*, No. 08-11261 (KG), 2008 Bankr. LEXIS 2120, at *15–17 (Bankr. D. Del. July 28, 2008).

5. In addition, the procedure sought in Debtors' Motion to permit Debtors to sell any Non-Core IP Asset with a value of less than $10,000 (defined therein as a "De Minimis IP Asset"), without any further notice to any party (including JPMC) and with no order of this Court, directly conflicts with the Bankruptcy Code and recent Orders by this Court in other bankruptcy proceedings. Accordingly, Debtors' requested procedure for the sale of such intellectual property must be rejected.

## Factual Background

6. On September 25, 2008, the Office of Thrift Supervision (the "OTS") closed Washington Mutual Bank, Henderson, Nevada ("WMB"), the principal operating subsidiary of WMI, and directed the Federal Deposit Insurance Corporation (the "FDIC") to take possession of WMB in a receivership proceeding. Upon taking possession, also on September 25, 2008, the FDIC sold substantially all of the assets and certain liabilities of WMB to JPMC, pursuant to a Purchase and Assumption Agreement (the "P&A Agreement"). Under the P&A

Agreement, the FDIC transferred to JPMC "all right, title, and interest of the Receiver in and to all of the assets . . . of [WMB] whether or not reflected on the books of [WMB] as of Bank Closing." (P&A Agreement (JPMC Objection Exhibit 1) ¶ 3.1.)[3]

7. On September 26, 2008, the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") in the above-captioned proceeding.

8. On March 20, 2009, Debtors filed their complaint in the D.C. Action placing at issue a number of the assets JPMC acquired from the FDIC under the P&A Agreement. (Debtors' D.C. Action Complaint (JPMC Objection Exhibit 2).) On March 30, 2009, JPMC filed a motion to intervene in the D.C. Action and, in its First Amended Answer and Counterclaims in the D.C. Action on July 13, 2009, the FDIC named JPMC as a counterclaim-defendant. In JPMC's Answer, Crossclaims and Counterclaims in the D.C. Action, filed on September 4, 2009, JPMC answered the FDIC's Counterclaims, asserted counterclaims against the FDIC and asserted crossclaims against Debtors "to protect itself from the ongoing efforts of WMI to claim, as its own, assets that belong to JPMC" and to "ensure that [JPMC] and its subsidiaries are not divested of their assets and interests purchased in good faith from the FDIC-Receiver under Title 12 of the United States Code pursuant to the P&A Agreement." (JPMC's Answer, Crossclaims and Counterclaims (JPMC Objection Exhibit 3) ¶ 1.) JPMC asserted, *inter alia*, that "[t]hrough the P&A Agreement, JPMC acquired certain intangible assets previously held by WMB including but not limited to (a) intellectual property rights in . . . the trademarks." (*Id.* ¶¶ 43–44.) The court in the D.C. Action granted JPMC's Motion to Intervene on October 5, 2009. (Memorandum Opinion (JPMC Objection Exhibit 4).)

---

[3] References to "JPMC Objection Exhibit __" are to the exhibits to JPMC's Objection attached hereto.

9.  On March 24, 2009, JPMC filed the JPMC Adversary Proceeding in which JPMC requested declaratory relief requesting adjudication in the D.C. Action of the ownership of assets put at issue by Debtors in that action or, in the alternative, requesting that the Bankruptcy Court grant relief as to JPMC's interests therein including, *inter alia*, to ensure that JPMC is not divested of WMB assets and interests purchased in good faith from the FDIC. (JPMC's Adversary Proceeding Complaint (JPMC Objection Exhibit 5).) In Debtors' Answer and Counterclaims, filed on May 29, 2009, and in Debtors' Answer and Amended Counterclaims, filed September 11, 2009, Debtors asserted that WMI owned many of the assets that JPMC asserted that it acquired from the FDIC, including (a) eighty federal trademarks and applications registered to WMI, including the "W Logo," "WaMu," "Washington Mutual" and "wamu.com" for banking and other financial services, as well as trademarks registered in WMB's name (Debtors' Answer and Amended Counterclaims (JPMC Objection Exhibit 6) ¶¶ 81, 86, 183 & Ex. 3); (b) more than 140 other trademarks, which were used in "connection with various lines of business of the WaMu corporate family" (*id.* ¶ 83 & Ex. 4); and (c) approximately 1350 domain names that were used in "advertising campaigns . . . to provide information to customers regarding the products and services relevant to such subsidiary's business" (*id.* ¶ 85). Relying on their assertion of ownership over the trademarks and domain names, Debtors further alleged that any continued use by JPMC of the trademarks and domain names at issue constitutes trademark infringement in violation of the Lanham Act as well as common law trademark infringement. (*Id.* ¶¶ 81–92, 178–191.)

10.  In JPMC's Answer to Defendants' Amended Counterclaims, filed on September 21, 2009, JPMC denied WMI's assertion of ownership over these trademarks and domain names (JPMC's Answer to Defendants' Amended Counterclaims (JPMC Objection

Exhibit 7) ¶¶ 81, 83, 85) and asserted an affirmative defense that "JPMC owns the trademarks and domain names, or in the alternative, has a license to use the trademarks and domain names" (*id.* at 30).

11.     On March 30, 2009, JPMC filed its Proof of Claim in which it noted that Debtors filed the D.C. Action Complaint "placing at issue a number of the claims and assets JPMC[] acquired from the FDIC under the P&A Agreement" and that JPMC's Complaint in the JPMC Adversary Proceeding "before the Bankruptcy Court [was] seeking, among other things, declaratory relief regarding a number of the assets at issue in the [D.C.] Action and to interplead any amounts that may be due from JPMC[] to the Debtors." (JPMC Intellectual Property Proof of Claim (JPMC Objection Exhibit 8) at 1.) As a result, JPMC's Proof of Claim "reserve[d] all of its rights and remedies against the Debtors, including the right to continue the [D.C.] Action and the [JPMC] Adversary Proceeding [and] to commence other actions or proceedings." (*Id.* at 2.)

12.     In JPMC's Proof of Claim, JPMC asserted claims to, among other assets and claims, the domain names, patents and trademarks (collectively defined therein as the "IP Property") that were registered in the name of WMI, but "were, or may have been, used extensively, if not exclusively, in the banking operations of WMB." (*Id.*) Therefore, as JPMC's Proof of Claim asserted, the IP Property constituted "assets of WMB at the time JPMC acquired WMB's assets" from the FDIC and are "assets belonging to JPMC as the transferee of WMB's assets." (*Id.* at 2–3.) JPMC's Proof of Claim attached schedules and exhibits listing the IP Property of WMB that JPMC acquired pursuant to the P&A Agreement. Notably, JPMC's Proof of Claim asserted ownership over all 135 trademarks listed in Exhibit B to Debtors' Motion and

all but four of the 448 domain names listed in Exhibit A to Debtors' Motion. (*Compare id.*, Schedule A and Exs. A & B, *with* Motion, Exs. A & B.)

13. Most recently, on July 17, 2009 and August 24, 2009 respectively, WMI filed two notices of opposition before the Trademark Trial and Appeal Board of the USPTO in which it opposed applications by JPMC & Co. seeking trademark registration of the marks "Chase What Matters" and "Protection Matters." (Copies of WMI's Notices of Opposition are attached hereto as JPMC Objection Exhibits 9 and 10.) In its Notices of Opposition, WMI claimed ownership over two trademark registrations for the mark "Protecting What Matters," and asserted that the use of JPMC & Co.'s two marks will create a likelihood of confusion between JPMC & Co.'s marks and the claimed mark "Protecting What Matters." (JPMC Objection Exhibit 9; JPMC Objection Exhibit 10.) However, WMI acknowledged in its Notices of Opposition that "several of [WMI's] subsidiaries were seized by the FDIC . . . and were subsequently purchased from the FDIC" by JPMC, and explicitly stated that the "Delaware Bankruptcy Court is *situs* of claims regarding ownership of certain intellectual property assets of [WMI], including [WMI's] Mark,[4] between [JPMC] and [WMI], *JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc.*, Adversary Proceeding No. 09-50551-MFW (Bankr. Del. Mar. 24, 2009)." (JPMC Objection Exhibit 9 at ¶¶ 7–9; JPMC Objection Exhibit 10 at ¶¶ 8–10.) Thus, as WMI readily concedes, WMI and JPMC are currently litigating the ownership over Washington

---

[4] In fact, the trademark "Protecting What Matters" relied on by WMI in its opposition to JPMC & Co.'s trademark application was included in the list of trademarks attached to JPMC's Proof of Claim, and was included in the list of trademarks attached as Exhibit 4 to Debtors' Counterclaims in the JPMC Adversary Proceeding, yet Debtors nonetheless include this trademark among the Non-Core IP Assets that they claim is property of the estate and seek the Court's authorization to sell pursuant to the present Motion.

Mutual intellectual property in the JPMC Adversary Proceeding, including the same "Non-Core IP Assets" that WMI now seeks the Court's authorization to sell.[5]

14. Notwithstanding the pending litigation surrounding the ownership of the intellectual property used in WMB's banking operations and Debtors' own acknowledgement thereof, on October 7, 2009, Debtors chose to bring the pending motion in order to sell assets that they assert are "property of the estate," concerning which "Debtors do not believe that any liens, *claims*, or encumbrances . . . exist." (Motion at ¶¶ 14, 22 (emphasis added).)[6] Regardless of the plausibility of Debtors' belief, their position is legally and factually untenable.

## OBJECTION

### I. Debtors' Motion Must Be Denied Because Whether the Domain Names and Trademarks They Seek to Sell are Property of the Estate Remains in Dispute.

15. As Debtors acknowledge at the outset of their Motion (Motion at ¶ 14), subject to the requirements of Section 363 of Title 11, the trustee, or debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, *property of the estate*." 11 U.S.C. § 363(b)(1) (emphasis added). Here, Debtors' Motion must be denied because Section 363 of Title 11 provides no authority for a court to allow a debtor to

---

[5] On August 26, 2009, JPMC & Co. filed a successful motion to suspend WMI's opposition to its application for registration of the "Chase What Matters" trademark in deference to the pending D.C. Action and JPMC Adversary Proceeding because those litigations "include the same disputed issue and seek the same remedy, namely the ownership of the trademarks at issue, including ownership of Opposer's Mark [Protecting What Matters], among other issues and remedies." (A copy of JPMC & Co.'s Motion to Suspend is attached hereto as JPMC Objection Exhibit 11.) By Order dated September 25, 2009, the Trademark Trial and Appeal Board suspended the proceedings of the opposition to the "Chase What Matters" application pending the final disposition of the JPMC Adversary Proceeding. (A Copy of the Order of the Trademark Trial and Appeal Board is attached hereto as JPMC Objection Exhibit 12.) On October 2, 2009, JPMC & Co. similarly moved to suspend the later-filed "Protection Matters" opposition (a copy of JPMC & Co.'s Motion to Suspend is attached hereto as JPMC Objection Exhibit 13), which has not been ruled on by the Trademark Trial and Appeal Board. Neither of these motions was opposed by WMI, nor did WMI dispute the underlying basis for these motions.

[6] By their motion, the Debtors also request that the Court approve certain proposed procedures to govern the sale of the Non-Core IP Assets and authorize the sales free and clear of any and all liens. Among other things, for sales of De Minimis IP Assets, consisting of a transfer of less than $10,000 in total consideration, Debtors seek approval of procedures which would require no notice to the parties and no Court order. (Motion at ¶¶ 11–12, 20.) For all sales, Debtors seek to have the Court waive the 10-day stay required under Bankruptcy Rule 6004(h). (Motion at ¶¶ 26–27.)

sell "assets" where there is a dispute whether these assets are in fact property of the Debtors' estate. As demonstrated above, Debtors seek to rely on Section 363 of Title 11 to sell the same domain names and trademarks that are the subject of the D.C. Action, the JPMC Adversary Proceeding and JPMC's Proof of Claim. Moreover, when WMI thought it advantageous to do so, WMI affirmatively represented to the USPTO that the "Delaware Bankruptcy Court is *situs* of *claims* regarding *ownership* of certain intellectual property assets of" WMI, including the same assets it now seeks to sell under the guise of Section 363. (JPMC Objection Exhibit 9 at ¶ 9; JPMC Objection Exhibit 10 at ¶ 10 (emphasis added).)

16. Under settled law, "a bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether the property is property of the estate." *In re Whitehall Jewelers Holdings, Inc.*, 2008 Bankr. LEXIS 2120, at *9–10 (Bankr. D. Del. July 28, 2008) (collecting cases); *see also In re Atl. Gulf Cmtys. Corp.*, 326 B.R. 294, 298–99 (Bankr. D. Del. 2005) ("Implicit within the statutory grant of authority to sell property under section 363 . . . is the requirement that the estate actually have an interest in the property to be sold.") (Walrath, J) (citing *Cinicola v. Scharffenberger*, 248 F.3d 110, 121 (3d Cir. 2001)). Thus, "even before one gets to Section 363(f) . . . the estate [must] demonstrate that the property it proposes to sell is 'property of the estate.'" *In re Popp*, 323 B.R. 260, 266 (9th Cir. 2005); *see also In re Coburn*, 250 B.R. 401, 403 (Bankr. M.D. Fla. 1999). As a result, because the Debtors "have not met their burden of establishing that the [Non-Core IP Assets] are property of the estate under Section 363(b)," they "therefore are not permitted to sell" the intellectual property pursuant to Section 363(f). *In re Whitehall Jewelers Holdings*, 2008 Bankr. LEXIS 2120, at *17.

17. Accordingly, the "Debtors have . . . utilized the wrong procedural tool" with their present attempt to resolve the ownership issues regarding the disputed intellectual

property under the guise of a Section 363 motion, rather than continuing to litigate the merits of the claims at issue in the pending actions. *Id*; *see also In re Schugg*, No. 2-04-19091-6BN, 2006 U.S. Dist. LEXIS 33259, at *36–37 (D. Ariz. May 22, 2006) (dismissing appellant's claim that bankruptcy court should have permitted the sale because "[h]ad the bankruptcy court chosen to proceed with a sale under 11 U.S.C. § 363(f)(4) prior to the resolution of the adversary proceeding in this Court, it would have created the potential of inconsistent rulings with respect to title and access to the property at issue").

18. Debtors' portrayal of the Motion as innocuous, by characterizing the intellectual property at issue as "Non-Core IP Assets" that do "not include domain names and trademarks containing the phrases 'Washington Mutual' or 'WaMu'" (Motion at ¶ 8), seems disingenuous. Debtors' representation belies the significant legal issues concerning rightful ownership of these assets in the pending litigations. As an initial matter, JPMC's Proof of Claim claims ownership of *all* the intellectual property assets that "were, or may have been, used extensively, if not exclusively, in the banking operations of WMB," which include all of the 135 trademarks listed in Exhibit B to Debtors' Motion and all but four of the 448 domain names that Debtors now seek to sell. (*Compare* JPMC Intellectual Property Proof of Claim (JPMC Objection Exhibit 8), Schedule A and Exs. A & B, *with* Motion, Exs. A & B.) Likewise, WMI has acknowledged that the Non-Core IP Assets are in dispute because, as it explained to the USPTO, the "Delaware Bankruptcy Court is *situs* of claims regarding ownership of certain intellectual property assets of Opposer, including Opposer's Mark"—the alleged Non-Core IP Asset "Protecting What Matters." (JPMC Objection Exhibit 9 at ¶ 9; JPMC Objection Exhibit 10 at ¶ 10; *see also* Motion, Ex. B at 13.) Thus, WMI has signed court filings attesting to the fact that the parties are disputing the ownership of *all* of the trademarks—even those, such as

"Protecting What Matters," that do not contain some form of the "WaMu" name.[7] As a result, Debtors cannot use the instant motion under Section 363 to seek the right to sell the Non-Core IP Assets because Debtors have admitted that ownership of the domain names and trademarks at issue is subject to dispute.

## II. In Addition, Debtors' Proposed De Minimis Sale Procedures Disregard the Prescribed Requirements under the Bankruptcy Code and this Court's Directives that Notice Must Always be Provided to the Court and All Parties.

19. In the Motion, the Debtors seek approval of procedures in connection with the sale of the so-called De Minimis IP Assets (the "De Minimis Sale Procedures"). If approved, the De Minimis Sale Procedures would allow the Debtors to sell any De Minimis IP Asset with a value of less than $10,000 (individually or in the aggregate) with no further notice to any party and with no order of this Court. Such an approach is in direct conflict with Bankruptcy Code Section 363 and Bankruptcy Rule 6004 which require notice and a hearing prior to a sale of assets outside the ordinary course of business. *See* 11 U.S.C. § 363(b)(1); Fed. R. Bankr. P. 6004 (a)–(e). Indeed, this Court has repeatedly refused (twice in the last seven months alone) to permit such sale procedures to be approved, correctly noting that every sale under Section 363 of the Bankruptcy Code is required to be conducted with notice to parties in interest and approved pursuant to an order of the Court. *See In re Qimonda Richmond, LLC*, Case No. 09-10589 (MFW), Order Establishing Procedures for the Sale or Abandonment of Miscellaneous Assets, entered March 20, 2009 [Docket No. 158] (requiring debtors to provide, among other things, ten

---

[7] Furthermore, Debtors' attempted distinction between the "Non-Core IP Assets" and the trademarks that contain the terms "Washington Mutual" or "WaMu" carries no weight, as even a cursory review of the trademarks listed in Exhibit B to the Motion that Debtors seek this Court's authorization to sell will demonstrate. The list of "Non-Core IP Assets" attached to Debtors' Motion includes, by way of example, the following trademarks: (a) "I'M WITH THE BANK," (b) "SMILING ALL THE WAY TO THE BANK" and (c) "TRUSTED BANKING." (Motion, Ex. B at 8–9, 17, 19.) It is obvious that these trademarks would have been of no use in WMI's activities as a holding company, but rather—as JPMC asserted in its Proof of Claim—were "used extensively, if not exclusively, in the banking operations of WMB."

(10) days' notice for all miscellaneous asset sales, regardless of value, despite debtors' request for no notice or approval by order for asset sales valued at less than $100,000); *In re Accredited Home Lenders Holding Co.*, Case No. 09-11516 (MFW), Order Granting Debtors' Motion for an Order Approving Sale of De Minimis Assets, entered June 8, 2009 [Docket No. 141] (same, but requiring five (5) days' notice of proposed sale). (Copies of the respective orders are attached hereto as JPMC Objection Exhibits 14 and 15.)[8] Accordingly, Debtors' requested procedure for the sale of De Minimis Assets must be rejected.

## CONCLUSION

For the foregoing reasons, Debtors' Motion should be denied in its entirety.

Dated: October 21, 2009
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_____
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4336)
919 Market Street Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

– and –

Robert A. Sacks
Hydee R. Feldstein
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California 90067
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

---

[8] At hearings to consider the respective motions in *Qimonda* and *Accredited*, the Court specifically noted on the record that notice to parties in interest and approval of the sale by order of the Court were specifically required for any sale under Section 363 of the Bankruptcy Code. (Relevant portions of the hearing transcripts related to the *Qimonda* and *Accredited* sale motions, respectively, are attached hereto as JPMC Objection Exhibits 16 and 17.)

Bruce E. Clark
Stacey R. Friedman
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Counsel for JPMorgan Chase Bank, National Association*