# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | : Chapter 11 |
| WASHINGTON MUTUAL, INC., et al.,[1] | : Case No. 08-12229 (MFW) |
| Debtors. | : Jointly Administered |
| | : Related Document Nos. 1834, 1872 |

## STATEMENT OF BANK BONDHOLDERS IN RESPONSE TO (1) MOTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION FOR AN ORDER MODIFYING THE AUTOMATIC STAY AND (2) THE DEBTORS' OBJECTION TO THE MOTION

The holders of senior notes ("Senior Notes") issued by Washington Mutual Bank ("WMB") listed below (the "Bank Bondholders")[2] file this statement in response to (1) the Motion of the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank, for an Order Modifying the Automatic Stay (Dkt. No. 1834) ("Motion"), and (2) the Debtors' Objection to the Motion (Dkt. No. 1872) ("Objection").

In the Motion, the Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Washington Mutual Bank ("WMB") seeks to modify the automatic stay, to the extent necessary,

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395). The Debtors continue to share their principal offices with the employees of JPMorgan Chase located at 1301 Second Avenue, Seattle, Washington 98101.

[2] The Bank Bondholders are Bank of Scotland plc; HFR ED Select Fund IV Master Trust; Lyxor/York Fund Limited; Marathon Credit Opportunity Master Fund, Ltd.; Marathon Special Opportunity Master Fund, Ltd.; Permal York Ltd.; The Värde Fund, L.P.; The Värde Fund VI-A, L.P.; The Värde Fund VII-B, L.P.; The Värde Fund VIII, L.P.; The Värde Fund IX, L.P.; The Värde Fund IX-A, L.P.; Värde Investment Partners (Offshore) Master, L.P.; Värde Investment Partners, L.P.; York Capital Management, L.P.; York Credit Opportunities Fund, L.P.; York Credit Opportunities Master Fund, L.P.; York Investment Master Fund, L.P.; York Select, L.P.; and York Select Master Fund, L.P.

so that the FDIC may exercise its contractual right under Section 9.5 of the Purchase and Assumption Agreement between JPMorgan Chase Bank, N.A. ("JPMC"), the FDIC, and the FDIC in its corporate capacity ("P&A Agreement") to direct JPMC to return to the FDIC certain disputed deposit balances ("Disputed Deposit Balances") held by JPMC. The Motion should be granted.

In filing this Motion, the FDIC is not seeking relief from the stay to effect a setoff. Rather, it simply is seeking relief—if necessary—to exercise its contractual rights with a third party (JPMC) so that its potential rights of setoff will be preserved, pending the adjudication of its and everyone else's claims. The Disputed Deposit Balances will be preserved. Put simply, the relief the FDIC seeks will preserve everyone's rights pending discovery and resolution of all the claims and issues.[3]

The Debtors' arguments in response to the Motion are meritless. Those arguments fall into three principal categories.

I. The Debtors' principal response, as it has been in so many other pleadings, is to cast aspersions on the motives of others. Here, it attacks the FDIC, a government agency with duties as receiver to WMB's creditors, who are owed billions of dollars, accusing the FDIC of "suddenly chang[ing] its course." Objection ¶ 4. That is flatly wrong and unjustified. When, prior to the filing of this Chapter 11 case, the FDIC sold substantially all of the assets of WMB to JPMC, it expressly reserved the right to take back the Disputed Deposit Balances. Thus, Section

---

[3] As the Court is well aware, both the nature of and the rights to the Disputed Deposit Balances are hotly contested, with the Debtors claiming ownership—and seeking turnover—of the funds as deposits, and JPMC and the FDIC challenging the characterization of the balances as deposits and asserting that, even if they are bona fide deposits, they are not subject to turnover because they are subject to substantial offsetting claims of both JPMC and the FDIC, as receiver for WMB. None of these issues regarding the Disputed Deposit Balances has been resolved, and they cannot be absent discovery and a full factual record.

9.5 of the P&A Agreement between the FDIC and JPMC—an agreement to which the Debtors are not a party and have no standing to attack—provides as follows:

> At any time, the Receiver or the Corporation may, in its discretion, determine that all or any portion of any deposit balance assumed by the Assuming Bank pursuant to this Agreement does not constitute a "Deposit" (or otherwise, in its discretion, determine that it is the best interest of the Receiver or Corporation to withhold all or any portion of any deposit), and may direct the Assuming Bank to withhold payment of all or any portion of any such deposit balance. . . . At the direction of the Receiver or the Corporation, the Assuming Bank shall return all or any portion of such deposit balance to the Receiver or the Corporation, as appropriate, and thereupon the Assuming Bank shall be discharged from any further liability to such depositor with respect to such returned deposit balance.

P& A Agreement, § 9.5. And, after the Debtors filed their Chapter 11 petitions and sought turnover from JPMC of the Disputed Deposit Balances, the FDIC repeatedly reserved its contractual rights under Section 9.5 of the P&A Agreement. *See, e.g.*, Memorandum of Law of Cross-Claim Defendant Federal Deposit Insurance Corporation, As Receiver, in Opposition to Plaintiff's Motion for Summary Judgment, Dkt. 97, Adv. Proc. No. 09-50934 (Bankr. D. Del. July 24, 2009), at 3; FDIC Proof of Claim, Case No. 08-12229 (Bankr. D. Del. Mar. 26, 2009); FDIC's Statement in Response and Limited Objection to Motion of Debtors Pursuant to Sections 105(a), 361, 362 and 542(b) of the Bankruptcy Code Seeking Approval of a Stipulation and Agreement Concerning Deposit Accounts at JPMorgan Chase Bank, National Association, Dkt. 104, Case No. 08-12229 (Bankr. D. Del. Oct. 20, 2008).

Indeed, the Debtors have no one but themselves to blame for this Motion. It was the Debtors who argued that the FDIC had to do more than say it was reserving its rights. It was the Debtors who argued that, unless the FDIC actually sought to exercise its rights under Section 9.5 to take back the Disputed Deposit—before any determination has been made on the factual issues surrounding the balances—this Court could entirely disregard the FDIC's rights preserved

by Section 9.5, grant summary judgment in Debtors' favor in the turnover action, and thereby eliminate the FDIC's potential rights of setoff:

> To say that the FDIC 'may' invoke [Section 9.5] is to say that it has not actually done so. Thus, even assuming that the FDIC would 'own' the Deposits if it were to exercise any authority to direct JPMC to withhold those funds, the fact is that it has not exercised any such authority and has indicated its reluctance to do so.... The FDIC's Opposition again merely raises the specter of Section 9.5, but does not purport to assert such putative rights. Especially given that the provision in question has no term limitation, it cannot be that the mere existence of this purported FDIC right bars withdrawal of funds from deposits assumed by JPMC.

Plaintiff's Reply Brief in Support of the Motion of Plaintiffs for Summary Judgment, Dkt. 163, Adv. Proc. No. 09-50934 (Bankr. D. Del. Sept. 18, 2009), at 36-37. The Debtors should not be heard to complain because the FDIC has done exactly what the Debtors said the FDIC had to do to preserve its setoff rights.[4]

II. The Debtors claim that allowing the FDIC to exercise its contractual rights to take back the Disputed Deposit Balances will result "in significant prejudice to the Debtors' estates." Objection ¶ 4. But in fact, all the FDIC's motion—which specifies that the FDIC is *not* seeking permission to effect any setoff at this time—seeks to do is to maintain the status quo until the parties' disputed claims and rights are resolved. The Debtors argue that "if [the FDIC is] allowed to setoff, some portion of the Deposits will inure to the benefit of the FDIC (assuming it has any allowable claims) to the detriment of each of the Debtors' legitimate creditors," but the Debtors' own statement concedes that this result will occur only if and to the extent that the FDIC is ultimately determined to hold allowable claims against the Debtors. *Id.* If the FDIC has allowable claims against the Debtors, it can hardly constitute harm for those claims to be setoff against any amounts that the FDIC may owe to the Debtors. After all, the

---

[4] Ironically, having goaded the FDIC into bringing the Motion, Debtors now argue that by doing so the FDIC has conceded that the Disputed Deposit Balances are in fact "deposits." Objection ¶¶ 1, 33. But the FDIC has specifically preserved this issue as well. Motion ¶ 19 n.7.

- 4 -

Bankruptcy Code expressly preserves the rights of a creditor to offset mutual claims and debts between it and its debtor. 11 U.S.C. § 553. Moreover, the creditor here—the FDIC, as receiver of WMB—is itself a debtor with billions of dollars of unpaid creditors of its own.

Conversely, if, as the Debtors claim to be the case, the Disputed Deposit Balances are determined to be valid deposits and the FDIC is determined to hold no allowable claim (nor is JPMC or anyone else who might have setoff rights such as the Bank Bondholders), the balances will be paid to the Debtors. In short, the legitimate interests of the Debtors will be fully preserved.

If, on the other hand, the relief the FDIC seeks is not granted, the FDIC, the WMB Receivership, and its legitimate creditors, such as the Bank Bondholders, could be irreparably harmed. If the Court denies the Motion, preventing the FDIC from exercising its rights to take back the Disputed Deposit Balances, and then grants the Debtors turnover, the FDIC's right to setoff its claims against the Disputed Deposit Balances may be lost forever. If that were to happen and the Court were not otherwise to take steps to protect the FDIC's potential rights of offset, the claims of the WMB Receivership, which are secured by the FDIC's rights of set off against the Disputed Deposit Balances, could be converted to general unsecured claims, which almost certainly will not be paid in full. That would be enormously prejudicial to the FDIC and to the Bank Bondholders and the other creditors of WMB. In short, it is not the FDIC, but rather the Debtors, that are seeking to game the system and to create a windfall for themselves to which they are not entitled.

III. Finally, the Debtors' substantive arguments likewise lack merit. Desperate to defeat the FDIC's setoff rights because they know that such rights defeat their claim for turnover, *see* 11 U.S.C. § 542(b) ("an entity that owes a debt that is property of the estate and that is

matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, *except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor*") (emphasis added), the Debtors attempt to argue that the FDIC's setoff rights are prohibited by Section 553. These arguments fail.

First, the Debtors claim that there is no mutuality between any claim that the FDIC may have on behalf of the WMB Receivership against Debtors and any debt that may be owed to Debtors from the Disputed Deposit Accounts. The Debtors argue that the FDIC, through Section 9.5, has set up an impermissible "triangular setoff." Objection ¶ 22. The Debtors are wrong. A "triangular" set-off occurs where a creditor attempts to set off its debt to the debtor with the latter's debt to a third party. *See In re United Sciences of America, Inc.*, 893 F.2d 720, 723 (5th Cir. 1990) (citing *In re Elcona Homes Corp. v. Green Tree Acceptance, Inc.*, 863 F.2d 483, 486 (7th Cir. 1988)). That is not the case here. The FDIC is seeking to preserve its right to setoff *its own claims*, as receiver of WMB, against *its own debts* (if any) to the Debtors. The FDIC, as receiver for WMB, has claims against the Debtors, and through its ability to exercise its rights under Section 9.5, the FDIC as receiver for WMB will owe any debt that may be owed to Debtors from these Disputed Account Balances. Thus, the requirement of mutuality—that "each party . . . own his claim in his own right severally, with the right to collect in his own name [and] in his own right and severally"—is met. *See In re United Sciences of America, Inc.*, 893 F.2d at 723 (alteration in original) (internal quotation omitted).

Second, the Debtors argue that the FDIC's rights to setoff are barred by Section 553(a)(3) because, in exercising its Section 9.5 rights, the FDIC will have incurred the debt "for the purpose of obtaining a right of setoff against the debtor." Objection ¶ 23. That is also wrong. Section 553(a)(3)(C) states that "this title does not affect any right of a creditor to offset a mutual

- 6 -

DOCS_DE:154922.1

debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that . . . the debt owed to the debtor by such creditor was incurred by such creditor—after 90 days before the date of the fling of the petition . . . for the purpose of obtaining a right of setoff against the debtor . . . ." 11 U.S.C. § 553(a)(3)(C). As the statutory language and the Debtors' own case law make clear, this provision is "designed to prevent a bank from undertaking a build-up of the debtor's account in order to secure a preference." *In re United Sciences of America, Inc.*, 893 F.2d at 725 (citing 4 Collier § 553.15[3])); *see also In re Dillard Ford, Inc.*, 940 F.2d 1507, 1513 (11th Cir. 1991) ("The section 553(a)(3) exception to setoff prevents the courts from rewarding creditors who persuade a debtor to engage in conduct which has the effect of impermissibly improving the creditor's position among the other creditors."); *In re Bohlen Enters., Ltd.*, 78 B.R. 556, 560-61 (Bankr. N.D. Iowa 1987) (noting that "[i]f the deposits are not accepted in the ordinary course of business, or are procured, accepted, or 'built up' for the real purpose of allowing the bank to obtain a setoff, the deposits will be considered preferential in effect and the right of setoff is lost").

Here, to the extent the Disputed Balance Accounts represent genuine deposits of funds by WMI into one or more accounts at WMB, the debt owed to WMI was "incurred" by WMB when WMI, acting out of its own volition, made the deposits. Even if those funds were deposited by WMI with WMB within 90 days of the petition date (and that has not been established), there is no allegation that WMB accepted the deposits, outside the ordinary course, "for the purpose of obtaining a right of setoff against" the Debtors. Accordingly, WMB did not incur any debt for the purpose of creating setoff. By its terms, Section 553(a)(3) does not apply.

- 7 -

DOCS_DE:154922.1

That the FDIC, as receiver of WMB, is now seeking to take back the Disputed Deposit Balances is irrelevant for purposes of Section 553(a)(3). That provision speaks to when the debt owed to the debtor was "incurred," not when it may have been transferred or taken back by the creditor. Indeed, in this critical respect, the language of Section 553(a)(3) is entirely different from that of Section 553(a)(2), which precludes setoff when the "*claim* [against the Debtor is] transferred, by an entity other than the debtor, to such creditor" after 90 days before the bankruptcy filing. 11 U.S.C. § 553(a)(2). The omission of similar language in Section 553(a)(3) is thus all the more telling. *See, e.g., Russello v. United States*, 464 U.S. 16, 23 (1983) ("[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion"); *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994) (recognizing, and applying to the interpretation of the Bankruptcy Code, the principle of statutory construction recognized in *Russello*).

In short, Section 553(a)(3)(C) is concerned with the situation in which the debt to the debtor is in the first instance incurred "for the purpose" of obtaining setoff rights. As explained above, that is simply not the case here.

Finally, the Debtors argue that because much of the Disputed Deposit Balances may have been in the possession of WMBfsb at the time that WMB went into receivership—having allegedly been moved by WMI from WMB to WMBfsb a few days earlier—the FDIC has no setoff rights against those assets. The Debtors' argument drips with irony. The Debtors criticize the FDIC for seeking to exercise its contractual rights under Section 9.5 of the P&A Agreement to take back the Disputed Deposit Balances from JPMC in order to preserve the FDIC's setoff rights; yet, they view as totally legitimate WMI's purported transfer of the same Disputed

- 8 -

Deposit Balances from WMB to WMBfsb on the eve of the commencement of the bankruptcy and receivership proceedings for the evident purpose of avoiding setoff.[5] Brief in Support of the Motion of Plaintiffs for Summary Judgment, Dkt. 15, Adv. Proc. No. 09-50934 (Bankr. D. Del. May 19, 2009), at 11 ("WMI senior management directed treasury personnel to transfer the maximum available funds" in order to "address concerns regarding WMB's liquidity.").

In any event, the Debtors' argument is baseless. As the opposition briefs to the Debtors' Motion for Summary Judgment in the Turnover Action make clear, there are a myriad of factual issues surrounding the alleged deposits at WMBfsb, including (1) whether an effective transfer from WMB to WMBfsb occurred, and (2) if so, whether such transfer is avoidable by the FDIC as receiver, on fraudulent conveyance or other grounds, such that the assets should be returned to the WMB Receivership. *See, e.g.*, Memorandum of Law of Cross-Claim Defendant Federal Deposit Insurance Corporation, As Receiver, in Opposition to Plaintiff's Motion for Summary Judgment, Dkt. 97, Adv. Proc. No. 09-50934 (Bankr. D. Del. July 24, 2009), at 16-17; Opposition of Defendant JPMorgan Chase Bank, National Association to Plaintiffs' Motion for Summary Judgment, Dkt. 102, Adv. Proc. No. 09-50934 (Bankr. D. Del. July 24, 2009), at 17-28. While the Debtors would like this Court simply to accept Debtors' view of the world, these are all material issues of disputed fact as to which no determination has yet been made. The

---

[5] Moreover, with respect to all of the Disputed Account Balances, there is no question that mutuality between WMB and WMI unquestionably existed until just days before the bankruptcy when (1) WMI—not WMB—purported to move the purported deposits to WMBfsb, and (2) the FDIC was appointed receiver and sold WMB and WMBfsb to JPMC. As to the first event, the actor was WMI. As to the second event, the FDIC sold the assets and liabilities of WMB to JPMC, but expressly maintained its interest by providing in Section 9.5 that FDIC could take back the debt (and the associated asset). There is nothing in Section 553 that suggests it was intended to allow Debtors to avoid legitimate set off claims by manipulating its accounts immediately before filing bankruptcy or that a creditor of a Debtor may not preserve its rights to setoff.

FDIC's Motion should not be denied, and the Debtors' turnover motion should not be granted, on the basis of Debtors' unproven allegations.

## Conclusion

For the reasons stated herein and in the Motion, the Motion should be granted.

DATED: November 17, 2009

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

_____
Laura Davis Jones
Alan Kornfeld
Timothy P. Cairns
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400


Philip D. Anker  (367957)
WILMER CUTLER PICKERING HALE &
DORR LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

Russell J. Bruemmer (289074)
Gianna Ravenscroft (487712)
Nancy L. Manzer (421144)
Lisa Ewart (497290)
WILMER CUTLER PICKERING HALE &
DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000