UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------ x
In re                                            :   Chapter 11
                                                 :
                                                 :   Case No. 08-12229 (MFW)
WASHINGTON MUTUAL, INC., et al.,[1]              :
                                                 :   Jointly Administered
          Debtors.                               :
                                                 :   Hearing Date: November 24, 2009 at 2:00 p.m. (EST)
------------------------------------------------ x

# OBJECTION OF THE WASHINGTON MUTUAL, INC. NOTEHOLDERS GROUP TO THE MOTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR WASHINGTON MUTUAL BANK, FOR AN ORDER MODIFYING THE AUTOMATIC STAY AND JOINDER IN THE DEBTORS' OBJECTION

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

## TABLE OF CONTENTS

|     |     | Page |
| --- | --- | ---: |
| PRELIMINARY STATEMENT | | 1 |
| FACTUAL BACKGROUND | | 2 |
| ARGUMENT | | 4 |
| I. | THE FDIC CANNOT PREVAIL ON THE MERITS | 6 |
| | A. The FDIC Has No Setoff Rights | 6 |
| | B. Section 9.5 of the P&A Agreement Does Not Apply to the WMB fsb Deposits | 10 |
| II. | THE DEBTORS WILL BE SUBSTANTIALLY PREJUDICED AND THE BALANCE OF HARDSHIPS WEIGHS HEAVILY AGAINST MODIFYING THE STAY | 10 |
| CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

## CASES

Borman v. Raymark Indus., Inc., 946 F.2d 1031 (3d Cir. 1991) ............................................. 4

In re Blanton, 105 B.R. 321, 337 (Bankr. E.D. Va. 1989) .................................................... 9

In re Colonial Realty Co., 980 F.2d 125 (2d Cir. 1992) ....................................................... 5

In re Cont'l Airlines, 134 F.3d 536 (3d Cir. 1998) ............................................................... 4

Elcona Homes Corp. v. Green Tree Acceptance, Inc., 863 F.2d 483 (7th Cir. 1988) ........... 8

In re First City Asset Servicing Co., 158 B.R. 78 (Bankr. N.D. Tex. 1993) ........................ 5

In re Garden Ridge Corp., 338 B.R. 627 (Bankr. D. Del. 2006), aff'd, 399 B.R. 135
    (D.Del. 2008) ............................................................................................................ 6, 7

Gross v. Bell Sav. Bank, 974 F.2d 403 (3d Cir. 1992) ......................................................... 5

In re Lane, 136 B.R. 319 (D. Mass. 1992) ........................................................................... 5

In re Lykes Bros. S.S. Co., 217 B.R. 304 (Bankr. M.D. Fla. 1997) ................................... 14

Mar. Elec. Co. v. United Jersey Bank, 959 F.2d 1194 (3d Cir. 1991) ................................. 4

In re Metro. Int'l, Inc., 616 F.2d 83 (3d Cir. 1980) ............................................................ 13

Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Prot., 474 U.S. 494 (1986) ................. 4

In re Papercraft Corp., 127 B.R. 346 (Bankr. W.D. Pa. 1991) ............................................. 6

In re George Ruggiere Chrysler-Plymouth, Inc., 727 F.2d 1017 (11th Cir. 1984) .............. 9

In re RNI Wind Down Corp., 348 B.R. 286 (Bankr. D. Del. 2006) ............................... 5, 11

In re Semcrude, 399 B.R. 388 (Bankr. D. Del. 2009) ............................................. 6, 7, 8, 10

In re Sonnax Indus., Inc., 907 F.2d 1280 (2d Cir. 1990) ..................................................... 5

In re S. Indus. Banking Corp., 809 F.2d 329 (6th Cir. 1987) ............................................... 9

In re United Sciences of Am., Inc., 893 F.2d 720 (5th Cir. 1990) ....................................... 8

In re U.S. Aeroteam, Inc., 327 B.R. 852 (Bankr. S.D. Ohio 2005) ...................................... 8

In re Wheeling-Pittsburgh Steel Corp., 67 B.R. 735 (W.D. Pa. 1986) ............................................. 4

In re W.R. Grace & Co., 2007 WL 1129170 (Bankr. D. Del. Apr. 13, 2007) ...................... 5, 11, 13

**STATUTES**

11 U.S.C. § 362(a)(3) ............................................................................................................... 4

11 U.S.C. § 362(d)(1) ............................................................................................................... 5

11 U.S.C. § 553 ....................................................................................................... 6, 7, 8, 9, 10

The Washington Mutual, Inc. Noteholders Group (the "Noteholders Group"), which collectively holds approximately $2.0 billion in outstanding principal amount of debt securities issued by Washington Mutual, Inc. (with WMI Investment Corp., the "Debtors"), hereby submits this objection to the motion of the Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank, Henderson, Nevada, (the "FDIC") for an order modifying the automatic stay (the "Motion") and further joins in the Debtors' objection to the Motion.

## PRELIMINARY STATEMENT

The FDIC seeks to lift the automatic stay to exercise its purported rights under Section 9.5 of the P&A Agreement to obtain possession of certain of the Debtors' deposits, which were formerly held at the Debtors' banking subsidiaries (as further defined below, the "Deposits") and are currently being withheld by JPMorgan Chase Bank, N.A. ("JPMC"). The requested relief will have the effect of delaying the Debtors' efforts to recover the principal assets of their estates and will effectively derail these chapter 11 cases. The FDIC's basis for requesting such extraordinary relief is the need to preserve purported setoff rights that the FDIC may have against the Debtors. However, the FDIC's motion fails to establish the requisite cause to obtain relief from the automatic stay. First, the FDIC has not met its burden of showing that it possesses a valid right of setoff against the Debtors. There is no mutuality between the FDIC and the Debtors; the FDIC merely asserts a triangular setoff that is not permitted under the Bankruptcy Code. Moreover, the FDIC's attempt to use the instant Motion to manufacture mutuality and acquire setoff rights against the Debtors is expressly prohibited under the Bankruptcy Code. Further, Section 9.5 of the P&A Agreement does not even apply to the majority of the Deposits, which were at WMB fsb and were never subject to the receivership.

Granting the requested relief will impose substantial prejudice on the Debtors, significantly hinder the administration of the estates and further delay resolution of these cases. Allowing the FDIC to setoff against the Deposits will unfairly benefit the FDIC at the expense of the estates' other legitimate creditors. In contrast, the FDIC will suffer no prejudice from maintaining the automatic stay in place. The FDIC's purported right of setoff is the only basis for seeking relief from the stay, and because no such right of setoff exists continued application of the stay will not prejudice the FDIC in any way. Thus, the balance of hardships weighs heavily in favor of denying the Motion.

## FACTUAL BACKGROUND

1. On September 25, 2008, the Director of the Office of Thrift Supervision (the "OTS") placed WMB into receivership and appointed the FDIC as receiver. On the same day, the FDIC sold substantially all of WMB's assets, including the stock of WMB's subsidiary bank, Washington Mutual Bank fsb ("WMB fsb"), to JPMorgan Chase Bank, N.A. ("JPMC") for $1.88 billion (the "P&A Transaction"), pursuant to that certain Purchase and Assumption Agreement Whole Bank, dated September 25, 2008 (as the same may have been or may be amended, the "P&A Agreement").

2. On September 25, 2008, the Debtors had cash on deposit with WMB and WMB fsb in excess of $3.8 billion, consisting of more than $135 million in five demand deposit accounts at WMB (the "WMB Deposits") and approximately $3.668 billion in a single demand deposit account at WMB fsb (the "WMB fsb Deposits," and with the WMB Deposits, the "Deposits").[2]

---

[2] See Debtors' Brief in Support of Summary Judgment at 4-5 [Docket # 15].

3. On September 26, 2008, the Debtors commenced these cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code").

4. On March 24, 2009, JPMC commenced an adversary proceeding against the Debtors, asserting a number of claims including claims to assets that JPMC allegedly purchased pursuant to the P&A Agreement.[3] On May 29, 2009, Debtors filed an answer and counterclaims. JPMC filed a motion to dismiss, which this Court denied on August 24, 2009.

5. On April 27, 2009, the Debtors commenced an adversary proceeding against JPMC seeking a turnover of over the Deposits, which were and are being wrongfully withheld by JPMC after being assumed under the P&A Agreement.[4]

6. JPMC later moved to dismiss the Turnover Action, and this Court denied that motion on June 24, 2009. The Debtors also filed a motion for summary judgment, which was argued by the parties—including the FDIC—on October 22, 2009. The Court took the matter under advisement. Notwithstanding that the summary judgment motion was already fully submitted, the FDIC filed the instant motion on November 4, 2009.

7. The FDIC's Motion acknowledges that the Deposits are deposit liabilities assumed by JPMC pursuant to the P&A Agreement. The FDIC seeks to exercise its rights under Section 9.5 of the P&A Agreement with respect to the Deposits, which provides that the Deposits are "deposit balance[s] assumed by [JPMC] pursuant to [the P&A Agreement]." See

---

[3] JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc. et al., Adv. Proc. No. 09-50551 (MFW) (the "JPMC Adversary Proceeding").

[4] Washington Mutual, Inc. et al. v. JPMorgan Chase Bank, N.A., Adv. Proc. No. 09-50934 (MFW) (the "Turnover Action," and with the JPMC Adversary Proceeding, the "Adversary Proceedings").

P&A Agreement at § 9.5.[5] The FDIC also asserts that it has the right to "direct JPMC to 'return all or any portion of such <u>deposit balance</u> to the Receiver'" and to "effectuate the return of those <u>deposit balances</u> in accordance with section 9.5 of the P&A Agreement." Mot. at ¶¶ 3, 16 (emphasis added). In short, the FDIC's Motion confirms that the Deposits are demand deposits belonging to WMI.

## ARGUMENT

8. The automatic stay enjoins "any act to…to exercise control over property of the estate." 11 U.S.C. § 362(a)(3); see also <u>In re Cont'l Airlines</u>, 134 F.3d 536, 539 n.5 (3d Cir. 1998) (The automatic stay acts as "an injunction that arises by operation of law immediately upon the commencement of the bankruptcy case."). The stay protects creditors consistent with the Bankruptcy Code's policy favoring equality treatment. <u>Mar. Elec. Co.</u> v. <u>United Jersey Bank</u>, 959 F.2d 1194, 1207 (3d Cir. 1991); <u>Borman</u> v. <u>Raymark Indus., Inc.</u>, 946 F.2d 1031, 1036 (3d Cir. 1991) (the automatic stay is intended to "prevent certain creditors from gaining preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor."); <u>In re Wheeling-Pittsburgh Steel Corp.</u>, 67 B.R. 735, 738 (W.D. Pa. 1986) (recognizing that the stay is designed to ensure that property remains in the debtor's estate). The automatic stay is one of the fundamental protections that the Bankruptcy Code provides to debtors. <u>Midlantic Nat'l Bank</u> v. <u>New Jersey Dept. of Envtl. Prot.</u>, 474 U.S. 494, 503 (1986).

---

[5] Pursuant to Section 2.1 of the P&A Agreement, JPMC agreed to assume "Deposits" that are "reflected on the Books and Records of the Failed Bank as of Bank Closing." P&A Agreement, at § 2.1. There is no dispute over whether the Deposits were reflected on the books and records of WMB and WMB fsb as of the receivership.

9.      In order to ensure the efficient and proper operation of that system, the bankruptcy courts have broad powers to ensure compliance with the automatic stay, even as against federal agencies such as the FDIC. See, e.g., Gross v. Bell Sav. Bank, 974 F.2d 403, 407 (3d Cir. 1992); In re Colonial Realty Co., 980 F.2d 125, 136-38 (2d Cir. 1992); In re Lane, 136 B.R. 319, 320-21 (D. Mass. 1992) (issuing a temporary restraining order preventing the RTC from foreclosing on assets of the estate while the automatic stay was in effect); see also In re First City Asset Servicing Co., 158 B.R. 78, 81 (Bankr. N.D. Tex. 1993) (concluding that FDIC was required to make a motion with the bankruptcy court to have the stay lifted before attempting to reach assets of the estate). A contrary rule would "create incentives for the FDIC to violate the stay" and "threaten the operation of the bankruptcy system." Id. at 82.

10.     Section 362(d) of the Bankruptcy Code provides that the Court may grant relief from the automatic stay for "cause." 11 U.S.C. §362(d)(1). It is well established that a moving party such as the FDIC bears the burden to establish that cause exits to lift or modify the automatic stay. In re RNI Wind Down Corp., 348 B.R. 286 (Bankr. D. Del. 2006); In re Sonnax Indus., Inc., 907 F.2d 1280, 1285 (2d Cir. 1990) ("If the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."). Whether "cause" exists turns on (i) whether any prejudice to the estate or the debtor will result from lifting the stay; (ii) whether the hardship of the moving party considerably outweighs the hardship to the debtor; and (iii) the probability of the moving part's likelihood of prevailing on the merits. See, e.g., In re W.R. Grace & Co., 2007 WL 1129170, at *2 (Bankr. D. Del. Apr. 13, 2007). Here, the FDIC has failed to meet its burden with respect to establishing that cause exists to lift or modify the stay, and therefore the Motion should be denied.

NEWYORK 7385142 (2K)

5

## I. THE FDIC CANNOT PREVAIL ON THE MERITS

11. The FDIC seeks to modify the automatic stay in order to exercise its purported setoff rights against the Deposits, which are currently held by JPMC. See, e.g., Mot. at 3 ("[FDIC] therefore brings this motion to protect and preserve its setoff rights in the [Deposits]..."); Mot. at ¶ 17 ("The relief requested is necessary to preserve [FDIC's] setoff rights . . . ."). Setoff is a doctrine that allows entities who owe money to each other to cancel out or apply their mutual debts. In re Semcrude, 399 B.R. 388, 393 (Bankr. D. Del. 2009). The right of setoff, created under state law, is preserved in bankruptcy to the extent permitted by 11 U.S.C. § 553. Id. The burden of proof is on the party asserting the right of setoff against the Debtors or the Deposits. See, e.g., In re Garden Ridge Corp., 338 B.R. 627 (Bankr. D. Del. 2006), aff'd, 399 B.R. 135 (D.Del. 2008); In re Papercraft Corp., 127 B.R. 346, 358 (Bankr. W.D. Pa. 1991). Here, the FDIC has not shown that it has any valid right of setoff. As such, the FDIC's attempt to modify the automatic stay to obtain the Deposits reduces to an attempt to acquire setoff rights, which the Bankruptcy Code prohibits. Furthermore, Section 9.5 of the P&A Agreement only applies to those deposits at WMB at the time of the receivership and assumed by JPMC pursuant to the P&A Agreement, and does not apply to the WMB fsb Deposits, which were never subject to the receivership.

### A. The FDIC Has No Setoff Rights

12. To be subject to setoff in bankruptcy, the debts to be set off must both be mutual and arise prepetition.[6] In re Semcrude, 399 B.R. at 393; In re Garden Ridge Corp., 338

---

[6] The Bankruptcy Code does not create a right of setoff, but rather preserves for the creditor's benefit any setoff right that it may have under applicable nonbankruptcy law and imposes additional restrictions on a creditor seeking setoff that must be met to impose setoff against a debtor in bankruptcy. In re Semcrude, 399 B.R. at 393. As noted

B.R. at 632; see also 11 U.S.C. § 553. Neither requirement is satisfied here.

13. Generally speaking, debts are "mutual" only when they are owing between two parties in the same right and in the same capacity. In re Semcrude, 399 B.R. at 393. Because of this mutuality requirement in section 553(a), a "triangular setoff," where some party A attempts to offset an obligation owed to a party B against B's debt to C, is prohibited, because there is no mutuality of debt between two parties. Id.; In re Garden Ridge Corp., 338 B.R. at 632.

14. Here, the FDIC is attempting to assert a triangular setoff that does not meet the mutuality requirement and is prohibited under the Bankruptcy Code. The FDIC states that upon invocation of Section 9.5, the FDIC's "claims against the Debtors could and would form the basis for setoff under 11 U.S.C. § 553 against [the Deposits] currently being held by JPMC" and that "[o]nce the [the Deposits] are in [FDIC's] possession, the criteria for setoff under section 553 will be satisfied." Mot. at ¶¶ 2, 27 (emphasis added). As such, the FDIC acknowledges that its purported setoff rights actually consist of claims by the FDIC against the Debtors, on the one hand, and claims by the Debtors against JPMC—i.e., the Deposits—on the other. This is a classic example of a triangular setoff, and it is not permitted under the Bankruptcy Code. See, e.g., In re Semcrude, 399 B.R. at 393; In re United Sciences of Am., Inc., 893 F.2d 720, 723 (5th Cir. 1990) ("The mutuality requirement is designed to protect against 'triangular' set-off; for example, where the creditor attempts to set off its debt to the debtor with the latter's debt to a third party."); Elcona Homes Corp. v. Green Tree Acceptance,

---

above, the FDIC cannot exercise its purported setoff rights because of the restrictions imposed by the Bankruptcy Code, but the Noteholders Group does not concede that the FDIC even has valid setoff rights under applicable non-bankruptcy law to begin with.

Inc., 863 F.2d 483, 486 (7th Cir. 1988) (holding that the Code speaks of a "mutual debt" and "therefore precludes 'triangular' set offs").

15. The FDIC effectively concedes that it currently does not have any obligation on the Deposits that could be mutual to its claims against the Debtors. Indeed, the entire premise of the Motion is to modify the automatic stay to <u>create</u> mutuality and to give the FDIC setoff rights. The Motion states that it goes on to state that "[o]nce returned, the [Deposits] <u>will be</u> an obligation of the FDIC-Receiver." Mot. at ¶ 3. It goes on to state that the FDIC's "claims against the Debtors <u>could and would</u> form the basis for setoff under 11 U.S.C. § 553 against [the Deposits] currently being held by JPMC purportedly in the name of WMI" and that "[o]nce the [the Deposits] are in [FDIC's] possession, the criteria for setoff under section 553 <u>will be</u> satisfied." Mot. at ¶¶ 2, 27 (emphasis added).

16. The FDIC cannot manufacture mutuality or a right to a setoff by acquiring the Deposits from JPMC pursuant to Section 9.5 of the P&A Agreement. It is well established that the Bankruptcy Code prohibits setoff where an obligation to a debtor is assumed post-petition for the purpose of obtaining a right of setoff. <u>In re U.S. Aeroteam, Inc.</u>, 327 B.R. 852, 867 (Bankr. S.D. Ohio 2005) ("The purpose of [section 553(a)(3)] is to prevent a creditor from undertaking a build-up of its setoff rights in order to obtain a preference."). 11 U.S.C.§ 553(a)(3) (setoff is precluded where a debt owed the debtor is transferred post-petition "for the purpose of obtaining a right of setoff against the debtor"). This prevents a creditor from obtaining a setoff post-petition and thereby improving the creditor's position vis-à-vis other creditors. <u>In re S. Indust. Banking Corp.</u>, 809 F.2d 329, 332 (6th Cir. 1987). Here, the FDIC is clearly seeking to modify the automatic stay so that it can exercise its rights under the P&A Agreement and thereby obtain the Deposits "for the purpose of obtaining a right of setoff against the Debtor" and thereby

improve its position over other creditors in contravention of 11 U.S.C. § 553(a)(3). Mot. ¶¶ 3, 27 ("Once returned, the Disputed Deposit Balances will be an obligation of the FDIC-Receiver..."; "[o]nce the [the Deposits] are in [FDIC's] possession, the criteria for setoff under section 553 will be satisfied.").

17. The FDIC's argument that the stay should be modified because it is a secured creditor entitled to adequate protection is similarly flawed. Mot. at ¶¶ 35-37. As the cases cited by the FDIC make clear, creditors are secured and entitled to adequate protection only insofar as they have valid setoff rights. See, e.g., In re George Ruggiere Chrysler-Plymouth, Inc., 727 F.2d 1017 (11th Cir. 1984) (court's discussion of adequate protection premised on creditor Chrysler having a security interest in the debtors cash collateral); In re Blanton, 105 B.R. 321, 337 (Bankr. E.D. Va. 1989) (concluding that creditor-employer has a setoff right and that only as a setoff claimant would a creditor be secured and potentially entitled to relief from the stay if the debtor could not provide adequate protection). Thus, the FDIC's claim for adequate protection is premised on it having a valid right of setoff. As discussed, because of a lack of mutuality and the restrictions under section 553(a) of the Bankruptcy Code, the FDIC has no setoff rights against the Debtors, and therefore the FDIC is not a secured creditor to be afforded adequate protection.

18. Nor can the FDIC and JPMC contract around the mutuality requirement or the restrictions set forth in section 553(a)(3) of the Bankruptcy Code. As Judge Shannon recently held, "non-mutual debts cannot be transformed into a 'mutual debt' under section 553 simply because a multi-party agreement allows for setoff of non-mutual debts between the parties to the agreement" and that there exists "no exception to the 'mutual debt' requirement in section 553 [that may] be created by private agreement." In re Semcrude, 399 B.R. at 398-99.

B.  **Section 9.5 of the P&A Agreement Does Not Apply to the WMB fsb Deposits**

19.     Even assuming that the FDIC had setoff rights and were permitted to exercise then under Section 9.5 of the P&A Agreement, that contract provision has no application to the WMB fsb Deposits, which never passed through the receivership. The FDIC seeks to invoke Section 9.5 of the P&A Agreement with respect to all of the Deposits, including those Deposits formerly held at WMB fsb. However, Section 9.5 only applies to "any deposit balance assumed by the Assuming Bank pursuant to [the P&A Agreement]." See P&A Agreement at § 9.5. However, under section 2.1 of the P&A Agreement, JPMC agreed to assume "all of the liabilities of the Failed Bank . . . , including the Assumed Deposits." Id., at § 2.1. WMB, and not WMB fsb, is the Failed Bank. Id., at 1st recital. Inasmuch as WMB had no liability on any Deposits held at WMB fsb, JPMC did not assume those Deposits under the P&A Agreement, and section 9.5 gives the FDIC no right to recover them.[7]

II.     **THE DEBTORS WILL BE SUBSTANTIALLY PREJUDICED AND THE BALANCE OF HARDSHIPS WEIGHS HEAVILY AGAINST MODIFYING THE STAY**

20.     Granting the Motion will impose substantial prejudice on the Debtors and will significantly hinder the reorganization process. Courts have recognized that the most important factor in determining whether to grant relief from the automatic stay is the effect on the administration of the estate; even slight interference with the administration may be enough to

---

[7] The FDIC acknowledges in a footnote that Section 9.5 does not extend to the Deposits that were held by WMB fsb, but attempts to cloud the issue by suggesting that the Deposits at WMB fsb may actually have been held at "Washington Mutual Bank, FA." Mot. at 15, n. 13. The FDIC's argument is without merit. As has been conclusively demonstrated by the Debtors in their motion for summary judgment in the Turnover Action, the transfer of the deposits to WMB fsb occurred in late September, before WMB went into receivership. See Debtors' Brief in Support of Summary Judgment at 4-7, 10-18 [Docket # 15]. To the extent the FDIC suggests that the transfer of the WMB fsb Deposits were undertaken with an intent to hinder, delay or defraud the FDIC-Receiver or WMB (Mot. at 15, n. 13), such conclusory allegations will be properly dispatched in the context of the FDIC's proof of claim and are no basis to suggest that Section 9.5 of the P&A Agreement applies to the WMB fsb Deposits.

preclude relief in the absence of a commensurate benefit. See, e.g., In re W.R. Grace & Co., 2007 WL 1129170, at *2. Similarly, the FDIC bears "the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief." In re RNI Wind Down Corp., 348 B.R. at 299 (moving party must show that "the balance of hardships from not obtaining relief tips significantly in [its] favor.") (quotations omitted); see also In re W.R. Grace & Co., 2007 WL 1129170, at *3.

21. Here, after participating in extensive litigation over the Deposits for over a year, the FDIC now seeks to claim possession of them. This is no more than an attempt to thwart or delay the Debtors' efforts to recover their principal assets for the benefit of their estates. Allowing the Deposits to be transferred from JPMC to the FDIC will effectively erase the progress the Debtors have made in the Turnover Action, impede the administration of the estates and delay any chance at resolving the pending litigations. The Court should deny the Motion to ensure that these cases move forward and that issues related to essential assets of the estates are resolved in a timely fashion. Not only will this assist the Debtors and their stakeholders in moving towards a plan that maximizes benefits to creditors, it will also likely facilitate the resolution of some if not all of the issues raised by the FDIC.[8]

22. The FDIC's Motion also threatens this Court's exclusive jurisdiction over the Deposits. If the FDIC is permitted to exercise its purported rights under the P&A Agreement to obtain possession of the Deposits, the FDIC may claim that this Court lacks jurisdiction over the Deposits by application of the Financial Institutions Reform, Recovery, and Enforcement Act of

---

[8] The FDIC's proposal to hold the Deposits in non-interest bearing segregated accounts at a Federal Home Loan Bank will impose further prejudice on the Debtors and their estates. Mot. at 3. Given the magnitude of the Deposits, placing the funds in non-interest bearing accounts would result in the estates losing literally millions of dollars in accrued interest and such a disastrous result should not be sanctioned by this Court.

1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA"). While there are a number of reasons why such an argument fails and FIRREA would not divest this Court of jurisdiction over the Deposits, costly litigation over the issue could still ensue. Indeed, the FDIC has shown itself prepared to aggressively pursue a broad interpretation of FIRREA, including through its pending appeal of this Court's jurisdictional rulings. The risk that this Court could be effectively divested of its core jurisdiction over the principal assets of the estate—or that the Debtors and their estates could be burdened with the cost of pursuing litigation over the issue—represents substantial prejudice and provides a clear basis to deny the Motion.

23. In contrast, there is no prejudice to the FDIC if the Motion is denied and the automatic stay is affirmed. As discussed above, the FDIC does not have any valid right of setoff that needs to be preserved. Thus, the FDIC doses not suffer any prejudice by keeping the automatic stay in place. Nor can it be said that the FDIC will not have the opportunity to continue to participate in the bankruptcy and the Adversary Proceedings; it will have the opportunity to assert any claims it may have against the Debtors in those proceedings or via its proofs of claim. Accordingly, the FDIC cannot overcome the significant burden of proving that the balance of hardships tips significantly in its favor, and the Motion should be denied. In re W.R. Grace & Co., 2007 WL 1129170, at *3.

24. Furthermore, the timing of the FDIC's Motion weighs against granting the requested relief. These bankruptcy cases have proceeded for more than a year, with the Debtors litigating at great expense against JPMC and the FDIC to recover the Deposits. The FDIC has repeatedly represented that it does not intend to "interfere with the administration of these

cases,"[9] and it has never sought to exercise its purported rights under the P&A Agreement against the Deposits until now. The FDIC's decision to bring this Motion now, at the same time as the Court is preparing to rule on a summary judgment motion concerning the Deposits, is clearly an act of gamesmanship that jeopardizes the Debtors' ability to reorganize and further weighs against granting the extraordinary relief requested in the Motion. See, e.g., In re Lykes Bros. S.S. Co., 217 B.R. 304, 313 (Bankr. M.D. Fla. 1997) ("Setoff may be denied where the creditor acted inequitably; where the setoff would jeopardize the debtor's ability to reorganize; or in a liquidation context where the setoff would result in either a preference or priority over other unsecured creditors."); In re Metro. Int'l, Inc., 616 F.2d 83, 86 (3d Cir. 1980) (finding a waiver where a right of setoff was not timely asserted).

## CONCLUSION

25. For all of the reasons discussed above, and those reasons set forth in the Debtors' objection to the Motion which the Noteholder Group joins, the Court should deny the Motion in its entirety.[10]

Dated: November 17, 2009
Wilmington, Delaware

FOX ROTHSCHILD LLP

BY: _____
Jeffrey M. Schlerf, Esq. (No. 3047)
L. Jason Cornell, Esq. (No.3821)
Citizens Bank Center
919 North Market Street, Suite 1600
Wilmington Delaware 19801
(302) 654-7444

---

[9] Id. at 2; Tr. June 24, 2009 Hearing Tr. at 44 (FDIC counsel): ("We have not asserted that 9.5 right. Because we do not want to interfere with the administration of this bankruptcy case."); Oct. 25, 2008 Hearing Tr. at 23:2-4 (FDIC Counsel): ("But Your Honor, we can't, and we don't want to interfere with the administration of this case.")

[10] The Noteholders Group expressly reserves and does not waive its rights to seek to intervene in the Adversary Proceedings and to seek such other and further relief as may be just and appropriate.

–and–

WHITE & CASE LLP
Thomas E Lauria
Wachovia Financial Center
200 South Biscayne Boulevard, 49th Floor
Miami, Florida 33131
(305) 371-2700

Gerard Uzzi
1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

*Attorneys for the Washington Mutual, Inc.
Noteholders Group*