UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------------x
                                          :
*In re*                                   :   **Chapter 11**
                                          :
**WASHINGTON MUTUAL, INC., et al.,**[1]   :   **Case No. 08-12229 (MFW)**
                                          :
    **Debtors.**                          :   **(Jointly Administered)**
                                          :
                                          :   Hearing Date: December 18, 2009 at 11:30 a.m. (ET)
------------------------------------------------------------x   Objection Deadline: December 7, 2009 at 4:00 p.m. (ET)

### MOTION, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, FOR APPROVAL OF STIPULATION AND AGREEMENT BETWEEN WASHINGTON MUTUAL, INC. AND THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS INDENTURE TRUSTEE

Washington Mutual, Inc. ("WMI") and WMI Investment Corp. ("WMI Investment"), as debtors and debtors in possession (the "Debtors"), as and for their motion (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for approval of that certain Stipulation and Agreement (the "Stipulation," a copy of which is attached hereto as Exhibit A), dated November 17, 2009, by and between WMI and The Bank of New York Mellon Trust Company, N.A. (the "Indenture Trustee"), as successor indenture trustee under that certain Senior Debt Securities Indenture, dated as of August 19, 1999 (as supplemented by that certain First Supplemental Indenture and Second Supplemental Indenture, dated as of August 1, 2002 and November 20, 2002, respectively, the "Indenture"), respectfully represents as follows:

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

## Jurisdiction

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2. On September 26, 2008 (the "Commencement Date"), each of the Debtors commenced with this Court a voluntary case pursuant to chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 3, 2008, the Court entered an order, pursuant to Bankruptcy Rule 1015(b), authorizing the joint administration of the Debtors' chapter 11 cases.

## WMI's Business

3. WMI is a holding company incorporated in the State of Washington and headquartered at 1301 Second Avenue, Seattle, Washington 98101. WMI is the direct parent of WMI Investment, which serves as an investment vehicle for WMI and holds a variety of securities. WMI Investment is incorporated in the State of Delaware.

4. Prior to the Commencement Date, WMI was a savings and loan holding company that owned Washington Mutual Bank ("WMB") and such bank's subsidiaries, including Washington Mutual Bank fsb ("WMBfsb"). WMI also has certain non-banking, non-debtor subsidiaries. Like all savings and loan holding companies, WMI was subject to regulation by the Office of Thrift Supervision (the "OTS"). WMB and WMBfsb, in turn, like all depository institutions with federal thrift charters, were subject to regulation and examination by the OTS. In addition, WMI's banking and nonbanking subsidiaries were overseen by various federal and state authorities, including the Federal Deposit Insurance Corporation ("FDIC").

5. On September 25, 2008, the Director of the OTS, by order number 2008-36, appointed the FDIC as receiver for WMB and advised that the receiver was immediately taking possession of WMB (the "Receivership"). Immediately after its appointment as receiver, the FDIC sold substantially all the assets of WMB, including the stock of WMBfsb, to JPMorgan Chase Bank, National Association ("JPMorgan Chase") pursuant to that certain Purchase and Assumption Agreement, Whole Bank, dated as of September 25, 2008 (the "Purchase Agreement").

6. WMI's assets include its common stock interest in WMB, its interest in its non-banking subsidiaries, and more than $4 billion of cash that WMI and its non-banking subsidiaries (including WMI Investment) had on deposit at WMB and WMBfsb immediately prior to the time the FDIC was appointed as receiver. WMI is in the process of evaluating these and other assets for purposes of ultimate distribution to its creditors.

**The Bar Date and Schedules**

7. On December 19, 2008, the Debtors filed with the Court their schedules of assets and liabilities. On January 27, 2009, and February 24, 2009, WMI filed with the Court its first and second, respectively, amended schedule of assets and liabilities (collectively, the "Schedules").

8. By order, dated January 30, 2009 (the "Bar Date Order"), the Court established March 31, 2009 (the "Bar Date") as the deadline for filing proofs of claim against the Debtors in these chapter 11 cases. Pursuant to the Bar Date Order, holders of certain of WMI's debt securities were not required to file proofs of claims. Instead, the respective indenture trustees were permitted to submit proofs of claims on behalf of themselves and the respective individual bondholders.

## The Indenture Trustee Claim

9. On or about March 17, 2009, the Indenture Trustee filed proof of claim number 1738 (the "Indenture Trustee Claim") against WMI, wherein the Indenture Trustee, on behalf of itself and holders of debt issued by WMI pursuant to the Indenture, asserted claims for, among other things, the following amounts as allegedly due and owing pursuant to the Indenture as of the Commencement Date (the "Notes Claims"):

| Notes Issuance | Maturity Date | Claimed Principal | Claimed Interest |
|---|---|---|---|
| 4.0% Notes | January 15, 2009 | $805,172,000.00 | $6,351,912.44 |
| 4.2% Notes | January 15, 2010 | $504,419,000.00 | $4,178,270.72 |
| 5.5% Notes | August 24, 2011 | $361,390,000.00 | $1,766,795.56 |
| 5.0% Notes | March 22, 2012 | $375,700,000.00 | $208,722.22 |
| 5.25% Notes | September 15, 2017 | $730,240,000.00 | $1,171,426.67 |
| Floating Rate Notes | August 24, 2009 | $358,645,000.00 | $970,042.97 |
| Floating Rate Notes | January 15, 2010 | $175,500,000.00 | $1,099,877.95 |
| Floating Rate Notes | March 22, 2012 | $363,350,000.00 | $141,454.17 |
| Floating Rate Notes | September 17, 2012 | $446,815,000.00 | $359,267.19 |

10. In addition to the Notes Claims, the Indenture Trustee asserted claims (i) as indenture trustee pursuant to an indenture, dated May 1, 1999 (as supplemented on various dates (the "Providian Indenture"), with WMB (as successor to Providian Financial Corporation) with respect to 2.75% Convertible Cash to Accreting Senior Notes due March 15, 2016 (the "Providian Notes"), for certain amounts due and owing pursuant to the Providian Indenture on account of outstanding principal and accrued interest and other unliquidated fees and expenses related thereto (the "Providian Notes Claim"), (ii) as Property Trustee under an Amended and Restated Declaration of Trust, dated April 30, 2001, with respect to the 5.375% Junior Subordinated Deferrable Interest Debentures due 2041 (the "Junior Subordinated Debentures Claim") and (iii) for the continuing accrual of interest and various other unliquidated amounts

due and owing under the Indenture (the "Unliquidated Claims," and, together with the Providian Notes Claim and the Junior Subordinated Debentures Claim, the "Remaining Claims").

11. Certain of the debt issued by WMI pursuant to the Indenture was issued at a discount to its face value – i.e., with "original issue discount." Unamortized original issue discount is treated as unmatured interest pursuant to section 502(b)(2) of the Bankruptcy Code and, therefore, disallowed as a claim against a chapter 11 debtor. *See In re Chateaugay Corp.*, 961 F.2d 378, 380 (2nd Cir. 1992). As part of the Debtors' ongoing claims reconciliation process, the Debtors reviewed and analyzed the Indenture Trustee Claim and determined that the Notes Claims, after accounting for the original issue discount, should be allowed in amounts that are different from the amounts that were asserted in the Indenture Trustee Claim. Accordingly, the Debtors contacted the Indenture Trustee to attempt to resolve the discrepancy. As a result of such discussions, the Debtors and the Indenture Trustee have agreed on the correct amounts owed with respect to the Notes Claims.

## Relief Requested

12. The Debtors seek entry of an order, pursuant to section 105(a) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules, approving the Stipulation between the Debtors and the Indenture Trustee, a copy of which is attached hereto as <u>Exhibit A</u>, whereby the Notes Claims will be reduced and allowed in the proper amounts and the Indenture Trustee will file a new proof of claim on account of the Remaining Claims.

## Basis For Relief

13. Bankruptcy Code section 105(a) provides that, "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019, which governs the approval of compromises and settlements, provides that, "[o]n motion by the trustee and after notice and a hearing, the

court may approve a compromise or settlement. Fed. R. Bankr. P. 9019(a). A starting point in analyzing any proposed settlement agreement is the general policy of encouraging settlements and favoring compromises. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996). The standard by which courts evaluate a proposed compromise and settlement are well established. The United States District Court for the District of Delaware "has described the ultimate inquiry to be 'whether the compromise is fair, reasonable, and in the interest of the estate.'" *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (Bankr. D. Del 1998) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).

14. The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). Under the well-established standard for consideration of the merits of a settlement, in determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), *cert. denied sub nom. Benson v. Newman*, 409 U.S. 1039 (1972)); *see also In re World Health Alternatives, Inc.*, 344 B.R. at 296; *In re Key3Media Group, Inc.*, 336 B.R. 87, 92-93 (Bankr. D. Del. 2005).

15. Applying the foregoing standard, the Debtors respectfully submit that approval of the Stipulation is fair, reasonable and in the best interests of the Debtors, their estates and creditors. Approval of the Stipulation will avoid the needless expense associated with filing an objection to the Indenture Trustee Claim and any related claim litigation and will ensure that

the Indenture Trustee Claim is satisfied in the appropriate amounts, reflecting the proper amount of original issue discount. Furthermore, since all parties' rights with respect to the Remaining Claims will be preserved (except with respect to any objection based on timeliness), the effect of the Stipulation will be solely to reduce the total amount of claims asserted against these estates – a clear benefit. Based on the foregoing, the Debtors submit that cause exists to approve the Stipulation as a settlement and compromise under Bankruptcy Rule 9019.

## Notice

16. Notice of the Motion has been given to: (a) the Office of the United States Trustee of the District of Delaware; (b) the attorneys for the official committee of unsecured creditors; (c) the attorneys for the Indenture Trustee; and (d) all persons entitled to receive notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

## No Previous Request

17. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court enter an order, in substantially the same form attached hereto as Exhibit B, (i) granting the relief requested herein and (ii) granting the Debtors such other and further relief as is just.

Dated: Wilmington, Delaware
November 17, 2009

*/s/ [signature]*

Mark D. Collins (No. 2981)
Chun I. Jang (No. 4790)
Andrew C. Irgens (No. 5193)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Marcia L. Goldstein, Esq.
Brian S. Rosen, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsímile: (212) 310-8007

ATTORNEYS TO THE DEBTORS
AND DEBTORS IN POSSESSION