# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* : | Chapter 11 |
| : | |
| WASHINGTON MUTUAL, INC., et al.,[1] : | Case No. 08-12229 (MFW) |
| : | |
| Debtors. : | Jointly Administered |
| : | |

## REPLY OF THE FDIC-RECEIVER IN FURTHER SUPPORT OF ITS MOTION FOR AN ORDER MODIFYING THE AUTOMATIC STAY

M. Blake Cleary  (No. 3614)
Jaime N. Luton (No. 4936)
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
1000 West Street, 17th Floor
Wilmington, Delaware  19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

-and-

Thomas R. Califano
John J. Clarke, Jr.
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York  10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501

Attorneys for the
Federal Deposit Insurance Corporation, as
Receiver for Washington Mutual Bank

Dated:  December 1, 2009

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification numbers are: (a) Washington Mutual, Inc. (3725); and (b) WMI Investment Corp. (5395).  The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington  98101.

**Table of Contents**

Page

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT ...................................................................... 1

I.   THE FDIC-RECEIVER HAS CONSISTENTLY RESERVED ITS RIGHTS
     UNDER SECTION 9.5 OF THE P&A AGREEMENT .................................. 4

II.  THE OTHER GROUNDS FOR OBJECTION ARE EQUALLY MERITLESS ............. 7

     A.   "Cause" Exists for the Requested Relief From the Stay ........................... 7

     B.   The FDIC-Receiver Has Valid Setoff Rights ...................................... 10

     C.   The Status of the 4234 Account Is Subject to Numerous
          Disputed Issues of Fact ........................................................... 13

III. THE FDIC-RECEIVER HAS NOT CONCEDED ANY DISPUTED ISSUE IN
     SEEKING RELIEF FROM THE AUTOMATIC STAY ................................. 15

CONCLUSION ....................................................................................... 17

# Table of Authorities

Page

<u>Cases</u>

*Baldino v. Wilson (In re Wilson),*
116 F.3d 87 (3d Cir. 1998)...........................................................................7

*Citizens Bank v. Strumpf,*
516 U.S. 16 (1995).............................................................................2, 9, 10, 15

*Gross v. Bell Sav. Bank,*
974 F.2d 403 (3d Cir. 1992)........................................................................4, 15

*Holloway v. I.R.S. (In re Odom Antennas, Inc.),*
340 F.3d 705 (8th Cir. 2003) ...........................................................................15

*Howell v. Bank of Newnan (In re Summit Fin. Servs.),*
240 B.R. 105 (Bankr. N.D. Ga. 1999) ........................................................ 11-12

*Huisinga v. Nat'l Bank of Waterloo (In re Bohlen Enters., Ltd.),*
78 B.R. 556 (Bankr N.D. Iowa 1987) ..............................................................12

*In re Continental Airlines, Inc.,*
152 B.R. 420 (D. Del. 1993)...............................................................................8

*In re Mu'min,*
374 B.R. 149 (Bankr. E.D. Pa. 2007) ............................................................ 7-8

*In re SemCrude, L.P.,*
399 B.R. 388 (Bankr. D. Del. 2009) ............................................................ 10-11

*In re W.R. Grace & Co., Inc.,*
No. 01-01139, 2007 WL 1129170 (Bankr. D. Del. Apr. 13, 2007)..........................8

*Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.),*
141 B.R. 574 (Bankr. D. Del. 1992) ..................................................................8

*Mktg. Res. Int'l v. PTC Corp. (In re Mktg. Res. Int'l Corp.),*
35 B.R. 353 (Bankr. E.D. Pa. 1984) ...............................................................15

*N.Y. County Nat'l Bank v. Massey,*
192 U.S. 138 (1904)..........................................................................................12

*Russello v. United States,*
464 U.S. 16 (1983)............................................................................................13

*Save Power Ltd v. Pursuit Athletic Footwear (In re Pursuit Athletic Footwear),*
   193 B.R. 713 (Bankr. D. Del. 1996) ...................................................................................8

*Sherman v. First City Bank of Dallas (In re United Sciences of America, Inc.),*
   893 F.2d 720 (5th Cir. 1990) ..........................................................................................11

*Westinghouse Credit Corp. v. D'Urso,*
   278 F.3d 138 (2d Cir. 2002)..........................................................................................10

*Woodrum v. Ford Motor Credit Co. (In re Dillard Ford, Inc.),*
   940 F.2d 1507 (11th Cir.), *reh'g denied,* 851 F.2d 366 (11th Cir. 1991) ....................12

Statutes

11 U.S.C. § 362(d) ..........................................................................................................17

11 U.S.C. § 502(d) ..........................................................................................................15

11 U.S.C. § 542(b) .....................................................................................................*passim*

11 U.S.C. § 553(a) .....................................................................................................*passim*

11 U.S.C. § 553(a)(2) ......................................................................................................12

11 U.S.C. § 553(a)(3) .................................................................................................*passim*

12 U.S.C. § 1822(d) ........................................................................................................13

The Federal Deposit Insurance Corporation, in its capacity as receiver for Washington Mutual Bank (the "FDIC-Receiver"), respectfully submits this reply in further support of its motion (the "Motion") for an order modifying the automatic stay, to the extent necessary, to permit the FDIC-Receiver to exercise its contractual right under the P&A Agreement to direct JPMC to return to the FDIC-Receiver certain Disputed Deposit Balances to be held until the pending litigation among the parties has been resolved.[2]

## PRELIMINARY STATEMENT

Under section 542(b) of the Bankruptcy Code, turnover cannot be ordered "to the extent such debt may be offset under section 553 of this title against a claim against the debtor." 11 U.S.C. § 542(b). Notwithstanding this express statutory prohibition, at a hearing before this Court on October 22, 2009, counsel for the Debtors and counsel for the Official Committee of Unsecured Creditors both asserted that the Court should disregard the FDIC-Receiver's setoff rights and order turnover of the Disputed Deposit Balances because the FDIC-Receiver had not yet exercised its contractual right to require JPMC to return those balances under section 9.5 of the P&A Agreement. *See* Oct. 22, 2009 Hr'g Tr. at 75 ("Well, 9.5 hasn't been exercised. It does not give them anything to setoff at this point in time."); *id.* at 82-83 ("Whatever rights they have, they have. If they're going to file some motion, the parties obviously will have to deal with that, but the fact remains today that there is nothing which prevents this Court from entering summary judgment and ordering the deposits be turned over to the Debtors immediately.").

Now that the FDIC-Receiver has brought that very motion, however, the Debtors accuse it of "gamesmanship" and disingenuously assert that the FDIC-Receiver's efforts to protect its legitimate interests against the Debtors' inappropriate litigation tactics somehow represent a

---

[2] Capitalized terms not defined herein have the meaning given them in the Motion.

change in course. To the contrary, since the beginning of this case, when it filed an objection to the Debtors' proposed "deposits" stipulation with JPMC, the FDIC-Receiver repeatedly has reserved its rights under section 9.5 of the P&A Agreement with respect to the Disputed Deposit Balances, both in its public filings and statements and in private discussions with the Debtors' counsel. There is no basis to argue that the FDIC-Receiver has in any way waived those rights.

The Debtors' other objections to the Motion are equally meritless.

*First*, "cause" to lift the stay is obviously established by the Debtors' unflagging efforts to obtain the Disputed Deposit Balances, before any discovery has been conducted and without regard for the FDIC-Receiver's setoff rights. The Debtors acknowledge that the FDIC-Receiver has claims against WMI, yet by opposing the Motion, the Debtors are seeking to use the automatic stay as a sword to cut off the FDIC-Receiver's setoff rights with respect to those claims. The relief sought in the Motion will not harm the Debtors, who will ultimately recover whatever portion of the Disputed Deposit Balances is determined to be their property and not subject to setoff, just as the Bankruptcy Code expressly contemplates. *See* 11 U.S.C. §§ 542(b), 553(a); *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 20 (1995). On the other hand, denial of the Motion would irreparably injure the FDIC-Receiver and the creditors of the WMB receivership if, as a result, the Court were to order turnover of those balances to WMI before any discovery has been taken with respect to numerous disputed issues of material fact.

*Second*, those genuine issues of material fact include, among others, whether the balances held in the 4234 account were actually transferred to WMB fsb before WMB was closed and, even if so, whether such a transfer amounted to an avoidable effort to hinder, delay or defraud

2

the FDIC or WMB's creditors.[3]  The Debtors concede that the FDIC-Receiver's rights under section 9.5 extend to balances held at WMB, where the Debtors' own account statements show the 4234 account to be held (along with all four of the other accounts at issue on this Motion). At the October 22, 2009 hearing, the Debtors tried to sidestep this issue.  Their objection again offers no proof that the balance was effectively moved to an account at WMB fsb, instead relying on unfounded speculation as to why the account statements submitted by the Debtors themselves contradict their contentions.

*Third*, section 553(a)(3) of the Bankruptcy Code is entirely inapplicable.  That section looks at when a liability to the debtor was "incurred" and why.  To the extent they were incurred, the Disputed Deposit Balances were "incurred" by WMB, not the FDIC-Receiver, and there is no evidence that WMB did so with an eye toward obtaining setoff rights against WMI (which controlled WMB at the time).  The FDIC-Receiver succeeded to WMB's rights when it was appointed receiver.  At the October 22, 2009 hearing, the Debtors vehemently argued that the Disputed Deposit Balances were incurred by WMB in good faith and in the ordinary course of its business.  *See* Oct. 22, 2009 Hr'g Tr. at 10-12.  Whether that was so ultimately will be determined in litigation, but according to the Debtors' own objection, those are facts that exclude a "debt owed to the debtor" from the ambit of section 553(a)(3).  *See* Debtors' Obj. ¶ 23 (collecting cases).  The relief sought in the FDIC-Receiver's Motion, to exercise rights to take back liabilities pursuant to an express agreement to that effect, does not constitute the "incurrence" of a debt within the meaning of section 553(a)(3), nor have the Debtors or their creditor constituents cited a single decision even suggesting that it would.

---

[3] As noted in the Motion, other unresolved material disputes include (without limitation) whether the accounts were deposit accounts, whether WMB is the owner of some portion of the Disputed Deposit Balances, and the extent to which funds were credited to the accounts.

*Fourth*, there is no triangular setoff because mutuality exists between WMI and JPMC and the FDIC-Receiver. *Both* the FDIC-Receiver and JPMC have claims against WMI, and WMI has asserted claims for the Disputed Deposit Balances against *both* the FDIC-Receiver and JPMC. The Debtors' argument for a lack of mutuality is therefore belied by their own litigation positions, further demonstrating why turnover under section 542(b) of the Bankruptcy Code is not available until all of the parties' disputes have been decided. The FDIC-Receiver brought the Motion solely out of an abundance of caution given the Debtors' argument, at the October 22, 2009 hearing, that the FDIC-Receiver's setoff rights somehow could be disregarded in considering the Debtors' motion for summary judgment.

*Finally*, the Motion does not reflect a concession as to any disputed issue with respect to the Debtors' summary judgment motion. *See* Motion at 11 n.7. By seeking a modification of the automatic stay, the FDIC-Receiver is not conceding that the Disputed Deposit Balances constitute WMI's "deposits," nor does the protection of the FDIC-Receiver's setoff rights imply that JPMC does not have its own setoff rights.

## I.    THE FDIC-RECEIVER HAS CONSISTENTLY RESERVED ITS RIGHTS UNDER SECTION 9.5 OF THE P&A AGREEMENT

The FDIC-Receiver's assertion of its rights under section 9.5 of the P&A Agreement comes as no surprise to the Debtors or their creditors. Section 9.5 is not unique to the P&A Agreement here. To the contrary, it is a standard provision in purchase and assumption agreements, the purpose and validity of which were expressly recognized by the Third Circuit in *Gross v. Bell Sav. Bank*, 974 F.2d 403 (3d Cir. 1992). Since the beginning of this case, the FDIC-Receiver has consistently reserved its rights, in public and in private communications with the Debtors. Nor have those rights been waived by any action of the FDIC-Receiver. The Debtors' challenges to the timeliness of the Motion are equally specious.

Only weeks into this case, in October 2008, the FDIC-Receiver objected to the Debtors' proposed "deposits" stipulation with JPMC unless that stipulation was modified to protect the FDIC-Receiver's rights. [D.I. 104]. In subsequent discussions, the Debtors' counsel stated that the Debtors were prepared to resolve the FDIC-Receiver's objection to the stipulation with JPMC by entering into a separate stipulation with the FDIC-Receiver under which the FDIC-Receiver's rights under section 9.5 of the P&A Agreement would be expressly preserved if the Disputed Deposit Balances were transferred to another institution.

Given the Debtors' willingness in November 2008 to acknowledge the FDIC-Receiver's rights under section 9.5 and to put off litigation of that issue until some future date, their argument that the Motion is somehow untimely rings especially hollow. As noted in the Debtors' objection, the motion to approve the proposed "deposits" stipulation with JPMC eventually was withdrawn in January 2009. *See* Obj. ¶ 9 & n.3. Since then, the FDIC-Receiver has been consistent, and consistently open, about the reservation of its section 9.5 rights with respect to the Disputed Deposit Balances. On March 30, 2009, the FDIC-Receiver included a reservation of those rights (and its setoff rights generally) in its proof of claim in this bankruptcy case. *See* Clarke Decl., Ex. D, ¶¶ 25, 27, 52. On June 1, 2009, the FDIC-Receiver observed in its motion to intervene in the Debtors' turnover proceeding that the Debtors' claims against JPMC, which had only been asserted a few weeks earlier, "directly implicate[] the FDIC-Receiver's rights under section 9.5 of the P&A Agreement." [D.I. 29 at 12]. On the same date, the FDIC-Receiver made the same observation in its motion to stay both that turnover proceeding and the separate adversary proceeding initiated by JPMC against the Debtors. [D.I. 26 at 12] In its reply memorandum on its motion to stay, filed on June 22, 2009, the FDIC-Receiver reiterated that its rights under section 9.5 prevented "the type of setoff shell game being

attempted by the Debtors," and noted that the Debtors themselves had asserted a claim against it with respect to the disputed deposits. [D.I. 43 at 14-15]. At the hearing on that motion on June 24, 2009, the FDIC-Receiver's section 9.5 rights were discussed at length. Finally, in its submissions in opposition to the Debtors' motion for summary judgment, and at the October 22, 2009 hearing with respect to that motion, the FDIC-Receiver repeatedly and expressly explained how the motion implicated those rights and therefore could not be granted. [D.I. 97].

The Debtors were aware of the FDIC-Receiver's positions and responded in various ways, but they never argued, until the current objection, that the FDIC-Receiver had somehow waived its rights. To the contrary, the Debtors argued that the FDIC-Receiver's setoff rights should be disregarded in considering the Debtors' turnover motion because the FDIC-Receiver had not yet sought to exercise its rights under section 9.5. *See* Reply Brief in Support of the Motion of Plaintiffs for Summary Judgment, at 36-37 [D.I. 163] ("Thus, even assuming that the FDIC would 'own' the Deposits if it were to exercise any authority to direct JPMC to withhold those funds, the fact is that it has not exercised any such authority and has indicated its reluctance to do so."); *see also* Oct. 22, 2009 Hr'g Tr. at 75 ("Well, 9.5 hasn't been exercised. It does not give them anything to setoff at this point in time.").

As the WMB Bondholders have stated succinctly in response to the Motion, "[t]he Debtors should not be heard to complain because the FDIC has done exactly what the Debtors

said the FDIC had to do to preserve its setoff rights."[4]  This Motion promptly followed the

October 22, 2009 hearing at which the Debtors pressed this argument, and it was originally

scheduled for argument at the next ensuing omnibus hearing in this bankruptcy case (argument

of the Motion at that hearing was adjourned at the Debtors' request).  Under the circumstances,

no claim of untimeliness can be made.[5]

## II.    THE OTHER GROUNDS FOR OBJECTION ARE EQUALLY MERITLESS

### A.    "Cause" Exists for the Requested Relief From the Stay

In their objection, the Debtors' misstate both the basis for relief from the automatic stay

that was set forth in the Motion and the applicable standard.  What constitutes "cause" is

determined on the totality of the circumstances in a particular case.  *See Baldino v. Wilson (In re*

*Wilson)*, 116 F.3d 87, 90 (3d Cir. 1998); *see also In re Mu'min*, 374 B.R. 149, 164 (Bankr. E.D.

Pa. 2007) ("'Cause' is an intentionally broad and flexible concept which must be determined on

a case-by-case basis . . . .") (citation omitted).

Here, the FDIC-Receiver has shown "cause" for the relief requested in the Motion –

modification of the stay to permit it to exercise its contractual rights under section 9.5 of the

---

[4] Repeatedly, the Debtors mischaracterize a statement at the June 24, 2009 hearing at which the FDIC-Receiver's counsel explained that the FDIC-Receiver "ha[d] not asserted that 9.5 right. Because we do not want to interfere with the administration of this bankruptcy case." The preceding paragraph of the transcript makes clear that this comment concerned the potential application of the automatic stay to the FDIC-Receiver's exercise of its contractual rights, an issue that is addressed entirely by the current Motion. *See* June 24, 2009 Tr. at 44 ("Under Section 9.5, we have the right to direct JPMorgan Chase, and whether the stay applies or not, we could be in here, Your Honor, fighting the stay on that.").

[5] The Debtors' repeated references to the passage of more than a year since their petitions were filed ignores the substantial passage of time that is attributable to the Debtors' own decisions. The Debtors did not file the complaint in their turnover action until April 27, 2009, when this bankruptcy case already was more than seven months old. They did not file their summary judgment motion in that action until May 19, 2009, several weeks later, and proceedings on that motion were delayed because of Debtors' initial refusal to provide their affiant, Doreen Logan, for a deposition until after opposition papers had been filed.

P&A Agreement. The FDIC-Receiver is not at this time requesting relief from the automatic stay to exercise setoff rights with respect to the Disputed Deposit Balances, nor is it the FDIC-Receiver's burden on this Motion to establish a "probability of success on the merits" in that future dispute, as the Debtors contend.[6] Instead, the focus of the "cause" inquiry is on whether, under the circumstances, the balance of hardships favors relief from the stay to permit the FDIC-Receiver to exercise its indisputable rights under section 9.5 of the P&A Agreement. *In re Mu'min*, 374 B.R. at 164 (in cause inquiry, "[a] court may consider the policies reflected in the bankruptcy code, and the interests of the debtor, other creditors and any other interested parties."). That standard is amply satisfied.

"Cause" is demonstrated by the Debtors' own statements in seeking summary judgment in their turnover action before any discovery into numerous disputed issues of fact has been conducted. Under section 542(b) of the Bankruptcy Code, turnover of a matured debt owed to the debtor is not available "to the extent that such debt may be offset under section 553 of this title against a claim against the debtor." 11 U.S.C. § 542(b). The Debtors do not dispute that the FDIC-Receiver has claims against WMI, which are prima facie valid on the current state of the record, but in seeking summary judgment they have urged the Court to disregard the FDIC-Receiver's setoff rights solely because the FDIC-Receiver had not yet exercised its rights under

---

[6] "Probability of success" is a factor in evaluating motions for stay relief to pursue litigation outside of the bankruptcy court. *See In re Continental Airlines, Inc.*, 152 B.R. 420, 425 (D. Del. 1993) ("[t]he third factor the Court must consider in assessing the propriety of lifting the automatic stay is whether the movant has some probability of success on the merits *in the proposed litigation*") (emphasis added); *Save Power Ltd v. Pursuit Athletic Footwear (In re Pursuit Athletic Footwear)*, 193 B.R. 713, 718 (Bankr. D. Del. 1996). The decision in *In re W.R. Grace & Co., Inc.*, No. 01-01139, 2007 WL 1129170 (Bankr. D. Del. Apr. 13, 2007), relied upon by both the Debtors and the WMI Noteholders, involved precisely such a motion. Even where this factor is applicable, however, the "required showing is very slight." *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 578 (Bankr. D. Del. 1992). As discussed further below, it is well satisfied here.

section 9.5 of the P&A Agreement. *See* Reply Brief in Support of the Motion of Plaintiffs for Summary Judgment at 36-37 [D.I. 163]; Oct. 22, 2009 Hr'g Tr. at 75. If turnover of the Disputed Deposit Balances is ordered (and those balances are transferred), there can be little doubt that the Debtors will argue that the FDIC-Receiver's setoff rights thereby have been lost irretrievably, even though the litigation of the parties' various disputes is still in its earliest stages. Stay relief is warranted to protect the FDIC-Receiver against an inequitable result by ensuring the preservation of the status quo and to prevent the Debtors' use of the automatic stay as a sword to advance their litigation tactics.

On the other hand, granting relief from the automatic stay will impose no hardship on the Debtors or their creditor constituencies. The relief requested will merely preserve the status quo until the parties' disputes have been litigated to resolution. At that time, the Debtors will be entitled to recover whatever portion of the Disputed Deposit Balances is rightfully theirs, if any, after accounting for the competing rights and claims of the FDIC-Receiver and others. This is precisely the relief provided to the Debtors under sections 542 and 553 of the Bankruptcy Code.[7] *See Strumpf*, 516 U.S. at 20.

---

[7] Contrary to the arguments of the WMI Noteholders, the FDIC-Receiver's potential assertion of defenses in the future bears no weight in the analysis. There is no doubt that litigation of the parties' disputes, including possible litigation concerning jurisdictional issues, will need to be resolved before the parties' respective entitlement to the Disputed Deposit Balances is finally determined. This is precisely the framework established by the Bankruptcy Code. *See* 11 U.S.C. § 542(b). The efforts of the Debtors and the WMI Noteholders to lay claim to the Disputed Deposit Balances before material disputed questions of fact can be scrutinized provides no justification for denying the FDIC-Receiver's requested relief. The WMI Noteholders' further objection to the FDIC-Receiver's proposal to maintain the Disputed Deposit Balances in non-interest bearing accounts can be addressed, as necessary, in the form of order granting that relief.

## B.     The FDIC-Receiver Has Valid Setoff Rights

The Debtors' bankruptcy law challenges to the FDIC-Receiver's setoff rights are equally without merit.

*First*, there is mutuality now and there will be no triangular setoff created as a result of the relief requested in the Motion. The FDIC-Receiver has its own claims against the Debtors, as the Debtors acknowledge, and so does JPMC. On the other side of the equation, the Debtors have asserted claims for the Disputed Deposit Balances against both the FDIC-Receiver (in WMI's receivership proof of claim and in its D.C. complaint) and against JPMC (in proceedings before this Court). The Debtors' own litigation positions establish mutuality at this stage of the litigation regardless of the instant Motion. *See Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002) (finding that debts are "mutual" when "they are due to and from the same persons in the same capacity"). Under section 542(b), turnover is unavailable until the parties' competing rights and claims have been resolved. *See Strumpf*, 516 U.S. at 20.

Nor does the P&A Agreement purport to override or alter the mutuality requirement of section 553(a), as the Debtors argue. To the contrary, section 9.5 merely permits the FDIC-Receiver to take responsibility for preexisting liability; it does not purport to alter the requirements of the Bankruptcy Code. Section 9.5 is far different than the contractual setoff provision that was at issue in the decision in *In re SemCrude, L.P.*, 399 B.R. 388 (Bankr. D. Del. 2009), cited by the Debtors. In *SemCrude*, a creditor argued that the setoff provision of a prepetition contract with affiliated debtor entities allowed it to set off debts it owed to one debtor against debts owed to it by other, affiliated debtors. Judge Shannon disagreed, concluding that parties could not override the mutuality requirement of section 553(a) by private agreement. *Id.* at 396-97 ("[T]he Court concludes that mutuality cannot be supplied by a multi-party agreement *contemplating a triangular setoff*.") (emphasis added). Unlike the contract in *SemCrude*,

however, nothing in section 9.5 of the P&A Agreement contemplates a triangular setoff, and *SemCrude* did not address a provision under which one party to a contract could take back a debt it owed to a debtor that had been assumed by another party under that contract.

*Second*, section 553(a)(3) of the Bankruptcy Code does not prohibit the relief requested in the Motion. The objectors' construction disregards the actual language of section 553(a)(3), and no case cited by either the Debtors or the WMI Noteholders applied the provision in the manner advocated in their objections.

Section 553(a)(3) provides that "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that . . . the debt owed to the debtor by such creditor *was incurred by such creditor* – after 90 days before the date of the filing of the petition . . . for the purpose of obtaining a right of setoff against the debtor . . . ." 11 U.S.C. § 553(a)(3) (emphasis added).

This provision is "designed to prevent a bank from undertaking a build-up of the debtor's account in order to secure a preference." *Sherman v. First City Bank of Dallas (In re United Sciences of America, Inc.)*, 893 F.2d 720, 725 (5th Cir. 1990). "[T]he archetypal situation is the case where a debtor has a preexisting obligation to the creditor, and, in the months prior to the debtor's filing for bankruptcy, the debtor pays back the creditor by 'loaning' him money. Later the parties notice the two debts and engage in setoff, canceling both of them. In this archetypal situation, the creditor obtains the debt only to engage in setoff, thus this 'loan' is disfavored by the setoff rules." *Howell v. Bank of Newnan (In re Summit Fin. Servs.)*, 240 B.R. 105, 120

(Bankr. N.D. Ga. 1999) (citing *Woodrum v. Ford Motor Credit Co. (In re Dillard Ford, Inc.)*, 940 F.2d 1507, 1513 (11th Cir.), *reh'g denied*, 851 F.2d 366 (11th Cir. 1991)).

The cases cited by the Debtors themselves establish that section 553(a)(3) has no application when a debt owed to a debtor was incurred by the creditor in good faith and in the ordinary course of business. *See* Obj. at 14 (citing *N.Y. County Nat'l Bank v. Massey*, 192 U.S. 138 (1904) (allowing setoff of deposits made in the days preceding bankruptcy petition); *Huisinga v. Nat'l Bank of Waterloo (In re Bohlen Enters., Ltd.)*, 78 B.R. 556, 560-61 (Bankr N.D. Iowa 1987) (finding section 553(a)(3) inapplicable if deposits are "accepted in good faith in the ordinary course of business"). The alleged debt at issue here was "incurred" by WMB (at a time when it was controlled by WMI), not by the FDIC-Receiver, and the Debtors have argued strenuously in their turnover action that the debt was incurred in the ordinary course of WMB's business. *See* Turnover Compl. ¶ 22 ("Each of the Accounts was established and maintained in accordance with internal policies and procedures of WMI and its subsidiaries governing 'On-Us,' or intracorporate, deposit accounts."); Oct. 22, 2009 Hr'g Tr. at 10-12. Whether those assertions will be supported when the matters have been litigated to conclusion remains to be seen, but WMI cannot have it both ways in that litigation.[8]

The Debtors' effort to read into section 553(a)(3) a restriction on post-petition reassignment of debt that is not provided for in the plain language of the statute must also be rejected. In drafting section 553(a)(3), Congress expressly chose not to include such a restriction, even though it had done so in the neighboring provision governing post-petition transfer of claims. *See* 11 U.S.C. § 553(a)(2) (prohibiting setoff based on a "claim" that "was

---

[8] The FDIC-Receiver reiterates its prior reservation of all arguments set forth in opposition to the Debtors' motion for summary judgment in the turnover proceeding, none of which are conceded.

transferred by an entity other than the debtor, to such creditor – (A) after the commencement of the case; or (B)(i) after 90 days before the date of filing of the petition; and (ii) while the debtor was insolvent . . . ."). The omission of similar language in section 553(a)(3) entirely refutes the Debtors' argument here. *See, e.g., Russello v. United States*, 464 U.S. 16, 23 (1983) ("[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). None of the cases cited by the Debtors applied section 553(a)(3) to prohibit setoff by a creditor who took responsibility for a pre-existing debt that the debtor itself asserts was incurred in the ordinary course of business.

*Finally*, the Debtors do not challenge the basis for the FDIC-Receiver's setoff rights under nonbankruptcy law with respect to the Disputed Deposit Balances, which section 553 expressly preserves. In that regard, even if the scope of the FDIC-Receiver's statutory setoff rights under 12 U.S.C. § 1822(d) is limited, the FDIC-Receiver unquestionably also holds common law bankers' setoff rights up to the full amount of those balances, as confirmed in WMB's standard terms and conditions for business accounts, which the Debtors have not challenged.[9]

### C. The Status of the 4234 Account Is Subject to Numerous Disputed Issues of Fact

The Debtors' final assertion is that the balances held in the so-called 4234 account are beyond the reach of section 9.5 of the P&A Agreement because that account allegedly was held at WMB fsb rather than at WMB. Obj. at 17-19. As an initial matter, this argument implicitly admits that the balances in the other four accounts, all indisputably held by WMB, are subject to

---

[9] The Debtors are correct that the Transaction Account Guarantee Program was not adopted until after the Debtors' petition date. The FDIC-Receiver's citation to a regulation implementing that program was mistaken.

section 9.5. The Debtors allege in their turnover complaint that the balances in those four accounts amount to at least $317,420,836. Compl. ¶ 19.

The remainder of the Debtors' argument in this regard merely underscores the significant factual issues that exist and must be addressed through discovery before the parties' respective rights and obligations can be resolved. For example, the Debtors argue that "the FDIC makes no assertion that the books and records of WMB and/or WMB fsb do not reflect that the [4234] Account was established and due and owing as the Debtors have asserted . . . ." Obj. ¶ 30. Of course, the FDIC-Receiver has not yet had the opportunity to conduct discovery into this issue, including depositions of the personnel who were responsible for maintaining those books and records, and the onus cannot be placed on the FDIC-Receiver to prove that negative under those circumstances.

In any event, the FDIC-Receiver has shown that the account statements for that account – which the Debtors themselves presented to this Court in their premature summary judgment motion – were issued by WMB, and not by WMB fsb. Not surprisingly, the Debtors have no factual response. Instead, they devote a lengthy paragraph to fanciful speculation about the possible reasons why their own account statements contradict their claim that the 4234 account was moved to WMB fsb. Here, at a minimum, is another issue on which discovery will be necessary.

Finally, the evidence advanced in opposition to the Debtors' summary judgment motion strongly suggests that the attempt to transfer the balance held in the 4234 account, which by the Debtors' own admission occurred in the waning days of WMB's existence while it was experiencing deposit outflows that ultimately amounted to $16.7 billion over a ten-day period, was motivated by an intent to hinder, delay or defraud WMB, its creditors or the FDIC as its

receiver, including by attempting to interfere with setoff rights of WMB or the FDIC-Receiver. Even if discovery were to show that the attempted transfer was successful, therefore (which is subject to material doubt), that transfer would be avoidable under applicable law.

The relief sought in the Motion merely seeks to preserve the status quo until these substantial issues of fact can be determined.[10]  *See Strumpf*, 516 U.S. at 20 (finding administrative hold on deposit account pending determination of setoff rights through litigation complied with sections 542(b) and 553(a) of the Bankruptcy Code and was not a violation of the automatic stay); *Gross*, 974 F.2d at 408 (finding that the bank's conservator acted within its authority in directing assuming bank to withhold deposit balances pursuant to provision of purchase and assumption agreement pending completion of the bank conservator's investigation into depositors' potential liability for bank's failure).  In the Motion, the FDIC-Receiver does not seek to exercise setoff rights but only to exercise its rights under section 9.5 of the P&A Agreement to preserve the status quo.  Once that has occurred, there will be sufficient time for the parties to conduct discovery and litigate these and many other disputed issues of fact to resolution.

## III.  THE FDIC-RECEIVER HAS NOT CONCEDED ANY DISPUTED ISSUE IN SEEKING RELIEF FROM THE AUTOMATIC STAY

The Debtors are simply wrong in their assertion that the FDIC-Receiver has conceded any contested issue with respect to their summary judgment motion by filing the Motion.  First,

---

[10] The Debtors' assertion that 11 U.S.C. § 502(d) somehow prevents the relief requested is also wrong.  As with many of the Debtors' other arguments, that assertion is predicated on the mistaken notion that the FDIC-Receiver is seeking authority now to exercise setoff rights, when in fact the Motion merely seeks to preserve those setoff rights in the face of the Debtors' inappropriate turnover motion.  In any event, section 502(d) only "should be used to disallow a claim *after the entity is first adjudged liable*; otherwise, the court could not determine if the exception applies . . ."  *Holloway v. I.R.S. (In re Odom Antennas, Inc.)*, 340 F.3d 705, 708 (8th Cir. 2003) (emphasis added); *see also Mktg. Res. Int'l v. PTC Corp. (In re Mktg. Res. Int'l Corp.)*, 35 B.R. 353, 356 (Bankr. E.D. Pa. 1984).

the Motion expressly states otherwise. *See* Motion at 11 n.7. Second, under section 9.5 of the P&A Agreement, the FDIC-Receiver may direct JPMC to withhold and return a "deposit balance" for a number of reasons, including expressly because it has determined that "all or any portion" of such balance "does not constitute a 'Deposit.'" *See* P&A Agreement § 9.5. It is therefore another fallacy that "[b]y definition" the Motion concedes that the Disputed Deposit Balances are deposits, as the Debtors assert. *See* Obj. ¶ 1. Finally, the Motion does not in any way represent a concession that JPMC does not have its own setoff rights with respect to the Disputed Deposit Balances. It was the Debtors who argued that the FDIC-Receiver's substantial rights could be ignored in the Debtors' headlong rush to obtain turnover of the Disputed Deposit Balances. JPMC agreed in the P&A Agreement that the FDIC-Receiver retained the right to protect its interests in such a circumstance, even if JPMC also had its own setoff rights, as it does.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Motion, the FDIC-Receiver respectfully requests that the Court grant the Motion and enter an order pursuant to 11 U.S.C. § 362(d) in the form submitted with the Motion modifying the automatic stay to allow the FDIC-Receiver to exercise its rights under section 9.5 of the P&A Agreement with respect to the Disputed Deposit Balances.

Dated: Wilmington, Delaware
      December 1, 2009

YOUNG CONAWAY STARGATT
& TAYLOR, LLP


M. Blake Cleary (No. 3614)
Jaime N. Luton (No. 4936)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mbcleary@ycst.com
jluton@ycst.com

- and -

Thomas R. Califano
John J. Clarke, Jr.
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Attorneys for the
Federal Deposit Insurance Corporation, as
Receiver for Washington Mutual Bank