# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WASHINGTON MUTUAL, INC., et al., | ) | Case No. 08-12229 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## OPINION[1]

Before the Court is the Motion of JPMorgan Chase Bank, National Association ("JPM") to Compel the Washington Mutual, Inc., Noteholders Group (the "WMI Noteholders Group") to Comply with Rule 2019 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court will grant the Motion.

## I. FACTUAL BACKGROUND

Prior to filing its chapter 11 petition, Washington Mutual, Inc. ("WMI") was a savings and loan holding company,[2] which owned Washington Mutual Bank ("WMB"). WMB owned a subsidiary bank, Washington Mutual Bank fsb ("WMBfsb"). Before failing, WMB was the nation's largest savings and loan association, with over 2,200 branches and $188.3 billion in deposits.

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to contested matters by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

[2] See 12 U.S.C. § 1467a.

Beginning in mid-2007, the slowdown in the nation's economy and, in particular, the deterioration in the residential housing market resulted in decreased revenue and earnings at WMI and trouble in the asset portfolio of WMB.  By September 2008, in the midst of a global credit crisis of unprecedented proportions, WMI and WMB faced a wave of ratings downgrades by the major credit-rating agencies.  Deteriorating confidence in WMB fueled a run on the bank, during which $16.7 billion in deposits was withdrawn over a ten-day period beginning September 15, 2008.

On September 25, 2008, WMB's primary regulator,[3] the Office of Thrift Supervision (the "OTS"), seized WMB and appointed the Federal Deposit Insurance Corporation (the "FDIC") as receiver.  WMB's takeover by the FDIC was the largest bank failure in the nation's history.  Immediately after its appointment as receiver, the FDIC sold substantially all the assets of WMB to JPM.  On September 26, WMI filed a chapter 11 petition, together with its affiliate, WMI Investment Corporation.

The WMI Noteholders Group first appeared in this case when its counsel (Bayard, P.A. and White & Case LLP) filed a notice of appearance dated October 20, 2008, on behalf of the Group.  Contemporaneously with the notice of appearance, counsel filed a

---

[3] WMB was also subject to regulatory oversight by the Office of the Comptroller of the Currency ("OCC"), the Board of Governors of the Federal Reserve System (the "Fed"), and the FDIC.

Verified Statement of White & Case LLP (the "W&C 2019 Statement") listing the names and addresses of 23 entities participating in the Group as of that date which collectively held over $1.1 billion in principal amount of notes issued by WMI.[4] In addition, the Statement represented that each entity "participating in the WMI Noteholders Group makes its own decisions as to how it wishes to proceed and does not speak for, or on behalf of, any other creditor, including the other participants participating in the WMI Noteholders Group in their individual capacities."

Through counsel, the WMI Noteholders Group has been active in these cases. Counsel for the WMI Noteholders Group has filed responsive pleadings relating to several contested matters[5] and

---

[4] On November 6, 2008, a notice of appearance was filed by Kasowitz, Benson, Torres & Friedman LLP as co-counsel to the WMI Noteholders Group stating that a list of participants in the WMI Noteholders Group was being provided, although no such statement was attached or filed with the Court.

[5] See Joinder of the Washington Mutual, Inc., Noteholders Group to the Debtors' Objection to the Motion Pursuant to 11 U.S.C. § 554(b) for an Order to the Debtor in Possession to Abandon Certain Multidistrict Prepetition Derivative Claims Pending in the U.S. District Court for the Western District of Washington (D.I. 506); Joinder of the Washington Mutual, Inc., Noteholders Group to Debtors' Objection to Proof of Claim Number 8 Filed by the Internal Revenue Service (D.I. 590); Objection by the Washington Mutual, Inc., Noteholders Group to Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a) for Approval of Settlement with JPMorgan Chase Bank, N.A. (D.I. 1324); Statement of the Washington Mutual, Inc., Noteholders Group in Opposition to (a) the Motion of Intervenor-Defendant Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank, to Stay or Dismiss the Adversary

3

appeared at numerous hearings.

On August 6, 2009, JPM filed a Motion to compel the WMI Noteholders Group to comply with Bankruptcy Rule 2019. The WMI Noteholders Group opposed the Motion. The Court held a hearing on August 24, 2009, at which the parties presented oral argument. At the conclusion of the hearing, the Court took the matter under advisement. The matter is ripe for decision.

II. JURISDICTION

This Court has jurisdiction over this matter, which is a core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A).

III. DISCUSSION

Rule 2019(a) provides in relevant part:

> In a chapter 9 municipality or chapter 11 reorganization case, except with respect to a committee appointed pursuant to § 1102 or 1114 of the Code, every entity or committee representing more than one creditor or equity security holder . . . shall file a verified statement setting forth (1) the name and address of the creditor or equity security holder; (2) the nature and amount of the claim or interest and the time of acquisition thereof unless it is alleged to have been acquired more than one year prior to the filing of the petition; (3) a recital of the pertinent facts and circumstances in connection with the employment of the entity or indenture trustee, and, in the case of a

---

Complaint, and (b) the Motion of Defendant JPMorgan Chase Bank, N.A. for Stay of Debtors' Adversary Proceeding (D.I. 1132).

4

>           committee, the name or names of the entity or
>           entities at whose instance, directly or
>           indirectly, the employment was arranged or
>           the committee was organized or agreed to act;
>           and (4) with reference to the time of the
>           employment of the entity, the organization or
>           formation of the committee, or the appearance
>           in the case of any indenture trustee, <u>the
>           amounts of claims or interests owned by the
>           entity, the members of the committee</u> or the
>           indenture trustee, <u>the times when acquired,
>           the amounts paid therefor, and any sales or
>           other disposition thereof</u>.  The statement
>           shall include a copy of the instrument, if
>           any, whereby the entity, committee, or
>           indenture trustee is empowered to act on
>           behalf of creditors or equity security
>           holders.  <u>A supplemental statement shall be
>           filed promptly, setting forth any material
>           changes in the facts contained in the
>           statement</u> filed pursuant to this subdivision.

Fed. R. Bankr. P. 2019(a) (emphasis added).

The WMI Noteholders Group does not dispute that the disclosure in the W&C 2019 Statement of only the names of the participants and the aggregate holdings of the WMI Noteholders Group is insufficient to comply with Rule 2019.  The WMI Noteholders Group argues instead that Rule 2019 is inapplicable, because it is not an "entity or committee representing more than one creditor."  Rather, the WMI Noteholders Group asserts that it is "simply a loose affiliation of creditors who, in the interests of efficiency are sharing the cost of advisory services in connection with the case."

   A.   <u>Plain Language of Rule 2019</u>

   The Rule requires disclosure from any "entity or

5

[unofficial] committee representing more than one creditor or equity security holder." Counsel to the WMI Noteholders Group contends that the Group is neither an entity nor an ad hoc committee within the meaning of the Rule because the Group is:

> simply a loose affiliation of WMI creditors who, in the interest of efficiency, are sharing the cost of advisory services in connection with the case. The Noteholders do not speak for, have no ability to bind and owe no duties to anyone who is not a Noteholder. Perhaps as importantly, the Noteholders don't even have the right to speak for or bind individual Noteholders absent their individual consent. Each Noteholder acts in its own right and on its own behalf; issues are discussed and negotiated among the individual Noteholders, who often hold competing views about certain issues, and ultimately agreed to before a position is formally taken by the Noteholders.

Counsel's argument proves too much; the above statement applies with equal force to ad hoc committees as well as to the WMI Noteholder Group.

Ad hoc committees, due to their unofficial status, are typically a "loose affiliation" of creditors. The at-will nature of committee membership is one of the defining characteristics of ad hoc committees. See Robert J. Rosenberg, et al., Ad Hoc Committees and Other (Unofficial) Creditor Groups: Management, Disclosure and Ethical Issues, ABI Business Reorganization Committee Newsletter (June 2008), available at http://www.abiworld.org/committees/newsletters/busreorg/vol7num2/AdHoc.pdf

(noting that "[b]ecause membership in an ad hoc committee is at will, the roster of members can change frequently and radically over the course of a bankruptcy"). Because membership is at-will, an ad hoc committee cannot bind members absent their consent, and generally all members must agree on any position the committee takes.[6] Otherwise, dissenting members will simply leave the committee.

Here, the WMI Noteholders Group possesses virtually all the characteristics typically found in an ad hoc committee, save the name. The WMI Noteholders Group consists of multiple creditors holding similar claims. The members of the WMI Noteholders Group filed pleadings and appeared in these chapter 11 cases collectively, not individually. The WMI Noteholders Group retained counsel, which takes its instructions from the Group as a whole. While counsel contends that it speaks only for the members of the WMI Noteholders Group that agree with the filing of each pleading or position taken in each appearance, counsel for the Group has never advised this Court that it is representing less than all the Group. Rather the pleadings and appearances by counsel demonstrate that the Group and counsel represent not each individual member in its individual capacity, but rather the Group

---

[6] Of course, ad hoc committees may voluntarily agree to formalize their relationship through committee bylaws. In such a situation, membership may cease to be at-will and certain issues may be governed in advance by agreement of the committee members.

7

as a whole. In fact, it is the collective $1.1 billion in holdings of the members of the Group that counsel uses to argue in favor of the Group's position, not each individual's separate holding.

Under the plain language of Rule 2019, therefore, the Court finds that although the WMI Noteholders Group call themselves a Group, they are in fact acting as an <u>ad</u> <u>hoc</u> committee or entity[7] representing[8] more than one creditor. The WMI Noteholders Group,

---

[7] The Bankruptcy Code defines the term "entity" to include any "person, estate, trust, governmental unit, and United States trustee." 11 U.S.C. § 101(15). The term "person" is defined to include an "individual, partnership, and corporation." 11 U.S.C. § 101(41). By use of the word "includes," the definition of "entity" is non-exclusive. Black's Law Dictionary defines an "entity" as "an organization (such as a business or a governmental unit) that has a legal identity apart from its members." <u>Black's Law Dictionary</u> 573 (8th ed. 2004). <u>See</u> <u>also</u> <u>Merriam-Webster's Collegiate Dictionary</u> 387 (10th ed. 1997) (defining "entity" as "(1)(a) being, existence; especially: independent, separate, or self-contained existence (b) the existence of a thing as contrasted with its attributes; (2) something that has separate and distinct existence and objective or conceptual reality"). The WMI Noteholders Group is an "entity" within the meaning of Rule 2019 because it is an organization that has an identity apart from its individual members.

[8] Although not defined in the Bankruptcy Code, "representing" requires that one simply act on behalf of another. <u>See</u> <u>Black's Law Dictionary</u> 1328 (8th ed. 2004) (defining "representative" as "[o]ne who stands for or acts on behalf of another [the owner was the football team's representative at the labor negotiations]. See agent."); <u>Merriam-Webster's Collegiate Dictionary</u> 993 (10th ed. 1997) (defining "represent" as "to take the place of in some respect [or] to act in the place of or for usually by legal right"). That is exactly the situation here. The WMI Noteholders Group counsel has repeatedly filed papers and made appearances at various hearings representing the constituent members as part of the WMI Noteholders Group.

therefore, must comply with Rule 2019.

B. Case Law

The case law supports the Court's conclusion that the WMI Noteholders Group is an ad hoc committee or entity representing more than one creditor and, therefore, covered by Rule 2019. See In re Northwest Airlines Corp., 363 B.R. 701 (Bankr. S.D.N.Y. 2007) ("Northwest I"). In Northwest I, the debtors moved to require an ad hoc committee of equity security holders to comply with the disclosure requirements of Rule 2019, including the disclosure of the amount of claims or interests owned by committee members, the time of acquisition, and amounts paid for the interests. Id. at 701. The ad hoc committee argued that Rule 2019 did not apply because no member of the committee represented any party other than itself and only the law firm appearing on behalf of the committee represented more than one equity security holder. Id. at 703. Thus, according to the ad hoc committee, only the law firm appearing on behalf of the committee was required to comply with the disclosure requirements of Rule 2019. Id.

Judge Gropper disagreed, finding that Rule 2019 applied to the ad hoc committee:

---

Accordingly, the WMI Noteholders Group was "representing more than one creditor or equity security holder."

9

> Rule 2019 more appropriately seems to apply to the formal organization of a group of creditors holding similar claims, who have elected to consolidate their collection efforts. That is exactly the situation in this case, except that here there are shareholders rather than creditors. Where an <u>ad</u> <u>hoc</u> committee has appeared as such, the committee is required to provide the information plainly required by Rule 2019 on behalf of each of its members.
>
> <u>Ad</u> <u>hoc</u> or unofficial committees play an important role in reorganization cases. By appearing as a "committee" of shareholders, the members purport to speak for a group and implicitly ask the court and other parties to give their positions a degree of credibility appropriate to a unified group with large holdings. Moreover, the Bankruptcy Code specifically provides for the possibility of the grant of compensation to "a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 503(b)(3)(D). A committee purporting to speak for a group obviously has a better chance of meeting the "substantial contribution" test than an individual, as a single creditor or shareholder is often met with the argument that it was merely acting in its own self-interest and was not making a "substantial contribution" for purposes of § 503(b)(3).

<u>Id.</u> at 703 (internal quotations and citations omitted).

The WMI Noteholders Group relies on an order entered in the <u>Scotia Development</u> case in which the court denied a motion to compel an <u>ad</u> <u>hoc</u> noteholder group to comply with Rule 2019, finding the noteholder group was "not a 'committee' within the meaning of Bankruptcy Rule 2019." <u>In re Scotia Development LLC</u>,

10

No. 07-20027 (Bankr. S.D. Tex. Apr. 18, 2007) (order denying motion to compel Rule 2019 disclosures). However, the order only sets forth the court's conclusion, with no supporting authority or legal reasoning. Accordingly, the Court does not find the Scotia Development order persuasive. See generally, In re Charter Behavioral Health Sys., LLC, 292 B.R. 36, 39 n.5 (Bankr. D. Del. 2003) (noting the Court "consistently refuse[s] to consider bench rulings . . . because they often do not have the benefit of reflection and many times do not articulate all of the reasons behind the decision"). Rather, the Court agrees with the well-reasoned decision of Judge Gropper in Northwest I and concludes that Rule 2019 requires disclosure from the members of the WMI Noteholders Group.

    C.   History of Rule 2019

The WMI Noteholders Group argues, however, that the history of Rule 2019 supports its argument that its members should not be required to make the disclosure mandated by that Rule. Generally, legislative history should not be relied upon where the language of a statute or rule is clear. See Hay Group, Inc. v. E.B.S. Acquisition Corp., 360 F.3d 404, 406 (3d Cir. 2004) ("The Supreme Court has repeatedly explained that recourse to legislative history or underlying legislative intent is unnecessary when a statute's text is clear and does not lead to an absurd result.") (quoting United States ex rel. Mistick PBT v. Housing Authority of

City of Pittsburgh, 186 F.3d 376, 395 (3d Cir. 1999)). Even if the language of Rule 2019 were not clear and unambiguous, however, its history does not support the WMI Noteholders Group's argument.

The disclosure requirements of Rule 2019 have a lengthy history in corporate reorganization cases. The direct antecedent of Rule 2019 was Rule 10-211 under former Chapter X of the Bankruptcy Act, which was adopted following a comprehensive report on committees in corporate reorganizations authored by Professor (later Justice) William O. Douglas in the 1930's. See Report on the Study and Investigation of the Work, Activities, Personnel and Functions of Protective and Reorganization Committees (1937) (hereafter the "SEC Report"). See also In re Northwest Airlines Corp., 363 B.R. 704, 707 (Bankr. S.D.N.Y. 2007) ("Northwest II").

Prior to the enactment of Chapter X, reorganization as a practical matter was unavailable under the Bankruptcy Act of 1898. Daniel Bussel, Coalition-Building Through Bankruptcy Creditors' Committees, 43 UCLA L. Rev. 1547, 1552 (1996). Absent a statutory reorganization scheme, federal courts created what was known as federal equity receivership. See Charles Jordan Tabb, The History of the Bankruptcy Laws in the United States, 3 Am. Bankr. Inst. L. Rev. 5, 21-22 (1995). Equity receiverships were subject to many abuses, however, which were the subject of the SEC Report.

The WMI Noteholders Group argues that the primary evil which the SEC Report identified (and which Rule 2019 was meant to

remedy) was the use of deposit agreements by unofficial committees in equity receiverships (whereby creditors deposited their securities with a designated institution and gave up control of their rights in the reorganization to the committee). See generally Evan D. Flaschen and Kurt A. Mayr, Ad Hoc Committees and the Misuse of Bankruptcy Rule 2019, 16 Norton J. Bankr. L. & Prac. 6 Art. 3, at 2-3 (2007) (asserting that the predecessor of Rule 2019 was adopted to combat only the abuse of deposit agreements in committee formation); Sparkle L. Alexander, Note, The Rule 2019 Battle: When Hedge Funds Collide With The Bankruptcy Code, 73 Brook. L. Rev. 1411, 1420 (2008) ("[I]t is clear that [Rule 2019] was enacted to specifically address abuses by protective committees in the 1930s that solicited deposit agreements from investors."); James M. Shea, Jr., Note, Who Is at the Table? Interpreting Disclosure Requirements for Ad Hoc Groups of Institutional Investors Under Federal Rule of Bankruptcy Procedure 2019, 76 Fordham L. Rev. 2561, 2594 (2008) ("Rule 2019 applies to those in fiduciary/agency relationships who are not otherwise under the supervision of the court."); 9 King et al., Collier on Bankruptcy, ¶ 2019.01 (15th ed. 2009) (noting Rule 2019 "covers entities which act in a fiduciary capacity that are not otherwise subject to the control of the court," but adding that "[t]he scope of [Rule 2019] is facially broader, however, reaching any entity having multiple representations").

13

Although this interpretation of history has gained significant support in academic research, it overlooks the significant fact that the SEC Report envisioned a comprehensive legislative scheme to combat a variety of problems related to the committee system in equity receiverships and reorganizations. After a thorough study of the state of reorganization and perceived problems and abuses with equity receiverships, the SEC Report identified several recommendations for improvement, only one of which was the inspiration for what is presently Rule 2019.[9] In addition to the disclosure recommendation which eventually became Rule 2019, however, the SEC Report specifically <u>recommended</u>

---

[9] The SEC Report recommended:
> Every person who represents more than twelve creditors or stockholders (including committees and indenture trustees) and who appears in the proceedings shall file with the court a sworn statement setting forth the amount of securities or claims owned by him, the dates of acquisition, the amounts paid therefor, and any sales or transfers thereof. Attorneys who appear in the proceedings should be required to furnish similar information respecting their clients. <u>This will provide a routine method of advising the court and all parties in interest of the actual economic interest of all persons participating in the proceedings.</u>

SEC Report at 902 (emphasis added). <u>See also</u> <u>Northwest I</u>, 363 B.R. at 704 (noting that the purpose of Rule 10-211, and later 2019, is to ensure "disclosure of the 'personnel and activities of those acting in a representative capacity' in order to help foster fair and equitable plans free from deception and overreaching." (<u>quoting</u> 13A King <u>et al.</u>, <u>Collier on Bankruptcy</u>, ¶ 10-211.04 (14th ed. 1976))).

the elimination of deposit agreements.[10]

Thus, history confirms that Rule 2019 was not limited to deposit agreements. The predecessor of Rule 2019 was designed to "provide a routine method of advising the court and all parties in interest of the actual economic interest of all persons participating in the proceedings." SEC Report at 902. The mere fact that the SEC Report made other recommendations to combat different problems does not change the scope or applicability of Rule 2019 to the case at bar.

The WMI Noteholders Group contends, however, that the Rule was only intended to apply to "a body that purports to speak on behalf of an entire class or broader group of stakeholders in a fiduciary capacity with the power to bind the stakeholders that are members of such a committee." The WMI Noteholders Group's argument is premised on the erroneous assumption that the Group owes no fiduciary duties to other similarly situated creditors,

---

[10] The SEC Report stated:
> [W]e recommend at this time that with respect to all such reorganizations, legislation be adopted which will provide . . . [t]hat deposit agreements be outlawed, except where it may be shown that physical possession of the security is necessary in order to protect adequately the interests of investors; and that the powers contained in deposit agreements, in the cases where their use is authorized, be limited both in duration and in scope to the particular needs of the occasion.

SEC Report at 906.

15

either in or outside the Group. The case law, however, suggests that members of a class of creditors may, in fact, owe fiduciary duties to other members of the class. *See* Young v. Higbee Co., 324 U.S. 204, 210 (1945) (finding that stockholders, "by appealing from a judgment which affected a whole class of stockholders owed an obligation to them, the full extent of which we need not now delineate. Certainly, at the very least they owed them an obligation to act in good faith."); Official Committee of Equity Security Holders of Mirant Corp. v. The Wilson Law Firm, P.C. (In re Mirant Corp.), 334 B.R. 787, 793 (Bankr. N.D. Tex. 2005) ("It is a well established principle of bankruptcy law that when a party purports to act for the benefit of a class, the party assumes a fiduciary role as to the class.") Indeed, Judge Gropper in Northwest II, while not expressly finding that fiduciary duties existed between the members of the ad hoc committee and the rest of the class, noted the importance of the relationship between the committee and other similarly situated shareholders:

> By acting as a group, the members of the shareholders' Committee subordinated to the requirement of Rule 2019 their interest in keeping private the prices at which they individually purchased or sold the Debtors' securities. This is not unfair because their negotiating decisions as a Committee <u>should be based on the interest of the entire shareholders' group, not their individual financial advantage</u>.

363 B.R. at 708 (emphasis added). It is not necessary, at this

16

stage, to determine the precise extent of fiduciary duties owed but only to recognize that collective action by creditors in a class implies some obligation to other members of that class.

    D.    <u>Proposed Amendment of Rule 2019</u>

Recently efforts have been made to repeal Rule 2019. <u>See</u> Letter from Securities Industry and Financial Markets Association and The Loan Syndication and Trading Association to Peter G. McCabe, Secretary, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States 1 (November 30, 2007) (<u>available</u> <u>at</u> http://www.uscourts.gov/rules/BK%20 Suggestions%202007/07-BK-G-.pdf).

In response, however, the Advisory Committee has recommended changes to the Rule that require more, rather than less, disclosure. The proposed amended Rule would still require that "every entity, group, or committee that consists of or represents more than one creditor or equity security holder and, unless the court directs otherwise, every indenture trustee," make certain disclosures. The Rule, however, has expanded the disclosures required to include information of the parties' "disclosable economic interest" which is "intended to be sufficiently broad to cover any economic interest that could affect the legal and strategic positions a stakeholder takes in a chapter 9 or chapter 11 case." Report of the Advisory Committee on Bankruptcy Rules, Appendix B, Committee Notes to Rule 2019 (May 11, 2009) (<u>available</u>

17

at http://www.uscourts.gov/rules/proposed0809/BK_Rules_Forms_Amendments.pdf).

Although much has changed in the financial universe since 1937, concerns regarding the actual economic interests of creditors participating in bankruptcy cases still exist. The proliferation of short-selling and the advent of myriad derivative products now allow creditors to take multiple stakes in the capital structure of debtors. Such varied holdings have the potential to create complex, conflicting incentives for large creditors. In addition, collective action by creditors through the use of ad hoc committees or groups allows creditors to utilize other group members' holdings to obtain a greater degree of influence in a bankruptcy case than single creditors acting alone. As such, the policies behind the disclosure requirements of Rule 2019 are as relevant today as they were 70 years ago.

The implications of creditors holding claims at different levels of the debtors' capital structure is an issue that has risen to prominence in recent years. See James M. Shea, Jr., Note, Who Is at the Table? Interpreting Disclosure Requirements for Ad Hoc Groups of Institutional Investors Under Federal Rule of Bankruptcy Procedure 2019, 76 Fordham L. Rev. 2561, 2622 (2008) (noting that "one major issue in both [the Adelphia and Northwest] cases was the cross-structure holdings of the investors involved in ad hoc groups because these cross-structure holdings were

believed to influence the positions taken by the parties"); Kevin J. Coco, <u>Empty Manipulation: Bankruptcy Procedure Rule 2019 and Ownership Disclosure in Chapter 11 Cases</u>, 2008 Colum. Bus. L. Rev. 610, 619-22 (2008) (discussing various hypothetical scenarios where a creditor's net economic interest is in conflict with its position as a creditor in the bankruptcy case); Henry T. C. Hu & Bernard S. Black, <u>Equity and Debt Decoupling and Empty Voting II: Importance and Extensions</u>, 156 U. Pa. L. Rev. 625, 728-35 (2008) (noting the theoretical possibility of the "empty creditor" scenario in bankruptcy cases where a creditor appears to hold a substantial claim but really has no interest at stake); Stephen J. Lubben, <u>Credit Derivatives and the Future of Chapter 11</u>, 81 Am. Bankr. L.J. 405, 407 (2007) (stating issues in chapter 11 cases arise when creditors no longer have motivation to act as such). The proliferation of complex financial instruments results in a situation where, although a creditor is nominally a member of a certain class of creditors through ownership of securities in that class, the creditor may in fact have a total economic interest adverse to the class as a whole.

While this possibility is a strong argument in favor of disclosure of the total economic interest of <u>all</u> creditors, the unique problems associated with collective action by creditors through <u>ad</u> <u>hoc</u> committees or groups requires disclosure for those groups in particular. Collective action of creditors through the

19

use of an ad hoc committee or group is a form of leverage, wherein the parties utilize other group members' holdings to obtain a greater degree of influence on the case.  This enables theoretically better returns than if creditors were to act individually in a case.  This is especially true, for example, where a group or committee controls one-third of a class of claims, which might allow the group to block confirmation of a plan.  See 11 U.S.C. § 1126(c) (requiring two-thirds in amount voting of a class of creditors to accept a plan).

The Advisory Committee on Bankruptcy Rules recognized the potential problems posed by this and has proposed an amended Rule 2019 to modernize the rule.  While existing Rule 2019 may not require the disclosure of all the types of economic interests that exist in the modern financial system, that is not a reason to fail to enforce the existing Rule as written.

IV. CONCLUSION

For the reasons set forth above, the Court will grant the Motion of JPM.

An appropriate order is attached.

Dated: December 2, 2009

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge