**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WASHINGTON MUTUAL, INC., et al., | ) | Case No. 08-12229 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### OPINION[1]

Before the Court is the objection of Washington Mutual, Inc. ("WMI") and WMI Investment Corp. (collectively, the "Debtors") to the claim of MSG Media, a division of Madison Square Garden, L.P. ("MSG"). For the reasons stated below, the Court will overrule the objection.

### I. BACKGROUND

WMI was a savings and loan holding company, which owned Washington Mutual Bank ("WMB"). WMB was the nation's largest savings and loan association, having over 2,200 branches and holding $188.3 billion in deposits. Beginning in 2007, revenues and earnings decreased at WMI, and WMB's asset portfolio declined in value. By September 2008, in the midst of a global credit crisis, ratings agencies significantly downgraded WMI's and WMB's credit ratings. A bank run ensued; $16.7 billion in deposits

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to contested matters by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

were withdrawn over a ten day period, beginning September 15, 2008.

On September 25, 2008, WMB's primary regulator, the Office of Thrift Supervision, closed WMB and appointed the Federal Deposit Insurance Corporation (the "FDIC") as receiver. The FDIC's takeover of WMB marked the largest bank failure in the nation's history. The FDIC sold substantially all the assets and deposits of WMB to J.P. Morgan Chase, National Association ("J.P. Morgan") through the execution of a Purchase & Assumption Agreement (the "P&A Agreement").

WMI filed a chapter 11 petition shortly thereafter, on September 26, 2008.

Prior to the bankruptcy filing, WMB and MSG were parties to a pre-petition contract, the Naming Rights and Sponsorship Agreement (the "Agreement"). MSG argues here that WMI was also a party to the Agreement. Under the Agreement, WMB and WMI obtained certain naming rights, signage, and other sponsorship benefits in connection with the Theater at Madison Square Garden, in return for certain monetary consideration.

After taking over and selling WMB, the FDIC gave MSG notice that the Agreement was being repudiated on April 30, 2009. MSG filed a claim in the receivership proceeding against WMB and a proof of claim in the bankruptcy case against WMI, both in the amount of $7,596,726.

On May 5, 2009, MSG filed the Motion of MSG Media for Relief from the Automatic Stay to Terminate the Naming Rights and Sponsorship Agreement. An order was entered granting the requested relief, upon agreement of MSG and the Debtors.

On June 26, 2009, the Debtors sought to disallow MSG's Claim pursuant to the Debtors' Sixth Omnibus (Substantive) Objection to Claims. As grounds for the disallowance of the MSG Claim, the Objection states: "This claim relates to a Naming Rights and Sponsorship Agreement, dated as of May 1, 2007, between the claimant and [WMB]. Neither Debtor is a party to such agreement and, therefore, has no liability with respect thereto." On July 20, 2009, MSG filed its response and opposition to the Objection, asserting that WMI is a party to the Agreement and therefore liable for the Claim.

On August 24, 2009, the Court heard oral argument with respect to the merits of the Claim and the Objection. The Court instructed the parties to submit supplemental briefs addressing, inter alia, whether a non-signing, but named party can be bound to a contract. The briefs were filed on September 9, 2009, and this matter is now ripe for decision.

II. <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this contested matter pursuant to U.S.C. §§ 157 & 1334. This matter

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),(B), & (O).

III. DISCUSSION

    A.   New York law

The parties agree that the Agreement provides that it is to be governed by New York law. New York law provides that "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." W.W.W. Assocs., Inc. v. Giancontieri, 566 N.E. 2d 639, 642 (N.Y. 1990). See also LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) (stating that, "[i]n interpreting a contract under New York law, 'words and phrases . . . should be given their plain meaning . . . .'") (quoting Shaw Group, Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 121 (2d Cir. 2003)). Furthermore, in interpreting a contract, a court is to consider the contract as a whole and construe it "in a manner that confers meaning upon all of its terms." Energy Transp., Ltd. v. M.V. San Sebastian, 348 F. Supp. 2d 186, 203 (S.D.N.Y. 2004). See also Kinek v. Paramount Commc'ns, Inc., 22 F.3d 503, 509 (2d Cir. 1994) (noting a principle of contract construction that "all provisions of a contract [shall] be read together as a harmonious whole . . . ."). In construing a contract, "it is the objective intent of the

4

parties that controls." Klos v. Lotnicze, 133 F.3d 164, 168 (2d Cir. 1997).

B. <u>Language of the Agreement</u>

MSG and WMI both contend that the plain language of the Agreement supports their respective positions. MSG and WMI focus on the following relevant provisions of the Agreement. The Preamble to the Agreement reads, in pertinent part:

> This Naming Rights and Sponsorship Agreement . . . is made and entered into . . . by and among Washington Mutual Bank, a federal savings association . . . for itself and on behalf of its parent company, Washington Mutual, Inc. (collectively, "WaMu"), and MSG Media, a division of Madison Square Garden, L.P. . . . regarding certain advertising, naming and sponsorship rights obtained by WaMu from MSG in connection with certain MSG owned and/or produced properties. . . . Each of WaMu and MSG may be individually referred to as a "Party" and collectively are referred to as the "Parties."

Thereafter, the term "WaMu" is used throughout the body of the Agreement. The representation and warranties provision of the Agreement in particular, states that:

> MSG and WaMu hereby each represents and warrants for itself that it is authorized to grant all of the rights granted to the other pursuant to this Agreement.

Neither "WaMu" nor WMI appears in the signature block. Rather, the relevant signature block reads:

> Accepted and agreed to by:
> WASHINGTON MUTUAL BANK
> By: [signature of Steven Rotella]
> Name: Steve Rotella
> Title: President & COO

5

The Agreement was signed by Steven Rotella who, at the time, was the president and chief operating officer of both WMB and WMI.

C. <u>Lack of Signature</u>

WMI argues that the lack of a signature on its behalf is dispositive; it cannot be bound by the Agreement.

1. <u>Statute of Frauds</u>

WMI contends that the Agreement is void as to it under the statute of frauds, as incorporated by New York Law (the "Statute of Frauds"). The Statute of Frauds, provides, in relevant part:

> a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
> 1. By its terms is not to be performed within one year from the making thereof
> . . . .

N.Y. Gen. Oblig. Law § 5-701 (McKinney 2002).

By its terms, the Agreement is properly subject to the Statute of Frauds requirements because it contemplates a contract term of five (5) years and, therefore, is not capable of being performed within one year.

The Statute of Frauds requires that the Agreement must have been "subscribed" to by the party to be charged or "by his lawful agent." New York courts have interpreted the Statute of Frauds' "subscription" requirement as requiring a signature or other mark showing assent. <u>See</u> <u>Steinberg v. Universal Machinenfabrik GMBH</u>, 264 N.Y.S. 2d 757 (N.Y. App. Div. 1965), <u>aff'd</u> 223 N.E. 2d 567

6

(N.Y. 1966).

WMI argues that Mr. Rotella signed in his capacity as an officer of WMB only. MSG responds that the Statute of Frauds is satisfied because the Agreement was signed by WMB as agent for WMI.

### 2. Contract law Principles

WMI contends that even if the Statute of Frauds were satisfied, WMI cannot be bound by the Agreement pursuant to basic New York contract law. To enforce a contract against a party, the objective assent of the party to be charged is necessary and it must be shown that the party has conducted itself in such a manner that its assent may be fairly inferred. New York Tel. Co. v. Teichner, 329 N.Y.S. 2d 689, 691 (N.Y. Dist. Ct. 1972).

A party's signature may be prima facie evidence of that party's assent to the contract; however, a signature is not required. See Imero Fiorentino Assocs., Inc. v. Green, 447 N.Y.S. 2d 942 (N.Y. App. Div. 1982). If there is no signature, then other affirmative action, which objectively manifests the requisite assent, is required. Dreyfus & Co. v. Maresca, 224 N.Y.S. 2d 813, 815 (N.Y. City Ct. 1961) (noting that a contract "need not be signed so long as there is other proof that the parties actually agreed on it").

WMI argues that how a contract is signed can be determinative of the capacity in which it is signed, and thereby,

7

the extent of liability thereunder. WMI relies on the <u>Soundview Woods, Inc. v. Town of Mamaroneck</u> case, in which the court found that a party that had not signed a contract was not bound by it. 178 N.Y.S. 2d 800 (N.Y. Sup. Ct. 1958).

The Court finds that the <u>Soundview Woods</u> case is not persuasive, however, because the decision was premised on a statute which required actions taken by the town to be approved by the town board and executed by the town supervisor. <u>Id.</u> at 805. The <u>Soundview Woods</u> Court concluded that such requirements could not be delegated to an agent. <u>Id.</u>

WMI also cites a line of cases dealing with whether individuals who sign on behalf of corporations can also be held liable individually. See <u>Joseph v. David M. Schwarz/ Architectural Services, P.C.</u>, 957 F. Supp. 1334 (S.D.N.Y. 1997) (holding that firm's principal was not liable individually on a contract because signature was on behalf of corporation "by" [principal]); <u>Salzman Sign Co. v. Beck</u>, 176 N.E. 2d 74 (N.Y. 1961) (holding individual not liable despite contractual clause in which signatory officer personally guaranteed payment because it was signed in his capacity as president only). <u>Cf.</u> <u>Mencher v. Weiss</u>, 114 N.E. 2d 177 (N.Y. 1953) (finding certain corporate officers personally liable because they signed the agreement both in their corporate capacity and in their individual capacities).

These cases are easily distinguishable, however, because in the present case, there is no question raised about the liability

8

of the individual signing the Agreement (Mr. Rotella).

MSG points to cases that hold an entity can be bound by a contract though not a signatory. In Larido v. Crusader Mfg. Co., 155 N.Y.S. 2d 715 (N.Y. Sup. Ct. 1956), the plaintiff entered into an agreement with Crusader Manufacturing Corporation ("Corporation"), an entity affiliated with the defendant partnership, Crusader Manufacturing Company ("Company"). Although the agreement contained a restrictive covenant applicable to Company, it argued that it was not a party to the agreement because it was not a signatory. Id. at 717. The court found that Company was bound by the agreement, because it had notice and knowledge of the restrictive covenant through its agent, a general partner. Similarly MSG argues that WMI had knowledge, through Mr. Rotella, of the Agreement's binding effect on WMI, as reflected in the language of the Agreement.

   D.   Agency

      1.   Actual or Implied

MSG argues that WMI should be held liable on the Agreement because WMB was acting as WMI's agent. As a result, MSG argues that WMB's signature satisfies the Statute of Frauds requirement of a subscription by a lawful agent and comports with the requirement of basic contract law that there be an objective manifestation of assent.

A subsidiary is not an agent of its parent simply because of their corporate relationship. Mouawad Nat'l Co. v. Lazare Kaplan

9

Int'l. Inc., 476 F. Supp. 2d 414, 421 (S.D.N.Y. 2007) (holding under New York law, that a corporate parent is not automatically liable for the acts of its wholly owned subsidiary, even where the parent and subsidiary corporations have interlocking directorates). See Maung Ng We v. Merrill Lynch & Co., Inc., No. 99-9687, 2000 WL 1159835, at *4 (S.D.N.Y. Aug. 15, 2000) ("Consistent with principles of corporate distinctiveness, an obligation does not become the obligation of the parent under the doctrine of agency just because the parent owns the subsidiary's stock"). See also, Restatement (Second) of Agency § 14M (1958) ("A corporation does not become an agent of another corporation merely because a majority of its voting shares is held by the other.").

However, a parent can be held liable for actions taken by its subsidiary "under traditional principles of agency". Royal Indus., Ltd. v. Kraft Foods, Inc., 926 F. Supp. 407, 413 (S.D.N.Y. 1996) ("[J]ust as one corporation can hire another to act as its agent, a parent can commission its subsidiary to do the same.").

Agency can be established if the subsidiary had actual or apparent authority to act for its parent. Actual agency is created by "written or spoken or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account."

10

Itel Containers Int'l Co. v. Atlanttrafik Exp. Serv. Ltd., 909 F.2d 698, 702 (2d Cir. 1990) (quoting Restatement of Agency § 26). Actual agency "depends upon the actual interactions of the putative agent and principal and not on the perception a third party may have of the relationship." Manchester Equip. Co., Inc. v. American Way and Moving Co., Inc., 60 F. Supp. 2d 3, 8 (E.D.N.Y. 1999). Implied agency, by contrast "depends upon the reasonable conclusion of a third party, based upon the actions of the principal, that the agent has the authority to bind the principal." Id. See, also, G.D. Searle & Co. v. Medicore Commc'ns, 843 F. Supp. 895, 904 (S.D.N.Y. 1994) ("Agency is the relationship that results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."); Mouawad Nat'l Co., 476 F. Supp. 2d at 422 ("The principal's consent may be manifested by written or spoken words or any other conduct of the principal directed at the agent in the case of actual authority, or at a third person in the case of apparent authority").

MSG argues that an agency relationship existed between WMI and WMB as evidenced by the provisions of the Agreement. MSG begins by pointing to the language of the Preamble that expressly states that WMB is acting "for itself and on behalf of "WMI". MSG also points to the representation and warranty clause as

11

evidence that WMB had authority to act for WMI. MSG also places significance on Mr. Rotella's capacity as an officer of both WMB and WMI and his ability to act on behalf of each.

WMI counters that there is no agency relationship and that the representations are at best misrepresentations running against WMB. Royal Indus. Ltd. v. Kraft Foods, Inc., No. 94-9334, 1998 WL 67671, at *3 (S.D.N.Y. Feb. 18, 1998) ("The representations of an alleged agent cannot create authority.")

The Court concludes that the language of the Preamble evidences that WMI was acting as WMB's agent. It states that WMB enters into the Agreement "for itself and on behalf of" WMI. The Court agrees with MSG's contention that in keeping with the language of the Agreement, it would be strange for WMI to sign the Agreement. The Agreement was structured so that WMB was acting as WMI's agent. The words "on behalf of" clearly intend to create an agency relationship.

Further, the Court finds sufficient evidence of actual authority of WMB to act for WMI. The signatory (Mr. Rotella) was the president and COO of both WMB and WMI. He affirmatively signed the Agreement (albeit on behalf of WMB) with actual knowledge that WMB was binding WMI to the terms of the Agreement.

Even if there were not evidence of an actual agency relationship in this case, there is sufficient evidence of implied agency. Mr. Rotella, in his dual capacity as an officer

of both WMI and WMB, signed the Agreement purporting to bind both. MSG could reasonably conclude by the apparent authority and actions of Mr. Rotella, that WMB was authorized to act as WMI's agent.

Further, it appears that the Agreement benefitted both WMI and WMB. As part of the Agreement, MSG agreed to rename the Theater at Madison Square Garden, to a "WaMu Theater at Madison Square Garden". (Agreement ¶1.5.) Under Section 10, entitled "TRADEMARKS", it is stated that "WaMu is the sole owner of the WaMU Name and all rights associated with the WaMu Name." (Agreement ¶ 10.2.) In an answer filed in another adversary proceeding pending before this Court (Adv. Proc. No. 09-50551), WMI has asserted that it "is the owner of more than 80 federal trademark registrations and applications comprising a family of Washington Mutual trademarks, including but not limited to the marks 'WAMU'." The Agreement dealt with intellectual property that WMI claimed to own.

The Court finds that it was reasonable for MSG to conclude that WMI gave WMB the authority to enter into the Agreement, because WMI's own president executed the Agreement that purported to bind WMI to the use of intellectual property of WMI. Consequently, WMB had at least implied authority to act as WMI's agent and to bind it to the Agreement.

2.  <u>Ratification</u>

Even in the absence of an agency relationship, a principal can still be held liable on a contract, if the principal ratifies or affirms the transaction. <u>See</u> Restatement (Second) of Agency § 94 cmt. a ("Silence under such circumstances that, according to the ordinary experience and habits of men, one would naturally be expected to speak if he did not consent, is evidence from which assent can be inferred."). <u>See also</u> <u>Leviten v. Bickley, Mandeville & Wimple</u>, 35 F.2d 825, 827 (2d Cir. 1929) ("Ratification has been defined as the subsequent adoption and affirmance by one person of an act which another, without authority, has previously assumed to do for him while purporting to act as his agent."); <u>Standard Funding Corp. v. Lewitt</u>, 678 N.E. 2d 874, 877 (N.Y. 1997) ("[R]atification may be implied where the principal retains the benefits of an unauthorized transaction with knowledge of the material facts"). Ratification has been explained by the Supreme Court: "When informed by his agent of what he had done, if the principal did not choose to affirm the act, it was his duty to give immediate information of his repudiation. He cannot, by holding his peace, and apparent acquiescence, have the benefit of the contract if it should afterwards turn out to be profitable, and retain a right to repudiate if otherwise." <u>Law v. Cross</u>, 66 U.S. 533, 539 (1861).

As noted above, WMI through its president, Mr. Rotella, was well aware of the Agreement. WMI accepted the benefits

associated with the Agreement; WMI's trademark was used in renaming the Theater at Madison Square Garden to the WaMu Theater at Madison Square Garden.

Based on these factors, the Court finds that WMI knew that WMB was purporting to be WMI's agent. There is no evidence that WMI repudiated the Agreement prior to the bankruptcy filing. WMI kept its peace; it cannot now repudiate the contract. Therefore, the Court finds that WMI ratified the Agreement.

Because Ratification satisfies both the Statute of Frauds requirement of signature of a lawful agent and the requirement of an objective manifestation of assent, the Court finds that WMI is a party to the Agreement.

IV. CONCLUSION

For the reasons stated above, the Debtors' Objection to the claim of MSG on the basis that WMI was not a party to the Agreement will be denied.

An appropriate order is attached.

Dated: December 15, 2009

BY THE COURT:

_Mary F. Walrath_
Mary F. Walrath
United States Bankruptcy Judge