IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | : Chapter 11 |
| WASHINGTON MUTUAL, INC., et al.,[1] | : Case No. 08-12229 (MFW) |
| Debtors. | : Jointly Administered |

## OBJECTION OF THE OFFICE OF THRIFT SUPERVISION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004

The Office of Thrift Supervision (the "OTS"), submits the following objection to the Debtors' Motion for an Order Pursuant to Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004-1 Directing the Examination of Witnesses and Production of Documents from Knowledgeable Parties [D.I. 1997] (the "Motion"). For the reasons stated below, the Motion should be denied as to OTS.

### A. Adoption of FDIC-Receiver's Objection

1. OTS adopts and incorporates by reference the Objection of the FDIC-Receiver to the Motion ("FDIC-Receiver Objection"), except for Paragraph No. 5, the last sentence of Paragraph No. 11, and Paragraphs Nos. 27-30 of the FDIC-Receiver's Objection.

### B. Factual Background of the Motion Relating to OTS

2. Debtors' counsel first contacted OTS concerning the Motion by phone on Thursday, December 3, 2009. During that conversation, Debtors' counsel indicated their timeframe was short and they intended to file a Rule 2004 motion against OTS and other entities early the following week. They stated they would be forwarding written document requests

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification numbers are: (a) Washington Mutual, Inc. (3725); and (b) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

directed to OTS immediately following the call and wanted to talk the following Monday about OTS' reaction to the requests and how the agency would suggest accomplishing production.

3. OTS counsel replied that OTS preferred to authorize the litigating parties to exchange with one another such unpublished OTS information[2] as was in their possession and might be sought.

4. Debtors' counsel were unreceptive to that approach as either a way of avoiding the need for OTS to carry out a duplicative search, or as a first step that might permit a narrowing of the scope of any follow-up search OTS might be asked to conduct. Debtors' counsel also made it clear they would not necessarily agree to OTS' stated need for a Court-approved Confidentiality Stipulation to be entered before OTS would authorize the release of, or itself produce, any unpublished OTS information.

3. Later the same afternoon, Debtors' counsel forwarded the set of document requests referenced during the earlier telephone conversation. The transmitting electronic mail message stated, in part:

> Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, Debtors plan to serve OTS with document requests in connection with Debtors' investigation into possible business tort claims against JPMorgan Chase. Per Local Rule 2004-1 of the United States Bankruptcy Court for the District of Delaware, attached please find Debtors' requests to OTS.
>
> We look forward to speaking with you on Monday, December 7 at 2 p.m. EST. If OTS is willing to voluntarily produce documents, we would work with you on arranging a mutually agreeable date, time, place and scope of the production, with the understanding that OTS would prefer that the confidentiality stipulation be in place prior to any production. If OTS is not willing to voluntarily produce documents, Debtors would then have to seek an order from the Court directing OTS to produce the requested documents.

Parness 12/3/09 (3:53 PM) Electronic Mail Message to Davis and Others at 1.

---

[2] Unpublished OTS information is defined at 12 C.F.R. § 510.5(a)(2).

2

4. Counsel for the Debtors and OTS spoke again by phone on Monday, December 7, 2009. OTS counsel pointed out that OTS adopted 12 C.F.R. § 510.5 as the means for the public, including litigants, to request access to unpublished OTS information. OTS counsel urged the Debtors to file a request under that regulation, the requirements of which would enable OTS to determine specifically what information the Debtors need, whether it was available from other sources, and to balance more helpfully the Debtors' need for the information against the agency's interest in maintaining its confidentiality.

5. Debtors' counsel indicated they were familiar with 12 C.F.R. § 510.5.

6. OTS counsel also observed that the legacy Washington Mutual Bank documents are in the hands of JPMorgan Chase ("JPMC") and that this Court had already entered an Order on June 24, 2009, permitting the Debtors to conduct a Rule 2004 examination of JPMC. OTS also observed that the Opinion of this Court underlying the June 24 Order made reference to several pending lawsuits or proceedings in which the Debtors could gain the unpublished OTS information they wanted. OTS pointed out that in all likelihood the agency would authorize the release of unpublished OTS information by JPMC and the other parties to this litigation pursuant to a satisfactory Court-approved Confidentiality Stipulation. Moreover, OTS counsel noted that the agency thought it had reached agreement with the parties to this litigation in October 2009 concerning an acceptable Confidentiality Stipulation to be signed and presented to this Court for approval, but had heard nothing further about the matter since then.

7. Debtors' counsel made it clear that while they would be willing to (and have) engaged in good faith negotiations with OTS in an effort to narrow the scope of an agreed upon OTS production, the Debtors were not willing to pursue the unpublished OTS information

in the hands of other party litigants first, and then approach OTS with a narrowed request for any remaining materials they had not already obtained.

8. On December 15, 2009, after Debtors had filed the Motion, they served OTS with separate requests for documents under 12 C.F.R. § 510.5 and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Debtors' 510.5 and FOIA requests seek all of the documents sought by the Motion and additional information as well.

C. **Discussion of Additional Reasons for Denial of the Motion**

**Failure to Show "Good Cause"**

9. The Debtors' attempt to justify their request to use Rule 2004 consists almost entirely of a repetition of the allegations – not established facts -- contained in the *American National* complaint. As such, the Debtors have failed to make the showing of "good cause" necessary for a grant of Rule 2004 authority. See In re Wilcher, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (holding that a party was "not properly subject to a Rule 2004 examination" due to the absence of any actual evidence of the alleged duplicity); see also In re Strecker, 251 B.R. 878, 883 (Bankr. D. Colo. 2000) (quashing 2004 subpoena where examiner lacked "some alleged conduct, or other facts, which could lead to a cause of action" beyond fact that debtor had written a bad check before bankruptcy); In re Lewis, No. 93-3893, 1994 U.S. Dist. LEXIS 4492, at *8-9 (N.D. Cal. Mar. 31, 1994) (quashing subpoena where no legitimate reason for conducting exam existed). Accordingly, the Motion should be denied as to OTS.

**Balancing of Interests Requires Denial**

10. If the Debtors had met their initial burden of demonstrating "good cause," the Court must still weigh the interests of each proposed examinee, in this case OTS, against those of the Debtors to determine whether a Rule 2004 examination is proper. See In re

4

Countrywide Home Loans, Inc., 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008) (finding that a balancing test is required in Rule 2004 to ensure that the intrusiveness to the proposed examinee is not greater than the putative benefit to the party seeking the discovery). Here, the costs and disruption to OTS far outweigh any apparent benefit that might accrue to the Debtors through the proposed examination. See In re Express One Int'l, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) ("[I]f the cost and disruption to the examinee attendant to a requested examination outweigh the benefits to the examiner, the request should be denied."); In re Eagle-Picher Indus., Inc., 169 B.R. 130, 134-35 (S.D. Ohio 1994) (quashing a Rule 2004 subpoena where the proposed discovery was "extremely broad and would clearly be disruptive and costly" to the examinee "while the benefit to movants in assessing the proposal is far from clear").

11. Through their examination of JPMC, the Debtors should have uncovered more than enough evidence to determine whether they have viable business tort claims to assert against JPMC. Yet, instead of intervening in the *American National* litigation or asserting their own claims, Debtors are asking this Court to unnecessarily burden OTS with the expense and disruption associated with an overbroad Rule 2004 examination. In doing so, while acknowledging that OTS is not the target of any potential claims, the Debtors nevertheless attempt to make OTS a pawn for their litigation tactics against JPMC. Put simply, the benefit to the Debtors resulting from the granting of this Motion would be small, whereas the burden on OTS would be profound. The Motion should therefore be denied as to OTS.

**Fed. R. Bankr. P. 1001 and Fed. R. Civ. P. 1 Require Denial**

12. The Federal Rules of Civil and Bankruptcy Procedure provide that they "shall be construed to secure the just, speedy, and inexpensive determination of every . . .

proceeding." Fed. R. Bankr. P. 1001;[3] Fed. R. Civ. P. 1. The reasons and policies underlying these rules are obvious, and compliance with them requires denial of the Motion.

13. As noted above, the Debtors have a pending application before OTS under 12 C.F.R. § 510.5. They should be required to exhaust that administrative remedy before this Court considers a Rule 2004 motion directed to OTS. Section 510.5 requires the requester to demonstrate that (a) the information sought is "highly relevant" to the purpose for which it is being sought; (b) the information being sought is not available from other sources; and (c) the requester's need for the information outweighs the need to maintain the information's confidentiality and the burden on OTS to locate and produce it. 12 C.F.R. § 510.5(c). These requirements and the others contained in § 510.5 further efficiency; they promote a limiting of the scope of such requests to the specific information needed and not available elsewhere; and they provide for the striking of an evenhanded balance between the needs of the requester and the legitimate need of OTS as a financial institutions regulatory agency to maintain the confidentiality of the information in question.

14. OTS has also offered to authorize the Washington Mutual litigants to share with one another the unpublished OTS information sought in discovery under an acceptable Court-approved Confidentiality Stipulation. Such an approach in the first instance would confine the burden involved to those involved in the litigation. It would also serve the goals of efficiency and expedition, since the litigants will of necessity need to locate and work with the relevant information they possess. Moreover, such an approach avoids the need for

---

[3] The Advisory Committee Note concerning this portion of Fed. R. Bankr. P. 1001 states, in pertinent part:

> The final sentence of the rule is derived from former Bankruptcy Rule 903. The objective of 'expeditious and economical administration' of cases under the Code has frequently been recognized by the courts to be 'a chief purpose of the bankruptcy laws.' See Katchen v. Landy, 382 U.S. 323, 328 (1966). The rule also incorporates the wholesome mandate of the last sentence of Rule 1 of the Federal Rules of Civil Procedure. (Citations omitted).

6

OTS to search for, identify, and then photocopy documents that are already in the possession of one or more of the litigants. Fed. R. Bankr. P. 1001 and Fed. R. Civ. P. 1 require the pursuit of such a procedure before the Debtors may obtain Rule 2004 authorization concerning OTS.

## CONCLUSION

For all of the foregoing reasons, the Court should deny the Motion as to OTS.

Date: January 15, 2010

Respectfully submitted,
DEBORAH DAKIN
Acting Chief Counsel

DIRK S. ROBERTS
Deputy Chief Counsel, Litigation


CHRISTOPHER A. STERBENZ (DC 437722)
Senior Attorney
Office of Thrift Supervision
1700 G. Street, N.W.
Washington, D.C. 20552
Tel: (202) 906-6528
Fax: (202) 906-6353
E-mail: christopher.sterbenz@ots.treas.gov

Attorneys for the Office of Thrift Supervision