UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------------x
: Chapter 11
*In re* :
: Case No. 08-12229 (MFW)
WASHINGTON MUTUAL, INC., et al.,[2] :
: (Jointly Administered)
Debtors. :
: Hearing Date: February 22, 2010 at 10:30 a.m.
: Objection Deadline: January 29, 2010 at 4:00 p.m.
:
---------------------------------------------------------------x

## DEBTORS' FIFTH MOTION FOR ORDER PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE EXTENDING EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11 PLAN AND SOLICITATION OF ACCEPTANCES THERETO

Washington Mutual, Inc. ("WMI") and WMI Investment Corp. ("WMI Investment"), as debtors and debtors in possession (together, the "Debtors"), respectfully represent:

### Preliminary Statement

1. As this Court is well aware, the Debtors' cases are large and complex, and involve protracted litigation with, among others, the Federal Deposit Insurance Corporation (the "FDIC") and JPMorgan Chase Bank, National Association ("JPMorgan"). Absent resolution of the key questions at issue in these litigations, the Debtors are unable to develop a chapter 11 plan without multitudes of assumptions and hypothetical recovery scenarios. Accordingly, the Debtors have requested, and this Court has granted, with the consent of the Official Committee of Unsecured Creditors (the "Creditors' Committee"), multiple extensions of the Debtors' exclusive periods in which to file a chapter 11 plan and solicit acceptances thereto pursuant to section 1121(d)

---

[2] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

of title 11 of the United States Code (the "Bankruptcy Code"). Currently, these deadlines are set to expire on January 19, 2010 and March 22, 2010, respectively.

2. As described herein, although the Debtors have made significant progress in administering their chapter 11 cases, including, most recently, engaging in extensive claims reconciliation and litigation efforts, and the litigations with the FDIC and JPMorgan have progressed in both this Court and the United States District Court for the District of Columbia (the "D.C. Court"), many important questions and issues relating to the ownership of certain assets and the validity of certain claims remain unresolved. As a result, the Debtors request a fifth extension of the Debtors' exclusive periods through and including March 26, 2010 and May 26, 2010, the statutorily-mandated caps on such extensions pursuant to section 1121(d)(2) of the Bankruptcy Code.

## Background

3. On September 26, 2008 (the "Commencement Date"), each of the Debtors commenced with this Court a voluntary case pursuant to the Bankruptcy Code. As of the date hereof, the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On October 3, 2008, this Court entered an order pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the joint administration of the Debtors' chapter 11 cases.

5. On October 15, 2008, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Creditors' Committee. On January 11, 2010, the U.S. Trustee appointed an official committee of equity interest holders (the "Equity Committee"). That same day, the Debtors filed a motion requesting the Court to disband the Equity Committee or, in the

alternative, to limit the fees and expenses which can be incurred by the Equity Committee [Docket. No. 2132]. No trustee or examiner has been appointed in these cases.

6. On December 19, 2008, the Debtors filed with the Court their schedules of assets and liabilities, and statements of financial affairs ("SOFA"). On January 27, 2009, and February 24, 2009, WMI filed with the Court its first and second, respectively, amended schedule of assets and liabilities. On January 14, 2010, WMI filed with the Court further amendments to its SOFA.

7. By order, dated January 30, 2009, the Court established March 31, 2009 as the deadline for filing proofs of claim against the Debtors. Over 3,700 proofs of claim have been filed in these chapter 11 cases.

### WMI's Business

8. Prior to the Commencement Date, WMI was a savings and loan holding company that owned Washington Mutual Bank ("WMB") and such bank's subsidiaries, including Washington Mutual Bank fsb ("WMBfsb"). In addition, WMI has certain non-banking, non-debtor subsidiaries.

9. Prior to the Commencement Date, WMI, like all savings and loan holding companies, was subject to regulation by the Office of Thrift Supervision (the "OTS"). WMB and WMBfsb, like all depository institutions with federal thrift charters, were also subject to regulation and examination by the OTS. In addition, WMI's banking and non-banking subsidiaries were overseen by various federal and state authorities, including the FDIC. On September 25, 2008, the Director of the OTS, by order number 2008-36, appointed the FDIC as receiver for WMB and advised that the receiver was immediately taking possession of WMB. Immediately after its appointment as receiver, the FDIC purportedly sold substantially all of WMB's assets, including the

US_ACTIVE:\43268832\11\79831.0003
RLF1 3527850v.1

3

stock of WMBfsb, to JPMorgan pursuant to that certain Purchase and Assumption Agreement, Whole Bank, dated as of September 25, 2008 (the "Purchase Agreement").

10. WMI's assets include its common stock interest in WMB, its interests in its non-banking subsidiaries, and in excess of $4 billion of cash (the "Deposit Funds") that WMI and its non-banking subsidiaries (including WMI Investment) had on deposit at WMB and WMBfsb immediately prior to the FDIC's appointment as receiver. WMI is in the process of evaluating these and other assets for purposes of an eventual distribution to its creditors.

## Overview of Litigation With the FDIC and JPMorgan

11. As this Court is aware, WMI, the FDIC and JPMorgan are in the midst of complex litigation regarding, among other issues, each party's claims with respect to ownership of various assets, including the Deposit Funds. The following is a summary of the pending litigation, which summary has been updated to reflect recent advancements since the filing of the Debtors' last motion seeking an extension of exclusivity:

The D.C. Action

12. On December 30, 2008, the Debtors filed a proof of claim against the FDIC, as receiver of WMB, pursuant to the receivership procedures set forth in section 11 of the Federal Deposit Insurance Act (12 U.S.C. § 1821). The Debtors' proof of claim requested, among other things, compensation for the Debtors' assets (or the return of such assets as a preference or fraudulent transfer), which were wrongfully transferred or claimed by the FDIC and/or JPMorgan, and for other monies owed by WMB. In a letter response, dated January 23, 2009, the FDIC informed the Debtors that their proof of claim would be disallowed in its entirety. The FDIC's letter also notified the Debtors of their right to challenge this disallowance by commencing a lawsuit within sixty (60) days of the notice of disallowance.

13.     Consistent therewith, on March 20, 2009, the Debtors filed a complaint against the FDIC (the "D.C. Action"), both in its capacity as WMB's receiver ("FDIC-Receiver") and in its corporate capacity ("FDIC-Corporate") in the D.C. Court,[3] seeking to recover the value of all the claims set forth in the Debtors' proof of claim, including, inter alia, claims for the value of approximately $6.5 billion in capital contributions, $4 billion in preferred securities, and $3 billion in tax refunds. The Debtors also asserted a protective claim with respect to the Deposit Funds.

14.     By motions, dated June 11, 2009 and June 15, 2009, the FDIC-Receiver and FDIC-Corporate, respectively, filed motions to dismiss the D.C. Action, and such motions were opposed by the Debtors. Contemporaneously with the motions to dismiss, the FDIC-Receiver filed an answer to the Debtors' complaint, as amended, and counterclaims against the Debtors. Thereafter, by motion, dated July 27, 2009, the Debtors moved to dismiss the amended counterclaims asserted by the FDIC-Receiver and to stay the remainder of the D.C. Action, in its entirety, in favor of the pending proceedings in this Court (the "Debtors' Motion to Dismiss"). The FDIC and JPMorgan both opposed the Debtors' Motion to Dismiss. JPMorgan and certain holders of senior notes issued by WMB (the "Bank Bondholders") were permitted to intervene in the D.C. Action and, by motion, dated October 27, 2009, the Bank Bondholders filed a joinder to the FDIC motion to dismiss before the D.C. Court.[4] By motion, dated October 16, 2009, the Creditors' Committee also moved to intervene as a plaintiff in the D.C. Action. A decision on such motion is still pending.

15.     By order, dated January 7, 2010, the D.C. Court denied the motions to dismiss filed by the FDIC-Receiver and FDIC-Corporate, granted the Debtors' request to stay the

---

[3] Case No. 09-cv-00533 (RMC).

[4] Joinder of Bank Bondholders in Motion of FDIC-Receiver to Dismiss the Complaint in Part and in Oppositions to Plaintiffs' Motion to Dismiss the Amended Counterclaims of the FDIC and to Stay Proceedings in their Entirety, dated October 27, 2009 [Docket No. 83].

D.C. Action pending the outcome of the Debtor's chapter 11 cases, and denied the Debtors' motion to dismiss the FDIC counterclaims.

The Adversary Proceedings

16.     On March 24, 2009, notwithstanding pending negotiations between the Debtors and JPMorgan to resolve outstanding issues, JPMorgan commenced an adversary proceeding against the Debtors and the FDIC (the "JPMorgan Adversary")[5] in this Court seeking a declaratory judgment with respect to the ownership of disputed assets. On May 29, 2009, the Debtors filed an answer to JPMorgan's complaint and asserted various counterclaims against JPMorgan.

17.     On April 27, 2009, the Debtors also commenced an adversary proceeding in the Bankruptcy Court (the "Turnover Action")[6] demanding that JPMorgan turn over the Deposit Funds. JPMorgan filed a motion to dismiss the Turnover Action, or, in the alternative to consolidate the Turnover Action with the JPMorgan Adversary. Thereafter, JPMorgan filed a motion to stay the Turnover Action and the JPMorgan Adversary so as to allow JPMorgan, the FDIC, and the Debtors to resolve their claims in the D.C. Action. At a hearing held before this Court on June 24, 2009, both of JPMorgan's motions were denied. Likewise, this Court denied a motion made by the FDIC to stay the Turnover Action and the JPMorgan Adversary while the D.C. Action was being litigated. By order, dated August 28, 2009, this Court granted the Bank Bondholders' motion to intervene in the adversary proceedings.

18.     In addition to the foregoing, the litigation between the Debtors, JPMorgan and the FDIC has included the following:

---

[5] Adv. Proc. No. 09-50551 (MFW).

[6] Adv. Proc. No. 09-50934 (MFW).

- On June 23, 2009, JPMorgan filed a motion to withdraw the reference of the JPMorgan Adversary and the Turnover Action pursuant to 28 U.S.C. § 157(d). The Debtors have opposed the relief requested.

- Both the FDIC and JPMorgan have sought to appeal this Court's orders denying their motions to dismiss or stay the adversary proceedings and filed motions with this Court for leave to appeal. These motions have been opposed by the Debtors. Furthermore, JPMorgan and the FDIC have sought certification by the District Court for direct appeal to the Third Circuit. The Debtors have opposed this request. Based upon the D.C. Court's decision, it is unclear whether the FDIC and JPMorgan will continue or withdraw such motions.

- The parties completed their briefing on the Debtors' motion for summary judgment in the Turnover Action, which motion and the oppositions thereto – filed by the FDIC-Receiver, JPMorgan, and the Bank Bondholders – were considered at a hearing before this Court on October 22, 2009. The motions remain sub judice.

- On November 4, 2009, the FDIC-Receiver filed a motion for relief from the automatic stay to permit the FDIC-Receiver to exercise its contractual right under the Purchase Agreement to direct JPMorgan to return the Deposit Funds to the FDIC-Receiver (the "Section 9.5 Motion"). The Debtors have opposed such relief and the matter is set for hearing on January 28, 2010 at 4:00 p.m.

- In the JPMorgan Adversary, JPMorgan moved to dismiss the counterclaims asserted by the Debtors against JPMorgan, which motion was opposed by the Debtors, and denied by this Court by order, dated September 14, 2009. JPMorgan has sought leave to appeal the Court's order. The Debtors oppose such relief.

The 2004 Examination Request

19. On or about February 16, 2009, various insurance company plaintiffs, including American National Insurance Company, filed suit in the 122nd District Court of Galveston County, Texas, in the case captioned <u>American Nat'l Ins. Co., et al. v. JPMorgan Chase & Co., et al.</u> (Cause No. 09-CV-0199) (the "American National Action"). In their complaint, the plaintiffs asserted various causes of action against JPMorgan relating to JPMorgan's alleged misconduct in connection with its acquisition of WMB's assets. Specifically, the plaintiffs asserted that there was a premeditated plan by JPMorgan designed to damage WMB and WMBfsb, and thereby enable JPMorgan to acquire WMB's assets at a "fire sale" price. The causes of action asserted by the plaintiffs include various theories of business tort and tortuous interference.

Subsequent to the filing of the American National Action, JPMorgan and the FDIC removed the action to the United States District Court for the Southern District of Texas (Case No. 09-00044). Upon the motion of the FDIC, by order, dated September 9, 2009, the United States District Court for the Southern District of Texas then transferred the American National Action to the D.C. Court, where it is currently pending (Case No. 09-cv-01743 (RMC)).

20. To further explore, among other things, the allegations asserted in the American National Action, on May 1, 2009, the Debtors filed a motion (the "2004 Motion") [Dkt. No. 974], pursuant to Bankruptcy Rule 2004, seeking entry of an order directing the examination of JPMorgan. Notwithstanding JPMorgan's opposition to the 2004 Motion, by Opinion and Order, dated June 24, 2009, this Court granted the 2004 Motion [Dkt. Nos. 1219, 1220]. JPMorgan's subsequently filed motion for reconsideration of this Court's Opinion and Order was denied. Thereafter, JPMorgan began producing documents to the Debtors for their review.

21. As a result of the review of certain of the documents produced by JPMorgan, the Debtors have determined that additional fact investigation is necessary. On December 14, 2009, the Debtors filed a motion, pursuant to Bankruptcy Rule 2004, seeking court authority to conduct additional examinations of witnesses and request the production of documents from various third-parties (the "Third Party 2004 Motion"), including, among others, the FDIC, the OTS, the U.S. Department of the Treasury, and former U.S. Treasury secretary Henry M. Paulson, Jr. The Third Party 2004 Motion remains pending and is scheduled to be heard on January 28, 2010. If granted, and complied with by the counterparties, such relief will provide the Debtors with additional information which would give rise to further claims and causes of action.

## Jurisdiction

22. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

23. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a chapter 11 plan (the "Plan Period"). 11 U.S.C. § 1121(b). Section 1121(c)(3) provides that, if a debtor files a plan within the 120-day Plan Period, it has a period of 180 days after the commencement of the case to obtain acceptances of such plan, during which time competing plans may not be filed (the "Solicitation Period" and, together with the Plan Period, the "Exclusive Periods"). Id. § 1121(c)(3). Pursuant to section 1121(d) of the Bankruptcy Code, the Court may extend a debtor's Exclusive Periods for cause shown. Id. § 1121(d). Pursuant to section 1121(d)(2) (as amended by the Bankruptcy Abuse Protection and Consumer Protection Act of 2005), the Plan Period may not be extended beyond a date that is 18 months after the commencement of a chapter 11 case, id. § 1121(d)(2)(A), and the Solicitation Period may not be extended beyond a date that is 20 months after the commencement of a chapter 11 case. Id. § 1121(d)(2)(B).

24. The Debtors' Plan Period and Solicitation Period initially were set to expire on January 24, 2009 and March 25, 2009, respectively. On January 20, 2009, the Debtors filed a motion to extend the Exclusive Periods [Dkt. No. 569] and, by order, dated February 16, 2009, pursuant to section 1121(d) of the Bankruptcy Code, this Court granted the Debtors an extension of their Exclusive Periods through and including April 24, 2009 and June 23, 2009, respectively [Dkt. No. 692]. On April 22, 2009, the Debtors filed a second motion to extend the Exclusive Periods
US_ACTIVE:\43268832\11\79831.0003
RLF1 3527850v.1

9

[Dkt. No. 937] and, by order, dated May 19, 2009, this Court granted the Debtors a further extension of their Exclusive Periods through and including July 23, 2009 and September 21, 2009, respectively [Dkt. No. 1044]. On July 22, 2009, the Debtors filed a third motion to extend the Exclusive Periods [Dkt. No. 1370] and, by order, dated August 21, 2009, this Court granted the Debtors an extension of their Exclusive Periods through and including October 21, 2009 and December 21, 2009, respectively [Dkt. No. 1532]. On October 19, 2009, the Debtors filed a fourth motion to extend their Exclusive Periods [Dkt. No. 1736] and, by order, dated November 20, 2009, this Court granted the Debtors an extension of their Exclusive Periods through and including January 19, 2010 and March 22, 2010, respectively [Dkt. No. 1925].

25. By this motion (the "Motion"), the Debtors request pursuant to section 1121(d) of the Bankruptcy Code entry of the proposed order substantially in the form attached hereto as Exhibit "A," extending the Plan and Solicitation Periods through and including March 26, 2010 and May 26, 2010, respectively.

**Legal Standard for Extending the Exclusive Periods**

26. One of the primary objectives of a chapter 11 case is the formulation, confirmation, and consummation of a consensual plan that facilitates distributions to the debtor's economic stakeholders. A debtor's Exclusive Periods are thus designed to accomplish this objective and are intended to provide a debtor with a full and fair opportunity to propose a consensual plan and solicit acceptances of such plan without the disruption to the administration of a debtor's estate that may result from the filing of competing plans by non-debtor parties.

27. Where the default 120- and 180-day Exclusive Periods prove to be an unworkable timeframe in any particular case, section 1121(d) of the Bankruptcy Code allows the Court to extend a debtor's Exclusive Periods for cause. Although the Bankruptcy Code does not

US_ACTIVE:\43268832\11\79831.0003
RLF1 3527850v.1

10

define the term "cause," the legislative history indicates it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. See H.R. Rep. No. 95-595, at 231-32 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

28. Congress built flexibility into section 1121 of the Bankruptcy Code to give the debtor an adequate opportunity to stabilize its business operations at the outset of its chapter 11 case and to negotiate an effective plan with its creditors. In re Newark Airport/Hotel Ltd. P'ship., 156 B.R. 444, 451 (Bankr. D.N.J.), aff'd, 155 B.R. 93 (D.N.J. 1993) (noting that Congress designed chapter 11 provisions to enable a debtor to remain in control for some period of time, thereby making reorganization an attractive alternative to financially troubled companies); Gaines v. Perkins (In re Perkins), 71 B.R. 294, 297-98 (W.D. Tenn. 1987) (Congress designed section 1121 to give the debtor time to reach an agreement with its creditors regarding a plan of reorganization).

29. In determining whether cause exists to extend the Exclusive Periods, a court may consider, "in addition to the need of the creditors committee to negotiate with the debtor and the ability to prepare adequate information," a variety of factors, including:

    a. the size and complexity of the debtor's case;

    b. the existence of good-faith progress towards reorganization;

    c. a finding that the debtor is not seeking to extend exclusivity to pressure creditors "to accede to [the debtors'] reorganization demands";

    d. the existence of an unresolved contingency; and

    e. the fact that the debtor is paying its bills as they come due.

In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (citations omitted). Accord In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (identifying four of the five

above-quoted factors, among others, as relevant in determining whether "cause" exists to extend exclusivity); In re United Press Int'l, Inc., 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding that the debtor showed "cause" to extend its exclusivity period based upon certain of above-quoted factors).

30. Moreover, the fact that a debtor may propose a liquidating, as opposed to a reorganizing, plan should not negatively impact its ability to retain the exclusive right to file a plan. Courts in this District have, on numerous occasions, granted extensions of the Exclusive Periods in liquidating chapter 11 cases. See, e.g., In re Sharper Image Corp., Ch. 11 Case No. 08-10322 (KG) (Bankr. D. Del. July 17, 2008); In re SN Liquidation, Inc., et al., Ch. 11 Case No. 07-11666 (KG) (Bankr. D. Del. Mar. 28, 2008); In re American Home Mortgage Holdings, Inc., et al., Ch. 11 Case No. 07-11047 (CSS) (Bankr. D. Del. Dec. 19, 2007); In re Tweeter Home Entm't Group, Inc., et al., Ch. 11 Case No. 07-10787 (PJW) (Bankr. D. Del. Oct. 9, 2007); In re Tiro Acquisition, LLC, Ch. 11 Case No. 04-12938 (PJW) (Bankr. D. Del. Aug. 1, 2005); In re SFMB Acquisition Corp., Ch. 11 Case No. 03-11524 (JW) (Bankr. D. Del. Aug. 25, 2004); In re SHC, Inc., Ch. 11 Case No. 03-12002 (CJW) (Bankr. D. Del. Apr. 2, 2004); In re Cone Mills Corp., et al., Ch. 11 Case No. 03-12944 (CJW) (Bankr. D. Del. Mar. 8, 2004); In re Orion Refining Corp., Ch. 11 Case No. 03-11483 (MFW) (Bankr. D. Del. Sept. 23, 2003); In re Golf America Stores, Inc., Ch. 11 Case No. 02-12313 (JW) (Bankr. D. Del. Apr. 11, 2003).

31. Prior to 2005, if a debtor demonstrated cause to a court's satisfaction, the court had full discretion to grant unlimited extensions of the Exclusive Periods for filing a plan. In 2005, however, Congress imposed firm limits on exclusivity extensions. Specifically, pursuant to the amendments set forth in sub-sections 1121(d)(2)(A) and 1121(d)(2)(B) of the Bankruptcy Code, a court may not extend the Plan Period and Solicitation Period beyond 18 and 20 months from the date of commencement of a debtor's chapter 11 case, respectively. Once these time caps are

reached in the course of a chapter 11 case, the debtor's exclusivity rights must expire. See, e.g., In re CCT Commc'ns., Inc., Case No. 07-10210 (SMB), 2009 Bankr. LEXIS 3740, at *6 (Bankr. S.D.N.Y. Nov. 25, 2009) ("Court cannot extend exclusivity for . . . debtor beyond 18 months from the order for relief.").

32. As illustrated by the facts set forth herein, an application of the aforementioned standards to the facts of this case demonstrates sufficient "cause" to grant the Debtors' requested extension of the Exclusive Periods so that they may have a full and fair opportunity to propose a consensual plan and solicit acceptances thereon. Furthermore, the Debtors are fully cognizant of the time limits imposed by section 1121(d)(2) and, accordingly, have limited their request for an extension pursuant to this fifth and final Motion to the expiration dates of such time limits.

## Cause Exists to Extend the Debtors' Exclusive Periods

33. As described in the Debtors' prior motions to extend the Exclusive Periods, the Debtors' cases are both large and complex. The complexity of these cases is due, in large part, to the placement of WMB into receivership and the subsequent sale of substantially all of WMB's assets to JPMorgan.

34. Since commencing their cases, the Debtors' have made significant progress in administering their chapter 11 cases and have taken steps necessary, to the extent possible, for confirmation of a plan, including:

    a. hiring several former WMB employees;

    b. gaining access to important business records;

    c. filing required schedules and monthly financial reports;

    d. entering into an agreement with JPMorgan concerning the payment of certain vendors;

e. transferring WMI's 401(k) plan to JPMorgan;

f. reviewing and rejecting unnecessary and burdensome contracts and leases;

g. reconciling claims and the filing of nineteen omnibus claims objections;

h. facilitating the sale of certain of the Debtors' investments;

i. liquidating the estates' assets, including those held in certain rabbi trusts;

j. securing assets that rightfully belong to the Debtors, including the proceeds of the <u>American Savings Bank</u> litigation; and

k. undertaking a complex tax analysis, filing tax returns and reconciling related claims.

35. Notwithstanding these accomplishments, there is still substantial uncertainty regarding the ownership of the Debtors' most significant assets, as demonstrated by the Debtors' pending litigation with JPMorgan and the FDIC. The complexities at issue in the Debtors' chapter 11 cases, the "unresolved contingencies," relating to the ownership of assets, and the unique challenges arising from the reconciliation of claims, warrant an extension of the Debtors' Exclusive Periods.

36. As this Court is aware, JPMorgan claims that it has legal title to and beneficial interests in a variety of assets claimed by the Debtors, including, without limitation, the Deposit Funds, trust securities, tax refunds, goodwill judgments, trust assets, stocks, intellectual property, contractual rights, and the pension plan.[7] Resolution of at least certain of the legal and economic issues that are the subject of the litigation with JPMorgan is essential for the formulation of a chapter 11 plan. It is extremely difficult, if not impossible, for the Debtors to propose a feasible plan unless they know the amount of assets available for distribution to creditors as well as

---

[7] <u>See</u> Complaint, <u>JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc., et al.</u>, No. 08-12229 (Bankr. D. Del. Mar. 24, 2009) [Dkt. No. 807]; <u>see also</u> JPMorgan Chase Bank, N.A.'s Motion to Intervene as Defendant, <u>Washington Mutual, Inc., et al. v. FDIC</u>, No. 09-00533 (D.D.C. Mar. 30, 2009) [Dkt. No. 4].

the magnitude of claims against the chapter 11 estates. This is particularly true with respect to the Deposit Funds – in excess of $4 billion – which are the foundation of any plan to be proposed by the Debtors.

37. Contrary to the historical understanding and treatment of the Deposit Funds, JPMorgan seeks to recharacterize the Deposit Funds as capital contributions, rather than deposit liabilities. In the event the Deposit Funds are determined to be deposit liabilities (which the Debtors believe is the correct outcome), JPMorgan alternatively asserts setoff rights and other claims against such funds. Furthermore, the FDIC has a pending motion with this Court, seeking relief from automatic stay and permission to exercise setoff rights pursuant to the Purchase Agreement, that would direct JPMorgan to transfer the Deposit Funds to the FDIC-Receiver. Until this Court determines the true nature of the Deposit Funds, whether JPMorgan and/or the FDIC-Receiver possesses any right of setoff or other rights with respect thereto, and whether the FDIC may be relieved from the automatic stay and permitted to exercise its rights pursuant to the Purchase Agreement, the Debtors cannot proceed with prosecution of a chapter 11 plan.

38. In light of the complexity of the pending litigation, the interplay between the adversary proceedings pending in this Court and the D.C. Action, this Court's pending decision regarding the Debtors' motion for summary judgment with respect to the Turnover Action, JPMorgan's pending motion for withdrawal of the reference of the adversary proceedings, and the FDIC's pending motion for relief from automatic stay, there is still some uncertainty with regards to when a decision will be made regarding the assets available for distribution to the Debtors' creditors. As a result, the Debtors require more time beyond the current (fourth) extension that has their Plan Period expiring January 19, 2010, and their Solicitation Period expiring on March 22, 2010.

39. It should also be noted that the litigation with the FDIC and JPMorgan has proven to be a hurdle for plan formulation. The Debtors have had to devote a significant portion of their time and energy to addressing the pending litigation, in addition to working on various day-to-day tasks and issues attendant to these chapter 11 cases. The Debtors' management has spent a significant amount of time working with the Debtors' counsel to prepare for and respond to the FDIC and JPMorgan proceedings, including, among other things, formulating strategies, collecting factual information, preparing legal documents, and engaging in discussions with the Creditors' Committee and various creditor constituencies. Although the Debtors continue to work in good faith towards the filing of a chapter 11 plan, the diversion created by the litigation has prevented the Debtors and true economic parties in interest from being able to complete the task.

40. Furthermore, this case presents unique claims issues that must be resolved prior to formulating a chapter 11 plan. Over 3,700 proofs of claim have been filed by parties asserting claims against the Debtors and the Debtors must determine the validity of these many claims. JPMorgan alone has filed approximately 45 proofs of claim against the Debtors, certain of which would likely need to be resolved before a plan could be formulated. Moreover, there are certain significant claims filed against the Debtors, including, but not limited to, the proof of claim filed by the Internal Revenue Service, in the approximate amount of $10 billion, and the claims filed by Bank Bondholders, which would need to be resolved, estimated, or at least capped in order for the Debtors to confirm a plan.

41. Assessing the validity of the claims against the Debtors' is essential to ensuring that only true creditors are entitled to vote on a chapter 11 plan and receive distributions from the Debtors' estates. The Debtors believe that many claimants, intending to assert claims against WMB, erroneously filed claims against the Debtors. In addition, the Debtors are analyzing

US_ACTIVE:\43268832\11\79831.0003
RLF1 3527850v.1

16

the proofs of claim to determine whether any claims may be expunged on other bases, e.g., as duplicative, or unsupported by the Debtors' books and records. Reconciling the claims filed against the Debtors in this complex case is essential to determining the size of the claims pool and crafting a chapter 11 plan.

42. In light of the size and complexity of the Debtors' chapter 11 cases, the unresolved contingencies at issue, and the need to reconcile the numerous claims filed in these cases, "cause" exists for granting the requested extensions.[8] Therefore, the Debtors seek the Court's authorization for a short and final extension of the Exclusive Periods in order to continue making progress on their efforts to formulate a chapter 11 plan.

### Notice

43. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) counsel for the Creditors' Committee; (ii) proposed counsel for the Equity Committee; and (iii) parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002, as modified by the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware. In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

---

[8] The other "common" factors a court may consider in determining whether cause exists to extend the Exclusive Periods are not significant factors in these cases. For instance, the Debtors are not seeking to extend their Exclusive Periods in order to pressure creditors "to accede to [the debtors'] reorganization demands." To the contrary, the Debtors are working cooperatively with their creditor constituencies to resolve the legal status of certain assets of the estates. In addition, the Debtors are paying their bills as they come due.

### No Previous Request

44. Except as disclosed above, no previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit "A", granting the relief requested herein and such other and further relief as it deems just and proper.

Dated: January 15, 2010
       Wilmington, Delaware

/s/ *signature*
Mark D. Collins (No. 2981)
Chun I. Jang (No. 4790)
Lee E. Kaufman (No. 4877)
Andrew C. Irgens (No. 5193)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Marcia L. Goldstein, Esq.
Brian S. Rosen, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys to the Debtors*
*and Debtors in Possession*