UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WASHINGTON MUTUAL, INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-12229 (MFW)<br>(Jointly Administered)<br><br>Hearing Date: Jan. 28, 2010 at 4:00 p.m.<br>Related Docket Nos. 2132 & 2185 |

**BANK BONDHOLDERS' RESPONSE TO THE OPPOSITION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS TO DEBTORS' MOTION FOR AN ORDER (A) DISBANDING SUCH COMMITTEE OR (B) LIMITING THE FEES AND EXPENSES WHICH MAY BE INCURRED BY SUCH COMMITTEE**

The undersigned holders of senior notes issued by Washington Mutual Bank ("WMB" or "Bank") listed below[1] (the "Bank Bondholders") file this short pleading to respond to the suggestion of the Official Committee of Equity Security Holders (the "Equity Committee") that Washington Mutual Inc. ("WMI") may recover sufficient assets to pay a dividend to WMI equity holders. It is plain that is not the case.

The Equity Committee appears to have lost sight of the most basic fact: WMI was a holding company. It had no operations, and its principal (if not only) asset was (and is) its equity interest in WMB which itself is in liquidation, with the Federal Deposit Insurance Company ("FDIC") acting as the Bank's receiver. Under black letter law, any assets of WMB must first be

---

[1] The Bank Bondholders are Anchorage Capital Master Offshore, Ltd; Anchorage Advisors, LLC; Bank of Scotland plc; CVI GVF (Lux) Master S.a.r.l.; Caspian Capital Advisors LLC; Cetus Capital, LLC; Citigroup Global Markets, Inc.; HFR ED Select Fund IV Master Trust; Juggernaut Fund, L.P.; King Street Capital Management, L.P.; Lyxor/York Fund Limited; Marathon Credit Opportunity Master Fund, Ltd.; Marathon Special Opportunity Master Fund, Ltd.; Permal York Ltd.; Plainfield Special Situations Master Fund II Limited; Plainfield OC Master Fund II Limited; Plainfield Liquid Strategies Master Fund Limited; QVT Fund LP; Quintessence Fund L.P.; Scroggin Capital Management; The Värde Fund, L.P.; The Värde Fund VI-A, L.P.; The Värde Fund VII-B, L.P.; The Värde Fund VIII, L.P.; The Värde Fund IX, L.P.; The Värde Fund IX-A, L.P.; Värde Investment Partners (Offshore) Master, L.P.; Värde Investment Partners, L.P.; Windmill Master Fund LP; York Capital Management, L.P.; York Credit Opportunities Fund, L.P.; York Credit Opportunities Master Fund, L.P.; York Investment Master Fund, L.P.; York Select, L.P.; and York Select Master Fund, L.P.

used to pay its creditors, including the Bank Bondholders, in full before any funds can be upstreamed to WMI as a dividend. Like the Bankruptcy Code, the Federal Deposit Insurance Act so specifies. *See* 12 U.S.C. § 1821(d)(11)(A) (providing that amounts realized from the liquidation or other resolution of an insured depository institution will be distributed to the bank's shareholder(s) only after all creditors of the bank have been paid in full).

There is no prospect that the WMB receivership will result in payment of all of WMB's legitimate creditors in full, let alone provide funds for any dividend to be paid to WMI, let alone one sufficient for WMI to pay all of WMI's creditors in full, allowing for any payment to WMI's shareholders. WMB currently has more than $13 billion in unpaid bond debt, including approximately $6.1 billion in senior notes and another $7 billion in junior notes. In comparison, the proceeds paid by JPMorgan Chase ("JPMC") for most of WMB's operating assets totaled approximately $1.9 billion, leaving a shortfall in the amount needed to pay WMB's creditors in full of more than $11 billion. As the market recognizes, WMB's creditors will not be paid anywhere near in full. The more than $6 billion in senior notes issued by WMB are trading at less than 45 cents on the dollar, and the $7 billion in junior notes issued by the Bank are trading at pennies on the dollars. *See* Exhibit A.

To support its position that WMI may have sufficient value to pay its shareholders, the Equity Committee relies on the claims WMI has asserted against the WMB receivership. But WMI was a shareholder, not a creditor, of WMI. WMI's claims against the receivership estate have, accordingly, been disallowed by the FDIC. Although WMI has challenged that disallowance in proceedings that were pending (but now have been stayed) in U.S. District Court for the District of Columbia, there is nothing before this Court to suggest that disallowance will be overturned. And, even if WMI had any conceivably valid claims against WMB, WMB's

receivership estate and its creditors have substantially greater claims against WMI. For example, the Equity Committee champions WMI's purported $6.5 billion fraudulent conveyance claim against the WMB receivership estate for capital contributions that WMI allegedly made to WMB before the former went into bankruptcy and the latter went into receivership. But the Equity Committee fails to take into account that whatever capital contributions may have been made by WMI to WMB were more than offset by the upstreaming of some $15 billion in dividends from 2006 to 2008 from WMB to WMI—as well as by WMI's taking of nearly another billion dollars in WMB funds in the few weeks before WMI filed for bankruptcy and WMB was put into receivership. Both the FDIC, as receiver for WMB, and the Bank Bondholders (as well as other WMB senior noteholders), have filed billions of dollars in fraudulent transfer and other claims against WMI to recover these transfers, as well as for damages and other amounts. The Equity Committee's dream that WMI will nevertheless, on a net basis, have any valid claims against the WMB receivership estate, let alone sufficient allowed claims against the already deeply-insolvent WMB receivership estate to permit a recovery from that estate sizeable enough to allow WMI, in turn, to pay all of its creditors in full and then pay a dividend to its shareholders, is the stuff of pure fantasy.

The Equity Committee's only other argument is that WMI may also have claims for tax refunds and claims against JPMC to recover other assets that JPMC asserts were sold to it by the FDIC as receiver of WMB. But, again, the Equity Committee ignores reality: WMB, not WMI, was the operating entity that generated the tax losses and owned the assets. If any of those tax losses or other assets were not sold to JPMC, they are the property of WMB's receivership estate, not of WMI.

- 3 -

DOCS_DE:156922.1

One last point is worth brief mention: As this Court is well aware, the disputes and competing claims between and among WMI, WMI's creditors, the FDIC, WMB's creditors and JPMC are multifaceted and complex, generating already proceedings in two different trial courts (this Court and the D.C. District Court) as well as appeals. If litigating those disputes and claims to final resolution is necessary, that resolution will not occur any time soon. The real parties in interest, therefore, owe it to themselves and to the process to see if they can reach a global settlement. But there is no conceivable consensual resolution that can satisfy all those parties—the FDIC, WMB's creditors, WMI, its creditors, and JPMC—that will provide for any payment to WMI shareholders. Under both bankruptcy law and the FDI Act, when creditors are not being paid in full, the law dictates that equity cannot recover. There is no reason for that most basic principle to be suspended in this case, and no prospect that it will be.

DATED: January 25, 2009

Respectfully submitted,

Bank Bondholders

By their Attorneys,

/s/ Laura Davis Jones
Laura Davis Jones
Alan Kornfeld
Timothy P. Cairns
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

and

Philip D. Anker
WILMER CUTLER PICKERING HALE
AND DORR LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

Russell J. Bruemmer
Gianna Ravenscroft
Nancy L. Manzer
Lisa Ewart
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363