# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

--------------------------------------------------------------------x

In re                                                :   Chapter 11

WASHINGTON MUTUAL, INC., *et al.*                    :   Case No. 08-12229 (MFW)

                                                   :   Jointly Administered

             Debtors. :

--------------------------------------------------------------------x

UNION BANK, N.A.,                                    :   Adv. Pro. No. 10-_____ (___)

                                                   :

             *Plaintiff,*             :

                                                   :

         - against -                     :

JPMORGAN CHASE BANK, NATIONAL                        :
ASSOCIATION, WASHINGTON MUTUAL,
INC., C.M. LIFE INSURANCE COMPANY,                   :
AMERICAN INTERNATIONAL GROUP, INC.,
PRINCIPAL FINANCIAL GROUP, INC.,                     :
MASSACHUSETTS MUTUAL LIFE INSURANCE
COMPANY, THOMAS ALEXANDERSON, MARIE                  :
ALLEVA, ARTHUR ANDERSON, DOUGLAS
BARZELAY, ARTHUR BASSIN, ARTHUR                      :
BENNETT, JOHN BENT, RITA BLIGH, JAMES
BOLSTER, JENNE BRITELL, GENE BROOKS,                 :
JOHN BRULL, ANTHONY BURRIESCI,
WILLIAM CANDEE, RICHARD COILLI,                      :
PAUL COLASANO, JUDSON CROOM, JAMES,
DARAS, FRANK DeANGELO, J. EDWARD                     :
DIAMOND, THOMAS DUCCA, RAYMOND
DURAND, CAROL ESKEW, MICHAEL                         :
GALLAGHER, VIRGINIA GOMO, JOHN HEIM,
ANDREW HICKEY, JOSEPH JIANNETTO,                     :
DOUGLAS JOHNSON, JAMES KELLY, ROBERT
KETTENMANN, EDWARD KRAMER, JOHN                      :
LACORAZZA, JAMES LARGE, RICHARD LIMARDO, :
PHYLLIS MARINO, JENESTA MARLIN, MURRAY
MASCIS, RICHARD MAXSTADT, RICHARD MIRRO, :
JOHN MONAGHAN, WALTER MULLINS, CARLOS
MUNOZ, ROBERT MURPHY, JOSEPH MYRTETUS,               :
ABRAHAM OSSIP, RICHARD PARSONS,
PEYTON PATTERSON, LAWRENCE PETERS,                   :
JOHN PETTIT, WILLIAM PHILLIPS, HAROLD                :

REYNOLDS, EDWARD RUGGIERO, JOSEPH :
RUSSO, WILLIAM SCHULT, DONALD SCHWARTZ, :
NORMAN STAFFORD, ELLIS STALEY, :
DENNIS STARK, RICHARD TERZIAN, LAWRENCE :
TOAL, AMY RADIN, ROBERT TURNER, THOMAS :
VAN ARSDALE, JACK WAGNER, ROGER :
WILLIAMS, MARY JEAN WOLF, and :
FRANKLIN WRIGHT, :
:
            *Defendants.* :
:
------------------------------------------------------------------x

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Union Bank, N.A., formerly known as Union Bank of California, N.A., ("Union

Bank") states its complaint as follows:

### The Parties

1.      Plaintiff Union Bank is a national banking association, with its principal place of

business located at 400 California Street, San Francisco, California 94104.

2.      Defendant Washington Mutual, Inc. ("WMI") is a savings and loan holding

company incorporated in the State of Washington with its principal place of business in Seattle,

Washington.  WMI is one of the debtors and a debtor-in-possession in the above captioned

Chapter 11 cases, having filed its voluntary petition for reorganization under Chapter 11 of Title

11 of the United States Code (the "Bankruptcy Code") on September 26, 2008 in the United

States Bankruptcy Court for the District of Delaware.

3.      Defendant JP Morgan Chase Bank, National Association ("JP Morgan Chase") is a

national banking association, with its principal place of business in Columbus, Ohio.

4.      Defendants Thomas Alexanderson, Marie Alleva, Arthur Anderson, Douglas

Barzelay, Arthur  Bassin, Arthur Bennett, John Bent, Rita Bligh, James Bolster, Jenne Britell,

Gene Brooks, John Brull, Anthony Burriesci, William Candee, Richard Coilli, Paul Colasano,

Judson Croom, James Daras, Frank Deangelo, J. Edward Diamond, Thomas Ducca, Raymond Durand, Carol Eskew, Michael Gallagher, Virginia Gomo, John Heim, Andrew Hickey, Joseph Jiannetto, Douglas Johnson, James Kelly, Robert Kettenmann, Edward Kramer, John Lacorazza, James Large, Richard Limardo, Phyllis Marino, Jenesta Marlin, Murray Mascis, Richard Maxstadt, Richard Mirro, John Monaghan, Walter Mullins, Carlos Munoz, Robert Murphy, Joseph Myrtetus, Abraham Ossip, Richard Parsons, Peyton Patterson, Lawrence Peters, John Pettit, William Phillips, Harold Reynolds, Edward Ruggiero, Joseph Russo, William Schult, Donald Schwartz, Norman Stafford, Ellis Staley, Dennis Stark, Richard Terzian, Lawrence Toal, Amy Radin, Robert Turner, Thomas Van Arsdale, Jack Wagner, Roger Williams, Mary Jean Wolf and Franklin Wright are participants, insureds, sub-insureds and/or beneficiaries, as set forth in the schedule attached as Exhibit A hereto, pursuant to certain agreements and/or non-qualified deferred compensation plans, entered into by The Dime Savings Bank and/or Dime Bancorp, Inc. which entities WMI and/or one of its affiliates acquired in the period from 1998 through 2001 (collectively, the "Individual Defendants"). On information and belief, each of the Individual Defendants is or was either an employee of The Dime Savings Bank or Dime Bancorp, Inc. or is or was the designated beneficiary or spouse of such an employee.

5.      Defendant Massachusetts Mutual Life Insurance Company ("MassMutual") is an insurance company organized under the laws of the Commonwealth of Massachusetts, with its principal place of business located at 1295 State Street, Springfield, Massachusetts 01111, which is in the business, among other things, of providing life insurance.

6.      Defendant C.M. Life Insurance Company ("Conn Mutual") is a mutual insurance company, with its principal place of business located at 100 Bright Meadow Boulevard, Enfield,

Connecticut 06082, which is in the business, among other things, of providing life insurance. On information and belief, Conn Mutual is an affiliate or subsidiary of MassMutual.

7. Defendant American International Group, Inc. ("AIG") is a corporation organized and existing pursuant to the laws of Delaware, with its principal place of business located at 70 Pine Street, New York, New York. Among other things, AIG is in the business of providing life insurance.

8. Defendant Principal Financial Group Inc ("Principal Life") is a corporation organized and existing pursuant to the laws of Delaware, with its principal place of business located at 711 High Street, Des Moines, Iowa 50392. Among other things, Principal Life is in the business of providing life insurance.

9. Defendants MassMutual, Conn Mutual, AIG and Principal Life (collectively, the "Carrier Defendants") have provided life insurance policies on the lives of one or more of the Individual Defendants, as set forth in Exhibit A, pursuant to certain agreements and/or non-qualified deferred compensation plans entered into by or on behalf of The Dime Savings Bank or Dime Bancorp, Inc., and each of the Individual Defendants.

<u>**Jurisdiction and Venue**</u>

10. Since September 26, 2008, when WMI filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, WMI has been authorized to continue to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1334, 29 U.S.C. § 157, and Bankruptcy Rule 7001.

12. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O).

13.     Venue of this adversary proceeding properly lies in this Court pursuant to 28 U.S.C. § 1409(a).

## **Factual Background**

### **The Ahmanson Trusts**

14.     In or about 1998, WMI purchased H.F. Ahmanson & Company ("Ahmanson") and, on information and belief, obtained the assets maintained in the following nine trusts (collectively, the "Ahmanson Trusts"), previously established by Ahmanson in connection with, among other things, Ahmanson's deferred compensation and retirement plans:

- H.F. Ahmanson & Company 1989 Contingent Deferred Compensation Plan Trust, which was established on November 28, 1989 by Ahmanson (as grantor) and Union Bank (as trustee) to implement the 1989 Contingent Deferred Compensation Plan (014901-00-57).

- H.F. Ahmanson & Company and Affiliated Companies Supplemental Executive Retirement Plan Trust, which was established on November 28, 1989 by Ahmanson (as grantor) and Union Bank (as trustee) to implement the Supplemental Executive Retirement Plan (014902-00-56).

- H.F. Ahmanson & Company Elective Deferred Compensation Plan Trust, which was established on November 28, 1989 by Ahmanson (as grantor) and Union Bank (as trustee) to implement the Elective Deferred Compensation Plan (014903-00-57).

- H.F. Ahmanson & Company Outside Director Retirement Plan Trust, which was established on November 28, 1989 by Ahmanson (as grantor) and Union Bank (as trustee) to implement the Outside Director Retirement Plan (014904-00-56).

- H.F. Ahmanson & Company Outside Directors' Elective Deferred Compensation Plan Trust, which was established on November 28, 1989 by Ahmanson (as grantor) and Union Bank (as trustee) to implement the Outside Directors' Elective Deferred Compensation Plan (014905-00-57).

- H.F. Ahmanson & Company Loan Agents' Elective Deferred Compensation Plan, which was established on January 1, 1991 by Ahmanson (as grantor) and Union Bank (as trustee) to implement the Loan Agents' Elective Deferred Compensation Plan (500000002-00).

- Trust Under H.F. Ahmanson & Company Outside Directors' Capital Accumulation Plan, which was established on September 30, 1998 by Ahmanson

(as grantor) and Union Bank of California, N.A. (as trustee) to implement the Outside Directors' Capital Accumulation Plan (510001209-00).

- Trust Under H.F. Ahmanson & Company Loan Consultants' Capital Accumulation Plan, which was established on September 30, 1998 by Ahmanson (as grantor) and Union Bank of California, N.A. (as trustee) to implement the Loan Consultants' Capital Accumulation Plan (510001207-00).

- Trust Under H.F. Ahmanson & Company Capital Accumulation Plan, which was established on September 30, 1998 by Ahmanson (as grantor) and Union Bank of California, N.A. (as trustee) to implement the Capital Accumulation Plan (510001208-00).

15. The terms and conditions of each of the Ahmanson Trusts are set forth in separate trust agreements (the "Ahmanson Trust Agreements") pursuant to which Ahmanson appointed Union Bank as the trustee of each of the Ahmanson Trusts.

16. On information and belief, WMI is the successor-in-interest to Ahmanson with respect to each of the Ahmanson Trusts.

17. Pursuant to a "Purchase and Assumption Agreement [whole bank]," dated as of September 25, 2008, JPMorgan Chase purchased certain assets and assumed certain liabilities of Washington Mutual Bank, Henderson Nevada ("WMB"), which may have included certain assets or liabilities of WMI.

18. On May 15, 2009, WMI and WMI Investment Corp., a Debtor herein, filed a "Motion of Debtors for an Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code Authorizing But Not Directing (I) Washington Mutual, Inc. to Exercise Its Ownership Rights Over Certain Trust Assets, (II) Distribution of Trust Assets and (III) Termination of the Trusts" (D.I. 1023) ("Debtors' Ahmanson Trusts Motion").

19. In Debtors' Ahmanson Trusts Motion, WMI requested that the Court enter an order clarifying that WMI owned the assets of the Ahmanson Trusts (the "Ahmanson Trust Assets"),

and authorizing WMI to exercise its ownership rights over the Ahmanson Trusts Assets and to terminate the Trusts.

20. As stated in Paragraph 12 of Debtors' Ahmanson Trusts Motion, Union Bank, to ensure that it is acting properly and not in derogation of the rights or claims of any person or entity, "has requested that the Court approve any such exercise of [the described rights], provide advance approval of any and all applicable distributions of assets, and authorize the termination of the [Ahmanson Trusts]."

21. On information and belief, based on statements made in documents filed in this Court by WMI and by JPMorgan Chase, JPMorgan Chase does not assert that it owns or has any interest in the Ahmanson Trusts or the Ahmanson Trust Assets.

22. Debtors' Ahmanson Trusts Motion is still pending and has not been decided by this Court.

23. On information and belief, certain individuals have objected to WMI's assertion that it owns the Ahmanson Trust Assets and have filed objections to the Debtors' Ahmanson Trusts Motion in this Court.

24. Because ownership of the Ahmanson Trust Assets has not been finally adjudicated by this Court, Union Bank cannot direct disposition of or distribute the Ahmanson Trust Assets without risk of violating the rights of parties who do or may claim interests in or ownership of any of the Ahmanson Trusts Assets.

25. Accordingly, Union Bank requests that this Court determine who owns the Ahmanson Trust Assets.

**The Dime Rabbi Trusts**

26.   On information and belief, WMI or JPMorgan Chase each assert that it is entitled to the assets of four rabbi trusts utilized by The Dime Savings Bank (the "Dime") to fund the payment of benefits to certain of the Dime's executives and/or their spouses, estates or their beneficiaries under non-qualified deferred compensation and supplemental retirement plans (the "Dime Rabbi Trusts").

27.   WMI acquired The Dime Savings Bank and other entities affiliated with or owned by The Dime Savings Bank in or about 2001.

28.   These four Dime Rabbi Trusts are:

- "Umbrella Trust Agreement, dated as of May 18, 2000, between Dime Bancorp, Inc., The Dime Savings Bank of New York, FSB and HSBC Bank, USA, as Trustee with respect to the Designated Arrangements of The Dime Savings Bank of New York, FSB and Related Entities";

- "Amended and Restated Umbrella Trust Agreement, dated as of May 18, 2000, between Dime Bancorp, Inc., The Dime Savings Bank of New York, FSB and HSBC Bank USA, as Trustee, with respect to the Covered Arrangements of The Dime Savings Bank of New York, FSB and Related Entities," the "Agreement and Amendment to Amended and Restated Umbrella Trust Agreement, entered into and effective as of November 23, 2007, between Union Bank, WMI and others (the "Dime Executive Trust"), a true and accurate copy of which is attached as Exhibit B hereto;

- "Amended and Restated Umbrella Trust Agreement, dated as of May 18, 2000, between Dime Bancorp, Inc., The Dime Savings Bank of New York, FSB and HSBC Bank USA," with respect to certain covered arrangements; and

- "Benefit Protection Trust Agreement, dated as of May 18, 2000, between The Dime Savings Bank of New York, FSB, Dime Bancorp, Inc., and HSBC Bank USA, as Trustee"

29.   On or about December 31, 2007, HSBC Bank USA, resigned as Trustee of the four Dime Rabbi Trusts.

30.    Effective January 1, 2008, Union Bank was appointed Trustee under the Dime Rabbi Trust Agreements, with among other things, responsibility for paying plan participants and beneficiaries the benefits set forth in the respective Dime Rabbi Trust Agreements.

31.    WMI and/or WMB was the successor-in-interest to Dime Bancorp, Inc. and The Dime Saving Bank of New York, FSB, with respect to the Dime Rabbi Trusts, and acquired the assets and liabilities referenced in the Dime Rabbi Trust Agreements.

32.    In or about March 2009, JPMorgan Chase initiated an Adversary Proceeding, No. 09-50551, in which JPMorgan Chase, among other things, claims that it is the owner of the assets of the Dime Rabbi Trusts ("Dime Trust Assets"), and that WMI disputes, or has "refused to acknowledge JPMorgan Chase's ownership of [these] assets."

33.    JPMorgan Chase's Adversary Proceeding has not been adjudicated or otherwise finally resolved.

34.    Since ownership of the Dime Rabbi Trust Assets remains unresolved, Union Bank, as Trustee under the Dime Rabbi Trust Agreements, cannot distribute or otherwise act with respect to the Dime Trust Assets, without exposure to liability to any party, person or entity who or which claims an interest in and/or ownership of the Dime Trust Assets.

**The Dime Executive Trust "Split Dollar Policies"**

35.    The assets of the Dime Executive Trust include certain "split dollar" insurance policies.  With a "split dollar" life insurance policy, a portion of the life insurance premium is paid by the Dime Executive Trust, and a portion is paid to the Dime Executive Trust by the insured non-qualified participant and the insurance benefit may be split such that a portion is paid to the company and the rest to the estate of the insured employee (or of his or her spouse) or to the insured's designated beneficiary.

36.    There are two types of "split dollar" policies within the Dime Executive Trust. Under one type, the "split dollar/split owner" type, the insured and the Dime Executive Trust are co-owners of the policy, and the insured could elect either to designate the Dime Executive Trust as the beneficiary in return for a "key life" plan benefit from the Dime Executive Trust, or the insured could directly designate other beneficiaries for his or her portion of the death benefits. Under the other type of "split dollar" policy, known as an "endorsement split dollar policy," the employee is not a co-owner of the policy but the trust, as policy owner, has provided an endorsement that the insured's beneficiary is entitled to a portion of the policy's death benefit under the terms of the nonqualified deferred compensation plan.

37.    The Individual Defendants, as reflected in Exhibit A hereto, are those who are insured or may claim an interest under the split dollar policies which are assets of the Dime Executive Trust.

38.    With respect to both the split dollar/split owner and endorsement split dollar policies listed on the Schedule attached as Exhibit A hereto, there is an actual and substantial controversy as to whether WMI or JPMorgan Chase owns all or a portion of the proceeds of these policies.  Consequently, Union Bank cannot instruct the Carrier Defendants to pay the insured's portion of the benefits to the insured's designated beneficiary if either WMI or JPMorgan Chase, whichever the Court determines owns some or all of the Dime Executive Trust assets, contend that all of the benefits are to be paid to it, without exposure to liability from the insured's estate or beneficiary.

39.    With respect to the benefits of endorsement split dollar policies, WMI or JPMorgan Chase, whichever is determined to own some or all of the Dime Executive Trust assets, may take the position that all of the proceeds belong to it because the insured is not a co-owner of the

policy, such that the death benefits should not be split with the insured's estate or beneficiary. Accordingly, absent an order from the Court, Union Bank cannot distribute or allocate the benefits from the endorsement split dollar policies without risk of liability.

40. The Dime Executive Non-Qualified Plans require the insured to pay to the Dime Executive Trust a portion of the life insurance premium. Union Bank cannot accept the insured's portion of the premium without risk of liability to the Individual Defendants and/or their estates or beneficiaries, if it is adjudicated that no portion of the death benefits is to be paid to the Individual Defendants or to their estates or beneficiaries.

41. With respect to some of the life insurance policies which are assets of the Dime Executive Trust, payment of the premiums has been made from the cash surrender value of the particular life insurance policy. Over the next several months, however, the cash surrender value of certain of these life insurance policies will be insufficient to pay the premiums due. Union Bank may be at risk of liability to the Individual Defendants and their estates or beneficiaries if these policies lapse because the premiums are not paid, if there is no determination by this Court with respect to the rights, if any, of the Individual Defendants in or under the policies.

42. With respect to the split dollar policies, certain nonqualified deferred compensation plans required the insured employee to [periodically] make certain payments to preserve the employee's (or his or her designated beneficiary's) entitlement to death benefits. Certain Individual Defendants have tendered these payments to Union Bank. However, because the questions whether these Individual Defendants have any entitlement to the death benefits, and, if any do, what portion of the death benefit each is entitled to, have not been adjudicated and remain unresolved, Union Bank cannot apply the tendered payments to preserve the policies without risk of liability to one or more of the Defendants.

43.   Absent a declaration by this Court as to ownership of the Dime Executive Trust Assets, Union Bank cannot act with respect to distribution of the Dime Executive Trust Assets, or to ensure the split dollar life insurance policy premiums are paid such that the policies do not lapse, or that other requisite payments are made such that the benefits of the insured or plan participant are preserved, or to distribute or allocate the death benefits under the split dollar life insurance policies, without the real and substantial risk of liability to one or more of the Defendants or to others.

## First Claim for Relief

### (For a Declaratory Judgment with Respect to the Ahmanson Trusts)

44.   Union Bank repeats and reincorporates the allegations contained in Paragraphs 1 through 42 herein.

45.   There is an actual and substantial controversy as to ownership of the Ahmanson Trust assets, of sufficient immediacy to warrant declaratory relief under the Declaratory Judgment Act, 28 USC § 2201.

46.   Absent a declaration as to who or which entity owns the Ahmanson Trust Assets, Union Bank cannot distribute those assets without risk of liability to one or more of the Defendants.

47.   Union Bank requests a declaratory judgment stating what person(s) or entities own the Ahmanson Trust Assets.

## Second Claim for Relief

### (For a Declaratory Judgment With Respect to the Dime Trusts Except the Dime Executive Trust)

48.   Union Bank repeats and reincorporates the allegations contained in Paragraphs 1 through 46 herein.

49. There is an actual and substantial controversy as to which person(s) or entities own the assets of the Dime Rabbi Trusts (excepting the assets of the Dime Executive Trust), which is of sufficient immediacy to warrant declaratory relief under the Declaratory Judgment Act, 28 USC § 2201.

50. Absent a declaration as to which person(s) or entities own the assets of the Dime Rabbi Trusts (except the assets of the Dime Executive Trust, attached as Exhibit B hereto), Union Bank cannot distribute those assets without risk of liability to one or more of the Defendants.

51. Union Bank also requests a declaratory judgment stating what person(s) or entities own(s) the assets of the three other Dime Rabbi Trusts[1].

### Third Claim for Relief

### (For a Declaratory Judgment with Respect to the Dime Executive Trust)

52. Union Bank repeats and reincorporates the allegation contained in Paragraphs 1 through 50 herein.

53. With respect to the split dollar policies which are assets of the Dime Executive Trust, Exhibit B hereto, there are actual and substantial controversies as to:

a. Which person(s) and/or entities own the split dollar/split owner life insurance policies which are assets of the Dime Executive Trust; and if such policies are owned by more than one Defendant, as to what portion of the policy, or what amount of ownership interest in the policy and the proceeds thereof, each owner, insured or beneficiary has;

b. Which person(s) and/or entities are entitled to what portion of the proceeds of the endorsement split dollar life insurance policies;

---

[1] Due to the voluminous nature of these trust agreements, they are not attached as exhibits but are available upon request.

c.     Which person(s) or entities are to pay what portion of the premiums to ensure that the split dollar life insurance policies which are assets of the Dime Executive Trust do not lapse; which are imputed of sufficient immediacy to warrant judicial relief under the Declaratory Judgment Act, 28 USC § 2201.

54.    Union Bank requests a declaratory judgment determining which person(s) or entities own the split dollar life insurance policies which are assets of the Dime Executive Trust, and in what portion or amount; which person(s) or entities are entitled to payment of the death benefits provided under these split dollar life insurance policies, and in what amounts, if more than one person or entity is entitled to such benefits; and which person(s) or entities, if more than one, is responsible for payment of the premiums or other payments necessary to keep these split dollar life insurance policies in effect, and if more than one, which person or entity is responsible to pay what portion of the premium.

**WHEREFORE**, Union Bank respectfully requests that this Court grant judgment:

(1)    Declaring and adjudicating which person(s) or entities own the Ahmanson Trust assets;

(2)    Declaring and adjudicating which person(s) or entities own the assets of the Dime Rabbi Trusts (excluding the Dime Executive Trust);

(3)    With respect to the Dime Executive Trust, declaring and adjudicating which person(s) or entities own the split dollar life insurance policies which are assets of the Dime Executive Trust, and in what portion or amount; which person(s) or entities are entitled to payment of the death benefits provided under these split dollar life insurance policies, and in what amounts, if more than one person or entity is entitled to such benefits; which person(s) or

14

entities, if more than one, is responsible for payment of the premiums to keep these split dollar life insurance policies in effect, and if more than one, which person or entity is responsible to pay what portion of the premium; and whether those Individual Defendants, and/or their beneficiaries, who were entitled to death benefits through the endorsement split dollar policies, are entitled to those benefits, and if so, what portion of them;

(4)     Awarding Union Bank its attorneys' fees and costs from the assets of the Ahmanson Trusts and of the Dime Rabbi Trusts; and

(5)     Awarding Union Bank such other and further relief as to the Court is fair, just and proper.

Dated: Wilmington, Delaware
March 11, 2010

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Gregory W. Werkheiser (#3553)
Chad A. Fights (#5006)
1201 North Market Street, P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*and*

K&L GATES LLP
599 Lexington Avenue
New York, NY 10022
Tel. (212) 536-3900
Fax. (212) 536-3901

Jeffrey N. Rich
jeff.rich@klgates.com
Lani A. Adler
lani.adler@klgates.com

*Attorneys for Plaintiff Union Bank, N.A.*