PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS
HERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS YOUR CLAIMS

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-----------------------------------------------------------x
|  | : | |
| *In re* | : | **Chapter 11** |
| | : | |
| **WASHINGTON MUTUAL, INC., <u>et al</u>.,**[1] | : | **Case No. 08-12229 (MFW)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
| | : | Hearing Date: April 21, 2010 at 11:30 a.m. (ET) |
-----------------------------------------------------------x | : | Objection Deadline:  March 29, 2010 at 4:00 p.m. (ET)

## DEBTORS' TWENTY-SIXTH OMNIBUS (SUBSTANTIVE)
## OBJECTION TO PROOFS OF CLAIM OF JAY AGNES
## (CLAIM NO. 2588) AND R.S. BASSMAN (CLAIM NO. 3666)

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax
identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395).
The Debtors' principal offices are located at 925 Fourth Avenue Suite 2500, Seattle, WA 98104.

Washington Mutual, Inc. ("WMI") and WMI Investment Corp., as debtors and debtors in possession (collectively, the "Debtors"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), file this twenty-sixth substantive omnibus objection (the "Twenty-Sixth Omnibus Objection") to the proof of claim (Claim No. 2588) filed on behalf of Jay Agnes (the "Agnes Claim"), and the proof of claim (Claim No. 3666), filed on behalf of R.S. Bassman (the "Bassman Claim" and, together with the Agnes Claim, the "Claims"),[2] and respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On September 26, 2008 (the "Commencement Date"), each of the Debtors commenced with this Court a voluntary case pursuant to chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 3, 2008, the Court entered an order, pursuant to Bankruptcy Rule 1015(b), authorizing the joint administration of the Debtors' chapter 11 cases.

---

[2] The terms "Agnes Claim" and "Bassman Claim" also refer to the supporting complaints attached to the proof of claim sheet.

**WMI's Business**

        3.      WMI, a holding company incorporated in the State of Washington, is the direct parent of WMI Investment, which served as an investment vehicle for WMI and holds a variety of securities. WMI Investment is incorporated in the State of Delaware.

        4.      Prior to the Commencement Date, WMI operated as a savings and loan holding company that owned Washington Mutual Bank ("WMB") and, indirectly, such bank's subsidiaries, including Washington Mutual Bank fsb ("WMBfsb"). WMI still owns all of the outstanding stock of WMB, and WMI also has certain non-banking, non-debtor subsidiaries (the "Non-debtor Subsidiaries"). Like all savings and loan holding companies, WMI was subject to regulation by the Office of Thrift Supervision (the "OTS"). WMB and WMBfsb, in turn, like all depository institutions with federal thrift charters, were subject to regulation and examination by the OTS. In addition, WMI's banking and nonbanking subsidiaries were overseen by various federal and state authorities, including the Federal Deposit Insurance Corporation ("FDIC").

        5.      On September 25, 2008, the Director of the OTS, by order number 2008-36, appointed the FDIC as receiver for WMB and advised that the receiver was immediately taking possession of WMB (the "Receivership"). Immediately after its appointment as receiver, the FDIC purportedly sold substantially all the assets of WMB, including the stock of WMBfsb, to JPMorgan Chase Bank, National Association ("JPMorgan Chase") pursuant to that certain Purchase and Assumption Agreement, Whole Bank, dated as of September 25, 2008 (the "Purchase Agreement").

        6.      WMI's assets include its common stock interest in WMB, its interest in its non-banking subsidiaries, and more than $4 billion of cash that WMI and its non-banking subsidiaries (including WMI Investment) had on deposit at WMB and WMBfsb immediately prior to the time the FDIC was appointed as receiver.

## The Bar Date and Schedules

7.      On December 19, 2008, the Debtors filed with the Court their schedules of assets and liabilities.  On January 27, 2009, and February 24, 2009, WMI filed with the Court its first and second, respectively, amended schedule of assets and liabilities (collectively, the "Schedules").

8.      By order, dated January 30, 2009 (the "Bar Date Order"), the Court established March 31, 2009 (the "Bar Date") as the deadline for filing proofs of claim against the Debtors in these chapter 11 cases.  Pursuant to the Bar Date Order, each creditor, subject to certain limited exceptions, was required to file a proof of claim on or before the Bar Date.

9.      In accordance with the Bar Date Order, Kurtzman Carson Consultants, LLC ("KCC"), the Debtors' court-appointed claims and noticing agent, mailed notices of the Bar Date and proof of claim forms to, among others, all of the Debtors' creditors and other known holders of claims as of the Commencement Date.  Notice of the Bar Date also was published once in *The New York Times (National Edition), The Wall Street Journal* and *The Seattle Times*.

## Claims 2588 and 3666

10.     On March 25, 2009, Robert J. Cynkar, counsel for both Jay Agnes ("Agnes") and R.S. Bassman ("Bassman," and collectively with Agnes, the "Claimants"), filed the Agnes Claim and the Bassman Claim, asserting contingent claims each amounting to $250,000,000.  The Debtors object to the validity of the Claims and move the Court to disallow the Claims in their entirety.

11.     The Agnes Claim is based on prepetition litigation styled *Agnes v. Raines, et al*, No. 08-1093 (the "Agnes Litigation"), filed by Agnes on June 25, 2008, in the United States District Court for the District of Columbia against multiple defendants including WMI,

asserting derivative shareholder claims on behalf of the Federal National Mortgage Association ("Fannie Mae").

12.     The Bassman Claim is based on prepetition litigation styled *Bassman v. Syron*, No. 08-00773 (the "Bassman Litigation" and together with the Agnes Litigation, the "Litigations"), filed by Bassman on March 10, 2008, in the Eastern District of Virginia against multiple defendants including WMI, asserting a derivative shareholder claim on behalf of the Federal Home Loan Mortgage Corporation ("Freddie Mac").

13.     The Litigations involve nearly identical causes of action against WMI, based on nearly identical complaints. In each litigation, the respective plaintiff alleges that WMI artificially inflated property appraisals related to mortgages and loans sold to the respective government-sponsored enterprise ("GSE"), *i.e.* Fannie Mae or Freddie Mac. Specifically, both complaints assert breach of contract claims against WMI stemming from:

> The contracts by which WaMu and Countrywide sold loans to [the respective GSE], which plaintiff does not presently have available to attach hereto, either by implication or otherwise included representations and promises by WaMu and Countrywide, respectively, that the value of those loans had been determined by appraisals in compliance with professional and legal standards requiring the independence of appraisers from the lending, investment, and collection functions of a financial institution.[3]

Both complaints assert breach of warranty claims against WMI for allegedly "warrant[ing] that the appraisals underlying [each] loan [were] in full compliance with [the Uniform Standards of Professional Appraisal Practice ("USPAP")], applicable laws, and [the respective GSE's] requirements." Agnes Complaint at ¶ 255; Bassman Complaint at ¶ 123. Moreover, both complaints assert liability against WMI for conspiracy to deceive and defraud arising out of:

---

[3] Bassman Complaint at ¶ 117, *Bassman v. Syron*, No. 08-00773 (E.D. Va. Mar. 10, 2008) ("Bassman Complaint"); Agnes Complaint at ¶ 248, *Agnes v. Raines*, No. 08-1093 (D.D.C. June 25, 2008) ("Agnes Complaint").

agree[ing] and conspir[ing] to allow WaMu and Countrywide loan officers, respectively, to effectively control the selection of appraisers for their originated loans and to manipulate the appraisal process so as to improperly, unprofessionally, and illegally increase the appraised value of the properties that were collateral for WaMu loans sold by it and purchased by [the GSE].

Bassman Complaint at ¶ 128; Agnes Complaint at ¶ 260.

**The Appointment of the Conservator**

14.     In July 2008, in response to the subprime mortgage crisis, Congress enacted the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654, *codified at* 12 U.S.C. § 4617. HERA, among other things, created the Federal Housing Finance Agency (the "FHFA"), which succeeded the Office of Federal Housing Enterprise Oversight (the "OFHEO") as the regulator of the government-sponsored enterprises Fannie Mae and Freddie Mac. On September 6, 2008, the FHFA was appointed conservator of Fannie Mae and Freddie Mac. As part of its appointment, the FHFA "immediately succeed[ed] to . . . all rights, titles, powers, and privileges of [Fannie Mae and Freddie Mac], and of any stockholder, officer, or director of [Fannie Mae or Freddie Mac,]" *id.* at § 4617(b)(2)(A)(i), and acquired the authority to "take over the assets of and operate [Fannie Mae and Freddie Mac] with all the powers of the shareholders, the directors, and the officers of [Fannie Mae and Freddie Mac] and conduct all business of [Fannie Mae and Freddie Mac]," *id.* § 4617(b)(2)(B)(i).

15.     On or about February 2, 2009 and November 17, 2008, FHFA filed motions to substitute itself for the plaintiffs in both the Agnes Litigation and the Bassman Litigation.[4] Both Agnes and Bassman opposed the FHFA's motions and argued, in part, that the

---

[4] *See* Motion of the FHFA as Conservator for Fannie Mae to Substitute for Shareholder Derivative Plaintiffs and Statement of Points and Authorities in Support Thereof, *Agnes v. Raines*, No. 08-1093 (D.D.C. Feb. 2, 2009); Opposition of the FHFA to the Plaintiffs' Motion to Appoint Lead Plaintiff and Lead and Liaison Counsel, and Cross-Motion to Substitute the Conservator in Place of the Shareholder

FHFA is not an appropriate plaintiff because it did not assert a claim in WMI's chapter 11 case. In response, in the Agnes Litigation, the FHFA submitted a letter to the court criticizing Agnes for "hav[ing] failed to recognize the simple, yet critically important, fact that there are two Washington Mutual entities: Washington Mutual, Inc. ("WMI"), and Washington Mutual Bank ("WMB")." Letter from H. Cayne to Judge Leon at 4, dated May 6, 2009 ("Agnes Letter"), a copy of which is attached hereto as Exhibit A. Furthermore, with respect to Agnes' claim in WMI's bankruptcy case, FHFA stated:

> Plaintiffs have no business filing proofs of claim on behalf of Fannie Mae. It is highly doubtful that Plaintiffs could make such a filing even in the absence of the Conservatorship, but HERA plainly removes any doubt: Only the Conservator may authorize the filing of a proof of claim for Fannie Mae because the Conservator has "*all* rights, titles, powers, and privileges" of Fannie Mae and its shareholders. 12 U.S.C. § 4617(b)(2)(A).

*Id.* FHFA went on to note that:

> **Not only have Plaintiffs violated HERA with their purported filing, but they also have made a filing against the wrong Washington Mutual entity.** Although the complaint that Plaintiff Agnes filed names "Washington Mutual Inc." as a defendant, it is clear that the claims are, in fact, directed against WMB. Agnes's complaint alleges that WMI was a loan originator that conspired to artificially inflate loan appraisals to the detriment of Fannie Mae's loan portfolio. (*See* Agnes Compl. ¶¶ 54, 134-158.) However, as described above, WMI is not loan originator, does not service loans, and has nothing to do with the appraisal process. WMI was merely the previous owner of WMB, which is now owned by JPMC. Accordingly, **Plaintiff Agnes has plainly named the wrong Washington Mutual entity as a defendant – WMB, the bank, is the correct defendant to the allegations in the Agnes complaint.** (*See id.* ¶ 54 (incorrectly describing WMI as "the country's largest savings and loan" and "one of the nation's largest originators of so called sub-prime mortgages")). **Compounding this error, Plaintiff Agnes has now filed a purported proof of claim against the wrong Washington Mutual entity – WMI**

---

Plaintiffs, *In re Fed. Home Loan Mortgage Corp. Derivative Litig.*, No. 08-00773 (E.D. Va Nov. 17, 2008).

**instead of WMB.** This improper meddling by the Plaintiffs only serves to impose additional costs and burdens on the Conservator, and it demonstrates why FHFA should be substituted in these actions immediately. . . . Plaintiffs have already imposed undue burdens on the Conservator and the Court **with their baseless allegations and their unauthorized actions that are plainly barred by HERA.** FHFA respectfully urges the Court to act promptly to substitute FHFA so that **Plaintiffs cannot continue with such improper and costly shenanigans.**

*Id*. at 5 (emphasis added).

16.     Similarly, in the Bassman Litigation, FHFA also argued that Bassman's proof of claim against WMI is baseless. In a May 20, 2009 filing, FHFA stated, "The shareholder plaintiffs had no authority to make such a filing on behalf of Freddie Mac, and indeed the shareholders' proof of claim is critically flawed – and essentially worthless – as it is directed against the wrong WaMu entity."[5] FHFA went on to note:

> Plaintiffs have no business filing proofs of claim on behalf of Freddie Mac. It is highly doubtful that Plaintiffs could make such a filing even in the absence of the Conservatorship,[3] but HERA plainly removes any doubt: only the Conservator may authorize the filing of a proof of claim for Freddie Mac because the Conservator has **"all rights, titles, powers, and privileges"** of Freddie Mac and its shareholders. 12 U.S.C. § 4617(b)(2)(A) (emphasis added). **Not only have Plaintiffs contravened HERA with their purported filing, but they also have made a filing against the wrong Washington Mutual entity.** Although the complaint that Plaintiff Bassman filed in this Court names "Washington Mutual Inc." as a defendant, it is clear that the claims are, in fact, directed against WaMu Bank. Bassman's complaint alleges that WaMu, Inc. was a loan originator that conspired to artificially inflate loan appraisals to the detriment of Freddie Mac's loan portfolio. (*See* Bassman First Am. Compl. ¶¶ 3, 33, 126-50, 177-87.) WaMu, Inc., however, was a holding company that at one time owned WaMu Bank; WaMu, Inc. is not and has never been a loan originator or loan servicer, and it has nothing to do with the appraisal process. Those are tasks undertaken by WaMu Bank.

---

[5] Response by FHFA to the Court's Inquiry Regarding Washington Mutual (the "Bassman Response") at 2, *In re Fed. Home Loan Mortgage Corp. Derivative Litig.*, No. 08-00773 (E.D. Va. May 20, 2009), a copy of which is attached as Exhibit B.

[3] See Fed. R. Bankr. P. 3001(b) ("[a] proof of claim shall be executed by the creditor or the creditor's authorized agent").

*Id.* at 4 (emphasis added).

17.     Ultimately, both the Agnes and Bassman courts agreed with FHFA and substituted it as plaintiff in both Litigations. *See* Memorandum Order, *Agnes v. Raines,* No. 08-1093 (D.D.C. June 25, 2009) ("Agnes Order"), a copy of which is attached hereto as Exhibit C; *In re Federal Home Loan Mortgage Corp. Derivative Litig.*, No. 08-00773 (E.D. Va. Nov. 21, 2008) ("Bassman Order"), a copy of which is attached hereto as Exhibit D. Agnes and Bassman have appealed these decisions and such appeals are still pending before the D.C. and 4th Circuit Courts of Appeal.[6]

18.     FHFA, as the substituted plaintiff in both the Agnes Litigation and the Bassman Litigation, has taken steps in both dockets to dispose of these causes of action. In the Agnes Litigation, FHFA moved to dismiss without prejudice the claims against WMI.[7] This motion is currently pending and has been opposed by various named defendants who are seeking a dismissal *with* prejudice due to a lack of prosecution.[8] In the Bassman Litigation, which was

---

[6] *See* Notice of Appeal, *Agnes v. Raines*, No. 08-1093 (D.D.C. Jul. 2, 2009); Notice of Appeal, *In re Fed. Home Loan Mortgage Corp. Derivative Litig.*, No. 08-00773 (E.D. Va. Aug. 20, 2009).

[7] *See* Motion for Approval of Voluntary Dismissal Without Prejudice or, in the Alternative, to Stay Proceedings, *Fed. Housing Fin. Agency as Conservator for the Fed. Nat'l Mortgage Ass'n v. Raines, et al*, No. 08-1093 (D.D.C. Aug. 28, 2009), a copy of which is attached as Exhibit E.

[8] *See* Defendants Franklin D. Raines', J. Timothy Howard's and Leanne G. Spencer's Motion to Dismiss the Accounting-Related Claims with Prejudice for Failure to Prosecute, *Fed. Housing Fin. Agency as Conservator for the Fed. Nat'l Mortgage Ass'n v. Raines, et al*, No. 08-1093 (D.D.C. Sept. 8, 2009). Due to the automatic stay, WMI has not filed papers or taken positions in these Litigations.

part of a consolidated docket, FHFA successfully moved to stay the case to give FHFA time to consider whether to proceed with such claims.[9] The case remains stayed.

**The Appraisal Process**

19.     In the course of ordinary business, WMB and its subsidiaries originated and often sold home loans secured by mortgages on the underlying properties. As evidenced by the Declaration of Charles Edward Smith in support of the Twenty-Sixth Omnibus Objection ("Smith Decl."), attached hereto as Exhibit G, WMI, a Washington corporation that was at one time regulated as a savings and loan holding company, does not currently, and never has, directly originated or serviced any mortgage loan anywhere in the United States or elsewhere. *Id*. at ¶ 7. Additionally, WMI does not currently, and never has, directly engaged in any activity forming or constituting the business of banking. *Id*. at ¶ 8. WMI does not currently, and never has, engaged in any activity or function constituting appraisal services or the supervision of appraisals or appraisal services. *Id*. Accordingly, at no time did WMI originate, service or sell any loans to either Fannie Mae or Freddie Mac. *Id*. at ¶ 7. In addition, WMI does not, and never has, performed appraisal services for mortgage loans or supervised the appraisal services provided by the Vendors. *Id*. at ¶ 8.

**ARGUMENT**

**I.   INTRODUCTION**

20.     The Claims, which are nearly identical shareholder derivative actions, suffer from the same fatal flaws. As an initial matter, the claims are filed against the wrong party. As FHFA has conceded, it is WMB, not WMI, which would have sold the loans at issue to Fannie Mae and Freddie Mac. WMI was merely a savings and loan holding company. Even if

---

[9] Consent Motion to Stay All Proceedings Pending the Conservator's Further Investigation Into the Claims Presented, *In re Fed. Home Loan Mortgage Corp. Derivative Litig.*, No. 08-00773 (E.D. Va. Aug. 13, 2009), a copy of which is attached hereto as Exhibit F.

the Claims had been filed against the correct party, such Claims would still fail since they were not properly authorized. Both Claims were filed ostensibly on behalf of the respective GSEs at issue, but actually without the authorization of the conservator and thus in violation of HERA as well as Bankruptcy Rule 3001(b).

21.     Even if the Claimants were able to assert the Claims against WMI, which was not a party to any contracts to sell loans to Fannie Mae or Freddie Mac, such claims are without merit. First, while the Claimants assert causes of action for breach of contract and breach of warranty, they do not allege which specific contracts or warranties were breached. Nor do Claimants adequately allege facts to support their argument that WMI is liable for conspiracy to deceive and defraud. Accordingly, Claimants fail to adequately plead the causes of action asserted in their proof of claim.

22.     Moreover, Claimants' underlying assertions are baseless. Claimants are simply incorrect that "WaMu controlled the selection and assignment of appraisers to the loans that were ultimately sold . . . in violation of . . . professional and legal standards." Agnes Complaint at ¶ 248; Bassman Complaint at ¶ 117. Such systemic, material violations of appraisal standards did not occur. But, even, assuming *arguendo*, that such violations had occurred, Claimants would be barred from recovering on behalf of Fannie Mae and Freddie Mac, because they allege that the board of directors and management for both Fannie Mae and Freddie Mac had, or should have had, knowledge of the alleged wrongful practices. *See* Agnes Complaint at ¶ 157; Bassman Complaint at ¶ 87. Accordingly, if the board of directors and management of Fannie Mae and Freddie Mac had such knowledge, the doctrines of waiver and estoppel would preclude any recovery by Claimants on their behalf. Last, Claimants simply have not, and cannot, establish that any loss suffered by Fannie Mae or Freddie Mac is attributable to

WMI's violations of appraisal standards – especially since WMI was not involved in such operations.

## II. CLAIMANTS ASSERT THEIR CLAIMS AGAINST THE WRONG PARTY

23.     The Claims at issue fail for the simple reason that they are asserted against the wrong party. As FHFA has noted, "[a]lthough the complaint . . . names 'Washington Mutual Inc.' as a defendant, it is clear that the claims are, in fact, directed against WaMu Bank." *Agnes Letter* at 5, Ex. A; *Bassman Response* at 4, Ex. B. In fact, WMI does not currently, and never has, directly originated or serviced any mortgage loan anywhere in the United States or elsewhere. Smith Decl. at ¶ 7, Ex. G. WMI does not and never has sold mortgage loans to any party, including Fannie Mae or Freddie Mac. *Id.* Instead, WMI was merely the parent and shareholder to WMB, which was the entity responsible for such home loan products. *Id.*

24.     Claimants' theories of liability are clearly based on the loan-related activities of WMB, rather than any action performed by WMI. Claimants begin by defining WMI as "the country's largest savings and loan" and "one of the nation's largest originators of so-called subprime mortgages," *Bassman Complaint* at ¶ 26, *Agnes Complaint* at ¶ 54, descriptions which actually apply only to WMB. Claimants' causes of action for breach of contract and warranty are based on agreements between the GSEs and WMB, yet the Claimants inaccurately portray such obligations as binding WMI. *See, e.g., Bassman Complaint* at ¶ 117 (setting forth liability based on the "contracts by which WaMu and Countrywide sold loans to Freddie Mac"); *Agnes Complaint* at ¶ 248 (setting forth liability based on the "contracts by which WaMu and Countrywide sold loans to Fannie Mae"); *Bassman Complaint* at ¶ 123 (alleging liability on the basis of the fact that "with each sale of a loan to Freddie Mac, WaMu and Countrywide warranted that the appraisals underlying the loans were in full compliance with USPAP, applicable laws, and Freddie Mac's requirements"); *Agnes Complaint* at ¶ 255 (alleging

liability on the basis of the fact that "with each sale of a loan to Fannie Mae, WaMu and Countrywide warranted that the appraisals underlying the loan were in full compliance with USPAP, applicable laws, and Fannie Mae's requirements"). Additionally, Claimants' conspiracy to deceive and defraud claims are based on WMI purportedly agreeing and conspiring to allow WMI "loan officers . . . to effectively control the selection of appraisers for their originated loans and to manipulate the appraisal process. . . ." Agnes Complaint at ¶ 260; Bassman Complaint at ¶ 128. WMI, however, did not sell any loans to Fannie Mae or Freddie Mac, did not originate any loans, and did not have any loan officers. Smith Decl. at ¶ 7, Ex. G. Claimants have mistakenly filed the Litigations and corresponding Claims against the wrong party. Accordingly, the Claims should be disallowed as having failed to state a basis for liability against WMI.

### III. Claimants Are Not Authorized Representatives of Fannie Mae or Freddie Mac

25.     Even if the Claims had been filed against the correct party, such claims would still fail since they were not authorized by Bankruptcy Rule 3001(b), which requires that a proof of claim be "executed by the creditor or the creditor's authorized agent." Claimants are asserting derivative shareholder claims on behalf of Fannie Mae and Freddie Mac, yet they are not authorized agents of these entities. *See Mission Towers v. Grace*, No. 07-287, 2007 U.S. Dist. LEXIS 89913, at **9-10 (D. Del. Dec. 6, 2007) ("An agent may file a proof of claim only for those individuals who have expressly authorized the agent to do so. . . [Bankruptcy] Rule 3001(b) allows a creditor to decide to file a proof of claim and to instruct an agent to do so; it does not allow an 'agent' to decide to file a proof of claim and then inform a creditor after the fact.") (citations and quotations omitted). Under HERA, the FHFA "immediately succeed[ed] to . . . all rights, titles, powers, and privileges of [Fannie Mae and Freddie Mac], and of any **stockholder**, officer, or director of [Fannie Mae or Freddie Mac]." 12 U.S.C. § 4617(b)(2)(A)(i) (emphasis added). FHFA was appointed as the conservator September 6, 2008 and the Claims

were filed on March 25, 2009. Subsequent to the appointment, neither Agnes nor Bassman sought FHFA's or this Court's consent with respect to filing the Claims. *See* Bassman Response at 4, Ex. B; Agnes Letter at 5, Ex. A.

26. Since the appointment, FHFA has been substituted as the plaintiff in the Litigations, as both courts have recognized that, under HERA, FHFA has the exclusive right to bring such claims. *See* Agnes Order at 4-6, Ex. C; Bassman Order at 8-12, Ex. D. FHFA, itself, has noted that under HERA, only the conservator has the right to bring a shareholder derivative claim in WMI's bankruptcy case and that FHFA has not authorized the filing of such a claim. *See* Bassman Response at 4, Ex. B ("[O]nly the Conservator may authorize the filing of a proof of claim for Freddie Mac because the Conservator has 'all rights, titles, powers, and privileges' of Freddie Mac and its shareholders."); *see also* Agnes Letter at 4, Ex. A ("Plaintiffs have no business filing proofs of claim on behalf of Fannie Mae. . . Only the Conservator may authorize the filing of a proof of claim for Fannie Mae because the Conservator has '*all* rights, titles, powers, and privileges' of Fannie Mae and its shareholders."). Accordingly, both the Agnes and Bassman claims should be disallowed on the basis that such claims do not comply with Bankruptcy Rule 3001(b).[10]

---

[10] Additionally, FHFA, as the substituted plaintiff, has filed a motion to dismiss, without prejudice, in the underlying Agnes litigation, which has been opposed by various defendants seeking dismissal with prejudice. *See supra* note 7. If the court grants any of these motions to dismiss, the claims against WMI would also be dismissed leaving this Court with no issues to adjudicate. *See Griffin v. Box Bros. Holding Co. (In re Box Bros. Holding Co.)*, 194 B.R. 32, 43-44 (D. Del. 1996) (dismissing the proof of claim because the adversary complaint, which was the sole basis for the claim, was dismissed by the Bankruptcy Court). Accordingly, if such a dismissal is granted, this Court should dismiss the Agnes Claim.

## IV. Claimants Have Failed To Adequately Plead Their Claims

### A. *Claimants' Breach of Contract and Breach of Warranty Claims Fail to Satisfy Notice Pleading Standards*

27.     Pursuant to Rule 8(a) of the Federal Rule of Civil Procedure (the "Federal Rules"), a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Claimants' complaints fail to satisfy this notice pleading requirement with respect to Claimants' breach of contract and breach of warranty claims, because Claimants baldly assert that WMI breached contracts and warranties with Fannie Mae and Freddie Mac, without actually identifying any such contract or warranty.[11] Such unsupported and speculative assertions are plainly inadequate under the requirements of notice pleading. "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007). The court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3rd Cir. 1996).

28.     Claimants' breach of contract and breach of warranty arguments amount to a series of unsupported conclusions based on nothing more than the unwarranted "inference and belief" of the Claimants. First, Claimants fail to identify which contracts serve as the basis of these claims, except to broadly refer to the agreements as "the contracts by which [WMI] and

---

[11] Of course, as detailed *supra* ¶¶ 23, 24, the reason Claimants cannot identify any contract with or warranty from WMI is because such agreements were with WMB, not WMI.

Countrywide sold loans to [the respective GSE]." Bassman Complaint at ¶ 117; Agnes Complaint at ¶ 248. The fact that Claimants incorrectly believe these contracts are between WMI –and not WMB –and Fannie Mae or Freddie Mac would suggest that the Claimants have never even seen the contracts to which they refer. Such mistaken conjecture highlights the speculation and baselessness inherent in Claimants' unwarranted assertions. While Claimants readily admit that they do not have the contracts to which they obliquely refer, they nonetheless assert that these contracts must have "included representations and promises" regarding the appraisals underlying the loans in question and that these representations, none of which they identify, were false. Bassman Complaint at ¶ 117; Agnes Complaint at ¶ 248. Such rank speculation—aside from being manifestly incorrect—simply does not satisfy the requirements of notice pleading. The Court should therefore disallow the Claims.

**B.** ***Claimants Have Failed to Plead Conspiracy to Deceive and Defraud with Particularity***

29.     Claimants have also failed to plead their claim for conspiracy to deceive and defraud, Bassman Complaint at ¶¶ 127-130 and Agnes Complaint at ¶¶ 259-262, with the requisite particularity required of claims based in fraud under Federal Rule 9(b). *See* Fed. R. Civ. P. 9(b) (requiring a party that alleges fraud or mistake to "state with particularity the circumstances constituting fraud or mistake"); *see also Toner v. Allstate Ins. Co.*, 821 F. Supp. 276, 283 (D. Del. 1993) ("Although the language of Rule 9(b) confines its requirements to claims of mistake and fraud, the requirements of the rule apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud."). The particularity requirements of Federal Rule 9(b) are quite demanding. Claimant "must allege with particularity all the essential elements of actionable fraud." *Tredennick v. Bone*, 323 Fed. Appx. 103, 105 (3d Cir. 2008). Where, as is the case here, there are multiple

defendants, "the complaint should inform each defendant of the nature of his alleged participation in the fraud," *id.*, in order to "safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum v. Bank of Am.*, 361 F.3d 217, 223-224 (3d Cir. 2004).[12] Specifically, the allegations should include the "date, place or time" of the alleged fraudulent representations or an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). "[Claimant] also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Lum*, 61 F.3d at 224. Claimants do not satisfy any of these requirements. Indeed, the Complaints do nothing more than baselessly speculate that WMI's alleged control and manipulation of the appraisal process was the reason for the financial woes that Fannie Mae and Freddie Mac now face.

30.    Additionally, Claimants fail to identify any statutory authority upon which they base their theory of liability, or to assert that their claims are based on common law. Moreover, Claimants fail to allege, with particularity, the details surrounding the alleged misrepresentations, including which entities made such misrepresentations, except to generally assert that certain, unidentified contracts between WMI and Fannie Mae or Freddie Mac contained such misrepresentations. *See* Agnes Complaint at ¶ 248; Bassman Complaint at ¶ 117. Pleading in this manner, based only upon "information and belief," does not identify with particularity the allegedly fraudulent misrepresentations. *See, e.g., Toner*, 821 F. Supp. at 285 (acknowledging that "[c]ircumstances that constitute the . . . elements [of fraud], if alleged on

---

[12] Additional reasons for the heightened pleading requirement for fraud is that it "protects defendant from frivolous suits," "it puts defendant on notice as to the conduct complained of so defendant will have information adequate to form a defense," "it prevents fraud actions in which all the facts are learned after the complaint is filed by way of the discovery process," and "it serves to protect defendant from damage to its reputation and goodwill." *Toner*, 821 F. Supp. at 284. All of these reasons support dismissal of Claimants' claim of conspiracy to deceive and defraud.

information and belief, generally will not satisfy [Federal] Rule 9(b)'s particularity requirement").

31.     Nor have Claimants pled with particularity the necessary elements of a conspiracy claim. To state a cause of action for conspiracy, Claimants must prove that WMI, First American and eAppraiseIt put forth a collaborative effort to unlawfully control and manipulate the appraisal process. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 309 n.13 (3d Cir. 2006) ("Civil conspiracy requires proof that two or more persons combined to do an unlawful act or to do an otherwise lawful act by unlawful means."). Moreover, conspiracy requires an act taken in furtherance of the conspiracy. *Beaky v. County of Bucks*, No. 08-1251, 2009 U.S. Dist. LEXIS 67786, at *25 (D. Pa. Aug. 3, 2009) (citing *Taxin v. Food Fair Stores, Inc.*, 287 F.2d 448, 451 (3d Cir. 1960)) ("A civil conspiracy renders conspirators liable for the foreseeable actions of coconspirators taken in furtherance of the conspiracy"). Claimants, however, fail to identify with particularity any such act or collaborative effort, and instead make conclusory assertions "[u]pon information and belief," Agnes Complaint at ¶ 260, Bassman Complaint at ¶ 128, that such conduct occurred.

32.     Moreover Claimants have failed to set forth, with any particularity, factual support for their contention that WaMu's appraisals were materially inflated, that such allegedly inflated appraisals served as collateral for the loans sold to Freddie Mac or Fannie Mae, or that such allegedly inflated appraisals caused any loss that such entities incurred. Claimants have failed to identify even one specific mortgage loan whose appraisal value was inflated. *See Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, No. 08-10446, 2009 WL 3149775, at *9 (D. Mass. Sept. 30, 2009) (dismissing claim that appraisals underlying certain mortgage backed securities failed to comply with USPAP requirements and that the loan-

17

to-value ratios were therefore artificially low where plaintiff failed to detail information about the underlying loans); *see also Ferber v. Travelers Corp.*, 802 F. Supp. 698, 704-06 (D. Conn. 1992) (holding that a § 10(b)(5) securities fraud claim lacked particularity under FRCP 9(b) where it failed to identify any appraisals that it alleged were deficient) *disagreed with on other grounds by Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 164 (2d Cir. 2000). Instead, the complaints discuss the general appraisal practices of one of WMB's Vendors based on the New York Attorney General's lawsuit where neither WMI, WMB, Fannie Mae, Freddie Mac nor any WMI or WMB subsidiary was a party. Claimants' assertions rest purely on the speculation that, because there have been reports in other judicial proceedings of deviations from appraisal standards, the loans in this case likewise must have had nonconforming appraisals. Moreover, this speculation rests on yet one further step, that those nonconforming appraisals must have contributed to the decline in the value of the mortgage loans sold to Freddie Mac and Fannie Mae. This type of "pleading-by-speculation" does not suffice to state a claim with particularity.[13]

## V. There Has Been No Underlying Violation Of Appraisal Standards

33.    Even if Claimants were correct that WMI was the party which had sold the applicable loans to Fannie Mae and Freddie Mac–and they are not– Claimants cannot establish that the underlying allegations of breach of warranty or contract and conspiracy to deceive or

---

[13] While the Federal Rules allow a court to grant leave to amend a complaint that fails to plead fraud with the requisite particularity, courts have refused to do so when any efforts to amend the complaint would be futile. *See e.g., Lum*, 361 F.3d at 229 (denying plaintiff leave to amend the complaint where doing so would be futile). In the present case Claimant cannot cure the deficiencies in the complaint by amending, and the Court should not grant leave to amend. The underlying facts do not support a finding that WMI is liability for conspiracy to deceive and defraud. As discussed in detail throughout this objection, WMI did not take part in any of the allegedly improper actions related to the mortgages sold to Fannie Mae or Freddie Mac. Additionally, Claimants cannot identify any mortgages that were sold to Fannie Mae or Freddie Mac which were originated in violation of appraisal standards.

defraud have any merit. Such assertions are dependent on the existence of systemic violations of the appraisal standards with respect to those appraisals underlying loans that were later sold to Fannie Mae and Freddie Mac. Such systemic violations, however, simply did not occur. Indeed, Claimants have not identified even a single loan sold to either Fannie Mae or Freddie Mac, for which they allege a faulty appraisal.

34. Moreover, there is no evidence – nor do Claimants point to any – to support Claimants' contention that the appraisal values were inflated. *See Stepak v. Aetna Life & Cas. Co.*, No. H:90CV00886, 1994 WL 858045, at *11 (D. Conn. Aug. 29, 1994) (finding that plaintiff had failed, as a matter of law, to identify a material omission where it had not established any evidence that the defendant's appraisal practice had undermined the accuracy of its disclosures). The case of *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.* is instructive. No. 08-10446, 2009 WL 3149775 (D. Mass. Sep. 30, 2009). In that case, the plaintiffs had generally alleged that the appraisals underlying certain mortgage backed securities failed to comply with USPAP requirements and that the loan-to-value ratios were therefore artificially low because questionable appraisal practices were widespread throughout the industry. *Stepak*, 1994 WL 858045, at *6. The court dismissed these claims stating that such generalized allegations "tells nothing about the . . . underlying loans." *Id.* Similarly here, Claimants speculate that such an inflated appraisals must exist based on generalized allegations of such practices. Simply because the value of the loans that Fannie Mae and Freddie Mac purchased declined during the worst housing crisis of our times, however, is not evidence that the appraisals underlying such loans were manipulated.

## VI. Fannie Mae And Freddie Mac Are Barred From Recovering Against WMI Due To Waiver And Estoppel

35.     Even if the Court were to find that there had been an underlying violation of appraisal standards, Claimants could not recover based on such violations because they allege that Fannie Mae and Freddie Mac, upon whose behalf Claimants assert the Claims, had knowledge of such violations. Specifically, Claimants allege that the management and board of directors of both Fannie Mae and Freddie Mac had, or should have had, knowledge of the violations asserted against WMI. Agnes Complaint at ¶ 157; Bassman Complaint at ¶ 87. While WMI maintains that there simply was no systemic, material violation of appraisal standards, if the court finds otherwise, Claimants, who are filing on behalf of Fannie Mae or Freddie Mac, would still not be entitled to recover against WMI since they have waived and are estopped from claiming breach of contract and fraud against WMI.

36.     Fannie Mae and Freddie Mac, despite having knowledge of such alleged violations, did not object to such practices and, in fact, continued to purchase mortgage loans. This constituted a waiver of any such violations. *See, e.g., Moore's Trucking Co. v. National Starch & Chemical*, No. 03-4750, 1994 U.S. Dist. LEXIS 19238, at **7-8 (D.N.J. Sept. 26, 1994) ("Under the law of [the Third Circuit], 'it is well settled that waiver may be established by conduct inconsistent with claiming the waived right or any action or failure to act evincing an intent not to claim the right.'") (citations omitted); *see also Consolidated Rail Corp. v. Foster Wheeler Envtl. Corp.*, No. 99-1682, 2000 U.S. Dist. LEXIS 13477, at *42 (E.D. Pa. Sept. 20, 2000) ("A waiver may occur when the promisor manifests an intent not to require a promisee to strictly comply with a contractual duty.").

37.     In *Moore's Trucking Co.*, the court concluded that the plaintiff waived any claim against defendant for breach of contract because plaintiff acquiesced to the breach for over

two years. 1994 U.S. Dist. LEXIS 19238, at **9-10. The court explained, "While silence itself is an insufficient basis for finding that a party has waived, absent an obligation to speak, 'waiver may be inferred from silence or acquiescence as from other conduct or inaction.'" *Id.* at *9. In the present case, Claimants contend that Fannie Mae and Freddie Mac were fully aware of the purported manipulations of the appraisal process resulting in inflated appraisal values. Fannie Mae and Freddie Mac, however, did not object to or otherwise manifest any intent to halt such practices. According to Claimants, Fannie Mae and Freddie Mac instead continued their alleged business relationship with WMI and "purchased billions of dollars of loans." Agnes Complaint at ¶ 157; Bassman Complaint at ¶ 87. Fannie Mae and Freddie Mac have, therefore, waived any right to recover against WMI, and the court should disallow the Claims.

## VII.    Claimants Cannot Establish Loss Causation

38.    Additionally, the Claims should be disallowed because the Claimants have not, and cannot, prove that it was alleged inaccurate representations or warranties in the loan contracts that caused the losses Fannie Mae and Freddie Mac suffered. *See* 11 Corbin on Contracts § 55.7 (2009) ("damages are not recoverable for losses suffered or gains prevented unless the requirements of the law as to 'proximate' causation are satisfied."); *see also* W. Prosser & W. Keeton, The Law of Torts § 46, at 324  (5th Lawyer's ed. 1984) ("'[T]he gist of the action is not the conspiracy charged, but the tort working damage to the plaintiff.'" (quoting *James v. Evans*, 149 F. 136, 140 (3d Cir.1906)). Claimants offer no evidence to demonstrate that the alleged misstatements were the cause of such alleged losses. They simply ignore the fact that the losses incurred by Fannie Mae and Freddie Mac were almost certainly the result of the collapse of the housing market in the United States. Other investors, mortgage companies, and other originators of mortgage loans also suffered complete or almost complete loss of their value

as the result of the same financial crisis that began in 2007, including WMB, which held similar securities on its own books.

39. In a recently decided analogous case, a court found that a similar plaintiff that had invested in mortgaged backed securities could not demonstrate that the alleged misstatements relied upon caused its losses rather than the market downturn in the mortgage industry. *Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co.*, No. 07-5423, 2009 WL 2590087 (E.D. Pa. Aug. 20, 2009). The plaintiff in *Luminent* purchased mortgage backed certificates years before the recent markets downturn, and it was beyond dispute that the mortgage market had significantly declined. *Id.* at *16. In reaching its conclusion that loss causation could not be established, the court examined the Second Circuit case of *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994). *Id.* at *15. *Gelt* involved a plaintiff's allegations that the defendants had misrepresented the value of collateral to secure loans, thereby fraudulently inducing the loans. *Gelt*, 27 F.3d at 771. In the five years since the loans had been issued, the real estate marked had declined. *Id.* In determining that the plaintiff had failed to establish causation, the court noted that:

> [w]hen a significant period of time has elapsed between the defendant's actions and the plaintiff's injury, there is a greater likelihood that the loss is attributable to events occurring in the interim. Similarly, when the plaintiff's loss coincides with a market-wide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by fraud decreases.

*Id.* at 772 (citing *Bastian v. Petren Res. Corp.*, 892 F.2d 680, 684 (7th Cir. 1990).

40. Both of the *Gelt* principles apply in this case. While Claimants fail to specifically identify which loans they assert their damages claims with respect to, Claimants appear to assert that such damages began when eAppraiseIt was first retained back in 2006. *See* Bassman Complaint at ¶ 78; Agnes Complaint at ¶ 148. Moreover, the dramatic and record-

setting collapse of the housing market and the secondary mortgage market recently experienced in this country that caused other institutions to suffer similar losses is almost certainly the actual cause of the losses suffered by Fannie Mae and Freddie Mac.

## VIII.  Any Punitive Damage Award Should Be Subordinated

41.    Claimants assert that they are entitled to punitive damages. *See* Agnes Complaint at p. 112; Bassman Complaint at p. 52.  Even if Claimants were entitled to such damages—which they are not—any such award must be subordinated behind all of WMI's secured and unsecured creditors pursuant to section 726 of the Bankruptcy Code and the best interests of creditors test, codified at 11 U.S.C. § 1129(a)(7).

42.    The best interests of creditors test requires that each holder of a claim or interest within each impaired class of claims receive under a plan "not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1129(a)(7)(A)(ii).  In chapter 7 cases, punitive damages are subordinated behind the claims of all of a debtor's secured and unsecured creditors. *Id.* at § 726(a)(1) – (4).  Thus, the Court can and should subordinate any punitive damages award behind all of WMI's secured and unsecured creditors.  Doing so is consistent with the requirements for confirmation of the plan, which the court will address at a later date, and is in the best interests of WMI's creditors.  Claimants could not get priority for their punitive damages claims in a chapter 7 liquidation case, and the same should be true in a chapter 11 proceeding.

## CONCLUSION

43.    The Agnes and Bassman Claims are plainly inadequate as a matter of law. As the FHFA has noted, such claims have been filed against the wrong party, *i.e.* WMI rather than WMB.  Moreover, such claims purport to be filed on behalf of Fannie Mae and Freddie

Mac, yet, by statute, Claimants have no right to file these claims on their behalf. Only the FHFA, as conservator for these enterprises, has such a right.

44.     Claimants have also failed to adequately plead their allegations. Instead, the claims amount to unwarranted and conclusory assertions, which fail to even identify the very contracts they assert were breached. Nor can the Claims establish any underlying violation of appraisal standards. Even if such violations could be established, however, the alleged appraisal practices had nothing to do with the losses suffered by Fannie Mae and Freddie Mac in the midst of the recent housing crisis. Finally, the Claimants are estopped and have waived their rights to assert any such claims, because, by their own admission, Fannie Mae and Freddie Mac continued to purchase mortgages even after they purportedly knew of such alleged violations.

## RESERVATION OF RIGHTS

45.     Debtors reserve all rights to further object to the validity and amount of the Claims.

## NOTICE

46.     No trustee or examiner has been appointed in these chapter 11 cases. The Debtors have provided notice of this Objection to (i) the United States Trustee for the District of Delaware, (ii) counsel for the Creditors' Committee, (iii) counsel for the Equity Committee, (iv) those parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002 and (v) each holder of a claim objected to herein. The Debtors submit that no other or further notice need be provided.

47.     Pursuant to Bankruptcy Rule 3007, the Debtors have provided the Claimant with at least thirty days notice of the hearing to consider the Objection.

## STATEMENT OF COMPLIANCE WITH LOCAL RULE 3007-1

48.     The undersigned representative of Richards, Layton & Finger, P.A.

certifies that he has reviewed the requirements of Local Rule 3007-1 and that the Objection

substantially complies with that Local Rule. To the extent that the Objection does not comply in

all respects with the requirements of Local Rule 3007-1, Richards, Layton & Finger, P.A.

believes such deviations are not material and respectfully requests that any such requirement be

waived.

49.     No previous request for the relief sought herein has been made to this or

any other Court.

WHEREFORE the Debtors respectfully request the Court enter an order,

substantially in the form attached hereto as Exhibit H, granting the relief requested herein and

such other and further relief as is just and proper.

Dated: March 15, 2010
       Wilmington, Delaware

Mark D. Collins (2981)
Chun I. Jang (No. 4790)
Drew G. Sloan (No. 5069)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700

—and—

WEIL, GOTSHAL & MANGES LLP
Brian S. Rosen
767 Fifth Avenue
New York, New York 10153
Telephone:   (212) 310-8000
Attorneys for Debtors
and Debtors in Possession