# EXHIBIT F

# SUBORDINATION PROVISIONS

# (Excerpts of Relevant Documentation)

I.  **Senior Subordinated Notes Indenture**

Section 15.12  Definitions.  The following terms shall have the following meanings:

"Junior Subordinated Notes" means the Company's 8.375% Junior Subordinated Debentures due 2027, its 8.206% Subordinated Deferrable Interest Notes due 2027, its 8.36% Subordinated Notes due 2026, its 8.25% Subordinated Deferrable Interest Notes due 2025, and its 5.375% Subordinated Defeasible Interest Debentures due 2041.

"Senior Debt" means all Debt of the Company except Subordinated Debt and Junior Subordinated Notes.

"Subordinated Debt" means the Company's 7.875% Senior Subordinated Debt due 2004, 8.875% Subordinated Notes due 2007 and 8.275% Subordinated Notes due 2010 and any other Debt of the Company which is subordinate and junior in right of payment to any other Debt of the Company by the terms of the instrument creating or evidencing such Subordinated Debt and senior to the Junior Subordinated Notes.

II. **CCB-1 Guarantee Agreements**

*CCB Capital Trust IV / CCB Capital Trust VII*

Section 5.  <u>Additional Definitions</u>.

(b)  **"Guarantor Debt"** means whether recourse as to all or a portion of the assets of the Guarantor and whether or not contingent, (i) every obligation of Guarantor for money borrowed; (ii) every obligation of Guarantor evidenced by bonds, debentures, notes or other similar instruments, including obligations incurred in connection with the acquisition of property, assets or businesses; (iii) every reimbursement obligation of the Guarantor with respect to letters of credit, bankers' acceptances or similar facilities issued for the account of Guarantor; (iv) every obligation of Guarantor issued or assumed as the deferred purchase price of property or services (but excluding trade accounts payable or accrued liabilities arising in the ordinary course of business); (v) every capital lease obligation of  Guarantor; (v) all indebtedness of Guarantor, whether incurred on or prior to the date of this Guarantee or thereafter incurred, for claims in respect of derivative products, including interest rate, foreign exchange rate and commodity forward contracts, options, swaps and similar arrangements; and (vii) every obligation of the type referred to in clauses (i) through (vi) of another Person and all dividends of another Person the payment of which, in either case, Guarantor has guaranteed or is responsible or liable for, directly or indirectly, as obligor or otherwise.

(c) **"Guarantor Senior Debt"** means (i) the principal, premium, if any, and interest in respect of (A) Guarantor Debt for money borrowed and (B) Guarantor Debt evidenced by securities, debentures, notes, bonds, or similar instruments issued by the Guarantor, (ii) all capital lease obligations of the Guarantor, (iii) all obligations of the Guarantor issued or assumed as the deferred purchase price of property, all conditional sale obligations of the Guarantor and all obligations of the Guarantor under any title retention agreement (but excluding trade accounts payable arising in the ordinary course of business), (iv) all obligations of the Guarantor for the reimbursement of any letter of credit, any banker's acceptance, any security purchase facility, any repurchase agreement or similar arrangement, any interest rate swap, any other hedging arrangement, any obligation under options or any similar credit or other transaction, (v) all obligations of the type referred to in clauses (i) through (iv) above of other Persons for the payment of which the Guarantor is responsible or liable as obligor, guarantor or otherwise and (vi) all obligations of the type referred to in clauses (i) through (v) above of other Persons secured by any lien on any property or asset of the Guarantor (whether or not such obligation is assumed by the Guarantor), whether incurred on or prior to the date of this Guarantee or thereafter incurred, <u>unless</u>, with the prior approval of the OTS if not otherwise generally approved, it is provided in the instrument creating or evidencing the same or pursuant to which the same is outstanding that such obligations are not superior or are pari passu in right of payment to the Debt Securities; <u>provided</u>, <u>however</u>, that Guarantor Senior Indebtedness shall not include (A) any debt securities issued to any trust other than the Trust (as defined in the Indenture) that is a financing vehicle of the Guarantor (a "financing entity"), in connection with the issuance by such financing entity of equity or other securities in transactions substantially similar in structure to the transactions contemplated hereunder and in the Trust Agreement or (B) any guarantees of the Guarantor in respect of the equity or other securities of any financing entity referred to in clause (A) above.

*CCB Capital Trust V*

Section 5. <u>Additional Definitions</u>.

(b) **"Guarantor Debt"** means whether recourse as to all or a portion of the assets of the Guarantor and whether or not contingent, (i) every obligation of Guarantor for money borrowed; (ii) every obligation of Guarantor evidenced by bonds, debentures, notes or other similar instruments, including obligations incurred in connection with the acquisition of property, assets or businesses; (iii) every reimbursement obligation of the Guarantor with respect to letters of credit, bankers' acceptances or similar facilities issued for the account of Guarantor; (iv) every obligation of Guarantor issued or assumed as the deferred purchase price of property or services (but excluding trade accounts payable or accrued liabilities arising in the ordinary course of business); (v) every capital lease obligation of Guarantor; (v) all indebtedness of Guarantor, whether incurred on or prior to the date of this Guarantee or thereafter incurred, for claims in respect of derivative products, including interest rate, foreign exchange rate and commodity forward contracts, options, swaps and similar arrangements; and (vii) every obligation of the type referred to in clauses (i) through (vi) of another Person and all dividends of another Person the payment of which, in either case, Guarantor has guaranteed or is responsible or liable for, directly or indirectly, as obligor or otherwise.

(c) **"Guarantor Senior Debt"** means (i) the principal, premium, if any, and interest in respect of (A) Guarantor Debt for money borrowed and (B) Guarantor Debt evidenced by securities, debentures, notes, bonds, or similar instruments issued by the Guarantor, (ii) all capital lease obligations of the Guarantor, (iii) all obligations of the Guarantor issued or assumed as the deferred purchase price of property, all conditional sale obligations of the Guarantor and all obligations of the Guarantor under any title retention agreement (but excluding trade accounts payable arising in the ordinary course of business), (iv) all obligations of the Guarantor for the reimbursement of any letter of credit, any banker's acceptance, any security purchase facility, any repurchase agreement or similar arrangement, any interest rate swap, any other hedging arrangement, any obligation under options or any similar credit or other transaction, (v) all obligations of the type referred to in clauses (i) through (iv) above of other Persons for the payment of which the Guarantor is responsible or liable as obligor, guarantor or otherwise and (vi) all obligations of the type referred to in clauses (i) through (v) above of other Persons secured by any lien on any property or asset of the Guarantor (whether or not such obligation is assumed by the Guarantor), whether incurred on or prior to the date of this Guarantee or thereafter incurred, <u>unless</u>, with the prior approval of the OTS if not otherwise generally approved, in the instrument creating or evidencing the same or pursuant to which the same is outstanding that such obligations are not superior or are pari passu in right of payment to the Debt Securities.

*CCB Capital Trust VIII*

Section 5.    <u>Additional Definitions</u>.

(b)    **"Guarantor Debt"** means with respect to Guarantor, whether recourse as to all or a portion of the assets of the Guarantor and whether or not contingent, (i) every obligation of Guarantor for money borrowed; (ii) every obligation of Guarantor evidenced by bonds, debentures, notes or other similar instruments, including obligations incurred in connection with the acquisition of property, assets or businesses; (iii) every reimbursement obligation of the Guarantor with respect to letters of credit, bankers' acceptances or similar facilities issued for the account of Guarantor; (iv) every obligation of Guarantor issued or assumed as the deferred purchase price of property or services (but excluding trade accounts payable or accrued liabilities arising in the ordinary course of business); (v) every capital lease obligation of Guarantor; (v) all indebtedness of Guarantor, whether incurred on or prior to the date of this Guarantee or thereafter incurred, for claims in respect of derivative products, including interest rate, foreign exchange rate and commodity forward contracts, options, swaps and similar arrangements; and (vii) every obligation of the type referred to in clauses (i) through (vi) of another Person and all dividends of another Person the payment of which, in either case, Guarantor has guaranteed or is responsible or liable for, directly or indirectly, as obligor or otherwise.

(c)    **"Guarantor Senior Debt"** means (i) the principal, premium, if any, and interest in respect of (A) Guarantor Debt for money borrowed, similar obligations arising from off-balance sheet guarantees and direct credit substitutes and (B) Guarantor Debt evidenced by securities, debentures, notes, bonds, or other similar instruments issued by the Company, (ii) all capital lease obligations of the Guarantor, (iii) all obligations of the Guarantor issued or assumed

as the deferred purchase price of property, all conditional sale obligations of the Guarantor and all obligations of the Guarantor under any title retention agreement (but excluding trade accounts payable arising in the ordinary course of business), (iv) all obligations of the Guarantor for the reimbursement of any letter of credit, any banker's acceptance, any security purchase facility, any repurchase agreement or similar arrangement, all obligations associated with derivative products such as interest rate and foreign exchange contracts and commodity contracts, any interest rate swap, any other hedging arrangement, any obligation under options or any similar credit or other transaction, (v) all obligations of the type referred to in clauses (i) through (iv) above of other Persons for the payment of which the Guarantor is responsible or liable as obligor, guarantor or otherwise and (vi) all obligations of the type referred to in clauses (i) through (v) above of other Persons secured by any lien on any property or asset of the Guarantor (whether or not such obligation is assumed by the Guarantor), whether incurred on or prior to the date of this Guarantee or thereafter incurred, unless, with the prior approval of the OTS if not otherwise generally approved, it is provided in the instrument creating or evidencing the same or pursuant to which the same is outstanding that such obligations are not superior or are pari passu in right of payment to the Debt Securities; provided, however, that Guarantor Senior Debt shall not include (A) any debt securities issued to any trust other than the Trust (or a trustee of such trust) that is a financing vehicle of the Guarantor (a "financing entity"), in connection with the issuance by such financing entity of equity or other securities in transactions contemplated hereunder and in the Trust Agreement or (B) any guarantees of the Guarantor in respect of the equity or other securities of any financing entity referred to in clause (A) above.

### III. CCB-2 Guarantee Agreements

*HFC Capital Trust I*

Section 5.   Additional Definitions.

(b)   **"Guarantor Debt"** means whether recourse as to all or a portion of the assets of the Guarantor and whether or not contingent, (i) every obligation of the Guarantor for money borrowed; (ii) every obligation of the Guarantor evidenced by bonds, debentures, notes or other similar instruments, including obligations incurred in connection with the acquisition of property, assets or businesses; (iii) every reimbursement obligation of the Guarantor with respect to letters of credit, bankers' acceptances or similar facilities issued for the amount of the Guarantor; (iv) every obligation of the Guarantor issued or assumed as the deferred purchase price of property or services (but excluding trade accounts payable or accrued liabilities arising in the ordinary course of business); (v) every capital lease obligation of the Guarantor; (v) all indebtedness of the Guarantor, whether incurred on or prior to the date of this Guarantee or hereafter incurred, for claims in respect of derivative products, including interest rate, foreign exchange rate and commodity forward contracts, options, swaps and similar arrangements; and (vii) every obligation of the type referred to in clauses (i) through (vi) of the another Person and all dividends of another Person the payment of which, in either case, the Guarantor has guaranteed or is responsible or liable for directly or indirectly, as obligor or otherwise.

(c)   **"Guarantor Indebtedness Ranking Junior to the Securities"** means any Guarantor Debt, whether outstanding on the date of execution of this Indenture or hereafter

created, assumed or incurred, to the extent such Indebtedness by its terms ranks junior to and not pari passu with or prior or senior to the Securities in right o f payment upon the happening of the dissolution or winding-up or liquidation or reorganization of the Guarantor.  The securing of any Guarantor otherwise constituting Guarantor Indebtedness Ranking Junior to the Securities shall not be deemed to prevent such Indebtedness from constituting Guarantor Indebtedness Ranking Junior to the Securities with respect to any assets of the Guarantor not securing such Guarantor Indebtedness.

(d)     **"Guarantor Indebtedness Ranking on a Parity with the Securities"** means (i) Guarantor Debt, whether outstanding on the date of execution of this Guarantee or hereafter created, assumed or incurred, to the extent such Guarantor Debt by its terms ranks pari passu with and not junior to or prior or senior to the Securities in the right of payment upon the happening of the dissolution, winding-up, liquidation or reorganization of the Guarantor and (ii) all other debt securities, and guarantees in respect of those securities, issued to any trust other than the Trust, or a trustee of such trust, partnership or other entity affiliated with the Guarantor, that is a financing vehicle of the Guarantor (a "financing entity") in connection with the issuance by such financing entity of equity securities or other securities guaranteed by the Guarantor pursuant to an instrument that ranks pari passu with or junior in right of payment to the Guarantee Agreement.  The securing of any Guarantor Debt otherwise constituting Guarantor Indebtedness Ranking on a Parity with the Securities shall not be deemed to prevent such Guarantor Debt from constituting Guarantor Indebtedness Ranking on a Parity with the Securities with respect to any assets of the Guarantor not securing such Guarantor Debt.

(e)     **"Guarantor Senior Debt"** means the principal of (and premium, if any) and interest, if any (including interest accruing on or after the filing of any petition in bankruptcy or for reorganization relating to the Guarantor whether or not such claim for post petition interest is allowed in such proceedings), on all Guarantor Debt, whether or not outstanding on the date of execution of the Guarantee, or hereafter created, assumed or incurred <u>except</u> Guarantor Indebtedness Ranking on a Parity with the Securities or Guarantor Indebtedness Ranking Junior to the Securities, and any deferrals, renewals or extensions of such Guarantor Senior Debt.

*CCB Capital Trust VI*

Section 5.     <u>Additional Definitions</u>.

(b)     **"Guarantor Debt"** means with respect to Guarantor, whether recourse as to all or a portion of the assets of Guarantor, whether currently existing or hereafter incurred or whether or not contingent and without duplication, (i) every obligation of Guarantor for money borrowed; (ii) every obligation of Guarantor evidenced by bonds, debentures, notes or other similar instruments, including obligations incurred in connection with the acquisition of property, assets or businesses; (iii) every reimbursement obligation of Guarantor with respect to letters of credit, bankers' acceptances or similar facilities issued for the account of Guarantor; (iv) every obligation of Guarantor issued or assumed as the deferred purchase price of property or services (but excluding trade accounts payable or other accrued liabilities arising in the ordinary course of business); (v) every capital lease obligation of Guarantor; (vi) all indebtedness of Guarantor, whether incurred on or prior to the date of this Guarantee or thereafter incurred, for

claims in respect of derivative products, including interest rate, foreign exchange rate and commodity forward contracts, options and swaps and similar arrangements; (vii) every obligation of the type referred to in clauses (i) through (vi) of another Person and all dividends of another Person the payment of which, in either case, Guarantor has guaranteed or is responsible or liable for, directly or indirectly, as obligor or otherwise; and (viii) any renewals, extensions, refundings, amendments or modifications of any obligation of the type referred to in clauses (i) through (vii).

(c) **"Guarantor Senior Debt"** means the principal of and any premium and interest on (including interest accruing on or after the filing of any petition in bankruptcy or for reorganization relating to the Guarantor, whether or not such claim for post-petition interest is allowed in such proceeding) all Debt of the Guarantor, whether incurred on or prior to the date of this Indenture or thereafter incurred, unless it is provided in the instrument creating or evidencing the same or pursuant to which the same is outstanding, that such obligations are not superior in right of payment to the Securities; provided, however, that if the Guarantor is subject to the regulation and supervision of an "appropriate Federal banking agency" within the meaning of 12 U.S.C. 1813(q), the Guarantor shall have received the approval of such appropriate Federal banking agency prior to issuing any such obligation if not otherwise generally approved; provided further, that Guarantor Senior Debt shall not include any other debt securities, and guarantees in respect of such debt securities, issued to any trust other than the Trust (or a trustee of such trust), partnership or other entity affiliated with the Guarantor that is a financing vehicle of the Guarantor (a "financing entity), in connection with the issuance by such financing entity of equity securities or other securities that are treated as equity capital for regulatory capital purposes guaranteed by the Guarantor pursuant to an instrument that ranks pari passu with or junior in right of payment to the Indenture, including, without limitation, the debt securities issued under the Indenture, dated November 28, 2001, between NACI and Wilmington Trust Company, as trustee, including, without limitation, the debt securities issued under the Indenture, dated March 15, 2002, between NACI and Wells Fargo Bank, National Association, as trustee, including, without limitation, the debt securities issued under the Indenture, dated March 26, 2002, between NACI and State Street Bank and Trust Company of Connecticut, National Association, as trustee, including without limitation, the debt securities issued under the Indenture, dated September 25, 2003, between NACI and Wilmington Trust Company, as trustee, including, without limitation, the debt securities issued under the Indenture, dated December 19, 2003, between NACI and Wilmington Trust Company, as trustee.

*CCB Capital Trust IX*

Section 5. Additional Definitions.

(b) **"Guarantor Debt"** means with respect to Guarantor, whether recourse as to all or a portion of the assets of Guarantor, whether currently existing or hereafter incurred or whether or not contingent and without duplication, (i) every obligation of Guarantor for money borrowed; (ii) every obligation of Guarantor evidenced by bonds, debentures, notes or other similar instruments, including obligations incurred in connection with the acquisition of property, assets or businesses; (iii) every reimbursement obligation of Guarantor with respect to letters of credit, bankers' acceptances or similar facilities issued for the account of Guarantor;

(iv) every obligation of Guarantor issued or assumed as the deferred purchase price of property or services (but excluding trade accounts payable or other accrued liabilities arising in the ordinary course of business); (v) every capital lease obligation of Guarantor; (vi) all indebtedness of Guarantor, whether incurred on or prior to the date of this Guarantee or thereafter incurred, for claims in respect of derivative products, including interest rate, foreign exchange rate and commodity forward contracts, options and swaps and similar arrangements; (vii) every obligation of the type referred to in clauses (i) through (vi) of another Person and all dividends of another Person the payment of which, in either case, Guarantor has guaranteed or is responsible or liable for, directly or indirectly, as obligor or otherwise; and (viii) any renewals, extensions, refundings, amendments or modifications of any obligation of the type referred to in clauses (i) through (vii).

(c) **"Guarantor Senior Debt"** means (i) the principal of and any premium and interest on (including interest accruing on or after the filing of any petition in bankruptcy or for reorganization relating to the Guarantor, whether or not such claim for post-petition interest is allowed in such proceeding) all Guarantor Debt of the Guarantor, whether incurred in or prior to the date of this Indenture or thereafter incurred, unless it is provided in the instrument creating or evidencing the same or pursuant to which the same is outstanding, that such obligations are not superior in right of payment to the Securities; provided, however, that if the Guarantor is subject to the regulation and supervision of an "appropriate Federal banking agency" within the meaning of 12 U.S.C. 1813(q), the Guarantor shall have received the approval of such appropriate Federal banking agency prior to issuing any such obligation if not otherwise generally approved; provided further, that Guarantor Senior Debt shall not include any other debt securities, and guarantees in respect of such debt securities, issued to any trust other than the Trust (or a trustee of such trust), partnership or other entity affiliated with the Guarantor that is a financing vehicle of the Guarantor (a "financing entity), in connection with the issuance by such financing entity of equity securities or other securities that are treated as equity capital for regulatory capital purposes guaranteed by the Guarantor pursuant to an instrument that ranks pari passu with or junior in right of payment to the Indenture, including, without limitation, the debt securities issued under the Indenture, dated November 28, 2001, between the Company and Wilmington Trust Company, as trustee, including, without limitation, the debt securities issued under the Indenture, dated March 15, 2002, between the Company and Wells Fargo Bank, National Association, as trustee, including, without limitation, the debt securities issued under the Indenture, dated March 26, 2002, between the Company and U.S. Bank National Association, as trustee, including without limitation, the debt securities issued under the Indenture, dated September 25, 2003, between the Company and Wilmington Trust Company, as trustee, including, without limitation, the debt securities issued under the Indenture, dated December 19, 2003, between the Company and Wilmington Trust Company, as trustee, including, without limitation, the debt securities issued under the Indenture, dated March 31, 2004, between the Company and Deutsche Bank Trust Company Americas, as trustee, including, without limitation, the debt securities issued under the Indenture, dated May 27, 2004, between the Company and Wilmington Trust Company, as trustee, and including, without limitation the debt securities issued under the Indenture, dated June 22, 2004, between the Company and Wilmington Trust Company, as trustee.

**IV.    Junior Subordinated Notes Indenture and PIERS Guarantee Agreement**

<u>Junior Subordinated Notes Indenture</u>

"Senior Indebtedness" means the principal of, premium, if any, interest (including all interest accruing subsequent to the commencement of any bankruptcy or similar proceeding, whether or not a claim for post-petition interest is allowable as a claim in any such proceeding) on and all fees, costs, expenses and other amounts accrued due on or in connection with:

(1) all indebtedness, obligations and other liabilities (contingent or otherwise) of the Company for borrowed money (including obligations of the Company in respect of overdrafts, foreign exchange contracts, currency exchange agreements, interest rate protection agreements, and any loans or advances from banks, whether or not evidenced by notes or similar instruments) or evidenced by bonds, debentures, notes or other instruments for the payment of money, or incurred in connection with the acquisition of any properties or assets (whether or not the recourse of the lender is to the whole of the assets of the Company or to only a portion thereof), other than any account payable or other accrued current liability or obligation to trade creditors incurred in the ordinary course of business;

(2) all obligations and liabilities (contingent or otherwise) in respect of leases of the Company required or permitted, in conformity with generally accepted accounting principles, to be accounted for as capitalized lease obligations on the balance sheet of the Company;

(3) all direct or indirect guaranties or similar agreements by the Company in respect of, and obligations or liabilities (contingent or otherwise) of the Company to purchase or otherwise acquire or otherwise assure a creditor against loss in respect of, indebtedness, obligations or liabilities of another Person of the kind described in clauses (1) and (2);

(4) any and all amendments, renewals, extensions and refundings of any indebtedness, obligations or liability of the kind described in clauses (1) through (3),

unless in the case of any particular indebtedness the instrument creating or evidencing the same or the assumption or guarantee thereof expressly provides that such indebtedness shall not be senior in right of payment to the Debentures or expressly provides that such Indebtedness is *pari passu* or junior to the Debentures.

PIERS Guarantee Agreement

*Section 6.2  Ranking*

This Guarantee will constitute an unsecured obligation of the Guarantor and will rank:

> (i) subordinate and junior in right of payment to Senior Indebtedness (as defined in the [Junior Subordinated Notes Indenture]) . . . .