The Honorable Judge Mary F. Walrath

RECEIVED / FILED
MAR 16 2010
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

I would like to begin by stating that I am a pre-seizure shareholder of Washington Mutual and have been following this bankruptcy case very closely. March 12th, 2010 was a sad day. On this day in open court, Washington Mutual shareholders learned that we have been sold a bill of goods. In the January 11th filing *MOTION OF WASHINGTON MUTUAL, INC. AND WMI INVESTMENT CORP. FOR AN ORDER (A) DISBANDING THE OFFICIAL COMMITTEE OF EQUITY HOLDERS APPOINTED BY THE UNITED STATES TRUSTEE* our legal team stated:

"equity holders are currently being "adequately represented" by not only the Debtors and the Creditors' Committee, but also by certain holders of WMI's preferred stock who have been actively involved in these chapter 11 cases and plan negotiations. To the extent the value of the Debtors' assets are in excess of its unsecured liabilities, the preferred stock holders are certainly incentivized to ensure that such value is realized. As such, equity holders are more than "adequately represented."

This sentiment was later repeated by our counsel Brian Rosen in open court while he further argued for the dissolvent of our Shareholder Equity Committee. Mr. Rosen assured the court that it was their **fiduciary responsibility** to maximize the value of the estate.

The intent of this letter is to bring into question whether or not our counsel has acted in the best interest of the estate, or whether they have done their best to minimize its value, as to intentionally recover the bare minimum required to satisfy debt holders.

I allege that from the beginning of these bankruptcy proceeds, the debtor's counsel has been engaged in sham negotiations with both the FDIC and JP Morgan. By their own admission, they have consistently maintained that Equity Holders would be left out of the money and unlikely to make any type of meaningful recovery. This being said, at no time in the last year did holders of WMI Bond Holders **anticipate anything less than a near one-hundred percent recovery**. How can it be possible for Bondholders to know they would receive a full payout, while at the same time, Equity would be told that the estate was potentially $100 Billion Dollars in debt? The only logical conclusion is that negotiations were a sham, and that all parties involved knew of the eventual outcome months ago.

I assert that the debtor's counsel purposely delayed the turnover of the $4 Billion dollar Summary Judgment, the proper valuation of the estate's assets (both pre and post seizure) and a number of fraudulent transfer claims, so that they could allow the estate's period of exclusivity to expire.

I also assert that the debtor's counsel purposely settled claims for an improper amount solely for the purpose of leaving Equity Holders out of the money. Examples of improper compensation include, but are not limited to:

Receiving $50 Million Dollars for Visa IPO Share that have a current market value (as of 3-13) of $279,750,000 PLUS annual dividends.

The handing over of 70% of WMI's first tax refund to JPM, when it was WMI who paid the taxes and should have been entitled to the entire refund in the first place.

The Handing over of nearly 60% of the second tax refund to the FDIC, who has had little to no financial loss, other than legal defense fees which would be far exceeded by this refund.

The handing over of WMI's Wind Farm interests for little no value.

The cancellation of further litigation against JP Morgan and the FDIC, which unresolved claims were in the 10's of billions of dollars.

Meanwhile, this "agreement" is being sold by the media as a great settlement where all parties spent the last 18 months hammering out a difficult series of litigations when in fact, all they have been hammering out is a delay to help facilitate the cancelation of Equity.

At this time, I would like for the court to rule against this proposed settlement, and look into any improprieties made by the debtor's counsel. I would like to see a ruling made on the Summary Judgment and have WMI's deposit returned to its possession. I would like to see a trial date scheduled so that WMI can determine the estates actual value (both pre and post seizure). I would like to see the remainder of the claims against the estate litigated as soon as possible, as it is clear they have not been settled only to maintain debt holder control of this case. Lastly, I would like to see answers as to why a bank, which was well capitalized, was seized in the first place, and if turns out there were malicious wrongdoings, that those in the wrong make proper restitution to the estate.

Thank you for your time,

Daryl Dombrowski
Washington Mutual Shareholder



RECEIVED / FILED
MAR 16 2010
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

Daryl Dombrowski
9000 Embroidery Ave
Las Vegas, NV 89149
440-463-5480

Honorable Judge Mary F. Walrath
824 North Market Street
5th Floor
Wilmington, DE 19801

In re Washington Mutual, Inc., Case No. 08-12229 (MFW)
United States Bankruptcy Court, District of Delaware

I am submitting the enclosed letter for your review. Please include the enclosed letter in the docket of Case No. 08-12229 Washington Mutual, Inc.

Thank You,

Daryl Dombrowski