## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
                             :

*In re*                           :       **Chapter 11**
                             :

**WASHINGTON MUTUAL, INC., et al.,**[1]   :       **Case No. 08-12229 (MFW)**
                             :

                             :       **(Jointly Administered)**

         **Debtors.**               :
                             :

---------------------------------------------------------------x

## DEBTORS' OBJECTION TO
## THE FIRST AND SECOND MONTHLY FEE
## APPLICATIONS OF VENABLE LLP AS COUNSEL
## FOR THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS
## <u>FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES</u>

Washington Mutual, Inc. ("*WMI*") and WMI Investment Corp. ("*WMI*

*Investment*"), as debtors and debtors in possession (collectively, the "*Debtors*"), hereby file this

objection and respectfully represent as follows:

### <u>Background</u>

1.      On September 26, 2008 (the "*Petition Date*"), each of the Debtors filed a

voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Bankruptcy

Code (the "Bankruptcy Code"). Since the Petition Date, the Debtors have continued to operate

their businesses and manage their properties as debtors in possession pursuant to sections 1107

and 1108 of the Bankruptcy Code.

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

2.    Over fifteen months into the Debtors' chapter 11 cases, the Office of the

United States Trustee for the District of Delaware (the "*U.S. Trustee*") appointed an official

committee of equity security holders (the "*Equity Committee*") [Docket No. 2130].

3.    On January 13, 2010, the Debtors filed the Motion of Washington Mutual,

Inc. and WMI Investment Corp. for an Order (A) Disbanding the Official Committee of Equity

Holders Appointed by the United States Trustee or (B) Limiting the Fees and Expenses Which

May be Incurred by Such Committee (the "*Motion*") [Docket No. 2132], wherein, the Debtors

sought an order disbanding the Equity Committee because the Debtors believed, and continue to

believe, that equity security holders simply have no economic interest in these chapter 11 cases.

Following a hearing on January 28, 2010 (the "*Hearing*"), the Court denied the relief requested

in the Motion.  Nevertheless, the Court assured that any fees requested by a professional retained

by the Equity Committee will be subject to the Court's review, to make certain that such fees do

not "run amuck." (Hr'g Tr. 61:6-9.)

4.    By application (the "*Retention Application*"), dated January 27, 2010, the

Equity Committee sought to retain Venable LLP ("*Venable*") as its counsel, *nunc pro tunc* to

January 11, 2010 [Docket No. 2250].  On February 16, 2009, the Debtors filed a reservation of

rights with respect to the Equity Committee's retention of Venable [Docket No. 2363].  By order

dated February 22, 2010, the Court entered an order approving the Retention Application

[Docket No. 2403].

5.    On March 16, 2010, Venable filed its first monthly application for interim

compensation and reimbursement of expenses incurred for the period from January 11, 2010

through January 31, 2010 (the "*First Fee Application*") [Docket No. 2534].  Pursuant to the First

Fee Application, Venable requests interim allowance of compensation for services rendered in

the aggregate amount of $173,648.75 and for reimbursement of expenses incurred in the amount of $10,825.21. In accordance with the Amended Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members, entered November 17, 2008 (the "*Interim Compensation Order*") [Docket No. 302], Venable seeks payment of $138,919.00 (80% of $173,648.75) and $10,825.21 for reimbursement of expenses.

6.      On March 25, 2010, Venable filed its second monthly application for interim compensation and reimbursement of expenses incurred for the period from February 1, 2010 through February 28, 2010 (the " *Second Fee Application*," and together with the First Fee Application, the "*Fee Applications*") [Docket No. 2617]. Pursuant to the Second Fee Application, Venable requests interim allowance of compensation for services rendered in the aggregate amount of $216,976.50 and for reimbursement of expenses incurred in the amount of $8,362.36. In accordance with the Interim Compensation Order, Venable seeks payment of $173,581.20 (80% of $216,976.50) and $8,362.36 for reimbursement of expenses.[2]

7.      Now, less than two months after filing the Retention Application, Venable has been fired by the Equity Committee and the Equity Committee has tentatively retained Dewey & LeBoeuf LLP ("*Dewey*") as its counsel.

## The Fees and Expenses Are Unjustified
## In Light of the Services Provided and Benefits Conferred

8.      The Debtors object to Venable's request for payment of the Fees and Expenses because the Debtors' estates, and clearly the Equity Committee, have received no corresponding benefit therefrom. Section 1103(a) of the Bankruptcy Code provides for the

---

[2] Pursuant to the Fee Applications, Venable seeks authorization for payment of fees and expenses in the aggregate amount of $409,812.82 (the "*Fees and Expenses*").

retention of professionals, including attorneys, by a committee. 11 U.S.C. § 1103(a). Section 330 of the Bankruptcy Code provides that, upon notice and hearing, a court may award "reasonable compensation for actual, necessary services rendered" by professionals retained under section 1103(a). *Id.* at § 330(a). Applicants bear the burden of proving that fees and expenses requested are reasonable and necessary. *See Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 261 (3rd Cir. 1995).

9. To determine the amount of reasonable compensation to be awarded, courts should consider all relevant factors, including *"whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title . . . ." Id.* at § 330(a)(3) (emphasis added). Applicants may receive compensation "out of the funds of the bankruptcy estate only if the work benefited the estate." *In re Chas. A. Stevens & Co.*, 105 B.R. 866, 870-72 (Bankr. N.D. Ill. 1989) (citation omitted) (stating that "the estate is not a cash cow to be milked to death by professionals seeking compensation for services rendered to the estate which have not produced a benefit commensurate with the fees sought"); *see also In re Associated Grocers of Colorado, Inc.*, 137 B.R. 413, 452 (Bankr. D. Colo. 1990).

10. Venable asserts in each of the Fee Applications that the "services rendered to the [Equity] Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited not only the members of the [Equity] Committee, but also the equity holder body as a whole and the Debtors' estates." In fact, the Fee Applications indicate that a substantial amount of the Fees and Expenses relate to, among other things, (i) retaining Venable, (ii) retaining the Equity Committee's financial advisor, and (iii) "addressing the [Equity] Committee's organizational and administrative needs." These services, at best,

solely inure to the benefit of Venable, the Equity Committee and, perhaps, equity security holders as a whole.

11.     Most importantly, however, allowance of the Fees and Expenses is inappropriate based upon the brevity of Venable's retention and the abrupt replacement of Venable by the Equity Committee.  As Venable states in the Fee Applications, this Court should consider the "nature and length of time of the professional relationship."  Venable seeks over $400,000 for services that have provided zero benefit to the Debtors' estates and, based upon the termination by the Equity Committee, any value to the Equity Committee.  Similarly, in light of the firing, the Debtors' estates will not receive any future benefit.  On the contrary, there is no doubt that Dewey, as replacement counsel, will duplicate the initial fees and expenses incurred and attempt to tax the estate for payment.  Accordingly, authorizing payment of the Fees and Expenses absent a corresponding benefit to the Debtors' estates and at the risk of multiple payments, would be akin to allowing the fees charged by the Equity Committee's professionals to do what the Court said should not occur, run amuck.  Therefore, denial of the Fees and Expenses is warranted.

### Reservation of Rights

12.     For the reasons stated in the Motion, which are incorporated herein as though set forth in full, the Debtors believe that their chapter 11 estates are insolvent, and, therefore, there will be no recovery to equity security holders in these chapter 11 cases.  As equity security holders lack any economic interest in these chapter 11 cases, the Debtors believe that the amounts requested by Venable constitute unnecessary expenses, burdensome to the estates, and lacking any corresponding benefit.

WHEREFORE the Debtors request that the Court enter an order denying the relief

requested in the Fee Applications and grant the Debtors such other and further relief as is just.

Dated: Wilmington, Delaware
April 6, 2010

/s/ Brian S. Rosen
Marcia L. Goldstein, Esq.
Brian S. Rosen, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys to the Debtors
and Debtors in Possession