## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>WASHINGTON MUTUAL, INC., *et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 08-12229 (MFW)<br><br>Jointly Administered |
| OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS,<br><br>        Plaintiff,<br><br>        v.<br><br>WASHINGTON MUTUAL, INC.,<br><br>        Defendant. | <br><br><br><br>Adv. Pro. No. 10-50731 (MFW)<br><br>**Hearing Date: April 21, 2010 at 11:30 a.m.** |

## REPLY OF THE PLAINTIFF OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS TO OPPOSITION OF DEFENDANT WASHINGTON MUTUAL, INC. TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY

---

[1] Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395). The Debtors are located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ..................................................................................1

II. ARGUMENT ..........................................................................................................5

    A.    There is no evidence that the Equity Committee's request for an annual shareholder meeting under applicable Washington corporate law that amounts to "clear abuse" of process. ..................................................5

    B.    Any questions with respect to the Debtors' solvency have no hearing on the fundamental right of shareholders to call for an annual meeting to elect directors. ..........................................................................9

    C.    WMI overstates the discretionary authority of courts under Washington law with respect to granting a request to compel an annual meeting ..........................................11

    D.    WMI has not identified a compelling basis for the Court to exercise its equitable powers to deny shareholders their right to hold an annual meeting .....................................12

    E.    WMI's request for 180 days to procure audited financial statements for 2008 and 2009 and the required proxy statements is unecessary......................................13

    F.    The Bankruptcy Stay Does Not Prohibit an Action in Washington State to Compel an Annual Meeting .....................15

        1.    This Court Can Decline Jurisdiction Over the Shareholder Election.............................................15

        2.    The automatic stay does not prohibit a shareholders action to call an election .....................................16

        3.    Even if the automatic stay applies, the Equity Committee has established cause for granting relief from the stay......18

III. CONCLUSION ....................................................................................................20

# TABLE OF CITATIONS

**Case**                                                                 **Page**

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ............................................................... 10

Bricker v. Martin,
    348 B.R. 28 (W.D.Pa. 2006) .................................................... 15

Clabault v. Caribbean Select, Inc.,
    805 A.2d 913 (Del. Ch. 2002) ................................................. 12

Esopus Creek Value LP v. Hauf,
    913 A.2d 593 (Del. Ch. 2006) ................................................. 14

Fogel v. U.S. Energy Sys., Inc.,
    2008 WL 151857 (Del. Ch. Jan. 15 2008) .............................. 16

In re Acequia, Inc.,
    787 F.2d 1352 (9th Cir. 1986) ................................................ 13

In re Acequia,
    34 F.3d 800 (9th Cir. 1994) .................................................... 10

In re Advanced Ribbons and Office Prods., Inc.,
    125 B.R. 259 (B.A.P. 9th Cir. 1991) ................................... 8, 19

In re Allegheny Int'l, Inc.,
    1988 WL 212509 (W.D. Pa. 1988) .................................. 1, 6, 7

In re Allentown Ambassadors, Inc.,
    361 B.R. 422 (Bankr. E.D. Pa. 2007) ..................................... 16

In re Am. Media Distribs., LLC,
    216 B.R. 486 (Bankr. E.D.N.Y. 1998) .............................. 16, 18

In re Bicoastal Corp,
    1989 WL 607352 (Bankr. M.D. Fla. 1989) ....................... 16, 17

In re Boston Reg'l Med. Ctr., Inc.,
    410 F.3d 100 (1st Cir. 2005) ..................................................... 8

In re Bush Terminal Co.,
    78 F.2d 662 (2d Cir.1935) ......................................................... 6

In re Fairmont Communications Corp.,
No. 92-B-44861 (slip op.) (Bankr. S.D.N.Y. Mar. 3, 1993)............................16, 17

In re FSC Corp.,
38 B.R. 346 (Bankr. W.D. Penn. 1983) ....................................................................13

In re Gaslight Club, Inc.,
782 F.2d 767 (7th Cir. 1986) ...................................................................................13

In re Johns-Manville Corp.,
801 F.2d 60 (2d Cir. 1986) ...............................................................................*passim*

In re Lifeguard Industries, Inc.,
37 B.R. 3 (Bankr. S.D. Ohio 1983) ..........................................................................13

In re Lionel Corp.,
30 B.R. 327 (Bankr.S.D.N.Y.1983) .....................................................................6, 16

In re Marvel Entm't Group, Inc.,
209 B.R. 832 (D. Del. 1997) ............................................................................*passim*

In re Nat'l Century Fin. Enters.,
292 B.R. 850 (Bankr. S.D. Ohio 2003) ......................................................................7

In re New York Trap Rock Corp.,
138 B.R. 420 (Bankr. S.D.N.Y. 1992) .....................................................................18

In re Potter Instrument Co.,
593 F.2d 470 (2d Cir. 1979) ....................................................................................13

In re RNI Wind Down Corp.,
348 B.R. 286 (Bankr. D. Del. 2006) .........................................................................18

In re Wilson,
116 F.3d 87 (3d Cir. 1997) .......................................................................................18

Kipperman v. Onex Corp.,
411 B.R. 805 (N.D. Ga. 2009) ................................................................................10

Kowalski v. L&F Prods.,
82 F.3d 1283 (3d Cir. 1996) ....................................................................................10

Matsuhita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,
475 U.S. 574 (1986) ...................................................................................................9

Newcastle Partners v. Vesta Ins. Group,
    887 A.2d 975 (Del. Ch. 2005) ..................................................................... 14

Pesmen v. Bannockburn Lake Office Plaza Assocs. Ltd. P'Ship I,
    1999 WL 356307 (N.D.Ill. 1999) ......................................................... 15, 16

Saxon Indus., Inc. v. NKFW Partners,
    488 A.2d 1298 (Del. 1984) ............................................................... 3, 4, 9

State ex rel. Johnson v. Heap,
    95 P.2d 1039 (Wash. 1939) ..................................................................... 5

Vantagepoint Venture Partners 1996 v. Examen, Inc.,
    871 A.2d 1108 (Del. Ch. 2005) ............................................................. 13


**Other Authorities**

11 U.S.C. § 362(a) ....................................................................................... 16

11 U.S.C. § 362(d)(1) ......................................................................... 5, 18, 19

28 U.S.C. § 1334(c)(1) ............................................................................... 15

17 C.F.R. § 200.30-1 (2008) ...................................................................... 14

WASH. REV. CODE § 23B.07.030(1) (2009) ............................................... 11

The Official Committee of Equity Security Holders (the "Equity Committee" or "Plaintiff") of Washington Mutual, Inc. ("WMI" and, together with its chapter 11 debtor-affiliate, WMI Investment Corp., the "Debtors") submits this reply in support of its motion for summary judgment, or in the alternative, to find that the automatic stay is not applicable or grant relief from the automatic stay to permit commencement of an action in Washington state court.

## I.
## PRELIMINARY STATEMENT

WMI's strident objection to the Equity Committee's simple request to schedule a long-overdue annual shareholder meeting to elect directors reveals exactly why a shareholder meeting is necessary here. Since the last time WMI elected a Board of Directors on April 20, 2008, shareholder equity has been completely wiped away. The Board of Directors that oversaw the destruction of WMI now wants to prevent shareholders – who would receive nothing in the proposed settlement – from exercising their statutory right to call a long-overdue annual meeting in order to protect the rights of all interested parties.

The primary ground WMI asserts in an effort to prevent such a lawful and necessary exercise of corporate voting rights is that to allow an election now would be a "clear abuse" of the process. For good reason, courts specifically have rejected attempts to limit corporate governance using the mistaken argument that shareholders should not stand in the way of reorganization. "[T]he ability of shareholders to exercise their rights to corporate governance cannot be enjoined simply on the basis that a group of shareholders may be successful in their bid to elect directors whose views concerning a plan of reorganization may differ from those of existing management." *In re Allegheny Int'l, Inc.*, 1988 WL 212509, *5 (W.D. Pa. 1988); *accord In re Marvel Entm't Group, Inc.*, 209 B.R. 832, 838 (D. Del. 1997); *In re Johns Manville Corp.*, 801 F.2d 60, 64 (2d

Cir. 1986).

Here, without any type of shareholder input in corporate governance since well before the bankruptcy, WMI is attempting to settle its most significant outstanding claims while leaving shareholders with nothing. WMI repeatedly asks the Court to take on faith that the settlement and the plan constructed around it are warranted and critical to its Chapter 11 efforts, as if its actions were entitled to a presumption of validity, while at the same time vehemently resisting the effort of its owners to exercise their rights under state law controlling corporate governance. In fact, WMI's actions demand close scrutiny.

Its principal justification for blocking the shareholders meeting is to protect the purportedly "groundbreaking, yet still fragile" settlement agreement among the Debtors, JP Morgan Chase, N.A. ("JPMC"), and the Federal Deposit Insurance Corp. (the "FDIC"). (Def. Opp. at 1). Without sufficient clarity about the nature and extent of investigations into additional sources of recovery for the estates, the Debtors will seek to include broad releases in favor of JPMC and the FDIC that will permanently bar future claims upon confirmation of the plan. Unless and until a board meeting is held to elect new directors, the Equity Committee harbors serious concerns that the global settlement may not reflect a fair and appropriate valuation of the underlying litigation in a manner that maximizes the value of the Debtors' estates. This is especially true given the potential for conflicts in the existing Board of Directors, given its role in the very events that precipitated the bankruptcy of the company in the first instance and the lack of any shareholder input into corporate governance decisions in the interim. In any event, if the proposed settlement would be so easily destabilized by the election of new directors who would be bound by their fiduciary duties to act in the best interest of WMI, the Equity Committee questions the prudence and economic justification of the settlement in the first place.

WMI presents four principal arguments in support of the opposition: (1) that there is evidence of "clear abuse" of process in the Equity Committee's request for a shareholder meeting; (2) that a shareholder meeting is inappropriate because the Debtors are allegedly insolvent; (3) that Washington law affords the Court discretion in deciding whether to compel a shareholder meeting; and (4) that the Bankruptcy Code authorizes restriction of shareholder rights when it is "equitable" to do so. All four arguments are unavailing.

*First*, WMI alleges that the facts and circumstances surrounding the Equity Committee's request for a shareholder meeting raise a fact question about whether the request amounts to "clear abuse" of process. WMI has the burden to proffer evidence that there has been such a clear abuse. But in support of this argument, WMI makes baseless, speculative, and <u>legally irrelevant</u> attacks that the Equity Committee is trying to "seize control" and "implement new, imprudent 'swing for the fences' litigation strategies." (Def. Opp. at 1-2). Most fundamentally, even if such concerns had a foundation, courts consistently have held that they are insufficient to deny shareholders the right to exercise their control over corporate governance. Moreover, the shareholders fully expect that a new slate of directors would act in a manner that is entirely consistent with their fiduciary and ethical obligations to WMI, which includes both the creditors and shareholders of WMI. WMI has introduced no evidence to the contrary.

*Second*, WMI maintains that the Equity Committee cannot elect new directors because the shareholders are allegedly out of the money and therefore not real parties in interest. But the issue of solvency is not relevant to whether the court should compel a shareholder meeting. "[A]bsent other compelling legal or equitable factors, insolvency alone, irrespective of degree, does not divest the stockholders of a Delaware corporation of their right to exercise the powers of corporate democracy." *Saxon Indus., Inc. v.*

*NKFW Partners*, 488 A.2d 1298, 1300 (Del. 1984). Moreover, to hold that the possibility of insolvency somehow bars the exercise of a shareholder's right to vote would mean that no shareholder elections can be held whenever a company is in Chapter 11 proceedings. This is not the law: "It is well settled that the right of shareholders to compel a shareholders' meeting for the purpose of electing a new board of directors subsists during reorganization proceedings." *In re Marvel*, 209 B.R. at 838.

*Third*, WMI alleged that courts have discretion to prevent such a shareholder meeting under Washington law. But WMI does not cite a single case from Washington for this proposition, and the one case that they cite from Delaware shows how egregious the facts must be in order for courts to prevent a vote. WMI does not and cannot cite any case where a court has refused to call an annual meeting so that shareholders are allowed to determine whether an entrenched Board of Directors has adequately protected the company's interests.

*Fourth*, WMI's argument that this court should exercise its equitable authority to block a shareholder election is simply a rehash of its mistaken "clear abuse" of process argument. The Debtors have not presented any evidence (let alone compelling evidence) that its proposed liquidating plan of reorganization—which is premised upon a global settlement of the most valuable pending litigation—should somehow preclude the prompt scheduling of a long-overdue meeting of shareholders. Moreover, it is irrelevant to the annual meeting issue that the Equity Committee will have an opportunity to oppose the settlement during the plan-confirmation process. WMI has not cited any authority that remotely suggests that shareholders' opportunity to object somehow substitutes for, or justifies a restriction on, shareholders' separate right to call an annual meeting to elect new directors.

Apart from these four arguments, WMI also complains about both the financial

burden and delay that would be associated with holding an annual shareholder meeting. But the opposition grossly overstates the costs of holding an annual meeting and soliciting votes for a dissident slate of directors. And the expense and delay associated with filing audited financial statements for 2008 and 2009 can easily be minimized under the circumstances, in light of the law and SEC guidance.

Finally, WMI's attempt to block the Equity Committee's request that the Court grant relief from stay is similarly unavailing. Despite its best efforts to distract the Court's attention, WMI cannot escape the fact that the vast majority of relevant cases have held, in no uncertain terms, that the automatic stay is simply inapplicable to the exercise of shareholders' corporate governance rights, including the calling of annual meetings. Even if applicable, the Equity Committee has demonstrated the requisite cause under Section 362(d)(1) of the Bankruptcy Code because the balance of hardships clearly tips in favor of allowing shareholders to pursue an action to compel the annual meeting. It would be entirely proper for the Court to find that that the stay is inapplicable or, if necessary, to grant relief from stay so that shareholders may pursue the matter in Washington state court.

## II.
## ARGUMENT

**A.** **There is no evidence that the Equity Committee's request for an annual shareholder meeting under applicable Washington corporate law amounts to "clear abuse" of process.**

The right of a shareholder to elect its Board of Directors and participate in corporate affairs is "paramount." *In re Marvel*, 209 B.R. at 838 (internal quotations omitted); *see also State ex rel. Johnson v. Heap*, 95 P.2d 1039, 1042 (Wash. 1939) ("'The right to participate in the election of the governing board of a corporation is one of the most important rights incident to stock ownership.'") (citation omitted). It is equally axiomatic that "[s]hareholders . . . should have the right to be adequately represented in

the conduct of a debtor's affairs, particularly in such an important matter as the reorganization of the debtor." *In re Marvel*, 209 B.R. at 838 (quoting *In re Johns-Manville Corp.*, 801 F.2d 60, 65 (2d Cir.1986)). Moreover, "[i]t is well settled that the right of shareholders to compel a shareholders' meeting for the purpose of electing a new board of directors subsists during reorganization proceedings." *Id.*

Given this well-established premise, courts have consistently held that such a fundamental right may be enjoined *only* when circumstances demonstrate the existence of "clear abuse."[2] *Johns Manville,* 801 F.2d at 64. But it is only "clear abuse" if the shareholders or Equity Committee "bargain in bad faith" by having some "some secret desire to destroy all prospects for reorganization" or otherwise "torpedo" the reorganization process. *Id.* at 64, 65.

It specifically is <u>not</u> clear abuse even when shareholders wish to elect a new board of directors to "arrogate more bargaining power in the negotiation" or if the "shareholders . . . desire leverage" or to "redirect or alter the course of a reorganization." *Id.* at 64, 65. *Accord In re Lionel Corp.,* 30 B.R. 327, 330 (Bankr.S.D.N.Y.1983); *In re Bush Terminal Co.*, 78 F.2d 662 (2d Cir.1935). "The fact that the shareholders' action may be motivated by a desire to arrogate more bargaining power in the negotiation of a reorganization plan, without more, does not constitute clear abuse." *In re Marvel*, 209 B.R. at 838. As another court has stated, "[T]he ability of shareholders to exercise their rights to corporate governance cannot be enjoined simply on the basis that a group of shareholders may be successful in their bid to elect directors whose views concerning a plan of reorganization may differ from those of existing management." *Allegheny Int'l*, 1988 WL 212509 at *5. Indeed, it does not constitute clear abuse even "if rehabilitation

---

[2] This authority stems from Section 105 of the Bankruptcy Act and the equitable powers therein. *See, e.g., Johns Manville,* 801 F.2d at 64.

is placed at risk as a result of the other committees' intransigent unwillingness to negotiate with the Equity Committee." *Johns Mansville*, 801 F.2d at 65.

Here, the only facts WMI proffers as showing "clear abuse" fall into this latter category, which is insufficient as a matter of law. WMI asserts that there is a clear abuse of process because the Equity Committee is trying to "extract a distribution" and engaging in a "naked grab for power," especially because the cases are "at a critical juncture." (Def. Opp. at 10). The Debtors provide no evidentiary support for those accusations at all, and in fact it is barely short of outrageous for WMI to characterize the desire of its owners to exercise their statutory rights as shareholders as a "power grab" or an effort to "seize control."

But in any event, stripped of the inflammatory rhetoric, WMI's argument is simply another way of asserting that the Equity Committee is trying to increase its "leverage" and to "redirect or realter the course of a reorganization." *Johns Manville*, 801 F.2d at 64. Even if that were true, such actions would be entirely permissible. *Id.* Thus, WMI's unsubstantiated suggestions of clear abuse fail to raise any "genuine issues as to any material fact" to preclude the grant of summary judgment here. FED. R. CIV. P. 56(c). *See also In re Nat'l Century Fin. Enters., Inc.*, 292 B.R. 850, 857 (Bankr. S.D. Ohio 2003) (finding that "statements of speculation" about what could happen upon the election of new directors does not suffice to enjoin a shareholders' meeting); *In re Allegheny*, 1988 WL 212509 at *4(reversing bankruptcy court's injunction of shareholder meeting that was predicated on unsubstantiated suggestions of bad-faith motives because such inferences did not amount to a finding of clear abuse).

WMI's argument cannot escape a more fundamental flaw: that is, absent a true reorganization effort that might be disrupted, the potential for "clear abuse" from holding a shareholder meeting is significantly reduced. The proposed plan of reorganization in

this case does not present a genuine reorganization effort. In a true reorganization, a company typically restructures its financial obligations, preserves going-concern value during the bankruptcy case, and seeks to implement a business strategy upon emergence. *See In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 107 (1st Cir. 2005) (noting that, in a reorganization plan as opposed to a liquidating plan, the debtor is "attempting to make a go of its business"). In such cases, a new board of directors could derail the process. Here, in contrast, approval of the global settlement and confirmation of the proposed plan of reorganization would effectuate an orderly *liquidation* of the Debtors' affairs. As such, the threat of disrupting a genuine reorganization effort is entirely absent. In short, WMI has not adduced any facts showing bad faith or that the Equity Committee intends to torpedo the reorganization. Rather, the Equity Committee seeks to <u>participate</u> in the process and appoint a Board that will protect the rights and interests of <u>all</u> interested parties. Any new slate of directors would be expected to exercise their business judgment according to the very same fiduciary duties and obligations that bind the current directors. *See, e.g., In re Advanced Ribbons and Office Prods., Inc.*, 125 B.R. 259, 266 (B.A.P. 9th Cir. 1991) (noting that "whoever controls the debtor will be held to fiduciary standards in dealing with the debtor's assets").

Moreover, while it may be true that scheduling a shareholder meeting may slow down the confirmation process, such delay does not constitute "clear abuse" as a matter of law. *Johns-Manville*, 801 F.2d at 66 ("[C]lear abuse turns on whether rehabilitation will be seriously threatened, rather than merely delayed."). Nor should it – particularly in a case such as this one, where liquidation is all that ultimately will happen and where so many questions remain unanswered. Allowing entrenched directors to block an annual meeting would rob shareholders of a voice in the process at the most critical time in the bankruptcy case: the compromise of tremendously valuable claims and development of a

plan of reorganization. For these reasons, WMI is swimming against the tide of judicial opinions and attempting to substitute shrill rhetoric for legal principles.

Accordingly, the Court should grant the Equity Committee's motion for summary judgment because the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party[.]" *Matsuhita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.** **Any questions with respect to the Debtors' solvency have no bearing on the fundamental right of shareholders to call for an annual meeting to elect directors.**

Based primarily on a line of *dicta* from a single footnote in *Johns-Manville*, WMI asserts that the Equity Committee cannot seek to hold an annual shareholders meeting because the shareholders are not real parties in interest due to the Debtors' alleged insolvency. *See Johns-Manville*, 810 F.2d at 65, n. 6 ("We note that if Manville were determined to be insolvent, so that the shareholders lacked equity in the corporation, denial of the right to call a meeting would likely be proper, because the shareholders would no longer be real parties in interest."). This argument fails for at least two reasons: (1) a company's insolvency does not bar an otherwise valid request for a shareholder meeting; and (2) even if solvency remains an open issue at this time, it does not create a genuine dispute as to a *material* fact that should preclude the grant of summary judgment.

*First*, the issue of solvency is irrelevant to whether shareholders should be able to conduct an annual meeting. Despite WMI's best attempts to argue otherwise, there is no indication that the footnoted commentary from *Johns-Manville* provides a basis upon which to deny an annual shareholder meeting. *See Saxon Indus., Inc. v. NKFW Partners*, 488 A.2d 1298, 1300 (Del. 1984) (holding that "absent other compelling legal or equitable factors, insolvency alone, irrespective of degree, does not divest the stockholders of a Delaware corporation of their right to exercise the powers of corporate

democracy"). The rule that WMI proposes – that shareholders do not have standing to ask for a shareholders meeting if the company is insolvent – is also contrary to the "well settled rule that the right to compel a shareholders' meeting for the purpose of electing a new board subsists during reorganization proceedings." *Johns-Manville*, 801 F.2d at 64; *In re Marvel*, 209 B.R. at 838 . All companies in bankruptcy proceedings have solvency issues (which is of course why they are in bankruptcy), but the ability of shareholders to elect a new board survives nonetheless.[3]

*Second*, after acknowledging that the evidence to date concerning WMI's solvency is mixed, WMI insists that such a "triable issue of fact" means the Court must deny summary judgment. (Def. Opp. at 14). Because insolvency is not a dispositive consideration with respect to statutorily mandated shareholder meetings, however, the remaining issues with respect to solvency need not preclude the grant of summary judgment. *See In re Marvel*, 209 B.R. at 83 (rejecting insolvency argument as unsupported and premature because the court "ha[d] never found that [Debtor] [wa]s insolvent"). As a matter of black-letter law, only those factual issues that are related to disputes of "material" facts operate as a bar to the grant of summary judgment.[4] Any factual questions regarding WMI's solvency do not present a genuine dispute as to a

---

[3]  Based on its erroneous assumption that insolvency matters here, WMI also contends that it is unlikely that shareholders stand to recover, even if the estate were to successfully prosecute much of the litigation. Even if successful litigation of the avoidance actions would result in more claims against the estate that would come ahead of equity, the Equity Committee submits that other avenues of affirmative litigation may yield large recoveries without any corresponding claims back against the estate. Moreover, WMI's argument that avoidance actions should be maintained only for the benefit of creditors is simply incorrect as a matter of law. Such actions are intended to inure to the "benefit of the estate," which may include both creditors and shareholders. *See, e.g.*, *In re Acequia*, 34 F.3d 800, 811 (9th Cir. 1994) ("Courts construe the 'benefit to the estate' requirement broadly, permitting recovery under section 550(a) even in cases where distribution to unsecured creditors is fixed by a plan of reorganization and in no way varies with recovery of avoidable transfers."); *Kipperman v. Onex Corp.*, 411 B.R. 805, 876 (N.D. Ga. 2009) (holding that Section 550 of the Bankruptcy Code "puts no limit on the amount recoverable except that it must 'benefit the estate[,]" which "comprises all interests, including all creditors and equity").

[4]  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted" in opposing a summary judgment motion) (citation omitted); *Kowalski v. L&F Prods.*, 82 F.3d 1283, 1288 (3d Cir. 1996) ("To be material, the factual dispute must be one that might 'affect the outcome of the suit under governing law.'") (quoting *Anderson*, 477 U.S. at 248).

"material" fact. Accordingly, summary judgment should be granted.

**C.**     **WMI overstates the discretionary authority of courts under Washington law with respect to granting a request to compel an annual meeting.**

WMI mischaracterizes the degree of discretion afforded to the court to restrict a legitimate request for a shareholder meeting.  WMI seizes upon the word "may" in the text of Section 23B.07.030(1) of the Washington Business Corporation Act to conclude that the court must have discretionary authority to deny a request for a shareholder meeting.  WASH. REV. CODE § 23B.07.030(1) (2009) ("The superior court of the county in which the corporation's registered office is located may, after notice to the corporation, summarily order a meeting to be held.").  By divorcing this provision from the statutory scheme as a whole, WMI misreads the import of the language.  At a minimum, there is little doubt that the statutory scheme underscores the fundamental nature of shareholders' right to demand annual meetings.  *See* WASH. REV. CODE § 23B.07.010(1) (2009) ("[A] corporation *shall* hold a meeting of shareholders annually for the election of directors at a time stated in or fixed in accordance with the bylaws.").  Moreover, WMI does not dispute that its own bylaws require that an annual shareholder meeting take place on the third Tuesday in April of each year.  *See* Section 3.1 of Restated Bylaws of Washington Mutual, Inc. (2008).  In light of the clear requirement that annual meetings be scheduled and conducted in accordance with Washington law and a corporation's own bylaws, it defies common sense for WMI to insist that Washington courts can simply exercise equitable discretion—without any explicitly stated standard for cabining this discretion—to deny one of the cornerstone rights that shareholders have in corporate governance.

Moreover, WMI cannot identify a single controlling case under Washington law where a court exercised its purported discretion under Section 23B.07.030(1) to deny a request to schedule a shareholder meeting.  Instead, WMI relies on a 2002 decision in which the Delaware Chancery Court concluded that the conditional language of a

provision under Delaware law did afford courts some discretion in deciding whether to compel annual meetings. *See Clabault v. Caribbean Select, Inc.*, 805 A.2d 913 (Del. Ch. 2002). In *Clabault*, however, the court denied a request for a shareholder meeting under particularly egregious circumstances, including (1) the bankrupt corporation had not engaged in business operations in over a decade, (2) the business had no assets or shareholders, and (3) the certificate of incorporation had been voided many years ago for failure to pay franchise taxes. *Id.* at 918. Under such extreme conditions of neglect and misconduct, it is at least understandable why a court would be disinclined to order a shareholder meeting, but the facts underlying that case have absolutely no application here. WMI's assertion that a single Delaware case explained by such an unusually bad set of facts should trump fundamental principles of Washington corporate governance borders on the absurd.

**D.   WMI has not identified a compelling basis for the Court to exercise its equitable powers to deny shareholders their statutory right to hold an annual meeting.**

WMI's argument that this Court's equitable powers under Section 105 prevent allowing an annual meeting is simply a rehash of WMI's "clear abuse" of process argument. WMI identifies no other equitable interest besides the potential for delay or the risk that its preferred reorganization plan might be jeopardized. Opp. at 19-20. But that interest is fully addressed by the "clear abuse" of process standard, which also arises from Section 105. *See, e.g., Johns Manville*, 801 F.2d at 64. Indeed, any other equitable concerns here favor the Equity Committee. Insulating the estates from new directors who could add significant value to the process would be manifestly inequitable. WMI's own assertion that final judgment be delayed until *after* the confirmation process serves only to highlight the need for immediate relief. The proposed plan purports to settle the vast majority of the most valuable litigation to the estate. Shareholders need a voice in that

process now.[5]

**E.      WMI's request for 180 days to procure audited financial statements for 2008 and 2009 and the required proxy statements is unnecessary.**

WMI argues that should this Court grant the requested relief, compelling the shareholder meeting by April 24, 2010 would impose an onerous burden on the Debtors' estates and purportedly "require[] WMI to violate federal securities laws." (Def. Opp. at 21). This concern is off-base both legally and factually. As a legal matter, the "internal affairs doctrine" protects the fundamental right of shareholders to vote for directors as conferred under state law, even when it might contravene federal law. *See Vantagepoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1112 (Del. Ch. 2005) ("The internal affairs doctrine is a long-standing choice of law principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs – the state of incorporation."). Under the "internal affairs doctrine," the shareholder meeting could in fact be held in accordance with Washington law notwithstanding the fact that WMI is not in compliance with SEC filing obligations and, as such, unable to comply

---

[5] The cases cited by WMI lend no support to its request for the court to invoke its equitable powers to deny summary judgment. First, the holding of *In re Lifeguard Industries, Inc.* actually supports the Equity Committee's request for relief here. 37 B.R. 3 (Bankr. S.D. Ohio 1983). The court granted the motion to confirm the appointment of new directors to propose a plan of reorganization on behalf of the company, provided the directors did not interfere with the day-to-day operations of the company. *Id.* at 17. This is precisely the relief sought by the motion to compel the annual meeting in this case. The opposition also relies on *In re Acequia, Inc.*, 787 F.2d 1352 (9th Cir. 1986), and *In re Potter Instrument Co.*, 593 F.2d 470 (2d Cir. 1979), in support of delaying the shareholder meeting pending the confirmation process. Both these cases, however, turned on whether the petitioning shareholders were operating in bad faith. In *Acequia*, one 50% shareholder was denied voting rights based on the evidentiary record of bitter acrimony between the 50% shareholders. These egregious facts are not present here, where there is a large and diffuse body of shareholders that seek a voice in the WMI reorganization process. Indeed, the Equity Committee represents the interests of all shareholders. The *Potter Instrument* case is also inapposite. In that case, the shareholder seeking to compel a meeting to elect new directors was "a disgruntled stockholder" who was trying to "smash the Companies which he brought into being because he has been ousted from management and control." 593 F.2d at 474. The other cases cited in support of restricting the shareholder meeting involved easily distinguishable circumstances where the court exercised its equitable discretion to ensure a smoothly functioning reorganization process. *See, e.g., In re Gaslight Club, Inc.*, 782 F.2d 767, 774 (7th Cir. 1986) (affirming lower courts decision to replace majority shareholder with a "responsible officer" to manage the debtor's affairs during the bankruptcy); *In re FSC Corp.*, 38 B.R. 346, 350 (Bankr. W.D. Penn. 1983) (authorizing court-appointed "responsible officer" to manage debtor-in-possession and vote shares of parent corporation to appoint directors).

with the SEC proxy rules. *See Newcastle Partners v. Vesta Ins. Group*, 887 A.2d 975, 981 (Del. Ch. 2005) (applying the internal affairs doctrine to conclude that shareholder meeting could be held "where the registrant corporation is delinquent in its SEC filing obligations or is unable to comply with the literal terms of the SEC proxy rules"); *see also Esopus Creek Value LP v. Hauf*, 913 A.2d 593 (Del. Ch. 2006) (concluding that shareholder meeting should not be suspended merely because the company is not in compliance with federal proxy regulations and allowing a meeting to be quickly scheduled).

As a factual matter, the SEC has specifically provided guidance for companies that need to hold shareholder meetings required under state law even though they cannot comply with SEC rules. On February 4, 2008, the SEC issued Release No. 34-57262 (entitled "Delegation of Authority to the Director of the Division of Corporate Finance"), providing the circumstances under which a public company can be exempted from the requirement to send audited financial statements to shareholders when soliciting votes for directors at an annual meeting required under state law. *See* 17 C.F.R. § 200.30-1 (2008). Under Release No. 34-57262, a company seeking such an exemption simply must demonstrate that it is required to hold a meeting of shareholders as a result of an action taken by one or more shareholder pursuant to state law, and, despite good-faith efforts, is unable to comply with the requirement to provide audited financial statements.

Moreover, the opposition grossly overstates the costs of holding and conducting an annual meeting, including the marginal costs of soliciting votes for a dissident slate of directors. Some of these expenses are entirely avoidable, and it is disingenuous for WMI to argue that the Equity Committee's request somehow imposes "dramatic cost-shifting" on the estate. (Def. Opp. at 24). While it is true that companies are not *required* under federal law to include dissident candidates in their proxy materials, federal law certainly

does not *preclude* companies from doing so for the sake of efficiency and cost savings. The cost of including a few additional pages in the proxy statement and a second proxy card to accommodate an alternative slate of directors is a *de minimis* expense.

At their core, WMI's arguments amount to a transparent effort to exclude shareholders from any oversight role in how the company has investigated the nature and strength of its legal claims and how it has conducted negotiations to settle those claims, and to prevent them from playing a meaningful role in the plan-confirmation process. If the annual meeting does not take place quickly, the election of directors will be rendered meaningless because all critical decisions in the Debtors' reorganization will have already been made.

**F.      The Bankruptcy Stay Does Not Prohibit an Action in Washington State to Compel an Annual Meeting.**

       **1.      This Court Can Decline Jurisdiction Over the Shareholder Election.**

Jurisdiction in this Court is not mandatory. Contrary to the Debtors' assertion that this Court *must* exercise continuing jurisdiction over this dispute, bankruptcy courts regularly authorize parties to resolve matters related to a bankruptcy in another court. *See, e.g., Pesmen v. Bannockburn Lake Office Plaza Assocs. Ltd. P'Ship I*, 1999 WL 356307 (N.D.Ill. 1999) (collecting cases).[6] Indeed, whereas abstention principles limit *defendants'* power to forestall federal adjudication of a claim based on concurrent state adjudication, nothing prohibits a plaintiff from voluntarily staying a federal action in order to file a concurrent action in state court.

The Equity Committee believes that because this dispute turns on questions of

---

[6] Contrary to Debtors' reliance on *Colorado River*, it is widely recognized that "abstention in bankruptcy cases differs significantly from abstention in non-bankruptcy cases . . . [in that] unlike cases controlled by *Colorado River*, bankruptcy courts have broad discretion whether to abstain from adjudicating claims." *Bricker v. Martin*, 348 B.R. 28, 32-33 (W.D.Pa. 2006). Further, "permissive abstention applies to both core and non-core proceedings." *Id.; see also* 28 U.S.C. § 1334(c)(1) (authorizing abstention in any proceeding "arising under title 11 ... in the interest of justice, or in the interest of comity with State courts or respect for state law").

Washington corporate law, it can be best resolved by the courts of that state. In deference to the bankruptcy, however, the Equity Committee filed its action as an adversary proceeding to permit this Court to determine, in the first instance, the nature of the proceeding and the proper venue. In similar cases, bankruptcy courts have considered claims to compel shareholder elections and declined to exercise jurisdiction, referring the parties instead to a state court proceeding. *See In re Lionel Corp*, 30 B.R. 327, 329 (Bkrtcy. S.D.N.Y. 1983). That is precisely the relief that the Equity Committee seeks here.

**2.    The automatic stay does not prohibit a shareholders action to call an election.**

This Court has held that a shareholders' action to compel an annual meeting for the purpose of electing directors is not prohibited by the automatic stay. *See Marvel Entm't Group, Inc.*, 209 B.R. at 838. *Marvel* has been repeatedly cited and followed by numerous courts. *See, e.g., In re Am. Media Distribs., LLC*, 216 B.R. 486, 489 (Bankr. E.D.N.Y. 1998) (stating that the automatic stay is inapplicable to shareholders actions to exercise corporate governance rights); *Fogel v. U.S. Energy Sys., Inc.*, 2008 WL 151857, *1-2 (Del. Ch. Jan. 15 2008) (holding that the automatic stay did not bar the state court from scheduling an annual shareholder meeting because "there is no reason to disenfranchise equity holders so long as their exercise of voting rights does not impair such rehabilitation"); *In re Allentown Ambassadors, Inc.*, 361 B.R. 422, 438 n.35 (Bankr. E.D. Pa. 2007) (citing *Marvel*'s holding that shareholder actions to elect new board of directors does not violate Section 362(a)(3)); *Pesmen v. Bannockburn Lake Office Plaza Assocs. Ltd. P'Ship I*, 1999 WL 356307, *4 (N.D. Ill. 1999) (same).

Faced with this overwhelming authority, the Debtors cite only two unpublished and non-binding opinions, neither of which is on point: *In re Fairmont Communications Corp.*, No. 92-B-44861 (slip op.) (Bankr. S.D.N.Y. Mar. 3, 1993) and *In re Bicoastal*

*Corp*, 1989 WL 607352 (Bankr. M.D. Fla. 1989). Both cases involved the actions of parties with dual status as both creditors and shareholders. (Def. Opp. at 26). Although WMI quickly dismisses this joint status as irrelevant to the courts' reasoning, it was, in fact, critical. In both cases, the creditor-shareholder was attempting to exploit its ability to influence the board as a means of gaining unfair priority for the debt it was owed as a creditor. *Bicostal Corp.*, 1989 WL 607352 at \*5; *Fairmont Commc'ns*, No. 92-B-44861; *see Pesmen*, 1999 WL 356307 \*4 (noting that "the proper legal standard for determining whether an act violates the automatic stay" is whether it intends to "harass or coerce [debtor] into paying a prepetition debt"). Both of these cases were cited and distinguished in *Marvel* on the basis of the dual creditor/shareholder status at issue. *Marvel*, 209 B.R. at 839-40. Debtors have made no allegations, because there would be no basis for them, that the Equity Committee brings this action to improperly benefit creditors as opposed to all parties.[7] As a result, the authority cited by Debtors is inapposite.

WMI argues that this Court should decline to follow *Marvel* because, in that case, the election of new directors purportedly led to several months of delay. (Def. Opp. at 28-29). Allegations of a (comparatively short) delay in that case are legally irrelevant, do not justify trampling shareholders' rights here, and certainly do not support application of the automatic stay. *See Johns-Manville*, 801 F.2d at 66 ("[C]lear abuse turns on whether rehabilitation will be seriously threatened, rather than merely delayed."). WMI also contends the case was wrongly decided because it was based on cases published prior to the 1984 Amendment to the Bankruptcy Code. (Def. Opp. at 26, n.24). This argument lacks credence in light of the fact that *Marvel* discussed the 1984 Amendment at length,

---

[7] Indeed, there is less reason to believe that creditors' rights may be at issue in the shareholder action than there was in *Marvel* because that case involved stock that had been pledged to bondholder/creditors. *See Marvel Entm't Group, Inc.*, 209 B.R. at 838

209 B.R. at 838-39, and many cases have cited and followed *Marvel* in recent years. *See, e.g., Amer. Media et al,* 216 B.R. at 489.

WMI also asks the Court to exercise its equitable powers to enjoin the proposed shareholder suit even if it is not prohibited by the automatic stay. This argument simply rehashes WMI's opposition to the election of a new board of directors because of purported threats to the progress of the bankruptcy proceedings. WMI's opposition to the election is no more persuasive the second time around. Indeed, the only case on which WMI relies to support an injunction against a suit to compel a shareholder meeting in a non-bankruptcy forum did so only because the bankruptcy court had asserted jurisdiction over the issue and subsequently itself *issued an order compelling the meeting. In re New York Trap Rock Corp.,* 138 B.R. 420, 424-25 (Bankr. S.D.N.Y. 1992).

### 3. Even if the automatic stay applies, the Equity Committee has established cause for granting relief from the stay

If the Court finds the automatic stay applicable to this action, it should nevertheless issue an order lifting the stay and authorizing the shareholders to proceed in Washington. This Court has the authority to lift the stay for cause. *See* 11 U.S.C. § 362(d)(1) (providing that the court may terminate, annul, modify, or condition the stay "for cause"); *In re Wilson,* 116 F.3d 87, 90 (3d Cir. 1997) ("Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case."). To establish cause for relief under Section 362(d)(1), the Equity Committee must demonstrate that "the balance of hardships from not obtaining relief tips significantly in its favor." *In re RNI Wind Down Corp.,* 348 B.R. 286, 299 (Bankr. D. Del. 2006) (citation omitted). Here, the standard is easily met because without an election the shareholders lack effective, post-petition representation

on the board of directors.[8]

WMI does not dispute that the failure to schedule and conduct an annual shareholder meeting violates both Washington law and WMI's own bylaws. This is not a mere technicality; the shareholders' inability to appoint board members of their choosing, and in particular board members who are not potentially biased as a result of their involvement in pre-petition events leading to the bankruptcy, severely impairs the shareholders' ability to play a meaningful role in the negotiation of settlements and development of a plan of reorganization. In contrast, as discussed above, the hardships on the Debtors' estates from holding the meeting are comparatively minor and have been largely overstated in the opposition. Many of the expenses associated with preparing audited financial statements from previous years may not be necessary under the circumstances. *See supra* at II.E (discussing exemptions available under SEC Release No. 34-57262).

Moreover, the Debtors assume that, if stay relief is granted, new directors will be elected and they will "almost certainly withdraw support of the Plan and Agreement, risking everything accomplished to date in the Chapter 11 Cases." (Def. Opp. at 28). As stated before, such speculative worries do not provide a basis for denying relief from stay if "cause" has been established. Although the Equity Committee indeed hopes that a new slate of directors would closely examine the terms of the settlement and plan, WMI provides no supported reason to believe the directors would act in any manner that would be inconsistent with their fiduciary duties. *Advanced Ribbons and Office Prods.*, 125 B.R. at 266 (noting that any directors in control of debtor and its assets will be held to

---

[8] The argument that the Equity Committee has waived the right to establish "cause" is without merit. Although the Equity Committee did not specifically devote a significant portion of its moving papers to the alternative relief sought, the arguments presented for compelling the meeting as a matter of summary judgment also establish the requisite "cause" for lifting the stay under Section 362(d) of the Bankruptcy Code. WMI's attempt to argue otherwise elevates form over substance.

fiduciary standards). Finally, as previously noted, the settlement currently lacks support from essential constituencies (including the FDIC); as such, the argument that holding a long-overdue shareholder meeting will somehow disrupt the progress of the Debtors' cases lacks merit. Based on the foregoing, the balance of hardships clearly tips in favor of allowing the shareholder meeting to elect new directors.

Therefore, to the extent the automatic stay applies, the Equity Committee has established the requisite "cause" to lift the stay.

## III.
## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to the Equity Committee and issue an order compelling WMI to (1) convene an annual shareholders' meeting as soon as practicable but no later than May 2010; (2) send notice of the meeting to the shareholders of record as of March 3, 2010 (the date the Equity Committee filed its Complaint); (3) designate the time, place and procedures to be followed in holding the annual meeting, as well as the form of notice of the meeting to be delivered to all shareholders by WMI; and (4) enter further orders as necessary to accomplish the purposes of the meeting. In the alternative, the Court should find that the automatic stay under Section 362 of the Bankruptcy Code does not apply or grant relief from the automatic stay such that shareholders may seek such relief in Washington state court.

Dated: April 18, 2010

ASHBY & GEDDES, P.A.

_____

William P. Bowden (DE Bar No. 2553)
Gregory A. Taylor (DE Bar No. 4008)
Stacy L. Newman (DE Bar No. 5044)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
Telephone:  (302) 654-1888
Facsimile :  (302) 654-2067
E-mail:    wbowden@ashby-geddes.com
           gtaylor@ashby-geddes.com
           snewman@ashby-geddes.com

*Counsel to the Official Committee of Equity
Security Holders of Washington Mutual, Inc., et al.*

     -And-

SUSMAN GODFREY, L.L.P.
Stephen D. Susman (NY Bar No. 3041712)
Seth D. Ard (NY Bar No. 4773982)
654 Madison Avenue, 5th Floor
New York, NY 10065
E-mail:
ssusman@susmangodfrey.com
sard@susmangodfrey.com

Parker C. Folse, III (WA Bar No. 24895)
Edgar Sargent (WA Bar No. 28283)
Justin A. Nelson (WA Bar No. 31864)
1201 Third Ave., Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
E-mail:
pfolse@susmangodfrey.com
esargent@susmangodfrey.com
jnelson@susmangodfrey.com

*Proposed Co-Counsel for the Official Committee of
Equity Security Holders of Washington Mutual,
Inc., et al.*