IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
                                                               :
*In re*                                                        :    Chapter 11
                                                               :
WASHINGTON MUTUAL, INC., et al.,[1]                            :    Case No. 08-12229 (MFW)
                                                               :
                                                               :    (Jointly Administered)
                Debtors.                                       :
                                                               :    Hearing Date (Proposed): May 5, 2010 at 10:30 a.m.
                                                               :    Objection Deadline (Proposed): May 3, 2010 at 9:00 a.m.
---------------------------------------------------------------x

APPLICATION OF THE
DEBTORS PURSUANT TO SECTIONS
327(a) AND 328(a) OF THE BANKRUPTCY CODE,
BANKRUPTCY RULE 2014(a) AND LOCAL RULE 2014-1 FOR
ORDER AUTHORIZING THE RETENTION OF BLACKSTONE ADVISORY
PARTNERS L.P. AS FINANCIAL ADVISOR *NUNC PRO TUNC* TO APRIL 9, 2010

Washington Mutual, Inc. ("WMI") and WMI Investment Corp. ("WMI Investment"), as debtors and debtors in possession (collectively, the "Debtors"), hereby file this application (the "Application") pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for an order authorizing the retention of Blackstone Advisory Partners L.P. ("Blackstone") as financial advisor *nunc pro tunc* to April 9, 2009, and respectfully represent:

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

## Jurisdiction

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2. On September 26, 2008 (the "Commencement Date"), each of the Debtors commenced with this Court a voluntary case pursuant to chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 3, 2008, the Court entered an order, pursuant to Bankruptcy Rule 1015(b), authorizing the joint administration of the Debtors' chapter 11 cases.

3. On October 15, 2008, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On January 11, 2010, the U.S. Trustee appointed an official committee of equity security holders (the "Equity Committee") in these chapter 11 cases.

4. On March 26, 2010, the Debtors filed their Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code [Docket No. 2622] (the "Plan") and a related disclosure statement [Docket No. 2623] (the "Disclosure Statement").

## WMI's Business

5. WMI, a holding company incorporated in the State of Washington, is the direct parent of WMI Investment, which served as an investment vehicle for WMI and holds a variety of securities. WMI Investment is incorporated in the State of Delaware.

6. Prior to the Commencement Date, WMI operated as a savings and loan holding company that owned Washington Mutual Bank ("WMB") and, indirectly, such bank's

subsidiaries, including Washington Mutual Bank fsb ("WMBfsb"). WMI still owns all of the outstanding stock of WMB, and WMI also has certain non-banking, non-debtor subsidiaries. Like all savings and loan holding companies, WMI was subject to regulation by the Office of Thrift Supervision (the "OTS"). WMB and WMBfsb, in turn, like all depository institutions with federal thrift charters, were subject to regulation and examination by the OTS. In addition, WMI's banking and nonbanking subsidiaries were overseen by various federal and state authorities, including the Federal Deposit Insurance Corporation ("FDIC").

7. On September 25, 2008, the Director of the OTS, by order number 2008-36, appointed the FDIC as receiver for WMB and advised that the receiver was immediately taking possession of WMB (the "Receivership"). Immediately after its appointment as receiver, the FDIC purportedly sold substantially all the assets of WMB, including the banking subsidiaries of WMB, to JPMorgan Chase Bank, National Association pursuant to that certain Purchase and Assumption Agreement, Whole Bank, dated as of September 25, 2008.

8. WMI's assets include its common stock interest in WMB, its interest in its non-banking subsidiaries, and more than $4 billion of cash that WMI and its non-banking subsidiaries (including WMI Investment) had on deposit at WMB and WMBfsb immediately prior to the time the FDIC was appointed as receiver.

**Relief Requested**

9. By this Application, the Debtors request, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1, entry of the proposed order, substantially in the form attached hereto as Exhibit E (the "Proposed Order"), authorizing the retention and employment of Blackstone, as financial advisor for the Debtors, *nunc pro tunc* to April 9, 2010, in accordance with the terms of that certain engagement letter,

dated April 9, 2010, a copy of which is attached hereto as Exhibit A (the "Engagement Letter"), that certain indemnification agreement, dated April 9, 2010 (the "Indemnification Agreement"), attached to the Engagement Letter, a copy of which is attached hereto as Exhibit B, and that certain confidentiality agreement, dated April 9, 2010 (the "Confidentiality Agreement"), a copy of which is attached hereto as Exhibit C.

10. In support of the Application, the Debtors rely upon the affidavits of Steven Zelin (the "Zelin Affidavit"), a senior managing director of Blackstone, and Robert J. Gentile (the "Gentile Affidavit"), a vice-president in Blackstone's compliance group, copies of which are attached hereto as Exhibits D and E, respectively.

### Selection of Blackstone

11. Blackstone is a leading global alternative asset manager and provider of financial advisory services. Blackstone's restructuring and reorganization advisory operation is one of the leading advisers to companies and creditors in restructurings and bankruptcies. Blackstone professionals have extensive experience working with financially troubled companies in complex financial restructurings. Since 1991, Blackstone has advised on more than 250 distressed situations, both in and out of bankruptcy proceedings, involving more than $1 trillion of total liabilities.

### Scope of Blackstone's Services

12. The Debtors seek to retain Blackstone to provide financial advisory services related to and including Blackstone's valuation of certain assets of the Debtors (including, without limitation, WM Mortgage Reinsurance Corp., Inc.), the securities to be distributed to certain creditors pursuant to the Plan, and the rights offering available to creditors

pursuant to the Plan (collectively, the "Valuation Analysis"). The specific services Blackstone will provide, if requested by WMI, include:

    (a)    evaluating the businesses, prospects, long term business plan and related financial projections of the Debtors and their subsidiaries;

    (b)    reviewing and analyzing the Plan and the Disclosure Statement and, to the extent necessary, assisting in the amendment or supplement of the Plan and Disclosure Statement;

    (c)    completing the Valuation Analysis;

    (d)    preparing an expert witness report concerning the Plan and the Valuation Analysis (the "Expert Report");

    (e)    providing expert witness testimony concerning the Valuation Analysis and/or any of the subjects encompassed by the Expert Report; and

    (f)    providing such other advisory services as are customarily provided in connection with the analysis and valuation of a company in the context of a restructuring or reorganization as may be requested and mutually agreed.

13. Blackstone's services are not intended to be duplicative of the services performed, or to be performed, by any other party retained by the Debtors, including, among other, Alvarez & Marsal North America, LLC. As stated in the Engagement Letter, Blackstone is being retained solely to provide advice regarding the value of certain of the Debtors' assets. Blackstone, in concert with the other professionals retained by the Debtors, will undertake every reasonable effort to avoid any duplication of their respective services. Moreover, Blackstone has indicated a willingness to act on behalf of the Debtors, on the terms described herein, and will subject itself to the jurisdiction of the Court.

**The Debtors' Retention of Blackstone Is Necessary**

14. The services that Blackstone will provide are necessary to accurately value certain of the Debtors' assets, in addition to certain securities to be distributed pursuant to the

Plan. Such information is essential for the Debtors' creditors, the Court, and other parties in interest to evaluate and make informed decisions regarding the Debtors' proposed Plan. The Debtors submit that neither approval of the Disclosure Statement nor confirmation of the Plan can occur absent such valuation. Accordingly, it is necessary for the Debtors to retain a valuation expert. Based upon Blackstone's valuation experience and financial expertise, the Debtors have chosen Blackstone to serve in such capacity.

15. In addition, based upon time constraints due to the upcoming hearing on the Disclosure Statement, since April 9, 2010, Blackstone has performed work on the Debtors' behalf in good faith, pending approval of this Application. Accordingly, it is appropriate that Blackstone be retained *nunc pro tunc* to April 9, 2010.

### Professional Compensation

16. As set forth in the Engagement Letter, the Debtors and Blackstone have agreed to the following compensation structure (the "Fee and Expense Structure") in consideration for the services to be rendered by Blackstone to the Debtors in these chapter 11 cases:

(a) Upfront Fee. A fee in the amount of $500,000 in cash, payable upon entry of the Proposed Order;

(b) Valuation Fee. An additional fee equal to $850,000 earned upon the completion by Blackstone of the Valuation Analysis and payable as soon as practicable thereafter;

(c) Additional Fee. A potential additional fee, which may be structured as a monthly fee or as otherwise appropriate, to be agreed upon by Blackstone and the Debtors in the event that confirmation of the Plan does not occur prior to September 1, 2010; provided, however, that such Additional Fee will be (a) subject to prior approval by the Court and (b) commensurate with the anticipated additional services that Blackstone may perform; and

(d) _Expenses_. Reimbursement of all reasonable out-of-pocket expenses incurred during Blackstone's engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of Blackstone's counsel and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

17. Based upon the nature of the Fee and Expense Structure, the Debtors do not believe it is necessary for Blackstone to file monthly or interim applications for approval of fees and expenses. Pursuant to this Application and the Proposed Order, the Debtors and Blackstone seek approval of the Upfront Fee. In addition, Blackstone will (a) file a final fee application for the allowance of the Valuation Fee and Expenses, and (b) in the event that confirmation of the Plan does not occur prior to September 1, 2010, Blackstone also will file interim and final applications for the allowance of Additional Fees and Expenses, all in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses Filed under 11 U.S.C. § 330, that certain Amended Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated November 14, 2008, [Docket No. 302], and further orders of this Court for all services performed and expenses incurred after the date hereof.[2]

18. The Fee and Expense Structure described above is comparable to compensation generally charged by financial advisory firms of similar stature to Blackstone and for comparable engagements, both in and out of court. The Fee and Expense Structure is also

---

[2] The Debtors understand, however, that it is not the general practice of Blackstone professionals to retain receipts for expenses in amounts less than $75. Accordingly, the Debtors understand that Blackstone intends to only maintain receipts for expenses greater than or equal to $75.

consistent with Blackstone's normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined.

19. The Debtors acknowledge Blackstone's restructuring expertise as well as its financing skills were important factors in determining the amounts set forth in the Fee and Expense Structure, and that the ultimate benefit to the Debtors of Blackstone's services hereunder could not be measured merely by reference to the number of hours to be expended by Blackstone's professionals in the performance of such services.

20. Given the numerous issues that Blackstone may be required to address in the performance of its services in these chapter 11 cases, Blackstone's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Blackstone's services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors believe that the Fee and Expense Structure is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

### Blackstone's Disinterestedness

21. To the best of the Debtors' knowledge, information and belief, neither Blackstone nor any Blackstone employee, has any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants, except as may be set forth in the Zelin Affidavit. Based upon the Zelin Affidavit, the Debtors submit that Blackstone is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code.

### Indemnification Provisions

22. The Engagement Letter and Indemnification Agreement, provide, among other things, that the Debtors will indemnify and hold harmless (the "Indemnification Provisions") Blackstone and its affiliates and their respective partners (both general and limited),

members, officers, directors, employees and agents and each other person, if any, controlling Blackstone or any of its affiliates under certain circumstances (collectively, "Indemnified Parties"). The Indemnification Provisions are standard provisions, both in the chapter 11 context and outside chapter 11, and reflect the qualifications and limits on such terms that are customary for Blackstone and other similar financial advisors.

23. In connection with the Application, Blackstone has agreed to certain modifications to the Indemnification Provisions which are reflected in the Proposed Order and summarized as follows:

(a) Indemnified Parties shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter and/or Indemnification Agreement for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

(b) The Debtors shall have no obligation to indemnify Indemnified Parties, or provide contribution or reimbursement to an Indemnified Parties, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Indemnified Parties' gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for breach of Indemnified Parties' contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Company, et al.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to Indemnified Parties' gross negligence, willful misconduct, breach of fiduciary duty, or bad faith, if any, or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which Indemnified Parties' should not receive indemnity, contribution or reimbursement under the terms of the Agreements as modified by the Court;

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, an Indemnified Party believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter and/or

Indemnification Agreement (as modified by this Order), including without limitation the advancement of defense costs, Indemnified Party must file an application therefore in this Court, and the Debtors may not pay any such amounts to Indemnified Party before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Indemnified Parties for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Indemnified Parties. All parties in interest shall retain the right to object to any demand by Indemnified Parties for indemnification, contribution or reimbursement; and

(d) Any limitation of liability or limitation on any amounts to be contributed are deemed null and void.

24. The Debtors and Blackstone believe that the terms of the Indemnification Provisions are customary and reasonable for financial advisory engagements, both in out-of-court proceedings and in chapter 11 cases. Accordingly, the Debtors respectfully submit that the Indemnification Provisions, with modifications described herein, are reasonable and customary and should be approved in these chapter 11 cases. The modifications to the Indemnification Provisions are reflected in the Proposed Order.

### Blackstone's Retention Under Section 328 Is Reasonable and Appropriate

25. Section 328 of the Bankruptcy Code provides, in pertinent part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Thus, section 328(a) of the Bankruptcy Code permits the Court to approve the terms of Blackstone's engagement as set forth in the Engagement Letter and the Indemnification Agreement.

26. As recognized by numerous courts, Congress intended for section 328(a) of the Bankruptcy Code to enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." *See Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862-63 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").

27. The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Blackstone and is consistent with the fee structure typically utilized by leading financial advisors that do not bill their clients on an hourly basis. Similar transaction fee and monthly fee arrangements have been approved and implemented in other large chapter 11 cases. *See, e.g., In re LandSource Cmtys. Dev. LLC*, No. 08-11111 (Bankr. D. Del. Aug. 27, 2008); *In re New Century TRS Holdings, Inc.*, No. 07-10416 (Bankr. D. Del. Apr. 25, 2007); *In re Oakwood Homes Corp.*, No. 02-11282 (RJN) (Bankr. D. Del. July 21, 2003); *In re Burlington Indus., Inc.*, No. 01-11282 (RJN) (Bankr. D. Del. May 21, 2003).

28. Based on the foregoing, the Debtors submit that the relief requested is necessary and appropriate, is in the best interests of their estates and creditors.

## Notice

29. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Application has been provided to: (i) the U.S. Trustee, (ii) counsel for the Creditors' Committee, (iii) counsel for the Equity Committee, and (iv) those parties entitled to

receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

**No Previous Request**

30. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: April 21, 2010
Wilmington, Delaware

Respectfully submitted,

_____
Mark D. Collins (No. 2981)
Chun I. Jang (No. 4790)
Lee E. Kaufman (No. 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Marcia L. Goldstein, Esq.
Brian S. Rosen, Esq.
Michael F. Walsh, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS TO THE DEBTORS AND
DEBTORS IN POSSESSION