UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------x
: Chapter 11
*In re* :
: Case No. 08-12229 (MFW)
WASHINGTON MUTUAL, INC., et al.,[1] :
: (Jointly Administered)
Debtors :
: Re: Docket No. 3557
: Hearing Date: May 5, 2010 at 10:30 a.m.
---------------------------------------------------x Objection Deadline: May 3, 2010 at 9:00 a.m.

**LIMITED OBJECTION OF THE CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL TO DEBTORS' APPLICATION PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2014(A) AND LOCAL RULE 2014-1 FOR ORDER AUTHORIZING THE RETENTION OF BLACKSTONE ADVISORY PARTNERS L.P. AS FINANCIAL ADVISOR *NUNC PRO TUNC* TO APRIL 9, 2010**

The California Department of Toxic Substances Control (DTSC) files this limited objection to Debtors' application to retain Blackstone Advisory Partners LP (Blackstone) for financial services on the grounds that the services to be provided are unlikely to accomplish the Application's stated goal of producing a disclosure statement with "adequate information" as required under 11 U.S.C. § 1125. In order to evaluate the proposed reorganization plan in this matter, DTSC and other creditors require information about a particular non-debtor subsidiary of Debtor Washington Mutual, Inc. (WMI), namely WMI Rainier LLC. The details needed to satisfy the adequate information requirement of section 1125 of the Code are not included in the proposed Disclosure Statement filed by Debtors on March 26, 2010. Unfortunately, the financial

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98104.

1

services specified in the Application seem unlikely to produce the necessary and therefore mandatory information about WMI Rainier LLC in particular and about Debtors' assets generally. DTSC therefore respectfully requests that the Court deny the Application on the grounds that the services provided would not accomplish the stated goals. In the alternative, DTSC asks the Court to amend the order to require Blackstone to provide information regarding WMI Rainier LLC as specified herein and to provide creditors with a reasonable time following the amendment of the Disclosure Statement to review the amendments and to submit objections.

### Brief Statement of DTSC's Claim (Claim # 2213) and of the Information Presently Missing From the Disclosure Statement.

DTSC is a California state government agency mandated to enforce laws related to the cleanup of hazardous substances in California. Cal. Health and Safety Code § 25300 et seq. DTSC's claim in this matter seeks past and future costs for cleaning up the closed BKK hazardous waste disposal site in West Covina, California (the BKK Class I Landfill). DTSC alleges that Home Savings and Loan Association, the predecessor of Washington Mutual Bank (WMB), created, and then owned and operated, the Class I Landfill. Public records suggest that Oxford Investment Corporation, a predecessor of WMI Rainier LLC, also held title to the BKK Class I Landfill.

DTSC contends that WMB, WMI, WMI Rainier LLC, and other WMI affiliates are each jointly and severally liable and/or co-liable for environmental response costs that DTSC has incurred and will incur at the BKK Class I Landfill. 42 U.S.C. §§ 9601(25), 9607; Cal. Health and Safety Code § 25323.3. DTSC recognizes (but disputes) that each of those entities may contend that it is liable for only a share of the response costs at the BKK Class I Landfill and that

2

any liability that other WMI Entities may have is separate and additional. Because that question has not been adjudicated in this matter, DTSC is proceeding as if the WMI affiliates may have separate liability for DTSC's response costs.[2]

The Global Settlement Agreement and the Joint Plan that Debtors filed on March 26, 2010, each includes specific provisions regarding the BKK liability.[3] *See* Section 2.2.1. of the Global Settlement Agreement; Section 2.1(f)(4) of the Joint Plan. As drafted, these provisions could potentially determine what share of the BKK response costs DTSC could recover from each of various WMI affiliates, including WMI Rainier LLC. DTSC submits that other potential reorganization or liquidation plans could, in practical terms, effect different apportionments of the BKK liability. Therefore, to evaluate the impact of Debtors' proposed Joint Plan, DTSC needs information about the assets, liabilities and net worth of WMI Rainier LLC. Further, provisions in the Global Settlement Agreement and the Joint Plan address insurance policies benefitting WMI Rainier and other WMI affiliates. Accordingly, DTSC also requires information about the value of the insurance benefits owned by WMI Rainier.

### The Application Represents that Debtors Have Hired Blackstone Advisory Services to Cure Inadequacies in the Disclosure Statement.

Debtors' goal in retaining Blackstone is to obtain "financial advisory services related to and including Blackstone's valuation of certain assets of the Debtors (including, without limitation, WM Mortgage Reinsurance Corp., Inc.), the securities to be distributed to certain

---

[2] As noted, DTSC contends and reserves the right to argue that WMI Rainier LLC is not separately liable for any BKK response costs and that WMI and other WMI affiliates each have primary liability for those costs and/or are co-liable with WMI Rainier LLC.

[3] DTSC reserves the right to file an objection to the Disclosure Statement to address, *inter alia* other missing information and certain apparent ambiguities and improprieties in provisions of the Joint Plan that affect DTSC.

3

creditors pursuant to the Plan, and the rights offering available to creditors pursuant to the Plan (collectively, the 'Valuation Analysis')."[4] Docket No. 3557, pages 4-5

Debtors need additional information because, as they openly acknowledge, the Disclosure Statement submitted on March 26 is inadequate. "Debtors submit that in order to satisfy the requirement in section 1125 of the Bankruptcy Code that the Disclosure Statement provide 'adequate information,' the *Debtors must supplement* the Disclosure Statement with information regarding the value of certain assets of the Debtors . . . . The Debtors intend to provide this additional information *in an amended version of the Disclosure Statement* to be filed prior to the Disclosure Statement hearing." Docket No. 3558, Page 2. (Emphasis added.) Further, "the Debtors submit that neither approval of the Disclosure Statement nor confirmation of the Plan can occur absent such valuation." Docket No. 3557, page 6.

DTSC concurs that the Disclosure Statement is inadequate. It does not, for example, include a Liquidation Analysis. *See, In re Diversified Investors Fund XVII*, 91 B.R. 559, 561 (Bankr. C.D. Cal. 1988). Rather, Section XI.C.c. of the Disclosure Statement states that the "Debtors' chapter 7 liquidation analysis and assumptions relating thereto will be filed at a later date." Nor, as discussed above, does the Disclosure Statement contain the more detailed information about WMI Rainier LLC that DTSC requires to evaluate the Joint Plan.

Debtors assert that they are hiring Blackstone to cure the deficiencies in the Disclosure Statement. "The services that Blackstone will provide are necessary to accurately value certain of the Debtors' assets, in addition to certain securities to be distributed pursuant to the Plan.

---

[4] Debtors' proposed retention of Blackstone Advisory Partners is described in the Application, Docket Number 3557, and their Motion to Shorten Time, Docket Number 3558. These documents are cited herein by their docket numbers.

4

Such information is essential for the Debtors' creditors, the Court, and other parties in interest to evaluate and make informed decisions regarding the Debtors' proposed Plan." Docket No. 3557, pages 4-5.

## However, Blackstone's Services, as Described in the Application, are Unlikely to Cure the Deficiencies in the Disclosure Plan.

DTSC submits that for the following three reasons the described in the Application will not ensure the Disclosure Statement provides "adequate information" for DTSC to review the Joint Plan.

First, the Application states that Blackstone will perform a valuation of only "certain assets" of the Debtors. Docket Number 3557, pages 4-5. This is a problem for DTSC in particular and for creditors in general. For DTSC, there is no indication that Blackstone will provide any analysis of WMI Rainier LLC. More generally, for the Liquidation Analysis to be complete, the financial advisors must analyze all of Debtors' assets.

Second, the Application suggests two distinct levels of analyses, without indicating which assets will be analyzed in which level. *Compare* the statement that Blackstone will provide a "Valuation Analysis" (Docket Number 3557, pages 4-5 ) with the statement of specific services Blackstone will provide *"if requested by WMI."* In the latter case, Blackstone will evaluate "the businesses, prospects, long term business plan and related financial projections of the Debtors and their subsidiaries." *Id.* Page 5. (Emphasis added.) Whereas the first level provides no minimum standards, analyses conducted at the second, more thorough level are more likely to provide the detail DTSC requires to evaluate WMI Rainier LLC and for the Liquidation

5

Analysis generally. Yet the Application offers no indication that Debtors will in fact direct Blackstone to provide that service for WMI Rainier LLC or for any other of Debtors' assets.

Third, as discussed above, the Global Settlement Agreement and Joint Plan include provisions directing the potential recovery of certain insurance proceeds. Those provisions arguably deny WMI Rainier LLC insurance proceeds to which it would otherwise be entitled. The Disclosure Statement should, but does not, address the impact of that transfer of insurance benefits. Nor is there any indication in the Application that Blackstone's services will cure that deficiency.[5]

The Joint Plan and Disclosure Statement have unmistakably been prepared and distributed with great haste. This is evident from the obvious deficiencies in the Disclosure Statement, from the fact that the Global Settlement Agreement, the centerpiece of the Joint Plan, does not yet have the agreement of the FDIC, one of the key parties to that agreement, and from Debtors' frank admission that the Disclosure Statement does not meet the "adequate information" requirement of section 1125 of the Code. Given the haste evident throughout this process, it appears highly unlikely that the financial analysis proposed here will adequately address the information required for the Disclosure Statement to meet the requirements of the Code. DTSC submits that Debtors' agreement with Blackstone should be amended to ensure those deficiencies are indeed cured, otherwise DTSC and other creditors will be forced to respond to what will remain an obviously inadequate Disclosure Statement.[6] DTSC also submits

---

[5] We also note that the Global Settlement Agreement purports to list BKK-related carriers and policies but that list is missing Schedule 2.21.

[6] The Application is silent on whether Debtors will amend or supplement the Disclosure Statement before or after the May 13 deadline for objections to the Disclosure Statement.

that creditors should be given a reasonable period of time prior to the hearing on the Disclosure Statement to review any amended Disclosure Statement filed by the Debtors following the work by Blackstone.

## Conclusion

DTSC therefore respectfully requests that the Court deny the Application on the grounds that retention of Blackstone on the terms described in the Application would not accomplish the stated goals. In the alternative, DTSC asks the Court to amend the proposed order to require Blackstone to provide information regarding WMI Rainier as specified herein and to provide creditors with a reasonable period of time following amendments to the Disclosure Statement to review the amendments and to submit objections.

Dated: April 30, 2010

Respectfully Submitted,

EDMUND G. BROWN JR.
Attorney General of California
DON ROBINSON
MARGARITA PADILLA
Supervising Deputy Attorneys General
JAMES R. POTTER, CA Bar No. 166992[7]
OLIVIA W. KARLIN
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 897-2637
Fax: (213) 897-2802
E-mail: James.Potter@doj.ca.gov
Attorneys for Claimant Department of Toxics Substance Control

LA2009602622
Document in ProLaw

---

[7] Admission pro hac vice pending, Docket Number 1636.