UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re | : Chapter 11 |
| WASHINGTON MUTUAL, INC., et al.[1], | : Case No. 08-12229 (MFW) |
| Debtors. | : Jointly Administered |
| | : Related Docket No. 3579 |

## BANK BONDHOLDERS' STATEMENT IN RESPONSE TO MOTION AND SUPPORTING MEMORANDUM OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS FOR THE APPOINTMENT OF AN EXAMINER PURSUANT TO SECTION 1104(C) OF THE BANKRUPTCY CODE

The holders of senior notes (the "Senior Notes") issued by Washington Mutual Bank ("WMB") and parties in interest in the above captioned bankruptcy case (the "Bank Bondholders")[2] file this response to the Motion and Supporting Memorandum of the Official

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395).

[2] The Bank Bondholders include Anchorage Capital Master Offshore, Ltd.; Bank of Scotland plc; Cetus Capital, LLC; HFR ED Select Fund IV Master Trust; Lyxor/York Fund Limited; Marathon Credit Opportunity Master Fund, Ltd.; Marathon Special Opportunity Master Fund, Ltd.; Permal York Ltd.; Quintessence Fund L.P. c/o QVT Associates GP LLC; QVT Fund LP c/o QVT Associates GP LLC; The Värde Fund, L.P.; The Värde Fund VI-A, L.P.; The Värde Fund VII-B, L.P.; The Värde Fund VIII, L.P.; The Värde Fund IX, L.P.; The Värde Fund IX-A, L.P.; Värde Investment Partners (Offshore) Master, L.P.; Värde Investment Partners, L.P.; York Capital Management, L.P.; York Credit Opportunities Fund, L.P.; York Credit Opportunities Master Fund, L.P.; York Investment Master Fund, L.P.; York Select, L.P.; York Select Master Fund, L.P; CVI GVF (Lux) Master S.a.r.l.; Citigroup Global Markets, Inc.; Gruss Global Investors Master Fund, Ltd.; Gruss Global Investors Master Fund (Enhanced), Ltd..; Halcyon Master Fund L.P. c/o Halcyon Offshore Asset Management LLC; King Street Capital, L.P.; King Street Capital Master Fund, Ltd., assignee of King Street Capital, Ltd.; Stone Lion Portfolio L.P.; GRF Master Fund, L.P. c/o Anchorage Advisors, L.L.C.; PCI Fund, L.L.C. c/o Anchorage Advisors, L.L.C.; Caspian Select Credit Master Fund, Ltd.; Caspian Alpha Long Credit Fund, L.P.; Caspian Capital Partners, LP; D. E. Shaw Laminar Portfolios, L.L.C; Plainfield Special Situations Master Fund II, Limited; Plainfield OC Master Fund II Limited; Plainfield Liquid Strategies Master Fund Limited; Solus Alternative Asset Management LP; Farallon Capital Management, LLC.; Onex Credit Partners, LLC; Tricadia Capital, LLC; UBS Securities LLC; Allen Arbitrage, L.P.; Allen Arbitrage Offshore; Drawbridge DSO Securities LLC; Drawbridge OSO Securities LLC; and Worden Master Fund LP.

1

Committee of Equity Security Holders for the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code (the "Motion") and state as follows:

The Bankruptcy Code authorizes the appointment of an examiner "to conduct such an investigation *of the debtor* as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management *of the affairs of the debtor of or by current or former management of the debtor.*" 11 U.S.C. § 1104(c) (emphasis added); *see also* 11 U.S.C. § 1106(b), (a)(3) (the examiner may "except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan"). In its Motion, however, the Equity Committee requests the appointment of an examiner to conduct an investigation—not "of the debtor"—but rather of third parties. *See* Motion at 26-28.[3] Such an investigation is not contemplated by the Bankruptcy

---

[3] For example, the Motion requests investigation of the following topics, among others:

- "Discussions between JPMC, the FDIC, the OTS, other officials at the Department of the Treasury, the SEC, and any other government agencies during 2008 concerning WMB or WMI;"

- "Any actions by JPMC (including but not limited to direct or indirect communications to the media and securities transactions) that could have had the effect of damaging market or government agency perceptions of WMB or WMI's financial health, capital adequacy, or liquidity;"

- "JPMC's communications about WMB or WMI with other actual or potential WMI investors or merger/acquisition partners or investment advisors (including Goldman Sachs) during 2008;"

- "WMB's financial condition during 2008 and its ability to satisfy regulatory requirements regarding capital and liquidity up to the time of seizure, including how WMB's condition compared to that of other banks that were not seized and placed into an FDIC receivership;"

- "The causes of the 'run on the bank' experienced by WMB in the two-week period preceding OTS closure, including the extent to which institutional deposits, brokered

2

92277-001\DOCS_DE:159637.1

Code and is not an appointed examiner's role. *In re Wilcher*, 56 B.R. 428, 433-34 (Bankr. N.D. Ill. 1985) (noting that "the main function of the examiner is to uncover defalcations involving the debtor and his management of the estate . . . . The examination of third parties is at best ancillary to that main purpose"); *see also In re American Bulk Transport Co.*, 8 B.R. 337, 341 (Bankr. D. Kan. 1980) ("The examiner's primary duty is to investigate and report on the financial position of the debtor, the operation of the debtor's business, and the desirability of the continuance of the business").

Accordingly, if the Court is inclined to appoint an examiner, the examiner's focus should be on the Debtors and on matters that are central to the resolution of these liquidating Chapter 11 cases and the formulation of a confirmable plan. Those matters could include whether various assets—including tax refunds—claimed by Washington Mutual Inc. ("WMI" or "Debtor") truly belong to the Debtor or, consistent with its admitted status as a holding company that had no operations of its own, those refunds and other assets belong to WMI's operating subsidiary, Washington Mutual Bank ("WMB"), which incurred the tax losses and paid any taxes (or, even if the refunds and other assets are the property of WMI, WMB's receivership estate will have valid claims for any such benefit that will need to be paid in full before WMI's equity holders receive any payment). In addition, any investigation could involve an examination, not of the

---

        deposits, or deposits under the control of governmental or quasigovernmental agencies were withdrawn;"

- "The decisions of OTS and FDIC regarding the seizure of WMB and the sale of WMB assets, the bases for those decisions, the communications of OTS and FDIC with other government or private personnel about those decisions in advance of making and acting on them, and whether the FDIC's sale of WMB's assets satisfied its statutory obligations;"

- "Specific identification and valuation of WMB assets conveyed by the FDIC to JPMC;" and

Motion at 26-27.

"merits" of the various potential claims against third parties that the Equity Committee suggests should be investigated, but rather of the far simpler, threshold question whether any of those claims for lost value of WMB, by definition, belong to WMB (and its receivership estate for the benefit of its creditors), not to its shareholder WMI, such that WMI would be barred from bringing any such claims under settled law. *See Kaufman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732 (3d Cir. 1970) ("A stockholder of a corporation does not acquire standing to maintain an action in his own right . . . when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets. In this situation, it has been consistently held that the primary wrong is to the corporate body and, accordingly, that the shareholder, experiencing no direct harm, possesses no primary right to sue."). Finally, an examiner's investigation could include an examination of why WMI—a holding company that is liquidating—has incurred some $80 million in professional fees in these cases, *see* Monthly Operating Report, Case No. 08-12229, Dkt. No. 2737 (Bankr. D. Del. Mar. 30, 2010), and why an agreed settlement to resolve the cases has not been achieved. These subjects, unlike those proposed by the Equity Committee, would be within the scope of Section 1104, and an examination of them by a disinterested third party could move the case forward to resolution.

92277-001\DOCS_DE:159637.1

Dated: May 4, 2010

WILMER CUTLER PICKERING
HALE & DORR LLP
Philip D. Anker
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

-and-

WILMER CUTLER PICKERING
HALE & DORR LLP
Russell J. Bruemmer
Nancy L. Manzer
Gianna M. Ravenscroft
Lisa E. Ewart
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

-and-

PACHULSKI STANG ZIEHL & JONES LLP

_/s/_

Laura Davis Jones (Bar No. 2436)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
tcairns@pszjlaw.com

Counsel for the Bank Bondholders