# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| ------------------------------------- x | **Chapter 11** |
| In re : | |
| : | **Case No. 08-12229 (MFW)** |
| WASHINGTON MUTUAL, INC., et al., : | |
| : | **(Jointly Administered)** |
| Debtors. : | |
| : | **Re: Docket No. 2623** |
| ------------------------------------- x | |

**Objections Due: May 13, 2010 at 4:00**
**Hearing Date: May 19, 2010 at 11:30 a.m.**

**OBJECTION OF THE BKK JOINT DEFENSE GROUP TO THE *MOTION OF DEBTORS FOR AN ORDER , PURSUANT TO SECTIONS 105, 502, 1125, 1126, AND 1128 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 2003, 3017, 3018 AND 3020, (I) APPROVING THE PROPOSED DISCLOSURE STATEMENT AND THE FORM AND MANNER OF THE NOTICE OF THE DISCLOSURE STATEMENT HEARING, (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES, (III) SCHEDULING A CONFIRMATION HEARING, AND (IV) ESTABLISHING NOTICE AND OBJECTION <u>PROCEDURES FOR CONFIRMATION OF THE DEBTORS' JOINT PLAN</u>***

## INTRODUCTION

The BKK Joint Defense Group, for itself and each of its members (collectively, the "BKK Group") herein objects to the Motion Of Debtors For An Order, Pursuant To Sections 105, 502, 1125, 1126, and 1128 Of The Bankruptcy Code And Bankruptcy Rules 2002, 3003, 3017, 3018 And 3020, (I) Approving The Proposed Disclosure Statement And The Form And Manner Of The Notice Of The Disclosure Statement Hearing, (II) Establishing Solicitation And Voting Procedures, (III) Scheduling A Confirmation Hearing, And (IV) Establishing Notice And Objection Procedures For Confirmation Of The Debtors' Joint Plan (the "Motion").

The BKK Group herein joins in the Objections of the California Department of Toxic Substances Control ("DTSC") to the Motion (the DTSC Objection"), and reserves its rights to join in other objections to the Motion that may be filed by additional parties-in-interest.

The BKK Group expressly reserves herein all of its rights to lodge additional and/or more detailed or different objections to the Motion if and when the present feasibility issues with the Joint Plan are purportedly resolved, including, without limitation, when and if the FDIC agrees to the terms of the Global Settlement Agreement upon which the Debtors' proposed Joint Plan[1] and purported disclosure statement are based and the presently impermissible release and injunction provisions proposed for the Joint Plan are withdrawn.

## BACKGROUND

The BKK Group is a creditor and party-in-interest in these proceedings. The BKK Group's proof of claim number 2405[2] concerns a closed hazardous waste landfill that was created, owned and operated by the corporate predecessors of Debtor Washington Mutual, Inc. ("WMI") and its pre-bankruptcy affiliates. Specifically, the BKK Group seeks response costs being incurred at the closed BKK Class I (hazardous waste) Landfill in West Covina, California (the "BKK Landfill"). "Response Costs" are costs that the BKK Group incur conducting either "removal actions" or "remedial actions" at the BKK Class I Landfill. 42 U.S.C. §§ 9601(25), 9607(a); Cal. Health and Safety Code § 25323.3. Debtor WMI and certain of its non-debtor subsidiaries and affiliates are "liable persons" because their predecessors owned and operated the

---

[1]     Capitalized terms not specifically defined  herein have the meaning assigned in the DTSC Objection.

[2]     Other BKK-related proofs of claim include Claim nos. 2138, 2213, 2233, 2467, 2693, and 3148 according to the Joint Plan at Section 1.41.

BKK Landfill. 42 U.S.C. § 9607(a)(2); Cal. Health & Safety Code § 25323.5. In addition,

Washington Mutual Bank ("WMB") and its Affiliates, including WMI, are parties together with

members of the BKK Group to several Consent Decrees with the State of California requiring

response activities and other actions as more particularly described in the DTSC's Objection, and

directly or indirectly, parties to a Joint Defense Agreement with the BKK Group, more

specifically described in the BKK Group's proof of claim attached as Exhibit 1 hereto and

incorporated by reference, giving rise to contract claims as well as statutory and common law

claims.

Response costs incurred to date by the BKK Group approximate $50 million. The State

of California has estimated that the total response costs at or related to the Site could be in excess

of $600,000,000. WMB and WMI, each directly or indirectly, by and through their respective

predecessors, successors and/or subsidiaries and affiliates is a former creator, owner or operator

of the BKK Landfill and as such jointly and severally liable for recoverable response costs at the

BKK Landfill. In addition, each have contractual liabilities to the BKK Group and potential tort

liabilities in connection with the BKK Landfill.

## ARGUMENT

As stated above, the BKK Group joins in the DTSC Objection and adopts the specific

objections and supporting authorities cited therein by reference as appropriately applied to the

similar interests of the BKK Group in these proceedings. Debtors' request for approval of the

Disclosure Statement is premature. Debtors have admitted that the Disclosure Statement is

deficient and that the Joint Plan is not final. The Joint Plan is not feasible on its face because,

among other things, the Global Settlement Agreement upon which it is based, has not been

accepted by the parties thereto, namely the FDIC. The Disclosure Statement does not provide "adequate information" that would enable creditors in general and the BKK Group in particular, to make an "informed judgment" about the plan as required by 11 U.S.C. § 1125, subdivisions (a) and (b). The Disclosure Statement makes numerous references to critical information and documents as being attached that are not attached. These deficiencies infect both the structural elements of the Joint Plan and the provisions of specific interest to BKK-Claimants.

In addition, the Joint Plan as presented cannot be confirmed and therefore the Disclosure Statement should not be approved. Among other deficiencies, the Joint Plan includes sweeping Debtor releases and releases of non-debtor third-party liabilities and injunctions that extend far beyond even what the Third Circuit's relatively liberal rules allow. Although the provisions are anything but clear, Debtors seem to be asking the Court to release Debtors, JP Morgan Chase ("JPMC"), and the Federal Deposit Insurance Corporation ("FDIC") and all of their insiders and affiliates from virtually any liability even tangentially related to this bankruptcy and the preceding events that gave rise to it, including, for example, but by no means limited to, JPMC's liabilities to the BKK Group and the DTSC arising from its pre-petition assumption of the WMB assets and liabilities (including BKK Landfill related Consent Decree and contractual liabilities) under its Purchase and Assignment from the FDIC. Fourth, the Debtors' proposed disclosure statement approval, solicitation and confirmation procedures are improper because the requested deadlines for objections, voting and the confirmation hearing are premature given the sweeping defects in the Joint Plan and Disclosure Statement; the proposed method for determining the allowed amount of a claim for voting purposes and for reserves are contrary to the procedures established in the Bankruptcy Code and Rules; and the proposed ballots are improper given the

4

inconsistent provisions regarding the releases, injunctions and the opt out election, and other reasons provided below.

In addition to the objections lodged by the DTSC, adopted herein by reference, the BKK Group makes the following additional objections to the Disclosure Statement, Solicitation and Confirmation procedures that the Debtors request this Court to consider and approve at the upcoming hearing on May 19, 2010.

I. THE DEBTORS' PROPOSED DISCLOSURE STATEMENT, SOLICITATION AND CONFIRMATION PROCEDURES SHOULD NOT BE APPROVED

      A.     Debtors' Request for Court Approval *Nunc Pro Tunc* of The Notice of Disclosure Statement Hearing and The Proposed Procedures for the Filing of Objections to the Disclosure Statement, and The Request For a Finding That The Disclosure Statement Objection Procedures Comply with Bankruptcy Rules 2002 and 3017(a) Must be Denied.

Debtors' request for court approval *nunc pro tunc,* of the Notice of Disclosure Statement Hearing is improper and premature and should be denied. For the reasons stated above, the purported Disclosure Statement filed by the Debtors is materially deficient and incomplete and fails to comport with Section 1125 of the Code. It is wholly based on a settlement that has not been accepted by all the parties. In addition, on its face, it refers to but fails to include the liquidation analysis and many other material documents and financial analyses clearly intended by the Debtors at some point to be added. There has been no supplementation of the Disclosure Statement since its original filing date. As a result, a disclosure statement within the meaning of and in accordance with Rule 3016(b) has not been filed. Because no disclosure statement has been filed in accordance with Rule 3016(b) or served as contemplated by Rule 2002, the 28-day notice period before which the required hearing on approval of the disclosure statement may commence under Rule 3017, has not yet commenced, and can not commence until the material

and facial deficiencies are cured. This conclusion is evident in the simple fact that it is a waste of judicial time and resources and the time and resources of the parties-in-interest to consider in depth a disclosure statement and plan of the magnitude and complexity of the one presented here, until, at the earliest, at least 28 days after the settlement agreement upon which it is premised in every respect, has been agreed to by all the parties to it, including the FDIC, and the referenced but absent additional information and documents are included.

In addition, the disclosure statement objection deadline of May 13, 2010 provided in the Notice is improper. The May 13, 2010 deadline for objections appears not to have been fixed by the Court, but rather by the Debtors. Thus, objections to the disclosure statement may be filed and served "at any time before the disclosure statement is approved." Rule 3017(a). Again, Court approval *nunc pro tunc* of an incorrect deadline for objections to the disclosure statement should not be approved, particularly when, as here, the filed and served disclosure statement is so materially and facially incomplete and deficient. In order to afford parties-in-interest the meaningful notice and opportunity to be heard that the Code and Rules contemplate, a deadline for objections to a disclosure statement should not be established and approved nunc pro tunc as is being sought here, such that objections, even partial ones, are due in advance of adequate supplementation of a facially deficient and incomplete disclosure statement that pertains to a plan so dead on arrival as the one to which the Debtors' disclosure statement relates. A deadline for objections to the disclosure statement should not be fixed by the Court, if at all, until the material deficiencies and plan feasibility issues are resolved.

B.	Objections to the Solicitation Procedures--Voting

Creditors or equity holders who are not entitled to vote because their claims are unimpaired or because they are deemed to reject the plan, or because their claim may be subject to an unresolved objection or motion to estimate, apparently are not allowed under the Joint Plan to cast a ballot. As a result they are not given an opportunity to affirmatively opt out of the releases that without consent, may not be approved or confirmed in any plan. This is highly objectionable and the Court ought not to approve any balloting procedures the result of which would be to deprive stake holders of their right to reject or otherwise withhold their consent to the sweeping Debtor and third-party releases and injunctions, assuming they can be proposed at all.

In addition, BKK Claimants, because their claims are in large part unliquidated, will, at best have their claim temporarily allowed at $1 for voting purposes pursuant to the Motion. See the Motion at Para 41.(b). This is fundamentally unfair as the BKK Group's claims have a value well in excess of $1 dollar and the method proposed by Debtors is not narrowly tailored to strike a fair balance between the unliquidated amount and the right to cast a meaningful vote. In addition, if the Debtors file an objection to the BKK Group's Claim or a motion to estimate it, then such claim becomes "disputed" and the holder is not allowed to vote. See the Motion at paragraph 41(g). Finally, the procedures proposed by the Debtors would allow them to file an objection or motion to estimate the BKK Group's claim on the eve of the balloting deadline and leave insufficient time before the voting deadline for the BKK Claimant to secure an order from the Court estimating its claim or temporarily allowing it for voting purposes.

In addition, the "Record Date" as proposed by the Debtor of May 19, 2010 as the date for determining which creditors and equity holders are entitled to vote, is too soon. Given the inadequacies of the Disclosure Statement as outlined herein, the May 19, 2010 Record date provides insufficient time within which creditors such as the BKK Claimants can obtain a timely estimation or temporary allowance or reserves order.

Debtors propose that for voting purposes the amount of a claim shall be the Debtors' scheduled amount in most cases rather than the proof of claim amount with exceptions that do not eliminate the inequities and violations of the Code. It is black letter law that a properly filed proof of claim is deemed allowed for all purposed unless and until objected to in accordance with applicable Rules. Debtor ought not to be able to unilaterally alter this law and obtain approval of some other method to avoid the deemed-allowed status of a claim. Thus, the proposed procedures set forth in the Motion at paragraphs 40 - 42 are objected to and should be rejected.

The form of ballots proposed by the Debtors, particularly for the BKK Claimants in Class 12, should not be approved. First, Debtors present no compelling evidence as to why the Official Form No. 14 ballot cannot suffice. Second, the releases and injunction plan provisions on the ballots are confusing, incomprehensible and internally inconsistent as specifically outlined in the DTSC Objection. For example, the release provision, after it describes an opt-out option to enable a claimant to elect to opt out of the sweeping releases, then nullifies that provision by stating that the election will not be valid and that even the opt out claimant will be bound by the releases and injunctions without its consent. See proposed ballots.

The BKK Group objects to the voting deadline as premature. Given the deficiencies with the Disclosure Statement and Joint Plan, the proposed voting deadline of July 7, 2010 is

8

premature and will allow insufficient time for parties in interest to review and evaluate any revised plan and disclosure statement necessitated by the deficiencies in the one now pending. The BKK Group imposes a similar objection to the proposed confirmation hearing date of July 20, 2010 and the proposed deadline for objections to confirmation of June 25, 2010 for the same reasons. Although the BKK Group realizes the benefit of having a confirmation hearing and objection deadline on the calendar to encourage timely resolution of disputes, the schedule selected by the Debtors here is simply too aggressive given that as of this date the proposed Joint Plan is based entirely on a purported Global Settlement Agreement that does not exist.

The BKK Group herein reserves all rights to lodge additional objections to the Motion and the proposed Disclosure Statement, and the Joint Plan, and, if necessary, to seek additional time to do so if an amended disclosure statement and/or plan is filed between the date hereof and any hearing date on the Motion.

**WHEREFORE**, the BKK Group respectfully requests that the Motion be **DENIED**, and that the Court deny approval of the Disclosure Statement.

Dated:  May 13, 2010                  PHILLIPS, GOLDMAN & SPENCE, P.A.

_____
John C. Phillips, Jr., Esquire (#110)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
(302) 655-4210
jcp@pgslaw.com

AND

BINGHAM MCCUTCHEN LLP
Milissa Murray, Esquire
2020 K Street, NW
Washington, DC 20007
202.373.6511
m.murray@bingham.com