IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 08-12229-MFW |
| WASHINGTON MUTUAL, INC., *et al.*, | § § | CHAPTER 11 |
| DEBTORS. | § § § § | (Jointly Administered) Hearing Date: May 19, 2010 at 11:30 a.m. Related to D.I. Nos. 2622 and 2623 |

**CONSOLIDATED OBJECTION OF SUSANNA GOUWS KORN, ANGELITA RAVAGO, AND PARTIES TO BE NAMED TO (A) MOTION OF DEBTORS FOR AN ORDER, PURSUANT TO SECTIONS 105, 502, 1125, 1126, AND 1128 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 3003, 3017, 3018 AND 3020, (I) THE PROPOSED DISCLOSURE STATEMENT AND THE FORM AND MANNER OF THE NOTICE OF THE DISCLOSURE STATEMENT HEARING, (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES, (III) SCHEDULING A CONFIRMATION HEARING, AND (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE DEBTORS' JOINT PLAN; AND (B) THE JOINT PLAN OF AFFILIATED DEBTORS PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

SUSANNA GOUWS KORN, ANGELITA RAVAGO, AND PARTIES TO BE NAMED (collectively, the "Objecting Parties"), parties-in-interest, hereby submit this Consolidated Objection ("Objection") to (A) Motion of Debtors for an Order, Pursuant to Sections 105, 502, 1125, 1126, and 1128 of the Bankruptcy Code and Bankruptcy Rules 2002, 3003, 3017, 3018 and 3020, (I) the Proposed Disclosure Statement and the Form and Manner of the Notice of the Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling a Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Plan; and (B) the Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, and, in support thereof, respectfully submit the following:

# I. INTRODUCTION

1. Washington Mutual, Inc. ("WMI") and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on September 26, 2008 ("Petition Date").

2. Washington Mutual Bank ("WMB") was a wholly-owned subsidiary of WMI until September 25, 2008, when the Office of Thrift Supervision ("OTS") closed WMB, and appointed the FDIC as receiver for WMB.

3. Immediately after its appointment as receiver, the FDIC sold substantially all of the assets of WMB to JPMorgan Chase & Co. and JPMorgan Chase Bank, NA in exchange for payment of $1.88 billion in cash and the assumption of all of WMB's deposit liabilities.

4. The Objecting Parties are primarily individuals who were employed by WMB prior to the time that WMB began to experience major financial problems. Many of the Objecting Parties were middle level managers and executives for WMB. A major inducement for the Objecting Parties to remain in employment or accept jobs with WMB during the financial upheaval were certain Change-in-Control, Retention and Bonus Agreements (collectively, the "Additional Compensation Agreements").

5. The Objecting Parties relied upon the Additional Compensation Agreements when reporting to work at JP Morgan Chase ("JPMC"), which, in turn, relied upon the continuing employment of the Objecting Parties and other middle level executives in order for JPMC's investment to "work".

6. The Additional Compensation Agreements contained certain change-in-control provisions that were triggered by specific events. A change in control occurred when the OTS

ordered the seizure of WMB. The Objecting Parties' subsequent termination of employment after the change in control triggered a payment of compensation, as set forth in the contracts for each Objecting Party.

7. Based on the above, the Objecting Parties, along with others, filed suit against the FDIC in both its receiver and corporate capacities (collectively, the "FDIC") in the United States District Court for the District of Washington, at Seattle, Case No. 09-cv-00504 (RAJ) (the "Seattle Litigation"). In the Seattle Litigation, the Objecting Parties and others have alleged breach of contract, fraud, and other causes of action against the FDIC. None of the Debtors are parties to the Seattle Litigation.[1]

8. On March 26, 2010, the Debtors filed the Disclosure Statement of the Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code ("Disclosure Statement"). Filed contemporaneously with the Disclosure Statement is the Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code (D.I. 2622) ("Plan"). On April 23, 2010, the Debtors filed the Motion seeking, among other things, approval of the Disclosure Statement (the "Motion"). The Motion and the Disclosure Statement are set for hearing on May 19, 2010 and objections are due by May 13, 2010.

## II. Response to the Motion

9. The Objecting Parties object to the relief requested in the Motion to the extent it seeks to (i) include the Seattle Litigation in the "Proposed Global Settlement Agreement" referenced in the Disclosure Statement and the Plan and/or (ii) purports to eliminate the Seattle Litigation or release the Objecting Parties' claims therein, or obligate WMI to affirmatively interfere with the Seattle Litigation resulting from the Released Claims as defined in the Plan.

---

[1] Copies of the Objecting Parties complaint filed in the Seattle Litigation are available for electronic transmission to any interested party.

10. The Objecting Parties object to the relief sought by the Debtors in the Motion to the extent the Debtors seek approval of the Disclosure Statement.

### III. The Objection to the Motion and the Disclosure Statement

11. A disclosure statement must contain adequate information for creditors and shareholders to make an informed judgment about a plan of reorganization. See In re Scioto Valley Mortgage Co., 88 B.R. 168, 170 (Bankr. S.D. Oh. 1988). Section 1125(b) of the Bankruptcy Code provides the threshold level of information that must be included in a disclosure statement:

> An acceptance or rejection of the plan may not be solicited after the commencement of the case under this title from a holder of claim or interest with respect to such solicitation, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.

11 U.S.C. § 1125(b). (Emphasis added).

12. 11 U.S.C. § 1125(a)(1) of the Bankruptcy Code mandates that a debtor must adequately disclose information. § 1125(a)(1) of the Bankruptcy Code defines " 'adequate information' [to] mean[] information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor..., including a discussion a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan."

13. In light of the above, the Disclosure Statement is not confirmable as a matter of law to the extent the Plan purports to include the Seattle Litigation – nonbankruptcy litigation – in a "Proposed Global Settlement Agreement", especially so given that all parties to the Seattle Litigation are not before this Court.

14. The Disclosure Statement fails to include information relevant to the risks being taken by creditors and interest holders or the existence, likelihood and possible success of nonbankruptcy litigation. See In re Scioto Valley Mortgage Co., 88 B.R. 168 (Bankr. S.D. Ohio 1988); In re A.C. Williams Co., 25 B.R. 173 (Bankr. N.D. Ohio 1982); In re Ferretti, 128 B.R. 16, 19 (Bankr. D.N.H. 1991); and In re U.S. Brass Corp., 194 B.R. 420, 424 (Bankr. E.D. Tex. 1996). Furthermore, the Disclosure Statement fails to disclose any authority to support the relief the Debtors seek in the Plan and the Global Settlement Agreement relative to the Seattle Litigation.

15. Additionally, the Seattle Litigation is not properly before this Court and, as such, cannot be included in the "Proposed Global Settlement Agreement", nor can it be included in the Disclosure Statement or the Plan. A bankruptcy debtor has no standing to assert claims that are owned by a third party. See Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 433-34 (1972) (trustee lacked standing to sue a third party for damages incurred by debenture holders of the corporate debtor).

10. Further, the Disclosure Statement and the Plan purport to eliminate the Seattle Litigation resulting from the Released Claims as defined in the Plan (see Article XLII of the Plan and Article III of the Global Settlement Agreement attached as Exhibit I to the Plan). Non-debtor third party releases in a plan of reorganization have been permitted only in narrow circumstances where several, limited factors (none present here) have been met. See Gillman v. Continental Airlines (In re Continental Airlines), 203 F.3d 203 (3rd Cir. 2000). The limited factors that allow non-debtor, third party releases include: the third party releases are essential to the reorganization plan; the non-debtor released party makes a substantial contribution to the proposed reorganization; a lawsuit against the released party on the non-debtor claims would

result in a claim back against the debtor; the affected creditors overwhelmingly support the plan; the plan fairly compensates the affected creditors; non-consenting creditors may opt-out of the third party release provisions without prejudice; and the bankruptcy court record reflects that the foregoing factors are met. See id. The Debtors have failed to meet their burden of showing such factors can be met.

11. WMI has known of the Seattle Litigation since 2009. Yet, WMI never filed a complaint based on any of the FDIC's misconduct described in the Seattle Litigation or sought to intervene in the Seattle Litigation. Nevertheless, WMI now purports to include the Seattle Litigation in a "Proposed Global Settlement Agreement" and purports to eliminate the Seattle Litigation resulting from the Released Claims as defined in the Plan, without the consent or agreement of the Objecting Parties.

12. Given the above, the Debtors have wholly failed to meet their burden under 11 U.S.C. § 1125(a)(1) as the Disclosure Statement inadequately describes the proposed releases in the Plan and the Global Settlement Agreement and describes a plan of reorganization that fails to comply with 11 U.S.C. § 1125. As such, the Disclosure Statement is not confirmable as a matter of law, and therefore should not be approved.

13. The Objecting Parties consider the objections herein to be timely. However, to the extent that the Court deems this Objection is more properly asserted as an objection to the Plan, the Objecting Parties expressly reserve all rights to assert the matters raised in this Objection and any other supplemental or additional objections to the Plan at the confirmation hearing. Further, the Objecting Parties expressly reserve their rights to join in the objections of other parties, regardless of whether those grounds are addressed herein.

WHEREFORE, the Objecting Parties request that the Court deny the Motion, not approve the Disclosure Statement, grant the Objecting Parties such other relief as the Court deems appropriate, and enter an appropriate Order to such effect.

Dated: May 13, 2010

Respectfully submitted,

SMITH, KATZENSTEIN & FURLOW LLP

By: /s/ Michael P. Migliore
Michael P. Migliore (Del. Bar No. 4331)
The Corporate Plaza
800 Delaware Avenue
Suite 1000, P.O. Box 410
Wilmington, DE 19899
Tel. 302-652-8400 x216
Fax 302-652-8405
Email: mpm@skfdelaware.com

Counsel to the Objecting Parties