IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| WASHINGTON MUTUAL, INC., *et al.*, ) | Case No. 08-12229 (MFW) |
| ) | |
| Debtors ) | Jointly Administered |

## MOTION OF THE CONSORTIUM OF TRUST PREFERRED
## SECURITY HOLDERS TO COMPEL DEBTORS TO PRODUCE DOCUMENTS

The consortium of holders of interests subject to treatment under Class 19 of the Debtors' recently-filed Amended Plan (the "TPS Consortium"[1]), by and through its undersigned counsel, hereby files this motion to compel Debtors to produce documents responsive to the First Request for Production of Documents of the Trust Preferred Security Holders to Debtors (attached hereto as Exhibit A), and to produce such documents in an expedited manner. In support of this Motion, the TPS Consortium respectfully represents as follows:

### PRELIMINARY STATEMENT

1. Since the announcement of the purported "Global Settlement" that forms the basis of the Plan, the Debtors have indicated to the Court and parties in interest that they seek a quick and fair resolution to these Cases. But, their actions outside the presence of the Court belie such sentiments. More specifically, the Debtors have chosen to engage in delay tactics aimed at furthering their efforts to achieve confirmation of the Plan (and Global Settlement) so as to deliver significant benefits and/or valuable releases to JPMC, insiders and other select parties.

---

[1] The TPS Consortium is made up of holders of interests (as set forth more fully in the group's Rule 2019 statement [Docket No. 3546], as such may be amended) proposed by

The latest manifestation of these tactics is the Debtors' discovery "gamesmanship" designed to deprive the TPS Consortium of documents critical to a fair assessment and analysis of the Disclosure Statement and Plan.

2. More specifically, in response to requests by counsel for the TPS Consortium, the Debtors initially agreed, in late April, to provide certain documents without the need to engage in formal discovery. And, the Debtors indicated that they were gathering the requested documentation and would be prepared to produce those documents early in the week of May 10, 2010. But, rather than produce such documents as agreed, the Debtors engaged in one stall tactic after another, ranging from suddenly demanding acceptance of non-standard confidentiality restrictions to waiting days to respond to inquiries. The Debtors also rebuffed efforts by the TPS Consortium to reach an agreement regarding document production, including the TPS Consortium's suggestion that the production be made subject to the stipulated Protective Order entered by this Court on February 18, 2010 [Adv. Proc. No. 09-50551, Docket No. 179], as well as the TPS Consortium's requests to meet and confer to discuss other options.

3. In the end, the Debtors' promises to produce documents in response to informal requests proved empty and the TPS Consortium was forced to serve a formal document discovery request in connection with its objection to the pending Disclosure Statement. In response, the Debtors again waited until the last minute to inform the TPS Consortium that the Debtors would not even respond substantively to the TPS Consortium's discovery requests until at least June 10 – well after the currently-scheduled May 19 hearing to consider the Disclosure Statement and approximately two weeks in advance of the proposed deadline to object to confirmation of the Plan.

---

the Debtors to be treated under Class 19 of the Amended Plan (described in the Amended

4. Now, with the hearing to consider the Disclosure Statement only days away (assuming the Debtors intend to proceed with that hearing on May 19), the TPS Consortium is left with no recourse other than to seek the Court's assistance in obtaining documents critical to its preparation for the Disclosure Statement hearing – substantially all of which documents were represented by the Debtors to have already been gathered and/or otherwise are capable of production without little or no additional efforts by the Debtors.

**BACKGROUND**

5. The TPS Consortium, through counsel, initially sought the cooperation of the Debtors to obtain certain documents without the need for engaging in formal discovery. On April 26, 2010, lead counsel for the TPS Consortium spoke with Brian Rosen, Esq., counsel for Debtors, regarding such informal discovery. During that telephone conversation, Mr. Rosen agreed to produce documents concerning the Trust Preferred Securities and related topics. Later that same day, counsel for the TPS Consortium emailed a list of documents the TPS Consortium sought to review. See Email and List of Documents attached as Exhibit B.

6. In particular, the TPS Consortium is seeking further information regarding the current status of the Trust Preferred Securities, the circumstances of the purported transfers of those securities to and from the Debtors (including the implications for the Amended Disclosure Statement and Amended Plan, inter alia, if the so-called "conditional exchange" did not occur or should be deemed not to have occurred, and such Trust Preferred Securities are not part of the Debtors' estates), and other factors relevant to an informed assessment of the Plan and Global Settlement pursuant to which the Trust Preferred Securities would be delivered to JPMC (along with other problematic aspects of the Plan). The TPS Consortium also seeks to review

---

Plan and Amended Disclosure Statement as the "REIT Series").

documents previously produced in Rule 2004 discovery, which documents the Debtors purportedly considered before deciding to enter into the purported Global Settlement and to provide substantial additional value and/or releases to JPMC, insiders and others. All of the requested documents are directly related and relevant to the issues raised in the TPS Consortium's subsequently-filed Objection to the Disclosure Statement. [Docket No. 3694].

7. On April 29, Debtors' counsel informed counsel for the TPS Consortium that the Debtors were gathering information and documents responsive to the informal request and that such documents would be made available by way of an Intralinks website. The Debtors did not claim that gathering such documents would be difficult, nor did the Debtors indicate any burden to the estates to do so. Later that day, despite the existence of a previously stipulated and endorsed Protective Order governing the production of documents, Debtors' counsel transmitted to counsel for the TPS Consortium a proposed non-disclosure agreement ("NDA") that contained a number of onerous terms. See Exhibit C.

8. The proposed NDA sought to impose numerous burdensome conditions on the TPS Consortium and their counsel, conditions that are not typical to discovery agreements between debtors-in-possession and parties-in-interest or protective orders. In particular, the proposed NDA: (a) would not allow the TPS Consortium or their counsel to challenge any confidentiality designations; and (b) would require the TPS Consortium to seek prior permission from the Debtors and/or this Court before offering any documents into evidence or utilizing them in any way with respect to these Cases (rather than the more standard requirement to seek to file or use such materials under seal, which, ultimately, still leaves the Court as the final arbiter of whether the confidentiality designations are appropriate and/or should be given effect).

9. Counsel for the TPS Consortium nonetheless provided responsive comments to the proposed NDA the next day, April 30. See Exhibit D. Counsel for the Debtors did not respond until May 3, at which time it was indicated that counsel was too busy to respond substantively to the TPS Consortium's comments. See Exhibit E .

10. On May 4, Debtors' counsel finally responded, rejecting substantially all of the substantive changes proposed by the TPS Consortium. See Exhibit F. By voicemail the next day, May 5, Counsel for the Debtors stated that the Debtors were not willing to negotiate on the terms of the proposed NDA. In response, the TPS Consortium requested a "meet and confer" call to attempt to resolve the open issues and also offered to treat all documents in accordance with the existing Protective Order that had been agreed to by all parties and endorsed by this Court on February 18, 2010. See Exhibit G. The TPS Consortium's request for a meet and confer and suggestion regarding use of the Protective Order were both ignored.

11. At the omnibus hearing on May 5, counsel for the Debtors repeatedly referenced a finite set of documents (approximately 70,000 pages) that had been produced to and reviewed by the Debtors and other parties in interest in connection with Rule 2004 discovery of JPMC. Also at the May 5, 2010 hearing, the Court cautioned the Debtors, "I don't want to hear about obstacles being placed in their path to getting full and open access to that information, whether it's documentary or interviews…" *May 5, 2010 Hearing Transcript* p. 99. The Court also stated, "I'm strongly urging the committee and the debtor to provide all the information to the equity committee without testing the Court's patience with discovery motions." Id. at 100. The TPS Consortium is not aware of how the Debtors are dealing with requests from the Equity Committee, but the TPS Consortium was deliberately led to believe that Debtors would be cooperative, only to be stonewalled.

12. On May 6, 2010, Debtors' Counsel stated that the TPS Consortium's requests were still under consideration and that Mr. Rosen could not be reached to discuss the issue further. Shortly after the close of business on Friday, May 7, Debtors provided via email a further marked-up version of the proposed NDA. That version still contained unreasonable and non-standard provisions relating to the TPS Consortium's ability to make use of the documents to be produced by the Debtors. See Exhibit H. The email further stated that documents were being gathered and would be available for production early in the week of May 10. However, the requests to meet and confer and the offer to operate under the Court's Protective Order were again ignored.

13. After two weeks worth of delay, the TPS Consortium had no choice but to proceed with formal discovery. On May 11, having served its objection to the Disclosure Statement, the TPS Consortium served the Requests attached as Exhibit A. Because Debtors had represented documents were to have been available for production earlier in the week of May 10 and other documents (e.g., those related to prior Rule 2004 discovery) were already segregated and had already been shared with other parties in interest, the TPS Consortium requested that documents be produced by 9:00 a.m. on May 14, in order to have access to such documents in advance of the May 19 disclosure statement hearing.

14. Continuing the pattern of delay, rather than turn over the documents the Debtors had agreed to produce informally earlier in the week and without reaching out to the TPS Consortium to attempt to resolve the issue, at exactly 9:00 a.m. on May 14, Debtors served a three-paragraph Response and Objection to the TPS Consortium's Document Requests. In that Response and Objection, Debtors stated they would not provide any substantive response or documents until June 10, 2010 -- three weeks after the hearing on the Disclosure Statement and

just two weeks before the currently-contemplated plan objection deadline.  Debtors' Response and Objection is attached as <u>Exhibit I</u>.  In neither the Response and Objection nor any prior communications have the Debtors challenged the relevance of the information requested by the TPS Consortium or raised any other substantive objections.

15. On May 14, counsel for the TPS Consortium again sought to confer with Debtors' counsel via telephone to resolve the current dispute, but received no return telephone call.  Having received no response by the close of business on Friday, May 14, the TPS Consortium's counsel sent the letter attached as <u>Exhibit J</u>.  Debtors' counsel still has provided no response, and continues to refuse to produce any responsive documents, including those documents that were represented to be ready for production at the beginning of last week.  Debtors further refuse to produce any documents produced or received in connection with Rule 2004 discovery, which presumably would require mere duplication of the disks on which those documents were already produced.

16. The requested documents go to the heart of the TPS Consortium's concerns regarding the information to be provided to stakeholders in the Disclosure Statement.  As such, the Debtors' stonewalling and refusal to produce such documents prejudices the TPS Consortium's ability to present argument and evidence in connection with the Court's consideration of the adequacy of the Disclosure Statement.  Ultimately, if the Court allows solicitation of the Plan, the requested documents will also likely be critical to the TPS Consortium's ability to challenge confirmation of the Plan, and the TPS Consortium should be provided immediate access to such documents.  Other than the Debtors' apparent tactical decision to try to block review of such documents, or improperly restrict their use, or simply to sandbag the TPS Consortium, there is no logic to the Debtors' positions or actions.

## ARGUMENT

17. The rights of the members of the TPS Consortium have been threatened by the proposed Plan, which is predicated upon the Court's approval of the purported Global Settlement. Among many problematic features, the purported Global Settlement attempts to: (a) deliver ownership of the Trust Preferred Securities to JPMC, notwithstanding numerous questions as to the true current ownership of those assets and whether they are or should be even considered part of the Debtors' estates; (b) provide broad releases to JPMC, insiders and others, despite the Debtors' prior representations as to the validity and vitality of claims against certain of such parties; and (c) forcibly release potentially valuable claims of stakeholders, including claims held by members of the TPS Consortium, who have not participated in any discussions related to the Global Settlement and have not consented to such releases. As set forth in the TPS Consortium's objection to the Disclosure Statement, the Debtors' sudden acquiescence to the demands of JPMC and others raises significant questions as to what the Debtors reviewed and/or considered before surrendering (after nearly sixteen months of purported fighting on behalf of stakeholders) and how estate fiduciaries cured numerous conflicts of interest before agreeing to seek non-consensual releases in favor of JPMC and other third parties.[2] Such issues are directly relevant to stakeholders' consideration of the proposed Plan, and therefore, must be addressed in connection with the Disclosure Statement.

---

[2] A more detailed discussion of the TPS Consortium's interests and objections is set forth in the *Objection of the TPS Consortium to Debtors' Motion for Approval of Disclosure Statement* [Docket No. 3694]. The Debtors, late last night, filed an amended Disclosure Statement and Plan. While the TPS Consortium's review of those documents is ongoing, it would appear that substantially all of the concerns raised in its original objection remain extant.

18. As a party-in-interest to these Cases, the TPS Consortium is entitled to obtain discovery under Federal Rules of Civil Procedure 26 and 34, made applicable pursuant to Rules 9014, 7026 and 7034 of the Federal Rule of Bankruptcy Procedure.

19. In light of the above-described dilatory actions by the Debtors, the TPS Consortium respectfully requests that this Court order Debtors to produce immediately: (a) all documents that were previously produced to the Debtors in connection with Rule 2004 discovery (which documents have apparently already been shared with other parties in interest); and (b) all other documents previously requested by the TPS Consortium, which documents the Debtors represented were ready to be produced by the beginning of the week of May 10. The TPS Consortium agrees to treat such documents in accordance with the protective orders in place in these proceedings. Such documents are critical to an informed assessment of the Plan and Global Settlement in connection with the Disclosure Statement, which is currently set for Court consideration on May 19.

20. Ordering an expedited response is well within the discretion of the Court. See Stich v. United States, 730 F.2d 115, 117-18 (3d Cir. 1984) (noting that the conduct of discovery is left to the sound discretion of trial courts); Integra Bank N.A. v. Pearlman, 2007 U.S. Dist. LEXIS 7781, 4-8 (M.D. Fla. Feb. 2, 2007) (noting that Federal Rules 26(d) and 34(b) expressly provide courts with the ability to shorten the time for a party to respond to discovery and ruling that the plaintiff demonstrated the need for a shortened period because documents may be destroyed absent such an order); Semitool, Inc. v. Tokyo Electron Am., 208 F.R.D. 273, 276 (N.D. Cal. 2002) ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."); Arista Records, L.L.C. v. Does, 2008 U.S. Dist. LEXIS 66377, *3 (E.D. Mo. Aug. 29, 2008)

("Courts will … allow expedited discovery where the party establishes good cause, i.e. the need for expedited discovery, in consideration of administration of justice, outweighs prejudice to responding party."); Monsanto Co. v. Woods, 250 F.R.D. 411, 413 (E.D. Mo. 2008) (discussing two standards for determining whether to expedite discovery, and holding that the "good cause" standard is appropriate to apply, rather than a modified injunction standard, because plaintiffs made reasonable attempt to gather relevant evidence with defendant's cooperation and information subject to discovery could be subject to being lost or destroyed with time). Good cause exists for requiring an expedited response because the TPS Consortium would be prejudiced by not receiving responses until after the Disclosure Statement hearing and very shortly before the deadline for filing Plan objections. Further, because the requested documents have purportedly been gathered already by the Debtors or, in the case of Rule 2004 discovery previously received and shared by the Debtors with other case parties, are readily identifiable, such an Order would not present any burden to the Debtors.

## RESERVATION OF RIGHTS

21.     The TPS Consortium expressly reserves all of its rights to request further relief after receiving the Debtors' response to the TPS Consortium's Request for Production.

## CONCLUSION

22.     The Debtors should not, through engaging in dilatory discovery tactics, be allowed to prevent the TPS Consortium from demonstrating to the Court significant deficiencies in the Disclosure Statement, Plan and Global Settlement. Rather, Debtors should be required to produce the documents that they claimed to have already prepared for production and documents that merely require simple copying of disks.

**WHEREFORE**, the TPS Consortium respectfully requests that the Court: (a) compel the Debtors to: (1) immediately produce documents previously produced and/or received in connection with Rule 2004 Discovery; and (2) immediately produce documents already prepared for production as represented by Debtors' counsel; and (b) grant such other and further relief as is warranted.

Dated: Wilmington, Delaware
May 17, 2010

Respectfully submitted,

**CAMPBELL & LEVINE LLC**

*/s/ Marla Rosoff Eskin*
Marla Rosoff Eskin, Esq. (DE 2989)
Bernard G. Conaway, Esq. (DE 2856)
Kathleen Campbell Davis, Esq. (DE 4229)
800 North King Street, Suite 300
Wilmington, DE 19809
(302) 426-1900
(302) 426-9947 (fax)
meskin@camlev.com

– and –

**BROWN RUDNICK LLP**
Sigmund Wissner-Gross, Esq.
Robert J. Stark, Esq.
Seven Times Square
New York, NY 10036
(212) 209-4800
(212) 209-4801 (fax)

– and –

Jeremy B. Coffey, Esq.
Daniel J. Brown, Esq.
One Financial Center
Boston, MA 02111
(617) 856-8200
(617) 856-8201 (fax)

*Counsel for the TPS Consortium*