IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WASHINGTON MUTUAL, INC., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-12229 (MFW)<br><br>(Jointly Administered)<br><br>**Hearing Date: May 19, 2010 at 11:30 a.m.**<br>**Related Docket Nos. 3745** |

### SUPPLEMENTAL OBJECTION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS TO APPROVAL OF THE MOTION OF DEBTORS FOR AN ORDER, PURSUANT TO SECTIONS 105, 502, 1125, 1126, AND 1128 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 3003, 3017, 3018 AND 3020, (I) APPROVING THE PROPOSED DISCLOSURE STATEMENT AND THE FORM AND MANNER OF THE NOTICE OF THE DISCLOSURE STATEMENT HEARING, (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES, (III) SCHEDULING A CONFIRMATION HEARING, AND (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE DEBTORS' JOINT PLAN

The Official Committee of Equity Security Holders (the "Equity Committee")[2] of Washington Mutual, Inc. ("WMI" and, together with its chapter 11 debtor-affiliate, WMI Investment Corp., the "Debtors"), by and through its undersigned counsel, submits this supplemental objection (the "Supplemental Objection")[3] to the *Motion of Debtors for an Order, Pursuant to Sections 105, 502, 1125, 1126, and 1128 of the Bankruptcy Code and Bankruptcy Rules 2002, 3003, 3017, 3018 and 3020, (I) Approving the Proposed Disclosure Statement and the Form and Manner of the Notice of the Disclosure Statement Hearing, (II) Establishing*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Washington Mutual, Inc. (3725) and WMI Investment Corp. (5396). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

[2] All capitalized terms not otherwise defined herein shall have the meaning given to them in the Objection.

[3] In its Objection, the Equity Committee expressly reserved the right to amend or supplement the Objection with additional objections to approval of the Disclosure Statement. (Obj. 38-39)

*Solicitation and Voting Procedures, (III) Scheduling a Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Plan* (Dkt. No. 3568) (the "Motion"). In support of this Supplemental Objection, the Equity Committee respectfully states as follows:

1. On May 13, 2010, the Equity Committee filed its Objection (Dkt. No. 3726) to the Motion. In the Objection, the Equity Committee argued (and continues to argue) that the Proposed Settlement upon which the Plan is based is non-binding, and therefore the Plan is not feasible, on account of (i) the absence of the approval of the FDIC Board of the Proposed Settlement and (ii) the condition that the Bank Bondholder Claims are disallowed in their entirety. (Obj. 19-21) The Equity Committee also highlighted numerous additional deficiencies in the Disclosure Statement. (Obj. 23-38) Attached hereto as **Exhibit A** is a chart showing the deficiencies in the Disclosure Statement identified in the Equity Committee's Objection, how the Disclosure Statement has been modified to address certain of those items (to the extent the Equity Committee has been able to determine), and the substantial amount of information that remains lacking from the Disclosure Statement.[4]

2. Also on May 13, 2010, among numerous other parties in interest who objected to the Motion and Disclosure Statement, the FDIC filed its objection (Dkt. No. 3721) in which the FDIC stated: "There is currently no definitive Global Settlement Agreement and the conditions to any such definitive Global Settlement Agreement have not been satisfied." (FDIC Obj. at 2). In addition to a number of issues that existed (but were not mentioned) at the time the Proposed Settlement was announced on the record on March 12, 2010 that remain unresolved today, the

---

[4] The Equity Committee will not reargue all of the points reflects on the attached chart but feels compelled to bring to the Court's attention certain of the significant faults and inadequacies regarding the Disclosure Statement.

FDIC highlighted a number of additional disagreements between the Debtors and the FDIC that currently exist including: (i) the Debtors' insistence on broad Plan releases and other attempts to immunize insiders of WMB; (ii) Debtors' demand that the FDIC withdraw administrative Orders of Investigation; (iii) the Debtors' demand that the FDIC waive claimed rights to possible restitution payments; and (iv) the Debtors' attempt to bar the FDIC from intervening in certain derivative actions. (FDIC Obj. at 3, f.n. 4) Thus, the FDIC, in agreement with the Equity Committee, asserted that "the Plan is not feasible and the Disclosure Statement should not be approved." (FDIC Obj. at 5)

### A. The Effectiveness of the Proposed Settlement and Amended Plan Continue to be Conditional.

3. On May 16, 2010, the Debtors filed a First Amended Plan (Dkt. No. 3743) (the "Amended Plan") and revised Disclosure Statement (as amended, the "Disclosure Statement") (Dkt. No. 3745). The Debtors also filed a revised Proposed Settlement (as amended, the "Proposed Settlement"). (Dkt. No. 3743, Ex. H) The Proposed Settlement is an unsigned draft that continues to be subject to FDIC Board approval. (Proposed Settlement §§ 7.2, 7.3 and 8.8) Thus, it appears that the newest iteration of the Proposed Settlement continues to be subject to a material condition and, therefore, is non-binding and the Amended Plan is not feasible. The Equity Committee submits that the Debtors should not be authorized to expend estate resources to solicit votes in favor of the Amended Plan unless and until a fully agreed upon version of the Proposed Settlement, signed by the parties to be bound thereto, is filed with the Court and made available to parties-in-interest.

4. Additionally, the current iteration of the Proposed Settlement purports to remove disallowance in full of the Bank Bondholder Claims as a condition to the effectiveness of the Proposed Settlement. Generally the holders of Allowed Bank Bondholder Claims are to receive

a pro rata share of up to $150 million of the FDIC's share of the Tax Refunds (in the event the Bank Bondholder Claims are not disallowed or subordinated in their entirety) (DS 14, 26). There is no discussion, however, of the impact upon the Proposed Settlement and the Amended Plan if the Bank Bondholders prevail in their claims against the Debtors and their claims are allowed in excess of $150 million.

5. In addition, the Proposed Settlement and Amended Plan continue to be conditioned upon the effective sale of the Debtors' interests in the Plan Contribution Assets. The Plan Contribution Assets are supposed to be identified on Exhibit G to the Proposed Settlement, however, Exhibit G remains blank. Thus, parties in interest are unable to determine whether any interests they may have in the Plan Contribution Assets may be affected by the First Amended Plan, nor can they (or this Court) gauge the risk that the Proposed Settlement and the Amended Plan may never become effective. Before the Debtors are permitted to solicit acceptances of the Amended Plan, they should be required to disclose the assets that comprise the Plan Contribution Assets.

6. The latest draft of the Proposed Settlement also includes a new provision that addresses the Debtors' requests for information (defined as the "Record Requests" in the Proposed Settlement) from the FDIC, one of which the FDIC closed on February 17, 2010. (Proposed Settlement at 5) On the effective date of the Proposed Settlement, the Debtors "shall withdraw their Record Requests and waive any rights that they may have to administrative appeals or litigation with respect to the Record Requests." (*Id.* at 34) Thus, it appears that the Debtors did not obtain the information they requested from the FDIC and, under the Proposed Settlement, intend to waive any right to pursue such information.

### B. The Revised Disclosure Statement Continues to Lack Adequate Information.

7. Not only does the Proposed Settlement continue to be illusory, the Disclosure Statement continues to lack a substantial amount of information necessary to understand the Proposed Settlement and Amended Plan as discussed below and on **Exhibit A** attached hereto.

8. *Liquidation Analysis.* The Revised Disclosure Statement now includes a purported Liquidation Analysis, a copy of which is attached hereto for the Court's convenience as **Exhibit B**. However, the Liquidation Analysis is not an "analysis" at all but rather a series of assumptions and conclusions lacking any disclosed basis or support. Moreover, among other fallacies, the Liquidation Analysis assumes that a Chapter 7 Trustee would conclude within 2 to 4 months of appointment that consummating the Proposed Settlement is in the best interest of the estate. (Ex. C at 1-2) It does not appear that the Liquidation Analysis even considers the possibility that a Chapter 7 Trustee might determine not to proceed with the Proposed Settlement and, instead, pursue the one or more of the multi-billions of dollars of claims held by the estate.

9. In addition, the Liquidation Analysis arbitrarily discounts the value of the Debtors' assets in a hypothetical Chapter 7 liquidation. By way of example, the Liquidation Analysis assumes that a Chapter 7 Trustee would be forced to quickly sell WMMRC at a fire-sale price (*see* DS Ex. C at 4), but does not provide any basis to support that assumption. On the contrary, a Chapter 7 Trustee could very well structure a sale transaction involving WMMRC to take advantage of the multi-billions of dollars of NOLs held by the estate similar to the way the Debtors propose to take advantage of the NOLs for their own benefit under the Amended Plan.

10. The Liquidation Analysis also assumes, without explanation, that appointment of a Chapter 7 Trustee would result in the incurrence of an additional $84 million of professional fees and operational expenses over what will otherwise be incurred under the Amended Plan.

(DS Ex.C at 4) Without further explanation regarding these significant assumptions, the Liquidation Analysis cannot be considered credible.

11. *Enterprise Valuation of the Reorganized Debtors.* The Debtors have also now submitted a purported enterprise valuation for Reorganized WMI prepared by Blackstone Advisory Partners, a copy of which is attached hereto for the Court's convenience as **Exhibit C**. Blackstone's enterprise valuation is rudimentary at best. The analysis (i) fails to state whether, or how, it factors in the Debtors' NOLs, a significant asset of the estate; (ii) fails to mention any tax attributes or consequences as a result of the transactions contemplated by the Debtors; (iii) fails to include any quantitative analysis to show the assumptions and cash flows used to value the Reorganized Debtor; (iv) fails to include any analysis supporting the precedent transactions and comparable company analysis; and (v) fails to disclose how Blackstone weighted each the three methodologies used to reach its conclusion. In short, Blackstone has provided a bare conclusion – not a valuation supported by any disclosed analysis.

12. *JPMC's Recovery under the Plan.* In the Objection, the Equity Committee pointed out that the Debtors failed to disclose the analysis they undertook to arrive at their determination that the transfer of the Debtors' assets and other consideration to JPMC, the FDIC and others is reasonable. The Disclosure Statement continues to lack any analysis or disclosure of the factors the Debtors considered to reach their conclusion that the apportionment of the Tax Refunds, the Trust Preferred Securities, and other material assets of the estate, as between JPMC, the FDIC and the estate is reasonable. (*See generally*, DS) The Disclosure Statement also continues to fail to disclose an estimate of the amount of the JPMC Assumed Liabilities (including the liabilities associated with the Interchange Litigation and BKK Litigation). (DS 12).

13. The Revised Disclosure Statement has been amended to reflect that the purchase price of the Debtors' 3.147 million Class B Shares of Visa, Inc. (the "Visa Shares") has been *reduced* from $50 million to $25 million, yet there remains no disclosure regarding how the Debtors determined that the purchase price (whether $50 million or $25 million) is reasonable consideration in exchange for the Visa Shares. (DS 12).

## CONCLUSION

**WHEREFORE**, for the reasons discussed in the Objection and this Supplemental Objection, the Equity Committee respectfully requests that an order be entered (i) denying approval of the Disclosure Statement and (ii) granting such other and further relief as the Court deems just and proper.

Dated: May 18, 2010

**ASHBY & GEDDES, P.A.**

William P. Bowden (DE Bar No. 2553)
Gregory A. Taylor (DE Bar No. 4008)
Stacy L. Newman (DE Bar No. 5044)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile : (302) 654-2067
E-mail: wbowden@ashby-geddes.com
gtaylor@ashby-geddes.com
snewman@ashby-geddes.com

*Delaware Counsel to the Official Committee of Equity Security Holders of Washington Mutual, Inc., et al.*

-and-

**SUSMAN GODFREY, L.L.P.**
Stephen D. Susman (NY Bar No. 3041712)
Seth D. Ard (NY Bar No. 4773982)
654 Madison Avenue, 5th Floor
New York, NY 10065
E-mail:
ssusman@susmangodfrey.com
sard@susmangodfrey.com

Parker C. Folse, III (WA Bar No. 24895)
Edgar Sargent (WA Bar No. 28283)
Justin A. Nelson (WA Bar No. 31864)
1201 Third Ave., Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
E-mail:
pfolse@susmangodfrey.com
esargent@susmangodfrey.com
jnelson@susmangodfrey.com

*Proposed Co-Counsel for the Official Committee of Equity Security Holders of Washington Mutual, Inc., et al.*