# **EXHIBIT A**

| EQUITY COMMITTEE'S OBJECTIONS | | FIRST AMENDED DISCLOSURE STATEMENT |
|---|---|---|
| CONDITIONS | **Plan is dependent upon the GS, which lacks the agreement of the FDIC[1]** | There is no evidence that the FDIC has agreed to the revised GS (*see* DS 7-8). |
| | GS is conditioned on the disallowance in full of the $12.1B face amount of Bank Bondholders Claims | Removes condition that Bank Bondholders Claims be disallowed in their entirety. Instead, Bank Bondholders will receive a pro rata share of up to $150M of the FDIC's share of the Tax Refunds (DS 14, 26). |
| | **Plan is conditioned upon approval and effectiveness of the sale of the Debtors' rights and interests in certain of the Plan Contribution Assets, which the Debtors fail to identify** | Exhibit G to the revised GS remains blank (*see also* DS 8). |
| GENERAL INFORMATION LACKING | **Fails to disclose the value (or range of values) the Debtors ascribe to the consideration the Debtors are receiving in return for settling and releasing claims** | (*See* DS 7-9, 14) |
| | **Fails to include an analysis of the possible value of the assets being liquidated for distribution to claimants** | (*See* DS 7-14) |
| | Fails to include a liquidation analysis demonstrating that recoveries will be greater under the Plan than under a straight liquidation conducted by a Chapter 7 Trustee and the factors upon which the Debtors relied in reaching the conclusions expressed in any such liquidation analysis | Attaches Liquidation Analysis as Exhibit C, but "analysis" merely includes assumptions and conclusions that lack any disclosed basis or support. |
| POTENTIAL CAUSES OF ACTION | **Lacks information critical to an understanding of the GS, including the value (or range of potential values) the Debtors ascribe to their potential claims against JPMC, Debtors' directors and officers, "Settling Note Holders" and/or FDIC** | Provides that no more than $10M of the consideration to be received by the FDIC Receiver may be allocated to the release of the potential claims against any present or former WMI or WMB directors or officers (GS § 2.29), but still lacks critical information regarding the value the Debtors ascribe to the potential claims against JPMC, Debtors' directors and officers, Settling Note Holders and the FDIC (*see* DS 2-9). |

---

[1] Bold items are deficiencies with the original disclosure statement as articulated in the Equity Committee's Initial Objection [Docket No. 3726] that the Equity Committee believes the Debtors have failed to address in their First Amended Disclosure Statement.

{00407655;v1}

| | | |
|---|---|---|
| | Fails to identify the "Unidentified Intellectual Property" that will be transferred by WMI to JPMC | (See DS 69) |
| | Fails to disclose the factors considered and analysis undertaken by the Debtors in determining to transfer assets to JPMC, the Debtors' estimation of the value (or range of value) of such assets or the consideration to be paid by JPMC attributable to such assets | (See DS 11) |
| | With regard to the exchange for WMI's 3.147M Class B Shares of Visa, Inc., fails to disclose how $50M was derived or the total amount of dividends WMI expects to receive and retain in respect of the Class B Shares prior to the effective date of the GS | Reduces consideration for Visa Shares from $50M to $25M (Plan § 2.1(f)(1); GS § 2.5), but still fails to disclose how $25M was derived or the total amount of dividends WMI expects to receive (see DS 12). |
| | Fails to provide an estimate of the amount of the JPMC Assumed Liabilities, including liabilities associated with the Interchange Litigation and BKK Litigation | (See DS 12) |
| JMPC's RECOVERY UNDER THE GS AND PLAN | Fails to describe the reason for WMI's purchase of the following assets or the basis upon which JPMC can transfer these assets free and clear of liabilities under the Bankruptcy Code (JPMC Entities will sell to WMI (i) the HF Ahmanson Rabbi Trust and certain BOLI-COLI policies and proceeds thereof (Ex. R); (ii) the 1.33% stock in H.S. Loan Corporation owned by WMB; and (iii) WMI Intellectual Property) | (See DS 13) |
| | Fails to contain any analysis establishing that the $50M deposited by JPMC into the Vendor Escrow to satisfy the claims of vendors associated with the contracts on Exhibit U to the revised GS will be sufficient to satisfy all of those vendors' claims | (See DS 12-13) |
| | Fails to set forth what impact, if any, the proposed tax treatment (treating amounts transferred to WMB or JPMC as "capital contributions" for tax purposes) may have on the estate | |

|  |  |  |
|---|---|---|
|  | Fails to address the overall value of the Tax Refunds and the factors considered and analysis undertaken by the Debtors that supports the allocation of the Tax Refunds between the estates, JPMC and the FDIC | (See DS 10-11) |
| TAX REFUNDS | Fails to disclose or discuss what proportion of the NOLs are attributable to each member of the Tax Group under the Tax Sharing Agreement and fails to disclose whether the value of the NOLs is included in the Debtors' $5.4 to $5.8B estimate of the value of the Tax Refunds | (See DS 4-6, 10-11) |
|  | Fails to disclose whether the FDIC holds a claim against WMI relating to the Tax Refunds and, if so, the amount of such claim | (See DS 10-11) |
|  | Fails to clearly identify the basis upon which the FDIC is entitled to recover $1.6B of the Tax Refunds | Provides that FDIC will receive distributions in an amount up to $850M from the second portion of the federal income tax refunds attributable to the Act (see DS 10, 13), but still fails to identify the basis upon which the FDIC is entitled to recover. |
|  | Fails to disclose the anticipated date(s) of receipt of the Tax Refunds | (See DS 10-11) |
| CLAIMS AND DISTRIBUTIONS | Fails to disclose the total amount of claims that fall within each class and the percentage recovery expected for each class | Includes estimated percentage of recovery for each class of claims, but still fails to disclose the total amount of claims within each class (see DS 17-28). |
|  | Fails to disclose the identity of the holders of the Preferred Securities and fails to disclose any basis upon which holders of PIERS Claims are entitled to higher priority than other preferred and common equity, or the rational for treating "Common Securities" as Claims | (See DS 25-26, 84-86) |
|  | Fails to provide the basis for the Debtors' conclusion that the holders of claims relating to the CCB Securities will receive little to no distribution on account of their claims against the WMB Receivership and therefore are treated as allowed in full under the Plan | (See DS 22-25) |

| | | |
|---|---|---|
| | Fails to disclose the potential impact upon the Plan if the Bank Bondholders prevail in whole or in part in litigation, and the consequences to the GS and the Plan if the litigation is not concluded in the near term | (See DS 14) |
| | Fails to provide the Debtors' estimation of the value of the assets to be retained by the Reorganized Debtors following emergence, including the anticipated value of the equity interests in WMI Investment, WM Reinsurance Company, Marion Insurance Company, WaMu 1031 Exchange and the HFA Trust Estates and fails to disclose why the Debtors have determined to retain these assets rather than distributing them to stakeholders as they propose with the bulk of their other assets | (See DS 11-13) |
| | Fails to provide any basis for the retention of assets, the value of which is not disclosed, for the benefit of a subset of claimants (the holders of Allowed PIERS Claims) following the release of claims and cancellation of equity interests | (See DS 84-85) |
| IMPLEMENTATION OF THE PLAN | Fails to disclose whether the Debtors are obligated to pay any fees to the Backstop Purchasers in connection with the Rights Offering and if so, how much and on what basis? | (See DS 16, 104-07) |
| | Fails to disclose the value of the assets to be retained by the Reorganized Debtors, the par value of the stock in the Reorganized Debtors, the basis for limiting the Rights Offering to holders of Allowed PIERS Claims and the costs associated with the Rights Offering | Includes purported enterprise valuation for Reorganized WMI prepared by Blackstone Advisory Group |
| | Fails to identify the nature, amount and value of the Plan Contribution Assets | Exhibit G to the revised GS remains blank. |
| | Fails to disclose the identity of creditors and their professionals, the amounts of professional fees of certain creditors the Debtors propose to pay under § 42.18 of the Plan and the basis on which the Debtors are obligated to pay such fees | |

4

{00407655;v1}

| | | |
|---|---|---|
| | **Fails to include sufficient information concerning the claims and causes of action held by the estates** | *(See DS 3-9)* |
| | **Fails to provide an estimation of the value (or range of values) of the claims asserted by the Debtors in the D.C. Action and JPMC Adversary and the likelihood of recovery on those claims** | *(See DS 3-9, 41-44)* |
| LITIGATIONS AND INVESTIGATIONS | **Fails to disclose the nature of claims and causes of action assertable against parties to GS that would be resolved and the factors the Debtors considered before deciding to release such claims** | *(See DS 3-9, 41-44)* |
| | **Fails to disclose the published results, if any, of the investigations by the U.S. Senate Permanent Subcommittee on Investigations, U.S. Attorney for Western District of Washington, New York Attorney General, SEC and the Financial Fraud Enforcement Task Force** | Indicates that the U.S. Senate Permanent Subcommittee on Investigations publicly filed their report. Also indicates that the U.S. Dept of Treasury and FDIC publicly issued separate joint report (DS 59). |
| | **Fails to disclose why the proposed releases are necessary, fair and in the best interests of the Debtors' estates** | *(See DS 14, 119-20)* |
| | **Fails to disclose all parties the Debtors intend to release, whether the Debtors are aware of any claims assertable against such parties and the consideration such parties will provide to the estate in exchange for the Debtors' release** | Identifies "Released Claims," but not released parties (DS 118-20). |
| | **Fails to provide any analysis of the factors considered by the Debtors regarding the merit of the JPMC Claims** | *(See DS 13)* |
| RELEASES | **Fails to explain the Settlement Note Holders' participation in the GS or the Debtors' release of those parties under the Plan** | *(See DS 8-9, 118-19)* |
| | **Fails to identify the claims held by the Settlement Note Holders and whether the Settlement Note Holders are contributing any consideration to the estate in exchange for being released** | Exhibit C to the revised GS identifies the names of the Settlement Note Holders, but fails to identify the nature and amount of claims and equity interests comprised by the Settlement Note Holders. |
| | **Fails to provide adequate information about the propriety or specific details of any third-party release** | *(See DS 14, 119-20)* |

| IMPROPER CLASSIFICATION OF SIMILARLY SITUATED CREDITORS | Fails to justify the separate classification and disparate treatment of PIERS Claims, REIT Series, Preferred Equity Interests and Common Equity Interests | (See DS 25-28) |
|---|---|---|

{00407655;v1}