UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------------x
:
*In re* : Chapter 11
:
WASHINGTON MUTUAL, INC., et al.,[1] : Case No. 08-12229 (MFW)
:
Debtors. : (Jointly Administered)
:
: Re: Docket No. 3757
---------------------------------------------------------------x

## DEBTORS' OPPOSITION TO MOTION OF THE CONSORTIUM OF TRUST PREFERRED SECURITY HOLDERS TO COMPEL DEBTORS TO PRODUCE DOCUMENTS

Washington Mutual, Inc. ("WMI") and WMI Investment Corp., as debtors and debtors in possession (collectively, the "Debtors"), hereby submit this opposition to the Motion of the Consortium of Trust Preferred Security Holders ("TPS Consortium") to Compel Debtors to Produce Documents, filed on May 17, 2010 [D.I. 3757] (the "Motion"), and respectfully represent as follows:

### Preliminary Statement

1.  Late in the afternoon of Monday, May 17, just two (2) days before the Debtors' hearing on their proposed Disclosure Statement (as defined below), and without notice and without participating in a required "meet and confer," the TPS Consortium filed the Motion to compel expedited production of documents from Debtors relating to certain trust preferred securities. And, in an effort to further "jam" the Debtors, the TPS Consortium sought to have the Motion heard on shortened notice, providing the Debtors with less than twenty-four (24) hours to respond. The Motion and related request to shorten notice only serve to show that the TPS

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.

Consortium, not the Debtors, are engaged in "delay tactics" and "discovery gamesmanship," in an effort to delay the hearing on the Disclosure Statement and confirmation of the Plan (as defined below). The heart of this dispute centers on the TPS Consortium's refusal to sign a standard non-disclosure agreement ("NDA") to protect the confidentiality of documents initially requested through an informal document request. The TPS Consortium insisted on a revision to the NDA that would allow it to use confidential information so long as it uses its "best efforts" to file such information under seal. Such a revision renders confidentiality meaningless. As rewritten by the TPS Consortium, the revised NDA would provide no appropriate safeguard for the confidential information. The Debtors could not possibly take this risk by agreeing to the TPS Consortium's proposed terms.

2. Further highlighting its unreasonable posture, when it became apparent that the Debtors could not, and would not, agree to the TPS Consortium's uncustomary request with respect to the NDA, the TPS Consortium served a formal document request late in the day on May 11, 2010, and only gave the Debtors *two (2)* business days to respond. The formal document request sought twenty-nine (29) different types of documents (one request had 12 subparts), seventeen (17) additional types than the informal document request.[2] Such an unreasonable demand violates the Federal Rule of Civil Procedure 34(b)(2)(A), which grants a party *thirty (30)* days to respond to a discovery request unless a shorter time is stipulated by the parties or ordered by the court, both of which do not apply here.

3. While most parties in interest have been and should be able to assess the proposed Disclosure Statement and the Plan without making expedited document requests, the TPS Consortium complains that they need the requested documents immediately in order to

---

[2] A chart showing the requests set forth in the informal request and the formal request is attached to the Declaration of Vaughan Petherbridge as Exhibit 3.

C:\NRPORTBL\US_ACTIVE\NGA\43398758_7.DOC
RLF1 3572912v. 1

2

assess the reasonableness of the Plan and the proposed global settlement incorporated therein. Even if true, this analysis is properly conducted in the context of Plan confirmation and formulating objections thereto and, accordingly, the information is not needed immediately. The Debtors have proposed a confirmation hearing date of *July 20*, with objections due *June 25*. Moreover, the TPS Consortium could have avoided this dispute by agreeing to the reasonable terms of the NDA, which have been used by numerous other parties.

4. As set forth below, the facts show indisputably that the Debtors have cooperated with the TPS Consortium to provide the requested documents. Although the Debtors were willing to produce certain of the requested documents through an informal document request, they never agreed to hand over confidential documents without an NDA in place. At bottom, this Motion is really nothing but a thinly-disguised attempt to mask TPS Consortium's delay tactics and blame that delay on the Debtors. The Debtors should have the full length of time available pursuant to the Federal Rules of Civil Procedure to respond to the TPS Consortium's formal document request. While the Debtors may not necessarily need the full thirty (30) days, they should be afforded a sufficient length of time to respond to the TPS Consortium's requests, with proper confidentiality protections in place. Accordingly, the Motion for expedited discovery should be rejected in its entirety.

## Background

5. On April 26, 2010, counsel for the TPS Consortium emailed counsel for the Debtors for the first time with an informal document request. *See* Motion, Ex. B. The requested documents, totaling thirteen different types of documents, concern, among other things, the current status of certain trust preferred securities and the circumstances of the purported transfers of those securities to and from the Debtors. Motion at ¶ 6 and Ex. B.

6.     On April 29, 2010, counsel for the Debtors responded, stating that, once the requested documents were compiled, they would be made available on an IntraLinks website. In this correspondence, however, the Debtors made clear that, prior to being able to access the documents, the TPS Consortium would need to execute a confidentiality agreement (*i.e.*, the NDA). *See* Petherbridge Decl. Ex. 1 (Email from B. Rosen to S. Wissner-Gross). Later on the same day, the Debtors forwarded to counsel to the TPS Consortium a standard NDA that the Debtors have used on multiple occasions in these cases with little or no objection from other parties. *See* Motion, Ex. C. The Debtors submit that the terms of this form NDA are fairly standard, particularly with respect to the provisions regarding ability to use or disclose confidential information. Petherbridge Decl. at ¶ 10.

7.     The TPS Consortium sought two main revisions to the NDA. First, the NDA provided that, should counsel for the TPS Consortium intend to use confidential information in these bankruptcy cases, it must obtain the prior written consent of the Debtors or "obtain an order of the Bankruptcy Court to use such Confidential Information pursuant to the Federal Rules of Bankruptcy Procedure, including by seeking authorization to file the papers seeking such order under seal." *See* Motion, Ex. D at ¶ 11. The TPS Consortium wished to eviscerate the NDA by replacing the requirement to seek an order from the Bankruptcy Court with the mere requirement that it uses its "best efforts to obtain authority to file such information under seal." *See id.*

8.     Second, the TPS Consortium wanted to insert a new paragraph 12 to state that the TPS Consortium would retain the right to challenge any confidentiality designation and seek the Bankruptcy Court's determination that such information is not confidential. *See* Motion, Ex. D at ¶ 12. In the same paragraph, the TPS Consortium further wished to add that, if

it filed confidential information under seal, such filing would be without prejudice to its right to seek to unseal such documents. *Id.*

9. In the interest of cooperation, on May 7, 2010, the Debtors agreed to the TPS Consortium's proposed paragraph 12, which granted it the right to challenge the confidentiality of the documents. *See* Motion, Ex. H. at ¶ 12. The Debtors, however, did not agree to the "best efforts" revision, which, in effect, would have allowed the TPS Consortium to publicize confidential information without appropriate safeguards. *Id.* at ¶ 11.

10. Notwithstanding the fact that the NDA was not yet agreed to, on May 7, 2010, counsel for Debtors also communicated to counsel to the TPS Consortium that he "believe[d] WMI's general counsel [was] currently pulling together the applicable documents and that they [would] be ready early next week." Motion, Ex. H.

11. The TPS Consortium never responded to the Debtors' May 7, 2010 acceptance of the majority of its revisions to the NDA. Petherbridge Decl. at ¶ 8 and Ex. 2. Then, on May 11, 2010, without notice, the TPS Consortium served its First Request for Production of Documents (the "First Request"). Motion, Ex. A. In the First Request, the TPS Consortium demanded production of the requested documents on May 14, 2010 at 9:00 a.m. in Boston, Massachusetts—a mere two (2) business days after the First Request was served. *Id.* The First Request sought production of twenty-nine different types of documents, or seventeen additional types than what was requested in the informal document request. Petherbridge Decl. at ¶ 9.

12. On May 14, 2010, the Debtors served its response and objection to the First Request. Motion, Ex. I. As an initial matter, the Debtors noted that Federal Rule of Civil Procedure 34(b)(1) provides in pertinent part that a request must specify a reasonable time, place,

and manner for inspection and for the performing of related acts. *Id.* Specifically, Rule 34(b)(2)(A) provides that the "party to whom the request is directed must respond in writing within 30 days after being served. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court." *Id.* The Debtors responded that they had not been asked to nor agreed to expedited discovery and the Bankruptcy Court had not entered an order requiring expedited discovery. *Id.* Therefore, the Debtors would be required to respond to the First Request on June 10, 2010. The Debtors further noted that the timing associated with the production request was "even more absurd in light of the TPS Consortium's participation in the Debtors' chapter 11 cases, their retention of counsel and their ability to have proceeded in a more timely manner." *Id.*

13. At 5:44 p.m. on Friday, May 14, counsel for TPS Consortium emailed to the Debtors a letter concerning the Debtors' response and objection to the First Request. Motion, Ex. J. TPS Consortium states that it "attempted to resolve this issue amicably today, but have not heard back." *Id.* The letter goes on to demand that the requested documents be produced "immediately." *Id.*

14. The next business day, Monday, May 17, again without notice or warning, the TPS Consortium filed the Motion, requesting the Court compel the Debtors to immediately produce documents. For the reasons set forth below, the Debtors believe the Motion is untimely and unwarranted, and request that the Court deny it in its entirety.

## Argument

15. As the foregoing facts suggest, the TPS Consortium—not the Debtors—delayed the production of the documents by (1) refusing to sign a standard NDA and (2) by

delaying the service of a formal document request. Even if Debtors accept as true[3] the TPS Consortium's claim that the requested documents are "critical to an informed assessment of the Plan and Global Settlement in connection with the Disclosure Statement," Motion at ¶ 19, the TPS Consortium has no one to blame but itself for the self-engineered delay in the document production.

16. First, the Debtors had cooperated since April 26, 2010—when the TPS Consortium first made its informal document request—by agreeing to provide certain of the requested documents so long as an NDA was signed. When the TPS Consortium objected to the NDA, the form of which has been used by numerous other parties in interest with little or no objections, the Debtors further accommodated the TPS Consortium by agreeing substantially to all of their requested revisions to the NDA. The Debtors, however, would not accede to one revision that would allow the TPS Consortium to use confidential information in these bankruptcy cases upon a mere showing that it used its "best efforts" to file the confidential documents under seal. In effect, as rewritten by the TPS Consortium, confidential information may be publicized in court filings as long as TPS Consortium tried to obtain permission to file such information under seal. Such a diluted NDA is virtually meaningless, and the TPS Consortium offers no explanation as to why it sought such an unreasonable revision, other than to make the baseless claim that the Debtors used a "non-standard" NDA.[4] *See* Motion at ¶ 2. As

---

[3] The Debtors expressly reserve all of their rights to fully respond to the First Request, including on grounds of relevance.

[4] TPS Consortium also claims that it was willing to abide by the protective order entered by this Court on February 18, 2010 [Adv. Proc. No. 09-50551, D.I. 179]. Motion at ¶ 2. But that protective order applies to parties in that adversary proceeding, and TPS Consortium is not a party. Its insistence on using a non-applicable protective order further shows its stall tactics.

discussed, the NDA was used and signed by numerous parties in interest seeking similar confidential information. Petherbridge Decl. at ¶ 10.

17. Second, a further indication that TPS Consortium is using this Motion to compensate for its own delay is that it gave the Debtors only *two* business days to respond to the First Request. As counsel for the TPS Consortium would surely have known, under Federal Rule of Civil Procedure 34(b)(2)(A), a party has 30 days to respond to a document request unless a shorter time is stipulated by the parties or ordered by the court. The Debtors did not agree to a shorter time, and the Bankruptcy Court has not ordered production on an expedited basis. Yet, the TPS Consortium made the unreasonable demand in clear violation of the Rule 34(b)(2)(A). Its only explanation for making this unreasonable demand is that the Debtors allegedly represented that they would have the requested documents ready by the week of May 10th. Motion at ¶ 13. But, that is not true. As the TPS Consortium's Exhibit H shows, counsel for the Debtors only stated that he *believed* that WMI was gathering the documents and would be ready by next week. Compounding the unreasonableness of its demand, TPS Consortium did not simply convert the informal document request into a more formal format; TPS Consortium requested an additional *seventeen* types of documents and still expected the Debtors to produce in two business days.

18. As the Debtors' response to the First Request noted, the TPS Consortium's expedited demand is "absurd" in light of the fact that the TPS Consortium has been participating in these bankruptcy cases all along. The TPS Consortium could have filed its document request much earlier, but it inexplicably waited until April 26, 2010 to make its first informal request for documents. Rather than taking responsibility for its own delay, the TPS Consortium blames the Debtors for rightfully using the time allotted to them by the Federal Rules of Civil Procedure to

respond to the First Request. And, when the Debtors responded to the First Request, the TPS Consortium sent a letter to counsel for the Debtors at 5:44 p.m. on a Friday, May 14 to demand production "immediately." Motion, Ex. J. The very *next* business day, Monday, May 17, the TPS Consortium filed its Motion, claiming that it had tried to "confer" with the Debtors. Motion at ¶ 15. As the timeline of TPS Consortium's actions show, its so-called efforts at "meet and confer" fall well below the standard imposed by Federal Rules of Civil Procedure 37(a)(1) and this Court's Local Rule 7026-1, both of which require a movant to in good faith confer or attempt to confer with the other party prior to filing a motion to compel.

19. Lastly, the TPS Consortium does not meet the legal standard for expedited discovery. "[D]istrict courts in [the Third Circuit] have used one of two standards to evaluate motions for expedited discovery"—the *Notaro* standard and the reasonableness standard. *Entm't Tech. Corp. v. Walt Disney Imagineering, et al.*, No. Civ.A. 03-3546, 2003 WL 22519440 at *2 (E.D. Pa. Oct. 2, 2003) (denying motion for expedited discovery and to shorten time to respond); *BAE Systems Aircraft Controls, Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 587 (D. Del. 2004) (denying plaintiff's motion for expedited discovery under either *Notaro* or reasonableness standard).[5] The TPS Consortium has met neither standard.

20. Under the *Notaro* standard, the moving party must demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the

---

[5] Because the TPS Consortium cannot meet the standard for expedited discovery, not surprisingly, it cited to non-Third Circuit case law in the Motion. The only Third Circuit case cited by the TPS Consortium has nothing to do with expedited discovery and merely stands for the unremarkable proposition that "the conduct of discovery is also committed to the sound discretion of the district court." *Stich v. U.S.*, 730 F.2d 115, 117-18 (3d Cir. 1984) (affirming district court's denial of plaintiff's access to data underlying an article written by the government's expert).

defendant will suffer if the expedited relief is granted." *Id.* (quoting *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)).

21. Here, the TPS Consortium fails to show injury, let alone "irreparable injury." Although it claims that the requested documents are "critical" to its assessment of the Disclosure Statement and the Plan, the TPS Consortium does not demonstrate any irreparable injury that would befall it if the Debtors respond by June 11, 2010, the window of time permitted by the Federal Rules of Civil Procedure. Thus, TPS Consortium is different from the moving parties in the cases it cited, which all involved irreparable harm. *See Integra Bank N.A. v. Pearlman*, No. 6:06-CV-01952-PCF-DAB, 2007 WL 419634 at *3 (M.D. Fla. Feb. 2, 2007) ("documents may be *altered or destroyed* if access is not provided") (emphasis added); *Monsanto Co. v. Woods*, 250 F.R.D. 411, 413 (E.D. Mo. 2008) ("passage of time alone could make it *impossible to collect* relevant evidence") (emphasis added); *Arista Records, L.L.C. v. Does 1-54*, No. 4:08-CV-1289, 2008 WL 4104563 at *1 (E.D. Mo. Aug. 29, 2008) ("repeated unauthorized copying of . . . copyrighted material.").

22. The TPS Consortium fares no better under the reasonableness standard. Under the reasonableness standard, a court decides a motion for expedited discovery "on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances[.]" *Entm't Tech. Corp.*, 2003 WL 22519440 at *2 (quoting *Merrill Lynch et al. v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000)).

23. As set forth above, the "entirety of the record to date" illustrates that the Debtors had cooperated with TPS Consortium to provide the requested documents so long as a standard and reasonable NDA was signed to protect confidential information. TPS Consortium's pattern of behavior—insisting on a diluted NDA; demanding that the Debtors respond in *two*

business days to the First Request in violation of the Federal Rules of Civil Procedure; and now filing this Motion for expedited discovery on the basis of a delay that it self-engineered—is patently unreasonable "in light of all the surrounding circumstances." *See id.* The TPS Consortium's Motion should be rejected.

### Conclusion

For the foregoing reasons, the Debtors respectfully request that the Court deny the Motion in its entirety.

Dated: May 19, 2010
       Wilmington, Delaware

                              /s/ Chun I. Jang
                              Mark D. Collins (No. 2981)
                              Chun I. Jang (No. 4790)
                              RICHARDS, LAYTON & FINGER, P.A.
                              One Rodney Square
                              920 North King Street
                              Wilmington, DE 19801
                              Telephone: (302) 651-7700
                              Facsimile: (302) 651-7701
                                    – and –
                              Marcia L. Goldstein, Esq.
                              Brian S. Rosen, Esq.
                              John P. Mastando III, Esq.
                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York 10153
                              Telephone: (212) 310-8000
                              Facsimile: (212) 310-8007

                              ATTORNEYS TO THE DEBTORS
                              AND DEBTORS IN POSSESSION