# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WASHINGTON MUTUAL, INC., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-12229 (MFW)<br><br>(Jointly Administered)<br><br>**Requested Hearing Date: June 3, 2010 at 10:30 a.m. (ET)**<br>**Requested Obj. Deadline: May 27, 2010 at 4:00 p.m. (ET)** |

## THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS' PETITION, PURSUANT TO 11 U.S.C. § 105(a), 28 U.S.C. § 158(d)(2), AND FED. R. BANKR. P. 8001(f), FOR CERTIFICATION OF DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT OF ITS APPEAL FROM ORDER DENYING APPOINTMENT OF AN EXAMINER

The Official Committee of Equity Security Holders (the "Equity Committee") hereby respectfully requests (the "Certification Request"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, et seq. (the "Bankruptcy Code"), 28 U.S.C. § 158(d)(2), and Rule 8001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the entry of an order certifying its appeal of this Court's *Order Denying Motion and Supporting Memorandum of the Official Committee of Equity Security Holders for the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code*, entered on May 5, 2010 [D.I. 3663] (the "Order"),[2] for direct appeal to the United States Court of Appeals for the Third Circuit (the "Third Circuit"), and in support thereof, respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Washington Mutual, Inc. (3725) and WMI Investment Corp. (5396). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

[2] A copy of the Order is attached hereto as Exhibit A.

## BACKGROUND

1.  The Court is familiar with the factual background of this matter as presented in the *Motion and Supporting Memorandum of the Official Committee of Equity Security Holders for the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* (the "Motion") [D.I. 3579], which is expressly incorporated in its entirety herein.[3] To avoid unnecessary repetition, the Equity Committee limits its discussion herein to certain material facts.

2.  Following commencement of the bankruptcy case, the Debtors themselves identified and asserted a variety of legal claims against JPMorgan Chase Bank, N.A., the Federal Deposit Insurance Corporation, and others, related to or stemming from the takeover and sale of Washington Mutual Bank to JPMorgan Chase Bank, N.A., including the DC Action,[4] the JPMC Adversary Litigation, and the Turnover Action, that, if successful, would add many billions of dollars of value to the estate.

3.  As recently as December 2009 and continuing through a hearing in this Court on January 29, 2010, the Debtors represented that they needed an extensive array of additional information from third parties in order to fully identify and assess the strength and worth of claims already asserted and also other potential claims.

4.  The Debtors have not obtained the information they told the Court they needed to conduct that investigation, other than limited information voluntarily provided the Debtors by unidentified parties.

5.  Additional information highly relevant to the collapse of WMI and the seizure and

---

[3]  A copy of the Motion (without exhibits) is attached hereto as Exhibit B.

[4]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

sale of WMB continues to become available with each passing week, including material information disclosed by the Senate Permanent Subcommittee on Investigations and the inspectors general of the Department of Treasury and the FDIC.

6. The Debtors have recently proposed a Plan of Reorganization constructed around a proposed global settlement (the "Global Settlement Agreement") that is still being negotiated but that in its current form would compromise and release the multi-billion dollar claims that the Debtors have identified to date, without the benefit of further investigation.

7. It is not apparent that the Debtors have conducted any meaningful investigation of claims against JPMorgan Chase Bank or potential claims against their own officers, directors, and employees, or that they intend to investigate the existence of causes of action against other third parties who may have played material roles in WMI's failure.[5] The current terms of the Global Settlement Agreement can only be read to support the Equity Committee's conclusion in this regard.[6]

---

[5] Facts and recent findings supporting the Equity Committee's view that substantial and viable legal claims against JPMorgan Chase Bank, N.A., the Federal Deposit Insurance Corporation, and other parties exist and should be pursued as the largest remaining assets of these Chapter 11 estates are set forth in detail in the Motion and are expressly incorporated herein, along with a summary of the Debtors' proposed Global Settlement Agreement which, *inter alia*, would release these same claims.

[6] In fact, the terms of the Global Settlement Agreement in its current form require the Debtors' agreement, as soon as practicable following the agreement's effective date, (i) to withdraw the "Record Requests," which are defined to include the Debtors' December 15, 2009 requests for information under the Freedom of Information Act and for FDIC Exempt Records and Information, and (ii) to " ... waive any rights that they may have to administrative appeals or litigation with respect to the Record Requests." The Global Settlement Agreement in its current form also provides for the "FDIC Order of Investigation" to be deemed withdrawn with prejudice on the agreement's effective date. The "FDIC Order of Investigation" is defined as "... any Order of Investigation (or similarly titled investigative or regulatory action or proceeding), issued or commenced by, or in the name of, the FDIC Receiver or FDIC Corporate (as the case may be) pursuant to the Federal Deposit Insurance Act, as amended ..." and includes, any actual or potential investigation based upon, arising from, or in connection with the acts of former officers, directors, advisors and service providers of WMB or FSB. This definition expressly contemplates, among other subject matters, any investigation of: compliance or non-compliance

8. On April 26, 2010, the Equity Committee filed the Motion seeking appointment of an examiner pursuant to section 1104(c) of the Bankruptcy Code. Section 1104(c) of the Bankruptcy Code provides that in a case such as this one, with liquidated, unsecured debts exceeding $5,000,000, the Court "shall" appoint an examiner on the motion of any party in interest or the U.S. Trustee. 11 U.S.C. § 1104(c). Even if that mandatory standard did not exist, appointment of an examiner would still be in the best interests of the estate, particularly at this pivotal juncture in the course of the bankruptcy case.

9. A hearing on the Motion was held on May 5, 2010 (the "Hearing"). After hearing extensive argument in support of and in opposition to the relief sought in the Motion, the Court denied the Motion for the reasons stated in its oral ruling (the "Ruling")[7] and entered the Order denying the relief sought in the Motion. That Order is a final order pursuant to Third Circuit law.[8]

10. On May 19, 2010, the Equity Committee filed a timely notice of appeal with

---

with applicable banking laws, rules and regulations; fraudulent practices relating to WMB's retail banking, mortgage lending, small business lending and credit card operations and activities; the capitalization or under-capitalization of WMB; improper payment of dividends or other payments by WMB or FSB; and any general allegations of fraud, breach of duty, or gross negligence.

[7] A copy of the transcript of the May 5, 2010 hearing is attached hereto as Exhibit C.

[8] Courts addressing "finality" of orders have determined that "final" orders are ones that "completely resolve all the issues pertaining to a discrete claim." See, e.g., In re Integrated Resources, Inc., 3 F.3d 49, 53 (2d Cir. 1993). In addition, the Third Circuit has opined that "a finality determination in a bankruptcy appeal involves consideration of such factors as 'the impact of the matter on the assets of the bankruptcy estate, the preclusive effect of a decision on the merits, and whether the interest of judicial economy will be furthered.'" In re Marvel Entertainment Group, Inc., 140 F.3d 463, 470 (3d Cir. 1998) (citations omitted). In Marvel, the Third Circuit held that an order appointing a Chapter 11 trustee is a final, appealable order. Marvel, 140 F.3d 470-71. In addition, courts in other jurisdictions have held that orders denying appointment of trustees or examiners are final orders. In re Keene Corp., 166 B.R. 31 (Bankr. S.D.N.Y. 1994) (order denying appointment of examiner or trustee conclusively resolves a contested matter under 11 U.S.C § 1104 and is final); Morgenstern v. Revco D.S., Inc. (In Revco D.S., Inc.), 898 F.2d. 498, 499 (6th Cir. 1990) (court's decision denying appointment of examiner a final order).

respect to the Order.

## JURISDICTION AND VENUE

11. This Court has jurisdiction to consider the Certification Request pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

12. The Equity Committee respectfully requests the entry of an order, pursuant to 11 U.S.C. § 105(a), 28 U.S.C. § 158(d)(2), and Bankruptcy Rule 8001(f), certifying its appeal from the Order for direct appeal to the Third Circuit.[9]

## BASIS FOR RELIEF REQUESTED

A. **Certification Is Mandatory if Any Single Circumstance of Those Enumerated in 28 U.S.C. § 158(d)(2)(A) Exists**

13. In 2005, Congress streamlined bankruptcy appeals to enable expedited access to the United States Circuit Courts of Appeal by enacting 28 U.S.C. § 158(d)(2)(A). Section 158(d)(2)(A) provides that if either of the parties consent or the bankruptcy or district court so certify, an appeal from a judgment or order may be taken directly to the governing United States Circuit Court of Appeals when any of the following three circumstances are met:

  (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

  (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

---

[9] A certification motion under 28 U.S.C. § 158(d)(2) must be filed in the court where the matter is pending. Until an appeal is docketed in the district court, the matter remains pending in the bankruptcy court. Fed. R. Bankr. P. 8001(f)(2)-(3). A certification motion must be made not later than 60 days after entry of the order from which the appeal is taken. 28 U.S.C. § 158(d)(2)(E).

{00407667;v1}                                                    5

(iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken ...

28 U.S.C. § 158(d)(2)(A).

14. Congress enacted this procedure to address problems related to the "time and cost factors attendant to the [prior] appellate system ..." House Rep. No. 109-13, Pt. 1, 109th Cong. 1st Sess. 148-49 (2005). Particularly, Congress was concerned with the fact that "decisions rendered by district courts as well as the appellate panel are generally not binding and lack stare decisis value." Id.

15. To that end, certification is mandatory in the presence of any *single* circumstance of the circumstances enumerated in section 158(d)(2)(A). See, e.g., 28 U.S.C. § 158(d)(2)(B) (providing that if a bankruptcy court "on its own motion or on the request of a party, determines that a circumstance specified in clause (i), (ii), or (iii) of subparagraph (A) exists ... then the *bankruptcy court ... shall* make the certification described") (emphasis added); Simon & Schuster, Inc. v. Advanced Marketing Servs., Inc., 360 B.R. 429, 433 (Bankr. D. Del. 2007) (noting court "must issue a certification of it determines the order ... involves ... (1) a question of law upon which there is no controlling decision of the Third Circuit or of the Supreme Court ...; (2) a matter of public importance; or (3) a question of law requiring resolution of conflicting decisions" or it determines that a direct appeal will materially advance the case).

**B. This Court's Ruling Resolved Issues of First Impression For Which There Are No Controlling Third Circuit or Supreme Court Decisions**

16. This Court, in its oral Ruling, addressed an issue of first impression in the Third Circuit: whether section 1104(c) of the Bankruptcy Code mandates appointment of an examiner on a motion by an interested party where unsecured debts exceed $5,000,000. As the Court stated at the May 5, 2010 hearing:

> I do believe that 1104(c)(2) gives the Court some discretion, even if the debt level is reached, and the discretion is that the Court has the discretion to determine what appropriate investigation of the debtor should occur and that, if the Court determines that there's no appropriate investigation that needs to be conducted, the Court has the discretion to deny the appointment of an examiner.

5/5/10 Hr'g Tr. 97:6-13.

17. As set forth in the Debtors' papers opposing the Motion, this Court's Ruling is certainly consistent with this district's long held view that even if the debt threshold of section 1104(c)(2) is met, appointment of an examiner is not mandatory but rather is discretionary. See, e.g., U. S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion, Inc.), Case No. 09-10960 (KJC), 2010 WL 1292837, at *8 (Bankr. D. Del. Apr. 1, 2010) (concluding that appointment of an examiner pursuant to section 1104(c)(2) only is warranted if the Court finds evidence of conduct that would make an investigation of the debtors appropriate); In re HSH Delaware GP LLC, Case No. 10-10187 (MFW) (Bankr. D. Del. Apr. 23, 2010) (Walrath, J.), Hr'g Tr. 31:18-22 ("I do agree that there is some discretion in 1104(c)(2) that the Court must exercise, not only in determining whether the amount of the unsecured non-trade debt but also in determining whether, in fact, any investigation is appropriate."); In re Magna Entm't Corp., Case No. 09-10720 (MFW) (Bankr. D. Del. Apr. 20, 2010) 13:4-14:14, 14:22-23 (declining to appoint an examiner, notwithstanding the fact that the debt threshold had been met); see also In re IdleAire Techs. Corp., Case No. 08-10960 (KG) (Bankr. D. Del. June 13, 2008) (Gross, J.), Hr'g Tr. 45:11-14 ("I don't think it is mandatory based upon my reading of the legislative history, and just as the parties have pointed out, the language of the statute itself and particularly, the as appropriate clause."); In re Am. Home Mortgage Holdings, Inc., Case No. 07-11047 (CSS) (Bankr. D. Del. Oct. 31, 2007) (Sontchi, J.), Hr'g Tr. 76:9-16 ("I think the financial criteria are important, and obviously, they're met in this case, but that's only one piece of the puzzle, and the

other piece of the puzzle is that there has to be an investigation to perform that's appropriate ... I think that's a more nuance approach than sort of saying it is what it is, and if you cry 'examiner' in a crowded case, you get one."; In re SA Telecomms., Inc., Case Nos. 97-2395 through 97-2401 (PJW) (Bankr. D. Del. Mar. 27, 1998) (Walsh, J.), Hr'g Tr. 23:16-18 ("[T]his Court has for years consistently viewed [§]1104(c)(2) as not being a mandatory provision."); In re Webcraft Techs., Inc., Case No. 93-1210 (HSB) (Bankr. D. Del. Nov. 4, 1993) (Balick, J.), Hr'g Tr. 104:3-19 (stating that appointment of an examiner is not mandatory even where the debt threshold is satisfied); see also In re ACandS, Inc., Case No. 02-12687 (Bankr. D. Del. Dec. 19, 2002) (Newsome, J.), Order [Docket No. 234] (effectively refusing to appoint examiner by ordering that the "examiner is not to perform any task or take up any duty or in any way perform any work or incur any cost to the estate without further order of this Court.").

18. However, many courts throughout the country enforce a conflicting interpretation of section 1104(c), holding that in cases such as this one, with unsecured debts exceeding $5,000,000, the statute indicates that the court "shall" appoint an examiner on a motion by an interested party. Id. In light of this language, courts have routinely held that appointment of an examiner is mandatory in such circumstances. See, e.g., In re Revco D.S., Inc., 898 F.2d 498, 500-01 (6th Cir. 1990) ("[Section 1104(c)(2)] plainly means that the bankruptcy court 'shall' order the appointment of an examiner when the total fixed, liquidated, unsecured debt exceeds $5 million if the U.S. trustee requests one."); In re Walton, 398 B.R. 77, 80-83 (Bankr. N.D. Ga. 2008); In re Vision Development Group of Broward County, LLC, 2008 W.L. 2676827, *3 (Bankr. S.D. Fla. 2008); In re UAL Corp., 307 B.R. 80, 83-86 (N.D. Ill. 2004) ("best reading of the statute" is that appointment of an examiner is mandatory if the requirements of section 1104(c)(2) are satisfied); Loral, 2004 WL 2979785 at *5 (reversing Bankruptcy Court's decision

denying appointment of examiner where $5 million debt threshold under section 1104(c)(2) was met and parties seeking appointment had standing to do so). See also, In re Mechem Fin. Of Ohio, Inc., 92 B.R. 760, 761 (Bankr. N.D. Ohio 1988); In re The Bible Speaks, 74 B.R. 511, 514 (Bankr. D. Mass. 1987); In re 1243 20th Street, Inc., 6 B.R. 683, 685 n.3 (Bankr. D.C. 1980); In re Lenihan, 4 B.R. 209, 211 (Bankr. D. R.I. 1980).

19. The Equity Committee is aware of no decision from either the Third Circuit or the U.S. Supreme Court that has examined or decided the issue addressed in the Order. No parties have disputed that there is a lack of controlling law on this issue in the Third Circuit. That fact *alone* warrants certification of the Equity Committee's appeal, as the factors enunciated in section 158(d)(2) are listed disjunctively. Thus, the satisfaction of this one factor should end the inquiry and require certification of the Equity Committee's appeal.

20. The Equity Committee further asserts that certification of this question of law is especially appropriate where, as here, protections intended by Congress may be denied by virtue of what the Equity Committee believes is a matter of statutory misinterpretation. Congress provided for the appointment of an examiner in the Bankruptcy Code as an extra measure for protection for stockholders of public corporations. See In re Gilman Servs., Inc., 46 B.R. 322, 327 (Bankr. D. Mass. 1985) (discussing legislative history of the examiner statute); In re Loral Space Communications, 2004 WL 2979785, *4 (S.D.N.Y. Dec. 23, 2004) (same). Here, the express statutory conditions for an appointment under section 1104(c) are plainly satisfied, but the protections afforded by the statute were denied based on a statutory reading allowing discretion. As set forth in the two lines of cases cited above, there is clear disagreement among courts on the correct interpretation of the statute. The Equity Committee's appeal is thus ideal for certification for direct appeal to the Third Circuit through the mechanism provided in 28

U.S.C. § 158(d)(2).

21. Even if the Equity Committee is incorrect in its interpretation of section 1104(c)(2), certification of direct appeal to the Third Circuit is still appropriate. Even assuming this Court retains some narrow band of discretion to decline to appoint an examiner "as is appropriate", the Equity Committee respectfully asserts that there are no legitimate grounds on which to deny appointment of an examiner under the facts of *these* Chapter 11 cases, and therefore, Third Circuit guidance with respect to exercising such discretion is clearly needed.

22. In these Chapter 11 cases, an examiner would provide an objective, nonadversarial perspective on relevant transactions and events as guidance for interested parties to subsequently pursue relevant claims, in line with Congressional intent. In re Fibermark, Inc., 339 B.R. 321, 325 (Bankr. D. Vt. 2006). Substantial multi-billion dollar claims, which the Debtors and Creditors' Committee lack incentive to investigate, form the Debtors' most valuable remaining assets. The terms of a proposed Global Settlement Agreement, which would dispose of these assets altogether, have been presented to the Court, and that agreement is being actively pursued by the Debtors and Creditors' Committee, among other parties. Yet there remain "allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor" which have not been meaningfully investigated[10] and which fall expressly within the language and intent of the statute. 11 U.S.C. § 1104(c). Indeed, this case contains the very hallmarks of a reorganization process for which guidance to parties in interest with respect to

---

[10] The Equity Committee notes that the current draft of the Global Settlement Agreement requires the Debtors to withdraw the Record Requests (as defined in the Preamble to the Settlement) and waive their rights to pursue administrative appeals in connection therewith. See Global Settlement Agreement at 34, ¶ 2.5(c). Such a withdrawal supports the Equity Committee's assertion that the Debtors have not examined potential claims against JPMorgan Chase Bank, N.A. and Federal Deposit Insurance Company.

relevant claims is desperately needed, and for which relief has been expressly afforded by Congress under the Bankruptcy Code.

23. That the Motion seeking relief under section 1104(c) was denied under the facts of *this* case only serves to highlight the need for Third Circuit guidance as to factors to be considered in exercising discretion, if any exists, with respect to section 1104(c). Indeed, such guidance is critical to preserving the statutory protections afforded by Congress in the Bankruptcy Code.

24. In the absence of any authority from the U.S. Supreme Court or the Third Circuit, the certification for direct appeal is not only mandatory, but necessary and appropriate. See, e.g., Tidewater Finance Company v. Kenney, 2008 WL 2514194 *2 (4th Cir. June 25, 2008) (accepting direct appeal of bankruptcy court order because there was no controlling decisions on issue of whether secured lender had a deficiency claim under chapter 13 provisions); Ad Hoc Group of Timber Noteholders v. The Pacific Lumber Company (In re Scotia Pacific Company LLC), 508 F.3d 214 (5th Cir. 2007) (accepting certification of bankruptcy court order in absence of controlling decisions interpreting 2005 BAPCPA amendments concerning single-asset real estate cases); Perlin v. Hitachi Capital America Corp., 497 F. 3d 364, 367 (3d Cir. 2007) (accepting certification of creditor's appeal of bankruptcy court order denying motion to dismiss chapter 7 case as bad faith filing; appeal examined 2005 BAPCPA's amendments' substantial modifications to Bankruptcy Code section 707(b)). Thus, the Equity Committee's appeal must be certified for direct appeal to the Third Circuit pursuant to 28 U.S.C. § 158(d)(2)(A)(i).

C. **The Ruling Involves a Matter of "Public Importance"
Concerning A Critical Aspect of Bankruptcy Code Protection**

25. 28 U.S.C. § 158(d)(2) does not articulate the precise meaning of "public importance." Courts consider an issue to be of "public importance" if it affects debtors generally

or creates the prospect of divergent authority. See, e.g., In re Ransom, 380 B.R. 809 (9th Cir. BAP 2007) (granting certification of issue because of number of debtors potentially affected); In re Virissimo, 332 B. R. 208, 209 (Bankr. D. Nev. 2005) (certifying appeal of order where issue it addressed was "one which will recur in Nevada as well as other districts ... and will impact the administration of bankruptcy estates until the issue is ultimately decided").

26. As set forth above, Congress provided for the appointment of an examiner in the Bankruptcy Code as an extra measure of protection for stockholders of public corporations. See In re Gilman, 46 B.R. at 327 (discussing legislative history of the examiner statute); In re Loral Space Communications, 2004 WL 2979785, *4 (S.D.N.Y. Dec. 23, 2004) (same). Thus, the statutory requirements for appointment of an examiner under section 1104(c) presents an issue that affects all debtors generally and that will impact the administration of bankruptcy estates in Delaware until the issue is addressed by the Third Circuit.

27. Moreover, the fact that there is no controlling law in the Third Circuit or the Supreme Court governing the correct interpretation of section 1104(c) certainly creates the prospect for divergent authority. Whether discretion exists under section 1104(c) is an issue central to statutory interpretation, and other courts have reached a different result. Moreover, as set forth above, even if the Equity Committee is wrong in its interpretation of section 1104(c), and discretion is provided for under the statute, Third Circuit guidance with respect to the appropriate factors to be considered in exercising discretion to decline to appoint an examiner is still needed, and is critical to preserving the protections afforded by Congress. The Third Circuit is in the best position to ensure that a mechanism for an independent examination is safeguarded and available to parties in interest as Congress intended. Such a matter clearly falls under any definition of a matter of "public importance."

28. Indeed, the Ruling affects any creditor or party in interest in Chapter 11 cases seeking to avail itself of the protections afforded by section 1104(c) in the District of Delaware. Because this Court decided a matter of first impression, the Order and any subsequent appellate decision will strongly influence other courts examining these issues. Accordingly, the Equity Committee's appeal presents an issue of sufficient "public importance" to warrant certification for a direct appeal to the Third Circuit.

D. **Direct Appeal to the Third Circuit Will Materially Advance The Chapter 11 Cases**

29. The Equity Committee's ability to pursue a direct appeal of the Order will materially advance these Chapter 11 cases. The opportunity to seek appointment of an examiner, if such relief is granted, will provide parties in interest with an objective investigation of both the claims and causes of action asserted by the Debtors against third parties that they now propose to compromise without sufficient investigation, as well as additional, as yet unasserted, claims and causes of action against other third parties. This will allow all parties to determine whether the Debtors propose to compromise very valuable claims (perhaps in the range of multiple billions of dollars) in exchange for insufficient consideration in the context of the proposed Global Settlement Agreement and Plan.

30. As noted by the Office of the United States Trustee (the "UST") in its response in support of the Equity Committee's Motion [D.I. 3628] (the "UST Response"), "the examiner's work product – the independent, publicly available report – may also serve as a catalyst for the negotiation and resolution of plan-related issues by establishing an objective, reliable reference point for discussion among parties in interest." UST Response at ¶ 6. As also noted by the UST, there is a great deal of value in having a clear, unbiased narrative of why the company ended up in Chapter 11 and the Equity Committee's proposed examination includes key parts of the

Debtors' story. See id.

31.  As also noted by the UST, the Chapter 11 cases presently "appear to be headed for protracted litigation between equity security holders and the settling parties on a range of issues in more than one forum. The costs stemming from the involvement of multiple constituencies in such litigation will likely be taxing." Id. at ¶ 7. Direct certification of the appeal and swift appointment of an examiner, if granted, will no doubt aid in the proper resolution of these cases and reduce the time and expense to all parties of pending litigation.

32.  Moreover, given the dollar amounts at stake and the nature of the allegations and claims, a Third Circuit appeal may be inevitable. Even if the appeal were to proceed in the United States District Court for the District of Delaware, the grave importance of these issues suggests the non-prevailing party would further appeal any adverse ruling to the Third Circuit. To that end, a direct appeal removes what might very well be an intermediate step on the path to the Third Circuit.

## NOTICE

33.  Notice of this Motion has been given via hand delivery or overnight mail to the (i) Office of the United States Trustee; (ii) counsel to the Debtors; and (iii) counsel to the Official Committee of Unsecured Creditors; (iv) counsel to the Bank Bondholders; (v) counsel to JPMorgan Chase Bank, N.A.; (vii) counsel to Federal Deposit Insurance Corporation, and (viii) counsel to Washington Mutual Inc. Noteholders Group. The Equity Committee submits that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Equity Committee respectfully requests that the Court (i) enter an order granting the Certification Request substantially in the form of order attached hereto as

Exhibit D, and (ii) grant such other and further relief that the Court deems necessary and appropriate.

Dated: May 19, 2010

ASHBY & GEDDES, P.A.

/s/ 

William P. Bowden (DE Bar No. 2553)
Gregory A. Taylor (DE Bar No. 4008)
Amanda M. Winfree (DE Bar No. 4615)
Stacy L. Newman (DE Bar No. 5044)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile : (302) 654-2067
E-mail: wbowden@ashby-geddes.com
gtaylor@ashby-geddes.com
snewman@ashby-geddes.com

*Delaware Counsel to the Official Committee of Equity Security Holders of Washington Mutual, Inc., et al.*

-and-

**SUSMAN GODFREY, L.L.P.**
Stephen D. Susman (NY Bar No. 3041712)
Seth D. Ard (NY Bar No. 4773982)
654 Madison Avenue, 5th Floor
New York, NY 10065
E-mail: ssusman@susmangodfrey.com
sard@susmangodfrey.com

Parker C. Folse, III (WA Bar No. 24895)
Edgar Sargent (WA Bar No. 28283)
Justin A. Nelson (WA Bar No. 31864)
1201 Third Ave., Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
E-mail: pfolse@susmangodfrey.com
esargent@susmangodfrey.com
jnelson@susmangodfrey.com

*Proposed Co-Counsel for the Official Committee of Equity Security Holders of Washington Mutual, Inc., et al.*