UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

----------------------------------------------------------------x
                                                                :
*In re*                                                         :    Chapter 11
                                                                :
WASHINGTON MUTUAL, INC., et al.,[1]                             :    Case No. 08-12229 (MFW)
                                                                :
        Debtors.                                                :    (Jointly Administered)
                                                                :
                                                                :    Re: Docket No. 3929
----------------------------------------------------------------x

**DEBTORS' OBJECTION TO THE OFFICIAL COMMITTEE
OF EQUITY SECURITY HOLDERS' PETITION PURSUANT TO
11 U.S.C. § 105(a), 28 U.S.C. § 158(d)(2) AND FED. R. BANKR. P. 8001(f),
FOR CERTIFICATION OF DIRECT APPEAL TO THE UNITED STATES
COURT OF APPEALS FOR THE THIRD CIRCUIT OF ITS APPEAL
<u>FROM ORDER DENYING APPOINTMENT OF AN EXAMINER</u>**

Washington Mutual, Inc. ("WMI") and WMI Investment Corp., as debtors and debtors in possession (collectively, the "Debtors"), submit this objection (the "Objection") to the *Official Committee of Equity Security Holders' Petition, Pursuant to 11 U.S.C. § 105(a), 28. U.S.C. § 158(d)(2) and Fed. R. Bankr. P. 8001(f), for Certification of Direct Appeal to the United States Court of Appeals for the Third Circuit of its Appeal from Order Denying Appointment of an Examiner* [Docket No. 3929] (the "Certification Motion"). In support of this Objection, the Debtors respectfully represent as follows:

<u>PRELIMINARY STATEMENT</u>

1.      In yet another attempt to sidetrack the administration of the Debtors' chapter 11 cases and cause additional expense, all in an effort to extort value for equity holders, the Official Committee of Equity Security Holders (the "Equity Committee") filed the Certification Motion,

seeking to have this Court certify a direct appeal of its *Order Denying the Motion and Supporting Memorandum of the Official Committee of Equity Security Holders for the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* [Docket No. 3663] (the "Order Denying Appointment") to the United States Court of Appeals for the Third Circuit (the "Third Circuit").

2. To have its appeal certified, the Equity Committee must establish either that a direct appeal would materially advance these cases, or that its appellate issues are purely legal issues of first impression or involve a matter of public importance. *See* 28 U.S.C. § 158(d)(2)(A). It can establish neither. As shown below, appointing an examiner will slow down, not advance these chapter 11 cases. Moreover, one of the Equity Committee's two appellate points – that this Court improperly exercised its discretion – is not a purely legal issue and thus is not appropriate for direct appeal; and the other legal issue has been consistently and repeatedly rejected by this Court.

3. Moreover, having the Third Circuit spend its valuable time on this appeal serves no purpose and does not advance these cases (materially or otherwise), because, even if the Court of Appeals were to agree that the appointment of an examiner pursuant to section 1104(c)(2) is mandatory, here it would amount to nothing more than a pyrrhic victory. The appropriate and likely result of such a victory would be the Court's appointment of an examiner with an extremely limited scope of investigation, if any, and compensation. The Court has already stated that it does not believe that "there's any original investigation left to be done," and only reviewing what others have already done would be "just a waste of assets." Hr'g Tr. 100:1-

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 925 Fourth Avenue Suite 2500, Seattle, WA 98104.

2

RLF1 3574302v. 5

4, May 5, 2010. While the Equity Committee challenges the scope of the examination in its notice of appeal, it cannot articulate a serious basis to argue that the scope of an investigation – a fact specific determination – is appropriate to certify on direct appeal.

4. Unfortunately, neither the fact that an examiner's investigation would be a "waste of assets" nor the fact that even an unlikely victory on appeal would be pyrrhic deters the Equity Committee because what it really seeks is leverage. Indeed, since its formation, the Equity Committee has launched multiple attacks on the Debtors which, if successful, would disrupt these bankruptcy proceedings and, ultimately, force the Debtors to proceed with litigation to pursue claims that represent what the equity holders perceive as their only hope of recovery, without regard to any cost-benefit analysis. In this latest example of its dilatory strategy, the Equity Committee seeks to distract the Debtors from moving forward toward confirmation of a plan because, unfortunately, the Plan (defined below) does not call for common equity holders to receive a distribution on account of their equity interests. Instead, the Equity Committee is hopeful that the specter of delay and disruption caused by the Debtors having to focus their attention on (i) arguing the Certification Motion before this Court, (ii) responding to a subsequent petition to have the appeal heard by the Third Circuit, (iii) if necessary, arguing the underlying appeal before the Third Circuit, and (iv) potentially (though unlikely) having to deal with yet another investigation, would cause parties that have a right to distributions under the Bankruptcy Code to "gift" a portion of their own distributions to equity holders.

## OBJECTION

5. The Certification Motion should be denied because (i) a direct appeal would have a deleterious effect rather than materially advancing the chapter 11 cases, and (ii) the issues that

3
RLF1 3574302v. 5

the Equity Committee has appealed fail to meet the "public importance" standard, and one is not a pure question of law while the other is not in significant (or any) dispute in this District.

I. **A Direct Appeal Will Not Materially Advance the Chapter 11 Cases**

6. A direct appeal will not materially advance these cases. In *Weber v. United States Trustee*, 484 F.3d 154 (2d Cir. 2007), the Second Circuit Court of Appeals provided an illustration of when a direct appeal materially advances the progress of a case.[2] It stated that, "where a bankruptcy court has made a ruling which, if correct, will essentially determine the result of a future litigation, the parties adversely affected by the ruling might very well fold up their tents if convinced that the ruling has the approval of the court of appeals, but will not give up until that becomes clear." 484 F.3d at 158. Such is not the case here because the appointment of an examiner is a procedural matter that would not directly impact the underlying litigations in these cases. Nor is this a case where the resolution of the matter on appeal is necessary for the confirmation of a chapter 11 plan. *See, e.g., Mull Drilling Co. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 407 B.R. 82 (Bankr. D. Del. 2009). The decision on the appointment of an examiner has no bearing on whether the Plan is confirmable. After all, this Court expressly ruled that, if some investigation remained necessary (and the Court made clear it is not), the Equity Committee itself has standing to undertake it with Rule 2004 or other discovery. Hr'g Tr. 100:5-10, May 5, 2010. Thus, having the Third Circuit determine whether an examiner must be appointed does not materially advance the underlying litigation or these chapter 11 cases.

---

[2] The direct appeal statute, 28 U.S.C. § 158(d), has existed for less than five years. There is no Third Circuit opinion addressing it yet, showing how rare the circumstance is justifying direct appeals to busy appellate courts. The leading Circuit level opinion is *Weber*, a 2007 Second Circuit case emphasizing that direct appeals should be rare. *See, e.g., Weaver v. Harmon Law Offices (In re Weaver)*, 542 F.3d 257, 259 (1st Cir. 2008); *In re Davis*, 512 F.3d 856, 858 (6th Cir. 2008).

4

RLF1 3574302v. 5

7.  Not only would the appointment of an examiner not materially advance the chapter 11 cases, this Court has already determined that the appointment of an examiner is not even in the best interests of the Debtors' estates when it exercised its discretion not to appoint one. As the Court noted, these debtors "have been investigated to death," and "even the most experienced and talented investigator that the United States Trustee could appoint would not find any stone unturned." Hr'g Tr. 98:14-17, May 5, 2010. The only effect would be to saddle the creditors "with the cost of an investigation into systemic problems that would only benefit future parties but not benefit the parties in this case." Hr'g Tr. 99:9-11, May 5, 2010.

8.  Specifically, the appointment of an examiner would not change the fact that the Debtors have been investigated (and in some cases, are continuing to be investigated) by the Equity Committee, the Office of Thrift Supervision, the Federal Deposit Insurance Corporation, the Department of Labor, the Department of Justice, the Federal Bureau of Investigation, the Internal Revenue Service, the Securities and Exchange Commission, the United States Attorney for the Western District of Washington, the Attorney General of the State of New York, numerous class action law firms pursuing claims on behalf of shareholders, and the United States Congress. The Debtors and the Official Committee of Unsecured Creditors, in discharging their own fiduciary duties, have also conducted investigations into the matters that the Equity Committee seeks to have the examiner investigate. *See* Hr'g Tr. 62-71, May 5, 2010 (describing extensive investigations conducted by the Official Committee of Unsecured Creditors). There is nothing preventing the Equity Committee itself from conducting its own investigations as part of the adversarial process. Hr'g Tr. 100:5-10, May 5, 2010. Thus, having the Third Circuit decide whether the appointment of an examiner is mandatory as a matter of law will not materially

advance these chapter 11 cases because even if the appeal resulted in a reversal on that technical ground, there is nothing for the examiner to investigate.

9. In fact, rather than serving to materially advance these chapter 11 cases, the examiner investigation and the timeframe of such investigation proposed by the Equity Committee can be reasonably expected to prolong the chapter 11 cases by derailing the Plan. On March 26, 2010, the Debtors filed their *Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 2622], as amended by the *Second Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 4241] filed on May 21, 2010 (the "Plan"). Also on March 26, 2010, the Debtors filed the *Disclosure Statement for the Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 2623], as amended by the *Disclosure Statement for the Second Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 4242] filed on May 21, 2010 (the "Disclosure Statement"). The Plan incorporates, and is expressly conditioned upon the compromise and settlement of the disputes among the Debtors, JPMorgan Chase Bank, National Association, the Federal Deposit Insurance Corporation and certain noteholders (the "Global Settlement") and contemplates releases among and for the benefit of these parties. The fully executed Global Settlement was included with the Second Amended Plan filed on May 21, 2010. The hearing on the approval of the Disclosure Statement is scheduled to take place on June 3, 2010 at 10:30 a.m. The Debtors intend to seek approval of the Global Settlement in connection with confirmation of the Plan at a hearing scheduled for August 2, 2010 at 9:30 a.m. The underlying contention in the Equity Committee's efforts for the appointment of an examiner is that the Global Settlement disposes of the Debtors' most valuable assets (the claims and litigations amongst the parties to the Global

6

RLF1 3574302v. 5

Settlement) without meaningful investigation. This, as stated above, is clearly not the case. But in any event, the logical conclusion of the argument is that once an examiner is appointed, the Equity Committee will argue that Plan confirmation should not go forward until the investigation is completed.

10. Thus, this appeal, the latest in a series of gambits by the Equity Committee, is merely an attempt to cause delay, distraction and derailment of the Plan and the Global Settlement. The appeal (which is likely to take several months, at best, even if expedited), even if successful, would have no substantive effect, because, as noted above, an all-win scenario for the Equity Committee would still only result in the Third Circuit remanding with an order requiring the appointment of an examiner whose scope and compensation would be set by this Court – a court that has properly determined that an examiner would add no benefit to these cases because the Debtors have been "examined to death."

11. The Equity Committee continues to deplete estate resources in hopes of extracting something from the creditors by waging a war of attrition. Because a direct appeal would not materially advance the chapter 11 cases, the Certification Motion should be denied.

## II. The Issues Appealed by the Equity Committee do not Satisfy the Public Importance Standard and One Issue is not a Pure Question of Law While the Other is not in Significant Dispute in this District

12. The proposed appeal does not satisfy the "public importance" prong of section 158(d)(2)(A). "To constitute a matter of 'public importance,' the issue on appeal must transcend the litigants and involve a legal question, the resolution of which will advance the jurisprudence to a degree that is usually not the case." *In re Nortel Networks Corp.*, Case No. 09-10138 (KG), 2010 Bankr. LEXIS 812 at *5 (Bankr. D. Del. Mar. 18, 2010); *see also, Collier on Bankruptcy* 5.06[5][b] (16th ed.) ("The bar for certification under [the public importance standard] should be set high."). As readily conceded by the Equity Committee's Certification Motion, the Order

7

Denying Appointment is "certainly consistent with this district's long held view that even if the debt threshold of section 1104(c)(2) is met, appointment of an examiner is not mandatory but rather is discretionary." Certification Motion at 7. Indeed, this Court has been consistent and predictable in its many rulings that section 1104(c)(2) is not mandatory.[3] Thus, there is no need for immediate circuit level guidance, bypassing the traditional appellate process. Furthermore, the significant discretion afforded to bankruptcy courts to determine the scope of an examiner's investigation limits the importance of the mandatory/discretionary nature of appointment.

13. Moreover, direct appeal is particularly inappropriate for one of the two issues that the Equity Committee has appealed. As the Court noted in *Weber*, "Congress believed direct appeal would be most appropriate where [it is] called upon to resolve a question of law not heavily dependent on the particular facts of a case." 484 F.3d at 158. But, the Equity Committee seeks to appeal not only the legal question of whether the appointment of an examiner is mandatory, but also the fact-laden question of whether the Court erred in the exercise of its

---

[3] *See, e.g., U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion, Inc.)*, Case No. 09-10960 (KJC), 2010 WL 1292837, at *8 (Bankr. D. Del. Apr. 1, 2010) (concluding that appointment of an examiner pursuant to section 1104(c)(2) only is warranted if the Court finds evidence of conduct that would make an investigation of the debtors appropriate); *In re HSH Delaware GP LLC*, Case No. 10-10187 (MFW) (Bankr. D. Del. Apr. 23, 2010) (Walrath, J.), Hr'g Tr. 31:18-22 ("I do agree that there is some discretion in 1104(c)(2) that the Court must exercise, not only in determining whether and the amount of the unsecured non-trade debt but also in determining whether, in fact, any investigation is appropriate."); *In re Magna Entm't Corp.*, Case No. 09-10720 (MFW) (Bankr. D. Del. Apr. 20, 2010) (Walrath, J.), Hr'g Tr. 13:4-14:14; 14:22-23 (refusing to appoint an examiner, notwithstanding the fact that the debt threshold had been met); *see also In re IdleAire Techs. Corp.*, Case No. 08-10960 (KG) (Bankr. D. Del. June 13, 2008) (Gross, J.), Hr'g Tr. 45:11-14 ("I don't think that it is mandatory based upon my reading of the legislative history, and just as the parties have pointed out, the language of the statute itself and, particularly, the as appropriate clause."); *In re Am. Home Mortgage Holdings, Inc.*, Case No. 07-11047 (CSS) (Bankr. D. Del. Oct. 31, 2007) (Sontchi, J.), Hr'g Tr. 76:9-16 ("I think the financial criteria are important, and obviously, they're met in this case, but that's only one piece of the puzzle, and the other piece of the puzzle is that there has to be an investigation to perform that's appropriate. . . . I think that's a more nuance approach than sort of saying it is what it is, and if you cry 'examiner' in a crowded case, you get one."); *In re SA Telecomms., Inc.*, Case Nos. 97-2395 through 97-2401 (PJW) (Bankr. D. Del. Mar. 27, 1998) (Walsh, J.), Hr'g Tr. 23:16-18 ("[T]his Court has for years consistently viewed 1104(c)(2) as not being a mandatory provision."); *In re Webcraft Techs., Inc.*, Case No. 93-1210 (HSB) (Bankr. D. Del. Nov. 4, 1993) (Balick, J.), Hr'g Tr. 104:3-19 (stating that appointment of an examiner is not mandatory even where the debt threshold is satisfied); *see also In re ACandS, Inc.*, Case No. 02-12687 (Bankr. D. Del. Dec. 19, 2002) (Newsome, J.), Order [Docket No. 234] (effectively refusing to appoint examiner by ordering that the "examiner is not to perform any task or take up any duty or in any way perform any work or incur cost to the estate without further order of the Court").

discretion by not appointing an examiner. Under *Weber*, that fact-intensive inquiry should not be certified for direct appeal.

14. The Equity Committee's other point, i.e., that section 1104(c)(2) is mandatory, is no more appropriate for direct appeal. The Equity Committee argues that, because the Third Circuit has never addressed section 1104(c)(2), the issue must be certified. But that, in and of itself, does not end the inquiry given this Court's many, consistent rulings on the subject. For example, in *The Official Comm. Of Unsecured Creditors of Motor Coach Indus., Inc. v. Motor Coach Indus., Inc.*, the United States District Court for the District of Delaware denied a motion for certification for direct appeal on the grounds that "the 'doctrine of necessity' has not previously been brought into serious question by courts in the Third Circuit." Civ. No. 09-078 (SLR), 2009 U.S. Dist. LEXIS 13814, at *3 (D. Del. Feb. 23, 2009). Thus, what Judge Robinson found dispositive was this Court's many consistent rulings on the absolute priority rule, not whether the Third Circuit had addressed it directly. Similarly, in another case denying certification, the United States District Court for the District of Delaware stated that it need not conclude that the case presented a question of first impression "merely because the Debtor-Appellants have innovated a novel argument." *Reorganized Debtors v. Blue Dog Properties Trust (In re Goody's Family Clothing, Inc.)* Civ. No. 09-409 (RMB), 2009 U.S. Dist. LEXIS 67011, at *5 (D. Del. June 30, 2009). Thus, even though the Third Circuit had not previously considered the exact issue of "stub rent," as formulated by the appellant, the District Court held that certification of a direct appeal was not required. Accordingly, the District of Delaware has established that framing an argument in a way that one can argue that the Third Circuit has not addressed the specific issue does not, in and of itself, establish that certification is required under section 158(d)(2)(A)(i). Similarly, in *In re Marrama*, the United States Bankruptcy Court for the

RLF1 3574302v. 5

District of Massachusetts denied certification of an appeal, stating "[w]hile there is no controlling case law in this circuit, the case law . . . reflects that there is no significant dispute regarding the applicable standard." 345 B.R. 458, 474 (Bankr. D. Mass 2006).

15. Against this backdrop, the policy of when direct appeals should be heard must be considered. In deciding not to grant a petition for a direct appeal, the Court in *Weber* stated:

> [A]lthough Congress emphasized the importance of our expeditious resolution of bankruptcy cases, it did not wish us to privilege speed over other goals; indeed, speed is not necessarily compatible with our ultimate objective – answering questions wisely and well. In many cases involving unsettled areas of bankruptcy law, review by the district court would be most helpful. Courts of appeals benefit immensely from reviewing the efforts of the district court to resolve such questions. Permitting direct appeal too readily might impede the development of a coherent body of bankruptcy case-law.

484 F.3d at 160.

16. Although the Equity Committee cites to cases in other jurisdictions that have ruled differently on section 1104(c)(2), resolving differences among the circuits is not a task for the Third Circuit. *See Goody's* 2009 U.S. Dist. LEXIS 67011 at *6. There has been no disparity as to how courts in this District have treated section 1104(c)(2); they have unambiguously and consistently held that courts have discretion – just as this Court held in these cases.

10

## CONCLUSION

WHEREFORE the Debtors request that the Certification Motion be denied.

Dated: May 27, 2010
       Wilmington, Delaware

/s/ Russell C. Silberglied
Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Chun I. Jang (No. 4790)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Marcia L. Goldstein, Esq.
Brian S. Rosen, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS TO THE DEBTORS
AND DEBTORS IN POSSESSION