|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| WASHINGTON MUTUAL, INC, <u>et</u> <u>al.</u>, | : | Case No.:  08-12229 (MFW) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
|  | : | **Related Docket No.: 3568 and 3651** |
|  |  | **Objection Deadline: May 28, 2010** |

**SUPPLEMENTAL OBJECTION OF WELLS FARGO BANK, N.A.,**
**IN ITS CAPACITY AS INDENTURE TRUSTEE AND GUARANTEE TRUSTEE,**
**TO THE DEBTORS' MOTION FOR APPROVAL OF DISCLOSURE**
**STATEMENT AND SOLICITATION AND VOTING PROCEDURES**

Wells Fargo Bank, National Association (the "**PIERS Trustee**"), in its capacity as

successor Indenture Trustee under the Indenture dated as of April 30, 2001, between Debtor

Washington Mutual, Inc. ("**WMI**") and The Bank of New York, as initial Trustee (as

supplemented, the "**PIERS Indenture**"), and in its capacity as Successor Guarantee Trustee

under that certain Guarantee Agreement, dated as of April 30, 2001, between WMI as Guarantor,

and Bank of New York as initial Guarantee Trustee, by and through its undersigned counsel,

hereby respectfully submits this supplemental objection (the "**Objection**") to the Debtors'

Motion (the "**Motion**")[1] for an Order, Pursuant to Sections 105, 502, 1125, 1126 and 1128 of the

Bankruptcy Code and Bankruptcy Rules 2002, 3003, 3017, 3018 and 3020, (i) Approving the

Proposed Disclosure Statement (as mostly recently revised, the "**Disclosure Statement**")

[Docket No. 2623] and the Form and Manner of the Notice of the Disclosure Statement Hearing,

(ii) Establishing Solicitation and Voting Procedures ("**Solicitation Procedures**"), (iii)

---

[1]  Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

Scheduling a Confirmation Hearing, and (iv) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Plan [Docket No. 3568]:

**PRELIMINARY STATEMENT**

1. On May 13, 2010, the PIERS Trustee filed it Reservation of Rights to the Motion [Docket No. 3713) and indicated that it was discussing with Debtors certain of the PIERS Trustee's concerns. Although the Debtors have addressed many of those concerns, additional issues remain unresolved as a result of the most recent revisions to the provisions of the Rights Offering and related disclosures. In particular, the PIERS Trustee is troubled by the structure of the Rights Offering and its apparent discriminatory treatment of certain holders of PIERS Claims (the "**PIERS Noteholders**") who apparently will not be permitted to participate in the Rights Offering. Furthermore, the Disclosure Statement fails to adequately describe the Rights Offering or provide any explanation as to why the Rights Offering is not made available to all PIERS Noteholders.

2. To the extent the Debtors determine to proceed with the Rights Offering as currently structured, the Disclosure Statement should be revised to better explain the Rights Offering eligibility requirements; the rationale for not permitting all PIERS Noteholders to participate in the Rights Offering; the value of the Rights Offering, if any, that would be ascribed to the recoveries of those parties that participate; and how that imputed value will affect the recoveries of all PIERS Noteholders, including those who are not permitted to, or choose not to participate in the Rights Offering. Debtors' failure to address these issues adequately could lead to a serious question regarding the confirmability of the Plan, in light of the apparently discriminatory treatment of creditors within a single class.

WM1A 954958v1 05/27/10

## BACKGROUND

A.   <u>The Debentures, the Trust Securities and the WMI Guarantee</u>

3. On or about April 30, 2001, WMI entered into the PIERS Indenture, with BNY as initial Indenture Trustee. Pursuant to the PIERS Indenture, WMI issued $1.15 billion in face amount of its 5.375% Junior Subordinated Deferrable Interest Debentures due July 1, 2041 (the "**Debentures**"). Each Debenture had a face value of $50, but was issued with original issue discount at an original purchase price of $32.33.

4. In accordance with the Amended and Restated Declaration of Trust, Washington Mutual Capital Trust 2001, dated as of April 30, 2001 (the "**Trust Declaration**"), by WMI, as Sponsor, BNY, as Property Trustee, The Bank of New York (Delaware), as Delaware Trustee, and the Administrative Trustees named therein, Washington Mutual Capital Trust 2001 (the "**Trust**") was established for the purpose of purchasing the Debentures from WMI.

5. In order to obtain the funds necessary to purchase the Debentures, the Trust sold Preferred Securities (as defined in the Trust Agreement) to investors. Each of the Preferred Securities consisted of a preferred security and a warrant to purchase shares of common stock of WMI at any time prior to the close of business on May 3, 2041. The Trust also issued Common Securities (as defined in the Trust Agreement, and together with the Preferred Securities, the "Trust Securities"), which were purchased by WMI. Each the Trust Securities had a face value of $50, but was issued at an initial purchase price of $32.33 in order to reflect the original issue discount provided for in connection with the Debentures.

6. The Trust expended all or substantially all of the proceeds of the sale of the Trust Securities to purchase the Debentures. As more fully set forth in that certain Guarantee

WM1A 954958v1 05/27/10

Agreement dated as of April 30, 2001, between WMI and BNY, as Guarantee Trustee (the "Guarantee Trustee"), WMI guaranteed certain obligations relating to the Trust Securities.

7. By Instruments of Resignation, Appointment and Acceptance dated as of October 14, 2008, Wells Fargo Bank, N.A. became the successor Indenture Trustee and the successor Guarantee Trustee.

### B.        The Bankruptcy Cases

8. On September 26, 2008 (the "**Petition Date**"), the Debtors, as debtors and debtors-in-possession, filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (as amended, the "**Bankruptcy Code**"). The Debtors remain in possession of their assets as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  By order dated October 3, 2008 [Docket No. 25], the Debtors' cases were jointly administered.

9. On October 15, 2008, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") pursuant to Section 1102 of the Bankruptcy Code [Docket No. 78].  the PIERS Trustee, in its capacity as successor Indenture Trustee and successor Guarantee Trustee, is a member of the Committee.

10. On January 11, 2010, the U.S. Trustee appointed an official committee of WMI's equity security holders (the "**Equity Committee**").

11. On March 30, 2009, the PIERS Trustee timely filed a proof of claim against WMI in respect of the Debentures and the Trust Securities (the "**Proof of Claim**").  By Order dated January 28, 2010 (the "Allowance Order"), the Proof of Claim was allowed as follows:

WM1A 954958v1 05/27/10

| Notes Issuance | Maturity Date | Allowed Principal ($) | Allowed Accrued Interest ($) | Allowed Total Amount ($) |
|---|---|---|---|---|
| **5.375% Junior Subordinated Deferrable Interest Debentures** | | | | |
| **Preferred Securities** | May 1, 2041 | 756,230,623.24 | 9,443,576.39 | 765,674,199.63 |
| **Common Securities** | May 1, 2041 | 23,387,254.01 | 292,052.86 | 23,679,306.87 |

The Allowance Order further provided that all parties' rights with respect to certain additional claims asserted by the PIERS Trustee are preserved.

12. On March 26, 2010, the Debtors filed the Joint Plan of Reorganization of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code [Docket No. 2622] (the "**Initial Plan**") and the related Disclosure Statement [Docket No. 2623].

13. On May 17, 2010, the Debtors filed the First Amended Joint Plan of Reorganization of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, dated as of May 21, 2010 [Docket No. 3743] (the "**First Amended Plan**") and the related Disclosure Statement [Docket No. 3744].

14. On May 21, 2010, the Debtors filed the Second Amended Joint Plan of Reorganization of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code[Docket No. 4241] (the "**Second Amended Plan**") and the related Disclosure Statement [Docket No. 4242].

## OBJECTION

15. The terms and disclosures concerning the Rights Offering have changed substantially since they were first announced to the public in the Initial Plan. However, the impact of those changes, which are outlined below, are not adequately explained in the

WM1A 954958v1 05/27/10

Disclosure Statement. As discussed more fully below, the Debtors must revise the Disclosure

Statement to explain the basis for and the consequences of the new eligibility threshold for the

Rights Offering and the valuation thereof.

| Plan Provision | Initial Plan | First Amended Plan | Second Amended Plan |
|---|---|---|---|
| Record Date for Participation ("Rights Offering Record Date") | July 7, 2010, or the date by which ballots are to be submitted | May 19, 2010, or the date established for the purpose of determining which holders are entitled to vote | June 3, 2010, or the date established for the purpose of determining which holders are entitled to vote |
| Eligibility Threshold To Participate | **§ 33.1** Holder must possess right to purchase "at least the minimum amount proscribed in the Backstop Commitment Agreement." | **§ 34.1** Holder must possess right to purchase "at least the minimum amount proscribed in the Backstop Commitment Agreement." | **§ 34.1** Holder may participate "if such holder, based on its Pro Rata Share of Subscription Rights, is entitled to subscribe for shares of Additional Common Stock for an aggregate Subscription Price of at least Two Million Dollars ($2,000,000)." |
| Backstop Commitment Agreement | The eligibility requirements were to be set forth in the Backstop Commitment Agreement | The eligibility requirements were to be set forth in the Backstop Commitment Agreement | No Backstop Commitment Agreement. Instead, **§ 34.6** now provides for oversubscription rights to those eligible to participate. |
| Size of the Rights Offering | **§ 33.1** $50,000,000, which could be increased upon written notice three days prior to the Disclosure Statement Hearing | **§ 34.1** $50,000,000, which could be increased upon written notice some time prior to the Disclosure Statement Hearing | **§ 34.1** $100,000,000 |
| Value of the Rights Offering | Not Disclosed | Not Disclosed | **Disclosure Statement, Exhibit D, p. D-3** Blackstone "estimates that the value of the Rights Offering is between 105% - 115% of the Rights Offering." |

WM1A 954958v1 05/27/10

A.    The Eligibility Threshold

16. As the above chart reflects, although the Initial Plan and the First Amended Plan contemplated some minimum threshold to participate in the Rights Offering, that amount was never disclosed.  The Second Amended Plan now provides in Section 34.1 that only PIERS Noteholders who are "entitled to subscribe for shares of Additional Common Stock for an aggregate Subscription Price of at least Two Million Dollars ($2,000,000)" (the "**Eligibility Threshold**") may participate in the Rights Offering.  This new provision, while setting some sort of floor, still fails to disclose precisely which PIERS Noteholders would be entitled to subscribe for an aggregate Subscription Purchase Price of  $2,000,000.  The Disclosure Statement does not clear up this ambiguity.

17. The PIERS Trustee believes that the minimum face amount of PIERS Claims that a PIERS Noteholder must own to participate in the Rights Offering is $23,000,000.  This assumption is based on the size of the Rights Offering, which is now $100,000,000, so that the $2,000,000 minimum set forth in the Plan constitutes 2% of the total Subscription Purchase Price.   Since  the  face  amount  of  the  Debentures  is  $1.15  billion,  2%  of  that  amount  is $23,000,000.   At  the  very  minimum,  and  to  the  extent  the  PIERS  Trustee's  calculations  and assumptions  are  correct,  the  Disclosure  Statement  and  the  Solicitation  Procedures  should disclose this $23,000,000 Eligibility Threshold.

18. Further, the current Eligibility Threshold substantially limits the universe of those PIERS Noteholders who are able to participate in the Rights Offering.  Therefore, the Debtors should also disclose the reason for imposing an Eligibility Threshold at all, and why the Debtors believe that restricting the eligible participants in the manner they propose does not violate Section 1123(a)(4) of the Bankruptcy Code, which requires the same treatment for all

WM1A 954958v1 05/27/10

claims in a particular class, unless the holder of a particular claim agrees to a less favorable treatment.

19. The Disclosure Statement should also clarify whether the Eligibility Threshold will be measured as of the Rights Offering Record Date, as of the Distribution Record Date, as of the date that a PIERS Noteholder executes the Subscription Form, or some other date.

20. The PIERS Trustee submits that the Eligibility Threshold should be measured as of the date that a PIERS Noteholder executes its Subscription Form. As the above chart illustrates, the terms of the Rights Offering have changed substantially since the Initial Amended Plan and the First Amended Plan. Therefore, in the event the Eligibility Threshold remains, PIERS Noteholders should be provided with sufficient time to accumulate additional claims to enable them to participate in the Rights Offering if they so desire.

B.    The Value of the Rights Offering

21. The Disclosure Statement now discloses in Exhibit D that the Rights Offering is valued at 105% - 115%. It is not clear what this valuation translates to in terms of recoveries to PIERS Noteholders, and the Disclosure Statement should clarify this ambiguity.

22. Additionally, the Disclosure Statement fails to disclose whether the purported value that is to be received by eligible PIERS Noteholders who participate in the Rights Offering will be redistributed, whether in the form of cash, or otherwise, to those PIERS Noteholders who are unable or unwilling to participate. The Debtors should disclose what steps they will take to assure that all PIERS Noteholders receive the same percentage recovery, regardless of whether they participate in the Rights Offering.

WM1A 954958v1 05/27/10

C.      Reservation of Rights

23. The Debtors have yet to file or share with the PIERS Trustee a revised Subscription Form that incorporates the terms of the revised Rights Offering.   The PIERS Trustee reserves its right to file a supplemental objection or raise further objections at the hearing on the Disclosure Statement with respect thereto or any additional changes to the current Disclosure Statement, the Solicitation Procedures or the terms of the Rights Offering.

WHEREFORE, the PIERS Trustee respectfully requests that the Court not approve the Disclosure Statement or the Rights Offering unless they are revised to address the PIERS Trustee's Objection and that the Court grant the PIERS Trustee such other and further relief as is just and proper.

Dated: Wilmington, Delaware
       May 27, 2010                          Respectfully submitted,

                                             **FOX ROTHSCHILD LLP**

                                             ⎯/s/ Neal J. Levitsky⎯⎯⎯⎯⎯⎯⎯⎯
                                             Neal J. Levitsky, Esq. (No. 2092)
                                             Citizens Bank Center
                                             919 N. Market Street, Suite 1300
                                             Wilmington, Delaware  19801
                                             302.622-4200 - direct
                                             302.656-8920 - facsimile


                                                    -and-

                                             **LOEB & LOEB LLP**
                                             Walter H. Curchack
                                             Vadim J. Rubinstein
                                             345 Park Avenue
                                             New York, New York  10154
                                             (212) 407-4000

                                             *Counsel for Wells Fargo Bank, N.A.,*
                                             *in its Capacity as Indenture and Guarantee Trustee*