# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>WASHINGTON MUTUAL, INC., et al.,[1]<br>Debtors. | Chapter 11<br>Case No. 08-12229 (MFW)<br>(Jointly Administered)<br>**Requested Hearing Date: June 3, 2010 at 10:30 a.m. (ET)**<br>**Requested Obj. Deadline: June 2, 2010 at 12:00 p.m. (ET)** |

## MOTION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AND LOCAL BANKRUPTCY RULE 2004-1 DIRECTING THE EXAMINATION OF THE FDIC AND CERTAIN THIRD PARTIES

The Official Committee of Equity Security Holders (the "Equity Committee") of Washington Mutual, Inc. ("WMI" and, together with its chapter 11 debtor-affiliate, WMI Investment Corp., the "Debtors") moves the Court pursuant to Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004-1 for an order authorizing the Equity Committee to conduct an examination of the FDIC (in both its corporate and receiver capacities) and nine third parties – Goldman Sachs, Banco Santander, Office of Thrift Supervision, the Securities and Exchange Commission, the Federal Reserve, Henry Paulson, the Department of Treasury, Standard & Poor's, and Moody's – and represents as follows:

## I.

## PRELIMINARY STATEMENT

1. On May 25, 2010, the Equity Committee filed a Motion for an order authorizing the examination of J.P. Morgan Chase ("JPMC") pursuant to Bankruptcy Rule 2004 (Docket Number 4301). That Motion (the "JPMC 2004 Motion") is attached as **Exhibit A**, and is

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Washington Mutual, Inc. (3725) and WMI Investment Corp. (5396). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

{00411200;v1}

incorporated here by reference. In the JPMC 2004 Motion, the Equity Committee discussed in detail the reasons why it seeks 2004 discovery – namely, the representations by the Debtors to this Court regarding the existence of serious and significant claims against JPMC and the subsequent settlement of those claims that appears to places zero value on any business tort claim against JPMC and on any claim against the FDIC for its handling of the receivership and for selling WMB for well under its worth.

2. At the May 5, 2010 hearing, this Court specifically mentioned Rule 2004 requests as a source of the Equity Committee's ability to fully investigate the claims held by the Debtors. The Equity Committee now seeks to use Rule 2004 to do what the Debtors have not yet done – examine documents of the FDIC and third parties that relate specifically to the claims that the Debtor propose to release through settlement. The subpoenas to these parties are attached as **Exhibit B**.

3. In December 2009, the Debtors brought a 2004 Motion against the FDIC and twenty third parties. This Court denied the Debtors' Motion, in large part because the Court believed that the Debtors had failed to demonstrate that they needed additional information in order to decide whether to assert business tort claims against JPMC. *See* **Exhibit C** (transcript of Jan. 28, 2010 hearing) at 89. Rather than file suit against JPMC or try to obtain additional discovery through other means, however, the Debtors abandoned their efforts to investigate these claims and now propose to settle them.

4. The Equity Committee's current Motion narrows both the group of targets and the subject matter of the subpoenas. Instead of seeking discovery against 20 parties as in the Debtors' original Motion, the Equity Committee seeks authority to obtain necessary information from the FDIC and nine third parties. And the Equity Committee has attempted to draft requests

limited in subject matter to the claims being released by the Proposed Settlement. To the extent that any party views a request as more broad than that scope, the Equity Committee remains open to working with the parties to discuss any breadth objections they may have. The Equity Committee has conveyed this point to those parties who have substantively responded to the meet and confer requests initiated by the Committee pursuant to Local Rule 2004-1.

5. By this Motion, the Equity Committee seeks authority to investigate the claims that the Debtors propose to release in the Settlement. This authority is necessary in order to understand the scope of the claims that the Debtors are releasing as well as to pursue the investigation that the Debtors terminated. The purpose of this Motion is to allow the Equity Committee to investigate what has not yet been investigated by obtaining document discovery from these third parties and by taking depositions of the persons most knowledgeable about the claims that the Debtors propose to abandon.

6. The Equity Committee also seeks authority to conduct document and deposition discovery of the FDIC directed to the negotiation and meaning of the proposed Global Settlement, and the circumstances that led to its adoption.

## II.
## JURISDICTION AND VENUE

7. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core bankruptcy proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.
## BACKGROUND

8.  After this Court's May 5, 2010 hearing, where this Court denied the Equity Committee's Motion for Appointment of an Examiner but specifically discussed the ability of the Equity Committee to conduct its own investigation, the Equity Committee has diligently attempted to determine (1) the extent and results of investigations conducted by Debtors' counsel and counsel to the Official Committee of Unsecured Creditors (the "Creditors Committee"); and (2) the documents in the hands of third parties that may bear upon the claims that the Debtors, JPMC, and the FDIC are settling. As discussed in more detail in Paragraphs 37-51 of the JPMC 2004 Motion, the Debtors obtained very limited and woefully incomplete discovery on a voluntary basis. The Declaration of Edgar Sargent (attached to the JPMC 2004 Motion and attached as **Exhibit D** here) further outlines the steps that the Equity Committee has taken to obtain documents and the limited nature of cooperation received from counsel to the Debtors and Creditors Committee.

9.  The Sargent Declaration also details the paucity of production that the Debtors and Creditors Committee received from third parties, including those who were the subject of the Debtors' December 2009 motion for examination pursuant to Rule 2004. *See, e.g.,* Sargent Dec., **Exhibit D**, at ¶¶ 8-11. The sum total of the Debtors' third party discovery appears to be:

10. <u>Approximately 650 pages</u> of documents from the Office of Thrift Supervision

11. <u>Approximately 240 pages</u> of heavily redacted documents produced by the FDIC pursuant to FOIA requests. This appears to be the entirety of information that the Debtors obtained through all of the various discovery efforts they have directed to the FDIC to date, whether in court cases or pursuant to FOIA. In opposing the Debtors' December 2009 motion

for a Rule 2004 examination, the FDIC in its corporate capacity described to the Court three different sets of discovery requests it had received from the Debtors – the Rule 2004 subpoena, a set of FOIA requests, and a request for FDIC Exempt Records and Information. Objection of FDIC-Corporate to the Debtors' Motion For An Order Pursuant to Bankruptcy Rule 2004 (Docket #2170), filed Jan. 15, 2010, at 3. The FDIC further stated that it was "processing" the Debtors' FOIA requests. *Id.* at 2. The FDIC also explained that it was then engaged in responding to "a massive document request from Congress regarding the resolution of Washington Mutual Bank (WMB)," and that once that production was complete, the FDIC expected to begin "an appropriate production of documents to the Debtors pursuant to its administrative processes." *Id.* at 2. The net result of the FDIC's production to the Debtors, after all that, appears to be the roughly 240 pages referred to in the text. At this writing, the Equity Committee has not yet received this FDIC production, though we expect to receive a copy shortly.

12. <u>Less than 20 documents</u> produced by Moody's and a lobbying firm called the OB-C Group. Those documents have not been provided to the Equity Committee because Moody's and the OB-C have refused to consent to such disclosure.

13. <u>Approximately 900 documents</u> produced by Citigroup and <u>approximately 500 documents</u> produced by Blackstone. The Debtors provided those documents to the Equity Committee for the first time on May 24, 2010.

14. <u>Approximately 27,500 pages</u> of documents from TPG Capital, the company that made a significant equity investment in WMI in the summer of 2008. This production constitutes the vast majority of documents obtained by the Debtors from third parties – yet it would appear to have only a limited (if any) relationship to the potential business tort claims

against JPMC. Of that mass of TPG Capital documents, the Equity Committee is unable to access more than 22,000 pages of the production because the disk provided by the Debtors which contains them is password-protected and the Debtors have not provided the password.

15. In opposing the Equity Committee's motion for appointment of an examiner, the Debtors represented to the Court as follows:

> The Debtors have also engaged in extensive negotiations with Sullivan & Cromwell, LLP. The Office of the Comptroller of the Currency (the "OCC"), the Board of Governors of the Federal Reserve System (the "Federal Reserve"), the U.S. Department of the Treasury (the "DOT"), Cerberus Capital Management, L.P., Lehman Brothers, and Morgan Stanley for further documents related to the Business Tort Investigation. Supplementing the Business Tort Investigation, the Debtors also issued information requests pursuant to the Freedom of Information Act to the FDIC, OTS, the Securities Exchange Commission, the DOT, the Federal Reserve and the OCC.

16. However much negotiating, discussing, and supplemental requesting the Debtors have done, the actual result in terms of obtaining actual documentary evidence consists of what the Equity Committee has described above – unless the Debtors are holding back information from the Equity Committee without saying so.

## IV.
## RELIEF REQUESTED

17. Pursuant to Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004-1, the Equity Committee requests authorization to conduct an examination of the FDIC and the nine other third-parties identified in the subpoenas attached as **Exhibit B**, including production of documents responsive to the document requests attached to the respective subpoenas and oral examination of the party's witnesses most knowledgeable about the subjects described in those requests. The Equity Committee seeks entry of an order substantially in the same form of the Proposed Order filed with this Motion as **Exhibit E**.

18. For the nine third parties, the document requests are targeted toward obtaining information about the claims that the Debtors are releasing through the proposed Global Settlement. These document requests are a subset of the Debtors' requests to this Court a few months ago, but targeted solely at the claims that the Debtors now seek to settle. In addition to narrowing the scope of the actual subpoenas, the Equity Committee also cut the list in half for the parties subject to the Rule 2004 Motion from the Debtors' original request.

19. For the FDIC, in addition to the category of documents relating to the claims being released, the Equity Committee seeks information concerning the negotiation and impact of the proposed Global Settlement. This information is highly relevant because this Proposed Settlement is the cornerstone of the Debtors' proposed plan of reorganization.

## V.
## BASIS FOR RELIEF

20. Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." The purpose of a Rule 2004 examination "is to enable the trustee to discover the nature and extent of the bankruptcy estate." Opinion of the Court (Docket #1219) dated June 24, 2009 ("June 24 Opinion") at 8 (citing *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991); *see also In re Symington*, 209 B.R. 678, 684 (Bankr. D. Md. 1997). Among the "[l]egitimate goals of Rule 2004 examinations" are "determining whether wrongdoing has occurred," June 24 Opinion, at 8 (quoting *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002), and exposing any fraudulent conduct. *Symington*, 209 B.R. at 683-84.

21. Rule 2004 grants parties in interest "broad rights of examination of a third-party's records." *Snyder v. Society Bank*, 181 B.R. 40, 41 (S.D. Tex. 1994); *see also In re Cousins*

*Barricades & Metal Prods. Inc.*, No. Civ. A. 99-2035, 200 WL 245860, *3 (E.D. La. Mar. 2, 2000). Emphasizing the broad purpose of Rule 2004, courts permit examination of any third party that has "knowledge of the debtor's affairs," *In re Ecam Publ'ns*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991), or who can be shown to have had dealings with the debtor, *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). *See* Bankruptcy Rule 2004(b) (noting that Rule 2004 examination may concern "any matter which may affect the administration of the debtor's estate").

22. While this Court denied the Debtors' request for an expansive set of Rule 2004 requests to third parties earlier this year, the context now is significantly different. The Debtors have chosen to release their claims rather than assert them and then use federal discovery rules to gather additional information.

23. This Motion should be granted because (1) the Equity Committee has no other way to obtain this information; and (2) the requested information is vital to determining the appropriateness of the Proposed Settlement and the Plan which is predicated on that Settlement.

24. First, unlike the Debtors, the Equity Committee cannot simply file suit to assert these claims against JPMC and then use third-party discovery in those cases. When this Court denied the Debtors' Rule 2004 Motion, it noted that Debtors could bring a business tort claim themselves. *See* **Exhibit C** at 89:12-14. Here, the Equity Committee cannot bring that claim. More fundamentally, there is no other proceeding through which the Committee can obtain this discovery. Other adversary proceedings have been stayed, as the Court is aware. Thus, discovery is unavailable in those actions; no pending proceeding provides an alternate vehicle through which the requested discovery could be expeditiously obtained. *See In re Int'l Fibercom, Inc.*, 283 B.R. 290, 292 (Bankr. D. Ariz. 2002) (holding that pending proceeding rule

was inapplicable when discovery was unavailable in other litigation due to a stay). In short, unlike the Debtors' earlier Rule 2004 Motion, the Equity Committee cannot obtain these documents any other way.

25. Second, the requested information is essential for the Equity Committee's analysis of the Proposed Settlement and the Proposed Plan. Indeed, the reasonableness of the bargain reflected in that Proposed Settlement turns in large measure on an assessment of the claims against JPMC that the Debtors propose to give up, including the potential business tort claims that are the primary subject of the examination requested by this motion. The Equity Committee has limited the scope and number of subpoenas as compared to those originally proposed to be issued by the Debtors. These subpoenas specifically are designed to obtain information highly relevant to the underlying action by directing the requests to the claims being released by the Proposed Settlement. This Court recognized the propriety of the Equity Committee using Rule 2004 to obtain the relevant information in the May 5, 2010 hearing. *See* JPMC 2004 Motion at ¶ 34 (quoting this Court's statement that the Equity Committee "has the benefit of Rule 2004, it has the benefit of the discovery rules, because there are contested matters presently and anticipated in which the equity committee could fully avail itself of that discovery").

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2004-1

26. By e-mails on May 26 and May 27, 2010, counsel for the Equity Committee provided counsel for the requested parties with the document requests attached in their respective subpoenas, described the substance of the relief requested by this motion, and asked whether the parties would agree to the requested examination and to respond to the document requests without a court order. Counsel requested that the parties respond by 12 or 12:30 Eastern (depending on the party and when the email was sent) on May 28 and also asked that counsel for

the respective parties identify a time when they would be available to discuss the requests. Counsel for the Equity Committee has conferred with attorneys for the FDIC Receiver, FDIC-Corporate, Moody's, the Department of Treasury, Henry Paulson, the OTS, Goldman Sachs, and the Federal Reserve. Counsel for the Equity Committee conferred with Moody's and the FDIC-Receiver on the substance of the requests, and they preserve their objections to the subpoenas but the parties are conferring in good faith. Counsel for FDIC-Corporate, Department of Treasury, and Henry Paulson are conferring in good faith with the Equity Committee about the subpoenas. Counsel for the OTS and counsel for the Equity Committee have scheduled a time to discuss next week because OTS counsel could not talk this week. Counsel for the Federal Reserve has stated it is premature to have meet and confer discussions until the Court grants authority to conduct a Rule 2004 examination. Counsel for Goldman Sachs has indicated it will oppose this motion. Counsel for Banco Santander, Standard and Poors, and the SEC have not responded. However, neither Goldman Sachs nor Banco Santander objected to the Debtors' Rule 2004 subpoenas. Despite this lack of objection, it appears that the Debtors never obtained any documents from these parties. Standard and Poors filed an objection to the Debtors' original Rule 2004 request, but stated that the parties were working in good faith to narrow the subpoena. The SEC also opposed the Debtors' original Rule 2004 request to it.

27. To prevent unnecessary delay arising from disputes concerning, among other things, the Equity Committee's entitlement to the information requested and clams of confidentiality, the Equity Committee requests that this motion be set for hearing and thereby ensure an expeditious resolution of any such disputes. Prior to the hearing, the Equity Committee will continue attempting to discuss the relief requested and attempt to resolve any legitimate objections raised by any of the parties.

28. Accordingly, the Equity Committee seeks the Court's authority to conduct an examination under Bankruptcy Rule 2004 and Local Rule 2004-1 that includes production of all documents responsive to the requests attached as Exhibit A, as well as related oral examination of witnesses most knowledgeable about the subjects described in the document requests.

29. The Equity Committee has made no previous request for the relief sought herein to this Court or any other court.

30. WHEREFORE, the Equity Committee respectfully requests that the Court grant the relief requested by this motion, and for such other and further relief as it deems just and proper.

Dated: May 28, 2010

ASHBY & GEDDES, P.A.

*/s/ [signature]*

William P. Bowden (DE Bar No. 2553)
Gregory A. Taylor (DE Bar No. 4008)
Stacy L. Newman (DE Bar No. 5044)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile : (302) 654-2067
E-mail: wbowden@ashby-geddes.com
gtaylor@ashby-geddes.com
snewman@ashby-geddes.com

-and-

SUSMAN GODFREY, L.L.P.
Stephen D. Susman (NY Bar No. 3041712)
Seth D. Ard (NY Bar No. 4773982)
654 Madison Avenue, 5th Floor
New York, NY 10065
E-mail:
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
ssusman@susmangodfrey.com
sard@susmangodfrey.com

Parker C. Folse, III (WA Bar No. 24895)
Edgar Sargent (WA Bar No. 28283)
Justin A. Nelson (WA Bar No. 31864)
1201 Third Ave., Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
E-mail:
pfolse@susmangodfrey.com
esargent@susmangodfrey.com
jnelson@susmangodfrey.com

*Co-Counsel for the Official Committee of Equity Security Holders of Washington Mutual, Inc., et al.*