UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------- x
                                : Chapter 11
In re                                 :
                                : Case No. 08-12229 (MFW)
WASHINGTON MUTUAL, INC., et al.,  :
                                : (Jointly Administered)
    Debtors.                    :
                                : Re: Docket No. 3567, 4242
------------------------------------- x

Objections Due: May 28, 2010
Hearing Date: June 3, 2010 at 10:30 a.m.

**SUPPLEMENTAL OBJECTION OF THE BKK JOINT DEFENSE GROUP TO THE *MOTION OF DEBTORS FOR AN ORDER , PURSUANT TO SECTIONS 105, 502, 1125, 1126, AND 1128 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 2003, 3017, 3018 AND 3020, (I) APPROVING THE PROPOSED DISCLOSURE STATEMENT AND THE FORM AND MANNER OF THE NOTICE OF THE DISCLOSURE STATEMENT HEARING, (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES, (III) SCHEDULING A CONFIRMATION HEARING, AND (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE DEBTORS' JOINT PLAN***

**INTRODUCTION**

The BKK Joint Defense Group (the "**BKK Group**") herein further objects to the *Motion Of Debtors For An Order, Pursuant To Sections 105, 502, 1125, 1126, and 1128 Of The Bankruptcy Code And Bankruptcy Rules 2002, 3003, 3017, 3018 And 3020, (I) Approving The Proposed Disclosure Statement And The Form And Manner Of The Notice Of The Disclosure Statement Hearing, (II) Establishing Solicitation And Voting Procedures, (III) Scheduling A Confirmation Hearing, And (IV) Establishing Notice And Objection Procedures For Confirmation Of The Debtors' Joint Plan* (**the "Motion"**).

The BKK Group herein joins in the Objections and Supplemental Objections of the California Department of Toxic Substances Control **("DTSC")** to the Motion and the Debtors' Disclosure Statement to the Second Amended Joint Plan of Reorganization (the "**DTSC Objections**"), and reserves its rights to join in other objections and supplemental objections to the Motion and to the Debtors' Disclosure Statement to the Second Amended Joint Plan of Reorganization ("**Disclosure Statement**") that may be filed by additional parties-in-interest.

The BKK Group expressly reserves herein all of its rights to lodge additional and/or more detailed or different objections to the Motion and Disclosure Statement if and when the present feasibility issues with the Debtors' Second Amended Joint Plan of Reorganization (the "**Joint Plan**")[1] are purportedly resolved, including, without limitation the presently and facially impermissible release and injunction provisions.

## BACKGROUND

The BKK Group is a party-in-interest in these proceedings. The BKK Group's proof of claim number 2405[2] concerns a closed hazardous waste landfill that was created, owned and operated by the corporate predecessors of Debtor Washington Mutual, Inc. ("**WMI**") and its pre-bankruptcy affiliates. Specifically, the BKK Group seeks response costs incurred and to be incurred at the closed BKK Class I (hazardous waste) Landfill in West Covina, California (the "**BKK Landfill**"). "Response Costs" are costs that the BKK Group incur conducting either "removal actions" or "remedial actions" at the BKK Class I Landfill. 42 U.S.C. §§ 9601(25), 9607(a); Cal. Health and Safety Code § 25323.3. Debtor WMI and certain of its non-debtor

---

[1] Capitalized terms not specifically defined herein have the meaning assigned in the DTSC Objections.

[2] Other BKK-related proofs of claim as defined in the Joint Plan include Claim nos. 2138, 2213, 2233, 2467, 2693, and 3148.

subsidiaries and affiliates are "liable persons" because their predecessors owned and operated the BKK Landfill. 42 U.S.C. § 9607(a)(2); Cal. Health & Safety Code § 25323.5.  In addition, Washington Mutual Bank ("**WMB**") and its Affiliates, including WMI, are parties together with members of the BKK Group to several Consent Decrees with the State of California requiring response activities and other actions as more particularly described in the DTSC's Objections, and directly or indirectly, parties to a Joint Defense Agreement with the BKK Group, more specifically described in the BKK Group's proof of claim attached as Exhibit 1 hereto and incorporated by reference, giving rise to contract claims as well as statutory and common law claims.

Response costs incurred to date by the BKK Group approximate $50 million.  The State of California has estimated that the total response costs at or related to the Site could be in excess of $600,000,000.  Each of WMB and WMI, directly or indirectly, by and through its respective predecessors, successors and/or subsidiaries and affiliates is a former creator, owner or operator of the BKK Landfill and as such jointly and severally liable for recoverable response costs at the BKK Landfill.  In addition, each has contractual liabilities to the BKK Group and potential tort liabilities in connection with the BKK Landfill.  *See* the BKK Group's Proof of Claim incorporated herein by reference.

## ARGUMENT

As stated above, the BKK Group joins in the DTSC Objections and adopts each of the specific objections applicable to the claims and interests of the BKK Group including, without limitation, as such interests relate to these proceedings, the receivership of WMB (the "**Receivership**"), non-debtor affiliates of the Debtors, the FDIC Receiver and JP Morgan Chase ("**JPMC**"). .

The Disclosure Statement does not provide "adequate information" that would enable creditors in general and the BKK Group in particular, to make an "informed judgment" about the Joint Plan as required by 11 U.S.C. § 1125, subdivisions (a) and (b). These deficiencies infect both the structural elements of the Joint Plan and the provisions of specific interest to BKK-Claimants.

In addition, the Joint Plan as presented cannot be confirmed and therefore the Disclosure Statement should not be approved. Among other deficiencies, the proposed Joint Plan continues to include sweeping Debtor releases and releases of non-debtor third-party liabilities and injunctions that extend far beyond even what the Third Circuit's relatively liberal rules allow. Although the release and injunction provisions remain convoluted, circular and confusing even in the third version of the Joint Plan, the proponents of the Joint Plan seem to be asking the Court to release Debtors, JPMC, and the Federal Deposit Insurance Corporation ("**FDIC**") and all of their present and former predecessors, successors, insiders, affiliates, professionals and others, from virtually any liability even tangentially related to this bankruptcy and the preceding events that gave rise to it, including, for example, but by no means limited to, JPMC's liabilities to the BKK Group and the DTSC arising from its pre-petition assumption of the WMB assets and liabilities (including BKK Landfill related Consent Decrees and contractual liabilities) under its Purchase and Assignment from the FDIC; the FDIC's liabilities to the BKK Group and the DTSC arising from and in the Receivership (which are presently the subject of a Complaint filed by the BKK Group); non-debtor WMB's liabilities to the BKK Group and the DTSC arising from its pre-petition CERCLA and state law liabilities at the BKK Site, Consent Decrees to which it is a party and a joint defense agreement it entered with the BKK Group; non-debtors WMI subsidiaries' (WMI Rainier LLC and ADI) liabilities to the BKK Group and the DTSC

arising from their predecessors' pre-petition CERCLA and state law liabilities at the BKK Site; and Debtor Washington Mutual Inc.'s ("**WMI**") liability to the BKK Group and the DTSC arising from its predecessors' pre-petition CERCLA and state law liabilities at the BKK Site.

The Debtors' proposed disclosure statement approval, solicitation and confirmation procedures are improper because the requested deadlines for objections, voting and the confirmation hearing are premature given the sweeping defects in the Joint Plan and Disclosure Statement; the proposed methods for establishing the allowed amount of a claim for voting purposes are contrary to the procedures established in the Bankruptcy Code and Rules; and the proposed ballots are improper given the internally inconsistent and incomprehensible provisions regarding the releases, injunctions and the opt out election, and other reasons provided below and in the DTSC Objections.

In addition to the Objections lodged by the DTSC that are adopted herein by reference, the BKK Group makes the following additional objections to the Disclosure Statement, Solicitation and Confirmation procedures that the Debtors request this Court to consider and approve at the upcoming hearing on June 3, 2010.

I. THE DEBTORS' PROPOSED DISCLOSURE STATEMENT, SOLICITATION AND CONFIRMATION PROCEDURES SHOULD NOT BE APPROVED

    A. Debtors' Request for Court Approval *Nunc Pro Tunc* of The Notice of Disclosure Statement Hearing and The Proposed Procedures for the Filing of Objections to the Disclosure Statement, and The Request For a Finding That The Disclosure Statement Objection Procedures Comply with Bankruptcy Rules 2002 and 3017(a) Should be Denied.

Debtors' request for court approval *nunc pro tunc,* of the Notice of Disclosure Statement Hearing should be denied. Compliance with the 28-day notice period should be judged upon the filing date of a disclosure statement that relates to a facially feasible plan. In this case, the Joint

Plan is entirely and utterly dependent upon a written settlement agreement among the Debtors, JPMC and the FDIC, and others, and that settlement agreement was openly not accepted by all the parties until the May 21, 2010 filing of the Debtors' Second Amended Joint Plan.. Because it was not apparent that a settlement would be reached prior to such time, the period prior to May 21, 2010 should not be considered within the required 28-day notice period. The disclosure statement hearing is now scheduled to commence on June 3, 2010, only 13 days after the filing and notice of the filing of the Disclosure Statement and less than the 28-days' notice required. The filing dates of neither of the two prior versions of the Disclosure Statement should be used to bring the Disclosure Statement hearing Notice in compliance with the Rule because not only did those versions materially differ from the May 21, 2010 version, those versions were each filed prior to the execution of or even informal agreement to the Global Settlement Agreement upon which the Joint Plan is entirely founded.

This Court need not and should not affirmatively find that the notice procedures employed by Debtors complied with applicable Rules.

B.   Objections to the Solicitation Procedures--Voting

Creditors or equity holders who are not entitled to vote because their claims are unimpaired or because they are deemed to reject the plan, or because their claim may be subject to an unresolved objection or motion to estimate, apparently are not allowed under the Joint Plan to cast a ballot. As a result they are not given an opportunity to affirmatively opt out of the releases that without consent, may not be approved or confirmed in any plan. This is highly objectionable and the Court ought not to approve any balloting procedures the result of which would be to deprive stake holders of their right to reject or otherwise withhold their consent to

the sweeping Debtor and third-party releases and injunctions, assuming they can be proposed at all.

In addition, BKK Claimants, because their claims to some extent may be unliquidated, will, at best have their claim temporarily allowed at $1 for voting purposes pursuant to the Motion. See the Motion at Para 41(b). This is fundamentally unfair as the BKK Group's claims have a value well in excess of $1 dollar and the method proposed by Debtors is not narrowly tailored to strike a fair balance between the unliquidated amount and the right to cast a meaningful vote. In addition, if the Debtors file an objection to the BKK Group's Claim or a motion to estimate it, then such claim becomes "disputed" and the BKK Group is not allowed to vote. See the Motion at paragraph 41(g). Finally, the procedures proposed by the Debtors would allow them to file an objection or motion to estimate the BKK Group's claim on the eve of the balloting deadline and leave insufficient time for the BKK Claimant to secure an order from the Court estimating its claim or temporarily allowing it for voting purposes.

In addition, the "Record Date" as proposed by the Debtor as the date for determining which creditors and equity holders are entitled to vote, is too soon. Given the inadequacies of the Disclosure Statement as outlined herein, the proposed Record Date provides insufficient time within which creditors such as the BKK Claimants can obtain a timely estimation or temporary allowance or reserves order.

Debtors propose that for voting purposes the amount of a claim shall be the Debtors' scheduled amount in most cases rather than the proof of claim amount with exceptions that do not eliminate the inequities and violations of the Code. It is black letter law that a properly filed proof of claim is deemed allowed for all purposed unless and until objected to in accordance with

applicable Rules.  Debtor ought not to be able to unilaterally alter this law and obtain approval of some other method to avoid the deemed-allowed status of a claim.  Thus, the proposed procedures set forth in the Motion at paragraphs 40 - 42 are objected to and should be rejected.

The form of ballots proposed by the Debtors, particularly for the BKK Claimants in Class 12, should not be approved.  First, Debtors present no compelling evidence as to why the Official Form No. 14 ballot cannot suffice.  Second, the releases and injunction plan provisions on the ballots are confusing, incomprehensible and internally inconsistent as specifically outlined in the DTSC Objections.  For example, the release provision, after it describes an opt-out option to enable a claimant to elect to opt out of the sweeping releases, then nullifies that provision by stating that the election will not be valid and that even the opt out claimant will be bound by the releases and injunctions without its consent.  See proposed ballots.

The BKK Group objects to the voting deadline as premature.  Given the deficiencies with the Disclosure Statement and Joint Plan, the proposed voting deadline is premature and will allow insufficient time for parties in interest to review and evaluate any revised plan and disclosure statement necessitated by the deficiencies in the one now pending.  The BKK Group imposes a similar objection to the proposed confirmation hearing date and the proposed deadline for objections to confirmation for the same reasons.  Although the BKK Group realizes the benefit of having a confirmation hearing and objection deadline on the calendar to encourage timely resolution of disputes, the schedule selected by the Debtors here is simply too aggressive given that as of this date the proposed Disclosure Statement is materially deficient.

The BKK Group herein reserves all rights to lodge additional objections to the Motion and the proposed Disclosure Statement, and the Joint Plan, and, if necessary, to seek additional

time to do so if an amended disclosure statement and/or plan is filed between the date hereof and any hearing date on the Motion.

**WHEREFORE**, the BKK Group respectfully requests that the Motion be **DENIED**, and that the Court deny approval of the Disclosure Statement.

Respectfully submitted:

Dated: May 28, 2010   PHILLIPS, GOLDMAN & SPENCE, P.A.


 /s/ John C. Phillips, Jr._____
John C. Phillips, Jr., Esquire (#110)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
(302) 655-4210
jcp@pgslaw.com

AND

BINGHAM MCCUTCHEN LLP
Milissa Murray, Esquire
2020 K Street, NW
Washington, DC 20007
202.373.6511
m.murray@bingham.com