# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF DELAWARE

```
----------------------------------------------------------x
                                            :    Chapter 11
                                            :
In re                                       :    Case No. 08-12229 (MFW)
                                            :    (Jointly Administered)
WASHINGTON MUTUAL, INC., et al.,[1]         :
                                            :    Re: Docket No. 4242
   Debtors                                  :
                                            :    Objection Deadline: May28, 2010 at 4:00 p.m
                                            :    Hearing Date: June 3, 2010 at 10:30 a.m.
                                            :
----------------------------------------------------------x
```

## SUPPLEMENTAL OBJECTIONS OF THE CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL TO DEBTORS' DISCLOSURE STATEMENT FOR THE SECOND AMENDED JOINT PLAN

The California Department of Toxic Substances Control (DTSC), submits the following objections (the Supplemental Objections) to the Debtors' "Disclosure Statement for the Second Amended Plan" and to Debtors' proposed procedures for voting and plan confirmation.[2] For the reasons stated herein, DTSC respectfully contends that the Disclosure Statement does not comply with 11 U.S.C. § 1125 and respectfully urges the Court not to approve the Disclosure Statement in its present form.

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98104. This document uses the following acronyms: WMI for Washington Mutual Inc.; WMB for Washington Mutual Bank; JPMC for JP Morgan Chase.

[2] Unless otherwise indicated herein, any reference in these Supplemental Objections to "the Disclosure Statement," "the Plan," or "the Global Settlement Agreement" refer to the second amended versions of those documents.

DTSC believes that most of the objections stated herein as they affect DTSC could be resolved and eliminated without substantial difficulty in negotiation with JPMC or in a three-way negotiation with JPMC and Debtors.  Unfortunately, DTSC's repeated attempts to commence such negotiations have been unsuccessful.

## I.    INCORPORATION OF PRIOR OBJECTIONS.

On May 13, 2010, DTSC filed objections to Debtors' initial Disclosure.  (Docket Number 3722; Exhibit 1 to these Supplemental Objections.) .  These Supplemental Objections incorporate by reference the following sections and subsections of DTSC's earlier objections.[3]

I.      INTEREST OF DTSC AND THE OTHER BKK-RELATED CLAIMANTS.
   A.      Debtors' Relationship to the BKK Landfill.
   B.      DTSC and the other BKK-related Claimants have incurred Response
           Costs at the BKK Class I Landfill
II.     STANDARDS FOR DISCLOSURE STATEMENT
IV.     THE PLAN AND DISCLOSURE STATEMENT ARE REPLETE WITH
        AMBIGUITIES AND CONTRADICTIONS THAT PRECLUDE ANY
        MEANINGFUL DETERMINATION OF THE PLAN'S IMPACT.
V.      THE DISCLOSURE STATEMENT, MIRRORING THE PLAN, DOES NOT
        CLEARLY INDICATE IF, OR TO WHAT EXTENT, THE BKK LIABILITIES
        WILL BE ASSUMED BY JPMC AND/OR PAID.
   A.      Summary of the Provisions in the Plan and Global Settlement Agreement
           Regarding BKK
   B.      Examples of Fundamental Questions About the BKK Liability that the
           Disclosure Statement and the Plan do not Answer.
   C.      The Disclosure Statement Fails to Explain Why it is Proper or Fair for the
           Debtors to Cause Non-debtor WMI Rainier to be Stripped of its Insurance
           Assets for the Benefit of JPMC, while Leaving WMI Rainier with its
           and/or ADI's BKK Liability.
   E.      The Disclosure Statement Does Not Provide Adequate Information about
           the WMI Rainier.
   F.      The Disclosure Statement Does Not Adequately Explain Why the BKK
           Claims are Included in Class 12, General Unsecured Claims or Provide
           Any Justification for the Disparate Treatment of Such Claims.

---

[3] Where no subsections are identified, these Supplemental Objections incorporate the entire section from the earlier objections.

VI. THE PLAN IS NOT CONFIRMABLE IN ITS CURRENT STATE.
  A.    The Plan Impermissibly Redefines "Claim" a fundamental Bankruptcy Concept and May Thereby Eviscerates Many of the Limitations on the Impact of a Bankruptcy Plan.
  B.    The Releases and Injunctions in the Plan are impermissible on their face and thus, the Plan is not feasible and approval of the Disclosure Statement should be denied.
  C.    Potential Impacts of the Release Provisions on the BKK-related Claimants.
VII.   THE DEBTORS' PROPOSED DISCLOSURE STATEMENT, SOLICITATION AND CONFIRMATION PROCEDURES SHOULD NOT BE APPROVED.

These Supplemental Objections hereby incorporate by reference the above-listed sections from DTSC's objections to Debtors' first proposed Disclosure Statement, Docket Number 3722.

## II.  SPECIFIC OBJECTIONS TO THE DISCLOSURE STATEMENT

These Supplemental Objections identify specific instances where the Disclosure Statement fails to provide adequate information for DTSC to make an informed judgment about the Plan.  In each of those instances the Disclosure Statement violates 11 U.S.C. § 1125.  Each of these failures to provide adequate information is based on one or more of the following: the Disclosure Statement does not provide specific information that DTSC would need to evaluate the impact of the Plan; the Disclosure Statement fails to adequately explain the Debtors' reason for making specific choices; or the Plan and the Disclosure Statement are unclear and the impact of the Plan is therefore uncertain.  In many of latter instances in particular, the Disclosure Statement often simply repeats ambiguous language from the Plan.

The objections specified herein are in two categories.  The first set of objections pertain the provisions of the Plan that are specific to the BKK-liability or that specifically impact the handling of the BKK-liability.  The second set of objections concern the discharges, releases and injunctions proposed in Article 43 of the Plan.  These provisions continue to be extraordinarily

3

vague and overbroad.  Rather than making any effort to explain the releases provided in the Plan,

the Disclosure reproduces the text of Article 43 essentially verbatim.

## A.    Objections Pertaining to BKK-Specific Impacts of the Plan.

As explained in Sections I and V.A. of DTSC's earlier objections, both WMB and WMI

Rainier are successors to owners and operators of the closed BKK hazardous waste landfill. [4]

DTSC also claims that WMI is a liable party for the BKK Landfill under the Comprehensive

Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601,

9607.  Under the Purchase and Assumption Agreement, JPMC assumed WMB's liability for the

BKK Landfill.  In the Global Settlement Agreement, Section 2.21, and the Plan, Section

2.1(f)(4), JPMC assumes WMI's liability for the BKK Landfill.  However, as discussed herein,

the scope of JPMC's assumption of WMI's liability is unclear.  What portion of that liability

JPMC is assuming is one of the foundations of the Plan's impact on DTSC's interests and on the

interests of the other BKK-related Claimants.  DTSC cannot make an informed judgment about

the Plan without clarification of the issues discussed herein.

### 1.    Objections Asserting that the Disclosure Statement Does Not Clarify
### the Scope of JPMC's Assumption of the BKK Liability

**Objection Number 1.**        It is not clear how much of the liability in DTSC's Claim

JPMC is assuming. The language of JPMC's assumption of liability, in section 2.21(a)(a) of the

---

[4] At various places throughout these Supplemental Objections, DTSC discusses the liability of WMI and entities related to WMI, including WMI Rainier and WMB, as if those entities had separate liability.  DTSC contends and reserves the right to argue that the various entities related to WMI are jointly and severally liable for any BKK response costs and further that each of the entities have primary liability for those costs and/or are co-liable with WMI Rainier LLC.

Global Settlement Agreement is not consistent with the language of DTSC's claim. [5]  Further,

Section 2.21(c) of the Global Settlement Agreement states that JPMC is not assuming any BKK

liability not included in Section 2.21(a). The Disclosure Statement should clarify what portion of

WMI's BKK Liability would be assumed by JPMC and what portion of that liability JPMC

would not assume.

      **Objection Number 2.**      It is not clear if JPMC is assuming all of WMI's liability

for Response Costs, as defined in CERCLA Section 101, 42 U.S.C. § 9601(25), at the BKK

Landfill.  The Disclosure Statement should clarify if JPMC is assuming all of WMI's liability for

response costs at the BKK landfill.

      **Objection Number 3.**      It is not clear if JPMC is assuming all of WMI's liability

for Natural Resources Damages, if any, at the BKK Landfill.  The Disclosure Statement should

clarify if JPMC is assuming all of WMI's liability for Natural Resource Damages at the BKK

landfill.

---

[5] Here is how DTSC's Proof of Claim characterizes DTSC's claim (page 12):

"DTSC claims all response costs incurred pre-petition, post-petition and such response costs which DTSC may incur
in the future, including but not limited to response costs related to remedial investigation activities, Site
characterization and cleanup of soil and groundwater as warranted."   DTSC also claimed Natural Resource
Damages.

Here is the core of JPMC's assumption of BKK liability from Paragraph 2.21 of the Global Settlement Agreement:

"any and all liabilities and obligations of the WMI Entities (other than WMI Rainier LLC) for remediation or clean-
up costs and expenses (and excluding tort and tort related liabilities, if any), in excess of applicable and available
insurance, arising from or relating to (i) the BKK Litigation, (ii) the Amended Consent Decree, dated March 6,
2006, entered in connection therewith, and (iii) that certain Amended and Restated Joint Defense, Privilege and
Confidentiality Agreement, dated as of February 28, 2005, by and among the BKK Joint Defense Group, as defined
therein."

**Objection Number 4.**          It is not clear if JPMC is assuming any BKK liability for which WMI is derivatively liable as the sole shareholder of WMI Rainier and its predecessors, i.e. alter ego liability. Section 2.21(c) of the Global Settlement Agreement states that "Nothing in Section 2.21 is intended to transfer to JPMC . . . any liabilities of WMI Rainier." The Disclosure Statement should clarify if JPMC is assuming BKK liability for which WMI is derivatively liable as the parent of WMI Rainier.

**Objection Number 5.**          The scope of "tort and tort-related liabilities" in BKK Liabilities is unclear.  In section 1.41 of the Plan, "tort and tort-related liabilities" are excluded from BKK Liabilities.  JPMC therefore does not assume the tort-related liabilities.  However, the scope of "tort and tort-related liabilities" is unclear.  Disclosure Statement should clarify what is included in "tort and tort-related liabilities."

**Objection Number 6.**          It is not clear why Debtors agreed to the restrictions on the scope of JPMC's assumption of BKK Liability.  As discussed above, under the Plan, JPMC is not assuming the tort-related portion of the BKK Liability and possibly other aspects of the BKK Liability.  The Disclosure Statement should explain why Debtors agreed to an incomplete assumption of the BKK Liability by JPMC.  In addition, the Disclosure Statement should disclose the reason why WMI Rainier's liability at the BKK Site is carved out of the assumed BKK-Liabilities and the consideration provided to the Debtors for agreeing to such limitation

**Objection Number 7.**          The relationship between JPMC's agreement to pay the BKK Liabilities and DTSC's rights to seek payment in the bankruptcy is unclear under the terms of the Global Settlement Agreement.  Section 2.21 of the Global Settlement Agreement seems to contemplate that DTSC and other BKK-related claimants can (1) litigate and negotiate with

JPMC outside the bankruptcy for payment of the BKK Liabilities and (2) pursue its claim for BKK response costs in this Bankruptcy. These actions by the BKK-related claimants would have both overlapping and distinct components. The Disclosure Statement should clarify Debtors' view of any impact from pursuing the overlapping portions in both forums.

**Objection Number 8.**         The impact of "applicable and available insurance" on "BKK Liabilities" as defined in the Plan is not clear. Mirroring Section 2.21(a) of the Global Settlement Agreement, Section 1.41 of the Plan defines "BKK Liabilities" as "liabilities and obligations . . . in excess of applicable and available insurance." The exclusion from BKK Liabilities of the insurance is unclear in the respects indicated in this and the following objection. DTSC recognizes that the general intent of the exclusion may be appropriate and understandable, It is not clear, nonetheless, how the amount of "applicable and available insurance" would be determined, whether for example, the term refers to policy limits or amounts actually paid by insurers. The Disclosure Statement should clarify what is meant by "applicable and available insurance.".

**Objection Number 9.**         It is unclear if "applicable and available insurance" is limited to WMI's share of any such insurance. WMI, WMB, WMI Rainer and possibly other entities may each be insureds under the BKK-Related Policies. The Disclosure Statement should clarify if "applicable and available insurance" in Section 1.41 of the Plan is limited to WMI's share of any such insurance or includes the shares of all of each policy's insureds.

**Objection Number 10.**         The Disclosure Statement should specify who is required to prosecute recovery of proceeds from the BKK-Related Policies; and whether and to what extent claims on the BKK-Related Policies have heretofore been made by the Debtors (or others)

and if any notices required under the BKK-Related Policies have been complied with.  In short, with no disclosures regarding the status of claims made under the BKK-Related Policies, the BKK related claimants cannot evaluate the extent or value of the JPMC assumption.

**Objection Number 11.**        It is unclear whether under the Plan JPMC is entitled to argue that (1) JPMC, under the Purchase and Assumption Agreement, did not assume all of WMB's  BKK- liability and/or (2) that, despite the Purchase and Assumption Agreement, some of WMB's BKK liability remains with the FDIC.  Notably, Section 3.8 of the Global Settlement Agreement arguably preserves JPMC's "right to assert that liabilities remained with the FDIC." The Plan, including through section 1.156, seems to incorporate Section 3.8 of the Global Settlement Agreement.  The Disclosure Statement should clarify whether the Plan, including the Global Settlement Agreement, entitles JPMC to assert that JPMC did not assume all of WMB's BKK Liability.

**Objection Number 12.**        It is unclear whether the Plan releases FDIC's or JPMC's BKK Liabilities arising from their successor interests in WMB, is released. Notably, JPMC and the FDIC are preserving their claims against each other under the Purchase and Sale Agreement. The Disclosure Statement should clarify whether to what extent, if any,  JPMC's and FDIC's BKK related liabilities are being released.

>       **2.**     **Objections Asserting that the Disclosure Statement Does Not**
>
>                **Provide Essential Financial Information Related to the BKK**
>
>                **Liabilities.**

**Objection Number 13.**        The value of JPMC's assumption of the BKK Liabilities is not clear.  The Plan describes that assumption of liability as an "Additional Consideration[] to

Debtors." Section 2.1(f)(4). However the value of that consideration to Debtors is nowhere specified, either qualitatively or quantitatively. The Disclosure Statement should specify the value of JPMC's assumption of the BKK Liabilities.

**Objection Number 14.** The net worth of WMI Rainier is nowhere specified. Nor is it specified what amount of its BKK liabilities WMI Rainier could pay. These questions are of key importance to DTSC and the other BKK-related claimants. It appears likely that the releases specified in Article 43 of the Plan would immunize JPMC and various WMI insiders from any responsibility for causing the collapse of WMB. Prior to that collapse, WMB, on behalf of other WMI Entities, presumably including WMI Rainier, was paying response costs at the BKK landfill, in effect assuming all of WMI's liability for response costs at the landfill. The Disclosure Statement should provide financial information about WMI Rainier. The Disclosure Statement should also disclose to what extent Debtors believe WMI Rainier has BKK liability, how such liability came to rest in WMI Rainier and the basis for the Debtors' agreement to consent to a carve out of WMI Rainier's from other BKK Liabilities to be assumed by JPMC.

**Objection Number 15.** It is not clear in either dollar amount or percentage, what amount or portion of any funds that WMI Rainier or its predecessor ADI had on deposit at WMB at the time of the FDIC seizure will be returned to WMI Rainier. Reportedly, ADI had significant cash on deposit in WMB at the time of the takeover and the extent to which such funds will or will not be available or dedicated to satisfy BKK liabilities should be disclosed. The Disclosure Statement should specify the amount of money that will be returned to WMI Rainier under the Plan.

**Objection Number 16.** The statement, on page 115, of the Disclosure Statement that "For the avoidance of doubt, nothing in the Plan or Global Settlement Agreement is intended to release WMI Rainier from claims asserted against WMI Rainier and its assets relating to the BKK Litigation" is unclear and unsupported Section 1.157 explicitly identifies WMI Rainier as a Released Party. Several provisions within Article 43, including provisions in Sections 43.2(b), 43.6, 43.9, and 43.12, release claims, such as those related to the BKK Litigation, against Released Parties. A statement of intention in the Disclosure Statement that is not supported by the language of the Plan is not adequate. The Disclosure Statement should explain the basis for the assertion on page 115.

**Objection Number 17.** It is not clear how JPMC or Debtors are accounting for any BKK-related funds possessed or owed to NAMCO, a subsidiary of WMB. DTSC is informed that NAMCO lent money to BKK Corporation in or around 2003 and that some or all of that money, including substantial interest payments, has been returned to NAMCO. The Disclosure Statement should specify the amount of funds that NAMCO received from BKK Corporation and the amount of any liability BKK Corporation has to NAMCO and should specify how those funds and liabilities are accounted for.

**B.    Objections Pertaining to the Discharges, Releases, and Injunctions Specified in Article 43 of the Plan.**

Article 43 is of fundamental importance to DTSC because the discharges, releases and injunctions it contains may determine the impact of the Plan on future actions DTSC may bring. Language in Article 43, if confirmed and subsequently upheld, could for example restrict DTSC's ability to seek regulatory injunctions against the reorganized Debtors. Likewise, Article

43, if confirmed and subsequently upheld, could restrict DTSC's ability to seek payment from non-Debtors.  Therefore, unless the scope of the discharges, releases and injunctions proposed in Article 43 are clear, DTSC cannot make an informed judgment of the impact of Plan confirmation on DTSC's rights and interests.  Unfortunately, the Disclosure Statement does not explain any of the provisions of Article 43.  Rather, on pages 114 to 120, it merely incorporates the provisions of Article 43 essentially verbatim.  This is an abdication of responsibility.  The goal of the Disclosure Statement is to disclose and clarify, not to repeat.

    **1.**       **Objections Asserting that the Disclosure Statement Fails to Explain the Plan's Definition of "Claim," Which is Inconsistent from that in the Code and is Ambiguous**

Section 1.62 of the Plan defines the term "Claim" in a manner inconsistent with Section 101(5) of the Bankruptcy Code.  . As described herein, the Plan's definition of Claim introduces fundamental uncertainties.  Without clarification, DTSC cannot make an informed judgment on the Plan.  Unfortunately, the Disclosure Statement does not discuss the consequences of Debtors' choice to substitute their own definition of Claim for that specified in 11 U.S.C. § 101(5).

**Objection Number 18.**       It is unclear if "Claims" as defined in the Plan includes a right to an equitable remedy for breach of performance where that breach does not "give rise to a right to payment."  If so, "Claim" as used in the plan would include rights that are not "Claims" as that term is used in the Bankruptcy Code.  The Disclosure Statement should state clearly whether "Claim" as used in the plan would include rights that are not "Claims" as that term is used in the Bankruptcy Code.  Without that clarification, DTSC cannot determine the impact of the Plan Conformation on its rights.

**Objection Number 19.** It is unclear if the term "Cause of Action" defined at Section 1.51 of the Plan includes only actions that could be brought by Debtors. In other words it is unclear whether "Cause of Action" as defined therein includes any actions that a non-Debtor could bring against either a Debtor or other non-Debtor. The term "Cause of Action" is used throughout Article 43 of the Plan and therefore its definition affect the scope of the releases and prohibitions specified in that Article. The Disclosure Statement should clarify if "Cause of Action" includes any actions brought by non-Debtors. Without that clarification, DTSC cannot determine the impact of the Plan Conformation on its rights.

### 2. Objections Asserting that the Disclosure Statement Does not Address Inherent Ambiguities in the Definition of "Released Claim."

Section 1.156 of the Plan defines the term "Released Claims," which determines the scope of the discharges, releases and injunctions proposed throughout Article 43, particularly those proposed specified in sections 43.6, 43.7, 43.9, and 43.12[6]. As described herein, the term "Released Claims" is ambiguous in certain fundamental respects. Without clarification, and resolution of those ambiguities, DTSC cannot make an informed judgment on the Plan. Unfortunately, the Disclosure Statement, at page 116, simply repeats verbatim the language of Section 1.156 of the Plan and therefore does not resolve the ambiguity or otherwise clarify the meaning of "Released Claim."

| Subpart | Text from Section 1.156 of the Plan[7] |
|---------|----------------------------------------|
|         |                                        |

[6] "Released Claims" is also defined in the Global Settlement Agreements, although the definitions appear dissimilar.

[7] Where it is helpful to explain the ambiguities and uncertainties in the Plan and Disclosure Statement, these Supplemental Objections reproduce long, complex plan provisions, dividing them up into Subparts for ease of reference.

| | |
|---|---|
| A | [Released Claims are] Collectively, to the extent provided in the Global Settlement Agreement, (a) any and all WMI Released Claims, JPMC Released Claims, FDIC Released Claims, Settlement Note Released Claims and Creditors' Committee Released Claims, in each case to the extent provided and defined in the Global Settlement Agreement and |
| B | (b) any and all Claims released or deemed to be released pursuant to the Plan, |
| C | in each case pursuant to clauses (a) and (b) above, to the extent any such Claims arise in, relate to or have been or could have been asserted (i) in the Chapter 11 Cases, the Receivership or the Related Actions, (ii) that otherwise arise from or relate to any act, omission, event or circumstance relating to any WMI Entity, or any current or former subsidiary of any WMI Entity, or (iii) that otherwise arise from or relate to the Receivership, the Purchase and Assumption Agreement, the Chapter 11 Cases, the 363 Sale and Settlement as defined in the Global Settlement Agreement, the Plan and the negotiations and compromises set forth in the Global Agreement and the Plan, |
| D | excluding however, in the case of clauses (a) and (b) hereof, and subject to the provisions of Section 3.8 of the Global Settlement Agreement, any and all claims that the JPMC Entities, the Receivership, the FDIC Receiver and the FDIC Corporate are entitled to assert against each other or any other defenses thereto pursuant to the Purchase and Assumption Agreement, which claims and defenses shall continue to be governed by the Purchase and Assumption Agreement, |
| E | and any and all claims held by Entities against WMB, FDIC Corporate, and/or FDIC Receiver in the Receivership; |
| F | provided, however that "Released Claims" shall not include any avoidance action or claim objection regarding an Excluded Party or the WMI Entities, WMB, each of the Debtors' estates, the Reorganized Debtors and their respective Related Persons. |

**Objection Number 20.**         In Subpart B of Section 1.156, inclusion of the phrase "Claims released . . . pursuant to the Plan" renders the definition tautological and therefore unclear.  The Plan defines "Released Claims" to include "any and all Claims … released pursuant to the Plan." Boiled down further, the Plan defines "Released Claims" to include all "Claims … released" by the Plan.  Definitions embodying tautologies are inherently unclear.  With this tautology at its core, the Plan's definition of "Released Claim" is meaningless.  The many succeeding words in the definition, in subparts, C, D, E and F, add no clarity.  The Disclosure Statement should, if possible, clarify why this tautology does not render "Released Claim" meaningless.

**Objection Number 21.**　　　　In Subpart B of Section 1.156, the phrase "Claims . . . deemed to be released pursuant to the Plan" is unclear.  In particular, the word "deemed," by incorporating unspecified future interpretations of the Plan, add uncertainty. Further, the incorporation of future interpretations implicitly acknowledges that Plan does not fully specify which Claims are Released. The Disclosure Statement should, if possible, clarify this uncertainty in the definition of "Released Claims."

**Objection Number 22.**　　　　The relationship of Subpart C of Section 1.156 to the rest of the definition of "Released Claim" is unclear.  Indeed, it is unclear whether Subpart C has any impact on the definition.  Further it is unclear whether the inclusion of Subpart C in the definition expands or contracts the set of "Released Claims."  The Disclosure Statement should explain clearly how Subpart C clarifies how the meaning of "Released Claim."

**Objection Number 23.**　　　　It is not clear whether Subpart E of Section 1.156 is attached to Subpart D or to Subparts A and B.  In other words, it is unclear whether (i) Subpart E specifies additional claims that, along with those Claims specified in Subparts A and B, are Released Claims or (ii) Subpart E species additional Claims, with those described in Subpart D, are excluded from the class of Released Claims.  This is a question of significant import.  If the latter were correct, no claims against the FDIC would be released. Unless the Disclosure Statement clarifies how the meaning of "Released Claim" despite this uncertainty, DTSC will not be adequately informed about the impact of Plan Confirmation.

3.　　**Objections Asserting that the Disclosure Statement Does not Clarify Ambiguities in Section 43.2**

Section 43.2 of the Plan is the first of at least three sections (43.2, 43.5, 43.6) that purport to provide releases and discharges to debtors and non-debtors. As described herein, Section 43.2 is ambiguous in certain fundamental respects. Without clarification, and resolution of those ambiguities, DTSC cannot make an informed judgment on the Plan.

**Objection Number 24.** The phrase "any *other or further* Claims or any *other* obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities" in the first sentence of Section 43.2(b) is unclear. (Emphasis added.) This sentence prohibits Entities from asserting these *other* Claims against "Released Parties." However the prior paragraph discharges Claims against "Debtors and Reorganized Debtors" only, not against all "Released Parties." In each of these two paragraphs, certain Claims are the direct objects and certain parties who will be protected from those Claims are the indirect objects. Because the paragraphs explicitly pertain to different indirect objects (Debtors and Released Debtors only versus all Released Parties) the terms "other" and "further" in Section 43.2(b) introduce a fundamental uncertainty. The Disclosure Statement should clarify exactly what Claims are affected by Section 43.2(b).

**Objection Number 25.** The referent of the phrase "such Claims" in the second sentence of Section 43.2(b) is unclear. In part because of the ambiguity described in the previous objection, it is not clear what Claims are included in the term "such Claims." The Disclosure Statement should clarify what Claims are included in "such Claims."

**Objection Number 26.** It is unclear how the last sentence of Section 43.2(b), and other release provisions in Section 43.2, relates to the "opt-out" provisions specified in Section 43.6 and elsewhere. The last sentence of Section 43.2(b) states that "each holder of a Claim," in

15

other words all creditors, are deemed to release and waive a wide set of Claims against the "Released Parties." Yet Section 43.6 and other provisions of the Plan and the ballots purport to allow creditors to opt-out of the releases. The Disclosure Statement should indicate whether the opt out provisions of Section 43.6 pertain to the releases specified in Section 43.2.

**Objection Number 27.** It is unclear if section 43.2(c) releases any claims that WMI Rainier has against JPMC or WMI related to BKK liability remaining with WMI Rainier. Prior to its collapse, WMB was paying response costs at the BKK landfill on behalf of WMI and other WMI Entities. Following Plan confirmation, WMI Rainier might be forced to bear a larger share of the BKK liabilities and therefore might have a claim against JPMC to the extent, as alleged by others, that JPMC contributed to the collapse of WMB. The Disclosure Statement should indicate whether Section 43.2(c) would release any claims WMI Rainier might have against either JPMC or other WMI Entities related to the collapse of WMB and WMI Rainier's subsequent responsibility to pay BKK Liabilities.

**Objection Number 28.** It is unclear, why Section 43.2(b) incorporates a prohibition into a Section that otherwise contains only releases or discharges. Generally, Article 43 of the Plan separates releases and discharges, (43.2, 43.5, 43.5), on one hand, from injunctions, bars and prohibitions (43.3, 43.7, 43.9 and 43.12), on the other. However, although section 43.2 is identified as containing discharges and releases, section 43.2(b) "precludes" "all Entities" from asserting various claims. This drafting suggests that Section 43.2 initially sufficed for the entirety of Article 43. Nonetheless, numerous additional releases and injunctions have been added to Article 43 and the impact of including a prohibition within a release is unclear.

## 4. Objections Asserting that the Disclosure Statement Does not Clarify Ambiguities in Section 43.3

Section 43.3 of the Plan is one of at least four sections that enjoin creditors and other entities from bringing actions against the Debtors, Released Parties or Related Entities. As described herein, Section 43.3 is ambiguous in certain fundamental respects. Without clarification, and resolution of those ambiguities, DTSC cannot make an informed judgment on the Plan.

| Subpart | Text from Section 43.3 -- Injunction on Claims: |
|---------|------------------------------------------------|
| A | Except as otherwise expressly provided in the Plan, the Confirmation Order or such other order of the Bankruptcy Court that may be applicable, all Entities, and each Related Person of such Entities, who have held, hold or may hold Claims or any other debt or liability that is discharged or Equity Interests or other right of equity interest that is terminated or cancelled pursuant to the Plan or the Global Settlement Agreement, or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Sections 43.2 or 43.6 hereof, respectively, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability or Equity Interest that is terminated or cancelled pursuant to the Plan against any of the Released Parties or any of their respective assets, property or estates, |
| B | (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets, property or estates, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets, property or estates, and |
| C | (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets, property or estates, with respect to any such Claim or other debt or liability that is discharged or Equity Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan; |
| D | provided, however, that such injunction shall not preclude the United States of America, any state or any of their respective police or regulatory agencies from enforcing their police or regulatory powers; and, |
| E | provided, further, that, except in connection with a properly filed proof of Claim, the foregoing proviso does not permit the United States of America, any State or any of their respective police or regulatory agencies from obtaining any monetary recovery from any of the Released Parties or any of their respective assets, property or estates, with respect to any such Claim or other debt or liability that is discharged or Equity Interest or other right of |

| | |
|---|---|
| | equity interest that is terminated or cancelled pursuant to the Plan, including, without limitation, any monetary claim or penalty in furtherance of a police or regulatory power; |
| F | and, provided, further that, subject to Section 3.8 of the Global Settlement Agreement, such injunction shall not preclude the JPMC Entities, the Receivership, the FDIC Receiver and the FDIC Corporate from pursuing any and all claims against each other or any other defenses thereto pursuant to the Purchase and Assumption Agreement. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets, property and estates. |

**Objection Number 29.**     It is unclear whether clauses (b) and (c), in Subpart B of Section 43.3 would enjoin actions against "Released Parties" that are unrelated to this Bankruptcy.  Clauses (b) and (c), on their face bar the Entities identified in Subpart A from enforcing any judgment or encumbrance against any of the Related Parties without regard to the basis for that judgment or encumbrance or the timing of the enforcement action.  No other provisions in Section 43.3 act in any obvious way to limit the scope of clauses (b) and (c).  The Disclosure Statement should explain the scope of clauses (b) and (c).

**Objection Number 30.**     In Subpart E of Section 43.3 it is unclear how the phrase "or any of their respective assets, property or estates" modifies the prohibition stated in this Subpart.  Prior to this phrase, the text would prohibit any governmental entity of the United States from obtaining any money recovery from any "Released Party" with respect to any discharged Claim.  The extension of this prohibition to the Released Parties' assets either adds nothing to the prohibition or, in some fashion, extends the prohibition beyond the bankruptcy. The Disclosure Statement should clarify this provision.

**Objection Number 31.**     The provision in Subpart E of Section 43.3 that prohibits any governmental entity of the United States from "obtaining . . . any monetary claim or penalty in furtherance of a police or regulatory power" is unclear.  On its face, this provision prohibits

any state or federal court from imposing any monetary penalty against a "Released Party" who failed to comply with an otherwise permissible injunction. This prohibition thus would appear to prohibit other courts from exercising their inherent authority to enforce otherwise valid injunctions they have issued. By merely incorporating the words of section 43.3 verbatim, without any further explanation, the Disclosure Statement fails to provide the essential information Creditors require. The Disclosure Statement should clarify the meaning of Subpart E.

**5.**     **Objections Asserting that the Disclosure Statement Does not Clarify Ambiguities in Section 43.5**

Section 43.5 of the Plan also purports to provide releases and discharges to debtors and non-debtors. As described herein, Section 43.5 is ambiguous in certain fundamental respects. Without clarification, and resolution of those ambiguities, DTSC cannot make an informed judgment on the Plan.

In section 43.5, Debtors and their Related Persons "fully, finally and forever waive, release, acquit, and discharge the Released Parties and each of their respective Related Persons, from any and all Claims or Causes of Action [that are] based upon, relate to, or arise out of or in connection with, in whole or in part, any act, omission, transaction, event or other circumstance relating to the Debtors, … or any of their respective Related Persons, taking place or existing on or prior to the Effective Date."

**Objection Number 32.**     It is unclear if Section 43.5 of the Plan would apply to claims that WMI Rainier might have against either WMI, JPMC or "their respective Related

Parties." The Disclosure Statement should clarify whether Section 43.5 would release any contribution claims related to the BKK Landfill that WMI Rainier might have against JPMC.

**Objection Number 33.** The Disclosure Statement should clarify whether Section 43.5 releases any claims WMI Rainier might have against JPMC related to the collapse of WMB.

## 6. Objections Asserting that the Disclosure Statement Does not Clarify Ambiguities in Section 43.6

Section 43.6 of the Plan also purports to provide releases and discharges to debtors and non-debtors. As described herein, Section 43.6 is ambiguous in certain fundamental respects. Although the Bankruptcy Code contemplates a discharge for Debtors, it does not follow that Reorganized Debtors and non-debtors are entitled to be released for any and all liability even remotely related to the case, over the objection of creditors Without clarification, and resolution of those ambiguities, DTSC cannot make an informed judgment on the Plan.

| Subpart | Text of 43.6 Releases by Holders of Claims and Equity Interests. |
|---|---|
| A | Except as otherwise expressly provided in the Plan, the Confirmation Order, or the Global Settlement Agreement, on the Effective Date, for good and valuable consideration, each Entity that has held, currently holds or may hold a Released Claim or any Equity Interest that is terminated, and each of its respective Related Persons, on their own behalf and on behalf of anyone claiming through them, on their behalf, or for their benefit, shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit and discharge each and all of the Released Parties from any and all Released Claims |
| B | in connection with or related to any of the Debtors, the Reorganized Debtors, the Affiliated Banks, or their respective subsidiaries, assets, liabilities, operations, property or estates, the Chapter 11 Cases or the Plan or the Disclosure Statement, the assets to be received by JPMC pursuant to the Global Settlement Agreement, the Plan Contribution Assets, the Debtors' Claims, the JPMC Claims, the FDIC Claim, the Purchase and Assumption Agreement, the WMI/WMB Intercompany Claims, any intercompany claims on the books of WMI or WMB related to the WaMu Pension Plan or the Lakeview Plan, claims related in any way to the Trust Preferred Securities (including, without limitation, the creation of the Trust Preferred Securities, the financing associated therewith, the requested assignment of the Trust Preferred Securities by the Office of Thrift Supervision and the transfer and the asserted assignment of the Trust Preferred |

20

| | |
|---|---|
| | Securities subsequent thereto), and/or any claim, act, fact, transaction, occurrence, statement, or omission in connection with or alleged in the Actions or in the Texas Litigation, or that could have been alleged in respect of the foregoing or other similar proceeding, including, without limitation, any such claim demand, right, liability, or cause of action for indemnification, contribution or any other basis in law or equity for damages, costs or fees incurred by the releasors herein arising directly or indirectly from or otherwise relating thereto; |
| **C** | provided, however, that each Entity that has submitted a Ballot may elect, by checking the appropriate box on its Ballot, not to grant the releases set forth in Section 43.6 of the Plan with respect to those Released Parties other than (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Trustees, and (iv) the Creditors' Committee and its members in such capacity and for their actions as members, their respective Related Persons, and their respective predecessors, successors and assigns (whether by operation of law or otherwise), in which case, such Entity that so elects to not grant the releases will not receive a distribution hereunder; |
| **D** | and provided, further, that, because the Plan and the Global Settlement Agreement, and the financial contributions contained therein, are conditioned upon the aforementioned releases, and, as such, these releases are essential for the successful reorganization of the Debtors, pursuant to the Confirmation Order, those Entities that opt out of the releases provided hereunder shall be bound and shall receive the distributions they otherwise would be entitled to receive pursuant to the Plan. |

**Objection Number 34.**       It is unclear how Subpart B of Section 43.6 modifies Subpart A.  On its face, Subpart B appears to specify which Released Claims or terminated Equity Interests are subject to release provided by Section 43.6.  The Disclosure Statement should clarify if there are Released Claims that do not meet any of the criteria of Subpart B.  If there are not any such Released Claims, the Disclosure Statement should explain why Subpart B is included in Section 43.6.

**Objection Number 35.**       The impact of the opt out provisions of Subpart C of Section 43.6 on other provisions of Article 43 is unclear.  The Disclosure Statement should clarify whether the opt out provisions of Section 43.6 apply to the various releases and prohibitions specified in Sections 43.2, 43.3, 43.5, 43.7, 43.9 and 43.12.

**Objection Number 36.**       The meaning of the following clause from Subpart C of Section 43.6 is unclear: "other than (i) the Debtors, (ii) the Reorganized Debtors, (iii) the

Trustees, and (iv) the Creditors' Committee and its members in such capacity and for their actions as members, their respective Related Persons, and their respective predecessors, successors and assigns (whether by operation of law or otherwise)." One possible interpretation of this clause is that even if a creditor successfully exercises the opt out provision of Subpart C, the creditor has still granted releases to the parties identified in items (i) to (iv), including their "respective Related Persons." Whether that interpretation is correct would substantially affect the value of the opt-out provision. The Disclosure Statement should clarify if a creditor opting out of the releases in Section 43.6 would still be releasing the parties identified in this objection.

**Objection Number 37.** The meaning of Subpart D of Section 43.6 is unclear. Subpart C purports to create an opt-out option for creditors entitled to vote who chose not to "grant the releases set forth in Section 43.6 of the Plan." However, Subpart D suggests that because "the aforementioned releases . . . are essential for the successful reorganization of the Debtors," Debtors intend for the Confirmation Order to provide that Entities opting out of the releases shall be "bound" to the releases anyway. This is an essential question for creditors considering whether to support the Plan. The absence of an opportunity to opt out of the releases would for some creditors be an important reason to vote against confirmation of the Plan , or for those not entitled to vote, to object to confirmation on the grounds that either the opt-out was not provided to them or that the releases cannot be imposed without their consent.. The Disclosure Statement should clarify Subpart D and in particular whether the term "bound" therein refers to creditors being bound by the releases and, if so, identify which creditors are so bound.

**Objection Number 38.** The impact of Section 43.10 on Entities that opt out pursuant to Subpart C of Section 43.6 or who are not entitled to vote but would, if given the

22

opportunity, opt out, is unclear.  Section 43.10 states that certain holders of Claims "shall be

deemed, to the fullest extent permitted by applicable law, to have *specifically consented* to the

releases set forth in Section 43.6 of the Plan."  (Emphasis added.)  Section 43.10 further indicates

that holders of Claims who elect not "to withhold consent to the releases" would be deemed to

have specifically consented.  However, Section 43.10 includes the phrase "or by order of the

Bankruptcy Court."  The significance of this phrase within Section 43.10 is unclear.  One

possible interpretation is that the quoted phrase references parties who are "bound" under

Subpart D of Section 43.6.  If that interpretation governed, Section 43.10 would be saying that

Entities who "by order of the Bankruptcy Court" "receive a distribution or any benefit under this

Plan" shall be "deemed . . . to have specifically consented" to the releases set forth in Section

43.6.  The Disclosure Statement should clarify if this Orwellian construction—wherein Entities

who have opted out of the releases are ordered by the Bankruptcy Court to have "specifically

consented" to those releases—is correct.   The Disclosure Statement should in any case clarify

the significance of the phrase "by order of the Bankruptcy Court."

   **Objection Number 39.**   The relationship of Sections 43.2 and 43.6 are unclear.

Each of these sections purports to provide broad releases and discharges.  Without understanding

the relative roles of these two sections, Creditors cannot make an informed judgment whether to

support the Plan with both provisions in it.  The Disclosure Statement should explain the

relationship of Sections 43.2 and 43.6

   **7.**  **Objections Asserting that the Disclosure Statement Does not Clarify**

      **Ambiguities in Section 43.7**

Section 43.7 of the Plan is one of at least four sections that enjoin creditors and other entities from bringing actions against the Debtors, Released Parties or Related Entities. As described herein, Section 43.7 is ambiguous in certain fundamental respects. Without clarification, and resolution of those ambiguities, DTSC cannot make an informed judgment on the Plan.

**Objection Number 40.**     It is unclear if Section 43.7 enjoins actions to prosecute or enforce Claims that are released under provisions of Article 43 other than those provisions included in Section 43.6. The Disclosure Statement should clarify if Section 43.7 enjoins actions that would assert or enforce any Claim that is released by a provision of Article 43 outside of Section 43.6.

**Objection Number 41.**     The scope of Section 43.7, as expressed in its ultimate clause is unclear. Section 43.7 seeks to enjoin any action, in one of five broad categories of actions, "that does not comply with or is inconsistent with the provisions of the Global Settlement Agreement, the Plan or the Confirmation Order." The quoted language is extraordinarily broad and seems to go far beyond the ostensible purpose of Section 43.7, which is to enjoin actions that would assert or enforce any Claim that was released by Section 43.6. The Disclosure Statement should clarify if Section 43.7 enjoins any actions beyond those that seek to assert or enforce a Claim that was released by Section 43.6. If so, the Disclosure Statement should further clarify those additional enjoined actions.

**Objection Number 42.**     It is not clear if Section 43.7 is subject to the police power exception provided in Subsection D of Section 43.3. The Disclosure Statement should clarify if

Section 43.7 would "preclude the United States of America, any state or any of their respective police or regulatory agencies from enforcing their police or regulatory powers."

## 8. Objections Asserting that the Disclosure Statement Does not Clarify Ambiguities in Section 43.9

Section 43.9 of the Plan is entitled the "Bar Order" of the Plan also purports to enjoin creditors and other entities from bringing actions against the Debtors, Released Parties or Related Entities. As described herein, Section 43.9 is ambiguous in certain fundamental respects. Without clarification, and resolution of those ambiguities, DTSC cannot make an informed judgment on the Plan.

| Subpart | Text from 43.9 Bar Order: |
|---------|---------------------------|
| A | Each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner |
| B | any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, |
| C | against any of the Released Parties, |
| D | based upon, related to, or arising out of or in connection with any of the Released Claims, the Debtors' Claims, the JPMC Claims, the FDIC Claim, the Purchase and Assumption Agreement (other than any rights or claims the JPMC Entities, the Receivership, the FDIC Receiver or the FDIC Corporate may have under the Purchase and Assumption Agreement), confirmation and consummation of the Plan, the negotiation and consummation of the Global Settlement Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Related Actions, |
| E | including, without limitation, any such claim, demand, right, liability, or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Related Actions, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the Related Actions or any other action brought or that might be brought by, through, on behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted). |

**Objection Number 43.** Taken as a whole, Section 43.9 is unclear. One possible interpretation is that Subpart A of Section 43.9 is the enforcement prohibition; Subpart B identifies what kinds of claims or other rights. are subject to the enforcement prohibition and Subpart D, as augmented by Subpart E, identifies which rights are subject to the enforcement prohibition. The Disclosure Statement should state if this interpretation is correct. If it is not the Disclosure Statement should specify the intended interpretation.

**Objection Number 44.** It is unclear if the rights identified in Subparts B, D and E of Section 43.9 are limited to "Released Claims" as defined in Section 1.156 of the Plan. The Disclosure Statement should clarify if the enforcement prohibition of Section 43.9 applies to any rights that are not Released Claims.

**Objection Number 45.** It is unclear if the prohibitions in Section 43.9 are limited by other provisions of the Plan. Most of the sections in Article 43 begin some variation of "Except as otherwise expressly provided in the Plan, the Confirmation Order, or the Global Settlement Agreement." *See, e.g.,* Section 43.5. However, Section 43.9 has no such restriction. The Disclosure Statement should clarify if there is a reason for not included the otherwise standard restriction in Section 43.9. The Disclosure Statement should likewise clarify if Section 43.9 is intended to trump potentially contrary provisions elsewhere in "the Plan, Confirmation Order, or the Global Settlement Agreement."

**Objection Number 46.** It is unclear if the terms "claims" and "causes of action" [*sic.*] in Subpart B of Section 43.9, though not capitalized, are intended to be the defined terms "Claims" and "Causes of Action."

26

**Objection Number 47.** It is unclear if Section 43.9 would prohibit a party from suing JPMC for obligations it assumed under the Purchase and Assumption Agreement. Section 43.9 seems to include the following prohibition: "Each and every Entity is permanently [enjoined] from [prosecuting or litigating] any and all [claims, demands or rights] based upon, related to …the Purchase and Assumption Agreement . . . ." Nothing else in Section 43.9 seems to limit that prohibition. DTSC, for example, contends that under the Purchase and Assumption Agreement, JPMC assumed WMB's liability for response costs at the BKK landfill. DTSC needs to know, therefore, if the Section 43.9, or any other provision of Article 43 or of the Plan, would release JPMC from that liability or bar DTSC from enforcing that liability. The Disclosure Statement should clarify if Section 43.9 bars an Entity from suing JPMC for obligations the Entity contends JPMC assumed under the Purchase and Assumption Agreement.

**Objection Number 48.** It is not clear if Section 43.9 is subject to the police power exception provided in Subsection D of Section 43.3. The Disclosure Statement should clarify if Section 43.9 would "preclude the United States of America, any state or any of their respective police or regulatory agencies from enforcing their police or regulatory powers."

### 9. Objections Asserting that the Disclosure Statement Does not Clarify Ambiguities in Section 43.12.

Section 43.12 of the Plan, styled as a further injunction, also purports to enjoin creditors and other entities from bringing actions against the Debtors, Released Parties or Related Entities. As described herein, Section 43.3 is ambiguous in certain fundamental respects. Without clarification, and resolution of those ambiguities, DTSC cannot make an informed judgment on the Plan.

**Objection Number 49.** It is unclear if the prohibitions in Section 43.12 are limited by other provisions of the Plan. Most of the sections in Article 43 begin some variation of "Except as otherwise expressly provided in the Plan, the Confirmation Order, or the Global Settlement Agreement." *See, e.g.,* Section 43.5. However, Section 43.12 has no such restriction. In fact, it states "Notwithstanding anything contained herein to the contrary . . ." The Disclosure Statement should likewise clarify if Section 43.12 is intended to trump potentially contrary provisions elsewhere in "the Plan, Confirmation Order, or the Global Settlement Agreement."

**Objection Number 50.** It is not clear if Section 43.12 is subject to the police power exception provided in Subsection D of Section 43.3. The Disclosure Statement should clarify if Section 43.12 would "preclude the United States of America, any state or any of their respective police or regulatory agencies from enforcing their police or regulatory powers."

**Objection Number 51.** It is not clear if the injunction in Section 43.12 is limited to actions to recover or receive monetary payment or to capture property. Section 43.12 seems to enjoin only actions taken against the Released Parties "for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery." The Disclosure Statement should clarify if Section 43.12 bars any actions for an equitable remedy for a breach of performance where that breach does not give rise to a right to payment.

## CONCLUSION

DTSC therefore respectfully submits that the Disclosure Statement should be rejected along with the Plan and the Debtor ordered to cure the deficiencies and renotice the hearing on the Disclosure Statement to comport with section 1125. DTSC reserves the right to join in objections filed by other creditors or parties in interest and to supplement this objection.

Dated: May 28, 2010

Respectfully Submitted,

EDMUND G. BROWN JR.
Attorney General of California
DON ROBINSON
MARGARITA PADILLA
Supervising Deputy Attorneys General
JAMES R. POTTER
OLIVIA W. KARLIN
Deputy Attorneys General
State Bar No. 166992
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 897-2637
Fax: (213) 897-2802
E-mail: James.Potter@doj.ca.gov
Attorneys for Claimant Department of Toxics
Substance Control

LA2009602622
Document in ProLaw