IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 08-12229 (MFW) |
| WASHINGTON MUTUAL, INC., *et al.*, | § § | CHAPTER 11 |
| DEBTORS. | § § § | (Jointly Administered) |
| | § § § | **Hearing Date: June 3, 2010 at 10:30 a.m.** **RE: D.I. Nos. 2622, 2623, 3568, 3708, 4241, 4242, 4244** |

**CONSOLIDATED SUPPLEMENTAL OBJECTIONS BY AMERICAN NATIONAL INSURANCE COMPANY, ET AL. TO: (A) THE MOTION OF DEBTORS FOR AN ORDER, PURSUANT TO SECTIONS 105, 502, 1125, 1126, AND 1128 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 3003, 3017, 3018 AND 3020, (I) THE PROPOSED DISCLOSURE STATEMENT AND THE FORM AND MANNER OF THE NOTICE OF THE DISCLOSURE STATEMENT HEARING, (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES, (III) SCHEDULING A CONFIRMATION HEARING, AND (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE DEBTORS' JOINT PLAN; AND (B) THE DISCLOSURE STATEMENT FOR THE SECOND AMENDED JOINT PLAN OF AFFILIATED DEBTORS PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

National Western Life Insurance Company and American National Insurance Company and its affiliates American National Property and Casualty Company, Farm Family Life Insurance Company, and Farm Family Casualty Insurance Company (collectively, the "Texas Group") hereby incorporate and renew their Objection (Doc. No. 3708, filed May 12, 2010), *including and especially any and all purported releases of claims of the Texas Group by the Debtors*, to the above-captioned Motion and the Disclosure Statement (defined below) to: (A) the Motion of Debtors for an Order, Pursuant to Sections 105, 502, 1125, 1126, and 1128 of the Bankruptcy Code and Bankruptcy Rules 2002, 3003, 3017, 3018 and 3020, (I) the Proposed Disclosure Statement and the Form and Manner of the Notice of the Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling a Confirmation

Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Plan (D.I. 3568); and (B) the Disclosure Statement for the Second Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code (D.I. 4242) (the "Disclosure Statement").[1] The Texas Group further states the following as further support for its objection:

1. The Texas Group holds bonds issued by Washington Mutual Bank ("WMB").

2. On February 16, 2009, the Texas Group filed suit against JPMC & Co. and JPMC Bank, alleging that in the Spring and Summer of 2008, JPMC & Co. and JPMC Bank intentionally interfered with their contract rights under the WMB bonds and otherwise caused injury to interests in the WMB bonds.[2] That case is currently pending in the United States District Court for the District of Columbia and is styled, *American National Insurance Company v. FDIC*, Case No. 09-1743 (RMC) (the "Texas Litigation" or the "*American National* litigation").[3]

3. Among other things, the Texas Group alleges that JPMC & Co. misled credit rating agencies and other media regarding WMB's credit worthiness and long-term viability. As a result, WMB's credit ratings were downgraded, its liquidity was negatively impacted, and depositors withdrew funds from the bank. In addition, JPMC & Co. misused access to confidential WMB information to obtain WMB assets, stripped of liability to stakeholders such

---

[1] The Texas Group, by filing this and any other pleading relating to the Debtors' Disclosure Statement, Plan, and any amendments thereto, do not submit to the jurisdiction of the Bankruptcy Court. Instead, the purpose of the Texas Group's filings is to preserve the Texas Group's right to pursue its claims against JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. in an appropriate court of law, which is the District Court of the District of Columbia, unless the matter is remanded to Texas state court.
[2] The original complaint filed in Texas state court included claims of holders of WMI bondholders and shareholders. However, on February 18, 2010, the Texas Group dismissed all claims for injury based on standing as holders of WMI securities.
[3] This style is somewhat misleading because the Texas Group asserts claims against only JPMC & Co. and JPMC Bank. No claim is asserted against the FDIC in any capacity. The FDIC became part of the style of the case by virtue of its intervention *as a defendant*.

as the Texas Group. JPMC & Co.'s misconduct directly harmed the value of the Texas Group's WMB bonds, and ultimately led to the seizure of WMB by the Office of Thrift Supervision and sale of WMB assets to JPMC Bank on September 25, 2010.

4. In December 2009, the parties to the Texas Litigation filed cross-motions seeking various relief. The Court set oral argument for February 18, 2010.

5. On February 12, 2010, JPMC & Co. and JPMC Bank moved the District of Columbia Court for a continuance of the February 18, 2010 hearing "for a period of not less than 30 days."[4] The purported reason given to the Court was "to facilitate WMI's ability to determine its position given its stated belief that its rights may be implicated in this action."[5] However, WMI never followed up with the District of Columbia Court regarding the *American National* litigation.

6. The District Court of the District of Columbia granted the JPMC entities' motion for continuance in part, and rescheduled oral argument for March 9, 2010. At the hearing, the JPMC entities and the FDIC appeared and presented argument to the Court. JPMC & Co., JPMC Bank and the FDIC made no mention to the District Court for the District of Columbia that those parties planned to seek dismissal of the action by invoking the power of the United States Bankruptcy Court for the District of Delaware.

7. Three days later, on March 12, 2010, however, in a hearing before the United States Bankruptcy Court for the District of Delaware, WMI announced "a three-way understanding between the debtors, JPMorgan Chase and the FDIC with respect to all matters."[6] The Debtors' counsel noted that "we're actually very, very far along in the documentation of this

---

[4] *See American National Insurance Co. v. FDIC*, Case No. 09-1743 (RMC), Doc. 102, p. 1.
[5] *Id.*
[6] *In re Washington Mutual, Inc.*, Case No. 08-12229 (MGW); Adv. Case No. 09-50934; Transcript of Hearing, March 12, 2010, at (Docket #2518) at 18.

transaction."[7] JPMorgan Chase and the FDIC were represented by counsel at the hearing and expressed no dissent to WMI's statements. Regarding the Texas Litigation, WMI announced that JPMC, the FDIC and WMI had agreed to "use their reasonable best efforts to have [the Texas Group's action] dismissed with prejudice."[8]

8. On March 26, 2010, the Debtors filed an initial proposed plan of reorganization (D.I. 2622) and related disclosure statement (D.I. 2623), together with an unsigned draft of the Proposed Settlement.[9] The Proposed Settlement was purported to be a "full, final and complete compromise and settlement of substantially all issues disputed by the parties[.]"[10]

9. The Disclosure Statement, proposed Plan, and Proposed Settlement made clear that the JPMC entities and the FDIC intended to improperly usurp the jurisdiction of the District Court for the District of Columbia over the claims asserted by the Texas Group in the *American National Insurance* action. The Proposed Settlement purported to release JPMC & Co. and JPMC Bank from liability for injuries caused to the Texas Group. In addition, the Proposed Settlement called on the power of the Bankruptcy Court to issue a bar order and injunction against the Texas Group, and mandated WMI to use estate resources to intervene in the Texas Group's American National action, despite the patent lack of grounds to do so.[11]

10. On April 13, 2010, the District Court for the District of Columbia granted the motions of the JPMC entities and the FDIC and dismissed the Texas Group's action with

---

[7] *Id.* at 28.
[8] *Id.* at 23.
[9] *Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* [Doc. 2622] (Initial Plan), Ex. I (the "Proposed Settlement").
[10] *Disclosure Statement for the Joint Plan of Affiliated Debtor Pursuant to Chapter 11 of the United States Bankruptcy Code*, [Doc. 2623] (Initial Disclosure Statement), p. 8.
[11] *Initial Joint Plan* [Doc. No. 2622], para. 42.3 Injunction on Claims; para. 42.7, Injunction Related to Releases; para. 42.12, Supplemental Injunction; Proposed Settlement, p. 12 ("Related Actions" which includes the "Texas Litigation"), p. 13 ("Released Claims" which includes all "Related Actions"); p. 14 ("'Texas Litigation' shall mean that certain litigation styled *American National Insurance Company v. FDIC*, Case No. 09-1743 (RMC), currently pending in the D.C. District Court); p. 31, Section 2.7 (calling for release and dismissal of the Texas Litigation); p. 52, Section 3.6 (Bar Order for all Related Actions).

prejudice.[12] The Court based its ruling on the allegations contained in the Plaintiffs' unamended state court pleading. In its memorandum opinion, the Court explained that it found that "the FDIC-Receiver's sale of Washington Mutual Bank's assets is a necessary link in the chain of causation resulting in Plaintiffs' injuries."[13] The Court reasoned that "[b]ecause Plaintiffs' injuries depend on the FDIC-Receiver's sale of Washington Mutual Bank's assets to JPMorgan Chase, Plaintiffs cannot sue only JPMorgan Chase. . . . The FDIC-Receiver is a necessary party because Plaintiffs' injuries depend on the independent intervening sale by the FDIC Receiver."[14] The Court concluded that the "Plaintiffs were required to pursue their claims against the FDIC Receiver administratively through the exclusive receivership claims process that Congress provided in the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 83 (1989)" and that the case should be dismissed based on the statute's jurisdictional bar.

11. On May 10, 2010, the Texas Group filed a Motion to Amend or Alter Judgment and Request for Leave to File Amended Complaint.[15] In its motion, the Texas Group showed that because it suffered injury due to conduct by JPMC & Co., which occurred well before WMB was seized and its assets sold by the FDIC, the Texas Group had standing to sue JPMC & Co. and JPMC Bank. The Texas Group submitted a proposed First Amended Complaint that clearly set forth JPMC & Co.'s and JPMC Bank's course of conduct that directly caused the Texas Group harm at least as early as Spring of 2008. The Texas Group's motion before the District of Columbia Court is pending.

---

[12] *American National Insurance Company v. FDIC*, Case no. 09-1743 (RMC), Doc. 117 (memorandum opinion).
[13] *Id.* at 5.
[14] *Id.* at 6.
[15] *American National Insurance Company v. FDIC*, Case no. 09-1743 (RMC), Doc. 119.

12. On May 21, 2010, JPMC Bank, the FDIC and the Debtors signed the "Global Settlement Agreement," which is an integral part of the Debtors' Second Amended Joint Plan. Extinguishment of the Texas Litigation apparently is a key condition to the Plan. As the parties declare in the Global Settlement Agreement in a section entitled Conditions to Effective Date, "the terms and provisions of this Agreement are expressly subject to the following conditions . . . . (e) the disposition of the Texas Litigation in a manner provided herein[.]"[16]

13. As with the previously disclosed draft of the settlement, the executed agreement purports to invoke the power of the Bankruptcy Court to enjoin and bar the Texas Group from pursuing its action in the District Court for the District of Columbia.[17]

14. The FDIC and JPMC entities are advancing positions in this Court that are inconsistent with those advanced in the District Court for the District of Columbia, regarding jurisdiction over the "Texas Litigation." The FDIC's and JPMC's behind-the-scenes negotiations to divest the District of Columbia Court of its proper jurisdiction constitutes "playing fast and loose with the courts" which is prohibited under the doctrine of judicial estoppel.

15. Judicial estoppel is designed to prevent parties "from 'playing fast and loose with the courts' by 'deliberately changing positions according to the exigencies of the moment.'" *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808 (2001). Judicial estoppel generally applies when a "party has succeeded in persuading a court to accept that party's earlier position,

---

[16] *Second Amended Joint Plan of Affiliated Debtors Pursuant to chapter 11 of the United States Bankruptcy Code* [Docket No. 4241] ("Second Amended Joint Plan"), Ex. H, Section 7.2, p. 68.

[17] *Second Amended Joint Plan* [Doc. No. 2622], p. 78, para. 43.3 Injunction on Claims; p. 78, para. 43.4, Integral to Plan; p. 79, para. 43.6, Releases by Holders of Claims and Equity Interests; p. 80, para. 43.7, Injunction Related to Releases;; p. 80, para. 43.9, Bar Order; p. 81, para 43.12, Supplemental Injunction. *The Global Settlement Agreement*, p. 13 ("Related Actions" which includes the "Texas Litigation"), p. 13 ("Released Claims" which includes all "Related Actions"); p. 14 ("'Texas Litigation' shall mean that certain litigation styled *American National Insurance Company v. FDIC*, Case No. 09-1743 (RMC), currently pending in the D.C. District Court); p. 32, Section 2.7 (calling for release and dismissal of the Texas Litigation, and injunction on the Texas Group); p. 51-52, Section 3.2 (Releases of the JPMC Entitiies), p. 56, Section 3.7 (Bar Order for all Related Actions).

so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.*, at 750, (internal quotation marks omitted). Where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, that party may not thereafter assume a contrary position simply because of changed interests, especially if the change in position would prejudice a party who acquiesced to the original position. *Id.* The doctrine of judicial estoppel is uniformly recognized as having the purpose of protecting the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. *Id.* at 749-50.

16. Several factors typically inform the decision to apply the doctrine in a particular case. *Id.* at 750. First, a party's later position must be clearly inconsistent with its earlier position. *Id.* Here, JPMC & Co., JPMC Bank and the FDIC clearly took the position before the District Court for the District of Columbia that that Court had jurisdiction over the Texas Group's case. However, here, those parties claim that the Bankruptcy Court has jurisdiction to enjoin, bar and release the Texas Group's claims.

17. Second, success in persuading the court to accept the party's earlier position is important. *Id.* It is clear that the District Court for the District of Columbia proceeded upon the legitimate assumption, advanced by JPMC & Co., JPMC Bank and the FDIC, that it had jurisdiction over the Texas Group's claims.[18]

18. A third consideration is whether the party seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* Here, JPMC & Co., JPMC Bank and the FDIC seek to unfairly cut off or

---

[18] Indeed, *every* pleading of the JPMC entities and the FDIC filed in the "Texas Litigation" was premised on the fact that the District Court had jurisdiction over the case.

burden the Texas Group's legitimate request that the District Court for the District of Columbia reconsider its ruling and any appeals that may follow.

19. The Debtors have no ownership right in the Texas Group's District of Columbia litigation.[19] Further, the JPMC entities and the FDIC are judicially estopped from enforcing any provision of the Global Settlement Agreement that purports to divest the District Court of the District of Columbia of jurisdiction over the Texas Group's action. For that reason, the provisions relating to release, dismissal and bar of the Texas Group's actions are a nullity, and constitute illusory consideration. The Second Amended Disclosure Statement, which relies on this provision, is therefore misleading and inadequate.

**WHEREFORE**, for the reasons set forth herein (whereby the objections and the arguments of the Texas Groups' earlier-filed Objection are hereby incorporated), National Western Life Insurance Company and American National Insurance Company and its affiliates American National Property and Casualty Company, Farm Family Life Insurance Company, and Farm Family Casualty Insurance Company request that the Court deny the Motion, deny approval of the Disclosure Statement, grant the Texas Group such additional relief as the Court deems appropriate and just, and enter an Order to such effect.

Dated: May 28, 2010

Respectfully Submitted,

SMITH, KATZENSTEIN & FURLOW LLP

By: /s/ Michael P. Migliore
Michael P. Migliore (Del. Bar No. 4331)
The Corporate Plaza
800 Delaware Avenue
Suite 1000, P.O. Box 410
Wilmington, DE 19899
Tel. 302-652-8400 x216
Fax 302-652-8405
Email: mpm@skfdelaware.com

---

[19] See, generally, the Texas Group's previous objection in this matter, Doc. No. 3708.

-and-

GREER, HERZ & ADAMS, LLP
Andrew J. Mytelka (Texas Bar No. 14767700)
Frederick E. Black (Texas Bar No. 02371100)
Tara B. Annweiler (Texas Bar No. 00783547)
James M. Roquemore (Texas Bar No. 24058082)
One Moody Plaza, 18th Floor
Galveston, Texas 77550
(409) 797-3200
(409) 766-6424 - telecopier

Counsel to American National Insurance Company,
American National Property and Casualty
Company, Farm Family Life Insurance Company,
Farm Family Casualty Insurance Company, and
National Western Life Insurance Company