UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| In re | ) | |
|---|---|---|
| WASHINGTON MUTUAL, INC., *et al.*,[1] | ) ) ) | Chapter 11 |
| Debtors. | ) ) | Case No. 08-12229 (MFW) |
| | ) ) | Jointly Administered |
| | ) | *Re Dkt. Nos. 3929, 4386 and 4397* |

**REPLY IN SUPPORT OF PETITION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS FOR AN ORDER PURSUANT TO 28 U.S.C. § 158(d)(2) FOR CERTIFICATION OF DIRECT APPEAL TO THE THIRD CIRCUIT COURT OF APPEALS THE ORDER DENYING APPOINTMENT OF AN EXAMINER**

The Official Committee of Equity Security Holders (the "Equity Committee") of Washington Mutual, Inc. ("WMI" and, together with its chapter 11 debtor-affiliate, WMI Investment Corp., the "Debtors") replies to the objections of the Debtors and the Creditors' Committee to the request to certify for direct appeal the issue of whether to appoint an examiner and represents as follows:

1. Stripped of their rhetoric, the Debtors and the Creditors' Committee make three arguments why this Court should not certify its order denying appointment of an examiner for direct appeal -- each of them erroneous. The first is that the appeal would not materially advance the resolution of this lawsuit, the second is that the appeal does not meet the "public importance" standard of 28 U.S.C. § 158(d)(2), and the third is that part of the issue is not a pure question of law. All these arguments are wrong as a matter of fact and law. Most importantly, however, the Debtors and the Creditors' Committee overlook the language of the statute itself. If any of four

---

[1] Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395). The Debtors are located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.

{00411576;v1}

criteria is satisfied, this Court must certify the appeal.

2. 28 U.S.C. § 158(d)(2), enacted in 2005, identifies the circumstances under which a court should certify a case for direct appeal. The statute specifies that the bankruptcy court "shall make the certification" upon a "determin[ation] that a circumstance specified in clause (i), (ii), or (iii) of subparagraph (A) exists." 28 U.S.C. § 158(d)(2)(B) (emphasis added). These circumstances are:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
>
> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
>
> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. § 158(d)(2)(A) (emphasis added). Thus, a petitioner can satisfy clause (i) itself in two independent ways: if the issue (a) "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court"; or (b) "involves a matter of public importance." For purposes of clarity then, this Reply refers to the first part of clause (i) as clause (i)(a) and the second part as clause (i)(b).

3. Under 28 U.S.C. § 158(d)(2)(B), this Court "shall" certify the issue upon a showing that any one of the identified circumstances exists. The Court of Appeals then has discretion to authorize the appeal, but the bankruptcy court must certify the issue in the first instance upon a showing that any of the specified circumstances are met. *See* 28 U.S.C. § 158(d)(2)(A); *Weber v. U.S.*, 484 F.3d 154, 160 (2d Cir. 2007) (discretion granted "to the courts of appeals to accept or decline such direct appeals"). Here, all of the circumstances identified in the statute are satisfied.

4. *First*, even the Debtors do not really dispute that the order involves a question of

law as to which there is no controlling decision from the Third Circuit or the Supreme Court of the United States. The Third Circuit has never ruled on the circumstances for appointment of an examiner. Lack of guidance from an appellate court was one of main reasons why Congress enacted the direct-appeal statute in the first instance. "Among the reasons for the direct appeal amendment was widespread unhappiness at the paucity of settled bankruptcy-law precedent." *Weber*, 484 F.3d at 158. As this Court is aware, whether to appoint an examiner is an issue that arises frequently in bankruptcy cases. Yet there is no appellate guidance on the issue because of the practical difficulty of reviewing orders appointing or denying an examiner after a final order.

5.  The Debtors and Creditors' Committee argue that part of the issue for which the Equity Committee seeks certification for appeal is a mixed question of law and fact and therefore inappropriate for certification. But the argument on this point by the Creditors' Committee itself turns on what it labels "statutory construction" – a pure issue of law. Opposition of Creditors' Committee at ¶ 3. Moreover, even taken on its own terms, their argument does not apply to whether the appointment of an examiner is mandatory, which is a pure issue of law. This purely legal issue also necessarily encompasses the criteria for when a court must appoint an examiner and any constraints that a court may impose on the scope of the investigation.

6.  *Second*, the issue is of vital public importance. The public importance manifests itself in two separate ways here. First this case involves the largest bank failure in the history of the United States. If an examiner is not appropriate in this case, a substantial question exists about when appointment of an examiner ever is appropriate. Thus, the magnitude and importance of this bankruptcy itself warrants appellate attention. Second, defining the circumstances that warrant or mandate appointment of an examiner is a matter of public importance because it is a question that has the potential to arise in every large bankruptcy. *Cf. Blausey v. U.S. Trustee*, 552 F.3d 1124, 1131 (9th Cir. 2009) (accepting direct appeal because

issue "a part of every petition for Chapter 7 bankruptcy" and "no clear precedent" existed). Because for all practical purposes it is difficult to review the appointment of an examiner after the case is over, the time for a review is now. *See Weber*, 484 F.3d at 159 (accepting a direct appeal appropriate where issue "m[ight] disappear in the light of a complete and final record") (alteration in original)).

7. The Debtors argue that no Third Circuit opinion exists where the court has addressed § 158(d)(2). This statement is incorrect. In *Perlin v. Hitachi Capital America Corp.*, 497 F.3d 364 (3d Cir. 2007), the Third Circuit accepted an appeal under § 158(d)(2) concerning whether a party had filed a Chapter 7 petition in bad faith. The issue here is at least as important as the one accepted for review by the Third Circuit in *Perlin*. The Equity Committee cited to *Perlin* in its Opening Brief. *See* Motion at 11. Neither the Debtors nor the Creditors' Committee attempt to distinguish *Perlin*. Moreover, because the statute applies only to bankruptcies filed after 2005, it is not entirely surprising that this opinion is the only published Third Circuit opinion resulting from a direct appeal. *See In re American Capital Equipment, LLC*, 296 Fed. Appx. 270, 275 n. 5 (3d Cir. Oct. 16. 2008) (noting that the amended § 158(d) became effective only for cases filed after the effective date of the act and addressing an appeal under the previous version of the statute).

8. Other circuits have addressed when to accept an appeal. *See* Motion at 11. Indeed, in just the last 12 months, at least six circuits have accepted a direct appeal on various issues. *See, e.g., In re Hundley*, 603 F.3d 95 (1st Cir. 2010) (accepting direct appeal of "whether a non-debtor spouse is entitled to a portion of a prepetition tax refund, where the parties filed a joint return and the non-debtor spouse earned no income for the tax year for which the return was filed"); *Sheehan v. Peveich*, 574 F.3d 248, 251 (4th Cir. 2009) (accepting appeal on "whether the Supremacy Clause renders invalid state property exemptions that apply only in bankruptcy

actions"); *In re Pacific Lumber Co.*, 584 F.3d 229, 236, 241-42 (5th Cir. 2009) (accepting direct appeal of a challenge to the legality of a confirmed Chapter 11 plan and noting that "the twin purposes of the provision were to expedite appeals in significant cases and to generate binding appellate precedent in bankruptcy, whose caselaw has been plagued by indeterminacy"); *In re Howard*, 597 F.3d 852, 853 (7th Cir. 2010) (accepting direct appeal of an issue "new in this court" - whether "cramdown" power in a Chapter 13 bankruptcy "extends to an automobile dealer's, or other creditor's, taking a security interest in a customer's "negative equity" in his traded-in vehicle"); *In re Mierkowski*, 580 F.3d 740, 743 (8th Cir. 2009) (accepting appeal and noting the "many opinions by bankruptcy courts" and three other circuits had weighed in); *In re Egebjerg*, 574 F.3d 1045, 1047-48 (9th Cir. 2009) (accepting appeal on what counts as disposable monthly income under 11 U.S.C. § 707(b)(3)); *In re Ford*, 574 F.3d 1279, 1281-82 (10th Cir. 2009) (authorizing direct appeal because circuit had not ruled on the issue). The question of whether the appointment of an examiner is mandatory and the scope of that appointment is at least as important as the questions accepted in all of the cases cited above.

9. *Third*, under § 158(b)(2)(A)(ii), the issue here "involves a question of law requiring resolution of conflicting decisions." The Debtors argue that the "conflicting decisions" are not from this Circuit and therefore are irrelevant to the analysis. This argument is erroneous. Nowhere in the statute is there any requirement that conflicting decisions must emanate from within the same circuit. Rather, the purpose of the statute is "to generate binding appellate precedent in bankruptcy, whose caselaw has been plagued by indeterminacy." *In re Pacific Lumber*, 584 F.3d at 241-42. Here, as the Debtors cannot deny, significant discord exists in the caselaw about when courts should appoint an examiner and the standard necessary to authorize such appointments. *See* Motion at ¶¶ 17-18. Other circuit courts have accepted direct appeals in circumstances such as this – where the conflicts existed among courts outside the circuit in

question. *See In re Mierkowski*, 580 F.3d at 743. Indeed, in *Mierkowski*, while the court discussed opinions from outside the circuit, it did not discuss any bankruptcy opinions from within that circuit itself.

10.  *Fourth*, a direct appeal would materially advance resolution of this case. The Debtors spend most of their brief on this point, but it is only one of the four factors that this Court must consider – any one of which requires certification. The Debtors make two main arguments about why a direct appeal would not materially advance resolution of the case. First, they argue that whether to appoint an examiner is simply a procedural matter that would not directly impact the underlying litigations in the case. But this point actually cuts against the Debtors and in favor of review here. Because the issue here is a procedural one, it is essentially unreviewable later.

11.  The Debtors also argue that having an Examiner would not materially advance the litigation because the Debtors have been investigated by so many other parties. Response at ¶ 8. This argument is incorrect in material respects – for example, there is no indication that anyone outside this bankruptcy has investigated (much less investigated adequately) the grounds for business tort claims against JPMorgan Chase; and appointing an Examiner here will allow added transparency and accountability to the process – but it enough to note here that the argument is simply a rehash of the underlying merits of appointing an Examiner and is not relevant to whether to certify the issue for appeal.

12.  Moreover, regardless of whether the Debtors have been investigated by other parties following other agendas, the Debtors' production of documents to the Equity Committee shows why those investigations are no substitute for an Examiner. <u>The Debtors have not produced any documents stemming from these other investigations.</u> If those other investigations were grounds for denying an Examiner, one would have expected the Debtors to have gathered

and used the results of these investigations for purposes specifically relevant to this bankruptcy. The Debtors' production to the Equity Committee shows that they have not done so.

13.     Finally, regardless of how the Court ultimately assesses the extent to which an immediate direct appeal will materially advance resolution of the case, the three other grounds in § 158(d)(2)(A)(i) and (ii) are each independently sufficient to require certification of a direct appeal here pursuant to 28 U.S.C. § 158(d)(2)(B).

WHEREFORE, the Equity Committee respectfully requests that the Court grant the relief requested by this motion, and for such other and further relief as it deems just and proper.

Dated: May 31, 2010                     **ASHBY & GEDDES, P.A.**

s/ Gregory A. Taylor
William P. Bowden (DE Bar No. 2553)
Gregory A. Taylor (DE Bar No. 4008)
Stacy L. Newman (DE Bar No. 5044)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile : (302) 654-2067
E-mail:   wbowden@ashby-geddes.com
          gtaylor@ashby-geddes.com
          snewman@ashby-geddes.com

*Co-Counsel to the Official Committee of Equity Security Holders of Washington Mutual, Inc., et al.*

**SUSMAN GODFREY, L.L.P.**
Stephen D. Susman (NY Bar No. 3041712)
Seth D. Ard (NY Bar No. 4773982)
654 Madison Avenue, 5th Floor
New York, NY 10065
E-mail:
ssusman@susmangodfrey.com
sard@susmangodfrey.com

Parker C. Folse, III (WA Bar No. 24895)
Edgar Sargent (WA Bar No. 28283)
Justin A. Nelson (WA Bar No. 31864)
1201 Third Ave., Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
E-mail:
pfolse@susmangodfrey.com
esargent@susmangodfrey.com
jnelson@susmangodfrey.com

*Co-Counsel for the Official Committee of Equity Security Holders of Washington Mutual, Inc., et al.*