IN THE UNITED STATES BANKRUPTY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WASHINGTON MUTUAL, INC. *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-12229 (MFW)<br><br>(Jointly Administered)<br><br>Hearing Date: June 3, 2010 at 10:30 a.m.<br>Objection Deadline: June 2, 2010 at 12:00 p.m.<br>Re: Docket No. 4376 |

## LEAD PLAINTIFF'S OBJECTION TO MOTION OF DEBTORS FOR AN ORDER, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, ESTABLISHING AMONG OTHER THINGS, PROCEDURES AND DEADLINES CONCERNING OBJECTIONS TO CONFIRMATION AND DISCOVERY IN CONNNECTION THEREWITH

Lead Plaintiff, Ontario Teachers' Pension Plan Board, in the consolidated putative securities class action entitled *In re Washington Mutual Securities Litigation*, Case No. C08-387 (MJP) (W.D. Wash.) (the "Securities Litigation"), on behalf of the putative securities class (the "Securities Class") of all persons who purchased or otherwise acquired certain debt and equity securities issued by Washington Mutual, Inc. ("WMI"), one of the Debtors[1] herein, between October 19, 2005 and July 23, 2008 (the "Class Period"), hereby submits this objection (the "Objection") to the Motion of the Debtors for an Order, Pursuant to Section 105(a) of the Bankruptcy Code, Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith (the "Motion") and states the following:

### BACKGROUND

1. On September 26, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code in the United States

---

[1] Capitalized terms shall have the meanings ascribed to them in the Motion unless defined otherwise herein.

Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2. Prior to the Petition Date, several putative securities class actions were pending alleging violations of federal securities laws against WMI and certain of its current and former officers and directors, underwriters and auditor (collectively, the "Non-Debtor Defendants") in the United States District Court for the Western District of Washington (the "District Court").

3. By order dated May 7, 2008, the District Court (i) consolidated the putative class actions, together with any subsequently-filed actions arising out of the same facts, into the Securities Litigation, and (ii) appointed Lead Plaintiff. The Securities Litigation was further coordinated with pending ERISA and derivative cases under the MDL case number 2:08-md-1919 (MJP) (D. Wash).

4. On August 5, 2008, Lead Plaintiff filed a Consolidated Class Action Complaint (the "Consolidated Complaint") asserting violations by WMI and the Non-Debtor Defendants of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and sections 11, 12 and 15 of the Securities Act of 1933. On June 15, 2009, Lead Plaintiff filed an Amended Consolidated Class Action Complaint.

5. Pursuant to the automatic stay (11 U.S.C. § 362(a)), as of the Petition Date, the Securities Litigation has been stayed as to WMI. The Securities Litigation is proceeding as against the Non-Debtor Defendants.

6. On March 25, 2009, Lead Plaintiff filed a proof of claim (Claim No. 2759) on behalf of the putative Securities Class (the "Class Claim") in an undetermined amount for damages based upon the alleged violations of federal securities laws as described in the Consolidated Complaint, as amended, in connection with the purchase of WMI's securities by Lead Plaintiff and members of the putative Securities Class during the Class Period, and WMI's conduct in connection therewith.

7. The Securities Litigation was the result of an accounting fraud and various misrepresentations by WMI and the Non-Debtor Defendants, which resulted in artificially inflated prices and value of the WMI securities.

8. On October 27, 2009, the District Court denied, in large part, the Non-Debtor Defendants' motions to dismiss the Amended Consolidated Class Action Complaint.

9. On March 26, 2010, the Debtors filed the Disclosure Statement (Docket No. 2623) and the Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code (Docket No. 2622).

10. On April 23, 2010, the Debtors filed the Motion for an Order Approving the Disclosure Statement and related relief (Docket No. 3568).

11. On May 21, 2010, the Debtors filed the Second Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code (Docket No. 4241) (the "Plan") and the modified related Disclosure Statement (Docket No. 4242). The Disclosure Statement hearing and the hearing on the Motion are currently scheduled for June 3, 2010 at 10:30 a.m.

## **OBJECTION**

12. Lead Plaintiff does not object generally to fair and even-handed procedures for the coordination of discovery in connection with plan confirmation (assuming approval of the current version of the Debtors' Disclosure Statement). However, the procedures and deadlines proposed by the Debtors in the guise of facilitating an orderly and efficient discovery and information process go too far in limiting and controlling that process going forward.

13. The Debtors appear to believe that discovery relating to confirmation and the confirmation process itself will focus primarily, if not exclusively, on the so-called global settlement agreement. A review of the many objections to the Disclosure Statement provides a preview of the myriad issues, aside from the global settlement agreement, that will plague confirmation of the Plan. From the perspective of Lead Plaintiff, the overly broad and patently illegal third party releases, which, to even be considered, require a significant showing of extraordinary circumstances (none of which are or can be set forth in the Disclosure Statement) will be a serious issue at the confirmation hearing along with issues relating to the classification

of claims, discrimination and appropriate levels of subordination under §510(b) of the Bankruptcy Code.

14. Specifically, the need to file an "Initial Objection" by June 21, 2010 as the price for admission to the discovery process, setting forth the legal and factual basis for that objection, is inappropriate, prejudicial and designed to provide the Debtors with a free look at confirmation objections in advance of any discovery and well in advance of an appropriate objection deadline assuming the commencement of the confirmation hearing on August 2, 2010. Moreover, the requested procedures seek to force an "Eligible Objectant" to limit discovery to the issues set forth in the Initial Objection which, according to the Debtors, must be filed a mere two weeks after the Disclosure Statement hearing and approximately six weeks prior to the anticipated confirmation hearing. This procedure is contrary to the standard and more appropriate practice of allowing discovery in advance of any confirmation objection. Indeed, it is not even clear from paragraph 20 of the Motion whether the requested prohibition from participating in discovery absent the filing of an Initial Objection is limited to discovery relating to the global compromise or applies to any confirmation discovery whatsoever.

15. In addition, the so-called "Permitted Discovery" outlined in the Motion appears to limit depositions to only those individuals who appear on the Debtors' witness list. Certainly, from Lead Plaintiff's perspective, there may very well be the need to depose individuals, either through subpoena or notice of deposition, who the Debtors may not identify as witnesses. In addition, to require a party to identify any such individual by June 28, 2010 and to have to go through a process, including a status conference with the Court, where there may be no basis to object to any such deposition is unnecessary, prejudicial to that party and would delay the discovery process within the limited window available prior to confirmation. It is also inappropriate to limit such depositions to a Rule 30(b)(6) deposition of other Settling Parties.

16. Paragraph 26 of the Motion appears to attempt to limit the ability of an Eligible Objectant to supplement its Initial Objection to only circumstances where documents provided contain factual support for the Initial Objection. Should the Court adopt the initial

objection process suggested by the Debtors, there should be no limitation regarding a party's ability to supplement its Initial Objection on or prior to any final confirmation objection deadline.

17. With respect to the scheduling of depositions, the Motion suggests that dates will be unilaterally determined by the Debtors. There should be some requirement to meet and confer in an attempt to establish deposition scheduling that is convenient perhaps not to all but to most of the parties who will be conducting such depositions.

## CONCLUSION

18. To be clear, a managed process with respect to confirmation related discovery is appropriate and a noble goal where it does not abridge the rights of parties pursuant to the bankruptcy rules and does not allow the Debtors to gain an unfair advantage in that process. Lead Plaintiff believes that for the reasons set forth above and others that may be articulated at the hearing on June 3, 2010, the Debtors' current request goes too far and the procedures should be modified accordingly.

Dated: June 2, 2010
Wilmington, Delaware

**CROSS & SIMON LLC**

By: */s/ Christopher P. Simon*
Christopher P. Simon (Bar No. 3697)
913 North Market St., 11th Floor
Wilmington, Delaware 19899-1380
302.777.4200 (Telephone)
302.777.4224 (Facsimile)
csimon@crosslaw.com

**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq. (ME 0570)
Ira M. Levee, Esq. (IL 9958)
65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Bankruptcy Counsel to Lead Plaintiff and the Putative Class*