IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| WASHINGTON MUTUAL, INC., *et al.*[1], | : | Case No. 08-12229 (MFW) |
| Debtors. | : | Jointly Administered |
| | : | **Objection Deadline: June 2, 2010 at 12:00 p.m.** (extended until 2:00 pm by agreement of the Debtors) **Hearing Date: June 3, 2010 at 10:30 a.m.** |
| | : | **Related to Docket No. 4376** |

## BANK BONDHOLDERS' OBJECTION TO MOTION OF DEBTORS FOR AN ORDER, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, ESTABLISHING, AMONG OTHER THINGS, PROCEDURES AND DEADLINES CONCERNING OBJECTIONS TO CONFIRMATION AND DISCOVERY IN CONNECTION THEREWITH

The holders of senior notes (the "Senior Notes") issued by Washington Mutual Bank

("WMB") (the "Bank Bondholders") listed below[2] submit this Objection to the Motion of

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395).

[2] The Bank Bondholders include Anchorage Capital Master Offshore, Ltd. c/o Anchorage Advisors, L.L.C.; GRF Master Fund, L.P. c/o Anchorage Advisors, L.L.C.; PCI Fund, L.L.C. c/o Anchorage Advisors, L.L.C.; Allen Arbitrage, L.P.; Allen Arbitrage Offshore; Bank of Scotland plc; Brownstone Asset Management, L.P.; Caspian Alpha Long Credit Fund, L.P.; Caspian Capital Partners, LP; Caspian Select Credit Master Fund, Ltd.; Cetus Capital, LLC; Citigroup Global Markets, Inc.; CVI GVF (Lux) Master S.a.r.l.; D. E. Shaw Laminar Portfolios, L.L.C; Drawbridge DSO Securities LLC; Drawbridge OSO Securities LLC; Worden Master Fund LP; Farallon Capital Management, LLC; Gruss Global Investors Master Fund, Ltd.; Gruss Global Investors Master Fund (Enhanced), Ltd.; Halcyon Master Fund L.P. c/o Halcyon Offshore Asset Management LLC; King Street Capital, L.P.; King Street Capital Master Fund, Ltd., assignee of King Street Capital, Ltd.; Longacre Master Fund, Ltd.; Longacre Capital Partners (QP), L.P.; Longacre Master Fund II, L.P.; Longacre CE Master Fund, L.P.; Longacre Opportunity Fund, L.P., Longacre Opportunity Offshore, Ltd.; Marathon Credit Opportunity Master Fund, Ltd.; Marathon Special Opportunity Master Fund, Ltd.; Millennium Partners, L.P.; OCP Investment Trust; Onex Debt Opportunity Fund, Ltd.; Plainfield Special Situations Master Fund II, Limited; Plainfield OC Master Fund II Limited; Plainfield Liquid Strategies Master Fund Limited; Quintessence Fund L.P. c/o QVT Associates GP LLC; QVT Fund LP c/o QVT Associates GP LLC; Stone Lion Portfolio L.P.; UBS Securities LLC; The Värde Fund, L.P.; The Värde Fund VI-A, L.P.; The Värde Fund VII-B, L.P.; The Värde Fund VIII, L.P.; The Värde Fund IX, L.P.; The Värde Fund IX-A, L.P.; Värde Investment Partners (Offshore) Master, L.P.; Värde Investment Partners, L.P.; Venor Capital Master Fund LTD; HFR ED Select Fund IV Master Trust; Lyxor/York Fund Limited; Permal York Ltd.; York Capital Management, L.P.; York Credit Opportunities Fund, L.P.; York Credit Opportunities Master Fund, L.P.; York Investment Master Fund, L.P.; York Select, L.P.; York Select Master Fund, L.P.

Debtors For an Order, Pursuant to Section 105(a) of the Bankruptcy Code, Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith (the "Motion").

## PRELIMINARY STATEMENT

Debtors have proposed a plan that purports to impose non-consensual releases of claims by and between non-debtors, that relies on a supposed "reorganization" centered on the runoff insurance business of a single non-debtor entity, that treats the claims of the Bank Bondholders dramatically worse than the claims of other general unsecured creditors, that otherwise discriminates against the Bank Bondholders by (among other things) making no provision for the payment of any of their professional expenses while paying all the expenses of other favored creditors, and that fails to reserve for anything close to the full amount of the Bank Bondholders' claims. The proposed plan raises a host of legal and factual issues. While some of these may be pure issues of law, others may involve matters of fact, the appropriate resolution of which can be determined by the Court only on a fully developed record presented to the Court after a fair and reasonable opportunity for discovery. The procedures and schedule the Debtors propose in the Motion do not provide such an opportunity; indeed, they do not permit any meaningful opportunity for discovery at all.

The Bank Bondholders do not oppose the development of a reasonable schedule and procedures designed to promote an efficient and timely completion of discovery, but the procedures and schedule suggested by Debtors in the Motion do not accomplish this. Instead, they seem designed more to thwart legitimate discovery than to make sure discovery is completed efficiently, and further this apparent intent both by imposing explicit limits on discovery that are contrary to the Federal Rules and by providing a schedule that does not permit

parties in interest objecting to the plan ("Objecting Parties") adequate time to review and utilize even the limited discovery which the proposed procedures would permit them. The Debtors seek to justify these procedures both by invoking concerns about costs if the plan is not promptly confirmed and by suggesting that its business and reorganization will suffer if the Debtors' focus is distracted by discovery. Motion ¶¶ 15. But the concerns expressed by the Debtors are only of recent origin. Although this bankruptcy case has been ongoing for over 20 months, the Debtors have previously evidenced little concern about the time or the costs they were incurring. And as to the business and reorganization that needs attention, the only "business" that the Debtors are engaged in and that they intend to continue if the plan is confirmed is the run-off insurance business of a non-debtor affiliate. None of this can possibly justify depriving Objecting Parties of legitimate discovery when serious issues regarding the confirmability of the proposed plan exist.

## BACKGROUND

Rather than repeat the extensive history that has led to the filing of the plan, the Bank Bondholders refer the Court to their Supplemental Objection to the Disclosure Statement [Dkt. No. 4427], a copy of which is attached hereto as Exhibit A and incorporated herein by reference.

### The Proposed Procedures and Schedule Set Forth in the Motion

In the Motion, the Debtors propose procedures and schedules that severely limit discovery by Objecting Parties. First, in order to be entitled to any discovery at all, Objecting Parties would need to file by June 21 detailed Plan objections, including the legal and factual basis for the objections. Motion ¶ 20. Those parties who filed such "Initial Objections," would then be given access to a document depository (the "Depository") established by the Debtors and the other "Settling Parties." The documents that Debtors and the Settling Parties would place in

- 3 -

DOCS_DE:160529.1

the Depository would be limited to the following categories—in each case, with the Debtors (or the other Settling Parties) determining for themselves what documents are "relevant":

> a. Settling Parties' relevant non-privileged documents concerning resolution of disputes with the Debtors, including documents concerning issues associated with the Agreement;
>
> b. Debtors' relevant non-privileged documents ***actually relied upon by Debtors*** and their counsel in analyzing the various claims and causes of action being compromised and settled and/or assets referenced in Section 2 of the Plan, including WMB documents available to the Debtors pursuant to Section 2.20 of the Agreement;
>
> c. Debtors' relevant non-privileged documents concerning the Debtors' investigation of JPMorgan Chase pursuant to Bankruptcy Rule 2004, including documents produced to the Debtors by JPMorgan Chase; and
>
> d. Debtors' relevant non-privileged documents ***supporting*** the analysis of The Blackstone Group set forth in the Disclosure Statement.

Motion ¶ 21 (emphasis added). If Objecting Parties desired additional documents, they would be forced to file document requests by June 28, accompanied by a certification of counsel stating the relationship of the request for production to the Objecting Party's Initial Objection and stating why the request is "reasonably necessary given the availability of information in the Depository." *Id.* ¶¶ 24-25.

Depositions would also be severely limited. Without first seeking relief from the Court, Objecting Parties could depose only those individuals identified on the Debtors' witness list; if additional depositions were needed, the Objecting Parties would need to seek leave of the Court, and even then, with respect to the Settling Parties, the Objecting Parties would be limited to taking Rule 30(b)(6) depositions. *Id.* ¶ 24. Moreover, despite the number of parties in interest, each deposition would be limited to seven hours. *Id.* ¶ 28. In addition, Objecting Parties would

not be permitted to serve any interrogatories, and requests for admission would be limited solely to requests for the authentication of documents. Motion ¶ 24.

The Motion proposes a schedule pursuant to which discovery regarding plan confirmation could essentially begin no sooner than June 23, 2010 (when the Debtors are to make their Depository available to the Objecting Parties), and end essentially a month later on July 28, 2010, with a pre-trial conference with the Court. The hearing regarding confirmation of the proposed Plan would, under the schedule proposed by the Debtors, take place a few days later (and last only a few days), from August 2 through August 4, 2010.

## ARGUMENT

As noted above, the Bank Bondholders do not object to the entry of an order that imposes reasonable procedures for discovery that are designed to ensure the prompt and efficient completion of discovery, so that a confirmation hearing can be held without undue delay and can proceed efficiently. The Debtors' proposed procedures and schedule, however, neither achieve this end nor appear to be designed to do so. To the contrary, the procedures will delay or prevent altogether legitimate discovery by the Objecting Parties because, rather than simply moving forward with discovery, Objecting Parties will first be tasked with preparing and filing papers justifying their need for any discovery beyond that which the Debtors and the Settling Parties have selected to give them. This is not the way discovery is supposed to work under the Federal Rules or the Bankruptcy Rules incorporating them, and there is no justification to turn those rules on their head in this bankruptcy case.

Moreover, even as to the limited discovery contemplated by the Motion, the schedule set forth in the Motion is simply not feasible and greatly disadvantages Objecting Parties. While the Debtors have had access to the documents for, at the very least, many months, the Objecting

- 5 -

DOCS_DE:160529.1

Parties will be seeing them for the first time only days before they are required to identify additional witnesses for depositions and justify their requests for additional documents, and presumably begin taking depositions. The Debtors' proposed provisions regarding confidentiality are likewise flawed.

### A. THE MOTION DOES NOT ALLOW FOR MEANINGFUL DISCOVERY.

#### 1. Requiring Detailed Plan Objections By June 21 and Limiting Discovery Based on Those Objections Is Not Reasonable.

The Debtors' proposed procedures would require an Objecting Party, in order to participate in discovery, to file its objections to confirmation of the plan on or prior to June 21, 2010, "setting forth the legal and factual basis in support thereof." Motion ¶ 19. The Debtors purport to limit the discovery that an Objecting Party may take "solely to the extent of the issues set forth in such objection." *Id.* Even if the Court were to approve the Disclosure Statement at the June 3 hearing, this would provide less than three weeks for parties to prepare their plan objections, significantly less than the 28-day period required by Bankruptcy Rule 2002(b), and, more significantly, would require parties to set forth the legal and factual bases for their objections before the Debtors had produced a single document in discovery. While it may be reasonable to request that the Objecting Parties outline their plan objections early in the process so that the issues in this contested matter are clearly identified, it is not reasonable to require them to set forth the legal and factual bases in support of their objections before any discovery has occurred with respect to the proposed plan. And it is not reasonable to use that preliminary filing as a basis to limit the scope of discovery. If the Court is inclined to require that plan objections be filed prior to discovery, the Court should limit the required objections to preliminary "bullet point" type objections that simply identify the objections the party in interest

then intends to assert to the Proposed Plan, without prejudice to its modifying or supplementing those objections at a later date following the completion of discovery.

### 2. Objecting Parties Should Not Have to Disclose Their Witnesses Until After The Debtors Have Disclosed Their Witnesses.

In their proposed schedule, the Debtors propose that the Debtors and Objecting Parties simultaneously identify the witnesses they expect to call at the confirmation hearing by June 21, 2010. Motion ¶¶ 17, 30. But the Debtors have the burden of proving that their plan is confirmable, *see, e.g., In re Arnold and Baker Farms*, 177 B.R. 648, 654 (B.A.P. 9th Cir. 1994) ("The debtor carries the burden of proving that a Chapter 11 plan complies with the statutory requirements for confirmation under §§ 1129(a) & (b)."); *In re Washington Assocs.*, 147 B.R. 827, 830 (E.D.N.Y. 1992) ("The burden of proof rests squarely on the plan's proponent..."), and the testimony presented by Objecting Parties will presumably, to a large extent, be offered only to rebut the testimony of the Debtors' witnesses. Moreover, as of June 21, 2010, the Bank Bondholders will not have received any documents from the Debtors. Thus, the Debtors are asking this Court to require Objecting Parties to file their final witness lists before they have received any discovery and before they know the identity of the witnesses the Debtors intend to call. Objecting Parties should not be required to identify witnesses they intend to call merely to respond on issues on which the Debtors bear the burden of proof or otherwise to rebut the evidence presented by the Debtors. Indeed, the Debtors specifically propose that they not be required to identify any witnesses they intend to call to respond to plan confirmation objections or in rebuttal to the Objecting Parties' witnesses. *See* Motion ¶ 17. The same approach should apply to the Objecting Parties. At an absolute minimum, the identification of witnesses should be staggered, with Objecting Parties required to identify any witnesses following a reasonable period after Debtors have produced documents and have identified the witnesses Debtors expect

- 7 -

to call at the confirmation hearing, including the witnesses they intend to present to address the objections to confirmation of Objecting Parties.

### 3. The "Permissible Discovery" Identified by Debtors Is Too Narrow.

The Debtors' proposed procedures would severely limit both the scope of discovery that Objecting Parties could seek from the Debtors and the other Settling Parties and the methods of discovery the Objecting Parties could use. The topics suggested by Debtors are far too narrow, and there is no basis to preclude Objecting Parties from using all methods of discovery provided by the Federal Rules of Civil Procedure as incorporated by the Bankruptcy Rules.

Under the Debtors' proposed procedures, discovery from the Settling Parties would be limited to the "Settling Parties' relevant non-privileged documents concerning resolution of disputes with the Debtors, including documents concerning issues associated with the Agreement." Motion ¶ 21(a). The Settling Parties would not be required to produce any other documents relating to any aspect of the proposed plan.

Discovery from Debtors would be in some ways even more limited. Except for non-privileged documents concerning its investigation of JPMC pursuant to Rule 2004 (which likely will consist primarily of those documents produced by JPMC to Debtors), the Debtors would be obligated to place in the Depository only "relevant" documents (with the Debtors appointed as the judges of relevance) on which the Debtors and their counsel "*actually relied*" in "analyzing the various claims and causes of action being compromised and settled and/or assets referenced in Section 2 of the Plan," and documents "*supporting* the analysis of The Blackstone Group set forth in the Disclosure Statement." Motion ¶ 21(b), (c) (emphasis added). But the discovery provided for by the Federal Rules and the Bankruptcy Rules is not limited to documents on which a party relied or that support its position. Rather, the Rules require the production of all

- 8 -

non-privileged documents reasonably calculated to lead to the discovery of admissible evidence on the issues in a contested matter—whether or not they were relied upon by the producing party or support the producing party's claims. More importantly, none of the categories of documents to be produced by the Debtors includes documents regarding any of the terms of the proposed plan or the treatment of the Bank Bondholders' or other creditors' claims under the plan.

### 4. The Limitations on Depositions Are Not Reasonable.

Under the procedures outlined in the Motion, the only witnesses whom the Objecting Parties would be allowed to depose without permission of the Court would be those witnesses identified by the Debtors. The Debtors appear to appreciate the absurdity of this limitation, and the proposed procedures establish a mechanism through which Objecting Parties may seek to depose other witnesses. However, the mechanism itself is flawed and too restrictive. If any Objecting Party wanted to depose other witnesses, including any of the Settling Parties, it would first need to seek permission of the Court by June 28—a mere five days after Objecting Parties receive access to the Depository and a mere seven days after receiving the Debtors' Witness List—and justify why the proposed deponent's testimony is not duplicative of the persons listed on the Debtors' Witness List. Motion ¶ 24. In addition, with respect to the Settling Parties, only Rule 30(b)(6) depositions would be permitted. *Id.* The proposed procedures would also limit each deposition to seven hours. Motion ¶ 28.

There is no justification for any of these limitations. As with document discovery, depositions are not intended to be limited to those witnesses the producing party designates; rather, as in every other contested matter, the Objecting Parties should be permitted to identify and depose witnesses who may have relevant knowledge relating to the plan and the issues raised by their objections. And while Federal Rule 30(d) does impose a default rule limiting

depositions to one day of seven hours, the Rule also provides that "[t]he Court must allow additional time . . . if fairly needed to examine the deponent . . . ." Fed. R. Civ. P. 30(d). In a case of this size, where numerous parties have already filed objections to the disclosure statement indicating their opposition to the plan and likely will seek to depose witnesses regarding multiple topics, the Court should relax the seven-hour rule and at least provide for two seven-hour days to complete each witness's deposition. Without this flexibility, depositions will be delayed as Objecting Parties will need to come before this Court to gain permission to complete their depositions.

Finally, the procedures give the Debtors the absolute right to set the time, place, and date of all depositions. Motion ¶ 27 ("[T]he Debtors shall publish a schedule in accordance with the Local Rules of the date, time and place at which depositions shall be held."). The Debtors should not have this unilateral right. All parties should be required to consult in good faith to determine a mutually convenient deposition schedule.

### 5. The Schedule Does Not Provide Adequate Time to Review Documents and Depose Witnesses.

In addition to the explicit limitations on discovery, the Debtors' proposed schedule does not permit Objecting Parties sufficient time to obtain, review and use the information that is supposed to be made available to them. By June 21, before any documents are made available, Objecting Parties will have already been required to file their Initial Objections to the Plan, including the legal and factual support therefore, and to file a witness list. Motion ¶¶ 19, 30. Objecting Parties will not have access to documents—and then only to those limited categories of documents that Debtors decide to place in the Depository—until June 23, 2010. The task that Debtors propose Objecting Parties undertake in the five days that will follow is Herculean. By June 28, the Objecting Parties will need to obtain access to the database, review the documents in

the database, determine what additional relevant documents not in the database they need to seek, draft document requests seeking those documents, draft a certification setting forth why the additional requests are reasonably necessary in light of the documents already made available in the Depository, draft a list of additional witnesses that may be suggested by the documents, and file a pleading with the Court explaining why the testimony of these additional witnesses is reasonably necessary and not duplicative. If the Depository contains even a fraction of the relevant documents regarding just the topics outlined in the Motion, it will almost surely contain many thousands of pages of documents. Reviewing and analyzing all these documents in order to accomplish everything the schedule requires within five days is simply not feasible.

The remainder of the schedule is equally unfeasible. While the Bank Bondholders do not know at this point how many witnesses the Debtors will identify or how many additional witnesses they and other Objecting Parties may seek to depose, they note that the Equity Committee has already sought broad discovery of multiple third parties. The Debtors' schedule leaves little more than 20 business days in which depositions might be taken—and that assumes that documents are produced immediately—and gives Objecting Parties no time to review any additional documents that may be produced.

6.     **The Procedures Do Not Provide for Expert Disclosures.**

The procedures and schedule proposed by Debtors make no provision for the Debtors' disclosure of expert reports and the materials reviewed by the experts. Indeed, with respect to the analysis of the Blackstone Group, the procedures limit the document production to documents *supporting* the analysis, but do not require the production of other documents reviewed by Blackstone. This is inconsistent with the basic requirement for expert disclosure under the Federal Rules. *See* Fed. R. Civ. P. 26(a)(2).

### 7. There Is No Reason That Objectors Should Not Be Able to Serve Interrogatories or That Requests For Admission Should Be Limited.

The Debtors' proposed procedures do not permit the use of interrogatories. There is no basis to eliminate this tool, which is specifically provided for in the Federal Rules of Civil Procedure and incorporated in the Bankruptcy Rules. *See* Fed. R. Civ. P. 33; Fed. R. Bankr. P. 7033. Nor is there any reason to limit the scope of Requests for Admission to the authentication of documents, as the Debtors also propose, *see* Motion ¶ 24.c., again in contravention of the Federal Rules. *See* Fed. R. Civ. P. 36; Fed. R. Bankr. P. 7036; 9014.

### 8. Debtors' Proposed Schedule Does Not Provide Enough Time for Objecting Parties to Respond to Production Requests.

The proposed schedule states that "in the event that a Production Request or an Admission Request is served upon an Objecting Party, such party shall respond to such [Requests] within five (5) days of service thereof." Motion ¶ 30. This dramatic departure from the usual 30 days provided for under the Federal Rules of Civil Procedure as incorporated by the Bankruptcy Rules, *see* Fed. R. Civ. P. 34(b)(2)(A); Fed. R. Bankr. P. 7034, is unjustified. In particular, given the number of Bank Bondholders, it would be impossible to review any such requests and respond—much less produce documents—in the five-day period proposed by Debtors.

### 9. The Deadline for the Submission of Affidavits for the Presentation of Direct Testimony Is Inadequate.

The Debtors' proposed procedures permit direct testimony to be presented through affidavits, but require those affidavits to be filed only two business days prior to the commencement of the Confirmation Hearing. To be fair to all parties, such affidavits should be filed and served at least five days prior to the hearing.

### B. DEBTORS' PROPOSED CONFIDENTIALITY PROVISIONS ARE ONE-SIDED AND FLAWED.

In addition to setting forth procedures and a schedule for discovery, the Debtors also request that the Court (1) include in any order approving discovery procedures a provision providing that, pursuant to Federal Rule of Evidence 502(d), an inadvertent disclosure of confidential information by the Debtors or the Settling Parties shall not be deemed to comprise any waiver of any applicable privileges, and (2) approve attached "Provisions Governing Confidential Information and Highly Confidential Information" ("Confidentiality Provisions"). Motion ¶¶ 34-35; Exhibit A. The Bank Bondholders have no objection to including a Rule 502(d) provision or reasonable provisions governing confidential documents, but such provisions should apply equally to all parties and must be reasonable. The Bank Bondholders have the following specific objections to the Confidentiality Provisions:

- The Confidentiality Provisions are ambiguous as to whom Confidential and Highly Confidential Information (collectively, "Confidential Information") may be disclosed and which recipients of Confidential Information must submit Acknowledgement Forms to the Debtors. *See* Motion, Exhibit A, ¶ 2, and *compare with* ¶¶ 4-5. The Confidentiality Provisions should provide that Confidential Materials may be disclosed to clients and that the Acknowledgement Forms required in part 2.c. of the Confidentiality Provisions should be held by counsel for the relevant Objecting Parties unless there is an alleged breach of the Confidentiality Provisions. To require that every Acknowledgement Form be sent to the Debtors' counsel would potentially reveal an Objecting Party's litigation strategy and work product, and possibly attorney-client communications.

- The proposed time periods in the Confidentiality Provisions in which the Debtors or the Settling Parties shall designate deposition transcripts as confidential (30 days), or notify parties that they inadvertantly failed to designate documents as confidential (45 days after production or 30 days after notice), are too long. *Id.* ¶3. Under the schedule proposed by the Debtors, the Debtors would be permitted to declare deposition transcripts or documents confidential on the eve of, or even during, the confirmation hearing and could use these provisions to prejudice Objecting Parties.

- Paragraph 2 of the Confidentiality Provisions allows an Objecting Party to use Confidential Information only in connection with the prosecution of its objection to confirmation. This should be expanded to permit the use of such Confidential Information, subject to all other restrictions, generally in the Chapter 11 case, as later paragraphs in the proposed Confidentiality Provisions appear to contemplate. *See, e.g., Id.* ¶¶4b, 4d, 4h, 5c, 5e, 5j.

- Paragraph 6 of the Confidentiality Provisions states that counsel for the Debtors should retain copies of the Acknowledgement Forms executed by outside consultants, financial advisors or experts. The Acknowledgement forms obtained from consultants, advisors or experts retained by an Objecting Party should be held by counsel for the Objecting Party. Requiring disclosure of these forms to Debtors' counsel would force an Objecting Party to disclose its non-testifying experts, which it would not otherwise be required to do under the Federal Rules.

- The provisions in paragraph 8 regarding the use of Confidential Information at the confirmation hearing are unclear. To the extent they require an

Objecting Party to file a motion two days in advance of the hearing, these provisions are burdensome and do not provide for any use of Confidential Material for rebuttal purposes or to refresh a witness's recollection.

- Paragraph 11 of the Confidentiality Provisions is unclear. To the extent that it purports to require the prior production of a document that has not been requested in discovery or that otherwise was not required to be produced (e.g. documents that are publicly available) before such a document can be used at a deposition or hearing, it should be modified.

- The reference in Paragraph 13 of the Confidentiality Provisions to "this paragraph 6" should be to "this paragraph 13".

- The penultimate sentence in paragraph 14 of the Confidentiality Provisions should be modified to provide that work product need not be destroyed, as is provided in paragraph 13.

DOCS_DE:160529.1

## CONCLUSION

For the reasons stated above, the Court should deny the Motion.

Dated: June 2, 2010

WILMER CUTLER PICKERING HALE & DORR LLP
Philip D. Anker
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

-and-

WILMER CUTLER PICKERING HALE & DORR LLP
Russell J. Bruemmer
Nancy L. Manzer
Gianna M. Ravenscroft
Lisa E. Ewart
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

-and-

PACHULSKI STANG ZIEHL & JONES LLP

_/s/_____
Laura Davis Jones (Bar No. 2436)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
      tcairns@pszjlaw.com

Counsel for the Bank Bondholders