IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | : Chapter 11 |
| WASHINGTON MUTUAL, INC., et al.,[1] | : Case No. 08-12229 (MFW) |
| Debtors. | : Jointly Administered |
| | : RE: Docket No. 4414 |

## OBJECTION OF THE FDIC-RECEIVER TO THE EQUITY COMMITTEE'S MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004

The Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank (the "FDIC-Receiver"), respectfully submits the following objection to the Motion of the Official Committee of Equity Security Holders (the "Equity Committee") for an Order Pursuant to Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004-1 Directing the Examination of the FDIC and Certain Third Parties [D.I. 4414] (the "Motion"). For the reasons that follow, the Motion should be denied.

## SUMMARY OF OBJECTION

1.  The Equity Committee's Motion should be denied as a misuse of Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). If granted the examination sought by the Equity Committee would impose an unjustifiable burden and expense on third parties, including agencies of the United States government, while bearing little relevance to any issues in these chapter 11 cases. The Equity Committee purportedly seeks to conduct its own "investigation" of alleged claims against JPMorgan Chase Bank, N.A. ("JPMC") at the expense of third parties including the FDIC-Receiver. The Equity Committee seeks to

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification numbers are: (a) Washington Mutual, Inc. (3725); and (b) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

restart the litigation and settlement process that has been ongoing in these cases since September 2008 on the chance that it might yield a better result for its constituents. The Equity Committee would have the Court empower the Equity Committee to run its own sweeping investigation despite the following facts: (i) exhaustive investigations of the same facts have been performed by the Debtors, the Official Committee of Unsecured Creditors, the Permanent Subcommittee on Investigations of the United States Senate and others; (ii) very similar requests were made of the FDIC-Receiver and others by the Debtors, and rejected by this Court, in a motion for an order pursuant to Rule 2004; and (iii) the "claims" which the Equity Committee seeks to investigate have already been dismissed with prejudice. Most importantly, the sweeping requests the Equity Committee is making of a number of third parties including government agencies has little, if any, relevance to the issues presented in the confirmation process. The Debtors' Plan, as amended, implements the terms of the Global Settlement Agreement, which resolves a number of controversies among the Debtors, JPMC, the FDIC-Receiver and other parties, including FDIC-Corporate, and permits a resolution of these chapter 11 cases. The Debtors as fiduciaries to these chapter 11 estates have determined that it is in the best interests of these estates to enter into the Global Settlement Agreement. The Debtors' business judgment, which is supported by the Official Committee of Unsecured Creditors, must be given deference. The Equity Committee should not receive an opportunity to substitute its business judgment for that of the Debtors because it does not like the results. The simple fact is the Equity Committee represents an out of the money constituency that has every incentive to continue litigation regardless of how remote its chance of success and regardless of the impact on other parties. An appropriate inquiry by the Equity Committee is whether the Debtors properly exercised their business judgment in determining whether to enter into the Global Settlement Agreement. It is not

appropriate for the Equity Committee to embark on this "investigation" at the expense of third parties in complete disregard of the prior proceedings and extensive negotiations between the parties.

2. While the authority provided under Rule 2004 is admittedly broad, courts have recognized that there are limits to that authority and have denied motions for 2004 examinations that exceeded those limits. In particular, it is surprising that the Equity Committee would make such broad requests in light of this Court's Order on February 16, 2010 [D.I. 2366], denying the Debtors' motion for 2004 examination of the FDIC (the "Debtors' 2004 Motion") on very similar requests. Nevertheless, the Equity Committee proceeds as if this Court had not ruled that it was improper to burden third parties with such sweeping requests. As this Court noted at the hearing held on the Debtors' 2004 Motion on January 28, 2010: "You can't . . . get authority to issue subpoenas to anybody you want. You have to prove that [the request] relates to a claim that you have and you have to prove it's necessary . . . . It's not enough to show [that third parties] may possibly have relevant documents . . . . You have to show that the 2004 is necessary to get it." Hr'g Tr. at 87. The Equity Committee's Motion, however, does not show any necessity for the relief requested or any connection to any claim it has not even any relation to any issue in these cases. The Equity Committee's requests are all the more inappropriate since the relevant inquiry is no longer the existence of claims but rather the reasonableness of the proposed settlement.

3. The information the Equity Committee seeks is readily available via alternative sources such as the Debtors. In fact, in an attempt to bring order to the confirmation-related discovery, on May 27, 2010, the Debtors filed their Motion to Establish Procedures for Objections and Discovery Related to Confirmation and Related Deadlines [D.I. 4380] (the

"Scheduling and Procedures Motion"). The Scheduling and Procedures Motion seeks to establish a comprehensive plan for the confirmation process, including discovery.

4. The Equity Committee's purported claims are not meaningfully different from the claims brought against JPMC in *American National Insurance Co. v. JPMorgan Chase & Co.*, No. 09-1743 (D.D.C.) (RMC) (the "ANICO Action"), which the United States District Court for the District of Columbia already has ruled are barred by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989).

5. On May 5, 2010, in denying the Motion and Supporting Memorandum of the Official Committee of Equity Security Holders for the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code, this Court acknowledged that the Debtors have been fully investigated. *See* Hr'g Tr. at 98 ("First, it is clear to me that this debtor has been investigated to death. And I'm sure that even the most experienced and talented examiner that the United States Trustee could appoint would not find any stone unturned."). The multitude of entities and agencies that have comprehensively investigated these matters, or have authority to do so include the Debtors, Official Committee of Unsecured Creditors, the Equity Committee, the Office of Thrift Supervision, the Federal Deposit Insurance Corporation, the Department of Labor, the Department of Justice, the Federal Bureau of Investigation, the Internal Revenue Service, the Securities and Exchange Commission, the United States Attorney for the Western District of Washington, the Attorney General of the State of New York, numerous class action law firms pursuing claims on behalf of shareholders, the President's Financial Fraud Task Force and the United States Congress.

6. Finally, even if the Court does entertain the Equity Committee's Motion, it should be noted that under applicable federal law significant protections exist that limit the

information that may be sought through third party subpoenas. The FDIC-Receiver reserves all such rights.

7. The Motion should be denied for the same reasons this Court denied the Debtors' 2004 Motion. Rule 2004 was not intended to unnecessarily burden third parties, nor is application of the rule permitted when the benefit of the proposed examination is outweighed by the burden it would impose. The Equity Committee's requests are improper and its Motion should be denied.[2]

## BACKGROUND

### A. General Background

8. On September 26, 2008 (the "Commencement Date"), each of the Debtors commenced with this Court a voluntary case pursuant to chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 3, 2008, the Court entered an order, pursuant to Bankruptcy Rule 1015(b), authorizing the joint administration of the Debtors' chapter 11 cases.

9. On October 15, 2008, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On January 11, 2010, the U.S. Trustee appointed the Equity Committee.

10. On March 26, 2010, the Debtors filed their *Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* and a related disclosure statement. A hearing to consider the adequacy of the information contained in the disclosure statement was

---

[2] To the extent the Court determines that some portion of the relief requested should be granted the FDIC-Receiver reserves the right to seek an appropriate protective order limiting the Equity Committee's requests.

set for May 19, 2010, with objections to be filed before such date. In response to objections, and to address certain minor changes, on May 16, 2010, the Debtors filed their *First Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* and a related disclosure statement. On May 19, 2010, the Court held a status conference, scheduled a hearing for June 3, 2010 to consider approval of the Debtors' disclosure statement, and requested that the Debtors file a revised plan and disclosure statement by May 21, 2010. The Debtors filed their *Second Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* on May 21, 2010 [D.I. 4241] (the "Plan"), and a related disclosure statement [D.I. 4242] (the "Disclosure Statement").

### B. The Rule 2004 Motion

11. The Equity Committee did not contact the FDIC-Receiver or FDIC-Corporate concerning the possible issuance of Rule 2004 discovery until May 26, 2010. While the FDIC-Receiver spoke with the Equity Committee on May 27, 2010 about the enormity of its proposed discovery requests, the Equity Committee elected to file this Motion, rather than limiting its request in a manner that would alleviate the immense burden on the FDIC and others, or agreeing to satisfy its discovery requests through the use of the procedures set forth in the Debtors' Scheduling and Procedures Motion.

12. In addition to the FDIC-Receiver and FDIC-Corporate, the putative "Knowledgeable Parties" from which the Equity Committee is seeking authority to conduct third-party discovery in the Motion are: Banco Santander, S.A.; the Board of Governors of the Federal Reserve System; Moody's Investors Service; former Secretary of the Treasury Henry M. Paulson, Jr.; Standard and Poor's Corporation; the United States Department of the Treasury; The Goldman Sachs Group, Inc.; the Office of the Thrift Supervision; and the United States Securities and Exchange Commission.

## OBJECTION

## THE MOTION SHOULD BE DENIED

13. The Motion should be denied because it imposes significant discovery burdens on third parties despite the fact that movants have not shown any justification or necessity for the relief requested. There is no basis to impose on numerous third parties substantial burdens that would arise from compliance with the Equity Committee's proposed discovery requests. *See* Bankruptcy Rule 2004(b).[3] There is no showing that the information sought is unavailable from other sources or even that it relates to any issue in these cases. Any legitimate discovery that the Equity Committee requires could be obtained more efficiently through the Debtors' Scheduling and Procedures Motion.

### I. The Equity Committee's Open-Ended Investigation of Potential Claims Does Not Justify Third-Party Discovery Under Rule 2004.

14. Although the scope of Bankruptcy Rule 2004 is broad, it is not without limits. "Examinations cannot be used to harass or oppress . . . ." *Snyder v. Soc'y Bank of Ann Arbor*, 52 F.3d 1067, at *1 (5th Cir. 1995) (*per curiam*) (citing *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 516 (E.D.N.Y. 1991). Nor may Rule 2004 be used "as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985). As one bankruptcy court has observed:

---

[3] Bankruptcy Rule 2004(b) provides:

    (b) **Scope of Examination.** The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a family farmer's debt adjustment case under chapter 12, an individual's debt adjustment case under chapter 13, or a reorganization case under chapter 11, other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefore, and any other matter relevant to the case or to the formulation of a plan.

> Rule 2004 requires that we balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination. That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production . . . . The burden of showing good cause is an affirmative one in that it is not satisfied merely by a showing that justice would not be impeded by production of the documents . . . . Good cause may ordinarily be sustained by a claim that the requested documents are necessary to establishment of the moving party's claim or that denial of production would cause undue hardship or injustice.

*In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) (citations omitted).

15. In this case, the Equity Committee does not assert that its Motion seeks discovery from the FDIC-Receiver or any of the other "Knowledgeable Parties" to investigate potential claims against the third parties, that the information is unavailable from other sources or that the information is necessary for the Equity Committee to participate in these chapter 11 cases. To the contrary, the Equity Committee states repeatedly that the purpose of its Motion is to investigate the Debtors' settlement with the FDIC-Receiver. *See, e.g.*, Mot. ¶¶ 2, 5. Yet only two of its requests even reference the Global Settlement Agreement. Even if the Equity Committee's requests did relate to the Global Settlement Agreement, the information sought would be easily obtained from other sources such as the Debtors.

16. There is no basis to impose the burden and expense of non-party discovery on the FDIC-Receiver and other "Knowledgeable Parties" under the circumstances here, much less the "good cause" that is required to obtain relief under Bankruptcy Rule 2004. As this Court made abundantly clear on January 28, 2010 at the hearing on the Debtors' 2004 Motion, in order to receive the court's authorization to conduct Bankruptcy Rule 2004 discovery of third parties, the moving party "has to prove that it is absolutely necessary to use Rule 2004 because the [moving party] cannot obtain [the documents sought] in any other way." Hr'g Tr. 89.

17.     Courts have rejected Bankruptcy Rule 2004 motions in similar circumstances. *See Deloitte & Touche v. Hassett*, 123 B.R. 488, 491 (Bankr. S.D.N.Y. 1991) ("Before placing on D&T the burden of producing thousands of pages of internal documents which are proprietary and then engaging in oral discovery relating to those documents, a Rule 11 determination should be made that the Trustee has an adequate basis for filing a claim against D&T.") (citing cases); *see also In re Wilcher*, 56 B.R. at 433-34 (quashing subpoena served on third party purchaser of property absent evidence of duplicity). The Equity Committee's Motion similarly should be rejected here.

## II. The Discovery Sought in the Equity Committee's 2004 Motion Imposes an Undue Burden on the FDIC.

18.     Bankruptcy Rule 2004 requires the "balanc[ing] [of] the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. at 712; *see also In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992); *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994). "[I]f the cost and disruption to the examinee attendant to a requested examination outweigh the benefits to the examiner, the request should be denied." *In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998).

19.     When considered in this manner, it is clear the burdens the requested discovery would place on the FDIC-Receiver, as well as other government agencies and third parties, significantly outweigh whatever benefit the requested information could possibly bestow on the Equity Committee. This is especially true since the Equity Committee has failed to show any connection between the discovery requests and any legitimate issues for confirmation. The tremendous difficulties faced by the FDIC-Receiver should it be required to comply with the Motion cannot be understated. The Equity Committee's requests are so broad that they

encompass every document in the possession of the FDIC relating to the largest bank failure in the history of the United States. This burden is made even more unreasonable by the fact that any appropriate discovery request may be obtained by the Equity Committee from the Debtors in a much less burdensome manner.

### III. The Scheduling and Procedures Motion Provides Appropriate Discovery Procedures Lacking in the Equity Committee's 2004 Motion.

20. The Scheduling and Procedures Motion seeks to establish a comprehensive plan for the confirmation process, including discovery and related issues, which will limit the burden on third parties while preserving the rights of objectors to the Debtors' Plan. While the FDIC intends to propose modifications that preserve the rights of the FDIC-Receiver, the Scheduling and Procedures Motion is better than the ad hoc discovery contemplated by the Equity Committee's Motion.

21. The relief sought in the Scheduling and Procedures Motion appropriately limits discovery to information relevant to objections to the Disclosure Statement and Plan confirmation. The Scheduling and Procedures Motion seeks to establish a document depository that will be populated with documents from the Debtors and other settling parties,[4] which will likely account for a large portion of the information relevant to the settlement embodied in the Plan and Disclosure Statement. *See* Scheduling and Procedures Mot. ¶ 21-23. To the extent that further discovery is appropriate and relevant, the Scheduling and Procedures Motion provides a mechanism for objecting parties to seek additional discovery from the Debtors or other settling parties. *See* Scheduling and Procedures Mot. ¶ 24-29. The Scheduling and Procedures Motion will avoid the inefficiency, burden and expense associated with uncoordinated, overlapping and

---

[4] If the Court's review is limited to the Debtors' exercise of their business judgment and the reasonableness of the settlement, documents which the Debtors do not possess would be irrelevant to such an inquiry. Accordingly, while the FDIC-Receiver supports the Scheduling and Procedures Motion, it reserves all rights to object to any discovery requests, including the right to argue that no discovery from the FDIC-Receiver is appropriate.

overbroad discovery requests such as the Equity Committee's Motion while providing parties such as the Equity Committee with the opportunity to conduct discovery that is appropriate within the Bankruptcy Rules.

IV. **The Motion Fails to Take into Account Federal Regulations Governing Discovery of the FDIC-Receiver.**

22. The Equity Committee's Motion fails to take into account Federal Regulations that govern third-party discovery of the FDIC-Receiver. Part 309 of Title 12 the Code of Federal Regulations sets forth the FDIC-Receiver's procedures for complying with third-party discovery requests for "exempt" documents and provides the FDIC with considerable discretion in determining the information it will provide. *See* 12 C.F.R. 309.6. Exempt records under Part 309 include commercial or financial information that is privileged or confidential, as well as records related solely to the internal personnel rules and practices of the FDIC. *See* 12 C.F.R. 309.5. Section 309.6 provides that the FDIC-Receiver's general counsel, or his or her designee, "may disclose or authorize the disclosure of any exempt record in response to a valid judicial subpoena." 12 C.F.R. 309.6. In determining whether to make such a disclosure, the general counsel must "consider the relevancy of such exempt records or testimony to the litigation, and the interests of justice, in determining whether to disclose such records or testimony." *Id.* Much of the information sought in the Equity Committee's Motion includes sensitive, confidential commercial or financial information and thus, will likely be considered "exempt" under Part 309 and therefore should only be produced by the FDIC-Receiver where the FDIC-Receiver's general counsel or designee exercises his or her discretion and chooses to comply with that request. The Equity Committee's request does not take into account the effect of 12 C.F.R. 309.6 and is thus improper.

## CONCLUSION

23. The Equity Committee's motion is an improper attempt to use Rule 2004 as a litigation tactic. The Equity Committee seeks irrelevant material from third parties without showing the necessity there for or considering the availability of relevant information from other less burdensome sources. For all of the foregoing reasons, the Motion should be denied.[5]

Date: Wilmington, Delaware
June 2, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
M. Blake Cleary (No. 3614)
Jaime N. Luton (No. 4936)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mbcleary@ycst.com
jluton@ycst.com

- and -

Thomas R. Califano
John J. Clarke, Jr
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Attorneys for the FDIC-Receiver

---

[5] Counsel for FDIC-Corporate has reviewed the objection to the Motion of the Official Committee of Equity Security Holders for an Order Pursuant to Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004-1 Directing the Examination of the FDIC and Certain Third Parties and has authorized FDIC-Receiver to state that FDIC Corporate concurs with the representations herein.