-------------------------------------------------x
                                                 :
*In re:*                                         :    Chapter 11
                                                 :
**WASHINGTON MUTUAL, INC., et al.,**[1]          :    Case No. 08-12229 (MFW)
                                                 :
                         **Debtors.**            :    (Jointly Administered)
                                                 :
                                                 :    Related to Docket #4484
                                                 :    Hearing Date: June 17th 2010
-------------------------------------------------x

## SECOND SUPPLEMENTAL OBJECTION OF INDIVIDAL SHAREHOLDERS TO DEBTORS' MOTION FOR APPROVAL OF DISCLOSURE STATEMENT FOR THE JOINT PLAN OF AFFILIATED DEBTORS PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

The following persons, Michael Rozenfeld and Sean Fitzgerald (the "Shareholders"),  having filed their original objection [**Docket # 3776**] and supplemental objection [**Docket # 4350**] within the prescribed time window, hereby file this supplemental objection to the  Debtors' Motion for an Order, Pursuant to Sections 105, 502, 1125, 1126 and 1128 of the Bankruptcy Code and Bankruptcy Rules 2002, 3003, 3017, 3018 and 3020, (i) Approving the Proposed Disclosure Statement and the Form and Manner of the Notice of the Disclosure Statement Hearing, (ii) Establishing Solicitation and Voting Procedures, (iii) Scheduling a Confirmation Hearing, and (iv) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Plan [**Docket # 4484**].

Having received the debtors responses to our arguments [**Docket #4462 pg. 42-44**] which consisted of only **a total of six paragraphs, grouping our objections together along with tens of others, and not actually answering a single point that was raised,** the Shareholders file this second supplemental objection, which includes responses to the

1

debtor's dismissive and inadequate responses and includes further evidence of their dereliction of fiduciary duty. The shareholders have also included a **chart attached as Exhibit A** detailing their original objections detailing the lack of adequate response by the debtor and further discussion regarding why each point should result in denial of the disclosure statement.

In support of this objection, the shareholders respectfully represent the following:

## Statements

1.     The shareholders in the previous two filings described why the financial analysis provided by Blackstone and the debtor is wholly inadequate. Additionally, the shareholders have shown through previous filings that both the debtor and the board of directors are acting in an extremely negligent fashion ignoring their fiduciary duties. This has become even more apparent based on the June 3rd, 2010 hearing in which the debtor argued that the equity committee and the debtor were not on the same side. This is in complete contradiction to the arguments the debtor made against the formation of the equity committee in which it discussed its fiduciary duties and how its goal was to maximize the entire estate for both creditors and shareholder alike. Finally, the debtor has even decided to depose the members of the equity committee while not even pursuing the FDIC or JP Morgan as evidenced by what information the equity committee has received. This further strengthens the arguments in the previously two filed objections.

2.     In response to our arguments, the debtor has asserted that their analysis of the strengths and weaknesses of litigation and the values the debtor assigns to assets, claims,

and liabilities is a secret and would be damaging to reveal. If the financial information they are providing on the disclosure statement is accurate and truly in the best interest of the estate, why are they so afraid to reveal this information? Additionally, it is impossible for the disclosure statement to go through if the financial information, such as the liquidation analysis and analysis used to determine the worth of the company's assets, is inaccurate. A reasonable investor would not be able to make a meaningful decision on a plan of reorganization if all of the financial information has been completed in a misleading fashion.

3.      In the debtor's response to our arguments asking for audited financial statements, they responded that they only have auditable financial statements from before the date of seizure. This did not answer the question that was posed regarding what assets were conveyed to JP Morgan by the FDIC and their current worth and book values. How can this disclosure statement go forward when the debtor doesn't even know what assets were seized and conveyed and what their worth was? Why does the debtor not have a truly independent analysis on the worth of the company? The shareholders assert that the debtor is afraid of having auditable financial statements due to the fact that they know their financial analysis of the worth of the company is completely wrong and potentially criminally fraudulent. How else could the debtor justify giving away billions of dollars to an adversarial party that the estate is suing for billions of dollars? Even the liquidation analysis assumes that WMI will be giving away billions in dollars to the FDIC and JP Morgan with no justification.

4.      The debtor asserts that the claims of the FDIC and JP Morgan have been investigated to death. The shareholders disagree. None of those investigations were put in place to investigate the behavior of the FDIC and JP Morgan in regards to Washington Mutual and a number of them had political agendas. Additionally, almost all of these investigations have been kept secret and not provided to the debtor's estate. Finally, the debtor has not done a single investigation of its own based on the dearth of documents that they have received and the lack of meaningful depositions.

## RESERVATION OF RIGHTS

5.      The shareholders expressly reserve all of their rights to object to the Plan and/or the Disclosure Statement on any grounds whatsoever, including by joining in the objections of other parties, regardless of whether those grounds are addressed herein.

## CONCLUSION

6.      As noted herein, the Disclosure Statement fails to provide stakeholders with "adequate information" (within the meaning of Bankruptcy Code Section 1125) to evaluate the Plan and, may contain misleading information about the current financial condition of WMI. Additionally, the plan itself may have been negotiated in bad faith given the parties that were involved.

**WHEREFORE**, Michael Rozenfeld and Sean Fitzgerald respectfully request that the Court: (a) deny the Motion, and (b) grant such other and further relief as it deems just and proper.

Dated: Houston, TX

June 7th, 2010

Respectfully submitted,

Michael Rozenfeld

Sean Fitzgerald

# Exhibit A

**The Liquidation Analysis is Incomplete**

| | |
|---|---|
| **Objection Originally filed by the Shareholders** | The disclosure statement is missing:<br><br>"a) A factual analysis showing the liquidation value of the company under Chapter 7;"<br><br>This was also pointed out with this statement in our objection:<br><br>"Finally, the liquidation analysis assumes that the company will receive the same ratio of tax returns as it has negotiated with the FDIC and JP Morgan. This analysis is not correct as it fails to justify the reasoning for this." |
| **Debtors Response to Objection** | "The Third Amended Disclosure Statement includes a liquidation analysis, attached as Exhibit "C"" |
| **Shareholders Response to Debtors Response** | The liquidation analysis found in Exhibit C does not show what would happen if the debtor were to keep all of the tax refunds and the four billion dollars currently held in a JP Morgan account. To date no one has shown the court any valid reason or justification for giving JPM over $2 billion in cash and billions more in assets when they bought the bank out of receivership for only $1.8 billion. Further still, there have been numerous reports in the media and from the FDIC itself stating that the seizure did not cost the FDIC any money and therefore there is no valid reason to give the FDIC anything. Once again, no reason has been given to the court justifying such a windfall for the FDIC and JPM. Consequently, it is reasonable to assume that a reasonable investor would demand from the debtor a liquidation analysis that reveals to the investor what would happen to the estate if none of its assets were gifted away to JPM or the FDIC. Since this is not provided it is clear that no factual analysis showing the liquidation value of the company is present in Exhibit C and therefore the debtor's motion to approve the Third Amended Disclosure Statement should be denied. |

## No Justification is Given for Accounting Methods Used

| | |
|---|---|
| **Objection Originally filed by the Shareholders** | The disclosure statement is missing: "b) Detailed accounting and valuation methods used in the disclosure statement;"Additionally, Blackstone used DCF (Discounted Cash Flow) analysis to estimate the value of assets WMI owns. The filing fails to mention what type of discount rate was used for this analysis which is a critical value that is needed for understanding the disclosure statement. In example, if WMI was supposed to receive a million dollars five years from now, if one used a discount rate of 10%, the asset would be currently worth approximately six hundred and twenty thousand dollars (~$620,000). However, if one used a discount rate of 30%, the asset would be currently worth approximately two hundred and seventy thousand dollars (~270,000). By using an unreasonable discount rate, the company could easily hide the future value of its assets" |
| **Debtors Response to Objection** | "The Third Amended Disclosure Statement... financial information and projections regarding the operations of the Reorganized Debtors in Article VI thereof, and a valuation analysis performed by Blackstone, attached as Exhibit "D" thereto, which has been revised to provide a more detailed description of Blackstone's analysis. " |
| **Shareholders Response to Debtors Response** | While Exhibit D of the Third Amended Disclosure Statement shows some of the accounting and valuation methods used in the disclosure statement, it contains some very alarming language. It states that Blackstone did not independently verify anything and relied solely on the good faith of the debtor. When talking about tens of billions of dollars it is safe to assume that a reasonable investor would demand an independent verification of the debtor's projections, accounting methods, and valuations. Further still it states that the discount rates used were between 14% and 16%. No justification or reason is given for this. It seems to have been arbitrarily chosen by the debtor.<br><br>According to http://inflationdata.com/inflation/inflation_rate/CurrentInflation.asp the current inflation rate in the US is estimated to be between 2% and 3%. Since the discount rate used is significantly higher than the current inflation rate it is reasonable to assume that a reasonable investor would demand an explanation as to why 14%-16% is being used. Therefore, the debtor's motion to approve the Disclosure Statement should be denied. |

**No Explanation is Given for Gifting Away 50%-75% of the Estates Value**

| | |
|---|---|
| **Objection Originally filed by the Shareholders** | The disclosure statement is missing:"c) Detailed discussion of the value of litigation against the FDIC & JP Morgan and why claims will not be pursued; "d) What the justification is for giving away assets to parties that have little legitimate claim to them" |
| **Debtors Response to Objection** | "Given the sensitive nature of the underlying litigation, the Debtors believe that any additional disclosure regarding the strengths and weaknesses of the claims asserted in the various litigations, the costs and benefits of settling as opposed to continuing such litigations, and the values the Debtors assign to various assets, claims and liabilities transferred, assumed or released pursuant to the Settlement Agreement could undermine and adversely affect the Debtors' litigation strategy (to the detriment of the Debtors' estates) if the Settlement Agreement and Third Amended Plan are not approved by the Court." |
| **Shareholders Response to Debtors Response** | This is completely unacceptable. No reasonable investor would ever accept a disclosure statement where potentially 50% to 75% of the estate's value is gifted away to JPM and the FDIC without any justification whatsoever and without any sort of financial analysis detailing the reasons. Once again the FDIC stated publicly when seizing the bank that the seizure did not cost them a dime, therefore they should not be entitled to anything. JPM bought the bank out of receivership for a pittance of only $1.8 billion so why should they be gifted over $2 billion in cash and many billions more in assets. The only investors who would accept this are those driven by greed and the desire to steal shareholder value. As stated in our previous objection: "… the debtor's are intentionally rushing an incomplete plan in order to destroy equity, end all lawsuits that could results in great recovery to the estate, generate tremendous goodwill with JPM and the FDIC that will inevitably lead to favorable deals for the creditors in the future, and above all else, quickly bring an end to the proceedings, and bring a massive windfall profit to the creditors who bought the debt at 1/100th of a cent on the dollar (which is a 10,000% profit)." |

## A List of Exactly What was Seized with Values has Never been Provided; the Estate Cannot Know what it Owns

| | |
|---|---|
| **Objection Originally filed by the Shareholders** | The disclosure statement is missing: "... an itemized list with the original book & revised value of assets that WMI believes it owns;""e) Documentation from the FDIC as to what assets they seized and conveyed to JP Morgan." |
| **Debtors Response to Objection** | "Prior to the Petition Date, WMI publicly filed its audited financial statements with the Securities and Exchange Commission. Such public filings are available at www.sec.gov. Subsequent to the Petition Data, WMI has filed quarterly monthly operating reports, which are publicly available on this Court's docket." |
| **Shareholders Response to Debtors Response** | The debtor is wrong in there assumption that a reasonable investor can go from the last audited statement to the first Monthly Operating Report. This is impossible. The FDIC has never provided to the public a list with values of all of the assets that it seized from WMI. If it had, there would be absolutely no question over the ownership of the 4 billion dollar deposit currently held in the JP Morgan account and the tax refunds whose current value is estimated to be upwards of 5 billion dollars. Did the FDIC sell JPM a bank, 4 billion in cash, and 5 billion dollars worth of tax refunds for only $1.8 billion? <br><br> The theft of billions of dollars from the public is not taken lightly as seen in the Madoff case where Bernard Madoff was sentenced to 150 years in prison. No Disclosure Statement can be approved by this court until the FDIC provides a legitimate list of exactly what it sold to JPM because without it the estate does not know what they own. Furthermore, we respectfully request that the court demand a spreadsheet made up of three columns with values; column A would include all of the assets WMI had the day before the seizure, column B shows all of the assets WMI had the day after the seizure, and column C shows all of the assets WMI has after reorganization and their values. |

**There is no and has never been an Independent Verification of the Estate's Value**

| | |
|---|---|
| **Objection Originally filed by the Shareholders** | The disclosure statement should be denied because "… there has not been an independent investigation (free of WMI's influence) of the worth of the company." |
| **Debtors Response to Objection** | The assertion in the Non-Conforming Shareholder Objections regarding the extent of investigations of JPMC, FDIC Corporate and the FDIC Receiver is a confirmation objection and thus is procedurally improper and premature as confirmation of the Third Amended Plan and approval of the Settlement Agreement are not before the Court at this time. Notwithstanding the foregoing, such assertions are unwarranted. The circumstances leading to the federal takeover and sale of WMB are among the most heavily investigated of any financial failure in history. The entities and agencies that have investigated these matters include the Debtors themselves, the Creditors' Committee, the Equity Committee, the Federal Deposit Insurance Corporation, the Department of Labor, the Department of Justice, the Federal Bureau of Investigation, the Internal Revenue Service, the Securities and Exchange Commission, the United States Attorney for the Western District of Washington, the Attorney General of the State of New York, numerous class action law firms pursuing claims on behalf of shareholders, and the United State Congress. The Debtors conducted discovery of JPMC pursuant to Rule 2004 of the Bankruptcy Rules and, in that process, obtained and comprehensively reviewed over 40,274 pages of documents produced by JPMC. Notably, in light of the numerous and thorough investigations that already have taken place, this Court determined that appointment of an examiner to investigate these same issues was inappropriate and thus denied the Equity Committee's motion requesting the same. |
| **Shareholders Response to Debtors Response** | The debtor fails to acknowledge our point. None of the parties listed were investigating the current worth of the company. The only party that may potentially do that is the equity committee; however, the debtors have been extremely uncooperative in turning over much needed documents. In fact, because of the extreme dislike of WMI shareholders the creditors committee, JPM, the FDIC, and the debtors themselves show, it is unlikely that a significant amount of documents will ever be turned over. Instead they will continually lie to the court that the equity committee is interfering with the reorganization process and the equity committee is requesting far too many documents. If they don't have anything to hide then why are they so afraid of turning over the documents?

Because there has not been a complete third party investigation into the worth of the company the disclosure statement should be denied as it is reasonable for an investor to expect and demand this (especially when talking about tens of billions of dollars and based on the vitriolic behavior shown by the debtor towards equity). |

**The Monthly Operating Reports have been Filled out Incorrectly in order to Hide Estate Assets**

| Objection Originally filed by the Shareholders | "Additionally, the MOR provided by WMI shows that the company is actually solvent if the two tax refunds (worth billions of dollars) that it shows listed as line items would be included in their assets & liabilities analysis." |
|---|---|
| Debtors Response to Objection | "Although the Debtors disagree with many if not all of the factual allegations and legal conclusions set forth in the Non-Form Shareholder Objections, for these purposes, the Debtors believe that it is sufficient to respond only that the remainder of the objections set forth in the Non-Form Shareholder Objections are confirmation objections or are otherwise not relevant to the relief sought by the Debtors in the Disclosure Statement Motion and thus are procedurally improper and premature as confirmation of the Third Amended Plan and approval of the Settlement Agreement are not before the Court at this time." |
| Shareholders Response to Debtors Response | The debtor refuses to acknowledge our statement. Instead they state that this is a confirmation objection and not relevant. This cannot be farther from the truth. A reasonable investor would demand that the monthly operating reports be filled out correctly. This means showing all of the assets that the estate believes it owns including the two tax refunds in the balance sheet portion of its Monthly Operating report. Is it unreasonable for an investor to want to know if the estate is potentially solvent or not? Because the debtor insists on hiding the tax refunds in the footnotes of the Monthly Operating Report instead of placing them where they rightfully belong in the balance sheet the motion to approve the Disclosure Statement should be denied. |

## JPM Broke an Agreement with WMI when Purchasing the Bank from the FDIC

| | |
|---|---|
| **Objection Originally filed by the Shareholders** | "The disclosure statement also has a number of troubling portions included in it such as giving away estate tax dollars to JP Morgan, who is prohibited from receiving these funds by TARP. Additionally, why should the estate be giving away money to JP Morgan at all given that there is a large amount of evidence found through this bankruptcy, by Kristen Grind of the Puget Sound Business Journal, and by governmental investigations, showing that they were engaging in fraudulent negotiations with WMI, eventually purchasing WMI from the FDIC (for a minimal sum of $1.8 billion), which was expressly prohibited under severe monetary penalties by the agreement it signed with WMI to view its records." |
| **Debtors Response to Objection** | "Given the sensitive nature of the underlying litigation, the Debtors believe that any additional disclosure regarding the strengths and weaknesses of the claims asserted in the various litigations, the costs and benefits of settling as opposed to continuing such litigations, and the values the Debtors assign to various assets, claims and liabilities transferred, assumed or released pursuant to the Settlement Agreement could undermine and adversely affect the Debtors' litigation strategy (to the detriment of the Debtors' estates) if the Settlement Agreement and Third Amended Plan are not approved by the Court." |
| **Shareholders Response to Debtors Response** | The debtor fails to acknowledge our point. They do not talk about the agreement between WMI and JPM that states that JPM will not buy the bank from anyone else anywhere in their disclosure statements. This information should not be hidden from investors. A reasonable investor would like to know that JPM broke an agreement that states severe monetary penalties can be levied against it. Because this information is missing from the Disclosure Statement the debtor's motion should be denied. |

**It is Impossible to go from the Last Audited Statement to the First MOR because WMI does not know what was Seized**

| Objection Originally filed by the Shareholders | "Finally, given that this is a bankruptcy involving potentially tens of billions of dollars; it is not unreasonable for the debtor to provide accurate and audited financial statements." |
| --- | --- |
| Debtors Response to Objection | "Prior to the Petition Date, WMI publicly filed its audited financial statements with the Securities and Exchange Commission. Such public filings are available at www.sec.gov. Subsequent to the Petition Date, WMI has filed quarterly monthly operating reports, which are publicly available on this Court's docket." |
| Shareholders Response to Debtors Response | As previously stated the debtor's contention that one can go from the audited financial statement to the first MOR is false. The FDIC never provided the list of assets that is seized and their values. Therefore all of the MORs cannot possibly be correct or trusted. When talking about billions of dollars it is not unreasonable for an investor to demand accurate audited financial statements. Consequently, the debtor's motion should be denied. |

No Reason is given as to why JPM's Share of the Tax Returns has been raised from 70% to 80%

| Objection Originally filed by the Shareholders | JP Morgan's share of the tax refunds under the proposed settlement keeps going up without any explanation. It started at 70% of the first tax return and now stands at 80%. |
| --- | --- |
| Debtors Response to Objection | This is a new objection, as the plan of reorganization and disclosure statement has been changed twice since these shareholders original objection. The debtor has not had a chance to respond to this objection. |
| Shareholders Response to Debtors Response | This is a very serious objection as it further shows the debtors, JPM, the FDIC and the creditor's full intent to steal every last penny from the shareholders of WMI. It was publically stated many times that JPM agreed to the first settlement. So why did the debtor, when renegotiating with the FDIC, give JPM more money? A reasonable investor would demand an explanation. Without it the debtor's motion to approve the disclosure statement should be denied. |

**No Defense is Given into Allegations that the Debtor Handled Negotiations in Bad Faith**

| Objection Originally filed by the Shareholders | The proposed plan was negotiated in bad faith; WG&M does not have the best interests of the estate in mind and has been negligent in its fiduciary duties; the Debtor's board of directors do not have the best interests of the estate in mind; the Debtors are not upholding their fiduciary duty to maximize the value of the estate. |
|---|---|
| Debtors Response to Objection | "Although the Debtors disagree with many if not all of the factual allegations and legal conclusions set forth in the Non-Form Shareholder Objections, for these purposes, the Debtors believe that it is sufficient to respond only that the remainder of the objections set forth in the Non-Form Shareholder Objections are confirmation objections or are otherwise not relevant to the relief sought by the Debtors in the Disclosure Statement Motion and thus are procedurally improper and premature as confirmation of the Third Amended Plan and approval of the Settlement Agreement are not before the Court at this time." |
| Shareholders Response to Debtors Response | The debtor's assertion that allegations of bad faith negotiations and failure to perform their fiduciary duty to maximize the value of the estate is irrelevant because it is an objection to confirmation and not the disclosure statement is false. If these allegations are true and they are performing their duties in bad faith, as believed by these shareholders, then everything they write should be questioned and confirmed by an independent third party. What reasonable investor would trust someone who is willing to steal billions of dollars from thousands of middle class Americans? The debtor should be forced to acknowledge these bad faith claims and prove otherwise before any Disclosure Statement is approved by this court. Evidence is mounting against the debtor in this regard. These shareholders have shown through previous filings that both the debtor and the board of directors are acting in an extremely negligent fashion ignoring their fiduciary duties. This has become even more apparent based on the June 3rd, 2010 hearing in which the debtor argued that the equity committee and the debtor were not on the same side. This is in complete contradiction to the arguments the debtor made against the formation of the equity committee in which it discussed its fiduciary duties and how its goal was to maximize the entire estate for both creditors and shareholder alike. Finally, the debtor has even decided to depose the members of the equity committee while not even pursuing the FDIC or JP Morgan as evidenced by what information the equity committee has received. This further strengthens the arguments in the previously two filed objections. The attached extremely damming e-mail shows that JPM intended to destroy shareholder value over two years ago even before the bank was seized. The email **[Exhibit B]** states that JPM wants WAMU "shareholders [to] pick up the first loss.... until they literally get zero". It goes on to state that JPM wants something "[that] gets the government comfortable that they only get involved if shareholders get zero". In light of such damming evidence how can a reasonable investor not conclude that JPM, the FDIC, the creditors committee and the debtors themselves have been conspiring together for quite some time to ensure that WMI shareholders get nothing. |

**Exhibit B**

**From:** Tim Main/JPMCHASE <tim.main@jpmorgan.com>
**Sent:** Sunday, March 30, 2008 7:31 AM
**To:** Charlie Scharf/IL/ONE <charlie.scharf@chase.com>
**Subject:** Re: West

Thanks

I of course love the idea of a slightly higher price than they deserve in the form of a contingent where their shareholders pick up the first loss versus say their high credit issue until they literally get zero, then the government kicks in with some form of second loss - either 75% for them and 25% for us, or they take 100% for a shot and then its all for us

Either way, something that really reduces our risk and gets the government comfortable that they only get involved if shareholders get zero. It sounds to me like the government is really concerned as they should be about taking losses, so they should like this versus alternative

Look forward to talking today and travel safely

# CERTIFICATE OF SERVICE

I, Sean Fitzgerald, hereby certify that on June 7, 2010, I caused a copy of the foregoing OBJECTION OF INDIVIDUAL SHAREHOLDERS TO DEBTORS' MOTION FOR APPROVAL OF DISCLOSURE STATEMENT FOR THE JOINT PLAN OF AFFILIATED DEBTORS PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE to be served upon the individuals listed below via First Class Mail.

(i) Washington Mutual Inc,

925 Fourth Avenue,

Seattle, Washington 98104

(Attn: Charles E.Smith, Esq.)

(ii) Weil, Gotshal & Manges LLP,

767 Fifth Avenue,

New York, New York 10153

(Attn: Brian S. Rosen, Esq.)

(iii) Richards Layton & Finger P.A.,

One Rodney Square,

920 North King Street,

Wilmington, Delaware 19899

(Attn: Mark D. Collins, Esq.)

(iv) Quinn Emanuel Urquhart & Sullivan, LLP,

55 Madison Avenue, 22nd Floor,

New York, New York 10010

(Attn: Peter Calamari, Esq.)

 (v) the Office of the United States Trustee for the District of Delaware,

844 King Street, Suite 2207, Lockbox 35,

Wilmington, Delaware 19899-0035

(Attn: Joseph McMahon, Esq.)

(vi) Akin Gump Stauss Hauer & Feld LLP,

One Bryant Park,

New York, New York 10036

(Attn: Fred S. Hodara, Esq.)

(vii) Pepper Hamilton LLP,

Hercules Plaza Ste 5100, 1313 N.

Market Street, Wilmington, Delaware 19801

(Attn: David B. Stratton, Esq)

(viii) Ashby & Geddes, P.A.,

500 Delaware Avenue, 8th Floor, P.O. Box 1150,

Wilmington, Delaware 19899

(Attn: William P. Bowden, Esq)

(ix) Susan Godfrey, L.L.P

654 Madison Avenue, 5th Floor,

New York, New York 10065

(Attn: Stephen D Susman, Esq)

(x) Sullivan & Cromwell LLP,

125 Broad Street, New York, New York, 10004

(Attn: Stacey R.Friedman, Esq.)

(xi) Landis Rath & Cobb LLP,

919 Market Street, Suite 1800, P.O. Box 2087,

Wilmington, Delaware 19899

(Attn: Adam G. Landis, Esq)

(xii) DLA Piper US LLP

1251 Avenue of the Americas

New York, New York 10020

(Attn: Thomas Califano)


Dated: June 7th, 2010

_____ /S/

Sean Fitzgerald

In re Washington Mutual, Inc., Case No. 08-12229 (MFW)
United States Bankruptcy Court, District of Delaware

I am submitting the enclosed secondary supplement objection to the debtor's motion for approval of
disclosure statement for the joint plan of affiliated debtors pursuant to Chapter 11 of the United States
Bankruptcy Code.

Please include the enclosed objection in the docket of Case No. 08-12229 Washington Mutual, Inc.

Thank you,

Michael Rozenfeld

Sean Fitzgerald        06/07/2010

Sean Fitzgerald