**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 Cases |
|  | ) | Case No. 08-12229 (MFW) |
| WASHINGTON MUTUAL, INC., et al.,[1] | ) | Jointly Administered |
|  | ) | **Hearing: June 17, 2010 at 10:30 a.m.** |
| Debtors. | ) | **Objection Deadline: June 14, 2010 at 4:00 p.m.** |
|  | ) | **Related Docket No. 4644** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO THE MOTION OF THE OFFICIAL COMMITTEE OF EQUITY
SECURITY HOLDERS IN SUPPORT OF ORDER DIRECTING
APPOINTMENT OF AN EXAMINER UNDER 11 U.S.C. § 1104(C)**

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of Washington Mutual, Inc., et al. (collectively, the "Debtors"), by and through its undersigned co-counsel, submits this Objection to the Motion of the Official Committee of Equity Security Holders (the "Equity Committee") in Support of Order Directing Appointment of an Examiner Under 11 U.S.C. § 1104(c) (the "Motion") [Dkt. No. 4644]. The Creditors' Committee joins in the Debtors' Objection (the "Debtors' Objection") to the Motion, fully adopting as its own the arguments contained therein, and further states the following.

**ARGUMENT**

1.  In its Motion, the Equity Committee argues that this Court should appoint an examiner because the denial of the its first motion to appoint an examiner (the "Original Examiner Motion") [Dkt. No. 3579] was predicated on Debtors' and Creditors' Committee's representation that they had fully undertaken the necessary investigation and that they would share the results of their investigations with the Equity Committee. *See* Mot. at ¶¶ 8, 14. The

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Washington Mutual, Inc. (3725) and WMI Investment Corporation (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

1

#12756958 v1

Equity Committee now argues that the Court should reconsider its decision not to appoint an examiner because the facts they have since discovered purportedly prove the investigation was inadequate[2] and that the Debtors' and Creditors' Committee's assertion of the attorney work product doctrine renders false their representations about sharing the results of the investigation. *See id*. at ¶¶ 15-20. Thus, they contend that "the factual basis for that ruling has changed so significantly that this Court should now appoint an examiner under the very logic that this Court used to deny that relief," *id.* at ¶ 13, and that new information "contradicts the premises underlying the Court's earlier ruling" to "now provide[] sufficient grounds for appointment of an Examiner," *id.* at 22.

2. The facts have not changed, however, and—as with the previous motion to appoint an examiner (the "Original Examiner Motion")—the appointment of an examiner would not be appropriate. First, the Equity Committee's argument with respect to attorney work product is no longer supported by fact as the Debtors and Creditors' Committee have each come to an agreement with the Equity Committee on the scope of discovery. Second, the Equity Committee's argument that the Debtors' investigation was inadequate is the *exact same* argument it made in support of the Original Examiner Motion. Finally, even if this Court were inclined to grant the Motion, controlling Third Circuit law holds that the Court is divested of jurisdiction as a result of the pending appeal of the Original Examiner Motion.

I. **Sufficient Grounds Do Not Exist For This Court to Appoint an Examiner**

   A. **Issues Regarding the Equity Committee's Right to Privileged Materials and Attorney Work Product Have Been Consensually Resolved**

3. After this Court indicated at the omnibus hearing held on June 3, 2010 (the "June 3 Hearing") that it may reconsider its decision not to appoint an examiner unless the Debtors

---

[2] The Equity Committee's argument on this point is not based on new information, but, as discussed below,

shared its attorney work product with the Equity Committee, 6/3/10 Tr. 54:23-55:6, both the Debtors and Creditors' Committee engaged in separate discussions with the Equity Committee on how to provide the Equity Committee with the information it needs to analyze the reasonableness of the Global Settlement Agreement.[3] The Creditors' Committee understands that the Debtors and the Equity Committee also have reached an agreement, and that the Debtors will be sharing attorney work product and other certain privileged materials with the Equity Committee pursuant to a common interest privilege and a Fed. R. Evid. 502(d) order.

4.  Likewise, counsel for the Creditors' Committee has reached an agreement with counsel for the Equity Committee. The agreement, which is reflected in a June 9, 2010 e-mail conversation between Robert A. Johnson, counsel for the Creditors' Committee, and Edgar G. Sargent, counsel for the Equity Committee, is attached as **Exhibit A**. The Equity Committee argues in its Motion that an examiner should be appointed because the Creditors' Committee is asserting attorney-client privilege and attorney work product protection, but counsel for the Equity Committee recognizes that the Creditors' Committee represents a different constituency than the Equity Committee, and that the Equity Committee, therefore, does not seek privileged or attorney work product materials from the Creditors' Committee. *See* Exhibit A. Instead, the Creditors' Committee will produce its non-privileged communications with the other Settling Parties and continue to verbally share its assessment of the various causes of action and assets of the Debtors' estates—as it has done previously, including most recently at an in-person meeting on May 14, 2010—provided that the parties agree on a Rule 502(d) order. *See id.* The Rule 502(d) order has been drafted and the Creditors' Committee expects it will be submitted to the

---

is a rehash of the argument made in the Original Examiner Motion.

[3] Capitalized terms not otherwise defined herein shall the definitions used in the Debtors' Third Amended Joint Plan (June 2, 2010) [Dkt. No. 4456], as it may be further amended or modified (the "Plan").

Court shortly under a Certification of No Objection.

5. After agreeing with the Creditors' Committee that it need not produce privileged or attorney work product materials, it would be disingenuous for the Equity Committee to now continue to argue that the this Court should appoint an examiner because the Creditors' Committee is not producing those materials.

6. Additionally, as discussed in the Debtors' Objection, the Debtors followed the Court's order at the June 3 Hearing and hosted a meet-and-confer with the Equity Committee, the Creditors' Committee, the other Settling Parties, and all likely objectors who wished to attend. The Debtors proposed a discovery plan laying out the various types of documents it would voluntarily produce to all of the objecting parties. It is the Creditors' Committee's understanding that the parties are substantially in agreement regarding the scope of discovery and the procedures the Debtors plan to use for additional discovery.

7. In summary, although this Court indicated at the June 3 Hearing that it may appoint an examiner if the Debtors did not resolve their disputes with the Equity Committee over the production of documents and analyses protected by the attorney-client privilege and attorney work product doctrine, that issue has now been resolved. And even if this Court expected the Creditors' Committee to share its analyses of the various causes of action and assets of the Debtors' estates that are protected by privilege and the attorney work product doctrine, that issue also has been consensually resolved. Therefore, the Equity Committee's argument regarding privileged and attorney work product materials cannot support the appointment of an examiner.

**B. There is No New Information Suggesting that the Debtors' and Creditors' Committee's Investigation was Inadequate**

8. Next, the Court has already considered the Equity Committee's arguments that the Debtors' investigation of its causes of action against JPMorgan Chase Bank, N.A. ("<u>JPMC</u>") and the Federal Deposit Insurance Corporation (the "<u>FDIC</u>"), in its capacity as receiver of WMB (the

"FDIC-Receiver"), was inadequate and flatly rejected those arguments during the hearing on the Original Examiner Motion on May 5, 2010 (the "May 5 Hearing"). *See* 5/5/10 Tr. at 98:14-17. ("First, it is clear to me that *this debtor has been investigated to death*. And I'm sure that even the most experienced and talented examiner that the United States Trustee could appoint would not find any stone unturned.") (emphasis added).

9.  Both the Debtors and the Creditors' Committee described in detail to the Court the scope and extent of their investigations into the various causes of actions and assets of the Debtors' estates before deciding to enter into the Global Settlement Agreement. *See id.* at 61:25-69:12 (R. Johnson), 76:2-78:7 (B. Rosen). Notably, the Equity Committee does not argue that these representations were false or misleading. Instead, it takes the Court's comments at the June 3 Hearing as an invitation not only to argue a now mooted dispute respecting the availability of the Debtors' attorney work product, but also to rehash its argument that the investigation was inadequate. This argument must be denied for the same reasons it was denied at the May 5 Hearing.

10. Moreover, the Equity Committee will have a full opportunity to challenge the scope and adequacy of the Debtors' investigation in connection with confirmation and a Rule 9019 hearing to approve the Global Settlement Agreement. *See* 5/5/10 Tr. ("[A]gain, the appointment of [an examiner] is no substitute for the adversarial process extant in bankruptcy court and the duty of the Court, after hearing the views of the opposing parties, to make a decision as to . . . whether a settlement is reasonable.").

**II.  The Court is Divested of Jurisdiction to Grant the Motion While the Appeal of the Original Examiner Motion is Pending**

11. In any event, while guised as a new motion, the Motion is really a Fed. R. Civ. P. Rule 60(b) motion for reconsideration, which the Court cannot grant while the Equity Committee's appeal of the original order is pending. In the Motion, the Equity Committee

5

contends that "the factual basis for that ruling has changed so significantly that this Court should now appoint an examiner under the very logic that this Court used to deny that relief," Mot. at ¶ 13, and that new information "contradicts the premises underlying the Court's earlier ruling" to "now provide[] sufficient grounds for appointment of an Examiner," *id.* at ¶ 22. In short, the Equity Committee maintains that this Court should reconsider the factual basis for its denial of the original Examiner Motion and reach a different outcome.

12. A motion seeking reconsideration of an earlier decision based on new or changed facts and circumstances is a motion subject to Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(b). Whether the basis for reconsideration is styled as alleged mistake (by the Court in assuming the shared information would include attorney work product), alleged fraud (by Debtors and Creditors' Committee in their prior representations), or newly discovered evidence, relief from the prior order is within the scope of Rule 60(b). Fed. R. Civ. P. 60(b)(1)-(3) (providing for relief from order based on "mistake, inadvertence, surprise or excusable neglect," "newly discovered evidence," and "fraud"); *see also Ahmed v. Dragovich*, 297 F.3d 201, 208 (3d Cir. 2002) (courts "characterize the motion ... to match the substance of the relief requested"); *Smith v. Evans*, 853 F.2d 155, 158 (3d Cir. 1988) ("[T]he function of the motion, not the caption, dictates which Rule applies.").

13. When a notice of appeal has been taken from the same order that is the subject of a Rule 60(b) motion for reconsideration, courts in this circuit only retain jurisdiction to deny the motion; they lack jurisdiction to grant it. *VFB LLC v. Campbell Soup Co.*, 336 B.R. 81, 86 (D. Del. 2005); *TA Instruments, Inc. v. Perkin-Elmer Corp., C.A.*, No. 95-545-SLR, 2000 WL 152130, at *3 (D. Del. Jan. 24, 2000) ("With respect to motions made pursuant to Rule 60(b), the Third Circuit has indicated that the pendency of an appeal leaves a district court with jurisdiction to entertain, determine the merits of, and deny such motions, but without jurisdiction to grant

6

such motions."). This is consistent with the basic rule that a notice of appeal ordinarily divests the court of jurisdiction. *Venen v. Sweet*, 758 F.2d 117, 120 (3d Cir. 1985); *Main Line Fed'l Savings & Loan Ass'n v. Tri-Kell, Inc.*, 721 F.2d 904, 906 (3d Cir. 1983).

14. Thus, the Equity Committee's invitation to this Court to condition its grant of the Motion on dismissal of the appeal, Mot. at ¶ 23, is inappropriate. Instead, under this Circuit's precedent, the proper procedure is for: (1) the moving party to file the Rule 60(b) motion; (2) for the Court to consider the motion and either deny it outright or, alternatively, indicate that it will grant the motion if it had jurisdiction; and (3) the moving party to bring a motion in the appellate court for remand of the appealed order. *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 239-40 (3d Cir. 1987) ("[W]hen an appellant in a civil case wishes to make a Rule 60(b) motion while his appeal is still pending, the proper procedure is for him to file his motion in the District Court. If that court indicates that it will grant the motion, the appellant should then make a motion in . . . [the appellate] court for a remand of the case in order that the District Court may grant the motion . . . .") (quoting *Main Line*, 721 F.2d at 906) (internal quotations omitted); *Venen*, 758 F.3d at 123 ("If a district court is inclined to grant the motion or intends to grant the motion, those courts also hold, it should certify its inclination or its intention to the appellate court which can then entertain a motion to remand the case.").

15. The Equity Committee's reliance on the unpublished decision in *Mitchell v. Henry*, 255 Fed. Appx. 684 (3d Cir. 2007) for the proposition that the lower court may grant the Motion outright, notwithstanding the filing of the notice of appeal, is misplaced. *Mitchell* did not involve a Rule 60(b) motion, so it cannot be read to override the clear Third Circuit precedent of *Hancock*, *Main Line*, and *Venen*.

16. Moreover, *Mitchell* is readily distinguishable. There, the plaintiff's attorney filed a motion to withdraw as counsel in the district court on the same day as he filed the notice of

7

appeal and subsequently filed a motion to withdraw as counsel in the circuit court. After the district court granted the motion, the clerk of the Third Circuit denied the motion pending before it as unnecessary because of the district court ruling. On appeal, the Third Circuit rejected the plaintiff's argument that the district court's withdrawal order was void for lack of jurisdiction. It held that the rule divesting courts of jurisdiction is a prudential rule "'to prevent the confusion and inefficiency that would result if both the district court and the court of appeals were adjudicating the same issues simultaneously.'" *Id.* at 686 (quoting *Pensiero v. Lingle*, 847 F.2d 90, 98 (3d Cir. 1988). It noted that it would have granted the motion to withdraw had it been decided by the circuit court instead of the district court and declined to apply the jurisdictional rule because it "'would defeat [the rule's] purpose of achieving judicial economy.'" *Id.* at 686 & n.1. In *Mitchell*, finding the withdrawal motion void would have required beginning the appeal from the start after reinstating counsel or granting a new withdrawal motion in the Third Circuit. *Id.* at 686 (*quoting Pensiero v. Lingle*, 847 F.2d 90, 98 (3d Cir. 1988). Thus, the judicial economy concern was that finding the withdrawal motion void would require entirely repeating the proceedings.

17. That type of judicial economy concern is not at issue here. The Equity Committee seeks to litigate the same issue simultaneously: the appeal from the initial order in the appellate court on the theories advanced in support of the original Examiner Motion, and a separate motion to amend the order in the Bankruptcy Court. *Mitchell* does not support such a result. Instead, the procedure advanced in *Hancock*, *Main Line*, and *Venen* should control.

**WHEREFORE**, for the reasons stated above, the Creditors' Committee respectfully requests that the Court deny the Motion of the Equity Committee and grant such other and further relief as is appropriate under the circumstances.

8

Dated: June 14, 2010
Wilmington, Delaware

Respectfully Submitted,

**PEPPER HAMILTON LLP**

By: /s/ John H. Schanne, II
David B. Stratton (DE No. 960)
John H. Schanne, II (DE No. 5260)
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19801
Tel. (302) 777-6500
Fax (302) 421-8390

– and –

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Fred S. Hodara (admitted *pro hac vice*)
Robert A. Johnson (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036
Tel. (212) 872-1000
Fax (212) 872-1002

Attorneys for the Official Committee of Unsecured Creditors of Washington Mutual, Inc., *et al.*