# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------------x
                   :

| | |
|---|---|
| *In re* | **Chapter 11** |
| **WASHINGTON MUTUAL, INC., <u>et al.</u>,**[1] | **Case No. 08-12229 (MFW)** |
| **Debtors.** | **(Jointly Administered)** |
| | **Re: Docket No. 4644** |

---------------------------------------------------------------x

## DEBTORS' OBJECTION TO RENEWED MOTION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS IN SUPPORT OF <u>ORDER DIRECTING APPOINTMENT OF AN EXAMINER UNDER 11 U.S.C. § 1104(C)</u>

Washington Mutual, Inc. ("<u>WMI</u>") and WMI Investment Corp., as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), as and for their objection to the renewed motion, dated June 8, 2010 [D.I. 4644] (the "<u>Renewed Motion</u>"), of the Official Committee of Equity Security Holders (the "<u>Equity Committee</u>") for appointment of an examiner pursuant to section 1104(c) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), respectfully represent as follows:

## <u>PRELIMINARY STATEMENT</u>[2]

1.      The Equity Committee has filed the Renewed Motion requesting the Court reconsider its original refusal to appoint an examiner. Affording the Equity Committee the most liberal definitions as to what may constitute "new facts" warranting reconsideration of the May 5 Order, the only basis for the Renewed Motion is the Debtors' refusal to turn over their attorney

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 925 Fourth Avenue, Seattle, Washington 98104.

[2] Defined terms used but not defined in the Preliminary Statement shall have the meanings ascribed to them herein.

work product as of the June 3 hearing before this Court. However, after negotiating an appropriate FRE 502(d) order, the Debtors have resolved to give the Equity Committee what it has requested – their privileged work product. Thus, the ongoing production to the Equity Committee and its advisors of information and materials renders appointment of an examiner unnecessary, and accordingly, the Revised Motion should be denied.

2.      Additionally, on its face, the Renewed Motion suffers from significant jurisdictional issues. The Renewed Motion amounts to a request for relief from the Court's May 5 Order denying the First Examiner Motion. Although the Renewed Motion was filed upon the Court's invitation, given the pending Third Circuit appeal of the Equity Committee's original examiner request, and even as acknowledged by the Court on June 3, 2010, this Court lacks jurisdiction to grant the Renewed Motion. And, contrary to the Equity Committee's efforts to dress up the Renewed Motion as something else, "a new motion," it is not, and all parties including the Court, must see it for what it is, an attempt to reargue the First Examiner Motion. Likewise, despite the Equity Committee's repeated offer, this defect cannot be remedied by the Equity Committee merely withdrawing the appeal. In order for this Court to grant the Renewed Motion, the currently pending appeal must be withdrawn pursuant to a stipulation or motion, or it must be remanded to this Court by the Third Circuit – something that has not occurred nor even requested.

3.      But, assuming the Equity Committee could overcome these procedural hurdles, and it cannot, the Renewed Motion fails on its face for, while boldly constructed and rhetorically infused, it is without merit. Whether styled as a motion for relief from the May 5

Order or a "new" request, the Equity Committee cannot point to any fact to refute this Court's determination "that this debtor has been investigated to death" (May 5 hearing transcript at 98) and, therefore, appointment of an examiner is not warranted. And, the Equity Committee's argument that this Court based its May 5 Order on the assumption "that the Debtors and Creditors' Committee would be sharing their work product with the Equity Committee" is without consequence. (Renewed Motion ¶ 14). The May 5 transcript does not mention work product, and, at the June 3, 2010 hearing, the Court ruled that it does not have the authority to compel the Debtors to turn over work product to the Equity Committee. Nevertheless, as noted above, the Debtors have agreed to turn over their work product, have negotiated a FRE 502(d) order, and upon the Court's entry of such order, prepared to deliver such work product to the Equity Committee in addition to continuing to populate a depository with other documents.[3] So, although off-base, the Debtors have removed the Equity Committee's primary justification for the appointment of an examiner, eliminating the Court's lone stated justification as to why an examiner might be necessary.

## BACKGROUND

4.     On September 26, 2008 (the "Commencement Date"), each of the Debtors commenced with this Court a voluntary case pursuant to chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On

---

[3] Attached hereto as Exhibit B is the Debtors' Proposed Discovery Plan, which lists the documents that the Debtors propose to turn over to the Equity Committee and other interested parties.

October 3, 2008, the Court entered an order, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the joint administration of the Debtors' chapter 11 cases.

5.      On October 15, 2008, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee"). On January 11, 2010, the U.S. Trustee appointed the Equity Committee.

6.      On March 26, 2010, the Debtors filed their *Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* and a related disclosure statement. A hearing to consider the adequacy of the information contained in the disclosure statement was set for May 19, 2010, with objections to be filed before such date. In response to objections, and to address certain minor changes, on May 16, 2010, the Debtors filed their *First Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* and a related disclosure statement. On May 19, 2010, the Court held a status conference, scheduled a hearing for June 3, 2010 to consider approval of the Debtors' disclosure statement, and requested that the Debtors file a revised plan and disclosure statement by May 21, 2010. The Debtors filed their *Second Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* on May 21, 2010, and a related revised disclosure statement. On June 2, 2010, the Debtors filed their *Third Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* (as it may be further amended, the "Plan"), and a related disclosure statement (as it may be further amended,

the "Disclosure Statement"). At the June 3 hearing, the Court further continued consideration of the Disclosure Statement until the hearing scheduled on June 17, 2010. Contemporaneously herewith, the Debtors filed their *Fourth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code*, and a related disclosure statement.

7.      On April 26, 2010, the Equity Committee filed its Motion and Supporting Memorandum of the Official Committee of Equity Security Holders for the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code [D.I. 3579] (the "First Examiner Motion"). By order, dated May 5, 2010, this Court denied the First Examiner Motion [D.I. 3663] (the "May 5 Order"). On May 19, 2010, the Equity Committee filed a notice of appeal of this decision [D.I. 3924] and a petition [D.I. 3929] seeking certification of the appeal to the United States Court of Appeals for the Third Circuit (the "Third Circuit"). On June 2, 2010, the U.S. Trustee filed a notice of appeal of the May 5 Order [D.I. 4496]. By order, dated June 7, 2010, the Court granted the certification petition [D.I. 4639]. On June 8, 2010, the Equity Committee filed the Renewed Motion. On June 2, 2010, the Equity Committee filed its Designation of the Record and Statement of Issues on Appeal [D.I. 4490]. On June 10, 2010, the Debtors filed their Counter-Statement of Issues and Counter-Designation of Record on Appeal [D.I. 4662], and on the same day, the signed order for certification to the Third Circuit was transmitted to the District Court and the Third Circuit [D.I. 4659]. The appeal was docketed by the Delaware District Court on June 10, 2010, and assigned case number 10-00504.

## ARGUMENT

## I.      The Court Does Not Have Jurisdiction to Grant the Renewed Motion

8.     Although cloaked as a "new motion" in order to avoid the jurisdictional bars, which the Equity Committee and the U.S. Trustee constructed, the Equity Committee's Renewed Motion really is either a motion to alter or amend the May 5 Order, which is time barred, or a motion for relief from judgment or order pursuant to Bankruptcy Rule 9024 and, as such, cannot be granted while the appeal of the First Examiner Motion is pending. Specifically, the Equity Committee cannot move under Bankruptcy Rule 9023 to alter or amend the order denying the First Examiner Motion because, pursuant to the requirements of Bankruptcy Rule 9023, such motion would have had to have been filed no later than 14 days after entry of judgment. Fourteen days after entry of the May 5 Order was May 19, 2010. Similarly, Bankruptcy Rule 9024 incorporates the provisions of Rule 60(b) of the Federal Rules of Civil Procedure, which lists six grounds on which a court may relieve a party from an order:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

9.     While the Renewed Motion is vague with respect to the legal basis for relief, the Equity Committee's argument centers on allegations that, subsequent to the Court's denial of the First Examiner Motion and issuance of the May 5 Order, the Equity Committee discovered that the factual premises on which that denial are based allegedly are not true. (Renewed Motion ¶ 22 ("[T]he issue here concerns whether <u>new information</u> in the record since

May 5 . . . now provides sufficient grounds for appointment of an Examiner.")) (emphasis added). Specifically, the Equity Committee contends that the two assumptions on which this Court (in the Equity Committee's interpretation) predicated its denial – the fact that there have been adequate investigations and that the Debtors and Creditors' Committee would share work product with the Equity Committee – "have now proven to be incorrect." (Id. ¶ 14). While the Debtors do not necessarily agree with the latter half of this interpretation, and certainly dispute the Equity Committee's allegation that such facts are not true, the Debtors contend that, framed in this manner, it is clear that the Renewed Motion is a motion for relief from judgment or order on the basis of newly discovered evidence pursuant to Rule 60(b)(2). The Court does not, however, have jurisdiction to grant a Rule 60(b) motion while an appeal is pending.

10.     As a general rule, the timely filing of an appeal "immediately confer[s] jurisdiction on a Court of Appeals and divest[s] a district court of its control over those aspects of the case involved in the appeal." Venen v. Sweet, 758 F.2d 117, 120 (3d Cir. 1985). "The divestiture rule applies to appeals of bankruptcy proceedings." In re Trimble, Case No. 07-2115, 2008 WL 782581, at *2 (Bankr. D.N.J. Mar. 18, 2008) (quoting Bauer v. Chatterton (In re Bauer), 305 B.R. 468, 470-71 (W.D. Wis. 2002)). This is particularly true with respect to the district court's ability to grant a Rule 60(b) motion. The Third Circuit has held that:

> while an appeal is pending, a district court, without permission of the appellate court, has the power both to entertain and to deny a Rule 60(b) motion. If a district court is inclined to grant the motion or intends to grant the motion . . . it should certify its inclination or its intention to the appellate court which can then entertain a motion to remand the case. Once remanded, the district court will have power to grant the motion, but not before.

Ginsburg v. Birenbaum, Case No. 05-2506, 2008 WL 2073975, at *1-2 (W.D. Pa. May 14, 2008) (quoting Venen v. Sweet, 758 F.2d 117, 123 (3d Cir. 1985)) (emphasis added); see also TA Instruments, Inc. v. Perkin-Elmer Corp., Case No. 95-545-SLR, 2000 WL 152130 at *3 (Jan. 24, 2000 D. Del. 2000) ("With respect to motions made pursuant to Rule 60(b), the Third Circuit has indicated that the pendency of an appeal leaves a district court with jurisdiction to entertain, determine the merits of, and deny such motions, but without jurisdiction to grant such motions."); Harris v. City of Phila., Case No. 82-1847, 1994 WL 408231 at *4 (June 28, 1994 E.D. Pa. 1994) ("Unless the Court of Appeals remands so that this court can consider the motion, this court is without jurisdiction to grant the Rule 60(b) motion. The court encourages defendants-appellants to make a motion in the Court of Appeals for a remand of the case in order that the District Court may grant the motion."). Unless the case is remanded, this Court "is without jurisdiction to grant the Rule 60(b) motion and address the merits of the appeal." Ginsburg, 2008 WL 2073975, at *2.

11.     The Equity Committee and, for that matter, the U.S. Trustee, cannot disregard this procedure.  See Venen v. Sweet, 758 F.2d 117, 123 (3d Cir. 1985) ("Nevertheless, jurisdictional requirements may not be disregarded for convenience sake.").  The Equity Committee cites Mitchell v. Henry, 255 Fed. Appx. 684, 686 (3d Cir. 2007) for the proposition that this Court can grant the Renewed Motion because the divestiture doctrine can in essence be waived in the interest of justice.  However, while this may be true in other circumstances, as discussed above, the Third Circuit, and nearly every other Circuit has explicitly and repeatedly held that, in circumstances identical to these, a lower court cannot grant a Rule 60(b) motion

while an appeal is pending. See, e.g., Toliver v. County of Sullivan, 957 F.2d 47, 49 (2d Cir. 1992) ("the district court may *grant* a rule 60(b) motion after an appeal is taken only if the moving party obtains permission from the circuit court.") (emphasis in original); Fobian v. Storage Tech. Corp., 164 F.3d 887, 892 (4th Cir. 1999) (holding that a district court cannot grant a Rule 60(b) motion while an appeal is pending); Winchester v. United States Attorney for S. Dist. of Texas, 68 F.3d 947, 949 (5th Cir. 1995) ("When the district court is inclined to *grant* the 60(b) motion, . . . then it is necessary to obtain the leave of the court of appeals. *Without obtaining leave, the district court is without jurisdiction, and cannot grant the motion.*") (emphasis in original, citations omitted); Brown v. United States, 976 F.2d 1104, 1110-11 (7th Cir. 1992) ("Parties may file motions under Rule 60(b) in the district court while an appeal is pending . . . [and] if the court is inclined to grant relief, [the district court should] so indicate so that we may order a speedy remand"); Winter v. Cerro Gordo County Conservation Bd., 925 F.2d 1069, 1073 (8th Cir. 1991) ("If the district court wishes to grant the Rule 60(b) motion, movant's counsel should request the court of appeals to remand the case so that a proper order may be entered"); Aldrich Enter., Inc. v. United States, 938 F.2d 1134, 1143 (10th Cir. 1991) ("Although [the district court] lacked jurisdiction to *grant* the Rule 60(b)(2) motion due to the appeal [ ], the court was free to consider the motion, and the court could then either deny it on the merits, or the court could have notified us of its intention to grant the motion upon proper remand.") (emphasis in original); Hoai v. Vo, 935 F.2d 308, 311-12 (D.C. Cir. 1991) ("At the same time, the District Court may consider the 60(b) motion and, if the District Court indicates

that it will grant relief, the appellant may move the appellate court for a remand in order that relief may be granted.").

12.     The main justifications for this divestiture rule – preventing confusion and inefficiency – are aptly illustrated by the facts of the instant case. See Venen v. Sweet, 758 F.2d 117, 120-21 (3d Cir. 1985) (stating that the purpose of the divestiture rule is to avoid "the confusion and inefficiency which would of necessity result were two courts to be considering the same issue or issues simultaneously."). The purpose of the rule prevents the Debtors from having to litigate the same issue in two different courts, with the attendant possibility of inconsistent judgments and the waste of both courts' time and resources. Thus, it is inefficient for the Debtors to litigate the Renewed Motion while the exact same issue is currently pending in the Third Circuit.

13.     The Equity Committee does not cite, and the Debtor is not aware of, even a single case in which the divestiture rule has been dispensed with in the context of a Rule 60(b) motion. The Mitchell case, relied upon by the Equity Committee, concerned an attorney who filed a motion to withdraw as counsel with the district court, instead of the Third Circuit, after an appeal had been taken from the district court. See Mitchell v. Henry, 255 Fed. Appx. 684 (3d Cir. 2007). The motion to withdraw was granted by the district court and the Third Circuit subsequently declined to enforce the divestiture doctrine because of "judicial economy," as the order granting the attorney's motion to withdraw was entered over four years prior to the Third Circuit deciding the issue. See Mitchell, 255 Fed. Appx. at 686 ("Under the circumstances of this

case, applying the rule to void the long-ago reasoned ruling of the District Court would not promote judicial economy."). Thus, this case is inapposite here.

        14.    Nor can the Equity Committee overcome this jurisdictional hurdle by, as they suggest, merely withdrawing their appeal. The time for that has passed. Pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure, once an appeal has been docketed, it may only be dismissed pursuant to a stipulation among the parties or by motion filed with the appellate court. And, as noted above, the docketing has occurred.

## II.    There Is No Basis for Relief from the May 5 Order

        15.    Even if this Court were to maintain jurisdiction to grant the Equity Committee's request for relief from the May 5 Order, and the Debtors submit it does not, the Equity Committee is not entitled to such relief. Relief under Rule 60(b) is an extraordinary remedy. Moolenaar v. Gov't of Virgin Islands, 822 F.2d 1342, 1346 (3d Cir. 1987) (the remedy provided by Rule 60(b) is "extraordinary, and special circumstances must justify granting relief under it."); In re Design Classic, Inc., 788 F.2d 1384 (8th Cir. 1986). Furthermore, as explained by the Third Circuit:

> Rule [60(b)] must be applied '[s]ubject to the propositions that the finality of judgments is a sound principle that should not lightly be case aside. . . . It is intended to be a means for accomplishing justice in extraordinary situations; and so confined, does not violate the principle of the finality of judgments.

TA Instruments, Inc. v. Perkin-Elmer Corp., Case No. 95-545-SLR, 2000 WL 152130 at *3 (Jan. 24, 2000 D. Del. 2000) (citing Kock v. Gov't of the Virgin Islands, 811 F.2d 240, 246 (3d Cir. 1987)) (internal citations omitted) (emphasis added). No such "extraordinary" circumstances exist here.

16.     It appears, based upon the arguments made in the Renewed Motion, that the Equity Committee specifically seeks relief pursuant to Rule 60(b)(2) – "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." As an initial matter, the Equity Committee cannot demonstrate that there exists any newly discovered evidence warranting relief under this provision. In order to obtain relief under Rule 60(b)(2), the Equity Committee must not only point to new evidence, but also must demonstrate that the purported newly discovered evidence: (1) is material and not merely cumulative; (2) was not discoverable before trial through the exercise of reasonable diligence; and (3) would probably have changed the outcome of the trial. Compass Tech., Inc. v. Tseng Labs., Inc., 71 F.3d 1125, 1130 (3d Cir. 1995). The Equity Committee bears a "heavy burden," which requires "more than a showing of the potential significance of the new evidence." Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991) (quoting Plisco v. Union R. Co., 379 F.2d 15, 17 (3d Cir. 1967)).

17.     In reality, however, there is no newly discovered evidence, and the Equity Committee has not met the "high standard of proof required to substantiate Rule 60(b)(2) relief." TA Instruments, Inc., 2000 WL 152130, at *5. The Equity Committee alleges that facts "have developed since entry of the May 5 Order." (Renewed Motion ¶ 3). Specifically, the Equity Committee alleges that its analysis of the produced documents reveals that the scope of the Debtors' investigations "was minimal at best." (Id. ¶ 3). The Debtors dispute the veracity of these allegations and, more importantly for these purposes, note that the state of the Debtors' investigations have been known for months. After the Equity Committee was appointed, in

January 2010, Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), the Debtors'

special litigation and conflicts counsel, shared with the Equity Committees' counsel (i) the

entirety of JPMC's production of documents – over 40,274 pages, and (ii) all documents

produced by other third parties, to the extent Quinn Emanuel was able to procure the consent of

the producing third parties. The Equity Committee has had more than sufficient time to review

these documents and cannot argue that they recently discovered anything new in such

documents.

18.     To the extent the Equity Committee alleges "new facts" based on the

Debtors' purported "flawed investigations," the Equity Committee raised the same facts in its

First Examiner Motion:

> Certainly, the investigative steps that the Debtors sought to pursue through their
> December Rule 2004 motion never happened. It also appears clear that after filing
> that motion the Debtors obtained little, if any, formal discovery through the then-
> pending litigation (the DC Action, the JPMC Adversary Litigation, and the
> Turnover Action). It is not apparent that the Debtors have taken any testimony
> through depositions, either before or after filing their second Rule 2004 motion in
> December 2009, on the subject of the events that led to the seizure and sale of
> WMB.

(See, e.g., First Examiner Motion at 20-21). These allegations were argued by the Equity

Committee at the May 5 hearing and were refuted by this Court's determination that the Debtors,

Creditors' Committee, and others conducted thorough examinations in these cases. The

Creditors' Committee and its professionals have "devoted more than 10,000 hours doing an

extensive investigation in these cases and in actively litigating all of the issues that an examiner

would be tasked with investigation." (May 5 hearing transcript at 62). In that regard, the

Creditors' Committee has investigated, among others, (i) the financial condition of the Debtors

and Washington Mutual Bank pre-seizure, (ii) the issues surrounding the OTS decision to seize

Washington Mutual Bank, (iii) the history of capital contributions from WMI to Washington

Mutual Bank, (iv) the assets held by the Debtors, (v) the issues surrounding the tax refunds and

other tax assets, (vi) WMI's various investments, (vii) the litigations surrounding the Debtors,

(viii) the potential litigation claims against JPMC and the FDIC, (ix) WMI's intellectual

property, and (x) the Debtors' settlement agreement with the FDIC and JPMC. (See id. at 62-

70).

   19. The extent of these investigations was also described in a multitude of

court filings and at the May 5 hearing. (See May 5 hearing transcript at 98).

> The investigations have been conducted not only by the debtor and the creditors'
> committee, but by . . . the Office of Thrift Supervision; the FDIC; the government
> task force, including the U.S. Attorney for the Western District of Washington;
> the Department of Labor; the Department of Justice; the FBI; the IRS; the SEC;
> the Attorney General for the State of New York; the class action plaintiffs;
> Congress; the U.S. Treasury; and the President's Financial Fraud Task Force have
> all taken a look at Washington Mutual [and] [i]t is true that their investigations
> exceeded the scope of what this Court need concern itself with.

(Id. at 98-99). Despite the Equity Committee's allegations about the lack of investigation of the

Debtors, in this Court's own words, "this debtor has been investigated to death." (Id. at 98).

   20. Moreover, the other "new evidence" alleged by the Equity Committee is

not new at all. The Equity Committee states that the Debtors "have not followed through on the

Rule 2004 discovery this Court authorized against JPMC." (Renewed Motion ¶ 18). Yet, this

same issue is raised in the Equity Committee's First Examiner Motion. See First Examiner

Motion at 98 ("Certainly, the investigative steps that the Debtors sought to pursue through their

December Rule 2004 motion never happened."). The Equity Committee also states that the

Debtors "have not received a single document in discovery from the FDIC." (Renewed Motion ¶ 18). Again, this issue has been in the public arena for months, and thus, is not "new evidence." This point about discovery was specifically discussed at length at this Court's January 28, 2010 hearing. Lastly, the Equity Committee alleges that "no governmental agency has opened any investigation regarding JPMC's conduct during its acquisition of WMB." (Renewed Motion ¶ 19). Yet again, this assertion is factually incorrect. It is public record that, in October 2008, the U.S. Attorney's office set up a task force to look into WMB's failure. It is public record that this task force included investigators from the FBI, Federal Deposit Insurance Corporation Office of Inspector General, Securities and Exchange Commission and the IRS.

21. It is disingenuous for the Equity Committee to now contend that it suddenly has become aware of alleged "gaps" in these investigations. The Equity Committee cannot say that the alleged new evidence "was not discoverable before trial through the exercise of reasonable diligence."

22. The Equity Committee also alleges "new evidence" based on the Debtors refusal to turn over "work product." (Renewed Motion ¶ 3). The Debtors submit that a refusal to turn over its attorneys' work product cannot be a circumstance to entitle a party to allege "new evidence." The Debtors have consistently refused to turn over their work product; this fact is nothing new. The Equity Committee has known of the Debtors' position on this matter for months. Thus, it is insincere of the Equity Committee to allege that this fact is "new evidence."

23. Nevertheless, the Debtors have agreed, subject to the entry of an agreed upon Rule 502(d) order, to turn over their work product to the Equity Committee, thus

eliminating this alleged ground for the appointment of an examiner. Since the June 3, 2010 hearing, the Debtors have had multiple conversations with the Equity Committee concerning the turnover of work product and other documents. On June 10, 2010, the Equity Committee attended the "meet and confer" held at the Debtors' counsels' offices. The Debtors made clear that they will be providing not only their work product, but various other documents requested by the Equity Committee. The documents that the Debtors propose to turn over to the Equity Committee and other interested parties is embodied in the Debtors' Proposed Discovery Plan, a copy of which is attached hereto as Exhibit B.

24.     Rule 60(b)(2) makes clear that a motion based upon such rule is only proper if, with reasonable diligence, the newly discovered evidence "could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 59(b), in turn, states that "[a] motion for a new trial must be filed no later than 28 days after the entry of judgment." While such deadlines have passed, the Equity Committee has not alleged, and cannot establish, that the purported "new evidence" could not have been discovered within the requisite 28-day period. Thus, notwithstanding the other reasons discussed above, on this fact alone, the Renewed Motion should be denied as untimely.[4]

---

[4] The Equity Committee cannot rely on Rule 60(b)(6), the so-called "exceptional circumstances" exception, to skirt the time requirements of Rule 60(b)(2) because relief under Rule 60(b)(6) "is only available where the other subsections of Rule 60(b) do not apply." In re Subramanian, 245 Fed. Appx. 111 (3d Cir. 2007) (citing Medunic v. Lederer, 533 F.2d 891, 893 (3d Cir. 1976)). Moreover, Rule 60(b)(6) cannot be utilized to circumvent the time periods of the other clauses. Cf. Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863, n.11 (1988) ("Rather, "extraordinary circumstances" are required to bring the motion within the "other reason" language and to prevent clause (6) from being used to circumvent the 1-year limitations period that applies to clause (1).) (internal citations omitted).

**III.    The Equity Committee's Renewed Motion Is Barred by Res Judicata**

25.    Even if the Court were to construe the Renewed Motion as a "new" motion, the relief requested therein is barred by *res judicata* by virtue of the First Examiner Motion and the May 5 Order. *Res judicata*, or claim preclusion, is a judicial doctrine that precludes a party from relitigating claims that were or could have been asserted in an earlier action. In re Mariner Post-Acute Network, Inc., 267 B.R. 46, 52 (Bankr. D. Del. 2001). Notably, when applicable, preclusion extends to all grounds for recovery that were available to parties, regardless of whether they were asserted or determined in a prior proceeding. Nanavati v. Burdette Tomlin Mem'l Hosp., 857 F.2d 96, 111 (3d Cir. 1988). The purpose of *res judicata* is to avoid the expense and vexation attendant to participating in multiple lawsuits, to conserve judicial resources, and to foster reliance on judicial action by minimizing the possibility of inconsistent decisions. See EEOC v. United States Steel Corp., 921 F.2d 489, 492 (3rd Cir. 1990) (quoting Montana v. United States, 440 U.S. 147, 153-54 (1979)). For *res judicata* to apply, three elements must be established:

    (1) a final judgment on the merits of a prior action;

    (2) involving the same parties or their privies; and

    (3) a subsequent suit based on the same cause of action.

In re Mariner Pose-Acute Network, 267 B.R. 46 (Bankr. D. Del. 2001) (citing Bd. of Trustees of Trucking Employees v. Centra, 983 F.2d 495, 504 (3d Cir. 1992)). Each and every element of *res judicata* is satisfied here.

26. First, the May 5 Order denying the First Examiner Motion was a final judgment on the merits.[5] Second, the instant action and the First Examiner Motion involve the same parties – the Debtors and the Equity Committee. Furthermore, both motions are based on the same cause of action – the appointment of an examiner pursuant to section 1104(c) of the Bankruptcy Code.

27. In deciding whether two suits are based on the same "cause of action," the Third Circuit takes a "broad view," and looks to whether there is an "essential similarity of the underlying events giving rise to the various legal claims." CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d 187, 194 (3d Cir. 1999) (citing United States v. Athlone Indus., 746 F.2d 977, 984 (3d Cir. 1984)). Utilizing this test, the two examiner motions are undoubtedly based upon the same cause of action as the "underlying events" giving rise to need for an examiner are identical in both motions – the Debtors alleged lack of investigations of JPMC, the FDIC, and various other third parties. This test was utilized and cited with approval by this Court in Kaiser Group Int'l Inc. v. Nova Hut a.s. (In re Kaiser Group Intern., Inc.), 375 B.R. 120, 126 (Bankr. D. Del. 2007) (J. Walrath).

28. In E. Minerals & Chems. Co. v. Mahan, 225 F.3d 330, 337 (3d Cir. 2000), the Third Circuit stated that "the 'essential similarity' test, when literally construed, is ideally

---

[5] In the Third Circuit, the pendency of an appeal does not change a judgment from being final for *res judicata* purposes. See Public Utility District No. 1 of Clark County v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.), 365 B.R. 447, 452 (D. Del. 2007) (citing Cohen v. Superior Oil Corp., 90 F.2d 810, 811-812 (3d Cir. 1937)).

suited for litigation that has been generated by discrete events." There, the Third Circuit stated
that

> [d]ifficult as it may be to define the contours of a cause of action in a bankruptcy
> setting, <u>we conclude that a claim should not be barred unless the factual
> underpinnings, theory of the case, and relief sought</u> against the parties to the
> proceeding are so close to a claim actually litigated in the bankruptcy that it
> would be unreasonable not to have brought them both at the same time in the
> bankruptcy forum.

<u>Id.</u> at 337-38 (emphasis added).[6] As discussed below, the factual underpinnings, the theory of

the case, and the relief sought in the First Examiner Motion are <u>identical</u> to the factual

underpinnings, the theory of the case, and the relief sought in the Renewed Motion.

        29.    First, the Equity Committee alleges the <u>same facts</u> in their First Examiner

Motion and Renewed Motion:  that the Debtors have failed to adequately investigate potential

claims and causes of action against JPMC and the FDIC.  The Equity Committee cannot defeat

*res judicata* by asserting minor differences in the facts underlying the two examiner motions.

<u>Ingebrethsen v. Ingebrethsen (In re Ingebrethsen)</u>, Case No. 97-7115, 1998 WL 351730, at

---

[6] This <u>Eastern Minerals</u> test is a slight variation of the <u>Athlone</u> test, and attempts to take into account the
unique issues presented in the bankruptcy context. <u>Eastern Minerals & Chemicals Co. v. Mahan</u>, 225
F.3d 330 (3d Cir. 2000) ("This [test], after all, [is] essentially the test that we actually applied in
<u>Athlone</u>.").  Pursuant to the <u>Athlone</u> test, to determine whether two causes of action are identical for *res
judicata* purposes, one must determine:

> (1) whether the acts complained of and the demand for relief are the same (that is,
> whether the wrong for which redress is sought is the same in both actions); (2) whether
> the theory of recovery is the same; (3) whether the witnesses and documents at trial are
> the same (that is, whether the same evidence necessary to maintain the second action
> would have been sufficient to support the first); and (4) whether the material facts alleged
> are the same.

<u>United Steel Workers of America, AFL-CIO-CLC v. PPG Indus., Inc.</u>, 154 Fed. Appx. 288, 290 (3d Cir.
2005) (citing <u>U.S. v. Athlone Indus., Inc.</u>, 746 F.2d 977, 984 (3d Cir. 1984)).

*3 (E.D. Pa. June 24, 1998) ("*Res judicata* will not be defeated by minor differences of form, parties or allegations where the controlling issues have been resolved in a prior proceeding in which the present parties had an opportunity to appear and assert their rights.").

30.     Second, the Equity Committee's theories as to why an examiner should be appointed are <u>identical</u> in both motions. The Equity Committee's Renewed Motion is premised largely on two grounds: (i) the necessity of an independent person or entity to examine the Debtors' settlement agreement with JPMC and the FDIC; and (ii) the lack of information relied upon by the Debtors in reaching such settlement. The First Examiner Motion is premised on nearly the same grounds. <u>Compare</u> First Examiner Motion at 2 ("the Debtors have not obtained the information they told the Court they vitally needed . . . [yet] they have recently proposed . . . a 'Global Settlement Agreement' . . . that in its current form would compromise and release known and unknown claims against JPMC, the FDIC, and others, without the benefit of further investigation."); <u>id.</u> at 21 ("Instead of following through on the investigative efforts that the Debtors themselves had initiated but never completed, or in fact never started, the Debtors instead made the surprise announcement [of the Global Settlement Agreement] in late March 2010 . . ."), <u>with</u> Renewed Motion ¶ 2 ("Appointment of an Examiner at this time will allow a full and transparent accounting of the assets of the Estates . . . as well as an independent review of Debtors' claimed basis for the proposed Global Settlement Agreement and the Plan"); ¶ 18 ("the Debtors and Creditors' Committee have not undertaken the necessary investigation here.").

31.     Moreover, the relief sought in both motions is <u>identical</u> – the appointment of an examiner. The Debtors submit that the Equity Committee's Renewed Motion is an attempt

to relitigate an issue where there has been a final judgment on the merits, involving the same parties, based upon the same cause of action. Accordingly, *res judicata* applies, and the Renewed Motion must be denied.

**IV.** **Independent of the Reasons Cited in Parts I-III *Supra*, the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code is Not <u>Warranted and is Not in the Interests of the Estate and Its Various Constituencies</u>**[7]

32.    The Debtors do not intend to burden the Court's time by detailing the massive efforts and investigations in these cases undertaken by the Debtors, Creditors' Committee, governmental agencies and others, which preclude the need for an examiner. Instead, the Debtors incorporate by reference the Debtors' Objection to Motion and Supporting Memorandum of the Official Committee of Equity Security Holders for the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code, dated May 4, 2010 [D.I. 3626], and attached hereto as <u>Exhibit A</u>, which explains in great detail the reasons as to why an examiner should not be appointed generally. Based upon these investigations, the Court determined an examiner is not warranted. The Equity Committee's suggestion that they now have reason to believe these investigations were deficient is, as set forth above, not true and not based upon any new or previously undiscovered evidence. And certainly, any previous refusal by the Debtors to turn over work product, as blessed by the Court on June 3, 2010, (i) is not the basis for appointment of an examiner, and (ii) is now remedied by the provision of such documents. Indeed, as set forth in the Debtors' Proposed Discovery Plan, a copy of which is

---

[7] The Renewed Motion fails to even address the elements required to appoint an examiner pursuant to section 1104(c) of the Bankruptcy Code.

attached hereto as <u>Exhibit B</u>, the Debtors will be providing the Equity Committee with a significant amount of information regarding the Debtors' investigations, including work product.

## **CONCLUSION**

33. The Renewed Motion should be denied. Not only does the Court lack jurisdiction to enter an order granting the Renewed Motion, but, equally as important, the Equity Committee has failed to establish any changed facts or circumstances that warrant the appointment of an examiner less than five weeks after the denial of its First Examiner Motion. The Equity Committee's Renewed Motion fails to establish facts sufficient for the appointment of an examiner pursuant to section 1104(c) of the Bankruptcy Code and should be denied.

WHEREFORE the Debtors request the Court deny the Renewed Motion and grant the Debtors such other and further relief as is just.

Dated: June 14, 2010
Wilmington, Delaware

_____
Mark D. Collins, Esq. (No. 2981)
Chun I. Jang, Esq. (No. 4790)
Julie A. Finocchiaro, Esq. (No. 5303)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Marcia L. Goldstein, Esq.
Brian S. Rosen, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS TO THE DEBTORS
AND DEBTORS IN POSSESSION