# EXHIBIT A

# DECLARATION OF EDGAR SARGENT

SUSMAN GODFREY
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
Edgar Sargent

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| In re: | Chapter 11 |
|---|---|
| WASHINGTON MUTUAL, INC., et al., | Case No. 08-12229 (MFW) |
| Debtors | Jointly Administered |

**DECLARATION OF EDGAR SARGENT IN SUPPORT OF THE
REPLY IN SUPPORT OF THE MOTION OF THE OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS FOR THE APPOINTMENT OF AN EXAMINER**

Edgar Sargent Esq., declares:

1. I am a partner at Susman Godfrey L.L.P. and am counsel of record for the Official Committee of Equity Security Holders ("Equity Committee") in this action. I submit this declaration in support of the *Motion of the Official Committee of Equity Security Holders For the Appointment of an Examiner.*

2. Beginning June 7, 2010, I conducted a number of "meet and confer" negotiations with counsel for JPMorgan Chase ("JPMC"). On the calls, JPMC has been represented by two attorneys from Sullivan & Cromwell, Brian Glueckstein and Stacey Friedman. With me on the calls has been my co-counsel, Greg Taylor of Ashby & Geddes.

3. The intent of these calls has been to identify documents JPMC would make available to the Equity Committee in response to our requests for production. For many of these requests, JPMC's counsel directed us to the production it made to the Debtors in response to their Rule 2004 subpoena in the summer of 2009. A copy of the documents in that production was made available to us for review.

4. In order to understand the scope of the documents in this production, I reviewed correspondence memorializing previous meet and confer sessions between counsel for JPMC and counsel for the Debtors. A copy of one of these letters, dated December 18, 2009 and from Erica Taggart to Brian Glueckstein, is attached to this Declaration as Exhibit 1. On pages 2-4 of this letter, Ms. Taggart memorializes conversations with Mr. Gluecksten regarding certain departments within JPMC and whether or not documents were produced from employees assigned to these departments.

5. One of the document requests we made of JPMC was for "[a]ll documents concerning any investigations by federal, state, or municipal government bodies of JPMC related to its acquisition of WMB." When we discussed this request in a meet and confer session on June 7th, Mr. Glueckstein told me that JPMC would not produce documents in response to this request because there had been no government investigations into JPMC related to its acquisition of WMB.

6. When I attempted to memorialize this representation in an email to Mr. Glueckstein, I wrote: "you indicated that as far as you and your client are aware, no government body has opened any investigation into JPMC's conduct related to its acquisition of Washington Mutual assets."

7. Mr. Glueckstein then responded and corrected this statement saying that, instead, "we confirmed that we are aware of no government investigation of JPMC related to its acquisition of the assets of WMB."

8. I responded to this correction by telling Mr. Glueckstein I did not understand the difference between my statement and his. After an exchange of several more emails on the subject and an additional phone call addressing it, I learned that JPMC was distinguishing between investigations "into JPMC" and investigations "into JPMC's conduct." Mr. Glueckstein now acknowledged to me that JPMC did believe that there had been investigations into JPMC's conduct with regard to the Washington Mutual acquisition, including by the United States Senate Permanent Subcommittee on Investigations. A copy of the email exchange between myself and Mr. Glueckstein in which this issue was discussed is attached as Exhibit 2.

9. Once JPMC's position on investigations had been clarified, I told Mr. Glueckstein that we would insist that his client produce any documents related to any investigation into JPMC's conduct, including the Senate PSI investigation. Mr. Glueckstein then explained to me that JPMC had a database of over one million documents which had been provided to the Senate PSI for use in its investigation of Washington Mutual. The database is searchable and contains both heritage Washington Mutual documents and JPMC documents. Mr. Glueckstein admitted to me that this database had not been produced or made available to the Debtors.

10. The foregoing is based on my personal knowledge and is true and correct to the best of my knowledge, information, and belief.

Dated: Seattle, Washington

June 15, 2010

_____
Edgar Sargent

# Sargent Declaration

# Exhibit 1

# quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3196
WRITER'S INTERNET ADDRESS
ericataggart@quinnemanuel.com

DECEMBER 18, 2009

VIA EMAIL AND U.S. MAIL

Brian Glueckstein, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004-2498

Dear Brian:

I write regarding our recent correspondence regarding JPMC's 2004 production. In particular, this letter confirms and responds to our conversations at 12 pm PST / 3PM EST and 2pm PST / 5pm EST Friday, December 11, 2009 during which we discussed various issues related to JPMorgan Chase Bank, N.A.'s ("JPMC") production pursuant to the Court's June 24, 2009 order granting a rule 2004 examination of JPMC, including (1) production of documents in native versus TIFF format, (2) information regarding custodians searched by JPMC, (3) search terms used in JPMC's 2004 production, and (4) documents withheld by JPMC on the basis of alleged third party confidentiality.

## JPMC's 2004 PRODUCTION

Format for Production of Documents

WMI asked JPMC to reconsider its position that documents be produced in TIFF format rather than native format. WMI suggested that a native production presented certain advantages over TIFF format, including consistency with other productions in this case, lower cost, ability to better handle embedded documents, and greater information for certain formats such as Excel spreadsheets. Further, JPMC has not objected to producing materials in native format in other situations, including the USAO investigation and pursuant to the scheduling stipulation. You agreed to address the issue with your client, but said that you currently did not wish to produce in native format.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-····
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44-20-7653-2000 FAX +44-20-7653-2100

03935.61559/3241784.1

Information Regarding Custodians

The parties discussed various issues regarding the custodians searched in JPMC's 2004 production. We asked for any information JPMC was willing to disclose about its method for selecting and excluding certain custodians, especially regarding the custodians on the Project West list and the shorter list of custodians we provided in previous correspondence. JPMC maintained that no custodians were "excluded," but rather that it selected the most reasonable custodians from whom it produced documents after speaking with the most senior decision-makers on the deal. JPMC further stated that it would not agree at this time to search for additional documents responsive to WMI's 2004 requests from any of the custodians identified on either the list of relevant custodians WMI submitted in its November 25, 2009 meet and confer letter,[1] or identified on the Project West team list. However, JPMC said that it may be willing to do so in the future if WMI provided a narrower list of relatively few additional custodians, and if WMI committed not to seek documents from additional custodians in the future.

JPMC also reviewed each department with potentially relevant information and provided the following information:

- Accounting: JPMC stated that these are internal JPMC people and internal corporate accounting people. JPMC stated that individuals in this department merely provided support on the deal and had no substantive involvement.

- Corporate Communications: JPMC stated that these individuals were only involved at the time of the closing of the acquisition of WMB, had the limited role of fielding press releases, and were unlikely to have responsive documents. Thus, JPMC did not produce from them.

- Audit: JPMC stated that these individuals engaged only in due diligence issues and had nothing to do with the transactions or bids at the heart of the acquisition of WMB's assets.

- Branch banking (part of retail financial services group): JPMC identified these as individuals brought in to consult on various aspects of WaMu's branch banking business. JPMC identified two senior people and suggested they would be open to considering searches of them: Tom Cartwright and Scott Powell. However, JPMC maintained that

---

[1] WMI notes that our earlier list of Project West Team Leaders, attached to the November 25, 2009 letter, inadvertently left off a few individuals identified by the JPMC internal email we cited: JPM_EX00016647-48. Please note that we have also added Tom Kelly to our list based on our understanding that he had potentially relevant communications with Washington Mutual's PR team at around the time of the seizure. A revised list, including all the names on JPMC's list of team leaders, is attached hereto as Attachment A.

these individuals were not involved in core issues of the WMB asset acquisition, and would not agree to produce documents from their files without additional concessions from WMI, such as an agreement not to seek production from additional custodians or an agreement to a limited number of additional custodians to be searched.

- Chief Investment Office: JPMC acknowledged that we identified A. Duersten as a likely relevant custodian. JPMC stated that Ms. Duersten would have had the most involvement from this department, but that this department did not have meaningful involvement with the WMB transaction aside from some due diligence. However, JPMC would not agree to produce documents from their files without additional concessions from WMI, such as an agreement not to seek production from additional custodians or an agreement to a limited number of additional custodians to be searched.

- Commercial Banking: JPMC stated that individuals from this department were only involved in due diligence. JPMC stated that they would have addressed particular components of the transaction but would not have been involved in major aspects of the acquisition. JPMC identified two people they would be open to considering as additional custodians: Tom Parkhill and Todd Maclin. However, JPMC would not agree to produce documents from their files without additional concessions from WMI.

- Investment Banking Group: JPMC identified these as the individuals most involved in the transaction and stated that it had already produced from the most senior members of this department. As for additional individuals identified by WMI as potential custodians, JPMC explained that John Chrin, Thomas Novack, and Scott Albinson did not have substantive involvement in the acquisition. JPMC also addressed two other potential custodians identified by WMI: Genevieve Hovde and Sean Carmody. JPMC stated that these individuals were not decision-makers but stated that it is open to considering searches of these individuals. However, JPMC would not agree to produce documents from their files without additional concessions from WMI.

- Legal Compliance: JPMC stated that it produced from individuals in this department to the extent that the documents were not privileged. JPMC noted that WMI had identified Neila Radin as a potential custodian. JPMC stated that Ms. Radin and Dan Cooney, already searched, had a lot of overlap on the project, but that Cooney was the lead on Project West.

- Retail Banking Administration Group: JPMC stated that Sally Durdan heads the group and was searched. JPMC stated that Corinne Burger was next in charge after Ms. Durdan and JPMC would consider searching Ms. Burger. However, JPMC would not agree to produce documents from their files without additional concessions from WMI.

- Tax: JPMC stated that although the tax group was consulted, its involvement was minor. WMI identified Ben Lopata as a potential custodian. JPMC stated that they might consider searching him. However, JPMC would not agree to produce documents from their files without additional concessions from WMI.

- Credit card/card services division: JPMC identified this department as the portion of JPMC that would have done some due diligence. JPMC stated that this department was not relevant, but if WMI wanted names of individuals involved, they would consider producing docs from some senior person in the division who may have been consulted. However, JPMC would not agree to produce documents from their files without additional concessions from WMI.

- Other corporate officers: We identified Frank Bisignano as a potential custodian. JPMC stated that as is a very senior individual, he would have been consulted but that he was not involved in the day to day of Project West.

JPMC reiterated its position that it is WMI's responsibility to return to JPMC with reasons why additional custodians would be relevant to a 2004 examination. Although JPMC indicated it might be willing to search some of these additional custodians, it would not agree to do so at this time. Moreover, JPMC did not attempt to contact each of the individuals identified on either WMI's list of relevant custodians or on the Project West list to personally determine whether such individuals were in possession of responsive documents.

WMI again indicated that it would bring a motion to compel JPMC to produce additional information regarding custodians, including production from the 33 custodians identified by WMI in its November 25, 2009 letter to JPMC. JPMC requested that WMI provide yet another list of custodians, which it said it would be willing to discuss without committing to any production. However, WMI still believes that the list it previously sent to S&C, included as an attachment to this letter again, is a reasonable list of those people WMI can identify as having relevant documents.

Search Terms

WMI asked if JPMC would disclose the search terms it used in its production to date. JPMC stated that it did not believe it was legally required to disclose search terms used to date, but that it would consider WMI's request for such search terms if WMI agreed to additional concessions such as agreeing to a discrete list of additional custodians for supplemental production. Nevertheless, JPMC reiterated that it would not disclose its search terms at this time.

Page 5

## CONFIDENTIALITY STIPULATION

WMI asked if JPMC would be disclosing documents withheld on the basis of third party confidentiality now that the confidentiality agreement was being executed and especially given the FDIC and the OTS's agreement to the confidentiality stipulation in the adversary proceeding. JPMC stated that it planned to produce a privilege log detailing documents withheld on December 22, 2009. Notwithstanding the confidentiality agreement, JPMC would not commit to a production of documents withheld on the basis of confidentiality of third parties.

Very truly yours,

*Erica Taggart*

Erica Taggart

## Attachment A

| | PROJECT WEST TEAM LEADERS | |
|---|---|---|
| | Name | Title |
| 1 | Althea L Duersten | Managing Director – Chief Investment Office |
| 2 | Barry L Zubrow | Chief Risk Officer – Credit Dept |
| 3 | Benjamin Lopata | Managing director – Tax Dept |
| 4 | Brian A Bessey | Corp -M&A Dept |
| 5 | Charlie Scharf | EVP/CEO - CEO Chase Retail Financial Services |
| 6 | David B Lowman | CEO – Home Lending Dept |
| 7 | Douglas Braunstein | Head of Americas IBC and M&A |
| 8 | Fernando Rivas | Managing Director IB-FIG |
| 9 | Frank J Bisignano | Chief Administrative Officer |
| 10 | Gordon Smith | CEO- Card Service Dept |
| 11 | Gregg B Gunselman | Executive Director – IB-FIG |
| 12 | Jay Mandelbaum | EVP/ Strategy & Development Exec – Admin Dept |
| 13 | John F Bradley | HR Director |
| 14 | John R Chrin | Managing Director (IB-FIG) |
| 15 | Kevin Watters | SVP/Business Banking Executive |
| 16 | Louis Rauchenberger | MD & Corporate Controller – Accounting Dept |
| 17 | Martha Gallo | General Auditor– Accounting Dept |
| 18 | Mike Cavanagh | EVP/CFO |
| 19 | Neila Radin | Legal Compliance |
| 20 | Raymond Fischer | CFO – LOB |
| 21 | Sally E Durdan | EVP/Corporate Finance Executive – Retail Admin Dept |
| 22 | Scott E Powell | Branch Banking |
| 23 | Stephen M Cutler | General Counsel |
| 24 | Thomas D. Novack | Managing Director IB-FIG |
| 25 | Tim Main | Head of NA FIG |
| 26 | Tod Gordon | Managing Director, Treasury |
| 27 | Todd Maclin | Head, Commercial Banking (Real Estate) |
| 28 | William King | Former IB Executive |
| | ADDITIONAL RELEVANT PEOPLE | |
| 25 | Adam Gilbert | Managing Director |
| 26 | Brian Keegan | Managing Director - CSAS |
| 27 | Dan Cooney | SVP / General Counsel |
| 28 | Genevieve E Hovde | Analyst IB-FIG |
| 29 | Jamie Dimon | JPMC CEO |
| 30 | Joseph Evangelisti | Corporate Communications and Media Relations |
| 31 | Scott Albinson | JPMC banker |
| 32 | Sean Carmody | Associate IB-FIG |
| 33 | Tim Main | Head of NA FIG |
| 34 | Tom Kelly | Corporate Communications and Media Relations |

# Sargent Declaration

# Exhibit 2

**Edgar G. Sargent**

**From:** Edgar G. Sargent
**Sent:** Wednesday, June 09, 2010 12:40 PM
**To:** 'Glueckstein, Brian D.'; Friedman, Stacey
**Cc:** Gregory Taylor (Ashby & Geddes)
**Subject:** RE: JPMC Requests

# I still don't get it, but I guess we can discuss on the call. My apologies if we made an incorrect representation to the Court and if it seems material, we will correct it. Is the distinction between an investigation into JPMC (didn't happen) and an investigation into JPMC's conduct (may have happened)?

**From:** Glueckstein, Brian D. [mailto:gluecksb@sullcrom.com]
**Sent:** Wednesday, June 09, 2010 12:37 PM
**To:** Edgar G. Sargent; Friedman, Stacey
**Cc:** Gregory Taylor (Ashby & Geddes)
**Subject:** RE: JPMC Requests

Thanks, Edgar. We look forward to hopefully wrapping this up today as well.

Let's discuss #7 on our call.

As for #6, I do think there are important differences between what we represented and your language. We explained the difference during our meet and confer on Monday, and immediately corrected your email Monday night – well before the Equity Committee used your language in representations to the Court. But to be clear, here is our position set forth in writing. The failure of WaMu has been investigated. For example, it is public record that in October 2008 the U.S. Attorney's office set up a task force to look into the bank's failure. It is public record that this task force included investigators from the FBI, Federal Deposit Insurance Corporation Office of Inspector General, Securities and Exchange Commission and the IRS. The PSI hearings and other investigations are also public record. The point here is simple. After every rock has be turned over, no one except for some plaintiffs from Galveston, Texas (whose complaint has been dismissed, with prejudice) has pursued JPMC. There is no government investigation of JPMC related to its acquisition of the assets of WMB because after almost 21 months of multitudes of government and congressional investigations into the causes of WMB's failure, it is clear that JPMC was not a cause of the bank's failure and JPMC did nothing wrong.

I look forward to speaking with you shortly.

Thanks,
Brian

6/15/2010

**From:** Edgar G. Sargent [mailto:esargent@SusmanGodfrey.com]
**Sent:** Wednesday, June 09, 2010 2:04 PM
**To:** Glueckstein, Brian D.; Friedman, Stacey
**Cc:** Gregory Taylor (Ashby & Geddes)
**Subject:** RE: JPMC Requests

**Look forward to getting this wrapped up today, or at least crystallizing our areas of disagreement.**

**I don't understand how the second sentence of your email is different from my #6.**

**On #7, I've limited it to upset persons who included relevant allegations in pleadings. Are there really a significant number of foreclosure actions that meet that definition? I'm stymied about how to narrow this any further and still get what we are looking for. Do you have any suggestions that would eliminate the things you are worried about? This seems like a silly one to take to the Court, but as a general matter I think it makes a lot of sense for us to take advantage of any discovery that's been done in any other cases, so I really would like to keep something like this in the requests.**

**Okay on the rest of your email.**

**Talk to you in a couple of hours.**

**Edgar**

---

**From:** Glueckstein, Brian D. [mailto:glueksb@sullcrom.com]
**Sent:** Monday, June 07, 2010 7:25 PM
**To:** Edgar G. Sargent; Friedman, Stacey
**Cc:** Gregory Taylor (Ashby & Geddes)
**Subject:** RE: JPMC Requests

Edgar,

Thanks for your email. We generally agree with your summary of today's discussion but please note the following: in your point # 6, we confirmed that we are aware of no government investigation of JPMC related to its acquisition of the assets of WMB. In #7, your redraft appears to suffer from the same problem as the original draft in that it could be interpreted so broadly as to include any person upset about their WaMu mortgage. That

request needs to be more narrowly tailored. In #10, as discussed, there are no non-privileged drafts of the e-discovery protocol other than any contained in the correspondence between counsel for Debtors and counsel for JPMC, which you have (or is available from Debtors). Finally, as I wrote in my earlier email, we view the following requests as being previously covered by Debtors' Rule 2004 requests, to which JPMC searched for and produced responsive documents: 6, 10, 14, 15, 18, 24, 25, 26, 27, 29, 36, 37, 39, 54, and 64.

We will speak to our client on the other issues as discussed, and will get back to you promptly.

Thanks,
Brian

**From:** Edgar G. Sargent [mailto:esargent@SusmanGodfrey.com]
**Sent:** Monday, June 07, 2010 9:19 PM
**To:** Edgar G. Sargent; Friedman, Stacey
**Cc:** Gregory Taylor (Ashby & Geddes); Glueckstein, Brian D.
**Subject:** RE: JPMS Requests

# Brian and Stacey,
# Here's my understanding of where we are after today's call.

# 1. At your suggestion, we narrowed the document request in our recent Rule 2004 motion by selecting a number of individual requests to discuss as an initial matter. The list of those requests is in the initial email in this string, below. We made it clear that we are not waiving our right to seek documents called for by the remaining requests at a later time. You are reserving JPMC's right to object to any follow up request for any reason, including that we should not be permitted to keep coming back to JPMC for additional documents.

# 2. For Request No. 2, you indicated that the only documents JPMC has produced in the Texas litigation, either of the adversary proceedings, or the DC litigation are the approximately 40,000 pages provided to the Debtors in response to their Rule 2004 requests.

# 3. For Requests No. 3 and 4, you will take one more look at the language in these requests, but believe you are

6/15/2010

producing all non-privileged documents called for by these requests. In particular, you will be producing all correspondence with third-parties related to the settlement or negotiations leading to the settlement. We asked for a privilege log of the items being withheld. You indicated that JPMC would not agree to log internal correspondence. This category includes any email on which the to/from/cc/bcc names are all attorneys at Sullivan and Cromwell or another firm representing JPMC and I said we agree such docs need not be logged. You will provide me with a more specific description of any other categories of internal privileged material. I indicated that we would likely object to a refusal to log settlement related documents on which the to and from names are all JPMC employees (i.e. no outside counsel on the 'to' or 'from' lines.)

3. For the following requests, you indicated that you believe the Rule 2004 production JPMC made to the Debtors provides a complete or near-complete response: 6, 10, 14, 15, 18, 24-27, 29, 36, 37, 54. I said that I would review the meet and confer correspondence between your firm and Debtors' counsel to learn more about how documents for this production were located. After I've done that, I will come back to you with any follow up requests or requests for additional clarification about the scope of the search.

4. We agreed to interpret Request 29 as calling for all valuations of WaMu assets generated up to the moment of closing on September 25, 2008. With that understanding, you indicated that JPMC's Rule 2004 production to the Debtors contains JPMC's response to this request.

5. We agreed to at least tentatively treat Requests 30 and

6/15/2010

31 as seeking documents sufficient to show the basis for the value of assets acquired from Washington Mutual as they were first booked by JPMC and also sufficient to show the basis for any allocation of the purchase price that was performed by JPMC's accounting department. You will investigate the possibility of obtaining such documents from your client. I will confirm that my client and other attorneys on my team have no concerns about this limitation on the scope of these requests.

6. With regard to Request 39, you indicated that as far as you and your client are aware, no government body has opened any investigation into JPMC's conduct related to its acquisition of Washington Mutual assets.

7. I agreed to formulate a more specific statement of the type of lawsuit about which we are seeking information in Request 40. Let me know if this works: "All documents concerning any lawsuit or other legal action in which any of the pleadings contain allegations that JPMC breached any contract or committed any tortious or otherwise legally redressable act in conjunction with its acquisition of the assets of WMB."

8. With regard to No. 53, you indicated that there was never a draft or final schedule of assets prepared in conjunction with JPMC's acquisition of assets of WMB. You objected to the request as written ("identify in detail all assets") as either being too vague or too burdensome, given the size of this acquisition. I suggested that, at least as an initial compromise, we would be willing to agree to see a list of assets at the level of detail in which they are maintained in JPMC's internal accounting systems. You agreed to investigate this possibility and get back to me.

6/15/2010

9. For requests Number 57 (discovery requests in litigation) and 58 (meet and confer correspondence and agreements) you expressed a very strong preference that we seek this material from the Debtors rather than JPMC. I agreed that we would do so with respect to No. 57. I said I was concerned that the Debtors' production to us of meet and confer material might not be complete and you indicated that you would consider reviewing a list of the documents we obtained from the Debtors and searching for any additional material you may have. You agreed to provide us with a copy of the initial pleading in the Texas action which contained some discovery requests (and I now see an email from you attaching that document, thanks.)

10. The e-discovery protocol (No. 60) should be contained in the meet and confer correspondence produced to us by the Debtors. We ask that you search for any drafts not contained in the correspondence we have and you indicated that you would consider this request.

11. You have now provided us with a copy of the Information Access Agreement (No. 61.)

12. You object to No. 64 as being inflammatory and vague (?). Your client's position is that no documents responsive to this request exist. To the degree that the request seeks communications between JPMC and third parties concerning Washington Mutual in the six month period before acquisition, JPMC's Rule 2004 production contains your client's response.

Let me know if I missed anything or got anything wrong.

Thanks for the cooperative approach to this process.

6/15/2010

# Edgar

**From:** Edgar G. Sargent
**Sent:** Monday, June 07, 2010 12:08 PM
**To:** Friedman, Stacey
**Cc:** Gregory Taylor (Ashby & Geddes); Glueckstein, Brian D.
**Subject:** Re: JPMS Requests

Cool. I assume that means he's got the authority to make decisions for JPMC so we can make some real progress. If not, please let me know.

Edgar Sargent
Susman Godfrey
206-516-3895
206-769-9039 (c)

On Jun 7, 2010, at 12:00 PM, "Friedman, Stacey" <FriedmanS@sullcrom.com> wrote:

> I'm copying Brian who is taking the lead on this. Thanks.
>
> **From:** Edgar G. Sargent [mailto:esargent@SusmanGodfrey.com]
> **Sent:** Monday, June 07, 2010 2:58 PM
> **To:** Friedman, Stacey; Gregory Taylor (Ashby & Geddes)
> **Subject:** JPMS Requests
>
> **Stacey,**
> **Here are the numbers of the requests that we'd like to address on the call:**
> **2-4, 6, 10, 14, 15, 18, 24-27, 29-31, 36, 37, 39, 40, 53, 54, 57-61, 64.**
> **Talk to you in a few hours,**
> **Edgar**

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

6/15/2010