IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:*<br><br>WASHINGTON MUTUAL, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-12229 (MFW)<br><br>(Jointly Administered)<br><br><br>Hearing Date: June 17, 2010 at 10:30 a.m. (proposed)<br>Objection Deadline: At the hearing (proposed) |

### I. SUPPLEMENTAL RESPONSE OF JPMORGAN CHASE BANK, N.A. TO THE EQUITY COMMITTEE'S MOTION FOR A NEW RULE 2004 INVESTIGATION

### II. OPPOSITION TO MOTION OF CONSORTIUM OF TRUST PREFERRED SECURITY HOLDERS TO COMPEL JPMORGAN CHASE TO PRODUCE DOCUMENTS

### AND

### III. MOTION OF JPMORGAN CHASE BANK, N.A. FOR ENTRY OF A PROTECTIVE ORDER WITH RESPECT TO PLAN OBJECTORS' REQUESTS FOR DISCOVERY

JPMorgan Chase Bank, N.A. ("JPMC"), by and through its undersigned counsel, hereby submits this (I) Supplemental Response of JPMorgan Chase Bank, N.A. to the Equity Committee's Motion for a New Rule 2004 Investigation; (II) Opposition to Motion of the Consortium of Trust Preferred Security Holders to Compel JPMorgan Chase to Produce Documents; and (III) Motion of JPMorgan Chase Bank, N.A. for Entry of a Protective Order

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (a) Washington Mutual, Inc. (3725); and (b) WMI Investment Corp. (5395). The Debtors continue to share their principal offices with the employees of JPMorgan Chase located at 1301 Second Avenue, Seattle, Washington 98101.

{683.001-W0008264.}

With Respect to Plan Objectors' Requests for Discovery (collectively, the "Response and Motion").[2] In support of the Response and Motion, JPMC respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. Before this Court is a proposed plan of reorganization founded on a global settlement agreement among Debtors, JPMC, the Federal Deposit Insurance Corporation ("FDIC"), and major creditors of the Debtors' estates. JPMC understands that, in connection with plan confirmation, reasonable discovery will be produced by the settling parties, including JPMC, to those who object to the plan. JPMC has always understood this and always agreed to provide reasonable discovery.

2. Since the June 3, 2010 omnibus hearing, JPMC has conferred with all the parties seeking discovery from it and has agreed to produce all of its settlement communications with the parties to the global settlement agreement and all of the documents it previously produced to the Debtors in connection with the underlying litigation. JPMC has also agreed to produce additional documents that were not previously produced in discovery relating to the (unfounded) theories of claims arising from the failure of Washington Mutual. JPMC is working diligently on preparing its documents for production and expects to substantially complete its production of these documents by June 30, 2010.

3. Despite its agreement to proactively provide many categories of documents requested from it, JPMC has received scores of document requests seeking broad and ambiguous categories of documents that are not only unreasonable in the context of objections to

---

[2] Rather than burden the Court and the docket with separate pleadings to address discovery issues that are necessarily and inextricably intertwined, JPMC has filed this Response and Motion, objecting to pending discovery and seeking affirmative relief in the form of a protective order, in a single document. JPMC respectfully requests that the Court consider these issues on a comprehensive rather than piecemeal basis.

plan confirmation, but, if permitted, would require JPMC to produce documents far beyond the proper scope of discovery were the underlying litigation to proceed to conclusion. For example, the Official Committee of Equity Security Holders (the "Equity Committee") of WMI is not satisfied with documents from the custodians who had meaningful involvement in the Washington Mutual transaction, but rather wants "[a]ll communications between anyone at JPMC and the FDIC regarding Washington Mutual." (*See* Exhibit B to Declaration of Brian D. Glueckstein (the "Glueckstein Decl.").) The Consortium of Trust Preferred Security Holders (the "TPS Consortium") likewise does not just want documents from key custodians, but also wants "[a]ny and all documents relating to the seizure and sale of the operations of Washington Mutual Bank in September 2008." (*See* Exhibit C to Glueckstein Decl. at ¶ 12.) These parties refuse to heed the limitation this Court has already established on confirmation discovery—it "is not required, nor am I willing to allow full discovery as if the litigation were pursuing a pace before considering whether a settlement is reasonable." (Transcript of Proceedings, June 3, 2010 at 110:6-8.) Nor have these parties followed the Court's instruction "to look at their discovery requests and tailor them more narrowly to exactly what they need in order to do their evaluation." (*Id.* at 110:8-12.) These requests are not designed to drive this confirmation discovery process to a sensible and timely result.

4. This Response and Motion therefore has three goals: (1) inform the Court of the confirmation discovery JPMC has agreed to make available in response to the concerns raised by parties who have sought discovery from it (the "JPMC Proposed Discovery"), (2) explain succinctly why the boundless discovery being sought by the Equity Committee and the TPS Consortium is inappropriate and why their motions seeking broader discovery should be denied, and (3) request that the Court issue a protective order relieving JPMC of any obligation

to respond to the pending formal and informal discovery requests issued to JPMC to the extent they are beyond the scope of the JPMC Proposed Discovery.

## ARGUMENT

### A. JPMC Has Agreed to Produce More Than Reasonable Confirmation Discovery.

5. JPMC has worked diligently and cooperatively with the Equity Committee and others to reach resolution on all discovery issues, whether narrow or broad.[3] Based on its discussions with the Equity Committee and other parties, JPMC identified three broad categories of documents being sought: (1) settlement communications with the other parties to the global settlement agreement, (2) additional documents on topics covered by Bankruptcy Rule 2004 requests served by the Debtors on July 6, 2009 ("Debtors' Rule 2004 Requests"), and (3) documents sufficient to show how JPMC booked the Washington Mutual transaction. These categories of information being sought are reflected in the correspondence between counsel for JPMC and the Equity Committee dated June 7, 2010. (*See* Exhibit F to Glueckstein Decl.)

6. On June 12, 2010, JPMC sent a comprehensive proposal to the Equity Committee detailing supplemental documents that JPMC will make available to the Equity Committee and others provided access to the plan confirmation data room. (*See* Letter from Glueckstein to Sargent, dated June 12, 2010, attached as Exhibit A to Glueckstein Decl.) The JPMC Proposed Discovery was designed in good faith to address all of the concerns expressed by the Equity Committee, the TPS Consortium and other parties during our meet and confer discussions, and attempts to balance the legitimate need to evaluate the plan and global

---

[3] For example, in response to narrow requests, on June 7, 2010, JPMC provided, at the Equity Committee's request, information on the now-dismissed ANICO litigation and the Information Access Agreement between JPMC and WMI, dated November 21, 2008. (*See* Exhibit D to Glueckstein Decl.) Furthermore, on June 10, 2010, JPMC provided the Equity Committee with correspondence with the Debtors during the course of the litigation relating to discovery issues. (*See* Exhibit E to Glueckstein Decl.)

settlement agreement with the burden imposed on JPMC. A similar proposal was provided to the TPS Consortium on June 15, 2010. (*See* Exhibit G to Glueckstein Decl. at 29-31.) The JPMC Proposed Discovery will provide the following:

- <u>Settlement Communications</u>. JPMC will search the files of six relevant JPMC custodians and produce all settlement communications and non-privileged communications about them: Lawrence Chanen, Daniel Cooney, Stephen Cutler, Jamie Dimon, Travis Epes, and Donald McCree. Furthermore, JPMC has agreed, for the confirmation process, to have Sullivan & Cromwell LLP search the files of Bruce Clark, Rodgin Cohen, Mitchell Eitel, Hydee Feldstein, Stacey Friedman, Brian Glueckstein, and Robert Sacks for non-privileged settlement communications. JPMC has made available the search terms to be used in identifying settlement communications. (*See* Exhibit A to Glueckstein Decl. at Exs. A and B.)

- <u>Documents Related to Government Investigations</u>. The Equity Committee, among others, expressed interest, on multiple occasions, for access to documents related to government investigations into the failure of Washington Mutual. While JPMC has been clear that there is no government investigation of JPMC related to the its acquisition of Washington Mutual Bank's ("<u>WMB</u>") assets, JPMC has produced millions of pages of documents, including both responsive historical Washington Mutual and JPMC documents, to requests from the U.S. Senate's Committee on Homeland Security and Governmental Affairs Permanent Subcommittee on Investigations ("<u>PSI</u>"). The PSI production includes the documents produced to the United States Attorney's Office. JPMC has agreed to make the entire searchable PSI production available through the confirmation discovery process.[4]

---

[4] In its Reply in Support of its Motion Directing Appointment of an Examiner (D.I. 4720), the Equity Committee blatantly misrepresents that because the Debtors never obtained the final copy of the PSI production, it must be that JPMC was "engaged in "discovery games" or the Debtors did not have a proper investigatory record to work with. That is false. JPMC did not play games. JPMC did not give

- <u>Additional Rule 2004 Documents (E-mail Custodians)</u>. JPMC continues to believe that it has already conducted a reasonable search and production in response to the Debtors' Rule 2004 Requests. This production included all of the most senior JPMC executives involved in the transaction. JPMC's Rule 2004 production was provided to the Equity Committee on March 4, 2010. As JPMC explained to the Equity Committee and the TPS Consortium, if litigation had continued, JPMC would not have made any significant additional Rule 2004 production. Even WMI, in the midst of litigation, recognized that no significant additional Rule 2004 production would be appropriate. Although the negotiations were never concluded, WMI narrowed its request to 24 additional custodians, and was considering a proposal from JPMC that would have involved a search of 5 to 8 additional custodians' e-mail. While no party has articulated any well-founded reason why any further Rule 2004 search is necessary, to resolve this issue JPMC has agreed to search and produce non-privileged documents from two additional custodians of interest to the Equity Committee. The documents from those two custodians were collected by JPMC during the litigation phase and can be produced in a reasonably short timeframe.

- <u>Additional Rule 2004 Documents (Shared Drives)</u>. JPMC explained to the Equity Committee that the e-mail search was more than reasonable given that it was the practice at JPMC to share documents by e-mail. JPMC further explained that there is no one "shared drive" that was formally designated as a repository for all Washington Mutual related documents. Nonetheless, JPMC has identified a shared drive that was periodically used by the JPMC deal team during the Washington Mutual transaction and JPMC has agreed to produce the

---

Debtors a duplicate set of the final PSI production because Debtors already had copies of nearly all of the documents contained in the PSI production and therefore did not need additional copies of the final production from JPMC. Indeed, the documents produced to the United States Attorney's Office contained therein were originally produced by WMI and simply re-produced to the PSI by JPMC.

non-privileged documents on this drive in response to the Debtors' Rule 2004 requests, even though JPMC believes that requiring it to review and produce these documents is inappropriate in the context of plan confirmation discovery.

- Accounting Documentation. The Equity Committee and the TPS Consortium have requested documents sufficient to show how JPMC booked the Washington Mutual transaction. Although these documents bear in no way on plan confirmation, JPMC will provide information and documents to show how WMB's assets were recorded on JPMC's financial statements, and reasonable documentation on how JPMC arrived at those valuations for the assets compromised in the global settlement agreement.

- Depositions. All of the parties to confirmation, proponents and objectors alike, have discussed but been unable to agree upon a protocol for depositions. Whatever procedures are put in place, they should be coordinated to meet the reasonable needs of all parties involved and a schedule should be developed to avoid witnesses being deposed more than once.

7. JPMC respectfully submits that the JPMC Proposed Discovery is more than what JPMC should be required to provide for plan confirmation purposes and that requests for broader and more burdensome discovery should be rejected.

B. **The Objections to the Scope of JPMC's Discovery are Unfounded.**

8. Notwithstanding the forthcoming JPMC Proposed Discovery, the Equity Committee and others seek still more. Although there has been much unnecessary rhetoric thrown around,[5] when that is peeled away, the only objection to the JPMC Proposed

---

[5] For example, the Equity Committee has thrown around disparaging remarks (calling counsel "childish") and responded to substantive proposals with back-of-the hand statements such as "whatever." (*See* e-mails dated June 13 and June 14, 2010, Exhibit H to Glueckstein Decl.) Setting aside JPMC's firm belief that these comments were never appropriate, it is our intent to present this motion based on the

Discovery—there could be "more" produced. Of course it is true that "more" could be produced, but that observation is without consequence. "More" is available because this is a settlement, not a case tried to verdict. The Court has already established that confirmation discovery should not expand to full litigation discovery, let alone beyond those bounds.

9. The additional requests not only impermissibly expand the scope of plan confirmation, they are unnecessary. Below we have outlined the objections raised to the scope of the JPMC Proposed Discovery by three parties (the Equity Committee, the TPS Consortium and the ANICO Plaintiffs), along with why those objections are without merit.

 1. **The Equity Committee's Objections to the Scope of JPMC's Discovery are Unfounded.**

10. The Equity Committee has acknowledged that it is interested in receiving the JPMC Proposed Discovery. (*See* Exhibit B to Glueckstein Decl., stating its further requests are "in addition to the supplemental information you agreed to provide in your June 12th letter....".) But the Equity Committee also wants to further expand the scope of JPMC's supplemental production to include the search of eight additional JPMC custodians who had little or no meaningful involvement with the Washington Mutual transaction. (*See* Exhibit B to Glueckstein Decl.) Tellingly, none of the eight custodians the Equity Committee now requests were even among those contained in the 5 to 8 custodian proposal that the Debtors were considering as they sought additional custodians prior to settlement. The Equity Committee has not provided any justification for further expanding the custodian search at this stage of the proceedings, let alone expanding it to places that were not contemplated by JPMC as appropriate for the scope of litigation discovery. The Equity Committee's request for additional custodial data should be denied.

---

facts and with the goal of putting in place a reasonable confirmation discovery process, without resorting to name calling or distortion of the record.

11. The Equity Committee also is seeking documents on a variety of topics that would require a potentially limitless search of all custodians at JPMC. Said differently, these are not searches of custodial data, these are requests by the Equity Committee that would expand the scope of JPMC's search for these categories of documents firm-wide. That would be unreasonable and unduly burdensome in the context of litigation; it certainly is inappropriate during plan confirmation and ignores this Court's directive that the Equity Committee "tailor [requests] more narrowly." (Transcript of Proceedings, June 3, 2010 at 110:10-11.) Equally important, a reasonable search for responsive documents, as the chart below illustrates, was already done in response to the Debtors' Rule 2004 Requests.

| Equity Committee Request | Reasons Unwarranted |
|---|---|
| Records showing any valuation work done by JPMC. | Within scope of Rule 2004 production.<br><br>Most likely sources of additional documents contained in the JPMC Proposed Discovery. |
| All communications between anyone at JPMC and the FDIC regarding Washington Mutual. | Within scope of Rule 2004 production. For example, the "@fdic" email domain was included as a search term.<br><br>FDIC is JPMC's primary regulator and additional searches would be extremely time consuming and burdensome. |
| All communications between anyone at JPMC and anyone at any ratings agency regarding Washington Mutual. | Within scope of Rule 2004 production. For example, "Washington Mutual, Inc.", "Washington Mutual Bank", "WMI", "WMB", and "WaMu" were all search terms used to search for responsive documents. |
| All documents related to JPMC's determination of the Purchase Price (of WMB's assets from the FDIC). | Within scope of Rule 2004 production. JPMC search included for communications with the FDIC and JPMC's bid for WMB's assets. |

| Any analysis of the capitalization of Washington Mutual. | Within scope of Rule 2004 production.<br><br>For example, "Washington Mutual, Inc.", "Washington Mutual Bank", "WMI", "WMB", and "WaMu" were all search terms used to search for responsive documents. |
|---|---|

(*See* Exhibit B to Glueckstein Decl.) Even though these requests go far beyond what is necessary or required for a contested plan confirmation, each of the Equity Committee's requests are already fairly addressed by JPMC's search and production in response to Debtors' Rule 2004 requests. And, to the extent there is any concern about the scope of that, the additional documents being provided in the JPMC Proposed Discovery addresses that.

12. Moreover, the Equity Committee seeks to arrange a document custodian deposition of JPMC to potentially advance further requests. The Equity Committee will be free to seek such a deposition under whatever procedures for depositions are implemented, but the ever expanding scope of the search sought by the Equity Committee needs to be stopped. All parties will benefit from JPMC moving forward expeditiously with the JPMC Proposed Discovery.

### 2. The TPS Consortium's Objections to the Scope of JPMC's Discovery are Unfounded.

13. Despite only serving their discovery requests last Friday afternoon, the TPS Consortium has brought a motion to compel additional discovery from JPMC. By way of this motion the TPS Consortium seeks to compel numerous broad, firm-wide requests that are well beyond the scope of discovery necessary for the confirmation process, including "[a]ny and all documents relating to the seizure and sale of the operations of Washington Mutual Bank in September 2008," while purposefully ignoring the JPMC Proposed Discovery that fairly resolves their requests. (*See* Exhibit C to Glueckstein Decl.) Compelling JPMC to produce additional

discovery in the manner requested by the TPS Consortium would be unreasonable and unduly burdensome in the context of this plan confirmation process.

14. As the chart below demonstrates, this is especially true given that the JPMC Proposed Discovery provides for a reasonable production documents responsive to the issues focused on in the TPS Consortium's motion. In fact, relevant documents were provided in JPMC's Rule 2004 production. And, to the extent there is any need for the production of additional documents, that need is met by the JPMC Proposed Discovery.

| TPS Consortium Request | Reasons Unwarranted |
|---|---|
| Pre-September 25, 2008 Washington Mutual Documents ("Historical WaMu Documents"). | Nearly (if not all) Historical WaMu Documents are unrelated to the settlement negotiations, which are being provided to the TPS Consortium by way of the JPMC Proposed Discovery. As such, these documents are not necessary for purposes of evaluating whether settlement is reasonable.<br><br>Historical WaMu Documents are, nevertheless, being made available to all parties by the Debtors. Under these circumstances, compelling JPMC to search and produce the very same documents would be create an inefficient and duplicative discovery process that would be unduly costly and burdensome for JPMC. |
| "Any and All" Documents and/or Communications related to Each Specific Request. | The Court instructed parties to narrowly tailor discovery requests to seek only that information necessary for their evaluation of the settlement agreement. The TPS Consortium has failed to adhere to this mandate, and has insisted on receiving "any and all" documents and/or communications related to each Specific Requests.<br><br>Compelling the production of "any and |

|  | all" documents and/or communications on a particular subject is overbroad, unduly burdensome in all cases, and simply not appropriate in the context of plan confirmation discovery following 21 months of litigation.<br><br>By way of the JPMC Proposed Discovery, the TPS Consortium will obtain reasonable access to the documents and/or communications necessary to evaluate their claims, rights or interests for purposes of plan confirmation. |
|---|---|
| Expansion of Debtors' Rule 2004 Examination | As discussed above, JPMC's previous productions in response to the Debtors' Rule 2004 Requests more than reasonable. The TPS Consortium fails to articulate with any new arguments that would make further Rule 2004 discovery appropriate.<br><br>Under the JPMC Proposed Discovery, nevertheless, JPMC would make additional Rule 2004 Documents available to all parties. |

15. Lastly, the TPS Consortium's demand for a privilege log of the internal communications of JPMC's outside counsel is without merit. Courts have routinely recognized and allowed for the production of a categorical, rather than document-by-document, log for precisely these circumstances, *See In re Imperial Corp. of Am.*, 174 F.R.D. 475, 477 (S.D. Cal. 1997) (stating "no where in Fed. R. Civ. Pro. 26(b)(5) is it mandated that a document-by-document privilege log is required, if a party seeks to withhold documents based on privilege or work product. In fact, the Advisory Committee Notes following Rule 26 indicate that a document-by-document privilege log is not required in certain circumstances."); *see also SEC v. Thrasher*, No. 92 CIV. 6987 (JFK), 1996 WL 125661, at *1 (S.D.N.Y. Mar. 20, 1996) (holding

that while a privilege log identifies each document sought to be withheld, "courts retain some discretion to permit less detailed disclosure in appropriate cases" and that "in appropriate circumstances, the court may permit the holder of withheld documents to provide summaries of the documents by category or otherwise limit the extent of his disclosure."). Here, a traditional document-by-document approach would be unduly burdensome and would provide no material benefit to the parties involved. *See, e.g., In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2009 WL 959491, at *3 (D. Kan. Apr. 3, 2009) ("The court is sympathetic to defendants' argument that individually logging thousands of privileged attorney communications would be immensely burdensome and have little, if any, benefit to plaintiffs. Therefore, the court will permit defendants to categorically group, in the manner described above, post-litigation attorney communications for which a privilege is asserted."); *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 87 (S.D.N.Y. 2006) ("A categorical log may be used where (a) a document-by-document listing would be unduly burdensome and (b) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well-grounded.") (internal citations omitted).

16. The JPMC Proposed Discovery is the appropriate scope of supplemental discovery at this stage of plan confirmation.

### 3. The ANICO Plaintiffs Efforts to Open a New Rule 2004 Investigation Should be Stopped.

17. The plaintiffs in the ANICO litigation, whose claims have been dismissed in their entirety with prejudice,[6] requested in an June 15, 2010 letter a new "Rule 2004

---

[6] *American National Insurance Co. v. JPMorgan Chase & Co.*, No. 09-1743 (RMC), 2010 U.S. Dist. LEXIS 36487 (D.D.C. Apr. 13, 2010).

examination . . . upon JPMC & Co." (*See* Exhibit I to Glueckstein Decl.) The ANICO plaintiffs have not filed a claim in the bankruptcy. In fact, as recently as this morning, on a global meet and confer teleconference, counsel for the ANICO plaintiffs admitted that they have no claims against the Debtors. (Glueckstein Decl. at ¶ 4.) Any objection by the ANICO plaintiffs to the Debtors' plan appears to be in connection with the scope of the third party releases, which is purely a legal issue. The ANICO plaintiffs admitted during today's meet and confer that they do not know what may (or may not) be deficient about JPMC's Rule 2004 productions to date. (Glueckstein Decl. at ¶ 4.) There is simply no proper justification for the ANICO plaintiffs to seek a further Rule 2004 examination of any JPMC entity as part of this plan confirmation process.

### C. A Protective Order Relieving JPMC of any Present Obligation to Respond Beyond the JPMC Proposed Discovery Is Warranted.

18. The Court is authorized to make any order as may be appropriate to protect the recipient of a discovery requests from unreasonable or oppressive demands. Under Rule 26(c) of the Federal Rules of Civil Procedure made applicable by Rule 9014 and Rule 7026 of the Federal Rules of Bankruptcy Procedure, an order may be issued by the Court to:

> protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> . . .
>
> (1) that the disclosure of discovery not be had;
>
> (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of time and place; . . .
>
> (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;

Fed. R. Civ. P. 26(c). A protective order is warranted in these circumstances.

19. It is well-settled that a party may obtain a protective order in the discovery context when "good cause" exists to support such an order. *In re Am. Business Financial Servs., Inc.*, No. 05-10203, 2008 WL 3906894, at *3-4 (Bankr. D. Del. 2008) (Walrath, J.) (finding "good cause" for a protective order in the discovery context) (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487 (1987)). "Good cause" exists when disclosure will result in a "clearly defined and serious injury." *Id.* (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). The Third Circuit has found that an injury sufficient to warrant a protective order exists when, *inter alia*, the (i) sharing of information does not promote fairness and efficiency or (ii) information sought is being used for an improper purpose. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (listing factors used in finding "good cause" to impose a protective order).

20. As described above, JPMC has already committed to make a reasonable production in connection with the plan confirmation process. Nevertheless, nearly every day JPMC receives new requests for further discovery, much of which cannot be relevant to whether the Debtors plan and settlement are reasonable. Many of these requests are blanket demands that can be summarized as follows: "Produce everything in your possession which in any way related to [insert subject of choice]." Such document demands always are improper and particularly so in the confirmation process. Each request imposes a significant cost and burden on JPMC, which must evaluate and respond in good faith or fight another discovery battle. Given the discovery JPMC has already agreed to make available, these additional discovery do little more than promote an inefficient, duplicative, and overly burdensome discovery process designed to harass JPMC. On this ground alone ample "good cause" exists to support the imposition of a protective order. *Glenmede Trust Co.*, 56 F.3d 476, 483.

21. This motion is necessitated by these collective efforts which amount to a waste of the Court's time and resources and an undue burden on JPMC. A protective order should be entered relieving JPMC of any present obligation to respond to confirmation discovery, beyond the JPMC Proposed Discovery.

WHEREFORE, for the foregoing reasons, JPMC respectfully requests that the Court grant the Motion and enter the Proposed Order filed herewith.

Dated: June 16, 2010
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (I.D. 3407)
Matthew B. McGuire (I.D. 4366)
919 Market Street Suite 1800
Wilmington, DE 19899
Tel: (302) 467-4400
Fax: (302) 467-4450
landis@lrclaw.com
mcguire@lrclaw.com

– and –

Robert A. Sacks
Hydee R. Feldstein
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Tel: (310) 712-6600
Fax: (310) 712-8800
sacksr@sullcrom.com
feldsteinh@sullcrom.com

Bruce E. Clark
Stacey R. Friedman
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000
Fax: (212) 558-3588
clarkb@sullcrom.com
friedmans@sullcrom.com

*Counsel for JPMorgan Chase Bank, N.A.*