# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 <br> ) <br> ) Case No. 08-12229 (MFW) |
| WASHINGTON MUTUAL, INC., *et al.*, | ) Jointly Administered <br> ) |
| Debtors | ) **Hearing Date: July 8, 2010 at 10:00 am (Requested)** <br> ) **Objection Deadline: July 7, 2010, 4:00 p.m. (Requested)** |

## MOTION OF THE CONSORTIUM OF TRUST PREFERRED SECURITY HOLDERS TO COMPEL THE OFFICE OF THRIFT SUPERVISION TO PRODUCE DOCUMENTS

The consortium of holders of interests subject to treatment under Class 19 of the Plan (the "TPS Consortium"[1]), by and through its undersigned counsel, hereby files this Motion to Compel the Office of Thrift Supervision ("OTS") to Produce Documents responsive to the First Request for Production of Documents of the Trust Preferred Security Holders to OTS, (attached hereto as <u>Exhibit A</u>), and to produce such documents by July 19, 2010. In support of this Motion, the TPS Consortium respectfully represents as follows:

### PRELIMINARY STATEMENT

1. As a party-in-interest to these Cases, the TPS Consortium is entitled to obtain discovery under Federal Rules of Civil Procedure 26 and 34, made applicable to these proceedings pursuant to Rules 9014, 7026 and 7034 of the Federal Rule of Bankruptcy Procedure.

---

[1] The TPS Consortium is made up of holders of interests (as set forth more fully in the group's Amended Rule 2019 statement [Docket No. 3765], as such may be amended) proposed by the Debtors to be treated under Class 19 of the Amended Plan (described in the Amended Plan and Amended Disclosure Statement as the "REIT Series").

{D0183074.1 } 1

2. The OTS has appeared in this chapter 11 proceeding as a party in interest, and would appear to be a beneficiary of the broad third party releases contained in the Global Settlement Agreement underlying the Proposed Plan. As such, the TPS Consortium served narrow, targeted discovery requests related to the Global Settlement Agreement and the Trust Preferred Securities, which are proposed to be distributed to JPMorgan under the Plan.

3. In response to the TPS Consortium's Document Requests (the "TPS Requests"), the OTS has taken the position that it will not produce any responsive documents. See OTS Response to Document Request, attached hereto as Exhibit B. Fundamentally, as confirmed by the parties' call to "meet and confer" in an attempt to narrow any issues, the OTS has taken the position that it is not a party and that this Court will not require it to produce documents, and therefore, it will not do so.

4. The OTS should not be granted absolute immunity from the discovery process, given that it has appeared in these bankruptcy proceedings as a party-in-interest and will also be the recipient of non-consensual releases. Because it will benefit from the Global Settlement and the Plan, the OTS should be required to respond to discovery.

5. By this motion, the TPS Consortium seeks the Court's assistance in obtaining reasonable discovery from the OTS concerning the Debtors' pending plan of reorganization (as amended, the "Plan"), under which it appears the OTS is proposed to be one of several recipients of extraordinarily broad, non-consensual releases and exculpations. The requested discovery is relevant to the Court's consideration of the Plan and related settlement, and must be allowed.

**ARGUMENT**

6. The Debtors' proposed Plan threatens the rights and interests of the members of the TPS Consortium in a number of ways. First, the Plan and related settlement agreement

would purport to use this Court's authority to deliver to JPMC all right and title to certain trust preferred securities (the "Trust Preferred Securities") to which the members of the TPS Consortium also have ownership claims and rights. The Plan also purports to deprive members of the TPS Consortium of any recourse against a number of third parties, apparently including the OTS, with respect to claims or rights related to the Trust Preferred Securities.

7. The Federal Rules of Bankruptcy Procedure impose on parties who seek to take advantage of the provisions of the Bankruptcy Code certain obligations, including obligations related to discovery.

8. Under the Plan and related settlement agreement, the OTS is one of several apparent recipients of broad non-consensual releases and exculpations. Specifically, as set forth in Debtors' Disclosure Statement for the Fourth Amended Plan ("Disclosure Statement"), released claims include:

> Claims [that] arise in, relate to or have been or could have been asserted (i) in the Chapter 11 Cases, the Receivership or the Related Actions, (ii) that otherwise arise from or relate to any act, omission, event or circumstance relating to any WMU Entity, or any current or former subsidiary of any WMI Entity, or (iii) that otherwise arise from or relate to the Receivership, the Purchase and Assumption Agreement, the Chapter 11 Cases, the 363 Sale and Settlement as defined in the Global Settlement Agreement, the Plan and the negotiations and compromises set forth in the Global Agreement and the Plan…

Disclosure Statement at 119. Additionally, pursuant to the Plan, Debtors seek imposition of an injunction, under which:

> (i) all Entities that hold, have held, or may hold a Released Claim or Equity Interest relating to any of the Debtors or the Reorganized Debtors or any of their respective assets, property and estates, that is released pursuant to the Plan, (ii) all other parties in interest, and (iii) each of the Related Persons of each of the foregoing entities, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject

> matter of such discharged Released Claims or such Equity Interests: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under the Plan; and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Global Settlement Agreement, the Plan or the Confirmation Order.

Disclosure Statement at 121.

9. Given the breadth of those provisions, the OTS is a potential beneficiary of the releases and injunction sought in connection with the Global Settlement Agreement and the Plan. As such, the OTS should not receive the benefits of the bankruptcy proceeding without having to comply with the Rules by responding to narrow discovery requests.

10. The OTS relies upon a statement made by this Court at the June 3, 2010 hearing, in considering the Equity Committee's Motion to Conduct Rule 2004 Discovery of Third Parties, which sought broad discovery of the FDIC and nine separate third parties. During that hearing, the Court indicated a disinclination to allowing such discovery against third parties. Now, the OTS considers that it has blanket immunity from discovery requests.

11. That statement, which was made in response to the Equity Committee's particular motion, should not be applied to prevent very limited discovery relevant to the Global Settlement Agreement and the Plan.

12. Lastly, the OTS claims that the TPS Requests are broad, and therefore, the agency should not be required to respond. To the extent the OTS has specific objections to particular

requests, the TPS Consortium would be willing to consider narrowing those requests. Additionally, to the extent that all documents responsive to any request have already been produced or that responsive documents are not in the possession, custody or control of the OTS—two other objections lodged by the OTS—a written response to that effect would be sufficient. However, a complete refusal to respond to any requests is unwarranted and should be rejected.

13. For example, Request No. 3 seeks "documents relating to and/or indicating the current ownership of the Trust Preferred Securities." It would not seem that such a narrow topic (current ownership of a particular group of assets) would encompass many documents or require an onerous search by the OTS. Similarly, Request No. 11 asks for "documents related to communications between the OTS and JPMC concerning WMI or WMB between January 1, 2008 and September 25, 2008." The OTS does not, and never has, regulated JPMC and would likely not have communicated frequently with JPMC, particularly about Washington Mutual. As such, this request is very narrow, would likely only require a narrow search, and therefore, should not be burdensome. Other requests related to settlement discussions in these chapter 11 proceedings (i.e. Requests 9 and 10), which may be none, should not be burdensome in any way, but should at least garner an actual response.

14. In short, the OTS should not be allowed to make a sweeping objection that it will not respond to any discovery requests. Instead, as a party-in-interest and a potential beneficiary of the releases in the Global Settlement, the OTS should be required to respond to the TPS Requests in accordance with the Rules.

**WHEREFORE**, the TPS Consortium respectfully requests that the Court compel OTS to produce by July 19, 2010: (a) all non-privileged documents responsive to the TPS Consortium's

document requests; and (b) a full privilege log describing the recipients, subject matter and claimed privilege related to all documents withheld on the basis of any applicable privilege.

Dated: Wilmington, Delaware
July 2, 2010

Respectfully submitted,

**CAMPBELL & LEVINE LLC**

/s/ Kathleen Campbell Davis_____
Marla Rosoff Eskin, Esq. (DE 2989)
Bernard G. Conaway, Esq. (DE 2856)
Kathleen Campbell Davis, Esq. (DE 4229)
800 North King Street, Suite 300
Wilmington, DE 19809
(302) 426-1900
(302) 426-9947 (fax)

– and –

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Sigmund Wissner-Gross, Esq.
Seven Times Square
New York, NY 10036
(212) 209-4800
(212) 209-4801 (fax)

– and –

Jeremy B. Coffey, Esq.
Daniel J. Brown, Esq.
One Financial Center
Boston, MA 02111
(617) 856-8200
(617) 856-8201 (fax)

*Counsel for the TPS Consortium*

# 1756069 v1 - BROWNDJ - 028943/0001