UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------------x
: 
*In re* : Chapter 11
:
WASHINGTON MUTUAL, INC., et al.,[1] : Case No. 08-12229 (MFW)
:
Debtors. : (Jointly Administered)
:
: Re: Docket Nos. 3757, 3806, 2807, 4471, 4856, 4863,
: 4884, 4891
---------------------------------------------------------------x

### DEBTORS' RESPONSE AND OPPOSITION TO THE TPS CONSORTIUM'S (A) SECOND SUPPLEMENTAL SUBMISSION IN FURTHERANCE OF ITS MOTION TO COMPEL DEBTORS TO PRODUCE DOCUMENTS AND (B) REQUEST TO STRIKE OR MODIFY CONFIDENTIALITY ORDER

Washington Mutual, Inc. ("WMI") and WMI Investment Corp., as debtors and debtors in possession (collectively, the "Debtors"), hereby submit this response and opposition to the Consortium of Trust Preferred Security Holders' ("TPS Consortium") (A) Second Supplemental Submission in Furtherance of its Motion to Compel Debtors to Produce Documents and (B) Request to Strike or Modify Confidentiality Order, filed on July 7, 2010 [D.I. 4891] (the "Second Submission"), and respectfully represent as follows:

### PRELIMINARY STATEMENT

1. On the afternoon of July 7, 2010, less than 24 hours prior to the July 8th hearing before this Court, the TPS Consortium filed the Second Submission in further support of its Motion to Compel (the "Motion to Compel") [D.I. 3757] the Debtors to produce certain documents and a request to strike or modify the Confidentiality Order (the "Confidentiality

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.

Order") [D.I. 4863], wherein the Court approved the Confidentiality Agreement Governing Confirmation Discovery (the "Confidentiality Agreement") produced by the Debtors and other parties in connection with Plan confirmation (as defined below). Like the Motion to Compel, which was filed only two days before the May 19, 2010 hearing and provided the Debtors with less than 24 hours to respond, the TPS Consortium's instant submission is, in reality, a part of its strategy to "jam" the Debtors and to delay the hearings on the Disclosure Statement and Plan confirmation.

2. As set forth below, on July 2, 2010, the TPS Consortium was offered immediate access to the document depository (the "Depository") that the Debtors have created as part of their discovery efforts to facilitate Plan confirmation, provided that the TPS Consortium sign the Confidentiality Agreement that has been approved by this Court. A number of parties— *e.g.*, the Equity Committee, the Creditors' Committee, JPMorgan Chase, N.A. ("JPMC"), the WMI Senior Noteholders, ANICO, and the WMB Bank Bondholders—have already signed the Confidentiality Agreement and have been (or soon will be) granted access to the Depository. Yet, the TPS Consortium has chosen not to sign the Confidentiality Agreement and thus not to access the Depository. Remarkably, the TPS Consortium has chosen not to access the Depository even though the Debtors offered to negotiate a revised confidentiality agreement, while the TPS Consortium enjoys access to the Depository under the auspices of the current Confidentiality Agreement approved by this Court. Since the TPS Consortium has inexplicably chosen to blind themselves rather than review the massive amount of materials that have been made available to them, the TPS Consortium's complaints about the content of the Depository (*e.g.*, calling it "an indiscriminate document dump") are literally baseless, as they have chosen not to look at what is contained in the Depository and thus are hardly in a position to assess the

adequacy of its contents. The only genuine area of disagreement between the parties concerning the terms of the Confidentiality Agreement is that the TPS Consortium has proposed to use *highly confidential* information for purposes *other than* its prosecution of its objection to Plan confirmation; that is what this dispute boils down to, and it is hardly a basis for any of the relief the TPS Consortium seeks.

3. To mask its unreasonable position, the TPS Consortium selectively attaches only certain correspondence between counsel for the TPS Consortium and counsel for the Debtors and misleadingly fails to disclose to the Court that the Debtors accepted certain of its proposed changes and agreed to further negotiate the terms of the Confidentiality Agreement after signing. Without even gaining access to or looking at a single document in the Depository, the TPS Consortium also objects to the manner in which the documents are produced and clamors for an unduly burdensome and costly privilege log. Moreover, even after the Court has approved the Confidentiality Agreement, the TPS Consortium continues to nitpick with the agreement and now asks the Court to strike or modify an agreement that was so ordered on July 2, 2010.

4. The TPS Consortium's conduct and contrived excuses plainly evidence its agenda to derail Plan confirmation. Indeed, the TPS Consortium does not hide its baseless assertion that the "Plan is incapable of confirmation." D.I. 4891 at 15. Accordingly, the Motion to Compel and all of the additional requests in the Second Submission should be denied.

## ARGUMENT

**A. The Court Should Deny the Motion to Compel Because the TPS Consortium Can Access the Requested Documents Upon the Signing of a Confidentiality Agreement.**

5. The TPS Consortium provides no real reason for its refusal to sign the Confidentiality Agreement prior to gaining access to the Depository, which contains highly

US_ACTIVE:\43441430\04\79831.0003
RLF1 3589390v. 1

3

sensitive confidential information produced by the Debtors as well as other parties. The TPS Consortium's only excuse is that it had previously signed a confidentiality agreement with the Debtors (the "NDA") and that therefore it should not have to sign a new one. The TPS Consortium latches on to a statement made by the Debtors' counsel at the June 17, 2010 hearing that the TPS Consortium had "already signed a confidentiality agreement...[and] will get access as soon as that depository is open." D.I. 4891 at 7. However, as the Debtors have explained, after the June 17, 2010 hearing, it became clear that documents produced by, *inter alia*, JPMC and the Creditors' Committee are *not* protected by the previous NDA, thereby necessitating the signing of a new agreement. *See* Ex. A (email dated July 2, 2010 from J. Mastando to D. Brown and J. Coffey); Ex. B (email dated July 4, 2010 from J. Mastando to J. Coffey *et al.*).

6. Moreover, on July 6, 2010, the Office of Thrift Supervision (the "OTS") informed the Debtors that parties seeking access to documents produced by the OTS could be granted access "provided they first sign the Court-approved Plan Confirmation confidentiality stipulation so they are bound by its terms." *See* Ex. C (email dated July 6, 2010 from M. Jefferson Davis to Tom O'Brien *et al.*). Neither the Debtors, JPMC, the Creditors' Committee, nor the OTS have consented to granting access to any party who does not sign the appropriate Confidentiality Agreement to protect the disclosure of highly sensitive, confidential information.

7. The unreasonableness of the TPS Consortium's refusal to sign the Confidentiality Agreement is further highlighted by what it deliberately left out of its Second Submission. Missing as attachments from the Second Submission are critical emails which establish that the Debtors have been cooperating all along with the TPS Consortium to provide it with access to the Depository. On July 2, 2010, counsel for Debtors agreed to certain of TPS Consortium's proposed changes to the Confidentiality Agreement, with the primary exception of

their proposal to use highly confidential information *outside* of its prosecution of its objection to Plan confirmation. *See* Ex. A. Moreover, in the same email, counsel for the Debtors explained that TPS Consortium can gain immediate access to the Depository upon signing of the Confidentiality Agreement *and* could still continue to negotiate a modified version of the agreement. *Id.* ("As we noted, you can sign and obtain immediate access, and in the meantime—while you are accessing the data—we are willing to continue negotiating a modified version of the Confidentiality Agreement."). The TPS Consortium completely ignored this email.

8.  Instead, in response to a different email, the TPS Consortium disingenuously suggested that the *Debtors* did not consider the TPS Consortium's comments to the Confidentiality Agreement. *See* Ex. B (email dated July 3, 2010 from J. Coffey to J. Mastando). This suggestion misrepresents the facts. As Debtors' counsel explained the next day: "[Y]ou provided comments to our draft Thursday afternoon. I responded early Friday morning. . . . You simply failed to respond to Debtors' proposal." *Id.* (email dated July 4, 2010 from J. Mastando to J. Coffey *et al.*).

9.  Since the Depository has been populated with documents—some highly confidential—for the sole purpose of Plan confirmation, the Debtors and other parties who produced documents to the Depository cannot simply let a party use such confidential documents for purposes outside of that for which they were intended. However, the TPS Consortium continues to object to that reasonable protection and to the Debtors' offer to continue to negotiate the Confidentiality Agreement. A number of parties (*e.g.*, the Equity Committee, the Creditors' Committee, JPMC, the WMI Senior Noteholders, ANICO, and the WMB Bank Bondholders) have already signed the Confidentiality Agreement and have been (or soon will be) granted

access to the Depository.[2] Notably, certain parties have raised issues with respect to the use of the documents in the Depository for purposes other than their objections to Plan confirmation; yet, these parties have executed the Confidentiality Agreement, and the Debtors will continue to negotiate with them after execution of the agreement.

10. In objecting to the signing the Confidentiality Agreement, the TPS Consortium is using the same tactics that it previously employed with its initial Motion to Compel. As the Court may recall, on May 17, 2010, the TPS Consortium filed an emergency Motion to Compel, giving the Debtors less than 24 hours to respond. *See* D.I. 3806. Like its current objection, the Motion to Compel stemmed from the TPS Consortium's refusal to sign a standard non-disclosure agreement to protect the confidentiality of the requested documents. *See id.* Here, again, the TPS Consortium is delaying its access to the very documents that it seeks by refusing to sign the Confidentiality Agreement, based on the pretext of minor squabbles that it generated. Such repeated gamesmanship is clear evidence of the TPS Consortium's true intention to delay Plan confirmation.

11. Further revealing its agenda, the TPS Consortium seeks to unnecessarily increase the cost of this discovery process to the Debtors. First, *without even having reviewed a single document in the Depository*, the TPS Consortium complains about the manner in which the documents are produced therein and calls the Depository "an indiscriminate document dump." D.I. 4891 at 12. If the TPS Consortium had only signed the Confidentiality Agreement, it would have been granted immediate access to the Depository and would have observed that the

---

[2] Contrary to the TPS Consortium's assertion that the Equity Committee has had access to the Depository for "some time" (D.I. 4891 at 9), the Equity Committee only executed the Confidentiality Agreement on July 7, 2010 and was granted access that same day. Thus, the TPS Consortium's characterization of the Depository as "unwieldy and entirely inefficient" is completely unfounded.

documents in the Depository are organized into categories and that the search functions in the Depository will allow the TPS Consortium to search for the documents that it finds most relevant.

12. Tellingly, on June 21, 2010, when the Debtors first circulated to the parties in interest proposed search terms based on their review of the broad document requests received, *see* Ex. D (email dated June 21, 2010 circulating search terms to all parties), the TPS Consortium failed to object to, or even comment on, the search terms or to the Depository in general. The TPS Consortium has no basis to complain about a Depository that it has not even seen and to which it did not provide input as to how the documents would be searched and/or produced, despite ample opportunity to do so.[3]

13. Second, the TPS Consortium seeks production of a privilege log. Without having reviewed the documents in the Depository, the TPS Consortium makes wild accusations that the Debtors attempt to "hide the deficiencies in their production." D.I. 4891 at 13. Nothing can be further from the truth. The Debtors have worked diligently to provide responsive discovery reasonably relating to Plan confirmation and, indeed, have produced onto the Depository over a half million pages of documents as of July 7, 2010 (not including certain of JPMC's PSI production). Providing a privilege log involving the number of documents at issue is unnecessarily burdensome at this point, especially where the request issues from a party that

---

[3] Moreover, the TPS Consortium is just one of five parties who filed a total of six sets of document requests (the TPS Consortium filed two sets). It would be highly inefficient and overly burdensome for the Debtors to respond individually to each of the six sets of document requests, totaling over 370 requests (including subparts), by organizing the documents in the Depository according to each individual request. The Debtors have made clear that if, after reviewing the documents in the Depository, any party believes it needs additional materials, the Debtors will meet and confer with such parties regarding such requests.

has not even reviewed a single document and therefore has no basis for such a burdensome request.[4]

**B.    The Court Should Not Strike or Modify the Confidentiality Order.**

14.    The TPS Consortium also asks the Court to strike or modify the Confidentiality Order. There is no basis for this request, which would, indeed, further waste the time and resources of the Debtors and other parties in interest. Numerous parties have already signed the Confidentiality Agreement, and certain parties—*e.g.*, JPMC, Creditors' Committee and the OTS—would *only* grant access to parties who sign the Confidentiality Agreement before accessing the Depository. Thus, modifying the Confidentiality Order as requested by the TPS Consortium would *not* provide it with access and would, most certainly, lead to time-consuming rounds of negotiations with not only the Debtors but also with other parties who have produced documents to the Depository.

15.    In any event, as set forth above, the TPS Consortium should not be allowed to use confidential discovery for purposes other than Plan confirmation. The TPS Consortium asserts that it *may* need such discovery for its recently-filed adversary proceeding in this Court relating to ownership of certain securities. *See* D.I. 4891 at 15 ("To the extent discovery [in depository]…is germane to [the adversary proceeding]"). This is not a sound basis

---

[4] The Debtors reserve all rights to object in full to the production of a privilege log. Preliminarily, the Debtors observe that Fed. R. Civ. P. 26 "does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. Details concerning time, persons, general subject matter, etc. may be appropriate if only a few items are withheld, *but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories.*" Advisory Committee Notes to Fed. R. Civ. P. 26 (emphasis added); *Tulip Computers Int'l v. Dell Computer Corp.*, 210 F.R.D. 100, 106 n.9 (D. Del. 2002) (stating that with respect to privilege logs, Rule 26(b)(5) "recognizes that details concerning time, persons, general subject matter and the like may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed as privileged.") (citing Rule 26 Advisory Committee Notes)).

for modifying the Confidentiality Order, as the millions of pages of documents being uploaded to the Depository are specifically produced for the purpose of Plan confirmation only. Further, if the TPS Consortium determines that it needs discovery in its adversary proceeding, that issue can appropriately be addressed by the Court when, and if, it arises, through normal discovery procedures. Moreover, where parties have already produced documents in reliance on the Confidentiality Agreement or substantially similar versions thereof, it is "presumptively unfair," as the TPS Consortium asks here, "for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 230 (2d Cir. 2001).

16. In addition, the TPS Consortium's assertion that it did not have sufficient time to comment on the Confidentiality Agreement before it was submitted to the Court on July 2, 2010 is also disingenuous. *See* D.I. 4891 at 10. On June 29, 2010, the Debtors circulated to the parties a further revised proposed Agreed Order Governing Discovery Procedures, attaching confidentiality provisions that were substantially similar to the confidentiality provisions that previously had been circulated by the Debtors on June 16, 2010 ("June 16 Confidentiality Provisions"). The Debtors invited the parties to access the Depository, provided that the parties sign a standalone confidentiality agreement. The next day, on June 30, 2010, the Debtors circulated a standalone confidentiality agreement that was substantially similar to the June 16 Confidentiality Provisions. Thus, the TPS Consortium had ample opportunity to consider and comment on substantially similar confidentiality provisions and/or agreements.

## CONCLUSION

17. For the foregoing reasons, the Debtors respectfully request that the Court: (1) deny the Motion to Compel in its entirety; (2) deny the request to compel the Debtors to

provide immediate access to the Depository without signing the Confidentiality Agreement; (3) deny the request to produce a full privilege log; and (4) deny the request to strike or modify the Confidentiality Order.

Dated: July 9, 2010
      Wilmington, Delaware

                                  /s/
Mark D. Collins (No. 2981)
Chun I. Jang (No. 4790)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

              – and –

Marcia L. Goldstein, Esq.
Brian S. Rosen, Esq.
John P. Mastando III, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS TO THE DEBTORS
AND DEBTORS IN POSSESSION