IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | : Chapter 11 |
| WASHINGTON MUTUAL, INC., et al.,[1] | : Case No. 08-12229 (MFW) |
| Debtors. | : Jointly Administered |
| | : RE: Docket No. 4644 |

## LIMITED OBJECTION OF THE FDIC-RECEIVER TO ENTRY OF PROPOSED ORDER FOR APPOINTMENT OF AN EXAMINER AND STATEMENT IN SUPPORT OF FDIC-RECEIVER'S PROPOSED ORDER

The Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank (the "FDIC-Receiver"), respectfully submits this supplemental limited objection (the "Objection") to entry of the order proposed by the Official Committee of Equity Security Holders (the "Equity Committee") granting the Equity Committee's second motion for an order directing the appointment of an examiner pursuant to 11 U.S.C. § 1104(c) (the "Second Examiner Motion") [D.I. 4644], in the form that has been attached as an exhibit to the Equity Committee's Supplemental Statement in Support of Motion for Examiner served earlier today. In support of the Objection, and in support of the FDIC-Receiver's proposed order, the FDIC-Receiver respectfully states as follows:

## OBJECTION

1. The FDIC-Receiver previously filed objections [D.I. 3630, 4685], to both the Second Examiner Motion and the Equity Committee's original motion for appointment of an examiner [D.I. 3579]. The FDIC-Receiver stands on those objections. The Equity Committee

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification numbers are: (a) Washington Mutual, Inc. (3725); and (b) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

asks the Court to appoint an examiner to conduct a broad examination and investigation that would include the decision of the Office of Thrift Supervision (the "OTS") to appoint the FDIC as receiver and the FDIC-Receiver's decision to enter into a purchase and assumption agreement with JPMorgan Chase Bank, N.A. ("JPMC"). The FDIC-Receiver believes that such a broad examination and investigation would waste estate resources because such matters cannot lead to any recovery for the debtors and debtors in possession Washington Mutual, Inc. and WMI Investment Corp. (the "Debtors"). As explained below, potential claims arising out of the closing of WMB and the sale of its assets by the FDIC-Receiver have been investigated and, in any event, are precluded by statute.

2. The FDIC-Receiver agrees that the process by which the Debtors entered into the settlement agreement dated May 21, 2010 with JPMC, the FDIC-Receiver and others (the "Settlement Agreement"), which is incorporated into the Debtors' pending Fifth Amended Plan of Reorganization, is an appropriate area of inquiry, and the FDIC-Receiver is prepared to consent to the appointment of an examiner focused on the Debtors' decision to enter into that agreement. As set forth in the form of order proposed by the FDIC-Receiver, a copy of which is attached as Exhibit A (the "Proposed Order"), an examiner should be directed to examine (a) whether the Debtors' board of directors acted reasonably in determining whether to enter into the Settlement Agreement, (b) whether the negotiations which led to the Settlement Agreement were free from collusion and undue influences, and (c) whether the Debtors' board, management or professionals had conflicts of interest in connection with the Settlement Agreement.

3. However, the FDIC-Receiver objects to the competing order that has been proposed by the Equity Committee because it would provide for an overbroad investigation that would empower an examiner to investigate claims that are not actionable under applicable law

and therefore would waste time and the resources of the Debtors' estate. Many of the claims that the Equity Committee believes should be investigated by an examiner concern purported challenges to the closing of WMB in September 2008. Any such claims are time barred, however, and investigating them could provide no benefit to the Debtors or their constituents. As the Court is aware, WMB was closed by the OTS, and 12 U.S.C. § 1464 requires that any action seeking an order to challenge that appointment could only be initiated "within 30 days" after the appointment of the FDIC-Receiver. See 12 U.S.C. §§ 1464(d)(1)(A) and (2)(B). No such action was brought, and the claim is now time barred.[2] There is no purpose in investigating the circumstances surrounding the decisions of the OTS when there is no cause of action available to challenge them.

4. Such claims were considered by the estate's fiduciaries who already determined not to pursue them. The Debtors and the Official Committee of Unsecured Creditors (the "Creditors Committee") have acknowledged that they investigated potential actions to challenge the closing of WMB and, after doing so, decided against bringing suit. The Creditors Committee's counsel explained this in statements before this Court:

> We looked into those issues that were underlying the OTS decision to seize Washington Mutual Bank. Right at the very beginning of this case, we had to make a judgment call as to whether or not the [D]ebtors or the [C]ommittee should do something to try to attack the OTS decision to seize Washington Mutual Bank. That decision had to be made within the first thirty days due to the time constraints set forth in the FDI act. And at that time, we had to investigate what were the reasons given by the OTS as to why the bank was seized. And we negotiated extensively with the [D]ebtor[s], and we looked at the facts ourselves. Our banking counsel looked carefully at it, and we determined that it would not make sense to try to attack the OTS decision in October 2008. We spent a lot of time on

---

[2] Further, only WMB had standing to bring such a claim. See 12 U.S.C. §§ 1464(d)(2)(B) ("In the event of such appointment, the association may, within 30 days thereafter, bring an action ....") (emphasis added).

those issues, and those issues are included among issues that the proposed examiner would investigate.

See May 5, 2010 Tr. at 62:23-63:13 (statements by Creditors' Committee counsel Robert Johnson).

5. An investigation as to whether the Debtors' decision not to sue was reasonable can only be done by reviewing the information the Debtors considered, not by conducting a new investigation. Thus, an examination of the OTS decision to appoint the FDIC-Receiver could not meaningfully impact the outcome of these chapter 11 cases except to increase administrative expenses and reduce the ultimate distribution to creditors.

6. Second, the Debtors already investigated whether the FDIC-Receiver could be held liable for the alleged "dissipation" of WMB's assets by selling those assets at allegedly too low a price pursuant to a purchase and assumption agreement with JPMC and filed this claim in their district court complaint against the FDIC-Receiver. As the FDIC-Receiver explained in support of its motion to dismiss in that action, the Debtors' "dissipation" claim is just as meritless as the belated efforts to challenge WMB's closing.

7. The Debtors did not include any such claim in their receivership proof of claim, thereby waiving their right to pursue that claim in their later district court action. 12 U.S.C. §§ 1821(d)(3)-(13); see, e.g., McGlothin v. R.T.C., 913 F. Supp. 15, 18 (D.D.C. 1996), aff'd, 111 F.3d 963 (D.C. Cir. 1997); Brown Leasing Co. v. F.D.I.C., 833 F. Supp. 672, 675-76 (N.D. Ill. 1993), aff'd, 42 F.3d 1112 (7th Cir. 1994); Coleman v. F.D.I.C., 826 F. Supp. 31, 32 (D. Mass. 1993).[3]

---

[3] Neither did the Equity Committee file a receivership proof of claim against the FDIC-Receiver. Thus the Equity Committee is similarly foreclosed from pursuing such a claim against the FDIC-Receiver in its own right (even putting aside any other standing issues presented by such an assertion).

8.  Further, there is no private right of action for "dissipation of receivership assets" or for an alleged failure to maximize recoveries for receivership claimants. See Hindes v. F.D.I.C., 137 F.3d 148, 170 (3d Cir. 1998); see also F.D.I.C. v. Updike Bros., Inc., 814 F. Supp. 1035, 1041-42 (D. Wyo. 1993) (duty owed not to claimants but to "the American public at large") (citing H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess., 1, 514-15, reprinted in 1989 U.S.C.C.A.N. 86, 308-309). Indeed, receivership claimants are limited by statute to the amount they would have recovered had the FDIC-Receiver simply liquidated the institution rather than preserving its going concern value through a purchase and assumption transaction. See 12 U.S.C. § 1821(i)(2); Branch v. F.D.I.C., 825 F. Supp. 384, 412-14 (D. Mass. 1993).[4]

9.  The district court for the District of Columbia has not yet reached these arguments because it stayed the Debtors' district court action while litigation among the Debtors, JPMC and the FDIC-Receiver proceeded in this Court and on appeals before the U.S. District Court for the District of Delaware. See Order, Washington Mutual, Inc. v. F.D.I.C., Case No. 09-00533 (D.D.C. Jan. 7, 2010) at 6. It cannot be said, however, that the Debtors did not consider the claims. They obviously conducted a sufficient inquiry to file their district court complaint. It is not *per se* unreasonable for a plaintiff to settle litigation while a motion to dismiss is pending.

10.  The appropriate inquiry is whether the Debtors' exercise of their business judgment was reasonable and free from collusion or conflicts of interest. Only the information considered by the Debtors is relevant, and the appropriate inquiry is whether the settlement is

---

[4] In addition, FIRREA grants the FDIC-Receiver exclusive standing to assert all derivative claims related to a failed bank. 12 U.S.C. 1821(d)(2)(A)(i) provides that upon the appointment of the FDIC-Receiver it acquires "all rights, titles, powers, and privileges of the insurance depository institution, and of any stockholder, member, account holder, depositor, officer, or director of such institution." (Emphasis added); see In re Southeast Banking Corp., 827 F. Supp. 742 (S.D. Fla. 1993); Renfro v. F.D.I.C, 773 F.2d 657 (5th Cir. 1985); F.D.I.C. v. Am. Bank Trust Shares, Inc. 350 F. Supp. 549 (D.S.C. 1978).

reasonable in that context. It is not relevant to consider all the materials that might have been available if litigation had proceeded to judgment. Any information that was not considered by the Debtors, or that was not in their possession as of the time the settlement decision was made, is irrelevant to determining whether the settlement should be approved. It is not the for objecting parties to substitute their business judgment for the Debtors'.

11. Additionally, the Equity Committee may not pursue any causes of action against either the FDIC or JPMC based on their unfounded allegations of collusion because the Debtors themselves did not assert such claims against the FDIC-Receiver in the administrative claims process. As the district court in the *American National* case found:

> Having failed to invoke and exhaust this administrative process, Plaintiffs' claims are barred by the Act. (citation omitted) Plaintiffs cannot circumvent the Act's jurisdictional bar by aiming their claims at the assuming bank of the failed bank's assets. (citation omitted) That is precisely what Plaintiffs have attempted here in suing only JP Morgan Chase. Their claims will be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

See Memorandum and Opinion, American National Insurance Co. v. JP Morgan Chase & Co., No. 09-1743 (D.D.C.) (April 13, 2010) (RMC) [D.I. 113].

12. In addition, the scope of the inquiry requested by the Equity Committee suggests that it would like to pursue actions against JPMC or the FDIC-Receiver arising from the sale of WMB assets under the P&A Agreement, but federal law bars any judicial action to unwind the FDIC-Receiver's sale of assets to JPMC. Under 12 U.S.C. § 1821(j), courts may not "take any action . . . to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator

or a receiver."[5] In a recent decision applying this provision, the Eleventh Circuit has made clear that the receivership claims process provides the only possible avenue for such challenges, see Bank of America, N.A. v. Colonial Bank, 604 F.3d 1239, 1246 (11th Cir. 2010), and any such receivership claim suffers from the debilitating infirmities already discussed.

13. The FDIC-Receiver therefore reserves its prior objections to the appointment of an examiner to the extent that the scope of the examiner's investigation exceeds that proposed in the Proposed Order attached hereto. The FDIC-Receiver objects to the competing order submitted by the Equity Committee because it purports to require the FDIC-Receiver to provide information to an examiner outside of a formal discovery process where these and other appropriate objections can be raised.

14. The Settlement Agreement expires by its terms on August 31, 2010. The FDIC-Receiver has no interest in allowing for an open-ended extension of that date. Thus, the Settlement Agreement itself is endangered if the examination drags on unreasonably.

15. It is clear that this Court has the power to focus the nature, scope and duration of any examiner's investigation that may be conducted to that which is appropriate here. See 11 U.S.C. § 1104(c)(2); In re Revco D.S., Inc., 898 F.2d 498, 501 (6th Cir. 1990) ("the bankruptcy court retains broad discretion to direct the examiner's investigation, including its nature, extent and duration"). Indeed, "[i]t is well settled that bankruptcy courts may employ broad discretion when determining the scope of an examiner's investigation." In re Spansion, Inc., 426 B.R. 114,

---

[5] Section 1821(j) provides, in its entirety:

(j) **Limitation on court action.**

Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

12 U.S.C. § 1821(j).

126 (Bankr. D. Del. 2010) (quoting <u>Loral Stockholders Protective Comm. v. Loral Space & Commc'ns Ltd. (In re Loral Space & Commc'ns, Ltd.)</u>, 2004 WL 2979785 at *4 (S.D.N.Y. Dec. 17, 2004)).[6] To this end, a court may "exercise its discretion to limit the scope of the examiner's investigation and the compensation and expenses available to the examiner." <u>Spansion</u>, 426 B.R. at 126. Moreover, appointment of an examiner should not occur when such an appointment would cause "prejudicial delay, unnecessary expense or otherwise be undesirable." <u>In re Adelphia Commc'ns Corp.</u>, 336 B.R. 610, 646 n.61 (Bankr. S.D.N.Y. 2006).

16. As set forth in the Proposed Order, in this case, the scope of investigation by an examiner should be focused on: (a) whether the Debtors' board of directors acted reasonably in determining whether to enter into the Settlement Agreement, (b) whether the negotiations which led to the Settlement Agreement were free from collusion and undue influences, and (c) whether the Debtors' board, management or professionals had conflicts of interest in connection with the Settlement Agreement.

17. Focusing the scope of an examiner's investigation is appropriate and necessary to prevent the waste of time and estate resources. For example, in <u>In re Lyondell Chemical Company</u>, the bankruptcy court denied a motion similar to that filed by the Equity Committee here. There, the court severely limited the committee's broad-ranging requests, stating:

> I don't think it's appropriate for an examiner to be watching over parties' shoulders while they engage in plan or settlement negotiations, or to get involved in the management of the case by the debtor in possession or its counsel, except for the limited purpose of giving me comfort that the process isn't being sidetracked or distorted by a material conflict of interest or bad faith.

---

[6] In <u>Loral</u>, the district court recognized that "it is the court's duty to fashion the role of an examiner to avoid substantial interference with the ongoing bankruptcy proceedings." <u>In re Loral</u>, 2004 WL 2979785 at *4.

In re Lyondell Chemical Company, Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 6, 2010) (bench ruling).[7] The court refused to authorize an investigation that would have encompassed a review of the debtors' exercise of their business judgment.

18. This Court should similarly exercise its discretion and limit the scope of examination to whether the Settlement Agreement resulted from improper leverage or overreaching by any of the settling parties or disabling conflicts of interest on the part of the Debtors. But any additional investigation, especially an investigation as broad as that sought by the Equity Committee, would unnecessarily delay these proceedings and waste estate resources.

---

[7]. An excerpt from the transcript in Lyondell is attached hereto as Exhibit B.

## **CONCLUSION**

The investigation of any examiner appointed in these cases should be limited in scope to those areas set forth in the Proposed Order attached as Exhibit A. Any further examination would not serve any useful purpose with regard to the Debtors' cases. For all of the foregoing reasons, the Motion should be denied.

Dated: Wilmington, Delaware
July 19, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Jaime N. Luton
M. Blake Cleary (No. 3614)
Jaime N. Luton (No. 4936)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mbcleary@ycst.com
jluton@ycst.com

- and -

Thomas R. Califano
John J. Clarke, Jr
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Attorneys for the FDIC-Receiver