UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

----------------------------------------------------------x
:
*In re* : Chapter 11
:
WASHINGTON MUTUAL, INC., et al.,[1] : Case No. 08-12229 (MFW)
:
Debtors. : (Jointly Administered)
:
: Hearing Date: September 24, 2010 at 10:30 a.m. (ET)
----------------------------------------------------------x Objection Deadline: September 7, 2010 at 4:00 p.m. (ET)

## MOTION FOR AN ORDER, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019, APPROVING STIPULATION AND AGREEMENT BETWEEN THE DEBTORS AND WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE

Washington Mutual, Inc. ("WMI") and WMI Investment Corp. ("WMI Investment"), as debtors and debtors in possession (the "Debtors"), as and for their motion (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for approval of that certain Stipulation and Agreement (the "Stipulation," a copy of which is attached hereto as Exhibit A), dated August 20, 2010, by and between WMI and Wilmington Trust Company (the "Indenture Trustee"), as indenture trustee under the various indentures more fully described therein (each, an "Indenture" and, together the "Indentures"), respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 925 Fourth Avenue, Seattle, Washington 98104.

RLF1 3601766v. 1

## Jurisdiction

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2. On September 26, 2008 (the "Commencement Date"), each of the Debtors commenced with this Court a voluntary case pursuant to chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 3, 2008, the Court entered an order, pursuant to Bankruptcy Rule 1015(b), authorizing the joint administration of the Debtors' chapter 11 cases.

3. On October 15, 2008, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On January 11, 2010, the U.S. Trustee appointed an official committee of equity security holders (the "Equity Committee"). By agreed order, dated July 22, 2010, the Court directed the U.S. Trustee to appoint an examiner to investigate certain matters. On July 26, 2010, the U.S. Trustee appointed Joshua R. Hochberg of McKenna Long & Aldridge LLP as examiner (the "Examiner").

4. On March 26, 2010, the Debtors filed their *Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* (as most recently amended on July 1, 2010,[2] and as may be further amended, the "Plan") and a related disclosure statement (as

---

[2] *Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code*, dated July 1, 2010 [Docket No. 4850].

most recently amended on July 1, 2010,[3] and as may be further amended, the "Disclosure Statement"). A hearing to consider the adequacy of the information contained in the Disclosure Statement is scheduled for September 7, 2010.

## WMI's Business

5.  WMI, a holding company incorporated in the State of Washington, is the direct parent of WMI Investment, which served as an investment vehicle for WMI and holds a variety of securities. WMI Investment is incorporated in the State of Delaware.

6.  Prior to the Commencement Date, WMI operated as a savings and loan holding company that owned Washington Mutual Bank ("WMB") and, indirectly, such bank's subsidiaries, including Washington Mutual Bank fsb ("WMBfsb"). WMI still owns all of the outstanding stock of WMB, and WMI also has certain non-banking, non-debtor subsidiaries (the "Non-debtor Subsidiaries"). Like all savings and loan holding companies, WMI was subject to regulation by the Office of Thrift Supervision (the "OTS"). WMB and WMBfsb, in turn, like all depository institutions with federal thrift charters, were subject to regulation and examination by the OTS. In addition, WMI's banking and nonbanking subsidiaries were overseen by various federal and state authorities, including the Federal Deposit Insurance Corporation ("FDIC").

7.  On September 25, 2008 (the "Receivership Date"), the Director of the OTS, by order number 2008-36, appointed the FDIC as receiver for WMB and advised that the receiver was immediately taking possession of WMB (the "Receivership"). Immediately after its appointment as receiver, the FDIC purportedly sold substantially all the assets of WMB, including the stock of WMBfsb, to JPMorgan Chase Bank, National Association ("JPMorgan

---

[3] *Disclosure Statement for the Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code*, dated July 1, 2010 [Docket No. 4851].

3

RLF1 3601766v. 1

Chase") pursuant to that certain *Purchase and Assumption Agreement, Whole Bank*, dated as of September 25, 2008 (the "Purchase Agreement").

8.     WMI's assets include its common stock interest in WMB, its interest in its non-banking subsidiaries, and more than $4 billion of cash that WMI and its non-banking subsidiaries (including WMI Investment) had on deposit at WMB and WMBfsb immediately prior to the time the FDIC was appointed as receiver. WMI is in the process of evaluating these and other assets for purposes of ultimate distribution to its creditors.

### The Bar Date and Schedules

9.     On December 19, 2008, the Debtors filed with the Court their schedules of assets and liabilities and their statements of financial affairs. On January 27, 2009, and February 24, 2009, WMI filed with the Court its first and second, respectively, amended schedule of assets and liabilities and its first and second, respectively, amended statements of financial affairs. On January 14, 2010, WMI filed a further amendment to its statement of financial affairs (collectively, the "Schedules").

10.    By order, dated January 30, 2009 (the "Bar Date Order"), the Court established March 31, 2009 (the "Bar Date") as the deadline for filing proofs of claim against the Debtors in these chapter 11 cases. Prior to the Commencement Date, the CCB Securities were issued pursuant to a governing indenture. In accordance therewith, the respective indenture trustees were required to file a proof of claim on behalf of all holders of the CCB Securities. Pursuant to the Bar Date Order, as indenture trustee under the indentures relating to HFC Capital Trust I, CCB Capital Trust IV, CCB Capital Trust V, CCB Capital Trust VII, and CCB Capital Trust VIII, the Indenture Trustee was authorized to file, on behalf of itself and the holders of the Guarantee Claims (as defined below), proof of claims.

4

### The Indenture Trustee Claim

11. On or about March 26, 2009, the Indenture Trustee filed proofs of claim against WMI (the "Indenture Trustee Proofs of Claim"), wherein the Indenture Trustee, on behalf of itself and other holders of debt issued pursuant to the Indentures, asserted claims for, among other things, unliquidated guarantee claims as of the Commencement Date (the "Guarantee Claims"), which claims were assigned the claim numbers noted below by the Debtors' court-approved claims and noticing agent:

| Claim Number | Indenture Date | Interest Rate | Maturity Date | Claimed Principal | Claimed Interest |
|---|---|---|---|---|---|
| 2113 | March 28, 2001 | 10.18% | 2031 | $9,300,000 | $286,651.83 |
| 2116 | September 25, 2003 | Floating Rate | 2033 | $7,732,000 | $98,999.89 |
| 2118 | December 19, 2003 | Floating Rate | 2034 | $10,310,000 | $104,833.37 |
| 2120 | May 27, 2004 | Floating Rate | 2034 | $7,732,000 | $75,120.48 |
| 2122 | June 22, 2004 | Floating Rate | 2034 | $7,732,000 | $80,064.13 |

12. In addition to the Guarantee Claims, the Indenture Trustee Proofs of Claims asserted claims for the continuing accrual of interest and various other unliquidated amounts allegedly due and owing under the Indentures for both the pre- and post-petition periods (including, but not limited to, the fees and expenses of the Indenture Trustee and its professionals) (the "Additional Unliquidated Claims").

13. Certain of the debt issued pursuant to the indentures relating to HFC Capital Trust I, CCB Capital Trust IV, CCB Capital Trust V, CCB Capital Trust VII, and CCB Capital Trust VIII was issued at a discount to its face value – i.e., with "original issue discount." Unamortized original issue discount is treated as unmatured interest pursuant to section

502(b)(2) of the Bankruptcy Code and, therefore, disallowed as a claim against a chapter 11 debtor. *See In re Chateaugay Corp.*, 961 F.2d 378, 380 (2nd Cir. 1992). As part of the Debtors' ongoing claims reconciliation process, the Debtors reviewed and analyzed the Indenture Trustee Proofs of Claim and determined that the Guarantee Claims, after accounting for the original issue discount, should be allowed in amounts that are different from the amounts that were asserted in the Indenture Trustee Proofs of Claim. Accordingly, the Debtors contacted the Indenture Trustee to attempt to resolve the discrepancy. As a result of such discussions, the Debtors and the Indenture Trustee have agreed on the correct amounts owed with respect to the Guarantee Claims.

**Relief Requested**

14. The Debtors seek entry of an order, in the form attached hereto as Exhibit B, pursuant to section 105(a) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules, approving the Stipulation between the Debtors and the Indenture Trustee, a copy of which is attached hereto as Exhibit A, whereby the Guarantee Claims will be reduced and allowed in the proper amounts; provided, however, the Allowed Amount of each of the Guarantee Claims shall be further reduced, on a dollar-for-dollar basis by the amount, if any, of distributions received by the Indenture Trustee from or on account of the Receivership.

**Basis For Relief**

15. Bankruptcy Code section 105(a) provides that, "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019, which governs the approval of compromises and settlements, provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Fed. R. Bankr. P. 9019(a). A starting point in analyzing any proposed settlement agreement is the general policy of encouraging settlements

and favoring compromises. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996). The standard by which courts evaluate a proposed compromise and settlement are well established. The United States District Court for the District of Delaware "has described the ultimate inquiry to be 'whether the compromise is fair, reasonable, and in the interest of the estate.'" *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (Bankr. D. Del 1998) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).

16. The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). Under the well-established standard for consideration of the merits of a settlement, in determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), *cert. denied sub nom. Benson v. Newman*, 409 U.S. 1039 (1972)); *see also In re World Health Alternatives, Inc.*, 344 B.R. at 296; *In re Key3Media Group, Inc.*, 336 B.R. 87, 92-93 (Bankr. D. Del. 2005).

17. Applying the foregoing standard, the Debtors respectfully submit that approval of the Stipulation is fair, reasonable and in the best interests of the Debtors, their estates and creditors. Approval of the Stipulation will avoid the needless expense associated with filing an objection to the Indenture Trustee Proofs of Claim and any related claim litigation and will ensure that the Indenture Trustee Proofs of Claim are satisfied in the appropriate amounts, reflecting the proper amount of original issue discount. Furthermore, since all parties' rights

7

with respect to the Additional Unliquidated Claims will be preserved (except with respect to any objection based on timeliness), the effect of the Stipulation will be solely to reduce the total amount of claims asserted against these estates – a clear benefit. Based on the foregoing, the Debtors submit that cause exists to approve the Stipulation as a settlement and compromise under Bankruptcy Rule 9019.

### **Notice**

18. Notice of the Motion has been given to: (a) the U.S. Trustee; (b) the attorneys for the Creditors' Committee; (b) the attorneys for the Equity Committee; (d) the attorneys for the Indenture Trustee; and (e) all persons entitled to receive notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

### **No Previous Request**

19. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) granting the relief requested herein and (ii) granting the Debtors such other and further relief as is just.

Dated: August 20, 2010
      Wilmington, Delaware

/s/ Mark D. Collins

Mark D. Collins, Esq. (No. 2981)
Chun I. Jang, Esq. (No. 4790)
Julie A. Finocchiaro, Esq. (No. 5303)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Marcia L. Goldstein, Esq.
Brian S. Rosen, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS TO THE DEBTORS
AND DEBTORS IN POSSESSION