UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------------x
:
*In re*                                                      :     Chapter 11
:
WASHINGTON MUTUAL, INC., et al.,[1]                          :     Case No. 08-12229 (MFW)
:
Debtors.                                                     :     (Jointly Administered)
:
:     Re: Docket No. 5330
:
:     Hearing Date: August 24, 2010 at 2:00 p.m. (EDT)
---------------------------------------------------------------x

## DEBTORS' RESPONSE AND OPPOSITION TO THE STATEMENT OF THE TPS CONSORTIUM REGARDING THE DOCUMENT DEPOSITORY AND REQUEST FOR FURTHER RELIEF

Washington Mutual, Inc. ("WMI") and WMI Investment Corp., as debtors and debtors in possession (collectively, the "Debtors"), hereby submit this response and opposition to the Consortium of Trust Preferred Security Holders' ("TPS Consortium") Statement Regarding the Document Depository and Request for Further Relief, filed on August 23, 2010 [D.I. 5330] (the "Statement"), and respectfully represent as follows:

1.  The TPS Consortium filed the Statement – in substance, an emergency discovery motion on less than 24 hours notice – seeking an order from the Court requiring the Debtors to create for them a unique database containing only those documents responsive to the TPS Consortium's seventy-three requests for production in less than ten days. The Statement misconstrues the Court's prior ruling on this issue and all but ignores the Debtors' extensive efforts to provide the TPS Consortium with the requested discovery in a user-friendly format.

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.

2. On August 10, 2010, the Court ruled that the Debtors can either organize the documents produced so they correspond to the requests or provide the metadata to the TPS Consortium in response to their discovery requests. The Debtors have more than complied with that ruling. They have agreed to provide metadata for the documents in the depository, which will give the TPS Consortium access to a fully-searchable, litigation-style database. The Debtors have gone one step further and also agreed to identify for the TPS Consortium specific documents, categories of documents and/or individuals with relevant documents, that are responsive to the document requests served. The TPS Consortium's requested relief should be denied.

### The TPS Consortium Misinterprets the Court's August 10, 2010 Ruling

3. In seeking an order requiring the Debtors to provide a separate database for the TPS Consortium that contains only documents responsive to its requests, the TPS Consortium misconstrues the Court's ruling at the August 10, 2010 hearing. At that hearing, the Court ordered that "…**either** the debtor should be able to organize the documents that are responsive to the discovery requests **or** the debtor should provide the metadata for all those documents so that the plaintiffs can do it without making the plaintiffs pay for it." August 10, 2010 Hearing Transcript ("Tr.") 89:7-11 (emphasis added). In response to questions from counsel for the TPS Consortium, the Court twice clarified to them that the Debtors are to either identify the responsive documents or provide the metadata. *See* Tr. 90:11-12 ("Yes. Either identify the documents that are responsive **or** give them metadata.") (emphasis added); 103:15-17 ("Well, I've directed that they respond to your discovery requests by identify[ing] documents responsive to your requests *or* give you the metadata.") (emphasis added).

4. The Court's ruling leaves no doubt as to what the Debtors must do to comply with their discovery obligations and the Debtors promptly spelled out for the TPS Consortium exactly what they would do to comply. Apparently re-thinking its own request for access to metadata for the depository, the TPS Consortium now suggests that this Court may be "confused" by the issues of organization and format relating to metadata under the Federal Rules of Civil Procedure. *See* Statement at 3. The TPS Consortium argues that the Federal Rules impose two separate obligations: (i) "produce documents as they are kept in the usual course of business or [] organize and label them to correspond to the categories in the request" and (ii) "…produce [electronically stored information as they are] ordinarily maintained or in a reasonably usable form…" *See* FED. R. CIV. P. 34(b)(2)(E)(i) and (ii). Producing electronic documents in a searchable database satisfies the usual course of business requirement; the TPS Consortium will have access to emails and other electronically-stored information as that information is kept in the ordinary course. And to the extent there is any doubt, the Debtors have agreed to go further and point the TPS Consortium to the specific places where documents responsive to their requests are located. Moreover, Rule 34(b)(2)(E) states expressly that a court's ruling controls how a party is to comply with its discovery obligations. This Court already has ruled on the proper format and scope for production and the Debtors are working to comply promptly and fully with the Court's direction.

5. In an email sent on August 13, 2010 and later during a meet and confer on August 16, 2010 (the "August 16 Meet and Confer"), the Debtors stated that they will provide the TPS Consortium with metadata, along with corresponding images, for the Debtors' documents previously provided in the document depository so that the documents can be reviewed, searched and organized in whatever review platform the TPS Consortium may choose.

During that meet and confer, the Debtors informed the TPS Consortium that production would take approximately three weeks. The Debtors and the TPS Consortium subsequently agreed upon the specifics of the production, including the image file format, metadata file format and eleven agreed-upon metadata fields.[2]

6. In a follow-up call on August 20, 2010, the Debtors explained the process required to process the image files and metadata and specified to the TPS Consortium that the production would be available by September 1, 2010—one week less than the Debtors' initial three-week estimate. Thus, the Debtors are complying fully with the Court's ruling. Rather than cooperate in the Debtors' good faith efforts to achieve a consensual resolution of the discovery issues, the TPS Consortium filed the Statement on the eve of hearing demanding immediate relief.

**The Debtors Have Agreed to Provide Metadata and Identify Responsive Documents**

7. In the interest of avoiding further disputes with the TPS Consortium and moving the Plan (as defined herein) towards confirmation, the Debtors also agreed during the August 16 Meet and Confer to go a step beyond the obligations imposed by the Court. Although the Court ruled that the Debtors only had to identify responsive documents corresponding to the TPS Consortium's requests or produce metadata, the Debtors agreed to provide the metadata and identify for the TPS Consortium specific documents, categories of documents, and/or custodians

---

[2] Although the TPS Consortium initially requested five fields of metadata, the Debtors agreed to produce the following eleven fields as part of the metadata file: (1) date created/sent date; (2) author/from; (3) recipients; (4) CC; (5) BCC; (6) File Name/Subject; (7) Begdoc; (8) Enddoc; (9) Begattach; (10) Endattach; and (11) document text. Thus, the TPS Consortium incorrectly claims that metadata "will provide only the authors, recipients, dates and Bates ranges of documents." Statement at 4.

who may have documents that are responsive to certain document requests.[3] Instead of embracing the Debtors' good faith offer and working with the Debtors to meet its discovery needs, the TPS Consortium misrepresents the Debtors' offer to seek a productive and efficient resolution of the discovery disputes as "mysterious guidance." Statement at 2. There is, of course, nothing "mysterious" about the Debtors' concrete offer to identify the documents that correspond to the TPS Consortium's discovery requests. Indeed, the Debtors are prepared to serve initial responses to certain agreed-upon confirmation-related requests before week's end.

8. The TPS Consortium's derisive characterization of the Debtors' offer to provide metadata and to identify responsive documents is another in a pattern of complaints about the format of the Debtors document production coming before the TPS Consortium has even looked at the information. As the Court may recall, in a previous submission (also filed at the eleventh hour) [D.I. 4863], the TPS Consortium complained about the manner in which the documents are produced in the document depository—calling it an "indiscriminate document dump"—even <u>before</u> they gained access to or looked at a single document in the depository. *See* D.I. 4952 at 6-7. Similarly, here, <u>before</u> having reviewed the metadata they requested (which is on schedule to be produced by next week), and before the Debtors have had sufficient time to identify responsive documents on a request-by-request basis, the TPS Consortium already apparently has concluded (erroneously) that all of this still "will not allow [them] to conduct any meaningful analysis of the production." Statement at 8.

---

[3] The Debtors have agreed to provide specific guidance with respect to request numbers 1-9, 12-18, 24-27 and 29 of the First Request of the TPS Consortium to the Debtors for Production of Documents, served on May 11, 2010 (the "<u>First RFPs</u>") and request numbers 1-15, 18-24, 28-31, 33, 37, 38, 42, and 43 of the Second Request of the TPS Consortium to the Debtors for Production of Documents, served on June 8, 2010 (the "<u>Second RFPs</u>") as those requests relate to the issue of ownership of the Trust Preferred Securities ("<u>TPS</u>") or the confirmation of the Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code (as the same may be amended or modified, the "<u>Plan</u>") as it relates to the TPS ("<u>TPS Ownership/Confirmation Issues</u>").

9.      To the contrary, the metadata will provide the full text of each document, which can be searched, as well as information on how the documents were stored in the ordinary course, including the file name, and attachment information so the TPS Consortium will have access to emails and attachments as they are kept in the ordinary course of business. Yet, before the TPS Consortium has even received the metadata they agreed upon, the TPS Consortium already claims that the metadata is useless. The TPS Consortium are not small-time investors, but sophisticated hedge funds represented by a major law firm, who are surely capable of running searches in a document review platform of their choosing once the images and agreed-upon metadata have been produced. A more reasonable approach would be for the TPS Consortium to let the Debtors complete the document production as agreed and then resolve any remaining issues when they are concrete rather than abstract.

10.     The TPS Consortium's complaints about the burdens of being furnished with too much data are the natural result of its extensive and very broad discovery requests, and a plan confirmation process in which the Debtors are responding to similar, but not identical requests, from numerous parties. In a series of two separate requests for production, the TPS Consortium served no less than seventy-three document requests on the Debtors, many containing multiple subparts and many of stunning breadth. *See, e.g.*, 2nd RFP No. 5 ("Any and all documents relating to the current ownership of the Trust Preferred Securities."), 2nd RFP No. 11 ("Any and all documents relating to the Series I, J, L, M, and N preferred shares in WMI.") and 2nd RFP No. 13 ("Any and all documents relating to the negotiation of the Proposed Global Settlement Agreement."). When the Debtors produced documents in the document depository in response to these broad requests, and similar requests from other potential confirmation objectors, the TPS Consortium complained that the volume of documents available was too

great. Now, after the Debtors have agreed to provide them with eleven agreed-upon searchable metadata fields and to identify documents responsive to their specific requests, the TPS Consortium still complains (without having reviewed the requested metadata) that the Debtors and JPMC "should not be allowed to engage in a document dump." Statement ¶ 12.

11. Because the TPS Consortium misinterprets the Court's ruling and Federal Rule 34(b)(2)(E), it comes as no surprise that all the cases cited in the Statement are inapposite or merely restate the Federal Rules. In these cases, the producing party either did not produce metadata and/or did not provide any guidance as to the documents produced.[4] Here, the Debtors have agreed to provide the metadata in full compliance with this Court's ruling and also to provide additional guidance pertaining to certain specific requests by identifying specific documents and/or categories of documents that correspond to certain requests and/or identifying custodians with relevant information related to such requests. This approach was expressly communicated to counsel for the TPS Consortium during the August 16 Meet and Confer.

---

[4] *See Graske v. Auto-Owners Ins. Co.*, 647 F. Supp. 2d 1105, 1109 (D. Neb. 2009) (ordering the defendant to provide more detailed responses because "the documents were not accompanied by *any indices or other tool* to guide plaintiffs to the responsive documents.") (emphasis added); *Residential Constructors v. Ace Property & Casualty Ins. Co.*, 2006 U.S. Dist. LEXIS 36943, *3-8 (D. Nev. June 5, 2006) (where the plaintiff had gathered documents from different entities and locations and assembled the documents together in boxes, the court required the plaintiff to provide a table of contents or index of what categories of document were in each box); *Stiller v. Arnold*, 167 F.R.D. 68, 71 (N.D. Ind. 1996) (where plaintiffs produced "7,000 pages of documents in no apparent order," the court held that such production did not meet the requirements of Rule 34); *Alford v. Aaron Rents, Inc.*, 2010 U.S. Dist. LEXIS 67790, *65 (D. Ill. May 17, 2010) (holding in part that the producing party was required to comply with Rule 34 by producing the documents either "as they are kept in the usual course of business or organize and label them corresponding with the request."); *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 407, 413 (S.D.N.Y. 2009) (where the SEC produced 1.7 million documents maintained in thirty-six separate Concordance databases—many of which use different metadata protocols, the court required the SEC to respond to the document request by providing the requesting party with the file folders that the SEC had created to organize the documents internally in response to the document requests); *Koninklijke Philips Electronics vs. KXD Tech.*, 2007 U.S. Dist. LEXIS 20205, *10, 19 (D. Nev. Mar. 20, 2007) (ordering defendant to organize and label the produced documents to correspond with the categories in the request; or in the alternative, if the documents were produced in the manner in which they were kept in the usual course of business, requiring the defendant to number the documents and/or provide an index of the documents that correspond to the particular requests for production to which they apply); *Pass & Seymour, Inc. v. Hubbell, Inc.*, 255 F.R.D. 331, 334, 337 (N.D.N.Y. 2008) (where the producing party "had provided literally no additional information regarding its search for documents," the court held that the requirements of Rule 34 had not been met).

12. If the TPS Consortium truly disagreed with the Debtors' proposal at the August 16 Meet and Confer, it could have filed the Statement the next day or shortly thereafter to have the motion heard on August 24 under proper notice pursuant to the Local Rules.[5] Instead, the TPS Consortium filed the Statement on the afternoon of August 23, 2010, less than twenty-four hours prior to the scheduled hearing before this Court.[6] This conduct is unfortunate, not only because of the costs it imposes on the estate and the burden on the Court in re-adjudicating matters that it already has heard, but because it requires the Debtors' counsel to redirect the very people who are responding to the TPS Consortium's discovery requests away from those efforts.

---

[5] Local Rule 7026-1(a) requires that (i) all motion papers under Fed. R. Bankr. P. 7026-7037 shall be filed and served so as to be received at least seven (7) days before the hearing date on such motion, and (ii) any objection shall be filed and served so as to be received at least one (1) business day before the hearing date. *See* Local Rule 7026-1.

[6] Previously, the TPS Consortium filed (1) a Motion to Compel two days before the May 19, 2010 hearing, providing the Debtors with less than 24 hours to respond [D.I. 3757] and (2) the Second Submission in further support of its Motion to Compel the Debtors to produce certain documents and a request to strike or modify the Confidentiality Order [D.I. 4863] on the afternoon of July 7, 2010, again providing the Debtors with less than 24 hours to respond before the July 8th hearing.

13. The Debtors have already agreed to comply with the Court's August 10 ruling and, moreover, to provide the TPS Consortium with information beyond that required by the ruling. This Statement thus seeks unnecessary relief that contradicts the Court's prior ruling on this issue and wastes the Court's and the Debtors' resources. Accordingly, the Debtors respectfully request that the Court deny the relief requested in the Statement in its entirety.

Dated: August 24, 2010
      Wilmington, Delaware

/s/ Mark D. Collins

Mark D. Collins (No. 2981)
Chun I. Jang (No. 4790)
Julie A. Finocchiaro (No. 5303)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Marcia L. Goldstein, Esq.
Brian S. Rosen, Esq.
John P. Mastando III, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys to the Debtors
and Debtors in Possession*