## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 08-12229 (MFW) |
| WASHINGTON MUTUAL, INC., *et al.*, | ) Jointly Administered |
| | ) |
| Debtors | ) **Hearing Date: Sept. 7, 2010 at 3:00 p.m.** |
| | ) **Objection Deadline: Sept. 3, 2010** |

### MOTION TO DEEM ALL REQUESTS ADMITTED, OR IN THE ALTERNATIVE, TO COMPEL DEBTORS TO ADEQUATELY RESPOND TO THE CONSORTIUM OF TRUST PREFERRED SECURITY HOLDERS FIRST SET OF REQUESTS FOR ADMISSION DIRECTED TO THE DEBTORS

The consortium of holders of interests subject to treatment under Class 19 of the Plan[1]

(the "TPS Consortium"[2]), by and through its undersigned counsel, hereby files this *Motion To*

*Deem All Requests Admitted, or in the Alternative, to Compel* (the "Motion") *Debtors To*

*Adequately Respond To The Consortium Of Trust Preferred Security Holders First Set Of*

*Requests for Admission* (the "Requests for Admission") *Directed To The Debtors*.  In support of

this Motion, the TPS Consortium states as follows:

### PRELIMINARY STATEMENT

1.        As the Court knows, the Debtors have refused to tell any party whether they

intend to assert "advice of counsel" or the substance of counsel's investigation to prove the

reasonableness of the proposed settlement.  Because Debtors refused to so inform the parties and

the Court, and because such reliance results in a privilege waiver, the TPS Consortium served the

---

[1]        Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Requests for Admission.

[2]        The TPS Consortium is made up of holders of interests (as set forth more fully in the group's Second Amended Rule 2019 statement [Docket No. 5143], as such may be further amended) proposed to be treated under Class 19 of the Debtors' Fifth Amended Plan (described in the Fifth Amended Plan and Fifth Amended Disclosure Statement as the "REIT Series").

Debtors with the Requests for Admission (attached hereto as <u>Exhibit A</u>), which consisted of

fifty-seven requests focused on (a) the issue of advice of counsel regarding the Proposed Global

Settlement Agreement and (b) who engaged in the negotiation of the settlement.  On July 29,

2010, the Debtors served TPS Consortium with *Debtors' Objections And Responses* (the

"<u>Debtors' Response</u>" or the "<u>Response</u>") *To The Consortium Of Trust Preferred Security*

*Holders' First Set Of Requests for Admission Directed To The Debtors* (attached hereto as

<u>Exhibit B</u>).

2.      Debtors' response is wholly inadequate because it is riddled with boilerplate

objections that cannot be sustained.  In particular, Debtors make fourteen general objections (the

"General Objections") to every request and further object to every request as "vague, ambiguous,

overbroad and unduly burdensome."[3]  Debtors further improperly assert the attorney-client

privilege and work-product doctrine claiming that general facts are privileged.

3.      Debtors' deficient responses to the TPS Consortium's Requests fall into three

basic categories:

  a.      Of the 57 Requests, the Debtors provided actual responses to five requests, although those responses purport to be subject to the same boilerplate objections asserted to all 57 Requests.  <u>See</u> Response Nos. 53-57.

  b.      The Debtors provided no answer to 40 requests, solely relying on improper and inapplicable boilerplate objections and improper assertions of privilege.  See Response Nos. 1-6, 19-52.

  c.      For the remaining twelve requests, the Debtors provided non-responsive, evasive answers.  <u>See</u> Response Nos. 7-18.  For example, Request for Admission No. 9 states that "[i]n connection with the Proposed Global Settlement Agreement, you [the Debtors] received legal memoranda from Counsel on the merits of the claims raised by you against JPMC or any other non-Debtor."  <u>See</u> Requests for Admission, p. 6.  After a litany of non-specific objections, including a privilege objection, the Debtors limited their admission to the following evasive response:  "the Debtors

---

[3]      Without explanation, Debtors omitted the "unduly burdensome" objection from the Responses to Requests 7 and 8, but at the same time, incorporate the objections to other responses.

admit that throughout the course of these chapter 11 cases, the Debtors received memoranda from Counsel." See Debtors' Response, p. 8.

4.        Debtors' responses, or rather the lack of responses, based on boilerplate and inappropriate objections are plainly improper.  As such, the TPS Consortium requests that this Court to deem the fifty-two responses to the Requests For Admission that were answered inadequately, see Responses No. 1-52, to be admitted pursuant to Rule 36(a)(6) of the Federal Rules of Civil Procedure.  In the alternative, the TPS Consortium requests that the Debtors be ordered to actually respond to the Requests for Admission 1-52 by September 14, 2010, and to do so in a complete and non-evasive manner.  Additionally, pursuant to Fed. R. Civ. P. 37(a)(5), made applicable through Fed. R. Bankr. P. 7037 and 9014, Debtors should be required to pay the TPS Consortium's expenses of bringing this Motion.

## ARGUMENT

**A.        The Debtors improperly refused to answer most of the Requests for Admission.**

5.        Rule 7036 of the Federal Rules of Bankruptcy Procedure[4] requires that the Debtors admit or deny the Requests for Admission subject to the Debtors' objections.  Fed. R. Civ. P. 36(a)(4).  However, Debtors completely refused to answer 40 requests, and did not provide legitimate bases for failing to do so.  See Response Nos. 1-6, 19-52.  Instead, the Debtors look to hide behind boilerplate objections and improper assertions of privilege.

6.        First, the Debtors object to every Request for Admission citing the attorney-client privilege and/or the work-product doctrine.  None of the requests seek to have the Debtors disclose privileged information; the requests merely touch on certain foundational issues regarding whether there has been a waiver of any privilege.  Information such as the general subject matter of communications is not privileged.  In objecting to every single request, Debtors

---

[4]        Rules 7036 and 9014 of the Federal Rules of Bankruptcy Procedure incorporates the provisions of Fed. R. Civ. P. 36 without change.  Thus, references will be made to Fed. R. Civ. P. 36.

have ignored the distinction between the TPS Consortium's permissible requests seeking non-privileged information, from other requests that might seek the content of privileged communications.

7.     Second, the Debtors present a litany of non-specific, boilerplate objections, that are unsupportable on their face.

8.     Third, Debtors object to each Request for Admission because "such information can be obtained through less burdensome means or through more accessible sources."  Similarly, the Debtors object to each Request for Admission on the grounds that the Debtors have made available an electronic document depository (the "Depository").  Claiming that the facts sought to be admitted may allegedly be obtained by other means is frivolous because admissions are intended to narrow issues in dispute, a purpose that would be frustrated if responders could require the requesting party to search elsewhere for the answer.  Furthermore, Debtors' claim that it would be less burdensome to find the answers in the depository is absurd because the requests merely require Debtors to write one word responses:  admit or deny.

9.     Fourth, the Debtors object to each Request for Admission to the extent they call for legal conclusions.  The Requests asking whether the Debtors relied on advice of counsel are properly stated questions of fact that must be answered.

10.     Because the Debtors objections are unsupportable, the Debtors should be compelled to provide responses to the forty unanswered Requests for Admission.  See United States v. New Orleans Chapter, etc., 41 F.R.D. 33, 34 (E.D. La. 1966) ("The only permissible responses to requests are an admission, a denial or a statement that the contention cannot honestly be either admitted or denied").

1. **The Debtors' constant reliance on the attorney-client privilege and work-product doctrine is unfounded.**

11.     The Debtors ignore the basic principle that even when an underlying communication is protected, the attorney-client privilege does not extend to the general nature of the privileged matter, the occasion and circumstances of any communications, or the actual circumstances of the attorney-client privilege.  See Valenti v. Allstate Ins. Co., 243 F. Supp. 2d 200, 218, 220 (M.D. Pa. 2003) (redactions in billing invoices of such things as "status," "status of investigation," or "results of investigation" are improper because "[n]owhere in those descriptions does it describe *what* the status is, the attorney's opinions, mental impressions, or strategies relating to that status.  Redactions of this nature, under the guise of 'privilege' are not only perplexing, but costly, inefficient and time consuming for the court to review.").  The Debtors improperly invoke privilege and refuse to answer Requests for Admission that simply inquire whether Debtors relied on advice of counsel and *not the actual advice given*.  See Response Nos. 1-52, 55-56.

12.     Based on the Debtors' Response, the mere mention of Debtors' counsel invoked an attorney-client privilege as the Debtors objected on privilege grounds (as well as every other boilerplate objection) to the following, straight forward, Request for Admission:

> **Request for Admission No. 55**
>
> Counsel for the Debtors, Weil, Gotshal & Manges LLP, et al., were the sole negotiators of the Proposed Global Settlement Agreement for the Debtors.
>
> **Response to Request for Admission No. 55**
>
> The Debtors incorporate each of the General Objections by reference as if fully set forth herein. The Debtors also object to this Request on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome. The Debtors further object to this Request to the extent such information may be obtained through less burdensome means.  Further, the Debtors also object to this Request to the extent that it calls for information protected from disclosure by the attorney-client privilege and/or work-product

doctrine.  Subject to and without waiving any of the foregoing General and Specific Objections asserted herein, the Debtors deny Request No. 55.

Response No. 55.

13.    In objecting to virtually every Request on the basis of privilege, the Debtors fail to understand that the "protection of the privilege extends only to *communications* and not to facts.  A fact is one thing and a communication concerning that fact is an entirely different thing."  Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994) (emphasis in original) (citations and quotations omitted).  Whether Debtors relied on advice of counsel is a foundational question that does not ask for the underlying privileged communication and therefore does not invoke the attorney-client privilege.  See, e.g., Refuse & Envtl. Sys., Inc. v. Industrial Servs. of Am., 120 F.R.D. 8, 10 (D. Mass. 1988) (finding that the attorney-client privilege does not apply to the fact that an attorney was consulted).

14.    In Constand v. Cosby, 232 F.R.D. 494 (E.D. Pa. 2006), the plaintiff was required to answer whether she had been given legal advice.  Whether her answer was affirmative or negative, she was not required to disclose what that advice was.  See id. at 503 ("[T]he fact of advice is discoverable").  Here, similarly, the Debtors are being asked whether they obtained advice and whether they relied on such advice; the TPS Consortium does not seek the content of any privileged communication.  See Nicholson v. Great Lakes Towing Co., 2008 U.S. Dist. LEXIS 57559, * 5 (E.D. Mich. July 29, 2008) ("First the very fact that legal advice was either sought or given is not in itself privileged…'Did any of these lawyers whom you talked to give you any advice?' merely requests a fact and would not reveal any client confidences in violation of the privilege") (citations omitted); see also Synalloy Corp. v. Gray, 142 F.R.D. 266, 268 (D. Del. 1992) ("[The privilege] does not protect disclosure of the underlying facts by those who communicated with the attorney") (citations and quotations omitted).

15.     Further, the general subject matter of communications with counsel is precisely

the information that must be provided in a privilege log pursuant to accordance with Fed. R. Civ.

P. 26(b)(5).  A "proper privilege log must include, for each withheld document, the date of the

document, the name of its author, the name of its recipient, the names of all people given copies

of the document, the subject of the document, and the privilege or privileges asserted."  Torres v.

Kuzniasz, 936 F. Supp. 1201, 1208 (D.N.J. 1996); see also WebXchange Inc. v. Dell Inc., 264

F.R.D. 123, 126 (D. Del. 2010) ("When a party withholds otherwise discoverable information by

claiming that the information is privileged, the party must…describe the nature of the

documents, communications, or tangible things not produced or disclosed").  Such information

must be provided in a log precisely because it is not privileged.

16.     Despite their objections, Debtors have acknowledged that such subject matter is

not privileged.  During the parties' meet and confer conference, Debtors' counsel offered to

provide a log identifying the legal memoranda that were shared with the Debtors.[5]  If Debtors

were to provide such a log (which the Rules require anyway), Debtors would also disclose the

general subject matter of the memoranda, which they implicitly agree is not privileged.  Just as

that information is not privileged in the form of a log, it is also not privileged in the form of a

written response admitting or denying the Requests.

17.     What is clear then, is that rather than believing that the information is actually

privileged, Debtors are attempting to delay telling the parties and the Court that they intend to

rely on the advice of counsel to prove the propriety of the settlement. By doing so, they are

attempting to avoid disclosing the waiver of privilege and preventing the parties-in-interest from

---

[5]     While the TPS Consortium is entitled to a privilege log under Federal Rule 26(b)(5), such a log is
not a substitute for an appropriate response to requests for admission.

conducting discovery related to that advice.  However, it is too late for Debtors to withhold such

a decision.

18.    When the advice of counsel is placed at issue, it is well established that any

privilege regarding that advice is waived.  Rhone-Poulenc Rorer v. Home Indem. Co., 32 F.3d

851, 863 (3d Cir. 1994).  In the present case, the investigation and advice of counsel is

inextricably tied to the Debtors' claim that the settlement is reasonable.  Debtors have already

represented that:

> After numerous months of litigation and careful analysis of the merits of their
> claims and the claims asserted against them by JPMC, the FDIC Receiver,
> and FDIC Corporate, among others, the Debtors have concluded that,
> because of the substantial expense of litigating the issues associated with
> their claims, the length of time necessary to resolve each of the issues
> presented in the pending litigation, the complexity and uncertainty involved
> and the corresponding disruption to their efforts to make distributions for the
> benefit of their creditors, it is in their best interests, and the best interests of
> their stakeholders, to resolve their disputes with JPMC, the FDIC Receiver,
> and FDIC Corporate, and related matters on the terms set forth in the Global
> Settlement Agreement…

Disclosure Statement for the Fifth Amended Plan, p. 8 [Docket No. 4851].  Further, Debtors state

"that the benefits of settling …far outweigh any gains likely to be achieved by continuing

litigation … particularly in light of the expense of litigation and the risks and uncertainties

associated therewith."  Id., p. 9.

19.    The only way the Debtors can avoid a waiver is if they are prepared to state that

their conclusions regarding the settlement were based solely on some analysis and review that in

no way involved counsel, any work counsel had performed to date, or any advice counsel had

given based on that work.  See Home Indem. Co. v. Lane Powell Moss & Miller, 43 F.3d 1322,

1327 (9th Cir. 1995) ("[I]f [the party] attempted to justify its settlement on the basis of its

counsel's recommendations, [the] attorney-client privilege would be waived.  Conversely, so

long as the reasonableness of the settlement amount was defended at trial on objective terms apart from the advice of counsel, the attorney-client privilege would be protected").

20.    Here, given that the entire reorganization is predicated on a settlement agreement that resolves litigation claims involving specific assets, and as stated in the Disclosure Statement, is based on careful analysis of competing claims (which must have been conducted by counsel), it is inconceivable that Debtors can prove the reasonableness of the settlement without explicitly, or at least implicitly, relying on the advice of counsel.  Courts have recognized that, often times, the nature of the dispute necessarily involve the implicit reliance on the advice of counsel.  For example, In re: Human Tissue Prods. Liab. Litig. involved a defendant who raised a good faith immunity defense in which the defendant had to show that it did not or should not have known that certain consent forms had been falsified.  255 F.R.D. 151, 160-161 (D.N.J. 2008).  Because the defendant hired a law firm to investigate the drafter of the consent forms, the court determined that the defendant implicitly waived the attorney-client privilege.  "Defendant cannot on the one hand implicitly rely on the fruits of this background investigation as evidence that [the defendant] exercised its diligence and thus had no reasonable basis of knowing that the consent forms submitted…were fabricated, while at the same time depriving Plaintiffs of access to this information on the basis of privilege."  Id. at 161.

21.    Similarly, in Gab Business Services, Inc. v. Syndicate 627, the plaintiff claims adjuster challenged the reasonableness of a settlement between an insurer and the insured and the defendant-insurer had to prove that the settlement was reasonable.  809 F.2d 755, 761 (11th Cir. 1987).  The Eleventh Circuit found that the defendant implicitly waived the attorney-client privilege when it injected into the litigation an issue that "requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct."  See id. at 762.  The

reasonableness of the settlement went to the "very <u>heart</u> of the litigation" and therefore the defendant could not hide behind the privilege and also assert the reasonableness of the settlement based on privileged communications.  <u>See</u> <u>id</u>. (emphasis in original).

22.     Like the defendants in <u>Human Tissue Prods.</u> and <u>Gab Business Services</u>, the Debtors are putting the advice of counsel at issue because the privileged information is at the very heart of the litigation and necessary to resolve the precise issue that the debtor must prove. <u>See</u> <u>Potomac Electric Power Co. v. California Union Ins. Co.</u>, 136 F.R.D. 1, 4 (D.D.C. 1990) (defendants are entitled to inspect otherwise privileged documents where insured brought claims against insurers seeking to recover clean-up costs and defense costs); <u>Byers v. Burleson</u>, 100 F.R.D. 436, 440 (D.D.C. 1983) (privilege waived for information defendants sought in malpractice action, which was "necessary to resolve the precise statute of limitations issue which the plaintiff has interjected into the case"); <u>Pitney-Bowes, Inc. v. Mestre</u>, 86 F.R.D. 444, 447 (S.D. Fla. 1980) (discovery is to be allowed where the plaintiff had "placed in issue the very soul of this litigation the intent of the parties with regard to construction of certain terms of the Agreements" and there is "<u>no other</u> apparent source of direct proof going to the issue at hand.")(emphasis added); <u>Charlotte Motor Speedway, Inc. v. International Insurance Co.</u>, 125 F.R.D. 127, 131 (M.D.N.C. 1989) ("the discovery of the nature of the activities of counsel goes to whether [the insured] met its obligations under the policy in constructing the settlement agreement and whether it reached the agreement in good faith."); <u>Sealy Mattress Co. of New Jersey v. Sealy Inc.</u>, 1987 Del. Ch. LEXIS 451, *17 (Del. Ch. June 19, 1987) (ordering that if the attorney is the only one competent to testify as to the reason for postponing a shareholders' meeting, then the attorney-client privilege must be waived to prove the point).

23.     Debtors have time and again represented to this Court, including in the

Disclosure Statement, that any and all claims have been investigated thoroughly before any

settlement dialogue began.  That investigation and analysis of claims must have been conducted

by counsel.  Accordingly, any suggestion that the advice of counsel is not implicated such that

the admissions can be ignored is not well founded.

**2.      The Debtors' various boilerplate objections are unsupportable.**

24.     In response to every single request, the Debtors set forth the same litany of non-

specific objections, which cannot be sustained.  For example, the Debtors objected to a number

of simple Requests asking, for example "In connection with the Proposed Global Settlement

Agreement, you communicated with Special Litigation And Conflicts Counsel" and "Counsel for

the Debtors, Weil, Gotshal & Manges LLP, et al., were the sole negotiators of the Proposed

Global Settlement Agreement for the Debtors", claiming that those, and every other request, are

"vague, ambiguous, overbroad, and unduly burdensome."  See Response Nos. 8, 55.

25.     The Debtors' boilerplate objections that every request purportedly is "vague,

ambiguous, overbroad, and unduly burdensome" cannot be upheld.  If a party objects to a

request, the evidentiary reasoning behind the objection must be particularized.  See Caruso v.

Coleman Co., 1995 U.S. Dist. LEXIS 7934, * 2-3 (E.D. Pa. June 7, 1995) ("If an objection [to a

request for admission] is made, the rule requires that the responding party shall set forth the

reasons for the objection").  The Debtors must specifically demonstrate how each Request is

vague, overly broad, or unduly burdensome.  See Int'l Paper Co. v. Fibreboard Corp., 63 F.R.D.

88, 94 (D. Del. 1974) ("An improperly asserted claim of privilege is no claim of privilege at

all").  Without stating specific grounds or reasoning, the Debtors' conclusory objections cannot

be upheld.  See Velocity Int'l, Inc. v. Celerity Healthcare Solutions, Inc., 2010 U.S. Dist. LEXIS

53508, * 6 (W.D. Pa. June 1, 2010) ("Courts have generally looked disapprovingly on responses stating that an inquiry is 'overly broad,' 'unduly burdensome,' 'vague,' 'ambiguous,' or 'oppressive' or 'irrelevant' unless the party has explained its reasoning for that description"); Wagner v. St. Paul Fire & Marine Ins. Co., 238 F.R.D. 418, 424 (N.D. W. Va. 2006) (statement that request was "overly broad, burdensome, oppressive, and irrelevant" was not adequate to "voice a successful objection").

26.     The court in Velocity granted the defendant's motion to compel because the plaintiff had not offered any specific support for its statements that the interrogatories and requests for production were overly broad and unduly burdensome.  Similar to the plaintiff in Velocity, the Debtors here did not particularize any of their objections.  Therefore, this Court should compel the Debtors to respond fully to the Requests for Admission rather than permitting the Debtors to hide behind boilerplate, improperly general objections.

**3.     The Debtors' objections that the responses could have been obtained through other sources are improper objections.**

27.     Rule 36 of the Federal Rules of Civil Procedure provides, in relevant part, that "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it."  Two of the Debtors' General Objections clearly fail to state any sufficient reason for a failure to admit or deny the Requests for Admission:

> (G) The Debtors object to each Request to the extent such information can be obtained through less burdensome means or through more accessible sources…
>
> (K) The Debtors object to the Request on the grounds that the Debtors believe that the documents that have been made available in an electronic document depository (the "Depository" or "Document Depository") as described at the meet and confer held on June 10, 2010 and at the omnibus

hearing on June 17, 2010, in addition to any production that has occurred to date, are sufficient to respond to the Request. [6]

28.     The fact that information contained in a request may be obtained from another source is immaterial to whether Debtors must respond to requests for admission.

> Rule 36 serves two vital purposes, both of which are designed to reduce trial time.  Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be.

Fed. R. Civ. P. 36, Advisory Committee Notes, 1970 Amendment; see McNeil v. AT&T Universal Card, 192 F.R.D. 492, 494 n.4 (E.D. Pa. 2000) (admissions carry more weight than witness statements, deposition testimony and interrogatories because they cannot be countered with other evidence), citing Airco v. Teamsters Health and Welfare Pension Fund of Philadelphia and Vicinity, 850 F.2d 1028, 1036 (3d Cir. 1988).  Refusing to respond to admissions because information may be obtained from a document production, which consists of millions of documents, would defeat the purpose of admissions.  Much like the express prohibition in Rule 36 of objections based "on the ground that the request presents a genuine issue for trial," Debtors cannot be allowed to avoid the purpose of requests for admission by stating that the information might be found elsewhere.

29.     Moreover, Debtors' claim that responding to the requests is more burdensome than finding the answer by some other means is absurd.  Providing a simple, one-word response of either "admit" or "deny" is clearly less burdensome than requiring the TPS Consortium to search through the millions of documents placed in the document depository for such answers.

---

[6]     Debtors repeat similar objections to Requests 55-57, which, in essence, ask Debtors to admit or deny which of Debtors' counsel, Weil Gotshal & Manges or Quinn Emanuel Urquhart & Sullivan, engaged in settlement negotiations on behalf of Debtors.  Even though Debtors insist that the answer to these requests should be found elsewhere, those are three of the five requests that Debtors' actually answered, which perfectly demonstrates the ridiculous nature of the objection.

**4.**     **The Debtors' objection that certain Requests for Admission call for legal conclusions is improper under Rule 36.**

30.     The Debtors' objections in response to Requests for Admission No. 37-40, 45-48,[7] in which the Debtors claim the requests call for legal conclusions, should be overruled. Requests 37-40 and 45-48 essentially involve whether the Debtors relied on counsel in reaching certain conclusions.  The Requests do not seek to have Debtors admit, for example, the ultimate conclusion that the settlement is in the best interests of the Debtors' estates, but rather, admit that Debtors reached that determination based on the advice of counsel.  See Request No. 38.  That is a factual question, not a legal conclusion.  At most, these Requests involve mixed questions of fact and law, which must be answered.  Rule 36 expressly permits requests relating to "facts, the application of law to fact, or opinions about either."  Fed. R. Civ. P. 36(a)(1); see Petrunich v. Sun Bldg. Sys., 2006 WL 2788208, * 4 (M.D. Pa. Sept. 26, 2006) ("Requests for admission…are not objectionable even if they require opinions or conclusions of law, as long as the legal conclusions relate to the facts of the case.") (citations and quotations omitted).

31.     In Ghazerian v. United States, 1991 U.S. Dist. LEXIS 2608, * 2-3 (E.D. Pa. Mar. 4, 1991), a case involving a slip and fall, the plaintiff inquired whether the defendant was put on notice of the unsafe conditions where the accident at issue occurred.  In overruling the defendant's objection to the request, the court noted that the requests related entirely to a factual issue (i.e. whether the defendant was on notice of a dangerous condition by virtue of prior accidents), and did not call for the conclusion of an ultimate issue.  Id. at * 5.  As the court noted:

---

[7]     In the Debtors' objections based on legal conclusions, they object to some Requests for Admission that quote sections of the Disclosure Statement while not objecting to other Requests for Admission that quote sections of the Disclosure Statement.  See Response Nos. 41-44. Additionally, several requests ask Debtors to admit whether they relied on the advice of counsel in making particular decisions, but Debtors do not claim that those seek legal conclusions.  See Response Nos. 1-6.  Debtors provide no explanation or reason for such inconsistency.

> [A] change made by the 1970 Amendments resolve[d] conflicts in the court decisions as to whether a request to admit matters of "opinion" and matters involving "mixed law and fact" is proper under the Rule. "Not only is it difficult as a practical matter to separate fact from opinion . . . but an admission on a matter of opinion may facilitate proof or narrow the issues or both. An admission of a matter involving the application of law to fact, may, in a given case, even more clearly narrow the issues. For example, an admission that an employee acted in the scope of his employment may remove a major issue from the trial. In McSparran v. Hanigan, 225 F. Supp. 628 (E.D. Pa. 1963), plaintiff admitted that "the premises on which said accident occurred, were occupied or under the control" of one of the defendants. McSparran, 225 F. Supp. at 636. This admission, involving law as well as fact, removed one of the issues from the lawsuit and thereby reduced the proof required at trial."  48 F.R.D. at 532.

Ghazerian, 1991 U.S. Dist. LEXIS 2608, * 5-6; contrast Tulip Computers Int'l B.V. v. Dell Computer Corp., 210 F.R.D. 100, 108 (D. Del. 2002) (requests seeking admissions regarding the validity of a patent and whether products or processes infringed patent are pure legal conclusions, and therefore, improper).

32.     Debtors are not being asked to draw conclusions regarding the ultimate issues at hand; instead, they are being asked to acknowledge the factual issue of whether they received and/or relied on advice of counsel in reaching particular conclusions that are asserted in the Disclosure Statement.  Proper answers merely narrows issues that would be presented at Confirmation.  Thus, the Debtors' should be required to respond to Requests 37-40, and 45-48.

**B.     Debtors should be required, at a minimum, to amend their nonresponsive and evasive answers, and provide answers that truly are responsive to the requests.**

33.     The Debtors provided nonresponsive, evasive answers to twelve Requests for Admission.  See Response Nos. 7-18.  Under Rules 36(a)(4) and 36(a)(6) of the Federal Rules of Civil Procedure, the answers to these Requests for Admission are insufficient.  "Answers [to requested admissions] that appear to be non-specific, evasive, ambiguous and appear to go to the accuracy of the requested admissions rather than the 'essential truth' contained therein are impermissible and must be amended."  Caruso v. Coleman Co., 1995 U.S. Dist. LEXIS 7934, *

10 (E.D. Pa. June 7, 1995); see also Guinan v. A.I. duPont Hosp. for Children, 2008 U.S. Dist. LEXIS 27798, * 5 (E.D. Pa. Apr. 7, 2008) ("The reviewing court should not allow the responding party to make 'hair-splitting distinctions' that frustrate the purpose of the Request").

34.     The Debtors' responses to Requests for Admission No. 7-18 are clearly evasive. For example, Request for Admission No. 9 states that "[i]n connection with the Proposed Global Settlement Agreement, you [the Debtors] received legal memoranda from Counsel on the merits of the claims raised by you against JPMC or any other non-Debtor." Request for Admission No. 9 (emphasis added). The Debtors state that they "admit that throughout the course of these chapter 11 cases, the Debtors received memoranda from Counsel." Response No. 9. Such an answer does not meet the substance of the Request. Requests for Admission 7-18 "are straightforward, and are deserving of a straightforward answer." Guinan, 2008 U.S. Dist. LEXIS 27798 at * 6.

35.     In Guinan, the defendant requested an admission as to whether the plaintiff had declined to have her child participate in medical monitoring at a specific children's hospital. See id. at * 13. The plaintiff responded that "it is admitted only that an offer of monitoring for this unapproved, investigational device was offered to the parents of Molly Guinan only *after* the FDA investigation of Nemours DE, and as part of defendant Hospital's responses to the FDA investigation and recommendations." Id. (emphasis in original). There, the court granted the motion to compel after determining that "Plaintiff's response is evasive and does not answer a simple and a direct question." See id. Similarly, here, the Debtors did not answer the simple and direct Requests for Admission No. 7-18 and, therefore, the Debtors must amend their responses to admit, deny, or to specify which part of each Request for Admission is admitted or denied in compliance with Rule 36(a)(4) of the Federal Rules of Civil Procedure.

## CONCLUSION

WHEREFORE, the TPS Consortium respectfully requests that the Court deem the fifty-two responses to the Requests For Admission that were answered inadequately, see Responses No. 1-52, to be admitted pursuant to Rule 36(a)(6) of the Federal Rules of Civil Procedure.  In the alternative, The TPS Consortium requests that the Court overrule the Debtors' objections as discussed above, and compel the Debtors to revise the Debtors' Response by September 14, 2010 and to do so by: (a) providing responses to Requests for Admission No. 1-6, 19-52; and (b) amending the responses to Requests for Admission No. 7-18 in compliance with Rules 36(a)(4) and 36(a)(6) of the Federal Rules of Civil Procedure.  Lastly, the TPS Consortium requests that the Court order Debtors to pay the expenses of bringing this Motion, in accordance with Fed. R. Civ. P. 37(a)(5), made applicable through Fed. R. Bankr. P. 7037 and 9014.

Dated:  Wilmington, Delaware
      August 30, 2010

Respectfully submitted,

**CAMPBELL & LEVINE LLC**

/s/ Kathleen Campbell Davis
Marla Rosoff Eskin, Esq. (DE 2989)
Bernard G. Conaway, Esq. (DE 2856)
Kathleen Campbell Davis, Esq. (DE 4229)
800 North King Street, Suite 300
Wilmington, DE 19809
(302) 426-1900
(302) 426-9947 (fax)

– and –

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Sigmund Wissner-Gross, Esq.
Seven Times Square
New York, NY 10036
(212) 209-4800
(212) 209-4801 (fax)

– and –

James W. Stoll, Esq.
Jeremy B. Coffey, Esq.
Daniel J. Brown, Esq.
One Financial Center
Boston, MA  02111
(617) 856-8200
(617) 856-8201 (fax)

*Counsel for the TPS Consortium*

# 1765436 v2 -