# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In re:                                           Chapter 11

WASHINGTON MUTUAL, INC., et al.,                 Case No. 08-12229 (MFW)

    Debtors.                               Jointly Administered

                                                         re: Docket: 5286, 5359, 5377

                                 Hearing Date: September 7, 2010 at 3:00 p.m.

                                 Objection Deadline: August 30, 2010 at 4:00 p.m.

## SHAREHOLDER'S REPLY TO DEBTORS REPLY TO THE OBJECTION TO THE MOTION OF WASHINGTON MUTUAL, INC. PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BAKRUPTCY RULE 9019 FOR APPROVAL OF SETTLEMENTS WITH THE INTERNAL REVENUE SERVICE

Philipp Schnabel, as a Shareholder of Washington Mutual Inc (WMI), respectfully submits this Reply (The "Shareholder's Reply") to the Reply by the Debtors (WMI) (The "Reply"), to the Objection by this Shareholder (The "Shareholder Objection"), to the entry of the Motion (The "Motion") of Washington Mutual, Inc. Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 for Approval of Settlements with the Internal Revenue Service (IRS), (The Motion of Debtor) granting the Debtor the approval of Settlement with the IRS.

The Debtor's "Reply" states that "The Motion does not seek approval of the Global Settlement Agreement." However, the Debtor's proposed "Motion" relies and refers to the Global Settlement agreement *six (6) times* in making the "Motion" request. The "Motion" clearly appears to be based on a Global Settlement Agreement.

The "Reply" states that footnote 3 of the "Motion" that "Any tax refunds and payments that WMI receives pursuant to the Settlements will be allocated and shared among WMI, the Federal Deposit Insurance Corporation, as receiver, and JPMorgan Chase and Co., pursuant to the terms of that certain Settlement Agreement, dated May 21, 2010 (*subject [to] Bankruptcy Court approval of the Debtors' plan of reorganization which incorporates the Settlement Agreement)*" (emphasis added).

Shareholder Reply                                     1                                     09/02/2010

The "Motion" relies on a Global Settlement agreement which has already been noted, in public by the Debtor's counsel, as apparently tenuous, also by a signing party stating the fragility, and has now additionally reached a milestone where it can be cancelled by any Global Settlement Agreement signing party at any time.

For clarity:

A Global Settlement Agreement, which based on Debtor's Counsel's own words (Exhibit A – 3/12/2010) – "Rosen said the deal, which could result in the dismissal of three lawsuits pitting WaMu, JPMorgan and the FDIC against one another, also is contingent on the resolution of claims from holders of billions of dollars of bonds issued by Washington Mutual Bank, or WMB. Without the bondholders' approval, or the disallowance of their claims in their entirety, *the settlement could turn to "vapor,"* Rosen said outside court." (emphasis added)

A Global Settlement Agreement, which the FDIC's Counsel stated in court, on the record, on 7/20/2010 – "Thomas Califano of DLA Piper, representing the FDIC - "Now the settlement is fine, we said in our papers it's August 30th. *I can't tell you how long we would continue to extend the settlement.* It's not going to be an open-ended extension your Honor, I don't know what it is. " "… And remember your Honor, this was not a deal that was done easily. Months of negotiation. *The deal almost fell out of bed several times.*" (emphasis added)

Lastly, the Global Settlement Agreement has reached a critical stage, of which <u>any party</u> to the Global Settlement Agreement can <u>now</u> cause that agreement to become null and void with a single unilateral decision.

From the 5th Amended Plan of Reorganization - "ARTICLE VII CLOSING AND TERMINATION", Section 7.3. Termination of Agreement. This Agreement *may be terminated by any Party*, at their sole option and discretion, in the event that (a) either the FDIC Board or the Board of Directors of WMI shall have failed to approve this Agreement by May 21,2010, (b) any other Party hereto materially breaches any of the covenants set forth in Article V hereof or any of its other undertakings in this Agreement, *or (c) the Confirmation Order is not entered by the Bankruptcy Court on or prior to August 31,2010.*" (emphasis added)


The "Shareholder Objection" was, and is, in opposition to the entering of the "Motion", which is founded on a Global Settlement Agreement, the terms of which have yet to receive "Bankruptcy Court approval". And, in fact, this Global Settlement Agreement has been and continues to be on **shaky ground**. As noted by the Debtor's Counsel, the FDIC, and the recent passing of time.

This is **simple** logic and of great concern to this shareholder. The court should not enter approval of the "Motion", because it is based on a Global Settlement Agreement.

The "Reply" states: "Mr. Schnabel's concerns are more appropriately raised in the context of confirmation of the Plan of Reorganization and approval of the Global Settlement Agreement and, accordingly, should be disregarded here."

Whether the Debtors feel it is "more appropriately" raised later, is not the issue of the original "Shareholder's Objection." The Shareholder reiterates that the Debtors "Motion" should be denied, and the suggestion that the "Shareholder's Objection" be "disregarded" is unfounded as the Debtors **failed to respond to a single concern** raised by the "Shareholder's Objection".

1) The "Motion" appears to attempt to <u>combine</u> the returning of IRS refunds and the subsequent disbursal of those refunds, in a single motion...depriv[ing] the shareholders - the owners of WMI - <u>due process</u> of the proper resolution of these tax refunds.

2) Additionally, the "Motion" is <u>not</u> based upon, and <u>does not</u> contain language or facts that have even been disclosed in the Disclosure Statement (DS).

3) The "Shareholder Objection" objects to the "Motion" and requests that all refunds be returned to the Estate. Then at the appropriate time, Adversary Proceedings may be commenced to place claim to the various refunds and properly argued before the court.

4) The "Shareholder Objection" notes that WMI has already executed the I.R.C. §382 protection to save the carry-forwards of IRS refunds.

5) The "Shareholder Objection" identifies the separations between WMB (as seized by the FDIC) and WMB Stock (as continued to be held by the Debtors).

6) The "Shareholder Objection" identifies the tax sharing agreement that exists within the WaMu group, and notes that both JPMorgan and the FDIC are "not in the WaMu Group", nor did they buy WMB stock currently held by WMI.

7) The "Shareholder Objection" notes that the IRS, on June 29th, 2010, states "The Service (IRS) expresses no opinion who is ultimately entitled to any resulting refunds."

8) The "Shareholder Objection" notes that the Debtors themselves filed in District Court (Case 1:09-cv-00533-RMC, Docket 65) that *"WMI paid taxes due and owing by the consolidated tax group, including, amounts due and owing by WMB.... And thus WMI has asserted a claim against the FDIC for the amount of those tax payments."*

9) The "Shareholder Objection" references cases in the Freemont General Corporation, Signature Group Holdings, Team Financial, as well as the FDIC's own Bid Process documents – all of which identify group "Tax" refunds as assets of the Estate.

10) The "Shareholder Objection" notes that The WaMu Tax group has significant NOL carry-forwards as well, and related gain or loss, of which none of it has been disclosed in the Disclosure Statement.

In short, the "Reply" by the Debtors <u>simply fails</u> to address <u>a single one</u> of the fundamental issues presented.

The "Shareholder Objection" notes that <u>this issue is clearly complex, of a massive billion-dollar magnitude, and resolution should **not be buried within a motion**, without claims presented, docketed, argued, and ruled on.</u> (emphasis added)

For such a magnitude, in billions, of Tax Refunds, this Shareholder respectfully asks that the Debtors simply justify their "Motion" and address the flaws in the "Motion", reiterated here in the "Shareholder's Reply", and the Debtors should <u>provide answers</u> to the concerns raised in the "Shareholder's Objection". Or correspondingly, the court should deny the Debtor's "Motion".

It is the prayer and hope of this shareholder, on behalf of other similarly affected shareholders, that justice will be served by the proper return of the tax refunds, **first, to the Estate**, and then subsequently the proper and just processing of claims against the Estate.


Signature: ___/s/ Philipp Schnabel_____

Philipp Schnabel, date 9/2/2010
Shareholder of Washington Mutual Inc.
Steinstrasse 6
01454 Radeberg
Germany

# **EXHIBIT A**



OregonLive.com
Everything Oregon

# WaMu tentatively settles with JPMorgan, FDIC

Published: Friday, March 12, 2010, 2:27 PM    Updated: Friday, March 12, 2010, 2:42 PM

 The Associated Press



The Associated Press

Washington Mutual's creditors have filed billions of dollars in claims in the bankruptcy case.

WILMINGTON, Del. -- Washington Mutual Inc. has tentatively resolved disputes with JPMorgan Chase & Co. and the Federal Deposit Insurance Corp. over some $4 billion at issue in the bank holding company's Chapter 11 bankruptcy, a WaMu attorney said today.

The FDIC seized Washington Mutual's flagship bank in 2008 and sold its assets to JPMorgan for $1.9 billion. The sale resulted in the two banking companies and the government agency trading lawsuits over roughly $4 billion in disputed deposit accounts.

WaMu attorney Brian Rosen told U.S. Bankruptcy Judge Mary Walrath today that JPMorgan has agreed to turn over the money to Washington Mutual after deducting $172 million as its share of tax refunds received.

In return, JPMorgan will get 70 percent of expected tax refunds resulting from WaMu's prior operating

losses that are valued at about $3 billion, with Washington Mutual getting 30 percent.

WaMu also will get about 40 percent of a second round of operating-loss tax refunds valued at about $2.6 billion, with roughly 60 percent going to the FDIC.

"WMI is confident that this agreement will provide substantial recoveries for the company's creditors, and that it is consistent with WMI's efforts over the last 18 months to maximize the value of its bankruptcy estate," the company said in a prepared statement. "WMI is also pleased that this agreement vindicates the positions it took in court, as the company believes that its court positions created the pressure necessary to move this agreement forward."

Shares of WaMu closed down 18 cents, or 47 percent, at 19 cents in over-the-counter trading.

Rosen said documentation of the settlement will be submitted to the court and will be included in a reorganization plan to be filed by March 26, followed by a disclosure statement hearing in early May.

The settlement negated the need for a hearing today on WaMu's request for a judgment that would have forced JPMorgan to surrender the deposits, and on the FDIC's request that it be allowed to hold the funds pending resolution of related lawsuits.

"I am happy to report that we have a three-way understanding," Rosen told Walrath, adding that the agreement is subject to approval by the governing boards of the FDIC and the two banking companies.

Rosen said the deal, which could result in the dismissal of three lawsuits pitting WaMu, JPMorgan and the FDIC against one another, also is contingent on the resolution of claims from holders of billions of dollars of bonds issued by Washington Mutual Bank, or WMB. Without the bondholders' approval, or the disallowance of their claims in their entirety, the settlement could turn to "vapor," Rosen said outside court.

Evan Flaschen, an attorney representing institutional investors who hold about $2 billion in WMB notes and were not part of the settlement negotiations, expressed disappointment at the announcement.

Flaschen said the FDIC appeared to be more interested in getting released from WMI's claims that it improperly sold WaMu assets to JPMorgan at a "fire sale" price after the largest bank failure in U.S. history, rather than exercising its fiduciary duties to the bank's creditors.

"It appears that the FDIC is only looking out for its own interests and does not care for the creditors in the bank receivership it is supposed to be protecting," he said.

"It's pretty disappointing that creditors of a bank are treated worse than creditors of a holding company," Flaschen added, referring to the fact that holders of WMI bonds are expected to recover on their claims.

David Barr, a spokesman for the FDIC, declined to comment on the settlement.

A spokesman for JPMorgan did not immediately return a message seeking comment.

Flaschen said the bank bondholders would redouble efforts to pressure Congress to force the FDIC to protect their interests, and that they were exploring their legal options.

"This just hit us over the head, and now we're thinking about how to deal with it," he said.

In addition to turning over the $4 billion in deposits, JPMorgan has agreed to purchase Visa shares from WMI for $50 million, Rosen said. WMI also will take claim to $55 million paid into the bankruptcy court registry by the federal government as part of a judgment in a lawsuit filed by its American Savings Bank affiliate.

-- The Associated Press

© 2010 OregonLive.com. All rights reserved.