IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
: Chapter 11
:
In re: : Case No. 08-12229 (MFW)
:
WASHINGTON MUTUAL, INC., *et al.*,[1] : Jointly Administered
:
Debtors. : Re: Docket No. 5426
: Obj. Deadline: September 20, 2010 at 4:00 p.m.
: (Extended to September 22, 2010 for the Debtors)
: Hearing Date: September 24, 2010 at 10:30 a.m.
---------------------------------------------------------- x

## DEBTORS' OPPOSITION TO TEXAS GROUP'S
## MOTION FOR DETERMINATION REGARDING WAIVER OF PRIVILEGE

Washington Mutual, Inc. ("WMI") and WMI Investment Corp. ("WMI Investment," and together with WMI, the "Debtors"), as debtors and debtors in possession, hereby object to American National Insurance Company, American National Property and Casualty Company, Farm Family Life Insurance Company, Farm Family Casualty Insurance Company, and National Western Life Insurance Company's (collectively, the "Texas Group") motion for determination regarding waiver of privilege (the "Motion") (Docket No. 5426), and respectfully represent as follows:

### PRELIMINARY STATEMENT[2]

1. The Motion is utterly meritless and should be rejected. Rather than return an inadvertently-produced privileged document, the Texas Group has elected to seek a determination that the Debtors waived privilege by supposedly putting the advice of counsel "in

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases") and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395).

[2] Capitalized terms not defined in the Preliminary Statement shall have the meanings ascribed to them below.

issue" in connection with seeking approval of the Settlement Agreement. However, under the controlling legal principles set forth by both the Third Circuit, and by this Court, advice of counsel is placed "in issue" only when a litigant attempts to "prove a claim or defense" by "disclosing or describing an attorney client communication" – and thereby takes an "affirmative step" to turn legal advice into an "essential element" of the claim or defense. *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863-64 (3d Cir. 1994); *In re Teleglobe Comm. Corp. v. BCE Inc.*, 392 B.R. 561, 586 (Bankr. D. Del. 2008) (Walrath, J.) ("Because of the importance of the attorney-client privilege, 'at issue' waiver is narrowly construed and applies only 'where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.' ... Simply because the information is relevant to the testimony does not mean the privilege has been waived."). The Debtors plainly have never taken any such "affirmative step" to disclose privileged advice and use it as a "sword" to prove any aspect of any claim or defense. Accordingly, it is respectfully submitted that the Motion must be denied.

## RELEVANT FACTUAL BACKGROUND

2. On March 26, 2010, the Debtors filed their Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code (as amended thereafter, the "Plan") and a related disclosure statement ("Disclosure Statement"). The Plan incorporates, among other items, a definitive settlement agreement (the "Settlement Agreement") resolving disputes among and between the Debtors, the Federal Deposit Insurance Corporation in its capacity as receiver for Washington Mutual Bank (the "FDIC-Receiver"), and JPMorgan Chase Bank, National Association ("JPMC").

3. The Texas Group entered into a Confidentiality Agreement Governing Confirmation Discovery (the "Confidentiality Agreement"), so ordered by the Court on July 2,

2010 and September 9, 2010. The Confidentiality Agreement includes a provision permitting a party to "claw back" privileged documents in the event they are inadvertently produced. Confidentiality Agreement ¶10. The Debtors inadvertently produced one privileged document to the Texas Group which reflects advice of counsel given in connection with matters covered by the Settlement Agreement.

4. Immediately upon discovering the inadvertent production, the Debtors sent a letter to counsel to the Texas Group requesting the immediate destruction of the inadvertently produced document, pursuant to the terms of the Confidentiality Agreement. Rather than destroy all copies of the inadvertently produced document, the Texas Group filed the Motion.

## OBJECTION

5. The Motion does not even attempt to argue that the document lacks privileged status in the first instance. Indeed, the Texas Group <u>admits</u> that the document in fact "<u>constitutes 'advice of counsel'</u> that was relied upon the Debtors". Mot. ¶5 & n.3 (emphasis added).[3] The Motion is devoted entirely to the contention that the Debtors supposedly have waived privilege applicable to advice of counsel given in connection with the Settlement Agreement and the Plan simply because the Debtors have acknowledged they were advised by counsel in connection with the Settlement Agreement. *Id.* ¶¶5 & 12. Under Third Circuit case law, the Texas Group's argument is clearly wrong.

6. The Texas Group chose to cite only one decision in their Motion, and even their own cherry-picked decision makes clear that their motion is baseless. The single case the Texas

---

[3] Since the Texas Group has advanced no argument in support of the notion that the document lacks privilege and/or work product protection in the first instance, the Debtors need not and do not address any such argument here. The Texas Group has waived any such argument for purposes of this motion. The Debtors reserve all rights and defenses in the event the Texas Group were permitted to raise such an argument, or if the Court were to consider such an argument in the future.

Group cites – the "best" case they could come up with in supposed support of their meritless argument – is the Third Circuit decision in *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863-64 (3d Cir. 1994) ("*Home Indemnity*"). In *Home Indemnity*, the Third Circuit confirmed the bedrock rule of law that "advice of counsel is placed in issue where the client asserts a claim or defense, and <u>attempts to prove</u> that claim or defense <u>by disclosing or describing</u> an attorney client communication." *Id.* at 863 (emphasis added). In other words, as the Third Circuit put it, waiver will not be found unless a party has "interjected the advice of counsel <u>as an essential element of a claim</u> in th[e] case." *Id.* at 864 (emphasis added).

7. Moreover, the Third Circuit further confirmed in *Home Indemnity* that waiver cannot be found on the basis that privileged information is "<u>vital</u>, highly probative, directly relevant or even go[es] to the <u>heart of an issue</u>." *Id.* at 864 (emphasis added). *See id.* at 861 ("Rule 26 thus provides that relevant but privileged matters are not discoverable. As a result, it frequently occurs that a party has documents containing information relevant to matters of consequence in the action, but does not produce the documents or disclose confidential communications, and the information is not offered into evidence at trial.").

8. In *Teleglobe*, this Court (Walrath, J.) applied *Home Indemnity* to reject a claim of waiver, and in doing so this Court articulated the controlling rule of law as follows: "Because of the importance of the attorney-client privilege, 'at issue' waiver is narrowly construed and applies only 'where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.' *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994). Simply because the information is relevant to the testimony does not mean the privilege has been waived." *In re Teleglobe*, 392 B.R. 561 at 586 (Walrath, J).

9. The Motion must be denied because the Debtors have never "attempted to prove" that the Settlement Agreement is reasonable "by disclosing or describing" any privileged communications. To the contrary – and as this Court has recognized – the Debtors have been consistent and clear that they have no intention of attempting to prove reasonableness by means of disclosing privileged communications. *See* Tr. 9/7/10 at 83 (THE COURT: "Well, I am going to deny this motion.... And I think that they [the Debtors] can establish or they say they can establish the settlement is appropriate without relying on attorney-client privilege and I am going to hold them to that. So I won't allow discovery on that point."); *id.* at 79 (DEBTORS' COUNSEL: "As I indicated, Your Honor, the debtors do not plan to put the advice of counsel at issue."); *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 797 F.Supp. 363, 370 (D.N.J. 1992) ("North River represented to the Court at oral argument that it has no intention to prove its case in any way by reliance on any attorney-client communication, whether produced or withheld from discovery. It thus cannot be said that North River is using the attorney-client privilege as a 'sword and shield' through selective disclosure of privileged documents."), cited by Third Circuit in *Home Indemnity*, 32 F. 3d at 863.[4]

---

[4] As the Debtors have made clear, the Debtors intend to prove the reasonableness of the Settlement Agreement in the customary fashion, which is to demonstrate the substantial benefits the Settlement Agreement provides to the estates from an objective perspective. The question of what the Debtors may have been subjectively thinking or privately discussing with lawyers in time periods leading up to the execution of the Settlement Agreement is simply irrelevant to whether the Settlement Agreement is in fact objectively fair. *See Metropolitan Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 249 Conn. 36, 56 (Conn. 1999) ("Accordingly, although the reasonableness of the settlements is directly at issue, the exact communications between the plaintiff and its attorneys regarding the decision to settle, which would aid only in a subjective determination, are not at issue. In sum, the defendants in the present case can assess whether the settlements of the asbestos tort actions were reasonable by examining the facts of the asbestos tort actions – the same material that the plaintiff had available to it when making its decision – and by consulting experts, just as the plaintiff had the opportunity to do.").

10. The Texas Group incorrectly contends that the Debtors have put advice of counsel "in issue" via three statements, none of which comes close to meeting the test the Third Circuit has set forth and which must be satisfied in order to find waiver. First, the Texas Group cites the following statement in the Disclosure Statement – even though this Court has previously rejected the argument that this statement could trigger waiver:

> After numerous months of litigation and careful analysis of the merits of their claims and the claims asserted against them . . . the Debtors have concluded that, because of the substantial expense of litigating the issues associated with their claims, the length of time necessary to resolve each of the issues presented in the pending litigation, the complexity and uncertainty involved and the corresponding disruption to their efforts to make distributions for the benefit of their creditors, it is in their best interests, and the best interests of their stakeholders, to resolve their disputes with JPMC, the FDIC Receiver, and FDIC Corporate, and related matters on the terms set forth in the Global Settlement Agreement....
> [Disclosure Statement at 8.]

11. This statement cannot possibly trigger waiver, because while it describes in general terms certain conclusions that the Debtor have drawn, the statement does not "attempt to prove" the correctness of those conclusions (or "attempt to prove" anything else). *Home Indemnity*, 32 F. 3d at 863. Much less does the statement "disclos[e] or describ[e]" any privileged communications as the basis for proving anything whatsoever, including the reasonableness of the Settlement Agreement. *Id.* The statement therefore does not "interject[] the advice of counsel as an essential element of a claim in th[e] case." *Id.* at 864.

12. Accordingly, under the legal framework set forth by this Court in *Teleglobe*, and set forth in the Third Circuit's *Home Indemnity* case cited by the Texas Group itself, this Court was clearly correct when it previously rejected the same argument for waiver based on this same statement. *See* Tr. 9/7/10 at 82-83 (TPS CONSORTIUM'S COUNSEL: "And I look back at the ... disclosure statement, Your Honor, where the debtor says that after months of litigation and

careful analysis of the merits, we've decided to enter into the settlement agreement.... whether the debtor says they are doing it explicitly, they are implicitly relying on the only party that could have done that analysis which is counsel." // THE COURT: "Well, I am going to deny this motion....) (emphasis added).

13. Second, the Texas Group advances the frivolous argument that waiver is triggered by the following statement in the Plan: "[The Debtors] shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan." (Plan § 43.8, entitled *Exculpation*.) There is no basis in law for the contention that waiver can be triggered by the unremarkable statement that a party has a right to rely on counsel to implement its responsibilities under a legal document. The statement simply does not describe or disclose any legal advice, nor does the statement attempt to use such advice to prove the reasonableness of the Settlement Agreement (or attempt to prove anything else), and under *Home Indemnity* and *Teleglobe* that is the end of the inquiry.

14. Moreover, the courts have squarely rejected the type of rule the Texas Group urges this Court to adopt, which would equate the mere fact that one admits to receiving legal advice with a waiver of the content of that advice. The courts have recognized that any such rule would eviscerate the privilege. *See, e.g., Metropolitan Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 249 Conn. 36, 56 (Conn. 1999) ("If admitting that one relied on legal advice in making a legal decision put the communications relating to the advice at issue, such advice would be at issue whenever the legal decision was litigated. If that were true, the at issue doctrine would severely erode the attorney-client privilege and undermine the public policy considerations upon which it is based."); *North River Ins.*, 797 F.Supp. at 371 (D.N.J. 1992) ("[S]uch a construction of the "in issue" doctrine would seemingly apply to any litigant offering evidence in a case on any issue

that he has discussed with his attorney, and would drastically alter the traditional boundaries of the privilege."), cited by Third Circuit in *Home Indemnity*, 32 F. 3d at 863.

15. <u>Third</u>, the Texas Group advances the frivolous argument that waiver is triggered by the fact that the Settlement Agreement includes a standard "big boy" provision that appears in countless commercial contracts executed by sophisticated parties every day:

> Each Party represents and acknowledges that ... (b) in executing this Agreement, it has relied entirely upon its own judgment, beliefs and interest and the advice of its counsel and that it has had a reasonable period of time to consider the terms of this Agreement before entering into it.... [§ 4.10, *Representations of the Parties as to this Agreement.*]

Once again, this statement obviously does not describe or disclose any legal advice, nor does the statement attempt to use such advice to prove the reasonableness of the Settlement Agreement (or attempt to prove anything else), and under *Home Indemnity* and *Teleglobe* that is the end of the inquiry. By urging this Court to find waiver based on the presence of this standard contractual clause, the Texas Group accomplishes nothing, except perhaps to violate Rule 11 by advancing a position that is foreclosed by the controlling precedent of this Court and the Third Circuit.

Dated: September 21, 2010  
       Wilmington, Delaware

ELLIOTT GREENLEAF

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)  
Neil R. Lapinski (DE Bar No. 3645)  
Shelley A. Kinsella (DE Bar No. 4023)  
1105 North Market Street, Suite 1700  
Wilmington, Delaware 19801  
Telephone: (302) 384-9400  
Facsimile: (302) 384-9399  
Email: rxza@elliottgreenleaf.com  
Email: nrl@elliottgreenleaf.com  
Email: sak@elliottgreenleaf.com

-and-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Peter E. Calamari
Susheel Kirpalani
David Elsberg
Benjamin I. Finestone
51 Madison Avenue
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: petercalamari@quinnemanuel.com
Email: susheelkirpalani@quinnemanuel.com
Email: davidelsberg@quinnemanuel.com
Email: benjaminfinestone@quinnemanuel.com

*Special Litigation and Conflicts Co-Counsel to*
*Washington Mutual, Inc. and WMI Investment Corp.*