## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
------------------------------------------------------x
                                                      :
In re:                                                :      Chapter 11
                                                      :
WASHINGTON MUTUAL, INC., et al.,¹                     :      Case No. 08-12229 (MFW)
                                                      :
              Debtors.                                :      (Jointly Administered)
                                                      :
------------------------------------------------------x      Re: Docket No. 3568
```

### ORDER (I) APPROVING THE PROPOSED DISCLOSURE STATEMENT AND THE FORM AND MANNER OF THE NOTICE OF THE DISCLOSURE STATEMENT HEARING, (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES, (III) SCHEDULING A CONFIRMATION HEARING, AND (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE DEBTORS' SIXTH AMENDED JOINT PLAN

Upon the motion, dated April 23, 2010 (the "Motion"),[2] of Washington Mutual,

Inc. and WMI Investment Corp., as debtors and debtors in possession (collectively, the

"Debtors"), pursuant to sections 105, 502, 1125, 1126, and 1128 of title 11 of the United States

Code (the "Bankruptcy Code"), Rules 2002, 3003, 3017, 3018, and 3020 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 3017-1 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"), for an order (i) approving the Debtors' proposed

Disclosure Statement (as further amended on October 6, 2010,[3] the "Proposed Disclosure

Statement") for the *Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States*

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 925 Fourth Avenue, Seattle, Washington 98104.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion or, if not defined in the Motion, the Plan.

[3] *Disclosure Statement for the Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code*, filed October 6, 2010 [Docket No. 5549].

*Bankruptcy Code*, filed by the Debtors on March 26, 2010 (as amended on October 6, 2010,[4] and as it may be further amended, the "<u>Plan</u>") and the form and manner of the notice of the hearing on the Proposed Disclosure Statement; (ii) establishing solicitation and voting procedures; (iii) scheduling a confirmation hearing; and (iv) establishing notice and objection procedures in respect of confirmation of the Plan, all as more fully described in the Motion; and certain objections having been filed to the approval of the Disclosure Statement, as amended from time to time, including, without limitation, the Proposed Disclosure Statement (collectively, the "<u>Objections</u>"); and the Debtors having filed several omnibus responses to the Objections, including, without limitation, a cumulative response on October 17, 2010 (the "<u>Responses</u>"); and the Court having held a hearing on October 18, 2010 to consider the relief requested herein, the Objections, and the Responses (the "<u>Hearing</u>") with the appearances of all interested parties noted in the record of the Hearing; and upon the record of the Hearing, and all of the proceedings before the Court, the Court hereby finds and determines the following:

**Jurisdiction and Venue**

A. Consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b).

B. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C. The Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334.

**Objections**

D. All Objections, responses to, and statements and comments, if any, in

---

[4] *Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code*, filed October 6, 2010 [Docket No. 5548]

2

opposition to the Disclosure Statement, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Hearing, shall be, and hereby are, overruled in their entirety for the reasons stated on the record.

### The Disclosure Statement

E.     The Proposed Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code. No further information is necessary.

### Balloting and Voting Procedures

F.     The procedures, set forth below, for the solicitation and tabulation of votes to accept or reject the Plan provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

### *Ballots*

G.     The ballots substantially in the forms annexed hereto as <u>Exhibits 4-1, 4-2, 4-3, 4-4, 4-5, 4-6, 4-7, 4-8, 4-9, 4-10, 4-11, 4-12, 4-13, 4-14, 4-15, 4-16, and 4-17</u> (collectively, the "<u>Ballots</u>"), including all voting instructions provided therein, are consistent with Official Form No. 14, address the particular needs of these chapter 11 cases, and provide adequate information and instructions for each individual entitled to vote to accept or reject the Plan. No further information or instructions are necessary.

### *Parties Entitled to Vote*

H.     Pursuant to the Plan, Allowed Claims and Equity Interests in Class 2 (Senior Notes Claims), Class 3 (Senior Subordinated Notes Claims), Class 12 (General Unsecured Claims), Class 14 (CCB-1 Guarantees Claims), Class 15 (CCB-2 Guarantees Claims), Class 16 (PIERS Claims), Class 18 (Subordinated Claims), Class 19 (REIT Series), and Class 20 (Preferred Equity Interests) are impaired and are entitled to receive distributions under the Plan and, accordingly, holders of Allowed Claims and Equity Interests in such Classes are entitled to

vote on account of such Allowed Claims and Equity Interests (collectively, "Non-WMB Voting Entities").

I.        Pursuant to the Plan, Class 17A (WMB Senior Notes Claims) consists of Claims filed by entities that hold WMB Senior Notes, with respect to which a proof of claim was timely filed.  Such Claims are impaired and, accordingly, the holders thereof are entitled to vote to accept or reject the Plan (together with the Non-WMB Voting Entities, "Voting Entities"). Pursuant to the Plan, Non-Filing WMB Senior Note Holders – entities that hold WMB Senior Notes, but with respect to which the holders thereof did not file a related proof of claim against the Debtors – do not hold Claims against the Debtors' estates with respect to their WMB Senior Notes and, as such, are not entitled to vote.  Such holders, however, are entitled to receive a distribution on account of these notes if the holders thereof agree to grant the releases set forth in Section 43.6 of the Plan.  Such entities shall receive a form on which to make this election (the "Non-Filing WMB Senior Note Holder Election Form"), in the form annexed hereto as Exhibit 7-1.  The nominees for such entities shall receive a master form on which to transmit such information to KCC, in the form annexed hereto as Exhibit 7-2.  These forms address the particular needs of these chapter 11 cases and provide adequate information and instructions to the Non-Filing WMB Senior Note Holders and their nominees.  No further information or instructions is necessary.

### Parties Not Entitled to Vote

J.        Pursuant to the Plan, Claims in Class 1 (Priority Non-Tax Claims), Class 4 (WMI Medical Plan Claims), Class 5 (JPMC Rabbi Trust / Policy Claims), Class 6 (Other Benefit Plan Claims), Class 7 (Qualified Plan Claims), Class 8 (WMB Vendor Claims), Class 9 (Visa Claims), Class 10 (Bond Claims), Class 11 (WMI Vendor Claims), and Class 13

(Convenience Claims) are unimpaired (the "Unimpaired Classes") and, accordingly, pursuant to section 1126(f) of the Bankruptcy Code, holders of such Claims are conclusively presumed to accept the Plan and are not entitled to vote on account of such Claims.

K.     Pursuant to the Plan, Claims in Class 17B (WMB Subordinated Notes Claims) and Equity Interests in Class 21 (Dime Warrants) and Class 22 (Common Equity Interests) (the "Non-Voting Impaired Classes") will not receive or retain any property under the Plan and, accordingly, pursuant to section 1126(g) of the Bankruptcy Code, holders of such Claims or Equity Interests are deemed to reject the Plan and are not entitled to vote on account of such Claims or Equity Interests.

L.     Pursuant to decretal paragraph 5 herein, creditors to whose claims the Debtors have filed an objection on or before the Voting Record Date are not entitled to vote (together with the Unimpaired Classes and the Non-Voting Impaired Classes, the "Non-Voting Creditors and Interest Holders").

### *Notice of Non-Voting Status*

M.     The Notices of Non-Voting Status, substantially in the forms annexed hereto as Exhibits 5-1, 5-2, and 5-3, comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and, together with the Confirmation Hearing Notice, provide adequate notice to Non-Voting Creditors and Interest Holders of their non-voting status. No further notice is necessary.

### *Notice*

N.     The proposed distribution and contents of the Solicitation Packages comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties of the Voting Record Date, Voting Deadline, Rights Offering Record Date, Subscription

Deadline, Plan Objection Deadline, Confirmation Hearing, and all related matters.

O.     The period, set forth below, during which the Debtors may solicit acceptances to the Plan is a reasonable and sufficient period of time for Voting Entities to make an informed decision regarding whether to accept or reject the Plan and timely return Ballots evidencing such decision.

### Subscription Form and Rights Offering Procedures

P.     The Rights Offering Procedures, set forth below, provide for a fair and equitable Rights Offering process.

Q.     The Subscription Form annexed hereto as <u>Exhibit 6-1</u>, including all instructions provided therein, addresses the particular needs of these chapter 11 cases and provides adequate information and instructions for individuals entitled to exercise Subscription Rights pursuant to the Plan. No further information or instructions are necessary.

### The Confirmation Hearing

R.     The procedures, set forth below, regarding notice to all parties in interest of the time, date, and place of the hearing to consider confirmation of the Plan (the "<u>Confirmation Hearing</u>") and for filing objections or responses to the Plan, provide due, proper, and adequate notice and comply with Bankruptcy Rules 2002 and 3017(d).

### Notice of the Disclosure Statement Hearing

S.     On March 26, 2010, the Debtors filed their *Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* and a related disclosure statement (the "<u>Original Disclosure Statement</u>"). A hearing to consider the adequacy of the information contained in the Original Disclosure Statement was set for May 19, 2010 (the "<u>Original Hearing Date</u>"), with objections to be filed before such date. The Debtors provided actual notice of the Original Hearing Date and the deadline for filing objections to the Original Disclosure Statement

to the Notice Parties and any other known holders of claims against or equity interests in the Debtors (the "Disclosure Statement Notice"), as attached hereto as Exhibit 2. On May 19, 2010, the Court held a status conference and scheduled the Hearing for June 3, 2010 to consider approval of the Proposed Disclosure Statement. On May 22, 2010, the Debtors provided actual notice of the June 3, 2010 hearing to the Notice Parties and any other known holders of claims against or equity interests in the Debtors (the "Amended Disclosure Statement Notice"). On June 3, 2010, the Court held a status conference and re-scheduled the hearing for June 17, 2010. On June 17, 2010, the Debtors requested to adjourn consideration of the Motion, and in response thereto, the Court held a status conference and re-scheduled the hearing for July 8, 2010. On July 8, 2010, the Court held a status conference and re-scheduled the hearing for July 20, 2010. On July 20, 2010, after the Debtors agreed on the record to the appointment of an examiner (the "Examiner"), the Court re-scheduled the hearing for September 7, 2010. Thereafter, based upon negotiations regarding the Plan, the Debtors requested to adjourn consideration of the Motion and the Court re-scheduled the hearing for September 24, 2010 and, then, to October 8, 2010. On October 6, 2010, the Debtors filed an amended Plan and the Proposed Disclosure Statement, and the Court scheduled the hearing for October 18, 2010. On the same day, the Debtors filed and served a notice of the October 18, 2010 hearing [Docket No. 5550] (the "Second Amended Disclosure Statement Notice").

       T.     Actual notice of the Hearing and the deadline for filing objections to the Proposed Disclosure Statement was provided to the Notice Parties in accordance with Bankruptcy Rule 2002. The Disclosure Statement Notice, the Amended Disclosure Statement Notice, and the Second Amended Disclosure Statement Notice each constitute good and sufficient notice and no further notice is necessary.

U.     The form and manner of notice of the time set for filing objections to, and the time, date, and place of, the Hearing to consider the approval of the Proposed Disclosure Statement was adequate and comports with due process and no further notice is necessary.

V.     All notices to be provided pursuant to the procedures set forth herein are good and sufficient notice to all parties in interest of all matters pertinent hereto and of all matters pertinent to the Confirmation Hearing and no other or further notice need be provided.

W.     The legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested therein.

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1.     The Motion is GRANTED as set forth herein.

2.     All Objections, responses to, and statements and comments, if any, in opposition to the Proposed Disclosure Statement, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Hearing, are OVERRULED in their entirety.

**Disclosure Statement**

3.     The Proposed Disclosure Statement contains adequate information in accordance with section 1125 of the Bankruptcy Code and is **APPROVED**.

4.     All Objections, if any, to the Proposed Disclosure Statement that have not been withdrawn or resolved as provided for in the record of the Hearing are overruled.

**Examiner's Final Report**

5.     The Examiner shall file his final report on or before November 1, 2010 and, within three (3) business days or such later date as may be permitted by the Court, the Debtors shall make such report publicly available at www.kccllc.net/wamu.

**Solicitation and Voting Procedures**

*Temporary Allowance / Disallowance of Claims*

6.      Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, a Claim, and without prejudice to the rights of the Debtors in any other context, each Claim or Equity Interest within a Class of Claims or Equity Interests entitled to vote to accept or reject the Plan is temporarily allowed in an amount equal to the amount of such Claim as set forth in the Schedules, provided that:

(a)    If a proof of claim was timely filed in an amount that is liquidated, non-contingent, and undisputed, such claim is temporarily allowed for voting purposes in the amount set forth on the proof of claim, unless such claim is disputed as set forth in subparagraph (g) below;

(b)    If a proof of claim was timely filed in an amount that is contingent or unliquidated, such claim is accorded one vote and valued temporarily in the amount of one dollar ($1.00), unless such claim is disputed as set forth in subparagraph (g) below;

(c)    If a claim has been estimated or otherwise allowed for voting purposes by order of the Bankruptcy Court, such claim is temporarily allowed in the amount so estimated or allowed by the Bankruptcy Court;

(d)    If a claim is listed in the Schedules as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the Bar Date or (ii) deemed timely filed by an order of the Bankruptcy Court prior to the Voting Deadline, such claim is disallowed for voting purposes and for purposes of allowance and distribution pursuant to Bankruptcy Rule 3003(c);

(e)    If a claim is listed in the Schedules or on a timely filed proof of claim as contingent, unliquidated, or disputed in part, such claim is temporarily allowed in the amount that is liquidated, non-contingent, and undisputed, unless such claim is disputed as set forth in subparagraph (g) below;

(f)    If a claim has been filed against multiple Debtors, each and every such related claim filed or to be filed in the chapter 11 cases is deemed filed against the consolidated Debtors and is deemed one claim against and obligation of the deemed consolidated Debtors and such claim is accorded one vote for voting purposes; and

(g)    If the Debtors have filed an objection to or request for estimation of a claim on or before the Voting Record Date, such claim is temporarily

disallowed, except as ordered by the Court before the Voting Deadline; provided, that, if the Debtors' objection seeks to reclassify or reduce the allowed amount of such claim, then such claim is temporarily allowed for voting purposes in the reduced amount and/or as reclassified, except as may be ordered by the Court before the Voting Deadline.

7.     Notwithstanding the foregoing, WMB Senior Notes Claims shall be temporarily allowed for voting purposes only in an amount equal to the aggregate face value and interest accrued as of the Petition Date with respect to all WMB Senior Notes held by each holder of a WMB Senior Notes Claim as of October 25, 2010.

8.     If any creditor seeks to challenge the allowance of its claim for voting purposes – i.e., the creditor believes it should be entitled to vote or believes it should be entitled to vote in a different class or amount – such creditor shall file with this Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such claim for voting purposes (a "Rule 3018(a) Motion"). Upon the filing of any such motion, such creditor's Ballot shall be counted in accordance with the above-designated guidelines unless temporarily allowed in a different amount by an order of this Court entered prior to or concurrent with entry of an order confirming the Plan. Any Rule 3018(a) Motion must be filed on or before the 10th day after service of notice of an objection or request for estimation, if any, as to that specific claim, but in any event no later than **October 25, 2010** at **4:00 p.m. (Eastern Time)**.

9.     The deadline for the Debtors to respond to any Rule 3018(a) Motion is **November 4, 2010** at **4:00 p.m. (Eastern Time)**.

10.    To the extent that a Rule 3018(a) Motion is filed and opposed by the Debtors, a hearing with respect thereto shall be held on **November 9, 2010** at **10:30 a.m. (Eastern Time)**.

11.    A holder of a Disputed Claim will be deemed to have waived the right to elect to receive Reorganized Common Stock in lieu of some or all of the Creditor Cash or Cash

on account of Liquidating Trust Interests, as the case may be, attributable to any portion of such Disputed Claim that is allowed pursuant to a Final Order.

12.     Each creditor that votes to accept or reject the Plan is deemed to have voted the full amount of its claim therefor.

### *The Voting Record Date*

13.     The Voting Record Date shall be set as **October 18, 2010**; provided, however, that solely for purposes of determining whether an entity is a holder of a WMB Senior Notes Claim entitled to vote on the Plan, the Voting Record Date for WMB Senior Notes Claims is the Bar Date.

14.     The record holders of claims shall be determined, as of the Voting Record Date, based upon the records of the respective depository, the records of WMI, and the records of KCC.  Accordingly, any notice of claim transfer received by a record holder of the Debtors' debt securities, WMI, KCC, or other similarly situated registrar after the Voting Record Date shall not be recognized for purposes of voting or receipt of Plan confirmation materials.

15.     With respect to transfers of claims filed pursuant to Bankruptcy Rule 3001, the holder of a claim as of the Voting Record Date shall be the transferor of such claim and entitled to cast the ballot with respect to that claim unless the documentation evidencing such transfer was docketed by the Court on or before the Voting Record Date and no timely objection with respect to such transfer was filed by the transferor.

### *Solicitation Packages*

16.     The Solicitation Packages, as described in decretal paragraph 18 hereof, are **APPROVED**.

17.     The Debtors shall mail the Solicitation Packages on or about **October 22, 2010**, but in any event not later than four (4) business days after the entry of this Order (the "Solicitation Date") (except with regards to Solicitation Packages containing Notices of Non-Voting Status, which shall be mailed not later than five (5) business days after entry of this Order), to (a) the U.S. Trustee, (b) counsel to the Creditors' Committee; (c) counsel to the Equity Committee; (d) the SEC; (e) the IRS, (f) the Dep't of Justice, (g) any other party requesting service of pleadings in these chapter 11 cases pursuant to Rule 2002, (h) all creditors who are listed on the Debtors' Schedules or who have filed a proof of claim by the Bar Date, and (i) all equity interest holders.

18.     If a creditor timely files a proof of claim at least **twenty (20) days** before the Voting Deadline but after the Solicitation Date, and such creditor did not previously receive a Solicitation Package, the Debtors shall send the creditor a Solicitation Package as soon as reasonably practicable.

19.     Solicitation Packages shall contain a copy of –

(a)     This Order (without attachments);

(b)     The Confirmation Hearing Notice;

(c)     A CD-ROM containing the Disclosure Statement, which shall include the Plan and the Global Settlement Agreement as attachments;

(d)     Letters in support of or voicing opposition to the Plan, from the Debtors and various other constituencies;

(e)     If the recipient is entitled to vote on the Plan, a Ballot customized for such holder in the form described below, and a postage-prepaid return envelope; **OR**

(f)     If the recipient is entitled to exercise Subscription Rights, a Ballot customized for such holder in the form described below, a Subscription Form customized for such holder in the form described below, and a postage-prepaid return envelope; **OR**

(g)    If the recipient is a Non-Filing WMB Senior Note Holder, a Non-Filing WMB Senior Note Holder Election Form customized for such holder in the form described below, and postage-prepaid return envelope; **OR**

(h)    If the recipient is a Non-Voting Creditor or Interest Holder, then **only** the Confirmation Hearing Notice and a Notice of Non-Voting Status.

20.    The Debtors may send the Disclosure Statement in a CD-ROM format instead of printed hard copies; provided, however, that, if service by CD-ROM imposes a hardship for any creditor, such creditor may submit to the Debtors a signed certification of hardship explaining why a paper copy should be provided to the creditor at the Debtors' cost. Upon receipt of a certification of hardship, the Debtors shall evaluate whether an actual hardship appears to exist and, in the event that it does, the Debtors will provide such creditor with a paper copy of the Plan, Disclosure Statement, and Settlement Agreement at no cost to the creditor within five (5) business days thereafter. If the Debtors determine that there is insufficient information to establish the existence of a hardship, the Debtors shall consult with the Creditors' Committee prior to making a final determination to deny any such request.

21.    The Debtors shall not be required to send Solicitation Packages to creditors that have claims that have already been paid in full; provided, however, that, if, and to the extent that, any such creditor would be entitled to receive a Solicitation Package for any reason other than by virtue of the fact that such claim had been paid by the Debtors, then the Debtors shall send such creditor a Solicitation Package in accordance with the procedures set forth herein.

22.    With respect to addressees from which Solicitation Packages are returned as undeliverable by the United States Postal Service, the Debtors are excused from mailing Solicitation Packages or any other materials related to voting or confirmation of the Plan to those entities listed at such addresses unless the Debtors are provided with accurate addresses for such

entities before the Solicitation Date, and failure to mail Solicitation Packages or any other materials related to voting or confirmation of the Plan to such entities will not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline (as defined below) and shall not constitute a violation of Bankruptcy Rule 3017(d).

23.     The Debtors are not required to distribute copies of the Plan or Disclosure Statement to any party to an executory contract who holds a claim that is not allowed, filed, or scheduled, or who holds a claim that is listed in the Schedules as contingent, unliquidated or disputed, unless such party makes a specific request in writing for same. The Debtors will distribute the Confirmation Hearing Notice to such counterparties to executory contracts that have not been assumed or rejected as of the Voting Record Date.

*Ballots*

24.     The Ballots are **APPROVED**.

25.     The Voting Deadline is set as **November 15, 2010 at 5:00 p.m. (Pacific Time)**.

26.     All Ballots must be properly executed, completed, and delivered to KCC by first-class mail, overnight courier, or personal delivery, so that they are <u>actually</u> <u>received</u> by KCC no later than the Voting Deadline.

27.     To holders of Allowed General Unsecured Claims in Class 12, the Debtors shall send a General Unsecured Ballot substantially in the form annexed hereto as <u>Exhibit 4-1</u>.

28.     To holders of WMB Senior Notes Claims in Class 17A, the Debtors shall send a WMB Senior Notes Ballot substantially in the form annexed hereto as <u>Exhibit 4-4</u>.

29.     To holders of Allowed Subordinated Claims in Class 18, the Debtors shall send a Subordinated Class Ballot substantially in the form annexed hereto as <u>Exhibit 4-5</u>.

30.     To holders of Allowed Senior Notes Claims in Class 2, the Debtors shall send Ballots in substantially the same form as the General Ballot; provided, however, that, with respect to entities that hold a claim for the benefit of one or more third parties (collectively, the "Voting Nominees"), the Debtors shall provide each Voting Nominee with a Class 2 Master Ballot substantially in the form attached hereto as Exhibit 4-6 and Solicitation Packages for each beneficial holder represented by the Voting Nominee which shall contain a Class 2 Beneficial Ballot substantially in the form attached hereto as Exhibit 4-7.

31.     To holders of Allowed Senior Subordinated Notes Claims in Class 3, the Debtors shall send Ballots in substantially the same form as the General Ballot; provided, however, that, with respect to Voting Nominees, the Debtors shall provide each Voting Nominee with a Class 3 Master Ballot substantially in the form attached hereto as Exhibit 4-8 and Solicitation Packages for each beneficial holder represented by the Voting Nominee which shall contain a Class 3 Beneficial Ballot substantially in the form attached hereto as Exhibit 4-9.

32.     To holders of Allowed CCB-1 Guarantees Claims and CCB-2 Guarantees Claims in Classes 14 and 15, respectively, the Debtors shall send a CCB Class Ballot substantially in the form annexed hereto as Exhibit 4-2; provided, however, that, with respect to Voting Nominees, the Debtors shall provide each Voting Nominee with a Class 16 Master Ballot substantially in the form attached hereto as Exhibit 4-10 and Solicitation Packages for each beneficial holder represented by the Voting Nominee which shall contain a Class 16 Beneficial Ballot substantially in the form attached hereto as Exhibit 4-11.

33.     To holders of Allowed PIERS Claims in Class 16, the Debtors shall send Ballots in substantially the same form as the General Ballot; provided, however, that, with respect to Voting Nominees, the Debtors shall provide each Voting Nominee with a Class 16

Master Ballot substantially in the form attached hereto as <u>Exhibit 4-12</u> and Solicitation Packages for each beneficial holder represented by the Voting Nominee which shall contain a Class 16 Beneficial Ballot substantially in the form attached hereto as <u>Exhibit 4-13</u>. Such Ballots shall be sent to the beneficial holders of the units representing the PIERS Preferred Securities and not to the Unit Agent, which beneficial holders shall complete such Ballots based upon the number of units they hold. To holders of PIERS Common Securities in Class 16, the Debtors shall send a PIERS Common Ballot substantially in the form annexed hereto as <u>Exhibit 4-3</u>.

34. To holders of REIT Series in Class 19, the Debtors shall send Ballots in substantially the same form as the General Ballot; <u>provided, however</u>, that, with respect to Voting Nominees, the Debtors shall provide each Voting Nominee with a Class 19 Master Ballot substantially in the form attached hereto as <u>Exhibit 4-14</u> and Solicitation Packages for each beneficial holder represented by the Voting Nominee which shall contain a Class 19 Beneficial Ballot substantially based upon the form attached hereto as <u>Exhibit 4-15</u>; and, <u>provided, further</u>, that such beneficial holders shall complete such Ballots in the principal amount of the REIT Series that they hold.

35. To holders of Preferred Equity Interests in Class 20, the Debtors shall send Ballots in substantially the same form as the General Ballot; <u>provided, however</u>, that, with respect to Voting Nominees, the Debtors shall provide each Voting Nominee with a Class 20 Master Ballot substantially in the form attached hereto as <u>Exhibit 4-16</u> and Solicitation Packages for each beneficial holder represented by the Voting Nominee which shall contain a Class 20 Beneficial Ballot substantially in the form attached hereto as <u>Exhibit 4-17</u>.

36. The Voting Nominee shall forward the Solicitation Package to the beneficial holder with instructions for the beneficial holder to return the Beneficial Ballot to the

Voting Nominee. Upon return of the Beneficial Ballots, the Voting Nominee shall tabulate the Beneficial Ballots on a Master Ballot and return the Master Ballot to KCC. The Voting Nominee shall provide the beneficial holder with the appropriate materials within **five (5) business** days of receipt of the Solicitation Packages.

37.  The Debtors shall reimburse each Voting Nominee for its reasonable and customary costs and expenses associate with distribution of the Solicitation Packages and tabulation of the Beneficial Ballots.

### *Non-Filing WMB Senior Note Holder Election Form*

38.  To Non-Filing WMB Senior Note Holders, the Debtors shall send, through such holders' Voting Nominees, a Non-Filing WMB Senior Note Holder Election Form substantially in the form annexed hereto as <u>Exhibit 7-1</u>, which form is **APPROVED**. The Voting Nominee shall provide the beneficial holder with the appropriate materials within **five (5) business** days of receipt of the Solicitation Packages.

39.  All Non-Filing WMB Senior Note Holder Election Forms received by beneficial holders must be properly executed, completed, and delivered to the proper Voting Nominees by first-class mail, overnight courier, or personal delivery, and the Voting Nominees shall send to KCC, so as to be received no later than the Voting Deadline, the Master Non-Filing WMB Senior Note Holder Election Form annexed hereto as <u>Exhibit 7-2</u>, which form is **APPROVED**, to transmit the elections of Non-Filing WMB Senior Note Holders.

### *Notices of Non-Voting Status*

40.  The Notices of Non-Voting Status are **APPROVED**.

41.  To the Non-Voting Creditors whose claims are unimpaired pursuant to the Plan, the Debtors shall send a Notice of Non-Voting Status – Unimpaired Class substantially in

the form attached hereto as <u>Exhibit 5-1</u>. To the Non-Voting Creditors and Interest Holders whose claims are impaired and not entitled to receive distributions under the Plan, the Debtors shall send a Notice of Non-Voting Status – Impaired Class substantially in the form attached hereto as <u>Exhibit 5-2</u>. To creditors who are not allowed to vote in accordance with the terms of decretal paragraph 5 hererof, the Debtors shall send a Notice of Non-Voting Status substantially in the form attached hereto as <u>Exhibit 5-3</u>.

42.     With respect to service of the Notice of Non-Voting Status – Impaired Class on the holders of the Debtors' publicly-traded stock as reflected in the records maintained by the Debtors' transfer agent(s) (the "<u>Non-Voting Securities</u>"), the Debtors shall send the Notices of Non-Voting Status as follows:

(a)     The Debtors shall provide any registered holders of Non-Voting Securities with a copy of the Notice of Non-Voting Status – Impaired Classes by first-class mail;

(b)     The Debtors shall provide the nominees with sufficient copies of the Notice of Non-Voting Status – Impaired Classes to forward to the Beneficial Holders of the Non-Voting Securities; and

(c)     The nominees shall then forward the Notice of Non-Voting Status – Impaired Classes or copies thereof to the Beneficial Holders of the Non-Voting Securities within five (5) business days of the receipt by such Non-Voting Nominees of the Notice of Non-Voting Status – Impaired Classes.

### *Tabulation Procedures*

43.     The following tabulation procedures are **APPROVED**:

(a)     Whenever a creditor casts more than one Ballot voting the same claim(s) before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline shall be deemed to reflect the voter's intent, and thus, to supersede any prior Ballot.

(b)     Whenever a creditor casts a Ballot that is properly completed, executed, and timely returned to KCC, but does not indicate either an acceptance or rejection of the Plan, the Ballot shall be deemed to reflect the voter's intent to accept the Plan.

(c)     Except with respect to Master Ballots, whenever a creditor casts a Ballot that is properly completed, executed, and timely returned to KCC, but indicates both an acceptance and a rejection of the Plan, the Ballot shall be deemed to reflect the voter's intent to accept the Plan.

(d)     A holder of claims shall be deemed to have voted the full amount of its claim in each class and shall <u>not</u> be entitled to split its vote within a particular class. Any Ballot (except a Master Ballot) that partially accepts and partially rejects the Plan shall be deemed to reflect the voter's intent to accept the Plan.

(e)     Whenever a holder of claims casts Ballots received by KCC on the same day, but which are voted inconsistently, such Ballots shall be deemed to reflect the voter's intent to accept the Plan.

(f)     The following Ballots shall not be counted:

    1.     Any Ballot received after the Voting Deadline unless the Debtors shall have granted an extension of the Voting Deadline in writing with respect to such Ballot,

    2.     Any Ballot that is illegible or contains insufficient information to permit the identification of the claimant,

    3.     Any Ballot cast by a person or entity that does not hold a claim in a class that is entitled to vote to accept or reject the Plan,

    4.     Any Ballot cast by a person who is not entitled to vote, even if such individual holds a claim in a voting class,

    5.     Any unsigned Ballot,

    6.     Any Ballot which the Bankruptcy Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code, or

    7.     Any Ballot transmitted to KCC by facsimile or other means not specifically approved herein.

(g)     If a party that is entitled to vote has claims (either scheduled or filed or both) against both of the Debtors based on the same transaction (e.g.; a claim against one Debtor that was guaranteed by another Debtor), the Debtors propose that said party shall be entitled to one vote for numerosity purposes in a dollar amount based upon its claim against one of the Debtors.

(h)     A holder of claims in more than one (1) class must use separate Ballots for each class of claims.

44.     With respect to Master Ballots submitted by Voting Nominees:

(a)     All Voting Nominees to which beneficial holders return their Ballots shall summarize on the Master Ballot all Ballots cast by the Beneficial Holders and return the Master Ballot to KCC; provided, however, that each Voting Nominee shall be required to retain the Ballots cast by the respective beneficial holders for inspection for a period of at least one (1) year following the Voting Deadline;

(b)     Votes cast by the Beneficial Holders through a Voting Nominee by means of a Master Ballot shall be applied against the positions held by such Voting Nominee as evidenced by a list of record holders provided by the respective depository and compiled as of the Voting Record Date; provided, however, that votes submitted by a Voting Nominee on a Master Ballot shall not be counted in excess of the position maintained by such Voting Nominee as of the Voting Record Date;

(c)     To the extent that there are over-votes submitted by a Voting Nominee, KCC will attempt to reconcile discrepancies with the Voting Nominee;

(d)     To the extent that over-votes on a Master Ballot are not reconciled prior to the preparation of the vote certification, KCC will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept or reject the Plan submitted on the Master Ballot that contained the over-vote, but only to the extent of the position maintained by such Voting Nominee as of the Voting Record Date;

(e)     Multiple Master Ballots may be completed by a single Voting Nominee and delivered to KCC and such votes shall be counted, except to the extent that such votes are inconsistent with or are duplicative of other Master Ballots, in which case the latest dated Master Ballot received on or before the Voting Deadline shall supersede and revoke any prior Master Ballot; and

(f)     Each beneficial holder shall be deemed to have voted the full amount of its claim.

45.     To assist in the solicitation process, KCC may, but is not obligated to, contact parties that submit incomplete or otherwise deficient ballots to cure such deficiencies.

### Subscription Form

46.     The Subscription Form is **APPROVED**.

47.     The Rights Offering Record Date is **October 18, 2010**.

48.     The Subscription Expiration Date is set as **November 29, 2010 at 5:00 p.m. (Pacific Time)**.

49.     To holders of Allowed PIERS Claims in Class 16 entitled to exercise Subscription Rights, the Debtors shall send a Subscription Form substantially in the form annexed hereto as Exhibit 6-1.

50.     All Subscription Forms received by beneficial holders must be properly executed, completed, and delivered to the proper Voting Nominees by first-class mail, overnight courier, or personal delivery, so that the Voting Nominees can communicate each holder's election information to the Rights Offering Agent and such information is actually received by the Rights Offering Agent on or before the Subscription Expiration Date.

51.     In addition, each holder of an Allowed PIERS Claim choosing to exercise Subscription Rights must provide payment in full to the Voting Nominee, so that the Voting can forward such funds to the Debtors, such that the funds are actually received by the Debtors no later than one (1) Business Day after the Subscription Expiration Date.

### *Rights Offering Procedures*

52.     With respect to the Rights Offering, the procedures detailed in Article XXXIV of the Plan are **APPROVED.**

53.     Pursuant to the Plan, payments made in accordance with the Rights Offering shall be deposited in and held by the Debtors in the Rights Offering Trust Account. The Rights Offering Trust Account will be a segregated account maintained by KCC, as Rights Offering Agent for the benefit of the Debtors, exclusively for the purpose of administration of the Rights Offering until the Effective Date or such other later date, at the option of the

Reorganized Debtors. The Debtors shall not use such funds for any other purpose and shall not encumber or permit such funds to be encumbered with any Lien or similar encumbrance.

54.     The Debtors may adopt such additional procedures, consistent with the provisions of the Plan, to more efficiently administer the exercise of the Subscription Rights, as required.

55.     All questions concerning the timeliness, viability, form, and eligibility of any exercise of Subscription Rights shall be determined by the Debtors, whose good-faith determinations shall be final and binding. The Debtors, in their reasonable discretion, may waive any defect or irregularity, or permit a defect or irregularity to be corrected within such times as they may determine, or reject the purported exercise of any Subscription Rights. Elections on Ballots shall be deemed not to have been received or accepted until all irregularities have been waived or cured within such time as the Debtors determine in their reasonable discretion.

### *Stock Election Notice*

56.     The Stock Election Notice Date is set as **November 22, 2010.**

57.     On or prior to the Stock Election Notice Date, the Debtors shall file with the Court a notice that discloses, on a Class-by-Class basis, the percentage of Reorganized Common Stock elected by Classes 2, 3, 12, 14, 15 and 16 as a result of the right of election set forth in the Plan.

### **The Confirmation Hearing**

58.     The Confirmation Hearing will commence at **1:00 p.m. (Eastern Time) on December 1, 2010**; provided, however, that the Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice other than

adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Court.

### Objection Procedures

59.     The Plan Objection Deadline to object or respond to confirmation of the Plan is set as **November 19, 2010 at 4:00 p.m. (Eastern Time)**.

60.     Objections and responses, if any, to confirmation of the Plan, must (a) be in writing, (b) conform to the Bankruptcy Rules and the Local Rules, (c) set forth the name of the objecting party, the nature and amount of claims or interests held or asserted by the objecting party against the Debtors' estates or property, and (d) set forth the basis for the objection and the specific grounds therefor.

61.     Registered users of this Court's case filing system must electronically file their objections and responses. All other parties in interest must file their objections and responses in writing with the Bankruptcy Court, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801 (Attn: Chambers of the Hon. Mary F. Walrath).

62.     Any objection or response also must be served upon and received by:

(a)     Washington Mutual, Inc.
925 Fourth Avenue
Seattle, Washington 98104
Attn: Charles Edward Smith, Esq.;

(b)     Office of the U.S. Trustee for the District of Delaware
844 King Street, Suite 2207, Lockbox 35
Wilmington, Delaware 19899-0035
Attn: Jane Leamy, Esq.;

(c)     Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Brian S. Rosen, Esq.;

(d)    Richards Layton & Finger P.A.
       One Rodney Square
       920 North King Street
       Wilmington, Delaware 19899
       Attn: Mark D. Collins, Esq.;

(e)    Quinn Emanuel Urquhart & Sullivan, LLP
       55 Madison Avenue, 22nd Floor
       New York, New York 10010
       Attn: Peter Calamari, Esq.;

(f)    Akin Gump Strauss Hauer & Feld LLP
       One Bryant Park
       New York, New York 10036
       Attn: Fred S. Hodara, Esq.;

(g)    Pepper Hamilton LLP
       Hercules Plaza, Suite 5100
       1313 N. Market Street
       Wilmington, Delaware 19801
       Attn: David B. Stratton, Esq.;

(h)    Susman Godfrey LLP
       654 Madison Avenue, 5th Floor
       New York, New York 10065
       Attn: Stephen D Susman, Esq.;

(i)    Ashby & Geddes, P.A.
       500 Delaware Avenue, 8th Floor
       P.O. Box 1150
       Wilmington, Delaware 19899
       Attn: William P. Bowden, Esq.;

(j)    Sullivan & Cromwell LLP
       125 Broad Street
       New York, New York 10004
       Attn: Stacey R. Friedman, Esq.; and

(k)    Landis Rath & Cobb LLP
       919 Market Street, Suite 1800
       P.O. Box 2087
       Wilmington, Delaware 19899
       Attn: Adam G. Landis, Esq.

no later than the Plan Objection Deadline. Pursuant to Bankruptcy Rule 3020(b), if no objection

is timely filed, this Court may determine that the plan has been proposed in good faith and not by

any means forbidden by law without receiving evidence on such issues.

63. The Debtors are authorized to file and serve replies or an omnibus reply to any such objections no later than **November 24, 2010 at 12:00 p.m.** The Debtors are relieved from the page limit set forth in Local Rule 7007-2(a)(iv) when filing any brief or declaration in support of Plan confirmation.

64. Objections to confirmation of the Plan that are not timely filed, served, and actually received in the manner set forth above shall not be considered and shall be deemed overruled.

### Confirmation Hearing Notice

65. The notice substantially in the form annexed hereto as <u>Exhibit 3</u> (the "<u>Confirmation Hearing Notice</u>") is **APPROVED**.

66. The Debtors are authorized to publish the Confirmation Hearing Notice, within fifteen (15) business days of entry of this Order, or as soon thereafter as is reasonably practicable, in *The New York Times (National Edition)*, *The Wall Street Journal*, and *The Seattle Times*.

67. The Debtors are authorized, in their sole discretion, to take or refrain from taking any action necessary or appropriate to implement the terms of and the relief granted in this Order without seeking further order of the Court.

68.     The Debtors are authorized to make nonsubstantive changes to the Disclosure Statement, the Plan, the Ballots, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan and any other materials in the Solicitation Packages prior to mailing.

Dated:  October 21, 2010
        Wilmington, Delaware

_____
THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE