UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------------x
*In re*                                          : Chapter 11
                                                 :
WASHINGTON MUTUAL, INC., et al.,                 : Case No. 08-12229 (MFW)
                                                 :
        Debtors.                                 : (Jointly Administered)
                                                 :
---------------------------------------------------------------x
                                                 :
WASHINGTON MUTUAL, INC., and                     :
WMI INVESTMENT CORP.,                            :
                                                 :
        Plaintiffs,                              :
                                                 :
-against-                                        : Adversary Proceeding
                                                 : No.: 10-_____ (MFW)
ALL CLAIMANTS NAMED IN PROOFS OF                 :
CLAIM NOS. 552, 1025, 1556, 2024, 2298, 2307,    :
2319, 2398, 2421, 2480, 2549, 3246, 3249, 3251,  :
3252, 3254, 3256, 3257, 3258, 3710, and 3777,    :
                                                 :
        Defendants.                              :
---------------------------------------------------------------x

## COMPLAINT

Washington Mutual, Inc. ("WMI") and WMI Investment Corp. ("WMI Investment"), as debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby bring this Complaint for a declaratory judgment that the above-captioned claims, filed by certain holders of debt securities issued by Washington Mutual Bank ("WMB"), must be subordinated pursuant to section 510(b) of title 11 of the United States Code ("the Bankruptcy Code").[1]

---

[1] The relief sought by the Debtors is expressly subject to and contingent on the terms and conditions of the *Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code*, dated October 6, 2010, Dkt. 5548 (the "Plan"), the *Disclosure Statement for the Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code*, dated October 6, 2010, Dkt. 5549 ("Disclosure Statement") and the Court's confirmation of the Plan and Disclosure Statement.

## I. PRELIMINARY STATEMENT

1. In late 2005, WMB, a federally chartered savings association, established a Global Note Program that provided for the issuance of up to $22 billion in debt securities through Senior Global Notes and Subordinated Global Notes (collectively, the "WMB Notes"). Certain holders of WMB Notes (the "WMB Noteholders"),[2] the Marathon Credit Claimants[3] (collectively, the "Bondholders"), and other holders of WMB Senior Notes (the "Other Noteholders")[4], and collectively with the WMB Noteholders and Marathon Credit Claimants (the "Senior Noteholders"), have filed proofs of claims against the Debtors asserting claims arising from purchases of the WMB Notes (collectively, the "Claims"). The Claims include, among others, requests for damages under state and federal securities laws, rescission of the purchase of the WMB Notes, and payments allegedly due under the WMB Notes. The Debtors believe that the Senior Noteholders' Claims are meritless.[5] Regardless, because the Claims arise from the purchase or sale of securities—namely, the WMB Notes—the Debtors file this adversary proceeding for a declaratory judgment that the Claims must be subordinated pursuant to section 510(b) of the Bankruptcy Code.

2. Section 510(b) of the Bankruptcy Code mandates subordination of all claims "arising from rescission of a purchase or sale of a security... [or] for damages arising from the purchase or sale of such a security." 11 U.S.C. § 510(b). The WMB Notes at issue here are clearly securities. Under the Bankruptcy Code, "[t]he term 'security' – (A) includes – (i) note . .

---

[2] The WMB Noteholders asserted Proof of Claim No. 2480.

[3] The Marathon Credit Claimants asserted Proof of Claim Nos. 3710 and 3711.

[4] The Other Noteholders asserted Proof of Claim Nos. 552, 1025, 1556, 2024, 2298, 2307, 2319, 2398, 2421, 2480, 2549, 3246, 3249, 3251, 3252, 3254, 3256, 3257, 3258, 3710, and 3777.

[5] The Debtors previously filed an objection to the WMB Noteholders' and Marathon Credit Claimants' claims on grounds including lack of standing and failure to state a claim, while expressly reserving the right to assert additional objections, including subordination. See Debtors' Corrected Twentieth (20th) Omnibus (Substantive) Objection to Claims ¶ 122. Dkt. 2326.

. [and] (iv) bond." 11 U.S.C. § 101(49). Furthermore, the Bondholders have expressly argued that the WMB Notes are securities. See infra ¶¶ 32-33 (quoting WMB Noteholders' and Marathon Credit Claimants' assertions).

3.  Indeed, the Court's holding that the WMB Noteholders and Marathon Credit Claimants have standing to assert direct misrepresentation and other securities fraud claims depended on the Court's conclusion that "the [B]ondholders have asserted a securities fraud-type claim," Hr'g Tr. 129: 15-16,[6] because, if the WMB Notes were not securities, the WMB Noteholders and Marathon Credit Claimants would lack standing. See id. at 129:8-22 (distinguishing indirect claims based on certificates of deposit, which are not securities). Importantly, in holding that the WMB Noteholders and Marathon Credit Claimants have standing to assert misrepresentation and securities-fraud claims, the Court specifically rejected the argument that these Bondholders are analogous to uninsured depositors who are owed a debt from the estate. Hr'g Tr. 46: 2-14, 129: 11-14.

4.  After characterizing the WMB Notes as securities for purposes of granting the WMB Noteholders and Marathon Credit Claimants standing to pursue the claims, the Court should now confirm the corollary that these and all other claims arising from the purchase or sale of the WMB Notes are subject to mandatory subordination under section 510(b).

5.  Likewise, to the extent the Other Noteholders have claims that arise from the purchase or sale of securities, those claims also must be subordinated pursuant to section 510(b) of the Bankruptcy Code.

6.  The Debtors seek a declaration that all of the Senior Noteholders' Claims must be subordinated pursuant to section 510(b) to ensure that the Senior Noteholders, claimants who

---

[6] All citations to "Hr'g Tr." refer to the April 6, 2010 hearing before this Court on Debtors' Corrected Twentieth Omnibus (Substantive) Objection To Claims. Dkt. 2205.

3

assumed the risk of investing in securities issued by an affiliate of WMI, do not inequitably dilute the claims of WMI's general unsecured creditors in contravention of bedrock principles of the Bankruptcy Code.

## II. PARTIES

7. Plaintiff Washington Mutual, Inc., a savings and loan holding company, is incorporated in the State of Washington, with its principal offices located at 925 Fourth Avenue, Seattle, Washington 98104.

8. Plaintiff WMI Investment Corp. is a direct subsidiary of WMI incorporated in the State of Delaware. WMI Investment served as an investment vehicle for WMI and holds a variety of securities. WMI Investment Corp. has its principal offices at 925 Fourth Avenue, Seattle, Washington 98104.

9. Among the Bondholders are claimants asserting Proofs of Claim Nos. 2480, 3710, and 3711. These Senior Noteholders include sophisticated, institutional investors, such as insurance companies, institutional fund managers, investment banks, and private investment funds. Claim 2480 is asserted by a group self-identified as the "WMB Noteholder Group."[7] Claims 3710 and 3711 are asserted by a group referred to in the claims proceedings as the

---

[7] According to the WMB Noteholders' Response and Opposition to the Legal Issues Set Forth In Debtors' Corrected Twentieth (20th) Omnibus (Substantive) Objection to Claims ("Noteholders' Response"), Dkt. 2466, the WMB Noteholders include Thrivent Financial for Lutherans, AEGON USA Investment Management, LLC (AEGON Life Insurance (Taiwan) and Transamerica Financial Life Insurance Company), PPM America, Inc. (Prudential Assurance Company, Ltd., JNL VA High Yield Bond Fund, Jackson National Life Insurance Company of New York, and Jackson National Life Insurance Company), New York Life Investment Management LLC, Legal & General Investment Management (Legal & General Investment Management America), The Northwestern Mutual Life Insurance Co. (Northwestern Mutual Life Insurance Co., Northwestern Long Term Care Insurance Company, Northwestern Mutual Series Fund, Inc. and its Select Bond Portfolio, and Northwestern Mutual Series Fund, Inc. and its Balanced Portfolio), ING Direct NV, Sucursal en Espana and their affiliates. Noteholders' Response at 1 n.1. According to the Noteholders' Response, the WMB Noteholders "are the legal or beneficial holders of, or have control or discretionary investment authority with respect to, in excess of $600 million in aggregate principal amount outstanding of Senior Notes and Subordinated Notes issued by Washington Mutual Bank." Id.

"Marathon Credit Claimants."[8] Collectively, these Bondholders claim approximately $3.7 billion in outstanding Senior Notes and Subordinated Notes issued by WMB during the Global Note Program that was established in 2005.

10. Defendant Bondholders also include all of the claimants asserting Proofs of Claim Nos. 552, 1025, 1556, 2024, 2298, 2307, 2319, 2398, 2421, 2480, 2549, 3246, 3249, 3251, 3252, 3254, 3256, 3257, 3258, 3710, and 3777. A chart listing each claimant alongside its corresponding claim number, the debtor against whom the claim is asserted, and the amount of the claim, is attached as Exhibit A.

### III. JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

12. Venue is proper under 28 U.S.C. §§ 157(a), 1408, and 1409.

13. The statutory prerequisites for the relief requested herein are 11 U.S.C. § 105(a), as amended, 28 U.S.C. § 2201, and Federal Rule of Bankruptcy Procedure 7001.

---

[8] In Proofs of Claim Nos. 3710 and 3711, the claimants identified themselves as Altma Fund Sicav P.L.C. In Respect Of Russell Sub-Fund; Anchorage Capital Master Offshore, Ltd.; Bank of Scotland plc; Cetus Capital, LLC; Corporate Debt Opportunities Fund, Ltd.; Fir Tree Capital Opportunity Master Fund, L.P.; Fir Tree Mortgage Opportunity Master Fund, L.P.; Fir Tree Value Master Fund, L.P.; HFR ED Select Fund IV Master Trust; Juggernaut Fund, L.P.; Lyxor/York Fund Limited; Marathon Credit Opportunity Master Fund, Ltd.; Permal York Ltd.; Quintessence Fund L.P.; QVT Fund LP; Silver Point Capital Fund, L.P.; Silver Point Capital Offshore Fund, Ltd.; The Governor and Company of the Bank of Ireland; The Värde Fund, L.P.; The Värde Fund VI-A, L.P.; The Värde Fund VII-B, L.P.; The Värde Fund VIII, L.P.; The Värde Fund IX, L.P.; The Värde Fund IX-A, L.P.; Värde Investment Partners (Offshore), Ltd.; Värde Investment Partners, L.P.; Windmill Master Fund, L.P.; York Capital Management, L.P.; York Credit Opportunities Fund, L.P.; York Credit Opportunities Master Fund, L.P.; York Investment Master Fund, L.P.; York Select, L.P.; and York Select Master Fund, L.P. Claims 3710, 3711 ¶ 1 n.1. In the Bank Bondholders' Preliminary Response To The Legal Issues Set Forth In Debtors' Twentieth (20th) Omnibus (Substantive) Objection To Claims ("Marathon Response"), Dkt. 2469, the claimants asserted that the response was also filed on behalf of additional, alleged holders of WMB Senior Notes who retained counsel subsequent to the filing of Proofs of Claim Nos. 3710 and 3711. Marathon Response at 1 n.1.

## IV. BACKGROUND

### A. Introduction

14. WMI's predecessor was formed in 1889 and eventually became a capital stock savings bank after decades of growth and diversification. In 1994, WMI was formed as a savings and loan holding company under the laws of the State of Washington. WMI was the ultimate parent of WMB. WMI also indirectly owned WMB's subsidiaries, including Washington Mutual Bank fsb ("WMBfsb").

15. Like all savings and loan holding companies, WMI was subject to regulation by the Office of Thrift Supervision ("OTS"). Like all depository institutions with federal thrift charters, WMB and WMBfsb were subject to regulation and examination by the OTS. Also, various federal and state authorities, including the Federal Deposit Insurance Corporation ("FDIC"), oversaw WMI's banking and non-banking subsidiaries.

16. On September 25, 2008, the Director of the OTS, by order number 2008-36, appointed the FDIC as receiver for WMB (the "Receivership"). The FDIC immediately sold substantially all of the assets of WMB to JPMorgan Chase Bank, N.A. ("JPMC"), pursuant to that certain Purchase and Assumption Agreement, Whole Bank, dated September 25, 2008 (as amended, modified, or supplemented, the "P&A Agreement").

17. On September 26, 2008 (the "Commencement Date"), each of the Debtors commenced with this Court a voluntary case pursuant to chapter 11 of the Bankruptcy Code. On October 3, 2008, the Court entered an order, pursuant to Bankruptcy Rule 1015(b), authorizing the joint administration of the Debtors' chapter 11 cases.

18. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## B. The Senior Noteholders' Purchase of Debt Securities from WMB

19. On December 21, 2005, WMB established the Global Note Program that provided for the issuance of up to $22 billion of Senior Global Notes and Subordinated Global Notes, or both, from time to time. See Washington Mutual Bank Dec. 21, 2005 Offering Circular (the "Offering Circular").

20. Section 101(49) of the Bankruptcy Code provides as follows: "the term 'security' – (A) includes – (i) note . . . [and] (iv) bond." 11 U.S.C. § 101(49).

21. The Offering Circular stated that the WMB Notes are "[d]ue 270 Days or More from Date of Issue." See Offering Circular, Cover Page. As a result, the WMB Notes were not excluded from the definition of security under the Securities Exchange Act, § 3(a)(10), 15 U.S.C. § 78c(a)(10), which is "virtually identical" to the definition of security under the Securities Act of 1933. See Reves v. Ernst & Young, 494 U.S. 56, 61 n.1 (1990) (internal quotation marks omitted); see also Jarvis, Hr'g Tr. 99: 5-17, 106:2-5 (arguing that "more than 270 days out, this is a security for the purposes of federal securities laws" and that the time period makes "quite clear that the intent was that these bonds are intended to be securities within the meaning of the federal securities laws").

22. The WMB Notes were offered "only to institutional investors that are 'accredited investors' ('Institutional Accredited Investors') within the meaning of Rule 501(a) under the United States Securities Act of 1933." Offering Circular at 1. Under Rule 501(a), an "Accredited Investor" includes, among others, the following: banks, savings and loan associations, brokers or dealers registered under section 15 of the Securities Exchange Act of 1934, insurance companies, and investment companies.

7

23. The WMB Notes were offered through distribution agents, including Barclays Capital, Citigroup, Credit Suisse First Boston, Deutsche Bank Securities, JPMC, Goldman, Sachs & Co., Lehman Brothers, Morgan Stanley, Merrill Lynch & Co., and UBS Investment Bank. See id. at 1.

24. The Senior Noteholders did not all provide documentation of their alleged purchases of the WMB Notes. It appears that the WMB Noteholders and Marathon Credit Claimants, for example, claim that they acquired the WMB Notes upon the issuance of the WMB Notes by WMB beginning in the first quarter of 2006 and the first half of 2007, or thereafter on the secondary market. See Claims 3710, 3711 ¶ 10; Hr'g Tr. 85: 5-6.

### C. The WMB Noteholders and Marathon Credit Claimants Proofs of Claim Proceeding

25. On March 31, 2009, the Marathon Credit Claimants filed two proofs of claim in this Court, which they amended on June 1, 2009. See Claims 3710, 3711. Claim 3710 was filed against WMI Investment; Claim 3711 was filed against WMI. Claims 3710 and 3711 are essentially identical and assert claims for (1) corporate veil-piercing, alter ego, and similar principles, (2) substantive consolidation, (3) improper claim to purported deposits, (4) undercapitalization of, failure to support, and looting of the bank, (5) misrepresentation and omissions under federal and state securities laws, (6) conditional exchange of REIT trust preferred securities, (7) tax refunds and losses, (8) mismanagement and breach of fiduciary and other duties, (9) claim for goodwill litigation award, and (10) fraudulent transfer. On March 27, 2009, the WMB Noteholders filed their proof of claim against WMI in this Court. See Claim 2480. Claim 2480 asserts substantially the same claims as the Marathon Credit Claimants, but does not assert claims for corporate veil-piercing and substantive consolidation.

26. The Bondholders seek damages arising from the purchase of the WMB Notes. See Claim 2480 ¶ 32; Claims 3710, 3711 ¶ 13. Specifically, at the Hearing, the Bondholders compared their claims to that of a plaintiff who "seeks to recover the difference between the alleged inflated price he paid for his stock and the price he would have paid if defendants had made accurate statements regarding such subjects as the adequacy of [defendant's] loan reserves and the strength of [defendant's] assets," which "are the exact type of misrepresentations that were made here." Schwartz, Hr'g Tr. 109: 25-110: 1-7.

27. The WMB Noteholders also claim that, if they "establish[] that false statements induced them to purchase their [WMB Notes], those WMB Noteholders who still hold such securities are entitled to rescission under the Securities Act of Washington." Noteholders' Response ¶ 72.

28. On January 22, 2010, the Debtors filed the Twentieth (20th) Omnibus (Substantive) Objection to Claims, in which the Debtors objected to the claims asserted by these Bondholders, while also expressly reserving the right to argue that the claims must be subordinated.[9] Dkt. 2205 (¶ 122).

29. On March 5, 2010, the WMB Noteholders and Marathon Credit Claimants responded to the Twentieth Omnibus (Substantive) Objection to Claims. Dkt. 2470; 2469. A subset of the WMB Noteholders filed an additional response pertaining solely to the misrepresentation claim. Dkt. 2466. Paulson & Co., Inc. ("Paulson"), a WMB noteholder that had joined in Claim 2480, filed a separate response in which Paulson withdrew its claim set forth in Section VIII of Claim 2480 and joined in the Marathon Credit Claimants' response pertaining to Sections I, II.A, and II.B of Claim 2480. Dkt. 2467.

---

[9] The Corrected Twentieth (20th) Omnibus (Substantive) Objection to Claims that was filed on February 5, 2010, did the same. Dkt. 2326 (¶ 122).

30. On March 26, 2010, the Debtors filed the Reply to the Various Preliminary Responses to the Legal Issues Set Forth in Debtors' Twentieth Omnibus (Substantive) Objection to Claims. Dkt. 2620.

31. On April 6, 2010, the Court heard oral arguments on the Twentieth Omnibus (Substantive) Objection (the "Hearing").

32. At the Hearing, the Bondholders argued that, although the WMB Notes were debt securities, they were every bit as much a security as equity securities. The Bondholders' counsel made many unequivocal statements to this effect, including the following:

- "It's quite clear that the intent was that these bonds are intended to be securities within the meaning of the federal securities laws." Jarvis, Hr'g Tr. 99: 15-17.

- "[I]n our case, it's a security. The damages were incurred when we purchased the bond at a price for more than it was worth." Schwartz, Hr'g Tr. 108: 17-19.

- Counsel argued against "conflating the idea that the only security is really an equity security. We have to keep in mind that debt security is an equity; they're exactly the same, no difference." Jarvis, Hr'g Tr. 128: 18-20.

33. The Bondholders argued that the nature of the WMB Notes and the injury allegedly suffered by the Bondholders allowed no room to differentiate the WMB Notes from equity securities for purposes germane to the federal and state securities laws:

- "The WMB Noteholders relied upon the offering Documents in purchasing or retaining WaMu Bank Notes at these inflated prices, ultimately causing at least some portion of their losses." Noteholders' Response ¶ 39.

- "They bought these securities because there was an enormous amount of information in the marketplace . . . . [D]iscussions of the performance of the business are being made . . . ." Jarvis, Hr'g Tr. 100: 2-3, 8-9.

- "[T]hey were injured when they bought a bond that was worth far less than they paid for it. And . . . why was it worth less? Because it was a risky, risky enterprise that was not disclosed. When you buy a bond, it has a certain interest rate. If the extent of the bond or the company appears less risky, you

may actually pay a little premium . . . . To the extent you think that the company in which you are investing through debt securities is more risky, then you pay less than a hundred . . . . And the injury occurred because they bought into a business that was considerably riskier than it was represented to be . . . ." Jarvis, Hr'g Tr. 101: 23-25, 102: 1-4, 7-9, 11-13.

- "WaMu . . . was downgraded a number of times by the ratings agencies . . . . Over this two day period, WaMu's common stock and Notes fell precipitously, with common stock plunging . . . and 7.250% Notes dropping from $42.00 to $15.10 per $100 of par value, a decline of nearly 65%." Noteholders' Response ¶ 42.

- "[O]ur bonds are trading today at forty-five cents on the dollar. Had [WMI] said 'Excuse me, WMI's going to have all the assets, not WMB . . . ,' our bonds would not have been worth par and they would not have traded at par." Anker, Hr'g Tr. 73: 4-9.

34. At the Hearing, the Court concluded that the WMB Notes should not be viewed as analogous to certificates of deposit, explaining that "CDs are not securities. I appreciate there are some similarities but I think, in this instance, the bondholders have asserted a securities fraud-type claim." Hr'g Tr. 129:14-16

35. To the extent the Other Bondholders assert claims arising from their purchase or sale of WMB Notes, the same reasoning applies. The claims of the Other Bondholders arise from the purchase or sale of securities and thus are subject to subordination pursuant to section 510(b) of the Bankruptcy Code.

36. If these and all other Senior Noteholders prevail on any claim and the Bondholders' right to payment is not subordinated to the claims of general unsecured creditors, claimants in the latter group will receive a drastically diminished payment because it is likely that the amounts due to the unsecured claimants will exceed the assets available for distribution from the Debtors' estates.

# COUNT I

## *(Declaratory Judgment—The Senior Noteholders' Claims Are Subordinated To The Claims Of General Unsecured Creditors)*[10]

37. The Debtors repeat and re-allege each and every allegation set forth in the preceding paragraphs with the same force and effect as if hereinafter fully set forth at length.

38. The Senior Noteholders' Claims against the Debtors are subject to mandatory subordination under 11 U.S.C. § 510(b).

39. The Bankruptcy Code subordinates the claims of those who purchase securities to the claims of unsecured creditors:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security . . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security . . . .

11 U.S.C. § 510(b).

40. The very purpose of 11 U.S.C. § 510(b) is to ensure that those who voluntarily assume the risks inherent in the purchase of securities bear the losses that flow from those risks and that they are not permitted to spread the losses to general unsecured creditors who did not elect to bear such risk. In enacting 11 U.S.C. § 510(b), Congress explained that the

> allocation of assets in a bankruptcy case is a zero-sum situation, and [] rules of allocation in bankruptcy should be predicated on allocation of risk. The two risks to be considered are the risk of insolvency of the debtor and the risk of an unlawful issuance of securities. While both security holders and general creditors assume the risk of insolvency . . . *the risk of illegality in securities issuances should be borne by those investing in securities and not by general creditors.*"

---

[10] The Debtors continue to deny the merits of all claims that the Bondholders have asserted against the Debtors' estates.

H.R. REP. NO. 95-595, pt. 7, at 195 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6156 (emphasis added).

41. The WMB Notes are securities under the Bankruptcy Code, under which "[t]he term 'security' – (A) includes – (i) note . . . [and] (iv) bond." 11 U.S.C. § 101(49).

42. In the instant chapter 11 cases, the Court has ruled that the WMB Noteholders and Marathon Credit Claimants have standing to bring securities fraud claims and rejected the argument that the Bondholders are analogous to unsecured creditors such as holders of certificates of deposit with regard to the instrument they hold and the injury they suffered. Hr'g Tr. 46: 2-14, 129: 11-14. This determination leaves no room to characterize the WMB Notes as anything other than securities subject to mandatory subordination pursuant to 11 U.S.C. § 510(b). The same reasoning applies to the WMB Notes purchased by all other Senior Noteholders.

43. The WMB Noteholders' and Marathon Credit Claimants' characterizations of their alleged injuries demonstrate that the claims must be subordinated to carry out the fundamental purpose of 11 U.S.C. § 510(b): that only those who assume the risks that accompany the purchase of securities bear those risks.

44. The WMB Notes were issued by WMB, the wholly-owned subsidiary of WMI and an "affiliate" of each of the Debtors, so the claims are subject to mandatory subordination under 11 U.S.C. § 510(b).[11]

45. Each of the Senior Noteholders' Claims are causally linked to the purchase of the WMB Notes. The Senior Noteholders' Claims seek "damages arising from the purchase or sale

---

[11] The Debtors reiterate their objection throughout the WMB Noteholders and Marathon Credit Claimants proceedings that the Court should reject any attempt to hold the Debtors responsible for WMB's obligations under the WMB Notes.

of . . . a security" i.e., the WMB Notes, and, as such, are subject to mandatory subordination under 11 U.S.C. § 510(b).

46. To the extent that the Senior Noteholders' Claims do not seek "damages arising from the purchase or sale of . . . a security," the Claims seek "rescission of a purchase or sale of a security" and therefore are subject to mandatory subordination under 11 U.S.C. § 510(b).

47. The Debtors file this complaint seeking a declaratory judgment that the Bondholders' claims are subject to mandatory subordination under 11 U.S.C. § 510(b).

48. The WMB Notes are unsecured obligations of WMB, and the Claims, if successfully asserted and not subject to subordination, would constitute unsecured obligations of the Debtors. Thus, the Court should declare that the Senior Noteholders' Claims are subordinated to all unsecured creditors of the Debtors pursuant to 11 U.S.C. § 510(b).

49. There is an actual controversy between the parties on this issue because the parties are actively contesting the aforementioned claims. Furthermore, the resolution of this issue will facilitate the Debtors' ability to resolve other claims against the Debtors' estates.

50. Accordingly, pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001, the Debtors request that this Court enter a declaratory judgment that, if the Court holds that all claimants asserting proofs of claim nos. 552, 1025, 1556, 2024, 2298, 2307, 2319, 2398, 2421, 2480, 2549, 3246, 3249, 3251, 3252, 3254, 3256, 3257, 3258, 3710, and 3777, are entitled to a recovery on any claim against the Debtors, any and all claims asserted against the Debtors' estates for such recovery are subordinated to the claims of all unsecured creditors pursuant to 11 U.S.C. § 510(b).

## RESERVATION OF RIGHTS

51.     Debtors state that this complaint is made without prejudice to the rights of the Debtors to seek to disallow the Claims on any other grounds and Debtors reserve all of their rights to further object to the validity and amount of the Claims.

## PRAYER FOR RELIEF

WHEREFORE, the Debtors respectfully request that the Court grant the following relief:

- A. For declaratory judgment that, if the Court holds that all claimants asserting proofs of claim nos. 552, 1025, 1556, 2024, 2298, 2307, 2319, 2398, 2421, 2480, 2549, 3246, 3249, 3251, 3252, 3254, 3256, 3257, 3258, 3710, and 3777, is entitled to a recovery on any claim against the Debtors, any and all claims asserted against the Debtors' estates for such recovery are subordinated to the claims of all unsecured creditors pursuant to 11 U.S.C. § 510(b);

- B. And for such other relief as the Court deems just and proper, including costs and attorneys' fees.

Dated: October 21, 2010
Wilmington, Delaware

**ELLIOTT GREENLEAF**

/s/ Rafael X. Zahralddin-Aravena

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Neil R. Lapinski (DE Bar No. 3645)
Shelley A. Kinsella (DE Bar No. 4023)
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
E-mail: rxza@elliottgreenleaf.com
E-mail: nrl@elliottgreenleaf.com
E-mail: sak@elliottgreenleaf.com

-and-

Brian S. Rosen, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153

Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Thomas C. Frongillo, Esq.
Patrick J. O'Toole, Jr., Esq.
WEIL, GOTSHAL & MANGES LLP
100 Federal Street, Floor 34
Boston, Massachusetts 02110
Telephone: (617) 772-8300
Facsimile: (617) 772-8333

-- and --

Peter E. Calamari, Esq.
Susheel Kirpalani, Esq.
David Elsberg, Esq.
Benjamin Finestone, Esq.
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
51 Madison Avenue
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 8489-7100

*Attorneys for Washington Mutual, Inc. and WMI Investment Corp.*