PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS
HERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS YOUR CLAIMS

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------------x
:
*In re* : **Chapter 11**
:
**WASHINGTON MUTUAL, INC., et al.,**[1] : **Case No. 08-12229 (MFW)**
:
**Debtors.** : **(Jointly Administered)**
:
: Hearing Date: December 17, 2010 at 10:30 a.m. (EST)
------------------------------------------------------------x Objection Deadline: December 6, 2010 at 4:00 p.m. (EST)

### DEBTORS' SIXTIETH OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS (CLAIM NOS. 2108, 2240, 2241, 2246, 2247, 2248, 2604, 2606, 2629, 2631, 2633, 2634, 2635, 2636, 2637, AND 3242)

Washington Mutual, Inc. ("WMI" or the "Debtor"), as debtor and debtor in possession, pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), hereby submits this sixtieth substantive omnibus objection (the "Sixtieth Omnibus Objection") to the proofs of claim filed by current or former officers and directors of the Debtors (collectively, the "Claimants") and as set forth on Exhibit "A" hereto (collectively, the "Claims"),[2] and respectfully represents as follows:

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

[2] Claimants and Claims numbers set forth on Exhibit "A" are incorporated herein.

## Jurisdiction

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2. On September 26, 2008 (the "Commencement Date"), each of the Debtors commenced with this Court a voluntary case pursuant to chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 3, 2008, the Court entered an order, pursuant to Bankruptcy Rule 1015(b), authorizing the joint administration of the Debtors' chapter 11 cases.

3. On October 15, 2008, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On January 11, 2010, the U.S. Trustee appointed an official committee of equity security holders (the "Equity Committee"). By agreed order, dated July 22, 2010, the Court directed the U.S. Trustee to appoint an examiner to investigate certain matters. On July 26, 2010, the U.S. Trustee appointed Joshua R. Hochberg of McKenna Long & Aldridge LLP as examiner (the "Examiner").

4. On October 6, 2010, the Debtors filed their *Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* (as amended and as it may be further amended, the "Plan") and a related disclosure statement (the "Disclosure Statement"). By order, dated October 21, 2010, the Court approved the adequacy of the

information contained in the Disclosure Statement and established December 1, 2010 for the commencement of the hearing to consider confirmation of the Plan.

## WMI's Business

5. WMI, a holding company incorporated in the State of Washington, is the direct parent of WMI Investment, which served as an investment vehicle for WMI and holds a variety of securities. WMI Investment is incorporated in the State of Delaware.

6. Prior to the Commencement Date, WMI operated as a savings and loan holding company that owned Washington Mutual Bank ("WMB") and, indirectly, such bank's subsidiaries, including Washington Mutual Bank fsb ("WMBfsb"). WMI still owns all of the outstanding stock of WMB, and WMI also has certain non-banking, non-debtor subsidiaries (the "Non-debtor Subsidiaries"). Like all savings and loan holding companies, WMI was subject to regulation by the Office of Thrift Supervision (the "OTS"). WMB and WMBfsb, in turn, like all depository institutions with federal thrift charters, were subject to regulation and examination by the OTS. In addition, WMI's banking and nonbanking subsidiaries were overseen by various federal and state authorities, including the Federal Deposit Insurance Corporation ("FDIC").

7. On September 25, 2008, the Director of the OTS, by order number 2008-36, appointed the FDIC as receiver for WMB and advised that the receiver was immediately taking possession of WMB (the "Receivership"). Immediately after its appointment as receiver, the FDIC purportedly sold substantially all the assets of WMB, including the stock of WMBfsb, to JPMorgan Chase Bank, National Association ("JPMorgan Chase") pursuant to that certain Purchase and Assumption Agreement, Whole Bank, dated as of September 25, 2008 (the "Purchase Agreement").

8. WMI's assets include its common stock interest in WMB, its interest in its non-banking subsidiaries, and more than $4 billion of cash that WMI and its non-banking subsidiaries (including WMI Investment) had on deposit at WMB and WMBfsb immediately prior to the time the FDIC was appointed as receiver.

### The Bar Date and Schedules

9. On December 19, 2008, the Debtors filed with the Court their schedules of assets and liabilities and their statements of financial affairs. On January 27, 2009, and February 24, 2009, WMI filed with the Court its first and second, respectively, amended schedule of assets and liabilities and its first and second, respectively, amended statements of financial affairs. On January 14, 2010, WMI filed a further amendment to its statement of financial affairs (collectively, the "Schedules").

10. By order, dated January 30, 2009 (the "Bar Date Order"), the Court established March 31, 2009 (the "Bar Date") as the deadline for filing proofs of claim against the Debtors in these chapter 11 cases. Pursuant to the Bar Date Order, each creditor, subject to certain limited exceptions, was required to file a proof of claim on or before the Bar Date.

11. In accordance with the Bar Date Order, Kurtzman Carson Consultants, LLC ("KCC"), the Debtors' court-appointed claims and noticing agent, mailed notices of the Bar Date and proof of claim forms to, among others, all of the Debtors' creditors and other known holders of claims as of the Commencement Date. Notice of the Bar Date also was published once in *The New York Times (National Edition), The Wall Street Journal, The Seattle Times*, and *The Seattle Post-Intelligencer*.

## Proofs of Claim

12. Over 3,900 proofs of claim have been filed in these chapter 11 cases. The Debtors are in the process of reviewing and reconciling the filed proofs of claim. To date, approximately 2,000 claims have been disallowed or withdrawn.

13. As part of their ongoing review, the Debtors have reviewed the Claims and have concluded that they are appropriately objected to on the basis set forth below.

## Background to the Claims

14. Prior to the Commencement Date, various plaintiffs (the "Prepetition Plaintiffs") filed class action litigations against WMI and one or more of the Claimants for alleged wrongful conduct by the Debtors and their officers and directors with respect to the subprime mortgage market and financial reporting.

### A. The Prepetition Class Actions

15. On or about May 7, 2008 and May 21, 2008, some of these litigations were consolidated into a lead action styled *Washington Mutual Inc., Securities, Derivative & ERISA Litigation*, (W.D. Wa. Case No. 08-md-01919), in the United States District Court for the Western District of Washington (the "Securities, Derivative & ERISA Litigation").[3] Each one of

---

[3] One or more of the Claimants are defendants in the following member cases of the Securities, Derivative & ERISA Litigation: *Alexander v. Washington Mutual, Inc., et al.* (W.D. Wa. Case No. 07-cv-01906), *Bushansky v. Washington Mutual, Inc., et al.* (W.D. Wa. Case No. 07-cv-01874), *Bussey v. Washington Mutual, Inc., et al.* (W.D. Wa. Case No. 07-cv-01879), *Mitchell v. Washington Mutual, Inc., et al.* (W.D. Wa. Case No. 07-cv-01938), and *Ware v. Washington Mutual, Inc., et al.* (W.D. Wa. Case No. 07-cv-01997), which were consolidated on May 7, 2008 into one action styled *In re Washington Mutual, Inc. ERISA Litigation* (W.D. Wa. Case No. 07-cv-01874); *Harrison v. Killinger, et al.* (W.D. Wa. Case No. 07-cv-01827) and *Sneva v. Killinger, et al.* (W.D. Wa. Case No. 07-cv-01826), which were consolidated on May 21, 2008 into one action styled *In re Washington Mutual, Inc. Derivative Litigation* (W.D.Wa. Case No. C07-1826); and *In re Washington Mutual, Inc. Securities Litigation* (W.D.Wa. Case No. C08-0387). On January 23, 2009, the United States District Court for the Western District of Washington dismissed the lead case *In re Washington Mutual, Inc. Derivative Litigation* (W.D.Wa. Case No. C07-1826).

the Claimants, except Oppenheimer, is a defendant in the Securities, Derivative & ERISA Litigation.

16. On or about February 28, 2008, other shareholder derivative litigations filed by certain of the Prepetition Plaintiffs were consolidated into one action styled *In re Washington Mutual, Inc. King County Derivative Litigation*, (Wa. Super. Ct. Case No. 07-2-36548-6), in the King County Superior Court of the State of Washington (the "King County Derivative Litigation").[4] Each one of the Claimants, except Chazen, Wood, and Oppenheimer, is a defendant in the King County Derivative Litigation.

17. On or about November 29, 2005, certain of the Prepetition Plaintiffs filed a derivative action in the Superior Court of the State of Washington in and for King County, which was removed on December 23, 2005 to the United States District Court for the Western District of Washington in an action styled *Lee Family Investments v. Killinger et al.* (W.D. Wa. Case No. 05-cv-02121) (the "Lee Family Investments Litigation"). Each one of the Claimants, except Rotella, Smith, Lillis, Chazen, Montoya, and Leppert, was named as a defendant in the Lee Family Investments Litigation. This derivative action was subsequently dismissed on November 19, 2009.

18. On or about November 15, 2004, the United States District Court for the Western District of Washington consolidated other class action litigations into one action styled *South Ferry LP #2 v. Kerry Killinger et al.*, (W.D. Wa. Case No. 04-cv-01599) (the "South Ferry Litigation")[5] (collectively with the Securities, Derivative & ERISA Litigation, King County

---

[4] All of the Claimants, except Chazen, Wood, and Oppenheimer, are defendants in the member case *Catholic Medical Mission v. Killinger, et al.* (Wa. Super. Ct. Case No. 07-2-36548-6).

[5] Oppenheimer is a defendant in the member cases *Steven Burda v. Kerry Killinger et al.*, (W.D. Wa. Case No. 04-cv-01738) and *Mary Phillips v. Kerry Killinger et al.*, (W.D. Wa. Case No. 04-cv-01959). In her proof of claim, Oppenheimer also lists the following members cases in which she is not a defendant: *Karl*

Derivative Litigation, and Lee Family Investments Litigation, the "Prepetition Class Actions").
Claimant Oppenheimer is a defendant in the South Ferry Litigation.

**B.     The Lift Stay Motions and Orders Modifying the Automatic Stay to Allow Advancement of Defense Costs to Claimants**

19.    On or about November 26, 2008, WMI filed a motion ("First Lift Stay Motion") for an order modifying the automatic stay to allow the Debtors' present and former officers and directors to recover payment and advancement of defense costs from the Debtors' third party insurance companies with respect to various litigations listed in an attached exhibit. [D.I. 365].[6] On or about December 16, 2008, this Court issued an Order ("First Lift Stay Order") granting the First Lift Stay Motion. [D.I. 445].

20.    On or about March 9, 2009, WMI filed another motion ("Second Lift Stay Motion") to seek another order modifying the automatic stay to allow the Debtors' officers and directors to recover payment and advancement of defense costs from insurance companies with respect to additional litigations not addressed by the First Lift Stay Order. [D.I. 750].[7] On or about April 13, 2009, the Court issued an order (the "Second Lift Stay Order") granting the Second Lift Stay Motion. [D.I. 894].

---

*Clark v. Washington Mutual, Inc. et al.*, (04-cv-01627), *Joseph R. Russo v. Washington Mutual, Inc. et al.*, (04-cv-01693), and *Robert D. Jaffee Trust v. Washington Mutual, Inc.*, (04-cv-01935).

[6] The exhibit lists the King County Derivative Litigation, Lee Family Investments Litigation, and South Ferry Litigation. In addition, the exhibit lists two member cases from the Securities, Derivative & ERISA Litigation—*In re Washington Mutual, Inc. Derivative Litigation* (W.D.Wa. Case No. C07-1826) and *In re Washington Mutual, Inc. Securities Litigation* (W.D.Wa. Case No. C08-0387).

[7] As relevant here, the Second Lift Stay Motion specifically addresses *In re Washington Mutual, Inc. ERISA Litigation* (W.D. Wa. Case No. 07-cv-01874), an action which includes the remaining litigations under the Securities, Derivative & ERISA Litigation. The purpose and basis for the Second Lift Stay Motion is the same as that for the First Lift Stay Motion.

21. In sum, the First Lift Stay Order and Second Lift Stay Order lifted the automatic stay for third party insurance carriers to advance defense costs to the Claimants as defendants in all the litigations at issue in their Claims.

C. **The Claims**

22. On or about March 26, 2009, Rotella filed Claim 2108, seeking an unknown amount for "indemnity, contribution, and reimbursement, plus any applicable interest and costs," against any liability or expenses arising from his former role as an officer of WMI. Claim 2108 at 2. Rotella is a defendant in the Securities, Derivative & ERISA Litigation[8] and the King County Derivative Litigation.

23. On or about March 27, 2009, Farrell, Matthews, Wood, Smith, Murphy, Lillis, Osmer McQuade, Reed, Chazen, Stever, Montoya, Frank, Pugh, and Leppert filed Claim 2240, Claim 2241, Claim 2246, Claim 2247, Claim 2248, Claim 2604, Claim 2606, Claim 2629, Claim 2631, Claim 2633, Claim 2634, Claim 2635, Claim 2636, and Claim 2637, respectively, seeking unspecified amounts for "indemnification for all expenses, liability, and loss (including attorney's fees, judgments, fines, ERISA excise taxes or penalties and amounts to be paid in settlement)" incurred in connection with the Prepetition Class Actions and advancement of the costs to defend these Prepetition Class Actions arising out of their performance of duties as directors of WMI. *See, e.g.*, Claim 2240 at Ex. D. Each one of these fourteen Claimants is a defendant in the Securities, Derivative & ERISA Litigation[9] and each one of these Claimants,

---

[8] Rotella is a defendant in the following Securities, Derivative & ERISA Litigation cases covered by the First Lift Stay Order and Second Lift Stay Order: *In re Washington Mutual, Inc. ERISA Litigation* (W.D. Wa. Case No. 07-cv-01874), *In re Washington Mutual, Inc. Derivative Litigation* (W.D.Wa. Case No. C07-1826), and *In re Washington Mutual, Inc. Securities Litigation* (W.D.Wa. Case No. C08-0387).

[9] All fourteen of these Claimants are defendants in the following Securities, Derivative & ERISA Litigation case covered by the Second Lift Stay Order: *In re Washington Mutual, Inc. ERISA Litigation* (W.D. Wa. Case No. 07-cv-01874). In addition, all of these Claimants, except Wood and Chazen, are

except Chazen and Wood, is a defendant in the King County Derivative Litigation. Farrell, Matthews, Wood, Murphy, Osmer McQuade, Reed, Stever, Frank, and Pugh were also defendants in the dismissed Lee Family Investments Litigation.

24. On or about March 31, 2009, Oppenheimer filed Claim 3242, seeking unknown amounts for indemnification, "including defense and other litigation costs," in connection with actions arising out of her performance of duties as a former officer of WMI. Claim 3242 at 2. Oppenheimer is a defendant in the South Ferry Litigation.[10] Oppenheimer was also a defendant in the dismissed Lee Family Investments Litigation.

25. All Claimants seek indemnification for any expenses and liability in connection with actions arising out of their performance of duties as officers and directors of WMI. As a basis for the Claims, Claimants reference four agreements in support of their position. *See, e.g.*, Claim 2240, at Ex. A - C. First, Article IX of the Amended and Restated Articles of Incorporation of the Debtor provides that the Debtor shall indemnify directors and "shall advance or reimburse reasonable expenses incurred by such individual in advance of final disposition of the proceeding...." Amended and Restated Articles of Incorporation at Article IX. *See, e.g.*, Claim 2240, Ex. A Attachment at 1.

26. Second, Article VIII of the Debtors' Bylaws grants indemnification of directors and officers in advance of the final disposition of a proceeding provided that the

---

defendants in the action covered by the First Lift Stay Order styled *In re Washington Mutual, Inc. Derivative Litigation* (W.D.Wa. Case No. C07-1826). Finally, all Claimants, except Chazen, are defendants in the litigation covered by the First Lift Stay Order styled *In re Washington Mutual, Inc. Securities Litigation* (W.D.Wa. Case No. C08-0387).

[10] Oppenheimer is a defendant in the following Securities, Derivative & ERISA Litigation cases covered by the First Lift Stay Order: *Procida v. Killinger et al.*, (W.D.Wa. Case No. 08-cv-0389), which was consolidated with other cases on May 21, 2008 in the action styled *In re Washington Mutual, Inc. Derivative Litigation* (W.D.Wa. Case No. C07-1826). The lead case in this action was dismissed on January 23, 2009, but *Procida v. Killinger et al.*, (W.D.Wa. Case No. 08-cv-0389) is still ongoing.

employee delivers an undertaking "to repay all amounts so advanced if it shall ultimately be determined that such director is not entitled to be indemnified...." WMI Bylaws at Article VIII, Section 8. *See, e.g.*, Claim 2240, Ex. A at 16-18.

27. Third, the Indemnification Agreement contains similar provisions and reiterates that WMI "shall not indemnify any person from or on account of any acts or omissions of such person finally adjudged to be intentional misconduct or knowing violation of the law by such person, from conduct of the person in violation of Section 8.31 of the [Washington Business Corporation Act] or from or on account of any transaction with respect to which it is finally adjudged that such person personally received a benefit in money, property or services to which such person was legally entitled...." Indemnification Agreement at Section 1. *See, e.g.*, Claim 2240, Ex. B at 3.

28. Fourth, Claimants also reference the WaMu Savings Plan, which contains an indemnity provision and states that there shall be no indemnification for "gross negligence, willful misconduct, embezzlement or diversion of Plan assets for the benefit of the Employee fiduciary." WaMu Savings Plan at Section 12. *See, e.g.*, Claim 2240, Ex. C at 3.

29. In their proofs of claim, Claimants Farrell, Matthews, Wood, Smith, Murphy, Lillis, Osmer McQuade, Reed, Chazen, Stever, Montoya, Frank, Pugh, and Leppert admit that the third party insurers "commenced fulfilling their defense and advancement obligations under the D&O Policies" pursuant to the First Lift Stay Order. *See, e.g.*, Claim 2240, Ex. A Attachment at 2. Claimants do not allege that these payments are insufficient to meet their defense costs or that these payments do not satisfy WMI's indemnity obligations under the various agreements.

## Objection to the Claims

30. WMI submits this Sixtieth Omnibus Objection to state that certain of the relief sought by the Claimants is being addressed outside of the proof of claim process. As noted, the Court specifically granted the First Lift Stay Order and Second Lift Stay Order to allow third-party insurance companies to advance payment for defense costs in connection with the Claimants' defense of the Prepetition Class Actions. In both Orders, this Court found that lifting the automatic stay to allow the insurance companies to advance defense costs to the Claimants is in the best interests of the Debtors, their estates and creditors, and other parties-in-interest. The Claimants do not allege that payments by the insurance companies are insufficient to meet their defense costs or that these payments do not satisfy WMI's indemnity obligations. Thus, by filing the Claims, the Claimants are seeking duplicative relief. The Claims should be disallowed.

31. In addition, WMI objects on the grounds that the Claimants fail to clarify whether they filed the Claims as primary claims to recover what is already covered by the insurance policies or to preserve their rights in the event the insurers do not pay all of the costs. The Claimants also do not address whether payments and advancements by third party insurers provide full relief. WMI therefore asks this Court to disallow the Claims at this time.

32. Moreover, as of the date hereof, each of the Claims is contingent and unliquidated in nature. As such, the Claims should be disallowed in their entirety subject to the Claimants' rights in accordance with section 502(j) of the Bankruptcy Code.

33. Furthermore, WMI objects on the grounds that the Claims should be subordinated pursuant to section 510(b) of the Bankruptcy Code. Each Claim relates to directors' and officers' indemnification claims against the Debtors. Each of the Claimants

asserts that the Debtors should indemnify such Claimant with respect to class action securities litigation(s). The Debtors believe that, if such class action securities litigation were asserted against the estates directly, such claims would be subordinated pursuant to section 510(b) of the Bankruptcy Code.

34.     Courts have held that the subordination provisions of section 510(b) include indemnification claims of officers, directors, and underwriters for "both liability and expenses incurred in connection with the pursuit of claims for rescission or damages by purchasers or sellers of the debtor's securities." See Mid-American Waste Sys., Inc., 228 B.R. 816, 824 (Bankr. D. Del. 1999). In Mid-American Waste, the Court stated that, in 1984, Congress expanded the scope of section 510(b) to subordinate the claims of other parties, including officers and directors, who played a role in the purchase and sale transactions which gave rise to the securities law claims. Id. at 826. The Court went on to state that, "Congress made a legislative judgment that claims emanating from tainted securities law transactions should not have the same priority as the claims of general creditors of the estate." Id.

35.     In In re Touch America Holdings, Inc., 381 B.R. 95 (Bankr. D. Del. 2008), the court held that claims filed by former officers and directors of the debtors for indemnification of expenses incurred in connection with an ERISA class action litigation would be subordinated pursuant to section 510(b). The ERISA litigation in Touch America centered on allegations of the officers' and directors' breach of their fiduciary duty to the claimants, who were former employees of the debtors and received stock in the debtors as part of their compensation. Id. The Court stated that section 510(b) is not limited to shareholder claims and that, "[t]he plain language of [section 510(b)] is broad enough to include indemnification claims for both

liabilities and expenses incurred on account of a claim for 'damages arising from the purchase or sale' of the debtor's or its affiliate's securities." Id. at 103.

36. Similarly, in In re De Laurentiis Entertainment Group, Inc., the court concluded that the "plain language of Section 510(b) includes claims for indemnification of litigation expenses." 124 B.R. 305, 308 (C.D. Cal. 1991); see also In re Public Service Co. of New Hampshire, 129 B.R. 3, 5 (Bankr. D.N.H. 1991) (same).

37. Thus, indemnification claims of directors and officers relating to expenses incurred in litigating securities class actions are subordinated pursuant to section 510(b) of the Bankruptcy Code.

**Reservation of Rights**

38. Pursuant to Local Rule 3007-1(f)(iii), "[a]n objection based on substantive grounds shall include all substantive objections to such claim." *See* Local Rule 3007-1(f)(iii). To conserve property of these estates, the Debtors have not made specific inquiry into the amounts asserted in the Claims, or vetted any other defenses thereto. Accordingly, the Debtors request that, to the extent this Court finds that the Debtors may, in fact, be liable on account of the Claims, it be granted limited relief from Local Rule 3007-1(f)(iii) to further object to the Claims. The Debtors also requests that, to the extent it is liable, it be allowed to seek to impose on the Claims any applicable claim amount cap prescribed by the Bankruptcy Code.

**Notice**

39. No trustee has been appointed in these chapter 11 cases. Notice of this Sixtieth Omnibus Objection has been provided to: (i) the U.S. Trustee, (ii) counsel for the Creditors' Committee, (iii) counsel for the Equity Committee, (iv) the Claimant, and (v) those parties entitled to receive notice in these chapter 11 cases, pursuant to Bankruptcy Rule 2002. In

light of the nature of the relief requested, WMI submits that no other or further notice need be provided.

40. Pursuant to Bankruptcy Rule 3007, the Debtor has provided all claimants affected by the Sixtieth Omnibus Objection with at least thirty (30) days' notice of the hearing to consider the Sixtieth Omnibus Objection.

## Separate Contested Matters

41. To the extent that a response is filed regarding any of the Claims and the Debtor is unable to resolve the response, each such Claim, and the objection by the Debtor to each such Claim asserted herein, shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014. Any order entered by the Court regarding an objection asserted in the Sixtieth Omnibus Objection shall be deemed a separate order with respect to each of the Claims.

## Statement of Compliance with Local Rule 3007-1

42. The undersigned representative of Richards, Layton & Finger, P.A. certifies that he has reviewed the requirements of Local Rule 3007-1 and that the Sixtieth Omnibus Objection substantially complies with that Local Rule. To the extent that the Sixtieth Omnibus Objection does not comply in all respects with the requirements of Local Rule 3007-1, Richards, Layton & Finger, P.A. respectfully requests that any such requirement be waived.

## No Previous Request

43. No previous request for the relief sought herein has been made by WMI to this or any other court.

WHEREFORE WMI respectfully requests that the Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: November 17, 2010
      Wilmington, Delaware

/s/ Mark D. Collins

Mark D. Collins (No. 2981)
Chun I. Jang (No. 4790)
Travis A. McRoberts (No. 5274)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Brian S. Rosen
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS TO THE DEBTORS
AND DEBTORS IN POSSESSION