## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

----------------------------------------------------------------x

| | | |
|---|---|---|
| *In re* | : | **Chapter 11** |
| | : | |
| **WASHINGTON MUTUAL, INC., <u>et al.</u>,**[1] | : | **Case No. 08-12229 (MFW)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
| | : | Hearing Date: December 17, 2010 at 10:30 a.m. (EST) |
----------------------------------------------------------------x    Objection Deadline: December 6, 2010 at 4:00 p.m. (EST)

### DEBTORS' MOTION TO ESTIMATE MAXIMUM AMOUNT OF CERTAIN CLAIMS FOR PURPOSES OF ESTABLISHING RESERVES <u>UNDER THE DEBTORS' CONFIRMED CHAPTER 11 PLAN</u>

Washington Mutual, Inc. ("<u>WMI</u>") and WMI Investment Corp. ("<u>WMI Investment</u>"), as debtors and debtors in possession (the "<u>Debtors</u>"), as and for their motion (the "<u>Motion</u>") for an order, in the form attached hereto as "<u>Exhibit A</u>" (the "<u>Proposed Order</u>"), estimating the maximum amount of certain claims (collectively, the "<u>Estimated Claims</u>," and each person asserting an Estimated Claim, a "<u>Claimant</u>"), listed on "<u>Exhibits B-F</u>" attached hereto, for purposes of establishing certain reserves under the Debtors' *Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code*, dated October 6, 2010, (as it has and may be further amended, the "<u>Plan</u>")[2] pursuant to section 502(c) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Article 27.3 of the Plan, respectfully represent as follows:

---

[1]  The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 925 Fourth Avenue, Seattle, Washington 98104.

[2]  The hearing to consider confirmation of the Plan is scheduled for December 1, 2010. The adequacy of the information in the related disclosure statement for the Plan (the "<u>Disclosure Statement</u>") was approved by order, dated October 21, 2010.

## Jurisdiction

1.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2.    On September 26, 2008 (the "Commencement Date"), each of the Debtors commenced with this Court a voluntary case pursuant to chapter 11 of the Bankruptcy Code (together, the "Chapter 11 Cases").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On October 3, 2008, the Court entered an order, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the joint administration of the Debtors' chapter 11 cases.

3.    On October 15, 2008, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  On January 11, 2010, the U.S. Trustee appointed an official committee of equity security holders in these chapter 11 cases (the "Equity Committee").  By agreed order, dated July 22, 2010, the Court directed the U.S. Trustee to appoint an examiner to investigate certain matters.  On July 26, 2010, the U.S. Trustee appointed Joshua R. Hochberg of McKenna Long & Aldridge LLP as examiner (the "Examiner").  On November 1, 2010, the Examiner filed his report (the "Examiner's Report").

## WMI's Business

4.    WMI, a holding company incorporated in the State of Washington, is the direct parent of WMI Investment, which served as an investment vehicle for WMI and holds a variety of securities.  WMI Investment is incorporated in the State of Delaware.

5.      Prior to the Commencement Date, WMI operated as a savings and loan holding company that owned Washington Mutual Bank ("WMB") and, indirectly, such bank's subsidiaries, including Washington Mutual Bank fsb ("WMBfsb"). WMI still owns all of the outstanding stock of WMB, and WMI also has certain non-banking, non-debtor subsidiaries (the "Non-debtor Subsidiaries"). Like all savings and loan holding companies, WMI was subject to regulation by the Office of Thrift Supervision (the "OTS"). WMB and WMBfsb, in turn, like all depository institutions with federal thrift charters, were subject to regulation and examination by the OTS. In addition, WMI's banking and nonbanking subsidiaries were overseen by various federal and state authorities, including the Federal Deposit Insurance Corporation ("FDIC").

6.      On September 25, 2008 (the "Receivership Date"), the Director of the OTS, by order number 2008-36, appointed the FDIC as receiver for WMB and advised that the receiver was immediately taking possession of WMB (the "Receivership"). Immediately after its appointment as receiver, the FDIC purportedly sold substantially all the assets of WMB, including the stock of WMBfsb, to JPMorgan Chase pursuant to that certain *Purchase and Assumption Agreement, Whole Bank*, dated as of September 25, 2008 (the "Purchase Agreement").

7.      WMI's assets include its common stock interest in WMB, its interest in its non-banking subsidiaries, and more than $4 billion of cash that WMI and its non-banking subsidiaries (including WMI Investment) had on deposit at WMB and WMBfsb immediately prior to the time the FDIC was appointed as receiver. WMI is in the process of evaluating these and other assets for purposes of ultimate distribution to its creditors.

### The Claims Resolution Process

8.      On December 19, 2008, the Debtors filed with the Court their schedules of assets and liabilities and their statements of financial affairs.  On January 27, 2009, and February 24, 2009, WMI filed with the Court its first and second, respectively, amended schedule of assets and liabilities and its first and second, respectively, amended statements of financial affairs.  On January 14, 2010, WMI filed a further amendment to its statement of financial affairs (collectively, the "Schedules").

9.      By order, dated January 30, 2009 (the "Bar Date Order"), the Court established March 31, 2009 (the "Bar Date") as the deadline for filing proofs of claim against the Debtors in these chapter 11 cases.  Pursuant to the Bar Date Order, each creditor, subject to certain limited exceptions, was required to file a proof of claim on or before the Bar Date.

10.      In accordance with the Bar Date Order, Kurtzman Carson Consultants, LLC ("KCC"), the Debtors' court-appointed claims and noticing agent, mailed notices of the Bar Date and proof of claim forms to, among others, all of the Debtors' creditors and other known holders of claims as of the Commencement Date.  Notice of the Bar Date also was published once in *The New York Times (National Edition), The Wall Street Journal, The Seattle Times*, and *The Seattle Post-Intelligencer*.

11.      Over 3,900 proofs of claim (collectively, the "Proofs of Claim") have been filed in these chapter 11 cases, including over 1,000 proofs of claim filed as unliquidated claims.  The Debtors and their advisors are in the process of reviewing and reconciling all pre-petition claims and comparing the claims asserted in the Proofs of Claim with their books and records to determine the validity of such asserted claims.

12.    To date, the Debtors have filed 59 omnibus objections (the "Omnibus Objections") to the filed claims on substantive and non-substantive grounds. To date, over 480 unliquidated claims have been disallowed or withdrawn pursuant to the Omnibus Objections, and over 110 unliquidated claims are subject to pending Omnibus Objections. As of the date hereof, there are still approximately 400 unliquidated claims asserted against the estates. By this Motion, the Debtors seek to estimate approximately 158 claims,[3] none of which relate to personal injury tort or wrongful death claims against the estates. Therefore, this Motion is proper under 28 U.S.C. § 157(b)(2).

### The Plan and Distributions Under the Plan

13.    On October 6, 2010, the Debtors filed the Plan and a related disclosure statement (the "Disclosure Statement"). By order, dated October 21, 2010, the Bankruptcy Court approved the adequacy of the information contained in the Disclosure Statement and established December 1, 2010 for the commencement of the hearing to consider confirmation of the Plan.

14.    Pursuant to Article 27.2 of the Plan, the Debtors have provided for a procedure by which the Liquidating Trustee[4] may request that the Bankruptcy Court estimate any contingent or unliquidated or Disputed Claims pursuant to section 502(c) of the Bankruptcy Code. Additionally, pursuant to Article 27.3 of the Plan, the Liquidating Trustee

> shall retain, for the benefit of each holder of a Disputed Claim, Creditor Cash (which the Disbursing Agent shall transfer to the Liquidating Trustee) and Liquidating Trust Interests, and any dividends, gains or income attributable thereto, in an amount equal to the Pro Rata Share of distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed

---

[3] The Debtors believe that the remaining unliquidated claims are resolved through the Global Settlement Agreement, as defined in the Plan.

[4] Any capitalized terms not defined herein shall have the same meaning ascribed to them in the Plan.

> Claim shall be estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code constitutes and represents the maximum amount in which such Claim may ultimately become an Allowed Claim . . . .

See Article 27.3 of the Plan.   Accordingly, the Liquidating Trustee is required to set aside a certain reserve amount for each Disputed Claim prior to being able to make any distributions under the Plan.

15.    Due in part to the nature of the Estimated Claims, the Debtors do not anticipate that they will be able to reach a resolution on each of the Estimated Claims in an expeditious manner or, in any event, prior to the Effective Date.  Thus, unless the Court estimates the maximum amount of the Estimated Claims for reserve purposes as requested herein, the Debtors will not be able to effectuate the distributions contemplated pursuant to the Plan until the unliquidated amounts are litigated and determined.

### Relief Requested

16.    The Debtors request that this Court estimate the maximum amount of the unliquidated portions of the Estimated Claims for the reserve purposes of Section 27.3 of the Plan, in the amounts indicated for each Estimated Claim, as set forth on "Exhibits B-F," so that the Debtors can make timely distributions under the Plan and effectuate the administration of a confirmed Plan without undue delay.

### Basis for Relief Requested

17.    Estimation is proper under section 502(c)(1) of the Bankruptcy Code, which provides as follows:

> "There shall be estimated for purpose of allowance under this section –
>
> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . ."

11 U.S.C. § 502(c). Estimation of claims may be used to determine the allowed amount for distribution purposes under a plan of reorganization. See In re Trident Shipworks, Inc., 247 B.R. 513, 514 (Bankr. M.D. Fla. 2000).

18.    Bankruptcy courts may estimate claims under section 502(c)(1) of the Bankruptcy Code in order: "1) [t]o avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions, and 2) . . . to promote a fair distribution to creditors through a realistic assessment of uncertain claims." In re Continental Airlines, 981 F.2d 1450, 1461 (5th Cir. 1993). In addition, estimation of a claim under section 502(c)(1) is appropriate if liquidation of a claim "will take too long and unduly delay the distribution of the estate's assets." In re New York Medical Group, P.C., 265 B.R. 408, 415 (Bankr. S.D.N.Y. 2001). Moreover, section 502(c) uses the word "shall," and, therefore, estimation is mandatory rather than permissive if the criteria of section 502(c) are met. See, e.g., International Brotherhood of Teamsters v. IML Freight, Inc., 789 F.2d 1460, 1463 (10th Cir. 1986); In re Frontier Airlines, Inc., 137 B.R, 811, 814 (D. Colo. 1992); In re Lane, 68 B.R. 609, 611 (Bankr. D. Haw. 1986); In re The Nova Real Estate Inv., 23 B.R. 62, 65 (Bankr. E.D. Va. 1982).

19.    The Debtors respectfully submit that both factors supporting the estimation of claims pursuant to section 502(c)(1) are present here: (a) it will take a long time to liquidate the Estimated Claims; and (b) waiting for the liquidation of the Estimated Claims will unduly delay the administration of the Debtors' estate. The Estimated Claims include the following categories of claims, as set forth on "Exhibits B-F": (1) unresolved litigation claims (the "Litigation Claims"), (2) claims of directors and officers (the "D&O Claims"), (3) claims based upon the certain litigation tracking warrants (the "Dime Warrant Claims"), (4) employee

claims based on certain compensation and benefit contracts (the "Employee Claims"), and (5)

miscellaneous claims that were asserted on either an unliquidated or contingent basis (the "Misc

Claims,"). As indicated in "Exhibits B-F," certain of the Estimated Claims have been the subject

of previous omnibus claims objections. A short description of each category of Estimated

Claims is also included in each exhibit.

20.    Litigating each Estimated Claim to conclusion would unduly delay the

administration of these estates. As of the date hereof, the stakeholders in these cases have waited

at least two years for the completion of these cases and any additional delay would not only

further deprive them of their distributions under the Plan, but also, because of inordinately high

reserves, cause the ongoing dilution of recoveries due to the accrual of post-petition interest with

respect to some senior claims.

21.    The Debtors submit that estimation of the maximum amount of the

Estimated Claims is necessary and appropriate because, without such determination, the Debtors

cannot reserve any amounts on account of the Estimated Claims without protracted litigation.

Moreover, the Debtors should not be forced to reserve the amount of the entire potential

exposure asserted in certain of the proofs of claims for the Estimated Claims because the Debtors

do not believe that the Estimated Claims will ever reach such amounts. The estimation and

limitation of the Estimated Claims will enable the Debtors to set appropriate reserves and will

facilitate the process set forth in the Plan. Moreover, determining the maximum amount of the

Estimated Claims for reserve purposes will allow the Debtors to process distributions to allowed

creditors pursuant to the Plan, without undue delay. As previously stated in many hearings in

these chapter 11 cases, the Debtors incur approximately $30 million in interest and fees and

expenses for each month that the Plan fails to become effective and distributions are delayed.

This creates the distinct possibility that recoveries to certain classes will be diminished due to a delay in distributions.

22.    It is not possible for courts to estimate the value of claims with absolute certainty; thus, estimation requires only "sufficient evidence on which to base a *reasonable estimate* of the claim." Bittner v. Borne Chem. Co., Inc., 691 F.2d 134, 135 (3d Cir. 1982) (emphasis added); see also In re Windsor Plumbing Supply Co., Inc., 170 B.R. 503, 521 (Bankr. E.D. N.Y. 1994) (advocating use of probabilities in estimation of claims); In re Baldwin-United Corp., 55 B.R. 885, 898 (Bankr. S.D. Ohio 1985) (estimation "does not require that a bankruptcy judge be clairvoyant"). The principal consideration when estimating the value of a claim is "to promote a fair distribution to creditors through a realistic assessment of uncertain claims." O'Neill v. Continental Airlines, Inc., 981 F.2d 1450, 1461 (5th Cir. 1993); see also In re Enron Corp., No. 01-16034, 2006 WL 544463, at *4 (Bankr. S.D.N.Y. Jan. 17, 2006) ("[T]he estimation of claims promotes the purpose of establishing the amount of claims that are to receive distributive shares") (citing In re Thomson McKinnon Securities, Inc., 143 B.R. 612, 619 (Bankr. S.D.N.Y. 1992)).

23.    Section 502(c) does not prescribe any method for estimating a claim, and it is therefore committed to the reasonable discretion of the Court. See In re Ralph Lauren Womenswear, Inc., 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996). In estimating a claim, the bankruptcy court should use whatever method is best suited to the particular circumstances. See In re Aspen Limousine Serv., Inc., 193 B.R. 325, 337 (D. Colo. 1996); see also, Bittner, 691 F. 2d at 135; In re Brints Cotton Mktg., Inc., 737 F.2d 1338, 1341 (5th Cir. 1984). Similar estimation procedures as those proposed in this Motion have been adopted by this Court. See In re Dayton Superior Corp., Case No. 09-11351 (BLS) (Bankr. D. Del. 2010) [Docket No. 886]; In

re CVEO Corp. (f/k/a Converse Inc.), Case No. 01-223 (MFW) (Bankr. D. Del. 2003) [Docket
No. 1510].

24.    Here, the Debtors' and their professionals have proffered estimations
based on a comprehensive review of the proofs of claims themselves, as well as the Debtors'
books and records, as further set forth on "Exhibits B-F."  Accordingly, the Debtors' estimate
each unliquidated portion of the Estimated Claims at what the Debtors' believe is its maximum
possible amount.  This represents the fairest possible course to protect the interests of all
creditors, including unliquidated creditors, while allowing for the expedient administration of
these cases.

25.    Furthermore, estimation of a claim does not preclude the Debtors from
continuing to dispute the validity of the remainder of the claim (which remains a Disputed
Claim), but rather, ensures that, if the claim becomes an Allowed Claim, its amount for Plan
purposes will not in any event exceed the estimated amount set forth on "Exhibits B-F."  In
addition, the relief requested in this Motion is only requested in connection with the confirmation
of the Plan and the effectiveness of the relief requested is contingent on the results of the
confirmation hearing, currently scheduled to begin on December 1, 2010.  In the event that the
Plan is not confirmed, the Debtors will defer consideration of this Motion and, if the Estimated
Claims are not otherwise resolved, seek the relief requested at the appropriate time.

26.    For the reasons set forth in this Motion and in the attached exhibits, the
Debtors hereby request that the Court enter the Proposed Order attached hereto, approving the
maximum amounts of the Estimated Claims set forth on "Exhibits B-F."  The Debtors submit
that the Plan contemplates this estimation procedure, and the relief requested by the Debtors is
consistent with section 502(c) of the Bankruptcy Code.  Upon confirmation of the Plan, the

Debtors submit that it is unfair to the remaining creditors to require them to wait for the outcome of determining the allowed amounts of the Estimated Claims, which likely will take significant time due to the nature of the claims and the underlying litigations, before making amounts available for distribution under the Plan. The relief requested herein will allow the Debtors to effectuate timely distributions under the Plan, without undue delay.

## Notice

27.     Notice of the Motion has been given to: (a) the U.S. Trustee; (b) counsel for the Creditors' Committee; (b) counsel for the Equity Committee; (d) the Claimants; and (e) all persons entitled to receive notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

## No Previous Request

28.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court enter an order, in substantially the same form as the Proposed Order attached hereto as "Exhibit A" (i) granting the relief requested herein, estimating the maximum amount of the Estimated Claims and (ii) granting the Debtors such other and further relief as is just.

Dated: Wilmington, Delaware
     November 17, 2010

Mark D. Collins (No. 2981)
Chun I. Jang (No. 4790)
Travis A. McRoberts (No. 5274)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile:  (302) 651-7701

– and –

Brian S. Rosen
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsímile:  (212) 310-8007

ATTORNEYS TO THE DEBTORS
AND DEBTORS IN POSSESSION