# EXHIBIT B

1          KOSTUROS - CONFIDENTIAL

2     the settlement.  I'm a little confused as to the

3     question.

4          Q.     You're confused?

5               The question is simply, you had the

6     FDIC at the table.  You had JPMorgan at the table.

7     You had Washington Mutual at the table.

8               Who was at the table for the

9     directors and officers, if anyone?

10              MR. MASTANDO:  Objection to the

11         form.  I also object to the capacity of the

12         witness and the scope of the question.  It's

13         not clear what officers and directors are

14         being referenced.

15              MR. SHERWOOD:  Washington Mutual's

16         officers and directors.

17              MR. MASTANDO:  It's not clear what

18         that refers to and at what time.

19              MR. SHERWOOD:  All right.  Well,

20         listen, if the witness doesn't understand my

21         question, please feel free, sir --

22              MR. MASTANDO:  I think that's what

23         he indicated.

24              MR. SHERWOOD:  Well, I asked it

25         again and again, so --

1          KOSTUROS - CONFIDENTIAL

2          A.     There was no representation during

3     the settlement agreements to -- for the directors

4     and officers, separate counsel.  There was no

5     separate counsel.

6          Q.     Were there any businesspeople at

7     the table for the directors and officers, either

8     former or present, of Washington Mutual?

9               MR. MASTANDO:  Objection to the

10         form.

11         A.     As it relates to the directors and

12    officers, again, I don't think that there was -- I

13    don't remember there being anybody who was

14    representing the D's and O's there, other than the

15    debtor.

16         Q.     All right.  Let me ask you now the

17    same type of question, but I'd like to ask you the

18    same question with respect to professionals

19    retained by Washington Mutual before the

20    bankruptcy, such as accountants, underwriters,

21    investment bankers and the like.

22              Can you tell me whether, during the

23    negotiation of the Settlement Agreement or the

24    plan, there were any attorneys or businesspeople

25    involved in those -- involved in the negotiations

1           KOSTUROS - CONFIDENTIAL

2    on behalf of those people?

3                MR. MASTANDO:  Same objection.

4         A.    Not to my knowledge was there

5    anybody there representing those parties.

6         Q.    And are you familiar with the sixth

7    amended plan that was filed in this case?

8         A.    Yes.

9         Q.    Would you agree that that plan

10   contemplates the release of claims against

11   directors and officers of the debtor, former

12   directors and officers of the debtor, and

13   professionals retained by the debtor?

14               MR. MASTANDO:  Objection to the

15        form.  Objection to the extent it calls for a

16        legal conclusion.  And I note that the witness

17        is not the 30(b)(6) witness noticed on that

18        topic.  You're asking him to interpret the

19        legal effect of the agreement.

20               MR. SHERWOOD:  Your objection is

21        noted.

22        Q.    Can you answer the question?

23        A.    As it relates to the D's and O's

24   there's been certain tolling agreements that are

25   being negotiated, No. 1.

1       KOSTUROS - CONFIDENTIAL

2              Q.    And I'm just trying to close the

3    loop on this.

4              So as to the D's and O's, it's your

5    understanding that there's still the beneficiary

6    of releases under the plan.  Is that right?

7              MR. MASTANDO:  Same objection.

8              I again instruct the witness not to

9        answer if it calls for the revelation of

10       attorney/client privileged communications.

11             A.    Unless they are an excluded party

12   in Schedule BD, then yes, I believe that they are

13   getting the release.

14             Q.    Okay.  And as to the debtors'

15   prepetition professionals, is it your current

16   understanding that those prepetition

17   professionals, like investment bankers,

18   underwriters and so forth, they are not getting

19   releases under the plan?

20             A.    As I sit here today, to the best of

21   my knowledge, yes, they are not getting a

22   third-party release.  It has been modified.

23             Q.    Okay.  We'll get to the

24   modification in a second.

25             As to the directors and officers

KOSTUROS - CONFIDENTIAL

1  
2  that are getting released, can you tell me what
3  consideration those directors and officers gave in
4  exchange for those releases?
5          MR. MASTANDO:  Objection to the
6      form.  Again, I note the witness isn't the
7      30(b)(6) designee on these topics.
8      A.   I think that question is better
9  directed to Chad Smith as it relates to releases.
10     Q.   All right.  And we'll depose him on
11 that.  Fine.
12          But, you know, as the guy who is
13 here today, can you tell me if you're aware of any
14 consideration that any of these directors and
15 officers have paid over to the debtor or its
16 estate or to any claimholders in exchange for
17 these releases?
18          MR. MASTANDO:  Objection.  Asked
19      and answered.  The witness already referred to
20      another witness as the best source for the
21      information.
22     Q.   He's made his objection.  If you
23 can answer the question.  He hasn't instructed you
24 not to answer, so --
25          MR. MASTANDO:  But he's already

1      KOSTUROS - CONFIDENTIAL

2      answered.

3          A.    I believe that Chad Smith is the

4      best person to ask that question to.

5          Q.    All right.  So you're not aware of

6      any -- you know what consideration is.  Right?

7                MR. MASTANDO:  Objection to the

8          form.

9          Q.    You know it's money or property or

10     something like that.

11               And let's say we have a director or

12     officer or a group of directors and officers of

13     the debtor.

14               Are you aware of any money that

15     they've sent in to the estate or to creditors of

16     the estate as part of this deal, this plan deal or

17     this settlement deal, in exchange for the

18     releases; yes or no?

19               MR. MASTANDO:  Same objections.

20         A.    Again, I'll restate my answer.  I

21     think Chad Smith is the best witness as it relates

22     to this -- your question.

23         Q.    But why are you refusing to answer

24     the question?

25               MR. MASTANDO:  Object to the form.

1     KOSTUROS - CONFIDENTIAL

2          Q.    I mean, it's a pretty simple

3     question.

4               MR. MASTANDO:  He's not refusing to

5          answer.  He answered the question already.

6               MR. SHERWOOD:  By referring me to

7          someone else.

8          Q.    Sir, I'm asking you whether you

9     know whether any of the directors or officers gave

10    any money in exchange for the releases that you

11    understand they're getting under the plan; yes or

12    no?

13               Do you know that?

14               MR. MASTANDO:  Counsel, as the

15          30(b)(6) deposition, the witness has been

16          designated on certain topics.  He's not

17          designated on these topics.  And I think he's

18          answering your questions as best he can.  And

19          I think it's time to move on to another topic.

20               MR. SHERWOOD:  I'm not going to

21          move on.

22               MR. MASTANDO:  Well, then, you're

23          going to keep asking the same question over

24          and over.

25               MR. SHERWOOD:  Well, you know, as

1    KOSTUROS - CONFIDENTIAL

2    counsel points out, the 30(b)(6) notice is

3    directed to negotiation of the terms of the

4    global Settlement Agreement and/or the plan,

5    the release provisions or provisions of the

6    plan.  I'd like to know what the witness knows

7    about those release provisions.

8              MR. MASTANDO:  Well, topic 25 in

9    the 30(b)(6) notice covers the releases, and

10   this witness is not designated on topic 25.

11   And the witness has already told you what his

12   knowledge is.

13             MR. SHERWOOD:  All right.  You have

14   not instructed the witness not to answer.

15   You've told me to move on.  And I respectfully

16   heard you, but I refuse to do so.

17        Q.    If you refuse to answer the

18   question, that's fine.  I'm not going to get mad

19   at you.

20             MR. SHERWOOD:  And if you instruct

21   him not to answer, you can do that, too; but

22   it's a proper question.  It's a question that

23   the witness has an answer to.  And if he's

24   refusing to answer, that's fine.  I'll move

25   on.

1   KOSTUROS - CONFIDENTIAL

2          MR. MASTANDO:  He did answer, and

3      he's not the 30(b)(6) designee.

4          Do you have anything to add?

5          THE WITNESS:  I don't have anything

6      to add.

7      Q.    So would it be fair to say that you

8   don't know whether any of the directors or

9   officers have provided consideration in exchange

10  for the releases that they are getting -- that you

11  understand they're getting under the plan?

12          Is that fair to say?

13          MR. MASTANDO:  Same objections.

14     A.    I respectfully refer you to Chad

15  Smith, who can hopefully answer your questions as

16  it relates to this topic.

17     Q.    Are you familiar with language in

18  the plan that provides that the release provisions

19  that I've been asking you about are integral to

20  the plan?

21          MR. MASTANDO:  Objection to the

22      form.

23     A.    Yes.

24     Q.    And are you familiar with language

25  that provides that the release provisions are

1            KOSTUROS - CONFIDENTIAL

2                 Those were the parties that were

3   the main parties involved in the negotiations.

4   Correct?

5             MR. MASTANDO:  Objection to the

6      form.

7         A.    I would also add the creditors

8   committee.

9         Q.    We had the creditors committee, and

10  we also had, you know, the bondholders, the

11  Appaloosa/Oak Tree group.  Right?

12            The Fried Frank group.  Right?

13        A.    They're not one of the four

14  signatories.

15        Q.    Okay.  But did any of the

16  parties -- during the course of these negotiations

17  and, you know, while you were involved in these

18  negotiations, did any of these parties have any

19  specific discussions that you can recall that

20  concerned the release of the directors and

21  officers?

22            MR. MASTANDO:  Object to the form.

23            You can answer.

24        A.    I don't remember any.

25        Q.    So are you aware of any facts that

1    KOSTUROS - CONFIDENTIAL

2    you, though, which was:  Did you support or were

3    you a proponent of the releases of the directors

4    and officers under the plan?

5              MR. MASTANDO:  Same objections.

6         And it calls for a legal conclusion.

7         A.   I don't know how else to answer

8    your question when you say "personal" and then

9    "proponent" in the same sentence.

10             Q.   Is it something that you asked for?

11             In the negotiation of the business

12   terms of the Chapter 11 plan, did you ask for

13   releases of the directors and officers?

14        A.   As the debtor, we have included it

15   in the Settlement Agreement, of which all the

16   parties have agreed to.

17             Q.   Okay.  Who asked for the release of

18   the directors and officers?

19             Who brought that -- who put that

20   into the document for the first time?

21             MR. MASTANDO:  Objection to the

22        form.

23        A.   I wouldn't know.

24        Q.   It had to be the debtor.  Right?

25             MR. MASTANDO:  Objection to the

1       KOSTUROS - CONFIDENTIAL

2   suing the directors and officers."

3               Are you familiar with those

4   provisions of the plan?

5               MR. MASTANDO:  Objection.  Again, I

6       note it's beyond the scope of the 30(b)(6

7       notice.  And the witness has referred to

8       another witness who is the appropriate source

9       for these issues.

10          Q.    Are you familiar with those

11  provisions?

12          A.    I am familiar with those

13  provisions.

14              But again, I will respectfully

15  answer that you are asking me to give you legal

16  conclusions.  Chad Smith is the best person

17  prepared to give you the answers to the questions

18  that you're asking.

19          Q.    Let me ask it this way, then:  How

20  are releases of third-party claims, like

21  shareholders, noteholders, investors, against

22  directors and officers, how are those releases

23  integral to consummation of a plan, in your

24  opinion as a businessperson?

25              MR. MASTANDO:  Objection to the

1    KOSTUROS - CONFIDENTIAL

2    form.  It's beyond the scope of the 30(b)(6)

3    notice.  The witness has already answered

4    these questions.  He's already answered the

5    questions that you keep asking him.  It's been

6    asked and answered multiple times.

7                MR. SHERWOOD:  I'm not going

8    anywhere until you answer the question.  I'm

9    sitting right here.  I'll sit here all day.

10   I've got nowhere to go.

11               MR. MASTANDO:  He's already

12   answered it.  It's asked and answered.

13               THE WITNESS:  I guess I've got

14   nowhere else to go, then.

15               MR. SHERWOOD:  Can you read back

16   the question.  I've asked it a few times.

17               MR. MASTANDO:  Many times you've

18   asked it.

19               MR. SHERWOOD:  Well, I've gotten a

20   lot from you.  I haven't gotten anything from

21   the witness.

22               (The requested portion of the

23   record was read.)

24               MR. MASTANDO:  Objection to the

25   form.  Asked and answered.  Calls for a legal

1    KOSTUROS - CONFIDENTIAL

2    conclusion.

3        A.    Again, Chad Smith has been

4    designated to answer these questions.  He is the

5    best person to answer these questions.

6        Q.    So you have no -- you've got

7    nothing for me in response?

8              MR. MASTANDO:  He's got nothing

9        beyond what he's already answered.  He's

10       already answered the questions you've asked.

11             MR. SHERWOOD:  With all due respect

12       to you and to you, referring me to another

13       person is not an answer.

14             MR. MASTANDO:  With all due

15       respect, that's not all he's done.  He's

16       answered the questions multiple times.  You

17       just keep asking the same question over and

18       over again.

19       Q.    Are you prepared to give me any

20   response beyond referring me to -- are you capable

21   of giving me any response other than referring me

22   to Mr. Smith?

23             MR. MASTANDO:  Objection to the

24       form.  There's no question pending.  The

25       witness has already answered the questions

1  KOSTUROS - CONFIDENTIAL

2  beyond what you're stating he's answered. It

3  completely mischaracterizes the testimony.

4        A.   I don't know how to answer your

5  questions any differently than I've already

6  answered them.

7        Q.   All right. Let's go back to this

8  exhibit. You said you understood what this means.

9             Can you tell me what your

10 understanding is.

11            MR. MASTANDO: Objection to the

12     form of the exhibit.

13       Q.   Paragraph 6, section 43.5 of the

14 plan.

15            MR. MASTANDO: Objection. Asked

16     and answered multiple times.

17       Q.   The reference to gross negligence

18 and willful misconduct, do you know why that was

19 inserted?

20            MR. MASTANDO: Objection to the

21     form. It's beyond the scope of the 30(b)(6)

22     notice.

23            I instruct the witness not to

24     answer to the extent it involves privileged

25     communications with counsel.

1    KOSTUROS - CONFIDENTIAL

2        Q.    Have you had any -- have you

3    personally had any communications with any of the

4    directors or officers of Washington Mutual that

5    are the beneficiaries of releases under the plan

6    about the releases?

7        A.    Let's see.  I attend Board

8    meetings, usually regularly, not every single one

9    of them.  I don't remember discussing this.  It

10   may have come up.  I don't recall.  I don't

11   remember that.  But I don't remember negotiating

12   this with the debtors, with any of the D's and

13   O's.

14       Q.    Do you recall any of the D's and

15   O's or their representatives making a request to

16   you or anyone on behalf of the company to get them

17   releases under the plan?

18             MR. MASTANDO:  Objection to the

19        form.  Beyond the scope of the 30(b)(6).

20             You can answer.

21       A.    I don't remember anybody requesting

22   me to get them releases under the plan.

23       Q.    And sitting here today, just to

24   close the loop on this, you don't know who brought

25   up the whole idea of D&O releases under the plan.