IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
: 
In re: : Chapter 11
: 
WASHINGTON MUTUAL, INC., et al., : Case No. 08-12229 (MFW)
: 
: (Jointly Administered)
: 
Debtors. : 
: 
: 
---------------------------------------------------------------x

**REPLY OF DANIEL HOFFMAN TO DEBTORS' RESPONSE TO HIS OBJECTION TO CERTAIN PROVISIONS IN WASHINGTON MUTUAL, INC., ET AL.'S ("WMI") PROPOSED GLOBAL SETTLEMENT AGREEMENT AND PLAN OF REORGANIZATION[1]**

**Introduction**

On November 16, 2010, just days after filing a motion to abandon its stock in WMB as a capital loss, WMI filed a response ("Response") to my 'Objection to Any Provisions in the GSA or the Plan Which Require Abandonment or Any Form of Release of the WMI Claims', Docket # 5802 (the "Hoffman Objection") arguing that it is not abandoning the FDIC Claims under the GSA and Plan, because, it contends, it is receiving $6.1 billion - $6.8 billion in consideration for the FDIC Claims. In reply, I reiterate the contents of the Hoffman Objection and represent as follows:

**A. However Characterized, WMI's Plan Calls For Abandonment of the FDIC Claims**

In its Response WMI contends that it is not abandoning the FDIC Claims, and therefore Section 554 is inapplicable (though it concedes that valuation would be necessary under Section 554). WMI further claims that it will receive between $6.1 billion and $6.8 billion in consideration for releasing the FDIC Claims. If WMI's statement that it would receive consideration were true, its treatment of the FDIC Claims would be covered under Section 1123(b)(3)(A), which provides for "settlement or adjustment of any claim or interest belonging to the debtor or to the estate". WMI does not cite Section 1123(b)(3)(A), but because its claims it will receive some consideration, it invokes that statute because either a claim is abandoned for no consideration or it is settled (for some consideration). If any consideration is involved, Section 1123(b)(3)(A), not Section 554 is invoked.

Though WMI offers no particulars of the provenance of the $6.1 billion - $6.8 billion, the 'consideration' undoubtedly includes the tax refunds which WMI has received (and expects to receive), as well as the approximately $5 billion of value from the $26 billion in capital losses (the "Capital Losses") resulting from abandonment of is WMB stock under Section 554.[2]

---

[1] Capitalized terms used herein shall have the meanings ascribed to them in the Hoffman Objection.

[2] The appearance of $6.1 billion - $6.8 billion begs the question of how WMI can characterize the equity classes as being 'out of the money'. The latest monthly operating report ("MOR") (Sept. 30, 2010), lists WMI has having $6.854 billion in assets, and $8.338 billion in liabilities. If $6.1 billion to $6.8 billion is coming *into* the estate from the capital losses and tax refunds, arithmetic dictates that WMI's assets are $13.0 billion to $13.7 billion, or

1

Whether $5 billion or some other figure, the value of the Capital Losses cannot serve as consideration for settlement under 1123(b)(3)(A) because consideration received for an undertaking cannot be something the person providing the undertaking already owns; it must be new value. In the instant case WMI enjoys absolute ownership of the WMB stock and, therefore, the resulting Capital Loss if that stock is cancelled. Accordingly, the Capital Loss – WMI's own property – cannot be used as consideration to induce WMI to relinquish the FDIC Claims or anything else.

Furthermore, no portion of the disputed tax refunds can serve as consideration to WMI for forfeiting the FDIC Claims under the GSA because neither JPM nor the FDIC Receiver is giving WMI anything in connection with the tax refunds. See Shaw Group, Inc. v. Bechtel Jacobs Company, LLC (In re IT Group, Inc.), 359 B.R. 90 (Bankr. D. Del. 2006) (In that case this court held that "[p]erformance of an existing obligation, without more, by one person, affords no consideration in law for an original undertaking by another person.). Either WMI is entitled to a portion of the tax refunds or it is not. If it is entitled to a portion (e.g., under the tax sharing agreement), receiving that portion cannot serve as consideration. It is horn book law that consideration – i.e., something of value WMI doesn't already own or isn't entitled to receive -- would have to be a share of each of FDIC Receiver's or JPM's uncontested portion of the tax refunds, respectively, so that WMI will have received consideration from both JPM and the FDIC Receiver.

Indeed, WMI is agreeing to stop disputing with JPM and the FDIC Receiver over the tax refunds for nothing more than what the FDIC Receiver and JPM conceded was WMI's own portion (i.e., there would be no further inquiry into whether it was entitled to a larger portion), so that portion cannot be considered new value.

Because WMI proposes to accept its own property in exchange for relinquishing the FDIC Claims (also WMI's property) as well as granting releases to JPM and the FDIC Receiver (releases which Examiner Joshua R. Hochberg said should be denied as excessive and unjustified), Section 554, not Section 1123, is invoked.[3]

### B. Section 554 Requires Adjudication of the FDIC Claims' Value

Section 554 of the Bankruptcy Code provides that to abandon an asset it must be of inconsequential value and benefit to the estate. Accordingly, WMI must establish the FDIC Claims' value and show that they are of inconsequential value or benefit to the estate and therefore their disposal without compensation is in the best interests of the estate.

---

between $4.66 billion and $5.36 billion above liabilities. With over $5 billion left after creditors' claims, depending on the resolution of the trust preferred securities claims, some or all of that money would inure to benefit WMI's preferred shares, thereby making the GSA and Plan, which provide a recovery of 0% - 1% to preferreds, unfair and inequitable under Section 1129(b)(1).

[3] However, even if Section 1123 were applicable, there would still be a requirement of adjudication to determine value of pursuing the FDIC Claims versus the capital losses in order to satisfy the requirement of Section 1129(b)(1), because if one alternative provided a greater monetary recovery than another it would be unfair and inequitable to abandon that asset in favor of the other. However, this court could not adjudicate that matter due to lack of jurisdiction to make an assessment of liability against the FDIC Receiver.

C. Valuation of the FDIC Claims

Valuing litigation is not like valuing a tangible object or anything which could be sold in a market: a cause of action is unliquidated and its worth highly dependent on the probability of winning at trial. Value, for purposes of a litigation claim, is the probability of success multiplied by the compensation demanded[4]. For a claim based on multiple counts, such as the FDIC Claims, the value of the respective counts is combined.

The most conclusive evidence of zero value of the FDIC Claims would be dismissal of the FDIC Claims under FRCP 12(b)(6). This has not occurred. Instead, the court presiding over the FDIC Claims has ruled that this court may adjudicate according to its jurisdictional limits, but clearly stated that the FDIC Claims are under its, the D.C. Court's, exclusive jurisdiction.

D. This Court Lacks Jurisdiction to Adjudicate the FDIC Claims

The FDIC Claims were filed pursuant to 12 U.S. C. 1819(b)(2)(A) and 12 U.S.C. § 1821(d)(6)(A), and are under the jurisdiction of Judge Rosemary Collyer, U.S. District Court for the District of Columbia the D.C. Court because the defendant is the FDIC Receiver, and Congress has granted the D.C. Court exclusive jurisdiction over those claims. As stated by Judge Collyer in her January 7, 2010 order denying the 'Partial Motion to Dismiss of Defendant Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank' ("Collyer Order"): "[t]he Bankruptcy Court's determination of what constitutes the property of the estate . . . is an issue over which it has exclusive jurisdiction" and "the main factor weighing against [my] abstention is that some of WMI's claims arise under the FDI Act; thus the District Court has <u>exclusive</u> jurisdiction over those claims." Collyer Order, pp. 4, 6. (Emphasis in original.) Judge Collyer also said that "there are claims in this [D.C. District Court] action that did not arise under Title 11 and thus do not fall within the Bankruptcy Court's jurisdiction".

---

[4] A litigation claim's value is typically described as the probability that the plaintiff will prevail multiplied by the likely award. See J. Grundfest, and P. Huang, *The Unexpected Value of Litigation: A Real Options Perspective*, 58 Stanford Law Review 1267 (2006). See also Phillips, F., Peter Simple Methods to Determine the Value of Claims, The Business Blog: http://businessconflictmanagement.com/blog/2010/07/simple-methods-to-determine-the-value-of-claims/. Some valuation models then deduct the cost of litigation and take the resulting difference and discount it to the present day to obtain the net present value. For example, if a plaintiff is seeking $10MM in damages, and has a 30% probability of success at a trial anticipated to take place three years into the future, and his litigation costs would be $150,000 then his claim would be worth $2,850,000, before discounting by the applicable rate for three years. There are more sophisticated models involving options, but the simpler model suffices for purposes of this discussion.

Litigation usually includes a pre-trial phase when the defendant seeks to dismiss some or all of the plaintiff's claims. Accordingly, to evaluate WMI's FDIC claims, each claim must be valued in connection with a motion to dismiss, then again to determine its probable value at trial.

In the event of a motion to dismiss, each FDIC Claim under challenge would be valued by multiplying its individual probability of success by its individual expected award, if any. It is understood that the probabilities of each claim are likely different as some may be stronger or weaker than others. The combined values of the claims under challenge minus litigation costs discounted to the present would be the value of the FDIC Claims under challenge. If any or all of the FDIC Claims survived the dismissal challenge, the same analysis would apply regarding the trial stage.

If none of the FDIC Claims survives the motion to dismiss then this court could abandon under Section 554.

3

As previously stated, Section 554 gives a debtor the right to abandon lawsuits. However, after diligent search, I have located no cases where a bankruptcy court adjudicated (i.e., valued, or asserted the merits of) a 12 U.S.C. § 1821(d)(6)(A) claim for purposes of determining if that claim could be abandoned under Section 554.

If this court adjudicates value for the FDIC Claims (determining them worthless or not) it is essentially exercising Judge Collyer's exclusive jurisdiction to rule on issues concerning the claims' validity, and is doing what Judge Collyer would in ruling on a motion to dismiss the FDIC Claims: determining the validity and value of the FDIC Claims.

Accordingly, though this court has jurisdiction over assets of WMI's estate and jurisdiction to determine what is in the best interests of the estate, it does not have jurisdiction to adjudicate the FDIC Claims; that is, it cannot enter any orders purporting to determine rights or responsibilities with respect to the claims, nor their validity or value.

Moreover, if this court cannot adjudicate the FDIC Claims, then its agent, the Examiner, can't either. The Examiner has opined on the FDIC Claims' validity and value by applying unsworn (none of the people he interviewed was under oath) uncontested, hearsay presented as facts to laws *he* believes applicable to the FDIC Claims, interpreting those laws; i.e., essentially doing Judge Collyer's job. There is no reason for the Examiner to draw conclusions about the FDIC Claims or any other matter except to influence this court as he has no power to issue rulings. (Moreover, the Examiner's findings, if presented to Judge Collyer at trial would probably be inadmissible as hearsay.) Congress limited jurisdiction to value the FDIC Claims to the D.C. Court to prevent other courts from assigning liability to the FDIC Receiver, and if the Examiner had found that the FDIC Receiver was liable to WMI on the FDIC Claims, and this court entered any orders consistent with that finding, the FDIC Receiver would have the authority to challenge that finding in the D.C. Court on jurisdictional grounds.

When a court acts without jurisdiction, the extent of the transgression is the same whether the act involves ruling on a legal question, presiding over an evidentiary hearing, or receiving a verdict from a jury. *C.L. Ritter Company, Incorporated v. Consolidation Coal Company*, 283 F.3d 226(4th Cir. 2002) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (holding that it is improper to address any non-jurisdictional question before jurisdiction is ascertained)).

The United States Supreme Court has held that "[w]here a court acts without jurisdiction its judgments and orders are regarded as nullities; they are not voidable, but simply void." *In the Matter of Sawyer*, 124 U.S. 402 (1888). As yet, this court has made no rulings respecting the FDIC Claims. However, WMI, by asking the court to abandon the FDIC Claims, requests a ruling determining them, which, like the Examiner's opinions of the FDIC Claims, is the sole prerogative of Judge Collyer.

### E. This Court Should Treat WMI's Request to Abandon the FDIC Claims as a Motion to Dismiss

Abandoning a cause of action extinguishes it forever. Given the finality of abandoning a cause of action under Section 554, a grant of WMI's request for authority to abandon the FDIC Claims would have the same effect as Judge Collyer dismissing all counts of WMI's complaint against the FDIC Receiver. Accordingly, WMI's Plan's implicit Section 554 motion should be viewed as extinguishing those claims just the way a motion to dismiss would terminate them and, therefore, should be reviewed under the same standard as a motion to dismiss. If WMI's Plan's request to abandon the FDIC Claims were viewed as a motion to dismiss under Bankruptcy Rule 7012(b), it (1) would be viewed in the light

4

. . . . most favorable to the non-moving party – WMI's shareholders, (2) the allegations in WMI's complaint against the FDIC Receiver and proof of claim would be taken as true, and (3) the FDIC Receiver would be unlikely to be granted summary judgment because there are genuine issues of material fact that would be proved or the contrary, at trial. Accordingly, applying the Bankruptcy Rule 7012(b) standard, WMI's request to abandon would be rebuffed because taking WMI's allegations as true none of the counts would be dismissed, and therefore the FDIC Claims would not be of inconsequential value and benefit.

If the FDIC Claims survived summary judgment by Judge Collyer they could not be assessed as worthless under Section 554, and their value would logically be between $0 (if WMI lost all counts at trial) and the other extreme, the full residual value of WMI's interest in WMB plus the other compensation demanded in WMI's complaint.

I contend that WMI cannot state the probability that all of the counts would not survive a motion to dismiss, nor can it state the probability that all of the counts would be defeated at trial. Without these probabilities no value can be assessed.

However, even if WMI could present evidence of probability of success of the FDIC Claims, this court could not adjudicate these probabilities nor calculate values with respect to them because assessment of these issues (i.e., findings of fact or conclusions of law) would be done by Judge Collyer in her court and therefore cannot be done by this court given Judge Collyer's (and Congress') jurisdictional constraints on this court. There is no 'end run' around Judge Collyer's jurisdiction to value and validate the FDIC Claims.

### F. Denying WMI's Request to Abandon the FDIC Claims Is the Proper Legal Determination and Is Fair and Equitable to the Estate

U.S. District Judge Rosemary Collyer has already denied one motion to dismiss four of the five counts alleged in WMI's complaint; however she denied the motion on the basis of abstention, not the merits, so the ruling provides no indication of how she would rule on a future motion to dismiss. It is conceivable, even likely, that if the litigation recommences the FDIC Receiver will file another motion to dismiss some or all of the FDIC Claims.

While anyone can conjecture about the possible outcome of litigating the FDIC Claims, no one knows the worth of those unliquidated claims because no one can say how Judge Collyer would rule on issues concerning them. WMI believed them to be very valuable at one point, which is why it spent months preparing its proof of claim against the FDIC Receiver and months preparing its lawsuit against the FDIC Receiver. The FDIC Claims are for, among other things, the residual interest in WMB after its creditors are satisfied, which was as of its June 30, 2008 10-Q filing worth about $26 billion in book value, the same figure that WMI assigned to it in its unaudited MOR at the beginning of this case. That $26 billion figure disappeared from the MORs, and its removal cannot be because the value is disputed by the FDIC Receiver in litigation because the $4 billion on deposit with JPM, which appears prominently in the MORs, is also disputed in litigation.

I understand that it is this court's mandate to do what is in the best interests of the estate and to be fair and equitable. Accordingly, I ask you to consider the equity holders position: unlike the bondholders,[5] whose claims are trading on the open market at or above par, and many of whom bought

---

[5] WMI's bondholders include the world's most successful hedge fund manager, David Tepper, who runs Appaloosa Management, L.P. and Palamino Fund, Ltd., and who, according to various media reports, made $4 billion in

5

. . . . those claims for pennies on the dollar, if the FDIC Claims are abandoned equity's chance for recovery on them will vanish. If equity is wiped out the bondholders will get securities for their apparent deficiency in the reorganized WMI. If, as in the Kmart case, undiscovered value materializes thereafter, equity holders will be out in the cold, and the bondholders will reap a second bonanza.

### Conclusion

Notwithstanding WMI's assertion to the contrary, WMI proposes to abandon the FDIC Claims, and abandonment is governed by Section 554, which requires an adjudication of their value. As the FDIC Claims arise under 12 U.S.C. § 1821(d)(6)(A) and this court cannot adjudicate their value, it therefore cannot order their abandonment under Section 554. Of course, this court can order WMI (or another party in interest) to go to Judge Collyer to have matters (including value and validity) pertaining to the FDIC Claims adjudicated in her forum.

As abandonment of the FDIC Claims is a key component of the GSA and Plan this court cannot order the consummation of until and unless the value and validity of the FDIC Claims is adjudicated by Judge Collyer. Afterwards, if her rulings with respect to the FDIC Claims' allow WMI to establish that the FDIC Claims are of inconsequential value and benefit to the estate this court could order abandonment under Section 554.

For the foregoing reasons I object to any provisions in the GSA or the Plan which requires abandonment of the FDIC Claims.

Respectfully,

*Daniel Hoffman*

Daniel Hoffman, Pro Se
Southern California

November 18, 2010

---

compensation in 2009, principally from investing in distressed financial companies. *See* http://business.timesonline.co.uk/tol/business/industry_sectors/banking_and_finance/article7085137.ece and http://www.businessweek.com/news/2010-01-05/tepper-turns-panic-to-profits-with-6-5-billion-hedge-fund-gain.html.