# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-----------------------------------------------------------------x
               :

*In re*                     :      **Chapter 11**

               :

**WASHINGTON MUTUAL, INC., et al.,**[1]   :      **Case No. 08-12229 (MFW)**

               :

      **Debtors.**          :      **(Jointly Administered)**

               :

               :

-----------------------------------------------------------------x

## MEMORANDUM OF LAW IN
## SUPPORT OF CONFIRMATION OF THE SIXTH
## AMENDED JOINT PLAN OF AFFILIATED DEBTORS PURSUANT
## TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000

- and -

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700

---

[1]     The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395).  The Debtors' principal offices are located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

FACTS ..................................................................................................... 4

ARGUMENT ........................................................................................... 8

I. THE GLOBAL SETTLEMENT SHOULD BE APPROVED ............................. 9

    A. Introduction .................................................................................... 9

    B. Negotiations Leading to the Global Settlement Agreement .................. 12

    C. Summary of Settlement Terms ............................................................ 19

    D. The Legal Standards for Approval of the Global Settlement
       Agreement ........................................................................................ 25

        1. The Examiners' Report ............................................................. 25

        2. The Standard for Approval Pursuant to Bankruptcy Rule
           9019 .......................................................................................... 31

        3. The Standard for Approval Pursuant to Bankruptcy Code
           Section 363 ............................................................................... 36

        4. The Standard for Approval Under Bankruptcy Code
           Section 105 ............................................................................... 39

    E. The Global Settlement Agreement Is Fair and Reasonable, Is
       Supported by Sound Business Justifications, and Is in the Estates'
       Best Interests .................................................................................... 40

        1. The Global Settlement Agreement Affords Immediate,
           Known and Certain Value, in a Significant Amount .................. 44

        2. Absent the Global Settlement Agreement, the Known and
           Certain Value Is at Risk ............................................................ 46

        3. Additional Issues Associated with the Various Claims,
           Counterclaims, and Defenses Asserted by the Parties ................ 59

        4. Resolution of Numerous Disputes Regarding the "Other
           Settlement Assets" .................................................................... 85

    F. The Assumption and Assignment of the Transferred Contracts
       Pursuant to the Global Settlement Agreement and the Plan
       Complies in All Respects With Section 365(a) of the Bankruptcy
       Code ................................................................................................. 121

II. SECTION 1129(A)(1): THE PLAN COMPLIES WITH THE
    APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE .................... 125

    A. The Plan Complies with Section 1122 of the Bankruptcy Code .......... 126

# TABLE OF CONTENTS
## (continued)

Page

B.   The Plan Complies with Section 1123(a) of the Bankruptcy Code ....... 130

  1.   Section 1123(a)(1):  Designation of Classes of Claims and Interests ................................................................... 130

  2.   Section 1123(a)(2):  Classes that Are Not Impaired by the Plan ................................................................................ 130

  3.   Section 1123(a)(3):  Treatment of Classes that Are Impaired by the Plan ................................................ 131

  4.   Section 1123(a)(4):  Equal Treatment Within Each Class ......... 131

  5.   Section 1123(a)(5):  Adequate Means for Implementation ....... 136

  6.   Section 1123(a)(6):  Prohibitions on the Issuance of Non-Voting Securities .............................................................. 137

  7.   Section 1123(a)(7):  Provisions Regarding Directors and Officers ................................................................... 138

C.   The Plan Complies with Section 1123(b) of the Bankruptcy Code ....... 138

  1.   Section 1123(b)(1):  Impairment/ Unimpairment of Claims and Interests ................................................................... 138

  2.   Section 1123(b)(2):  Assumption/ Rejection of Executory Contracts and Leases ................................................... 139

  3.   Section 1123(b)(3):  Settlement/ Retention of Claims and Causes of Action ....................................................... 140

  4.   Section 1123(b)(4):  Sale of Assets ........................................... 141

  5.   Section 1123(b)(6):  Releases and Jurisdiction ......................... 141

D.   Section 1123(c):  Exempt Property ....................................................... 154

E.   Section 1123(d):  Cure of Defaults ....................................................... 154

III.   SECTION 1129(A)(2):  THE DEBTORS HAVE COMPLIED WITH THE BANKRUPTCY CODE ........................................................................... 155

A.   Compliance with Section 1125:  Postpetition Disclosure and Solicitation ............................................................................. 155

B.   Compliance with Section 1126:  Acceptance of Plan ........................... 158

IV.   SECTION 1129(A)(3):  THE PLAN HAS BEEN PROPOSED IN GOOD FAITH AND NOT BY ANY MEANS FORBIDDEN BY LAW .................... 160

V.   SECTION 1129(A)(4):  THE PLAN PROVIDES THAT PROFESSIONAL FEES AND EXPENSES ARE SUBJECT TO COURT APPROVAL ............................................................................... 163

## TABLE OF CONTENTS
### (continued)

Page

VI.     SECTION 1129(A)(5):  THE DEBTORS HAVE DISCLOSED ALL
        NECESSARY INFORMATION REGARDING DIRECTORS,
        OFFICERS, AND INSIDERS ............................................................................ 165

VII.    BANKRUPTCY CODE SECTION 1129(A)(6) IS NOT APPLICABLE ........ 166

VIII.   THE PLAN SATISFIES THE REQUIREMENTS OF SECTION
        1129(A)(7) OF THE BANKRUPTCY CODE .................................................. 166

IX.     SECTION 1129(A)(8):  THE PLAN HAS BEEN ACCEPTED BY FOUR
        IMPAIRED CLASSES AND, AS TO SUCH CLASSES, THE
        REQUIREMENTS OF SECTION 1129(A)(8) HAVE BEEN SATISFIED ..... 170

X.      SECTION 1129(A)(9):  THE PLAN PROVIDES FOR PAYMENT IN
        FULL OF ALL ALLOWED PRIORITY CLAIMS ......................................... 171

        A.      Section 1129(a)(9)(A):  Administrative Expense Claims ..................... 172

        B.      Section 1129(a)(9)(B):  Priority Non-Tax Claims ................................. 173

        C.      Section 1129(a)(9)(C):  Priority Tax Claims ......................................... 173

XI.     SECTION 1129(A)(10):  AT LEAST ONCE CLASS OF IMPAIRED
        CLAIMS HAS ACCEPTED THE PLAN ......................................................... 174

XII.    SECTION 1129(A)(11):  THE PLAN IS NOT  LIKELY TO BE
        FOLLOWED BY LIQUIDATION  OR THE NEED FOR FURTHER
        REORGANIZATION ........................................................................................ 174

XIII.   SECTION 1129(A)(12):  ALL STATUTORY FEES HAVE BEEN OR
        WILL BE PAID ................................................................................................ 176

XIV.    SECTION 1129(A)(13):  CONTINUATION OF RETIREE BENEFITS ......... 177

XV.     SECTIONS 1129(A)(14), 1129(A)(15), AND 1129(A)(16) DO NOT
        APPLY ............................................................................................................. 177

XVI.    SECTION 1129(B):  THE PLAN  SATISFIES THE "CRAM DOWN"
        REQUIREMENTS WITH RESPECT TO CLASSES 14, 15, 16, 17B, 18,
        19, 20, 21, AND 22 ......................................................................................... 178

        A.      The Plan Does Not Discriminate Unfairly ............................................. 178

        B.      The Plan is Fair and Equitable .............................................................. 181

XVII.   THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(C)
        OF THE BANKRUPTCY CODE .................................................................... 185

XVIII.  THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(D)
        OF THE BANKRUPTCY CODE .................................................................... 185

XIX.    THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(E)
        OF THE BANKRUPTCY CODE .................................................................... 185

**TABLE OF CONTENTS**
**(continued)**

Page

XX.    THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1127 OF
THE BANKRUPTCY CODE.......................................................................... 186

CONCLUSION............................................................................................................ 190

# TABLE OF AUTHORITIES

## FEDERAL CASES

In re 11,111, Inc., 117 B.R. 471 (Bankr. D. Minn. 1990)................................................ 179

Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enter., Ltd. II, 994 F.2d 1160 (5th Cir. 1993) ................................................................................................................................ 8

In re Ames Holding Corp., No. 09-14406 (CSS), 2010 WL. 2822030 (Bankr. D. Del. Feb. 17, 2010) ...................................................................................................... 40

ABI Investment Group v. FDIC, 860 F. Supp. 911 (D.N.H. 1994).................................. 84

In re Abbotts Dairies of Penn., Inc., 788 F.2d 143 (3d Cir. 1986) .................................. 36

Adams v. Prudential Sec. (In re Foundation for New Era Philanthropy), 201 B.R. 382 (Bankr. E.D. Pa. 1996)............................................................................................. 77

In re Allied Cos., Inc., 155 B.R. 739 (Bankr. S.D. Ind. 1992)......................................... 77

America National Insurance Co. v. JPMC, 705 F. Supp. 2d 17 (D.D.C. 2010) .............. 61

In re America Solar King Corp., 90 B.R. 808 (Bankr. W.D. Tex. 1988) ....................... 188

In re Armstrong World Industrial, Inc., 348 B.R. 111 (D. Del. 2006) ...................... passim

Bank of America National Trust & Sav. Association v. 203 N. LaSalle St. Partnership, 526 U.S. 434 (1999).......................................................................... 166, 167

In re Barney and Carey Co., 170 B.R. 17 (Bankr. D. Mass 1994) ................................. 179

Bonded Finance Services, Inc. v. European America Bank, 838 F.2d 890 (7th Cir. 1988) ............................................................................................................................... 66

In re Buttonwood Partners, Ltd., 111 B.R. 57 (Bankr. S.D.N.Y. 1990)........................ 179

In re Bygaph, Inc., 56 B.R. 596 (Bankr. S.D.N.Y. 1986)...................................... 123, 124

Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.), 103 B.R. 524 (Bankr. D.N.J. 1989)................................................................................................................... 123

Cheslock Bakker & Assocs., Inc. v. Kremer (In re Downtown Athletic Club of N.Y. City Inc.), No. M-47 (JSM), 2000 WL. 744126 (Bankr. S.D.N.Y. June 9, 2000) .............................................................................................................................. 38

Cinicola v. Scharffenberger, 248 F.3d 110 (3d Cir. 2001) ............................................. 121

Citicorp Homeowners Services v. Elliot (In re Elliot), 94 B.R. 343 (E.D. Pa. 1988) ........................................................................................................................... 38

Cohen v. Eiler (In re Cohen), 305 B.R. 886 (9th Cir. BAP 2004).............................. 2, 77

Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063 (2d Cir. 1983)........................................................................................................ 36

In re Coram Healthcare Corp., 315 B.R. 321 (Bankr. D. Del. 2004) ................. 32, 33, 150

In re DBSI, Inc., 405 B.R. 698 (Bankr. D. Del. 2009) .................................................. 123

In re Delaware & Hudson Railway Co., 124 B.R. 169 (D. Del. 1991)...................... 36, 37

In re Dow Corning Corp., 255 B.R. 445 (E.D. Mich. 2000) .......................................... 136

DWS, 1999 WL 288651 (Bankr. E.D. Pa. May 4, 1999) ................................................ 17

In re EBHI Holdings, Inc., 2010 WL. 3493027 (Bankr. D. Del. 2010).......................... 71

In re Elsinore Shore Associates, 91 B.R. 238 (Bankr. D.N.J. 1988) ............................. 164

In re Exide Techs., 303 B.R. 48 (Bankr. D. Del. 2003)................................................. 150

FDIC v. Manatt, 723 F. Supp. 99 (E.D. Ark. 1989) ....................................................... 84

FDIC v. Meyer, 510 U.S. 471 (1994) ............................................................................. 84

In re Federal-Mogul Global Inc., No. 01-10578 (JKF), 2007 WL. 4180545 (Bankr. D. Del. 2007) ..................................................................................................... 50

In re FiberMark, Inc., 339 B.R. 321 (Bankr. D. Vt. 2006) ........................................ 25, 26

In re First City Bancorporation of Tex., Inc., No. 392-39474-HCA-11, 1995 Bankr. LEXIS 1683 (Bankr. N.D. Tex. May 11, 1995)................................................... 57

In re FLKi, Inc., No. 05-20011, 2006 WL 3079007 (Bankr. D. Del. Feb. 1, 2006) ........ 40

In re Frontier Airlines, Inc., 93 B.R. 1014 (Bankr. D. Colo. 1988).............................. 188

In re Furlow, 70 B.R. 973 (Bankr. E.D. Pa. 1987) ....................................................... 179

In re Future Energy Corp., 83 B.R. 470 (Bankr. S.D. Ohio 1988) ................................. 164

Gillman v. Continental Airlines (In re Continental Airlines), 203 F.3d 203 (3d
Cir. 2000).......................................................................................................................... 152

In re Greate Bay Hotel & Casino, Inc., 251 B.R. 213 (Bankr. D.N.J. 2000)................. 179

In re Healthco International, Inc., 174 B.R. 174 (Bankr. D. Mass. 1994)....................... 38

Hindes v. F.Docket No.C., 137, F.3d 148 (3d Cir. 1998)................................................. 84

Home Indemnity Co. v. Lane Powell Moss & Miller, 43 F.3d 1322 (9th Cir.
1995) ................................................................................................................................. 34

In re Imperial Credit Industrial Inc., 527 F.3d 959 (9th Cir. 2008)........................... 73, 74

In re Ionosphere Clubs, Inc., 156 B.R.  414 (S.D.N.Y. 1993), aff'd, 16 F.3d 600
(2d Cir. 1994).............................................................................................................. 25, 26

In re Jersey City Medical Ctr., 817 F.2d 1055 (3d Cir. 1987)................................. 127, 128

In re Johns-Manville Corp., 68 B.R. 618 (Bankr. S.D.N.Y. 1986), aff'd in part,
rev'd in part on other grounds, 78 B.R.  407 (S.D.N.Y. 1987), aff'd, Kane v.
Johns-Manville Corp., 843 F.2d 636 (2d Cir. 1988).................................................. passim

In re Joint E. & S. District Asbestos Litigation, 982 F.2d 721 (2d Cir. 1992) ............... 134

In re Kaiser Aluminum Corp., 456 F.3d 328 (3d Cir. 2006) ............................................ 40

In re Kaiser Aluminum Corp., No. 02-10429, 2006 WL 616243 (Bankr. D. Del.
Feb. 6, 2005) ..................................................................................................................... 40

In re Kellstrom Industrial, Inc., 282 B.R. 787 (Bankr. D. Del. 2002) ............................. 38

In re Key3Media Group, Inc., 336 B.R. 87 (Bankr. D. Del. 2005), aff'd No. 03-
10323 (MFW) ........................................................................................................ 32, 33, 34

In re Kmart Corp., 2006 Bankr. LEXIS 542 (Bankr. N.D. Ill. Apr. 11, 2006).............. 188

Koelbl v. Glessing (In re Koelbl), 751 F.2d 137 (2d Cir. 1984)............................. 160, 161

In re Lernout & Hauspie Speech Products, N.V., 301 B.R. 651 (Bankr. D. Del.
2003) ................................................................................................................................. 179

In re Louise's, Inc., 211 B.R. 798 (D. Del. 1997) ........................................................... 33

In re Kaiser Aluminum Corp., 2006 WL 616243 (Bankr. D. Del. 2006) ................. 71, 153

In re MCorp Finance, Inc., 170 B.R. at 957 ........................................................ 58

In re Marvel Entertainment Group, Inc., 222 B.R. 243 (Bankr. D. Del 1998) ................ 33

In re Momentum Manufacturing Corp., 25 F.3d 1132 (2d Cir. 1994) ............................ 40

In re Montgomery Ward Holding Corp., 242 B.R. 147 (D. Del. 1999) ........................... 36

Mosseri v. FDIC, No. 95 Civ. 07273 BSJ, 2001 U.S. Dist. LEXIS 18899
(S.D.N.Y. Nov. 20, 2001) ................................................................................ 84

Myers v. Martin (In re Martin), 91 F.3d 389 (3d Cir. 1996) ............................... 32, 34, 36

N.Y. v. Raichle (In re Stirling Homex Corp.), 591 F.2d 148 (2d Cir. 1978) .................... 40

In re Network Access Solutions, Corp., 330 B.R. 67 (Bankr. D. Del. 2005) ................. 121

In re NorthWestern Corp., 372 B.R. 684 (D. Del. 2007) ........................................ 133, 134

In re NorthWestern Corp., No. 03-12872, 2008 WL. 2704341 (Bankr. D. Del.,
July 10, 2008) ........................................................................................... 33, 34

In re Nutritional Sourcing, 398 B.R. 816 (Bankr. D. Del. 2008) ............................. 34, 125

Office of Thrift Supervision v. Overland Park Finance Corp. (In re Overland Park
Finance Corp.), 232 B.R. 215 (D. Kan. 1999), aff'd in part and rev'd in part, on
other grounds ........................................................................................... 74

In re Official Committee of Unsecured Creditors of Cybergenics Corp., 330 F.3d
548 (3d Cir. 2003) ....................................................................................... 39

Olympia & York Florida Equity Corp. v. Bank of New York (In re Holywell
Corp.), 913 F.2d 873 (11th Cir. 1990) ............................................................. 127

In re PWS Holding Corp., 228 F.3d 224 (3d Cir. 2000) ....................................... 26, 153

In re Palace Quality Serv. Industrial, Inc., 283 B.R. 868 (Bankr. E.D. Mich. 2002) ....... 74

Pen-Del Mortgage Associates v. FDIC, No. Civ. A94-0067, 1994 U.S. Dist.
LEXIS 16741 (E.D. Pa. Nov. 23, 1994) ........................................................... 84

Pereira v. Foong (In re Ngan Gung Restaurant), 254 B.R. 566 (Bankr. S.D.N.Y. 2000) ................................................................................. 5, 161

In re Pinnacle Brands, Inc., 259 B.R. 46 (Bankr. D. Del. 2001) .................................... 122

Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968) ................................................................ 33, 34

In re RFE Industrial, Inc., 283 F.3d 159 (3d Cir. 2002) ...................................... 34

Ralar Distributings, Inc. v. Rubbermaid, Inc. (In re Ralar Distributings, Inc.), 4 F.3d 62 (1st Cir. 1993) ................................................................. 77

In re Reading Broad, Inc., 390 B.R. 532 (Bankr. E.D. Pa. 2008) .................................... 37

Matter of Reading Co., 711 F.2d 509 (3d Cir. 1983) ......................................... 37

In re Resources, Recycling & Remediation, Inc., 314 B.R. 62 (Bankr. W.D. Pa. 2004) ................................................................................. 66

Resolution Trust Corp. v. Firstcorp., Inc. (In re Firstcorp, Inc.), 973 F.2d 243 (4th Cir. 1992) ................................................................................. 74

In re Resorts International, Inc., 145 B.R. 412 (Bankr. D.N.J. 1990) .................... 134, 136

Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303 (5th Cir. 1985).............. 122

In re Rivera Echevarria, 129 B.R. 11 (Bankr. D.P.R. 1991)........................................... 179

In re RNI Wind Down Corp., No. 06-10110, 2007 WL. 949647 (Bankr. D. Del. March 29, 2007)................................................................. 34

In re SGL Carbon Corp., 200 F.3d 154 (3d Cir. 1999).................................... 160

In re Spansion, 426 B.R. 114 (Bankr. D. Del. 2010)............................................. 143, 150

In re Spansion, No. 09-10690, 2009 WL 153 1788 (Bankr. D. Del. June 2, 2009).......... 33

In re Sun Country Development, Inc., 764 F.2d 406 (5th Cir. 1985)............................. 161

In re TSIC, Inc., 393 B.R. 71 (Bankr. D. Del. 2008).................................................. 32, 40

In re The Brown Sch., 368 B.R. 394 (Bankr. D. Del. 2007)........................................... 37

In re The Colonial Bancgroup, Inc., 436 B.R. 713 (Bankr. M.D. Ala. 2010)  67, 74, 75, 77

*In re Tower Air, Inc.*, 416 F.3d 229 (3d Cir. 2005) ........................................................ 37

*In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141 (Bankr. S.D.N.Y. 1984)..... 73, 126, 155

*In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003)......................................... 38

*U.S. v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213 (1996)............. 11, 167

*Verco Industrial v. Spartan Plastics (In re Verco Industrial)*, 704 F.2d 1134 (9th Cir. 1983)........................................................................................................................... 77

*In re Walnut Equipment Leasing Co., Inc.*, No. 97-19699, 1999 WL 288651 (Bankr. E.D. Pa. May 4, 1999) ...................................................................................... 25

*Will v. Northwestern University (In re Nutraquest, Inc.)*, 434 F.3d 639 (3d Cir. 2006) ............................................................................................................................. 32

*In re World Health Alts., Inc.*, 344 B.R. 291 (Bankr. D. Del. 2006).......................... 32, 34

*In re Zenith Electrics Corp.*, 241 B.R. 92 (Bankr. D. Del. 1999) .................. 145, 147, 150

**STATE CASES**

*Smith v. Van Gorkom*, 488 A.2d 858 (Del. 1985), *overruled on other grounds sub nom. Gantler v. Stephens*, 965 A.2d 695 (Del. 2009)....................................................... 37

**FEDERAL STATUTES**

11 U.S.C. § 105(a) ........................................................................................................ 39

11 U.S.C. § 363(b)(1) .................................................................................................... 36

11 U.S.C. § 363(f)......................................................................................................... 38

11 U.S.C. § 363(f)(3) .................................................................................................... 39

11 U.S.C. § 363(f)(5) .................................................................................................... 39

11 U.S.C. § 365(b)(1) .................................................................................................. 122

11 U.S.C. § 365(b)(2) .................................................................................................. 123

11 U.S.C. § 365(f)(2) .................................................................................................. 123

11 U.S.C. § 365(o) ........................................................................................... 73

11 U.S.C. § 502(h) ........................................................................................... 77

11 U.S.C. § 507(a)(9) .......................................................................... 73, 75, 76

11 U.S.C. § 541(d) ........................................................................................... 97

11 U.S.C. § 547(b) ..................................................................................... 72, 76

11 U.S.C. § 550(b) ........................................................................................... 66

11 U.S.C. § 553(a) ..................................................................................... 49, 50

11 U.S.C. § 1129(a)(11) ................................................................................. 174

11 U.S.C. § 1129(b)(2)(B) ............................................................................. 181

11 U.S.C. § 1129(b)(2)(C) ............................................................................. 182

12 U.S.C. §§ 1464(s)(1) .......................................................................... 74, 75

12 U.S.C. § 1818 .............................................................................................. 75

12 U.S.C. § 1821(d)(13)(E)(i) ......................................................................... 84

26 U.S.C. § 382 .............................................................................................. 132

## PRELIMINARY STATEMENT

From the moment of seizure on September 25, 2008, Washington Mutual Bank, Inc. ("WMI"), the parent of Washington Mutual Bank ("WMB"), the seized bank, has been focused on achieving the greatest return for the benefit of its creditors and equity interest holders.  Within one day, WMI and its subsidiary WMI Investment Corp. (collectively with WMI, the "Debtors") commenced these Chapter 11 cases to ensure that there would be no erosion of assets through the creation of an estate subject to the jurisdiction and protection of the Bankruptcy Court.  Such efforts provided an immediate respite and allowed the Debtors to analyze their assets—tangible and intangible—and assess their liabilities.  At the same time, it permitted the Debtors the opportunity to recover for the benefit of parties in interest assets to which others claim a competing ownership interest.

The past two years have allowed the Debtors to analyze, assert, threaten to assert and ultimately, compromise and settle a multitude of issues between among others, the Debtors, JPMorgan Chase Bank, N.A. ("JPMC"), FDIC Corporate, FDIC Receiver and holders of indebtedness against WMB.  Specifically, the Debtors have filed claims, commenced litigation for the turnover of the Debtors' deposits, asserted numerous counterclaims in litigations commenced by JPMC, undertaken discovery pursuant to Bankruptcy Rule 2004 with an eye toward commencing additional litigation and asserting, among other claims and causes of action, certain "business tort" type claims.  In the end, through such efforts, the Debtors were able to negotiate and achieve a settlement that brings to the Debtors' estates billions of dollars and removes millions of dollars of significant liabilities, thereby maximizing recoveries for the Debtors' parties in interest. Now, the Debtors seek to make distributions through confirmation and

consummation of the Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, dated October 6, 2010, as it has and may be further amended (the "Plan").

As the Bankruptcy Court is well aware, the foundation of the Plan is the Global Settlement Agreement. The Debtors estimate that the Global Settlement Agreement settles the Debtors' claims and causes of action for $6.1 to $6.8 billion in value, resulting in approximately $7.5 billion of total proceeds available for distribution to the Debtors' stakeholders, most of which will be available on the Effective Date of the Plan.[2] With this value, and assuming that claims are allowed at a level consistent with the Debtors' projections, the Debtors will be able to provide full recoveries to almost all Classes of creditors pursuant to the Plan.

As set forth in more detail below, the Global Settlement Agreement embodies an objectively fair and reasonable resolution of the parties' disputes and concomitant risks, including the significant litigation-related expenses and substantial delay in distributions that would be attendant to continuing to litigate such issues, as well as the continued accrual of postpetition interest and administrative expenses, each of which serves to dilute creditors' recoveries. Thus, the Debtors, in the exercise of their business judgment, and with the full support of the Creditors' Committee, have determined that the benefits of settling these disputes on the terms set forth in the Global Settlement Agreement *far outweigh* any gain to be achieved by continuing litigation and thus, the settlement is in the best interests of the Debtors' estates and creditors.

---

[2]     This amount includes undisputed assets currently in WMI's possession, which total approximately $900 million.

Nonetheless, the Global Settlement Agreement has been the target of significant reprobation, particularly from out-of-the-money parties who understandably are desperate to try to recover their losses. Aside from the fact that the Debtors disagree with these objectors' criticisms, the Debtors submit that it is highly unlikely that there could ever be sufficient value to "trickle down" to equity holders – whether the disputes among the Debtors, JPMC and the FDIC Entities are settled or not. And, nothing could be more convincing of this than the fact that the examiner appointed in these Chapter 11 Cases by the Bankruptcy Court, at the behest of the Equity Committee, is in complete agreement. Indeed, on the *very first page* of his report, the Examiner notes:

> The Examiner finds that the consideration to be paid to the Estates in connection with the Settlement in the form of assets or releases to the Debtors is reasonable, and the Estates are receiving good value for their released claims. The Examiner further finds that the proposed Settlement will most likely result in no recovery for any classes of Shareholders under the Plan. The Examiner also concludes that ***further litigation concerning any disputed asset is highly unlikely materially to benefit classes that are "out of the money."***

(Final Report of the Examiner, dated Nov. 1, 2010 [Docket No. 5735] (the "Examiner's Report") at 1 (emphasis added).)

As will be demonstrated below and at the Confirmation Hearing, the Global Settlement Agreement complies with all the requirements of the Bankruptcy Code, Bankruptcy Rules, and applicable case law, and should be approved. Likewise, the Plan — which contemplates a reorganization of the Debtors and a portion of their assets and the transfer of all remaining assets to a trust for liquidation and distribution to the Debtors' stakeholders — satisfies the requirements of section 1129 of the Bankruptcy Code and should be confirmed.

While the Debtors have received objections from certain parties, as set forth in the Debtors' Omnibus Response to Objections to Confirmation of the Debtors' Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, filed contemporaneously herewith (the "Debtors' Omnibus Response"), such objections are easily overcome.  Accordingly, the Debtors respectfully request that the Bankruptcy Court enter an order confirming the Plan, substantially in the form attached hereto as Exhibit "A".

## FACTS

Except as set forth herein, the pertinent and salient facts relating to the Debtors' Chapter 11 Cases and the Plan are set forth in the Disclosure Statement and the Plan.  In addition, prior to or contemporaneously with the filing of this memorandum of law, the following documents were or will be filed in support of confirmation of the Plan and approval of the Global Settlement Agreement:

(a)    Affidavit of Service of Solicitation Materials, dated October 29, 2010, signed by Robert Q. Klamser [Docket No. 5723], attesting to the service of certain solicitation materials approved by the Bankruptcy Court pursuant to the Disclosure Statement Order (the "First Solicitation Service Affidavit");

(b)    Affidavit of David M. Sharp, dated November 1, 2010 [Docket No. 5746], attesting to the service of the Initial Plan Modification and Initial Plan Supplement (each as defined herein) and related notices to certain nominees for subsequent distribution to beneficial holders of certain securities (the "Plan Modification/Supplement Securities Service Affidavit");

(c)    Affidavit of Service, dated November 1, 2010, signed by Carlos I. Lara [Docket No. 5747], attesting to the service of the Initial Plan Modification and a related notice on certain parties (the "Plan Modification Service Affidavit");

(d)    Affidavit of Service, dated November 1, 2010, signed by Carlos I. Lara [Docket No. 5748], attesting to the service of the Initial Plan Supplement

and a related notice on certain parties (the "Initial Plan Supplement Service Affidavit");

(e)     Affidavit of Service, dated November 2, 2010, signed by Carlos I. Lara [Docket No. 5749], attesting to the service of certain solicitation materials on the counterparties to the contracts listed on Exhibit "U" to the Global Settlement Agreement (the "Exhibit U Service Affidavit");

(f)     Affidavit of Service of Solicitation Materials, dated November 2, 2010, signed by Robert Q. Klamser [Docket No. 5762], attesting to the service of certain solicitation materials approved by the Bankruptcy Court pursuant to the Disclosure Statement Order on certain additional parties (the "Second Solicitation Service Affidavit");

(g)     Affidavit of David M. Sharp, dated November 5, 2010 [Docket No. 5785], attesting to the service of revised Class 19 ballots and related notices to certain nominees for subsequent distribution to beneficial holders of REIT Series (the "Revised Class 19 Ballot Service Affidavit");

(h)     Affidavit of Publication of Alice Weber for The New York Times, dated November 4, 2010 [Docket No. 5824], attesting to the publication of the notice of the Confirmation Hearing in The New York Times (the "NYT Publication Affidavit");

(i)     Affidavit of Publication of Albert Fox for The Wall Street Journal, dated November 4, 2010 [Docket No. 5825], attesting to the publication of the notice of the Confirmation Hearing in The Wall Street Journal for national distribution (the "WSJ Publication Affidavit");

(j)     Affidavit of Publication of Kathy Baldwin for The Seattle Times, dated November 4, 2010 [Docket No. 5826], attesting to the publication of the notice of the Confirmation Hearing in the Seattle Times (together with the NYT Publication Affidavit and the WSJ Publication Affidavit, the "Publication Affidavits");

(k)     Notice of Availability of Examiner's Final Report, dated November 8, 2010 [Docket No. 5791], noting that the Examiner's Report was made publicly available at www.kccllc.net/wamu on November 1, 2010 (the "Examiner's Report Notice");

(l)     Notice of Extension of Voting Deadline, dated November 10, 2010 [Docket No. 5831], extending the Voting Deadline to November 18, 2010 at 12:00 p.m. (noon) Pacific Time (the "Voting Deadline Extension Notice");

(m)     Notice of Filing of Cure Costs Related to Executory Contracts Intended to be Assumed or Assumed and Assigned, dated November 11, 2010 [Docket No. 5856], setting forth the cure amounts for each executory contract or

unexpired lease to be assumed or assumed and assigned by the Debtors (the "Cure Notice");

(n)     Notice of Further Extension of Voting Deadline for Class 16 (PIERS Claims), dated November 15, 2010 [Document No. 5906], extending that Voting Deadline to November 19, 2010 at 5:00 p.m. (Pacific Time) for holders of PIERS Claims in Class 16 (the "Class 16 Voting Deadline Extension Notice");

(o)     Supplemental Notice Regarding Solicitation and Election Procedures for WMB Senior Note Holders, dated November 15, 2010 [Document No. 5910], providing further explication about the relevant solicitation and election procedures for these notes holders (the "Supplemental WMB Senior Notes Notice");

(p)     Supplemental Notice Regarding Implementation of Elections Made on Class 16 Ballots, dated November 16, 2010 [Document No. 5929], providing further explication regarding the right of election set forth in Section 20.2 of the Plan (the "Supplemental Class 16 Notice");

(q)     Affidavit of Service, dated November 16, 2010 [Document No. 5938], signed by Carlos I. Lara, attesting to the service and public posting of, among other things, the Voting Deadline Extension Notice (the "Voting Deadline Extension Service Affidavit");

(r)     Affidavit of Service, dated November 18, 2010 [Document No. 5983], signed by Carlos I. Lara, attesting to service and public posting of the Examiner's Report Notice, the Voting Deadline Extension Notice, the Class 16 Voting Deadline Extension Notice, the Supplemental WMB Senior Notes Notice, and the Supplemental Class 16 Notice (the "Supplemental Notices Service Affidavit" and, together with the First Solicitation Service Affidavit, the Plan Modification/Supplement Securities Service Affidavit, the Plan Modification Service Affidavit, the Initial Plan Supplement Service Affidavit, the Exhibit U Service Affidavit, the Second Solicitation Service Affidavit, the Revised Class 19 Ballot Service Affidavit, the Publication Affidavits, and the Voting Deadline Extension Service Affidavit, the "Service Affidavits");

(s)     Declaration of Robert Q. Klamser with Respect to the Tabulation of Votes on and Elections Pursuant to the Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, dated November 23, 2010, certifying the solicitation process, tabulation process, voting results, and results of certain elections with respect to non-security holders (the "Klamser Declaration");

(t)     Declaration of David M. Sharp with Respect to the Tabulation of Votes on and Elections Pursuant to the Sixth Amended Joint Plan of Affiliated

Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, dated November 24, 2010, certifying the solicitation process, tabulation process, voting results, and results of certain elections with respect to security holders (the "Sharp Declaration" and, together with the Klamser Declaration, the "Voting Certifications");

(u)    Declaration of William C. Kosturos in Support of Entry of an Order Confirming the Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United State Bankruptcy Code (the "Kosturos Declaration");

(v)    Declaration of Jonathan Goulding in Support of Entry of an Order Confirming the Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United State Bankruptcy Code (the "Goulding Declaration");

(w)    Declaration of Charles Edward Smith in Support of Entry of an Order Confirming the Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Smith Declaration");

(x)    Declaration of Steven M. Zelin in Support of Entry of an Order Confirming the Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United State Bankruptcy Code (the "Zelin Declaration");

(y)    Declaration of James Carreon in Support of Entry of an Order Confirming the Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United State Bankruptcy Code (the "Carreon Declaration");[3]

(z)    Motion of Defendant Washington Mutual, Inc. for Summary Judgment, dated October 29, 2010 [Docket No. 68], Memorandum of Law in Support of the Motion of Defendant Washington Mutual, Inc. for Summary Judgment, dated October 29, 2010 [Docket No. 69], and Declaration of Jonathan A. Shiffman in Support of the Motion of Defendant Washington Mutual, Inc. for Summary Judgment, dated October 29, 2010 [Docket No. 70], each filed in Adv. Pro. No. 10-50911 (MFW) (collectively, the "LTW Summary Judgment Motion and Brief");

(aa)    Motion of Defendant JPMorgan Chase Bank, N.A. for Partial Summary Judgment, dated November 2, 2010 [Docket No. 105] and Memorandum of Points and Authorities in Support of Defendant JPMorgan Chase Bank, N.A.'s Motion for Partial Summary Judgment, dated November 2, 2010 [Docket No. 106], each filed in Adv. Pro. No. 10-51387 (MFW) (such adversary proceeding, the "Trust Preferred Securities Action");

---

[3]    The Kosturos Declaration, the Goulding Declaration, the Smith Declaration, the Zelin Declaration, and the Carreon Declaration, are sometimes hereinafter collectively referred to as the "Declarations".

(bb)    Motion of Defendant Washington Mutual, Inc. for Summary Judgment, dated November 2, 2010 [Docket No. 109] and Opening Brief of Washington Mutual, Inc. in Support of Motion for Summary Judgment, dated November 2, 2010 [Docket No. 110], each filed in Adv. Pro. No. 10-51387 (MFW) (collectively, the "Trust Preferred Securities Action Summary Judgment Motion and Brief");

(cc)    Defendants Washington Mutual and JPMorgan Chase Bank, N.A.'s Joint Reply in Support of their Motions for Summary Judgment and Opposition to Plaintiffs' Cross- Motion for Summary Judgment dated November 22, 2010 [Docket No. 151], filed in the Trust Preferred Securities Action; and

(dd)    Defendant Washington Mutual, Inc.'s Reply in Support of their Motion for Summary Judgment dated November 22, 2010 [Docket No. 89], filed in Adv. Pro. No. 10-50911 (MFW).

All facts referenced in the foregoing documents are incorporated herein as though set forth fully and at length. As necessary, specific, salient facts will be referred to in connection with the discussion of applicable legal principles.

## ARGUMENT

To obtain confirmation of the Plan, the Debtors must demonstrate that the Plan satisfies the applicable provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence. As set forth in Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enter., Ltd. II (In re Briscoe Enter., Ltd. II):

> The combination of legislative silence, Supreme Court holdings, and the structure of the [Bankruptcy] Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof under both § 1129(a) and in a cramdown.

994 F.2d 1160, 1165 (5th Cir. 1993); In re Armstrong World Indus., Inc., 348 B.R. 111, 120 (D. Del. 2006).

As mentioned above, the foundation for the Plan is the Global Settlement Agreement, the climax of two years of litigation and negotiation. Although, pursuant to section 1123(b)(3), a plan may provide for the settlement of any claim or interest

belonging to a debtor, in order to obtain approval of the Global Settlement Agreement, the Debtors will establish that the Global Settlement Agreement satisfies the requirements of Bankruptcy Rule 9019, as well as sections 105(a), 363, and 365 of the Bankruptcy Code.

Through filings with the Bankruptcy Court, the Declarations, the record of these Chapter 11 Cases, and additional testimonial evidence which may be adduced at the hearing to be held before the Bankruptcy Court commencing on December 1, 2010 (as it may be continued, the "Confirmation Hearing"), the Debtors will demonstrate, by a preponderance of the evidence, that all applicable subsections of section 1129 of the Bankruptcy Code have been satisfied with respect to the Plan, and that the approval of Global Settlement Agreement is well within the standards established by applicable law with respect to pursuant to Bankruptcy Rule 9019 and sections 105(a), 363, and 365 of the Bankruptcy Code.[4]

## I.
## THE GLOBAL SETTLEMENT SHOULD BE APPROVED

### A.    Introduction

As set forth more fully in the Disclosure Statement, in the wake of the seizure and sale of WMB's assets, a multitude of disputes arose among the Debtors, JPMC, the FDIC Entities, the major creditor groups, among others, with each asserting claims for billions of dollars against one or more of the others. In many instances, the parties have taken completely opposing positions regarding (i) ownership of or entitlement to various assets as of September 25, 2008 (the "Receivership Date"), (ii) the

---

[4]    In addition to the arguments set forth herein, the Debtors hereby incorporate by reference as though set forth in full the arguments made in those certain (i) LTW Summary Judgment Motion and Brief, and (ii) Trust Preferred Securities Action Summary Judgment Motion and Brief, in support of dismissal of the adversary proceedings related to the Dime Warrants and Trust Preferred Securities, respectively, and all related Plan confirmation objections asserted by such plaintiffs.

validity and extent of the numerous claims the parties have asserted against each other with respect to various prepetition and pre-Receivership transactions and obligations, and even (iii) the appropriate forum in which to adjudicate such disputes. The Debtors estimate that, absent a settlement, the parties' numerous, and complex, claims and defenses could take as long as 3 or 4 years to litigate, although others consider such timeframe to be optimistic. Such ongoing litigation comes at significant expense, including, among other things, the continued accrual of postpetition interest and ongoing administrative and professional fees in the aggregate amount of approximately $30 million per month. Moreover, there is no certainty that litigation of the Debtors' claims would procure greater net value for the Debtors' estates than will the benefits of the Global Settlement Agreement. Indeed, the risks associated with such complex litigation far outweigh any potential benefits and may even be detrimental to the net value of their estates.

In contrast, the Global Settlement Agreement embodies a proposed global, and immediate, compromise and settlement of the disputes among the Debtors, JPMC and the FDIC Entities, certain WMB Bondholders and the Settlement Note Holders yields a tremendous opportunity to maximize the value of the Debtors' estates, ensures the support of the Plan by the Debtors' major creditors and promotes a prompt distribution to the Debtors' parties in interest. The Global Settlement Agreement is the result of the extremely hard and tireless work and dedication of, among others, the Debtors, JPMC, the FDIC Entities, the Creditors Committee and the Settlement Note Holders. In the Debtors' view, as confirmed by the Creditors' Committee, the net value of the Global Settlement Agreement is objectively fair and reasonable compared to the

claims, counterclaims and defenses asserted by and to be released by the Debtors and all

the other parties to the Global Settlement Agreement.  The Debtors estimate that the

Global Settlement Agreement affords value for their estates in the aggregate approximate

amount of $6.1 to $6.8 billion, resulting in approximately $7.5 billion of total funds

available for distribution to the Debtors' stakeholders, the vast majority of which will be

available on the Effective Date of the Plan.  Indeed, if the Global Settlement Agreement

and Plan are approved, the vast majority of unsecured creditors will be paid in full, and

even contractually subordinated note holders of the lowest priority will recover on

account of their claims.  Accordingly, the Debtors submit that the Global Settlement

Agreement is fair and reasonable, is supported by sound business justifications, and is in

the estates' best interest.

Supporting the Debtors' position in this regard is the fact that the

Examiner, appointed in these Chapter 11 Cases at the request of the Equity Committee,

and as supported by the Office of the United States Trustee, to conduct an independent

analysis of the reasonableness of the Global Settlement Agreement,[5] determined, after an

in-depth investigation that included, among other things, a review and analysis of

millions of pages of relevant documents, interviews with numerous individuals who are

familiar with the facts underlying the various claims compromised pursuant to the Global

Settlement Agreement, and consultations with both proponents and opponents thereof,

that the Global Settlement Agreement is fair, reasonable, and in the estates' best interest.

See Examiner's Rep. at 1 (concluding that "the proposed settlement reasonably resolves

---

[5]    By order, dated July 28, 2010, the Bankruptcy Court approved the appointment by the United States Trustee for the District of Delaware of Joshua R. Hochberg, Esq. as an independent examiner (the "Examiner") in these Chapter 11 Cases to investigate and to prepare a report regarding, among other things, the claims and actions being compromised and settled and the assets being transferred pursuant to the terms and provisions of the Global Settlement Agreement.