IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------- x
                                    :
*In re*                             :    Chapter 11
                                    :
**WASHINGTON MUTUAL, INC., et al.**[1]  :    Case No. 08-12229 (MFW)
                                    :
**Debtors.**                        :    (Jointly Administered)
                                    :
                                    :    Hearing Date: Dec. 17, 2010 at 10:30 a.m.
---------------------------------- x    Re D.I. 5885

### OBJECTION BY TRICADIA CAPITAL MANAGEMENT, LLC, TO DEBTORS' MOTION PURSUANT TO SECTION 554(A) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO ABANDON WMI'S EQUITY INTERESTS IN WASHINGTON MUTUAL BANK

Various funds managed by Tricadia Capital Management, LLC ("Tricadia"), a creditor and party-in-interest in the chapter 11 cases of Washington Mutual, Inc. ("WMI") and WMI Investment Corp. (together with WMI, the "Debtors") hereby object to the motion (the "Abandonment Motion") of the Debtors for an order authorizing WMI and its chapter 11 estate to abandon their equity interests in Washington Mutual Bank ("WMB") and respectfully represent as follows:

### PRELIMINARY STATEMENT[2]

1. WMI and its domestic subsidiaries (collectively the "WMI Tax Group"), including WMB, join in filing consolidated U.S. federal income tax returns. WMI is the common parent of the WMI Tax Group. The WMI Tax Group has incurred substantial net operating losses (the "NOLs"), primarily arising from the seizure of WMB's banking assets by the FDIC on September 25, 2008. After accounting for the carry-back of a

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

[2] Any capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Debtors' *Sixth Amended Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* (as it has been and may be amended, the "Plan"), and related disclosure statement (the "Disclosure Statement").

1

portion of the NOLs to its 2003-06 tax years, the WMI Tax Group has approximately $17.8 billion of NOLs as of December 31, 2009. Those NOLs can be carried forward to offset future taxable income of the WMI Tax Group for twenty years.

2. The WMI Tax Group's NOL carry-forward is a valuable asset that will be rendered largely useless under the Debtors' Plan. If the Abandonment Motion is granted, and the Debtors abandon the equity interests in WMB, the NOL carry-forward will be immediately and irrevocably reduced from $17.8 billion to $5.0 billion (see 26 C.F.R. 1.1502-36(d)). Furthermore, Section 382 of the Internal Revenue Code will drastically limit the WMI Tax Group's use of even this reduced NOL.

3. As Tricadia stated in its motion, dated November 16, 2010, for an order establishing notice and hearing procedures for trading in CCB Guarantee Claims (the "Trading Motion"), however, the Plan can be amended to allow the WMI Tax Group to utilize the full $17.8 billion of NOL carry-forward without any Section 382 limitation. If the Abandonment Motion is granted, and the Debtors abandon their equity interests in WMB, however, amendment of the Plan to reach this goal will become impossible.

## EFFECT OF SECTION 382 UNDER DEBTORS' PLAN

4. The Disclosure Statement and the Debtors' Abandonment Motion describe the severe impact Section 382 will have on the WMI Tax Group's NOL carry-forward as a result of the Plan:

5. Under Section 382, if a corporation or consolidated group undergoes an "ownership change," its NOL carry-forward as of the date of the ownership change (the "Change Date") that may be used to offset taxable income after the Change Date is subject to an annual limitation. The same limitation applies to certain "built-in" losses (i.e., losses that are economically accrued but unrecognized for tax purposes as of the Change Date). The Debtors expect the issuance of the Reorganized Common Stock and Additional Common Stock pursuant to the Plan to result in an ownership change of the WMI Tax Group under Section 382. The Effective Date would be the Change Date.

6. Under Section 382(l)(6), if a consolidated group undergoes an ownership change pursuant to a confirmed bankruptcy plan, the annual limitation on use of its NOL carry-forward is equal to the product of (A) the fair market value of the stock of the group's common parent immediately after the ownership change (after giving effect to the discharge of creditors' claims) multiplied by (B) the "long term tax exempt rate" in effect for the month in which the ownership change occurs (3.86% for ownership changes occurring in November 2010). According the report of the Examiner dated November 1, 2010 (the "Examiner's Report"), the Debtors estimate that the Reorganized Common Stock and Additional Common Stock of WMI will be worth approximately $160.0 million immediately after the Effective Date, resulting in an annual Section 382 limitation of approximately $6.2 million (3.86% of $160 million).

7. The Plan assumes (in accordance with the Abandonment Motion) that WMI will abandon the equity interests in WMB before the Effective Date to shield a small fraction of the NOL carry-forward from the Section 382 limitation. According to the Disclosure Statement and the Examiner's Report, abandonment of the equity interests of WMB during 2010 will result in a worthless stock deduction of approximately $5 billion (the "Stock Loss"). Consistent with the private letter ruling from the IRS confirming the ordinary character of the Stock Loss, the Stock Loss will be a $5.0 billion NOL incurred in 2010.

8. Under Section 382(d)(1), an NOL incurred in the year of an ownership change is pro-rated between the pre- and post-change date portions of the year, and the post-change date portion is not subject to a Section 382 limitation. Thus, assuming the Effective Date of the Plan is December 22, 2010, and the Debtors abandon the equity interests of WMB on or before December 22, 2010, approximately $123.3 million (9 days / 365 days × $5 billion) will be available to offset future taxable income of the WMI Tax Group without a section 382 limitation. As described above, an additional $6.2 million of NOL will be available in each year through 2028 (20 years after 2008) within the limitation. Thus, the total possible NOL the WMI Group could use to offset future taxable income would be $235.5 million ($123.9 million + [$6.2 million x 18])—less than 5% of the $5 billion Stock Loss and less than 1.4% of the $17.8 billion NOL (in each case, without even

3

taking into account a discount for delaying use of the NOL). If the Effective Date is December 31, 2010, the entire NOL will be limited under Section 382, and the total usable NOL could not exceed $111.6 million until expiration in 2028 ($6.2 million x 18).

**THE DEBTORS' ABANDONMENT MOTION MUST BE
DENIED TO ALLOW THE PLAN TO BE AMENDED
TO LEAVE THE WMI TAX GROUP'S ENTIRE $17.8 BILLION
<u>NOL CARRYOVER FREE FROM ANY SECTION 382 LIMITATION</u>**

9. The Plan and Disclosure Statement fail to recognize that, under Section 382(l)(5), if certain holders of the CCB Guarantee Claims receive at least 50% of the Reorganized Common Stock and the Additional Common Stock, the WMI Tax Group's entire $17.8 billion NOL carryover will be free from any Section 382 limitation. Unless the Debtors' Abandonment Motion is denied, however, such an amendment to the Plan will not even remain possible.

10. In the face of a possible amendment to the Plan that will allow the WMI Tax Group's NOL carryovers to be free from any Section 382 limitation, the Debtors must be precluded from abandoning the equity interests in WMB and squandering nearly 99% of the WMI Group's NOL carryforwards.

**NOTICE**

11. Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery or hand delivery to (i) counsel to the Debtors; (ii) counsel to all statutory committees appointed in these Chapter 11 Cases; (iii) the United States Trustee for the District of Delaware; (iv) the Office of Thrift Supervision; (v) the Federal Deposit Insurance Corporation; (vi) the Securities & Exchange Commission; (vii) the Internal Revenue Service; (viii) counsel to JP Morgan Chase; (ix) counsel to Bank of New York Mellon; (x) counsel to Wilmington Trust Company, as Guarantee Trustee for CCB IV Capital Trust, CCB V Capital Trust, CCB VII Capital Trust and CCB VIII Capital Trust; and (xi) Deutsche Bank Trust Company Americas, as Guarantee Trustee for CCB Capital Trust VI, CCB Capital Trust IX, HFC Capital Trust I and CCB IV Capital Trust. Tricadia submits that under the circumstances no further notice is necessary.

WHEREFORE, Tricadia respectfully requests that the Court deny the Debtors' Abandonment Motion.

Dated: November 29, 2010
Wilmington, Delaware

PINCKNEY, HARRIS & WEIDINGER, LLC

/s/Donna L. Harris
Donna L. Harris (No. 3740)
1220 N. Market Street, Suite 950
Wilmington, Delaware 19801
(302) 504-1497 (Telephone)
(302) 655-5213 (Facsimile)

-and-

Javier Schiffrin, Esq.
SCHIFFRIN & PARTNERS, P.C.
55 West 26th Street, 15th Floor
New York, NY 10010-1012
(646) 595-0557 (Telephone)
(646) 688-3225 (Facsimile)

-and-

Robert H. Wellen, Esq.
IVINS, PHILLIPS & BARKER
1700 Pennsylvania Avenue, NW, Suite 600
Washington, DC 20006
(202) 662-3401 (Telephone)
(202) 393-7601 (Facsimile)

Counsel to Tricadia Capital Management, LLC