IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WASHINGTON MUTUAL, INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-12229 (MFW)<br><br>Jointly Administered<br><br>**Hearing Date: December 17, 2010 at 10:30 a.m. (EST)** |

**OBJECTION TO DEBTORS' MOTION TO ESTIMATE MAXIMUM AMOUNT OF CERTAIN CLAIMS FOR PURPOSES OF ESTABLISHING RESERVES UNDER THE DEBTORS' PROPOSED CHAPTER 11 PLAN**

TO:   THE HONORABLE MARY F. WALRATH,
      UNITED STATES BANKRUPTCY JUDGE

Broadbill Investment Corp. ("Broadbill"), Nantahala Capital Partners, LP ("Nantahala") and Blackwell Partners, L.P. ("Blackwell" and, together with Broadbill and Nantahala, the "Claimants"), on behalf of themselves and all holders of Litigation Tracking Warrants ("LTWs"), for their Objection (the "Objection") to the Debtors' Motion (the "Motion") to Estimate Maximum Amount of Certain Claims for Purposes of Establishing Reserves under the Debtors' Proposed Chapter 11 Plan (the "Proposed Plan") [Docket No. 5971], respectfully represents:

1.   On October 6, 2010, the Debtors filed the Proposed Plan [Docket No. 5548] (the "Proposed Plan"). Under the Proposed Plan, the Debtors will fund a full cash reserve equal to the maximum amount of all Disputed Claims. The Debtors have agreed that the LTW Holders' claim against the Debtors in an amount equal to 85% of the net recovery in the Anchor Litigation is a Disputed Claim and that, if Claimants are successful in the declaratory judgment action before this Court entitled *Broadbill Investment Corp., et al. v. Washington Mutual, Inc.*, Adv.

No. 10-50911 (MWF), the LTW Holders' claims will be treated as general unsecured claims under the Proposed Plan.

2. On November 17, 2010, the Debtors filed the Motion. In the Motion, the Debtors estimate that the maximum amount payable on account of the LTW Holders' claims is $250 million. See Motion, at pp. D-1 - D-6. The formula the Debtors used to calculate this amount is set forth on page 58 of the Disclosure Statement, in footnote 17.

3. On November 19, 2010, the Claimants filed an objection to the Proposed Plan (attached hereto as Exhibit A, the "Plan Objection") on behalf of themselves and all LTW holders. In the Plan Objection, the Claimants objected to the Proposed Plan on, among other reasons, the grounds that the amount of the Debtors' proposed reserve is inadequate. As set forth in the Plan Objection, the Debtors' calculation of the reserve for the LTW Holders' claims is wrong for the following two reasons, and the reserve amount should be no less than $337 million.

**A. The Tax Gross-Up Amount.**

4. In June 2010, JPMorgan Chase ("JPMorgan") filed a motion in the Court of Federal Claims seeking approval of its calculation of the amount of the tax gross-up relating to the proceeds of the Anchor Litigation. JPMorgan estimated the tax gross-up amount to be between $104 million and $144 million (depending on whether the Court of Federal Claims determined that the Anchor Litigation damage award would be equal to $356 million or $419 million).

5. The Debtors' calculation of the reserve for the LTW Holders omits the tax gross-up portion but deducts $180 million in estimated taxes. See Disclosure Statement, p. 58, fn 17. There are two ways to correct this mistake. One way is to simply ignore the tax reduction of $180 million since the gross-up is intended to make the damage award tax neutral. That would have the effect of adding approximately $153 million to the reserve (85% of $180 million). The alternative way is to include the gross-up of approximately $144 million, which would cause the reserve to increase, subject to the other reserve adjustment discussed below.

6. In a recent pleading filed by JPMorgan Chase in the Court of Federal Claims, it indicated that the amount of the tax gross-up could be impacted based on how it allocates the purchase price for the assets acquired from WaMu Bank and the Debtors. Presumably, that means the more tax basis JPMorgan Chase allocates to the Anchor Litigation, (i) the lesser the tax gain, (ii) the smaller the tax gross-up, (iii) the smaller the amount of the Anchor Litigation judgment, and (iv) the smaller the value of the LTWs. That result would be inequitable and improper. Under the intent and principles of the WMI Agreement (including Section 6.3 thereof), WaMu Bank was not permitted to transfer the Anchor Litigation to third parties unless it was to a successor and, then, only if the interests of the LTW Holders would remain aligned with the interests of the party prosecuting the Anchor Litigation. Transfer of the ownership to the Anchor Litigation was not supposed to impact the value of the LTWs based on tax considerations or otherwise. Section 4.4 of the WMI Agreement was intended to correct any unforeseen circumstance where LTW value was not being preserved in accordance with the intent and principles of the WMI Agreement. Based on the foregoing, the LTW Holders have a claim against the Debtors to the extent that the value of the LTWs has been, or will be, negatively impacted by the transfer of the Anchor Litigation to JPMorgan Chase.

**B. The Tax Rate.**

7.  The Debtors' calculation of the reserve uses an effective tax rate of 45.5%. JPMorgan Chase in its pleading for the tax gross-up said that it is taxed at a rate of 38.757%. The JPMorgan Chase rate is what the Debtors should have used in calculating the reserve. There is no reason for two different rates. This change in rates would have reduced the tax reduction amount from approximately $180 million to $153 million. This difference would add $27 million to the LTW Holders claim reserve.

8.  Taking into account these adjustments, the amount of the reserve should be not less than $337 million, calculated as follows:

> Amount of Judgment: $419 million (not including tax gross-up or tax reduction)
> Minus legal expenses: $22 million
> Multiplied by .85%
>
> **Net Reserve: $337 million**

9.  On December 6, 2010, the Claimants served a Rule 30(b)(6) deposition notice and document request (the "Deposition Notice") on the Debtors. The Deposition Notice seeks information relating to the Debtors' calculation of the claims reserve relating to the LTW Holders' claims - - specifically, how the Debtors reached the purported $250 million maximum claims reserve amount. The Claimants reserve the right to amend and/or supplement this Objection following the deposition scheduled in the Deposition Notice.

WHEREFORE, for all the reasons cited above, the Claimants respectfully request that this Court (i) deny the Motion unless and until the changes requested herein by the Claimants are made and (ii) grant such other and further relief as this Court deems just and proper.

Dated: December 6, 2010

_____
Mark E. Felger (No. 3919)
COZEN O'CONNOR
1201 N. Market Street
Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000

Paul N. Silverstein
Jeremy B. Reckmeyer
ANDREWS KURTH LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 850-2800

*Attorneys for Broadbill Investment Corp.*

Frederick B. Rosner (No. 3995)
Scott J. Leonhardt (No. 4885)
THE ROSNER LAW GROUP LLC
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 295-4877

Arthur Steinberg
KING & SPALDING
1185 Avenue of the Americas
New York, NY 10036
Telephone: (212) 556-2100

Jonathan Hochman
SCHINDLER COHEN & HOCHMAN LLP
100 Wall Street
New York, NY 10005
Telephone: (212) 277-6300

*Attorneys for Nantahala Capital Partners, LP and Blackwell Partners LP*