# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

------------------------------------------------------------x

|  |  |  |
|---|---|---|
| *In re* | : | **Chapter 11** |
|  | : |  |
| **WASHINGTON MUTUAL, INC., <u>et al.</u>,**[1] | : | **Case No. 08-12229 (MFW)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |
|  | : |  |
|  | : | **Hearing Date: May 2, 2011 at 9:30 am (EDT)** |
|  |  | **Objection Deadline: April 25, 2011 at 4:00 pm (EDT)** |

------------------------------------------------------------x

**MOTION OF WASHINGTON MUTUAL, INC. FOR AN ORDER PURSUANT TO
SECTION 105(a) OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE (I) APPROVING THE CASSESE
LITIGATION SETTLEMENT AGREEMENT AND (II) REDUCING
<u>AND ALLOWING CLAIMS RELATED TO THE CASSESE LITIGATION</u>**

Washington Mutual, Inc., as debtor and debtor in possession ( "<u>WMI</u>"), hereby

files this motion (the "<u>Motion</u>") for an order, pursuant to section 105(a) of title 11 of the United

States Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "<u>Bankruptcy Rules</u>"), approving that certain Class Action Settlement Agreement,

dated February 15, 2011 (the "<u>Settlement Agreement</u>," "<u>Settlement</u>" or "<u>Agreement</u>"),[2] by and

among WMI (a defendant therein) and plaintiffs Denise Cassese, f/k/a Denise Caligiuri, George

Scott Rush, Richard Schroer, and William Bloom (the "<u>Named Plaintiffs</u>"), on behalf of

themselves and all others similarly situated (collectively, "<u>Plaintiffs</u>"), in the litigation captioned

*Cassese v. Wash. Mutual, Inc.*, No. 05-cv-2724(ADS)(ARL) (E.D.N.Y.) (the "<u>Cassese</u>

<u>Litigation</u>" or "<u>Litigation</u>"), and respectfully represents as follows:

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) Washington Mutual, Inc. Investment Corp. (5395). The Debtors' principal offices are located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.

[2] A copy of the Settlement Agreement is attached hereto as Exhibit A.

## Jurisdiction

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2.      On September 26, 2008 (the "Commencement Date"), WMI and its wholly-owned subsidiary, WMI Investment Corp. ("WMI Investment" and, together with WMI, the "Debtors"), each commenced with this Court a voluntary case in this Court pursuant to chapter 11 of the Bankruptcy Code (together, the "Chapter 11 Cases"). WMI is authorized to continue to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 3, 2008, the Court entered an order, pursuant to Bankruptcy Rule 1015(b), authorizing the joint administration of the Chapter 11 Cases.

3.      On October 15, 2008, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On January 11, 2010, the U.S. Trustee appointed an official committee of equity security holders (the "Equity Committee").

4.      Prior to the Commencement Date, WMI was a savings and loan holding company that owned WMB and such bank's subsidiaries, including Washington Mutual Bank fsb ("WMBfsb"). WMI also has certain non-banking, non-debtor subsidiaries. Like all savings and loan holding companies, WMI was subject to regulation by the Office of Thrift Supervision (the "OTS"). WMB and WMBfsb, in turn, like all depository institutions with federal thrift charters, were subject to regulation and examination by the OTS. In addition, WMI's banking

RLF1 3964446v. 1

and nonbanking subsidiaries were overseen by various federal and state authorities, including the FDIC.

      5.     On September 25, 2008, the Director of the OTS, by order number 2008-36, appointed the FDIC Receiver as receiver for WMB and advised that the FDIC Receiver was immediately taking possession of WMB (the "Receivership"). Immediately after its appointment as receiver, the FDIC Receiver sold substantially all the assets of WMB, including the stock of WMBfsb, to JPMorgan Chase Bank, National Association ("JPMC") pursuant to that certain Purchase and Assumption Agreement, Whole Bank, dated as of September 25, 2008.

### The Cassese Litigation

      6.     Plaintiffs commenced the Litigation by filing a complaint on June 6, 2005 in the United States District Court for the Eastern District of New York (the "District Court"). Plaintiffs filed a First Amended Class Action Complaint on October 11, 2005 and a Second Amended Class Action Complaint on October 2, 2006.

      7.     Plaintiffs contend in the Litigation that WMI is directly and indirectly liable for the acts of its former subsidiary, WMB, and other former WMI subsidiaries, for allegedly charging certain purportedly improper fees prior to satisfaction and settlement of Plaintiffs' home loans, mortgage loans, co-op loans, home equity loans or home equity lines of credit. These charges allegedly included various fees (also referred to by Plaintiffs as "penalties" and "finance charges"), including, but not limited to, fees that are often but not always listed on payoff statements or elsewhere as (i) Fax Fees; (ii) Payoff Statement Fees; (iii) Recording Fees; and (iv) "UCC-3 fees" in connection with requests for payoff statements or payoff amounts or the prepayment, repayment, discharge, satisfaction or settlement of loans secured by a residence (collectively, the "Disputed Fees").

8.      By order, dated December 29, 2008, the District Court certified a class against WMB. *Cassese v. Wash. Mut., Inc.*, 255 F.R.D. 89, 98 (E.D.N.Y. 2008).

9.      On September 10, 2009, this Court granted Plaintiffs' motion to lift the automatic stay to allow the Litigation to "continue [in the District Court] for the purpose of determining the amount of liability, if any, owed by WMI in the [Litigation]." *In re Wash. Mut., Inc.*, No. 08-12229 (MFW) (Bankr. D. Del., Aug. 24, 2009).

10.     On September 30, 2009, the District Court certified a class against WMI. The District Court stated that the "requirements of Rule 23 are satisfied with respect to the plaintiffs' claims against WMI" for "the reasons set forth in the Court's December 29, 2008 Memorandum of Decision and Order [certifying a class against WMB]," and adopted the WMB class definition for the WMI class. *Cassese v. Wash. Mut., Inc.*, 262 F.R.D. 179, 185 (E.D.N.Y. 2009). The District Court also found that, "as WMI did not directly engage in the lending or servicing activities at issue the class definition need not be changed." *Id.*

11.     By order, dated May 13, 2010, the District Court decertified the class against WMB, which was under the receivership of the FDIC by that time. *See Cassese v. Wash. Mut., Inc*, 711 F. Supp. 2d 261 (E.D.N.Y. 2010). In the same order, the District Court denied Plaintiffs' motion for joinder or intervention of plaintiff William Bloom ("Bloom") without prejudice to Plaintiffs' opportunity to replead.

12.     On May 28, 2010, Plaintiffs filed a Motion for Reconsideration of Motion to Intervene, Join or Add William Bloom as a Plaintiff in this Action Against WMI (the "Reconsideration Motion") for the purpose of bringing a claim under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601.[3]

---

[3] The District Court had previously dismissed the TILA claim.

13.     On June 14, 2010, WMI filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (the "Rule 12(c) Motion") or, in the alternative, to decertify the class pursuant to Fed. R. Civ. P. 23 (the "Decertification Motion"). WMI asserted, *inter alia*, that the Plaintiffs failed to state a plausible claim against WMI under any direct or indirect theories of liability. Alternatively, WMI argued that because the District Court decertified the WMB class for lack of numerosity, this basis for decertification necessarily applied to WMI, as the District Court previously predicated the WMI class on the existence of the WMB class.

14.     On June 14, 2010, WMI also filed an opposition to Plaintiffs' Reconsideration Motion, asserting, among other things, that (1) allegations relating to the proposed new plaintiff did not save the Complaint from dismissal for failure to state a plausible claim against WMI as set forth in the Rule 12(c) Motion, (2) TILA imposes disclosure obligations only upon a "creditor," and WMI is not a "creditor" within the meaning of TILA, and (3) the statute of limitations for Bloom's TILA claim had clearly expired and Bloom could not provide a basis for equitable tolling.

15.     By order, dated October 18, 2010, the District Court granted the Reconsideration Motion and gave Plaintiffs thirty days to file an amended complaint to add Bloom as a plaintiff and to replead the TILA claim. In the same order, the District Court denied WMI's Rule 12(c) Motion and the Decertification Motion. *See Cassese v. Wash. Mut., Inc.*, 743 F. Supp. 2d 148 (E.D.N.Y. 2010). Pursuant to Rule 23(f) of the Federal Rules of Civil Procedure, WMI filed a timely petition in the United States Court of Appeals for the Second

Circuit (the "Second Circuit") for leave to appeal the District Court's October 18, 2010 decision and order denying the Decertification Motion (the "Rule 23(f) Petition").[4]

16.    On November 17, 2010, Plaintiffs filed the Third Amended Class Action Complaint (the "Complaint"), which is now pending in the District Court.

### The Bankruptcy Claims

17.    By order, dated January 30, 2009, the Court established March 31, 2009 at 5:00 p.m. (Eastern Time) (the "Bar Date") as the deadline for filing proofs of claim against the Debtors and their chapter 11 estates.  Prior to the Bar Date, Named Plaintiffs, their counsel, and counsel for the Certified Class filed the following proofs of claim against WMI in the Chapter 11 Cases with respect to the claims asserted in the Litigation in this Court on their own behalf and purportedly on behalf of the class (collectively, the "Bankruptcy Proofs of Claim"):

| Claim No. | Claimant | Debtor | Amount |
|-----------|----------|--------|--------|
| 2463 | Denise Cassese | WMI | Unliquidated |
| 2470 | George Rush | WMI | Unliquidated |
| 2500 | Richard Schroer | WMI | Unliquidated |
| 2505 | Whalen & Tusa, P.C. for Plaintiffs' Counsel and Class Counsel | WMI | Unliquidated |

18.    On March 1, 2010, WMI interposed the Debtors' Twenty-Third Omnibus Objection (the "Bankruptcy Objection") [Dkt. No. 2443] to the Bankruptcy Proofs of Claim. Among other things, the Debtors submitted the Bankruptcy Objection to preserve their rights to move to estimate the Bankruptcy Proofs of Claim for purposes of allowance pursuant to sections

---

[4] In connection with the Settlement, WMI withdrew the Rule 23(f) Petition without prejudice subject to its right to reinstatement.

RLF1 3964446v. 1

105(a) and 502(c) of the Bankruptcy Code. On April 5, 2010, Plaintiffs responded to the Bankruptcy Objection. [Dkt. No. 3051].

19. On November 17, 2010, WMI filed a motion to estimate, among other unliquidated claims, the Bankruptcy Proofs of Claim. [Dkt. No. 5791]

20. On November 19, 2010, the Plaintiffs filed an objection to the confirmation of the Debtors' chapter 11 plan (as it has and may be further amended and modified or supplemented, the "Plan") and purported to move for, among other relief, estimation of the Bankruptcy Proofs of Claim (the "Plan Objection") [Dkt. No. 6026]. In connection with the Settlement, on December 16, 2010, WMI filed a certification of counsel wherein it revised its estimate of the Bankruptcy Proofs of Claim [Dkt. No. 6358], and on December 17, 2010, Plaintiffs and Class Counsel withdrew the Plan Objection, subject to its right to reinstatement pending approval of the Settlement by this Court and entry of the Final Order by the District Court, and the Final Order becoming Final. [Dkt. No. 6375].

## The Settlement Agreement

21. Beginning in November 2010, Named Plaintiffs and WMI began to discuss parameters for settlement of the Bankruptcy Proofs of Claims and, in that regard, all of the claims and causes of action that were or could have been asserted by Plaintiffs against WMI in the Litigation and, ultimately, agreed on the terms of a settlement in principle, subject to further negotiation and approvals by the District Court and this Court.

22. WMI believes that the Litigation is entirely without merit and is unsupported by the evidence. WMI vigorously contests and continues to deny each and every claim and contention alleged by the Plaintiffs in the Litigation, and has asserted numerous defenses thereto, including that the Plaintiffs have failed to allege a plausible claim for direct

7

relief or relief under any theory of alter ego liability, vicarious liability, or indirect liability, and that the class certified by the District Court against WMI does not meet the requirements of Fed. R. Civ. P. 23. WMI also denies and continues to deny any direct or indirect wrongdoing or legal liability arising out of any conduct alleged in the Litigation and is prepared to vigorously and fully defend the Litigation.

23.     Notwithstanding the foregoing, WMI recognizes the risks, expense and length of continued proceedings necessary to defend the Litigation through trial and any appeals. Plaintiffs also recognize the risks, uncertainties, and the expense and length of proceedings necessary to prosecute the Litigation through trial and appeals. Accordingly, Plaintiffs and WMI wish to promptly and fully resolve and settle with finality (a) all of the claims that were or could have been asserted by the Plaintiffs against WMI in the Litigation and (b) the Bankruptcy Proofs of Claim.

24.     In furtherance thereof, the Plaintiffs and WMI executed the Settlement Agreement on February 15, 2011, and on the same day, the parties jointly filed in the District Court a motion, attached hereto as Exhibit B, seeking an order (the "Preliminary Approval Order") that, among other things, (1) granted preliminary approval of the Settlement Agreement; (2) approved the Class (as defined in the Settlement Agreement) for settlement purposes only; (3) approved the form and content of the Notice of Class Action and Proposed Settlement (the "Mailed Notice") and the Summary Notice of Class Action Settlement (the "Publication Notice", collectively, the "Notice") and the plan for distribution of the Notice consistent with the requirements of Fed. R. Civ. P. 23(e) and (c)(2) and due process; (4) set procedures for the submission of claims, objections, and opt-out requests by members of the Class; and (5) scheduled a Final Fairness Hearing no earlier than one hundred and fifty (150) days from entry

of the Preliminary Approval Order to consider whether the Settlement should be given final

approval. Plaintiffs also filed a memorandum in support of the parties' joint motion for

preliminary approval of the Settlement, attached hereto as Exhibit C.

25. The District Court entered the Preliminary Approval Order on March 10,

2011. Pursuant to the Preliminary Approval Order, (a) a Final Fairness Hearing has been

scheduled for September 15, 2011, and (b) Kurtzman Carson Consultants, LLC (the "Settlement

Administrator") will (1) cause the Mailed Notice to be mailed to the last-known address of each

member of the Class, and (2) cause the Publication Notice to be published twice in the *USA*

*Today*, with WMI bearing the costs thereof. The Publication Notice and the Settlement

Agreement will be posted on an Internet website, which will be established in connection with

the Settlement and maintained by the Settlement Administer.

26. The salient terms of the Settlement Agreement are as follows[5]:

## **Payment of Gross Settlement Fund**

- The Class for Settlement Purposes. For settlement purposes only and to effectuate the
  Settlement Agreement, the Plaintiffs and WMI have moved the District Court for
  approval of a class that consists of all consumers or borrowers in the United States
  and its territories who had a mortgage, deed of trust, home loan, co-operative loan,
  home equity loan or line of credit (first lien or otherwise) secured by a residence,
  which loan was originated, purchased or serviced by WMB (formerly known as
  Washington Mutual Bank, FA), or any Affiliate thereof, and who paid or will be
  demanded to pay allegedly prohibited fees, charges and/or penalties (often but not
  always termed "Fax Fees," "Payoff Statement Fees," "Recording Fees," or "UCC-3
  Fees" by Washington Mutual Bank, or an Affiliate thereof, in payoff statements or
  elsewhere) in connection with requests for payoff statements or payoff amounts or the
  prepayment, repayment, discharge, satisfaction or settlement of loans secured by a
  residence and such Disputed Fees were or are charged, collected or received by
  WMB, or any Affiliate thereof (the "Class").

---

[5] The following is a summary of the Settlement Agreement, which is attached hereto and incorporated by
reference as if fully set forth herein. In the event of any inconsistency between this summary and the
Settlement Agreement, the Settlement Agreement controls. Capitalized terms used but not otherwise
defined herein will have the meanings ascribed to them in the Settlement Agreement.

- <u>Distribution of Gross Settlement Fund</u>. Within five (5) days after this Court's entry of an order granting the relief requested herein (the "<u>Bankruptcy Court Approval Order</u>"), WMI shall deposit $13 million (the "<u>Gross Settlement Fund</u>") into a segregated account, fully insured by the FDIC Dodd Frank Provision or backed by the full faith and credit of the United States (the "<u>Settlement Account</u>"), which will be used to pay court-approved Incentive Awards for Named Plaintiffs, Attorneys' Fees and Attorneys' Expenses to Class Counsel, and Settlement Account administration fees, and the remainder (the "<u>Net Settlement Fund</u>") shall be available to make payments, pursuant to the terms of the Settlement Agreement, to Class Members who paid any Disputed Fees during the Class Period and who timely complete and submit a valid Proof of Claim Form ("<u>Claiming Class Members</u>"). As noted above, WMI also has agreed to pay all costs related to settlement administration and to provide notice to the Class of this Settlement. If any funds remain in the Net Settlement Fund after the payment of all Claim Payments issued to Claiming Class Members based on timely, valid Proof of Claim Forms (which have either been cashed by such Claiming Class Members or have expired by their terms), the Settlement Administrator shall return all such funds remaining in the Net Settlement Fund to WMI, which funds shall be returned to WMI's bankruptcy estate for subsequent distribution in accordance with the Plan.

## Releases

- <u>Named Plaintiffs' and Settlement Class Members' Release of Released WMI Parties</u>. As of the Effective Date (as defined, *infra* p. 13), all Settlement Class Members[6] and Class Counsel, together with each of their respective heirs, trustees, executors, administrators, beneficiaries and their respective predecessors, successors, representatives, principals and assigns, or any and all of them, for the exchange of good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, will be bound by the Final Order and fully release, acquit and forever discharge, to the fullest extent permitted by law, the Released WMI Parties from (i) any and all Released Claims however they may be expressed, which they have, may have had, may have currently, or may have in the future against any of the Released WMI Parties or any combination of them, and shall be enjoined from continuing, instituting or prosecuting any legal proceeding against the Released WMI Parties relating in any way whatsoever to the Released Claims, including seeking to represent any form of opt-out class from this Settlement; (ii) any Released Claims arising out of any and all acts, failures to act, omissions, facts, matters, events, transactions, occurrences, or oral or written statements or representations made or allegedly made in connection with, or directly or indirectly relating to, the Settlement Agreement, except that nothing in this release shall preclude any action to enforce the terms of the Settlement; and, (iii) any and all claims for attorneys' fees, costs, expenses or disbursements incurred by Class Counsel or by Named Plaintiffs or the Settlement Class Members, or any of them, in connection with or related in any manner to the

---

[6] "Settlement Class Members" means all Class Members who do not timely and validly submit an Opt-Out Notice.

Litigation, the Settlement or the administration of such Settlement, except with regards to Attorneys' Fees and Attorneys' Expenses. Settlement Class Members are also precluded from making any claim in the future, directly or indirectly, even in the event a Settlement Class Member discovers facts other than or different from those which he, she or it believes to be true with respect to the Disputed Fees or any other subject matter of the Litigation, and each Settlement Class Member expressly waives and fully, finally and forever settles and releases any known or unknown, suspected or unsuspected, choate or inchoate Released Claims.

- <u>WMI's Releases of the Released Plaintiffs Parties</u>. As of the Effective Date (as defined, *infra* p. 13), WMI and its Affiliates, together with each of their respective heirs, trustees, executors, administrators, beneficiaries and their respective predecessors, successors, representatives, principals and assigns, or any and all of them, for the exchange of good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, will be bound by the Final Order and shall fully release, acquit and forever discharge, to the fullest extent permitted by law, the Released Plaintiffs Parties for any and all claims, acts, failures to act, omissions, facts, matters, events, transactions, occurrences, or oral or written statements or representations made or allegedly made in connection with, or directly or indirectly relating in any way to the Litigation or this Settlement Agreement.

- <u>Covenant Not to Sue</u>. Pursuant to the Settlement Agreement, all Settlement Class Members and Class Counsel covenant and agree that they will not seek to establish liability against the Released WMI Parties, excluding WMB and the FDIC, based in whole or in part on any of the Released Claims, or based in whole or in part on any actions taken by JPMC after September 25, 2008 relating in any way to Disputed Fees.

## Bankruptcy Proofs of Claim

- WMI will withdraw the Bankruptcy Objection without prejudice to renew such objection if, for any reason, the conditions precedent to the Effective Date, or any one of them, does not occur. Upon the approval of this Settlement by the Court, the entry of the Final Order by the District Court, and the Final Order becoming Final, the Settling Parties agree that the Bankruptcy Proofs of Claim will be deemed reduced and allowed, in the aggregate, in an amount equal to the amount of the Gross Settlement Fund, and disallowed to the extent such claims, in the aggregate, exceed the amount of the Gross Settlement Fund and that each of the Bankruptcy Proofs of Claim will be deemed satisfied in full. For the avoidance of doubt, except as provided above, the Settling Parties agree that, if the Court approves the Settlement, the District Court enters a Final Order and the Final Order becomes Final, those Bankruptcy Proofs of Claim will be satisfied as and to the extent and in the form set forth herein, and that the holders thereof have no rights arising under or related to the Plan, including, without limitation, any right to receive a distribution from WMI pursuant to the Plan or to make elections with respect thereto.

11

- Pending approval of this Settlement by the Court, the entry of the Final Order by the District Court, and the Final Order becoming Final, the Plaintiffs shall take no action to impede or preclude the entry of an order of the Court confirming the Plan, the administration of WMI's Chapter 11 Cases, the approval of the Supplemental Disclosure Statement filed in connection with the Plan, or the consummation, implementation and administration of the Plan.

## Conditions to Effectiveness

- The Effective Date will be the first date by which all of the following events shall have occurred or have been jointly waived by WMI and the Named Plaintiffs: (i) the Settlement Agreement is executed by Plaintiffs and WMI; (ii) the District Court approves the Class for settlement purposes; (iii) the District Court enters the Preliminary Approval Order; (iv) this Court shall have entered the Bankruptcy Court Approval Order and such order becomes Final (as defined in the Settlement Agreement); (v) the District Court enters the Final Order; and (vi) the Final Order becomes Final.

## Termination of the Settlement Agreement

- Termination of the Settlement Agreement. No later than September 5, 2011, the Settlement Administrator will provide Named Plaintiffs, Settlement Class Members, and WMI with a written statement of the number of Opt-Out Claimants. If the percentage of Opt-Out Claimants is equal to or greater than the Maximum Opt-Out Percentage, WMI shall have the option, at its sole discretion, to terminate the Settlement Agreement, and WMI will give Class Counsel written notice within five (5) business days thereafter if it elects to terminate this Settlement at WMI's sole discretion.

- Consequences of Termination of the Settlement Agreement. In the event WMI in its sole discretion determines to terminate this Settlement, pursuant to Article 8 of the Settlement Agreement, the Settlement Account Agent will return the remaining balance of the Gross Settlement Funds to WMI, together with any interest earned thereon, within five (5) business days of such termination, and the Settling Parties will be returned to the *status quo ante* with respect to the Litigation and the Chapter 11 Cases. Within five (5) business days after WMI elects to terminate this Settlement, the Settling Parties will notify the United States Court of Appeals for the Second Circuit, the District Court and this Court that the Settlement is terminated and ask the relevant courts to reinstate the prior proceedings.

## Relief Requested

27.     WMI seeks entry of an order, pursuant to section 105(a) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules, (1) approving the Settlement Agreement in its entirety, (2) reducing and allowing the Bankruptcy Proofs of Claim, in the aggregate, in an

12

amount equal to the Gross Settlement Fund (and disallowing the Bankruptcy Proofs of Claim to the extent such claims, in the aggregate, exceed the amount of the Gross Settlement Fund), and deeming each of the Bankruptcy Proofs of Claim satisfied in full upon payment, and (3) approving Kurtzman Carson Consultants, LLC as the Settlement Administrator for this Settlement. Plaintiffs consent to the relief requested pursuant to Section 2.3 of the Settlement Agreement.

## Basis For Relief

28.     Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019, which governs the approval of compromises and settlements, provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).

29.     A starting point in analyzing any proposed settlement agreement is the general policy of encouraging settlements and favoring compromises. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996). To approve a settlement, a bankruptcy court must determine that such settlement is in the best interest of a debtor's estate. *In re Kaiser Aluminum Corp.*, 339 B.R. 91, 95-96 (D. Del. 2006). In addition, a court must

> "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal" in light of four factors: (1) the probability of success in the litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and (4) the paramount interests of the creditors.

*Id.* at 96 (quoting *Martin*, 91 F.3d at 393). The United States District Court for the District of Delaware has explained that a court's ultimate inquiry is whether a settlement is fair, reasonable, and in the best interest of a debtor's estate. *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (Bankr. D. Del. 1998) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).

30.     A court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *see also In re World Health Alternatives, Inc.*, 344 B.R. at 296; *In re Key3Media Group, Inc.*, 336 B.R. 87, 92-93 (Bankr. D. Del. 2005).

31.     An analysis of the four factors that bankruptcy courts use to determine whether to approve a compromise or settlement demonstrates that the Settlement Agreement is fair, reasonable, and in the best interests of WMI's estate and all parties in interest.[7]

## A.     Probability of Success in the Litigation

32.     As stated above, WMI has denied and continues to deny the allegations in the Bankruptcy Proofs of Claim and the Complaint, as applicable, and all other charges of direct or indirect wrongdoing, violation of law, fault, legal liability or damage arising out of any conduct, statements, acts or omissions that were or could be alleged in the Bankruptcy Proofs of Claim or the Litigation, and believes that it acted properly at all times and that the allegations in the Bankruptcy Proofs of Claim and the Litigation are without merit. WMI has also asserted numerous defenses thereto, including that Named Plaintiffs and the Class have failed to allege a plausible claim for direct relief or relief under any theory of alter ego liability, vicarious liability,

---

[7] This Court has previously applied the appropriate legal standards in approving two other class action settlements in the Chapter 11 Cases. *See* Dkt. Nos. 5657 and 5683.

or indirect liability, and that the Class does not meet the requirements of Fed. R. Civ. P. 23 as to WMI. WMI is prepared to vigorously and fully defend this Litigation.

33.     Although WMI believes that the Litigation is entirely without merit and is unsupported by the evidence, WMI recognizes that there is an inherent uncertainty, delay and expense connected with defending the Litigation through trial and appeal and seeks to avoid the further expense and burden of protracted litigation. Moreover, as discussed above, the District Court certified a nationwide class against WMI (although it decertified the class against WMB). WMI sought to dismiss the Complaint in its entirety or, in the alternative, to decertify the WMI class by filing the Rule 12(c) Motion and the Decertification Motion, both of which the District Court denied. The District Court further permitted the Plaintiffs to add a new plaintiff in order to replead the TILA claim despite WMI's rigorous opposition. Although WMI filed the Rule 23(f) Petition in the Second Circuit to appeal the District Court's denial of WMI's motion to decertify the WMI class, the likelihood of success on the Rule 23(f) Petition is uncertain. Thus, prior to entering into the Settlement, WMI faced the prospect of potential liability for a nationwide class action in which it might bear a significant portion of the burden of defending the acts of its former subsidiary, WMB. In view of the District Court's refusal to dismiss the Complaint or to decertify the WMI class, and its decision to permit the TILA claim also to proceed to be pled, WMI believes that settlement of the Litigation and the Bankruptcy Proofs of Claim on the terms set forth in the Settlement Agreement is in the best interest of WMI's estate.

## B.     Difficulties in Collection

34.     Because WMI is a defendant in the Litigation, rather than a plaintiff, the second factor does not weigh in the analysis here.

15

**C.    Complexity of the Litigation, and the Expense, Inconvenience and Delay Associated With Defense of the Litigation**

35.    The third factor weighs in favor of approving the Settlement Agreement because resolution of the Litigation through trial and appeal, rather than through settlement, is likely to be complex, protracted, and expensive. First, the Litigation is highly complex. The remaining causes of actions include alleged violation of TILA, violation of New York General Business Law § 349, breach of contract, and unjust enrichment, and also alleged violations of consumer protection laws of 43 states and territories, including Guam and the Virgin Islands. Although the District Court previously dismissed claims arising under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601, New York Real Property Actions & Proceedings Law § 1921 (and the similar consumer protection laws of other jurisdictions), and New York Real Property Law § 274-a (and the similar consumer protection laws of other jurisdictions), Plaintiffs assert that they have expressly reserved the right to appeal the District Court's dismissal of these claims. *See* Complaint at 5, n.4. Moreover, the proposed Third Amended Class Action Complaint, filed in November 2010, is 64 pages long and contains 196 paragraphs of allegations, including a significant number of new allegations not previously asserted in prior complaints. Thus, in defending the Litigation, counsel for WMI would have to, at a minimum, respond to the new allegations in the Complaint, contend with causes of actions implicating federal and numerous state laws, and respond to any potential allowed appeal of the causes of action dismissed thus far.

36.    The Litigation is also complex given the unusual posture of the case for WMI. As set forth in the Decertification Motion and the Rule 23(f) Petition, by decertifying the class against a former subsidiary (WMB) but allowing the class action to proceed against WMI—a parent company whose alleged liability is wholly derivative of liability on the part of

16

WMB—the District Court placed WMI in an unusual position that has no parallels in either federal or state cases located to date. WMI's Rule 23(f) Petition and any subsequent appeals would have to be litigated and decided by the United States Court of Appeals for the Second Circuit. Moreover, as a practical matter, WMI would be in a difficult position to fully defend the Litigation because it never engaged in the alleged misconduct. Thus, adding to the complexity of the Litigation, WMI may be forced to seek discovery from and/or attempt to join other parties in order to properly defend the Litigation.

37.    Second, defense of the Litigation is likely to continue to be protracted and expensive. The Litigation is already in its fifth year. Discovery has not been completed. In fact, just weeks prior to the commencement of settlement negotiations, counsel for Plaintiffs pressed WMI to respond to 67 requests for admission. Furthermore, motions for summary judgment have not been filed or litigated in the Litigation, and neither a final discovery plan nor a trial date has been set by the District Court. Even if the Litigation results in a trial, the parties are likely to appeal any adverse outcomes. The potential appeals would further add to the expense of and increase the time to a final resolution of the Litigation.

38.    In addition to the delay and expense attendant to any complex litigation, WMI faces unique issues that increase the length and expense of this Litigation. As a practical matter, documents and witnesses critical to the defense may be all in the possession of the former subsidiary—an impediment that surely increases the cost of the defense. Such increased expenses in discovery and defense militate against one of the very reasons the automatic stay was lifted—namely, that discovery burdens on WMI would be minimal.[8] But, under the District

---

[8] In seeking to lift the automatic stay, Plaintiffs recognized the increased burden of obtaining discovery from WMI, a chapter 11 debtor, and represented to the Court that any additional discovery in this case was "not likely to come from the debtor [WMI]. As debtor points out, the first line of contact with the [Respondents] and the certified class was probably done by a subsidiary of [WMB]. And that subsidiary,

Court's decisions to date, WMI would face significant cost in defending the nationwide class action for which WMI is only allegedly derivatively liable. The FDIC Receiver may have little incentive to contribute to its own defense or assist in WMI's defense since it is currently freed from the prospect of a class action verdict and currently faces far less in potential damages from only the Named Plaintiffs.

39.     In view of the legal complexities of the Litigation and the potential administrative and financial burdens to WMI's estate if the Litigation and Bankruptcy Proofs of Claim were litigated rather than settled, the benefits of settling on the terms set forth in the Settlement Agreement greatly outweigh the costs and risks of continued litigation. Moreover, an expeditious settlement rather than protracted litigation is especially beneficial to the estate given that the Debtors seek to resolve claims filed in their Chapter 11 Cases so that they can make distributions to creditors.

**D.     Paramount Interest of Creditors**

40.     The fourth factor, which looks to whether the settlement is in creditors' best interests, also weighs in favor of approving the Settlement Agreement. The Settlement maximizes the value of WMI's bankruptcy estate by avoiding the expense of protracted litigation and the risk of an adverse outcome in the Litigation. As noted, the Litigation is highly complex legally and procedurally, and a full defense would likely be expensive as the Litigation winds through pre-trial motions and discovery, trial, and appeal. With a nationwide class certified against WMI, the potential damages in the Litigation could ultimately be significant. By settling, WMI completely eliminates the risk of an adverse outcome that could reduce WMI's bankruptcy estate.

---

as we understand it, was, of course, seized and sold to [JMPC]." Tr. of Omnibus Hr'g at 11:3-11, *In re Wash. Mut., Inc.*, Case No. 08-12229 (MFW) (Bankr. D. Del. Aug. 24, 2009).

RLF1 3964446v. 1

41.     In addition to eliminating the costs and risk of continued litigation, the
Settlement provides other benefits to creditors.  First, without a settlement, WMI would have to
obtain this Court's estimation of the Bankruptcy Proofs of Claim and then reserve amounts (cash
and liquidating trust interests) until the Litigation was resolved, which would further delay
distributions to other creditors of WMI's bankruptcy estate.  Second, the Settlement provides that
any remaining funds in the Net Settlement Fund would be returned to WMI's bankruptcy estate
for ultimate distribution as per the Plan.  Third, the Settlement contains full release provisions
that ensure that Settlement Class Members will not be able to bring any claims against WMI or
any of its Affiliates as defined in the Settlement Agreement.  The Settlement thus brings finality
to the Litigation with virtually no risk that WMI would be sued again in the future for actions
relating to the Disputed Fees.  Finally, the Settlement Agreement provides that, pending
finalization of the Settlement, the Plaintiffs shall take no action to impede or preclude the entry
of the order of the Bankruptcy Court confirming the Plan, the administration of WMI's Chapter
11 Cases, the approval of the Disclosure Statement, or the consummation, implementation and
administration of the Plan.  Thus, by entering into the Settlement, creditors can rest assured that
the Plaintiffs will not disrupt Plan confirmation, without which distributions cannot be made to
creditors.

42.     Based on the foregoing analysis of the four factors, WMI submits that
ample cause exists to approve the Settlement Agreement pursuant to section 105(a) of the
Bankruptcy Code and Bankruptcy Rule 9019.

## Notice

43.     No trustee has been appointed in these chapter 11 cases.  Notice of this
Motion has been provided to: (i) the U.S. Trustee; (ii) counsel for the Creditors' Committee; (iii)

RLF1 3964446v. 1

Class Counsel; (iv) counsel for the Equity Committee; (v) JPMC; (vi) the Federal Deposit Insurance Corporation; and (vii) parties entitled to receive notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided. In addition, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, notice of the Settlement Agreement was provided to the Department of Justice, the OTS and the state attorneys general for each state in which a member of the Settlement Class resides.

## No Previous Request

44.      No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE WMI respectfully requests that the Court enter an order (1) approving the Settlement Agreement in its entirety, (2) reducing and allowing the Bankruptcy Proofs of Claim, in the aggregate, in an amount equal to the Gross Settlement Fund, and disallowing the Bankruptcy Proofs of Claim to the extent such claims, in the aggregate exceed the amount of the Gross Settlement Fund, and deeming each of the Bankruptcy Proofs of Claim satisfied in full upon payment, (3) approving Kurtzman Carson Consultants, LLC as the Settlement Administrator for this Settlement, and (4) granting such other and further relief as is just.

Dated: Wilmington, Delaware
         March 31, 2011

Mark D. Collins (No. 2981)
Chun I. Jang (No. 4790)
Travis A. McRoberts (No. 5274)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Brian S. Rosen, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsímile: (212) 310-8007

ATTORNEYS TO THE DEBTORS
AND DEBTORS IN POSSESSION

RLF1 3964446v. 1