# Exhibit A

## Settlement Agreement

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENISE CASSESE f/k/a DENISE CALIGIURI, GEORGE SCOTT RUSH, RICHARD SCHROER and WILLIAM BLOOM, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>               v.<br><br>WASHINGTON MUTUAL, INC.; THE FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as receiver for WASHINGTON MUTUAL BANK, such entity having incorporated former defendants WASHINGTON MUTUAL BANK, FA and WASHINGTON MUTUAL HOME LOANS, INC.,<br><br>               Defendants. | Civil Action No. 05-02724<br><br>Arthur D. Spatt, USDJ<br>Arlene R. Lindsay, USMJ |

## CLASS ACTION SETTLEMENT AGREEMENT

CLASS ACTION SETTLEMENT AGREEMENT ("Settlement Agreement,"

"Settlement," or "Agreement"), dated as of February 15, 2011, between and among (1)

Defendant Washington Mutual, Inc. (together with its "Affiliates," as defined herein, "WMI"),

and (2) Plaintiffs Denise Cassese, f/k/a Denise Caligiuri, George Scott Rush, Richard Schroer,

and William Bloom (the "Named Plaintiffs"), on behalf of themselves and on behalf of all others

similarly situated (collectively, "Plaintiffs").    Capitalized terms used but not otherwise defined

herein shall have the meanings set forth in this Agreement.

### RECITALS

**WHEREAS,** this action was filed on June 6, 2005 in the United States District Court for

the Eastern District of New York (the "District Court"), designated as No. 05-cv-2724 (AJS).

(the "Litigation").    Plaintiffs filed a First Amended Class Action Complaint on October 11,

2005 and a Second Amended Class Action Complaint on October 2, 2006.

**WHEREAS**, on September 25, 2008, the Director of the Office of Thrift Supervision, by order number 2008-36, closed Washington Mutual Bank ("WMB"), appointed the Federal Deposit Insurance Corporation ("FDIC"), as receiver for WMB (the "FDIC Receiver"), and advised that the FDIC Receiver was immediately taking possession of WMB's assets.   Pursuant to that certain Purchase and Assumption Agreement, Whole Bank, dated as of September 25, 2008, the FDIC Receiver sold substantially all the assets of WMB to JPMorgan Chase Bank, N.A. ("JPMC").   On September 26, 2008, WMI filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").   WMI is authorized to continue to operate its businesses and manage its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code;

**WHEREAS**, on or about March 31, 2009, Plaintiffs and certain of the Class Counsel filed proofs of claim (Claim Numbers 2463, 2470, 2500, and 2505) (the "Bankruptcy Proofs of Claim") in the Bankruptcy Court on their own behalf and on behalf of the certified class.   On March 1, 2010, WMI interposed a preliminary objection to the Bankruptcy Proofs of Claim;

**WHEREAS**, Plaintiffs filed the Third Amended Complaint (the "Complaint") on November 17, 2010 against Defendants WMI, the FDIC Receiver, such entity having incorporated former defendants Washington Mutual Bank, FA ("WMBFA") and Washington Mutual Home Loans, Inc. ("WMHL") (collectively, the "Defendants"), which is now pending in the District Court;

**WHEREAS**, Plaintiffs contend in the Litigation that WMI is directly and indirectly liable for the acts of its former subsidiary, WMB, and other former WMI subsidiaries, for charging fees prior to satisfaction and settlement of Named Plaintiffs' and Class Members' home

US_ACTIVE:\43625838\10\79831.0003

loans, mortgage loans, co-op loans, home equity loans or home equity lines of credit.   These

charges allegedly included various fees (also referred to by Plaintiffs as "penalties" and "finance

charges"), including, but not limited to, fees that are often but not always listed on payoff

statements or elsewhere as i) Fax Fees; ii) Payoff Statement Fees; iii) Recording Fees; and iv)

"UCC-3 fees" in connection with requests for payoff statements or payoff amounts or the

prepayment, repayment, discharge, satisfaction or settlement of loans secured by a residence

(collectively, the "Disputed Fees," as defined herein);

     **WHEREAS**, by order, dated December 29, 2008, the District Court certified a class

against WMB.   On September 30, 2009, the District Court certified a class against WMI,

finding that, for the reasons set forth in the District Court's December 29, 2008 decision and

order certifying the class against WMB, the Fed. R. Civ. P. 23 requirements were satisfied with

respect to Plaintiffs' claims against WMI.   The District Court adopted the WMB class

definition for the WMI class because WMI did not directly engage in the lending or servicing

activities at issue.   By order, dated May 13, 2010, the District Court decertified the class against

WMB (by then, under the receivership of the FDIC).   On October 18, 2010, the Court denied a

motion by WMI to decertify the class against WMI.   WMI filed a timely petition in the United

States Court of Appeals for the Second Circuit pursuant to Fed. R. Civ. P. 23(f) to appeal the

District Court's October 18, 2010 decision and order, which petition was withdrawn without

prejudice to WMI's right to reinstatement in connection with this Settlement Agreement;

     **WHEREAS**, the Settling Parties incorporate by reference the allegations of and defenses

to the Litigation.   WMI further incorporates any objections and defenses to the certification of

the Litigation as a class action against WMI, including any right to appeal that it does have or

will have should this Settlement not be finally approved;

3

**WHEREAS**, on October 6, 2010, WMI filed that certain Sixth Amended Joint Plan of Affiliated Debtors Pursuant to chapter 11 of the United States Bankruptcy Code, dated October 6, 2010 (as it has and may be modified or amended, the "Plan");

**WHEREAS**, on November 17, 2010, WMI filed a motion to estimate, among other unliquidated claims, the Bankruptcy Proofs of Claim;

**WHEREAS**, on November 19, 2010, the Plaintiffs filed an objection to the Plan and purported to move for, among other relief, estimation of the Bankruptcy Proofs of Claim (the "Plan Objection");

**WHEREAS**, beginning in November 2010, Named Plaintiffs and WMI began discussing parameters for settlement of the Class Claims against WMI and, ultimately, the Settling Parties agreed on the terms of a settlement in principle, subject to further negotiation and the District Court and Bankruptcy Court approvals;

**WHEREAS**, in connection with the Settlement, Plaintiffs and Class Counsel withdrew the Plan Objection and WMI filed a certification of counsel wherein it revised its estimate of the Bankruptcy Proofs of Claim;

**WHEREAS**, while this Settlement is intended to quiet all litigation among the Settling Parties regarding the Released Claims, it is not intended to affect any claims Named Plaintiffs or any Class Member has against the Non-Settling Defendant in the Litigation.   After the Final Order becomes Final, the Complaint will remain operative solely against the Non-Settling Defendant, regardless of this Settlement and the District Court and Bankruptcy Court approvals referenced herein;

**WHEREAS**, the Settling Parties have reached this Settlement Agreement to resolve existing and/or unknown controversies arising out of any potential liability of WMI for Disputed

4

Fees, whether or not presently asserted or known, with the Class Members and have agreed to certification of the Settlement Class solely for the purpose of effectuating this Settlement. WMI specifically reserves all rights to challenge and oppose the certification, or to seek the decertification, of a class other than for the purpose of effectuating this Settlement;

**WHEREAS**, Class Counsel believe that the Class Claims have merit and are supported by the evidence.   Class Counsel recognize the risks and uncertainties of prosecuting any action and the expense and length of proceedings necessary to prosecute the Litigation through trial and appeals.   Class Counsel believe this proposed Settlement confers significant benefits to the Class.   Based upon their evaluations, and as a result of arms-length negotiations with WMI, Class Counsel are satisfied that the terms and conditions of this proposed Settlement are fair, reasonable, adequate and in the best interests of the Class Members;

**WHEREAS**, Named Plaintiffs desire to settle the Litigation in order to secure appropriate relief for the Class Members and to avoid the expense, risks and uncertainties of further litigation.   Accordingly, Named Plaintiffs have agreed to settle, on behalf of all the Class Members as defined herein, all Class Claims;

**WHEREAS**, WMI vigorously contests and continues to deny each and every claim and contention alleged by Named Plaintiffs and the Class, and has asserted numerous defenses thereto, including that Named Plaintiffs and the Class have failed to allege a plausible claim for direct relief or relief under any theory of alter ego liability, vicarious liability, or indirect liability, and that the Class does not meet the requirements of Fed. R. Civ. P. 23 as to WMI. WMI also denies and continues to deny any direct or indirect wrongdoing or legal liability arising out of any conduct alleged in the Litigation and is prepared to vigorously and fully defend this Litigation;

5

**WHEREAS,** although WMI believes that the Litigation is entirely without merit and is unsupported by the evidence, WMI recognizes the risks, expense and length of continued proceedings necessary to defend the Litigation through trial and any appeals, and WMI desires to avoid continued litigation with the Class Members or Class.   WMI has determined, therefore, that it is desirable that the Litigation and any future potential actions arising from the conduct alleged by Named Plaintiffs and the Class Members be settled in the manner and upon the terms and conditions set forth herein in order to avoid the further expense and burden of protracted litigation, to put to rest further controversy with the Class Members, and to provide the benefits as set forth in this Settlement.   This Settlement shall not be construed as, nor shall it be deemed to be evidence of, an admission or concession by WMI of any fault or liability for damages whatsoever;

**NOW, THEREFORE, IT IS HEREBY AGREED** by the Settling Parties that, subject to (i) entry of an order by the District Court preliminarily approving the Settlement, (ii) entry of an order by the Bankruptcy Court approving the Settlement, and (iii) entry of the Final Order by the District Court, and the Final Order becoming Final, the Class Claims of Named Plaintiffs and the Settlement Class Members shall be settled and dismissed with prejudice and on the merits, subject to the following terms and conditions:

**ARTICLE 1**
**DEFINITIONS**

The following definitions shall apply to and constitute a part of this Agreement and all schedules, exhibits and annexes hereto:

1.1     **"Administrative Costs"** means the amount to be paid by WMI to the Settlement Administrator to compensate the Settlement Administrator for its reasonable costs incurred in

6

administering this Settlement Agreement, including providing notice to the Class and determining the validity of claims submitted by the Claiming Class Members.

1.2 **"Affiliate"** means, as it relates to any entity, all past, present and future parents, subsidiaries, affiliates, divisions, assigns, officers, directors, committees, employees, fiduciaries, stockholders, administrators, actuaries, agents, insurers, representatives, attorneys, retained experts, contractors and/or trustees of each of them, and/or all predecessors and successors thereto. However, as it pertains to WMI, "Affiliate" shall not include WMB or the FDIC.

1.3 **"Attorneys' Fees"** means a total maximum of Three Million and Nine Hundred Thousand Dollars ($3,900,000.00) or any lesser sum that the District Court awards Class Counsel and Named Plaintiffs' counsel for their services in representing the Class.

1.4 **"Attorneys' Expenses"** means Fifty Thousand Dollars ($50,000.00) or any lesser sum that the District Court awards Class Counsel and Named Plaintiffs' counsel as reimbursement of their expenses reasonably incurred in representing the Class.

1.5 **"Cassese/WMI Settlement Account"** or **"Settlement Account"** means a segregated account, fully insured by the FDIC Dodd Frank Provision or backed by the full faith and credit of the United States, that meets all of the requirements to be a Qualified Settlement Fund under the Internal Revenue Code, as set forth in Section 3.5, *infra*, to be established at a United States banking institution selected by the Signatories to this Agreement and which the Settlement Account Agent shall pay interest accrued on the Settlement Account at a rate equal to the then current 90-day U.S. Treasury Bill rate with all such interest to belong to the Settlement Account, subject to the terms of the Settlement Agreement.

1.6 **"Claim Payment"** means the payment from the Net Settlement Fund to Claiming Class Members who submit timely and valid Proof of Claim Forms.

7

1.7    **"Claiming Class Members"** means Class Members who submit a timely, valid

Proof of Claim Form.

1.8    **"Class"** means the following:

> All consumers or borrowers in the United States and its territories
> who had a mortgage, deed of trust, home loan, co-operative loan,
> home equity loan or line of credit (first lien or otherwise) secured by
> a residence, which loan was originated, purchased or serviced by
> Washington Mutual Bank (formerly known as Washington Mutual
> Bank, FA), or any Affiliate thereof, and who paid or will be
> demanded to pay prohibited fees, charges and/or penalties (often but
> not always termed "Fax Fees," "Payoff Statement Fees," "Recording
> Fees," or "UCC-3 Fees" by Washington Mutual Bank (formerly
> known as Washington Mutual Bank, FA), or an Affiliate thereof, in
> payoff statements or elsewhere) in connection with requests for
> payoff statements or payoff amounts or the prepayment, repayment,
> discharge, satisfaction or settlement of loans secured by a residence
> and such Disputed Fees were or are charged, collected or received
> by Washington Mutual Bank (formerly known as Washington
> Mutual Bank, FA), or any Affiliate thereof.[1]

1.9    **"Class Claims"** means and includes any and all claims, rights, demands, actions,

causes of action, suits, debts, liens, contracts, damages whenever incurred, liabilities of any

nature whatsoever, agreements, interest, costs, expenses or losses, for the acts alleged or which

are or could have been or could be alleged, whether known or unknown, suspected or

unsuspected, in law or equity, that any Named Plaintiffs or Class Members ever had, now has, or

hereafter can, shall, or may have, directly, indirectly, representatively, derivatively, or in any

capacity, arising out of any acts, conduct, events, or transactions alleged or that could have been

alleged relating in any way to the Disputed Fees during the Class Period.

---

[1]  The District Court had previously certified a class against WMB pursuant to its decision and order dated
December 29, 2008 and against WMI pursuant to its decision and order dated September 30, 2009.

US_ACTIVE:\43625838\10\79831.0003

1.10    **"Class Counsel"** means Peter D. St. Phillip, Jr. of Lowey Dannenberg Cohen & Hart, P.C. and Joseph S. Tusa of Whalen & Tusa, P.C. and/or any law firm determined by the District Court to be appropriate counsel for the Class at the time of entry of the Final Order.[2]

1.11    **"Class Member"** means any member of the Class.

1.12    **"Class Period"** means January 1, 1998 through and including September 25, 2008, the date WMB was seized by federal banking regulators.

1.13    **"Class Representatives"** or **"Named Plaintiffs"** means Denise Cassese, f/k/a Denise Caligiuri, George Scott Rush, Richard Schroer and William Bloom.

1.14    **"Disputed Fees"** means fees (also referred to by Plaintiffs as "penalties" and "finance charges") that are often, but not always, listed on payoff statements, or elsewhere, as (1) "Fax Fees;" (2) "Payoff Statement Fees;" (3) "Recording Fees;" and (4) "UCC-3 Fees" charged in connection with requests for payoff statements or payoff amounts or the prepayment, repayment, discharge, satisfaction or settlement of loans secured by a residence.

1.15    **"Effective Date"** means, unless otherwise waived jointly by WMI and the Named Plaintiffs, the first date by which <u>all</u> of the following events shall have occurred:

(A)    This Agreement is executed by Named Plaintiffs, individually and on behalf of the Class, and WMI; and

(B)    The District Court approves the Class for settlement purposes; and,

(C)    The District Court enters the Preliminary Approval Order substantially in the form of Exhibit A hereto; and,

---

[2] In addition to Class Counsel, Plaintiffs represent that Tusa P.C. is retained as counsel for Named Plaintiffs and class representatives and has filed a notice of appearance in the Litigation.   Tusa P.C. has filed a motion to substitute Whalen & Tusa, P.C. for all purposes in this Litigation, after the shareholders of that firm voted to dissolve on December 22, 2010, which motion is pending as of the date of execution of this Settlement Agreement. If granted, Tusa P.C. will substitute Whalen & Tusa, P.C. as Class Counsel in this Litigation and for this Settlement.

US_ACTIVE:\43625838\10\79831.0003

(D)     The Bankruptcy Court enters an order approving the Settlement Agreement and such order becomes Final;

(E)     The District Court enters the Final Order substantially in the form of Exhibit B hereto; and,

(F)     The Final Order becomes Final.

1.16    **"Final"** means:

(A)     If no timely appeal has been taken from the District Court's Final Order approving the Settlement or from any other order by the District Court in this matter and no timely motion to reconsider or similar motion has been filed before the District Court, when all periods of time for any person to seek any form of appeal, reconsideration or other form of review have expired; or,

(B)     If any such appeal, reconsideration or other form of review is undertaken, when any such appeal, reconsideration or other form of review shall have been fully resolved, the Final Order shall have been affirmed in all respects, and the time for any further appeal, reconsideration or other form of review shall have expired.

(C)     Notwithstanding Section 1.16(A) and (B), the filing of an appeal that is limited to an appeal of the allocation of a specific amount of Attorneys' Fees and/or Attorneys' Expenses awarded to and shared between or among Class Counsel or Named Plaintiffs' counsel, or any law firm included among Class Counsel or Named Plaintiffs' counsel, and which does not appeal the aggregate amount of the Attorneys' Fees and/or Attorneys' Expenses awarded by the District Court, will not delay this Settlement and the Final Order from becoming Final.

1.17   **"Final Fairness Hearing"** means the hearing before the District Court, to be held no earlier than one hundred and fifty (150) days after entry of the Preliminary Approval Order, at which time the District Court considers:

(A)   Whether this Settlement Agreement, including the Exhibits to this Agreement, should be approved as fair, adequate, and reasonable;

(B)   Whether a Final Order, substantially in the form of Exhibit B to this Agreement, should be entered;

(C)   Whether the application of Class Counsel for payment of Attorneys' Fees and Attorneys' Expenses, should be approved;

(D)   Whether any application for payment of an Incentive Award to the Class Representatives should be approved; and,

(E)   Any other matters addressed by the District Court.

1.18   **"Final Order"** means the Final Order, Judgment of Dismissal with Prejudice and Release, substantially in the form attached to this Agreement as Exhibit B.

1.19   **"Gross Settlement Fund"** means the sum of Thirteen Million Dollars ($13,000,000.00).

1.20   **"Incentive Award"** means a payment of an award to the Class Representatives to compensate them for their role in serving in a representative capacity apart from any payment they receive from the Net Settlement Fund.   The Incentive Award for each Class Representative shall not exceed the sum of Seven Thousand Five Hundred Dollars ($7,500.00) per Class Representative.

1.21   **"JPMC"** means JPMorgan Chase Bank, N.A.

11

1.22    **"KCC"** means Kurtzman Carson Consultants, LLC, which the Settling Parties will request be appointed by the District Court as the Settlement Administrator.

1.23    **"Litigation"** means the action styled *Cassese, et al. v. Wash. Mut. Bank, et al.,* No. 05 Civ. 2724 (ADS)(ARL), currently pending in the United States District Court for the Eastern District of New York.

1.24    **"Maximum Opt-Out Percentage"** means two and one-half percent (2.5%) of the total number of Class Members.

1.25    **"Net Settlement Fund"** means that portion of the Gross Settlement Fund that remains following the payment of any Attorneys' Fees and Attorneys' Expenses, Incentive Awards, and Settlement Account Payment, plus the amount of any earnings on the funds held in the Cassese/WMI Settlement Account (net of the expenses and amounts payable to WMI referred to in the second sentence of Section 3.5 hereof).

1.26    **"Non-Settling Defendant"** means the FDIC Receiver, in its capacity as receiver for WMB.

1.27    **"Notice"** means the communications, in a form substantially similar to that attached hereto as Exhibits C (the "Mailed Notice") and E (the "Publication Notice" or "Summary Notice"), that the Settlement Administrator will mail, publish and/or post on Internet to Class Members following entry of the Preliminary Approval Order that will advise Class Members of the nature of the Litigation, the material terms of this Settlement, and the nature of their right to elect to exclude themselves from the Class or file a Proof of Claim Form to request to participate in the benefits of the Settlement.   The Notice shall be deemed to satisfy the requirements of both Fed. R. Civ. P. 23(e)(1) and 23(c)(2).

US_ACTIVE:\43625838\10\79831.0003

1.28   **"Opt-Out Claimant"** means a Class Member who submits a timely and valid Opt-Out Notice prior to the Opt-Out Date, pursuant to Section 7.1(A), *infra*, and who does not, prior to the Final Fairness Hearing, revoke, in writing, that request for exclusion pursuant to Section 7.1(C), *infra*.

1.29   **"Opt-Out Claims"** means Class Claims that belong to Opt-Out Claimants.

1.30   **"Opt-Out Date"** means the date that is twenty (20) days prior to the Final Fairness Hearing.

1.31   **"Opt-Out Notice"** means a timely written notice sent by a Class Member, pursuant to Section 7.1(B), *infra*, requesting exclusion from the Class.

1.32   **"OTS"** means the Office of Thrift Supervision, which closed WMB on September 25, 2008 and appointed the FDIC Receiver.

1.33   **"Preliminary Approval Order"** means the order, substantially in the form attached hereto as Exhibit A, entered by the District Court preliminarily approving this Settlement, approving the Notice and Proof of Claim Form, and directing that the Class be notified of the Settlement.

1.34   **"Proof of Claim Form"** means the form, substantially similar to the form attached hereto as Exhibit D and to be approved by the District Court, to be submitted by Class Members to receive payment from the Net Settlement Fund, if the form is timely received by the Settlement Administrator no later than ten days (10) days prior to the Final Fairness Hearing, or a later date approved by the Court upon the joint application by the Settling Parties.

1.35   **"Regulatory Notice"** means the notice described in the Class Action Fairness Act, 28 U.S.C. §1715.

US_ACTIVE:\43625838\10\79831.0003

1.36 **"Released Claims"** means and includes any and all claims, rights, demands, actions, causes of action, suits, debts, liens, contracts, damages whenever incurred, liabilities of any nature whatsoever, agreements, interest, costs, expenses or losses, for the acts alleged or which are or could have been alleged, whether known or unknown, suspected or unsuspected, in law or equity, that any Named Plaintiff or Settlement Class Member ever had, now has, or hereafter can, shall, or may have, directly, indirectly, representatively, derivatively, or in any capacity, arising out of any conduct, events, transactions alleged or that could have been alleged relating in any way to the Disputed Fees during the Class Period, the Litigation, or the Settlement Agreement.

1.37 **"Released Plaintiffs Parties"** means Plaintiffs, Class Counsel and Named Plaintiffs' counsel in the Litigation, and any successors or assigns.

1.38 **"Released WMI Parties"** means WMI, WMI's Affiliates, and WMI Counsel, except Released WMI Parties shall exclude WMB and the FDIC.

1.39 **"Settlement Account Agent"** means KCC, which the Settling Parties will request be appointed by the District Court to establish the Cassese/WMI Settlement Account.

1.40 **"Settlement Account Payment"** means the amount paid from the Gross Settlement Fund to the Settlement Account Agent for its reasonable costs incurred in providing services under this Settlement, excluding those services provided in connection with Section 1.1 *supra* and Section 3.4 *infra*.

1.41 **"Settlement Administrator"** means KCC, the company which the Settling Parties will seek approval from the District Court and Bankruptcy Court to appoint as the Settlement Administrator of this Settlement. In the event KCC is not approved by either the District Court or the Bankruptcy Court as the Settlement Administrator, or is unable to

US_ACTIVE:\43625838\10\79831.0003

administer the settlement on the terms agreed herein, the Settling Parties will request approval to have Rust Consulting, Inc. approved as the administrator for this Settlement.

1.42    **"Settlement Class"** or **"Settlement Class Members"** means all Class Members who do not timely and validly submit an Opt-Out Notice, regardless of whether such Class Members are Claiming Class Members.

1.43    **"Settling Parties"** means Named Plaintiffs, the Settlement Class Members, and WMI.

1.44    **"Signatory"** means the persons and entities who sign this Agreement.

1.45    **"Taxes"** means any federal, state or local government assessment arising with respect to the income or assets of the Cassese/WMI Settlement Account.

1.46    **"WMI Bankruptcy Action"** means the proceedings currently pending before the Honorable Mary F. Walrath in the United States Bankruptcy Court for the District of Delaware, styled as *In re: Wash. Mut., Inc., et al.*, Case No. 08-12229 (MFW).

1.47    **"WMI Counsel"** means Weil, Gotshal and Manges LLP.

1.48    **"United States"** means the 50 states constituting the United States of America, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States of America.

## ARTICLE 2
## RIGHTS AND DUTIES OF THE SETTLING PARTIES

2.1    **Mutual Intent to Implement this Settlement Agreement Promptly.**    The Settling Parties will cooperate in good faith and exercise their best efforts to effectuate and implement all of the terms and conditions of this Settlement Agreement within the time-periods set out herein.

US_ACTIVE:\43625838\10\79831.0003

2.2     **Preliminary Approval.**   As soon as practicable after the execution of this

Agreement, Class Counsel and WMI Counsel will jointly move the District Court for entry of the

Preliminary Approval Order, substantially similar to the form annexed hereto as Exhibit A.   No

more than ten (10) business days following submission of the Settlement to the District Court for

preliminary approval, WMI will give the Regulatory Notice.

2.3     **Bankruptcy Court Approval.**   In the event the District Court preliminarily

approves the terms of this Settlement, no more than fifteen (15) business days after entry of the

Preliminary Approval Order, Class Counsel and WMI Counsel will jointly seek approval of this

Settlement from the Bankruptcy Court.

2.4     **Final Approval.**   Following entry of a Preliminary Approval Order, the Settling

Parties shall jointly apply to the District Court for entry of a Final Order substantially similar to

the form annexed hereto as Exhibit B and in compliance with the schedule established by the

Preliminary Approval Order.   Plaintiffs and Class Counsel will seek approval of the Attorneys'

Fees, Attorneys' Expenses and Incentive Awards in an amount not to exceed the sums outlined

in the definitions in Article 1.   WMI will not oppose the District Court approval of these

amounts (unless such amounts exceed the amounts specified herein).   The Settling Parties agree

to entry of a Final Order substantially in the form attached hereto as Exhibit B by the District

Court following the Final Fairness Hearing.

2.5     **Best Efforts.**   The Settling Parties agree to use their reasonable best efforts,

including all steps and efforts contemplated by this Settlement Agreement, and any other steps

and efforts that may be necessary or appropriate, by order of the District Court or otherwise, to

carry out the terms of this Settlement within the time-periods set out herein.

16

2.6     **Reservation of Rights.**     The Settling Parties expressly reserve all their rights if this Settlement Agreement does not become Final or if the Effective Date does not occur in accordance with the terms of this Settlement Agreement.

### ARTICLE 3
### MONETARY CONSIDERATION AND SETTLEMENT FUNDS

3.1     **Monetary Consideration.**     In consideration for the Settlement Class Members' full and final releases of the Released Claims against the Released WMI Parties, WMI agrees to deposit the Gross Settlement Fund into the Cassese/WMI Settlement Account, provide the Notice, as described in Article 5, and implement the claims process and distribution, as described in Article 6.

3.2     **Gross Settlement Fund.**     Within five (5) business days after both preliminary approval of this Settlement by the District Court and approval of this Settlement by the Bankruptcy Court, WMI will deposit the Gross Settlement Fund into the Cassese/WMI Settlement Account.    Gross Settlement Funds shall not be released or paid out from the Cassese/WMI Settlement Account until after the Effective Date, as described in Sections 3.2(A) and (B), except to pay taxes on the Cassese/WMI Settlement Account or other expenses related to administration of this Settlement that are not being paid by WMI pursuant to this Agreement.

(A)     **Attorneys' Fees and Attorneys' Expenses.**     If the Bankruptcy Court fully and finally approves this Settlement, at the time Plaintiffs and WMI jointly file a motion in the District Court for final approval of the Settlement, Plaintiffs and Class Counsel will make an application with the District Court for approval of the Attorneys' Fees and Attorneys' Expenses. WMI agrees not to oppose the motion for the payment of the Attorneys' Fees to the extent that such request does not exceed thirty percent (30%) of the Gross Settlement Fund, including any interest accruing on such Gross Settlement Fund.    WMI also agrees not to object to Class

17

Counsel's request for reimbursement of their out-of-pocket Attorneys' Expenses related to the Litigation and the WMI Bankruptcy Action to the extent that such request does not exceed Fifty Thousand Dollars ($50,000.00).   All Attorneys' Fees and Attorneys' Expenses will be payable from the Gross Settlement Fund, and WMI will not be responsible to pay any Attorneys' Fees or Attorneys' Expenses beyond those amounts identified in this Section and approved by the District Court.   Attorneys' Fees and Attorneys' Expenses will be paid out of the Gross Settlement Fund no later than ten (10) business days after the Effective Date.

(B)   **Incentive Awards.**   If the Bankruptcy Court fully and finally approves this Settlement, Named Plaintiffs reserve the right to apply to the District Court for approval of Incentive Awards in connection with their service as Named Plaintiffs and/or Class Representatives at the time Plaintiffs and WMI jointly file a motion in the District Court for final approval of the Settlement.   WMI agrees not to object to such application to the extent that the application does not exceed Seven Thousand Five Hundred Dollars ($7,500.00) per Named Plaintiff.   Such incentive payments will be paid from the Gross Settlement Fund and WMI will not be responsible to pay any Incentive Awards beyond those identified in this Section and approved by the District Court.   Incentive Awards will be paid out of the Gross Settlement Fund no later than ten (10) business days after the Effective Date.

3.3   **Payments from Net Settlement Fund.**   Class Counsel and WMI agree that only Settlement Class Members who submit timely, valid Proof of Claim Forms, in a form to be agreed upon by counsel, to the Settlement Administrator will be entitled to payment from the Net Settlement Fund.

(A)   Net Settlement Funds will be distributed to Claiming Class Members in accordance with Section 6.5, *infra.*

US_ACTIVE:\43625838\10\79831.0003

(B)     The amount specified in the proviso to the second sentence of Section 3.5 hereof shall be distributed to WMI, or its successor or assigns, in accordance with such proviso.

(C)     Upon the completion of the claims process and distribution, as described in Article 6, *infra*, Named Plaintiffs, the Settlement Class and WMI agree that any remainder in the Net Settlement Fund shall be immediately payable by the Settlement Administrator to WMI, or its successor or assigns, without further order of the District Court.

3.4     **Class Action Notice Costs.**   Following entry of the Preliminary Approval Order, WMI shall pay, in a time and manner to be agreed upon by WMI and the Settlement Administrator, the Administrative Costs necessary to disseminate Notice to the Class Members. In no event shall these costs be paid out of the Gross Settlement Fund.    Further, if the costs of the Settlement Administrator are accrued or paid after Preliminary Approval and the Settling Parties are not able to secure the necessary court approvals for this Settlement or an appellate court vacates or reverses any court's approval of the Settlement, in no event shall Named Plaintiffs, the Class Members, Class Counsel or Named Plaintiffs' counsel be responsible for the reimbursement of any such costs.

3.5     **Qualified Settlement Fund.**   The Cassese/WMI Settlement Account established herein is intended by the Settling Parties to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1, and to that end the Settling Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment; provided that, at its sole option, WMI may make a "grantor trust election," pursuant to Treas. Reg. § 1.468B-1(k), to treat the Cassese/WMI Settlement Account as a trust all of which is owned by WMI under section 671 of the Internal Revenue Code of 1986 (the "Grantor Trust Election").    Whether or not final approval of this

19

Settlement has occurred, and whether or not the Cassese/WMI Settlement Account qualifies as

qualified settlement funds within the meaning of Treas. Reg. § 1.468B-1, the Settlement Account

Agent shall cause to be paid from the Cassese/WMI Settlement Account any taxes or estimated

taxes due on any income earned on the funds in those accounts, and all related costs and

expenses; provided that, if WMI makes the Grantor Trust Election, then an amount equal to 40%

of the income earned on the funds held in the Cassese/WMI Settlement Account shall be

periodically paid (at least quarterly) to WMI.   The Settling Parties elect that the Cassese/WMI

Settlement Account should be treated as qualified settlement funds from the earliest possible date

and agree to make any "relation back" election that may be available, unless WMI makes the

Grantor Trust Election.   If amounts received by Claiming Class Members, or by WMI upon any

refund or other reversion are construed to be income, it is the recipient's sole responsibility to

pay taxes on the amount construed to be income, plus any penalties or interest.   The Settlement

Account Agent shall cause, at the expense of the Cassese/WMI Settlement Account, all required

tax filings (consistent with the treatment of the Cassese/WMI Settlement Account under this

Section 3.5) to be made, including all information reporting for the Cassese/WMI Settlement

Account or WMI with respect to payments from the Cassese/WMI Settlement Account.

### ARTICLE 4
### TREATMENT OF BANKRUPTCY PROOFS OF CLAIM

4.1    WMI shall withdraw its objections to the Bankruptcy Proofs of Claim filed by

Plaintiffs and their counsel without prejudice to renew such objections if, for any reason, the

conditions precedent to the Effective Date set forth in Section 1.15 hereof, or any one of them,

does not occur.   Upon the approval of this Settlement by the Bankruptcy Court, the entry of the

Final Order by the District Court, and the Final Order becoming Final, the Settling Parties agree

that the Bankruptcy Proofs of Claim will be deemed reduced and allowed, in the aggregate, in an

amount equal to the amount of the Gross Settlement Fund, and disallowed to the extent such claims, in the aggregate, exceed the amount of the Gross Settlement Fund and that each of the Bankruptcy Proofs of Claim will be deemed satisfied in full.    For the avoidance of doubt, except as provided above, the Settling Parties agree that Bankruptcy Proofs of Claim will be satisfied as, to the extent and in the form set forth herein, and that the holders thereof have no rights arising under or related to the Plan, including, without limitation, any right to receive a distribution from WMI pursuant to the Plan or to make elections with respect thereto.

4.2     Pending approval of this Settlement by the Bankruptcy Court, the entry of the Final Order by the District Court, and the Final Order becoming Final, the Plaintiffs shall take no action to impede or preclude the entry of the order of the Bankruptcy Court confirming the Plan, the administration of WMI's chapter 11 cases, the approval of the disclosure statement filed in connection with the Plan, or the consummation, implementation and administration of the Plan.

### ARTICLE 5
### PROCEDURES FOR NOTIFYING THE CLASS

5.1     **Selection of Settlement Administrator.**   The Settlement Administrator shall administer the Settlement established by this Settlement Agreement, subject to monitoring by Class Counsel and WMI.    Plaintiffs and WMI have selected KCC as Settlement Administrator. In the event KCC is not approved by either the District Court or the Bankruptcy Court as the Settlement Administrator, or is unable to administer the settlement on the terms agreed herein, WMI and Plaintiffs will request to have Rust Consulting, Inc. approved as the administrator for this Settlement.    Consistent with this Section, Class Counsel and WMI shall cooperate with the Settlement Administrator in connection with the performance of its duties and services approved by the District Court, or any other function or service necessarily provided to carry out the terms of the Settlement.

5.2     **Mailed Class Notice.**     The Settlement Administrator shall mail the Mailed

Notice, the contents of which shall be substantially similar in form to Exhibit C and as approved

by the District Court in the Preliminary Approval Order, to the Class Members by first-class mail

with a proper return address to each Class Member's last-known address to the extent such

information is ascertainable from the business records that Plaintiffs believe will be produced by

JPMC in response to the subpoena served by Class Counsel dated December 14, 2010.     The

Mailed Notice shall be mailed no later than sixty (60) days following the later to occur of (a)

entry of the Preliminary Approval Order and (b) receipt of the business records produced by

JPMC.     For any Class Member for whom a last known mailing address cannot be found

following a reasonable investigation, publication of the Publication Notice, as set forth in Section

5.4, *infra*, will be deemed sufficient notice of this Settlement.     WMI shall use its reasonable

best efforts to assist Class Counsel in securing the production of data concerning the names, loan

numbers, last known mailing addresses and individual and aggregate amount of Disputed Fees

paid by the Class Members during the Class Period from JPMC or any other third-party in

possession or control of such data or information.     To the extent JPMC or such other third-party

requires payment for the production of such data or information, Plaintiffs and WMI shall share

such costs equally.

5.3     **Procedures for Handling Returned/Undeliverable Mailed Notices.**     In the

event the Post Office returns any Mailed Notice with forwarding address information, and such

Mailed Notices are received by the Settlement Administrator at least twenty-five (25) days

before the Final Fairness Hearing, the Settlement Administrator shall forward the Mailed Notice

to the Class Member's new address and update its database to reflect the forwarded addresses.

In the event that any Class Member's Mailed Notice is returned by the Post Office as

US_ACTIVE:\43625838\10\79831.0003

undeliverable without forwarding address information, the Settlement Administrator shall run a Name and Last-Known Address search.    The Settlement Administrator then shall re-mail the returned Mailed Notice to that Class Member at the new address so obtained, if any, and shall update its database to reflect the new address.    No further mailings are required of the Settlement Administrator.

5.4    **Publication Notice.**    The Settling Parties will propose to the District Court that the Publication Notice, the contents of which shall be substantially similar in form to Exhibit E, be published two (2) times in *USA Today*, one week apart.    The Publication Notice, and the Settlement Agreement, will also be posted on an Internet website to be established (in connection with this Settlement) and maintained by the Settlement Administrator.

5.5    **Affidavit Attesting to Notice.**    The Settlement Administrator shall, within fifteen (15) business days of the completion of the mailing of the Mailed Notice as provided for in Section 5.2, *supra*, provide an affidavit to Class Counsel and WMI's Counsel, attesting that the Mailed Notices were mailed by first-class mail to the last-known address of all Class Members.    Within ten (10) business days of publishing the Publication Notice as set out in Section 5.4, *supra*, the Settlement Administrator shall provide an affidavit to Class Counsel and WMI's Counsel attesting that the Publication Notice was published.    Class Counsel shall file such affidavits with the District Court.

5.6    **Best Notice Practicable.**    The Settling Parties agree that the Notice plan set forth in this Article 5 is the best notice practicable under the circumstances of this Litigation, and if carried out in conformity with the Preliminary Approval Order, shall constitute due and sufficient notice of the Settlement under Fed. R. Civ. P. 23 and the Due Process Clause of the United States Constitution.

23

## ARTICLE 6
## CLAIMS PROCESS AND DISTRIBUTION OF NET SETTLEMENT FUND

6.1     **Exclusion from Payment.**    Any Class Member who timely and validly excludes himself or herself from the Class will not be entitled to receive any proceeds from the Net Settlement Fund.    Any Class Member who does not timely and validly exclude himself or herself from the Class, but does not submit a valid and timely Proof of Claim Form substantially in the form annexed hereto as Exhibit D, and as approved by the District Court in the Preliminary Approval Order, will not be entitled to receive any proceeds from the Net Settlement Fund.

6.2     **Submission of Proof of Claim Form.**    A timely, properly completed Proof of Claim Form may be submitted by the Claiming Class Member to the Settlement Administrator in either of the following three ways:    1) by completing and mailing the Proof of Claim Form included with the Mailed Notice to the Settlement Administrator at an address to be designated by the Settlement Administrator; 2) by completing and sending by facsimile the Proof of Claim Form included with the Mailed Notice to the Settlement Administrator at a facsimile number to be designated by the Settlement Administrator; or 3) by completing and emailing the Proof of Claim Form included with the Mailed Notice, including any supporting documentation, to the Settlement Administrator at an email address to be designated by the Settlement Administrator.

6.3     **Receipt of Proof of Claim Form.**    A Proof of Claim Form must be postmarked or received by the Settlement Administrator no later than fifteen (15) days prior to the Final Fairness Hearing, or any later date approved by the Court upon the joint application of the Settling Parties.    Any Proof of Claim Form received after such date or any Proof of Claim Form that does not satisfactorily meet the submission requirements set forth herein and in the Proof of Claim Form shall be rejected by the Settlement Administrator and Class Members submitting such forms shall not be entitled to a distribution from the Net Settlement Fund.

24

6.4     **Disputed Claims.**   The Settlement Administrator shall determine which Proof of Claim Forms are timely and valid, and are entitled to a Claim Payment under the Agreement.   If Class Counsel or WMI Counsel objects to any such determination by the Settlement Administrator, after notice by the Settlement Administrator of the Settlement Administrator's determination, Class Counsel and WMI Counsel may thereafter confer and attempt in good faith to resolve such objection.   If the Settling Parties are unable to resolve the objection, the dispute may by submitted to the District Court for resolution.

6.5     **Distribution of Funds.**   The Settlement Administrator shall process the Proof of Claim Forms and shall pay Claiming Class Members from the Net Settlement Fund as follows:

(A)     If the total amount of Disputed Fees paid by Claiming Class Members does not exceed the Net Settlement Fund, in the first instance, no more than seventy-five percent (75%) of the amount of Disputed Fees paid by such Claiming Class Member as reflected on the books and records of WMB or JPMC or, if such information is unavailable from WMB or JPMC, as submitted with a Claiming Class Member's Proof of Claim Form, shall be refunded to such Claiming Class Member.   Should Net Settlement Funds remain after the payment of seventy-five percent (75%) of each Claiming Class Member's Disputed Fees, such remaining funds shall be used to pay Claiming Class Members additional funds up to, but no more than, one hundred percent (100%) of their Disputed Fees, based on a *pro rata* distribution of such remaining funds, up to a maximum of eighty percent (80%) of the Net Settlement Fund.

(B)     If the total amount of Disputed Fees paid by Claiming Class Members exceeds the Net Settlement Fund, Claiming Class Members will be entitled to a *pro rata* distribution of the Net Settlement Fund.

25

(C)     In the event that Plaintiffs and WMI fail, after making the applications and efforts described in Article 5, to obtain the data necessary to determine the amount of Disputed Fees paid by any Claiming Class Member, each such Claiming Class Member shall be entitled to payment in accordance with Sections 6.5(A) and (B) above, provided that each such Claiming Class Member submit payoff statements (or other documents) showing payment of the Disputed Fees by the Claiming Class Member that demonstrate, in the sole discretion of the Settlement Administrator, subject to Section 6.4, the amount of Disputed Fees paid by such Claiming Class Member.   Notwithstanding the prior sentence, a Claiming Class Member who (1) can demonstrate payment of the Disputed Fees from January 1, 1998 through December 31, 2001, but not the precise amount paid, and (2) for whom the Settling Parties do not have the data necessary to determine the amount of the Disputed Fees paid by them, shall be entitled to payment from the Net Settlement Fund in the amount of Ten Dollars ($10.00), or their lesser *pro rata* share, if the total amount of Disputed Fees paid by the Claiming Class Members exceeds the Net Settlement Fund, as provided for in Section 6.5(B).

(D)     Proof of Claim Forms shall be processed and payments made to the Claiming Class Members no later than one hundred and twenty (120) days after the Effective Date.

6.6     **Disposition of Undistributed Funds.**   Each Claiming Class Member has no property interest in the Net Settlement Fund unless and until he or she cashes or deposits the Claim Payment.   The Claim Payment shall expire ninety (90) days after the date printed on each Claim Payment, and Claim Payments will bear a legend so specifying.   In accordance with Section 6.5, should funds remain in the Net Settlement Fund after the payment of (1) Incentive Awards to Named Plaintiffs; (2) the Attorneys' Fees and Attorneys' Expenses; (3) Settlement

26

Account Payment; and (4) all Claim Payments issued to Claiming Class Members based on

timely, valid Proof of Claim Forms (which have either been cashed by such Claiming Class

Members or have expired by their terms), the Settlement Administrator shall distribute all such

funds remaining in the Net Settlement Fund to WMI, which funds shall be returned to WMI's

bankruptcy estate for subsequent distribution in accordance with the Plan.    If any funds remain

in the Net Settlement Fund after two hundred and forty (240) days following the initial mailing

of the Claim Payments, then such remaining funds from the Net Settlement Fund shall be

returned to WMI.

6.7    **Finality of Distribution.**    Absent any objection in Section 6.4 raised by Class

Counsel or WMI Counsel to a Proof of Claim Form, distribution of the portion of the Net

Settlement Fund determined by the Settlement Administrator to be allocable to a Claiming Class

Member shall be deemed a final and conclusive decision concerning the amount the Claiming

Class Member is entitled to receive under the Settlement.

6.8    **Fraudulent Claims.**    WMI and Plaintiffs agree to authorize the Settlement

Administrator to take reasonable steps to guard against fraudulent claims submitted by Class

Members.

## ARTICLE 7
## RIGHTS AND DUTIES OF CLASS MEMBERS

7.1    **Opt-Out Notices by Class Members**

(A)    Any Class Member may request that he or she not participate as a

Claiming Class Member by submitting in writing, by the Opt-Out Date, a timely and properly

completed Opt-Out Notice in accordance with the Notice and with the provisions of this Section

7.1.

(B)     The Opt-Out Notice must contain the Class Member's name, address, telephone number; information sufficient to identify the objecting Class Member and their residential mortgage, cooperative, home equity or home equity line of credit loan number the name(s); and a clear statement that he or she wishes to opt-out of the Settlement.   The Opt-Out Notice shall be signed personally by the Class Member(s) and shall be mailed by first-class mail to (*the post office box established by the Settlement Administrator*), postmarked on or before the Opt-Out Date.   A Class Member may only file an Opt-Out Notice on behalf of himself or herself.   The Settlement Administrator will not accept Opt-Out Notices filed on behalf of more than one individual.

(C)     Any Class Member who submits a timely and properly completed Opt-Out Notice and who does not revoke that Opt-Out Notice in writing no later than twenty (20) days prior to the Final Fairness Hearing is an Opt-Out Claimant.   An Opt-Out Claimant is deemed to have waived any rights or benefits under this Settlement Agreement and has no standing to object to the Settlement or to seek to intervene.

(D)     Any Class Member who submits a timely Opt-Out Notice, but who thereafter revokes that Opt-Out Notice in writing no later than twenty (20) days prior to the Final Fairness Hearing, will be deemed to be a Settlement Class Member and not an Opt-Out Claimant.

(E)     Class Representatives agree not to submit an Opt-Out Notice and not to object to any of the terms of the Settlement or to the District Court's approval of this Settlement Agreement.

(F)     None of the Settling Parties, Class Counsel or WMI Counsel shall in any way encourage any Class Member to become an Opt-Out Claimant, or to object to the

28

Settlement, or discourage any Class Member from participating in this Settlement as a Settlement Class Member.    Nor will the Settling Parties, Class Counsel or WMI Counsel engage in any activities that interfere with the intent of this Settlement Agreement to obtain as high a proportion as possible of participation by Class Members in this Settlement.

(G)    Not later than ten (10) days prior to the Final Fairness Hearing, the Settlement Administrator shall provide the total number of all those submitting Opt-Out Notices to Class Counsel and to WMI Counsel.    The Settlement Administrator shall report in writing to the District Court not less than five (5) days prior to the Final Fairness Hearing the total number of all Opt-Out Claimants.

### 7.2    Class Member Objections to the Settlement

(A)    Settlement Class Members shall have the right to object to the Settlement. In order to object to the Settlement, a Settlement Class Member must state his or her objection in writing and deliver the originally signed objection to the Settlement Administrator, Class Counsel and to WMI Counsel, at the addresses set forth in Section 11.15 hereto, postmarked on or before fifteen (15) days prior to the Final Fairness Hearing.    Ten (10) days prior to the Final Fairness Hearing, Class Counsel will file with the District Court, after first conferring in advance with WMI Counsel regarding any such submission, the objections received.

(B)    Any objection relating to the Settlement shall contain a caption or title that identifies it as an "Objection to Settlement of Plaintiffs' Claims Asserted in *Cassese, et al. v. Wash. Mut., Inc., et al.*, No. 05 Civ. 2724 (E.D.N.Y.)" and shall contain information sufficient to identify (a) the objecting Settlement Class Member's name, address, daytime telephone number; (b) proof of payment of a Disputed Fee during the Class Period; (c) any other documents or writings which the objector wants the District Court to consider, if any; (d) a statement of the

legal and factual grounds on which the objection is premised; and (e) a detailed description of any of the other documents the objector wants the District Court to consider.    An objection also must contain a statement that the Settlement Class Member has not opted-out of the Settlement, and such statement must be signed personally by the Settlement Class Member so objecting.

(C)    Settlement Class Members may object either *pro se* or through an attorney retained at that Settlement Class Member's expense.    Any Settlement Class Member represented by an attorney who wishes to appear at the Final Fairness Hearing must send by first-class mail to the Settlement Administrator and file and serve by first-class mail on the Settlement Administrator, Class Counsel and WMI Counsel at the addresses set forth in Section 11.15, postmarked no later than ten (10) days prior to the Final Fairness Hearing, a notice of intention to appear at the Final Fairness Hearing.    Settlement Class Members who are not represented by an attorney and who have properly and timely made objections, and have not opted-out of the Settlement, may appear at the Final Fairness Hearing provided that they send by first-class mail to the Settlement Administrator, and serve by first-class mail on the Settlement Administrator, Class Counsel and WMI Counsel at the addresses set forth in Section 11.15, postmarked no later than ten (10) days prior to the Final Fairness Hearing, a notice of intention to appear at the Final Fairness Hearing, and file a notice of intention to appear with the District Court no later than ten (10) days prior to the Final Fairness Hearing.

(D)    The notice of intention to appear shall set forth: (i) the name, address, and telephone number of the Settlement Class Member and (ii) the objection, including any papers constituting or containing any factual, evidentiary and/or legal authority in support thereof.

(E)    Any Settlement Class Member who is not represented by an attorney and who does not timely serve a proper written objection on the Settlement Administrator, Class

Counsel and WMI Counsel postmarked on or before fifteen (15) days prior to the Final Fairness

Hearing, and file a notice of intention to appear no later than ten (10) days prior to the Final

Fairness Hearing, shall not be permitted to object or appear at the Final Fairness Hearing, shall

be deemed to have waived and forfeited any and all rights he or she may have to appear and

address the District Court at the Final Fairness Hearing, shall be foreclosed from raising any

objection at the Final Fairness Hearing, and shall be bound by all of the terms of the release of

Class Claims, as set forth in Section 7.3, and by all proceedings, orders and judgments by the

District Court in the Litigation.   Any Settlement Class Member who is represented by an

attorney and who does not timely serve a proper written objection and file a notice of intention to

appear no later than ten (10) days prior to the Final Fairness Hearing, shall not be permitted to

object or appear at the Final Fairness Hearing, shall be deemed to have waived and forfeited, and

shall be foreclosed from raising any objection at the Final Fairness Hearing any and all rights he

or she may have to appear and address the District Court at the Final Fairness Hearing, shall be

bound by all of the terms of the release of Class Claims, as set forth in Section 7.3, and by all

proceedings, orders and judgments by the District Court in the Litigation.

(F)     Any Settlement Class Member who fails to comply with the provisions of

this Section 7.2 shall waive and forfeit any and all rights he or she may have to appear at the

Final Fairness Hearing and/or object to the Settlement Agreement, and shall be bound by all of

the terms of this Settlement Agreement and by all proceedings, orders and judgments in the

Litigation.

7.3     **Releases.**

(A)     Upon entry of the Final Order by the District Court, the Class Claims of

Named Plaintiffs and the Settlement Class Members in this Litigation shall be settled and

31

dismissed with prejudice and on the merits, and the Released Claims shall be released by Named

Plaintiffs and the Settlement Class Members against the Released WMI Parties, and by WMI

against the Released Plaintiffs Parties.

(B)     As of the Effective Date, all Settlement Class Members and Class

Counsel, together with each of their respective heirs, trustees, executors, administrators,

beneficiaries and their respective predecessors, successors, representatives, principals and

assigns, or any and all of them, for the exchange of good and valuable consideration, the receipt

and sufficiency of which are hereby acknowledged, will be bound by the Final Order and shall

fully release, acquit and forever discharge, to the fullest extent permitted by law, the Released

WMI Parties from (i) any and all Released Claims however they may be expressed, which they

have, may have had, may have currently, or may have in the future against any of the Released

WMI Parties or any combination of them, and shall be enjoined from continuing, instituting or

prosecuting any legal proceeding against the Released WMI Parties relating in any way

whatsoever to the Released Claims, including seeking to represent any form of opt-out class

from this Settlement; (ii) any Released Claims arising out of any and all acts, failures to act,

omissions, facts, matters, events, transactions, occurrences, or oral or written statements or

representations made or allegedly made in connection with, or directly or indirectly relating to,

the Settlement Agreement, except that nothing in this release shall preclude any action to enforce

the terms of the Settlement; and, (iii) any and all claims for attorneys' fees, costs, expenses or

disbursements incurred by Class Counsel or by Named Plaintiffs or the Settlement Class

Members, or any of them, in connection with or related in any manner to the Litigation, the

Settlement or the administration of such Settlement, except as provided in Section 3.2(A) *supra*.

(C)     All Settling Parties and the Settlement Class Members understand that the

provisions of any state, federal, municipal, local or territorial law or statute (including, but not

limited to, that of the District of Columbia and California) providing in substance that releases

shall not extend to claims, demands, injuries, and/or damages that are unknown or unsuspected

to exist at the time a settlement agreement is executed and/or approved by a court are hereby

expressly, knowingly, and voluntarily waived, and that this Agreement is expressly intended to

cover and include, and to constitute a knowing and voluntary waiver and relinquishment of, all

such injuries or damages, including all rights of action therefor.    With respect to those

Settlement Class Members who are or were residents of California at any relevant time, each

Settling Party and each Settlement Class Member hereby expressly, knowingly and voluntarily

waives and relinquishes any and all rights and benefits which they may have under, or which

may be conferred upon them by, the provisions of section 1542 of the California Civil Code,

which provides as follows:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his favor at the time of executing the
> release, which if known by him must have materially affected his
> settlement with the debtor.

In connection with the waivers and relinquishments set forth in this subsection, Settlement Class

Members acknowledge that they are aware that they or their attorneys may hereafter discover

claims or facts in addition to or different from those which they now know or believe to exist

with respect to the subject matter of this Agreement, but that it is their intention to hereby fully,

finally and forever settle and release all of the Released Claims known or unknown, suspected or

unsuspected, which exist, hereafter may exist or might have existed (whether or not previously or

currently asserted in the Litigation).    In furtherance of such intention, the releases herein given

33

shall be and remain in effect as a full and complete general release notwithstanding the discovery or existence of any such additional facts.

(D)    All Settlement Class Members and Class Counsel hereby covenant and agree that they will not seek to establish liability against the Released WMI Parties, excluding WMB and the FDIC, based in whole or in part on any of the Released Claims, or based in whole or in part on any actions taken by JPMC after September 25, 2008 relating in any way to Disputed Fees.

(E)    This release shall preclude Settlement Class Members from making any claim in the future, directly or indirectly, even in the event a Settlement Class Member discovers facts other than or different from those which he, she or it believes to be true with respect to the Disputed Fees or any other subject matter of the Litigation, each Settlement Class Member hereby expressly waives and fully, finally and forever settles and releases, upon this Settlement becoming effective, any known or unknown, suspected or unsuspected, choate or inchoate Released Claims.

(F)    As of the Effective Date, WMI and its Affiliates, together with each of their respective heirs, trustees, executors, administrators, beneficiaries and their respective predecessors, successors, representatives, principals and assigns, or any and all of them, for the exchange of good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, will be bound by the Final Order and shall fully release, acquit and forever discharge, to the fullest extent permitted by law, the Released Plaintiffs Parties for any and all claims, acts, failures to act, omissions, facts, matters, events, transactions, occurrences, or oral or written statements or representations made or allegedly made in connection with, or directly or indirectly relating in any way to the Litigation or this Settlement Agreement.

## ARTICLE 8
## WMI'S TERMINATION RIGHTS

8.1     No later than ten (10) days prior to the Final Fairness Hearing, the Settlement Administrator shall provide the Settling Parties with a written statement of the number of Opt-Out Claimants.   If a percentage of Opt-Out Claimants is equal to or greater than the Maximum Opt-Out Percentage, WMI shall have the option, at its sole discretion, to terminate this Settlement Agreement.

8.2     In the event that the Settlement Administrator provides the Settling Parties with a written statement of the number of Opt-Out Claimants whereby the Maximum Opt-Out Percentage is met, WMI will give Class Counsel written notice within five (5) business days thereafter if it elects to terminate this Settlement at WMI's sole discretion.

8.3     In the event WMI in its sole discretion determines to terminate this Settlement in accordance with Section 8.2 herein, the Settlement Account Agent will return the remaining balance of the Gross Settlement Funds to WMI, together with any interest earned thereon, within five (5) business days of such termination, and the Settling Parties will be returned to the *status quo ante* with respect to the Litigation and the WMI Bankruptcy Action.   Within five (5) business days after WMI elects to terminate this Settlement, the Settling Parties will notify the United States Court of Appeals for the Second Circuit, the District Court and the Bankruptcy Court that the Settlement is terminated and ask these courts to reinstate the prior proceedings.

## ARTICLE 9
## NO ADMISSION OF LIABILITY

9.1     The Settlement embodied in this Settlement Agreement is made to compromise and settle the Class Claims without further litigation.   It is not, and it, or any negotiations preceding it, should not be interpreted as, or deemed to be evidence of, or an admission or concession by WMI as to the validity of any claim that the Class or any Class Member has or

35

could have asserted against WMI, or as to any liability or wrongdoing by WMI, as WMI

vigorously contests and expressly denies and disclaims each and every one of the claims asserted

by the Class.    This Settlement Agreement, or any negotiations preceding it, shall not be

construed as or deemed to be evidence of or an admission or concession by WMI of any strength

or weakness of the Class Claims against WMI nor as an admission of any strength or weakness

of any defense asserted by WMI.    WMI denies all Class Claims and is prepared to defend them

vigorously.

     9.2    Nothing in this Agreement or the fact of payment of the Gross Settlement Fund or

Administrative Costs shall be construed as an admission in any action or proceeding of any kind

whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory

body or any other body or authority present or future, by WMI including, without limitation, that

WMI has engaged in any illegal or improper conduct.    Payment of the Gross Settlement Fund

shall not be considered punitive in nature.

     9.3    Class Counsel, Class Representatives and Settlement Class Members shall not

argue before any court or administrative forum that this Settlement shows or evidences in any

way that WMI or any other party, including any past, present, or future affiliate of WMI, has

violated any law or legal obligation, or that there is any strength or weakness in the Class Claims

against WMI, or any other party, including any past, present, or future affiliate of WMI.

     9.4    Neither this Settlement Agreement, nor any of its provisions, nor any statement or

document made or filed in connection herewith nor the fact this Settlement Agreement, shall be

filed, offered, received in evidence or otherwise used in any action or proceeding or any

arbitration, except in connection with (a) the Settling Parties' application for approval or

enforcement of this Settlement Agreement and all proceedings incident thereto, including

US_ACTIVE:\43625838\10\79831.0003

requests for Attorneys' Fees and Attorneys' Expenses, and disbursements and compensation to the Claiming Class Members, and/or (b) any other disputes arising from this Settlement Agreement. Notwithstanding the above, this Settlement Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Class Claims and may be filed, offered and received into evidence and otherwise used for such defense.

## ARTICLE 10
## DISPOSITION OF DISCOVERY MATERIALS

10.1 WMI agrees that all materials produced by Plaintiffs during the course of this Litigation which are not publicly available, including all copies thereof in the possession or control of the Settling Parties, their counsel or their experts, consultants, or agents, shall be returned to Class Counsel or, upon the consent of Class Counsel, destroyed and/or deleted from any electronic storage media, within sixty (60) days after the Effective Date.

10.2 Plaintiffs agree that all materials produced by WMI during the course of this Litigation which are not publicly available, including all copies thereof in the possession or control of the Settling Parties, their counsel or their experts, consultants, or agents, shall be returned to WMI Counsel or, upon the consent of counsel for the FDIC Receiver, destroyed and/or deleted from any electronic storage media, within sixty (60) days after the final completion of the Litigation and all appeals against all Defendants.

## ARTICLE 11
## OTHER PROVISIONS

11.1 **Dispute Resolution.**

(A) In addition to the procedure set forth in Section 6.4 dealing with disputed claims, any other disputes between WMI and any Settlement Class Member concerning matters contained in this Settlement Agreement shall, if they cannot be resolved by negotiation and

37

agreement or as otherwise provided for herein, be submitted to the District Court for a final, binding determination.

(B)     The payment of Attorneys' Fees and Attorneys' Expenses shall be made to an account determined by Class Counsel.   Class Counsel shall have sole discretion to allocate Attorneys' Fees and Attorneys' Expenses as they deem appropriate.   Any disputes involving allocation of Attorneys' Fees and/or Attorneys' Expenses or any other claim by any attorney that he or she conferred a benefit on the Class, if they cannot be resolved by negotiation and agreement, shall be submitted to the District Court for a final, binding determination.

11.2    **Binding Effect.**   This Settlement Agreement shall be binding upon and inure to the benefit of Class Representatives, Settlement Class Members, WMI and their respective successors, successors in interest, executors, administrators, heirs and assigns, and to any corporation, partnership, joint venture, trust or any other entity into which or with which WMI may hereafter merge, consolidate, or reorganize.

11.3    **Authority To Execute This Agreement.**

(A)     Each of the Settling Parties has relied upon their counsel's advice in entering into this Settlement Agreement.

(B)     The undersigned WMI Counsel represent and warrant that they are fully authorized to conduct settlement negotiations on behalf of WMI and to enter into, and to execute, this Agreement on its behalf, subject to Bankruptcy Court approval pursuant to Fed. R. Bankr. P. 9019.

(C)     Class Counsel represents that they are and have been fully authorized to conduct settlement negotiations on behalf of the Class Representatives and the Class and to enter

38

into, and to execute, this Agreement on their behalf, subject to District Court approval pursuant to Fed. R. Civ. P. 23(e).

11.4   **Good Faith Effort.**   The Settling Parties and Settlement Class Members, their successors and assigns, and their attorneys, agree and warrant that they will act in good faith in implementing the terms of this Agreement, and that they will use good faith in resolving any disputes that may arise in implementing the terms of the Agreement.

11.5   **No Signatory Is the Drafter.**   None of the Signatories hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of construction that would or might cause any provision to be construed against the drafter hereof.

11.6   **Jurisdiction.**   Without affecting the finality of the Final Order entered in accordance with this Settlement Agreement, the Settling Parties agree that the District Court shall retain exclusive and continuing jurisdiction, subject matter jurisdiction, personal jurisdiction and ancillary jurisdiction with respect to the implementation, construction, and enforcement of this Settlement Agreement, and all orders issued concerning the Settlement, and administration of the Settlement.   The Settling Parties and Settlement Class Members submit to the jurisdiction of the District Court for purposes of implementation, construction, and enforcement of this Settlement Agreement.

11.7   **Choice of Law.**   The Settling Parties agree that the Settlement Agreement shall be governed by and construed in accordance with the laws of the State of New York, including, without limitation, Sections 5-1401 and 5-1402 of the New York General Obligations Law, without regard to its choice of law or conflict of laws principles.

US_ACTIVE:\43625838\10\79831.0003

11.8    **Use of Agreement.**    Unless otherwise ordered or permitted by a court of competent jurisdiction, neither this Settlement Agreement nor any of the negotiations or proceedings connected with this Settlement Agreement may be offered or received in evidence in this or any other matter for any purpose other than for purposes of obtaining approval of this Settlement and dismissal with prejudice of the Litigation, enforcement and implementation of the terms of this Settlement, or to support any defense of WMI based on principles of *res judicata,* collateral estoppel, release, or any other defense related to release of the Class Claims.

11.9    **No Amendment or Waiver.**    This Settlement Agreement shall not be modified in any respect except by a writing executed by all the Settling Parties and court approval of the modification, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.    The waiver by any Settling Party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

11.10   **Execution in Counterparts.**    This Settlement Agreement may be executed in multiple counterparts.    Facsimile or portable data format (".pdf") signatures shall be considered as valid signatures as of the date thereof.

11.11   **Entire Agreement.**    This Settlement Agreement, including the Exhibits hereto, contains an entire, complete, and integrated statement of each and every term and provision agreed to by and between the Settling Parties, and cancels and supersedes all prior written and unwritten agreements and understandings pertaining to the Settlement of this Litigation.

11.12   **Headings.**    The headings in this Settlement Agreement are used for the purpose of convenience only and are not intended to have any legal effect.

US_ACTIVE:\43625838\10\79831.0003

11.13  **Deadlines.**    If any deadline set forth in this Settlement Agreement falls on a Saturday, Sunday or state or federal holiday, then such deadline shall be extended to the next business day.

11.14  **Third-Party Rights.**    Nothing in this Settlement Agreement or in any further documents executed pursuant to this Settlement Agreement is intended to give or shall be construed as giving any third-party or parties not expressly referenced herein any rights, or as imposing upon any of the Settling Parties hereto any obligations or responsibilities to such third-party or parties.

11.15  **Notices.**    All notices, demands, requests and other communications given or served upon any party in connection with this Settlement Agreement shall be in writing, and shall be given by hand delivery with receipt, by nationally recognized overnight courier with receipt, or by email in .pdf, as follows:

|  |  |
|---|---|
| If to Class Counsel: | Peter D. St. Phillip, Jr.<br>LOWEY DANNENBERG COHEN & HART, P.C.<br>One North Broadway, Suite 509<br>White Plains, NY 10601<br>pstphillip@lowey.com |
|  | Joseph S. Tusa<br>WHALEN & TUSA, P.C.<br>33 West 19th Street, 4th Floor<br>New York, NY 10011<br>joseph.tusapc@gmail.com |
| If to WMI: | Washington Mutual, Inc.<br>925 Fourth Avenue, Suite 2500<br>Seattle, Washington   98101<br>Attention:   General Counsel<br>Telecopy:   (206) 432-8879<br>Email:   chad.smith@wamuinc.net |

with a copy given in like manner to:

John P. Mastando III

41

>Wing F. (Alex) Ng
>Vanessa W. Chandis
>WEIL GOTSHAL & MANGES, LLP
>767 Fifth Avenue
>New York, New York 10153
>john.mastando@weil.com
>alexander.ng@weil.com
>vanessa.chandis@weil.com

Any Settling Party may change the person to whom Mailed Notice shall be given or served by sending notice of such change to all parties in the manner prescribed by this article.

11.16 **Publicity.** The Settling Parties agree that there will be no public announcement regarding the Settlement Agreement or its terms unless said announcement is jointly agreed-upon. If any third-party, including but not limited to attorneys or any print or electronic media outlet, contacts Class Counsel, Class Representatives, Settlement Class Members or WMI prior to the Effective Date seeking information or a statement regarding the Settlement Agreement, Class Counsel, Class Representatives, Settlement Class Members and WMI shall not provide information or respond to such inquiries until obtaining an agreed-upon response. Notwithstanding the foregoing sentence, WMI may provide information to regulators, auditors, rating agencies, and shareholders regarding the Settlement Agreement without the agreement of Class Counsel, and Class Counsel may communicate with Class Representatives or the Settlement Class Members and may post the District Court-approved Notice on their respective firm websites and may refer third-parties to publicly-available documents without agreement of WMI Counsel.

11.17 **Confidentiality.** The Settling Parties agree that the terms or existence of the Settlement and this Settlement Agreement are confidential and shall not be communicated to anyone other than the Class Representatives and WMI, and their respective counsel, until such

US_ACTIVE:\43625838\10\79831.0003

time as the Settling Parties move for Preliminary Approval in accordance with Section 2.2

hereto.

US_ACTIVE:\43625838\10\79831.0003

IN WITNESS WHEREOF, the Settling Parties, through their fully authorized

representatives, have executed this Settlement Agreement as of February 15, 2011.


LOWEY DANNENBERG COHEN
   & HART, P.C.

By: _____

      Peter D. St. Phillip, Jr.
One North Broadway, Suite 509
White Plains, NY 10601
pstphillip@lowey.com

Dated: _____, 2011


WHALEN & TUSA, P.C.[3]


By: _____
Joseph S. Tusa
33 West 19th Street, 4th Floor
New York, NY 10011
joseph.tusapc@gmail.com

Dated: _____, 2011

TUSA, P.C. [4]

By: _____
      Joseph S. Tusa
236 East 28th Street, #3C
New York, NY 10016
joseph.tusapc@gmail.com

Dated: _____, 2011


WEIL GOTSHAL & MANGES, LLP

By: _____

      John P. Mastando III
Wing F. (Alex) Ng
Vanessa W. Chandis
767 Fifth Avenue
New York, New York 10153
john.mastando@weil.com
alexander.ng@weil.com
vanessa.chandis@weil.com


Dated: _____, 2011

---

[3] Plaintiffs represent that the shareholders of Whalen & Tusa, P.C. voted to dissolve on December 22, 2010.
[4] In addition to Class Counsel, Plaintiffs represent that Tusa P.C. is retained as counsel for all Named Plaintiffs and class representatives and has filed a notice of appearance in the Litigation. Tusa P.C. has filed a motion to substitute Whalen & Tusa, P.C. for all purposes in this Litigation, after the shareholders of that firm voted to dissolve on December 22, 2010, which motion is pending as of the date of execution of this Settlement Agreement. If granted, Tusa P.C. will substitute Whalen & Tusa, P.C. as Class Counsel in this Litigation and for this Settlement.

US_ACTIVE:\43625838\10\79831.0003

IN WITNESS WHEREOF, the Settling Parties, through their fully authorized

representatives, have executed this Settlement Agreement as of February 15, 2011.


LOWEY DANNENBERG COHEN
& HART, P.C.

By: _____

    Peter D. St. Phillip, Jr.
One North Broadway, Suite 509
White Plains, NY 10601
pstphillip@lowey.com

Dated:  2 / 15 , 2011


WHALEN & TUSA, P.C.[3]


By: _____
Joseph S. Tusa
33 West 19th Street, 4th Floor
New York, NY 10011
joseph.tusapc@gmail.com

Dated: _____, 2011

TUSA, P.C. [4]

By: _____
    Joseph S. Tusa
236 East 28th Street, #3C
New York, NY 10016
joseph.tusapc@gmail.com

Dated: _____, 2011


WEIL GOTSHAL & MANGES, LLP

By: _____

    John P. Mastando III
Wing F. (Alex) Ng
Vanessa W. Chandis
767 Fifth Avenue
New York, New York 10153
john.mastando@weil.com
alexander.ng@weil.com
vanessa.chandis@weil.com


Dated: _____, 2011


---

[3] Plaintiffs represent that the shareholders of Whalen & Tusa, P.C. voted to dissolve on December 22, 2010.
[4] In addition to Class Counsel, Plaintiffs represent that Tusa P.C. is retained as counsel for all Named Plaintiffs and class representatives and has filed a notice of appearance in the Litigation.    Tusa P.C. has filed a motion to substitute Whalen & Tusa, P.C. for all purposes in this Litigation, after the shareholders of that firm voted to dissolve on December 22, 2010, which motion is pending as of the date of execution of this Settlement Agreement. If granted, Tusa P.C. will substitute Whalen & Tusa, P.C. as Class Counsel in this Litigation and for this Settlement.

IN WITNESS WHEREOF, the Settling Parties, through their fully authorized representatives, have executed this Settlement Agreement as of February 15, 2011.


LOWEY DANNENBERG COHEN
   & HART, P.C.

By: _____

    Peter D. St. Phillip, Jr.
One North Broadway, Suite 509
White Plains, NY 10601
pstphillip@lowey.com

Dated: _____, 2011


WHALEN & TUSA, P.C.[3]

By: _____
Joseph S. Tusa
33 West 19th Street, 4th Floor
New York, NY 10011
joseph.tusapc@gmail.com

Dated: February 15, 2011

TUSA, P.C. [4]

By: _____
    Joseph S. Tusa
236 East 28th Street, #3C
New York, NY 10016
joseph.tusapc@gmail.com

Dated: February 15, 2011


WEIL GOTSHAL & MANGES, LLP

By: _____

    John P. Mastando III
Wing F. (Alex) Ng
Vanessa W. Chandis
767 Fifth Avenue
New York, New York 10153
john.mastando@weil.com
alexander.ng@weil.com
vanessa.chandis@weil.com

Dated: _____, 2011

---

[3] Plaintiffs represent that the shareholders of Whalen & Tusa, P.C. voted to dissolve on December 22, 2010.
[4] In addition to Class Counsel, Plaintiffs represent that Tusa P.C. is retained as counsel for all Named Plaintiffs and class representatives and has filed a notice of appearance in the Litigation.   Tusa P.C. has filed a motion to substitute Whalen & Tusa, P.C. for all purposes in this Litigation, after the shareholders of that firm voted to dissolve on December 22, 2010, which motion is pending as of the date of execution of this Settlement Agreement. If granted, Tusa P.C. will substitute Whalen & Tusa, P.C. as Class Counsel in this Litigation and for this Settlement.

44

IN WITNESS WHEREOF, the Settling Parties, through their fully authorized

representatives, have executed this Settlement Agreement as of February 15, 2011.


LOWEY DANNENBERG COHEN
   & HART, P.C.

By: _____

     Peter D. St. Phillip, Jr.
One North Broadway, Suite 509
White Plains, NY 10601
pstphillip@lowey.com

Dated: _____, 2011


WHALEN & TUSA, P.C.[3]


By: _____
Joseph S. Tusa
33 West 19th Street, 4th Floor
New York, NY 10011
joseph.tusapc@gmail.com

Dated: _____, 2011

TUSA, P.C. [4]

By: _____
    Joseph S. Tusa
236 East 28th Street, #3C
New York, NY 10016
joseph.tusapc@gmail.com

Dated: _____, 2011


WEIL GOTSHAL & MANGES, LLP

By: _____
    John P. Mastando III
Wing F. (Alex) Ng
Vanessa W. Chandis
767 Fifth Avenue
New York, New York 10153
john.mastando@weil.com
alexander.ng@weil.com
vanessa.chandis@weil.com

Dated: ___2/15___, 2011


---

[3] Plaintiffs represent that the shareholders of Whalen & Tusa, P.C. voted to dissolve on December 22, 2010.
[4] In addition to Class Counsel, Plaintiffs represent that Tusa P.C. is retained as counsel for all Named Plaintiffs and class representatives and has filed a notice of appearance in the Litigation. Tusa P.C. has filed a motion to substitute Whalen & Tusa, P.C. for all purposes in this Litigation, after the shareholders of that firm voted to dissolve on December 22, 2010, which motion is pending as of the date of execution of this Settlement Agreement. If granted, Tusa P.C. will substitute Whalen & Tusa, P.C. as Class Counsel in this Litigation and for this Settlement.

US_ACTIVE:\43625838\08\79831.0003