**Exhibit C**

**Plaintiffs' Memorandum in Support of Preliminary Approval**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENISE CASSESE f/k/a DENISE CALIGIURI, GEORGE SCOTT RUSH, RICHARD MELICHAR and RICHARD SCHROER, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WASHINGTON MUTUAL, INC.; and THE FEDERAL DEPOSIT INSURANCE COMPANY, in its capacity as receiver for WASHINGTON MUTUAL BANK, such entity having incorporated former defendants WASHINGTON MUTUAL BANK, FA and WASHINGTON MUTUAL HOME LOANS, INC., <br><br> Defendants. | Civil Action No. 05-02724 <br><br> Arthur D. Spatt, USDJ <br> Arlene R. Lindsay, USMJ |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
THE PARTIES' JOINT MOTION FOR PRELIMINARY
APPROVAL OF THE CLASS ACTION SETTLEMENT**

## **TABLE OF CONTENTS**

Table of Authorities ..................................................................................................... ii

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 4

KEY TERMS OF THE SETTLEMENT ...................................................................... 6

    A.    THE CREATION OF THE GROSS NET SETTLEMENT FUND ........................... 6

    B.    PAYMENT BY WMI OF COSTS AND SETTLEMENT ADMINISTRATION FEES .............. 7

    C.    WMI WILL WITHDRAW ITS OBJECTION TO THE CLASS' BANKRUPTCY
        PROOFS OF CLAIM ................................................................................. 7

    D.    DISTRIBUTION OF THE NET SETTLEMENT FUND ........................................ 8

    E.    WMI WILL WITHDRAW ITS OBJECTION TO THE CLASS' BANKRUPTCY CLAIMS ....... 9

    F.    PAYMENT OF CLASS COUNSEL'S FEES AND COSTS AND INCENTIVE AWARDS ........ 10

    G.    NAMED PLAINTIFFS' AND SETTLEMENT CLASS MEMBERS' CLAIMS
        WILL BE RELEASED ............................................................................. 110

ARGUMENT .............................................................................................................. 11

I.    THE SETTLEMENT SATISFIES THE REQUIREMENTS
    FOR PRELIMINARY APPROVAL ............................................................... 11

    A.    STANDARDS FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS ....... 11

    B.    THE SETTLEMENT IS THE RESULT OF ARM'S LENGTH NEGOTIATIONS
        FOLLOWING DISCOVERY AND CLASS COUNSEL'S INVESTIGATION
        AND EXTENSIVE MOTION PRACTICE ......................................................... 14

II.    THE COURT SHOULD APPROVE THE NOTICE
    TO THE CLASS AND THE NOTICE DISTRIBUTION PLAN ....................... 15

III.    CLASS COUNSEL WILL SUBMIT AN APPLICATION TO THE COURT FOR
    ATTORNEYS' FEES, THE REIMBURSEMENT OF COSTS AND
    PLAINTIFF INCENTIVE AWARDS PRIOR TO THE FAIRNESS HEARING ........... 16

CONCLUSION ........................................................................................................... 18

## **TABLE OF AUTHORITIES**

**CASES:**

*AMA v. United Healthcare Corp.,*
    2009 U.S. Dist. LEXIS 112634 (S.D.N.Y. Nov. 17, 2009) ...................................................2

*Ann Reade-Alvarex v. Eltman, Eltman, & Cooper, P.C.,*
    2006 U.S. Dist. LEXIS 31130 (E.D.N.Y. May 18, 2006) ...............................12, 14, 15, 16

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ......................................................................................................16

*Dupler v. Costco Wholesale Corp.,*
    2010 U.S. Dist. LEXIS 46938 (E.D.N.Y. Apr. 15, 2010) ...............................................12

*Gross v. Wash. Mutual Bank, F.A.,*
    2006 U.S. Dist. LEXIS 16975 (E.D.N.Y. Feb. 8, 2006) ..................................................11

*In re Marsh ERISA Litig.,*
    265 F.R.D. 128 (S.D.N.Y. 2010) ...............................................................................11, 17

*In re Medical X-Ray Film Antitrust Litig.,*
    1997 U.S. Dist. LEXIS 21936 (E.D.N.Y. Dec. 10, 1997) ...............................................12

*Mills v. Elec. Auto-Lite Co.,*
    396 U.S. 375 (1970) ......................................................................................................16

*Monaco v. Sharon Carpinello,*
    2006 U.S. Dist. LEXIS 35364 (E.D.N.Y. June 1, 2006) ...........................................12, 16

*In Re Sterling Foster & Co.,*
    238 F. Supp. 2d 480 (E.D.N.Y. 2002) ...........................................................................11

*Walsh v. Northrop Grumman Corp.,*
    1999 U.S. Dist. LEXIS 3645 (E.D.N.Y. 1999) ...............................................................11

**STATUTES & RULES**

FED. R. CIV. P. 23 ............................................................................................................... *passim*

**MISCELLANEOUS:**

Herbert Newberg & Alba Conte, *Newberg on Class Actions*, (4th ed. 2002) ...............................12

Manual for Complex Litigation, Fourth (2004) ...........................................................................11

Plaintiffs Denise Cassese, George Scott Rush, Richard Schroer and William Bloom (the "Named Plaintiffs"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by and through Class Counsel and Named Plaintiffs' counsel, respectfully submit this memorandum of law in support of the Joint Motion by Plaintiffs and Defendant Washington Mutual, Inc. (together with its "Affiliates," as defined in the Settlement Agreement, "WMI") for preliminary approval of the Class Action Settlement Agreement, dated February 15, 2011 (the "Settlement Agreement," "Settlement," or "Agreement").

## INTRODUCTION

After more than five years of intense litigation and after WMI filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Plaintiffs and WMI negotiated the Settlement before the Court.   Among other benefits, the Settlement will create a settlement fund of Thirteen Million Dollars ($13,000,000.00) (the "Gross Settlement Fund") that will be used to pay Claiming Class Members a portion of (and potentially up to one hundred percent (100%) in certain instances) of the fees disputed in this Litigation, and to pay Attorneys' Fees and Attorneys' Expenses, as well as Incentive Awards to Named Plaintiffs.   Any funds remaining in the Net Settlement Fund after payments to Claiming Class Members shall be returned to WMI's bankruptcy estate for distribution in a manner approved by the Bankruptcy Court.   Plaintiffs and Class Counsel endorse the Settlement as achieving an exemplary result for the Class in a challenging environment with a bankrupt defendant. From Plaintiffs' perspective, the Settlement achieves an extremely favorable result.

Plaintiffs attach the Settlement Agreement and the following exhibits thereto as Exhibit 1 their Notice of Motion:

- • Exhibit A:  Proposed Preliminary Approval Order;
- • Exhibit B:  Proposed Final Approval Order;
- • Exhibit C:  Notice of Class Action Settlement (the "Notice");
- • Exhibit D:  Proof of Claim Form; and
- • Exhibit E:  Summary Publication Notice of Proposed Class Action Settlement Agreement ("Summary Notice").

Plaintiffs and WMI seek preliminary approval of the Settlement and Exhibits and final approval of the form of the Notice and Summary Notice to notice the Class in accordance with Fed. R. Civ. P. 23(c)(2) and (e) and due process .

For preliminary approval, the only issue before the Court is whether the Settlement is within the range of what may be found to be fair, adequate, and reasonable so that the Class Members can be notified and a Final Fairness Hearing scheduled. *See AMA v. United Healthcare Corp.*, 2009 U.S. Dist. LEXIS 112634, *17 (S.D.N.Y. Nov. 17, 2009) ("A proposed settlement of a class action should be preliminarily approved where it 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'") (quoting *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).   The Court should reserve its ultimate analysis of the fairness, reasonableness and adequacy of the Settlement under Fed. R. Civ. P. 23(e) for the Final Fairness Hearing so that it may consider the views, if any, of affected Settlement Class Members.

Plaintiffs and Class Counsel drew upon their extensive investigation into the nature of their legal claims, the record created in discovery, the considerable interpretations of relevant legal principles by the Court in its many opinions issued in the case and the information disclosed during the WMI Bankruptcy Action, including the presentations of the parties at the WMI Bankruptcy Court plan confirmation hearing, in conducting settlement negotiations.

Given these factors, Plaintiffs and Class Counsel weighed the strengths and weaknesses of their legal claims against the risks presented in this Court and the Bankruptcy Court.   Based upon this evaluation, Plaintiffs and Class Counsel are firmly convinced that the Settlement provides generous benefits for the Class.   Class Counsel's informed opinion considers the risks and complexity of class litigation, including the expense and length of time necessary to prosecute the Litigation through trial; the uncertainty of outcome at trial and the possibility of an appeal by either side following the trial; the possibility that the Class may be reversed on appeal; the uncertainty of collecting any judgment awarded to the Class in the Bankruptcy Court; the terms and conditions of the Class' loan documents; and the substantial benefits being made available to the Class under the terms of the Settlement.

Accordingly, Plaintiffs and WMI have jointly moved this Court to enter the proposed Preliminary Approval Order (Settlement Agreement, Ex. A) that, *inter alia*: (1) incorporates the terms of the Settlement Agreement; (2) grants preliminary approval of the Settlement; (3) appoints Kurtzman Carson Consultants, LLC ("KCC") as the Settlement Administrator and the Agent for Cassese/WMI Settlement Account; (4) approves certain expenses from the Gross Settlement Fund and Cassese/WMI Settlement Account; (5) approves the form and content of the Notice and the plan for distribution of the Notice as consistent with the requirements of Fed. R. Civ. P. 23 and due process, and directs that the Notice be distributed to the Class Members; (6) sets procedures for the submission of claims, objections and requests for exclusions by Class Members; (7) sets a Final Fairness Hearing to consider whether the Settlement should be given final approval; and (8) sets a procedure for the Settling Parties to submit papers in support of the Settlement, and for Plaintiffs and Class Counsel to submit an application and supporting papers

for the payment of Class Counsel Attorneys' Fees and Attorneys' Expenses, and Incentive
Awards to Named Plaintiffs.

## BACKGROUND

This Litigation was filed on June 6, 2005 and has been extensively litigated in this Court.
Plaintiffs maintain that for many years prior to WMB's seizure by federal banking regulators and
WMI's bankruptcy in September 2008, WMB and other former WMI subsidiaries unlawfully
demanded and collected the Disputed Fees from borrowers who repaid residential loans owned
or serviced by WMB prior to maturity.   They also contend that the Disputed Fees are finance
charges and prepayments penalties not properly disclosed prior to loan origination, and that WMI
is directly or indirectly liable for such charges.   WMI vigorously disputes Plaintiffs' allegations
of unlawful conduct and has asserted numerous defenses thereto.   *See* Settlement Agreement,
Recitals, p. 5.

In response to vigorous motion practice by the parties, this Court issued seven opinions
deciding the parties' motions to dismiss, for judgment on the pleadings and for class certification.
*Cassese v. Wash. Mut., Inc.*, Memorandum of Decision and Order (E.D.N.Y. Sept. 7, 2007
(Docket No. 125); *Cassese v. Wash. Mut., Inc.*, 2008 U.S. Dist. LEXIS 111709 (E.D.N.Y. Dec.
22, 2008) (Docket No. 209); *Cassese v. Wash. Mut., Inc.*, 255 F.R.D. 89 (E.D.N.Y. 2008)
(Docket No. 215); *Cassese v. Wash. Mut., Inc.*, 2009 U.S. Dist. LEXIS 105926 (E.D.N.Y. Apr. 6,
2009) (Docket No. 241); *Cassese v. Wash. Mut., Inc.*, 262 F.R.D. 179 (E.D.N.Y. 2009) (Docket
No. 257); *Cassese v. Wash. Mut., Inc.*, 711 F. Supp. 2d 261 (E.D.N.Y. 2010) (Docket No. 330);
*Cassese v. Wash. Mut., Inc.*, 2010 U.S. Dist. LEXIS 110512 (E.D.N.Y. Oct. 18, 2010) (Docket
No. 329).

Moreover, both the Bankruptcy Court and the United States Court of Appeals for the Second Circuit (the "Second Circuit") have decided motions and/or petitions concerning this case.   On September 10, 2009, the Bankruptcy Court granted Plaintiffs' motion to lift the automatic stay of these proceedings to allow this Court to proceed to liquidate the Classes' liability claims against WMI.   *In re Wash. Mut. Inc.*, Order Granting Motion to Lift Bankruptcy Stay (D. Del. Bankr. Sept. 10, 2009).   On August 17, 2010, Plaintiffs unsuccessfully sought interlocutory review by the Second Circuit of this Court's decision decertifying the class against WMB, *Cassese v. Wash. Mut. Inc.*, Order Denying Fed. R. Civ. P. 23(f) Petition (2d Cir. Aug. 17, 2010).

This case was litigated vigorously.   This Court detailed the extensive five-year history of this Litigation in its most recent decision, which need not be repeated here.   *Cassese*, 2010 U.S. Dist. LEXIS 110512 at *2-9.

Plaintiffs filed their operative Third Amended Class Action Complaint on November 17, 2010.   (Dkt. No. 330).   Following the Court's October 18, 2010 decision refusing to decertify the Class, WMI filed a Fed. R. Civ. P. 23(f) petition with the Second Circuit.   Plaintiffs opposed this petition and, in light of the pending Settlement, it has been dismissed without prejudice to reinstatement pending the completion of these settlement proceedings.

While WMI's petition was pending in the Second Circuit, and after WMI commenced proceedings in the Bankruptcy Court for confirmation of its Chapter 11 Plan of Reorganization, counsel for the Settling Parties commenced settlement discussions.   On November 19, 2010, Plaintiffs objected to WMI's Sixth Amended Plan of Reorganization and WMI's estimation of the potential value of Plaintiffs' Bankruptcy Proofs of Claim under 11 U.S.C. §§ 328, 502, 503 and 1102.   WMI had, in turn, objected to the Plaintiffs' Bankruptcy Proofs of Claim.   With this

background, settlement negotiations proceeded.   Following several telephone negotiations,

Class Counsel traveled to Wilmington, Delaware to attend the bankruptcy plan confirmation

hearings to present argument in support of their objections.   At the hearing, negotiations

advanced sufficiently that Class Counsel and WMI Counsel agreed on generalized terms.

Further negotiations over the terms of a settlement in principle continued well into the evening at

the Wilmington offices of WMI's counsel.   Thereafter, the Settling Parties continued to

negotiate over several terms and competing proposals.   Several sessions followed these

discussions until the outlines of an agreement were formed.

The terms of the Settlement Agreement were not finally reached until February 15, 2011.

The Settling Parties now jointly move for preliminary approval of the Settlement.

**KEY TERMS OF THE SETTLEMENT**

**A.** **THE CREATION OF THE GROSS AND NET SETTLEMENT FUNDS**

The Settlement Agreement provides that in consideration for the Named Plaintiffs' and

Settlement Class Members' full and final releases of the Released Claims against the Released

WMI Parties, WMI agrees to deposit the Gross Settlement Fund into an Cassese/WMI

Settlement Account, established by the Agent for Cassese/WMI Settlement Account, following

entry of the Preliminary Approval Order by this Court and approval by the Bankruptcy Court.

*Settlement Agreement,* ¶ 3.2.   As set forth in Section F, *infra*, Class Counsel's Attorneys' Fees

and Attorneys' Expenses, as well as Incentive Awards, will be paid out of the Gross Settlement

Fund.   The remainder of the Gross Settlement Fund (the "Net Settlement Fund") will be used, as

set forth in Section D, *infra*, to pay Claiming Class Members, and any funds remaining in the Net

Settlement Fund after such payments to Claiming Class Members shall be distributed to WMI's

bankruptcy estate.

**B.      PAYMENT BY WMI OF COSTS AND SETTLEMENT ADMINISTRATION FEES**

In addition to establishing the Gross Settlement Fund, WMI agrees to bear the full costs

of notice to the Class and settlement administration, including fees incurred by the Settlement

Administrator.  *Settlement Agreement* ¶ 3.4.   The Settlement Administrator, subject to Court

approval, will print and mail the Notice to Class Members, publish the Summary Notice in the

manner directed by the Court, create and post the Notice on a settlement website, receive and

process Proof of Claim Forms filed by Settlement Class Members, receive requests for exclusion,

receive and respond to Class Member inquiries, and calculate and distribute the Net Settlement

Fund to Claiming Class Members, and the remainder to WMI, after the Effective Date.

*Settlement Agreement*, Article 6, Ex. A (proposed Preliminary Approval Order ¶ 11).

Plaintiffs and WMI have selected KCC for approval as the Settlement Administrator,

whose experience and qualifications to serve in those capacities are discussed on its website at

http://www.kccllc.com/.

**C.      PROCEDURE FOR NOTIFYING THE CLASS**

Following entry of the Preliminary Approval Order, the Settlement Administrator shall

mail the Notice to all Class Members for whom addresses are known by first-class mail, with a

proper return address to each Class Member's last-known address, to the extent such information

is ascertainable.  *Settlement Agreement*,¶ 5.2.   In the event the Post Office returns any Notice

with forwarding address information, and such Notices are received by the Settlement

Administrator at least twenty-five days before the Final Fairness Hearing, the Settlement

Administrator will forward the Notice to the Class Member's new address and update its

database to reflect the forwarded addresses.  *Id.*, ¶ 5.3.   Additionally, Plaintiffs and WMI

propose to publish the Summary Notice twice in *USA Today* and post the Notice and Settlement

Agreement, among other Litigation pleadings, on an Internet website to be established by the

Settlement Administrator in connection with this Settlement.   *Id.*, ¶ 5.4.

## D.   DISTRIBUTION OF NET SETTLEMENT FUND

Claiming Class Members will be entitled to receive a portion of, and *up to* the full value

in certain potential circumstances, of the amounts they paid for the Disputed Fees.   *Id.*, ¶ 6.5.

The Settlement Administrator shall process the Proof of Claim Forms and shall pay Claiming

Class Members who submit timely, valid Proof of Claim Forms from the Net Settlement Fund.

If the total amount of Disputed Fees paid by Claiming Class Members does not exceed the Net

Settlement Fund, then, in the first instance, the Claiming Class Members will be paid no more

than seventy-five percent (75%) of the amount of Disputed Fees paid by such Claiming Class

Member as reflected on the books and records of WMB, now in the possession of JPMorgan

Chase Bank, N.A. ("JPMorgan") to whom Class Counsel has served a subpoena for WMB's

Class Member loan records.   Should Net Settlement Funds remain after the payment of seventy-

five percent (75%) of each Claiming Class Member's Disputed Fees, such remaining funds shall

be used to pay Claiming Class Members additional funds up to, but no more than, one hundred

percent (100%) of their Disputed Fees, based on a *pro rata* distribution of such remaining funds,

up to a maximum of eighty percent (80%) of the Net Settlement Fund.   If the total amount of

Disputed Fees exceeds the Net Settlement Fund, Claiming Class Members will be entitled to a

*pro rata* distribution of the Net Settlement Fund.   *Id.*, ¶ 6.5(B).

In the event that Plaintiffs and WMI fail to obtain the data necessary to determine the

amount of Disputed Fees paid by any Claiming Class Member from JPMorgan Chase, each such

Claiming Class Member for which Plaintiffs and WMI do not possess the necessary Disputed

Fee data to calculate a refund shall still be entitled to payment of $10.00, provided that such

Claiming Class Member submits documentation with his or her Proof of Claim Form that demonstrates the Claiming Class Member is a member of the Class.   *Id.*, ¶ 6.5(C).

Should funds remain in the Net Settlement Fund after the payment of (1) Incentive Awards to Named Plaintiffs; (2) Attorneys' Fees and Attorneys' Expenses; and (3) all Claim Payments to Claiming Class Members based on timely, valid Proof of Claim Forms have been cashed by such Claiming Class Members, the Settlement Administrator shall distribute all such remaining funds to WMI's bankrupt estate for distribution in a manner approved by the Bankruptcy Court.   *Id.*, ¶ 6.6.

## E.     WMI WILL WITHDRAW ITS OBJECTION TO THE CLASS' BANKRUPTCY CLAIMS

Plaintiffs filed Bankruptcy Proofs of Claim in the WMI Bankruptcy Action to recover from the assets of the estate based on their allegations in this Litigation.   Plaintiffs and Class Counsel then moved the Bankruptcy Court to lift the automatic bankruptcy stay to permit this Litigation to proceed to liquidation of their claims.   WMI objected to Plaintiffs' Bankruptcy Proofs of Claim and opposed the motion to lift the stay.   Following argument on the motion, on September 10, 2009, the Bankruptcy Court granted Plaintiffs' motion and maintained jurisdiction over any distribution by WMI from its bankruptcy estate.   For that reason, and in accordance with the bankruptcy laws, the Settling Parties will seek the Bankruptcy Court's approval of the Settlement following the preliminary approval by this Court, and prior to seeking final approval of the Settlement in this Court pursuant to Fed. R. Civ. P. 23(e).   *Id.*, ¶ 2.3.

Through the Settlement, WMI has withdrawn (without prejudice to renewal in the event the Settlement is not approved) its objection to Plaintiffs' Bankruptcy Proofs of Claim filed in the Bankruptcy Court and agreed to settle those claims for the consideration provided in the Settlement.   *Id.*, ¶ 2.3.   Plaintiffs have reciprocally withdrawn without prejudice their objection

to approval of WMI's Plan of Reorganization under Chapter 11 of the United Sates Bankruptcy Code. Plaintiffs have likewise withdrawn their objection to WMI's estimation of the cost of this Litigation to WMI's bankruptcy estate, after WMI revised that estimate to the amount of the Gross Settlement Fund. WMI has previously estimated the cost of this Litigation at between zero and Four Million Dollars ($4,000,000.00). In fact, in the opinion of Plaintiffs and Class Counsel, after WMI pays the costs of Settlement administration and notice, it will provide settlement benefits to the Class in excess of the Gross Settlement Fund.

**F.     PAYMENT OF CLASS COUNSEL'S FEES AND COSTS AND INCENTIVE AWARDS**

Pursuant to Fed. R. Civ. P. 23(h), at the time Plaintiffs and WMI jointly file for final approval of the Settlement in the Court, Class Counsel intends to make an application with the Court for approval of Attorneys' Fees and Attorneys' Expenses from the Gross Settlement Fund (a sum that does not include the additional remuneration to the Class in the form of payment of Notice, settlement administration and Agent for Cassese/WMI Settlement Account fees). *Id.*, ¶ 3.2(A). WMI has agreed not to oppose the application to the extent that such request does not exceed thirty percent (30%) of the Gross Settlement Fund, including any interest accruing on such Gross Settlement Fund. *Id.* WMI has also agreed not to oppose Class Counsel's request for reimbursement of their out-of-pocket expenses related to the Litigation and WMI Bankruptcy Action to the extent that such request does not exceed Fifty Thousand Dollars ($50,000.00). *Id.* The Settlement Agreement also provides for Incentive Awards to each Named Plaintiff in the amount of Seven Thousand and Five Hundred Dollars ($7,500.00), assuming Court approval. *Id.* at ¶ 3.2(B).

## G.   NAMED PLAINTIFFS' AND SETTLEMENT CLASS MEMBERS' CLAIMS WILL BE RELEASED

The Settlement Agreement provides that Class Members will be advised of their rights to file Proof of Claim Forms to receive payments from the Net Settlement Fund, object or seek exclusion from this Settlement.   ).   *Id.*, ¶ 1.27; Exs. C and E (Notice and Summary Notice). Named Plaintiffs and Settlement Class Members will release all WMI Released Parties from all Released Claims.   *Id.*, ¶ 7.3.

## ARGUMENT

## I.   THE SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL.

### A.   STANDARDS FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS.

There is an overriding public interest in settling and quieting litigation that is particularly true in complex class actions. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("There is a 'strong judicial policy in favor of settlements, particularly in the class action context.'") (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *Gross v. Wash. Mutual Bank, F.A.*, 2006 U.S. Dist. LEXIS 16975, *12 (E.D.N.Y. Feb. 8, 2006) (granting preliminary approval of class action settlement; "the law looks favorably upon class action settlements because avoiding a trial conserves scarce judicial resources."); *In Re Sterling Foster & Co.*, 238 F. Supp. 2d 480 (E.D.N.Y. 2002) (Spatt, J.) (approving class action settlement; "Judicial discretion should be exercised in light of the general policy favoring settlement."); *Walsh v. Northrop Grumman Corp.*, 1999 U.S. Dist. LEXIS 3645 (E.D.N.Y. 1999) ("It is well settled that the law favors settlement of disputed claims, particularly in the context of complex class actions.").

Fed. R. Civ. P. 23(e) requires court approval of all class action settlements.   Courts generally apply a two-step process to class action settlements.   In the first step, often called

"preliminary approval," the court reviews the proposed settlement for obvious deficiencies, provides the class with notice of the proposed settlement and schedules a fairness hearing to consider any comments from potentially affected class members. *See Manual for Complex Litigation, Fourth* § 21.632 (2004) (Upon a request for preliminary approval: "The judge makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). In the second step, the court considers final approval of the proposed settlement at the fairness hearing. *Id.* The leading treatise on class actions agrees that the parties should submit a proposed class action settlement to the presiding court for preliminary approval. Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, (4th ed 2002) §11.25 (hereafter "Newberg"). "Usually the court will informally review these proposed settlement papers with counsel and then direct that notice of the proposed settlement and the hearing thereon be issued to all class members by mail, published notice, or a combination thereof." *Newberg*, § 11.24; *see also Dupler v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 46938, *4-5 (E.D.N.Y. Apr. 15, 2010).

While the Court is required to conduct a fairness analysis prior to granting final approval to the proposed settlement, "a full fairness hearing is unnecessary at this stage; preliminary approval is appropriate where a proposed settlement is merely within the range of possible approval." *Ann Reade-Alvarex v. Eltman, Eltman, & Cooper, P.C.*, 2006 U.S. Dist. LEXIS 31130, *21 (E.D.N.Y. May 18, 2006) (preliminary approval granted); *accord Monaco v. Sharon Carpinello*, 2006 U.S. Dist. LEXIS 35364, *22 (E.D.N.Y. June 1, 2006) (same). "[P]reliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlements[,]" *In re Medical X-Ray Film Antitrust Litig.*,

1997 U.S. Dist. LEXIS 21936, *19 (E.D.N.Y. Dec. 10, 1997), and settlement "is the result of serious, informed and non-collusive negotiations." *Ann Reade-Alvarex*, 2006 U.S. Dist. LEXIS 31130 at *20; *see also Clark v. Ecolab, Inc.*, 2009 U.S. Dist. LEXIS 108736, *14-15 (S.D.N.Y. Nov. 17, 2009) ("To grant preliminary approval, the court need only find that there is '"probable cause" to submit the [settlement] to class members and hold a full-scale hearing as to its fairness.'") (quoting *In re Traffic Executive Assn.*, 627 F.2d 631, 634 (2d Cir. 1980)).

The relevant factors heavily favor preliminary approval of this Settlement.   Class Counsel and Named Plaintiffs' counsel litigated this Litigation for more than five years, during which time the parties conducted significant discovery and litigated motions to dismiss, for judgment on the pleadings, to strike the complaints and for class certification.   The Court issued seven decisions on those motions, addressing unresolved issues under the Truth in Lending Act, the application of FIRREA to a certified class, and the allegations regarding the parent/subsidiary relationship among Defendants.   Following the Court's October 18, 2010 decision denying WMI's motion to decertify the Class or to grant judgment on the pleadings, WMI filed a petition for permission to appeal the Court's October 18, 2010 decision in the Second Circuit under Fed. R. Civ. P. 23(f). During the pendency of that petition, the parties commenced settlement negotiations.   After more than three (3) months of negotiations, Plaintiffs and WMI agreed to the Settlement Agreement presented to this Court for preliminary approval.   The Class Definition certified by the Court in *Cassese v. Washington Mut., Inc.*, 262 F.R.D. 179 (E.D.N.Y. 2009) has been slightly modified in connection with the Settlement Agreement.   *Settlement Agreement*, ¶ 1.8.

Plaintiffs and Class Counsel believe the Settlement is an exemplary result for the Class. WMI has agreed to deposit the Gross Settlement Fund ($13,000,000.00) for distribution to

Settlement Class Members and WMI will pay all the costs of notice and Settlement administration.   Those costs and fees will not reduce the Settlement proceeds made available to the Class and are an additional financial benefit to the Class.   In short, the Settlement is sufficiently fair, reasonable and adequate to warrant preliminary approval and dissemination of the Notice to the Class.

**B.**   **THE SETTLEMENT IS THE RESULT OF ARM'S LENGTH NEGOTIATIONS FOLLOWING SIGNIFICANT DISCOVERY, CLASS COUNSEL'S INVESTIGATION AND EXTENSIVE MOTION PRACTICE.**

The Settling Parties' negotiations were disclosed to the Court in submissions filed with this Court, the Second Circuit and the Bankruptcy Court beginning in December 2010.   Class Counsel and WMI's counsel conducted settlement meetings in New York and Wilmington (where WMI's Bankruptcy Action is filed), and further negotiated by telephone.   After an agreement in principle was reached, counsel for the Plaintiffs and WMI, through their respective counsel, undertook the task of drafting and negotiating the Settlement Agreement and its Exhibits.   Each of the Named Plaintiffs participated in this process in reviewing drafts of the Settlement Agreement and communicating with Class Counsel and Named Plaintiffs' counsel.

A strong presumption of fairness in favor of the proposed settlement arises where the settlement is the result of arm's length negotiations, counsel is experienced and sufficient discovery has been conducted.   *Walsh*, 1999 U.S. Dist. LEXIS 3645 at *9; *accord Ann Reade-Alvarex*, 2006 U.S. Dist. LEXIS 31130 at *20 ("The proposed settlement does not appear to be collusive, given the lengthy and comprehensive negotiations surrounding it ...."); *Gross,* 2006 U.S. Dist. LEXIS 16975 at *15 ("With respect to the reasonableness of the settlement fund in light of the best possible recovery, the court may give credence to the opinions of experienced attorneys in assessing this comparison."); *see also Newberg* § 11.41.   The Settlement is the

result of a lengthy, contentious litigation and negotiations between Plaintiffs, WMI and their counsel.   Class Counsel and WMI Counsel each have extensive experience in negotiating and settling consumer class litigation and are thoroughly familiar with the factual and legal issues of this case.

The Settlement was negotiated at an advanced stage of this Litigation, after the completion of significant discovery, class certification and dispositive motion practice.   It satisfies all standards for preliminary approval.

## II.   THE COURT SHOULD APPROVE THE NOTICE TO THE CLASS AND THE NOTICE DISTRIBUTION PLAN.

Fed. R. Civ. P. 23(e)(1)(B) provides that: "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."   Rule 23(c)(2) further requires notice to a class certified by this Court against WMI.   Here, the proposed Preliminary Approval Order directs mailing of the Notice to all Class Members identified from WMB's records, which are currently maintained by JPMorgan and being obtained by Plaintiffs, that paid any of the Disputed Fees during the entire Class Period running from January 1, 1998 to September 25, 2008.   *Settlement Agreement*, ¶ 1.33, Article 5; Ex. A (proposed Preliminary Approval Order).   Direct notice of this kind to all Class Members who can be reasonably identified is deemed to be the "best notice practicable under the circumstances" and in full compliance with all due process standards.   *See* FED. R. CIV. P. 23(c)(2)(B); *Ann Reade-Alvarez*, 2006 U.S. Dist. 31130 at *23-24.   In addition to direct mail notice, the Notice will be published twice in *USA Today* and posted on a website created and maintained by the Settlement Administrator.   *Settlement Agreement* ¶ 5.4; Ex. A (proposed Preliminary Approval Order).

The Notice is written in plain English and includes: (1) a description of the nature of the Litigation; (2) the definition of the Class certified by this Court for settlement purposes; (3) an outline of the claims made by Plaintiffs, the issues raised by the parties, and the material terms of the Settlement; (4) an explanation of how Class Members can submit claims to share in the distribution of the Net Settlement Fund; (5) an explanation of how a Class Member can exclude his or herself from the Settlement, or object thereto; (6) a statement declaring the ability of any Settlement Class Member to enter an appearance through counsel and be heard at the Final Fairness Hearing if desired; and (7) an explanation of the scope of the Settlement's release of the Released Claims by Named Plaintiffs and the Settlement Class Members against the Released WMI Parties and the binding effect of a judgment on Named Plaintiffs and the Settlement Class Members. *See* FED. R. CIV. P. 23(c)(2)(B).   The Notice also informs Class Members of Class Counsel's intended application for Attorneys' Fees, Attorneys' Expenses and Incentive Awards. This Notice conforms not only with Fed. R. Civ. P. 23(c)(2)(B) and 23(e)(1)(B), but it also complies with the Second Circuit's notice requirements.   *See Ann Reade-Alvarez*, 2006 U.S. Dist. 31130 at *23-24 (citing and discussing *Weinberger v. Kendrick*, 698 F.2d 61, 70-71 (2d Cir. 1982)).   The Summary Notice discloses the material terms of the Settlement and informs Class Members how they can obtain and review a copy of the Notice and Settlement Agreement.

The Court should approve the Notice, Summary Notice, Proof of Claim Form and the proposed plan for dissemination of the Notice to the Class.

## III.   CLASS COUNSEL WILL SUBMIT AN APPLICATION TO THE COURT FOR ATTORNEYS' FEES, THE REIMBURSEMENT OF COSTS AND PLAINTIFF INCENTIVE AWARDS PRIOR TO THE FAIRNESS HEARING.

Class Counsel will make an application to the Court requesting Attorneys' Fees and Attorneys' Expenses at the same time Plaintiffs and WMI jointly file a motion in the District

Court for final approval of the Settlement.  *See* FED. R. CIV. P. 23(h).  *See Monaco*, 2006 U.S.

Dist. LEXIS 35364 at *22 (appropriate for fee application to await final approval of class action

settlement).   The Settlement Agreement and Notice reflects Class Counsel's agreement not to

seek Attorneys' Fees in excess of thirty percent (30%) of the Gross Settlement Fund.  *See*

Settlement Agreement ¶ 3.2(A); Ex. C (Notice).   Attorneys who create a substantial benefit or a

fund for the potential benefit of a class are entitled to fees from the fund.  *See Boeing Co. v. Van

Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or lawyer who recovers a common fund for the

benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from

the fund as a whole."); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970) (Attorneys'

fees recoverable where "the litigation has conferred a substantial benefit on the members of an

ascertainable class."); *Clark*, 2010 U.S. Dist. LEXIS 47036 at *27 ("In this Circuit, the

'percentage-of-recovery' method is the 'trend.'") (quoting *McDaniel v. County of Schenectady*,

595 F.3d 411, 417 (2d Cir. 2010)).   Percentage fees of thirty percent (30%) are within the range

of those approved in the Second Circuit as reasonable.  *See e.g., In re Marsh ERISA Litig.*, 265

F.R.D. at 149 (citing decisions).   In accordance with Second Circuit precedent, Class Counsel

will also submit their lodestar of professional time and their unreimbursed expenses incurred in

this Litigation in support of their application for Attorneys' Fees and Attorneys' Expenses.

WMI will not oppose Class Counsel's application for Attorneys' Fees and Attorneys' Expenses

to the extent that such requests do not exceed thirty percent (30%) of the gross Settlement Fund

and Fifty Thousand Dollars ($50,000.00), respectively.

Class Counsel will also submit an application for the Court's approval of Incentive

Awards to Named Plaintiffs in the amount of Seven Thousand and Five Hundred Dollars

($7,500.00) each at the same time Plaintiffs and WMI jointly file for final approval of this

Settlement.  *Settlement Agreement*, ¶ 3.2(B).   Incentive Awards to Named Plaintiffs are

commonly approved in the Second Circuit in recognition of the substantial and necessary

assistance they provide to obtain the Class' recovery. *See Dupler*, 2010 U.S. Dist. LEXIS 46938

at *33-34 (citing decisions).   Here, Class Counsel's efforts resulted in the creation of a Thirteen

Million Dollar ($13,000,000) settlement fund and agreement by WMI to fund what will likely be

considerable notice and administration costs.

## CONCLUSION

For the stated reasons, Plaintiffs and WMI respectfully request that the Court grant

preliminary approval of the Settlement Agreement and enter the proposed Preliminary Approval

Order, attached as Exhibit A.


Dated: February 15, 2011
     White Plains, New York

                    Respectfully submitted,

                    **LOWEY DANNENBERG COHEN**
                    **& HART, P.C.**


                    BY:   **/s/ Peter D. St. Phillip, Jr.**
                        Peter D. St. Phillip, Jr. (PS 0726)
                    One North Broadway, Suite 509
                    White Plains, NY   10601
                    Tel. (914) 997-5000
                    Fax: (914) 997-0035
                    E-Mail: pstphillip@lowey.com

                    **WHALEN & TUSA, P.C.**


                    BY:   **/s/ Joseph S. Tusa**
                        Joseph S. Tusa (JT 9390)
                    33 West 19th Street, 4th Floor
                    New York, NY 10011
                    Tel: (212) 400-7100
                    E-Mail: joseph.tusapc@gmail.com

**TUSA, P.C.**

BY:___/s/ Joseph S. Tusa_____

Joseph S. Tusa (JT 9390)
236 East 28th Street, #3C
New York, NY 10016
Tel.   (646) 895-9802
joseph.tusapc@gmail.com

*Attorneys for Plaintiffs
and Class Counsel*