UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WASHINGTON MUTUAL, INC., *et al.*, | ) | |
| | ) | |
| | ) | Case No. 08-12229 (MFW) |
| | ) | |
| Debtors, | ) | |
| | ) | Jointly Administered |
| | ) | |
| | ) | **Hearing Date: May 24, 2011 at 11:30 a.m. (ET)** |
| | ) | **Objection Deadline: May 17, 2011 at 4:00 p.m. (ET)** |

## MOTION OF WELLS FARGO BANK, N.A., IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE AND SUCCESSOR GUARANTEE TRUSTEE, FOR ENTRY OF AN ORDER (A) PARTIALLY LIQUIDATING AND ALLOWING THAT ASPECT OF ITS PROOF OF CLAIM RELATING TO THE TRUSTEE'S FEES AND EXPENSES AND (B) ESTABLISHING A PROTOCOL FOR <u>THE REVIEW OF ADDITIONAL TRUSTEE'S FEES AND EXPENSES</u>

Wells Fargo Bank, National Association (**"Wells Fargo"**), in its capacity as successor Indenture Trustee under the (a) Indenture dated as of April 30, 2001, between Debtor Washington Mutual, Inc. (**"WMI"**) and The Bank of New York (**"BNY"**), as initial Trustee (the **"Base Indenture"**) and (b) the First Supplemental Indenture dated as of April 30, 2001 (the "Supplemental Indenture," and together with the Base Indenture, the "PIERS Indenture"), and in its capacity as successor Guarantee Trustee under that certain Guarantee Agreement, dated as of April 30, 2001 (the **"Guarantee Agreement"**), between WMI as Guarantor, and Bank of New York as initial Guarantee Trustee (collectively, in such capacities, the **"PIERS Trustee"**), hereby moves (the **"Motion"**) pursuant to sections 501, 502, 1123(b)(6) and 1129(a)(4) of title 11 of the United States Code (the **"Bankruptcy Code"**) and pursuant to this Court's Opinion dated January 7, 2011 (the **"Opinion"**) (Dkt. No. 6528), for entry of an order: (i) allowing and partially liquidating the claim for fees and expenses of the PIERS Trustee that was asserted in an

unliquidated amount in the proof of claim filed by the PIERS Trustee on March 30, 2009 (Claim No. 2134) (the "**Proof of Claim**"), for the period of October 2008 through and including March 31, 2011; (ii) approving a procedure for approval of compensation earned by the PIERS Trustee, and reimbursement of ongoing fees and expenses incurred by the PIERS Trustee from April 1, 2011 through the conclusion of these bankruptcy cases; and (c) granting the PIERS Trustee such other and further relief as the Court deems just and proper. In support of the Motion, the PIERS Trustee respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This is a core proceeding under 28 U.S.C. §157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

A. The Debentures, the Trust Securities and the WMI Guarantee

2. On or about April 30, 2001, WMI entered into the PIERS Indenture, with Bank of New York ("**BNY**") as initial Indenture Trustee. Pursuant to the PIERS Indenture, WMI issued $1.15 billion in face amount of its 5.375% Junior Subordinated Deferrable Interest Debentures due July 1, 2041 (the "**Debentures**").

3. In accordance with the Amended and Restated Declaration of Trust dated as of April 30, 2001 (the "**Trust Agreement**"), by WMI, as Sponsor, BNY, as Property Trustee, The Bank of New York (Delaware), as Delaware Trustee, and the Administrative Trustees named therein, Washington Mutual Capital Trust 2001 ("**WMCT**") was established for the purpose of purchasing the Debentures from WMI. WMCT did in fact purchase and became the owner of the Debentures.

2

4. In order to obtain the funds necessary to purchase the Debentures, WMCT sold Units (as defined in the Trust Agreement) to investors. Each of the Units consisted of a Preferred Security of WMCT and a warrant to purchase shares of common stock of WMI at any time prior to the close of business on May 3, 2041. The Trust also issued Common Securities (as defined in the Trust Agreement, and together with the Preferred Securities, the "**Trust Securities**"), which were purchased by WMI. Each of the Units had a face value of $50, but was issued at an initial purchase price of $32.33 in order to reflect the original issue discount.

5. The Trust expended all or substantially all of the proceeds of the sale of the Trust Securities to purchase the Debentures. As more fully set forth in the Guarantee Agreement between WMI and BNY, as Guarantee Trustee, WMI guaranteed certain obligations relating to the Trust and the Trust Securities.

6. WMI and WMI Investment Corp. (together, the "**Debtors**") commenced these cases on September 26, 2008 (the "**Petition Date**") by filing voluntary petitions under chapter 11 of the Bankruptcy Code. The Debtors have continued to operate their businesses and manage their affairs pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. By Instruments of Resignation, Appointment and Acceptance dated as of October 14, 2008, Wells Fargo became the successor Indenture Trustee and the successor Guarantee Trustee.

8. Section 607 of the Base Indenture requires WMI "to pay the [PIERS] Trustee from time to time reasonable compensation for all services rendered by it hereunder" and to "reimburse the [PIERS] Trustee upon its request for all reasonable expenses, disbursements and advances incurred or made by the [PIERS] Trustee in accordance with any provision of this Indenture (including the reasonable compensation and the expenses and disbursements of its

agents and counsel)...." A copy of the relevant provisions of the Base Indenture is attached as Exhibit A. Section 607 also provides for a charging lien: "[a]s security for the performance of the obligations of [WMI], the [PIERS] Trustee shall have a claim prior to the Debt Securities upon all property and funds held or collected by the [PIERS] Trustee as such" except for funds held in trust for payment of principal or interest on the underlying securities.

9. Section 607 further provides that the claims of the PIERS Trustee for payment of its fees and expenses are not subject to the subordination provisions of Article 18 of the Base Indenture. Indeed, pursuant to Section 506 of the Base Indenture, all monies collected by the PIERS Trustee on account of PIERS claims must first be applied to the payment of the PIERS Trustee's fees and expenses before such funds are to be applied to the payment of senior claims contemplated in Article 18. See Exhibit A.

B. Participation of the PIERS Trustee and Its Professionals in the WMI Bankruptcy Case

10. On October 15, 2008, the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors (the "**Creditors' Committee**"). The PIERS Trustee was appointed as a member of the Creditors' Committee on such date.

11. The PIERS Trustee retained the law firm of Loeb & Loeb LLP ("**Loeb**") to act as its primary legal counsel during the bankruptcy proceedings. The PIERS Trustee subsequently retained Fox Rothschild LLP ("**Fox Rothschild**") as its Delaware counsel.

12. On March 30, 2009, the PIERS Trustee timely filed the Proof of Claim. A copy of the Proof of Claim is attached as Exhibit B. In the Proof of Claim, the PIERS Trustee asserted claims on account of (a) principal and prepetition interest (the "**Debenture Claim**"); (b) accrual of postpetition interest and other unliquidated damages (the "**Unliquidated Claim**"); (c) compensation to the PIERS Trustee and its counsel and agents for fees and expenses (the "**Fees**

4

Claim"); (d) indemnification rights under the PIERS Indenture (the "**Indemnity Claim**"); and (e) damages incurred on account of potential corporate wrongdoing (the "**Fraud Claim**").

13. On December 18, 2009, the Debtors filed an objection to the Proof of Claim [Docket No. 2039]. By Order dated January 28, 2010 [Docket No. 2262] (the "**Allowance Order**"), the Debenture Claim was allowed as a general unsecured claim as follows:

| Notes Issuance | Maturity Date | Allowed Principal ($) | Allowed Accrued Interest ($) | Allowed Total Amount ($) |
|---|---|---|---|---|
| 5.375% Junior Subordinated Deferrable Interest Debentures ||||||
| Preferred Securities | May 1, 2041 | 756,230,623.24 | 9,443,576.39 | 765,674,199.63 |
| Common Securities | May 1, 2041 | 23,387,254.01 | 292,052.86 | 23,679,306.87 |

14. The Allowance Order further provided that all parties' rights with respect to the "Remaining Claims" asserted by the PIERS Trustee, including the Fees Claim, were preserved. For the reasons set forth in this Motion, the PIERS Trustee now seeks partial allowance and liquidation of the Fees Claim.

15. As previously noted, Wells Fargo succeeded BNY as Indenture Trustee and Guarantee Trustee shortly after the Petition Date. Wells Fargo continues to perform its obligations as required by the PIERS Indenture while actively participating in the resolution of these bankruptcy cases as a member of the Creditors Committee.

16. As more fully discussed below, the PIERS Trustee and its counsel have played a unique and difficult role in these cases, both in serving on the Creditors' Committee, and, as trustee for all of the PIERS holders.

17. Thomas M. Korsman, Vice President in the Corporate, Municipal & Escrow Solutions group of Wells Fargo Bank, N.A., performed the bulk of the work on behalf of the

5

PIERS Trustee. In accordance with industry practice and as reflected in the invoices appended to this Motion as Exhibit C, the PIERS Trustee bills for the time spent by Mr. Korsman and its other professional administrators providing default administration services at an hourly rate. Among other things, Mr. Korsman participated in weekly Creditors' Committee calls as well as numerous meetings with the Debtors and other parties regarding these cases generally, the global settlement agreement and the plan process. Mr. Korsman prepared and sent notices to PIERS holders and regularly responded and continues to respond to communications from numerous PIERS holders. He also reviewed pleadings filed on behalf of the PIERS Trustee and the Creditors' Committee, and extensively analyzed various drafts of the plan, related disclosure statements, the global settlement agreement and numerous pleadings filed by the Debtors and other parties in interest. Mr. Korsman personally attended almost every Creditors' Committee meeting or conference call during the more than 31 months that this case has been pending.

18. In addition to its default administration fees, the PIERS Trustee is also entitled to unpaid annual administration fees in the aggregate amount of $21,000.

19. The majority of Loeb's services was performed by two attorneys, Walter H. Curchack and Vadim J. Rubinstein, partners at the firm. Both attorneys have substantial experience representing indenture trustees in large, complex cases, including among others, the bankruptcy cases of Refco, Netbank, Corus Bankshares, Fruit of the Loom, Muzak, Local Insight Media Holdings, Allied Holdings, Luminent Mortgage Capital, XO Communications, Horizon Natural Resources, Horizon PCS, Applied Extrusion Technologies, and EnviroSolutions. In light of the complexities of these cases, the unique structure of the PIERS debt and the numerous issues that arose throughout Loeb's representation of the PIERS Trustee that were particular to

the PIERS Trustee's constituents, other attorneys from Loeb's litigation and corporate departments assisted from time to time with specific aspects of the representation.

20. Early on in these cases, significant time and effort was spent analyzing the underlying documents[1] and transitioning the PIERS Trustee into its role as successor to BNY Mellon in numerous capacities related to the PIERS. A number of legal issues, many of which were unique to the PIERS debt structure, had to be addressed, including those relating to the contractual subordination of the PIERS to certain senior WMI debt, and the resulting subrogation rights of the PIERS holders; the issuance of the PIERS at a discount to their face value (i.e., with original issue discount or "OID"); and the relationship between the Debentures and the PIERS. Significant time was required to be spent analyzing documents pertaining to the Debtors' complex capital structure, including, without limitation, the indentures related to the Senior Notes, the Senior Subordinated Notes and any other debt to which the PIERS might be subordinate. The PIERS Trustee and its counsel also had to become familiar with the Debtors' assets generally, issues pertaining to the bank seizure, the deposit accounts and various other disputes that arose with JPMorgan Chase Bank, N.A. ("**JPMC**") and the Federal Deposit Insurance Corporation ("**FDIC**"), in its capacity as receiver for Washington Mutual Bank.

21. Counsel and Mr. Korsman participated in weekly conference calls with the Creditors' Committee and frequent meetings with, among others, the Debtors, JPMC, the FDIC and certain noteholder groups.

22. Loeb prepared the Proof of Claim, and, along with Mr. Korsman, spent significant time discussing it with the Debtors. This included addressing OID issues, reconciling

---

[1] Such documents included the Base Indenture, the Supplemental Indenture, the trust instrument governing WMCT, the Guarantee Agreement, a Unit Agreement dated as of April 30, 2001 and a Warrant Agreement dated as of April 30, 2001. Under these documents, BNY served in numerous capacities, such as Indenture Trustee,

7

calculations, and negotiating a potential settlement regarding the Debtors' objections to the Proof of Claim. Also, the PIERS Trustee and counsel spent a considerable amount of time communicating with PIERS holders regarding these issues.

23. With respect to general case issues, whenever possible and appropriate, the PIERS Trustee and Loeb relied on counsel to the Creditors' Committee to perform the necessary legal research in order to avoid duplication of services, and in that connection reviewed numerous legal memoranda prepared by counsel to the Creditors' Committee on wide-ranging issues. However, based on analyses prepared by the Creditors' Committee's professionals during settlement negotiations with JPMC and the FDIC, it became apparent that among all the Debtors' general unsecured creditors, only the PIERS holders were likely to receive less than a 100% recovery by virtue of the subordination provisions of the documents. Therefore, in addition to the many legal issues that were unique to the PIERS holders (such as subordination, subrogation, and the interplay of these concepts with various provisions of the Bankruptcy Code), even issues of more general application required independent analysis. As a result, Loeb and the PIERS Trustee necessarily also focused their attention on the claims asserted against the Debtors by numerous other parties below the PIERS in the capital structure as well as emerging arguments by the Equity Committee and others challenging the proper characterization of the PIERS claims as debt.

24. Throughout these cases, Loeb analyzed relevant pleadings and prepared its own pleadings, some of which it determined not to file, to address issues that were of particular concern to the PIERS holders.

---

Guarantee Trustee, Property Trustee, Delaware Trustee, Paying Agent, Security Registrar, Transfer Agent, Unit Agent, Warrant Agent and Exchange Agent.

8

WM1A 999258v1 05/05/11

25.     Another significant aspect of the PIERS debt is that it is held by numerous retail investors who, as the Court is aware from the numerous filings in the cases by such investors, have followed these cases closely. The PIERS Trustee and Loeb expended considerable time communicating with these and other holders throughout the cases and periodically sent notices to all holders providing updates.

26.     As the cases progressed, further attention was required to be given to the complex legal and business analyses necessary to understand, evaluate and negotiate: (i) drafts of term sheets related to plans of reorganization and related plans and disclosure statements; (ii) drafts of the global settlement agreement; (iii) various bondholder claims; (iv) subordination and subrogation issues; (v) issues pertaining to solicitation and the Rights Offering, including equitable treatment for holders; and (vi) distribution mechanics. In addition, significant time was dedicated to attending major hearings, such as the hearings to approve the disclosure statement and the confirmation hearings.

27.     The PIERS Trustee played an active role in plan negotiations and drafting.[2] This was mandated in part by the facts that, (i) as the apparent fulcrum security, it is the PIERS creditors' recoveries that are most directly impacted by numerous plan provisions, and (ii) although a significant portion of the PIERS is held by the Settlement Noteholders, a large portion is held by individual retail investors, requiring the PIERS Trustee to seek an appropriate balance between the interests of both groups of PIERS holders. Thus, the PIERS Trustee spent

---

[2] A major factor in these negotiations, perhaps more material to the PIERS holders than any other class of claimants, was attempting to bring these cases to a more rapid conclusion, as potential recoveries to the PIERS holders are most affected by the continuing delay and depletion of the assets of these estates. Indeed, since the first disclosure statement was filed, the PIERS holders' projected recoveries (as publicly stated by the Debtors in their Disclosure Statement) have decreased over 30%, while expected recoveries of other general unsecured creditors have remained at or above 100%.

considerable time throughout these cases assessing plan issues that are particular to the PIERS holders in an effort to assure a maximum and equitable recovery.

28. The PIERS Trustee engaged Fox Rothschild to represent it as local Delaware counsel. Fox Rothschild assisted in filing on behalf of the PIERS Trustee a notice of appearance, a Rule 2019 statement, various pro hac vice motions, pleadings pertaining to the disclosure statements and the plans, and certain other pleadings. Additionally, Fox Rothschild attended certain major hearings, including the disclosure statement hearings and the confirmation hearings.

29. On October 6, 2010, the Debtors filed their Sixth Amended Plan. The provision in the Sixth Amended Plan pertaining to payment of indenture trustee fees and expenses, including the PIERS Trustee, provided that such fees were to be paid in cash on the date the plan becomes effective, without the need for the filing of an application for allowance thereof.

30. On January 7, 2011, this Court issued the Opinion, in which the Court found that the Global Settlement was fair and reasonable, and also ruled that the fees of the indenture trustees, including the PIERS Trustee, and various other parties in these proceedings, should be approved by the Court as reasonable before they are paid. The Opinion also addressed several issues that are critical to the PIERS Trustee's constituents, including the proper characterization of the PIERS claims, necessitating the PIERS Trustee's continued active involvement and participation in these cases. The PIERS Trustee files this Motion in accordance with the Opinion.

31. As of March 31, 2011, the PIERS Trustee is owed approximately $2,592,857.97 in fees and expenses, which consists of: (a) $505,356.97 for fees and expenses of the PIERS Trustee, consisting of (i) $469,692.50 of trustee fees, (ii) $21,000 on account of unpaid annual

administration fees' and (iii) and $14,664.47 of expenses; (b) $2,015,458.63 for the fees and expenses of Loeb, which consist of (i) legal fees in the amount of $1,973,820.50 and (ii) expenses in the amount of $41,638.13; and (c) $ 72,041.58 for the fees and expenses of Fox Rothschild, which consist of (i) legal fees in the amount of $ 71,079.50 and (ii) expenses in the amount of $962.08. Attached hereto as Exhibit C are redacted copies of the PIERS Trustee's invoices through March 31, 2011. Attached hereto as Exhibit D are redacted copies of Loeb's invoices through March 31, 2011. Lastly, copies of Fox Rothschild's invoices through March 31, 20011 are attached hereto as Exhibit E.

## RELIEF REQUESTED

32. Section 1129(a)(4) of the Bankruptcy Code provides, in pertinent part, that, "[t]he court shall confirm a plan only if all of the following requirements are met . . . (4) Any payment made or to be made . . . by the debtor . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." 11 U.S.C. 1129(a)(4). Section 1123(b)(6) of the Bankruptcy Code provides that a plan may include any provision not inconsistent with any applicable provisions of the Bankruptcy Code. Pursuant to sections 1129(a)(4) and 1123(b)(6) of the Bankruptcy Code and in accordance with the Opinion and Section 32.12 of the Modified Plan (as hereinafter defined),[3] the PIERS Trustee respectfully seeks (a) allowance of the Fees Claim portion of the Proof of Claim, which was timely and validly filed, and (b) approval of procedures for the review and approval of the fees and expenses incurred by the PIERS Trustee from April 1, 2011 through the conclusion of these bankruptcy cases.

---

[3] The PIERS Trustee is not seeking payment at this time but rather partial allowance of its Fees Claim. Such claim would be paid in accordance with the Modified Plan or any other plan that may be confirmed by the Court.

11

## A. That Aspect of the PIERS Trustee's Proof of Claim Seeking Payment of its Fees and Expenses Should be Allowed and Partially Liquidated

33. Section 502(a) of the Bankruptcy Code provides:

> A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

11 U.S.C. § 502(a). Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that a properly executed and filed proof of claim is *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). Under the Bankruptcy Code, an indenture trustee is permitted to file a proof of claim. *See* 11 U.S.C. § 501(a).

34. Because the PIERS Trustee has a valid pre-petition contract, i.e. the PIERS Indenture, Section 607 of which authorizes payment of fees and expenses, the Fees Claim element of the Proof of Claim should be allowed and partially liquidated. *See generally, Travelers Cas. & Sur. Co. v. Pacific Gas & Elec. Co. ("Travelers")*, 549 U.S. 443, 448-54 (2007).[4]

35. The allowance of the relief requested in this Motion at this time is important to ensure a seamless and efficient distribution under the Modified Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, dated February 7, 2011 (the "**Modified Plan**"). Pursuant to Section 506 of the Base Indenture, all monies

---

[4] Since the Supreme Court decision in *Travelers*, numerous courts have regularly allowed contract-based attorney fees incurred post-petition as part of a creditor's pre-petition general unsecured claim *See, e.g., In re Sokolik*, 635 F.3d 261 (7th Cir. 2011) (allowing as a general unsecured claim for attorneys' fees and costs of collection stemming from a pre-petition contract); *Ogle v. Fidelity & Deposit Co. of Md.*, 586 F.3d 143 (2d Cir. 2009) (holding that an unsecured creditor may recover post-petition attorneys' fees that were contemplated by a pre-petition contract); *SNTL Corp. v. Centre Ins. Co.*, 571 F.3d 826 (9th Cir. 2009) (overruling bankruptcy court and allowing unsecured creditor's claim for post-petition attorneys' fees based on a pr-petition contract); and *In re Oakwood Homes Corp.*, 394 B.R. 352, 356 (Bankr. D.Del. 2008) (recognizing that, pursuant to *Travelers*, "attorneys fees authorized by prepetition contracts may be awarded even though they are incurred in post-petition

12

collected by the PIERS Trustee on account of PIERS claims for distribution must first be applied to the payment of the PIERS Trustee's fees and expenses under Section 607 before such funds may be turned over towards the payment of claims that are contractually senior to those of the PIERS holders in accordance with Article 18 of the Base Indenture. Moreover, under Section 607 of the Base Indenture, the PIERS Trustee has a lien upon all property and funds that it collects for distribution that is superior to the rights of the PIERS holders. Thus, absent the Court's determination of the reasonableness of its fees and expenses prior to distribution, the PIERS Trustee may have no choice but to exercise its charging lien and to retain sufficient funds to satisfy the PIERS Trustee's claims before surrendering any funds to senior creditors. This could delay and dilute the distribution to such senior creditors and cause unnecessary administrative complexities for the PIERS Trustee, the other indenture trustees and the Debtors, a result which the PIERS Trustee and, we believe, the Debtors, the other indenture trustees involved in these cases and their respective holders, naturally seek to avoid.

### B. The Fees and Expenses Sought Herein are Reasonable

36. The compensation provisions in the PIERS Indenture contemplate that the PIERS Trustee will expend efforts and funds in fulfilling its contractual obligations during the entire term of any debt issued thereunder, including a possible bankruptcy of the issuer. The fees and expenses incurred by the PIERS Trustee are reasonable, particularly in light of the complexity of these cases, the position of the PIERS in WMI's capital structure and the scope of the PIERS Trustee's involvement in its capacity as an indenture trustee and as a member of the Creditors' Committee.

---

litigation," but declining to permit creditor to set off its attorney fees because those particular fees were not contemplated by the pre-petition indemnity agreement).

13

37. Loeb has diligently tried to avoided duplication of services and has kept its participation to the level necessary and appropriate in light of its role as indenture trustee for the fulcrum security in this case. While Loeb generally has relied on research performed by counsel to the Creditors' Committee with respect to certain generally applicable legal issues, many issues arose (and continue to arise) throughout the cases that are particular to the PIERS holders, thus necessitating independent analysis.

38. The PIERS Trustee prepared and filed its own pleadings on behalf of the PIERS holders when appropriate and otherwise advocated for its constituency throughout the cases. This included arguing issues such as the scope of the subordination provisions of the Indenture, the characterization of the PIERS and the impact of delays in these proceedings on the potential recovery of the PIERS holders. Indeed, because the passage of time disproportionately impacts recoveries of the PIERS holders, the PIERS Trustee at all times advocated for and undertook efforts to accelerate the cases and urge a speedy resolution.

39. Moreover, in an effort to avoid unnecessary work and duplication, the vast majority of Loeb's work was performed by only two attorneys. The experience shared among them ensured that complex legal issues and important Creditors' Committee concerns were addressed effectively and efficiently. As set forth above, however, other attorneys in Loeb's corporate and litigation departments assisted with respect to certain issues that arose, including those relating to the PIERS Trustee's succession and other corporate matters.

40. The services and expenses for which compensation is sought in this Motion were necessary and beneficial to the performance of the PIERS Trustee's obligations as indenture trustee, as well as its services as a member of the Creditors' Committee. The services rendered were performed effectively, efficiently, and economically and were, and continue to be,

14

designed with the single purpose of maximizing recoveries of general unsecured and PIERS creditors. Further, the requested compensation is reasonable in light of the nature, extent and value of the services rendered. Therefore, given the circumstances of these cases, it is respectfully submitted that the fees and expenses incurred by the PIERS Trustee are reasonable.

### C. Reasonableness of Fees and Expenses Incurred After March 31, 2011 Should be Determined Without Further Motion

41. The PIERS Trustee and the other indenture trustees have incurred and will continue to incur additional fees and expenses for the period after March 31, 2011, and before the date on which distributions are made pursuant to the Modified Plan (if it is confirmed). In order to reduce the administrative burden on this Court and other parties in interest that would result from additional motion practice, Law Debenture Trust Company of New York has proposed in its motion seeking similar relief that this Court establish a streamlined procedure (the "**Fee and Expense Protocol**") for conducting a review of the reasonableness of fees and expenses incurred from April 1, 2011 through the close of these bankruptcy cases. The PIERS Trustee supports the proposed Fee and Expense Protocol and respectfully requests that the Court approve it in the manner proposed.

### NO PRIOR REQUEST

42. The PIERS Trustee has not made a previous application for the relief requested herein to this or any other Court.

### NOTICE

43. Notice of this Motion will be given to: (i) counsel to the Debtors; (ii) the Office of the United States Trustee for the District of Delaware; (iii) counsel for the Official Committee of Unsecured Creditors; (iv) counsel for the Equity Committee; and (v) electronically through the ECF system, all parties that have requested notice pursuant to Rule 2002 of the Federal Rules

of Bankruptcy Procedure. The PIERS Trustee submits that no further notice of this Motion is required.

WHEREFORE, the PIERS Trustee respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit F, (i) allowing and partially liquidating the Proof of Claim in the amount of $2,592,857.97; (ii) approving a short form procedure for approval of compensation earned by and reimbursement of ongoing fees and expenses incurred by the PIERS Trustee from April 1, 2011 through the conclusion of these bankruptcy cases; and (iii) granting the PIERS Trustee such other and further relief as the Court deems just and proper.

Dated: May 5, 2011

Respectfully submitted,

**FOX ROTHSCHILD LLP**

/s/ Neal J. Levitsky
Neal J. Levitsky, Esquire (No. 2092)
L. Jason Cornell, Esquire (No. 3821)
Seth A. Niederman, Esquire (No. 4588)
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, Delaware 19801
302.622-4200

-and-

**LOEB & LOEB LLP**
Walter H. Curchack, Esquire
Vadim J. Rubinstein, Esquire
345 Park Avenue
New York, New York 10154
(212) 407-4000

*Counsel for Wells Fargo Bank, N.A.,
in its Capacity as Indenture and Guarantee Trustee*