IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WASHINGTON MUTUAL, INC., *et al.*, | ) | |
| | ) | |
| | ) | Case No. 08-12229 (MFW) |
| | ) | |
| Debtors, | ) | |
| | ) | Jointly Administered |
| | ) | |
| | ) | Hearing Date: May 24, 2011 at 11:30 a.m. (ET) |
| | ) | Objection Deadline: May 17, 2011 at 4:00 p.m. (ET) |

**MOTION OF THE BANK OF NEW YORK
MELLON TRUST COMPANY, N.A., IN ITS CAPACITY
AS INDENTURE TRUSTEE, FOR ENTRY OF AN ORDER:
(A) PARTIALLY LIQUIDATING AND ALLOWING PROOF OF
CLAIM FOR FEES AND EXPENSES; AND (B) ESTABLISHING A
PROTOCOL FOR REVIEW OF ADDITIONAL FEES AND EXPENSES**

The Bank of New York Mellon Trust Company, N.A., as successor to The Bank of New York Trust Company, N.A., in its capacity as indenture trustee for the WMI Senior Debt (as defined below) ("**BNY Mellon**") hereby moves (the "**Motion**") pursuant to Sections 501, 502 and 1129(a)(4) of title 11 of the United States Code (the "**Bankruptcy Code**") and pursuant to this Court's Opinion dated January 7, 2011 (the "**Opinion**") (Dkt. No. 6528) denying confirmation of the above-captioned Debtors' Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code (the "**Sixth Amended Plan**"), for entry of an order: (i) providing that the proofs of claim filed by BNY Mellon on March 17, 2009 (Claim No. 1738) (the "**Original Proof of Claim**") and December 18, 2009 (Claim No. 3806) (the "**Other Proof of Claim**" and with the Original Proof of Claim, the "**BNY Mellon Proofs of Claim**") are allowed and partially liquidated to the extent that BNY Mellon incurred various fees and expenses pursuant an indenture, described below, with Washington Mutual, Inc. ("**WMI**"),

500737341v14

whereby WMI is obligated to pay BNY Mellon regular compensation as well as reimbursement for expenses incurred in the fulfillment of the trustee's obligations, including attorney and other professional fees; and (ii) approving a protocol for approval of compensation earned by, and reimbursement of ongoing fees and expenses incurred by, BNY Mellon from April 1, 2011 through the conclusion of these bankruptcy cases. In support of the Motion, BNY Mellon respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This is a core proceeding under 28 U.S.C. §157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. Pursuant to a certain Indenture, dated August 10, 1999, a First Supplemental Indenture dated August 1, 2002, and a Second Supplemental Indenture dated November 20, 2002 (together as amended and supplemented, the "**WMI Senior Debt Indenture**"), BNY Mellon is the successor trustee with regard to certain senior debt securities issued thereunder by WMI (the "**WMI Senior Debt**"). As of the Petition Date, approximately $4,121,231,000.00 in principal, plus accrued interest, was outstanding under the WMI Senior Debt Indenture.

3. The WMI Senior Debt includes (a) the Washington Mutual Inc. 4.0% Notes due January 15, 2009; (b) the Washington Mutual, Inc. 4.2% Notes due January 15, 2010; (c) the Washington Mutual, Inc. 5.0% Notes due March 22, 2012; (d) the Washington Mutual, Inc. 5.25% Notes due September 15, 2017; (e) the Washington Mutual, Inc. 5.5% Notes due August 24, 2011; (f) the Washington Mutual, Inc. Floating Rate Notes due August 24, 2009; (g) the Washington Mutual, Inc. Floating Rate Notes due January 15, 2010; (h) the Washington Mutual,

Inc. Floating Rate Notes due March 22, 2012; and (i) the Washington Mutual, Inc. Floating Rate Notes due September 17, 2012.

4. Section 6.7 of the WMI Senior Debt Indenture requires WMI "to pay the Trustee from time to time reasonable compensation for all services rendered by it hereunder" and to "reimburse the Trustee upon its request for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of this Indenture (including the reasonable compensation and the expenses and disbursements of its agents and counsel)...." Section 6.7 also provides: "[a]s security for the performance of the obligations of [WMI], the Trustee shall have a lien prior to the Securities upon all property and funds held or collected by the Trustee as such" except for funds held in trust for payment of principal or interest on particular securities.

5. WMI and WMI Investment Corp. (together, the "**Debtors**") commenced these cases on September 26, 2008 (the "**Petition Date**") by filing voluntary petitions under chapter 11 of the Bankruptcy Code. The Debtors have continued to operate their businesses and manage their affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6. On October 15, 2008, the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors (the "**Creditors' Committee**"). BNY Mellon was appointed as a member of the Creditors' Committee on such date.

7. BNY Mellon retained the law firm of Pillsbury Winthrop Shaw Pittman LLP ("**Pillsbury**") to act as its primary legal counsel during the bankruptcy proceedings. BNY Mellon also subsequently retained Rosenthal, Monhait & Goddess, PA ("**Rosenthal**") as its Delaware counsel.

500737341v14

8. On March 17, 2009, BNY Mellon timely filed its Original Proof of Claim asserting, among other things, principal and interest due under the WMI Senior Debt Indenture as well as compensation and indemnity due thereunder. A copy of the Original Proof of Claim is attached hereto as Exhibit A.

9. On November 17, 2009, the Debtors and BNY Mellon entered into a stipulation (the "**Claims Stipulation**") whereby the parties agreed on the allowed amounts of the principal component of the claim for the WMI Senior Debt plus the accrued pre-petition interest due.

10. Thereafter, on December 18, 2009, BNY Mellon filed its Other Proof of Claim as requested by the Debtors and in accordance with the Claims Stipulation. A copy of the Other Proof of Claim is attached hereto as Exhibit B. In the Other Proof of Claim, BNY Mellon reiterated its claims with respect to the continuing accrual of interest with respect to the applicable debt securities and compensation and indemnity owed to BNY Mellon.

11. BNY Mellon has served in its capacity as indenture trustee under the WMI Senior Debt Indenture both prior to and since the Petition Date. BNY Mellon continues to perform its obligations as required by the WMI Senior Debt Indenture while participating in the resolution of these bankruptcy cases in its own right and as a member of the Creditors' Committee. Under the WMI Senior Debt Indenture, BNY Mellon is entitled to compensation for performing its obligations. A detailed description of BNY Mellon's involvement and participation in these cases is provided in further detail below.

12. Gary Bush, a Vice President at The Bank of New York Mellon in the Default Administration Group of the Global Corporate Trust Unit, performed the majority of work on behalf of BNY Mellon. Among other things, Mr. Bush participated in weekly Creditors' Committee calls as well as numerous meetings with the Debtors, and other parties regarding the

global settlement agreement and the plan process. Mr. Bush also reviewed pleadings filed on behalf of the Creditors' Committee and extensively analyzed various drafts of the plan, related disclosure statements, and the global settlement agreement. With rare exceptions, Mr. Bush attended every Creditors' Committee meeting or conference call, and generally, on those few occasions Mr. Bush was unable to participate, one of his colleagues filled in for him.

13. In addition to the default administration fees for the work described above, BNY Mellon is also entitled to annual administration fees ranging from $5,500 to $7,200 per series, for an aggregate amount of $127,591.25 through March 31, 2011. BNY Mellon's analytics group also spent time reviewing the Debtors' post-petition and original issue discount (OID) calculations. The fees owed relating to that review are $3,000.

14. The vast majority of Pillsbury's services was performed by only two attorneys, Leo T. Crowley, a partner at the firm, and Margot P. Erlich, a senior associate. Both attorneys have substantial experience representing indenture trustees in large, complex cases, including the bankruptcy cases of Delta Air Lines Inc., Trans World Airlines, Inc. and Federal-Mogul Corp., as well as many others.[1] With rare exceptions, each event in the case (e.g. court appearances, meetings, conference calls) was covered by just one of them. On occasion, they sought assistance from junior-level associates and paraprofessionals to handle the less complex legal issues as well as various administrative and other small matters.

15. Early on in these proceedings significant time and effort was spent analyzing complex legal issues and reviewing various corporate documents relevant to these bankruptcy cases and specifically to the WMI Senior Debt, as well as participation in weekly conference calls with the Creditors' Committee and meetings with, among others, the Debtors, JPMorgan

---

[1] For example, Taylor Bean & Whitaker Mortgage Corp.; Imperial Capital Bancorp Inc.; American Home Mortgage Investment Corp.; and U.S. Airways Group, Inc.

Chase Bank, N.A. ("**JPMC**"), the Federal Deposit Insurance Corporation ("**FDIC**"), in its capacity as receiver for Washington Mutual Bank, and certain noteholder groups. BNY Mellon was also responsible for procuring successor trustees for the WMI Subordinated Debt[2] and the WMI PIERS Debt[3] and preparing the necessary documentation to transition those trusts to the successor trustees. Pillsbury spent time preparing various notices to holders regarding the status of these cases. In addition, Pillsbury prepared the BNY Mellon Proofs of Claim and negotiated the Claims Stipulation.

16. BNY Mellon relied in the first instance on counsel to the Creditors' Committee to perform most of the legal research required in order to avoid duplication of services. In that regard, BNY Mellon, through Pillsbury, reviewed a myriad of legal memoranda prepared by counsel to the Creditors' Committee on wide-ranging issues related to potential causes of action against and by, among others, JPMC, the FDIC, as well as other components of the Debtors' bankruptcy process.

17. As the cases progressed, more attention was given to complex legal analysis, including analyzing: (i) drafts of bankruptcy plans and related disclosure statements; (ii) drafts of the global settlement agreement; (iii) various bondholder claims; and (iv) subordination provisions. In addition, more time was dedicated to attending (and, as appropriate, participating in) major hearings, such as the hearings to approve the disclosure statement and the plan confirmation hearings.

18. BNY Mellon engaged Rosenthal in the spring of 2010 to assist initially in filing an objection to the disclosure statement. Thereafter, Rosenthal assisted in filing a notice of

---

[2] The WMI Subordinated Debt includes the Washington Mutual, Inc. 8.25% Subordinated Notes due 2010; the Washington Mutual, Inc. 4.625% Subordinated Notes due 2014; and the Washington Mutual, Inc. 7.25% Subordinated Notes due 2017.

[3] The WMI PIERS Debt is the 5.375% Junior Subordinated Deferrable Interest Debentures due 2041.

appearance, Rule 2019 statement, various pro hac vice motions, a supplemental disclosure statement objection, and a statement in connection with confirmation on BNY Mellon's behalf. Additionally, a Rosenthal attorney attended certain major hearings, including the various disclosure statement hearings and the confirmation hearing.

19. On October 6, 2010, the Debtors filed their Sixth Amended Plan. The foundation of the Sixth Amended Plan was a global settlement between the Debtors, JPMC, the FDIC, the Creditors Committee, as well as certain noteholders, resulting in roughly $7.5 billion of total proceeds available for distribution. The provision in the Sixth Amended Plan pertaining to payment of indenture trustee fees and expenses, including BNY Mellon, provided that such fees were to be paid in cash on the date the plan becomes effective, without the need for the filing of an application for allowance thereof. The Sixth Amended Plan contemplated full recoveries (including post-petition interest) to almost all of the classes of creditors, including the WMI Senior Debt.

20. On January 7, 2011, this Court issued its Opinion with respect to the Debtors' Sixth Amended Plan. While the Court denied confirmation of the Sixth Amended Plan, the Court found that the Global Settlement was fair and reasonable, but also ruled that the fees of the indenture trustees, including BNY Mellon, and various other parties in these proceedings, be approved by the Court as reasonable before they are paid. BNY Mellon files this Motion in accordance with the Opinion.

21. As of March 31, 2011, BNY Mellon is owed approximately $1,560,712.22 in fees and expenses, which includes $359,671.25[4] for BNY Mellon as indenture trustee, $1,181,905.62 for Pillsbury as counsel, and $19,135.35 for Rosenthal as Delaware counsel.

---

[4] This aggregate amount includes $127,591.25 in annual fees, $229,080 in default administration fees, and $3,000 owed to analytics group, all as described in paragraphs 12 and 13 above.

7

Attached hereto as Exhibit C are copies BNY Mellon's time records. Attached hereto as Exhibit D are redacted copies of Pillsbury's invoices through March 31, 2011.[5] Lastly, copies of Rosenthal's invoices through March 31, 2011 are attached hereto as Exhibit E.

## ARGUMENT

22. Section 1129(a)(4) of the Bankruptcy Code provides, in pertinent part, that, "[t]he court shall confirm a plan only if all of the following requirements are met . . . (4) Any payment made or to be made . . . by the debtor . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." 11 U.S.C. §1129(a)(4). For this reason, as noted above, the Opinion requires that the fees of the indenture trustees, including BNY Mellon, and various other parties in these proceedings, be approved by the Court as reasonable before they are paid.

### A. The BNY Mellon Proofs of Claim Should Be Allowed and Partially Liquidated

23. Section 502(a) of the Bankruptcy Code provides:

> A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

11 U.S.C. § 502(a). Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that a properly executed and filed proof of claim is *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). Under the Bankruptcy Code, an indenture trustee is permitted to file a proof of claim. *See* 11 U.S.C. § 501(a).

---

[5] Although Pillsbury's invoices through March 31, 2011 total $1,188,191.62, BNY Mellon is only requesting payment of $1,181,905.62. The reduction of $6,286 is due to several time entries at the beginning of these cases that relate to time billed unrelated to the WMI Senior Debt that were inadvertently charged to this account.

8

500737341v14

24.     Because BNY Mellon has a valid pre-petition contract, i.e. the WMI Senior Debt Indenture, which authorizes payment of fees and expenses and these cases involve solvent estates, the BNY Mellon Proofs of Claim should be allowed and partially liquidated. *See generally, Travelers Cas. & Sur. Co. v. Pacific Gas & Elec. Co.* ("***Travelers***"), 549 U.S. 443, 448-54 (2007).[6] BNY Mellon hereby seeks partial allowance of the BNY Mellon Proofs of Claim, which were timely and validly filed.[7]

25.     In addition, the timing of BNY Mellon's motion is crucial to a seamless and efficient distribution under the Debtors' Modified Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, dated February 7, 2011 (the "**Modified Plan**"). Under Section 6.7 of the WMI Senior Debt Indenture, BNY Mellon has a lien upon all property and funds collected that is superior to the rights of the noteholders. Since the Debtors' general unsecured creditors will receive payment in full if the Modified Plan is confirmed, BNY Mellon is entitled to full payment of its claim without the need to enforce its charging lien. But, absent the Court's determination of the reasonableness of its fees and expenses prior to distributions to holders of the WMI Senior Debt, BNY Mellon may have no practical choice but to exercise its charging lien. This could delay and dilute the distribution to such holders, a result which BNY Mellon seeks to avoid.

---

[6] Since the Supreme Court decision in *Travelers*, most courts have allowed pre-petition unsecured claims seeking fees and expenses incurred post-petition (where there is a non-bankruptcy entitlement (e.g. contract or statutory)). *See Busson-Sokolik v. Milwaukee Sch. of Eng'g*, 635 F.3d 261 (7th Cir. Feb. 10, 2011) (allowing contract claim for attorneys' fees and collection costs pursuant to student loan promissory note); *Ogle v. Fidelity & Deposit Co. of Md.*, 586 F.3d 143 (2d Cir. 2009) (holding that an unsecured creditor may recover post-petition attorneys' fees based on applicable state statute); *SNTL Corp. v. Centre Ins. Co.*, 571 F.3d 826 (9th Cir. 2007) (allowing unsecured creditor claim for attorneys' fees); *Kilborn v. Brandon Haun (In re Haun)*, 396 B.R. 522 (Bankr. D. Ida. 2008) (allowing claim for post-petition attorneys' fees based on state statute); *In re Smith*, No. 06-60768, 2008 BL 16121 (Bankr. W.D. Mo. Jan. 19, 2008) (unsecured creditor entitled to contract-based attorneys' fees incurred post-petition); *In re QMect, Inc.*, 368 B.R. 882 (Bankr. N.D. Cal. 2007) (unsecured creditor entitled to include its contract-based attorneys' fees incurred post-petition in its pre-petition claim); *but see In re Elec. Machs. Enters., Inc.*, 371 B.R. 549 (Bankr. M.D. Fla. 2007) (disallowing unsecured creditor's pre-petition claim for post-petition attorneys' fees).

26. The provision of the WMI Senior Debt Indenture providing for compensation to BNY Mellon for services rendered and reimbursement of expenses, disbursements and advances entitles BNY Mellon to payment for such compensation and expenses incurred both pre-petition and post-petition as part of its allowed claim against WMI.

### B. The Fees and Expenses Sought Are Reasonable

27. The compensation provision in the WMI Senior Debt Indenture contemplates that BNY Mellon will expend efforts and funds in fulfilling its contractual obligations during the entire term of any debt issued thereunder, including a possible bankruptcy of the issuer. The fees and expenses incurred by BNY Mellon are reasonable, particularly in light of the complexity of these cases and the scope of BNY Mellon's involvement in its capacity as an indenture trustee and as a member of the Creditors' Committee.

28. BNY Mellon has vigilantly avoided duplication of services and has kept its participation to the level necessary and appropriate in light of its role as trustee for over $4 billion of WMI Senior Debt. It relied on counsel to the Creditors' Committee in appropriate circumstances to perform the legal research required, and generally limited its participation to higher level review and analysis of the various legal issues and drafts of pleadings prepared by counsel to the Creditors' Committee. BNY Mellon also filed its own pleadings on behalf of the WMI Senior Debt when appropriate for BNY Mellon's constituency.

29. Moreover, in an effort to avoid unnecessary work and duplication, the vast majority of Pillsbury's work was performed by only two attorneys. The experience shared among them ensured that complex legal issues and important Creditors' Committee concerns

---

[7] The substantial contribution standard set forth in Section 503(b) of the Bankruptcy Code is not applicable here and therefore BNY Mellon has not attempted in this Motion to satisfy that standard.

500737341v14

were addressed effectively and efficiently. In addition, certain time was written off, including time spent by summer law clerks on matters related to these cases.

30. The services and expenses for which compensation is sought in this Motion were necessary and beneficial to the performance of BNY Mellon's obligations as indenture trustee, as well as a member of the Creditors' Committee. The services rendered were performed effectively, efficiently, and economically. Further, the requested compensation is reasonable in light of the nature, extent and value of the services rendered. Therefore, given the circumstances of these cases, it is respectfully submitted that the fees and expenses incurred are reasonable.

### C. Reasonableness of Fees and Expenses Incurred After March 31, 2011 Should Be Determined Without Further Motion

31. BNY Mellon and the other indenture trustees have incurred and will continue to incur additional fees and expenses for the period after March 31, 2011, and before the date on which distributions are made pursuant to the Modified Plan (if it is confirmed). In order to reduce the administrative burden on this Court and other parties in interest that would result from additional motion practice, BNY Mellon respectfully requests that this Court establish a streamlined procedure (the "**Fee and Expense Protocol**") for conducting a review of the reasonableness of indenture trustees' fees and expenses incurred from April 11, 2011 through the close of these bankruptcy cases. BNY Mellon proposes the following Fee and Expense Protocol:

- After the occurrence of the Effective Date (as defined in the Modified Plan), any party requesting payment of a Trustee Claim or a Trustee Distribution Expense (each as defined in the Modified Plan) may complete and submit a written request, substantially in the form annexed to the proposed order attached hereto as <u>Exhibit F</u>, for approval by this Court of the fees and expenses incurred for the stated period (an "**Approval Request**"). For the convenience of the Court and other parties in interest, no party shall submit more than one Approval Request per month (and parties may file Approval Requests with less frequency if they so choose).

- Each Approval Request shall be filed on the docket of these cases, include all corresponding billing entries to support the amounts claimed, and

11

served by overnight mail or hand delivery on the Office of the United States Trustee for the District of Delaware and counsel to the Debtors or, if applicable, counsel to the Liquidating Trustee (as defined in the Modified Plan).

- Any party that disputes the reasonableness of the fees and expenses set forth in an Approval Request shall have 10 days from the date of the Approval Request to object. Each objection shall be: (a) in writing, stating with particularity the grounds therefor, including whether the objecting party objects to all or only a portion of the fees and expenses requested, (b) filed on the docket of these cases, and (c) served on counsel to the party that submitted the Approval Request and the parties listed above.

- Upon receipt of an objection, the party that submitted the Approval Request shall schedule a hearing at the convenience of the Bankruptcy Court and provide not less than 10 days' notice of the hearing to all parties in interest.

- If no objection is made within 10 days, the party submitting the Approval Request shall submit a certificate of no objection in accordance with the Local Rules of the Bankruptcy Court. Upon receipt of the certificate, this Court may either enter an order granting the Approval Request (which order, substantially in the form annexed to the proposed order attached hereto as Exhibit F, will serve as a determination of the reasonableness of the requested fees and expenses) or scheduling a hearing thereon. The Disbursing Agent shall pay all fees and expenses that the Court determines are reasonable in accordance with the terms of the Modified Plan.[8]

32. These cases are ongoing and BNY Mellon continues to incur post-petition costs in performing its contractual obligations in accordance with the WMI Senior Debt Indenture. The Fee and Expense Protocol will aid in the efficient administration of these cases by providing a streamlined procedure for this Court to assess the reasonableness of the fees and expenses that will be incurred by BNY Mellon after March 31, 2011. BNY Mellon respectfully submits that requiring parties to engage in further motion practice to obtain allowance and liquidation of their as-yet unliquidated claims for fees and expenses would create an unnecessary cost to these estates. Therefore, it is to the benefit of all interested parties that BNY Mellon seek periodic

---

[8] For the convenience of the Court, BNY Mellon, through counsel, has consulted with the other indenture trustees to prepare a single, uniform Fee and Expense Protocol.

partial liquidation and allowance of the BNY Mellon Proofs of Claim by complying with the proposed Fee and Expense Protocol.

## NO PRIOR REQUEST

33. BNY Mellon has not made a previous application for the relief requested herein to this or any other Court.

## NOTICE

34. Notice of this Motion will be given to: (i) counsel to the Debtors; (ii) the Office of the United States Trustee for the District of Delaware; (iii) counsel for the Official Committee of Unsecured Creditors; (iv) counsel for the Equity Committee; and (v) all parties that have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. BNY Mellon submits that no further notice of this Motion is required.

WHEREFORE, BNY Mellon respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit F, (i) allowing and partially liquidating the BNY Mellon Proofs of Claim in the amount of $1,560,712.22; (ii) approving a short form procedure for approval of compensation earned by and reimbursement of ongoing fees and expenses incurred by BNY Mellon from April 1, 2011 through the conclusion of these bankruptcy cases; and (iii) granting BNY Mellon such other and further relief as the Court deems just and proper.

500737341v14

Dated: May 5, 2011

Respectfully submitted,

/s/ Norman M. Monhait
Norman M. Monhait (No. 1040)
ROSENTHAL, MONHAIT & GODDESS, PA
Citizens Bank Center, Suite 1401
919 Market Street, P.O. Box 1070
Wilmington, DE 19899
Telephone: (302) 656-4433
Facsimile: (302) 658-7567

And

Leo T. Crowley
Margot P. Erlich
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036
Telephone: (212) 858-1000
Facsimile: (212) 858-1500

*Attorneys for The Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee for the WMI Senior Debt*