## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

**WASHINGTON MUTUAL INC., et al.**
**Debtors.**

Chapter 11
Case No. 08-12229 (MFW)

Objection Deadline: 5/13/11 at 4:00pm E.t.
Hearing Date:      6/6/11 at 9:30am E.t.

From:   Stephan Meier
        Schwanseestraße 52
        99423   Weimar
        Germany / Thuringia



To:     **The Honorable Judge Mary F. Walrath**
        United States Bankruptcy Court
        District of Delaware
        824 Market Street, 5th Floor
        Wilmington, DE 19801

**Objection** of      Stephan Meier       to the Confirmation of the Debtor's Modified Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code as dated/filed of February 08th 2011 (cf. Docket Number 6696) *and in consequence of it* **Motion**  for an Order defining a specific roadmap

Dear Honorable Judge Walrath,

I am a shareholder and member of United Equity International from Germany / Thuringia holding Washington Mutual Equity. I am a pro se objector and a party of interest in this Case.

I object to the most recent amended 6th Plan of Reorganization (for the sake of brevity in the following: the "Plan") based on the following:

**I.1** The above mentioned Plan cannot be confirmed, it should be DENIED.

**I.2** MOTION for an Order defining a specific roadmap to enhance evidence by *first* finishing the *Discovery* of the Settlement Noteholders, according to the Court's order, proceeding and finishing *valuation hearing* on all matters related to the Estate, and *then* appointing, proceeding and finishing a *confirmation hearing*.

## II.1. Legal Basis

The Rules of Chapter 11 resp. Federal Rules of Bankruptcy Procedures express inter alia that:

(a) This Court has jurisdiction to consider this Objection.

(b) The Objection to confirmation of a proposed plan of reorganization is admissible under 11 U.S.C. § 1128(b) and Federal Rules of Bankr. Procedures § 3020(b)(1).

In particular:

(c) "After notice, the Court shall hold a hearing on confirmation of a plan.", 11 U.S.C. § 1128(a).

(d) "A *party in interest* may object to confirmation of a plan.", 11 U.S.C. § 1128(b).

(e) The "Objection to Confirmation" of a proposed Plan or reorganization is governed by Rule 9014 and "shall be filed and served on the Debtor, the Trustee, the proponent of the plan, any Committee appointed under the Code and any other entity designated by the Court, within a time fixed by the court.", 11 U.S.C. § 1128(b) and Fed. R. Bankr. P. § 3020(b)(1).

(f) The Court may confirm a plan under Chapter 11 <u>only if</u> each of the thirteen enumerated requirements of 11 U.S.C. § 1129(a) are met. A limited exception is made if the requirements of 11 U.S.C. §1129(a)(8) (requiring acceptance by all impaired classes of claims or interests) is not met, permitting confirmation under 11 U.S.C. § 1129(b) (the "cram-down" provision) if the provisions of that subsection are met.

(g) "The Court shall rule on confirmation of the plan after notice and hearing as provided in Rule 2002. If no objection is filed, the Court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.", Fed. R. Bankr. P. § 3020(b)(2).

However the Court has an independent duty to determine whether a plan complies with the appropriate sections of the Bankruptcy Code even if no objection is filed [*In re* Genesis Health Ventures, Inc. 22B.R. 591 (Bankr.D.Del.2001)].

## II.2 Background, relevant Documents

*The Debtors* have filed among others the following documents ...

1) Supplemental Disclosure Statement for the Modified Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, **dated/filed February 08, 2011** (Docket Number 6697)

2) **Modified** Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, **dated/filed February 08, 2011** (cf. Docket Number 6696)

3) **Revised** Supplemental Disclosure Statement for the Modified Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, **dated March 16, 2011** (Docket Number 6966)

4) **Modification** of the Modified Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, **filed March 16, 2011** (Docket Number 6964)

5) **Second Modification** of Modified Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code **dated/filed March 25, 2011** (Docket Number 7038) resp.

6) **Second Modification** of Modified Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code **dated/filed March 26, 2011** (Docket Number 7040)

7) **Revised Supplemental** Disclosure Statement for the Modified Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code (docketed on the kccllc-Server as **Solicitation Version** of Revised Supplemental Disclosure Statement and Composite Modified Sixth Amended Plan)

8) **Plan Supplement** in Support of Modified Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code **dated/filed April 28, 2011** (Docket Number 7217).

*Additionally* the following Documents have been considered in preparing the objection:

**(A)** Objection to the Government Examiner Not Investigating Crucial Issues Needed for Resolution of the Case and the Proposed Plan of Organization of Washington Mutual Filed by Sankarshan Acharya **filed November 15, 2010** (Docket Number 5912)

**(B)** Objection to Modified Sixth Amended Joint Plan Filed by William Duke **filed April 28, 2011** (Docket Number 7215)

**(C1)** The Official Committee of Equity Security Holders' Petition, Pursuant to 11 U.S.C. § 105(a), 28 U.S.C. § 158(d)(2), and Fed. R. Bankr. P. 8001(f), for Certification of Direct Appeal to the Untied States Court of Appeals for the Third Circuit of the Opinion and Order Denying Plan Confirmation **filed January 19, 2011** (Docket Number 6575)

**(C2)** Motion to Shorten Notice and Schedule Hearing on the Official Committee of Equity Security Holders' Petition, Pursuant to 11 U.S.C. § 105(a), 28 U.S.C. § 158(d)(2) and Fed. R. Bankr. P. 8001(f), for Certification of Direct Appeal to the United States Court of Appeals for the Third Circuit of the Opinion and Order Denying Plan Confirmation **filed January 19, 2011** (Docket Number 6576).

*The Court* has issued the ...

9) **Opinion** Denying Confirmation of Sixth Amended Plan of Reorganization **dated/filed January 7**, 2011 (Docket Number 6528)

10) **Order** (I) Approving the Proposed Supplemental Disclosure Statement and the Form and Manner of the Notice of the Proposed Supplemental Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling A Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Modified Plan, **dated/filed March 30, 2011** (Docket Number 7081).

### III. Reasons for Objection

**1. Challenging and Revocation of the Confirmation Order upon fraudulent fundamentals**

Following the Rule 11 U.S.C. § 1144, an Order of Confirmation of a Plan may be revoked before 180 days after the date of the entry of the Order if and only if such order was procured by fraud, i.e. when the Plan based on fraud *and* there is a appropriate *Motion* of a party in the Case.

Considering the huge amount of the above mentioned deficiencies of the Plan, one can anticipate with a high certainty that in the event of confirmation of the Plan, the *Motion* of Revoking the Order of Confirmation will be issued by one or more involved parties which may also be reflected by broad releases.

Discussing only the facet called "Constructive Fraud", one can adhere:

Since it can be verified easily from the very compilation of the voting classes of the Plan, that "*Impaired Classes*" exist, the Debtors should have *never* be permitted to

transfer the Tax Returns originating from the *Homeowners Act, Nov. 2009,* – not even in partial amount – to JPMC or the FDIC.

Both, JPMC and the FDIC, were *expressly not authorized by the law in force* to receive such tax refunds.

This **by oneself** is sufficient enough to challenge the Confirmation of the Plan.

Thereby it is *not yet considered* the ...

- **hiding or disappearance** of a relevant percentage of the VISA-shares,

- **the shady transfer** of the BOLI/COLI to JPMC,

- **manipulated** NOLs,

- **concealed** tangible or intangible assets, like subsidiaries, and

- **illegally**, before the face of the Court, **sold** assets, e.g. airplanes.

Concluding from the above, should this bankruptcy procedure still maintain being abused by the Debtors – notwithstanding of the *high evidence* of the *fraudulent fundament the Plan based* – and still neglect further discovering and examination attempt by the Court of the huge amount of deficiencies which characterize the Plan as being its keystones – and confirm the Plan regardless of the consequences, *then* the Court itself is being complicit on dissipation of the legal Estate.

Is hiding, shady transferring, manipulating, concealing and illegally acting really fair and reasonable?

2. An issue of great uncertainty – and in consequence degrading in a not negligible amount any *evidence* of fair and reasonable valuation and processing – is the result of **specific claims**. Either an Entity has a claim or not. But there are claims, which have been deemed being disallowed but coupling them to the option to resurrect them. This cannot be accepted to proceed with pending Claims and to progress a Chapter-11-Case of reorganization with those claims being „reactived"– on demand, e.g. when the shareholders 'impend' again to be "in the money". Concluding, this Debtor's action is not fair and reasonable, and due to lack of proof and transparency.

3. **Withdrawal of Equity Committee Proceedings**
Please cf. to Doc. (7), p. 139, item "V. P.18.": "On the Effective Date, the Equity Committee Adversary Proceeding and the Equity Committee Action to Compel, and any other proceeding or action instituted by the Equity Committee (including any appeal), shall be deemed withdrawn, with prejudice, without any further action."

Since this apodictic-appearing wording using "with prejudice", which may *in general* indeed comply with the Bankruptcy Rules, does not take into account, that there has to be a restriction due to the huge amount of to date unanswered questions w.r.t. the alleged *Wilful Misconduct, Fraud and Fraudulent Transfers* of some kind of Assets, which have been *not* sorted out in this *special* Bankruptcy *Case* No. 08-12229 (MFW); there *must* be added a textual part indicating that *these legal processes* are still *not* deemed to be withdrawn on and upon the Effective Date but they are *allowed* under such circumstances of *Wilful Misconduct, Fraud and Fraudulent Transfers.*

This is a further audacious attempt by the Debtors ignoring the law and getting granted releases without involvement of the entitled parties.

A one-side enforcement of interests should never be considered as being fair and reasonable.

4. **Appointment of the Creditors' Committee**
Please cf. to Doc. (7), p. 46, item "IV. D.2." (included into the Plan by link only): "Section 1102 of the Bankruptcy Code requires that as soon as practicable after the commencement of a chapter 11 case, the United States Trustee shall appoint an official committee of unsecured creditors. On October 15, 2008, the U.S. Trustee appointed the following members to form the Creditors' Committee: The Bank of New York Mellon Trust Company, N.A., Law Debenture Trust Company of New York, Wells Fargo Bank, N.A., and Wilmington Trust Company."

The question arising from this, *why* has the Escrow Account just been kept at Wells Fargo Bank, N.A.? Wells Fargo Bank, N.A., is a *member* of the Creditor's Committee! The Account should be kept at a Bank, which engages a *neutral* position. Additionally, there may be a significant *clash of interest* which at least lead to not fair and reasonable practices. Without being cynical there are more reliable banks left even though the FDIC has been very active whereas for the purpose of transparency and in order to avoid any future disruptions the debtors should have chosen a bank which would have been considered to be more neutral.

5. Similar an **amended detailed valuation of the NOLs** should arise from the following discrepancies between statements within the Doc. (8), "Form of Certificate of Incorporation of Washington Mutual Inc."as given on page 71, footnote 2, where it is determined, that *beside* the unknown amount of shares, which shall be offered to Bondholders at Effective Date, further 50 Mio. shares shall be issued at a later stage, in particular, top of page 72 and in addition 5 Mio Preferred shares. *In contrast to this*, within the Valuation Analysis of the supplement to the POR, please cf. the Doc. (7) Exhibit E, pdf-page 910, it has been determined, that it will be assumed, that the reorganized WMI does not raise further capital: "*Of note, the Updated Projections do*

*not take in account the possibility of the Debtors raising future capital, whether equity or debt, and the potential future taxable income stream that could be generated from investment of that capital".* Concluding from this, if the reorganized WMI would possess for safety reasons a granted capital, the consequence would be *a higher valuation of the NOLs*. Concluding, this Debtor's action leaves many questions by non-correctly applying adequate valuation methods.

6. The **valuation of intellectual properties** (for the sake of brevity in the following abbreviated as IP) is a very important topic. Their importance in bankruptcy proceedings has also become critical. It has to be sorted out *how* the bankruptcy system interacts with IP. As these assets have appreciated, sometimes becoming a company's most valuable assets it appears that there is a <u>lack on evidence of proper if any valuation of it</u> since there is only an affixed underestimation of evaluation as expressed by repeating used diluting wordings like *"certain* intellectual properties". The "certain" does NOT demonstrate the alleged intention of the Debtors to show a concrete and precise value or at least a bandwidth of it. It appears, that the complexity of statutes like the Patent Act, Copyright Act, and the Bankruptcy Code has led to serious mis-interpretation and mis-valuation. One need to understand *how* the statutes interact with each other and with various state laws, which interaction seem to be *not* sufficiently enough be treated by the Debtors IP-asset 'valuation'.

*In re* Paolo Gucci (126 F.3d 380) and due to the Bankruptcy Code's definition of "intellectual property" which does not include trademarks [the 11 U.S.C. § 101(35)(A) defines IP including patents, copyrights, trade secrets, and semi-conductor mask works], the order of the district court that affirmed the bankruptcy court's determination of Guccio Gucci's status as a *good faith purchaser* within the meaning of § 363(m) could be applied to the kind of purchase of patent and non-trademarks to JPMC: This IP-transfer and purchase of those assets by JPMC should be considered therefore as being *not* in good faith since their respective value was potentially underestimated applying to date non-transparent valuation.

*Additionally* it should be mentioned, that in the recent Documents of Perkins Coie LLP on the kccllc-Server there are blackened fields indicating in the context of meetings, that there were and are important and confidential talks on future usage of trademarks, patents et cetera of IP matters, *possibly knowing and embracing some concrete amount of value of this industrial property rights*. These talks may be related to usages of them by JPMC or the reorganized WMI - And there is to date <u>no</u> indication w.r.t. the – additional – amount of regular or irregular licence earnings of WMI nor knowledge whether there exist potential patent infringement damage and resulting returns; therefore it is a high-profile purpose of IP valuation to compute damage award in an virtual or real infringement lawsuit.

*Concluding*, it appears to me – which is less beneficial to transparency, understanding and therefore by the law of logics less beneficial to the required rationale of evidence – that in bankruptcy law the valuation of IP is a matter of free, less founded and traceable assignation, which is in *contrast* to <u>intellectual property law</u>. When

companies reorganize and they sell their IP – including also what they have licensed – a number of prickly and difficult legal issues will arise. This should be avoided by a proper and transparent valuation hearing on this matter- before *a confirmation hearing proceeds. Since there has been no transparent disclosure for the above presented it will result in a tremendous amount of questions as also this matter lacks of evidence.*

## IV. Confirmation Criteria

It is stated in the Court's Opinion (please cf. Doc. **(9)**, page 14): "The Plan Objectors argued at the confirmation hearing that because the Debtors' principal negotiators of the *Global Settlement* represented JPMC in other matters, they were reluctant to push for the best possible deal for the estate. The Debtors and their representatives vigorously deny this and contend that the allegations are a "sideshow" to divert attention from the real issues in the case. The Plan Objectors presented no evidence to support their contentions, *however, and the record in this case refutes the suggestion that the Debtors' professionals acted in any manner other than in the best interests of the estate*. ..."

And in addition it is stated in the Court's Opinion (please cf. again Doc. **(9)**, page 17): "... In making its evaluation, the court must determine whether "the compromise is fair, reasonable, and in the best interest of the estate." ... The court does not have to be convinced that the settlement is the best possible compromise, *but only that the settlement falls within a reasonable range of litigation possibilities*. ...". Even this as set forth below an in view of the intellectual properties is not the case.

This *reasonable range of litigation* depends surely on *how* evident and reasonable a matter has been performed before the Court. It is obviously related to the Rule as given under chapter "II.1.(g)", Legal Basis, of this objection. The answer to the question: *how* can it be assured, that "*the compromise is fair, reasonable, and in the best interest of the estate*"?- is obviously strongly related to mediate a *balance* between a Settlement Agreement as being fair and reasonable *which is simultaneously* in the *best interest of the Estate*. Such kind of Settlement should involve ALL the parties having their interests *and* the interest of the Estate in particular; i.e. under participation of the Equity Committee even though as to date there appears to be no contribution for shareholders or at least very minor.

**Therefore, the EC should participate directly in negotiations on settlement matters to help creation of such balance.**

The creation of such required *balance* runs the risk of being scotched, when the great lot of the bankruptcy proceeding perpetuating matters is protected by the Debtor's *Attorney-Client Privilege* or *Attorney Work-Product*- i.e. not discoverable (please cf. again Doc. **(9)**, e. g. page 22); this impression forces everyone who has been repeatingly asked for a valuation of amounts of specific matter. Notwithstanding or assuming there can – possibly but not

...

necessarily – be *no generic answer* given, *when* and *under which* circumstances such "Attorney-Client Privilege" will be withdrawn when major interests shall antecede. But there may be a solution to 'circumnavigate' this problem and to boost the creation of the required *"balance"*: It is the appointment of a **valuation hearing** as foreseen by the Bankruptcy Rules and which could give the answers of the Parties open questions, in particular answers to the questions of the **Equity Committee** to create and/or enhance evidence in certain matters- being in <u>*better interests of the estate*</u> than actually made belief by the Debtors.

*Additionally*, as long as the Court's Order for production of Documents by the Settlement Noteholders to create and enhance evidence by answering important basic questions is not fulfilled, a Plan confirmation meeting as such seems to be not reasonable since there is a high potential that the *Global Settlement Agreement* (GSA) becomes majorly affected if not even nil and void, the assumed interest rates become obsolete if the Plan in all becomes destroyed due to a *non-sustainable* GSA et cetera. The consequences of this should be clear for all involved parties.

From a Case's procedural-economical point of view – and moreover, to save time <u>*and*</u> the Estate's cash, which *as such* is in a good interest of the Estate – it should be proceeded as follows:

<u>First</u>, proceed and finish the *discovery* of the Settlement Noteholders, and proceed and finish with an *valuation hearing* on *all* matters related to the Estates Assets, including in all the IP matters, and after this, <u>secondly,</u> appoint, proceed and finish a *confirmation hearing* w.r.t. a required *balanced and honestly produced Plan* being founded on a comparably more profound basis than it actual does.

**Concluding, based on the analysis above, the mentioned Plan evidently is not produced in good faith, is not fair and reasonable and lacks on traceable valuation, transparency and reasons given by the Debtors, it lacks on compulsory substantiation and therefore – mandatory – on evidence.**

**Therefore, the Plan should be considered as not complying with the specific Rules as applicable for the Confirmation of a Reorganization Plan in a Chapter 11 Case.**

**The Plan cannot be confirmed.**

## V. Full Authorization to the Official Committee of Equity Security Holders

As a shareholder, in addition to entering my objection; by my signature below *I hereby give my full authorization to the 'Official Committee of Equity Security Holders'* to take my enclosed objection into account and to use it - *if they believe*, it is helpful in support of their arguments and procedural strategy - consistent with their standing as fiduciaries to the Estate and to the Equity.

Respectfully submitted,

Dated: May 11th, 2011 /s/Stephan Meier

Weimar — Stephan Meier
Germany / Thuringia

## CERTIFICATE OF SERVICE

I, Stephan Meier         , hereby certify that, on May 13th, 2011, I caused one copy of the foregoing to be served upon the parties listed below.

**Washington Mutual, Inc.**
Charles Edward Smith, Esq.
925 Fourth Avenue
Seattle, Washington 98104

**Weil Gotshal & Manges LLP**
Brian S. Rosen, Esq.
767 Fifth Avenue
New York, NY 10153

**Richards Layton & Finger PA**
Mark D. Collins, Esq.
One Rodney Square
920 North King Street
Wilmington, DE 19899

**Quinn Emanuel Urquhart & Sullivan, LLP**
Peter Calamari, Esq.,
55 Madison Avenue, 22nd Floor
New York, New York 10010

**Office of the United States Trustee**
Jane M. Leamy, Esq.
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801

**Akin Gump Stauss Hauer & Feld LLP**
Fred S. Hodara, Esq.
One Bryant Park
New York, NY 10036

**Pepper Hamilton LLP**
David B. Stratton, Esq.
Hercules Plaza, Suite 5100
1313 N. Market St
Wilmington, DE 19801

**Susman Godfrey LLP**
Justin A Nelson, Esq.
1201 Third Ave Ste 3800
Seattle, WA 98101

**Ashby & Geddes, P.A.**
William P Bowden, Esq.
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899

**Sullivan & Cromwell LLP**
Stacey R. Friedman, Esq.
125 Broad Street
New York, New York 10004

**Landis Rath & Cobb LLP**
Adam G. Landis, Esq.
919 Market Street, Suite 1800
P.O.Box 2087
Wilmington, DE 19899

**DLA Piper LLP (US)**
Thomas R. Califano, Esq.
1251 Avenue of the Americas
New York, New York 10020

**Young Conaway Stargatt & Taylor, LLP**
M. Blake Cleary, Esq.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Respectfully submitted,



Dated: May 11th, 2011

/s/ Stephan Meier

---
Weimar
Germany / Thuringia

---
Stephan Meier