# Exhibit A

## Barash Declaration

----------------------------------------------------------x
: 
*In re* : **Chapter 11**
: 
**WASHINGTON MUTUAL, INC., et al.,**[1] : 
: **Case No. 08-12229 (MFW)**
: 
: **(Jointly Administered)**
**Debtors.** : 
: 
----------------------------------------------------------x

## DECLARATION OF MARTIN R. BARASH IN SUPPORT OF THE APPLICATION OF DEBTOR PURSUANT TO SECTION 327(a) AND 328(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014 FOR AUTHORIZATION TO EMPLOY AND RETAIN KLEE, TUCHIN, BOGDANOFF & STERN LLP AS SPECIAL LITIGATION COUNSEL TO WASHINGTON MUTUAL, INC. *NUNC PRO TUNC* TO JUNE 24, 2011

Martin R. Barash, hereby declares, under penalty of perjury:

1.     I am a partner in Klee, Tuchin, Bogdanoff & Stern LLP ("KTBS"), a law firm with offices at 1999 Avenue of the Stars, Los Angeles, California.  I am a member in good standing of the State Bar of California, and previously have been admitted to appear *pro hac vice* before this Court.

2.     I submit this declaration in connection with the application of Washington Mutual Inc. ("WMI"), as debtor and debtor in possession, to employ and retain KTBS, *nunc pro tunc* to June 24, 2011, as Special litigation Counsel to WMI in the above-captioned jointly-administered chapter 11 cases (the "Application") at its hourly rates  and in accordance with its reimbursement policies, at the time KTBS renders services and incurs expenses, pursuant to

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

section 327(a) of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and to provide the disclosure required under Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein.

## KTBS' PROPOSED RETENTION AND QUALIFICATIONS

3.    WMI seeks to employ and retain KTBS for the specific purposes and under the terms and conditions set forth in the retention letter agreement annexed hereto ("Retention Letter"). Specifically, WMI seeks to employ KTBS as special litigation counsel to investigate, assess and, if requested, potentially prosecute claims of WMI's estate against former officers and directors and other third parties, including former auditors, investment banking advisors, rating agencies and others that may be identified from time to time, and pursue recoveries thereon, including the proceeds of applicable insurance.

4.    KTBS is a premier, national business reorganization and corporate insolvency boutique law firm. KTBS is composed of attorneys that limit their practice to corporate insolvency, restructuring and bankruptcy matters (both in and out of court), related litigation, appellate advocacy and expert witness services, as well as general commercial litigation and corporate finance transactions. KTBS regularly represents debtors, creditors, equity holders, committees and trustees in complex and prominent bankruptcy cases in this Court and in other courts throughout the country.

## KTBS DISCLOSURES

5.    On June 24, 2011, Debtors' counsel provided KTBS with a document entitled "Master Retention Checklist " comprising 83 pages (the "Potential Party List"). I

understand that the Potential Party List includes the Debtors' thirty (30) largest unsecured creditors as reflected in the Debtors' bankruptcy petitions and related filings and any members of the official committee of unsecured creditors, the Debtors' current and former directors and managers, affiliations of certain directors and officers, and prepetition secured lenders as of the Petition Date that was developed through discussions with senior management of the Debtors and the Debtors' lead counsel.

6.　　KTBS maintains computerized records of its clients, engagements and parties related thereto. As a partner in KTBS, I am familiar with these records and the manner in which they are maintained and recorded. I believe these records are reliable and accurately reflect KTBS' past and current clients. In connection with the proposed representation of KTBS by WMI, I caused the staff of KTBS to conduct a computer-based search of the aforementioned records to determine whether and in what capacity the parties set forth on the Potential Party List were connected to KTBS' past and current engagements.

7.　　I have reviewed the results of the search conducted by KTBS staff, and the KTBS business records relating to potentially relevant engagements identified in that search (e.g., internal memoranda, retention agreements, etc.). In some instances, I consulted with KTBS attorneys that had handled such engagements in order to obtain additional information. As a result of that review and those consultations, I determined that KTBS does not represent any interest adverse to the Debtors' estates and does not have connections with the parties on the Potential Party List other than the following:

a.　　Robert J. Pfister, a partner in KTBS, previously was associated with Simpson Thacher & Bartlett LLP ("Simpson Thacher"), which represented WMI prior to its bankruptcy filing with regard to certain corporate, labor and securities matters.

3

Mr. Pfister was one of the Simpson Thacher attorneys who rendered these services, from approximately 2007 until WMI's bankruptcy filing on September 29, 2008. Additionally, by order, dated November 14, 2008 (*nunc pro tunc* to the petition date), the Bankruptcy Court approved Simpson Thacher's employment as special counsel to WMI for the purposes of providing: (i) "non-bankruptcy corporate, regulatory and securities advice and assistance incident to the 'wind down' of the Debtors' businesses or to the resolution of their affairs that does not involve representing the Debtors in conducting their bankruptcy cases"; (ii) "non-bankruptcy advice and assistance with respect to federal or state regulatory or investigatory matters arising out of, or relating to, the events generally leading up to these proceedings"; and (iii) such other non-bankruptcy advice and assistance as the Debtors may request reasonably related or incidental to any of the foregoing." Mr. Pfister was one of the Simpson Thacher attorneys who rendered services to WMI pursuant to this order, until his departure from Simpson Thacher in April 2010. Both before and after the petition date, Mr. Pfister was one of the Simpson Thacher attorneys who represented WMI and certain of its officers and/or former officers and other employees and/or former employees in consolidated securities, shareholder derivative and ERISA litigation centralized in the U.S. District Court for the Western District of Washington under the caption *In re Washington Mutual, Inc. Securities, Derivative & ERISA Litigation*, MDL No. 1919, as well as in certain other securities, real estate and employment litigation, from 2007 until his departure from Simpson Thacher in April 2010. Mr. Pfister's involvement in cases concerning WMI or any of its former officers and employees terminated when he left Simpson Thacher in April 2010, and he has not been involved since that time. Mr. Pfister joined KTBS in May 2010, and

became a partner in the firm effective January 1, 2011. In view of Mr. Pfister's past representation at Simpson Thacher of WMI and certain of its officers and employees, he will not be involved in this matter, and KTBS has established an "ethical wall" consisting of information-blocking policies and procedures to prevent the inadvertent exchange of information with Mr. Pfister regarding this engagement.

b. Whitman L. Holt, a partner in KTBS, previously was associated with Stutman, Treister & Glatt, P.C. ("Stutman"), which represents The Liverpool Limited Partnership, Elliott Associates, L.P., and Elliott International, L.P., investment funds associated with Elliott Management Corp. (collectively, "Elliott"), holders of certain debt securities, in these bankruptcy cases. While associated with Stutman, Mr. Holt provided services to Elliott in connection with the Bankruptcy Case and in connection with various unrelated matters. Upon joining KTBS as a partner in January 2011, Mr. Holt has represented Elliott in unrelated matters. Mr. Holt does not believe that his representations of Elliott create any conflict of interest, as Elliott's interests are be aligned with the Debtor's interests with respect to the subjects of KTBS' engagement. Nevertheless, in an abundance of caution, KTBS has obtained from Elliott a waiver that will permit Mr. Holt to provide services to the Debtors in connection with this engagement. Mr. Holt will provide services to WMI in connection with this engagement and will not be subject to the ethical wall described above with respect to Mr. Pfister, provided, however, that Mr. Holt will recuse himself with respect to any dispute or conflict should one arise between Elliott and the Debtors.

c. Thomas E. Patterson, a partner in KTBS, previously was a partner in Sidley Austin, which is listed on the Potential Party List as a vendor, contract

counterparty or other party in interest. Mr. Patterson left Sidley Austin and joined KTBS in 2002. Until recently, Mr. Patterson beneficially held approximately 2318 shares of common stock in WMI through a dividend reinvestment plan. In light of KTBS' proposed retention by WMI, Mr. Patterson has irrevocably assigned his beneficial interest in those shares to Saint Brendan Catholic Church, in Los Angeles.

    d.  A partner in the KTBS, Daniel J. Bussel, previously served as an expert witness in unrelated litigation on behalf of certain Merrill Lynch affiliates.

    e.  KTBS represents Angelo Gordon in a matter unrelated to the Debtors, and is free to be adverse to that entity in this case.

    f  KTBS represents and previously represented Cerberus Capital Management L.P and/or its affiliates, including Ableco Finance LLC and its respective affiliates, in connection with matters unrelated to the Debtors, and is free to be adverse to those entities in this case.

    g  KTBS represents certain former partners in Heller Ehrman in connection with the pending bankruptcy case for that firm (*i.e.*, in matters unrelated to the Debtors). Additionally, KTBS previously has provided expert witness services to Heller Ehrman and/or its clients in matters unrelated to the Debtors. KTBS is free to be adverse to Heller Ehrman and its former partners in this case.

    h.  KTBS previously provided expert witness services to Alvarez and Marsal in a matter unrelated to the Debtors, and is free to be adverse to Alvarez and Marsal in this case.

    i.  KTBS previously provided legal services to Arthur Anderson in a matter unrelated to the Debtors. Also, KTBS previously represented certain employees

of Arthur Anderson serving as administrators in the insolvency proceedings of several foreign entities, in connection with a chapter 11 case for a related entity in the United States. None of these proceedings related to the Debtors. KTBS is free to be adverse to Arthur Anderson in this case.

j.      KTBS previously provided expert witness and consultation services to Bank of New York and/or its counsel in matters unrelated to the Debtors. KTBS is free to be adverse to Bank of New York in this case.

k.      KTBS previously provided consultation services to Capital Research and Management in an unrelated matter and is free to be adverse to Capital Research and Management in this case.

l.      KTBS previously provided expert witness services to Curtis, Mallet-Prevost, Colt & Mosle L.P. on behalf of its client. KTBS is free to be adverse to Curtis, Mallet-Prevost, Colt & Mosle L.P. in this case.

m.      KTBS previously provided expert witness services to counsel for Ernst & Young in a matter unrelated to the Debtors. KTBS is free to be adverse to Ernst and Young in this case.

n.      KTBS previously provided legal services to Federal Insurance Company, and also has been adverse to that entity, in matters unrelated to the Debtors. KTBS is free to be adverse to Federal Insurance Company in this case.

o.      KTBS previously represented FPL Energy LLC CA in an unrelated matter; that entity may be related to FPL Energy Morwind LLC. KTBS is free to be adverse to these entities in this case.

p. KTBS previously provided expert witness services to Jones Day and/or its client in a matter unrelated to the Debtors. KTBS is free to be adverse to Jones Day in this case.

q. KTBS previously provided expert witness services to McDermott, Will and Emery and/or its clients in matters unrelated to the Debtors. KTBS is free to be adverse to McDermott, Will and Emery in this case.

r. KTBS previously provided expert witness services to Gibson, Dunn & Crutcher and/or its client in matters unrelated to the Debtors. KTBS is free to be adverse to Gibson, Dunn and Crutcher in this case.

s. KTBS previously provided expert witness services to PricewaterhouseCoopers in a matter unrelated to the Debtors. KTBS is free to be adverse to PricewaterhouseCoopers in this case.

t. KTBS previously represented the Chubb Group of Insurance Companies in a matter unrelated to the Debtors, and is free to be adverse to those entities in this case.

u. KTBS previously provided legal services to the London Insurance Market (and its counsel), in matters unrelated to the Debtors. KTBS is free to be adverse to the London Insurance Market in this case.

v. KTBS previously provided expert witness services to counsel for certain Underwriters at Lloyd's London and certain of the London Market Insurance Companies, in a matter unrelated to the Debtors. KTBS is free to be adverse to those entities in this case.

w.      KTBS previously provided mediation services to Long, Aldridge & Norman, successor in interest to McKenna Long & Aldridge LLP, in a matter unrelated to the Debtors. KTBS is free to be adverse to those entities in this case.

x.      KTBS previously represented the Morgan Stanley Real Estate Fund in a matter unrelated to the Debtors. KTBS is free to be adverse to the Morgan Stanley Real Estate Fund in this case.

y.      KTBS previously represented Owl Creek Asset Management L.P. in a matter unrelated to the Debtors, and is free to be adverse to that entity in this case.

z.      KTBS previously provided expert witness services to Oregon Electric Utility Co., parent entity to Portland General Electric Company, in a matter unrelated to the Debtors, and is free to be adverse to those entities in this case.

aa.      KTBS previously provided expert witness services to counsel for Sheppard, Mullin, Richter and Hampton ("Sheppard Mullin") and/or its client in a matter unrelated to the Debtors, in addition to being adverse to Sheppard Mullin in other unrelated matters. KTBS is free to be adverse to Sheppard Mullin in this case.

bb.      KTBS previously provided legal services to Silverpoint Capital LLC and/or its affiliates in matters unrelated to the Debtors, and is free to be adverse to such entities in this case.

cc.      KTBS previously provided legal services to Wausaw Insurance Company and its affiliates, including Liberty Mutual Insurance Company, in a matter unrelated to the Debtors, and is free to be adverse to those entities in this case.

dd.     KTBS previously provided expert witness services and mediation services to Susman Godfrey and/or its clients in matters unrelated to the Debtors. KTBS is free to be adverse to Susman Godfrey in this case.

ee.     KTBS previously has represented Wells Fargo Commercial Finance, LLC, formerly known as Wells Fargo Foothill, LLC, in unrelated matters. Also, KTBS previously provided consultation services to Wells Fargo Bank in respect of an unrelated matter. KTBS is free to be adverse to the foregoing entities.

ff.     In connection with KTBS' prior representation of the agent and lenders under an unrelated credit facility, KTBS was directly engaged by the following lenders : (i) Babson CLO Ltd 2003-I, Babson CLO Ltd. 2005-I, and Babson CLO Ltd. 2005-III, for which Babson Capital Management LLC served as Collateral Manager; (ii) Massachusetts Mutual Life Insurance Company and Massmutual Asia Limited, for which Babson Capital Management LLC served as Investment Advisor, and (iii) RCG PB, Ltd., RCG Enterprise, Ltd. and Ramius Credit Opportunities Master Fund Ltd (f/k/a RCG Carpathia Master Fund, Ltd), which appear to be affiliated with Ramius LLC.

gg.     Over the years, KTBS has represented both formal and ad hoc groups of creditors in unrelated matters, in which parties listed on Exhibit C were members; provided that KTBS did not serve as counsel to such parties unless otherwise noted herein. KTBS also has represented agent-lenders and non-agent lenders, in lending facilities under which parties listed on Exhibit C also were agents and/or lenders but not clients of KTBS. Likewise, KTBS has provided (and is providing) legal consultation and/or expert witness services to counsel in connection with such counsel's

representation of parties listed on Exhibit C, in matters unrelated to the Debtors; KTBS has been retained by counsel in such matters and not by such parties.

       hh.    KTBS is a specialty law firm with relatively few continuing institutional clients. Because of the specialized nature of its practice, from time to time KTBS may concurrently represent one client in a particular case, and the debtor, creditor, competitor or adversary of that client (or a professional employed to represent that opposing party) in an unrelated matter. Thus, by way of illustration only, while representing a client, KTBS may represent a debtor or creditor of that client in matters unrelated to such client.

       ii.    Since the formation of KTBS over 11 years ago, and over the course of the length careers of the lawyers comprising KTBS (including mine), KTBS and its attorneys have represented, now represent, and likely will represent in the future parties adverse to many of the creditors and other parties listed on Exhibit C.

       jj.    KTBS regularly makes referrals to and receives referrals from bankruptcy professionals all over the country, some of whom are or may be involved or connected to the Debtors' bankruptcy cases. Further, KTBS has worked with such professionals on other matters, at times representing the same parties and at other times representing parties with similar interests or parties with adverse interests, and KTBS has referred matters to, and been referred matters by, such professionals.

       8.    KTBS previously has not represented the Debtors and does not hold any retainer from the Debtors.

       9.    KTBS is not a creditor, equity holder, or insider of the Debtors.

10.     KTBS is not and was not within 2 years before the date of the filing of the petition, a director, officer or employee of the Debtors.

11.     Based upon all of the foregoing: KTBS does not have an interest materially adverse to the interests of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

12.     KTBS may in the future represent entities that are claimants of, or interest holders in, the Debtors in matters unrelated to the Debtors.  KTBS will not represent any such entities in connection with their claims against or interests in the Debtors.

13.     KTBS will conduct further inquiries and, if necessary, supplement this Declaration if an updated Potential Party List is provided to KTBS by Debtors' counsel with additional parties.  KTBS also will supplement this Declaration if it subsequently becomes aware of matters requiring disclosure herein.

14.     KTBS will work with the Debtors' lead counsel, Weil, Gotshal & Manges LLP, to coordinate tasks and ensure there is no duplication of effort.

## KTBS' RATES AND BILLING PRACTICES

15.     Subject to Bankruptcy Court approval, and absent any alternative compensation arrangement to which WMI and KTBS may agree in the future with respect to specific matters (which alternative arrangement itself would be subject to Bankruptcy Court approval), KTBS expects that it will be compensated on an hourly basis (at its hourly rates then in effect), plus reimbursement of actual, necessary expenses and other charges incurred by KTBS.

16.     As is the case with respect to work for all KTBS clients, KTBS' hourly rates are subject to periodic adjustments to reflect economic and other conditions.  Currently,

hourly rates range from $495-975 for Partners, $395-490 for Associates, and $250 per hour for paralegals.

17.     KTBS' intends to seek reimbursement for reasonable and customary costs and expenses, including charges for messenger services, air couriers, photocopying, court fees, travel expenses, postage, long distance telephone, computerized legal research, investigative searches, transcripts, and other actual charges customarily invoiced by law firms in addition to fees for legal services. KTBS does not bill for secretarial overtime or word processing. KTBS bills out-of-pocket disbursements at cost or based on formulas that approximate the actual cost where the actual cost is not easily ascertainable, subject to local guidelines (such as photocopying costs).

18.     The rates, terms and conditions upon which WMI is seeking to employ KTBS as are consistent with the rates, terms and conditions required of KTBS' clients that are not chapter 11 debtors.

19.     No promises have been received by KTBS or any member, counsel, or associate thereof as to payment or compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. KTBS has no agreement with any other entity to share with such entity any compensation received by KTBS or by any such entity.

20.. KTBS intends to file monthly, interim, and final applications and be compensated in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the procedures established by the Bankruptcy Court in these cases.

21. The foregoing constitutes the statement of KTBS pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of July, 2011, at Los Angeles, California.

Martin R. Barash
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6049
Tel: (310) 407-4005
Facsimile: (310) 407-9090



1999 Avenue of the Stars
Thirty-Ninth Floor
Los Angeles, California 90067

voice: 310-407-4000
fax: 310-407-9090
www.ktbslaw.com

E-mail: mbarash@ktbslaw.com
Direct Dial: 310-407-4005

June 27, 2011

**VIA ELECTRONIC MAIL**

Washington Mutual, Inc.
Attn: Chad Smith, General Counsel
925 Fourth Avenue, Suite 2500
Seattle, Washington 98104

      Re:    Retention Agreement between Klee, Tuchin, Bogdanoff & Stern LLP
              ("KTB&S") and Washington Mutual, Inc. ("CLIENT").

Chad:

      I am writing this letter agreement to set forth the terms and conditions upon which KTB&S will represent CLIENT, which is a debtor in possession in a chapter 11 case pending in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"), Jt. Admin. Case No. 08-12229 ("Bankruptcy Case").

<u>Scope of Representation</u>.

      KTB&S specializes in the areas of reorganization, bankruptcy, bankruptcy litigation, general commercial litigation, general corporate law, financings and acquisitions. We limit our practice to those areas.

      KTB&S will act as CLIENT's special litigation counsel to investigate, assess and, if requested, potentially prosecute claims of CLIENT's estate against former officers and directors and other third parties, including former auditors, investment banking advisors, rating agencies and others that may be identified from time to time, and pursue recoveries thereon, including the proceeds of applicable insurance.

      KTB&S' employment as CLIENT's special litigation counsel does not include the provision of representation beyond the above-described scope of this engagement. Without limiting the generality of the immediately preceding sentence, this engagement does not include the general representation of CLIENT in the Bankruptcy Case.

      KTB&S' employment is subject to approval of the Bankruptcy Court. Although as a result of the exigencies associated with this engagement KTB&S has commenced

rendering services, CLIENT agrees to cooperate with KTB&S in expeditiously seeking approval of KTB&S' employment by the Bankruptcy Court.

Financial Arrangements.

Subject to the orders of the Bankruptcy Court, CLIENT agrees to pay KTB&S reasonable professional fees on account of services provided to CLIENT and to reimburse KTB&S for costs and expenses incurred by KTB&S in connection with this engagement.

KTB&S' invoices will reflect charges for services rendered calculated on the basis of KTB&S' hourly rates in effect at the time of such services. The current rates for attorney and paralegal services presently range from $250 to $975 per hour. KTB&S' hourly rates are adjusted periodically, typically on January 1 of each year, to reflect the advancing experience, capabilities, and seniority of KTB&S' professionals as well as general economic factors.

KTB&S' invoices also will include reasonable and customary charges for costs and expenses. The types of costs and expenses that must be reimbursed hereunder include charges for messenger services, air couriers, photocopying, court fees, travel expenses, postage, long distance telephone, computerized legal research, investigative searches, transcripts, and other actual charges customarily invoiced by law firms in addition to fees for legal services. KTB&S does not bill for secretarial overtime or word processing.

CLIENT acknowledges and agrees that KTB&S will be compensated pursuant to and subject to the orders of the Bankruptcy Court, including the monthly fee procedure established by the Bankruptcy Court in the Bankruptcy Case. Upon the conclusion of KTB&S' initial investigation and assessment as set forth in the Scope of Representation above, CLIENT and KTB&S will discuss alternative compensation arrangements on a case-by-case basis, subject to subsequent approval of the Bankruptcy Court.

Disclosures and Waivers.

KTB&S is conducting a search to determine its relationships, if any, to parties that may have a connection to CLIENT. That search is ongoing. However, KTB&S presently is aware of the following material connections:

1. Robert J. Pfister, a partner in KTB&S, previously was associated with Simpson Thacher & Bartlett LLP ("STB"), which represented Washington Mutual, Inc. ("WMI") prior to its bankruptcy filing with regard to certain corporate, labor and securities matters. Mr. Pfister was one of the STB attorneys who rendered these services, from approximately 2007 until WMI's bankruptcy filing on September 26, 2008. Additionally, by order dated November 14, 2008 (nunc

pro tunc to the petition date), the Bankruptcy Court approved STB's employment as special counsel to WMI for the purposes of providing: (i) "non-bankruptcy corporate, regulatory and securities advice and assistance incident to the 'wind down' of the Debtors' businesses or to the resolution of their affairs that does not involve representing the Debtors in conducting their bankruptcy cases"; (ii) "non-bankruptcy advice and assistance with respect to federal or state regulatory or investigatory matters arising out of, or relating to, the events generally leading up to these proceedings"; and (iii) such other non-bankruptcy advice and assistance as the Debtors may request reasonably related or incidental to any of the foregoing." Mr. Pfister was one of the STB attorneys who rendered services to WMI pursuant to this order, until his departure from STB in April 2010. Both before and after the petition date, Mr. Pfister was one of the STB attorneys who represented WMI and certain of its officers and/or former officers and other employees and/or former employees in consolidated securities, shareholder derivative and ERISA litigation centralized in the U.S. District Court for the Western District of Washington under the caption In re Washington Mutual, Inc. Securities, Derivative & ERISA Litigation, MDL No. 1919, as well as in certain other securities, real estate and employment litigation, from 2007 until his departure from STB in April 2010. Mr. Pfister's involvement in cases concerning WMI or any of its former officers and employees terminated when he left STB in April 2010, and he has not been involved since that time. Mr. Pfister joined KTB&S in May 2010, and became a partner in the firm effective January 1, 2011.

In view of Mr. Pfister's past representation (while at another firm) of WMI and certain of its officers and employees, he will not be involved in this engagement in this matter, and KTB&S has established an "ethical wall," i.e., information blocking policies and procedures to prevent the inadvertent exchange of information with Mr. Pfister regarding this engagement.

2.     Whitman L. Holt, a partner in KTB&S, previously was associated with Stutman, Treister & Glatt, P.C. ("Stutman"), which represents The Liverpool Limited Partnership, Elliott Associates, L.P., and Elliott International, L.P., investment funds associated with Elliott Management Corp. (collectively, "Elliott"), holders of certain debt securities, in the Bankruptcy Case. While associated with Stutman, Mr. Holt provided services to Elliott in connection with the Bankruptcy Case and in connection with various unrelated matters. Upon joining KTB&S as a partner in January 2011, Mr. Holt has represented Elliott in unrelated matters.

Mr. Holt does not believe that his representations of Elliott create any conflict of interest, as Elliott's interests are aligned with Client's interests with respect to the subjects of KTB&S' engagement. Nevertheless, in an abundance of caution, KTB&S has obtained from Elliott a waiver that will permit Mr. Holt to provide services to Client in connection with this engagement. Mr. Holt will

provide services to Client in connection with this engagement and will not be subject to the ethical wall described above with respect to Mr. Pfister, provided, however, that Mr. Holt will recuse himself with respect to any dispute or conflict should one arise between Elliott and CLIENT.

CLIENT agrees that it does not consider KTB&S' representation of CLIENT to be inappropriate in light of any of the relationships described above, and the steps referenced above that KTB&S is taking with respect to the establishment of an ethical wall and implementation of procedures for the purpose of maintaining the efficacy of such ethical wall.

In the future, we may identify other parties in interest with whom KTB&S has a connection that it believes is appropriate to bring to CLIENT's attention. If, as and when we identify any such connections, we will promptly bring them to your attention.

KTB&S is a specialty law firm with few continuing institutional clients. Because of the specialized nature of its practice, from time to time KTB&S may concurrently represent one client in a particular case and the debtor, creditor, competitor or adversary of that client (or a professional employed to represent that opposing party) in an unrelated matter. Thus, by way of illustration only, while representing CLIENT, KTB&S may represent a debtor of CLIENT as a debtor in a bankruptcy case or in connection with out-of-court negotiations with such entity's creditors concerning that entity's ability to pay its debts generally. Please be assured that, despite any concurrent representation, KTB&S strictly preserves all client confidences and zealously pursues the interests of each of its clients, including in those circumstances in which KTB&S represents the adversary of an existing client in an unrelated case. CLIENT agrees that it does not consider such concurrent representation, in completely unrelated matters, of CLIENT and any adversary to be inappropriate and therefore waive any objections to any such present or future concurrent representation. KTB&S presently is not aware of any such representations, however, if, as and when we identify any such representations (or potential representations), to the extent consistent with KTB&S' confidentiality undertakings or ethical responsibilities in such representations (or potential representations), KTB&S will promptly bring them to CLIENT's attention.

Some attorneys at KTB&S have relatives or significant others who are attorneys at other law firms. Please advise in writing if you wish to review a list of such firms. We have strict policies against disclosing confidential information to anyone outside of the firm, including spouses, parents, children, siblings and fiancés. You agree that you do not consider our representation of you to be inappropriate in light of any such relationships.

KTB&S maintains errors and omissions insurance coverage applicable to the services to be rendered hereunder which complies with the requirements imposed by California Business and Professions Code sections 6147(a)(6) and 6148(a)(4).

Opinion Letters and Tax Matters.

To the extent KTB&S is requested to provide an opinion letter, we do so only as approved by a special committee of the firm, based upon the facts and circumstances presented. KTB&S may determine, in its sole discretion, whether to provide any opinion letter requested by CLIENT. In the event KTB&S agrees to provide an opinion letter, KTB&S may require an additional fee for the drafting and issuance of such a letter. Nothing herein is intended, nor should it be construed, as an obligation by KTB&S to issue any opinion letter.

We do not give tax advice. If tax advice is needed, we will locate a highly qualified tax expert to give you tax advice. If, notwithstanding the preceding, any advice we furnish to the Committee is deemed to constitute tax advice within the meaning of U.S. Treasury Regulations, then as required by U.S. Treasury Regulations governing tax practice, the Committee is hereby advised that any tax advice will not be written or intended to be used (and cannot be used) by any taxpayer for the purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction(s) or tax-related matter(s).

No Individual/Officer/Family etc. Representation.

KTB&S is being engaged by CLIENT only. KTB&S' employment by CLIENT does not include the representation of any shareholder, director, officer, employee or other agent of CLIENT. KTB&S encourages each to consult independent counsel to the extent appropriate. CLIENT is solely responsible for notifying such persons that KTB&S only represents the CLIENT in this engagement.

Discharge and Withdrawal.

CLIENT may discharge KTB&S at any time. KTB&S may withdraw at any time with CLIENT's consent or for good cause without CLIENT's consent. Good cause includes CLIENT's or its Members' breach of this agreement, CLIENT's refusal or failure to cooperate with KTB&S, or any fact or circumstance that would render KTB&S' continuing representation unlawful or unethical.

Client Files.

After the termination of KTB&S' engagement, KTB&S will retain CLIENT's files in KTB&S' possession for a period of three years following such termination. If CLIENT does not request in writing CLIENT's files before the end of that three-year period, KTB&S will have no further obligation to retain the files upon the expiration of such period, and may, in KTB&S' sole discretion, destroy them without further notice to CLIENT.

No Other Agreement.

This constitutes the entire understanding between CLIENT and KTB&S regarding KTB&S' employment. By executing this agreement, CLIENT acknowledges that it has read carefully and understand all of its terms. The agreement cannot be modified except by further written agreement signed by each party.

Conclusion.

If CLIENT has any questions about the foregoing, please call me. Moreover, feel free to obtain independent legal advice regarding this agreement. If CLIENT is in agreement with the foregoing, and it accurately represents CLIENT's agreement with KTB&S, please execute this letter. If not, kindly contact me immediately.

KTB&S looks forward to working with you.

Very truly yours,

KLEE, TUCHIN, BOGDANOFF & STERN LLP

By: Martin R. Barash

Washington Mutual, Inc.
Attn: Chad Smith
June 27, 2011
Page 7

## THE FOREGOING LETTER AGREEMENT IS ACKNOWLEDGED, APPROVED AND AGREED TO:

**WASHINGTON MUTUAL, INC.**

By

Charles Edward Smith

Its     Executive Vice President

7