# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
In re                                : Chapter 11
                                     :
WASHINGTON MUTUAL, INC., *et al*     : Case No. 08-12229 (MFW)
                                     :
    Debtors.                         : Jointly Administered
                                     :
                                     : Hearing Date: September 6, 2011 at 2:00 p.m. (ET)
                                     : Objection Deadline: August 30, 2011 at 4:00 pm (ET)
                                     :
------------------------------------------------------------x

## SECOND MOTION OF WILMINGTON TRUST COMPANY, IN ITS CAPACITIES AS INDENTURE TRUSTEE AND GUARANTEE TRUSTEE FOR FIVE SERIES OF WMB/CCB SUBORDINATED NOTES, FOR ENTRY OF AN ORDER PARTIALLY LIQUIDATING AND ALLOWING PROOFS OF CLAIM FOR FEES AND EXPENSES

Wilmington Trust Company ("Wilmington Trust"), in its capacities as Indenture Trustee and Guarantee Trustee for five series of WMB/CCB Subordinated Notes (defined below), by and through its undersigned counsel, Arent Fox LLP ("Arent Fox") and Polsinelli Shughart PC ("Polsinelli"), hereby files this Second Motion (the "Second Motion") pursuant to Sections 501, 502, 1123(b)(6) and 1129(a)(4) of the Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and this Court's Opinion (defined below) for entry of a second order allowing and partially liquidating certain proofs of claim filed by Wilmington Trust for fees and expenses incurred pursuant to the Trust Documents (defined below) in connection with the satisfaction of Wilmington Trust's obligations arising under the Trust Documents in the total amount of $548,736.65; and (b) granting Wilmington Trust such other further relief as is just and proper. In support of this Second Motion, Wilmington Trust respectfully states as follows:

## JURISDICTION

1.       This Court has jurisdiction over this Second Motion pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This is a core proceeding under 28 U.S.C. §§ 157(b)(2). Venue of this proceeding is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested in this Second Motion are Sections 501, 502, 1123(b)(6) and 1129(a)(4) of the Bankruptcy Code.

## BACKGROUND[1]

### I.    The WMB/CCB Subordinated Notes and the WMI Guarantees

     A.    <u>The WMB/CCB Subordinated Notes</u>

2.       Washington Mutual Bank ("WMB"), in connection with its acquisition of Commerce Capital Bancorp in 2006 and Hawthorne Financial Corporation, became the successor issuer of seven series of junior subordinated debt securities (the "WMB/CCB Subordinated Notes") in the aggregate original principal amount of $68,580,000. Each series of WMB/CCB Subordinated Notes was issued pursuant to a separate indenture (each, a "WMB/CCB Indenture"). The issues of WMB/CCB Subordinated Notes are as follows:

(i)     Floating Rate Junior Subordinated Debt Securities due 2033 issued pursuant to the Indenture dated as of September 25, 2003, in the original principal amount of $7,732,000 (the "CCB IV Notes");

(ii)    Floating Rate Junior Subordinated Notes due 2034 issued pursuant to the Indenture dated as of December 9, 2003, in the original principal amount of $10,310,000 (the "CCB V Notes");

(iii)   Floating Rate Junior Subordinated Notes due 2034 issued pursuant to the Indenture dated as of March 31, 2004, in the original principal amount of $10,310,000 (the "CCB VI Notes");

(iv)    Floating Rate Junior Subordinated Debt Securities due 2034 issued pursuant to

---

[1] Due to the complexities of the Debtors' capital structure and in the interest of brevity, Wilmington Trust does not set forth the complete background of such structure in this Motion. Rather, Wilmington Trust briefly sets forth only that portion of the Debtors' capital structure that relates to its issues and concerns with respect to this Motion. This background was also set forth in Wilmington Trust Fee Motion (defined below).

     the Indenture dated as of May 27, 2004, in the original principal amount of $7,732,000 (the "CCB VII Notes");

(v)  Floating Rate Junior Subordinated Debt Securities due 2034 issued pursuant to the Indenture dated as of June 22, 2004 in the original principal amount of $7,732,000 (the "CCB VIII Notes");

(vi)  Junior Subordinated Notes due 2035 issued pursuant to the Indenture dated as of February 2, 2005, in the original principal amount of $15,464,000 (the "CCB IX Notes"); and

(vii)  10.18% Junior Subordinated Deferrable Interest Debentures due June 8, 2034 issued pursuant to the Indenture dated as of March 28, 2001, in the original principal amount of $9,300,000 (the "HFC Notes").

3.  Wilmington Trust is the successor Indenture Trustee under the WMB/CCB Indenture for the following five series of WMB/CCB Subordinated Notes: the CCB IV Notes, CCB V Notes, CCB VII Notes, CCB VIII Notes and HFC Notes.

  B.  <u>The Capital Trusts</u>

4.  Each series of the WMB/CCB Subordinated Notes was sold to a separate special purpose Delaware statutory trust. Specifically, (i) the CCB IV Notes were sold to the CCB Capital Trust IV, (ii) the CCB V Notes were sold to the CCB Capital Trust V, (iii) the CCB VI Notes were sold to the CCB Capital Trust VI, (iv) the CCB VII Notes were sold to the CCB Capital Trust VII, (v) the CCB VIII Notes were sold to the CCB Capital Trust VIII, (vi) the CCB IX Notes were sold to the Capital Trust IX, and (vii) the HFC Notes were sold to the HFC Capital Trust I.[2]

5.  Each Capital Trust was organized and issued capital securities (the "Capital Securities") to investors and common securities (the "Common Securities") to WMB pursuant to separate declarations of trust (the "Trust Declarations"). The Capital Securities and the Common Securities (collectively, the "Trust Securities") evidence beneficial ownership interests in the

---

[2] The CCB IV Capital Trust, CCB V Capital Trust, CCB VI Capital Trust, CCB VII Capital Trust, CCB VIII Capital Trust, CCB IX Capital Trust and HFC Capital Trust I shall collectively be referred to herein as the "Capital Trusts".

assets of the related Capital Trust, and are entitled to received distributions ("Distributions") as a result of payments on the WMB/CCB Subordinated Notes.

6. Wilmington Trust serves as successor (a) Delaware Trustee, Institutional Trustee, Paying Agent, Registrar and Transfer Agent under the Trust Declaration for the following four series of WMB/CCB Subordinated Notes: the CCB IV Notes, CCB V Notes, CCB VII Notes and CCB VIII Notes, and (b) Property Trustee and Delaware Trustee under the Trust Declaration for the HFC Notes.

C. The Guarantees

7. In addition, pursuant to a Guarantee Agreement for each series of the WMB/CCB Subordinated Notes (the "WMB Guarantees"), WMB guaranteed the payment of (i) accumulated and unpaid Distributions when due, to the extent each Capital Trust has funds legally available therefor, (ii) the redemption price of the Capital Securities, to the extent each Capital Trust has funds legally available therefor, and (iii) upon dissolution, winding up or liquidation of a Capital Trust, the lesser of (a) the aggregate liquidation amount and all accumulated and unpaid distributions, to the extent the Capital Trust has funds legally available therefor and (b) the amount of assets of the Capital Trust remaining available for distribution to the holders after satisfaction of liabilities to creditors of the Capital Trust as required by applicable law.

8. In connection with a merger and restructuring of Washington Mutual Inc's ("WMI") corporate structure, on November 1, 2007, WMI entered into separate guarantees (each a "CCB Guarantee")[3] relating to each of the Capital Trusts. Pursuant to the CCB Guarantees, WMI guaranteed, among other things, that the principal of and premium, if any, and interest on all of the related WMB/CCB Subordinated Notes will be paid in full when due and all other

---

[3] The Indenture, Trust Declarations, WMB Guarantees and CCB Guarantees (collectively, the "Trust Documents") are voluminous and, as a result, are not attached hereto. To the extent necessary, Wilmington Trust can provide copies of the Trust Documents to the Court upon request.

obligations of WMB to the holders and the Trustee under the WMB/CCB Indentures and the WMB/CCB Subordinated Notes will be promptly paid in full or performed in accordance with the applicable terms thereof. WMI further guaranteed the payment and performance of all obligations of WMB under the related WMB/CCB Indentures, the WMB Guarantees and the Trust Declarations.

9. Wilmington Trust serves as successor Guarantee Trustee under the CCB Guarantees for the following series of WMB/CCB Subordinated Notes: the CCB IV Notes, CCB V Notes, CCB VII Notes, CCB VIII Notes and HFC Notes.

## II. The Receivership and the Bankruptcy Filing Petition

10. On September 25, 2008, pursuant to order number 2008-36, the Director of the Office of Thrift Supervision appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver for WMB and on the same date the FDIC sold substantially all of the assets of WMB to JPMorgan Chase Bank, National Association ("JPMC"). On September 26, 2008 (the "Petition Date"), WMI and WMI Investment Corp. (the "Debtors") filed a voluntary petitions for relief under Chapter 11 of Bankruptcy Code. The Debtors have continued to operate their business and manage their affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

11. On October 15, 2008, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") pursuant to Section 1102 of the Bankruptcy Code. Wilmington Trust, in its capacities as Indenture Trustee and Guarantee Trustee under the Trust Documents, is a member of the Creditors' Committee. The Creditors' Committee is comprised of four (4) indenture trustees for various funded debt (collectively, the "Indenture Trustees").

12. Wilmington Trust retained Arent Fox to act as its primary legal counsel during these cases. Wilmington Trust also retained Polsinelli to act as its Delaware counsel.

### III. The CCB Guarantee Claims

13. On March 26, 2009, Wilmington Trust, in its capacities as Indenture Trustee and Guarantee Trustee under the Trust Documents, filed proofs of claim against WMI for WMI's obligations for both principal and interest, as well as compensation and indemnity under the CCB Guarantees and related and ancillary documents and instruments (Proof of Claim Nos. 2113 – 2122) (collectively, the "CCB Guarantee Claims"). WMI and Wilmington Trust agreed on the amount of the principal and interest claims in the following amounts:

| Trust | Principal | Interest | Total |
|---|---|---|---|
| CCB IV Capital Trust | $ 7,732,000.00 | $ 97,777.67 | $ 7,829,777.67 |
| CCB V Capital Trust | $ 10,310,000.00 | $ 103,244.98 | $ 10,413,244.98 |
| CCB VII Capital Trust | $ 7,732,000.00 | $ 73,982.29 | $ 7,805,982.29 |
| CCB VIII Capital Trust | $ 7,732,000.00 | $ 78,851.03 | $ 7,810,851.03 |
| HFC Capital Trust I | $ 9,300,000.00 | $ 284,022.00 | $ 9,584,022.00 |

14. In addition to the principal and interest amounts set forth above, Wilmington Trust, in its capacities as Indenture Trustee and Guarantee Trustee, filed proofs of claim for unliquidated amounts due and owing under the Trust Documents for both the pre- and post-petition periods, including, but not limited to, indemnity and the fees and expenses of the Indenture Trustee and Guarantee Trustee and its professionals pursuant to the Trust Documents (the "CCB Compensation and Indemnity Claims").[4]

15. On August 20, 2010, the Debtors and Wilmington Trust entered into that certain Stipulation and Agreement Reducing and Allowing, in Part, Certain Proofs of Claims (the "Claims Stipulation"), which was approved by the Court on September 13, 2010 [Docket No.

---

[4] Copies of CCB Compensation and Indemnity Claims were attached as Exhibit A to the Motion of Wilmington Trust Company, in its Capacities as Indenture Trustee and Guarantee Trustee for Five Series of WMB/CCB Subordinated Notes, for Entry of an Order (A) Partially Liquidating and Allowing Proofs of Claim for Fees and Expenses and (B) Establishing a Protocol for Review of Additional Fees and Expenses [Docket No. 7425] (the "Wilmington Trust Fee Motion") and are incorporated herein by reference.

5415].[5]

16.     Pursuant to the Trust Documents and the CCB Compensation and Indemnity Claims, Wilmington Trust and its counsel are entitled to compensation for performing their obligations in accordance with, *inter alia,* Sections 5.02, 5.03 and 6.06 of the Indenture, Sections 2.6, 2.8, 9.4 and 9.6 of the Trust Declaration and Sections 4.1(b), 7.2 and 7.3 of the Guarantee.

### IV.     The Filing of the Plan and Disclosure Statement and the Opinion of the Court

17.     On March 26, 2010, the Debtors filed the Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code [Docket No. 2622] (the "Plan") and a related disclosure statement. The Plan seeks to implement a global settlement agreement (the "Global Settlement") between the Debtors, JPMC, FDIC and other significant parties, and provides for a distribution of the Debtors' assets to creditors according to the priority scheme set forth in the Bankruptcy Code and the various contractual obligations of the Debtors. The provision in the Plan relating to payment of indenture trustee fees and expenses, including those of Wilmington Trust, provided that such fees and expenses are to be paid in cash on the Plan's Effective Date. The Plan also contemplates full recoveries to almost all of the classes of unsecured creditors, including holders of the CCB Guarantee Claims.

18.     On October 6, 2010, after several amendments, the Debtors filed their Sixth Amended Joint Plan (the "Amended Plan"). The Court held hearings on December 1, 2, 3, 6 and 7 to hear testimony and arguments with regard to confirmation of the Amended Plan.

19.     On January 7, 2011, the Court issued its Opinion Denying Confirmation with respect to the Amended Plan (the Opinion"). While the Court denied confirmation of the Amended Plan, the Court found that the Global Settlement was fair and reasonable. The Opinion

---

[5] A copy of the Claim Stipulation was attached as Exhibit B to the Wilmington Trust Fee Motion and is incorporated herein by reference.

required that the fees of the Indenture Trustees and certain other parties must be approved by the Court as reasonable before such fees are paid. The Debtor subsequently filed an amended plan and disclosure statement [Docket Nos. 6964 and 6966, respectively]. On July 13, 14, 15, 18, 19, 20, and 21, the Court held hearings to receive further testimony with regard to confirmation of the Amended Plan and the confirmation remains under advisement.

## V. Wilmington Trust's Role in These Cases

20. Steven M. Cimalore, Vice President and Manager at Wilmington Trust, performed the majority of work on behalf of Wilmington Trust, in consultation with its counsel. These matters included, but are not limited to: (a) participating in weekly Committee calls as well as numerous meetings with the Debtors, and other significant parties throughout these cases, including JPMC, FDIC, other noteholder groups, and the Official Committee of Equity Security Holders (the "Equity Committee"); (b) reviewing and analyzing significant pleadings filed on behalf of the Creditors' Committee; (c) participating in the negotiation and formation of the Global Settlement, Plan, Amended Plan, settlement negotiations, related disclosure statements and solicitation documents and all related pleadings; (d) analyzing complex legal issues, inter-creditor issues, subordination issues, subrogation issues and reviewing various corporate documents relevant to these bankruptcy cases, including those related to the Trust Documents as well as other funded debt; (e) preparing the CCB Guarantee Claims and CCB Compensation and Indemnity Claims and negotiating and finalizing the Claims Stipulation; and (f) preparing various notices to holders regarding these cases.

21. In an effort to avoid the duplication of work, Wilmington Trust relied primarily on counsel and advisors to the Creditors' Committee to perform a majority of the work, due diligence and legal research required of the Creditors' Committee in the exercise of its fiduciary duties. In this regard, Wilmington Trust, through its counsel, reviewed significant pleadings,

reports and legal memoranda prepared by counsel and advisors to the Creditors' Committee on a weekly basis, relating to the wide-ranging issues in these bankruptcy proceedings.

22. As these Chapter 11 proceedings progressed, more attention was given to complex legal analysis, including analyzing, commenting on and negotiating: (i) drafts of the Global Settlement Agreement and amendments; (ii) numerous drafts of bankruptcy plans, term sheets, disclosure statements and related solicitation documents; (iii) various bondholder claims; (iv) complex intercreditor issues and subordination provisions; and (v) complex distribution issues. In addition, additional time was dedicated to attending (a) significant settlement negotiation meetings and conferences and (b) significant hearings, such as the hearings to approve the Global Settlement, Disclosure Statement and the plan confirmation hearings.

23. The services rendered by Wilmington Trust were necessary and appropriate to carry out its contractual and fiduciary duties and to protect the interests of its holders. The fees represent Wilmington Trust's customary fees and the corresponding invoices are consistent with Wilmington's business practice.

24. On May 6, 2011, Wilmington Trust filed the Wilmington Trust Fee Motion seeking allowance of approximately $1,268,388.14 in fees and expenses pursuant to the Trust Documents, which included $189,953.88 for Wilmington Trust in its capacities as Indenture Trustee and Guarantee Trustee, $1,045,704.05 for Arent Fox as lead counsel, and $32,730.21 for Polsinelli as local counsel. No objections to the Wilmington Trust Fee Motion were filed, and on June 8, 2011, the Court entered an order granting the relief requested in the Wilmington Trust Fee Motion [Docket No. 7871] (the "Wilmington Trust Fee Order") to the extent set forth in the Wilmington Trust Fee Order.[6]

---

[6] In addition to approving the partial liquidating of the CCB Compensation and Indemnity Claims in the amount of the fees and expenses sought by Wilmington Trust and its professionals, the Wilmington Trust Fee Motion also

25. In accordance with the Opinion, the Claims Stipulation, the CCB Guarantee Claims, the CCB Compensation and Indemnity Claims, and the Trust Documents, Wilmington Trust, in its capacities as Indenture Trustee and Guarantee Trustee, hereby files this Second Motion and respectfully requests that the Court approve the fees and expenses as set forth in the detailed invoices annexed to this Second Motion.

26. Specifically, as of August 1, 2011, Wilmington Trust is owed approximately $548,736.65 in fees and expenses pursuant to the Trust Documents, which includes: $232,985.96 for Wilmington Trust in its capacities as Indenture Trustee and Guarantee Trustee, $296,545.79 for Arent Fox as lead counsel, and $19,204.90 for Polsinelli as local counsel. Attached to this Second Motion as **Exhibit A** is a copy of Wilmington Trust's invoice through and including July 31, 2011. Attached to this Second Motion as **Exhibit B** is a redacted copy of Arent Fox's invoice through and including July 31, 2011. Attached to this Second Motion as **Exhibit C** are copies of Polsinelli's invoices through and including July 31, 2011.

## RELIEF REQUESTED

27. Section 1129(a)(4) of the Bankruptcy Code provides, in pertinent part, that, "[t]he court shall confirm a plan only if all of the following requirements are met . . . (4) Any payment made or to be made . . . by the debtor . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." 11 U.S.C. 1129(a)(4). For this reason, as noted above, the Opinion requires that the fees of the Indenture Trustees, including Wilmington Trust, and various other parties in these proceedings, be approved by the

---

requested the approval of a protocol to liquidate additional amounts going forward; however, at the request of the Debtors, Wilmington Trust agreed to hold that request in abeyance. Wilmington Trust reserves the right to request approval of any future protocol at a future date, if appropriate.

Court as reasonable before they are paid.[7]

**A. Wilmington Trust's Fees and Expenses Arising Under the CCB Guarantee Claims and CCB Compensation and Indemnity Claims Should Be Allowed as Reasonable and Partially Liquidated**

28. By this Second Motion, Wilmington Trust respectfully requests the enter an order, the form of which is attached hereto as **Exhibit D**, liquidating and approving the fees and expense portion of the CCB Compensation and Indemnity Claims sought in this Second Motion.

29. Section 502(a) of the Bankruptcy Code provides:

> A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

11 U.S.C. § 502(a). Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that a properly executed and filed proof of claim is *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). Pursuant to the Bankruptcy Code, an indenture trustee is permitted to file a proof of claim. *See* 11 U.S.C. § 501(a).

30. The CCB Guarantee Claims and the CCB Compensation and Indemnity Claims are contractual obligations of the Debtors pursuant to valid pre-petition contracts -- the Trust Documents -- have been memorialized in the Claim Stipulation approved by this Court and have been agreed to be paid by the Debtors as contemplated under the Amended Plan. As the Trust Documents authorize the payment of fees and expenses and these Chapter 11 cases are solvent estates, the CCB Compensation and Indemnity Claims can be allowed and partially liquidated. *See generally, Travelers Cas. & Sur. Co. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 448-54 (2007).

---

[7] By this Motion, Wilmington Trust is seeking partial allowance, but not *payment*, of the CCB Compensation and Indemnity Claims. Rather, payment of the CCB Compensation and Indemnity Claims will be paid in accordance with the Amended Plan. In an effort to avoid delay and issues regarding distributions to holders in the event that the reasonableness of the CCB Compensation and Indemnity Claims has not been determined prior to the making of distributions, Wilmington Trust simply seeks partial allowance of the CCB Compensation and Indemnity Claims at this time.

31. Moreover, since it is expected that holders of the CCB Guarantee Claims will receive full payment of its claims, Wilmington Trust will not be required to enforce any of its charging liens pursuant to the Trust Documents, thereby preventing dilution to recoveries to holders of the CCB Guarantee Claims. In the event that the fees and expenses of Wilmington Trust are not allowed as reasonable prior to the making of distributions to holders of the CCB Guarantee Claims, Wilmington Trust will be required to exercise its charging liens pursuant to the Trust Documents. This complex and cumbersome process would create undue delay and would dilute recoveries to bondholders -- a result that Wilmington Trust would like to avoid.

32. In light of Wilmington Trust's extensive involvement, cooperation and engagement in these bankruptcy proceedings, both as a member of the Creditors' Committee and as Guarantee Trustee and Indenture Trustee on behalf of its bondholder constituents, Wilmington Trust submits that the fees and expenses that were incurred in connection with its participation in these complex cases are reasonable.

33. As set forth above, all throughout these proceedings Wilmington Trust and its professionals worked diligently to avoid duplication of work and consistently relied upon counsel to the Creditors' Committee to perform the bulk of the Creditors' Committee work and analysis of complex legal issues throughout these cases. As such, unnecessary and duplicative work was avoided. For these reasons, the requested compensation for fees and expenses is reasonable in light of the nature, extent and value of such services and should therefore be approved.

## NO PRIOR REQUEST

34. Wilmington Trust has not made a previous application for the relief requested herein to this or any other Court.

## NOTICE

35. Notice of this Second Motion will be given to: (i) counsel to the Debtors; (ii) the Office of the United States Trustee for the District of Delaware; (iii) counsel for the Creditors' Committee; (iv) counsel for the Equity Committee; and (v) all parties that have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. Wilmington Trust submits that no further notice of this Second Motion is required.

## CONCLUSION

WHEREFORE, Wilmington Trust respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit D**, (i) allowing and partially liquidating the CCB Guarantee Claims and CCB Compensation and Indemnity Claims in the amount of $548,736.65 ; and (ii) granting Wilmington Trust such other and further relief as the Court deems just and proper.

Dated: August 17, 2011
       Wilmington, Delaware

    Respectfully submitted,

    */s/ Christopher A. Ward*
    Christopher A. Ward
    Polsinelli Shughart PC
    222 Delaware Avenue, Suite 1101
    Wilmington, Delaware 19801
    Tel: 302-252-0922
    Fax: 302-252-0921
    cward@polsinelli.com

    and

    Andrew I. Silfen
    Leah M. Eisenberg
    Arent Fox LLP
    1675 Broadway
    New York, NY 10019
    Tel: 212-484-3900
    Fax: 212-484-3990
    silfen.andrew@arentfox.com
    eisenberg.leah@arentfox.com

    **Counsel to Wilmington Trust Company, solely in its capacities as Indenture Trustee and Guarantee Trustee**