# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WASHINGTON MUTUAL, INC., *et al.*, | ) | |
| | ) | |
| | ) | Case No. 08-12229 (MFW) |
| | ) | |
| Debtors, | ) | |
| | ) | Jointly Administered |
| | ) | |
| | ) | Hearing Date: September 6, 2011 at 2:00 p.m. (ET) |
| | ) | Objection Deadline: August 29, 2011 at 4:00 p.m. (ET) |

## MOTION OF WELLS FARGO BANK, N.A., IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE AND SUCCESSOR GUARANTEE TRUSTEE, FOR ENTRY OF AN ORDER FURTHER PARTIALLY LIQUIDATING AND ALLOWING THAT ASPECT OF ITS PROOF OF CLAIM <u>RELATING TO THE TRUSTEE'S FEES AND EXPENSES</u>

Wells Fargo Bank, National Association, solely in its capacity as successor Indenture Trustee (the "**PIERS Trustee**") under the Indenture dated as of April 30, 2001 (the "**Base Indenture**"), between Debtor Washington Mutual, Inc. ("**WMI**") and The Bank of New York (**"BNY"**), as initial Trustee, as supplemented by the First Supplemental Indenture dated as of April 30, 2001 (the "**Supplemental Indenture**," and together with the Base Indenture, the "**Indenture**"), and under that certain Guarantee Agreement, dated as of April 30, 2001, between WMI as Guarantor, and BNY as initial Guarantee Trustee, hereby moves (the "**Motion**") pursuant to sections 501, 502, 1123(b)(6) and 1129(a)(4) of title 11 of the United States Code (the "**Bankruptcy Code**") and pursuant to this Court's Opinion dated January 7, 2011 (the "**Opinion**") (Dkt. No. 6528), for entry of an order: (i) further allowing and partially liquidating the claim for fees and expenses of the PIERS Trustee (the "**Fees Claim**") that was asserted in an unliquidated amount in the proof of claim filed by the PIERS Trustee on March 30, 2009 (Claim No. 2134) (the "**Proof of Claim**"), for the period of April 1, 2011 through and including July 31,

NY924112.2
208546-10014

2011 (the "**Second Allowance Period**"); and (b) granting the PIERS Trustee such other and further relief as the Court deems just and proper. In support of the Motion, the PIERS Trustee respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This is a core proceeding under 28 U.S.C. §157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

A. <u>The PIERS Securities and Prior Motion of the PIERS Trustee</u>

2. On or about April 30, 2001, WMI entered into the Indenture, with Bank of New York ("**BNY**") as initial Indenture Trustee. Pursuant to the Indenture, WMI issued $1.15 billion in face amount of its 5.375% Junior Subordinated Deferrable Interest Debentures due July 1, 2041 (the "**Debentures**").

3. In accordance with the Amended and Restated Declaration of Trust dated as of April 30, 2001 (the "**Trust Agreement**"), by WMI, as Sponsor, BNY, as Property Trustee, The Bank of New York (Delaware), as Delaware Trustee, and the Administrative Trustees named therein, Washington Mutual Capital Trust 2001 ("**WMCT**") was established for the purpose of purchasing the Debentures from WMI. WMCT did in fact purchase and became the owner of the Debentures.

4. In order to obtain the funds necessary to purchase the Debentures, WMCT sold Units (as defined in the Trust Agreement) to investors. Each of the Units consisted of a Preferred Security of WMCT and a warrant to purchase shares of common stock of WMI at any time prior to the close of business on May 3, 2041. The Trust also issued Common Securities (as

defined in the Trust Agreement, and together with the Preferred Securities, the "**Trust Securities**"), which were purchased by WMI. Each of the Preferred Securities had a face value of $50, but was issued at an initial purchase price of $32.33 reflecting the original issue discount.

5. The Trust expended all or substantially all of the proceeds of the sale of the Trust Securities to purchase the Debentures. As more fully set forth in the Guarantee Agreement between WMI and BNY, as Guarantee Trustee, WMI guaranteed certain obligations relating to the Trust and the Trust Securities.

6. WMI and WMI Investment Corp. (together, the "**Debtors**") commenced these cases on September 26, 2008 (the "**Petition Date**") by filing voluntary petitions under chapter 11 of the Bankruptcy Code. The Debtors have continued to operate their businesses and manage their affairs pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. By Instruments of Resignation, Appointment and Acceptance dated as of October 14, 2008, Wells Fargo became the successor Indenture Trustee and the successor Guarantee Trustee.

8. Section 607 of the Indenture requires WMI "to pay the [PIERS] Trustee from time to time reasonable compensation for all services rendered by it hereunder" and to "reimburse the [PIERS] Trustee upon its request for all reasonable expenses, disbursements and advances incurred or made by the [PIERS] Trustee in accordance with any provision of this Indenture (including the reasonable compensation and the expenses and disbursements of its agents and counsel)...." A copy of the relevant provisions of the Base Indenture is attached as Exhibit A. Section 607 also provides for a charging lien: "[a]s security for the performance of the obligations of [WMI], the [PIERS] Trustee shall have a claim prior to the Debt Securities

upon all property and funds held or collected by the [PIERS] Trustee as such" except for funds held in trust for payment of principal or interest on the underlying securities.

9. Section 607 further provides that the claims of the PIERS Trustee for payment of its fees and expenses are not subject to the subordination provisions of the Indenture. Indeed, pursuant to Section 506, all monies collected by the PIERS Trustee on account of PIERS claims must first be applied to the payment of the PIERS Trustee's fees and expenses before such funds are to be applied to the payment of senior claims.

10. On October 15, 2008, the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors (the "**Creditors' Committee**"). The PIERS Trustee was appointed as a member of the Creditors' Committee on such date.

11. The PIERS Trustee retained the law firm of Loeb & Loeb LLP ("**Loeb**") to act as its primary legal counsel during the bankruptcy proceedings. The PIERS Trustee subsequently retained Fox Rothschild LLP ("**Fox Rothschild**") and Loizides, P.A. (**"Loizides"**)[1] as its Delaware counsel.

12. On May 5, 2011, the PIERS Trustee filed its Motion (the "**First Motion**") for Entry of an Order (i) Allowing and Partially Liquidating That Aspect of the Wells Fargo Proof of Claim Relating to the PIERS Trustee's Fees and Expenses and (ii) Establishing a Protocol for the Review Additional Trustee Fees and Expenses [Docket No. 7382], for the period of October 2008 through March 31, 2011. The Piers Trustee withdrew its request in the First Motion for the establishment of streamlined procedures to liquidate the PIERS Trustee's claim for fees and expenses that were incurred subsequent to March 31, 2011.

---

[1] The PIERS Trustee retained Loizides in June 2011 to address certain conflict issues that arose.

13. No objections to such partial allowance were filed or interposed and on June 8, 2011, the Court entered an Order [Docket No. 7875] partially liquidating and allowing the Fees Claim in the amount of $2,592,857.97.

14. In the First Motion, the PIERS Trustee summarized the unique and challenging roles that it and its counsel have played in these cases, both in serving on the Creditors' Committee, and, as trustee for all of the PIERS holders. The PIERS Trustee incorporates the First Motion, a copy of which, without exhibits, is attached as Exhibit B, and directs the Court to the discussion in paragraphs 12 – 31 thereof concerning the PIERS Trustee's and its professionals involvement in these cases.

B. The Second Allowance Period of April 1, 2011 – July 31, 2011.

15. Since March 31, 2011, Thomas M. Korsman, Vice President in the Corporate, Municipal & Escrow Solutions group of Wells Fargo Bank, N.A., has continued to perform the bulk of the work on behalf of the PIERS Trustee during the Second Allowance Period. In accordance with industry practice and as reflected in the invoices appended to this Motion as Exhibit C, the PIERS Trustee bills for the time spent by Mr. Korsman and its other professional administrators providing default administration services at an hourly rate. The PIERS Trustee, through Mr. Korsman and its professionals, continued to play an active role in these cases during the Second Allowance Period. Among other things, Mr. Korsman participated in numerous meetings with the Debtors and other parties during the extensive settlement discussions with the Official Committee of Equity Security Holders (the "**Equity Committee**") and reviewed and commented on the many documents drafted and re-drafted in connection therewith. Mr. Korsman also continued to communicate with PIERS holders and reviewed various pleadings filed on behalf of the PIERS Trustee and the Creditors' Committee in connection with plan

confirmation. Mr. Korsman personally attended every Creditors' Committee meeting or conference call during the Second Allowance Period.

16. The majority of Loeb's services during the Second Allowance Period were performed by two attorneys, Walter H. Curchack and Vadim J. Rubinstein, partners at the firm, who were assisted mainly by the Loeb's associates. As reflected in Loeb's invoices attached hereto as <u>Exhibit D</u>, Loeb attorneys spent significant time and effort during the Second Allowance Period preparing pleadings to address legal issues related to the PIERS, analyzing pleadings filed by others in connection with the current plan process, as well as attending the confirmation hearing. Loeb attorneys also dedicated significant time analyzing various terms sheets, corporate and financing documents, and plan-related documents in connection with the failed settlement negotiations with the Equity Committee. Loeb attorneys continued to participate in Creditor Committee calls and meetings and reviewed various draft pleadings prepared by the Creditors Committee. Finally, Loeb prepared the First Motion and attended the hearing with respect thereto.

17. At the inception of the case, the PIERS Trustee engaged Fox Rothschild to represent it as local Delaware counsel. Copies of Fox Rothschild's invoices for the Second Allowance Period are attached as <u>Exhibit E</u>. During the Second Allowance Period, Fox Rothschild assisted in filing pleadings on behalf of the PIERS Trustee and attended hearings, including the hearing in connection with the First Motion and the confirmation hearings.

18. In June 2011, the PIERS Trustee retained Loizides to act as local Delaware conflicts counsel. Copies of Loizides' invoices for the Second Allowance Period are attached as <u>Exhibit F</u>. Loizides assisted the PIERS Trustee in filing and serving pleadings during the Second

NY924112.2
208546-10014                                6

Allowance Period on issues where potential conflicts of interests appeared, but to limit expenses Loizides attorneys did not attend hearings.

19. As of July 31, 2011, the PIERS Trustee is owed $909,847.05 in fees and expenses that were incurred during the Second Allowance Period, which consists of: (a) $78,772.50 for fees of the PIERS Trustee; (b) $776,786.04 for the fees and expenses of Loeb, which consist of (i) legal fees in the amount of $760,786.04 and (ii) expenses in the amount of $16,433.54; (c) $52,552.86 for the fees and expenses of Fox Rothschild, which consist of (i) legal fees in the amount of $ 51,580.00 and (ii) expenses in the amount of $972.86; and (d) $ 1,735.65 for the fees and expenses of Loizides, which consist of (i) legal fees in the amount of $ 1,717.50 and (ii) expenses in the amount of $18.15.

## RELIEF REQUESTED

20. Section 1129(a)(4) of the Bankruptcy Code provides, in pertinent part, that, "[t]he court shall confirm a plan only if all of the following requirements are met . . . (4) Any payment made or to be made . . . by the debtor . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." 11 U.S.C. 1129(a)(4). Section 1123(b)(6) of the Bankruptcy Code provides that a plan may include any provision not inconsistent with any applicable provisions of the Bankruptcy Code. Pursuant to sections 1129(a)(4) and 1123(b)(6) of the Bankruptcy Code and in accordance with the Opinion and Section 32.12 of the Modified Plan (as hereinafter defined),[2] the PIERS Trustee respectfully seeks further allowance of its Fees Claim for the Second Allowance Period.

---

[2] The PIERS Trustee is not seeking payment at this time but simply a further partial allowance of its Fees Claim. Such claim would be paid in accordance with the Modified Plan or any other plan that may be confirmed by the Court.

A. That Aspect of the PIERS Trustee's Proof of Claim Seeking Payment of its Fees and Expenses Should be Further Allowed and Partially Liquidated

21. Section 502(a) of the Bankruptcy Code provides:

> A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

11 U.S.C. § 502(a). Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that a properly executed and filed proof of claim is *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). Under the Bankruptcy Code, an indenture trustee is permitted to file a proof of claim. *See* 11 U.S.C. § 501(a).

22. Because the PIERS Trustee has a valid pre-petition contract, i.e. the Indenture, Section 607 of which authorizes payment of fees and expenses, the Fees Claim element of the Proof of Claim should be further allowed and partially liquidated, as the Court has already ruled in connection with the First Motion. *See generally, Travelers Cas. & Sur. Co. v. Pacific Gas & Elec. Co.* ("***Travelers***"), 549 U.S. 443, 448-54 (2007).[3]

23. The allowance of the relief requested in this Motion at this time is important to ensure a seamless and efficient distribution under the Modified Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, dated February 7, 2011 (the "**Modified Plan**"). Pursuant to Section 506 of the Indenture, all monies collected

---

[3] Since the Supreme Court decision in *Travelers*, numerous courts have regularly allowed contract-based attorney fees incurred post-petition as part of a creditor's pre-petition general unsecured claim *See, e.g., In re Sokolik,* 635 F.3d 261 (7th Cir. 2011) (allowing as a general unsecured claim for attorneys' fees and costs of collection stemming from a pre-petition contract); *Ogle v. Fidelity & Deposit Co. of Md.*, 586 F.3d 143 (2d Cir. 2009) (holding that an unsecured creditor may recover post-petition attorneys' fees that were contemplated by a pre-petition contract); *SNTL Corp. v. Centre Ins. Co.*, 571 F.3d 826 (9th Cir. 2009) (overruling bankruptcy court and allowing unsecured creditor's claim for post-petition attorneys' fees based on a pr-petition contract); and *In re Oakwood Homes Corp.*, 394 B.R. 352, 356 (Bankr. D.Del. 2008) (recognizing that, pursuant to *Travelers*, "attorneys fees authorized by prepetition contracts may be awarded even though they are incurred in post-petition litigation," but declining to permit creditor to set off its attorney fees because those particular fees were not contemplated by the pre-petition indemnity agreement).

by the PIERS Trustee on account of PIERS claims for distribution must first be applied to the payment of the PIERS Trustee's fees and expenses under Section 607 before such funds may be turned over towards the payment of claims that are contractually senior to those of the PIERS holders. Moreover, under the Indenture, the PIERS Trustee has a lien upon all property and funds that it collects for distribution that is superior to the rights of the PIERS holders. Thus, absent the Court's determination of the reasonableness of its fees and expenses prior to distribution, the PIERS Trustee may have no choice but to exercise its charging lien and to retain sufficient funds to satisfy the PIERS Trustee's claims before surrendering any funds to senior creditors. This could delay and dilute the distribution to such senior creditors and cause unnecessary administrative complexities for the PIERS Trustee, the other indenture trustees and the Debtors, a result which the PIERS Trustee and, we believe, the Debtors, the other indenture trustees involved in these cases and their respective holders, naturally seek to avoid.

### B. The Fees and Expenses Sought Herein are Reasonable

24. The compensation provisions in the Indenture contemplate, and, indeed, mandate that the PIERS Trustee will expend efforts and funds in fulfilling its contractual obligations during the entire term of any debt issued thereunder, including a possible bankruptcy of the issuer. The fees and expenses incurred by the PIERS Trustee are reasonable, particularly in light of the complexity of these cases, the position of the PIERS in WMI's capital structure and the scope of the PIERS Trustee's involvement in its capacity as an indenture trustee and as a member of the Creditors' Committee.

25. Loeb has diligently tried to avoided duplication of services and has kept its participation to the level necessary and appropriate in light of its role as indenture trustee for the fulcrum security in this case. While Loeb generally has relied on research performed by counsel

to the Creditors' Committee with respect to certain generally applicable legal issues, as the Court is aware, there are many issues that are particular to (or of particularly significant consequence to) the PIERS holders, thus necessitating independent analysis.

26. Thus, the PIERS Trustee has continued to prepare and file its own pleadings on behalf of the PIERS holders as appropriate, and to advocate for its constituency during the Second Allowance Period. This included arguing issues such as the scope of the subordination provisions of the Indenture, the impact of the Court's post-petition interest rate decision on the recoveries of PIERS holders, the interplay of sections 726(a) and 510(b) of the Bankruptcy Code, the Modified Plan's election mechanism for Reorganized Equity Interests (as defined in the Modified Plan) and the proper characterization of the PIERS as debt.

27. The services and expenses for which compensation is sought in this Motion were necessary and beneficial to the performance of the PIERS Trustee's obligations as indenture trustee, as well as its services as a member of the Creditors' Committee. The services rendered were performed effectively, efficiently, and economically and were, and continue to be, designed with the single purpose of maximizing recoveries of general unsecured and PIERS creditors. Further, the requested compensation is reasonable in light of the nature, extent and value of the services rendered. Therefore, given the circumstances of these cases, it is respectfully submitted that the fees and expenses incurred by the PIERS Trustee during the Second Allowance Period are reasonable and should be allowed in full.

**NO PRIOR REQUEST**

28. The PIERS Trustee has not made a previous application for the relief requested herein with respect to the Second Allowance Period to this or any other Court.

# NOTICE

29. Notice of this Motion will be given to: (i) counsel to the Debtors; (ii) the Office of the United States Trustee for the District of Delaware; (iii) counsel for the Official Committee of Unsecured Creditors; (iv) counsel for the Equity Committee; and (v) electronically through the ECF system, all parties that have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The PIERS Trustee submits that no further notice of this Motion is required.

WHEREFORE, the PIERS Trustee respectfully requests that this Court enter an order, substantially in the form attached hereto as <u>Exhibit G</u>, (i) further allowing and partially liquidating the Proof of Claim in the amount of $909,847.05; and (ii) granting the PIERS Trustee such other and further relief as the Court deems just and proper.

Dated: August 17, 2011

Respectfully submitted,

**FOX ROTHSCHILD LLP**

  /s/ Neal J. Levitsky
Neal J. Levitsky, Esquire (No. 2092)
Seth A. Niederman, Esquire (No. 4588)
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, Delaware  19801
302.622-4200

-and-

**LOEB & LOEB LLP**
Walter H. Curchack
Vadim J. Rubinstein
345 Park Avenue
New York, New York 10154
(212) 407-4000

*Counsel for Wells Fargo Bank, N.A.,*
*in its Capacity as Indenture and Guarantee Trustee*