UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------------x
                                                               :
*In re*                                                        :    **Chapter 11**
                                                               :
WASHINGTON MUTUAL, INC., et al.,[1]                            :    **Case No. 08-12229 (MFW)**
                                                               :
          Debtors.                                             :    **(Jointly Administered)**
                                                               :
                                                               :    Re: Docket No. 8672
---------------------------------------------------------------x

## DEBTORS' LIMITED OPPOSITION
## TO MOTION OF AURELIUS CAPITAL MANAGEMENT LP,
## FOR LEAVE TO APPEAL UNDER 28 U.S.C. § 158(a) WITH RESPECT TO
## DETERMINATION OF APPROPRIATE RATE OF POSTPETITION INTEREST

Washington Mutual, Inc. ("WMI") and WMI Investment Corp., as debtors and debtors in possession (collectively, the "Debtors"), file this limited opposition to the Motion of Aurelius Capital Management LP ("Aurelius") for Leave to Appeal Under 28 U.S.C. § 158(a) [D.I. 8672] (the "Motion"), and respectfully represent as follows:

### I. PRELIMINARY STATEMENT

1. No basis exists for Aurelius to appeal the portion of the Bankruptcy Court's September 13, 2011 order denying confirmation [D.I. 8613] (the "September Order") that determines that postpetition interest on claims should be paid at the federal judgment rate (the "Federal Judgment Rate Ruling"). First, the Federal Judgment Rate Ruling, which appears within an order *denying* confirmation, is not a final order appealable as of right. Second, Aurelius cannot satisfy the requirements for a permissive appeal under 28 U.S.C. § 158(a)(3) regarding the Federal Judgment Rate Ruling. Accordingly, the Court should deny Aurelius's

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.

motion to the extent it seeks appeal the Bankruptcy's Court's determination that postpetition interest on claims should be paid at the federal judgment rate.[2]

2. The Bankruptcy Court's September Order denying confirmation decided a wide array of issues with respect to the Debtors' Modified Plan (as defined below), including, among others, whether the Bankruptcy Court had jurisdiction to hear the confirmation of the Modified Plan, the approval of the liquidating trustee fees, the makeup of the liquidating trust advisory board, the Global Settlement Agreement (as defined below), the valuation of the Debtors, the good faith of the plan proponents, various issues related to postpetition interest, the use of releases in exchange for distributions, and whether the Equity Committee should be granted standing to pursue claims against various creditors. Several of these issues require additional proceedings in the Bankruptcy Court; and, in fact, the Bankruptcy Court has ordered the parties to mediation in an attempt to resolve as many of these issues as possible so that the Modified Plan promptly can be confirmed.

3. To the extent Aurelius now seeks to appeal the Federal Judgment Rate Ruling within the September Order, Aurelius's interlocutory appeal of the interest rate issue is inappropriate at this juncture in these chapter 11 cases. Appeal of this issue must await entry of a final judgment in the Bankruptcy Court. The September Order leaves additional work to be completed in these chapter 11 cases, rendering confirmation issues in flux, and an interlocutory appeal on the federal judgment rate issue would not expedite a decision on the Modified Plan but

---

[2] Aurelius also seeks leave to appeal the Bankruptcy Court's determination that the Equity Committee has standing to commence and prosecute an action against Aurelius and certain other creditors on behalf of the Debtors' estates. The Debtors do not oppose this portion of Aurelius's motion for leave and have in fact submitted a joinder to the October 4, 2011 Motion of the Official Committee of Unsecured Creditors for Leave to Appeal from the Portion of the September 13, 2011 Opinion and Order of the Bankruptcy Court Granting Standing to the Equity Committee to Prosecute Claims for Equitable Allowance [D.I. 8727], which establishes why permission to appeal this portion of the Bankruptcy Court's September 13, 2011 order is warranted and should be granted.

would waste judicial and estate resources.[3] For these reasons, the Court should find that (i) the September Order, as it relates to the federal judgment rate issue, is not a final order appealable as a matter of right, and (ii) Aurelius should not be granted leave to appeal the Federal Judgment Rate Ruling.

## II. BACKGROUND

4. On September 26, 2008 (the "Commencement Date"), each of the Debtors commenced with the Bankruptcy Court a voluntary case pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On October 15, 2008, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee"). On January 11, 2010, the U.S. Trustee appointed an official committee of equity security holders in these chapter 11 cases (the "Equity Committee").

6. On February 8, 2011, the Debtors filed the *Modified Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code*, dated February 7, 2011 [D.I. 6696] (as has and may be further amended, the "Modified Plan"), premised upon that certain Second Amended and Restated Settlement Agreement, dated as of February 7, 2011, by and among the Debtors, JPMorgan Chase Bank, National Association

---

[3] There is no inconsistency in the Debtors' position that the Standing Ruling (as defined below) is ripe for immediate appellate review while the Federal Judgment Rate Ruling issue must await entry of a final judgment. The Bankruptcy Court's Standing Ruling granted a distinct motion filed by the Equity Committee seeking that relief. The Standing Ruling, and the claims that the Equity Committee has been granted standing to pursue, are distinct from confirmation issues. Resolving them now, rather than at the conclusion of a costly and lengthy litigation on the merits, will advance the bankruptcy cases and preserve estate assets. Thus, even if the order is interlocutory as to the standing issue, appealing the Standing Ruling order now meets the requirements for a permissive appeal under 28 U.S.C. 158(a)(3).

("JPMC"), the Federal Deposit Insurance Corporation (the "FDIC"), as receiver (the "FDIC Receiver") for Washington Mutual Bank ("WMB") and in its corporate capacity ("FDIC Corporate"), and the Creditors' Committee (as amended, the "Global Settlement Agreement").

7. The Modified Plan defined a Postpetition Interest Claim, in part, as:

> A Claim against any of the Debtors or the Debtors' estates for interest accrued in respect of an outstanding obligation or liability that is the subject of an Allowed Claim during the period from the Petition Date up to and including the date of final payment in full of such Allowed Claim, calculated at the contract rate set forth in any agreement related to such Allowed Claim . . . .

Modified Plan § 1.151 (emphasis added).

8. Certain parties in interest objected to the Modified Plan on the basis that it failed to comply with the Bankruptcy Code, including the best interests of creditors test, because it provided for the payment of postpetition interest on Creditors' Claims (as defined in the Modified Plan) at their contract rate of interest rather than at the federal judgment rate.[4]

9. Commencing on July 13, 2011, the Bankruptcy Court held a hearing to consider confirmation of the Modified Plan. On September 13, 2011, the Bankruptcy Court entered an Opinion [D.I. 8612] (the "September Opinion") and related Order [D.I. 8613] (the "September Order") (a) finding the Bankruptcy Court has jurisdiction to approve the Second Amended and Restated Settlement Agreement and confirm the Modified Plan, (b) reaffirming its conclusion that the Global Settlement Agreement (and its successor Second Amended and Restated Settlement Agreement) and the transactions contemplated therein are fair, reasonable

---

[4] See, e.g., *Objection to Confirmation of the Modified Sixth Amended Plan of Affiliated Debtors by Class Representatives of Dime Litigation Tracking Warrants*, dated June 16, 2011 [D.I. 7912]; *Objection of the Official Committee of Equity Security Holders to Confirmation of the Modified Sixth Amended Plan of Reorganization*, dated July 1, 2011 [D.I. 8192]; *Supplemental Objection of the Consortium of Trust Preferred Security Holders to Confirmation of the Modified Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, Filed on February 7, 2011*, dated May 13, 2011 [D.I. 7480].

and in the best interests of the Debtors, the Debtors' Creditors, and the Debtors' chapter 11 estates, (c) finding, among other things, that the Modified Plan (i) was not proposed in bad faith (satisfying the good faith requirement under section 1129(a)(3)), see September Opinion at 73, and (ii) is feasible (satisfying the feasibility requirement under section 1129(a)(11)), see id. at 103, (d) identifying certain modifications in the Modified Plan that, if incorporated, would render the plan confirmable under the requirements of the Bankruptcy Code, and (e) ordering the parties to mediation (the "Mediation"). The September Opinion also granted the Equity Committee's motion for standing to prosecute claims for equitable disallowance against certain creditors, including Aurelius (the "Standing Ruling"). The September Order stayed the Standing Ruling pending mediation.

10. The September Opinion ruled that a debtor may pay postpetition interest to creditors when the debtor is solvent because, pursuant to section 726(a) of the Bankruptcy Code, under a chapter 7 liquidation, unsecured creditors are entitled to postpetition interest on their claims before shareholders may receive any distributions. See September Opinion at 74-75. After discussing conflicting case law concerning whether "the legal rate" due under section 726(a)(5) of the Bankruptcy Code means the federal judgment rate or the contract rate, the Bankruptcy Court ruled that the "federal judgment rate is the appropriate rate to be applied under section 726(a)(5), rather than the contract rate." See id. at 77-78.

11. On September 27, 2011, Aurelius filed its Motion. The Motion seeks, among other things, leave to appeal the September Opinion with respect to the Federal Judgment Rate Ruling. The Motion asserts that the September Opinion is a final order appealable as of right and, in the event that the District Court finds otherwise, that leave of appeal should be granted.

12. The September Order expressly provided for a further status conference and at that conference, held on October 6, 2011, the Bankruptcy Court ruled that all issues remaining as an impediment to confirmation, including the Federal Judgment Rate Ruling, and all issues related to the Standing Ruling should be mediated.

13. The Debtors expect that the Bankruptcy Court will enter a mediation order shortly, which, among other things, required the parties subject to mediation, including the Equity Committee and Aurelius, to submit mediation statements to the Court-appointed mediator. The mediation statements will be required to outline the issues that each party believes remain as an impediment to confirmation of the Modified Plan.

### III. ARGUMENT

**A. No Appellate Jurisdiction Exists Because the Federal Judgment Rate Ruling Contained in the September Order Denying Confirmation Is Not Final and Appealable Under the Collateral Order Doctrine.**

14. Aurelius has failed to show that the September Order as it relates to the Federal Judgment Rate Ruling is a final order from which an appeal can be taken as a matter of right. The September Order is only a step in the process of confirmation of a plan of reorganization in these chapter 11 cases, and an appeal from the Federal Judgment Rate Ruling will create needless litigation without furthering the confirmation process. Indeed, it is for this very reason that, as a general rule, orders denying confirmation are not final judgments, orders, or decrees appealable under 28 U.S.C. § 158(a)(1). *See, e.g., Flor v. Bot Fin. Corp. (In re Flor)*, 79 F.3d 281, 283 (2d Cir. 1996).

15. When, as here, proceedings can continue and the petition has not been dismissed, "the bankruptcy court['s] den[ial] or withhold[ing of] confirmation of a proposed . . . plan . . . is not final for purposes of appeal." *Simons v. Fed. Deposit Ins. Co. (In re Simons)*, 908

F.2d 643, 644 (10th Cir. 1990). The Bankruptcy Court, in denying confirmation, did not foreclose the possibility that the Debtors may reconfigure the Modified Plan so that it may be confirmed in the future. Indeed, the Debtors, through their participation in the Mediation, are diligently working on modifications to the Modified Plan and pursuing its confirmation. *See e.g., Bentley v. Boyajian (In re Bentley)*, 266 B.R. 229, 233 (B.A.P. 1st Cir. 2001) (order denying confirmation "was not itself a final order because the Debtors remained free to propose an alternate plan (which, if confirmed, might have mooted the issues arising from the order now on appeal)") (citations omitted). "In the case of a denial of confirmation of a plan, . . . if the order addressed an issue that left the debtor able to file an amended plan (basically to try again)— appellate jurisdiction would be lacking." *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277, 283 (5th Cir. 2000).

16. The collateral-order doctrine does not alter the analysis. That doctrine permits review of a prejudgment order only when the order to be reviewed (i) conclusively determines the disputed question; (ii) resolves an important issue completely separate from the merits of the action; and (iii) would be effectively unreviewable on appeal from a final judgment. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546-47 (1949); *Harris v. Kellogg Brown & Root Servs., Inc.*, 618 F.3d 398, 401 (3d Cir. 2010). All three prongs of the test must be met before collateral-order review is appropriate. *Harris*, 618 F.3d at 410. Moreover, in applying the doctrine, the Supreme Court has stressed that "it must 'never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment is entered.'" *Mohawk Indus. v. Carpenter*, 130 S.Ct. 599, 605 (2009) (citations omitted). "Permitting piecemeal, prejudgment appeals, we have recognized, undermines 'efficient judicial administration' and encroaches upon the prerogatives of [trial] court judges, who play a 'special

role' in managing ongoing litigation." *Id.* (citations omitted). Accordingly, an argument "t[h]at a ruling 'may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment . . . has never sufficed." *Id.* (citing *Will v. Hallock*, 546 U.S. 345, 352-53 (2006)).

17. Here, Aurelius fails to show that the Federal Judgment Rate Ruling will effectively be unreviewable on appeal if the Debtors' cases continue. *See, e.g., Cohen*, 377 U.S. at 546-47. If the Bankruptcy Court adheres to its Federal Judgment Rate Ruling in further confirmation proceedings, any plan of reorganization presented by the Debtors will include the federal judgment rate as the appropriate rate of postpetition interest to be paid to creditors. Hence, this issue will not be effectively unreviewable on appeal from a final judgment but, to the contrary, will be squarely presented at that time, Aurelius, therefore, cannot establish finality under the collateral-order doctrine and may not take an appeal from the September Order as a matter of right. Such an appeal not only is impermissible, but also would needlessly burden the Court and the Debtors' estates with a piecemeal appeal that can and must be heard following entry of a final judgment.

**B.   The Third Circuit's Purportedly "Flexible" Finality Standards Do Not Authorize an Appeal on the Federal Judgment Rate Ruling.**

18. Even under the Third Circuit's "flexible" approach to finality, the factors the Court must consider all weigh against appellate review of the Federal Judgment Rate Ruling: (i) whether the order leaves additional work to be done by the bankruptcy court; (ii) whether the order implicates purely legal issues; (iii) the impact of the bankruptcy court's order upon the assets of the debtor's estate; (iv) the necessity for further fact-finding on remand to the bankruptcy court; (v) the preclusive effect of the district court's decision on the merits of subsequent litigation; and (vi) the furtherance of judicial economy. *In re Kaiser Group Int'l*, 400

B.R. 140, 143 (D. Del. 2009) (denying leave to appeal discovery order because underlying claims remained pending in bankruptcy court and order could be reviewed after final resolution of the action).

19. For example, as proved by the Mediation Order, the September Opinion leaves additional work to be completed prior to the confirmation of a plan; and, an appeal of the Federal Judgment Rate Ruling at this point, when other confirmation-related issues may be up on appeal following an ultimate confirmation of a plan of reorganization, will inevitably and needlessly lead to multiple appeals. Waiting for confirmation will allow the Court and the Debtors' estates to preserve resources and efficiently address all confirmation-related appeals at once, as any such appeals will arise from the same context and same underlying set of facts as involved in the interlocutory Federal Judgment Rate Ruling. *See Broken Bow Ranch v. Farmers Home Admin. (In re Broken Bow Ranch)*, 33 F.3d 1005, 1008 (8th Cir. 1994) ("bankruptcy court orders refusing to confirm plans of reorganization . . . were not final decisions" where the court "retained jurisdiction and had described what type of modified plan [it] would be willing to confirm"); *In re Simons*, 908 F.2d at 645 (noting that "the debtor, unsuccessful with one reorganization plan, may always propose another plan[,] . . . a prospect which negates any determination of finality."); *In re MCorp Fin. Inc.*, 139 B.R. 820, 822-23 (S.D. Tex. 1992) (holding that denial of confirmation "does not end the bankruptcy proceedings or terminate the particular interests of the debtors or the creditors[;] . . . this confirmation is a continuing process.").

20. The Third Circuit's decision in *In re Armstrong World Industries, Inc.*, 432 F.3d 507 (3d Cir. 2005), does not point to a different result. The Third Circuit in *Armstrong* exercised jurisdiction over an appeal from an order denying confirmation in circumstances

readily distinguishable from Aurelius's appeal. Specifically, in *Armstrong*, it was the *debtor* that appealed the order denying confirmation in lieu of modifying the plan per the bankruptcy court's order. *Id.* at 508-09. Here, by contrast, the Debtors are diligently working toward confirmation of the Modified Plan. Thus the "practical considerations in the interests of judicial economy" that warranted review in *Armstrong*, are not present here. *Id.* at 511.

21. Additionally, the order denying confirmation in *Armstrong* would have been effectively unreviewable absent interlocutory review, because the debtor/plan proponent's only alternative would have been to propose a different plan conforming to the bankruptcy court's order—precluding a later challenge to the initial denial of confirmation. In contrast, an appeal here would be premature and unnecessary to preserve review of the Federal Judgment Rate Ruling, because any plan of reorganization the Debtors present will incorporate the Bankruptcy Court's findings regarding the appropriate rate of postpetition interest. If and when the Bankruptcy Court confirms the plan, any party aggrieved by the applicable interest rate can appeal at that time. However "flexible" Third Circuit's standards on finality may be, established precedent confirms that no jurisdiction exists here.

### C. Aurelius Has Not Satisfied and Cannot Satisfy the Requirements for a Permissive Interlocutory Appeal of the September Order.

22. Because the September Order is not final, it is not appealable as a matter of right and may be appealed only as an interlocutory order with permission of the appellate court under 28 U.S.C. §158(a)(3). *See In re Phila. Newspapers, LLC*, 418 B.R. 548, 556 (E.D. Pa. 2009). Permission for Aurelius to appeal the Federal Judgment Rate Ruling should be denied here, because there are no "exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. & Hudson Ry. Co.*, 96 B.R. 469, 473 (D. Del. 1989). Specifically, the Appeal does not involve (i) a controlling

question of law, (ii) upon which there are substantial grounds for difference of opinion, that would (iii) expedite a decision on confirmation of the Debtors' proposed plan. *See, e.g., id.* at 473-72; *In re Phila. Newspapers*, 418 B.R. at 557 (analogizing to 28 U.S.C. § 1292(b) standards in permissive bankruptcy appeal under 28 U.S.C. § 158(a)); *Luke Oil Co. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 407 B.R. 553, 556-57 (D. Del. 2009) (same). Aurelius has the burden of establishing that its Appeal satisfies *all* three factors. *In re Del. & Hudson Ry. Co.*, 96 B.R. at 473; *see also In re W.R. Grace & Co.*, No. 08-118, 2008 WL 4234339, at *2 n.5 (D. Del. Sept. 4, 2008); *Patrick v. Dell Fin. Servs.*, 366 B.R. 378, 386 (M.D. Pa. 2007).

23. Aurelius's motion does not even attempt to argue that its Appeal would expedite a decision on confirmation of the Debtors' proposed plan, and for that reason alone permission to appeal can and must be denied. *See, e.g., In re Del. & Hudson Ry. Co.*, 96 B.R. at 473. Aurelius argues, instead, that, if it turns out that their challenge to the Federal Judgment Rate Ruling is correct, permitting the Appeal to proceed now will avoid a later appellate reversal of whatever plan the Bankruptcy Court ultimately confirms. Motion at 44. But that is not the standard for a permissive appeal, *see, e.g., In re Del. & Hudson Ry. Co.*, 96 B.R. at 473, as it would transform every interlocutory complaint into an appealable ruling, rather than reserving permissive appeals for cases in which "exceptional circumstances" exist. *Id.* Moreover, allowing Aurelius to present its appeal on the Federal Judgment Rate Ruling at this time will require the estate to use its limited resources not only to focus on moving forward with the Modified Plan, but also to litigate the interlocutory appeal of the Federal Judgment Rate Ruling, which can and must be pursued following a final judgment and at this stage will serve only to impede efficient administration of these cases. The Court should, therefore, deny Aurelius's Motion to the extent it seeks leave to appeal the Federal Judgment Rate Ruling.

## IV. CONCLUSION

24. For the reasons stated above, the Debtors respectfully request that the Court deny, in part, Aurelius's Motion and dismiss Aurelius's Appeal with respect to the Federal Judgment Rate Ruling.

Dated: Wilmington, Delaware
October 11, 2011

By: /s/ [signature]
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marcos A. Ramos (No. 4450)
Travis A. McRoberts (No. 5724)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Brian S. Rosen, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for the Debtors and Debtors In Possession