# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| WASHINGTON MUTUAL, INC., et al.,[1] | Case No. 08-12229 (MFW) |
| Debtors. | Jointly Administered |
|  | Re: Docket No: 8715 |

## OBJECTION OF DAVID SHUTVET TO DEBTORS THIRTY-SECOND MONTHLY APPLICATION OF WEIL, GOTSHAL & MANGES LLP AS ATTORNEYS FOR DEBTORS FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED JULY 1, 2011 THROUGH JULY 31, 2011

Now comes before this honorable court that I, David Shutvet, pro se, am an 'interested party' to this case with basis from my ownership of shares in WMI Common Securities and WMI Preferred Securities. I submit this objection, pursuant to the guidelines of Sections 330 and 331 of the Bankruptcy Code, Local Rule 2016-2, and the Guidelines and Administrative Order provided by the Bankruptcy Reform Act of 1994.

This objection is submitted to this court, as it holds the <u>final</u> authority to <u>award</u> compensation and reimbursement – this power is fully vested, and solely, with the Court.

However, I also reference the <u>parallel</u> role and concurrent *responsibility* of the United States Trustee, under 28 U.S.C. 586(a)(3)(A), to provide that, whenever they deem appropriate, that the United States Trustee will <u>also</u> *review* applications for compensation and reimbursement of expenses.

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 925 Fourth Avenue, Seattle, Washington 98104

However, this court must, as the <u>final</u> authority, take notice of my objections herein, and must ultimately and <u>solely</u>, apply conscience and law to the application for compensation.

Pursuant to the Weil, Gotshal and Manges LLP's "Notice of Thirty-First Fee Application", I am submitting this objection on a timely basis, and to the parties required, before the established Objection Deadline of 10/24/11 at 4:00pm (EDT).

As elaborated further here, I object to the abusive allowances and request for compensation, for professional service charges that have been submitted by the Debtors legal counsel Weil, Gotshal and Manges LLP.

I. **Pursuant to <u>Laffey v. Northwest Airlines, Inc.</u>,[2] that District Court ruled that hourly rates for attorneys practicing civil law in the Washington, DC metropolitan area could be categorized by years in practice and adjusted yearly for inflation.**

The Third Circuit Court of Federal Appeals adopted the Adjusted Laffey Matrix.[3] The Court of Appeals noted that the District Court "reviewed both indices [the DOJ Matrix and the Adjusted Laffey Matrix] and decided that [the Adjusted Laffey Matrix] represented a better measure of prevailing rates in Washington, DC.

In re <u>HPL Technologies, Inc. Securities Litigation</u>,[4] that court noted -- "It is the practice of the undersigned judge, however, to rely on official data to determine appropriate hourly rates, **<u>not</u> on an attorney's <u>self-proclaimed</u> rates or declarations regarding hourly rates charged by law firms**. One reliable official source for rates that vary by experience levels is the **<u>Laffey matrix</u>** used in the District of Columbia." (emphasis added) - <u>Garnes v. Barnhardt</u>.[5]

---

[2] 572 F. Supp. 354, 371 (D.D.C. 1983)
[3] <u>Interfaith Community Organization v. Honeywell International, Inc.</u>, 426 F.3d 694 (3rd Cir. 2005)
[4] 366 F.Supp.2d 912, 921 (N. Dist. Cal. 2005)
[5] 2006 U.S. Dist. LEXIS 5938 (N. Dist. Cal. 2006)

### Current Laffey Matrix

| Year | Adjustment Factor | Paralegal/Law Clerk | Years Out of Law School | | | | |
|---|---|---|---|---|---|---|---|
| | | | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/11 – 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10 – 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09 – 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08 – 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |

This matrix is based on the hourly rates allowed by the District Court in <u>Laffey v. Northwest Airlines, Inc.</u>[6] It is commonly referred to by attorneys and federal judges in the District of Columbia as the "Laffey Matrix" or the "United States Attorney's Office Matrix."

The recently updated matrix, supra, identifies the prevailing rates – adjusted for years of service – for the period of 6/1/11 through 5/31/12.

This objection questions this Court of the reasonableness of the fees being charged, to the estate, by Weil, Gotshal and Manges (WGM), and specifically their filing of the Thirty-First Monthly Application for reimbursement of fees.

In the filing for compensation, WGM's Partners & Counsel Blended Attorney Rate is $967. This is nearly 133% above the Laffey range – and this simple percentage comparison assumes, *intentionally erroneously*, that all Partners and Counsel represented have over 20 years of service.

A review of counsel biographies provided by WGM indicates certain Partners and Counsel within the billings as having <u>less</u> than 20 years of service. The incongruity of billing the estate in excess of the Laffey range, at a cost-per-hour further in excess of experience, is obviously excessive.

---

[6] 572 F. Supp. 354 (D.D.C. 1983)

I object to any billing by any WGM Partner, counsel, paralegal, clerk or any other internal or external resource that exceeds the adjusted Laffey guidelines.

II. **In the alternative to the Laffey Matrix, this court may, instead, turn to the Lodestar approach.**

The "Lodestar" approach assesses the reasonableness of requested compensation by comparing it to the court's estimates of necessary time and reasonable rates. In re McMullen[7] – "In arriving at a reasonable number of hours and a reasonable rate, courts will consider the evidence presented and by the court's own experience and knowledge of customary fees and costs charged in comparable cases."[8] "Under this approach, if the requested fee amount is less than the Lodestar baseline, it typically will be allowed in full; if greater than the baseline, the fee may be reduced to the baseline amount."[9]

III. **I object to Weil, Gotshal and Manges billing the estate for researching, preparing and supporting multiple and hopelessly unconfirmable plans.**

Bankruptcy courts have denied compensation for services found to be unnecessary when compensation was sought for preparing and defending a hopelessly unconfirmable plan (In re Rusty Jones, Inc.),[10] and for prosecuting a preference claim after it became apparent that the claim would not yield a net gain to the estate (In re Taxman Clothing Co.)[11]

It is now exceptionally clear, that on behalf of the debtors, WGM has created, filed, and modified, numerous Joint Plan and Global Settlement Agreements and has then subsequently

---

[7] 273 B.R. 558, 562 (Bankr. C.D. Ill. 2002)
[8] Id.
[9] Id.
[10] 134 B.R. 321, 339 – 340 (Bankr. N.D. Ill. 1991)
[11] 49 F.3d 310, 315 – 316 (7th Cir. 1995)

made modifications and amendments to their further changed and updated plans. None of which has been remotely successful. The Debtors, supported by WGM, continue to file and solicit unconfirmable plans which only increase a new flood of objections and increase estate cost. This abused practice has been grossly wasteful of the time and efforts, both of the court and of other counsel involved in this case, and thus continue the unnecessary and wasteful expenses to the estate.

With the recent court Opinion to deny the Debtors' Modified Sixth Amended Joint Plan the Debtor's practice of repetitive billings for proffering fatally flawed plans will continue and their modifications should - in fact must - be addressed by this court. WGM continues to be 'rewarded' by preparing and submitting to this court multiple, and hopelessly unconfirmable plans, yet 'reaping' the benefits for more reimbursed billings, at the further detriment of the very same estate that WGM is duty-bound to protect.

### IV. I object to Weil, Gotshal and Manges billing the estate for items which are typically not allowed under IRS regulations for expensing of costs and/or are routine costs to be borne by employees or the employer as general overhead costs.

In this application for compensation, Weil, Gotshal and Manges, has expensed $22,684. for domestic travel/travel meals, conference meals, and local transportation.

As an example, local <u>limousine</u> travel from home to WGM and return home should not be paid by the estate. IRS rules do not approve the expensing of cost of travel to and from work. This is not an expensed cost in other non-bankruptcy cases, and therefore the estate of WMI should not bear the expense of normal travel from home to work and return. This is a normal cost of employment and should not be paid by the estate. Additionally, $5,319 in just conference meals should be enough to alert this court of abuse.

V.  **I object to the overuse of "Seamless Web Meals" ordered and delivered meals.**

Information is not provided if these meals were part of travel costs, or delivered to home or their office, nor of the reasonable and necessary purpose for billings for food to the estate. This has been abused for years and looks like WGM feeds their whole office with Seamless Web Meals. Many of these Web ordered and delivered meals have been expensed by "WGM" employees that are not full time on this case and bill other clients – this estate must not bear this cost.

VI. **I object to the use of Luxury Hotel accommodations and travel, by Weil, Gotshal and Manges personnel, paid by the estate.**

On 7/29/11 the estate was billed $2440 for domestic travel DFW/LGA and $514 for one night accommodation of David Dummer. On 7/29/11 the estate was billed $1210 for domestic travel DFW/LGA and $415 for one night accommodation of David Dummer. Even at top-rack undiscounted hotel rates, these expenses clearly show a complete lack of judgment by the firm in selecting reasonable and appropriate accommodations to be billed to a bankrupt estate.

VII. **I object to outside Temps – Paralegals without any explanation of use or need.**

Weil, Gotshal and Manges billed for $22,448. for outside temps – Paralegals/others – without any proof or explanation of the need.

VIII. **I object to Weil, Gotshal and Manges billing the estate for redundant and overlapping "team meetings".**

Weil, Gotshal and Manges - under task code 13400 "Billing/Fee Application & Retention – Other Professionals" - has a total of 89.50 hours, totaling $32,192., with average hour cost of $362.

The 'Retention and Fee Application' project category is largely for the task of reviewing, revising and editing past monthly bills for, among other things, compliance with the US Trustee Guidelines. The review and editing of time records, as opposed to fee applications, is not compensable. See In re <u>CCT Comms., Inc.</u>,[12] - "the review and editing of time records - as opposed to fee applications - is not compensable."

---------------

<u>In Summary</u>, I, David Shutvet, object to the cavalier billings reflecting unnecessary, inflated, arbitrary and/or exorbitant fees and expenses charged or seeking reimbursement from the estate by Weil, Gotshal and Manges.

In re <u>Busy Beaver Bldg. Centers, Inc.</u>,[13] - "the court should review a fee application to ensure the applicant exercises the same "billing judgment" as do non-bankruptcy attorneys by writing off unproductive research time, duplicative services, and redundant costs precipitated by overstaffing."

The effective and judicious use of multiple highly paid professionals should be <u>closely</u> scrutinized by this court.

In re <u>Bonneville Pacific Corp.</u>,[14] - "The ultimate determination that all requirements of the statute have been met rests with the Court".

---

[12] 2010 WL 3386947, *9 (Bankr. S.D.N.Y. 2010)
[13] 19 F.3d 833, 856 (3rd Cir. 1994)
[14] 147 BR 803, 805 (Bankr D Utah 1992)

In re TAK Communications, Inc.,[15] the United States Bankruptcy Court for the Western District of Wisconsin noted "Whatever its responsibility may be in the absence of any objection, once an objection has been made and evidence and argument have been presented in support of the objection, a court may not adopt the ostrich's fabled position, but rather must assess the reasonableness of the fee application".

*David Shutvet* October 14, 2011
David Shutvet

cc: Department of Justice, Attorney General Eric Holder

Office of the United State Trustee Delaware, Jane Leamy, Esq.

Office of the United State Trustee, Robert A. DeAngelis

The Debtors, Washington Mutual, Inc., John Maciel, Esq.

Weil Gotshal & Manges LLP, Brian S. Rosen, Esq..

Susman Godfrey LLP, Justin Nelson Esq.

Richard Layton & Finger P.A., Mark D. Collins, Esq.

---

[15] 154 B.R. 514 (Bankr W.D. Wisconsin)