UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------x
                                                      :
*In re*                                               :   Chapter 11
                                                      :
WASHINGTON MUTUAL, INC., et al.,[1]                   :   Case No. 08-12229 (MFW)
                                                      :
    Debtors.                                          :   (Jointly Administered)
                                                      :
                                                      :   Hearing Date: December 8, 2011 at 10:30 am EST
------------------------------------------------------x   Objection Deadline: December 1, 2011 at 4:00 pm EST

## MOTION OF DEBTORS FOR AN ORDER, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019, APPROVING STIPULATION WITH MONTANA DEPARTMENT OF REVENUE MODIFYING THE AUTOMATIC STAY AND AUTHORIZING SETOFF OF PREPETITION OBLIGATION

Washington Mutual, Inc. ("WMI") and WMI Investment Corp., as debtors and debtors in possession (collectively, the "Debtors"), as and for their motion (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order approving that certain Stipulation Modifying Automatic Stay and Authorizing the Setoff of Prepetition Obligation (the "Stipulation," a copy of which is annexed hereto as Exhibit "A"), dated as of November 16, 2011, by and between the Debtors and the Montana Department of Revenue ("Montana" and, together with the Debtors, the "Parties"), respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 925 Fourth Avenue, Seattle, Washington 98104.

### Jurisdiction

1. The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

2. On September 26, 2008 (the "Petition Date"), each of the Debtors commenced with the Bankruptcy Court a voluntary case (together, the "Chapter 11 Cases") pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtors have continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On October 3, 2008, the Bankruptcy Court entered an order, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, authorizing the joint administration of the Chapter 11 Cases.

4. On October 15, 2008, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On January 11, 2010, the U.S. Trustee appointed an official committee of equity security holders (the "Equity Committee").

5. Prior to the Petition Date, WMI was a savings and loan holding company that owned WMB and such bank's subsidiaries, including Washington Mutual Bank fsb ("WMBfsb"). WMI also has certain non-banking, non-debtor subsidiaries. Like all savings and loan holding companies, WMI was subject to regulation by the Office of Thrift Supervision (the "OTS"). WMB and WMBfsb, in turn, like all depository institutions with federal thrift charters,

were subject to regulation and examination by the OTS. In addition, WMI's banking and nonbanking subsidiaries were overseen by various federal and state authorities, including the FDIC.

6.  On September 25, 2008, the Director of the OTS, by order number 2008-36, appointed the FDIC as receiver for WMB (the "FDIC Receiver") and advised that the FDIC Receiver was immediately taking possession of WMB. Immediately after its appointment as receiver, the FDIC Receiver sold substantially all the assets of WMB, including the stock of WMBfsb, to JPMorgan Chase Bank, N.A., pursuant to that certain Purchase and Assumption Agreement, Whole Bank, dated as of September 25, 2008.

7.  On February 24, 2009, the Debtors filed their Second Amended Schedule of Assets and Liabilities [D.I. 0709] (the "Schedules"). Schedule E2 lists Montana as having a contingent, unliquidated priority claim (the "Bankruptcy Claim").[2] Montana never filed a proof of claim in the Debtors' Chapter 11 Cases.

### Taxes and Refunds

8.  On or about May 3, 2010, WMI, on behalf of itself and certain of its subsidiaries, filed amended corporate income tax returns (collectively, the "'01–'03 Amended Returns") with Montana for the filing periods ending on December 31, 2001, December 31, 2002 and December 31, 2003 (collectively, the "'01–'03 Filing Periods") reflecting federal income tax adjustments. As provided in the Stipulation, the Parties agree that they do not owe one another any refunds or liabilities with respect to the '01-'03 Amended Returns.

---

[2] Pursuant to the Schedules, the Debtors reserved the right to dispute the priority status of any claim on any basis. Further, the Schedules provide that listing any claim on Schedule E does not constitute an admission by the Debtors that such claim is entitled to priority under section 507 of the Bankruptcy Code.

9. On or about December 27, 2010, WMI, on behalf of itself and certain of its subsidiaries, filed amended corporate income tax returns (collectively, the "'04–'07 Amended Returns" and, together with the '01–'03 Amended Returns, the "Amended Returns") with Montana for the filing periods ending on December 31, 2004, December 31, 2005, December 31, 2006 and December 31, 2007 (collectively, the "'04–'07 Filing Periods" and, together with the '01–'03 Filing Periods, the "Filing Periods") reflecting federal income tax adjustments. Pursuant to the '04–'07 Amended Returns, as of the Petition Date, the Debtors owe a tax liability of $14,391 for the tax year ended December 31, 2004, and are owed refunds from Montana in the amounts of $38,694, $69,377 and $20,570 for the tax years ended December 31, 2005, December 31, 2006 and December 31, 2007, respectively.

## Relief Requested

10. By this Motion, the Debtors request entry of an order, a copy of which is attached hereto as Exhibit "B" (the "Proposed Order"), pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Stipulation between the Debtors and Montana (i) modifying the automatic stay pursuant to section 362(d) of the Bankruptcy Code to permit Montana to offset certain obligations, as described herein, and (ii) returning certain funds owed to the Debtors by Montana.

## The Stipulation

11. To avoid costly litigation involving offsetting obligations, the Parties have agreed, subject to approval by the Bankruptcy Court, to enter into the Stipulation modifying the automatic stay for the limited purpose of allowing Montana to setoff certain prepetition obligations.

12. The Stipulation provides, in salient part, as follows:[3]

- The Parties agree that, based upon the Amended Returns, the Debtors owe Montana $14,391 (the "<u>Debtors' Obligation</u>") and Montana owes the Debtors $128,641 (the "<u>Montana Obligation</u>").

- The Parties further agree that, other than the Debtors' Obligation and the Montana Obligation, there are no outstanding tax issues between them with respect to the Filing Periods.

- Upon entry of an order of the Bankruptcy Court approving the Stipulation (the "<u>Effective Date</u>"), the automatic stay imposed by section 362 of the Bankruptcy Code shall be modified to allow Montana to offset the Montana Obligation against the Debtors' Obligation, and such setoff shall be in complete satisfaction and release of any and all claims Montana may hold against the Debtors with respect to the Filing Periods, including, without limitation, the Bankruptcy Claim, leaving a net balance (the "<u>Net Balance</u>") due to the Debtors in the amount of $114,250.

- Within fifteen (15) business days after the Effective Date, Montana shall pay to the Debtors, by check or wire transfer, the Net Balance.

- As of the Effective Date, Montana shall waive, release, acquit and forever discharge the Debtors, their employees, officers, shareholders, agents, representatives, attorneys, successors and assigns from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), demands, obligations, actions, causes of action, rights or damages under any legal theory, whether at law or in equity, based on, arising from or related to the Debtors' Obligation (including any and all interest earned thereon), the Amended Returns or the Filing Periods, which Montana may now have or may claim to have had, whether such claims are currently known, unknown, foreseen, or unforeseen.

- Upon receipt of the Net Balance from Montana, the Debtors shall waive, release, acquit and forever discharge Montana, its employees, agents, attorneys and representatives from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), demands, obligations, actions, causes of action, rights or damages under any legal theory, whether at law or in equity, based on, arising from or related to the Montana Obligation (including any and all interest earned thereon), the Amended Returns or Filing Periods, which the Debtors may now have, or may claim to have had, whether such claims are currently known, unknown, foreseen, or unforeseen.

---

[3] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Stipulation. To the extent there are any inconsistencies between the summary description contained herein and the Stipulation, the terms of the Stipulation shall control.

## Basis for Relief

13. Bankruptcy Rule 9019, which governs the approval of compromises and settlements, provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Section 105(a) of the Bankruptcy Code provides that, "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

14. Additionally, section 362(a)(7) of the Bankruptcy Code prohibits all entities from "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). Pursuant to section 362(d) of the Bankruptcy Code, however, the Bankruptcy Court may, on request of a party in interest, and after notice and a hearing, grant relief from the automatic stay by terminating, annulling, modifying or conditioning such stay for cause. 11 U.S.C. § 362(d)(1).

15. A starting point in analyzing any proposed settlement agreement is the general policy of encouraging settlements and favoring compromises. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996). To approve a settlement, a bankruptcy court must determine that such settlement is in the best interest of a debtor's estate. *Law Debenture Trust Co. of New York v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.)*, 339 B.R. 91, 95-96 (D. Del. 2006). In addition, a court must

> "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal" in light of four factors: (1) the probability of success in the litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and (4) the paramount interests of the creditors.

*Id.* at 96 (quoting *Martin*, 91 F.3d at 393). The United States District Court for the District of Delaware has explained that a court's ultimate inquiry is whether a settlement is fair, reasonable,

US_ACTIVE:\43681011\08\79831.0003                                6

RLF1 5593921v. 1

## Basis for Relief

13. Bankruptcy Rule 9019, which governs the approval of compromises and settlements, provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Section 105(a) of the Bankruptcy Code provides that, "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

14. Additionally, section 362(a)(7) of the Bankruptcy Code prohibits all entities from "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). Pursuant to section 362(d) of the Bankruptcy Code, however, the Bankruptcy Court may, on request of a party in interest, and after notice and a hearing, grant relief from the automatic stay by terminating, annulling, modifying or conditioning such stay for cause. 11 U.S.C. § 362(d)(1).

15. A starting point in analyzing any proposed settlement agreement is the general policy of encouraging settlements and favoring compromises. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996). To approve a settlement, a bankruptcy court must determine that such settlement is in the best interest of a debtor's estate. *Law Debenture Trust Co. of New York v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.)*, 339 B.R. 91, 95-96 (D. Del. 2006). In addition, a court must

> "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal" in light of four factors: (1) the probability of success in the litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and (4) the paramount interests of the creditors.

*Id.* at 96 (quoting *Martin*, 91 F.3d at 393). The United States District Court for the District of Delaware has explained that a court's ultimate inquiry is whether a settlement is fair, reasonable,

and in the best interest of a debtor's estate. *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).

16. The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). A court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *see also In re World Health Alternatives, Inc.*, 344 B.R. at 296; *In re Key3Media Group, Inc.*, 336 B.R. 87, 92-93 (Bankr. D. Del. 2005).

17. Applying the foregoing standard, the Debtors respectfully submit that approval of the Stipulation is fair, reasonable and in the best interests of the Debtors, their estates and creditors. The setoff of the Debtors' Obligation and the Montana Obligation will result in Montana owing and paying the amount of $114,250 to the Debtors. Thus, consummation of the setoff pursuant to the Stipulation will result in an influx of cash to the Debtors' estates. Moreover, effectuating the Stipulation will relieve the Debtors of the time and expense associated with resolving any claim that may be asserted by Montana with respect to the Amended Returns or the Filing Periods. Accordingly, the Debtors submit that the relief requested herein is in the best interests of their estates and creditors and is justified and appropriate pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Notice

18. Notice of this Motion shall be provided to: (i) Montana; (ii) the U.S. Trustee; (iii) counsel for the Creditors' Committee; (iv) counsel for the Equity Committee; and

(v) parties entitled to receive notice in these Chapter 11 Cases pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Debtors submit that such notice is sufficient under the circumstances.

### No Previous Request

19. No previous request for the relief sought herein has been made to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Bankruptcy Court may deem just and appropriate.

Dated: November 16, 2011
       Wilmington, Delaware

/s/ Julie
_____
Mark D. Collins, Esq. (No. 2981)
Michael J. Merchant, Esq. (No. 3854)
Julie A. Finocchiaro, Esq. (No. 5303)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Brian S. Rosen, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for the Debtors and Debtors in Possession