IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------x   Chapter 11
                                                 :
In re:                                           :   Case No. 08-12229 (MFW)
                                                 :
WASHINGTON MUTUAL, INC., et al.,                 :   (Jointly Administered)
                                                 :
       Debtors.                                  :   Hearing Date: 2/24/12 @ 9:30 a.m.
                                                 :   (Legal Issues Only)
                                                 :
-------------------------------------------------x   Ref. Docket No. 5971, 6256, 9691
```

**REPLY OF THOMAS W. CASEY, DAVID SCHNEIDER, ALBERT BROOKS,
TODD H. BAKER, DEBORA HORVATH AND JOHN McMURRAY
IN OPPOSITION TO DEBTORS' MOTION TO ESTIMATE MAXIMUM AMOUNT
OF CERTAIN CLAIMS FOR PURPOSES OF ESTABLISHING
<u>RESERVES UNDER THE DEBTORS' CONFIRMED CHAPTER 11 PLAN</u>**

Stephen W. Spence, Esquire (#2033)
Aaron C. Baker, Esquire (#5588)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200 (O)
(302) 655-4210 (F)
*Counsel to Todd Baker, Thomas Casey, Alfred
Brooks, Debra Horvath, John McMurray, and
David Schneider*

Thomas W. Casey ("Casey"), David Schneider ("Schneider"), Albert Brooks ("Brooks"), Todd H. Baker ("Baker"), Debora Horvath ("Horvath") and John McMurray ("McMurray") (collectively, "Named Claimants"), by and through their undersigned counsel hereby reply in opposition to: (i) Debtors' Motion to Estimate Maximum Amount of Certain Claims for Purposes of Establishing Reserves Under the Debtors' Confirmed Chapter 11 Plan [D.I. #5971] (the "Estimation Motion"); (ii) Debtors' Supplemental Response in support of Debtors' Motion to Estimate Maximum Amount of Certain Claims for Purposes of Establishing Reserves Under the Debtors' Confirmed Chapter 11 Plan With Respect to the Indemnification Claims Filed by Certain Directors and Officers [D.I. #9691] (the "Response") as follows:

## PRELIMINARY STATEMENT

The Named Claimants object to the Debtors' Estimation Motion to the extent that it seeks to have the indemnity claims filed by the Named Claimants estimated at a dollar value of zero. The Debtors' Motion is an improper effort to effectively expunge those indemnity and advancement claims. There is no legal basis for such relief at this time. The Court should reject the Debtors' arguments and set a reasonable reserve that will preserve the Named Claimants rights to full recovery on account of their indemnity and advancement claims.

## BACKGROUND

1.  On September 26, 2008 (the "Petition Date"), the above-captioned Debtors ("Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code ("Bankruptcy Code"). Prior to the Petition Date, the Named Claimants were officers of and employed by either Debtor Washington Mutual, Inc. or Washington Mutual Bank. Pursuant to the Restated Bylaws of Washington Mutual, Inc. ("WMI Bylaws"), the Amended and Restated Articles of Incorporation of Washington Mutual, Inc., and Chapter 23B.08 of the

Washington Business Corporation Act, the Debtors are obligated to indemnify and advance against any and all liability, damages, litigation costs, expenses, etc. arising from or relating to the Named Claimants former service as officers and/or employees of WMI and/or WMB ("Indemnity Obligations").

2. On or before the Chapter 11 Bar Date, the Named Claimants timely filed claims to preserve their rights to indemnification and advancement ("D&O Claims").

3. A number of the Named Claimants were named as a defendant in various civil actions arising from their service as an officer of WMI and/or WMB. The suits and investigations are all detailed in the Disclosure Statement of WMI with regard to its Seventh Amended Plan of Reorganization. Since 2010, when Debtors' filed their initial motion to estimate the maximum amount of the indemnity claims, there has been an ever-changing landscape regarding the exposure of the Named Claimants to investigations, civil litigation and/or demands. A number of the Named Claimants were sued both pre- and post-petition and, as recently as February 15, 2012, this Court approved a settlement directly involving David Schneider and indirectly involving all six of the Named Claimants when it approved the FDIC Settlement.

4. By letter dated April 27, 2009, the Official Committee of Unsecured Creditors appointed in the Debtors' Chapter 11 cases asserted claims for alleged wrongful acts against certain directors and officers of WMI, including Casey (the "Creditors' Committee Claims").

5. By letter dated October 13, 2011 the Debtors and the Creditors' Committee collectively asserted claims against Casey and others for losses allegedly suffered by WMI as a result of such person's alleged actions and failures to act in their roles as directors and officers of WMI in an amount not less than $500,000,000 (the "Demand Letter Claims"). No complaint has

been filed in furtherance of the Demand Letter Claims or the Creditors' Committee Claims. However, coverage for the Demand Letter Claims under the 2008-2009 D&O Policies has been denied.

6. While the Response suggests that the Demand Letter Claims are the only claims held by the Debtors' Estates that may be asserted against Casey, this suggestion is misleading. The scope of the claims that may be asserted by or on behalf of the Estates far exceeds the Demand Letter Claims or Creditors' Committee Claims based upon claims expressly reserved in Footnote 1 of the Demand Letter; the claims against former officers of the Debtors for actions arising during the period prior to the Petition Date, which the Liquidating Trust is able to prosecute under the Plan, and other equitable or legal demands that might be asserted by the Debtors or the Creditors' Committee or the Debtors' successors in interest, against Casey as purportedly preserved by certain tolling agreements executed by Casey at the request of the Debtors. Thus, at least Casey (upon information and belief, the other 5 Named Claimants are no longer targets of Estate Claims) remains exposed to substantial estate claims beyond the Demand Letter Claims and the Creditors' Committee Claims. Further, the Named Claimants may remain exposed to investigations, actions and litigation by federal and state agencies and other non-estate parties (collectively, the "Non-Estate Claims).

7. The unasserted estate claims and unasserted non-estate claims (jointly the "Future Claims") are precisely the types of risk that the indemnity and advancement obligations stated above were intended to address. Therefore, the Named Claimants oppose the zero dollar estimation sought by the Estimation Motion and seek reasonable reserves to protect their indemnity and advancement claims.

The Debtors, Casey, and Rotella have stipulated to bifurcate the matters to be covered at the February 24, 2012 hearing. A later hearing will be scheduled where factual disputes including the appropriate amount of the Named Claimants reserves and other issues will be presented to and decided by the Court. The Named Claimants will specify the amount of the reserves they seek and, at a minimum, Casey will present expert testimony in support thereof at such hearing.

8. When the Debtors filed the Estimation Motion, they requested that the Court estimate the D&O Claims at $0.00 for purposes of Section 27.3 of Debtors' Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code [D.I. # 5548]. Debtors contended that all of the D&O Claims should be subordinated to claims of general unsecured creditors pursuant to Section 510(b), and since general unsecured creditors were unlikely to be paid in full, the D&O Claims would not see any recovery.

9. The Named Claimants were forced to respond or they would lose all of their indemnification and advancement rights, and they have incurred legal fees and costs in so doing. Since December 2010, Debtors have repeatedly scheduled and then continued the hearing on the Estimation Motion. In each instance, the Named Claimants and their counsel were forced to prepare for the hearings and eventually to prepare discovery responses. In addition, the Named Claimants were required to monitor the various Chapter 11 Plans and, where necessary, filed objections to protect and preserve their indemnification and advancement rights. Furthermore, over the course of the fifteen months since Debtors filed the Estimation Motion, the legal landscape for the Named Claimants has changed dramatically: new litigations were filed against Schneider and Casey arising from their roles as officers of Debtors, and existing cases and investigations have settled or been concluded. As a result, the Named Claimants' preparation for

each hearing on the Estimation Motion involved a number of issues. Throughout this time period, the parties engaged in extensive, complex settlement negotiations involving, among others, the Named Claimants, Debtors, the Outside Directors, Mr. Killinger, Mr. Rotella and numerous representatives of the D&O Carriers.

## ARGUMENT

### I.  The Named Claimants Have Standing to Have the Court Decide the Subrogation Issues

There is no dispute that, when Debtors filed the Petition, they immediately discontinued advancing funds for certain of the Named Claimants' defense. The Named Claimants who were affected therefore triggered their rights under the D&O Policies, requiring the D&O Carriers to advance defense fees and costs before they otherwise were required to do so. Because the D&O Carriers stepped in to protect the Named Claimants, the D&O Policies provide that the D&O Carriers have a contractual right to recover certain of these amounts that should have been paid by the Debtors and are subrogated to the Named Claimants' indemnification and advancement claims.

The elements for Article III standing are (1) an injury in fact; (2) a causal connection between the injury and the conduct; and (3) a likelihood that the injury will be redressed by a favorable decision.[1] Each element is present here.

The Named Claimants do have standing to assert the D&O Carriers Potential Subrogation rights and do so to protect their pecuniary interest in the existing remaining coverage and to augment it. The Named Claimants have received letters from several of the D&O Carriers'

---

[1] *In re Wash. Mut., Inc.*, 461 B.R. 200, 222 (Bankr. D. Del. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The Debtors further assert that "bankruptcy standing is narrower than Article III standing" and that an objector must have a "pecuniary interest in the outcome of the bankruptcy proceedings." Without conceding that this dubious assertion is true, if the D&O Carriers ultimately recovered money for their subrogation rights, that money would go back into the policies for the benefit of all Named Claimants, which is clearly a "pecuniary" benefit for the Named Claimants.

counsel that they must protect the D&O Carriers' right to subrogation under the applicable policies. The Named Claimants have standing to assert these claims because they do have a pecuniary interest in continued and augmented coverage (until exhausted) and if the D&O Carriers' claims are not protected by the Named Claimants, they risk the chance that the D&O coverage will be exhausted more quickly and, in turn, the Named Claimants' claims for indemnity and advancement will increase. The question of the D&O Carriers' rights of subrogation must be addressed by the Court as part of the estimation process to preserve and protect the availability of coverage for the Named Claimants, if for no other reason than to protect and assist in resolving the amounts that may possibly be available to the Estate with respect to the disputed Estate claims.

The Named Claimants adopt the positions taken by the Outside Directors[2] and Kerry K. Killinger ("Killinger") on the D&O Carriers' rights of subrogation under the applicable D&O Policies as stated in their Objection being filed simultaneously with this brief.

II. **No Specific Reserve for the Demand Letter Claims or Creditors' Committee Claims is Being Asserted by Mr. Casey**

Casey is no longer demanding an indemnification reserve amount for potential liability relating to the Creditors' Committee Claims or the Demand Letter Claims. The other 5 Named Claimants are no longer targets of either of these claims. Casey specifically reserves and the Seventh Amended Plan preserves all of his rights of set off and recoupment and any applicable D&O coverage rights with respect to those claims. Casey is entitled to a substantial reserve and advancement rights for defense costs to defend the Demand Letter Claims, the Creditors'

---

[2] The Outside Directors who filed objections to the Estimation Motion are Stephen Chazen (Claim No. 2631), Anne Farrell (Claim No. 2240), Stephen Frank (Claim No. 2635), Thomas Leppert (Claim No. 2637), Charles Lillis (Claim No. 2604), Phillip Matthews (Claim No. 2241), Regina Montoya (Claim No. 2634), Michael Murphy (Claim No. 2248), Margaret Osmer McQuade (Claim No. 2606), Mary Pugh (Claim No. 2636), William Reed, Jr. (Claim No. 2629), Orin Smith (Claim No. 2247), James Stever (Claim No. 2633) and Willis Wood, Jr. (Claim No. 2246).

Committee Claims and any other Estate claims that may be asserted. Evidence on those subjects will be presented at any evidentiary hearing.

### III. The Future Claims for which Casey and the Other Named Claimants Seek Indemnification Cannot be Estimated at Zero for Reserve Purposes

Named Claimants are entitled to a substantial reserve amount for future expenses which are covered by their advancement and indemnification rights under the WMI Bylaws[3] and Chapter 23B.08 of the Washington Business Corporation Act. Even though contingent and unliquidated, there is a sufficient and immediate risk that Named Claimants will be exposed to litigation or investigation because of their status as former officers of Debtors and WMB to justify a reserve for future advancement and indemnification issues.

Debtors urge the Court to estimate these claims at a value of zero dollars merely because they are contingent.[4] The "term 'claim' is broad enough to encompass an unliquidated, contingent right to payment under a prepetition indemnification obligation, even though the triggering contingency does not occur until *after* the filing of the petition under Bankruptcy Code."[5] Despite the existence of Named Claimants valid claims for indemnification and advancement, and without any other mechanism to disallow Named Claimants claims, Debtors seek to, in effect, expunge or disallow Named Claimants claims by urging the Court to estimate these claims at a dollar value of zero.

"[T]he bankruptcy court is required, for purposes of allowance, to *estimate* the amount of every timely contingent or unliquidated prepetition claim . . . ."[6] "The difficulty or impossibility

---

[3] *See infra* nn. 13-14.

[4] Response at 42.

[5] *Woburn Assoc. v. Hemingway Tran., Inc. (In re Hemingway Tran., Inc.)*, 954 F.2d 1, 8 (1st Cir. 1992). Of course, "allowance" remains a prerequisite to distribution under the Bankruptcy Code. *See id.*
[6] *Id. See also* 11 U.S.C. § 502(c).

of estimation [does not] constitute[] a legitimate basis for disallowing any prepetition right to payment as a 'claim' against the estate."[7] The Third Circuit has ruled that bankruptcy judges may use "whatever method is best suited to the particular contingencies at issue"[8] to determine the "best estimate" of the value of the claim.[9]

While Named Claimants claims are contingent, the contingencies of their claims are weak. Given the nature of Named Claimants rights of indemnification and, in particular, advancement,[10] Named Claimants claims will become certain and non-contingent immediately upon the commencement of an investigation or the filing of a complaint against them. As described below, the risk that Named Claimants will be subject to further lawsuits and investigations is real and immediate.

For example, Casey has been sued twice in the last six months and is incurring defense costs and the corresponding indemnity claims as a result of his former position as an officer or director of certain former WMB subsidiaries.[11] In addition, the President of the United States of America announced a new mortgage investigation unit[12] led by New York Attorney General Eric

---

[7] *See id.* (citing *In re Baldwin United Corp.*, 55 B.R. 885. 898 (Bankr. S.D. Ohio 1985)).

[8] *Bittner v. Borne Chemical Co.*, 691 F.2d 134, 135 (3d Cir. 1982).

[9] *In re Kaplan*, 186 B.R. 871, 874 (Bankr. D.N.J. 1995).

[10] "While a determination as to whether a corporate officer is entitled to indemnification must await the outcome of the underlying controversy, advancement, by contrast, is a right whereby a potential indemnitee has the ability to force the company to pay his litigation expenses regardless of whether he will ultimately be entitled to indemnification. Advancement is typically not conditioned on a finding that the party seeking advancement has met any standard of conduct." *RNI Wind Down Corp.*, 369 B.R. 174, 186 (Bankr. D. Del 2007) (internal citations and quotations omitted).

[11] *See* FHFA v. JPMorgan Chase Bank, N.A., et al., No. 11 Civ. 6188 (S.D.N.Y. Filed September 2, 2011); Stichting Pensioenfonds ABP v. JPMorgan Chase & Co., et al., Index No. 653383/2011 (N.Y. Sup. Ct. Filed December 7, 2011).

[12] Barack H. Obama, *Remarks by the President in State of the Union Address (January 24, 2012)*, WHITE HOUSE ARCHIVES, *available at* http://www.whitehouse.gov/the-press-office/2012/01/24/remarks-president-state-union-address. *See also* David McLaughlin, *Obama Creates Unit With States to Investigate Mortgage Misconduct by Banks*, BLOOMBERG (February 22, 2012, 9:49 AM), http://www.bloomberg.com/news/2012-01-25/obama-will-create-crisis-unit-to-investigate-mortgage-misconduct.html.

Schneiderman, and other States' Attorneys General, which will most likely result in further investigations involving one or more of the Named Claimants.

In light of this, the Court should assure that the Plan Reserves are sufficient to avoid irreparable harm to the Named Claimants.

### IV. The Debtors Must be Required to Reserve for the Named Claimants Fees and Expenses Incurred in Connection with the Protection of their Indemnification and Advancement Claims

Debtors are obligated to indemnify Named claimants for the expenses, including attorneys' fees, arising from Named Claimants' necessary defense against the Estimation Motion and the Chapter 11 Plan process. Pursuant to the WMI Bylaws and Chapter 23B.08 of the Washington Business Corporation Act, the Named Claimants are entitled to be indemnified for the expense of protecting their rights to indemnification and advancement that would be wiped out if Named Claimants did not object to the Estimation Motion's estimation of certain of their claims at a value of zero dollars and objecting to Plan provisions that would have limited or eliminated these rights.

Section 8.6 of the Bylaws requires the Debtors to provide indemnification and pay expenses to Named Claimants that were incurred in connection with any proceeding related to Named Claimants' status as officers, or former officers, of Debtors or their subsidiaries.[13]

---

[13] Section 8.6 of the Restated Bylaws of Washington Mutual, Inc. states:

> The corporation shall provide indemnification and pay expenses in advance of the final disposition of a proceeding to officers and employees of the corporation with the same scope and effect (including without limitation coverage when serving at the request of the corporation as directors, officers, employees or agents of other corporations, partnerships, joint ventures, trusts or other enterprises), and observing the same procedures, as the provisions of this Article with respect to the indemnification and advancement of expenses to directors of the corporation, except that determinations and authorizations described in RCW 236.08.550(2) and (3) may also be made by a committee of officers authorized by the board of directors. Without limiting the situations in which a person shall be considered to be serving at the request of the corporation, an officer or employee who serves as a director, officer, employee or agent of another corporation or other enterprise that is a subsidiary of the corporation shall be deemed to be serving at the request of the

Section 8.3 also assures the indemnification of Named Claimants expenses incurred protecting their right to indemnification.[14] Named Claimants right to indemnification and advancement is a contract right. [15]

Named Claimants have timely asserted their claims for indemnification and advancement which arise out of Washington State contract and statutory law. With Debtors' Estimation Motion and resulting litigation, Named Claimants incurred additional expenses which were necessary to protect their right to indemnification and advancement from Debtors. Named Claimants now seek a reserve for reimbursement for those legal expenses as provided for in Section 8.3 of the Bylaws.

In *Travelers Cas. & Sur. Co. of Am. v. PG & E Co.*, the Supreme Court reversed the Ninth Circuit Court of Appeals disallowance of an unsecured creditor's application for attorneys' fees, pursuant to a prepetition indemnity contract, incurred protecting its indemnity

---

corporation, where "subsidiary" has the meaning set forth in Section 8.1. At its sole option, the corporation may provide indemnification and pay expenses in advance of the final disposition of a proceeding to agents of the corporation (including without limitation providing such indemnification or advance to agents serving at the request of the corporation as directors, officers, employees or agents of other corporations, partnerships, joint ventures, trusts or other enterprises), provided that such indemnification or advance (i) is made pursuant to a written contract executed and delivered on behalf of the corporation prior to the occurrence of the conduct giving rise to the liability or expense for which indemnification or payment is being sought or (ii) is approved or ratified by the board of directors, a committee thereof, or a committee of officers authorized by the board of directors.

[14] Section 8.3 of the Restated Bylaws of Washington Mutual, Inc. states, in part:

If a claim under this Article is not paid in full by the corporation within sixty (60) days after a written claim has been received by the corporation, except in the case of a claim for expenses incurred in defending a proceeding in advance of its final disposition, in which case the applicable period shall be twenty (20) days, the claimant may at any time thereafter bring suit against the corporation to *recover the unpaid amount of the claim and, to the extent successful in whole or in part, the claimant shall be entitled to be paid also the expense of prosecuting such claim.*

(emphasis added).

[15] Section 8.7 of the Restated Bylaws of Washington Mutual, Inc.

rights in bankruptcy litigation.[16] The Supreme Court held that, because non-bankruptcy law governed the unsecured creditor's right to indemnity and that "the [Bankruptcy] Code says *nothing* about unsecured claims for contractual attorney's fees incurred while litigating issues of bankruptcy law", the unsecured creditor's claim for attorney's fees must not be disallowed absent some specific statutory basis for disallowance.[17] Debtors cite no such basis.

In any event, the provisions that Debtors cite to support their policy argument would not apply anyway because Named Claimants' indemnification and advancement rights were created *pre-petition*. As such, the claim for indemnification is also *pre-petition* even though the expenses were incurred post-petition.[18] Named Claimants right to attorneys' fees in connection with their defense against Debtors' attempts to disallow their indemnity and advancement claims through the Estimation Motion is authorized by Washington State contract and statutory law. "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."[19] Therefore, Named Claimants expenses defending against the Estimation Motion and their necessary Plan objections should be allowed when estimating the amount of their claims and they should not be reduced or allocated on account of the nature of the subordinated or non-subordinated claims that have been resolved to date.

---

[16] 549 U.S. 443, 448-51 (2007).

[17] *Id.* at 453.

[18] *See, e.g., Woburn v. Kahn*, 954 F.2d 1, 8 (1st Cir. 1992) (where indemnification agreement was signed pre-insolvency, the claim was pre-petition even though the expenses were incurred post-petition); *In Re Wilbur*, 237 B.R. 203, 207 (Bankr. M.D.Fla. 1999) ("an indemnification agreement creates a contingent claim as of the date the agreement is signed."); *In re Highland Group, Inc.*, 136 B.R. 475, 481 (Bankr. N.D. Ohio 1992) ("Where an indemnification agreement is entered into prior to a bankruptcy filing, such an execution gives the indemnitee a contingent prepetition claim.").

[19] *Butner v. United States*, 440 U.S. 48, 55 (1979).

## V. The Named Claimants Join in and Adopt Certain Arguments of the Other Parties Affected by the Estimation Motion

The Named Claimants adopt the arguments of the Outside Directors and Killinger regarding the non-subordinated subrogation rights of the D&O Carriers which would augment the D&O coverage still available in the 2007-2008 Tower.

In addition, the Named Claimants join in the arguments of the Outside Directors, Killinger and Stephen J. Rotella with respect to the officers' and directors' right to recover their costs and counsel fees incurred in connection with the Estimation Motion and the necessary responses to the plan process and otherwise preserve their rights to indemnification and advancement.

PHILLIPS, GOLDMAN & SPENCE, P.A.

/s/ Stephen W. Spence

Stephen W. Spence, Esquire (#2033)
Aaron C. Baker, Esquire (#5588)
1200 North Broom Street
Wilmington, DE 19806
302-655-4200
*Counsel to Todd Baker, Thomas Casey, Alfred Brooks, Debra Horvath, John McMurray, and David Schneider*

Dated: February 22, 2012