PETER SZANTO <u>949 887 2369</u>
P. O. BOX 10451
Newport Beach CA 92658

FILED
2012 FEB 23 AM 11: 10

# United States Bankruptcy Court
District of Delaware
824 Market St., 3rd Floor, Wilmington Delaware 19801

| | |
|---|---|
| <u>Washington Mutual (WAMU)</u>, *et al*, <br><br> Debtors <br><br>---<br><br>Szanto, JPMorgan Chase, <br><br> Plaintiffs <br><br>v. <br><br>Washington Mutual, *et al*, <br><br> Defendants | USBC # <u>08-bk– 12229 (MFW)</u> <br><br> # <u>09-ap- 50551  (MFW)</u> <br><br> <u>Opposition to Remand</u> <br><br><br> Hearing Date: March 1/2012 – 10:30 AM <br><br> Courtroom 4 - 5th Floor <br><br> Honorable Judge Walrath |

## INTRODUCTION

<u>May it please this Honorable Court.</u>

Comes now Peter Szanto, removing party and plaintiff in opposition to co-plaintiff JPMorgan's Motion to Remand.

Many facts essential to a clear understanding of removing party's position in this case are either mis-stated or not revealed in JPMorgan's application for remand. In actuality, many of counsel for JPMorgan's statements are contrary to the evidence.

DEB 08-bk-12229, 09-ap-50551        Opposition to Remand – pg. 1 of 16

ORIGINAL

Plaintiff Szanto's affidavit, accompanying this opposition, will provide additional testimony as to the appropriateness of jurisdiction in this Court. However, no complete factual and evidentiary presentation to prove the necessity for remand is possible until this Court is able to hear directly from persons at JPMorgan and WAMU about the depth and extent of the contractual and business relationships between the parties.

Szanto's initiating removal and joinder pleading explained the good cause basis why this Court had proper and timely subject matter jurisdiction over the parties. The remand application, simply disregards those points of fact, law and evidence so as to proceed as though Szanto had never addressed those issues.

As matters of fact and law, the reason that Szanto has removed his state action and joined it with the on-going adversarial proceeding and bankruptcy herein is because under 28 U.S.C.A. §§ 1331 and 1334 the district courts shall have original and exclusive jurisdiction of all cases under USC title 11 bankruptcy proceedings. Szanto's claims in the state court are against the various entities generally known as Washington Mutual (WAMU) and its variously named alter-egos and captive subsidiaries over whom this Court is currently exercising exclusive jurisdiction in bankruptcy. JPMorgan entered the case by representing that it stood in the shoes of WAMU. [Whatever, entities may have been inadvertently left un-named in Szanto's initiating pleading will be corrected forthwith after further examination of the record as to which entities have sought bankruptcy protection.]

28 USCA §1334 (e) provides: the district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction-- (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate. Szanto also relies on 28 USCA § 1452 which provides for removal of claims related to bankruptcy cases: "(a) A party may remove any claim or cause of action in a civil action .... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

---

Note 1 - Szanto concedes a possible procedural error - of neglecting the two-step process for removal of state court case to bankruptcy court located in a federal district other than that in which state court is situated, by filing notice of removal of state court action in Delaware and not with bankruptcy clerk for the Central District of California, which is the judicial district embracing county where state court action was pending. Such error has previously been determined to be mere procedural error that did not affect the bankruptcy court's original and exclusive jurisdiction over the removed proceeding. *In re Bisno*, (BK.CD.Cal.2010) 433 B.R.753.

## **BACKGROUND**

When WAMU and its variously named alter-egos and captive subsidiaries declared bankruptcy on September 26, 2008, Szanto (a shareholder) believed the result would be a reorganized, well capitalized, financially sound and more robust banking institution. Thereafter, WAMU missed interest and dividend payments to Szanto on various common and preferred securities of WAMU held by Szanto. WAMU's dividend and interest payments were utilized by Szanto to service his various mortgages with WAMU. Szanto filed an action in the California Superior Court in Los Angeles County on December 2, 2008 to recover the lost dividend and interest payments which were then in arrears. As prayer in that state complaint, Szanto suggested that the underlying principle amount of preferred and common stock owned by Szanto should be offset, on a matured basis, against loans Szanto owes to JPMorgan Chase and WAMU. Szanto contends this is justified because this had been the pattern and course of business conducted between Szanto, WAMU and JPMorgan for more than 30 years.

Szanto's contentions, stated briefly and succinctly (but not in their entirety), are these: 1st) in the 50 years that Szanto has been a business partner and shareholder of JPMorgan Chase and its precursor banks and 2nd) in the 25 years that Szanto has been a business partner and shareholder of WAMU and its precursor financial institutions – there have developed extensive and numerous patterns of business conduct and contract performance which are not unilaterally extinguished by the mere fact that assets, and their concomitant liabilities, have been transferred from one

business partner of Szanto's to another. Explained concisely, when Szanto's mortgage allegedly changed ownership from WAMU to JPMorgan Chase – Szanto contends that the liabilities attendant to that mortgage asset also changed obligor; IE, Szanto's investment in WAMU, which Szanto used to service his mortgage did not evaporate, but continued as the offset to the mortgage that it had always been. Szanto further maintains that whatever financial fiction is propounded by JPMorgan Chase – <u>EG, that they acquired assets but not liabilities</u> – is immaterial and irrelevant to Szanto, because what cannot be contested is the on-going conduct of business, and course of mutual performance of the financial relationship between Szanto and JPMorgan Chase. The truth of Szanto's contentions and the strength of the business relationship are evidenced by extensive business activities which have been mutually profitable to the parties. The course of business performance between Szanto and JPMorgan Chase precludes the unjust enrichment of JPMorgan Chase on alleged grounds that Szanto's mortgage was acquired without the off-setting financial instruments which are the liabilities of obligor mortgagee to Szanto with which the underlying mortgage is burdened as a matter of on-going contractual performance between the parties to the agreement.

     Before Szanto was able to perfect relief from the bankruptcy stay, JPMorgan appeared in the state proceedings, representing to the state court that it had 'stepped into the shoes of WAMU'. JPMorgan stated it intended to proceed as to acquired assets, but not liabilities of WAMU [the facts will also show that JPMorgan made representations to the state court that JPMorgan also had authority to speak for the FDIC]. Based on these representations, that JPMorgan was now the surviving entity which now controlled WAMU, Szanto continued his action in the state court against JPMorgan. After 3 years of litigation, wherein JPMorgan has continuously avoided discovery and protracted every aspect of the proceedings, Szanto obtained a court order to take the deposition of JPMorgan's person most knowledgeable (PMK) about the acquisition of WAMU'S assets and liabilities. The deposition of the PMK, two weeks before Notice of Removal was filed, was the seminal event whereby Szanto realized that had been duped by counsel for JPMorgan. Only then did Szanto realize that the

state court matter was being pursued in the wrong court, because the *modus operandi* of opposing counsel was merely to delay and obfuscate matters so as to deny Szanto the legal relief to which he is entitled.

When, after **15 months** of delay, JPMorgan's supposed PMK finally appeared to be deposed. Instead of producing a corporate officer with knowledge of JPMorgan Chase and the extensive history of the instant bankruptcy and the business relationships between the parties, JPMorgan produced a person who lacked all fundamental knowledge of corporate affairs and the legal proceedings engendered by WAMU's acquisition and bankruptcy. As a matter of fact, JPMorgan's PMK was of such junior position in the corporation that her job function did not allow her to commit her thoughts to paper nor is she allowed physically to handle files; IE, her work consisted entirely of viewing computer information and then rendering an oral opinion about what she had seen to JPMorgan's counsel. In short, the reputed PMK was the ultimate corporate deposition evader – her knowledge was entirely transitory and could not be identified by any writing to which she had committed her opinions. Likewise, as was reiterated throughout the deposition, because the PMK only talked to counsel, everything she knew, or might know, was protected by the attorney client privilege. In short, the deposition became an absurd mockery of judicial procedure wherein the PMK was ordered by her counsel not to answer questions, because allegedly counsel had already been communicated the answer to all the questions, even before the questions were known or propounded.

After 3 hours of unproductive deposition, Szanto suspended the proceedings. Szanto perfected application to the state court for further discovery sanctions and orders based on his assessment that the putative PMK had merely been interposed to delay, bewilder and confuse matters. Szanto also perfected a Motion for Judgment on the Pleadings. Those state court proceedings were pending when Szanto read this Court's opinion *In re Washington Mutual* (2011) 461 B.R. 200. Szanto realized that his action was being trivialized and marginalized by impermissible, improper and un-lawyer-like actions of JPMorgan's counsel. JPMorgan's actions focused solely on delaying and frustrating the proceedings so that Szanto could obtain no relief.

Thereon Szanto contends, (without conceding lack of timeliness to his removal) that any lateness to his removal is properly explained under FRCP 60 because of removing party's mistake, surprise, inadvertence or excusable neglect regarding having discovered only within the 30 days prior to filing Notice of Removal, that party responding to his claims in California may not be the party against whom his action was commenced, because a bank with the resources, prestige and standing of JPMorgan would not produce for a very significant PMK deposition ( which had been stalled for more than 15 months) someone working from their home-office in rural Texas who had no connection with JPMorgan's corporate function or infrastructure whatsoever. OR that JPMorgan appeared in the state proceeding solely to frustrate and defeat

Szanto could not have discovered such information earlier, because it was fraudulently, deceptively and actively withheld by JPMorgan Chase. Information about the proper nature of the proceedings relied on misrepresentation and misconduct by opposing party, JPMorgan Chase, in failing to disclose the true nature and extent of its representation.

Szanto also relies for removal on this Court's opinion in 461 B.R. 200 (*supra*) of September 13, 2011, within 90 days of the Notice of Removal. In that opinion this Court explains at page 1 "Early in the bankruptcy case disputes arose among the Debtors, the FDIC, and JPMC regarding ownership of certain assets and various claims that the parties asserted against each other." <u>Szanto contends that his claims regarding assets and liabilities of the debtors and JPMorgan should receive equal review before this Court as those parties in his action who have already appeared, because it was only through the active deception of opposing counsel in the state court, that removal and joinder to this Court were delayed</u>. This is especially true based on the facts that only through the improper actions and efforts of JPMorgan Chase to stymie the state court proceedings was there delay in Szanto's removal to this Court.

In this Court's opinion of September 13, 2011 this Court explains at page 2 "Congress has legislated that the Bankruptcy Court has core subject matter jurisdiction

over approval of settlements of claims and counterclaims and confirmation of plans of reorganization. 28 U.S.C. §§ 1334 & 157(b)(2)(A), (B), (C), (K), (L), (M), (N), & (O)."

Szanto, who is not an attorney, did not previously comprehend the exclusive and original nature of his claims such that he was actually precluded from pursuing this matter in the state court. That is, Szanto now realizes his inadvertent error of having begun this action in the wrong court. Szanto's mistake was excusable, because it occurred because of a lack of knowledge and understanding of the rules of bankruptcy procedure which has now been rectified. Szanto now realizes his previous error and properly pursues this matter in this Bankruptcy Court.

## MEMORANDUM in OPPOSITION to REMAND

1. **JURISDICTION REGARDING THE SUBJECT MATTER OF THE BANKRUPTCY OF WAMU IS PROPER BEFORE THIS COURT**

### *a. Proper Parties; New Parties May be Amended*

Initially party seeking remand makes the argument [Remand Motion p.3, ¶ 3] that "neither WMI or WMI Investment are named as a defendant in the California Action." Szanto counters this argument by the fact that his state complaint included provision for doe defendants who may not have been known nor clearly identified at the time that he filed his complaint. Additionally, FRCP Rule 15(a)(2) provides this Court with the ability freely to allow amendment, when justice requires. If Szanto's claims are not being pursued against the proper party in the instant action, Szanto will seek amendment, when, or if, any defect of naming proper defendants is actually demonstrated to be other than those parties already identified and joined in this Court.

Another significant rebuttal as to the issue of proper party to the instant action is that JPMorgan Chase, against whom Szanto has been in litigation for more than 3 years, has not previously raised the issue that Szanto has brought action against the wrong entity. That is, the various WAMU entities have been conceded by JPMorgan to be the proper parties against whom Szanto has pursued his claims, because by failing previously to make any such objection, defense opposition, JPMorgan has **waived** that claim, FRCP 12(h). JPMorgan can not now raise or argue that contention.

### b. Breadth of this Court's Jurisdiction

28 U.S.C.A. §§ 1331 and 1334 empower this Court with Federal question original jurisdiction regarding the bankruptcy issues which have constrained and prevented complete resolution of Szanto's state court claims against debtor.

Because the state court action which is now joined to the on-going adversarial and bankruptcy proceedings herein come under the exclusive bankruptcy jurisdiction of this Court, this action is proper here.

11 U.S.C.A. § 105 explains the power, scope and forms of relief inherent in this Court. 11 U.S.C.A. § 105(a) allows this court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of bankruptcy laws as to all matters encompassed by the bankruptcy proceedings before it.

Therefore, because the entire substance of this action, Szanto's state action and the bankruptcy proceedings already before this Court, turn on the common subject matter of the what assets remain in the estate of debtor WAMU and to whom debtor must relinquish those assets, this action is proper here.

Szanto, in his state complaint, seeks redress for various breaches of contract and fiduciary duty as well as other claims against WAMU and JPMorgan. By extrapolation to the instant bankruptcy and adversarial proceedings, Szanto's claims regarding assets and liabilities transferred, or not transferred, from WAMU because of WAMU's bankruptcy are the identical claims already before this Court. Szanto is merely joining his claims to an on-going action in this Court. The only event, of minor significance because of delay, is that Szanto, inadvertently and because of excusable lack of knowledge, did not originally initiate his action in this Court.

Szanto's removal to proceed in this Court relies upon the well settled bankruptcy principle that a bankruptcy court which has taken the property (or etstate) of the debtor into its actual or constructive possession has exclusive, non-statutory, equity jurisdiction to govern the administration and distribution of that property (or etstate). Szanto contends that upon that ground his joinder of claims to those which are already proceeding before this Court is proper, because this Court has already exerted jurisdiction over the property and estate of WAMU.

In *Murphy v. John Hofman Co.,* (1909) 211 U.S. 562, 569, 29 S.Ct. 154, 156, 53 L.Ed. 327 our Supreme Court explained and settled that: "Where a court of competent jurisdiction has taken property into its possession, through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The court, having possession of the property, has an ancillary jurisdiction to hear and determine all questions respecting the title, possession, or control of the property. In the courts of the United States, this ancillary jurisdiction may be exercised, though it is not authorized by any statute." Here, Szanto contends that WAMU's estate in bankruptcy is the property that is already within this Courts jurisdiction; and that ancillary or supplemental jurisdiction to effect complete bankruptcy administration, necessarily must include adjudication of Szanto's claims, because jurisdiction in all other courts no longer exists. Szanto's claims have been "withdrawn from the jurisdiction of all other courts." (*ibid*)

More importantly and directly related to the instant proceedings: "(W)hen a court of competent jurisdiction in appropriate proceedings has taken (jurisdiction over the estate of the debtor), all other courts are powerless to disturb (jurisdiction), and the court having custody has jurisdiction to hear and determine all questions necessary to a complete adjudication of the cause and ancillary jurisdiction to determine all questions respecting the title, possession, or control of the property. This principle is applicable to all state and federal courts, including courts of bankruptcy." *Atlanta Flooring & Insulation Co. v. Russell,* (1944) 145 F.2nd 493, 495

This court, under 11 U.S.C.A. § 105, is a "court of competent jurisdiction" insofar as it exclusively is delegated the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," so long as the "order, process, or judgment" is issued with respect to property (or estate) in its actual or constructive possession. Therefore, the relief which Szanto sought in the state court was never within the jurisdiction of the state court to grant !!

### c. Related-to Jurisdiction

Our Supreme Court understood that Congress, purposefully, did not delineate, restrict nor marginalize the scope of 'related to' jurisdiction, but that the breadth was intended to be broad and extensive. *Celotex Corp. v. Edwards* (1995) 514 U.S. 300 at 308, 115 S.Ct. 1493.

This fact is emphatically and unequivocally explained in the House of Representatives Report attached to Public Law 95-598, *The Bankruptcy Reform Act of 1978* at page 13:

> "The jurisdiction of the proposed bankruptcy courts is substantially expanded. The hearings and the commission report are replete with evidence of the need for expanded jurisdiction. The new courts will have jurisdiction over 'all proceedings arising under Title 11, or arising under or related to a case under Title 11.' Possession or consent will no longer be necessary to the jurisdiction of the bankruptcy courts. The new courts must be given adequate power to enforce this jurisdiction. Process will extend nationwide in support of the broad grant." (*ibid*)

Specifically, JPMorgan's Remand Motion makes only cursory reference and no analysis of the concept of 'related to' jurisdiction as enunciated in *Combustion Engineering* (2004) 391 F.3rd 190. Indeed, JPMorgan intentionally overlooks the *Combustion Engineering* rule that is applicable to the instant case (and shaves off the ultimately most significant word – CONCEIVABLY – from its citation):

> "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy....* An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." (*ibid*)

Here, one question raised by Szanto is to whom to look for the continued performance of the mortgage contract now allegedly owned by JPMorgan. It is not only conceivable, but a certainty, that Szanto's promissory entitlement to continued course of contractual performance lies with the original mortgagee (WAMU) or the alleged acquiring mortgagee (JPMorgan). The certain affect on the estate of WAMU will be that Szanto's contractual claims will be proven to belong to the estate of WAMU, or to have been acquired by JPMorgan. Proof of these facts will occur at the trial of the adversarial proceeding.

This factual question can only be finally resolved at the time of trial of the adversarial proceeding, because resolution depends on what other assets remain in the estate of WAMU.

JPMorgan's conclusory comment [2nd to last sentence of Remand Motion, p.3]: "The California Action cannot affect the Debtors' estate." --- is without reason or explanation. **Conceivably**, Szanto's action, which seeks the continuation of the course of contractual performance on which his mortgage had relied prior to WAMU's bankruptcy, could be adjudged part of the bankruptcy estate or part of the liability that

JPMorgan acquired when it acquired the assets of WAMU. The determination cannot be made until the time of trial of the adversarial proceeding.

JPMorgan also mis-states [very unprofessionally] the court's related to analysis in *WR Grace* (2009) 591 F.3rd 164. In fact, the entire citation states: "Indeed, we have stated and restated that, in order for a bankruptcy court to have related-to jurisdiction **to enjoin a lawsuit**, that lawsuit must 'affect the bankruptcy [ ] without the intervention of yet another lawsuit.'" (**bold** and underline added, *ibid*) That is, contrary to JPMorgan's representation there is no limitation of removal to bankruptcy courts, except to the issuance of injunctions which do not affect the bankruptcy. [This type of intentional mis-representation – in blatant defiance of courts ---, is typical of the misleading tactics to which Szanto has been subjected by JPMorgan's counsel for more than 3 years.]

Again, the issues in this case are questions of fact and law which can not be adduced without the presentation of competent evidence to this Court; competent evidence will be presented at time of trial.

## 2. ALLEGED PROCEDURAL IMPROPRIETY

JPMorgan attacks two perceived procedural errors: 1) the 28 USCA 1446(a) requirement that allows only a defendant to seek removal and 2) the timeliness of removal.

JPMorgan errs in its representation of the applicable remand law, because 28 U.S.C.A. § 1452 is the correct statute for removal of claims related to bankruptcy cases, That law states in pertinent part:

> "(a) A party may remove any claim or cause of action in a civil action ..... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

The applicability of 28 U.S.C.A. §§ 1331 and 1334 to this action was previously analyzed and found to applicable.

28 U.S.C.A. § 1452 is specific. The use of the term 'party' was not intended to constrain removal only to defendant's. Additionally, the law has no time limitation.

Significantly, our Supreme Court has settled that the propriety of removal is better analyzed by whether a district court would have had original jurisdiction if the case had been filed in that court. *Grubbs v. General Elec. Credit Corp.* (1972) 405 U.S. 699, 92 S.Ct. 1344. Here, had JPMorgan not appeared in the state action, Szanto would have dismissed his action in state court and refiled as a creditor and adversary of WAMU in this Court.

### 3. RELIEF UNDER FRCP 60

Bankruptcy Procedure Rule 9027(3) explains the time for filing removal when, as here, Szanto's civil action was initiated after commencement of the case under the Bankruptcy Code. Szanto contends that any error failing timely to file removal earlier was merely a result of his excusable lack of knowledge regarding bankruptcy procedure. Another fact which caused delay was that, even though he is a preferred share creditor of WAMU, Szanto did not timely receive notice or any of the bankruptcy process or pleadings to which he is entitled as a preferred shareholder.

Here, Szanto makes the FRCP 60(b)(1) assertion for relief due to his mistake (pursuing the state court matter in the mistaken belief that a judgment against JPMorgan would obtain completely relief in the absence of WAMU), inadvertence (not understanding fully bankruptcy procedure) and excusable neglect (having to find alternate sources of income to make up the shortfall of dividend and interest payments which WAMU and JPMorgan did not provide, thereby being excusably neglectful because of time constraints properly to research bankruptcy procedure), in advance of any order. Szanto prays for prospective relief so as to avoid making any subsequent FRCP 60 application.

## 4. JUDICIAL ECONOMY, AVOID MULTIPLE ACTIONS

Objector to remand would suggest to this Court, that remand of this matter to the state court, would merely create additional judicial work. This would occur because there would then be two identical cases being pursued simultaneously to resolve the identical issues of what exact assets and what exact liabilities are in the estate of WAMU and which are owned by JPMorgan.

Likewise, Szanto is a creditor of WAMU who is making his initial claims and appearance by this action. Szanto's claims against the estate of debtor WAMU cannot be resolved by remand.

The overriding interests of judicial economy and effective finality of a bankruptcy court's decisions are essential to avoid unending litigation *In re Marvel Entertainment Group, Inc.* (1998) 140 F.3rd 463. Here, the grant of remand will only create additional litigation.

A final determination in a bankruptcy case involves consideration of such factors as "the impact of the matter on the assets of the bankruptcy estate, the preclusive effect of a decision on the merits, and whether the interests of judicial economy will be furthered." *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 104 (3d Cir.1988)). Here, denying remand will expedite this case's final determination in this Court which is best equipped to resolve the disputes of the parties.

Additionally, the possibility also exists that the state court decision will differ from this Court's final determination thereby creating inconsistent judgments needing further judicial effort to harmonize. *In re Marvel Entertainment Group, Inc.* (1998) 140 F.3d 463.

## 5. EVIDENTIARY OBJECTIONS

OBJECTION HEARSAY - Many statements by counsel in the application for remand attempt to present facts which are untrue, or skewed. Statements: EG, 1) that JPMorgan's Motion for Summary Judgment is currently before the state court (untrue), 2) mis-stating the actual ruling in *Combustion Engineering* which precludes additional lawsuits in bankruptcy when injunctions are sought (unrelated to the instant circumstances).

## 6. PRAYER

Szanto prays that remand be denied and that this case proceed before this Court. A full factual analysis and the presentation of oral and written evidence is necessary to provide complete proof that Szanto's claims against the estate of WAMU must be tried in this Court.

February 17, 2012  _____ Peter Szanto

## Proof of Service

### Proof of Service By U.S. Mail

1. My name is Mathew Martenyi, I am over 18 years of age and not a party to the within action. I am self-employed and work in Orange County CA.
2. My business address is P.O. Box 10451, Newport Beach CA 92658.
3. On February 22,, 2012, I personally placed copies of the within Opposition into envelopes, sealed those envelopes and put sufficient first class postage thereon to assure delivery and addressed those sealed envelopes as follows:

   RICHARDS, LAYTON & FINGER
   920 North King Street
   Wilmington, Delaware 19801

   WEIL, GOTSHAL & MANGES
   767 Fifth Avenue
   NYC, NY 10153

   The copy to LANDIS RATH & COBB
      located at
      919 Market Street # 1800
      Wilmington DE 19801
         was stipulated to service by e-mail by Mr. Mc Guire and
         sent electronically to   Matt McGuire <mcguire@lrclaw.com>

   SULLIVAN & CROMWELL
   125 Broad Street
   NYC, NY 10004

   Said envelope were deposited into US Postal Service at Newport Beach CA in Orange County CA.

4. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct; signed at Newport Beach California.

   February 22, 2012 _____ Mathew Martenyi