Page 1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3    CASE NO. 08-12229 (MFW)

4    - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    WASHINGTON MUTUAL, INC., ET AL,

8

9          Debtors.

10   - - - - - - - - - - - - - - - - - - - x

11

12                           United States Bankruptcy Court

13                           824 North Market Street

14                           Wilmington, Delaware   19801

15

16                           April 22, 2019

17                           11:30 AM

18

19

20   B E F O R E :

21   HON. MARY F. WALRATH

22   U.S. BANKRUPTCY JUDGE

23

24

25

1   HEARING Re First Omnibus Objection (Substantive) of Alice

2   Griffin, Class 19 Interest Holder, to Claims (Nos. 3935 and

3   4045) Allowed Pursuant to a Stipulation Dated March 28, 2013

4   Between the WMI Liquidating Trust and Morgan Stanley & Co.,

5   Incorporated, Credit Suisse Securities (USA) LLC, and

6   Goldman Sachs & Co., on behalf of Themselves and Certain

7   Underwriters (Docket No. 12595 - filed March 22, 2019)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sheila Orms

```
 1   A P P E A R A N C E S :

 2   RICHARDS, LAYTON & FINGER, P.A.

 3        Attorneys for the Debtors and Debtors-in-Possession

 4        One Rodney Square

 5        920 North King Street

 6        Wilmington, DE 19081

 7

 8   BY:  AMANDA R. STEELE, ESQ.

 9

10   PROSKAUER ROSE LLP

11        Attorneys for Washington Mutual, Inc.

12        Eleven Times Square

13        New York, NY  10036

14

15   BY:  BRIAN ROSEN, ESQ.

16        FRANK ZARB, ESQ.

17

18   QUINN EMANUEL

19        Attorneys for Washington Mutual, Inc.

20

21   BY:  BENJAMIN FINESTONE, ESQ.

22

23

24

25
```

```
1   CIARDI ASTIN
2        Attorneys for Alice Griffith
3
4   BY:  JACK MCLAUGHLIN, ESQ.
5        DANIEL ASTIN, ESQ.
6
7   GRIFFITH LAW
8        Attorneys for Alice Griffith
9
10  BY:  ALICE GRIFFITH, ESQ.
11
12  ASTY & GEDDE
13       Attorneys for Underwriters
14
15  BY:  BILL BOWDEN, ESQ.
16       DAVID COOK, ESQ.
17
18  GIBSON DUNN
19       Attorneys for Underwriters
20
21  BY:  ALAN MOSKOWITZ, ESQ.
22
23
24
25
```

```
1                    P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  Good morning.

4              UNIDENTIFIED:  Good morning, Your Honor.

5              MR. MCLAUGHLIN:  Good morning, Your Honor.

6              THE COURT:  Mr. McLaughlin, how are you?

7              MR. MCLAUGHLIN:  For the record, Jack McLaughlin

8    of Ciardi Ciardi and Astin, on behalf of Alice Griffin.  Ms.

9    Griffin is present in court today.  She's actually a member

10   of the New York Bar and had been admitted in this case

11   properly, so she'll be presenting her own case.  We're here

12   for moral support and for administrative purposes.

13             THE COURT:  All right.

14             MR. MCLAUGHLIN:  With me this morning is my

15   partner Dan Astin.  Also I will note we had some exhibit

16   binders I think may have been wrongfully delivered to your

17   chambers rather than the courtroom.

18             THE COURT:  I did get four copies of them.  I

19   wondered --

20             MR. MCLAUGHLIN:  Yeah, that was an error.

21             THE COURT:  -- why I needed --

22             MR. MCLAUGHLIN:  Parcels was coming around and try

23   and fetch them.

24             THE COURT:  I have them.

25             MR. MCLAUGHLIN:  Okay.  May I approach?
```

1               THE COURT:  May I keep one?

2               MR. MCLAUGHLIN:  Absolutely.  I apologize.

3               THE COURT:  That's fine.

4               MR. MCLAUGHLIN:  And, Your Honor, with that then,

5      I will cede the podium to Ms. Griffin for her argument.

6               THE COURT:  All right.  Thank you.

7               MR. MCLAUGHLIN:  Thank you, Your Honor.

8               MS. GRIFFIN:  Good morning, Your Honor.

9               THE COURT:  Good morning.

10              MS. GRIFFIN:  Alice Griffin, Class 19 interest

11     holder here to defend my objection to inclusion of certain

12     underwriters in Class 19.

13              THE COURT:  Okay.

14              MS. GRIFFIN:  Your Honor, I mean, for the reasons

15     I've stated in the objection, I think it's very clear that

16     these underwriters' claims on their merits were essentially

17     worthless according to the liquidating trust in their

18     September 14, 2012 objection.  And based on that, in my

19     review of the stipulation which the final stipulation that's

20     dated March 28th, 2013 which by its own terms didn't become

21     operational until presented to this Court and reviewed by

22     this Court, which my understanding is it never was.  It was

23     invalid.

24              My understanding is that they were given -- these

25     underwriters were given 1.4 million shares in the

1    reorganized debtor and I'm assuming also escrow interest as

2    other Class 19 members, but I do not believe that their

3    claims, that they should be in Class 19 for the reasons I've

4    set forth in that objection.

5             I think, you know, it's extremely perplexing to me

6    that in the face of that September 14, 2012 objection where

7    the claims were designated as basically worthless --

8             THE COURT:  Well, you understand as in litigation

9    that there are two sides to every argument.

10            MS. GRIFFIN:  Yes, ma'am.

11            THE COURT:  The underwriters didn't concede that

12   their claims were worthless.

13            MS. GRIFFIN:  That's right.

14            THE COURT:  In fact, they asserted they were

15   entitled to creditor claims, not -- which would have

16   priority over the preferred shareholders, correct?

17            MS. GRIFFIN:  That's correct.  They would have --

18   if anything, they would have had a place in Class 18 or

19   another creditor class, not Class 19 or 22.

20            THE COURT:  But you understand that in bankruptcy,

21   creditors get paid before shares or any equity get paid

22   anything.

23            MS. GRIFFIN:  Yes, I do, yes.

24            THE COURT:  So how would it have benefitted Class

25   19 shareholders to have a 72 million or almost $100 million

1    claim in a class ahead of them?

2              MS. GRIFFIN:  Well, obviously, you know, Your

3    Honor, again I go back to my point about the claims being

4    essentially by -- in the liquidating trust's own words,

5    unambiguously worthless, that they wouldn't have even been

6    there.

7              THE COURT:  Well, that's again one side of the

8    argument --

9              MS. GRIFFIN:  Yes.

10             THE COURT:  -- and there is case law on both sides

11   --

12             MS. GRIFFIN:  Yes.

13             THE COURT:  -- on that point.  And the liquidating

14   trustee would have had to win a hundred percent of its

15   argument --

16             MS. GRIFFIN:  Yes.

17             THE COURT:  -- in order to have rendered those

18   claims worthless.

19             MS. GRIFFIN:  Yes.  I -- my reading, though, of

20   the objection where I believe it was stated in -- where it

21   was stated that under no circumstance can the settlement

22   amounts, that's the $72 million portion be paid.  I mean, I

23   -- Your Honor, I just could not -- it seemed to me that even

24   to have any kind of dialogue once you've made a statement

25   like that that's so unambiguous and so encompassing it just

1    seems like it's incomprehensible that you can get back from

2    that.

3              THE COURT:  Well but --

4              MS. GRIFFIN:  It's almost as though --

5              THE COURT:  -- lawyers and pleadings state things

6    in the absolute all the time and nonetheless they settle.

7              MS. GRIFFIN:  Yes, yes, I understand that, Your

8    Honor.  This is an extraordinary settlement for 100 percent.

9              THE COURT:  Well, 100 percent not as a claim

10   though --

11             MS. GRIFFIN:  Yes.

12             THE COURT:  -- not as a creditor.

13             MS. GRIFFIN:  Yes.  No, I get that.

14             THE COURT:  In a class below creditors.

15             MS. GRIFFIN:  Yes.  Yes.

16             THE COURT:  So -- and I think even in this case

17   shareholders are -- that class is not going to get a hundred

18   percent, is it?

19             MS. GRIFFIN:  We don't know.

20             THE COURT:  Class 19?

21             MS. GRIFFIN:  Well, Your Honor, I -- there's hope.

22             THE COURT:  Okay.

23             MR. MCLAUGHLIN:  Your Honor, may I be heard?

24             THE COURT:  Yes.

25             MR. MCLAUGHLIN:  Just very briefly.  Your Honor,

1    one of the issues here is more a procedural issue than a

2    substantive one.  Leaving aside the complexities of the

3    trading of the stocks, which I'll confess I really don't

4    understand.  But the big problem here, Your Honor, is the

5    final stipulation that was entered into back when the deal

6    was cut.  It is Exhibit E in the binder I gave you there.

7    It is an exhibit to one of the pleadings filed by the

8    respondents.

9             THE COURT:  And I think it was attached to the

10   objection, wasn't it?

11            MR. MCLAUGHLIN:  No.

12            THE COURT:  But I did see it, okay.

13            MR. MCLAUGHLIN:  And that was the problem, Your

14   Honor, Ms. Griffin had requested a copy of that stipulation

15   for a long time --

16            THE COURT:  Uh-huh.

17            MR. MCLAUGHLIN:  -- and was unable to obtain that

18   until we finally had to engage in formal discovery and all

19   of a sudden it popped up.

20            But again, Your Honor, part of the problem here is

21   that that final stipulation which was entered into between

22   the trust and the claimants years ago, and presumably

23   drafted by the trust contains a specific provision at

24   paragraph 7 that says it's required to be approved by the

25   Court prior to becoming effective, and of course, this is

1    the -- the stipulation says the document sort of triggered

2    this whole complex reclassification.

3           So Ms. Griffin's position is that the stipulation

4    never become effective because it was never provided, it

5    never went out notice, it was never provided to the Court

6    for approval.  I understand that there were multiple, dozens

7    of other stipulations that were filed with the Court, and

8    for which approval was sought over the years, and this is

9    the one that never was.

10          So the question is, why was it not presented to

11   the Court by its own terms, again the trustee albeit having

12   broad discretion under the confirmation order of the plan

13   and the trust agreement, stipulating that they may have

14   broad discretion.  Nonetheless the document itself required

15   Court approval and never obtained Court approval.

16          THE COURT:  But they assert, the trustee asserts

17   that the parties waived that requirement and could have

18   waived that requirement, because as you say in the plan and

19   the liquidating trust agreement bankruptcy court approval

20   was not required after confirmation.

21          MR. MCLAUGHLIN:  However, when they drafted the

22   document, they specifically included unambiguous language

23   saying Court approval is required.

24          There is a provision somewhere in the trust

25   agreement that also says they can waive it, but it has to be

1    waived in writing.  And we have not been produced -- we have

2    not been provided with any document of any nature whatsoever

3    that suggests that that requirement was ever waived.

4            At the last in time, Your Honor, we suggest is

5    last and right, that this was the last writing that

6    addressed the issue, and it says Court approval is required.

7    And while the trustee may have that prerogative, he never

8    apparently took any steps to effectuate a written waiver of

9    that provision.

10           THE COURT:  Which paragraph requires any waiver in

11   writing?

12           MR. MCLAUGHLIN:  Your Honor, give me one moment.

13           THE COURT:  I mean, it says it can't be modified

14   except in writing but.

15           MR. MCLAUGHLIN:  Well, I think that's what we're

16   drawing upon.  Again, given the -- Your Honor,

17   philosophically the question of whether or not there's broad

18   discretion the trustee is given post confirmation is

19   desirable first, but be that as it may, that's what the

20   confirmation order said.

21           THE COURT:  Uh-huh.

22           MR. MCLAUGHLIN:  But again, you know, you've got a

23   requirement -- they've agreed to have it approved by the

24   Court and they never did and they never waived it formally

25   and this is a technical argument, there's no question about

```
 1   it.

 2              THE COURT:  Uh-huh.

 3              MR. MCLAUGHLIN:  And whether or not a dime comes

 4   to Class 19 is really irrelevant to the fact that this deal

 5   was never properly approved by the Court or put on notice to

 6   the shareholders.

 7              THE COURT:  Well, if you -- if I'm required to or

 8   if they're required to ask for my approval, why should I not

 9   approve this?

10              MR. MCLAUGHLIN:  Well, maybe you should but that's

11   a different issue.  That's, you know --

12              THE COURT:  Well, but --

13              MR. MCLAUGHLIN:  -- it would go out on notice and

14   Ms. Griffin or other -- apparently there's a lot of

15   disgruntled class members.

16              THE COURT:  I'm struggling to see why this is

17   unfair to Class 19.  I'm trying to see why this settlement

18   is unfair to all creditors and shareholders.

19              MR. MCLAUGHLIN:  Do you want to address that?

20              MS. GRIFFIN:  Your Honor, my feeling and I restate

21   this, is that the claims for -- there were two claims.

22   Originally there was this --

23              THE COURT:  Right.

24              MS. GRIFFIN:  -- $24 million claim for legal

25   expenses and then there was the 72 million claim for
```

1    settlement amounts for indemnification and the -- in the

2    October -- in the September 14, 2012 objection --

3             THE COURT:  Uh-huh.

4             MS. GRIFFIN:  -- the liquidating trust made it

5    crystal clear that in no event could those be paid on the

6    settlement amount portion.

7             THE COURT:  I understand but the underwriters

8    contest that, they assert otherwise that they are entitled

9    to this, they have a contractual indemnification provision

10   and there is case law that says in certain circumstances

11   that could be allowed.

12            MS. GRIFFIN:  Right.  But again going back to the

13   liquidating trust's own words that --

14            THE COURT:  Okay.

15            MS. GRIFFIN:  -- indemnification where there's

16   been a settlement I guess is sort of a moral hazard --

17            THE COURT:  I understand.

18            MS. GRIFFIN:  -- that you have to prove -- you

19   have to litigate to the end not settle because otherwise --

20            THE COURT:  Or you have to show that you were not

21   one of the tort feasers, you were not responsible.

22            MS. GRIFFIN:  Right.  And none of that was proved

23   on the --

24            THE COURT:  Because they settled.

25            MS. GRIFFIN:  Yeah.

1           THE COURT:  But they assert that they could have

2    proven that.  I mean, that's the point of a settlement is

3    two sides have diametrically opposed positions.

4           MS. GRIFFIN:  Right.

5           THE COURT:  And clearly if they had litigated

6    this, it would have been costly.

7           MS. GRIFFIN:  Yes.

8           THE COURT:  It would have been lengthy.  It would

9    have taken a long time.  There would have been discovery and

10   depositions, really they would have to relitigate or

11   litigate the actual underlying securities fraud claims

12   against the underwriters, right?

13          MS. GRIFFIN:  Yes.  If they were litigating on --

14   they would have had to have determined that the underwriters

15   --

16          THE COURT:  Were not grossly negligent or not --

17          MS. GRIFFIN:  Exactly, yes, yes.  Yes, I --

18          THE COURT:  -- responsible.

19          MS. GRIFFIN:  But what I'm saying is, Your Honor,

20   upon my review of their strident objections --

21          THE COURT:  Well --

22          MS. GRIFFIN:  -- that's my view.  I mean,

23   obviously they might have a very different opinion but I did

24   not understand how you could unsee -- Your Honor, it's sort

25   of like, you know, when you talk about what could come in

1    and the recoveries, to show, you know, I cannot prove

2    definitively that there is going to be recovery to Class 19

3    and Class 22, which are pari passu, but there certainly is a

4    possibility there could be a recovery.

5              And I don't believe that anybody here can say

6    otherwise that -- there's never been an ambiguous --

7    unambiguous statement.  Now, the liquidating trust has

8    updated its fact sections on its website in part because of

9    I think my agitation, in which it said that WMB, they don't

10   expect anything from WMB and the WMB waterfall in the FDIC,

11   which is understandable because right now it seems to be

12   insolvent to the tune of 14 billion.

13             THE COURT:  All right.  But either way, again,

14   let's go back to if they had tried this and what if the

15   liquidating trustee had lost, there would have been a $100

16   million contractual claim, creditor claim ahead of --

17             MS. GRIFFIN:  Right.

18             THE COURT:  -- Classes 19 and 22.

19             MS. GRIFFIN:  Right.  But if something came in

20   excess --

21             THE COURT:  Well, but isn't better to --

22             MS. GRIFFIN:  I would rather have them than, Your

23   Honor, as creditors then have them diluting Class 19 by 1

24   percent.

25             THE COURT:  Rather than them getting a hundred

1    percent before you got anything.

2              MS. GRIFFIN:  Well, if there's a -- it depends on

3    how much comes into the waterfall, Your Honor.  If it's

4    enough, because it's capped as a creditor claim.  It's

5    capped.  Once they're paid, it's over.  This -- and the

6    thing about being in Class 19 --

7              THE COURT:  Okay.  But getting $100 million --

8              MS. GRIFFIN:  Yes.

9              THE COURT:  -- versus getting 1 percent of your

10   recovery which could be anything, isn't a hundred percent

11   better than -- worse for you than sharing 1 percent?

12             MS. GRIFFIN:  I don't -- not -- depends on what

13   comes in, Your Honor.

14             THE COURT:  Well, currently how much has come in?

15             MS. GRIFFIN:  Well, we don't know.  We don't know.

16             THE COURT:  You've gotten nothing under the

17   waterfall, right?

18             MS. GRIFFIN:  No.  Class 19 and Class 22 we're

19   pari passu with Class 22 getting 25 percent and Class 19

20   getting 75.

21             THE COURT:  And getting seventy -- right.

22             MS. GRIFFIN:  And just for further illustration,

23   Your Honor, you know, basically you need $10 billion for the

24   face securities in Class 19 to get par, but hypothetically

25   if there were twice that much it would mean that the --

1    these -- the underwriters would get actually more like 144.

2              THE COURT:  But you'd also get more than a hundred

3    percent.

4              MS. GRIFFIN:  Right.  But the thing is --

5              THE COURT:  So --

6              MS. GRIFFIN:  I -- Your Honor, you know, if they

7    were capped to the creditor claim and say 20 billion came

8    in, they would get -- say if they got their full 72, they

9    would get that, but the Class 19 wouldn't -- would not be

10   giving up any value to these interest holders.

11             THE COURT:  Well, but if they had a creditor claim

12   of a hundred million --

13             MS. GRIFFIN:  Yes.

14             THE COURT:  -- that would be paid before you got

15   anything.

16             MS. GRIFFIN:  Yes, absolutely.

17             THE COURT:  So I'm --

18             MS. GRIFFIN:  But they --

19             THE COURT:  Based on what is currently

20   anticipated, that would be a worst recovery for you if they

21   got their hundred million.

22             MS. GRIFFIN:  Currently, Your Honor, but you know,

23   we -- a good many of us feel that there's a possibility that

24   we could get substantially more than par.  We could get

25   substantially more than par, you know, and -- Your Honor,

1    one of the things that has intrigued me about, you know,

2    when you confirmed the plan I went and I read the release --

3    definition of released claims to find out what WMI, then WMI

4    now the LT --

5              THE COURT:  Okay.

6              MS. GRIFFIN:  -- preserved under.  And there's

7    identical language in the definition of released claims at

8    Section 1.183 under the plan, and in the GSAs, these

9    identical language.

10             But I also did something else, and I believe it's

11   the last exhibit.  It's Exhibit M.

12             THE COURT:  The portion of the disclosure

13   statement?

14             MS. GRIFFIN:  Yeah, but, Your Honor, I put them

15   altogether.  These are the different incarnations I believe

16   every incarnation of the plan.  So this disclosure was --

17   statement was for March 26th, 2012 and if you look the

18   definition of released claims, that comes in at 1.148.  And

19   that provision right there is sue generous, but in every

20   other iteration that follows, the next one came out March --

21   May 16, 2010.  The next one succeeded 5/17 and further on.

22   You will notice the difference between the first one, Your

23   Honor, and the second one.

24             For example, contains what you call -- we call a

25   carve-out, an exception that create -- that says that the --

1    that says that WMI released claims do not include claims

2    that the -- that WMI may have against the FDIC receiver, the

3    receivership or FDIC corporate.

4            THE COURT:  But that was not the one that was

5    approved.

6            MS. GRIFFIN:  Well, what I'm saying is from the

7    first one that you see, that -- there's no language about

8    recourse to the FDIC or -- receiver or corporate.

9            THE COURT:  So what?

10           MS. GRIFFIN:  So what I'm saying is that that was

11   added subsequently and it's in every iteration until the

12   last one.  And the last one is the one that is actually in

13   the plan, Section 1.183, I just gave the documents as

14   background.

15           And if you look at the last page in Exhibit M --

16           THE COURT:  Uh-huh.

17           MS. GRIFFIN:  -- you see Section 1.183 and this

18   says that not released are any and all claims against the

19   FDI receiver, solely with respect to the receivership.

20   That's the carve-out.

21           THE COURT:  Okay.  So?

22           MS. GRIFFIN:  What I take it to mean, and then I

23   went and looked at the GSA to see what was actually

24   transferred in the GSA.  The GSA, as you know, administered

25   like the tax refunds, they were divided among the --

```
 1                THE COURT:  Okay.  This is all speculative.

 2                MS. GRIFFIN:  Yes, ma'am.

 3                THE COURT:  It's all speculative as to what the

 4    trust may or may not recover.

 5                MS. GRIFFIN:  Right, yes, I understand.  So

 6    there's no --

 7                THE COURT:  So it doesn't matter if it's a --

 8                MS. GRIFFIN:  -- dollar amount, there's no dollar

 9    amount that we can put on it, Your Honor.

10                THE COURT:  If it's 1 billion or 10 billion or

11    nothing more --

12                MS. GRIFFIN:  Right.  But if it is substantial

13    then I would rather have that 100 million paid and gone than

14    have -- sorry --

15                THE COURT:  Yeah, but what if it's not substantial

16    you'll get nothing --

17                MS. GRIFFIN:  Right.

18                THE COURT:  -- if that $100 million is paid first.

19                MS. GRIFFIN:  Right.  You know --

20                THE COURT:  You think that's better for your class

21    to get nothing than to get a share of $100 million?

22                MS. GRIFFIN:  Your Honor, we think it could be

23    more than that.  I do anyway.

24                THE COURT:  I know you think it could be --

25                MS. GRIFFIN:  Yes.
```

1          THE COURT:  -- but you're one entity and there's

2     no guarantee.

3          MS. GRIFFIN:  Right.

4          THE COURT:  You have to consider this from the

5     perspective of the liquidating trustee at the time of

6     considering the settlement.

7          MS. GRIFFIN:  Your Honor, but when you look at --

8          THE COURT:  Which is better for shareholders

9     generally and creditors generally.

10          MS. GRIFFIN:  Your Honor, and also looking back at

11     the stipulation that you did approve, the earlier one

12     February 3rd, 2011 where you're dealing with the whole 96

13     million, you had -- there was 24 million in for the legal

14     expenses that went into Class 18 --

15          THE COURT:  Yes.

16          MS. GRIFFIN:  -- a creditor claim.  And then there

17     was 72 million that went into Class 20 which was, at that

18     time under that iteration that one of the versions of Plan 6

19     that would not have been paid because plan -- because they -

20     - Class 20 wasn't going to get anything under the plan.

21          So under that -- and that seems to comport, Your

22     Honor, with what was subsequently done in the September 14,

23     2012 objection --

24          THE COURT:  But Class 20 was ultimately renamed

25     Class 19 and when the plan was confirmed Class 19 got

1    something.

2              MS. GRIFFIN:  Yes.  That is correct.

3              THE COURT:  Okay.

4              MS. GRIFFIN:  That is --

5              THE COURT:  So the 72 million was put into the

6    class in which you are --

7              MS. GRIFFIN:  Yes.

8              THE COURT:  -- that ultimately did get something.

9    So whether the prior plan provided to give them --

10              MS. GRIFFIN:  But based --

11              THE COURT:  -- nothing or not is not relevant.

12              MS. GRIFFIN:  But, Your Honor, when you look at

13    the earlier stipulation and you look at the legal arguments

14    it seems that Class -- the Class 18 claim of 24 million

15    seems to basically have more merit because basically they

16    said, well, look, if you can show that these legal expenses

17    are valid, here they're treated like a creditor in Class 18

18    and would -- but Class 19, the Class 20 there was nothing

19    there, they never intended to pay anything there.

20              THE COURT:  Well, but that plan was not approved -

21    -

22              MS. GRIFFIN:  That's true.

23              THE COURT:  -- because the equity shareholders

24    objected.

25              MS. GRIFFIN:  This is true.

```
 1                THE COURT:  And said there is something available
 2    for shareholders.
 3                MS. GRIFFIN:  Yes.
 4                THE COURT:  And ultimately it was allowed.
 5                MS. GRIFFIN:  Yes.  Well, Your --
 6                THE COURT:  So whether -- that is the plan that
 7    was confirmed.
 8                MS. GRIFFIN:  Well.
 9                THE COURT:  But they got the benefit of their
10    bargain to be treated as the class below creditors --
11                MS. GRIFFIN:  The other thing --
12                THE COURT:  -- which is your class.
13                MS. GRIFFIN:  But the other thing is, Your Honor,
14    when you read the definition of preferred equity interests
15    it doesn't -- that definition -- it's in the plan, that's
16    immutable, can't be changed and it excludes those.  You had
17    to have been a member -- there were three types of preferred
18    securities, Your Honor.  The TPS which had $4 billion face,
19    there was the Series R, which had $3 billion face, and then
20    there was a Series K, which had $500 billion face, and if
21    you read the definition of preferred equity interest, it
22    says that those -- you had to be one of the preferred that
23    were created before I believe the debtor's plan was
24    confirmed.
25                And even though the claims contain language that
```

1     says -- that would seem to include -- let's see, so I don't

2     speculate on it.

3              THE COURT:  Which is the plan exhibit or

4     disclosure statement exhibit?

5              MS. GRIFFIN:  The definition of preferred.  Sorry.

6     I'm sorry, Your Honor, just bear with me.

7              All right.  Well, the definition of preferred

8     equity interest --

9              THE COURT:  Hold on.

10             MS. GRIFFIN:  -- is limited to --

11             THE COURT:  Hold on.

12             MS. GRIFFIN:  Okay.

13             THE COURT:  1.17?

14             MS. GRIFFIN:  Yes.

15             THE COURT:  170.

16             MS. GRIFFIN:  I know it's in there somewhere.

17             THE COURT:  Okay.  I have it.

18             MS. GRIFFIN:  Okay.  So you'll see that I think it

19    has a provision that says including without limitation.

20             THE COURT:  Right.

21             MS. GRIFFIN:  So they're listing the three, but

22    then it says it has a time bar.  It says that it is -- I

23    think that they can't -- that it was during -- before

24    confirmation issued by the debtor.  So that would preclude

25    including anything in Class 19.

1            THE COURT:  Where's the time bar, what are you

2    talking about?

3            MS. GRIFFIN:  When you read the very beginning it

4    says --

5            THE COURT:  Okay.  A stock -- an interest issued

6    prior to or on the petition date.

7            MS. GRIFFIN:  Yes.  So would -- and it says

8    including and those three.  So a Class 19 interest couldn't

9    -- now -- couldn't be created.

10            THE COURT:  Okay.  But they argue that 510 allows

11    subordination and allows claims to be added to classes.

12            MS. GRIFFIN:  Your Honor, and if you look at Class

13    -- the definition of common equity interest, I'm sorry I

14    don't have that one in front of me, common equity interest

15    contains a subpart B, common equity interest you can add to

16    common equity interest.  But that language is not in

17    preferred equity interest.

18            THE COURT:  Well, the reference in 510(b) to

19    common stock simply says that if -- it's the same as common

20    stock, it's not put below common stock, it's put in the same

21    class as common stock.

22            MS. GRIFFIN:  Right and I understand that, Your

23    Honor, but what I'm saying is that when the plan was

24    created, this -- their -- they could -- if they'd put it in

25    Class 22 first of all I wouldn't be here because I have no

1    Class 22 interest.  But in Class 22 you can expand it

2    because of that subparagraph B, the definition of common

3    equity interest.

4              THE COURT:  And where is that?  In the definition

5    of --

6              MS. GRIFFIN:  Yes.

7              THE COURT:  -- Class 22?

8              MS. GRIFFIN:  In -- yes.  Yes, ma'am, in

9    subparagraph B.  It is in there.  And that is omitted from

10   the definition of preferred equity interest.

11             THE COURT:  Okay.

12             MS. GRIFFIN:  So if they had put it in there in

13   Class 22, well like I said I wouldn't have standing, but

14   also I wouldn't -- I don't think anybody --

15             THE COURT:  What if they had put it in Class 18?

16             MS. GRIFFIN:  If they -- they could have put it in

17   Class 18 or they could have put it in Class 22 by my

18   definition, Your Honor, because when I was researching for -

19   - to prepare for this, I just -- even though I didn't own

20   any common that's where I looked.  But, you know, if we --

21   if this had been brought up to the Court we could have had

22   these conversations years ago about whether it could have

23   been in Class 19 or Class 22 or Class 18.  But not Class

24   19's definition, Your Honor, because --

25             THE COURT:  All right.

1            MS. GRIFFIN:  -- before the petition date, on or

2     before.

3            THE COURT:  I understand your argument.

4            MS. GRIFFIN:  Your Honor --

5            THE COURT:  Anything else?

6            MS. GRIFFIN:  That's what I was going to ask you,

7     if you, you know -- if you had any specific questions for me

8     at this time.

9            THE COURT:  Well, let me hear from the trust and

10    see if I have any more questions.

11           MS. ROSEN:  Good morning, Your Honor.

12           THE COURT:  Good morning.

13           MS. ROSEN:  Brian Rosen, Proskauer Rose on behalf

14    of WMI Liquidating Trust.  With me is my partner Frank Zarb

15    who is here to address any questions you might have with

16    respect to certain securities issues and Amanda Steele from

17    Richard Layton & Finger.  Also, Your Honor, we have Mr. Ben

18    Finestone from Quinn Emanuel who was involved in the

19    preparation of the stipulation --

20           THE COURT:  Okay.

21           MS. ROSEN:  -- as well as counsel for the

22    underwriters of both Gibson Dunn and Mr. Bowden as local

23    counsel.

24           Your Honor, I'd like to just make a few things

25    clear and try to address any questions that you might have

1   because that our response was pretty complete and I do know

2   that Ms. Griffin did file a reply that tried to address some

3   additional issues, so I will try to address those.

4          Your Honor, just to clear up any confusion that

5   might be out there, in the February 2011 stipulation that

6   was on notice to everybody, including Ms. Griffin, including

7   the equity committee at that time, Your Honor, the Court did

8   approve the classification of two claims.  There was a Class

9   18 claim which was in the amount of approximately $24

10  million and it also approved the classification of $72

11  million claim in Class 20, and as the Court has already

12  recounted that Class 20 was then moved to Class 19 as

13  further iterations of the plan unfolded.

14         So it's not that there's $100 million in one

15  class, Your Honor, I just want to make sure the Court has

16  the facts.

17         THE COURT:  Yes, I do.

18         MS. ROSEN:  There's 24 in Class 18 that was there

19  before the final stipulation was entered into, and there was

20  72 million in Class 19.

21         Ms. Griffin noted that there have been some

22  modification to the FAQ's, she attributed to her agitation,

23  but, Your Honor, that was not the case because we've always

24  made clear that there are no claims, there are no assets

25  coming from the receivership to the trust.

1            The only thing that was to have come to the trust,

2    Your Honor, was pursuant to the global settlement agreement.

3    And once the receivership consummated the global settlement

4    agreement, once the receivership allowed for whatever was to

5    happen to come to the trust itself, there are no remaining

6    claims that the trust has against the receivership.

7            There were also, Your Honor, included in the most

8    recent 10-K that was filed, and this is based upon your

9    Court entering the order, Your Honor, most recently with

10   respect to the employee claims.  There was a distribution

11   that was made in February of approximately $50 million and

12   that was made, Your Honor, to the tranche in the waterfall

13   above Class 18.  And it finally paid off in full those

14   claims, which now opens up the door or the waterfall, Your

15   Honor, to Class 18 claims.

16           And as noted in our response, Your Honor, and is

17   noted in the 10-K that was filed, the amount of allowed

18   claims and disputed claims that have yet to be resolved in

19   Class 18 exceed the net assets which remain in the trust.

20           So as we noted in the response, we do not see the

21   likelihood of a distribution going to any holders of Class

22   19 or 21 or 22 claims other than the stock that has already

23   been provided on the effective date of the plan, Your Honor.

24           To us, Your Honor, we included in the response,

25   that should close the discussion entirely.  But what would

1    happen if, in fact, this somehow was opened up, which we

2    don't think it can be, Your Honor, because there is no

3    provision like Mr. McLaughlin said that requires written

4    approval, there is the absolute provision in the trust that

5    says the liquidating trustee can approve what the

6    liquidating trustee determines is in the best interests of

7    the trust including, Your Honor, based upon the fiduciary

8    obligations of the trustee advisory board, and that was what

9    happened here.

10            Yes, there was a provision paragraph 7 in the

11   final stipulation, yes, Your Honor, you indicated it and it

12   is correct that provision was waived by the parties.  That

13   stipulation became effective when the stock was distributed

14   on May 1st, 2013.  And that was duly noted, Your Honor, four

15   days after the stipulation had been entered into that it was

16   going to happen.

17            It was included, Your Honor, in the 2013 10-K

18   which actually relates back to the period ended 2012, Your

19   Honor, but it was almost immediate that it was included.

20   And for years afterwards it was also included verbatim, Your

21   Honor, the existence of the stipulation and that it was

22   consummated, Your Honor.

23            Ms. Griffin raises a few other points, Your Honor,

24   which I don't really think need to be further addressed

25   about 8-K's and 10-K's because just for Your Honor's benefit

1    there is no reporting obligation at all for the trust.  We

2    are doing it pursuant to a no action letter that was entered

3    into, and there is no obligation to actually file it, except

4    pursuant to that no action letter.

5              But even if there were, Your Honor, by the

6    inclusion of the information in the 10-K itself, it obviated

7    the need for any other filings.

8              Your Honor, the references, the 10 billion that

9    keeps coming up, there are no other assets of the trust,

10   Your Honor, we've made it abundantly clear we've included it

11   in FAQ's, we've included it in calls that we've had with

12   people like Ms. Griffin, other equity holders who constantly

13   call the trust, there are no more assets to be distributed

14   other than those net assets that I referred to before, Your

15   Honor, which will be insufficient to get us through Class

16   18.

17             So while I appreciate that Class 18 preferred

18   stockholders and Class 22 common stockholders are still

19   frustrated that the bank was seized by the FDIC.  There is

20   nothing that we can do about that, Your Honor, in fact,

21   there was nothing that anyone could do more than 30 days

22   after the seizure itself, because that was the period that

23   closed to fight the actual seizure by the FDIC.

24             There are also other issues that are raised in Ms.

25   Griffin's response, hypotheticals, Your Honor, positing that

1   the trust could do this transaction or that transaction to

2   essentially screw equity holders out of whatever recovery

3   might otherwise come their way.

4           No one but equity holders have ever thought of

5   those theories, no one but equity holders have ever thought

6   that there's additional assets, Your Honor.  We're just

7   trying to finish the liquidation and the reconciliation of

8   the estate, Your Honor.  We hope to do it in this calendar

9   year.  We have to reconcile the remaining Class 18 claims

10  which I indicated are very significant, Your Honor, because

11  as the Court may recall way back when, Your Honor, and I'm

12  going six years or more, there were claims that were

13  represented or for misrepresentation of bond claims

14  emanating out of Washington Mutual Bank.  We refer them to

15  Class 17-B and we never had to deal with those claims, Your

16  Honor, because we never thought we'd get to Class 18 for

17  distribution.

18          Now that we do, Your Honor, we have to reconcile

19  those claims.  And based upon the sheer magnitude of those

20  with what's already allowed there won't be a distribution to

21  anyone beneath those, Your Honor.

22          Lastly, Your Honor, I just want to -- I think one

23  more, I apologize.

24          THE COURT:  Let me ask one factual question --

25          MS. ROSEN:  Sure, Your Honor.

1                THE COURT:  -- and it's not -- may not even be

2      relevant, but what were the underlying securities that were

3      the --

4                MS. ROSEN:  That was what I wanted to go to.

5                THE COURT:  -- basis of the securities fraud

6      action?

7                MS. ROSEN:  There were debt and there were equity

8      claims, Your Honor, and the equity claims, that the claims

9      related to were preferred stock.  So when the subordination

10     occurred, that was why the stipulation in February of 2011

11     related to Class 19 that was whey we've included them in the

12     preferred stock, and ultimately in the final stipulation

13     because they got subordinated all the way down to that level

14     from the creditor claim.

15               THE COURT:  Okay.

16               MS. ROSEN:  The 24 million, Your Honor, related to

17     a debt claim, so we put it below all other general unsecured

18     claims and to the subordinated class.

19               THE COURT:  Uh-huh.

20               MS. ROSEN:  Thank you for reminding me of my last

21     point, Your Honor.  If you don't have any more questions,

22     Your Honor, I'll cede the podium.

23               THE COURT:  All right.  No thank you.

24               MR. BOWDEN:  Good morning, Your Honor, may it

25     please the Court, Bill Bowden of Ashby & Geddes on behalf of

1    the underwriters, Your Honor.  With me is my colleague David

2    Cook, and forwarding counsel Alan Moskowitz with the Gibson

3    Dunn Crutcher Firm.

4            Your Honor, we filed a joinder which I know Your

5    Honor has read.  We agree with the contents of Mr. Rosen's

6    response.  I agree with the comments that he's made here on

7    the record today.  I just have a couple of very brief points

8    --

9            THE COURT:  Okay.

10           MR. BOWDEN:  -- if I may.

11           One, Your Honor, to the extent Ms. Griffin, with

12   all due respect is complaining about the classification of

13   the $72 million settlement claim into Class 19, Your Honor,

14   the class -- what I call the classification stipulation,

15   first stipulation which was on notice which Your Honor did

16   approve that classification.

17           So I think that's water under the bridge, so to

18   speak.  Your Honor, the other couple of points I'd like to

19   make are first, with respect to the basis for disallowance,

20   if you would of the claims in Class 19, Allegheny requires a

21   showing of evidence and you don't have any evidence here

22   today other than speculative assertions in the pleadings.

23           And I know it's not lost on Your Honor that were

24   these issues litigated, rather than settled -- thank you --

25   the amount of claims ahead of Class 19 could have been

1    significantly greater and we did walk away from $24 million

2    in what were admittedly Class 18 claims that would have had

3    priority over Class 19.

4            And, Your Honor, Mr. Brian reminded me, we never

5    did respond to the 83rd omnibus objection filed by the

6    trust.  The parties engaged immediately after it was filed

7    in negotiations and reached a stipulation, which has been

8    the subject of much debate here today.

9            Your Honor, that's all I have unless Your Honor

10   has any questions for me.

11           THE COURT:  No, thank you.

12           MR. BOWDEN:  Thank you.

13           MR. MCLAUGHLIN:  Very briefly, Your Honor, again

14   to get back to the procedural matter.  Paragraph 7 of the

15   final stipulation required for approval, Court approval was

16   never obtained, that notice never went out to any of the

17   parties in interest including my client.  And the -- whether

18   or not all these -- we speculate now about whether there's

19   going to be more money or less money or not enough money,

20   whatever, all that's good and fine, but the bottom line is

21   there was a time -- there was a mechanism in the Bankruptcy

22   Code and in the stipulation for airing this before the Court

23   in an orderly fashion.

24           Now, here we are several years later arguing about

25   it.  The bottom line is the Class 19 shareholders feel that

1    they would have had a right to weigh in on that stipulation

2    pursuant to the terms of the stipulation itself directed by

3    the trust.  So we'd ask the Court to sustain the objection

4    to the proofs of claim.

5              THE COURT:  Anything else you have, Ms. Griffin?

6              MS. GRIFFIN:  Yes, Your Honor.  I understand that

7    the underwriters or that the trust is asserting that they

8    waived the provision 7 in the final stipulation.  Do they

9    have writing for that, because the agreement says they can't

10   be amended except in writing.

11             THE COURT:  All right.

12             MS. GRIFFIN:  The other thing I would say is I

13   reiterate, you know, if this had been done to Class 22 given

14   that it has an exception that allows it to expand in

15   subparagraph B it would be different, but the definition of

16   preferred equity interest is immutable and it has no --

17   there's no way of getting in after the petition date and

18   there were only three varieties and that's all there is, so

19   that's -- do you have anything else for me, Your Honor?

20             THE COURT:  No, thank you.

21             MS. GRIFFIN:  Thank you.

22             THE COURT:  Well, let me run through -- I'm sorry,

23   did --

24             MR. FINESTONE:  Your Honor, only if you had any

25   questions about the terms of the original stipulation, the

1    final stipulation.

2              THE COURT:  Well, was there a written waiver?

3              MR. FINESTONE:  For the record, Ben Finestone on

4    behalf of the trust.  I feel a little bit responsible for

5    all of the -- everybody's time here today in two respects.

6    One, Ms. Griffin, it was my pleadings that were filed on

7    behalf of the trust when I was adverse to the underwriters

8    telling them that they're never going to get any claim

9    allowed, and I do -- that is my thought and Judge Walrath

10   hit the nail on the head in terms of when you're dealing

11   with big money center banks like we were dealing with, you

12   have to let them know that the trust is being serious and

13   that we're going to assert all kinds of objections to the

14   end of the road.  And I think that we did, in fact, do that.

15             One thing that was a little bit unclear in the

16   record today is, the benefits of the settlement, Your Honor,

17   is not just subordination pursuant to 510(b), we got that in

18   the first stipulation, but it also was a disallowance of $24

19   million of what would be a senior claim and which were just

20   not legal fees.

21             So that was a consideration that the Board were to

22   reconsider this today, had any reason to reconsider this

23   today would sign up to that settlement again today.  I just

24   wanted that to be clear, but that was my fault, Ms. Griffin,

25   for which I apologize.

1         The other reason I wanted to stand up and take

2    some of the blame here today is because we did have that

3    appendage in the stipulation, and in the final stipulation

4    that said it required Court approval.  The reason that was

5    in there was because we had done a first stipulation which

6    subordinated the claim subject to allowance, that was in

7    their -- that was actually a mutual mistake, Your Honor,

8    that it was in the second stipulation, a mistake shared by

9    my firm and by firm to the underwriters, that's why there

10   was no question it was going to be immediately waived.

11        There is a writing, there is an e-mail writing,

12   but there was never -- the important thing it's not really a

13   question of waiver, it's a question of contemporaneous

14   intent, it was a mutual mistake.  The intent between the

15   trust and the underwriter banks was never to seek Court

16   approval, it was to rely on the language of the litigation

17   trust that did not require the trust to come to seek Court

18   approval, not because there was anything to hide, as

19   evidenced by the fact that in the 10-K all the material

20   terms were disclosed four days later.

21        I think this was just a matter of that you had a

22   different firm handling it for the objection, what I learned

23   from Mr. Rosen just recently is that Weil, Gotshal and

24   Proskauer and Rose were presenting stipulations to the

25   Court, it's not something I knew about, we just read the

1    trust and said, when you settle a claim objection you don't

2    have to seek Court approval.

3            So there was never any intent to seek Court

4    approval, and I apologize for the confusion, but I think the

5    important thing that there also was never any intent to hide

6    any of the material terms of the objection as evidenced by

7    the 10-K that was filed four days later, which didn't just

8    say Claim XYZ was settled, it said Claim XYZ was settled on

9    the following terms, Your Honor.

10           THE COURT:  Okay.

11           MR. FINESTONE:  Thank you.

12           THE COURT:  All right.

13           MS. GRIFFIN:  May I?  Your Honor, it's been a long

14   time since I've practiced bankruptcy law in my infancy as a

15   lawyer, but I do understand contract and this contract says

16   that it cannot be changed, except through a writing,

17   modified through a writing.

18           They've presented no writing.  This is -- it

19   doesn't matter what they were talking about, this is

20   contemporaneously before what have you, what matters what's

21   in this document, this contract.  And Section 9 says

22   absolutely not, they've presented no writings.

23           So this is parole evidence, this is --

24           THE COURT:  All right.

25           MS. GRIFFIN:  -- irrelevant.  Thank you, ma'am.

1          Mutual --

2          MR. MCLAUGHLIN:  May I?  Your Honor, just one

3    observation counsel suggested there was a mutual mistake.

4    As I remember contracts 1, a mutual mistake is a defense to

5    the formation of the contract, it's not a defense to -- it's

6    -- it doesn't age on interpretation, it's a mutual mistake,

7    then there wasn't any contract which is what we're kind of

8    saying anyway, so thank you.

9          THE COURT:  We're not going to get into this

10   because I'm really not going to consider that.

11         Let me just do this and I think based on the

12   pleadings that the parties have filed I do need to address

13   some preliminary matters that weren't argued today and the

14   first is whether or not Ms. Griffin or any other Class 19

15   creditor has standing to object to the underwriter's claims

16   or to raise this issue.

17         And while the trust asserts that Section 26.1 of

18   the plan of reorganization gives the liquidating trustee the

19   standing to object or to prosecute objections on behalf of

20   the estate, as Ms. Griffin points out that's not exclusive.

21   And Section 502 generally does allow any other creditor to

22   object to other creditor's claims.

23         But there is an issue raised even if Ms. Griffin

24   or other shareholders or creditors did have standing to

25   object to the claims is it quite simply just too late to do

1    that.  And I think that it's not simply an objection to the

2    claim.  What really Ms. Griffin is pressing is an objection

3    to the settlement of that claim.  The claims were settled.

4         First, the classification was settled in February

5    of 2011 over eight years ago.  The amount of the claims and

6    the final resolution of the claims was stipulated to by the

7    liquidating trustee over six years ago in March of 2013.

8         And although Ms. Griffin complains they did not --

9    the shareholders and other parties did not get notice of

10   that, the facts do not support that assertion.  There were

11   filings with the SEC immediately after the stipulation was

12   executed, and in several annual SEC filings thereafter, and

13   in the trustee's quarterly reports filed with this Court.

14   And those all make it clear what the terms of the settlement

15   were and the treatment of the underlying claims.

16         So I believe that the equitable doctrine of laches

17   precludes this objection from being prosecuted at this time.

18   But even if it were not too late, again, my analysis would

19   be predicated on whether or not this settlement was proper

20   because the objection is to the settlement, not to the

21   underlying claims.

22         And the 3rd Circuit has told us the factors a

23   Court must consider in approving a settlement are the

24   probability of success in the litigation, the likely

25   difficulties in collection, the complexity of the

1    litigation, and the amount of expense, inconvenience, and

2    delay involved in prosecuting the litigation rather than

3    settling, and the paramount interests of creditors and other

4    parties in interest.

5         In this case, I think all those factors support

6    approval of the final settlement by a liquidating trustee.

7    While Ms. Griffin asserts that it was clearly underwriters

8    had no claim as evidenced by the 83rd omnibus objection, I

9    think it is clear that the underwriters disagreed with that.

10   And the underwriters in filing their original claim and

11   responding to the debtor's initial objection to that claim

12   made it clear that they believed they had a valid claim

13   against the estate.

14        And it is not hornbook law that an indemnity claim

15   cannot be allowed for defense of a securities litigation,

16   but really it depends as the 2nd Circuit in the Globas (ph)

17   case, it depends on whether or not the underwriters can show

18   that they were not the tort feaser, and they were nothing

19   more than simply negligent.

20        Again, the claim of the underwriters was a

21   contractual claim, not an equity claim.  And if allowed in

22   full, potentially could have been paid or allowed prior to

23   any shareholders getting paid, including the preferred

24   shareholders.

25        So there was substantial risk.  The liquidating

1    trustee would have had to, in essence, retry the securities

2    litigation and would have had to try a subordination claim

3    under 510.  All of that, the liquidating trustee had no

4    guarantee of success in that litigation, there were no

5    difficulties in collection, but there certainly were

6    difficulties, expense, inconvenience, and probably a

7    substantial delay if that litigation had proceeded.

8              The fourth factor, the paramount interest of

9    creditors and other parties in interest, I am having a lot

10   of difficulty in trying to understand why the preferred

11   shareholders believed that had the underwriters proceeded

12   with their -- prosecution of their claim, and if in fact,

13   they're -- at least the $24 million had been allowed as a

14   Class 18 or higher creditor claim, and been paid a hundred

15   percent for the preferred shareholders got anything, how

16   that would have been better than the settlement, which

17   disallowed any claim ahead of the Class 19, but allowed a

18   partial claim in Class 19.

19             So I think that all of the factors and approval of

20   a settlement make it clear that this settlement was not in

21   bad faith, was not a breach of fiduciary duty, but really

22   was a proper exercise of the liquidating trust obligation

23   under the trust agreement.  And if it had been presented to

24   me I think I would have approved it at the time.

25             So quite frankly I think whether or not it was

1   required to be presented to me under the agreement between

2   the parties or whether the parties could mutually waive that

3   requirement I still would have approved it.

4           I think a hundred percent of a claim is worse for

5   those in classes below it than 1 percent of their claim

6   distribution.  So I will deny the objection of Ms. Griffin

7   to that underwriters claims as settled in the second

8   stipulation.

9           MS. STEELE:  Thank you, Your Honor.  Would you

10  like us to confer with the other side and submit an order

11  under certification of counsel?

12          THE COURT:  That would be great.

13          MS. STEELE:  Okay.  We'll go do that.  Thank you.

14          MS. ROSEN:  Thank you, Your Honor.

15          THE COURT:  Thank you.  We'll stand adjourned.

16  (Proceedings concluded at 12:28 p.m.)

17                      * * * * *

18

19

20

21

22

23

24

25

1             I N D E X

2

3             R U L I N G S

4    DESCRIPTION                                    PAGE

5    First Omnibus Objection (Substantive) of        41

6    Alice Griffin, Class 19 Interest Holder, to

7    Claims (Nos. 3935 and 4045) Allowed Pursuant

8    to a Stipulation Dated March 28, 2013 Between

9    the WMI Liquidating Trust and Morgan Stanley & Co.,

10   Incorporated, Credit Suisse Securities (USA) LLC,

11   and Goldman Sachs & Co., on behalf of Themselves

12   and Certain Underwriters (Docket No. 12595 - filed

13   March 22, 2019)

14

15

16

17

18

19

20

21

22

23

24

25

1                          CERTIFICATE

2    I, Sheila G. Orms, certify that the foregoing is a true and

3    accurate transcript from the official electronic sound

4    recording.

5    Shelia Orms
     Digitally signed by Shelia Orms
     DN: cn=Shelia Orms, o, ou,
     email=digital@veritedt.com,
     c=US
6    _____
     Date: 2019.04.23 16:04:47 -04'00'

7    SHEILA ORMS, APPROVED TRANSCRIBER

8

9    DATED:  April 23, 2019

10

11

12

13

14

15

16    Veritext Legal Solutions

17    330 Old Country Road

18    Suite 300

19    Mineola, NY 11501

20

21

22

23

24

25

| & | | | |
| --- | --- | --- | --- |

**&**

**&** 2:4,6 3:2 4:12
28:17 34:25 46:9
46:11

**0**

**08-12229** 1:3

**1**

**1** 16:23 17:9,11
21:10 41:4 45:5
**1.148.** 19:18
**1.17** 25:13
**1.183** 19:8 20:13
20:17
**1.4** 6:25
**10** 17:23 21:10
30:8,17 31:17,25
32:6,8 39:19 40:7
**100** 7:25 9:8,9
16:15 17:7 21:13
21:18,21 29:14
**10036** 3:13
**11501** 47:19
**11:30** 1:17
**12595** 2:7 46:12
**12:28** 45:16
**14** 6:18 7:6 14:2
16:12 22:22
**144** 18:1
**16** 19:21
**17** 33:15
**170** 25:15
**18** 7:18 22:14
23:14,17 27:15,17
27:23 29:9,18
30:13,15,19 32:16
32:17 33:9,16
36:2 44:14
**19** 2:2 6:10,12 7:2
7:3,19,25 9:20
13:4,17 16:2,18
16:23 17:6,18,19
17:24 18:9 22:25

22:25 23:18 25:25
26:8 27:23 29:12
29:20 30:22 34:11
35:13,20,25 36:3
36:25 41:14 44:17
44:18 46:6
**19's** 27:24
**19081** 3:6
**19801** 1:14
**1st** 31:14

**2**

**20** 18:7 22:17,20
22:24 23:18 29:11
29:12
**2010** 19:21
**2011** 22:12 29:5
34:10 42:5
**2012** 6:18 7:6 14:2
19:17 22:23 31:18
**2013** 2:3 6:20
31:14,17 42:7
46:8
**2019** 1:16 2:7
46:13 47:9
**21** 30:22
**22** 1:16 2:7 7:19
16:3,18 17:18,19
26:25 27:1,1,7,13
27:17,23 30:22
32:18 37:13 46:13
**23** 47:9
**24** 13:24 22:13
23:14 29:9,18
34:16 36:1 38:18
44:13
**25** 17:19
**26.1** 41:17
**26th** 19:7
**28** 2:3 46:8
**28th** 6:20
**2nd** 43:16

**3**

**3** 24:19
**30** 32:21
**300** 47:18
**330** 47:17
**3935** 2:2 46:7
**3rd** 22:12 42:22

**4**

**4** 24:18
**4045** 2:3 46:7
**41** 46:5

**5**

**5/17** 19:21
**50** 30:11
**500** 24:20
**502** 41:21
**510** 26:10,18
38:17 44:3

**6**

**6** 22:18

**7**

**7** 10:24 31:10
36:14 37:8
**72** 7:25 8:22 13:25
18:8 22:17 23:5
29:10,20 35:13
**75** 17:20

**8**

**8** 31:25
**824** 1:13
**83rd** 36:5 43:8

**9**

**9** 40:21
**920** 3:5
**96** 22:12

**a**

**absolute** 9:6 31:4
**absolutely** 6:2
18:16 40:22

**abundantly** 32:10
**accurate** 47:3
**action** 32:2,4 34:6
**actual** 15:11
32:23
**add** 26:15
**added** 20:11
26:11
**additional** 29:3
33:6
**address** 13:19
28:15,25 29:2,3
41:12
**addressed** 12:6
31:24
**adjourned** 45:15
**administered** 20:24
**administrative** 5:12
**admitted** 5:10
**admittedly** 36:2
**adverse** 38:7
**advisory** 31:8
**age** 41:6
**agitation** 16:9
29:22
**ago** 10:22 27:22
42:5,7
**agree** 35:5,6
**agreed** 12:23
**agreement** 11:13
11:19,25 30:2,4
37:9 44:23 45:1
**ahead** 8:1 16:16
35:25 44:17
**airing** 36:22
**al** 1:7
**alan** 4:21 35:2
**albeit** 11:11
**alice** 2:1 4:2,8,10
5:8 6:10 46:6

**allegheny** 35:20
**allow** 41:21
**allowance** 39:6
**allowed** 2:3 14:11
  24:4 30:4,17
  33:20 38:9 43:15
  43:21,22 44:13,17
  46:7
**allows** 26:10,11
  37:14
**altogether** 19:15
**amanda** 3:8 28:16
**ambiguous** 16:6
**amended** 37:10
**amount** 14:6 21:8
  21:9 29:9 30:17
  35:25 42:5 43:1
**amounts** 8:22
  14:1
**analysis** 42:18
**annual** 42:12
**anticipated** 18:20
**anybody** 16:5
  27:14
**anyway** 21:23
  41:8
**apologize** 6:2
  33:23 38:25 40:4
**apparently** 12:8
  13:14
**appendage** 39:3
**appreciate** 32:17
**approach** 5:25
**approval** 11:6,8
  11:15,15,19,23
  12:6 13:8 31:4
  36:15,15 39:4,16
  39:18 40:2,4 43:6
  44:19
**approve** 13:9
  22:11 29:8 31:5
  35:16

**approved** 10:24
  12:23 13:5 20:5
  23:20 29:10 44:24
  45:3 47:7
**approving** 42:23
**approximately**
  29:9 30:11
**april** 1:16 47:9
**argue** 26:10
**argued** 41:13
**arguing** 36:24
**argument** 6:5 7:9
  8:8,15 12:25 28:3
**arguments** 23:13
**ashby** 34:25
**aside** 10:2
**assert** 11:16 14:8
  15:1 38:13
**asserted** 7:14
**asserting** 37:7
**assertion** 42:10
**assertions** 35:22
**asserts** 11:16
  41:17 43:7
**assets** 29:24 30:19
  32:9,13,14 33:6
**assuming** 7:1
**astin** 4:1,5 5:8,15
**asty** 4:12
**attached** 10:9
**attorneys** 3:3,11
  3:19 4:2,8,13,19
**attributed** 29:22
**available** 24:1

**b**

**b** 1:20 26:15,18
  27:2,9 33:15
  37:15 38:17
**back** 8:3 9:1 10:5
  14:12 16:14 22:10
  31:18 33:11 36:14
**background**
  20:14

**bad** 44:21
**bank** 32:19 33:14
**bankruptcy** 1:1
  1:12,22 7:20
  11:19 36:21 40:14
**banks** 38:11 39:15
**bar** 5:10 25:22
  26:1
**bargain** 24:10
**based** 6:18 18:19
  23:10 30:8 31:7
  33:19 41:11
**basically** 7:7
  17:23 23:15,15
**basis** 34:5 35:19
**bear** 25:6
**becoming** 10:25
**beginning** 26:3
**behalf** 2:6 5:8
  28:13 34:25 38:4
  38:7 41:19 46:11
**believe** 7:2 8:20
  16:5 19:10,15
  24:23 42:16
**believed** 43:12
  44:11
**ben** 28:17 38:3
**beneath** 33:21
**benefit** 24:9 31:25
**benefits** 38:16
**benefitted** 7:24
**benjamin** 3:21
**best** 31:6
**better** 16:21 17:11
  21:20 22:8 44:16
**big** 10:4 38:11
**bill** 4:15 34:25
**billion** 16:12
  17:23 18:7 21:10
  21:10 24:18,19,20
  32:8
**binder** 10:6

**binders** 5:16
**bit** 38:4,15
**blame** 39:2
**board** 31:8 38:21
**bond** 33:13
**bottom** 36:20,25
**bowden** 4:15
  28:22 34:24,25
  35:10 36:12
**breach** 44:21
**brian** 3:15 28:13
  36:4
**bridge** 35:17
**brief** 35:7
**briefly** 9:25 36:13
**broad** 11:12,14
  12:17
**brought** 27:21

**c**

**c** 3:1 5:1
**calendar** 33:8
**call** 19:24,24
  32:13 35:14
**calls** 32:11
**capped** 17:4,5
  18:7
**carve** 19:25 20:20
**case** 1:3 5:10,11
  8:10 9:16 14:10
  29:23 43:5,17
**cede** 6:5 34:22
**center** 38:11
**certain** 2:6 6:11
  14:10 28:16 46:12
**certainly** 16:3
  44:5
**certificate** 47:1
**certification**
  45:11
**certify** 47:2
**chambers** 5:17
**changed** 24:16
  40:16

**ciardi**  4:1 5:8,8
**circuit**  42:22
  43:16
**circumstance**
  8:21
**circumstances**
  14:10
**claim**  8:1 9:9
  13:24,25 16:16,16
  17:4 18:7,11
  22:16 23:14 29:9
  29:11 34:14,17
  35:13 37:4 38:8
  38:19 39:6 40:1,8
  40:8 42:2,3 43:8
  43:10,11,12,14,20
  43:21,21 44:2,12
  44:14,17,18 45:4
  45:5
**claimants**  10:22
**claims**  2:2 6:16
  7:3,7,12,15 8:3,18
  13:21,21 15:11
  19:3,7,18 20:1,1
  20:18 24:25 26:11
  29:8,24 30:6,10
  30:14,15,18,18,22
  33:9,12,13,15,19
  34:8,8,8,18 35:20
  35:25 36:2 41:15
  41:22,25 42:3,5,6
  42:15,21 45:7
  46:7
**class**  2:2 6:10,12
  7:2,3,18,19,19,24
  8:1 9:14,17,20
  13:4,15,17 16:2,3
  16:23 17:6,18,18
  17:19,19,24 18:9
  21:20 22:14,17,20
  22:24,25,25 23:6
  23:14,14,17,18,18
  24:10,12 25:25

26:8,12,21,25
  27:1,1,7,13,15,17
  27:17,23,23,23,23
  29:8,11,12,12,15
  29:18,20 30:13,15
  30:19,21 32:15,17
  32:18 33:9,15,16
  34:11,18 35:13,14
  35:20,25 36:2,3
  36:25 37:13 41:14
  44:14,17,18 46:6
**classes**  16:18
  26:11 45:5
**classification**  29:8
  29:10 35:12,14,16
  42:4
**clear**  6:15 14:5
  28:25 29:4,24
  32:10 38:24 42:14
  43:9,12 44:20
**clearly**  15:5 43:7
**clerk**  5:2
**client**  36:17
**close**  30:25
**closed**  32:23
**code**  36:22
**colleague**  35:1
**collection**  42:25
  44:5
**come**  15:25 17:14
  30:1,5 33:3 39:17
**comes**  13:3 17:3
  17:13 19:18
**coming**  5:22
  29:25 32:9
**comments**  35:6
**committee**  29:7
**common**  26:13,14
  26:15,16,19,19,20
  26:21 27:2,20
  32:18
**complaining**
  35:12

**complains**  42:8
**complete**  29:1
**complex**  11:2
**complexities**  10:2
**complexity**  42:25
**comport**  22:21
**concede**  7:11
**concluded**  45:16
**confer**  45:10
**confess**  10:3
**confirmation**
  11:12,20 12:18,20
  25:24
**confirmed**  19:2
  22:25 24:7,24
**confusion**  29:4
  40:4
**consider**  22:4
  41:10 42:23
**consideration**
  38:21
**considering**  22:6
**constantly**  32:12
**consummated**
  30:3 31:22
**contain**  24:25
**contains**  10:23
  19:24 26:15
**contemporaneous**
  39:13
**contemporaneo...**
  40:20
**contents**  35:5
**contest**  14:8
**contract**  40:15,15
  40:21 41:5,7
**contracts**  41:4
**contractual**  14:9
  16:16 43:21
**conversations**
  27:22
**cook**  4:16 35:2

**copies**  5:18
**copy**  10:14
**corporate**  20:3,8
**correct**  7:16,17
  23:2 31:12
**costly**  15:6
**counsel**  28:21,23
  35:2 41:3 45:11
**country**  47:17
**couple**  35:7,18
**course**  10:25
**court**  1:1,12 5:3,6
  5:9,13,18,21,24
  6:1,3,6,9,13,21,22
  7:8,11,14,20,24
  8:7,10,13,17 9:3,5
  9:9,12,14,16,20
  9:22,24 10:9,12
  10:16,25 11:5,7
  11:11,15,15,16,19
  11:23 12:6,10,13
  12:21,24 13:2,5,7
  13:12,16,23 14:3
  14:7,14,17,20,24
  15:1,5,8,16,18,21
  16:13,18,21,25
  17:7,9,14,16,21
  18:2,5,11,14,17
  18:19 19:5,12
  20:4,9,16,21 21:1
  21:3,7,10,15,18
  21:20,24 22:1,4,8
  22:15,24 23:3,5,8
  23:11,20,23 24:1
  24:4,6,9,12 25:3,9
  25:11,13,15,17,20
  26:1,5,10,18 27:4
  27:7,11,15,21,25
  28:3,5,9,12,20
  29:7,11,15,17
  30:9 33:11,24
  34:1,5,15,19,23
  34:25 35:9 36:11

36:15,22 37:3,5
37:11,20,22 38:2
39:4,15,17,25
40:2,3,10,12,24
41:9 42:13,23
45:12,15
**courtroom** 5:17
**create** 19:25
**created** 24:23
26:9,24
**credit** 2:5 46:10
**creditor** 7:15,19
9:12 16:16 17:4
18:7,11 22:16
23:17 34:14 41:15
41:21 44:14
**creditor's** 41:22
**creditors** 7:21
9:14 13:18 16:23
22:9 24:10 41:24
43:3 44:9
**crutcher** 35:3
**crystal** 14:5
**currently** 17:14
18:19,22
**cut** 10:6

**d**

**d** 5:1 46:1
**dan** 5:15
**daniel** 4:5
**date** 26:6 28:1
30:23 37:17
**dated** 2:3 6:20
46:8 47:9
**david** 4:16 35:1
**days** 31:15 32:21
39:20 40:7
**de** 3:6
**deal** 10:5 13:4
33:15
**dealing** 22:12
38:10,11

**debate** 36:8
**debt** 34:7,17
**debtor** 7:1 25:24
**debtor's** 24:23
43:11
**debtors** 1:9 3:3,3
**defend** 6:11
**defense** 41:4,5
43:15
**definition** 19:3,7
19:18 24:14,15,21
25:5,7 26:13 27:2
27:4,10,18,24
37:15
**definitively** 16:2
**delaware** 1:2,14
**delay** 43:2 44:7
**delivered** 5:16
**deny** 45:6
**depends** 17:2,12
43:16,17
**depositions** 15:10
**description** 46:4
**designated** 7:7
**desirable** 12:19
**determined** 15:14
**determines** 31:6
**dialogue** 8:24
**diametrically**
15:3
**difference** 19:22
**different** 13:11
15:23 19:15 37:15
39:22
**difficulties** 42:25
44:5,6
**difficulty** 44:10
**diluting** 16:23
**dime** 13:3
**directed** 37:2
**disagreed** 43:9
**disallowance**
35:19 38:18

**disallowed** 44:17
**disclosed** 39:20
**disclosure** 19:12
19:16 25:4
**discovery** 10:18
15:9
**discretion** 11:12
11:14 12:18
**discussion** 30:25
**disgruntled** 13:15
**disputed** 30:18
**distributed** 31:13
32:13
**distribution** 30:10
30:21 33:17,20
45:6
**district** 1:2
**divided** 20:25
**docket** 2:7 46:12
**doctrine** 42:16
**document** 11:1,14
11:22 12:2 40:21
**documents** 20:13
**doing** 32:2
**dollar** 21:8,8
**door** 30:14
**dozens** 11:6
**drafted** 10:23
11:21
**drawing** 12:16
**due** 35:12
**duly** 31:14
**dunn** 4:18 28:22
35:3
**duty** 44:21

**e**

**e** 1:20,20 3:1,1 5:1
5:1 10:6 39:11
46:1
**earlier** 22:11
23:13
**effective** 10:25
11:4 30:23 31:13

**effectuate** 12:8
**eight** 42:5
**either** 16:13
**electronic** 47:3
**eleven** 3:12
**emanating** 33:14
**emanuel** 3:18
28:18
**employee** 30:10
**encompassing**
8:25
**ended** 31:18
**engage** 10:18
**engaged** 36:6
**entered** 10:5,21
29:19 31:15 32:2
**entering** 30:9
**entirely** 30:25
**entitled** 7:15 14:8
**entity** 22:1
**equitable** 42:16
**equity** 7:21 23:23
24:14,21 25:8
26:13,14,15,16,17
27:3,10 29:7
32:12 33:2,4,5
34:7,8 37:16
43:21
**error** 5:20
**escrow** 7:1
**esq** 3:8,15,16,21
4:4,5,10,15,16,21
**essence** 44:1
**essentially** 6:16
8:4 33:2
**estate** 33:8 41:20
43:13
**et** 1:7
**event** 14:5
**everybody** 29:6
**everybody's** 38:5
**evidence** 35:21,21
40:23

**evidenced** 39:19
  40:6 43:8
**exactly** 15:17
**example** 19:24
**exceed** 30:19
**exception** 19:25
  37:14
**excess** 16:20
**excludes** 24:16
**exclusive** 41:20
**executed** 42:12
**exercise** 44:22
**exhibit** 5:15 10:6
  10:7 19:11,11
  20:15 25:3,4
**existence** 31:21
**expand** 27:1
  37:14
**expect** 16:10
**expense** 43:1 44:6
**expenses** 13:25
  22:14 23:16
**extent** 35:11
**extraordinary** 9:8
**extremely** 7:5

**f**

**f** 1:20,21
**face** 7:6 17:24
  24:18,19,20
**fact** 7:14 13:4
  16:8 31:1 32:20
  38:14 39:19 44:12
**factor** 44:8
**factors** 42:22 43:5
  44:19
**facts** 29:16 42:10
**factual** 33:24
**faith** 44:21
**faq's** 29:22 32:11
**fashion** 36:23
**fault** 38:24
**fdi** 20:19

**fdic** 16:10 20:2,3
  20:8 32:19,23
**feaser** 43:18
**feasers** 14:21
**february** 22:12
  29:5 30:11 34:10
  42:4
**feel** 18:23 36:25
  38:4
**feeling** 13:20
**fees** 38:20
**fetch** 5:23
**fiduciary** 31:7
  44:21
**fight** 32:23
**file** 29:2 32:3
**filed** 2:7 10:7 11:7
  30:8,17 35:4 36:5
  36:6 38:6 40:7
  41:12 42:13 46:12
**filing** 43:10
**filings** 32:7 42:11
  42:12
**final** 6:19 10:5,21
  29:19 31:11 34:12
  36:15 37:8 38:1
  39:3 42:6 43:6
**finally** 10:18
  30:13
**find** 19:3
**fine** 6:3 36:20
**finestone** 3:21
  28:18 37:24 38:3
  38:3 40:11
**finger** 3:2 28:17
**finish** 33:7
**firm** 35:3 39:9,9
  39:22
**first** 2:1 12:19
  19:22 20:7 21:18
  26:25 35:15,19
  38:18 39:5 41:14
  42:4 46:5

**following** 40:9
**follows** 19:20
**foregoing** 47:2
**formal** 10:18
**formally** 12:24
**formation** 41:5
**forth** 7:4
**forwarding** 35:2
**four** 5:18 31:14
  39:20 40:7
**fourth** 44:8
**frank** 3:16 28:14
**frankly** 44:25
**fraud** 15:11 34:5
**front** 26:14
**frustrated** 32:19
**full** 18:8 30:13
  43:22
**further** 17:22
  19:21 29:13 31:24

**g**

**g** 5:1 46:3 47:2
**gedde** 4:12
**geddes** 34:25
**general** 34:17
**generally** 22:9,9
  41:21
**generous** 19:19
**getting** 16:25 17:7
  17:9,19,20,21
  37:17 43:23
**gibson** 4:18 28:22
  35:2
**give** 12:12 23:9
**given** 6:24,25
  12:16,18 37:13
**gives** 41:18
**giving** 18:10
**global** 30:2,3
**globas** 43:16
**go** 8:3 13:13 16:14
  34:4 45:13

**going** 9:17 14:12
  16:2 22:20 28:6
  30:21 31:16 33:12
  36:19 38:8,13
  39:10 41:9,10
**goldman** 2:6
  46:11
**good** 5:3,4,5 6:8,9
  18:23 28:11,12
  34:24 36:20
**gotshal** 39:23
**gotten** 17:16
**great** 45:12
**greater** 36:1
**griffin** 2:2 5:8,9
  6:5,8,10,10,14
  7:10,13,17,23 8:2
  8:9,12,16,19 9:4,7
  9:11,13,15,19,21
  10:14 13:14,20,24
  14:4,12,15,18,22
  14:25 15:4,7,13
  15:17,19,22 16:17
  16:19,22 17:2,8
  17:12,15,18,22
  18:4,6,13,16,18
  18:22 19:6,14
  20:6,10,17,22
  21:2,5,8,12,17,19
  21:22,25 22:3,7
  22:10,16 23:2,4,7
  23:10,12,22,25
  24:3,5,8,11,13
  25:5,10,12,14,16
  25:18,21 26:3,7
  26:12,22 27:6,8
  27:12,16 28:1,4,6
  29:2,6,21 31:23
  32:12 35:11 37:5
  37:6,12,21 38:6
  38:24 40:13,25
  41:14,20,23 42:2
  42:8 43:7 45:6

46:6
**griffin's** 11:3
  32:25
**griffith** 4:2,7,8,10
**grossly** 15:16
**gsa** 20:23,24,24
**gsas** 19:8
**guarantee** 22:2
  44:4
**guess** 14:16

**h**

**handling** 39:22
**happen** 30:5 31:1
  31:16
**happened** 31:9
**hazard** 14:16
**head** 38:10
**hear** 28:9
**heard** 9:23
**hearing** 2:1
**hide** 39:18 40:5
**higher** 44:14
**hit** 38:10
**hold** 25:9,11
**holder** 2:2 6:11
  46:6
**holders** 18:10
  30:21 32:12 33:2
  33:4,5
**hon** 1:21
**honor** 5:4,5 6:4,7
  6:8,14 8:3,23 9:8
  9:21,23,25 10:4
  10:14,20 12:4,12
  12:16 13:20 15:19
  15:24 16:23 17:3
  17:13,23 18:6,22
  18:25 19:14,23
  21:9,22 22:7,10
  22:22 23:12 24:13
  24:18 25:6 26:12
  26:23 27:18,24
  28:4,11,17,24

29:4,7,15,23 30:2
30:7,9,12,15,16
30:23,24 31:2,7
31:11,14,17,19,21
31:22,23 32:5,8
32:10,15,20,25
33:6,8,10,11,16
33:18,21,22,25
34:8,16,21,22,24
35:1,4,5,11,13,15
35:18,23 36:4,9,9
36:13 37:6,19,24
38:16 39:7 40:9
40:13 41:2 45:9
45:14
**honor's** 31:25
**hope** 9:21 33:8
**hornbook** 43:14
**huh** 10:16 12:21
  13:2 14:3 20:16
  34:19
**hundred** 8:14
  9:17 16:25 17:10
  18:2,12,21 44:14
  45:4
**hypothetically**
  17:24
**hypotheticals**
  32:25

**i**

**identical** 19:7,9
**illustration** 17:22
**immediate** 31:19
**immediately** 36:6
  39:10 42:11
**immutable** 24:16
  37:16
**important** 39:12
  40:5
**incarnation** 19:16
**incarnations**
  19:15

**include** 20:1 25:1
**included** 11:22
  30:7,24 31:17,19
  31:20 32:10,11
  34:11
**including** 25:19
  25:25 26:8 29:6,6
  31:7 36:17 43:23
**inclusion** 6:11
  32:6
**incomprehensible**
  9:1
**inconvenience**
  43:1 44:6
**incorporated** 2:5
  46:10
**indemnification**
  14:1,9,15
**indemnity** 43:14
**indicated** 31:11
  33:10
**infancy** 40:14
**information** 32:6
**initial** 43:11
**insolvent** 16:12
**insufficient** 32:15
**intended** 23:19
**intent** 39:14,14
  40:3,5
**interest** 2:2 6:10
  7:1 18:10 24:21
  25:8 26:5,8,13,14
  26:15,16,17 27:1
  27:3,10 36:17
  37:16 43:4 44:8,9
  46:6
**interests** 24:14
  31:6 43:3
**interpretation**
  41:6
**intrigued** 19:1
**invalid** 6:23

**involved** 28:18
  43:2
**irrelevant** 13:4
  40:25
**issue** 10:1 12:6
  13:11 41:16,23
**issued** 25:24 26:5
**issues** 10:1 28:16
  29:3 32:24 35:24
**iteration** 19:20
  20:11 22:18
**iterations** 29:13

**j**

**jack** 4:4 5:7
**joinder** 35:4
**judge** 1:22 38:9

**k**

**k** 24:20 30:8,17
  31:17 32:6 39:19
  40:7
**k's** 31:25,25
**keep** 6:1
**keeps** 32:9
**kind** 8:24 41:7
**kinds** 38:13
**king** 3:5
**knew** 39:25
**know** 7:5 8:2 9:19
  12:22 13:11 15:25
  16:1 17:15,15,23
  18:6,22,25 19:1
  20:24 21:19,24
  25:16 27:20 28:7
  29:1 35:4,23
  37:13 38:12

**l**

**l** 46:3
**laches** 42:16
**language** 11:22
  19:7,9 20:7 24:25
  26:16 39:16

**lastly** 33:22
**late** 41:25 42:18
**law** 4:7 8:10 14:10
    40:14 43:14
**lawyer** 40:15
**lawyers** 9:5
**layton** 3:2 28:17
**learned** 39:22
**leaving** 10:2
**legal** 13:24 22:13
    23:13,16 38:20
    47:16
**lengthy** 15:8
**letter** 32:2,4
**level** 34:13
**likelihood** 30:21
**limitation** 25:19
**limited** 25:10
**line** 36:20,25
**liquidating** 2:4
    6:17 8:4,13 11:19
    14:4,13 16:7,15
    22:5 28:14 31:5,6
    41:18 42:7 43:6
    43:25 44:3,22
    46:9
**liquidation** 33:7
**listing** 25:21
**litigate** 14:19
    15:11
**litigated** 15:5
    35:24
**litigating** 15:13
**litigation** 7:8
    39:16 42:24 43:1
    43:2,15 44:2,4,7
**little** 38:4,15
**llc** 2:5 46:10
**llp** 3:10
**local** 28:22
**long** 10:15 15:9
    40:13

**look** 19:17 20:15
    22:7 23:12,13,16
    26:12
**looked** 20:23
    27:20
**looking** 22:10
**lost** 16:15 35:23
**lot** 13:14 44:9
**lt** 19:4

**m**

**m** 19:11 20:15
**ma'am** 7:10 21:2
    27:8 40:25
**magnitude** 33:19
**mail** 39:11
**march** 2:3,7 6:20
    19:17,20 42:7
    46:8,13
**market** 1:13
**mary** 1:21
**material** 39:19
    40:6
**matter** 1:5 21:7
    36:14 39:21 40:19
**matters** 40:20
    41:13
**mclaughlin** 4:4
    5:5,6,7,7,14,20,22
    5:25 6:2,4,7 9:23
    9:25 10:11,13,17
    11:21 12:12,15,22
    13:3,10,13,19
    31:3 36:13 41:2
**mean** 6:14 8:22
    12:13 15:2,22
    17:25 20:22
**mechanism** 36:21
**member** 5:9 24:17
**members** 7:2
    13:15
**merit** 23:15
**merits** 6:16

**mfw** 1:3
**million** 6:25 7:25
    7:25 8:22 13:24
    13:25 16:16 17:7
    18:12,21 21:13,18
    21:21 22:13,13,17
    23:5,14 29:10,11
    29:14,20 30:11
    34:16 35:13 36:1
    38:19 44:13
**mineola** 47:19
**misrepresentation**
    33:13
**mistake** 39:7,8,14
    41:3,4,6
**modification**
    29:22
**modified** 12:13
    40:17
**moment** 12:12
**money** 36:19,19
    36:19 38:11
**moral** 5:12 14:16
**morgan** 2:4 46:9
**morning** 5:3,4,5
    5:14 6:8,9 28:11
    28:12 34:24
**moskowitz** 4:21
    35:2
**moved** 29:12
**multiple** 11:6
**mutual** 1:7 3:11
    3:19 33:14 39:7
    39:14 41:1,3,4,6
**mutually** 45:2

**n**

**n** 3:1 5:1 46:1,3
**nail** 38:10
**nature** 12:2
**need** 17:23 31:24
    32:7 41:12
**needed** 5:21

**negligent** 15:16
    43:19
**negotiations** 36:7
**net** 30:19 32:14
**never** 6:22 11:4,4
    11:5,5,9,15 12:7
    12:24,24 13:5
    16:6 23:19 33:15
    33:16 36:4,16,16
    38:8 39:12,15
    40:3,5
**new** 3:13 5:10
**north** 1:13 3:5
**nos** 2:2 46:7
**note** 5:15
**noted** 29:21 30:16
    30:17,20 31:14
**notice** 11:5 13:5
    13:13 19:22 29:6
    35:15 36:16 42:9
**ny** 3:13 47:19

**o**

**o** 1:20 5:1
**object** 41:15,19
    41:22,25
**objected** 23:24
**objection** 2:1 6:11
    6:15,18 7:4,6 8:20
    10:10 14:2 22:23
    36:5 37:3 39:22
    40:1,6 42:1,2,17
    42:20 43:8,11
    45:6 46:5
**objections** 15:20
    38:13 41:19
**obligation** 32:1,3
    44:22
**obligations** 31:8
**observation** 41:3
**obtain** 10:17
**obtained** 11:15
    36:16

**obviated** 32:6
**obviously** 8:2
  15:23
**occurred** 34:10
**october** 14:2
**official** 47:3
**okay** 5:25 6:13
  9:22 10:12 14:14
  17:7 19:5 20:21
  21:1 23:3 25:12
  25:17,18 26:5,10
  27:11 28:20 34:15
  35:9 40:10 45:13
**old** 47:17
**omitted** 27:9
**omnibus** 2:1 36:5
  43:8 46:5
**once** 8:24 17:5
  30:3,4
**opened** 31:1
**opens** 30:14
**operational** 6:21
**opinion** 15:23
**opposed** 15:3
**order** 8:17 11:12
  12:20 30:9 45:10
**orderly** 36:23
**original** 37:25
  43:10
**originally** 13:22
**orms** 2:25 47:2,7

**p**

**p** 3:1,1 5:1
**p.a.** 3:2
**p.m.** 45:16
**page** 20:15 46:4
**paid** 7:21,21 8:22
  14:5 17:5 18:14
  21:13,18 22:19
  30:13 43:22,23
  44:14
**par** 17:24 18:24
  18:25

**paragraph** 10:24
  12:10 31:10 36:14
**paramount** 43:3
  44:8
**parcels** 5:22
**pari** 16:3 17:19
**parole** 40:23
**part** 10:20 16:8
**partial** 44:18
**parties** 11:17
  31:12 36:6,17
  41:12 42:9 43:4
  44:9 45:2,2
**partner** 5:15
  28:14
**passu** 16:3 17:19
**pay** 23:19
**people** 32:12
**percent** 8:14 9:8,9
  9:18 16:24 17:1,9
  17:10,11,19 18:3
  44:15 45:4,5
**period** 31:18
  32:22
**perplexing** 7:5
**perspective** 22:5
**petition** 26:6 28:1
  37:17
**ph** 43:16
**philosophically**
  12:17
**place** 7:18
**plan** 11:12,18
  19:2,8,16 20:13
  22:18,19,20,25
  23:9,20 24:6,15
  24:23 25:3 26:23
  29:13 30:23 41:18
**pleadings** 9:5 10:7
  35:22 38:6 41:12
**please** 34:25
**podium** 6:5 34:22

**point** 8:3,13 15:2
  34:21
**points** 31:23 35:7
  35:18 41:20
**popped** 10:19
**portion** 8:22 14:6
  19:12
**positing** 32:25
**position** 11:3
**positions** 15:3
**possession** 3:3
**possibility** 16:4
  18:23
**post** 12:18
**potentially** 43:22
**practiced** 40:14
**preclude** 25:24
**precludes** 42:17
**predicated** 42:19
**preferred** 7:16
  24:14,17,21,22
  25:5,7 26:17
  27:10 32:17 34:9
  34:12 37:16 43:23
  44:10,15
**preliminary**
  41:13
**preparation**
  28:19
**prepare** 27:19
**prerogative** 12:7
**present** 5:9
**presented** 6:21
  11:10 40:18,22
  44:23 45:1
**presenting** 5:11
  39:24
**preserved** 19:6
**pressing** 42:2
**presumably** 10:22
**pretty** 29:1
**prior** 10:25 23:9
  26:6 43:22

**priority** 7:16 36:3
**probability** 42:24
**probably** 44:6
**problem** 10:4,13
  10:20
**procedural** 10:1
  36:14
**proceeded** 44:7
  44:11
**proceedings**
  45:16
**produced** 12:1
**proofs** 37:4
**proper** 42:19
  44:22
**properly** 5:11
  13:5
**prosecute** 41:19
**prosecuted** 42:17
**prosecuting** 43:2
**prosecution** 44:12
**proskauer** 3:10
  28:13 39:24
**prove** 14:18 16:1
**proved** 14:22
**proven** 15:2
**provided** 11:4,5
  12:2 23:9 30:23
**provision** 10:23
  11:24 12:9 14:9
  19:19 25:19 31:3
  31:4,10,12 37:8
**purposes** 5:12
**pursuant** 2:3 30:2
  32:2,4 37:2 38:17
  46:7
**put** 13:5 19:14
  21:9 23:5 26:20
  26:20,24 27:12,15
  27:16,17 34:17

| q | | | |
|---|---|---|---|

**quarterly** 42:13
**question** 11:10
  12:17,25 33:24
  39:10,13,13
**questions** 28:7,10
  28:15,25 34:21
  36:10 37:25
**quinn** 3:18 28:18
**quite** 41:25 44:25

| r | | | |
|---|---|---|---|

**r** 1:20 3:1,8 5:1
  24:19 46:3
**raise** 41:16
**raised** 32:24
  41:23
**raises** 31:23
**reached** 36:7
**read** 19:2 24:14
  24:21 26:3 35:5
  39:25
**reading** 8:19
**really** 10:3 13:4
  15:10 31:24 39:12
  41:10 42:2 43:16
  44:21
**reason** 38:22 39:1
  39:4
**reasons** 6:14 7:3
**recall** 33:11
**receiver** 20:2,8,19
**receivership** 20:3
  20:19 29:25 30:3
  30:4,6
**reclassification**
  11:2
**reconcile** 33:9,18
**reconciliation**
  33:7
**reconsider** 38:22
  38:22
**record** 5:7 35:7
  38:3,16

**recording** 47:4
**recounted** 29:12
**recourse** 20:8
**recover** 21:4
**recoveries** 16:1
**recovery** 16:2,4
  17:10 18:20 33:2
**refer** 33:14
**reference** 26:18
**references** 32:8
**referred** 32:14
**refunds** 20:25
**reiterate** 37:13
**related** 34:9,11,16
**relates** 31:18
**release** 19:2
**released** 19:3,7,18
  20:1,18
**relevant** 23:11
  34:2
**relitigate** 15:10
**rely** 39:16
**remain** 30:19
**remaining** 30:5
  33:9
**remember** 41:4
**reminded** 36:4
**reminding** 34:20
**renamed** 22:24
**rendered** 8:17
**reorganization**
  41:18
**reorganized** 7:1
**reply** 29:2
**reporting** 32:1
**reports** 42:13
**represented** 33:13
**requested** 10:14
**require** 39:17
**required** 10:24
  11:14,20,23 12:6
  13:7,8 36:15 39:4
  45:1

**requirement**
  11:17,18 12:3,23
  45:3
**requires** 12:10
  31:3 35:20
**researching** 27:18
**resolution** 42:6
**resolved** 30:18
**respect** 20:19
  28:16 30:10 35:12
  35:19
**respects** 38:5
**respond** 36:5
**respondents** 10:8
**responding** 43:11
**response** 29:1
  30:16,20,24 32:25
  35:6
**responsible** 14:21
  15:18 38:4
**restate** 13:20
**retry** 44:1
**review** 6:19 15:20
**reviewed** 6:21
**richard** 28:17
**richards** 3:2
**right** 5:13 6:6
  7:13 12:5 13:23
  14:12,22 15:4,12
  16:11,13,17,19
  17:17,21 18:4
  19:19 21:5,12,17
  21:19 22:3 25:7
  25:20 26:22 27:25
  34:23 37:1,11
  40:12,24
**rise** 5:2
**risk** 43:25
**road** 38:14 47:17
**rodney** 3:4
**rose** 3:10 28:13
  39:24

**rosen** 3:15 28:11
  28:13,13,21 29:18
  33:25 34:4,7,16
  34:20 39:23 45:14
**rosen's** 35:5
**run** 37:22

| s | | | |
|---|---|---|---|

**s** 3:1 5:1 46:3
**sachs** 2:6 46:11
**saying** 11:23
  15:19 20:6,10
  26:23 41:8
**says** 10:24 11:1,25
  12:6,13 14:10
  19:25 20:1,18
  24:22 25:1,19,22
  25:22 26:4,7,19
  31:5 37:9 40:15
  40:21
**screw** 33:2
**sec** 42:11,12
**second** 19:23 39:8
  45:7
**section** 19:8 20:13
  20:17 40:21 41:17
  41:21
**sections** 16:8
**securities** 2:5
  15:11 17:24 24:18
  28:16 34:2,5
  43:15 44:1 46:10
**see** 10:12 13:16,17
  20:7,17,23 25:1
  25:18 28:10 30:20
**seek** 39:15,17
  40:2,3
**seized** 32:19
**seizure** 32:22,23
**senior** 38:19
**september** 6:18
  7:6 14:2 22:22
**series** 24:19,20

serious 38:12
set 7:4
settle 9:6 14:19
 40:1
settled 14:24
 35:24 40:8,8 42:3
 42:4 45:7
settlement 8:21
 9:8 13:17 14:1,6
 14:16 15:2 22:6
 30:2,3 35:13
 38:16,23 42:3,14
 42:19,20,23 43:6
 44:16,20,20
settling 43:3
seventy 17:21
share 21:21
shared 39:8
shareholders 7:16
 7:25 9:17 13:6,18
 22:8 23:23 24:2
 36:25 41:24 42:9
 43:23,24 44:11,15
shares 6:25 7:21
sharing 17:11
she'll 5:11
sheer 33:19
sheila 2:25 47:2,7
show 14:20 16:1
 23:16 43:17
showing 35:21
side 8:7 45:10
sides 7:9 8:10
 15:3
sign 38:23
significant 33:10
significantly 36:1
simply 26:19
 41:25 42:1 43:19
six 33:12 42:7
solely 20:19
solutions 47:16

sorry 21:14 25:5,6
 26:13 37:22
sort 11:1 14:16
 15:24
sought 11:8
sound 47:3
speak 35:18
specific 10:23
 28:7
specifically 11:22
speculate 25:2
 36:18
speculative 21:1,3
 35:22
square 3:4,12
stand 39:1 45:15
standing 27:13
 41:15,19,24
stanley 2:4 46:9
state 9:5
stated 6:15 8:20
 8:21
statement 8:24
 16:7 19:13,17
 25:4
states 1:1,12
steele 3:8 28:16
 45:9,13
steps 12:8
stipulated 42:6
stipulating 11:13
stipulation 2:3
 6:19,19 10:5,14
 10:21 11:1,3
 22:11 23:13 28:19
 29:5,19 31:11,13
 31:15,21 34:10,12
 35:14,15 36:7,15
 36:22 37:1,2,8,25
 38:1,18 39:3,3,5,8
 42:11 45:8 46:8
stipulations 11:7
 39:24

stock 26:5,19,20
 26:20,21 30:22
 31:13 34:9,12
stockholders
 32:18,18
stocks 10:3
street 1:13 3:5
strident 15:20
struggling 13:16
subject 36:8 39:6
submit 45:10
subordinated
 34:13,18 39:6
subordination
 26:11 34:9 38:17
 44:2
subparagraph
 27:2,9 37:15
subpart 26:15
subsequently
 20:11 22:22
substantial 21:12
 21:15 43:25 44:7
substantially
 18:24,25
substantive 2:1
 10:2 46:5
succeeded 19:21
success 42:24 44:4
sudden 10:19
sue 19:19
suggest 12:4
suggested 41:3
suggests 12:3
suisse 2:5 46:10
suite 47:18
support 5:12
 42:10 43:5
sure 29:15 33:25
sustain 37:3

t

take 20:22 39:1
taken 15:9
talk 15:25
talking 26:2 40:19
tax 20:25
technical 12:25
telling 38:8
terms 6:20 11:11
 37:2,25 38:10
 39:20 40:6,9
 42:14
thank 6:6,7 34:20
 34:23 35:24 36:11
 36:12 37:20,21
 40:11,25 41:8
 45:9,13,14,15
theories 33:5
thing 17:6 18:4
 24:11,13 30:1
 37:12 38:15 39:12
 40:5
things 9:5 19:1
 28:24
think 5:16 6:15
 7:5 9:16 10:9
 12:15 16:9 21:20
 21:22,24 25:18,23
 27:14 31:2,24
 33:22 35:17 38:14
 39:21 40:4 41:11
 42:1 43:5,9 44:19
 44:24,25 45:4
thought 33:4,5,16
 38:9
three 24:17 25:21
 26:8 37:18
time 9:6 10:15
 12:4 15:9 22:5,18
 25:22 26:1 28:8
 29:7 36:21 38:5
 40:14 42:17 44:24

times  3:12
today  5:9 35:7,22
  36:8 38:5,16,22
  38:23,23 39:2
  41:13
told  42:22
tort  14:21 43:18
tps  24:18
trading  10:3
tranche  30:12
transaction  33:1,1
transcribed  2:25
transcriber  47:7
transcript  47:3
transferred  20:24
treated  23:17
  24:10
treatment  42:15
tried  16:14 29:2
triggered  11:1
true  23:22,25 47:2
trust  2:4 6:17
  10:22,23 11:13,19
  11:24 14:4 16:7
  21:4 28:9,14
  29:25 30:1,5,6,19
  31:4,7 32:1,9,13
  33:1 36:6 37:3,7
  38:4,7,12 39:15
  39:17,17 40:1
  41:17 44:22,23
  46:9
trust's  8:4 14:13
trustee  8:14 11:11
  11:16 12:7,18
  16:15 22:5 31:5,6
  31:8 41:18 42:7
  43:6 44:1,3
trustee's  42:13
try  5:22 28:25
  29:3 44:2
trying  13:17 33:7
  44:10

tune  16:12
twice  17:25
two  7:9 13:21
  15:3 29:8 38:5
types  24:17

**u**

u  46:3
u.s.  1:22
uh  10:16 12:21
  13:2 14:3 20:16
  34:19
ultimately  22:24
  23:8 24:4 34:12
unable  10:17
unambiguous
  8:25 11:22 16:7
unambiguously
  8:5
unclear  38:15
underlying  15:11
  34:2 42:15,21
understand  7:8
  7:20 9:7 10:4 11:6
  14:7,17 15:24
  21:5 26:22 28:3
  37:6 40:15 44:10
understandable
  16:11
understanding
  6:22,24
underwriter
  39:15
underwriter's
  41:15
underwriters  2:7
  4:13,19 6:12,16
  6:25 7:11 14:7
  15:12,14 18:1
  28:22 35:1 37:7
  38:7 39:9 43:7,9
  43:10,17,20 44:11
  45:7 46:12

unfair  13:17,18
unfolded  29:13
unidentified  5:4
united  1:1,12
unsecured  34:17
unsee  15:24
updated  16:8
usa  2:5 46:10

**v**

valid  23:17 43:12
value  18:10
varieties  37:18
verbatim  31:20
veritext  47:16
versions  22:18
versus  17:9
view  15:22

**w**

waive  11:25 45:2
waived  11:17,18
  12:1,3,24 31:12
  37:8 39:10
waiver  12:8,10
  38:2 39:13
walk  36:1
walrath  1:21 38:9
want  13:19 29:15
  33:22
wanted  34:4
  38:24 39:1
washington  1:7
  3:11,19 33:14
water  35:17
waterfall  16:10
  17:3,17 30:12,14
way  16:13 33:3,11
  34:13 37:17
we've  29:23 32:10
  32:10,11,11 34:11
website  16:8
weigh  37:1
weil  39:23

went  11:5 19:2
  20:23 22:14,17
  36:16
whatsoever  12:2
whey  34:11
wilmington  1:14
  3:6
win  8:14
wmb  16:9,10,10
wmi  2:4 19:3,3
  20:1,2 28:14 46:9
wondered  5:19
words  8:4 14:13
worse  17:11 45:4
worst  18:20
worthless  6:17 7:7
  7:12 8:5,18
writing  12:1,5,11
  12:14 37:9,10
  39:11,11 40:16,17
  40:18
writings  40:22
written  12:8 31:3
  38:2
wrongfully  5:16

**x**

x  1:4,10 46:1
xyz  40:8,8

**y**

yeah  5:20 14:25
  19:14 21:15
year  33:9
years  10:22 11:8
  27:22 31:20 33:12
  36:24 42:5,7
york  3:13 5:10

**z**

zarb  3:16 28:14