**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

```
------------------------------------------------------------x
                                          :
In re                                     :      Chapter 11
                                          :
WASHINGTON MUTUAL, INC., et al.,¹         :      Case No. 08-12229 (MFW)
                                          :
          Debtors.                        :      (Jointly Administered)
                                          :
                                          :      Re: Docket No. 10681
------------------------------------------------------------x      Hearing Date: July 2, 2019 at 11:30 a.m. (ET)
```

**WMI LIQUIDATING TRUST REPLY IN SUPPORT OF**
**EIGHTY-EIGHTH OMNIBUS (SUBSTANTIVE) OBJECTION**
**TO DISPUTED EQUITY INTERESTS**

WMI Liquidating Trust ("WMILT" or the "Trust"), as successor in interest to

Washington Mutual, Inc. ("WMI") and WMI Investment Corp., formerly debtors and debtors in

possession (collectively, the "Debtors"), files this reply (the "Reply") in further support of the

*WMI Liquidating Trust's Eighty-Eighth Omnibus (Substantive) Objection to Disputed Equity*

*Interests* [Bankr. D.I. 10681] (the "Eighty-Eighth Omnibus Objection")², and respectfully

represents as follows:

**PRELIMINARY STATEMENT**

1.      On September 17, 2012, WMILT filed the Eighty-Eighth Omnibus Objection with

respect to proofs of claims that had been filed seeking recoveries pursuant to that certain

Washington Mutual, Inc. Amended and Restated 2003 Equity Incentive Plan (the "EIP").  In

accordance with the EIP, restricted stock awards (each, an "RSA") or restricted stock units (each,

---

¹ The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395).  The principal offices of WMILT, as defined herein, are located at 800 Fifth Avenue, Suite 4100, Seattle, Washington 98104.

² Capitalized terms not defined herein shall have the meaning ascribed to them in the Eighty-Eighth Omnibus Objection.

an "RSU") granted to employees (the "EIP Participants") would vest upon the occurrence of a

"change in control."  To the extent the EIP Participants' RSAs and RSUs vested pursuant to the

terms of the EIP and were allowed pursuant to an order of this Court, EIP Participants would be

entitled to receive Reorganized Common Stock in WMI.  Accordingly, under the *Seventh*

*Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States*

*Bankruptcy Code* [D.I. 9178] (as modified, the "Plan"), WMILT reserved shares of Reorganized

Common Stock in a Disputed Equity Escrow (as defined in the Plan) on behalf of the EIP

Participants' purported equity interests.

2.      In the Eighty-Eighth Omnibus Objection, WMILT requested an order from the

Court determining that, with respect to the EIP, a "change in control" had not occurred, and that

WMILT, therefore, could release the shares of Reorganized Common Stock from the Disputed

Equity Escrow for the benefit of other holders within such class.  WMILT subsequently sought

to amend the Eighty-Eighth Omnibus Objection to, among others, include an additional defense

that payments sought by employees under the EIP constituted impermissible "Golden Parachute

Payments"[3] under applicable federal regulations.  As the Court is aware, the Court denied the

motion for leave to amend, but directed WMILT to pursue a declaratory judgment action against,

among other parties, the Federal Deposit Insurance Corporation ("FDIC"), Federal Reserve Bank

("FRB") and certain former employee claimants to determine, inter alia, whether WMILT is

subject to the Golden Parachute Regulations and the Automatic Termination Regulation.[4]

---

[3] 12 C.F.R. § 359, *et seq.* (the "Golden Parachute Regulations") provide that, absent regulatory approval, insured depository institutions, like WMB, and depository institution holding companies, like WMI, are prohibited from making certain payments to an "institution affiliated party" upon or after the termination of that party's employment or affiliation with the depository institution or holding company, where the requirement to make such payments is triggered by or contingent on the termination and such entity is in financial distress at the time of termination.

[4] 12 C.F.R. § 163.39 (the "Automatic Termination Regulation" or "ATR", and together with the Golden

108275508v3

3.      In addition to commencing the declaratory judgment action, WMILT submitted two separate requests to the FDIC to determine whether it could make payments on account of claims relating to employee "Change in Control Agreements" and various benefit plans, including the EIP.  As set forth in determinations that WMILT filed with the Court, the FDIC ruled that WMILT is a "covered company" under Federal Regulations that prohibit golden parachute payments and that any payments pursuant to certain employee agreements and benefit plans, including the EIP, would constitute impermissible golden parachute payments.

4.      WMILT sought judicial review of the FDIC's determination in actions under the Administrative Procedures Act (the "APA") and, in both cases, the FDIC's determinations were upheld by the United States District Court for the District of Columbia (the "DC District Court"). In a contemporaneous declaratory judgment action then pending in the United States District Court for the District of Delaware (the "Delaware District Court"), the action that this Court directed WMILT to commence, the court determined that neither WMILT nor individual employee claimants possessed a "private right of action" to pursue claims against the FDIC or the FRB and that the Delaware District Court maintained no subject matter jurisdiction to review the FDIC's determinations outside of the APA Actions, as defined below.  Pursuant to the respective District Courts' decisions, this Court subsequently disallowed various employee claims that were the subject of WMILT's pending omnibus objections.

5.      Accordingly, regardless of whether this Court determines that a "change in control" occurred that would require a distribution of Reorganized Common Stock to the RSA

---

Parachute Regulations, the "Federal Regulations") requires that an employment contract between a savings association, such as WMB, and its officers and other employees must provide that, "[i]f the savings association is in default, all obligations under the contract shall terminate as of the date of default." 12 C.F.R. § 163.39(b)(4) (emphasis added).

and RSU holders, WMILT is prohibited from making *any* payments pursuant to the EIP. WMILT therefore requests, consistent with the rulings this Court has rendered regarding other employee agreements, that the Court enter an order disallowing any claims for Restricted Stock awards under the EIP, and permitting WMILT to release the shares of Reorganized Common Stock from the Disputed Equity Escrow for distribution to other former holders of WMI's common equity interests.

6.      WMILT hereby incorporates by reference the factual and procedural background as set forth in the Eighty-Eighth Omnibus Objection.  For the Court's convenience, and in support of this Reply, WMILT sets forth the relevant portions of that factual and procedural background, and additional relevant facts, below:

A.      **The EIP**

7.      On or about February 18, 2003, WMI's board of directors (the "Board") adopted the EIP pursuant to which certain employees received, among other things, awards of common stock subject to various restrictions or conditions (the "Restricted Stock").  The EIP contained an automatic vesting provision which provided that, upon the occurrence of a "Company Transaction" (defined below), certain stock benefits, including Restricted Stock granted pursuant to the EIP, would automatically vest in their holder. *See* EIP §§ 15.3.1, 15.3.2.  Section 15.3.1 further provides that the Human Resources Committee of the Board, in its *sole discretion,* may, as an alternative to the accelerated vesting upon the occurrence of a Company Transaction, provide that a plan participant's outstanding options and/or Restricted Stock shall terminate upon the occurrence of a Company Transaction and that each such participant shall receive, in exchange therefor, a cash payment pursuant to a specified formula.  Section 2 of the EIP provides that "'Company Transaction,' unless otherwise defined in the instrument evidencing the Award or in a written employment, services or other agreement between the Participant and

4

[WMI] or a Related Company, means consummation of either (a) a merger or consolidation of

[WMI] with or into any other company or other entity or (b) a sale, lease, exchange or other

transfer in one transaction or a series of related transactions undertaken with a common purpose

of all or substantially all of the Company's then outstanding securities or all or substantially all

of the Company's assets; provided, however, that a Company Transaction shall not include a

Related Party Transaction," i.e., it defines a "change in control."

8.      The RSAs and RSUs were granted to WMI's employees pursuant to the EIP with

forms of notices and agreements.  Such documents provided that vesting and forfeiture of

Restricted Stock would be pursuant to the terms of any other written agreement between the EIP

Participant and "the Company", and, to the extent not otherwise addressed in such written

agreement, then treated as provided for under the EIP.  Accordingly, if an EIP Participant had a

separate employment agreement with WMI or Washington Mutual Bank ("WMB") in which

"Change in Control" is defined (in the case of a small number of EIP Participants), then, that

definition would govern vesting and acceleration of Restricted Stock in the EIP.  Otherwise (as is

the case for the vast majority of EIP Participants), the definition of "Company Transaction"

found in the EIP governed the vesting and acceleration of Restricted Stock in the EIP.

**B.      Disputed Equity Escrow Under the Plan**

9.      On December 12, 2011, the Debtors filed the Plan.  By order (the "Confirmation

Order"), dated February 23, 2012 [D.I. 9759], this Court confirmed the Plan and, upon

satisfaction or waiver of the conditions described in the Plan, the transactions contemplated by

the Plan were substantially consummated on March 19, 2012.

10.     Pursuant to the Plan, if the Court were to find that a "change in control" occurred

pursuant to the terms of the EIP, WMILT would be required to distribute shares of Reorganized

5

Common Stock to 5,107 RSA holders and 847 RSU holders. Accordingly, in light of questions concerning the allowance of claims relating to the EIP, WMILT reserved shares of Reorganized Common Stock in the Disputed Equity Escrow on behalf of the EIP Participants' interests, [*see* D.I. 10681, Ex. A][5], and such interests are referred to as Disputed Equity Interests. The Disputed Equity Escrow is required to be maintained until each Disputed Equity Interest has been compromised and settled or allowed or disallowed by Final Order of the Court. [D.I. 9759 (Order Confirming the Plan), at ¶ 41.] To the extent that claims are reduced or disallowed, shares of Reorganized Common Stock shall be redistributed to former holders of WMI's common equity interests.

### C.    The Eighty-Eighth Omnibus Objection

11.    On September 17, 2012, WMILT filed the Eighty-Eighth Omnibus Objection seeking an order from the Court determining that, with respect to the EIP, a "change in control" (as defined in both the EIP and any "change in control" provisions in separate employment agreements with WMI or WMB) had not occurred. Accordingly, vesting of the Restricted Stock did not accelerate, and WMILT therefore sought to release the shares of Reorganized Common Stock being held in the Disputed Equity Escrow on account of the EIP Participants' interests, for redistribution to other holders of preferred and common equity interests entitled to receive such distribution.

12.    Notice of the Eighty-Eighth Omnibus Objection was served upon: (i) the U.S. Trustee, (ii) those parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002, and (iii) each holder of an equity interest objected to in the Eighty-Eighth

---

[5] Pursuant to numerous settlements, disallowances, redistributions and a 12 to 1 stock split at Reorganized WMI, the number of shares of Reorganized Common Stock reserved are approximately 46,000.

108275508v3

Omnibus Objection (*see* D.I. 10681, Ex. A), in excess of 6,000 persons.  Due to the large number

of EIP Participants, the accompanying notice provided that, although EIP Participants were not

required to respond to the Eighty-Eighth Omnibus Objection, they would be deemed to oppose

the Eighty-Eighth Omnibus Objection.  However, to the extent an EIP Participant felt compelled

to do so, EIP Participants were required to file written responses to the relief requested in the

Eighty-Eighty Omnibus Objection by October 8, 2012.  Responses to the Eighty-Eighth

Omnibus Objection were filed by Benjamin F. Turk, Jr. [D.I. 10724], Kathleen Rust [D.I.

10731], Tammy Harrington [D.I. 10746], Foad Said [D.I. 10748], and Donna Binder [D.I.

10972].  The Rust and Said responses were subsequently withdrawn without prejudice.  See D.I.

11393 and 11471.  All other EIP Participants, though deemed to have opposed the Eighty-Eighth

Omnibus Objection, omitted, and thus waived, the right to file a written response.

      **D.**     **Motion for Leave to Amend Omnibus Objections**

     13.     On February 19, 2013, WMILT filed the *WMI Liquidating Trust's Motion for*

*Leave to Amend the Fifth, Sixth, Seventy-Ninth, Eightieth, Eighty-First, Eighty-Second, Eighty-*

*Fourth, Eighty-Fifth, and Eighty-Eighth Omnibus Objections to Claims* [D.I. 11032] (the

"Motion to Amend"), seeking to add additional defenses to the referenced Omnibus Objections.

WMILT sought to amend the Eighty-Eighth Omnibus Objection such that, in the event that the

Court ruled that a "change of control" had occurred with respect to the EIP, payment of allegedly

accelerated equity interests were impermissible "golden parachute payments" pursuant to the

Golden Parachute Regulations and unenforceable pursuant to the Automatic Termination

Regulation.  WMILT argued the Court should permit the amendment to include the additional

defenses because they provided an absolute statutory bar to the collection of certain claims,

including claims under the EIP, against the Debtors.

108275508v3

14.     On August 23, 2013, the Court denied WMILT's Motion to Amend on the grounds that, *inter alia*, the "amendment would be futile because any decision on the legal issue would not be binding on the FDIC and FRB because they are not parties to the Omnibus Objections." [D.I. 11348] (the "August 23 Order").  However, the Court ordered WMILT to file a declaratory judgment action against the FDIC, the FRB and all claimants in the litigation concerning the Omnibus Objections "seeking a determination whether WMILT is precluded by 12 U.S.C. § 1828(k), 12 C.F.R. § 163.39, 12 C.F.R. § 359 or any other similar provision from paying any of the claimants if their claims are allowed by this Court."  *See id.*

E.     **FDIC Litigation and Payment Application Determinations**

15.     In accordance with the August 23 Order, WMILT initiated a declaratory judgment action against the FDIC, FRB and certain named claimants on September 20, 2013, in the United States District Court for the District of Washington.  Such action was ultimately transferred and then removed to the Delaware District Court (*WMI Liquidating Trust v. FDIC*, No. 1:14-cv-01097 (GMS) (D. Del.) (the "Declaratory Judgment Action")), and later stayed pending determination of the APA Actions, as described below.

16.     Prior to initiating the Declaratory Judgment Action, WMILT filed a request with the FDIC on May 30, 2013, seeking a determination as to whether the Golden Parachute Regulations applied to certain contracts and benefits plans, including the EIP, at issue in the Omnibus Objections.  In its response on July 16, 2013, the FDIC determined that WMILT is subject to the Golden Parachute Regulations and that WMILT must file an application for regulatory approval to pay settlement payments WMILT had proposed to resolve certain employee claims because such payments constituted prohibited golden parachute payments.

17.     By letter, dated August 14, 2013, WMILT sought approval from the FDIC to make proposed settlement payments to approximately thirty former employee claimants (the

8

"First Payment Application").  The settlement agreements resulted from litigation over severance

benefits allegedly owed under various employee agreements and benefit plans, including the EIP.

At least one claimant specifically asserted a right to Restricted Stock owed under the EIP as a

result of a Company Transaction (i.e., a "change in control").  [D I. 11901, Ex. A at 4-5.]  In

connection with the First Payment Application, WMILT fully described the terms of the EIP and

submitted the EIP to the FDIC in its entirety.  First Payment Application at 13; *id.* at Ex. J (AR-

0449–66).  Pursuant to a letter, dated October 15, 2014 (the "First Determination"), a copy of

which is annexed hereto as Exhibit "A" without exhibits, the FDIC denied the First Payment

Application in its entirety.  [D I. 11901, Ex. A].  Among other things, the FDIC reaffirmed that

WMILT is a "covered company" subject to the Golden Parachute Regulations, and determined

that any payments made pursuant to the contracts and benefit plans that gave rise to the

settlement agreements (including the EIP) were prohibited golden parachute payments. *See*

*generally, id.*

18.    On October 29, 2014, WMILT sought judicial review of the First Determination

under the APA in the DC District Court.  *See WMI Liquidating Trust v. FDIC*, No. 1:14-cv-

01816 (RBW) (D.D.C.) ("First APA Action").  On June 9, 2015, the DC District Court

determined the FDIC did not act arbitrarily or capriciously and did not abuse its discretion in

denying the First Payment Application.  *See WMI Liquidating Trust v. Fed. Deposit Ins. Corp.*,

110 F. Supp. 3d 44, 57-58 (D.D.C. 2015) (holding that the FDIC did not err in denying the First

Payment Application except with respect to one Settling Claimant's bonus agreement).  The DC

District Court further held that WMILT was precluded from making the proposed settlement

payments, by definition, therefore, making a determination as to the applicability of the Golden

Parachute Regulations. *Id.*

9

108275508v3

19.     On March 23, 2015, and while the First APA Action was pending, WMILT submitted a second application to the FDIC, seeking to determine whether it could make payments to any of the non-settling claimants under any of their theories of recovery in the event those claims were ultimately settled or allowed by the Bankruptcy Court ("Second Payment Application").  The Second Payment Application sought permission, among other things, to award shares of common stock, to which EIP participants would be entitled, if it were determined that a Company Transaction occurred.  *See* D.I. 12007, Ex. A, at 8.  Again, WMILT fully described the terms of the EIP, and included a full copy of the agreement to the FDIC.  Second Payment Application at 19; *id.* at Ex. R (AR-1343–60).

20.     By letter, dated May 1, 2015 (the "Second Determination"), a copy of which is annexed hereto as Exhibit "B" without exhibits, the FDIC denied the Second Payment Application in its entirety reiterating its findings that WMILT is a "covered company" and rejecting any contention "that WMI's bankruptcy filing, wind-down, abandonment of WMB stock, and the creation of a liquidating trust, served to remove WMILT from the purview of Section 1828(k) and the Golden Parachute Regulations."  [D.I. 12007, Ex. A at 2-3.]   Regarding the EIP, the FDIC expressly stated that "any payment based on the Equity Incentive Plan is subject to Part 359, in that vesting of those shares accelerated based on WMI's liquidation and/or WMB's failure."  *Id.* at 9.  The FDIC directed WMILT "not to make payments to [any of the claimants] in any amount."  *Id* at 21.

21.     On May 13, 2015, WMILT initiated an action seeking judicial review under the APA of the Second Determination.  *WMI Liquidating Trust v. Fed. Deposit Ins. Corp.*, No. 1:15-cv-00731 (RBW) (D.D.C.) ("Second APA Action" and, together with the First APA Action, the "APA Actions").  Again, the DC District Court upheld the FDIC's determination, finding it was

108275508v3

not arbitrary, capricious or an abuse of discretion, and affirmed that WMILT was barred from making any payments to either the settling or non-settling claimants in any amount on account of the various employment agreements and benefit plans the FDIC had considered, which include the EIP.  [Second APA Action D.I. 25.]

22.      Following completion of the APA Actions, the stay in the Declaratory Judgment Action expired.  On October 12, 2016, the Delaware District Court granted the motions of the FDIC and FRB to dismiss the Trust's amended complaint holding that there is no private right of action and that the court lacked jurisdiction over the claims because there is no judicial review permitted of the FDIC rulings other than pursuant to the APA.  [D. Del. D.I. 89 at 3 n.3.]   On February 15, 2017, the Delaware District Court granted judgment on the pleadings in favor of the FDIC on the cross-claims of the individual claimants (finding the claims identical to the Trust's claims that it had dismissed) because the claimants had no private right of action on the claims outside of an APA action.  [D. Del. D.I. 114 at 3 n.4.]

F.      **Resolution of Employee Claims Litigation**

23.      Certain former employees of WMI and/or WMB filed proofs of claims against the Debtors' estates alleging that they were owed payments pursuant to certain employment contracts and/or benefits plans, including, among others, Change in Control Agreements and the EIP.  Such claimants were a subset of the EIP Participants.  Following the completion of the APA Actions and the Declaratory Judgment Action, WMILT filed the *Motion of WMI Liquidating Trust for an Order (I) Granting WMI Liquidating Trust's Omnibus Objections, (II) Deeming the Claimants' Claims Disallowed, (III) Authorizing the Distribution of Funds in Disputed Claims Reserve, and (IV) Dismissing WMI Liquidating Trust's Adversary Proceedings,* dated August 30, 2018 [D.I. 12499] (the "Disallowance Motion").

108275508v3

24.     After a hearing on the Disallowance Motion, in which the Court granted the relief requested in the Disallowance Motion, claimants filed supplemental briefing, arguing they had claims that were not addressed by the FDIC rulings.  These alleged claims included claims under the EIP.   Therein, Claimants asserted that, by holding vested equity interests under the EIP, such claimants should be entitled to receive distributions along with holders of equity claims, in the event such holders receive distributions pursuant to the terms of the Plan.  [*See* D.I. 12573 at 17.] In connection with the resolution of those proceedings, the Court determined that "in its decision on the Second Payment Application the FDIC expressly dealt with claims under . . . the Equity Incentive Plan" ruling that "payments under the Equity Incentive Plan were barred by the golden parachute regulations."  *In re Washington Mutual Inc., et al. (WMI Liquidating Trust v. Bozzuti et al.),* 598 B.R. 544, 549 (Bankr. Del. 2019) (citing D.I. 12573, Ex. 6 at 9).  The Court concluded that "the rulings of the FDIC plainly bar any payments by the Trust for ANY claims of the Claimants, including claims under . . . the Equity Incentive Plan."  *Id.* at 550.

25.     The Court further recognized that, because its jurisdiction is derivative of the Delaware District Court's jurisdiction over bankruptcy matters and, in this case, the Delaware District Court has ruled that it does not have any jurisdiction to review or modify the FDIC's determinations that claims, including those under the EIP, cannot be paid by the Trust as a result of the Golden Parachute Regulations, this Court also lacks jurisdiction to review or modify the FDIC's determinations.  *Id.* at 548.  On February 1, 2019, the Court entered an order disallowing each of claimants' claims in their entirety [D.I. 12585].

## FDIC AND DISTRICT COURT DECISIONS DICTATE THE DISALLOWANCE OF CLAIMS UNDER THE EIP AND REQUIRE THE RELEASE OF REORGANIZED COMMON STOCK FROM THE DISPUTED EQUITY ESCROW

### A.     The Disputed Equity Escrow Must Be Released

26.    As set forth above, pursuant to the provisions of the Plan and orders of the Court,

the Disputed Equity Escrow must hold, for the benefit of each holder of a Disputed Equity

Interest, Reorganized Common Stock in an amount equal to the pro rata share of distributions

that would have been made to the holder of such Disputed Equity Interest if it were an Allowed

Equity Interest, until such Disputed Equity Interests have been "disallowed by Final Order of the

Bankruptcy Court."  Currently, there are approximately 50,000 shares of Reorganized Common

Stock held in in the Disputed Equity Escrow on account of the EIP Participants' Disputed Equity

Interests.  In both the First Determination and the Second Determination, the FDIC

unequivocally prohibited WMILT from making any payments or distributions to claimants on

account of their EIP components.  The FDIC stated that the EIP components "are properly

treated as golden parachutes," *see* First Determination at 6; Second Determination at 8–9,  and

any payment or distribution based on the EIP constitutes an impermissible golden parachute

payment because "vesting of those shares accelerated based on WMI's liquidation and/or

WMB's failure."  [D.I. 12007, Ex. A at 9.]  These determinations by the FDIC were

subsequently upheld by the DC District Court.  Likewise, applying these decisions in connection

with litigation by certain employee claimants, this Court granted WMILT's Omnibus Objections

and disallowed claimants' claims, finding, *inter alia*, that payments under the EIP are barred by

the Golden Parachute Regulations. *Bozzuti,* 598 B.R. at 549.

27.    The same result applies to any alleged accelerated vesting of Restricted Stock for

all EIP Participants.  As the FDIC determinations demonstrate, to the extent any change of

control occurred to accelerate vesting of the Restricted Stock under the EIP, it occurred as a

result of WMI's liquidation and/WMB's failure, and, thus, any distribution on account of that

accelerated vesting constitutes a golden parachute payment, which WMILT is not permitted to

make.  Accordingly, EIP Participants are not entitled to any Restricted Stock or payment in lieu

thereof, and the Disputed Equity Escrow should be released.

**B.      The Court Does Not Have Subject Matter Jurisdiction To Reconsider the FDIC's Rulings**

28.      The FDIC rulings, together with the opinions and orders entered in the APA

Actions and the Declaratory Judgment Action, have clearly defined the following positions.

First, the FDIC shall, in the first instance, determine the applicability of the Golden Parachute

Regulations and rule upon any application submitted in connection therewith.  In that regard, the

FDIC has determined that payments under the EIP constitute impermissible golden parachute

payments.  Second, any review of such FDIC determinations under the APA will be accorded

appropriate and due deference.  And, the FDIC's determinations regarding payments under the

EIP were found not to be arbitrary, capricious or an abuse of discretion, and were upheld by the

DC District Court.  Third, any attempt to seek review of the FDIC's determination as to

applicability of the Golden Parachute Regulations, or entitlement to payment thereunder, outside

of the APA, will be found to lack subject matter jurisdiction as no private right of action exists

under the Federal Depository Institutions Act.  As the Delaware District Court thus found,

"permitting judicial review outside of the APA would be inconsistent with *City of Arlington*, 133

S.Ct. 1863 (2013), where the United States Supreme Court extended *Chevron* deference to an

agency's interpretation of its own jurisdiction." [D. Del. D.I. 89 at n.3].  As a result, the

Delaware District Court has no jurisdiction to make an independent determination of the FDIC's

jurisdiction and the only challenge to the FDIC's jurisdiction is pursuant to the APA.  Fourth, as

this Court has already acknowledged, its jurisdiction is derivative of that of the Delaware District

Court.  Therefore, this Court too is without jurisdiction to review the FDIC's determinations that

payments under the EIP are prohibited golden parachute payments under applicable law.

14

108275508v3

### C.    The Remaining Responses

29.    As noted above, three responses to the Eighty-Eighth Omnibus Objection remain-those filed by Tammy Harrington, Benjamin Turk and Donna Binder.  The Harrington response, while referencing the Eighty-Eighth Omnibus Objection and the receipt of notice regarding the relief requested, objects to the compromise and settlement of a class action, Buus, et al., v. WaMu Pension Plan et al., (something granted by the this Court years ago) and does not relate to the relief requested herein.  Likewise, the Turk response questions the need for the Debtors' chapter 11cases and the costs associated with their prosecution.  Mrs. Binder does not actually object to the relief requested, but rather, merely requests information regarding the timing of a payment with respect to other obligations.  None of the responses focus on the propriety or the merits of the relief requested and, therefore each such response should be denied in its entirety.

30.    Similarly, WMILT served over 6,000 EIP Participants with the Eighty-Eighth Omnibus Objection and, as set forth in the corresponding notice, deemed each of the claimants to oppose the relief requested.  But, such deemed objection does not overcome the facts of this case and the determinations made by the FDIC, the DC District Court, the Delaware District Court and this Court regarding an inability to recover on account of Golden Parachute payments.  As such, the Eighty-Eighth Omnibus Objection should be granted in its entirety.

### CONCLUSION

WHEREFORE WMILT respectfully requests that the Court enter an order, the proposed form of which is annexed hereto as Exhibit "C", (a) determining that any distribution of Restricted Stock under the EIP on the basis of an alleged "change in control" is an impermissible "golden parachute payment," (b) directing that WMILT may release the approximately 46,000 shares of Reorganized Common Stock reserved in the Disputed Equity Escrow on account of the EIP Participants' purported equity interests, for redistribution to other former holders of common

108275508v3

equity interests entitled to receive such distribution, and (c) granting WMILT such other and

further relief as is just.

Dated: June 7, 2019
      Wilmington, Delaware

                                         */s/ Amanda R. Steele*
                                        RICHARDS, LAYTON & FINGER, P.A.
                                        Mark D. Collins (No. 2981)
                                        Paul N. Heath (No. 3704)
                                        Amanda R. Steele (No. 5530)
                                        One Rodney Square
                                        920 North King Street
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 651-7700
                                        Facsimile:  (302) 651-7701

                                        - and -

                                        PROSKAUER ROSE LLP
                                        Brian S. Rosen
                                        Eleven Times Square
                                        New York, New York 10036
                                        Telephone: (212) 969-3000
                                        Facsimile:  (212) 969-2900

                                        *Attorneys to the WMI Liquidating Trust*

108275508v3