IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 08-12229 (MFW) |
| **WASHINGTON MUTUAL, INC., <u>et al.</u>,**[1] | (Jointly Administered) |

---

## MOTION FOR WITHDRAWAL (LIMITED) OF REFERENCE

Alice Griffin, *Pro Se*, appellant in the proceeding styled *Alice Griffin v. WMI Liquidating Trust*, Case No. 1:19-cv-00775-RGA (the "Movant"), brings this motion (the "Motion") for an order of this court (the "Court") withdrawing authority from the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") to enter an order pursuant to 11 U.S.C. § 350(a) ("Section 350") closing the above-captioned bankruptcy cases of Washington Mutual, Inc. and WMI Investment Corp. (collectively, the "Debtors") until further leave of this Court.

Movant brings the Motion pursuant to: (a) 11 U.S.C. § 105, 28 U.S.C. § 157(d);(b) Fed. R. Bankr. P. 5011, 8013, and 9006-1(e); (c) 5011-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware; and (d) D. Del. LR 7.1.2(c).

## JURISDICTION

1. Federal district courts have original jurisdiction over cases arising under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. 1334(a), (b). Under 28 U.S.C. § 157(a), each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district. By its Amended Standing Order of Reference of February 29, 2012, this Court has provided for automatic reference to bankruptcy judges of title 11 cases filed in this district (the "Reference").

2. Notwithstanding, a district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. 28 U.S.C.

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, were: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1201 Third Avenue, Suite 3000, Seattle, Washington 98101.

§ 157(d). Accordingly, if Movant shows cause, it is within the discretion of this Court to grant the relief requested herein.

## BACKGROUND

3.  The Debtors in the above-captioned bankruptcy confirmed a plan of reorganization on February 24, 2012 (the "Plan"). Pursuant to the Plan, holders of the Debtors' equity securities, preferred and common, received residual equity interests in WMI Liquidating Trust (the "Trust"), the waterfall vehicle for paying claims against the Debtors, with preferred equity taking 75% and common equity the remaining 25%. (Preferred equity ("Class 19") and common equity ("Class 22") are *pari passu*.) The Plan expressly states that Class 22 is subject to further dilution from additional post-confirmation claims, but Class 19 is not. Notwithstanding the Plan's prohibition of new Class 19 interests, on March 28, 2013, the Trust executed a stipulation (the "Final Stipulation") with certain underwriters of the Debtors' securities (the "Underwriters"), settling $96 million in indemnification claims of the Underwriters against the Debtors in exchange for $72 million in Class 19 interests. On March 22, 2019 Movant filed her objection to (a) the Trust's settlement with the Underwriters and (b) placement of the Underwriters' claim in Class 19 (the "Objection"). On April 22, 2019 a hearing was held on the Objection (the "Hearing"), and in a bench ruling the Bankruptcy Court denied the Objection on the basis of laches. On April 29, 2019 Appellant filed her notice of appeal. This Court ordered a briefing schedule, the appeal (the "Appeal") has been fully briefed as of mid-August 2019, and the parties are awaiting a hearing date for oral argument.

4.  This Motion arises from information received by Movant that despite pendency of the Appeal, the Trust intends to file a motion to close the Debtors' bankruptcy cases, and the Bankruptcy Court intends to hold a hearing on that motion. Specifically, Movant listened to audio of a hearing before the Bankruptcy Court held on September 26, 2019 in which counsel for the Trust stated that, notwithstanding the Appeal, the Trust intends to file a Section 350 motion to close the Debtors' cases no later than October 31, 2019, and the Bankruptcy Court stated that she will "make sure it gets scheduled if [the Trust files] it timely".[2] Movant objects to closing the cases prior to a ruling of this Court on the Appeal, and in light of

---

[2] *See* http://www.kccllc.net/wamu/document/0812229190926000000000001 (Bankr. Document Index No. 12669) (audio of the hearing is available at the link). Similar statements were made at a July 2, 2019 hearing before the

the Bankruptcy Court's and the Trust's intention to close the Debtors' bankruptcy cases files this Motion to prevent the Bankruptcy Court from entering an order pursuant to Section 350.

## ARGUMENT

I.     <u>This Court Has Cause to Grant the Requested Relief</u>

5.     The Third Circuit has set forth five factors for courts to consider when determining whether cause exists to withdraw a reference: (i) the promotion of uniformity in bankruptcy administration; (ii) the reduction of forum shopping and confusion; (iii) the economical use of the parties' resources; (iv) expediting the bankruptcy process; and (v) the timing of the motion for withdrawal. *In re Pruitt,* 910 F.2d 1160, 1168 (3d Cir. 1990).[3] As set forth herein, Movant's circumstances justify limited withdrawal of the Reference.

    A.     <u>The Requested Relief Will Promote Uniformity in the Bankruptcy Process</u>

6.     Appeals are well within the ecology of the bankruptcy system, and by withdrawing the Reference on a limited basis once the Appeal is adjudicated the resulting determination can be implemented seamlessly. Such a result is optimal for bankruptcy administration purposes. For example, if this Court determines that the trustee of the Trust (the "Trustee") and/or the Trust's advisory board (the "TAB") have breached their fiduciary duties, and personnel changes are necessary, it can direct the Bankruptcy Court to so implement the ruling(s). However, if the cases are closed then they will have to be reopened to implement the ruling. Obviously, bankruptcy administration is optimized by keeping the Debtors' cases open.

    B.     <u>There Will Be No Confusion or Forum Shopping if the Requested Relief is Granted</u>

7.     By preventing the Bankruptcy Court from entering an order closing the Debtors' cases this Court guarantees that its resolution of the Appeal, including any directions to the Bankruptcy Court, will

---

Bankruptcy Court: http://www.kccllc.net/wamu/document/0812229190702000000000001 (Bankr. Document Index No. 12645) (audio of the hearing is available at the link).

[3] Other courts in this district that have considered the 'cause' requirement have noted that its inclusion in 28 U.S.C. § 157(d) "creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court, unless rebutted by a contravening policy." *Shubert v. Lucent Techs., Inc. (In re Winstar Communications, Inc.*), No. 01-01430, 2004 WL 2713101 (D. Del. Nov.16, 2004); *Hatzel & Buehler, Inc. V. Central Hudson Gas & Electric*, 106 B.R. 367, 371 (D. Del. 1989) (citations omitted). Movant agrees, and the instant Motion does not contravene this policy as it merely requests that the Bankruptcy Court be *temporarily* prohibited from entering an order closing the Debtors' bankruptcy cases. Movant merely requests that only after this Appeal has been finally adjudicated the Bankruptcy Court be allowed to enter an order closing the Debtors' cases.

be immediately implemented with no delay in reopening the cases or requiring Movant to consider bringing the order before another court (e.g., a Delaware state court) for execution. This obviates any forum-shopping or confusion about whether a court outside the federal system can or should implement this Court's order.

      C.      <u>Delaying Closure of the Bankruptcy Cases is More Economical Than Possibly Reopening the Cases Later</u>

8. Granting the Motion will be economical because there will be no trouble or expense for reopening the cases or seeking remedies in a state court. Movant is unfamiliar with the Delaware state court system and it would require an enormous expenditure of time for Movant to become sufficiently familiar with Delaware law and procedure to bring an action to remove the Trustee or TAB. Despite the Trust's claims that it has very limited resources, its resources and knowledge of Delaware law and procedure are vastly greater than any Movant can deploy if such action were needed. Finally, the resources of Delaware's judicial system would bear a greater weight than this Court or the Bankruptcy Court because a Delaware court would have no familiarity with the issues or the documentation, i.e., the Plan and the agreement governing the Trust (the "Trust Agreement"). This Court and the Bankruptcy Court are familiar with the facts, bankruptcy law, and their reservoir of knowledge plus the facts that (a) the matter arose with the bankruptcy system, (b) it would be unfair to impose the financial burden of reopening the cases on Movant, and (c) possibly posting a bond, all weigh in favor of granting the requested relief as the most economical option.

      D.      <u>Delaying Closure of the Bankruptcy Cases is Pragmatic and Expedient</u>

9. The bankruptcy process will be expedited by the unbroken chain of authority between this Court and the Bankruptcy Court, and this Court's final resolution of the Appeal will be implemented without delay, so the Third Circuit's fourth prong is satisfied.

      E.      <u>The Requested Relief is Urgently Necessitated by the Bankruptcy Court's Stated Intentions</u>

10. This Motion is necessitated by the Trust's statement at a September 26, 2019 status hearing before the Bankruptcy Court of its intention to file a motion for an order closing the cases no later than

October 31, 2019 and the Bankruptcy Court's statement that it would schedule a hearing on that matter.[4] At that hearing the Trust stated its intention to close the Debtors' cases on or before December 31, 2019. It is Movant's position that the Trust is attempting to moot or eviscerate any ruling by this Court adverse to the Trust's interests, and if the relief requested herein is not granted there will be nothing to prevent the Bankruptcy Court from assisting the Trust in this regard.

II.     Matters on Appeal Go to the Heart of the Debtors' Plan

11.     Among the issues on appeal are alleged violations of the Plan, breaches of fiduciary duty, and *ultra vires* acts. These matters go to the heart of the Plan as they, *inter alia* (a) challenge the Trust's execution of its the plain language (including whether it has adequately addressed the rights Class 19 interests), and (b) allege violations by the Trust's governing authorities – i.e., the Trustee and the TAB – of the Trust Agreement, the Plan's enforcement mechanism. If this Court finds that the Trustee's and the TAB's actions warrant remedial action – including removal of the Trustee and members of the TAB (which may require amendment of the Trust's charter)[5] – the Court may take that remedial action itself or remand such them to the Bankruptcy Court.[6]

12.     All matters pertaining to claims against a debtor are integral in the bankruptcy process. *See* 11 U.S.C. § 101(5), and 11 U.S.C. § 501 – 511. The outcome of the Appeal will affect the administration

---

[4] *See* Footnote 2, *supra*.

[5] The Trust is governed by the Plan and the Trust Agreement. However, the Trust Agreement is <u>not</u> part of the Plan and by its own terms can be amended.

[6] In any case, if the Underwriters' claim is moved to common equity the Bankruptcy Court's approval of the share price may be required if the parties choose a price other than indicated by Section 1.73 (a), (b), or (c) of the Plan. Section 1.73 of the Plan defines a Common Equity Interest (Class 22) as follows: Collectively, (a) an Equity Interest represented by the 3,000,000,000 authorized shares of common stock of WMI, including, without limitation, one of the 1,704,958,913 shares of common stock of WMI issued and outstanding as of the Petition Date, or any interest or right to convert into such an Equity Interest or acquire any Equity Interest of WMI that was in existence immediately prior to or on the Petition Date or (b) a Claim, other than with respect to the Dime Warrants, which pursuant to a Final Order, has been subordinated to the level of Equity Interest in accordance with section 510 of the Bankruptcy Code or otherwise and whose shall count, for purposes of calculating Pro Rata Share of distributions, shall be determined by dividing the amount of an Allowed Claim by the per share price of WMI common stock as of either (a) the Petition Date, (b) the close of business on the day immediately preceding the Petition Date, (c) December 12, 2011, or (3) ***such other date as determined by the Bankruptcy Court***. (Emphasis added.) The date selected would be of great importance as it would determine the number of Class 22 interests the Underwriters would receive (i.e., the price of the stock on the selected day is the denominator by which the $72 million claim would be divided). Obviously, the Underwriters would prefer to select a day providing the lowest possible stock price to maximize their Class 22 interests.

of the estate because it will resolve the question whether the Trust was correct to (a) allow the Underwriters' claims and (b) place the claims in Class 19. *See In re Schuman*, 277 B.R. 638, 653 (Bankr. E.D. Pa. 2001).

13. A proceeding is "core", i.e., integral to the bankruptcy process, if it invokes a substantive right provided by the Bankruptcy Code or if the claim could arise only in the context of a bankruptcy case. *Halper v. Halper,* 164 F.3d 830, 836 (3d Cir. 1999) (citing *In re Guild & Gallery Plus, Inc.,* 72 F.3d 1171, 1178 (3d Cir. 1996)). Claims adjudication is core, so the matter of the Underwriters' claims is core because position and characterization of a claim in a bankruptcy debtor's waterfall only arises in a bankruptcy proceeding.

14. Furthermore, a matter is related to a chapter 11 case if it could conceivably have any effect on the estate being administered in bankruptcy. *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999) (citing *Belcufine v. Aloe,* 112 F.3d 633, 636 (3d Cir.1997)). If the outcome of the Appeal "could alter the Trust's rights, liabilities, options, or freedom of action (either positively or negatively) or in any way impacts upon the handling and administration of the [Trust's obligations to the classes in the Trust's waterfall then the Appeal is related to the Debtors' bankruptcy cases]". *Id*. If Appellant prevails, at a minimum, the Trust will be compelled to remove the Underwriters from Class 19, and such a result will affect the substantive rights of any other class in the Trust's waterfall that absorbs the Underwriters, or the waterfall itself if the Underwriters' claims are invalidated.

III.  **If Appellant Prevails the District Court May Remand Certain Matters to the Bankruptcy Court**

15. If this Court remands matters under the Appeal, including adjudication of motions to remove the Trustee and members of the TAB, such matters should be adjudicated within the federal – not the Delaware state system – because the Plan and the Trust Agreement are creatures of the bankruptcy process and the courts most familiar with bankruptcy are best suited to determine matters arising from and related to bankruptcy cases.[7]

---

[7] There is no provision in the Trust Agreement authorizing removal of the Trustee except by a majority vote of TAB members. *See* http://www.kccllc.net/documents/8817600/881760012050700000000001.pdf. Furthermore, pursuant to Section 6.4(f)(iii), a TAB member may be removed only by a unanimous vote of the TAB members for breach of fiduciary duty. There is no mechanism for removal of *all* TAB members or the Trustee by either a court or holders of Trust interests aggrieved by the Final Stipulation. Accordingly, if this Court determines that removal of the Trustee and/or TAB members is necessary a court (or the parties) will have to invoke the severability provision in Section 9.3

IV.         <u>If the Bankruptcy Cases are Closed Movant May Have to Reopen Them</u>

16.         If the Debtors' bankruptcy cases are closed and the Movant prevails on the Appeal, depending on this Court's directives the Movant may have to reopen the Debtors' bankruptcy cases, an oppressive burden. Movant would have to petition the Bankruptcy Court to reopen the Debtors' cases and would be required to pay a minimum of $2,334.00 to do so. Also, the Trust is very likely to demand Movant post a bond, which may be beyond her means.

V.         <u>Due Process Requires that the Bankruptcy Cases Remain Open Until the Appeal is Determined</u>

17.         At the heart of the federal judicial system is the requirement that a litigant get his day in court. In the instant case, that means that as Movant perfected her Appeal months ago the judicial system is required to take reasonable and necessary steps to (a) allow the Appeal to be adjudicated so that any remedial action can be taken before the Debtors exit bankruptcy and (b) prevent the Trust from evading accountability for the Final Stipulation and its aftermath.

VI.         <u>Movant Satisfies Third Circuit Criteria for a Stay from the Bankruptcy Court, but is Unlikely to Receive that Relief</u>

18.         If this Motion is not adjudicated by the time the forthcoming Section 350 motion is under consideration Movant will be forced to (a) object to the forthcoming Section 350 motion and/or (b) seek a stay from the Bankruptcy Court. In light of the Bankruptcy Court's stated eagerness to close the Debtors' cases, a request for a stay is likely to be futile. Nevertheless, Movant contends that under Third Circuit precedent she is entitled to a stay from the Bankruptcy Court. Federal Rule of Bankruptcy Procedure 8007 allows a party to seek a stay pending appeal and the Third Circuit has stated four factors a court must consider when presented with such a request: (1) whether the stay applicant is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *In re S.S. Body Armor I., Inc v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 771 (3d Cir. 2019) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The Third Circuit exhaustively discusses these four

---

of the Trust Agreement to do so. In either case this Court or the Bankruptcy Court is better suited for the task than a Delaware state court given their familiarity with the documentation and issues.

elements in *In re Revel AC, Inc.*, 802 F.3d. 558 (3d Cir. 2015) and cites (1) and (2) as having the greatest weight.[8]

      A.    <u>Movant is Likely to Prevail on the Merits</u>

19.    The Trust's only available defense at the Objection hearing was laches. Unfortunately for the Trust, its counsel didn't raise laches in either its responsive pleading or during oral argument. Accordingly, under a legion of Third Circuit precedents it forfeited its only defense, cannot raise it before this Court, and the Bankruptcy Court improperly raised it at the Hearing. On the merits, the Trust has no excuse for its flagrant violation of the Plan by placing the Underwriters in Class 19. That violation was also *ultra vires* and a breach of fiduciary duty to Class 19. Nothing whatever in the Trust's answering appellate brief rebutted the foregoing, and while a precise quantification is impossible, Movant contends she has satisfied the *Revel* requirement of at least a 50% chance of prevailing. *Revel*, 802 F.3d at 871.

      B.    <u>Movant Will Be Irreparably Injured if the Requested Relief is Denied</u>

20.    If this Court does not grant Movant's requested relief, based on the Bankruptcy Court's remarks on September 26, 2019, it is very unlikely that Movant will be able to obtain a stay pending appeal of an order closing the Debtors' cases. Even if the Bankruptcy Court is inclined to grant a stay, it is very likely the Trust will request a bond, which Movant may not be able to post. As stated previously, if Movant prevails before this Court she will have to petition to reopen the Debtors' cases, pay the appropriate fees, and the Bankruptcy Court may deny her request to reopen the cases. If she seeks redress in the Delaware courts she faces an unfamiliar legal landscape, court costs, and no certainty that the Delaware court will be able or willing to enforce this Court's ruling. As a practical matter, the federal courts in Delaware are the only forum in which the Movant can be assured of receiving – at nominal cost – judicial review by courts familiar with bankruptcy matters. Once the bankruptcy cases are closed the Trust will be free to disburse any available funds, and Class 19 will receive its wrongfully diluted portion.[9] Once disbursed, those funds can't be recovered so if Appellant prevails her Appeal will be equitably mooted.

---

[8] As between (1) and (2), the more likely the party seeking the stay is to win on the merits the less important irreparable harm. *See Revel*, 802 F.3d at 569 – 570 ("[T]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in [her] favor.")

[9] The Trust has stated that there are no funds to be disbursed now and argued both in its responsive brief and by a letter to this Court dated August 9, 2019 that no assets are forthcoming to the Trust. The latter assertion is expressly contradicted by the Trust's website which very prominently states that the Trust is awaiting news of a possible LIBOR payout from the FDIC. *See* http://www.kccllc.net/documents/8817600/8817600190415000000000001.pdf (¶ 22, p.

C.     <u>The Trust Will Not be Injured by the Requested Relief</u>

21.     While the Trust will doubtless assert that delaying closure of the Debtors' cases for a few extra weeks or months while the Appeal is determined is injurious to the Trust, such assertions are meritless. To be tautological, the Trust is the Debtors and the Debtors are the Trust, and the Trust will not stop functioning when an order is entered closing the Debtors' cases. The Bankruptcy Court entered an order in December 2017 extending the term of the Trust through March 19, 2021 (unless dissolved earlier or otherwise extended), and the Trust has made no statement that when the Debtors' cases are closed it will immediately dissolve and cease to pay its employees, consultants, and retained professionals. Finally, granting the requested relief will faithfully execute the express terms of the Plan by assuring that any violations thereof are redressed, and will have no effect on third parties who have justifiably relied on the Plan's confirmation. *See In re Nuverra Environmental Solutions, Inc.*, 599 B.R. 75, 83 (D. Del. 2018). Indeed, far from causing the Plan to unravel, Movant's Appeal, if successful, could guarantee to Class 19 gets the full measure of the bargain it struck when it voted for the Plan. *Id*. at 86. As Movant stated in her brief, by violating the Plan the Trust outsourced its Chief Compliance and Chief Ethics functions to her.

D.     <u>The Public Interest Lies in Granting the Requested Relief</u>

22.     At the heart of the Appeal is a desire to give members of Class 19 the bargain for which they voted and were promised they would receive. They voted for anti-dilution and their fiduciary, the Trust, disregarded the Plan and diluted them by placing the Underwriters' claims in Class 19. It is dismaying, particularly in the post-Madoff era, for a Trustee to show no concern for its charter documents or beneficiaries, and for the Bankruptcy Court – a federal judge – to read in open court documentation showing that the Trust violated its charter (i.e., the Plan) and condone the Trust's malfeasance. There are thousands of retail members of Class 19 all over the world who follow the Debtors' bankruptcy cases, listened to the Hearing, and expressed outrage that the Bankruptcy Court (inappropriately) applied a technicality to protect the Trust rather than ordering the Trust to fashion a remedy that would not violate

---

16.) Movant challenged this assertion in her Objection, at the Hearing, and most recently in her letter to the Court dated August 13, 2019, responding to the Trust's letter, detailing the scale and complexity of the Debtors' mortgage backed securities holdings immediately prior to to the bankruptcy filings. Moreover, even if no funds are immediately forthcoming, that condition has no bearing on (a) the Trust's alleged misdeeds, (b) Movant's right to have her Appeal heard by this Court, and (c) Movant's right to remedial action before the Debtors' cases close if she prevails.

the Plan. America's federal judiciary has long been regarded as the most respectable of the three branches of government, and at a time when politicians and other public figures are lightly esteemed it is in the interest of federal judges to maintain that standing. By neutralizing the Bankruptcy Court's ability to eviscerate Movant's Appeal this Court can mitigate the damage done to Class 19 and show retail investors who were disappointed by the Bankruptcy Court's handling of the Objection that the federal judiciary has integrity and can police itself.

## CONCLUSION

23.  As discussed herein, if Appellant prevails this Court may remand certain matters for Bankruptcy Court proceedings consistent with its rulings. If the Debtors' cases are closed by then they will very likely have to be reopened to implement the directives of the Court's order. The Appeal has been fully briefed since August 13, 2019, and the parties are awaiting information from the Court regarding oral argument or a decision. After eleven years in bankruptcy there is no harm to the Debtors (who, again, are the Trust) in waiting a few more weeks or months for a final resolution of the Appeal because the Trust will continue to exist after the cases are closed, whenever that occurs. Indeed, the Trust will not dissolve, so the only effect of exiting bankruptcy is that the Trust will become free of oversight by the Bankruptcy Court and this Court which, may be a reason for the Trust's (and the enormously wealthy hedge fund managers behind it) alacrity.

24.  It is the Movant's position that the real purpose behind the Trust's motion to close the bankruptcy cases is to eviscerate any possible effect of a ruling by this Court favorable to Appellant. If this Court overturns the Bankruptcy Court's laches ruling it is extremely likely that this Court will also hold that the Trust's actions were a breach of fiduciary duty and *ultra vires*, and the Court may determine that the Trustee and the TAB should be replaced. As any organism will resist its demise, the Trust will seek to nullify such rulings by taking itself outside the judicial system and therefore outside this Court's jurisdiction which is, Movant contends, precisely the Trust's objective in filing to close the case notwithstanding pendency of the Appeal. To allow the Trust to thwart this Court's authority over matters core to the Debtors' Plan would usurp the rights given to Class 19 under the Plan, the due process rights of Class 19 interest holders to *enforce* their rights, and the bankruptcy process itself, which exists to provide fair

adjudication of claimants' rights (which are the statutory purposes of the Plan solicitation and confirmation processes) *and* the enforcement thereof, which is Appellant's objective.

## REQUEST FOR RELIEF

Pursuant to 28 U.S.C. § 157(d) this Court has the authority to enter an order withdrawing that portion of the Reference permitting the Bankruptcy Court to enter an order closing the Debtors' cases. Movant hereby requests that this Court enter such an order or, in the alternative, accept this Motion as a request for a writ of mandamus,[10] costs, fees, and any other relief it deems just and proper.

Dated: October 31, 2019
New York, New York

/s/ Alice Griffin_____
Appellant, *Pro Se*

121 East 12th Street, #7C
New York, New York 10003
(646) 337-3577
griffincounselpc@earthlink.net

---

[10] The Third Circuit has held that for a writ of mandamus to issue: (1) the petitioner must show there is no other adequate means to attain the relief sought; (2) the petition must show that her right to the writ is clear and indisputable; and (3) even if the first two conditions are met, the reviewing court in its discretion must conclude that the writ is appropriate under the circumstances. *In re Briscoe,* 448 F.3d 201, 212 (3d Cir. 2006) *(citing Cheney v. U.S. Dist. Court for Dist. of Columbia,* 542 U.S. 367, 380-81, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (citations and quotation marks omitted)). In the instant case, Movant has filed her appeal and while she can and will object to the Trust's motion to close the cases, the Bankruptcy Court's statement at the September 26, 2019 hearing indicates it is eager to close the Debtors' cases and despite the Bankruptcy Court's awareness of the Appeal it is probably unrealistic to expect the Bankruptcy Court to delay closing the Debtors' cases unless compelled to do so. Second, Movant has done everything required to perfect the Appeal and is entitled to have it adjudicated while it is possible for the federal courts to provide relief sought therein. Finally, mandamus is appropriate as the Trust's effort to close the Debtors' cases prior to adjudication of the Appeal is tantamount to the defeating the Appeal for Plan reasons stated herein.

# **CERTIFICATE OF SERVICE**

I, Alice Griffin, certify that on October 31, 2019 I caused the foregoing Motion to be served upon the parties named below in the manner indicated.

## **Via Email and First-Class Mail**

Brian S. Rosen, Esq.
Proskauer Rose LLP
Eleven Times Square
8th Avenue and 41st St
New York, New York 10036-8299
brosen@proskauer.com

## **Via Email**

Amanda R. Steele, Esq.
Paul N. Heath, Esq.
Mark D Collins, Esq.
Marcos Ramos, Esq.
Cory Kandestin, Esq.
Richards Layton & Finger PA
One Rodney Square
920 N King Street
Wilmington, Delaware 19801
steele@rlf.com
heath@rlf.com
collins@rlf.com
ramos@rlf.com
Kandestin@rlf.com

Michael Rosenthal, Esq.
Alan Moskowitz, Esq.
Gibson, Dunn & Crutcher
200 Park Avenue
New York, NY 10166-0193
mrosenthal@gibsondunn.com

Charles E. Smith, Esq.
John Maciel
WMI Liquidating Trust
chad.smith@wamuinc.net
jmaciel@alvarezandmarsal.com

Benjamin Finestone, Esq.
Quinn, Emanuel Urquhart & Sullivan LLP
52 Madison Avenue
New York, New York 10010
benjaminfinestone@quinnemanuel.com

William P. Bowden, Esq.
Ashby & Geddes, P.A.
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801
Telephone: (302) 654-1888
WBowden@ashbygeddes.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------- X
                                                            :   Chapter 11
In re:                                                      :   Case No. 08-12229 (MFW)
                                                            :   (Jointly Administered)
WASHINGTON MUTUAL, INC., et al.¹                            :
                                                            :
                                                            :
----------------------------------------------------------- X
```

## ORDER FOR WITHDRAWAL (LIMITED) OF REFERENCE

**WHEREAS**, on October 31, 2019, Alice Griffin, appellant in the proceeding before this Court styled *Alice Griffin v. WMI Liquidating Trust*, Case No. 1:19-cv-00775-RGA (the "Movant"), *Pro Se*, brought a motion (the "Motion") for an order of this Court withdrawing authority from the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") to enter an order pursuant to 11 U.S.C. § 350(a) ("Section 350") closing the above-captioned bankruptcy cases of Washington Mutual, Inc. and WMI Investment Corp. (collectively, the "Debtors") until further leave of this Court; and

**WHEREAS**, upon consideration of the Motion and any responses thereto, it is hereby:

**ORDERED**, that the Bankruptcy Court shall not enter an order pursuant to Section 350 in the Debtors' cases until further leave of this Court.

Dated:    November __, 2019
          Wilmington, Delaware

                                                    _____
                                                    The Honorable Richard G. Andrews
                                                    United States District Judge

---

¹ The Debtors, along with the last four digits of each Debtor's federal tax identification number, were: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1201 Third Avenue, Suite 3000, Seattle, Washington 98101.