process and currently has no employees, offices or assets other than cash. Since the Petition Date, WaMu 1031 has paid $4 million to WMI, either as distributions or in satisfaction of obligations to WMI. WaMu 1031's balance sheet as of October 31, 2011 is shown below in Section IV.IV.8.

**WM Citation Holdings, LLC.** WM Citation Holdings, LLC ("WM Citation") is a Delaware limited liability company formed in July 2001. As of the Petition Date, WM Citation held partial interests in three corporate aircraft managed by NetJets, which interests were sold immediately after the commencement of the Chapter 11 Cases. The aggregate sale proceeds were approximately $3 million after NetJets broker fees, and the eventual buyers were NetJets and JPMC. Over the course of the reorganizations, WM Citation also has been utilized to consolidate other Non-Banking Subsidiaries and, as a result, has accumulated various assets and cash through those reorganizations. Since the Petition Date, WM Citation along with the Non-Banking Subsidiaries that have merged into it have paid $287 million to WMI, either as distributions or in satisfaction of obligations to WMI.

Through the consolidation process of merging PCA Asset Holdings and HS Loan Partners into WM Citation, WM Citation owns two note receivables payable by WMB which continue to accrue monthly interest. Pursuant to the Global Settlement Agreement, JPMC will pay all obligations of WMB, WMB's subsidiaries, or JPMC under the Revolving Notes set forth on Exhibit "V" thereto. (See Global Settlement Agreement § 2.16 and Section V.B.3.b(v) below.) Specifically, Exhibit "V" to the Global Settlement Agreement includes the following Revolving Notes which relate to WM Citation: (i) $73,670,153 under that certain Revolving Master Note, dated as of December 22, 2005, by and between WMB, as borrower, and WM Citation (as successor to HS Loan Partners), as lender, and (ii) $13,576,245 under that certain Registered Security, Note A, dated as of December 17, 2004, by and between University Street, Inc., as payor and predecessor in interest to WMB, and WM Citation (as successor to WMRP Delaware Holdings LLC), as payee, and predecessor in interest to PCA Asset Holdings LLC.

WM Citation owned six (6) multi-family home mortgages through the mergers of Flower Street, Sutter Bay Corporation and HS Loan Partners into WM Citation. Collectively, through a competitive auction process, 14 multi-family loan mortgages, consisting of eight (8) owned by H.S. Loan Corporation and the 6 owned by WM Citation, were sold in June 2009 and generated approximately $3.5 million in proceeds after fees and expenses.

Through the consolidation process, WM Citation became the eventual owner of WM Aircraft's 72% interest in SoundBay Leasing LLC ("SoundBay Leasing"). SoundBay Leasing owned a 1986 Boeing 767-223ER, which was leased by American Airlines. The lease term expires at the beginning of 2012. Through an airline broker, SoundBay Leasing auctioned the plane, received six (6) bids, and generated gross proceeds of $5.1M in January 2010, of which WM Citation retained 72%.

WM Citation's balance sheet, as of October 31, 2011, is shown below in Section IV.A.8.

**Ahmanson Obligation Company.** Ahmanson Obligation Company ("Ahmanson Obligation") is a California corporation acquired as part of the H.F. Ahmanson & Co. acquisition in October 1998. Prior to the Petition Date, Ahmanson Obligation generally purchased loans that had been sold with recourse by WMI affiliates. Both Freddie Mac and Fannie Mae filed Claims against WMI, which guaranteed recourse obligations of Ahmanson Obligation. Ahmanson Obligation settled a $53 million recourse Claim with Freddie Mac for $250,000 in March 2010 and a $17 million recourse Claim with Fannie Mae for $50,000 in September 2010.

As of the Petition Date, Ahmanson Obligation held approximately $18 million in unpaid principal balance ("UPB") on outstanding mortgage loans. In July 2010, through a third party advisor, Ahmanson Obligation engaged outside buyers in a competitive bidding process and received nineteen

(19) bids for a majority of these loans. Total proceeds on the sale of approximately 220 loans, or approximately $14 million in UPB, were $10.3 million after fees and expenses. Ahmanson Obligation currently has 50 remaining loans on the balance sheet with a total UPB of approximately $2 million. These loans are currently in the process of being sold or prepared for sale. In addition, all previous loans or owned real estate through the loan foreclosure process has either been sold or reclassified.

Since the Petition Date, Ahmanson Obligation has paid $22 million to WMI, either as distributions or in satisfaction of obligations to WMI. Ahmanson Obligation's balance sheet, as of October 31, 2011, is shown below in Section IV.A.8.

**WMI Rainier LLC**. WMI Rainier LLC ("WMI Rainier") is a Washington limited liability company formed in April 2006. Prior to the Petition Date, the company primarily served as a consolidation subsidiary for use in merging former WMI subsidiaries out of existence. Over the course of the reorganizations after the Petition Date, the company acquired Ahmanson Developments, Inc. which had potential liabilities related to the BKK Litigation and certain warranty obligations. The BKK Litigation and the Claims associated with it are further described in Section V.B.6.j of this Disclosure Statement. Pursuant to a pending settlement with JPMC and the plaintiffs, WMI will pay JPMC $1.49 million on behalf of WMI Rainier in exchange for a release by JPMC of all Claims against WMI and the Non-Banking Subsidiaries related to the BKK Litigation. In addition, JPMC will indemnify the WMI Entities for any loss related to the BKK Litigation not covered by insurance; provided, that such indemnification is limited to an amount of up to $1.49 million with respect to liabilities of WMI Rainier or its predecessor ADI (defined below) or Oxford Investment Corp. (See Certification of Counsel Regarding Order Approving Settlement Agreement Between Debtors, JPMorgan Chase Bank N.A., California Department of Toxic Substances Control, the BKK Joint Defense Group and Certain of That Group's Individual Members, Exhibit A [D.I. 6261].)

The Debtors recently learned that, through ADI's (defined below) historical real estate development activities, WMI Rainier may own two parcels of land in Riverside County, California. Both parcels are approximately two acres each and consist of narrow strips of land abutting alongside a highway. Additionally, such parcels are designated as utility corridors and zoned as "open space limiting development" and encumbered by the City of Corona and Riverside County. These utility corridors were most likely intended to be conveyed to the city during development and have zero value or assessed property tax.

WMI Rainier LLC's balance sheet, as of October 31, 2011, is shown below in Section IV.A.8.

**H.S. Loan Corporation**. H.S. Loan Corporation ("H.S. Loan") is a California corporation and was acquired as part of the H.F. Ahmanson & Co. acquisition in October 1998. As of the Petition Date, the company owned 8 multi-family home mortgages. Collectively, through a competitive auction process, 14 multi-family loan mortgages, consisting of the 6 owned by H.S. Loan and 8 owned by WM Citation (previously owned by Flower Street, Sutter Bay Corp. and HS Loan Partners at the Petition Date), were sold in June 2009 and generated approximately $3.5 million in proceeds after fees and expenses.

As of the Petition Date, H.S. Loan also owned a note receivable asset payable by WMB, which continues to accrue monthly interest. Pursuant to the Global Settlement Agreement, JPMC will pay all obligations of WMB, WMB's subsidiaries, or JPMC under the Revolving Notes as set forth on Exhibit "V" thereto. (See Global Settlement Agreement § 2.16 and Section V.B.3.b(v) below.) Exhibit "V" to the Global Settlement Agreement includes the following Revolving Note which relates to H.S. Loan:

$82,048,081 under that certain Revolving Master Note, dated as of December 22, 2005, by and between WMB, as borrower, and H.S. Loan, as lender.

JPMC owns a minority interest in H.S. Loan of approximately 1.33% and will convey such minority interest to WMI upon implementation of the Global Settlement Agreement, as set forth in Section V.B.3.b(iv) below.

H.S. Loan's balance sheet as of October 31, 2011 is shown below in Section IV.A.8.

### b. *WMI Subsidiaries Merged at December 31, 2008*

**ACD 2 (Merged into WM Citation)**. ACD 2 was a California corporation acquired as a part of the H.F. Ahmanson & Co. acquisition in October 1998. ACD 2 was incorporated in September 1992 to engage in real estate development. As of the Petition Date, ACD 2 did not have any ongoing operations or hold any real estate.

**Great Western Service Corporation Two (Merged into WM Citation)**. Great Western Services Corporation Two ("GWSCT") was a California corporation acquired as part of the Great Western Bank acquisition in July 1997. At the Petition Date, GWSCT held one subsidiary, Washington Mutual Finance Group, LLC, which was involved in class action litigation in Mississippi, described below.

**Providian Services Corporation (Merged into WMI Rainier)**. Providian Services Corporation ("PSC") was a Delaware corporation acquired as part of the Providian acquisition in October 2005. PSC was incorporated in June 1998 to hold certain investments in the Robena coal project transaction. As of the Petition Date, PSC was not active and did not have any assets.

**Ahmanson Developments, Inc. (Merged into WMI Rainier)**. Ahmanson Developments, Inc. ("ADI") was a California corporation acquired as part of the H.F. Ahmanson & Co. acquisition in October 1998. ADI was incorporated in August 1971 to engage in real estate development. As of the Petition Date, ADI was no longer active in development, but continued to hold warranty liabilities on various development projects. ADI had potential liabilities related to the BKK Litigation as well as certain outstanding warranty liabilities, but transferred all liabilities to WMI Rainier when it merged with WMI Rainier through the consolidation process. Refer to the above discussion of WMI Rainier for further explanation.

**Ahmanson Residential Development (Merged into WM Citation)**. Ahmanson Residential Development ("ARD") was a California corporation acquired as part of the H.F. Ahmanson & Co. acquisition in October 1998. Prior to the Petition Date, ARD owned a real estate development project in Owing Mills, Maryland. As of the Petition Date ARD did not have any ongoing operations or hold any real estate.

**WM Funds Disbursements, Inc. (Merged into WMI Rainier)**. WM Funds Disbursements, Inc. ("WM Funds Disbursements") was a Nevada corporation acquired as part of the Commercial Capital Bancorp Inc. acquisition in October 2006. WM Funds Disbursements did not engage in business activities prior to 2007. As of April 2007, WM Funds Disbursement's name was changed to its current name, "WM Fund Disbursements, Inc.," and it was repurposed to make employee benefit payments to people who were employees of WM Advisors, Inc., WM Funds Distributor, Inc. and WM Shareholder Services, Inc. before WMI and/or its affiliates sold those companies. WM Funds Disbursements also held a small equity stake in Providian Technology Services Private Limited. The

equity stake was believed to have no value and WM Funds Disbursements disposed of it in September 2009.

**H.F. Ahmanson & Company (Merged into WMI Rainier)**. H.F. Ahmanson & Co. was a Nevada corporation acquired as part of the H.F. Ahmanson & Co. acquisition in October 1998. As of the Petition Date, H.F. Ahmanson & Co. was not active and did not have any assets.

**Flower Street Corporation (Merged into WM Citation)**. Flower Street Corporation ("Flower Street") was a California corporation acquired as part of the H.F. Ahmanson & Co. acquisition in October 1998. Flower Street was formed in November 1996 to engage in real estate development. As of the Petition Date, Flower Street (a) had divested itself of any of its Los Angeles real estate assets and (b) owned a few multi-family home mortgages. Through the consolidation process these mortgages were sold to WM Citation. See the above discussion of WM Citation for further detail on the sale and proceeds.

**Robena Feedstock LLC (Merged into WMI Rainier)**. Robena Feedstock LLC ("Robena Feedstock") was a Delaware limited liability company acquired as part of the Providian acquisition in October 2005. The company was formed in June 1998 to own a wash plant associated with the coal agglomeration plant owned by Robena LLC. As of the Petition Date, the company was not active and did not have any assets.

**Providian Services LLC (Merged into WMI Rainier)**. Providian Services LLC was a Delaware limited liability company acquired as part of the Providian acquisition in October 2005. The company was formed in June 1998 to hold a limited partnership interest in Robena LP. As of the Petition Date, the company was not active and did not have any assets.

**ACD 3 (Merged into WM Citation)**. ACD 3 was a California corporation acquired as a part of the H.F. Ahmanson & Co. acquisition in October 1998. ACD 3 was incorporated in January 1994 to develop real estate. As of the Petition Date, ACD 3 did not hold any real estate or any other assets.

**Ahmanson GGC LLC (Merged into WM Citation)**. Ahmanson GGC was a California limited liability company originated as a limited partnership formed in December 1996 by H.F. Ahmanson & Co. Ahmanson GGC converted to a limited liability company in June 1999. As of the Petition Date, Ahmanson GGC operated as a holding company for WM Aircraft Holdings LLC.

**Ahmanson Residential 2 (Merged into WM Citation)**. Ahmanson Residential 2 was a California corporation acquired as part of the H.F. Ahmanson & Co. acquisition in October 1998. Prior to the Petition Date, Ahmanson Residential 2 historically engaged in real estate development. As of the Petition Date, Ahmanson Residential 2 did not have ongoing operations or hold any real estate.

**Sutter Bay Associates LLC (Merged into WM Citation)**. Sutter Bay Associates was a California limited liability company originated as a limited partnership formed by H.F. Ahmanson & Co. in December 1994. Sutter Bay Associates converted to a limited liability company in June 1999. As of the Petition Date, Sutter Bay Associates was a holding company for WaMu entities that leased commercial aircraft.

**Sutter Bay Corporation (Merged into WM Citation)**. Sutter Bay Corporation was a California corporation acquired as part of the H.F. Ahmanson & Co. acquisition in October 1998. Sutter Bay Corporation was incorporated in November 1996 to engage in real estate development. As of the Petition Date, Sutter Bay Corporation owned a few multi-family home mortgages, but did not hold any

real estate. Through the consolidation process these mortgages were sold to WM Citation. See the above discussion of WM Citation for further detail on the sale and proceeds.

**Robena LLC (Merged into WMI Rainier)**. Robena LLC was a Delaware limited liability company acquired as part of the Providian acquisition in October 2005. Robena LLC was formed in March 1998 to own a coal agglomeration plant. As of the Petition Date, Robena LLC was not active and did not have any assets.

**WMHFA Delaware Holdings LLC (Merged into PCA Asset Holdings)**. WMHFA Delaware Holdings LLC was a Delaware limited liability company formed in June 1999. As of the Petition Date, WMHFA Delaware Holdings LLC did not hold any assets or liabilities.

    *c.*    *WMI Subsidiaries Merged at April 30, 2009*

**HS Loan Partners LLC (Merged in WM Citation)**. HS Loan Partners LLC was a California limited liability company originated as a limited partnership formed in December 1996 by H.F. Ahmanson & Co. HS Loan Partners LLC converted to a limited liability company in June 1999. As of the Petition Date, HS Loan Partners LLC owned a note receivable asset payable by WMB which continues to accrue monthly interest. Through the consolidation process this asset now is owned by WM Citation and is discussed more fully in the above discussion of WM Citation. As of the Petition Date, HS Loan Partners LLC owned 1 multi-family home mortgage. Through the consolidation process this mortgage was sold to WM Citation. See the above discussion of WM Citation for further detail on the sale and proceeds.

**PCA Asset Holdings LLC (Merged in WM Citation)**. PCA Asset Holdings LLC ("PCA") was a California limited liability company formed in January 2005. PCA served as a holding company for real estate that was to be sold to third parties. As of the Petition Date, PCA owned a note receivable asset payable by WMB (acquired by JPMC and outlined in the Global Settlement Agreement) which continues to accrue monthly interest. Through the consolidation process this asset now is owned by WM Citation and is discussed more fully in the above discussion of WM Citation. As of the Petition Date, PCA did not have any ongoing operations or hold any real estate.

**WM Aircraft Holdings LLC (Merged in WM Citation)**. WM Aircraft was a Delaware limited liability company was formed in December 2000 to act as a holding company. As of the Petition Date, the company directly held a 72% interest in SoundBay Leasing. This 72% interest was merged into WM Citation through the consolidation process.

**Riverpoint Associates (Merged in WM Citation)**. Riverpoint Associates ("Riverpoint") was a California general partnership acquired as part of the H.F. Ahmanson & Co., acquisition in October 1998. Riverpoint was formed to engage in real estate development. As of the Petition Date, Riverpoint did not have ongoing operations or hold any real estate.

**ACD 4 (Merged in WM Citation)**. ACD 4 was a California corporation acquired as a part of the H.F. Ahmanson & Co. acquisition in October 1998. ACD 4 was incorporated in October 1993 to develop real estate. As of the Petition Date, ACD 4 did not have any ongoing operations or any assets.

**Washington Mutual Finance Group, LLC (Merged into WM Citation)**. WM Finance Group was a Delaware limited liability company formed in April 2000 to engage in mortgage lending in Kentucky, Maryland, Mississippi, North Carolina, Tennessee, Virginia and West Virginia. Substantially all of WM Finance Group's assets were sold to CitiFinancial Credit company in March 2004. As of the

Petition Date, the company existed to address certain Mississippi class action litigation arising from Mississippi loans, which since has been resolved.

        *d.*     *WMI Subsidiaries Merged or Dissolved at June 30, 2010*

**Marion Insurance Company, Inc. (Merged into WM Citation)**. Marion Insurance Company ("Marion"), a Vermont corporation and non-debtor, wholly-owned subsidiary of WMI, was a captive reinsurance company, incorporated in September 2000 to act as a Vermont domiciled captive insurance company to reinsure the risk associated with lender placed hazard insurance policies, accidental death and dismemberment and mortgage life insurance. Prior to the Petition Date, Marion reinsured mortgage life, disability, and accidental death insurance written on mortgagees of WMB's banks as well as lender placed hazard-related coverage on loans in the banks' servicing portfolios.

In February 2009, the insurance commissioner of Vermont notified Marion that it was no longer in compliance with Vermont captive law because it no longer reinsured the risks of its affiliates, and therefore required that Marion no longer provide reinsurance as a Vermont captive. In response to this directive, in early 2009, Marion began the process of commuting its existing reinsurance contracts with four separate companies. By the beginning of June 2010, Marion had successfully commuted all reinsurance agreements with the four companies, including its reinsurance agreement with Assurant. As part of its commutation effort with Assurant, Marion created and deposited $17 million into a trust for the benefit of Assurant to pay remaining Claims over the next two years. Per the insurance commissioner's requirements, Marion subsequently distributed the trust to WMI to ensure the successful wind-down of the Marion entity. In March 2011, the Assurant Trust distributed $7.7 million to WMI. The term of the trust expires on December 31, 2011, after which the remaining assets, currently approximately $6.4 million, will revert, unrestricted, to WMI. In total, since the Petition Date, Marion has paid $74 million to WMI, either as distributions or in satisfaction of obligations to WMI.

As of June 30, 2010, Marion surrendered its Vermont insurance license and merged out of existence as part of the ongoing WMI subsidiary wind-down process.

**SoundBay Leasing LLC (Dissolved)**. SoundBay Leasing was a Delaware limited liability company formed in December 2000 to be a joint venture with Bank of America involved in the leasing of aircraft and other equipment. As of the Petition Date, SoundBay Leasing owned a 1986 Boeing 767-223ER which was leased by American Airlines. The asset was sold in June 2010. For further information on the sale, refer to the above discussion of WM Citation.

**WMGW Delaware Holdings LLC (Merged into WM Citation)**. WMGW Delaware Holdings LLC ("WMGW") was a Delaware limited liability company formed in June 1999 to engage in commercial leasing and lending. As of the Petition Date, WMGW did not hold any assets or leases.

8. **WMI Non-Debtor Subsidiary Balance Sheets**

Balance sheets as of October 31, 2011 for all the WMI subsidiaries, save WMI Investment and WMMRC, are below. For financial information regarding WMMRC, refer to Article VII of this Disclosure Statement. For WMI Investment's balance sheet, refer to the Debtors' MORs.

*WaMu 1031 Exchange Balance Sheet*
*(Unaudited)*

|  | October 31, 2011 |  |
|---|---:|---|
| **ASSETS** |  |  |
| Cash | $ 1,421,987.48 |  |
| **TOTAL ASSETS** | 1,421,987.48 |  |
|  |  |  |
| **LIABILITIES & EQUITY** |  |  |
| Liabilities |  |  |
| Accounts Payable | - |  |
| Taxes Pay / (Rec) and Deferreds -- Intercompany | (76,446.62) | (1) |
| Other Accrued Liabilities | (10,961.84) |  |
| Total Liabilities | (87,408.46) |  |
|  |  |  |
| Total Equity | 1,509,395.94 |  |
|  |  |  |
| **TOTAL LIABILITIES & EQUITY** | $ 1,421,987.48 |  |

NOTES:

(1) All tax balances represent intercompany balances with WMI per the tax sharing agreement. However, prior to the seizure, balances had not been reconciled on an individual company basis. Current balances represent the balances as of 9/26/2008. No adjustments have been made to the balances since the seizure awaiting final determination of the rights of ownership and the correct amounts. Per the Global Settlement Agreement, net tax refunds for WMI and its non-banking subsidiaries will be paid to WMI based on the agreed upon -percentages. Further, the Seventh Amended Plan provides that all intercompany balances will be extinguished as of the Effective Date.

*WM Citation Holdings, LLC Balance Sheet*
*(Unaudited)*

|  | October 31, 2011 |
|---|---:|
| **ASSETS** |  |
| Cash | $ 2,030,163.64 |
| Other Assets |  |
|    Investment in Subsidiaries | 23,930,026.18 |
|    Intercompany Notes -- WMI | 114,473,051.68 |
|    Intercompany Notes -- WMB and Subs | 98,720,488.36 |
| Total Other Assets |  |
|  |  |
| **TOTAL ASSETS** | 239,153,729.86 |
|  |  |
| **LIABILITIES & EQUITY** |  |
| Liabilities |  |
|    Accounts Payable | - |
|    Taxes Pay / (Rec) and Deferreds -- Intercompany | 12,209,467.42 |
|    Payroll & Benefits Accruals | 843,854.00 |
|    Other Accrued Liabilities | 49,803.38 |
| Total Liabilities | 13,103,124.80 |
|  |  |
| Total Equity | 226,050,605.06 |
|  |  |
| **TOTAL LIABILITIES & EQUITY** | $ 239,153,729.86 |

NOTES:

(1) Investment in HS Loan Corporation. Balance is eliminated in consolidation.

(2) Per the Seventh Amended Plan, all intercompany balances within WMI and its non-banking subsidiaries will be extinguished.

(3) Per the Global Settlement Agreement, JPMC will pay WMI for notes receivable from WMB and subs.

(4) All tax balances represent intercompany balances with WMI per the tax sharing agreement. However, prior to the seizure, balances had not been reconciled on an individual company basis. Current balances represent the balances as of 9/26/2008. No adjustments have been made to the balances since the seizure awaiting final determination of the rights of ownership and the correct amounts. Per the Global Settlement Agreement, net tax refunds for WMI and its non-banking subsidiaries will be paid to WMI based on the agreed upon -percentages. Further, the Seventh Amended Plan provides that all intercompany balances will be extinguished as of the Effective Date.

(5) Represents post-retirement medical benefits recorded on WMI-non-banking subsidiaries as of 9/26/08. Per the Global Settlement Agreement, JPMC is assuming this Plan.

*Ahmanson Obligation Company Balance Sheet*
*(Unaudited)*

|  | October 31, 2011 |  |
|---|---:|---|
| **ASSETS** |  |  |
| Cash | $ 8,731,923.74 |  |
| Loans -- Secured by Real Estate | 541,716.14 | (1) |
| **TOTAL ASSETS** | **9,273,639.88** |  |
|  |  |  |
| **LIABILITIES & EQUITY** |  |  |
| Accounts Payable | 3,060.00 |  |
| Taxes Pay / (Rec) and Deferreds -- Intercompany | 3,604,680.81 | (2) |
| Total Liabilities | 3,607,740.81 |  |
|  |  |  |
| Total Equity | 5,665,899.07 |  |
|  |  |  |
| **TOTAL LIABILITIES & EQUITY** | $ 9,273,639.88 |  |

NOTES:

(1) Represents 53 loans secured by homes and manufactured housing. The remaining loans have not yet been sold due to documentation or performance issues which existed as of the seizure.

| | | |
|---|---:|---|
| Gross book value | $ 1,993,656.01 | |
| Proceeds receivable -- from servicer | 43,944.22 | |
| Loan Loss Reserve | (1,495,884.09) | |
| Net book value -- Loans -- Secured by Real Estate | $ 541,716.14 | |

(2) All tax balances represent intercompany balances with WMI per the tax sharing agreement. However, prior to the seizure, balances had not been reconciled on an individual company basis. Current balances represent the balances as of 9/26/2008. No adjustments have been made to the balances since the seizure awaiting final determination of the rights of ownership and the correct amounts. Per the Global Settlement Agreement, net tax refunds for WMI and its non-banking subsidiaries will be paid to WMI based on the agreed upon -percentages. Further, the Seventh Amended Plan provides that all intercompany balances will be extinguished as of the Effective Date.

*WMI Rainier LLC Balance Sheet*
*(Unaudited)*

|  | October 31, 2011 |  |
|---|---:|---|
| **ASSETS** | | |
| Cash | $ 1,642,851.91 | (1) |
| Intercompany Notes -- WMI | 2,430,365.36 | (2) |
| **TOTAL ASSETS** | 4,073,217.27 | |
| | | |
| **LIABILITIES & EQUITY** | | |
| Liabilities | | |
| Intercompany Payables -- WMI | 50,000.00 | (2) |
| Taxes Pay / (Rec) and Deferreds -- Intercompany | (3,707,495.73) | (3) |
| Other Prepetition Liabilities | 10,000.00 | |
| Total Liabilities | (3,647,495.73) | |
| | | |
| Total Equity | 7,720,713.00 | |
| | | |
| **TOTAL LIABILITIES & EQUITY** | $ 4,073,217.27 | |

NOTES:

(1) Per the pending agreement with BKK and JPMC, $1,490,000 will be paid to JPMC in exchange for a release of all obligations related to the BKK litigation.

(2) Per the Seventh Amended Plan, all intercompany balances within WMI and its non-banking subsidiaries will be extinguished.

(3) All tax balances represent intercompany balances with WMI per the tax sharing agreement. However, prior to the seizure, balances had not been reconciled on an individual company basis. Current balances represent the balances as of 9/26/2008. No adjustments have been made to the balances since the seizure awaiting final determination of the rights of ownership and the correct amounts. Per the Global Settlement Agreement, net tax refunds for WMI and its non-banking subsidiaries will be paid to WMI basedon the agreed upon -percentages. Further, the Seventh Amended Plan provides that all intercompany balances will be extinguished as of the Effective Date.

*H.S. Loan Corporation Balance Sheet*
*(Unaudited)*

|  | October 31, 2011 |  |
|---|---:|---|
| **ASSETS** |  |  |
| Cash | $ 982,162.45 |  |
| Intercompany Notes -- WMI | 1,397,644.18 | (1) |
| Intercompany Notes -- WMB and Subs | 83,190,934.06 | (2) |
| **TOTAL ASSETS** | **85,570,740.69** |  |
|  |  |  |
| **LIABILITIES & EQUITY** |  |  |
| Taxes Pay / (Rec) and Deferreds -- Intercompany | 1,433,321.98 | (3) |
| Total Liabilities | 1,433,321.98 |  |
|  |  |  |
| Total Equity | 84,137,418.71 |  |
|  |  |  |
| **TOTAL LIABILITIES & EQUITY** | $ **85,570,740.69** |  |

NOTES:

(1) Per the Seventh Amended Plan, all intercompany balances within WMI and its non-banking subsidiaries will be extinguished.

(2) Per the Global Settlement Agreement, JPMC will pay WMI for notes receivable from WMB and subs.

(3) All tax balances represent intercompany balances with WMI per the tax sharing agreement. However, prior to the seizure, balances had not been reconciled on an individual company basis. Current balances represent the balances as of 9/26/2008. No adjustments have been made to the balances since the seizure awaiting final determination of the rights of ownership and the correct amounts. Per the Global Settlement Agreement, net tax refunds for WMI and its non-banking subsidiaries will be paid to WMI based on the agreed upon -percentages. Further, the Seventh Amended Plan provides that all intercompany balances will be extinguished as of the Effective Date.

9. **Other Assets**

   a. *Wind Energy Investment*

WMI Investment's assets include, among other things, an indirect membership interest (the "Wind Interest") in a portfolio holding company, JPMC Wind Investment Portfolio LLC ("JPMC Wind Investment"), which owns an Equity Interest in each of (i) Airtricity Sand Bluff WF Holdco, LLC, which owns the Airtricity-Sand Bluff wind farm, near Sterling City, Texas, (ii) UPC Hawaii Wind Partners II, LLC, which owns the UPC-Kaheawa Pastures wind farm, located in Maui, Hawaii, (iii) Whirlwind Energy, LLC, which owns the RES-Whirlwind wind farm, located in Floyd County, Texas, and (iv) Buffalo Gap Holdings 2, LLC, which owns the AES-Buffalo Gap 2 wind farm, located in Nolan and Taylor Counties, Texas (collectively, the "Projects"). The Debtors retained CP Energy Group, LLC,

a financial advisory and commercial asset management firm that focuses on the renewable energy sector, to assist with the marketing and sale of the Wind Interest.

The Debtors, with CP Energy's assistance, undertook an extensive marketing process for the Wind Interest. As a result of such process, the Debtors determined that an expression of interest submitted by Goldman, Sachs & Co. ("Goldman") was the highest and best expression of interest remitted as of that date. Accordingly, on September 4, 2009, the Debtors filed a motion with the Bankruptcy Court to allow them to enter into a letter of intent with Goldman, to grant Goldman exclusivity and pay for due diligence expenses, in connection with Goldman's potential purchase of the Wind Interest. Specifically, the Debtors requested authorization to reimburse Goldman for its reasonable out-of-pocket professional fees and expenses in an amount no to exceed $300,000, provided, that, WMI Investment would only be required to reimburse Goldman if the purchase price, as set forth in definitive agreements, as the same may have been adjusted in accordance therewith, was greater than $15 million. The Bankruptcy Court granted the motion on September 25, 2009, however, commercial terms were never reached. Prior to the Bankruptcy Court's ruling, on September 18, 2009, JPMC Wind Investment filed a reservation of rights with respect to its right of first refusal regarding any transfer of the Wind Interest.

Pursuant to the Global Settlement Agreement and a sale under section 363 of the Bankruptcy Code, WMI Investment will be deemed to have sold, transferred and assigned to JPMC, or its designee, any and all of WMI Investment's right, title and interest in and to the Wind Interest, free and clear of the liens, Claims, interests and encumbrances.

    **b.**  ***Strategic Capital Fund Investments***

As of the Petition Date, WMI held investments in its Strategic Capital Fund (the "SCF"), comprised of certain Equity Interests (the "Preferred & Common Stock") and WMI's interest, as a limited partner, in ten (10) venture capital funds (the "LP Investments" and, together with the Preferred & Common Stock, the "Investments"). The venture capital funds primarily invested in companies in the technology and financial technology industries. By order, dated January 5, 2009, the Bankruptcy Court approved procedures for the sale of the Investments. The Investments were sold for $12.3 million in cash and the purchasers assumed approximately $8.7 million in indebtedness. As additional consideration, WMI received a beneficial interest in an unsecured and subordinated promissory note of approximately $807,000, paid down in September 2011 to approximately $312,200, which currently earns interest at 8%, of which interest at 3.2% is paid in cash and interest at 4.8% is "payment-in-kind" through July 2012. Thereafter, such promissory note will earn interest at 12% through July 2013 and 14% until maturity in July 2014.

    **c.**  ***Visa Shares***

As of the Petition Date, WMI held 3.147 million Class B shares (the "Visa Shares") of Visa Inc. ("Visa") issued pursuant to Visa's initial public offering. The Visa Shares were set forth on the Schedules and/or WMI's books and records as of the Petition Date. Class B shares were derived from participating member's interests in Visa U.S.A. prior to the initial public offering. The value of these shares is contingent on the outcome of certain litigation, including that certain Interchange litigation discussed in Section V.B.6.i hereof. In the JPMC Adversary Proceeding, JPMC has asserted that it is entitled to the beneficial ownership of the Visa Shares, which the Debtors dispute.

Pursuant to the Global Settlement Agreement, and as set forth in Section V.B.3.b(iii) below, JPMC will pay WMI $25 million and WMI will be deemed to have transferred to JPMC all of WMI's right, title and interest in and to the Visa Shares. WMI will retain the right to all dividends that

pre-date the effective date of the Global Settlement Agreement. JPMC will also assume the liabilities and obligations of the Debtors arising from or relating to the Interchange Litigation, other than Claims, liabilities and obligations associated with directors' and officers' liability in connection with the Interchange Litigation. JPMC has also agreed to pay or fund the payment of the Assumed Liabilities portion of any proofs of Claim related to the Interchange Litigation, to the extent such portion becomes an Allowed Claim. Furthermore, pursuant to the Global Settlement Agreement, WMI will not, without obtaining JPMC's prior written consent, which consent shall not be unreasonably withheld, (a) commence or continue any Claim objection proceedings, or (b) enter into, or seek Bankruptcy Court approval of, any settlement agreement with Visa U.S.A.

B.   **The Debtors' Capital Structure And Significant Prepetition Indebtedness**

   1.   **Overview**

As of the Petition Date, WMI had, among other indebtedness, outstanding principal unsecured indebtedness totaling approximately $6.45 billion, with $4.1 billion attributable to nine issuances of senior unsecured notes (the "Senior Notes"), $1.6 billion attributable to three issuances of senior subordinated unsecured notes (the "Senior Subordinated Notes"), and $789 million attributable to junior subordinated unsecured debentures (the "Junior Subordinated Debentures") issued in connection with certain trust preferred equity redeemable securities (defined below as the "PIERS Preferred Securities"). As of the Petition Date, WMI also had preferred and common stock issued and outstanding, as described below.

   2.   **Senior Notes**

All nine issuances of the Senior Notes, described below, were issued pursuant to that certain Senior Debt Securities Indenture, dated as of August 10, 1999, as supplemented and amended by that certain First Supplemental Indenture and that certain Second Supplemental Indenture, dated as of August 1, 2002 and November 20, 2002, respectively (collectively, the "Senior Notes Indenture"). The Senior Notes rank equally with all other unsecured and unsubordinated indebtedness of WMI. Certain of the Senior Notes issued by WMI pursuant to the Senior Notes Indenture have a fixed rate of interest (the "Fixed Rate Notes"), while others have floating rates of interest (the "Floating Rate Notes").