**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

----------------------------------------------------------x
                                              :

| | | |
|---|---|---|
| *In re* | : | **Chapter 11** |
| | : | |
| **WASHINGTON MUTUAL, INC., <u>et al.</u>,**[1] | : | **Case No. 08-12229 (MFW)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
| | : | |

----------------------------------------------------------x

| | | |
|---|---|---|
| **Alice Griffin,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | |
| v. | : | **Civ. A. No. 19-2072 (RGA)** |
| | : | |
| **WMI Liquidating Trust,** | : | |
| | : | |
| **Respondent.** | : | |

_____x

**OBJECTION OF WMI LIQUIDATING TRUST TO**
**THE MOTION OF ALICE GRIFFIN FOR A LIMITED**
<u>**WITHDRAWAL OF THE REFERENCE TO THE BANKRUPTCY COURT**</u>

      WMI Liquidating Trust ("<u>WMILT</u>" or the "<u>Trust</u>"), as successor to Washington Mutual, Inc. ("<u>WMI</u>") and WMI Investment Corp. (collectively, the "<u>Debtors</u>"), files this objection (the "<u>Objection</u>") to the *Motion for Withdrawal (Limited) of Reference*, dated October 31, 2019 [D.I. 12677] (the "<u>Motion</u>"), filed by Alice Griffin ("<u>Griffin</u>"), and respectfully represents as follows:

<u>**Preliminary Statement**</u>

      1.      The Motion is yet another chapter in the never-ending battle that has been waged in the Debtors' chapter 11 cases by certain former equity interest holders of WMI. Specifically,

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The principal offices of WMILT, as defined herein, are located at 800 Fifth Avenue, Suite 4100, Seattle, Washington 98104. Subsequent to the Effective Date, as defined below, WMI Investment Corp. was dissolved in accordance with applicable law.

since the Debtors' cases were commenced on September 26, 2008, such holders have been

convinced that (1) the Federal Deposit Insurance Corporation improperly seized the assets of

Washington Mutual Bank, WMI's main subsidiary, and thereby deprived such holders of

significant value, (2) actions taken in the Debtors' chapter 11 cases were designed solely for the

benefit of creditors and to eliminate any hope of a recovery by equity holders (notwithstanding

the fact that such equity holders received significant value in the form of ownership of the

reorganized debtor) and (3) now, the Bankruptcy Court itself is charting a course destined to

eliminate any hope of a greater recovery by such equity holders.

2.      As evidenced by the application to close the Debtors' chapter 11 cases filed

contemporaneously herewith (the "Application"), a copy of which is annexed hereto as Exhibit

"A", and the complete record of the Debtors' chapter 11 cases, nothing could be farther from the

truth.  More importantly, as set forth in the transcript of the status conference held by Bankruptcy

Judge Walrath on September 26, 2019 (the "Transcript"), a copy of which is annexed hereto as

Exhibit "B", Griffin misrepresents what was stated by the Bankruptcy Court and what would

necessarily follow.  No one, not the Bankruptcy Court nor WMILT on behalf the Debtors, ever

stated that the Application and the closing of the Debtors' chapter 11 cases was a *fait accompli*.

Rather, the Debtors merely mentioned to the Bankruptcy Court an intention to file an application

to close the chapter 11 cases after eleven years of jurisdiction and administration, and the

Bankruptcy Court indicated its intention to schedule a hearing to consider any such application.

Transcript, at 12:15-13:2.

3.      Unfortunately, that is not what Griffin, who was not even in attendance, heard or has been told.[2]  As a result, the very premise of the Motion is a faulty foundation.  Griffin has filed the Motion in an effort to stop the administrative process and, in reality, seeks to enjoin the Bankruptcy Court, and even this Court, from acting upon the Application until there is a determination with respect to the Griffin Appeal, as defined below.  As this Court is well aware, and as discussed below, the withdrawal of the reference extended to the Bankruptcy Court, limited or otherwise, does not halt the administrative process or the duties of this Court.  On the contrary, the withdrawal of the reference only shifts the situs of events from the Bankruptcy Court to the District Court.  This Court would still be required to address the merits of the Application, just like the Bankruptcy Court would be required to do.

4.      Notably, if this Court or the Bankruptcy Court were to grant the relief requested in the Application, Griffin would not be prejudiced as she would be entitled to the entire panoply of her appellate rights.  First, there would be an entitlement to take an appeal from any order granting such relief.  Second, Griffin would have the opportunity to seek a stay pending appeal and to convince the respective courts of the entitlement to such an injunction.  Third, assuming no stay pending appeal were granted and the Debtors' chapter 11 cases were closed, in the unlikely chance of a reversal and remand in connection with the Griffin Appeal, Griffin would still have the right to seek to reopen the Debtors' chapter 11 cases in accordance with section 350(b) of the Bankruptcy Code.  Indeed, the proposed order filed in conjunction with the Application expressly notes and provides for the ongoing rights of Griffin in connection with the

---

[2] In the Motion, Griffin states that the "Motion arises from information received by Movant".  Motion ¶ 4. Accordingly, it is unclear whether Griffin participated telephonically, read a transcript or was told about the status conference.

Griffin Appeal.  Thus, all we have is a movant acting prematurely based upon incorrect information and the fear that the Bankruptcy Court will once again act appropriately.

5.        Moreover, Griffin asserting potential prejudice based upon her alleged difficulty in learning the mechanics of a particular court or the burdens in seeking to object to the Application or to reopen the Debtors' chapter 11 cases is not a basis for the relief requested in the Motion.[3]  Rather, it merely shows the depths to which Griffin shall strain to find an argument to halt the closure of the Debtors' chapter 11 cases.

6.        WMILT submits that the judicial process must move forward and not be inappropriately stymied.  Griffin has failed to establish the basis for withdrawal of the reference, limited or otherwise, and certainly cannot sustain the heavy burden associated with enjoining this Court or the Bankruptcy Court from consideration of the Application, the real relief being requested.  For all of these reasons, the Motion must be denied in its entirety.

### Background

7.        On September 26, 2008, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

8.        By order, dated February 23, 2012, the Bankruptcy Court confirmed the Debtors' *Seventh Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code*, as modified (the "Plan").[4]

---

[3] Griffin is a practicing attorney who has effectively navigated the complexities of the Bankruptcy Court and immersed herself in bankruptcy practice.

[4] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed thereto in the Plan. Additionally, as reflected in the Application, the Plan and the corresponding Global Settlement Agreement (a) resolved the competing interests of the Debtors and JPMC to the assets of the Debtors, as well as the concerns raised by certain holders of Preferred Equity Interests and Common Equity Interests with respect to the assets of the Debtors and the FDIC Receiver and (b) provided for the granting of releases to the Debtors and various third parties.

9.      On March 19, 2012, the Effective Date occurred and the transactions contemplated by the Plan were consummated, including, without limitation, the discharge of the Debtors from any and all Claims and initial distributions of over $6.5 billion being made to holders of Allowed Claims and initial distributions of 195 million shares of Reorganized WMI to holders of Preferred Equity Interests and Common Equity Interests.

10.      For the past seven plus years, WMILT has reconciled thousands of claims filed against the Debtors' chapter 11 estates and recovered and/or liquidated assets of the Debtors for the benefit of Creditors.  Specifically, WMILT has recovered millions of dollars of tax refunds and secured settlements associated with director and officer liabilities.  Additionally, the Trust's litigation subcommittee investigated potential claims against various third parties, including WMI's auditor, investment bankers and other professionals, pursued claims in connection with directors' and officers' duties and obligations and, thereafter, determined that WMILT maintained no additional claims and causes of action worth pursuit.  On the liability side, WMILT zealously pursued the reduction of claims in an effort to generate the greatest recovery for Creditors holding Allowed Claims.  Several of such reconciliation efforts involved protracted litigation, including one series of litigation that lasted over six years and traveled among three separate federal district courts, including this Court.  But, such efforts have been extremely successful.  Since the Effective Date, the Debtors and WMILT have already distributed over $983 million to holders of Allowed Claims, (thereby paying general unsecured claims in full) and with all claims now being reconciled, WMILT currently anticipates a final distribution (to holders of Allowed Claims within Class 18 of the Plan, the lowest rung of Creditor Claims on the Bankruptcy Court-approved distribution waterfall) in the amount of approximately $35-40 million, a recovery to that class of almost eighty-five percent (85%).  Additionally, since the

Effective Date, approximately four million additional shares of Reorganized WMI have been distributed to holders of Preferred Equity Interests and Common Equity Interests.

**The Griffin Appeal**

11.     On March 22, 2019, Griffin filed that certain First Omnibus Objection (Substantive) of Alice Griffin, Class 19 Interest Holder, to Claims (Nos. 3935 and 4045) Allowed Pursuant to a Stipulation Dated March 28, 2013 Between WMI Liquidating Trust and Morgan Stanley & Co., Incorporated, Credit Suisse Securities (USA) LLC, and Goldman, Sachs & Co., on Behalf of Themselves and Certain Underwriters [Dkt. No. 12595] (the "Griffin Objection").  Therein, Griffin asserted, among other things, that (a) the terms of the underlying stipulation (the "Underwriter Stipulation") required Bankruptcy Court approval and such approval was never sought or obtained, (b) WMILT failed to disclose the existence of such stipulation in violation of applicable securities laws, (c) the Plan did not permit the allowance and treatment of Claims in the manner contained in the stipulation, and (d) if any Claim were allowed, distributions with respect thereto were more appropriately allocated to Class 22 of the Plan (Common Equity Interests) and not Class 19 (Preferred Equity Interests), the class containing Griffin's interests.  WMILT responded to the Griffin Objection on April 12, 2019 (the "WMILT Response") [Dkt. No. 12604], refuting each of the contentions raised in the Griffin Objection, including illustrating the detailed disclosure of the stipulation in multiple public filings and in accordance with applicable securities laws and the benefits delivered by holders of Class 19 Preferred Equity Interests.  Griffin filed a reply on April 17, 2019 [Dkt. No. 12609], (the "Griffin Reply").

12.     The Bankruptcy Court held a hearing to consider the Griffin Objection on April 22, 2019 (the "Griffin Hearing"), and, based upon the findings made on the record of the Griffin Hearing, by order dated April 24, 2019, the Bankruptcy Court denied the Griffin Objection in its

entirety [Dkt. No. 12619] (the "Griffin Order").  Specifically, at the Griffin Hearing, the

Bankruptcy Court determined that (a) there had been full and complete disclosure of the

Underlying Stipulation upon entry thereof, (b) Griffin was barred from challenging the

Underlying Stipulation based upon the doctrine of laches and (c) most importantly, if the Trust

had requested Bankruptcy Court approval of the Underlying Stipulation, the Bankruptcy Court

believed that the compromise and settlement set forth therein was in the best interests of the

Debtors, their Creditors and, especially, holders of Preferred Equity Interests, as it removed a

senior $24 million claim which would have had to be paid in full prior to distributions being

made to holders of Preferred Equity Interests, and it would have approved any such request.  Tr.

of Griffin Hearing, at 41:9-45:8.

13.     Pursuant to a notice of appeal, dated April 29, 2019 [Dkt. No. 12624] (the

"Griffin Appeal"), Griffin has appealed from the Griffin Order.  The merits of such appeal have

been fully briefed to this Court and the matter is *sub judice*.

**The September Status Conference**

14.     On September 26, 2019, the Bankruptcy Court conducted a conference to

understand the state of claims reconciliation and, if necessary, to develop a discovery and trial

schedule with respect to the lone remaining claim.  With the Bankruptcy Court's assistance, such

claim was resolved and, subsequently, a stipulation approving such resolution was approved by

the Bankruptcy Court, thereby permitting the release of additional shares of Reorganized WMI

for the benefit of holders of Preferred and Common Equity Interests.

15.     At that conference, and as per the practice during the Debtors' chapter 11 cases,

WMILT provided an update regarding the timing of distributions and the anticipated closure of

the chapter 11 cases.  WMILT informed the Bankruptcy Court that, with the resolution of all

Claims, WMILT was prepared to file an application pursuant to section 350(a) of the Bankruptcy

7

Code and to make a final distribution of Cash to Creditors within Class 18 of the Plan and release

all remaining shares of Reorganized WMI from the Disputed Equity Escrow.  WMILT stated

that it anticipated submitting such application by October 31, 2019 and hoped to close the

Debtors' chapter 11 cases by December 31, 2019.  Thereupon, the Bankruptcy Court indicated

that, if filed, it would schedule a hearing to consider any such application.  <u>Transcript</u>, at 13.  At

no time did the Bankruptcy Court state its position with respect to the merits of such a filing.

**<u>The Griffin Motion</u>**

16.    On October 31, 2019, Griffin filed the Motion seeking to withdraw the reference

from the Bankruptcy Court in an effort to preclude the Bankruptcy Court, and even this Court,

from considering the Application and entering an order granting the relief requested therein prior

to this Court's ruling on the Griffin Appeal.  Griffin contends that the Bankruptcy Court has

already indicated an inclination to grant the Application, even though the Bankruptcy Court only

mentioned that it would schedule a hearing, <u>see</u> <u>Transcript</u>, at 12:15-13:2, and that, if (a) the

Application were granted and the chapter 11 cases closed and (b) Griffin were successful with

respect to the Griffin Appeal, Griffin would be required to become familiar with new aspects of

law and courts and that the time and expense of doing so would be unduly burdensome for her.

Griffin further indicates that the Griffin Appeal related to alleged violations of the Plan, breaches

of fiduciary duty and *ultra vires* acts and, again, if the Griffin Appeal were successful, Griffin

contends that the Bankruptcy Court would be required to address all such claims.  Griffin even

seeks payment of fees for allegedly bringing value to the matter—to whom it is unclear.  As this

Court is well aware based upon the briefing submitted with respect to the Griffin Appeal, none of

these issues are the subject of the Griffin Appeal or any matter pending before the Bankruptcy

Court.  Such appellate issues are extremely limited in scope and pertain only to the Bankruptcy

Court's determination regarding the Griffin Objection.

**THE MOTION MUST BE DENIED**
**AS IT FAILS TO COMPLY WITH**
**EVERY APPLICABLE STANDARD**

17.     A district court has the authority to provide that any or all cases under title 11 and

any or all proceedings arising under title 11 or arising in or related to a case under title 11 may be

referred to the bankruptcy courts within its district.  In fact, this Court has done that pursuant to

its Amended Standing Order of Reference, dated February 29, 2012, providing for the automatic

reference to bankruptcy judges of title 11 cases filed in the District of Delaware.

18.     Section 157(b) of title 28 provides that bankruptcy judges "may hear and

determine all cases under title 11 and all core proceedings arising under title 11, or arising in a

case under title 11, under subsection (a) of this section, and may enter appropriate orders and

judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(d).  The non-

exhaustive list of "core proceedings" set forth in subsection (a) commences with "matters

concerning the administration of the estate."  Here, similar to determinations regarding the

allowance of claims in a chapter 11 case, an application to consider closure of a chapter 11 case

is the grist of what a bankruptcy court is empowered to do.

**A.  The Motion Seeks an Injunction, Not Withdrawal of the Reference**

19.     The Motion does not seek what it states to do in its caption.  Specifically, it does

not actually seek a limited withdrawal of the reference from the Bankruptcy Court.  If that were

actually the case, and if this Court granted the Motion, this Court would be required to consider

and rule upon the relief requested in the Application.  Instead, it seeks to enjoin the Bankruptcy

Court and this Court from consideration and determination of the Application until this Court

rules upon the Griffin Appeal.  Not stopping there, Griffin then attempts to obtain prematurely a

stay pending appeal from this Court with respect to the effectiveness of the Application which

has only been filed and with respect to which no hearing has been held nor a determination been

rendered by the Bankruptcy Court.  Likewise, even if that were the case, no appeal has been

taken therefrom and no stay pending appeal has been requested from, or denied by, the

Bankruptcy Court.  Consequently, there is a disconnect between the request for relief by Griffin

and the standard for withdrawal of reference because Griffin is trying to apply the standard for

withdrawing the reference to a motion seeking a stay of an order that has not been entered.  The

Motion is not only legally insufficient, it is fundamentally and foundationally flawed.

20.    Likewise, Griffin seems to have confused the "core v. non-core" analysis.  Griffin

seems to be stating that, because the Griffin Appeal is a core issue to the chapter 11 cases, the

motion for withdrawal of the reference should be granted.  But, the argument that a proceeding is

*not* core is the rationale for withdrawal of the reference. *See*, *e.g.*, *In re Orion Pictures Corp.*, 4

F.3d 1095, 1101 (2d Cir. 1993).  A core proceeding includes, among other things, "matters

concerning the administration of the estate" and other proceedings affecting the liquidation of the

assets of the estate or the adjustment of the debtor-creditor ... relationship." *Billing v. Ravin,

Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1245 (3d Cir. 1994).  As mentioned above, nothing can

be more "core" than the administrative task of determining whether all claims have been

reconciled and all matters necessary to conclude a chapter 11 case have been accomplished.

21.    Additionally, Griffin cites the Griffin Appeal as being a "core" proceeding, but

then, contrary to Griffin's own premise, takes a quantum leap to assert that this is a reason to

withdraw the reference. ¶¶ 12-14.  But, the pendency of the Griffin Appeal is separate from an

effort to close the chapter 11 cases and should not be linked to any such analysis.

**B.  Griffin Fails to Satisfy the Requirements for Withdrawal of the Reference**

22.    This Court has stated clearly what standards must be satisfied in order to

withdraw the automatic reference to the bankruptcy court: (i) the promotion of uniformity in

bankruptcy administration; (ii) the reduction of forum shopping and confusion; (iii) the

10

economical use of the parties' resources; (iv) expediting the bankruptcy process; and (v) the

timing of the motion for withdrawal. *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990).

Application of these factors demonstrates that the relief requested in the Motion must be denied.

> (i)    *Preventing Consideration of the Application Would Interfere with the Uniformity in Bankruptcy Administration*

23.     In the Motion, Griffin acknowledges that appeals are "well within the ecology of

the bankruptcy system," see Motion ¶ 6, but then, somehow, discusses how consideration of the

Griffin Appeal, rather than the Application, will lead to multiple actions against WMILT, the

Trust Advisory Board and their professionals for a variety of hypothetical causes of action.

Again, none of this relates to the Application or the uniformity in bankruptcy administration.  On

the contrary, consideration of an application pursuant to section 350(a) of the Bankruptcy Code

is something that the Bankruptcy Court routinely does and something that this Court never

addresses.  To do so now would be breaking the mold and tossing "uniformity" to the side.

Additionally, to be uniform, and if indeed appeals are "within the ecology of the bankruptcy

system", if the Application were granted, Griffin would be within her environment, and thus

acting in uniformity, in availing herself of appellate relief and taking an appeal therefrom and,

perhaps, seeking a stay pending appeal in connection therewith.

> (ii)    *Griffin is Forum Shopping through the Motion*

24.     As mentioned above, the Trust has generated significant recoveries for Creditors

through the efficient reconciliation of claims and steadfastly following the Bankruptcy Rules, the

Local Rules and applicable law.  The same is true with the Application.  WMILT seeks to obtain

a determination from the Bankruptcy Court, the forum to which an application to close a chapter

11 case must be addressed.  Conversely, Griffin seeks to divest the appropriate forum of

jurisdiction and place the Application before this Court for consideration at some point

sufficiently down the road.  In support, Griffin references the possible need to avoid confusion surrounding courts outside the federal system.  As stated herein throughout, there is no need for any outside court and the Bankruptcy Court is the only appropriate forum to initiate and determine the Application.  Perhaps, and consistent with Griffin's misapprehension of the Bankruptcy Court's comments, Griffin believes this Court would be more receptive to any objection to the Application that Griffin would posit.  Of course, that would be the height of forum shopping.

       *(iii)    The Debtors' Limited Resources Should be Focused on Creditors' Recoveries*

    *25.*     The Application has been filed in the court where it is required to be filed and the only court that can realistically assess it on the merits – the Bankruptcy Court.  It knows the facts associated with the Debtors' chapter 11 cases and has been intimately involved in the administration of such cases for over eleven years.  Considering the Application elsewhere will only cause the needless expenditure of resources which would be better allocated to Creditors' recoveries.  Griffin's statements regarding the burden on her in connection with reopening the cases and, for some reason, learning the machinations of other courts are unavailing.

       *(iv)    Expediting the Bankruptcy Process*

    26.     Consideration of the Application by the Bankruptcy Court is the most expeditious way to proceed.  It allows for a prompt determination, one way or another, by the tribunal best suited to do so and in a timeframe which may reduce the incurrence of needless expenses caused by incessant delay.  Importantly though, it permits all parties to pursue whatever appellate rights are available in the most expeditious manner.

    27.     Conversely, Griffin fails to provide any rationale for how barring consideration of the Application will expedite the bankruptcy process.  On the contrary, such delay would be inefficient, a waste of resources, and an ineffective means of administering the Debtors' chapter

11 cases.  As discussed herein, there is no prejudice to Griffin if the Bankruptcy Court were to proceed because, in the event Griffin successfully overturned the Griffin Order, the chapter 11 cases are able to be reopened.  See, e.g., *In re Nuverra Environmental Solutions, Inc.*, Case No. 17-10949 (Bankr. D. Del. June 22, 2018) (motion for entry of final decree was granted regardless of pending appeal); *In re Millennium Lab Holdings*, 543 B.R. 703 (Bankr. D. Del. 2016) (same). Thus, there is no prejudice to Griffin in denying the Motion.  There is only prejudice to Creditors awaiting distributions and finality caused by Griffin's delay tactics.

> (v)    *The Timing of the Motion*

28.    If the Motion were truly requesting a change of locale, one could suggest that its filing were timely.  But, as noted above, the relief requested is something else entirely.  As such, the timing is actually extremely belated as it may be seeking a stay pending appeal of the Griffin Appeal or it is premature for it may be seeking an injunction of an order regarding the Application that is yet to be entered.  In either event, the Motion would be untimely.

29.    For all of the foregoing reasons, WMILT submits that the Motion is devoid of merit and should be denied in its entirety.

## **RESERVATION**

30.    WMILT reserves its rights to supplement this objection in the event that the Court interprets the Motion and the relief requested therein to be seeking an injunction.

WHEREFORE WMILT requests that the Court deny the Motion in its entirety and grant WMILT such other and further relief as is just.

Dated: November 14, 2019
      Wilmington, Delaware

*/s/ Marcos A. Ramos*
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
Cory D. Kandestin (No. 5025)
Christopher DeLillo (No. 6355)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsímile:  (302) 651-7701

- and -

PROSKAUER ROSE LLP
Brian S. Rosen
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsímile:  (212) 969-2900

*Attorneys to the WMI Liquidating Trus*t