## EXHIBIT A

The Application

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
----------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11
                                          :
WASHINGTON MUTUAL, INC., et al.,¹         :        Case No. 08-12229 (MFW)
                                          :
                Debtors.                  :        (Jointly Administered)
                                          :
                                          :        Hearing Date: December 19, 2019 at 2:00 p.m. (ET)
----------------------------------------------------------------x   Obj. Deadline: December 2, 2019 at 4:00 p.m. (ET)
```

## NOTICE OF APPLICATION AND HEARING

PLEASE TAKE NOTICE that, on November 14, 2019, WMI Liquidating Trust

("WMILT" or the "Trust"), as successor in interest to Washington Mutual, Inc. ("WMI") and

WMI Investment Corp., formerly debtors and debtors in possession (collectively, the "Debtors"),

filed the *Application of WMI Liquidating Trust for an Order, Pursuant to section 350 of the*

*Bankruptcy Code Bankruptcy Rule 3022 and Local Rule 3022-1, Authorizing, Among Other*

*Things, (A) Closing the Chapter 11 Cases of Washington Mutual, Inc, and WMI Investment*

*Corp. and (B) Authorizing the Wind-up and Dissolution of the Liquidating Trust* (the

"Application") with the United States Bankruptcy Court for the District of Delaware (the

"Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE that any objections or responses to the

Application must be filed in writing with the Clerk of the Bankruptcy Court, 824 North Market

Street, 3rd Floor, Wilmington, Delaware 19801 on or before **December 2, 2019 at 4:00 p.m.**

**(prevailing Eastern Time)**.

---

¹ The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The principal offices of WMILT, as defined herein, are located at 800 Fifth Avenue, Suite 4100, Seattle, Washington 98104.

Docket No. 12686
Filed: 11/14/19

PLEASE TAKE FURTHER NOTICE that, in the event that one or more objections or responses to the Application are timely filed and not otherwise resolved, the Application will be considered at a hearing before The Honorable Mary F. Walrath at the Bankruptcy Court, 824 North Market Street, 5th Floor, Courtroom 4, Wilmington, Delaware 19801, on **December 19, 2019 at 2:00 p.m. (ET).**

**PLEASE TAKE FURTHER NOTICE THAT IF NO OBJECTIONS OR RESPONSES TO THE APPLICATION ARE TIMELY FILED IN ACCORDANCE WITH THIS NOTICE, THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED IN THE APPLICATION WITHOUT FURTHER NOTICE OR HEARING.**

Dated: November 14, 2018
      Wilmington, Delaware

*/s/ Christopher M. De Lillo*
Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
Cory D. Kandestin (No. 5025)
Christopher M. De Lillo (No. 6355)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile:  (302) 651-7701

– and –

Brian S. Rosen
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile:  (212) 969-2900

*Attorneys for the WMI Liquidating Trust*

2

# **EXHIBIT A**

DISCLOSURE STATEMENT EXCERPT

accordance with Section 21.1(a) of the Seventh Amended Plan, Wilmer Cutler Pickering Hale & Dorr LLP ("Wilmer Hale"), Pachulski Stang Ziehl & Jones LLP ("Pachulski"), and Boies, Schiller & Flexner LLP ("Boies Schiller" and, collectively with Fried Frank, Blank Rome, White & Case, Kasowitz, Zolfo, Wilmer Hale, and Pachulski, the "Section 41.18 Professionals"), to the extent the clients with respect to the Section 41.18 Professionals seek reimbursement for the payment of fees and expenses incurred, shall file with the Bankruptcy Court an application (for purposes of reviewing the reasonableness of the amounts requested therein), together with detailed invoices annexed thereto, requesting payment for *reasonable* fees and expenses incurred during the period from the Petition Date through and including the Effective Date, in connection with the Chapter 11 Cases, the Global Settlement Agreement, the Seventh Amended Plan, or the transactions contemplated therein (including, without limitation, investigating, negotiating, documenting, and completing such transactions and enforcing, attempting to enforce, and preserving any right or remedy contemplated under the Global Settlement Agreement and in the Chapter 11 Cases), and that, within ten (10) Business Days of the entry of a Final Order by the Bankruptcy Court approving the payment thereof, in whole or in part, the Disbursing Agent shall pay such fees and expenses so approved. The Debtors have been informed by the Section 41.18 Professionals that the Section 41.18 Professionals project that they will request an aggregate total of at least[33] $37.3 million on account of fees for services rendered and expenses incurred through the date hereof in connection with the Chapter 11 Cases, the Global Settlement Agreement, the Seventh Amended Plan, or the transactions contemplated therein. As summarized in Section VI.B.18.a below, up to $10 million of Cash distributed on account of the BB Liquidating Trust Interests will be used to satisfy the fees and expenses of Wilmer Hale, Pachulski, and Boies Schiller (which currently account for approximately $7.9 of the total amount the Section 41.18 Professionals project they will request).

# IV.
## OVERVIEW OF THE DEBTORS' OPERATIONS

### A.    The Debtors' Corporate History and Past and Current Organizational Structure and Assets

#### 1.    Overview

WMI is a holding company incorporated in the State of Washington and headquartered at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.[34] WMI is the direct parent of WMI Investment (discussed below).

Prior to the Petition Date, WMI was a multiple savings and loan holding company that owned WMB and such bank's subsidiaries, including FSB. WMB primarily provided banking services to consumers and small businesses in major U.S. markets. WMI was the largest savings and loan holding company and WMB, together with its subsidiaries, was the seventh largest U.S.-based bank. As of the Petition Date, WMI also had several non-debtor subsidiaries. Like all savings and loan holding companies, prior to the Petition Date, WMI was subject to regulation by the OTS. WMB and FSB, in turn, like all depository institutions with federal thrift charters, were subject to regulation and examination by the OTS. In addition, WMI's banking and non-banking subsidiaries were overseen by various federal and state authorities, including the FDIC.

---

[33] Some of the Section 41.18 Professionals have not provided current accountings of fees and expenses.

[34] The Debtors anticipate relocating to 1201 Third Avenue, Suite 3000, Seattle, Washington 98101 by the end of January 2012.

On September 25, 2008, the OTS, by order number 2008-36, closed WMB, appointed the FDIC Receiver as receiver for WMB and advised that the FDIC Receiver was immediately taking possession of WMB's assets. Immediately after its appointment as receiver, the FDIC sold substantially all the assets of WMB, including the stock of FSB, to JPMC pursuant to the Purchase and Assumption Agreement in exchange for payment of $1.88 billion and the assumption of all of WMB's deposit liabilities, including those deposit liabilities owed to the Debtors. Shortly thereafter, JPMC assumed all of FSB's deposit liabilities by merging FSB with its own banking operations.

Prior to the Receivership, WMI's equity securities were registered with the United States Securities and Exchange Commission (the "SEC") and were traded on the New York Stock Exchange (NYSE) under the symbol "WM." Accordingly, WMI was subject to the informational disclosure requirements of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and filed annual, quarterly and current reports and other information with the SEC. WMI has adopted so-called "modified Exchange Act reporting" under the SEC Staff's Legal Bulletin No. 2 and, accordingly, no longer files Form 10-Q and 10-K reports. Instead, WMI files its monthly operating reports (the "MORs") with the Bankruptcy Court and furnishes the MORs to the SEC under cover of Form 8-K. WMI also files 8-K reports as necessary to report "line items" and material developments concerning WMI and WMI's chapter 11 case.

**2.    List of WMI's Current Directors**

As set forth in WMI's public filings with the SEC, available at www.sec.gov, WMI's current directors are Stephen E. Frank, Alan Fishman, Margaret Osmer McQuade, Phillip Matthews, Regina T. Montoya, Michael K. Murphy, William G. Reed, Jr., Orin Smith, and James H. Stever.

**3.    WMI's Consolidated Corporate Organizational Structure**

On the Petition Date, in addition to WMB,[35] WMI owned, directly and indirectly, thirty-three (33) subsidiaries (the "Non-Banking Subsidiaries"). For the avoidance of doubt, Second and Union LLC is not now and has never been an asset of the Debtors' estates. (See Debtor's Response to the Letter of Joe Schorp Requesting Information Regarding Second and Union LLC [D.I. 6811].) A complete list of the Non-Banking Subsidiaries, as well as information regarding their organizational relationships, financial information and a summary of their respective operations, is set forth below. During the pendency of the Chapter 11 Cases, in addition to monetizing assets at such Non-Banking Subsidiaries, the Debtors have undertaken three corporate reorganizations in order to consolidate WMI's corporate structure. Upon completion of each of these reorganizations, available cash has been either distributed to WMI in accordance with applicable law or paid to WMI in satisfaction of an intercompany obligation. After giving effect to these reorganizations, WMI owned (and continues to own) seven directly-owned Non-Banking Subsidiaries. Below are visual representations of WMI's corporate organizational chart (i) prior to the FDIC Receiver's seizure of all of WMB's assets on September 25, 2008 and JPMC's purchase, pursuant to the Purchase and Assumption Agreement, of substantially all of such assets (including FSB and all other subsidiaries owned, directly and indirectly, by WMB), (ii) as of the Petition Date, and (iii) as of the date of the filing of this Disclosure Statement.

---

[35] Although, as of the date hereof, WMB remains a subsidiary of WMI, the FDIC seized all of WMB's assets on September 25, 2008, including all of WMB's subsidiaries, and sold substantially all of WMB's assets to JPMC pursuant to the Purchase and Assumption Agreement. Accordingly, none of WMB's subsidiaries are considered subsidiaries of WMI.

      *a.*      **WMI and WMB Combined Organizational Chart Prior to FDIC Seizure**[36]

      The organizational chart on the following page reflects the combined WMI and WMB structure prior to the FDIC seizure and JPMC's acquisition of WMB's assets.

**[AREA INTENTIONALLY LEFT BLANK]**

---

[36] The Non-Banking Subsidiaries are denoted in blue; WMB's direct and indirect subsidiaries are denoted in green; Subsidiaries are indented to the right underneath the parent, colored arrows to the left of a company box indicate a multiple parent relationship and colored arrows to the right of a company box indicate a subsidiary interest in another subsidiary.



WaMu
Washington Mutual, Inc.
September 24, 2008
Washington Mutual, Inc. CONTINUED
Ahmanson Developments, Inc.
Ahmanson Obligation Company*
Great Western Service Corporation Two
Washington Mutual Finance Group, LLC
H.F. Ahmanson & Company
Marion Insurance Company, Inc.
Providian Services Corporation
Providian Services LLC
Robena LLC
Robena Feedstock LLC
WaMu 1031 Exchange
WM Citation Holdings, LLC
WM Funds Disbursements, Inc.
PTSP
WMI Investments Corp.
WMI Rainier LLC
WM Mortgage Reinsurance Company, Inc.
Capital Trusts
Washington Mutual, Inc.
Washington Mutual Capital Trust 2001
Washington Mutual Bank
CCB Capital Trust IV
CCB Capital Trust V
CCB Capital Trust VI
CCB Capital Trust VII
CCB Capital Trust VIII
CCB Capital Trust IX
HFC Capital Trust I
Washington Mutual Bank
HSLC
CLP
RIC
California Reconveyance Company
Dime Capital Partners, Inc.
Dime Mortgage of New Jersey, Inc.
HCP Properties, Inc.
Long Beach Securities Corp.
Neah Bay BPS Holdco, Inc.
Mats Mats Bay BPS, Ltd.
Clallam Bay BPS, S.R.L.
WMFD
Providian Technology Services Private Limited ("PTSP")
Nickel Purchasing Company, Inc.
Norstar Mortgage Corp.
Pike Street Holdings, Inc.
Washington Mutual Bank fsb
WM Winslow Funding LLC
Washington Mutual Trade Service Limited
Providian Bancorp Services
Seafair Securities Holding Corp.
Second and Union LLC
Washington Mutual – Seattle Art Museum Project Owners Association*
Washington Mutual Bank CONTINUED
Seneca Funding (UK) Limited
Sivage Financial Services LLC*
Stockton Plaza, Incorporated
WMRPD
PCA
WaMu Asset Acceptance Corp.
WaMu Capital Corp.
Washington Mutual Asset Securities Corp.
Washington Mutual Brokerage Holdings, Inc.
WaMu Investments, Inc.
WMFS Insurance Services, Inc.
Washington Mutual Mortgage Securities Corp.
Western Service Co.
WM Asset Holdings Corp.
WM Enterprises & Holdings, Inc.
WM Marion Holdings, LLC
Cranbrook Real Estate Investment Trust
Washington Mutual Preferred Funding LLC*
WM Specialty Mortgage LLC
WMB Baker LLC
Washington Mutual Bank CONTINUED
FA Out-of-State Holdings, Inc.
RIC
110 East 42nd Operating Company, Inc.
620-622 Pelhamdale Avenue Owners Corporation
Accord Realty Management Corporation
Ahmanson Land Company
Ahmanson Marketing, Inc.
RIC
Bryant Financial Corporation
CRP Properties, Inc.
HMP Properties, Inc.
ECP Properties, Inc.
NAMCO Securities Corp.
The E-F Battery Accord Corporation
F.C. LTD.
FA California Aircraft Holding Corp.
PCA
Great Western FS Corporation, Inc.
Harmony Agency, Inc.
HCP Properties Holdings, Inc.
FA Out-of-State Holdings, Inc. CONTINUED
Irving Corporate Center, Inc.
PCA
Ladue Service Corporation
Mid Country Inc.
Murphey Favre Properties, Inc.
North Properties, Inc.
Plainview Inn, Inc.
Savings of America, Inc.
CLP
RIC
Washington Mutual Community Development, Inc.
Pacoima Investment Fund I, LLC*
HHP Investment LLC
WaMu Insurance Services, Inc.
Home Crest Insurance Services, Inc.
WMB St. Helens LLC
WMBFA Insurance Agency, Inc.
Yellowstone Venture, Inc.
ACD 2
ACD 3
PCAAH
RA
AR2
Flower Street Corporation ("FSC")
ACD 4
ARD
Ahmanson GGC LLC
WMAH
ARD
Riverpoint Associates
HSLC
SBA
FSC
Ahmanson Residential Development
AGGC
HSLP
RA
Ahmanson Residential 2
SBA
SBC
FSC
PCAAH
AR2
Sutter Bay Associates LLC
AGGC
HSLP
WM Aircraft Holdings LLC ("WMAH")
SoundBay Leasing LLC*
WMGW Delaware Holdings LLC
RA
AR2
Sutter Bay Corporation ("SBC")
Other Multi-Owner Companies:
WMB
SAI
Commercial Loan Partners L.P. ("CLP")
FAOSH
WMB
SAI
AMI
Rivergrade Investment Corp.* ("RIC")
WMI
RA
WMB
H.S. Loan Corporation
WMI
ARD
HS Loan Partners LLC
WMAH
FACAH
ICCI
SPI
Pacific Centre Associates LLC ("PCA")
SPI
WMRP Delaware Holdings LLC ("WMRPD")
WMICC Delaware Holdings LLC
WMI
ACD3
AR2
PCA Asset Holdings LLC ("PCAAH")
WMHFA Delaware Holdings LLC
Banks have a black border
Banking institutions and their subsidiaries (defined as majority owned and wholly-owned subsidiaries) are green.
Companies that are not banking institutions or their subsidiaries are blue.
* Has outside and/or preferred stock owners.
Multi-Owner Color Key
ACD3 — ACD 3
AGGC — Ahmanson GGC LLC
AMI — Ahmanson Marketing, Inc.
ARD — Ahmanson Residential Development
AR2 — Ahmanson Residential 2
FACAH — FA California Aircraft Holding Corp.
FAOSH — FA Out-of-State Holdings, Inc.
HSLP — HS Loan Partners LLC
ICCI — Irvine Corporate Center, Inc.
RA — Riverpoint Associates
SAI — Savings of America, Inc.
SPI — Stockton Plaza, Incorporated
WMB — Washington Mutual Bank
WMI — Washington Mutual, Inc.
WMFD — WM Funds Disbursements, Inc.
Notes: Subsidiaries are indented to the right underneath the parent.
Colored arrows to the left of a company box indicate a multiple parent relationship.
Colored arrows to the right of a company box indicate a subsidiary interest in another subsidiary.
43665864_1

### b.  WMI Organizational Chart as of Petition Date[37]

WMB's banking operations and its subsidiaries (including FSB) were seized by the FDIC Receiver and then acquired by JPMC on September 25, 2008 pursuant to the Purchase and Assumption Agreement.  The organizational chart below reflects WMI and the 33 Non-Banking Subsidiaries as of the Petition Date, September 26, 2008.  It should be noted that the Washington Mutual Capital Trust 2001 is a trust related to the PIERS Units (defined below), further described in Section IV.B.5 of this Disclosure Statement, and is not considered one of the 33 Non-Banking Subsidiaries.

**[AREA INTENTIONALLY LEFT BLANK]**

---

[37] Subsidiaries are indented to the right underneath the parent, colored arrows to the left of a company box indicate a multiple parent relationship, and colored arrows to the right of a company box indicate a subsidiary interest in another subsidiary.



### c.  WMI Current Organizational Chart[38]

The organizational chart below reflects the remaining seven Non-Banking Subsidiaries, after the three corporate reorganizations, owned by WMI as of the date of the filing of this Disclosure Statement.



### 4.  Analysis of Subsidiary Equity.

The following chart lists the Non-Banking Subsidiaries owned by WMI as of the Petition Date, a summary in the change in equity value at those subsidiaries from the Petition Date, September 26, 2008, through to, and including, October 31, 2011, and WMI's estimate of the current market value of

---

[38] Colored arrows to the left of a company box indicate a multiple parent relationship and colored arrows to the right of a company box indicate a subsidiary interest in another subsidiary.

assets remaining in each remaining Non-Banking Subsidiary.[39]  This summary is further supplemented by (i) a reconciliation of the change in equity, (ii) background information for all Non-Banking Subsidiaries, and (iii) balance sheets for Non-Banking Subsidiaries as of October 31, 2011, each of which are set forth in the following sections.  It should be noted that the financial information referenced in (iii) is not included for WMI Investment or WMMRC, as adequate information on this has been previously provided elsewhere in this Disclosure Statement or in the Debtors' MORs.

**[AREA INTENTIONALLY LEFT BLANK]**

---

[39] Of WMI's seven remaining Non-Banking Subsidiaries, WMMRC, which is currently operating on a run-off basis, WMMRC is the only Non-Banking Subsidiary with ongoing operations.  Refer to Articles IV.A.6, VII, and VIII of this Disclosure Statement for additional information regarding WMMRC.  After the Effective Date, WMMRC will be Reorganized WMI's sole operating entity.  Pursuant to the September Opinion, the Bankruptcy Court determined, based upon the evidence presented at the July Confirmation Hearing, that the enterprise value of Reorganized WMI is $210 million.  For each of the Non-Banking Subsidiaries other than WMMRC, the market value stated is a sum of, where applicable, (i) cash, (ii) notes receivable being paid by JPMC, carried at current market value, and (iii) in some cases, certain other *de minimis* assets and liabilities, less certain disbursements for expenses related to mergers with other Non-Banking Subsidiaries or dissolution, as applicable. The principal difference between the book value and the stated market value results from the fact that intercompany balances do not represent additional value to the Debtors' estates.

| Subsidiary | WMI Owned Equity Value 9/26/2008 | Equity Owned by WMI sub(s) 9/26/2008 | Total Equity 9/26/2008 | Change in WMI Owned Equity Value | WMI Owned Equity Value 10/31/2011 | Equity Owned by WMI sub 10/31/2011 | Total Equity 10/31/2011 | Current Market Value |
|---|---|---|---|---|---|---|---|---|
| *Direct Ownership by WMI* | | | | | | | | |
| 1 WMI Investment Corp | $ 977,488,380 | $ - | $ 977,488,380 | $ (63,886,758) | $ 913,601,622 | | $ 913,601,622 | $ 276,280,776 |
| 2 WMMRC | 307,514,652 | - | 307,514,652 | (81,703,877) | 225,810,775 | | 225,810,775 | 210,000,000 (G) |
| 3 WaMu 1031 Exchange | 5,772,391 | - | 5,772,391 | (4,262,995) | 1,509,396 | | 1,509,396 | 1,250,000 |
| 4 WM Citation Holdings LLC | 1,517,346 | - | 1,517,346 | 224,533,259 | 226,050,605 | | 226,050,605 | 100,128,104 |
| 5 Ahmanson Obligation Company | 25,078,216 | - | 25,078,216 | (19,412,316) | 5,665,899 | | 5,665,899 | 8,966,631 |
| 6 WMI Rainier LLC | 2,251,450 | - | 2,251,450 | 5,469,263 | 7,720,713 | | 7,720,713 | 9,101 |
| 7 HS Loan Corp | 59,475,241 | 23,639,103 | 83,114,344 | 732,152 | 60,207,393 | 23,930,026 | 84,137,419 | 84,070,169 |
| 8 Marion Insurance | 66,661,014 | - | 66,661,014 | (66,661,014) | (D) | | - | |
| 9 ACD 2 | 102,798,532 | - | 102,798,532 | (102,798,532) | (A) | | - | |
| 10 Great Western Service Corp Two | 108,915,537 | - | 108,915,537 | (108,915,537) | (A) | | - | |
| 11 Providian Services Corp | - | - | - | | (B) | | - | |
| 12 HS Loan Partners LLC | 65,819,076 | 6,128,503 | 71,947,580 | (65,819,076) | (C) | | - | |
| 13 Ahmanson Developments Inc | 5,338,733 | - | 5,338,733 | (5,338,733) | (B) | | - | |
| 14 PCA Asset Holdings LLC | 19,041,342 | 3,700,943 | 22,742,285 | (19,041,342) | (C) | | - | |
| 15 Ahmanson Residential Development | 147,546,544 | - | 147,546,544 | (147,546,544) | (A) | | - | |
| 16 WM Funds Disbursement Inc. | 13 | - | 13 | (13) | (B) | | - | |
| 17 HF Ahmanson & Co | - | - | - | | (B) | | - | |
| Investment in Subsidiaries - MOR 3 | 1,895,218,467 | 33,468,550 | 1,928,687,017 | (454,652,065) | 1,440,566,402 | | 1,464,496,428 | 680,704,781 |
| *Indirect Ownership by WMI \** | | | | | | | | |
| 18 WM Aircraft Holdings LLC | | 28,098,191 | 28,098,191 | | (C) | | - | |
| 19 SoundBay Leasing LLC | | - | - | | (F) | | - | |
| 20 Riverpoint Associates | | 43,449,882 | 43,449,882 | | (C) | | - | |
| 21 Flower Street | | 21,326,909 | 21,326,909 | | (A) | | - | |
| 22 Robena Feedstock | | - | - | | (B) | | - | |
| 23 Providian Services LLC | | - | - | | (B) | | - | |
| 24 ACD 3 | | 17,298,992 | 17,298,992 | | (A) | | - | |
| 25 Ahmanson GGC LLC | | 84,628,326 | 84,628,326 | | (A) | | - | |
| 26 ACD 4 | | 12,931 | 12,931 | | (C) | | - | |
| 27 Ahmanson Residential 2 | | 13,588,545 | 13,588,545 | | (A) | | - | |
| 28 Sutter Bay Associates LLC | | 86,030,852 | 86,030,852 | | (A) | | - | |
| 29 Sutter Bay Corp | | 60,708,905 | 60,708,905 | | (A) | | - | |
| 30 Robena LLC | | - | - | | (B) | | - | |
| 31 WMGW Delaware Holdings | | - | - | | (D) | | - | |
| 32 WMFHA Delaware Holdings | | 6,959,522 | 6,959,522 | | (E) | | - | |
| 33 WM Finance LLC | | 1,525,671 | 1,525,671 | | (C) | | - | |

Notes:

| | |
|---|---|
| * | Equity value already reflected via direct ownership balances. |
| (A) | Merged into WM Citation Holdings LLC in December 2008 |
| (B) | Merged into WMI Rainier LLC in December 2008 |
| (C) | Merged into WM Citation Holdings LLC in April 2009 |
| (D) | Merged into WM Citation Holdings LLC in June 2010 |
| (E) | Merged into PCA Asset Holdings LLC in December 2008 |
| (F) | Dissolved in June 2010 |
| (G) | Reorganized WMI valuation is $210 million, which includes value of WMMRC. |

US_ACTIVE:\43837453\28\79831.0003

*a.*     **Reconciliation of Change in "Investment in Subsidiaries"**

WMI's "Investment in Subsidiaries," as shown on WMI's balance sheet (set forth in each of the Debtors' MORs), and in the preceding chart, reflects the total book equity of the Non-Banking Subsidiaries.  The total change in "Investment in Subsidiaries" from the Petition Date to October 31, 2011 is approximately $455 million, as explained below.

| Investment in Subsidiaries – 9/26/2008 | $1,895,218,467 | Notes |
|---|---:|---|
| | | |
| Income / (Loss) from Subsidiaries | (205,040,767) | (1) |
| Cash Distributed to WMI | (386,865,257) | (2) |
| Paid Notes and Tax Payables to WMI | 72,236,573 | (2) |
| Distribution of Remaining Marion Business to WMI | (16,443,787) | Reported in Dec 2009 MOR[40] |
| | | |
| Change in Other Comprehensive Income ("OCI") | 64,183,030 | (3) |
| Other Miscellaneous Changes | 17,278,143 | |
| | | |
| Cumulative Change from Petition Date | (454,652,065) | |
| | | |
| **Investment in Subsidiaries – 10/31/2011** | **$1,444,609,697** | |

*Notes to the chart follow on the next page.*

---

[40] (See Note 4 to the "Financial Statements" in the December 2009 MOR [D.I. 2280].)

**NOTES**

**(1)**  **INCOME / (LOSS) FROM SUBSIDIARIES -- BY SUBSIDIARY**

| | | |
|---|---:|---|
| WMMRC | (103,875,342) | |
| Marion | 18,850,206 | |
| WAMU 1031 Exchange | (262,995) | |
| Ahamansan Obligation Corporation | (2,032,316) | Incl. loan sale |
| Citation | 2,105,694 | Incl. aircraft sale |
| WMIIC | (122,719,199) | |
| Other subs | 2,893,185 | |
| | | |
| Cumulative to Date | **(205,040,767)** | Per Oct-2011 Monthly Operating Report |

**(2)**  **CASH DISTRIBUTED TO WMI**

As noted previously, the significant asset held by these non-banking subsidiaries was cash.
Upon completion of the corporate reorganizations described herein, such cash was distributed to WMI.

| Entity | Dividends | Notes & Taxes | Total |
|---|---:|---:|---:|
| Total from WM Citation Holdings LLC (after merger) | 235,628,684 | 51,497,188 | 287,125,872 |
| Marion | 60,000,000 | 13,739,385 | 73,739,385 |
| AOC | 15,000,000 | 7,000,000 | 22,000,000 |
| Wamu 1031 Exchange | 4,000,000 | - | 4,000,000 |
| Summary | 314,628,684 | 72,236,573 | 386,865,257 |

Total Cash reported
on MOR's as received
from subsidiaries

**(3)**  **CHANGE IN OCI**

Unrealized gains and losses in securities are recorded in Other Comprehensive Income within
equity. When that value changes at a subsidiary, WMI's Investment in Subsidiary balance changes
as well. However, this is a change on the balance sheet of the subsidiaries and is not reported on
WMI's income statement.

Securities were held at WMI Investment Corp, Marion and WMMRC. The change in balance would
result from both changes in values of the securities held as well as the liquidation of the securities
and the realization of actual gains and losses.

5.    **Assets of WMI Investment**

WMI Investment is a Delaware corporation that, as of the Petition Date, held a variety of securities and investments. Certain entities have argued that the Debtors must more fully disclose the assets of WMI Investment, including all securities held by WMI Investment, and the divestiture of any such assets since the Petition Date.

Information regarding the assets of WMI Investment has been disclosed by the Debtors in every monthly operating report ("MOR") filed subsequent to the Petition Date, each of which was also filed with the Securities and Exchange Commission (the "SEC") under the cover of a form 8-K, and in WMI Investment's schedule of assets and liabilities, first filed with the Bankruptcy Court on December 19, 2008 (the "WMI Investment Schedule"). As detailed in the WMI Investment Schedule, WMI Investment's assets consisted, as of the Petition Date, of:

- a $566 million intercompany receivable from WMI (which, pursuant to Section 32.2 of the Seventh Amended Plan, will be extinguished, unless otherwise agreed or resolved);

- a membership interest in JPMC Wind Investment Portfolio LLC with a book value of $65 million[41] (which WMI Investment will transfer to JPMC pursuant to the Global Settlement Agreement) (see Sections IV.A.9.a and V.B.3.b(iii) below);

- $53 million of cash on deposit at JPMC (which the Debtors will receive free and clear pursuant to the Global Settlement Agreement) (see Section V.B.3.b(i) below);

- a tax receivable from WMI in the amount of $22 million[42] (which, pursuant to Section 32.2 of the Seventh Amended Plan, will be extinguished, unless otherwise agreed or resolved); and

- $266 million of investments and $4 million of accrued interest.

After the Petition Date, the Debtors were required to liquidate the $266 million of investments held by WMI Investment to comply with section 345(b) of the Bankruptcy Code, which governs investment requirements for bankrupt companies. The conversion of these assets to cash was disclosed in the Schedule of Cash Receipts and Disbursements included as part of the MORs filed with the Bankruptcy Court and the SEC with respect to November 2008 through December 2008, as "Cash Receipts" from the "Sale of Assets/Securities." Furthermore, the applicable balance sheets set forth in each MOR during that period illustrated the increase of cash and the reduction of securities. Each of these documents are publicly available on the Bankruptcy Court's docket, as well as on the website maintained by the Debtors' solicitation and voting agent, Kurtzman Carson Consultants, LLC, at www.kccllc.net/wamu, and the SEC, at www.sec.gov. [43]

---

[41] The book value of WMI Investment's membership interest in JPMC Wind Investment Portfolio LLC is now approximately $49 million.

[42] This amount is included in, and is not incremental to, the estimated total amount of Tax Refunds to be received by the Debtors.

[43] At a hearing before the Bankruptcy Court held on March 21, 2011, Bettina Haper asserted that the Debtors' liquidation of WMI Investment's securities, discussed herein, was unauthorized. On October 2, 2008, the Debtors filed the *Motion of Debtors for (I) Authorization to Maintain Existing Bank Accounts and Business Forms, and (II) for an Extension of Time to Comply with Section 345(b) of the Bankruptcy Code* [D.I. 16]. On October 8, 2008, the

Pursuant to Sections 1.140 and 27.3 of the Seventh Amended Plan, all assets of WMI Investment will be contributed to the Liquidating Trust.

**6.    WM Mortgage Reinsurance Company, Inc. ("WMMRC")**

WM Mortgage Reinsurance Company, Inc. (previously defined as "WMMRC"), a Hawaiian corporation and non-debtor, wholly-owned subsidiary of WMI, is a captive reinsurance company, created to reinsure the risk associated with residential mortgages that were originated or acquired by WMB. Mortgage insurance for WMB-originated or acquired loans had historically been provided by seven mortgage insurance companies (collectively, the "Mortgage Insurers"), although currently WMMRC is party to mortgage reinsurance agreements with only six mortgage insurance companies. WMMRC entered into reinsurance agreements (the "Reinsurance Agreements") with each Mortgage Insurer, pursuant to which it would share in the risk, in the form of Claim losses, in exchange for a portion of the premiums generated from the residential mortgage loan portfolio held by the Mortgage Insurer.[44]

Pursuant to each Reinsurance Agreement, WMMRC established a trust account with US Bank N.A. (defined above as the "WMMRC Trusts"), for the benefit of the Mortgage Insurer, to hold premiums collected and to secure WMMRC's obligations to each Mortgage Insurer with respect to the insured loans. WMMRC was historically party to seven trust agreements—one for each Reinsurance Agreement to which it was a party. As of October 31, 2011, the value of the six remaining Trust's assets was estimated to be $344 million.

Each Reinsurance Agreement requires that WMMRC maintain a certain minimum amount of capital in the applicable Trust (the "Reinsurance Reserve"), which amount is determined by applicable law, as well as each Mortgage Insurer's calculation of reserves needed, which is generally inclusive of reserves for known delinquencies within the loan portfolio and a percentage of the remaining aggregate risk exposure contained in each portfolio. Minimum capital requirements fluctuate on a

---

Court entered the order extending the Debtors' time period to comply with Section 345(b) of the Bankruptcy [D.I. 44]. In the *Supplemental Motion of Debtors for an Extension of Time to Comply with Section 345(b) of the Bankruptcy Code*, dated December 8, 2008 [D.I. 402], the Debtors noted that they had undertaken, and were continuing to undertake, a "steady liquidation of WMI Investment's remaining non-government backed securities." Ms. Haper also noted that, early in the Chapter 11 Cases, the U.S. Trustee filed an objection regarding sales of certain investments by the Debtors. (See Objection of the United States Trustee to the Motion of Debtors Pursuant to Sections 105(a) and 363 of the Bankruptcy Code for Order Approving Procedures for Sale of the Debtors' Interests in Certain Investments Free and Clear of Liens, Claims and Encumbrances and Without Further Court Approval [D.I. 420] (the "Securities Sales Objection"); see also Section IV.A.9.b below.) The Securities Sales Objection, however, was filed by the U.S. Trustee in response to a motion by the Debtors regarding the sale of WMI's limited partner interests in venture capital funds held directly by WMI—not by WMI Investment. (See Motion of Debtors Pursuant to Sections 105(a) and 363 of the Bankruptcy Code for Order Approving Procedures for Sale of the Debtors' Interests in Certain Investments Free and Clear of Liens, Claims and Encumbrances and Without Further Court Approval [D.I. 334] (the "Securities Sales Motion").) The Bankruptcy Court approved the Securities Sales Motion, with certain modifications, by order, dated January 5, 2009 [D.I. 536]. Pursuant to the order, the Debtors were authorized to sell the limited partner interests held by WMI without seeking court approval of each sale, but were required to give notice of any such sale prior thereto.

---

[44] One of WMMRC's Reinsurance Agreement counterparties is PMI Mortgage Ins. Co., Inc. ("PMI Mortgage"), which Entity was seized by Arizona state regulators on October 20, 2011. The Debtors understand that, although PMI Mortgage has ceased writing new business, PMI Mortgage will continue to insure its existing mortgage loan portfolio on a runoff basis, and will continue to make payments of premium income to WMMRC pursuant to the Reinsurance Agreement.

monthly basis and are reflected in monthly "cession statements" provided by each Mortgage Insurer to WMMRC. By order dated December 3, 2008, the Bankruptcy Court approved a loan from WMI to WMMRC in the amount of approximately $11.9 million in order to maintain an adequate Reinsurance Reserve in one of its Trusts.

As of the Petition Date, due to the FDIC's seizure of WMB's assets and the sale of substantially all of WMB's assets to JPMC, all the WMMRC Trusts are operating on a "run-off" basis because WMMRC has ceased to reinsure any newly originated loans.

WMMRC's failure to maintain adequate Reinsurance Reserves could result in the Mortgage Insurers' election to terminate the Reinsurance Agreements on a "cut-off" basis, in which case WMMRC would no longer be liable for the reinsured loans and would no longer receive reinsurance premiums with respect thereto. WMMRC would, however, be liable for the Reinsurance Reserve, which may, in certain cases, result in the extinguishment of all assets on account in the Trust at issue. As described in Section V.B.6.h hereof, WMMRC was named as a defendant in the Alexander & Reed Action.

Refer to Articles VII and VIII of this Disclosure Statement for additional information regarding WMMRC. Pursuant to the Seventh Amended Plan, WMMRC will not be transferred to the Liquidating Trust but, rather, will be the sole operating subsidiary of Reorganized WMI.

### 7.    Assets of WMI's Non-Debtor Subsidiaries, Other than WMMRC

Pursuant to applicable law, and as stated by the Bankruptcy Court at the March 21, 2011 hearing, the Bankruptcy Court's jurisdiction is limited to assets of the Debtors and not to those of any non-Debtor subsidiary. However, because the value of the Debtors' interests in such non-Debtor subsidiaries and non-Debtor assets, including WMMRC, ultimately accretes to the benefit of the Debtors' chapter 11 estate, the Debtors have reflected such value in their liquidation and recovery analyses. To provide parties in interest with additional information, set forth below is information related to WMI's direct and indirect subsidiaries as of the Petition Date, including WMMRC, as well as historical information regarding any transfers of assets by WMI's non-Debtor subsidiaries from and after the Petition Date. Pursuant to Section 1.140 of the Seventh Amended Plan, WMI's Equity Interest in all of its subsidiaries, except for WMI Investment, WMMRC and WMB, will be transferred to the Liquidating Trust. For the avoidance of doubt, and as set forth in more detail below, with the exception of a few *de minimis* residential real estate properties held by Ahmanson Obligation (defined below) as a result of mortgage foreclosures, neither the Debtors nor their non-Debtor subsidiaries hold any real estate.

The general background and status of the Non-Debtor Non-Banking Subsidiaries set forth below is delineated as follows: (a) subsidiaries currently owned by WMI, (b) subsidiaries merged on or prior to December 30, 2008, (c) subsidiaries merged in April 2009, and (d) subsidiaries merged or liquidated on June 30, 2010.

### a.    *Currently Owned WMI Non-Banking Subsidiaries, Other than WMMRC*

**WaMu 1031 Exchange.** Prior to the Petition Date, WaMu 1031 Exchange ("WaMu 1031") facilitated Section 1031 exchanges for residential and commercial property owners. Specifically, WaMu 1031 provided qualified intermediary services to assist real estate investors in deferring capital gains taxes with respect to real estate transactions involving investment properties. WaMu 1031 Exchange was formed as a combination of three predecessor 1031 exchange companies and processed 15,000 exchanges annually, with each exchange averaging $300,000 to $400,000 in size. WaMu 1031 ceased facilitating exchanges, however, in July 2009. The company has been undergoing a wind-down

process and currently has no employees, offices or assets other than cash. Since the Petition Date, WaMu 1031 has paid $4 million to WMI, either as distributions or in satisfaction of obligations to WMI. WaMu 1031's balance sheet as of October 31, 2011 is shown below in Section IV.IV.8.

   **WM Citation Holdings, LLC.** WM Citation Holdings, LLC ("WM Citation") is a Delaware limited liability company formed in July 2001. As of the Petition Date, WM Citation held partial interests in three corporate aircraft managed by NetJets, which interests were sold immediately after the commencement of the Chapter 11 Cases. The aggregate sale proceeds were approximately $3 million after NetJets broker fees, and the eventual buyers were NetJets and JPMC. Over the course of the reorganizations, WM Citation also has been utilized to consolidate other Non-Banking Subsidiaries and, as a result, has accumulated various assets and cash through those reorganizations. Since the Petition Date, WM Citation along with the Non-Banking Subsidiaries that have merged into it have paid $287 million to WMI, either as distributions or in satisfaction of obligations to WMI.

   Through the consolidation process of merging PCA Asset Holdings and HS Loan Partners into WM Citation, WM Citation owns two note receivables payable by WMB which continue to accrue monthly interest. Pursuant to the Global Settlement Agreement, JPMC will pay all obligations of WMB, WMB's subsidiaries, or JPMC under the Revolving Notes set forth on Exhibit "V" thereto. (See Global Settlement Agreement § 2.16 and Section V.B.3.b(v) below.) Specifically, Exhibit "V" to the Global Settlement Agreement includes the following Revolving Notes which relate to WM Citation: (i) $73,670,153 under that certain Revolving Master Note, dated as of December 22, 2005, by and between WMB, as borrower, and WM Citation (as successor to HS Loan Partners), as lender, and (ii) $13,576,245 under that certain Registered Security, Note A, dated as of December 17, 2004, by and between University Street, Inc., as payor and predecessor in interest to WMB, and WM Citation (as successor to WMRP Delaware Holdings LLC), as payee, and predecessor in interest to PCA Asset Holdings LLC.

   WM Citation owned six (6) multi-family home mortgages through the mergers of Flower Street, Sutter Bay Corporation and HS Loan Partners into WM Citation. Collectively, through a competitive auction process, 14 multi-family loan mortgages, consisting of eight (8) owned by H.S. Loan Corporation and the 6 owned by WM Citation, were sold in June 2009 and generated approximately $3.5 million in proceeds after fees and expenses.

   Through the consolidation process, WM Citation became the eventual owner of WM Aircraft's 72% interest in SoundBay Leasing LLC ("SoundBay Leasing"). SoundBay Leasing owned a 1986 Boeing 767-223ER, which was leased by American Airlines. The lease term expires at the beginning of 2012. Through an airline broker, SoundBay Leasing auctioned the plane, received six (6) bids, and generated gross proceeds of $5.1M in January 2010, of which WM Citation retained 72%.

   WM Citation's balance sheet, as of October 31, 2011, is shown below in Section IV.A.8.

   **Ahmanson Obligation Company.** Ahmanson Obligation Company ("Ahmanson Obligation") is a California corporation acquired as part of the H.F. Ahmanson & Co. acquisition in October 1998. Prior to the Petition Date, Ahmanson Obligation generally purchased loans that had been sold with recourse by WMI affiliates. Both Freddie Mac and Fannie Mae filed Claims against WMI, which guaranteed recourse obligations of Ahmanson Obligation. Ahmanson Obligation settled a $53 million recourse Claim with Freddie Mac for $250,000 in March 2010 and a $17 million recourse Claim with Fannie Mae for $50,000 in September 2010.

   As of the Petition Date, Ahmanson Obligation held approximately $18 million in unpaid principal balance ("UPB") on outstanding mortgage loans. In July 2010, through a third party advisor, Ahmanson Obligation engaged outside buyers in a competitive bidding process and received nineteen

(19) bids for a majority of these loans. Total proceeds on the sale of approximately 220 loans, or approximately $14 million in UPB, were $10.3 million after fees and expenses. Ahmanson Obligation currently has 50 remaining loans on the balance sheet with a total UPB of approximately $2 million. These loans are currently in the process of being sold or prepared for sale. In addition, all previous loans or owned real estate through the loan foreclosure process has either been sold or reclassified.

Since the Petition Date, Ahmanson Obligation has paid $22 million to WMI, either as distributions or in satisfaction of obligations to WMI. Ahmanson Obligation's balance sheet, as of October 31, 2011, is shown below in Section IV.A.8.

**WMI Rainier LLC**. WMI Rainier LLC ("WMI Rainier") is a Washington limited liability company formed in April 2006. Prior to the Petition Date, the company primarily served as a consolidation subsidiary for use in merging former WMI subsidiaries out of existence. Over the course of the reorganizations after the Petition Date, the company acquired Ahmanson Developments, Inc. which had potential liabilities related to the BKK Litigation and certain warranty obligations. The BKK Litigation and the Claims associated with it are further described in Section V.B.6.j of this Disclosure Statement. Pursuant to a pending settlement with JPMC and the plaintiffs, WMI will pay JPMC $1.49 million on behalf of WMI Rainier in exchange for a release by JPMC of all Claims against WMI and the Non-Banking Subsidiaries related to the BKK Litigation. In addition, JPMC will indemnify the WMI Entities for any loss related to the BKK Litigation not covered by insurance; provided, that such indemnification is limited to an amount of up to $1.49 million with respect to liabilities of WMI Rainier or its predecessor ADI (defined below) or Oxford Investment Corp. (See Certification of Counsel Regarding Order Approving Settlement Agreement Between Debtors, JPMorgan Chase Bank N.A., California Department of Toxic Substances Control, the BKK Joint Defense Group and Certain of That Group's Individual Members, Exhibit A [D.I. 6261].)

The Debtors recently learned that, through ADI's (defined below) historical real estate development activities, WMI Rainier may own two parcels of land in Riverside County, California. Both parcels are approximately two acres each and consist of narrow strips of land abutting alongside a highway. Additionally, such parcels are designated as utility corridors and zoned as "open space limiting development" and encumbered by the City of Corona and Riverside County. These utility corridors were most likely intended to be conveyed to the city during development and have zero value or assessed property tax.

WMI Rainier LLC's balance sheet, as of October 31, 2011, is shown below in Section IV.A.8.

**H.S. Loan Corporation**. H.S. Loan Corporation ("H.S. Loan") is a California corporation and was acquired as part of the H.F. Ahmanson & Co. acquisition in October 1998. As of the Petition Date, the company owned 8 multi-family home mortgages. Collectively, through a competitive auction process, 14 multi-family loan mortgages, consisting of the 6 owned by H.S. Loan and 8 owned by WM Citation (previously owned by Flower Street, Sutter Bay Corp. and HS Loan Partners at the Petition Date), were sold in June 2009 and generated approximately $3.5 million in proceeds after fees and expenses.

As of the Petition Date, H.S. Loan also owned a note receivable asset payable by WMB, which continues to accrue monthly interest. Pursuant to the Global Settlement Agreement, JPMC will pay all obligations of WMB, WMB's subsidiaries, or JPMC under the Revolving Notes as set forth on Exhibit "V" thereto. (See Global Settlement Agreement § 2.16 and Section V.B.3.b(v) below.) Exhibit "V" to the Global Settlement Agreement includes the following Revolving Note which relates to H.S. Loan:

$82,048,081 under that certain Revolving Master Note, dated as of December 22, 2005, by and between WMB, as borrower, and H.S. Loan, as lender.

JPMC owns a minority interest in H.S. Loan of approximately 1.33% and will convey such minority interest to WMI upon implementation of the Global Settlement Agreement, as set forth in Section V.B.3.b(iv) below.

H.S. Loan's balance sheet as of October 31, 2011 is shown below in Section IV.A.8.

### b.    *WMI Subsidiaries Merged at December 31, 2008*

**ACD 2 (Merged into WM Citation)**.  ACD 2 was a California corporation acquired as a part of the H.F. Ahmanson & Co. acquisition in October 1998.  ACD 2 was incorporated in September 1992 to engage in real estate development.  As of the Petition Date, ACD 2 did not have any ongoing operations or hold any real estate.

**Great Western Service Corporation Two (Merged into WM Citation)**.  Great Western Services Corporation Two ("GWSCT") was a California corporation acquired as part of the Great Western Bank acquisition in July 1997.  At the Petition Date, GWSCT held one subsidiary, Washington Mutual Finance Group, LLC, which was involved in class action litigation in Mississippi, described below.

**Providian Services Corporation (Merged into WMI Rainier)**.  Providian Services Corporation ("PSC") was a Delaware corporation acquired as part of the Providian acquisition in October 2005.  PSC was incorporated in June 1998 to hold certain investments in the Robena coal project transaction.  As of the Petition Date, PSC was not active and did not have any assets.

**Ahmanson Developments, Inc. (Merged into WMI Rainier)**.  Ahmanson Developments, Inc. ("ADI") was a California corporation acquired as part of the H.F. Ahmanson & Co. acquisition in October 1998.  ADI was incorporated in August 1971 to engage in real estate development.  As of the Petition Date, ADI was no longer active in development, but continued to hold warranty liabilities on various development projects.  ADI had potential liabilities related to the BKK Litigation as well as certain outstanding warranty liabilities, but transferred all liabilities to WMI Rainier when it merged with WMI Rainier through the consolidation process.  Refer to the above discussion of WMI Rainier for further explanation.

**Ahmanson Residential Development (Merged into WM Citation)**.  Ahmanson Residential Development ("ARD") was a California corporation acquired as part of the H.F. Ahmanson & Co. acquisition in October 1998.  Prior to the Petition Date, ARD owned a real estate development project in Owing Mills, Maryland.  As of the Petition Date ARD did not have any ongoing operations or hold any real estate.

**WM Funds Disbursements, Inc. (Merged into WMI Rainier)**.  WM Funds Disbursements, Inc. ("WM Funds Disbursements") was a Nevada corporation acquired as part of the Commercial Capital Bancorp Inc. acquisition in October 2006.  WM Funds Disbursements did not engage in business activities prior to 2007.  As of April 2007, WM Funds Disbursement's name was changed to its current name, "WM Fund Disbursements, Inc.," and it was repurposed to make employee benefit payments to people who were employees of WM Advisors, Inc., WM Funds Distributor, Inc. and WM Shareholder Services, Inc. before WMI and/or its affiliates sold those companies.  WM Funds Disbursements also held a small equity stake in Providian Technology Services Private Limited.  The

equity stake was believed to have no value and WM Funds Disbursements disposed of it in September 2009.

**H.F. Ahmanson & Company (Merged into WMI Rainier)**.  H.F. Ahmanson & Co. was a Nevada corporation acquired as part of the H.F. Ahmanson & Co. acquisition in October 1998.  As of the Petition Date, H.F. Ahmanson & Co. was not active and did not have any assets.

**Flower Street Corporation (Merged into WM Citation)**.  Flower Street Corporation ("Flower Street") was a California corporation acquired as part of the H.F. Ahmanson & Co. acquisition in October 1998.  Flower Street was formed in November 1996 to engage in real estate development.  As of the Petition Date, Flower Street (a) had divested itself of any of its Los Angeles real estate assets and (b) owned a few multi-family home mortgages.  Through the consolidation process these mortgages were sold to WM Citation.  See the above discussion of WM Citation for further detail on the sale and proceeds.

**Robena Feedstock LLC (Merged into WMI Rainier)**.  Robena Feedstock LLC ("Robena Feedstock") was a Delaware limited liability company acquired as part of the Providian acquisition in October 2005.  The company was formed in June 1998 to own a wash plant associated with the coal agglomeration plant owned by Robena LLC.  As of the Petition Date, the company was not active and did not have any assets.

**Providian Services LLC (Merged into WMI Rainier)**.  Providian Services LLC was a Delaware limited liability company acquired as part of the Providian acquisition in October 2005.  The company was formed in June 1998 to hold a limited partnership interest in Robena LP.  As of the Petition Date, the company was not active and did not have any assets.

**ACD 3 (Merged into WM Citation)**.  ACD 3 was a California corporation acquired as a part of the H.F. Ahmanson & Co. acquisition in October 1998.  ACD 3 was incorporated in January 1994 to develop real estate.  As of the Petition Date, ACD 3 did not hold any real estate or any other assets.

**Ahmanson GGC LLC (Merged into WM Citation)**.  Ahmanson GGC was a California limited liability company originated as a limited partnership formed in December 1996 by H.F. Ahmanson & Co.  Ahmanson GGC converted to a limited liability company in June 1999.  As of the Petition Date, Ahmanson GGC operated as a holding company for WM Aircraft Holdings LLC.

**Ahmanson Residential 2 (Merged into WM Citation)**.  Ahmanson Residential 2 was a California corporation acquired as part of the H.F. Ahmanson & Co. acquisition in October 1998.  Prior to the Petition Date, Ahmanson Residential 2 historically engaged in real estate development.  As of the Petition Date, Ahmanson Residential 2 did not have ongoing operations or hold any real estate.

**Sutter Bay Associates LLC (Merged into WM Citation)**.  Sutter Bay Associates was a California limited liability company originated as a limited partnership formed by H.F. Ahmanson & Co. in December 1994.  Sutter Bay Associates converted to a limited liability company in June 1999.  As of the Petition Date, Sutter Bay Associates was a holding company for WaMu entities that leased commercial aircraft.

**Sutter Bay Corporation (Merged into WM Citation)**.  Sutter Bay Corporation was a California corporation acquired as part of the H.F. Ahmanson & Co. acquisition in October 1998.  Sutter Bay Corporation was incorporated in November 1996 to engage in real estate development.  As of the Petition Date, Sutter Bay Corporation owned a few multi-family home mortgages, but did not hold any

real estate.  Through the consolidation process these mortgages were sold to WM Citation.  See the above discussion of WM Citation for further detail on the sale and proceeds.

**Robena LLC (Merged into WMI Rainier)**.  Robena LLC was a Delaware limited liability company acquired as part of the Providian acquisition in October 2005.  Robena LLC was formed in March 1998 to own a coal agglomeration plant.  As of the Petition Date, Robena LLC was not active and did not have any assets.

**WMHFA Delaware Holdings LLC (Merged into PCA Asset Holdings)**.  WMHFA Delaware Holdings LLC was a Delaware limited liability company formed in June 1999.  As of the Petition Date, WMHFA Delaware Holdings LLC did not hold any assets or liabilities.

### c.    *WMI Subsidiaries Merged at April 30, 2009*

**HS Loan Partners LLC (Merged in WM Citation)**.  HS Loan Partners LLC was a California limited liability company originated as a limited partnership formed in December 1996 by H.F. Ahmanson & Co.  HS Loan Partners LLC converted to a limited liability company in June 1999.  As of the Petition Date, HS Loan Partners LLC owned a note receivable asset payable by WMB which continues to accrue monthly interest.  Through the consolidation process this asset now is owned by WM Citation and is discussed more fully in the above discussion of WM Citation.  As of the Petition Date, HS Loan Partners LLC owned 1 multi-family home mortgage.  Through the consolidation process this mortgage was sold to WM Citation.  See the above discussion of WM Citation for further detail on the sale and proceeds.

**PCA Asset Holdings LLC (Merged in WM Citation)**.  PCA Asset Holdings LLC ("PCA") was a California limited liability company formed in January 2005.  PCA served as a holding company for real estate that was to be sold to third parties.  As of the Petition Date, PCA owned a note receivable asset payable by WMB (acquired by JPMC and outlined in the Global Settlement Agreement) which continues to accrue monthly interest.  Through the consolidation process this asset now is owned by WM Citation and is discussed more fully in the above discussion of WM Citation.  As of the Petition Date, PCA did not have any ongoing operations or hold any real estate.

**WM Aircraft Holdings LLC (Merged in WM Citation)**.  WM Aircraft was a Delaware limited liability company was formed in December 2000 to act as a holding company.  As of the Petition Date, the company directly held a 72% interest in SoundBay Leasing.  This 72% interest was merged into WM Citation through the consolidation process.

**Riverpoint Associates (Merged in WM Citation)**.  Riverpoint Associates ("Riverpoint") was a California general partnership acquired as part of the H.F. Ahmanson & Co., acquisition in October 1998.  Riverpoint was formed to engage in real estate development.  As of the Petition Date, Riverpoint did not have ongoing operations or hold any real estate.

**ACD  4 (Merged in WM Citation)**.  ACD 4 was a California corporation acquired as a part of the H.F. Ahmanson & Co. acquisition in October 1998.  ACD 4 was incorporated in October 1993 to develop real estate.  As of the Petition Date, ACD 4 did not have any ongoing operations or any assets.

**Washington Mutual Finance Group, LLC (Merged into WM Citation)**.  WM Finance Group was a Delaware limited liability company formed in April 2000 to engage in mortgage lending in Kentucky, Maryland, Mississippi, North Carolina, Tennessee, Virginia and West Virginia.  Substantially all of WM Finance Group's assets were sold to CitiFinancial Credit company in March 2004.  As of the

Petition Date, the company existed to address certain Mississippi class action litigation arising from Mississippi loans, which since has been resolved.

> *d.*    ***WMI Subsidiaries Merged or Dissolved at June 30, 2010***

      **Marion Insurance Company, Inc. (Merged into WM Citation)**.  Marion Insurance Company ("Marion"), a Vermont corporation and non-debtor, wholly-owned subsidiary of WMI, was a captive reinsurance company, incorporated in September 2000 to act as a Vermont domiciled captive insurance company to reinsure the risk associated with lender placed hazard insurance policies, accidental death and dismemberment and mortgage life insurance.  Prior to the Petition Date, Marion reinsured mortgage life, disability, and accidental death insurance written on mortgagees of WMB's banks as well as lender placed hazard-related coverage on loans in the banks' servicing portfolios.

      In February 2009, the insurance commissioner of Vermont notified Marion that it was no longer in compliance with Vermont captive law because it no longer reinsured the risks of its affiliates, and therefore required that Marion no longer provide reinsurance as a Vermont captive.  In response to this directive, in early 2009, Marion began the process of commuting its existing reinsurance contracts with four separate companies.  By the beginning of June 2010, Marion had successfully commuted all reinsurance agreements with the four companies, including its reinsurance agreement with Assurant.  As part of its commutation effort with Assurant, Marion created and deposited $17 million into a trust for the benefit of Assurant to pay remaining Claims over the next two years.  Per the insurance commissioner's requirements, Marion subsequently distributed the trust to WMI to ensure the successful wind-down of the Marion entity.  In March 2011, the Assurant Trust distributed $7.7 million to WMI.  The term of the trust expires on December 31, 2011, after which the remaining assets, currently approximately $6.4 million, will revert, unrestricted, to WMI.  In total, since the Petition Date, Marion has paid $74 million to WMI, either as distributions or in satisfaction of obligations to WMI.

      As of June 30, 2010, Marion surrendered its Vermont insurance license and merged out of existence as part of the ongoing WMI subsidiary wind-down process.

      **SoundBay Leasing LLC (Dissolved)**.  SoundBay Leasing was a Delaware limited liability company formed in December 2000 to be a joint venture with Bank of America involved in the leasing of aircraft and other equipment.  As of the Petition Date, SoundBay Leasing owned a 1986 Boeing 767-223ER which was leased by American Airlines.  The asset was sold in June 2010.  For further information on the sale, refer to the above discussion of WM Citation.

      **WMGW Delaware Holdings LLC (Merged into WM Citation)**.  WMGW Delaware Holdings LLC ("WMGW") was a Delaware limited liability company formed in June 1999 to engage in commercial leasing and lending.  As of the Petition Date, WMGW did not hold any assets or leases.