**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------------------x
: 
*In re* : Chapter 11
: 
**WASHINGTON MUTUAL, INC., <u>et al.</u>,**[1] : Case No. 08-12229 (MFW)
: 
Debtors. : (Jointly Administered)
: 
: Hearing Date: Dec. 19, 2019 at 2:00 p.m. (ET)
: Re: Docket Numbers 12686 & 12691
---------------------------------------------------------------x

**REPLY OF WMI LIQUIDATING TRUST IN SUPPORT OF APPLICATION FOR AN ORDER, PURSUANT TO SECTION 350 OF THE BANKRUPTCY CODE BANKRUPTCY RULE 3022 AND LOCAL RULE 3022-1, AUTHORIZING AMONG OTHER THINGS, (A) CLOSING THE CHAPTER 11 CASES OF WASHINGTON MUTUAL, INC. AND WMI INVESTMENT CORP. AND (B) AUTHORIZING THE WIND-UP AND DISSOLUTION OF THE LIQUIDATING TRUST**

WMI Liquidating Trust ("<u>WMILT</u>" or the "<u>Trust</u>"), as successor to Washington Mutual, Inc. ("<u>WMI</u>") and WMI Investment Corp. (collectively, the "<u>Debtors</u>"), hereby files this reply in supports of its application, dated November 14, 2019 (the "<u>Application</u>")[2] [Dkt. No. 12686], for an order, pursuant to section 350 of the Bankruptcy Code, Bankruptcy Rule 3022 and Local Rule 3022-1, authorizing, among other things, (a) the closing of the Debtors' chapter 11 cases, (b) a post-closing mechanism with respect to undelivered and uncashed distributions, and (c) following a final distribution to holders of Class 18 Allowed Claims, (i) the wind-up and dissolution of the Trust, including the making of one or more charitable contributions of remaining Liquidating Trust Assets, and (ii) the termination of KCC as Claims Agent, and in

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The principal offices of WMILT, as defined herein, are located at 800 Fifth Avenue, Suite 4100, Seattle, Washington 98104. Subsequent to the Effective Date, as defined below, WMI Investment Corp. was dissolved in accordance with applicable law.

[2] Capitalized terms used therein shall have the meanings ascribed thereto in the Application.

1

response to the objection, dated December 2, 2019 [Dkt. No. 12691] (the "Griffin Objection"), filed by Alice Griffin ("Griffin"), and respectfully states as follows:

## Preliminary Statement

1. As reflected in the Application, the Debtors' chapter 11 cases have wound their way from (a) the effects of the 2008 financial crisis through (b) the lengthy negotiation and resolution of issues emanating from the FDIC's sale of WMB's assets to JPMC to (c) the confirmation and consummation of a fully-consensual chapter 11 plan and (d) ultimately, to the post-confirmation liquidation and collection of all available assets and the reconciliation of all remaining claims against the Debtors' estates. Now, with completion at hand, WMILT seeks to close these cases and, upon satisfaction of its corporate obligations, wind-up and dissolve the Trust.

2. Griffin, an alleged former holder of Preferred Equity Interests, seeks to abruptly halt the natural administrative bankruptcy process in an effort to pursue the Griffin Appeal (even though the proposed order granting the Application expressly provides for the continuation of the Griffin Appeal) and her ongoing theory that additional WMI assets may exist, may be recovered and may be distributed to holders of Preferred Equity Interests and Common Equity Interests in the future.[3] In doing so, she misstates applicable law concerning the standards associated with section 350 of the Bankruptcy Code. More importantly, despite this Court's numerous rulings concerning distinctions between WMI and WMB (and even affirmances by the District Court), as well as multiple public filings by WMI and WMILT regarding the assets of WMI and WMB,

---

[3] On October 31, 2019, Griffin filed a motion (the "Withdrawal Motion") with the District Court seeking to withdraw the reference from the Bankruptcy Court in an effort to preclude this Court from consideration of the Application, pending the District Court's determination of the Griffin Appeal. Pursuant to that certain Order Denying Motion to Withdraw Reference, dated December 9, 2019, the District Court denied the Withdrawal Motion.

112871829v2

Griffin, either intentionally or unintentionally, conflates the operations and assets of the two. As a result, Griffin seeds misunderstandings among a greater population which has led to public statements of mistrust about the Court, the Trust and its professionals and the exceptionally transparent process undertaken by all parties involved.

3. So, yet again, WMILT will undertake to correct Griffin's misstatements by detailing what assets will remain following the upcoming final distribution to be made by WMILT (to Class 18 creditors) and to emphasize the applicable standard for consideration of the Application in accordance with section 350 of the Bankruptcy Code. Based thereon, it is clear that the Griffin Objection should be denied in its entirety and the Application should be granted in all respects.

## WMI and WMB Were Distinct Entities With Distinct Assets

4. As this Court recognized early on in these chapter 11 cases, WMI and WMB (together with WMB's respective subsidiaries) were wholly distinct entities and their assets and liabilities are similarly separate. See, e.g., Memorandum Opinion, Youkelsone v. Washington Mutual, Inc. (In re Washington Mutual, Inc.), Adv. No. 09-50039 (MFW) (Bankr. D. Del. Aug. 13, 2010) (Dkt No. 28). Prior to the FDIC's seizure of WMB's assets on September 25, 2008, WMI served as a multiple savings and loan holding company for WMB, Washington Mutual Bank fsb and their respective subsidiaries. As reflected in numerous pleadings filed with this Court, even in documents determined by this Court to contain "adequate information" in accordance with section 1125 of the Bankruptcy Code, WMB and its subsidiaries were the entities in the "WaMu Group" that were responsible for all aspects of the company's banking processes, including, without limitation, mortgage loan origination and servicing and retail banking processes. In that regard, WMB took applications, ordered appraisals, made underwriting decisions, funded loans, serviced loans, assigned loans to "pools" and securitized

3

such "pooled" loans. WMB's subsidiaries were responsible for managing the funding conduit, assigned the conduit loans to securitizations and master-serviced securitizations. WMI did not participate in any of these banking processes. Consistent with that, WMI and WMB historically reported their assets and liabilities as required by applicable securities laws on both a consolidated and separate basis. See, e.g., WMI Form 10-K, dated March 31, 2008, for the period ending December 31, 2007, a copy of which is annexed hereto as Exhibit "A".

5. Unfortunately, Griffin chooses to disregard the separateness of WMI and its subsidiaries and claims that certain assets of WMI's subsidiaries, especially those of WMB which were seized by the FDIC and sold to JPMC, are assets of the Debtors and the Debtors' chapter 11 estates. Specifically, Griffin cites to historical consolidated financial information of WMI and of its then-subsidiaries, thereby causing confusion. At times, Griffin even refers to assets that were liquidated or disposed of by WMB or its subsidiaries years prior to the seizure of WMB and contends that such assets are still the property of WMI's chapter 11 estate. Indicative of these misstatements are Griffin's numerous references to "MBS" (mortgage-backed securities) and "safe harbor" assets as purportedly belonging to WMI. Worse, these misstatements have created misapprehensions that there are significant recoveries that remain available for distribution to former equity holders upon closure of these chapter 11 cases.

6. As discussed above, any transactions relating to "MBS" were conducted by WMB and its subsidiaries, and not WMI. The lone residual "MBS" owned by the Debtors' chapter 11 estates on the Petition Date, and, as reflected on WMI's schedule of assets filed early in its chapter 11 case, having a value of $84,000, was liquidated and the proceeds thereof were distributed to Creditors pursuant to the Plan. Griffin's references to "safe harbor" assets, and their ultimate distribution to former equity holders, is more perplexing. First, by definition, such assets are owned by various trusts, with third parties, other than the Debtors, having purchased

4

economic interests in such securitizations. Second, while the FDIC in 2009 acknowledged, see www.federalregister.gov/documents/2009/11/17/E9-27592/defining-safe-harbor-protection-for-treatment-by-the-federal-deposit-insurance-coproration-as, that any properly conducted "safe harbor" transaction would not have been seized as it constituted a true sale, such FDIC position did not, and will not, generate any value for WMI. Specifically, as such transactions were never conducted by WMI, WMI did not own any interest therein, including, upon information and belief, any "residual certificates" issued in connection with such transactions. Rather, any such initial interest was confined to the subsidiaries which conducted such transactions. But, even then, as "safe harbor" transactions, such securitizations and their value were sold by such subsidiaries to third parties and the FDIC has agreed that such value cannot be recovered for the benefit of the "Receivership" (or, by extension, WMI) from such third-parties.

### There Are No Untapped Assets

7. Griffin posits that nothing is impossible and, therefore, someday, somehow, some way, assets will appear that will require distribution to Creditors and, potentially, holders of Preferred Equity Interests and Common Equity Interests. In support of such thesis, Griffin cites the definitions of "Causes of Action" and "Litigation Proceeds" from the Plan, but claims that, if any such assets exist, WMILT is not responsible for their collection, negotiation or distribution. Instead, such role should be the responsibility of someone to be appointed, "preferably appointed by Retail Equity". See Griffin Objection, fn. 12.

8. Of course, not only is the collection, negotiation and distribution of assets the sole responsibility of WMILT and the Liquidating Trustee in accordance with the provisions of the Plan and the Liquidating Trust Agreement, but, the ongoing suggestion that there are additional assets, yet untapped, is belied by the very facts of these cases, the statements made by the Equity Committee in connection with solicitation and confirmation of the Plan and the efforts of the

5

Litigation Subcommittee and the Trust to litigate and collect on all available Causes of Action. In that regard, as part of the solicitation process to the Plan, the Court approved the form of a letter, a copy of which is annexed hereto as Exhibit "B", prepared by the Equity Committee to be distributed to holders of Preferred Equity Interests and Common Equity Interests in conjunction with other solicitation materials. Such letter in support discusses many of the same issues that continue to be raised by Griffin in the Griffin Objection, the Griffin Appeal and even the recently denied Withdrawal Motion. It mentions the future role of the Litigation Subcommittee (represented by counsel to the Equity Committee) and the representation of "retail equity" serving on the Trust Advisory Board. It references the claims and causes of action that will be pursued for the benefit of holders of Liquidating Trust Interests.

9. As the Court is well aware, through having presided over these chapter 11 cases, but also, through the regularly-filed Quarterly Summary Reports, the Debtors and the Trust commenced numerous adversary proceedings to recover avoidable transfers, including many actions against former officers and employees of the Debtors. Each of these actions has been resolved and, as evidenced by the "Pacer" update as of December 12, 2019, a copy of which is annexed hereto as Exhibit "C", has been closed. Indeed, the Griffin Objection acknowledges the absence of any pending litigation.

10. Similarly, other claims and causes of actions investigated and pursued by the Litigation Subcommittee, including against former officers and directors, were successfully resolved, with significant recoveries having been generated for the Debtors' estates. Thereafter, the Litigation Subcommittee determined, after investigation, that no additional actions were worthy of pursuit.

11. Based upon all of such efforts, WMILT has determined, in its business judgment, that there are no additional "Causes of Action" or "Litigation Proceeds" available to the Trust.

6

However, while anything is possible, if the Trust were to become aware of a viable "Cause of Action" prior to its wind-up and dissolution, WMILT shall exercise its business judgment at such time and make an appropriate determination as to how best to proceed.

### Miscellaneous Griffin Objections

12. The Griffin Objection also raises miscellaneous objections including the inadequacy of a three-year Delaware statute of limitations. WMILT takes no position as to such statute's adequacy and does not agree to toll any period in connection therewith.

13. Additionally, these cases have consumed eleven years of the Court's time and energy. In that period, multiple litigations were conducted and numerous books and records were required to be preserved, all at significant expense and, therefore, at a cost to recoveries to Creditors. The Griffin Objection suggests that records and certain personal information should be further maintained, in both paper and electronic form, indefinitely. It is asserted that such information is necessary in the event that "Litigation Proceeds" are realized. As stated above, there are no additional "Causes of Action" to pursue and, in the business judgment of WMILT, no "Litigation Proceeds" will be realized. Accordingly, WMILT asserts that the further preservation of records and personal information would be a needless expense and further deplete assets available for distribution.

### The Pendency of the Griffin Appeal Does Not Warrant Keeping the Chapter 11 Cases Open

14. As set forth fully in the Application, the Advisory Committee "factors" clearly are satisfied and support granting the Application. Nevertheless, Griffin still claims prejudice to her rights in the event the Application were granted. But, that is not accurate. If this Court were to grant the Application, not only would Griffin be entitled to continue with the Griffin Appeal, but Griffin would certainly be entitled to take an appeal from any such order and seek to stay the

effectiveness thereof.  Conversely, if the relief requested in the Application were not granted, Griffin similarly has suffered no prejudice.

15. Moreover, and as courts have observed in connection with other "closing" applications, see, e.g., In re Valence Technology, Inc., 60 Bankr. Ct. Dec. 49, 51 (Bankr. W.D. Tex 2014), in the event the Griffin Appeal were successful, and WMILT submits it will not, there is always the opportunity to reopen the Debtors' chapter 11 cases in order to provide appropriate relief to the Debtors and any other party or for other cause.  But, WMILT submits that, even if the Griffin Appeal were successful, any such success would be pyrrhic in nature. Specifically, as the Bankruptcy Court determined when entering the Griffin Order, to void the Underwriter Stipulation would increase the number and amount of claims in Class 18, not decrease the amount of Class 19 Preferred Equity Interests, and if, such increased Class 18 claims were allowed, further subordinate the recoveries of former holders of Preferred Equity Interests and Common Equity Interests.  Thus, any such action would actually be detrimental to the interests that Griffin professes to be representing.

16. Based upon the foregoing, as well as the Application and the entire record of these chapter 11 cases, WMILT submits that the approval of the Application is in the best interests of all parties in interests.

WHEREFORE WMILT respectfully requests that the Court overrule the Griffin Objection in its entirety, approval the Application and grant WMILT such other and further relief as is just.

Dated: December 16, 2019
      Wilmington, Delaware

              */s/ Christopher M. De Lillo*
              RICHARDS, LAYTON & FINGER, P.A.
              Mark D. Collins (No. 2981)
              Amanda R. Steele (No. 5530)
              Christopher M. DeLillo (No. 6355)
              One Rodney Square
              920 North King Street
              Wilmington, Delaware 19801
              Telephone: (302) 651-7700
              Facsímile:  (302) 651-7701

                      - and -

              PROSKAUER ROSE LLP
              Brian S. Rosen
              Eleven Times Square
              New York, New York 10036
              Telephone: (212) 969-3000
              Facsímile:  (212) 969-2900

              *Attorneys to the WMI Liquidating Trust*