## Exhibit B

**Motion to Enforce**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **WASHINGTON MUTUAL, INC.**, *et al.*,[1] | Case No. 08-12229 (MFW) |
| **Reorganized Debtors.** | **Hearing Date (Requested): On or Before June 11, 2021**<br>**Objection Deadline (Requested):  At the hearing** |

## MOTION OF WMI LIQUIDATING TRUST TO (I) ENFORCE THE EXCULPATION, INJUNCTION, RELEASE, AND DISCHARGE PROVISIONS OF THE DEBTORS' JOINT CHAPTER 11 PLAN AND CONFIRMATION ORDER AND (II) IMPOSE SANCTIONS

WMI Liquidating Trust (the "Trust"), as successor to Washington Mutual, Inc. ("WMI") and WMI Investment Corp. (together with WMI, the "Reorganized Debtors," and prior to the effective date of the Plan (as defined below), the "Debtors"), hereby submits this motion (the "Motion") for the entry of an order, substantially in the form attached hereto as **Exhibit 1**, (i) enforcing the exculpation, injunction, discharge, and release provisions contained in the *Seventh Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 9178] (the "Plan")[2] and the *Findings of Fact, Conclusions of Law, and Order Confirming the Seventh Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 9759] (the "Confirmation Order") against Alice Griffin ("Griffin") and (ii) imposing sanctions for Griffin's repeated vexatious and harassing litigation of matters previously adjudicated.  In support of this Motion, the Trust respectfully states as follows:

---

[1]  The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, were: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395).  The Reorganized Debtors had a former address of 1201 Third Avenue, Suite 3000, Seattle, Washington 98101.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

## PRELIMINARY STATEMENT

1.      After years of unsuccessful litigation in this Court, the United States District Court for the District of Delaware, and the United States Court of Appeals for the Third Circuit, Griffin, an alleged former holder of Preferred Equity Interests, has taken her journey to a new court.  On May 20, 2021, Griffin commenced litigation (the "<u>Litigation</u>")[3] in the United States District Court for the Southern District of New York (the "<u>SDNY</u>") against WMI, the Trust and Mr. Cooper Group, Inc. ("<u>Mr. Cooper</u>").  Pursuant to an amended complaint (the "<u>Amended Complaint</u>"), and, most likely, in response to correspondence from the Trust, Griffin has removed WMI as a defendant.  A copy of the Amended Complaint is attached hereto as **<u>Exhibit 2</u>**.

2.      Nonetheless, the Litigation is the next chapter in the never-ending battle that was waged in the Debtors' Chapter 11 Cases by Griffin and certain former equity interest holders of WMI.  Since the commencement of the Chapter 11 Cases over 12 years ago, such holders have been and, in the face of all evidence to the contrary, have remained, convinced that (1) the FDIC improperly seized the assets of WMB, WMI's main subsidiary, and thereby deprived such holders of significant value, (2) actions taken in the Debtors' Chapter 11 Cases were designed solely for the benefit of creditors and to eliminate the hope of any recovery by equity holders (notwithstanding the fact that such equity holders received significant value in the form of ownership of the Reorganized Debtors) and (3) there are hundreds of billions of dollars of value that the Trust has apparently conspired with Mr. Cooper and certain hedge funds to keep from such holders.

3.      Dissatisfied with this Court's numerous rulings concerning the distinctions between WMI and WMB (including affirmances from the District Court and the Third Circuit), and despite

---

[3] The Litigation is *Alice Griffin v. WMI Liquidating Trust and Mr. Cooper Group, Inc.*, Case No. 1:21-cv-04554.

multiple public filings by WMI and the Trust regarding the assets of WMI and WMB, Griffin continues to conflate the operations and assets of the two, and has now intentionally turned to a new forum in search of the relief she has been unable to secure here and in the appellate courts. As a consequence, Griffin continues to spread misunderstandings among the greater equity holder population to the detriment of the Trust, its professionals, and, ultimately, this Court.

4.       Accordingly, the Trust must once again assume the obligation to correct Griffin's misstatements by detailing how the Trust assets were distributed pursuant to the Plan and the lack of any remaining assets for distribution as the Trust prepares to wind-up its affairs pursuant to the Plan and be terminated.  Simply put, this Court should not permit Griffin to run an end-around its jurisdiction and its rulings and must enjoin Griffin from pursuing the Litigation by issuing an order requiring her to withdraw the Amended Complaint, with prejudice.  Furthermore, the Court should make clear that such harassment and intentional violation of this Court's prior orders, including the Confirmation Order, are sanctionable and issue an order requiring Griffin to compensate the Trust for the expense incurred in addressing the Amended Complaint—funds which would have been much better served being distributed in accordance with the Plan and the Liquidating Trust Agreement, rather than spent once again responding to her thrice-rejected allegations.

A.       **WMI and WMB Were Distinct Entities With Distinct Assets**

5.       As this Court recognized early on in these Chapter 11 Cases, WMI and WMB (together with WMB's respective subsidiaries) were wholly distinct entities and their assets and liabilities are similarly separate.  *See*, *e.g.*, *Youkelsone v. Washington Mutual, Inc. (In re Washington Mutual, Inc.)*, Adv. No. 09-50039 (MFW) (Bankr. D. Del. Aug. 13, 2010) [Docket No. 28].  Prior to the FDIC's seizure of WMB's assets on September 25, 2008, WMI served as a multiple savings and loan holding company for WMB, Washington Mutual Bank fsb, and their

respective subsidiaries.   As reflected in numerous pleadings filed with this Court, even in documents determined by this Court to contain "adequate information" in accordance with section 1125 of the Bankruptcy Code, WMB and its subsidiaries were the entities in the "WaMu Group" that were responsible for all aspects of the company's banking processes, including, without limitation, mortgage loan origination and servicing and retail banking processes.   In that regard, WMB took applications, ordered appraisals, made underwriting decisions, funded loans, serviced loans, assigned loans to "pools" and securitized such "pooled" loans.   WMB's subsidiaries were responsible for managing the funding conduit, assigned the conduit loans to securitizations and master-serviced securitizations.   WMI did not participate in any of these banking processes. Consistent with that, WMI and WMB historically reported their assets and liabilities as required by applicable securities laws on both a consolidated and separate basis.  *See, e.g.*, WMI Form 10-K, dated March 31, 2008, for the period ending December 31, 2007.[4]

6.      Unfortunately, Griffin continues to disregard the separateness of WMI and its subsidiaries and continues to claim that certain assets of WMI's subsidiaries, especially those of WMB which were seized by the FDIC and sold to JPMorgan Chase, N.A., are assets of the Debtors and the Debtors' chapter 11 estates.  Specifically, Griffin refers to historical consolidated financial information of WMI and its then-subsidiaries, thereby confusing the issue.   Indicative of such misstatements are Griffin's renewed focus on mortgage-backed securities assets that purportedly belonged to WMI and were allegedly surreptitiously transferred to Mr. Cooper following either the Effective Date or the closure of these Chapter 11 Cases.  For the avoidance of doubt, there is absolutely no basis in fact for such assertions, and Griffin can point to no evidence in support beyond references to a supposed secret "Source" who apparently spoke not with Griffin, but rather

---

[4] *Available at* https://www.sec.gov/Archives/edgar/data/933136/000104746908002083/a2182890z10-k.htm.

with another alleged former holder of Preferred Equity Interests, who then relayed such information to Griffin.  Amended Complaint ¶ 22 ("In late 2019, Plaintiff received information from another Legacy Holder in communication with an employee of a major securities broker (the 'Source')").  These misstatements and misguided accusations have created misapprehensions that there are significant recoveries that remain available for distribution to former equity holders.  As the Trust has repeatedly stated in public filings, there are not.

7.     As discussed at length herein, any transactions relating to mortgage-backed securities were conducted by WMB and its subsidiaries, and not WMI.  The lone residual mortgage-backed security owned by the Debtors' estates on the Petition Date had a value of $84,000, as was reflected on WMI's schedule of assets, and was liquidated and had its proceeds distributed to stakeholders pursuant to the Plan.

**B.     Griffin Should be Prohibited From Relitigating These Tired Allegations**

8.     Griffin's continuous litigation of the unfounded and baseless allegations contained in the Amended Complaint should be enjoined and prohibited by this Court, which has already dismissed such claims.  The pursuit of the Litigation in the SDNY represents a new frontier for her and other equity holders' wildest theories and, at this point, amounts to no more than harassment of the Trust, the Liquidating Trustee, the court-approved administrators, and their professionals.  These matters have already been fully adjudicated in this Court, the District Court, the Third Circuit (and pending Griffin's stated intent to file a writ of certiorari with the United States Supreme Court).  The filing of a new complaint in search of a different ruling on the same issues, and over which this Court has exclusive jurisdiction, is grounds for this Court to issue sanctions against Griffin for unnecessarily depleting the Trust's already-minimal assets remaining for distribution—assets which would be much better served being distributed in accordance with

the Liquidating Trust Agreement and the Final Decree, rather than being used to defend against the Amended Complaint.

9.      Accordingly, for the reasons set forth above and herein, the Trust respectfully requests that the Court issue an order enjoining Griffin from further prosecuting the Litigation and requiring her to withdraw the Amended Complaint with prejudice.

## JURISDICTION AND VENUE

10.      The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012, as well as Section 38.1 of the Plan, decretal paragraph 83 of the Confirmation Order, and Section 9.2 of the Liquidating Trust Agreement.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, in accordance with Local Rule 9013-1(f), the Trust consents to the entry of a final judgment or order with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments on this Motion consistent with Article III of the United States Constitution.  Venue of this chapter 11 case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

11.      The statutory and legal predicates for the relief requested herein are sections 105, 1129, 1141, and 1142 of Title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rule 9014, and 28 U.S.C. § 1927.

## BACKGROUND

**A.      The Chapter 11 Cases**

12.      On February 24, 2012, this Court confirmed the Plan in accordance with the provisions of section 1129 of the Bankruptcy Code and authorized the consummation of the

transactions contemplated therein, including, without limitation, approval and consummation of the Global Settlement Agreement and the exchange of mutual releases provided for therein between, among others, the Debtors and the FDIC.

13.     As described above, the Plan constituted a consensual reorganization of the Debtors' estates for the benefit of all stakeholders.  Under the Plan, subject to providing a release thereunder, holders of Preferred Equity Interests, such as Griffin, exchanged and terminated their Preferred Equity Interests in consideration for (i) common equity interests in the Reorganized Debtors and (ii) interests as Class 19 members in the Liquidating Trust proceeds.  Accordingly, Griffin released, among others, the Debtors, WMB, and the Debtors' estates from all claims and causes of action that could have been alleged prior to the Effective Date.  Additionally, as a result of releasing her Preferred Equity Interests, pursuant to Section 41.7 of the Plan, Griffin was forever enjoined from "commencing or continuing in any manner, in any place of any judicial, arbitration, or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order."

14.     The Plan contained broad discharge, injunction, and exculpation provisions that protect the Debtors and the Trust from actions taken prior to or in furtherance of the Plan, the Confirmation Order, and the Liquidating Trust Agreement.  *See, e.g.*, Plan §§ 41.2, 41.3, 41.8. The Liquidating Trust Agreement also provides that "no Liquidating Trust Beneficiary, holder of a Claim, holder of an Equity Interest, or other party-in-interest shall have or be permitted to pursue any claim or cause of action against the Liquidating Trustee, the Liquidating Trust, the employees, professionals or representatives of either the Liquidating Trustee or the Liquidating Trust (including the Trust Professionals) or the members of the Trust Advisory Board and the Litigation Subcommittee, for making payments in accordance with, or for implementing, the provisions of

7

the Plan, the Confirmation Order and this Trust Agreement." Liquidating Trust Agreement § 7.4;

*see also* Confirmation Order ¶ 19 (approving execution of the Liquidating Trust Agreement).

15.    Among other things, the Plan provides that:

a.    **Trust Authority to Settle Claims**:  Pursuant to Section 27.6 of the Plan and Section 6.2 of the Liquidating Trust Agreement, the Liquidating Trustee shall have the authority to "in the Liquidating Trustee's reasonable business judgment, <u>investigate, prosecute, settle</u>, and/or abandon rights, Causes of Action, Claims, or litigation of the Liquidating Trust, including, without limitation, Avoidance Actions." Liquidating Trust Agreement § 6.2(b)(iii) (emphasis added); *see also* Plan § 27.6 (same).  Pursuant to this authority, the Trust exercised its reasonable business judgment and determined that it was in the best interests of the Debtors, their estates, and stakeholders, to settle the claims arising under certain securities underwriting agreements.  Notably, Section 6.2(d) of the Liquidating Trust Agreement further provides that "[e]xcept as otherwise provided in this [Liquidating] Trust Agreement, the Liquidating Trustee <u>will not be required to obtain the order or approval of the Bankruptcy Court</u>, or any other court of competent jurisdiction in, or account to the Bankruptcy Court or any other court of competent jurisdiction for, the exercise of any right, power, or privilege conferred hereunder." Liquidating Trust Agreement § 6.2(d) (emphasis added).

Griffin's objection to this settlement has already been overruled by this Court and she should be enjoined from further commencing the Litigation in yet another court.

b.    **Release**:  Section 41.6(a) of the Plan provides that "[o]n the Effective Date, for good and valuable consideration, and to the fullest extent permissible under applicable law, <u>each Entity (Creditor or holder of an Equity Interest)</u> that (i) has held, currently holds, or may hold, a Released Claim . . ., (ii) is entitled to receive, directly or indirectly, a distribution or satisfaction of its Claim or Equity Interest pursuant to the Plan, and (iii) elects, by not checking or checking the appropriate box on its Ballot or election form, as the case may be, to grant the releases set forth in this Section 41.6, on their behalf and on behalf of anyone claiming through them, shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit and discharge (1) each and all of the Released Parties from any and all Released Claims and/or any claim, act, fact, transaction, occurrence, statement, or omission in connection with or alleged in the Actions . . . that could have been alleged in respect of the foregoing or other similar proceeding, including, without limitation, any such claim, demand, right, liability, or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred by the releasers herein arising directly or indirectly from or otherwise relating thereto . . . ." Plan § 41.6 (emphasis added); *see also* Confirmation Order ¶ 54 (same). Furthermore, "all Entities that hold, have held, or may hold . . . an Equity Interest that is released . . . <u>are, and shall be, permanently, forever and completely, stayed, restrained, prohibited, barred, and enjoined</u> from taking any of the following actions, whether directly or indirectly,

on account of or based on the subject matter of . . . such Equity Interests: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding in any forum . . . and (v) commencing or continuing in an manner, in any place of any judicial, arbitration, or administrative proceeding in any forum, that <u>does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.</u>" Plan § 41.7 (emphasis added); *see also* Confirmation Order ¶ 56(b) (same).

Griffin has released claims on account of her preferred equity interests in exchange for rights under the Plan and Liquidating Trust Agreement, rights which this Court has already determined have been honored and respected throughout the liquidation of the Debtors' assets for the benefit of all stakeholders.  Griffin is forever restrained, prohibited, and enjoined from commencing the Litigation, which seeks to undermine the Plan that has already been consummated.

c.    **<u>Injunction</u>**:  Section 41.3 of the Plan provides that "all Entities who have held, hold, or may hold . . . Equity Interests or other right of equity interest that is terminated or cancelled pursuant to the Plan or the Global Settlement Agreement . . . are <u>permanently enjoined</u>, from and after the Effective Date from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such . . . Equity Interest that is terminated, cancelled, assumed, or transferred pursuant to the Plan against any of the Released Parties or any of their respective assets, property, or estates . . . . <u>Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets, property, and estates.</u>"  *See also* Confirmation Order ¶ 56(a) (same).

Under the Plan's injunction, Griffin is enjoined from pursuing the Litigation against the Trust, and Mr. Cooper (as successor-in-interest of Reorganized WMI) on account of her equity interests.  Her exclusive remedy is proceeding under the provisions of the Liquidating Trust Agreement in this Court, as she already has. Her dissatisfaction at the result does not grant her the ability to seek an alternative ruling from another court.

d.    **<u>Discharge</u>**:  Pursuant to Section 41.2 of the Plan, "all distributions and rights afforded under the Plan and the treatment of Claims and Equity Interests under the Plan, <u>shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of . . . all Equity Interests, or other rights of a holder of an Equity Interest</u>, relating to any of the Debtors or the Reorganized Debtors or any of their respective assets, property and estates, or interests of any nature whatsoever . . . regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such . . . Equity Interests or other rights of a holder of an equity security or other ownership interest. . . .  As of the Effective Date, and in consideration for the value provided under the Global Settlement Agreement to effectuate the Plan, each holder of a Claim or Equity Interest in any Class under this Plan shall be and hereby is <u>deemed to release</u>

and forever waive and discharge as against each and any of the Debtors and the Reorganized Debtors, and their respective assets, property, and estates, all such Claims and Interests." Plan § 41.2 (emphasis added); *see also* Confirmation Order ¶ 52 (same).

Pursuant to the release, injunction, and discharge provisions of the Plan, Griffin and all other holders of Class 19 interests exchanged such preferred equity interests for interests in the Liquidating Trust, subject in all respects to the provisions of the Liquidating Trust Agreement. Griffin has already adjudicated the allegations contained in the Amended Complaint in this Court and it has been decided by this Court, and confirmed multiple times on appeal, that such allegations lack merit.

e.    **Exculpation**: Section 41.8 of the Plan provides that "[t]he Debtors . . . and each of their [] professionals shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Chapter 11 Cases . . ., the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan or Supplemental Disclosure Statement related thereto, the Global Settlement Agreement, or any contract, instrument, release, or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan and the Global Settlement Agreement." Plan § 41.8 (emphasis added); *see also* Confirmation Order ¶ 57 (same). Likewise, the Liquidating Trust Agreement provides that "no Liquidating Trust Beneficiary, holder of a Claim, holder of an Equity Interest, or other party-in-interest shall have or be permitted to pursue any claim or cause of action against the Liquidating Trustee, the Liquidating Trust, the employees, professionals or representatives of either the Liquidating Trustee or the Liquidating Trust (including the Trust Professionals) or the members of the Trust Advisory Board and the Litigation Subcommittee, for making payments in accordance with, or for implementing, the provisions of the Plan, the Confirmation Order and this Trust Agreement." Liquidating Trust Agreement § 7.4 (emphasis added).

Again, Griffin has filed the Litigation in explicit violation of the exculpation provisions of the Plan and the Liquidating Trust Agreement. There is no remedy available to Griffin and she should be enjoined from relitigating the allegations contained in the Litigation in another forum in direct contravention of the Liquidating Trust Agreement under which she has received recoveries on account of her Class 19 interests.

f.    **Retention of Jurisdiction**: The Plan provides that "[t]he Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases or the Plan, or that relates to the following:  . . . (b) to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan . . .; (g) to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code . . .; [and] (k) to issue injunctions, enter and implement other orders, or take such other actions as

may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan or the Global Settlement Agreement." Plan § 38.1 (emphasis added); *see also* Confirmation Order ¶ 83 (retaining exclusive jurisdiction to the fullest extent legally permissible "including, but not limited to, jurisdiction over the matters set forth in Article XXXVIII of the Plan."). Additionally, the Liquidating Trust Agreement provides that "the parties agree that the Bankruptcy Court shall have exclusive jurisdiction over the Liquidating Trust and the Liquidating Trustee, including, without limitation, the administration and activities of the Liquidating Trust and the Liquidating Trustee, and, pursuant to the Plan, the Bankruptcy Court has retained such jurisdiction." Liquidating Trust Agreement § 9.2 (emphasis added).

Acknowledging this Court's exclusive jurisdiction over the allegations contained in the Litigation, Griffin has repeatedly asserted such claims before this Court. Her dissatisfaction with the Court's binding rulings on such issues does not exempt her allegations from this Court's jurisdiction and does not provide an avenue to seek such relief in an alternative forum of her choosing. The Court should enjoin Griffin from proceeding with such baseless accusations outside of the exclusive jurisdiction of this Court.

16.     On March 19, 2012, the Effective Date occurred and the transactions contemplated by the Plan were consummated, including, without limitation, initial distributions of over $6.5 billion being made to holders of Allowed Claims. Subsequent thereto, additional distributions in the approximate amount of $932 million were made to holders of Allowed Claims.

17.     On December 20, 2019, the Court entered that certain *Final Decree and Order Closing Reorganized Debtors' Chapter 11 Cases and Terminating Certain Claims and Noticing Services* [Docket No. 12707] (the "Final Decree"). The Final Decree, entered over Griffin's strenuous objection asserting many of the same claims contained in the Litigation, closed the Debtors' Chapter 11 Cases and approved certain procedures for winding-up the Trust following the issuance of final distributions. The Trust is currently in position to distribute its minimal remaining assets to charity pursuant to the provisions of the Plan and Liquidating Trust Agreement. The Final Decree was entered "without prejudice to the rights of [the Trust], the Reorganized Debtors or other parties in interest to seek to reopen any of the Debtors' chapter 11 cases for cause pursuant to section 350(b) of the Bankruptcy Code." Final Decree ¶ 3.

B.      **Alice Griffin's Allegations**

18.      Since the commencement of the Debtors' Chapter 11 Cases, certain of WMI's equity interest holders have waged a war of misinformation with the Court, the Debtors, the Reorganized Debtors, the Trust, and their respective professionals.  Such tactics have included speculative, inaccurate or misleading financial information being posted to electronic message boards, the dissemination of erroneous information regarding activities of the Debtors, the Trust, and members of the Trust's management and the Trust Advisory Board, as well as personal attacks on each of the foregoing.  At times during the course of the Debtors' Chapter 11 Cases, such equity holders corresponded with the National Director and the Acting Region 3 Director of the Office of the United States Trustee asserting, among other theories, many of the same issues addressed in the Griffin Appeal (as defined below) and which Griffin seeks to relitigate through the Litigation. Each time, the Trust responded with comprehensive explanations and detailed references to documents and instruments approved by the Court and, each time, this Court and the Office of the United States Trustee accepted the Trust's reasoned explanations and disregarded the ongoing diatribes.

19.      Of course, neither the Trust's numerous responses to informational requests of various equity holders (including postings on the Trust's website), nor multiple Court rulings dismissing such claims, have inhibited Griffin and other equity interest holders from pursuing them.  At their core, the claims allege that the Trust has billions of dollars' worth of secret, unaccounted-for assets that it and its fiduciaries are conspiring to withhold from equity holders, and the Trust improperly added settled underwriter claims to Class 19.  These assertions ignore reality evidenced through the Trust's repeated representations in publicly-filed quarterly summary reports and SEC filings, which have repeatedly shown that, based on the Trust's remaining net

assets and the amount of Allowed Claims and Disputed Claims in Class 18, there will **not** be additional distributions made to holders of interests in Classes 19, 21, and 22.

20.    Undeterred, on March 22, 2019, Griffin filed her first attempt at challenging the settlement by objecting to the underwriters' allowed Class 19 interests through that certain *First Omnibus Objection (Substantive) of Alice Griffin, Class 19 Interest Holder, to Claims (Nos. 3935 and 4045) Allowed Pursuant to a Stipulation Dated March 28, 2013 Between the WMI Liquidating Trust and Morgan Stanley & Co., Incorporated, Credit Suisse Securities (USA) LLC, and Goldman, Sachs & Co., on Behalf of Themselves and Certain Underwriters* [Docket No. 12595] (the "Objection").  The Court, following full briefing on the issue and a hearing, overruled the Objection at Docket No. 12619.  The Court's order was timely appealed and, on March 23, 2020, the United States District Court for the District of Delaware affirmed the Court's ruling and found that the Trust acted within its authority and in the best interests of the Trust Beneficiaries in settling the subject claims.  This issue was further appealed to the Third Circuit, which affirmed the Court's decision, and, upon further application, refused to reconsider the issue *en banc*.  Griffin has represented that she intends to file a writ of certiorari with the Supreme Court of the United States on this issue (such appeals, collectively, the "Griffin Appeal").  Griffin also filed that certain *Objection of Alice Griffin to the Application of WMI Liquidating Trust for an Order, Pursuant to Section 350 of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Bankruptcy Rule 3022-1, Authorizing, Among Other Things, (A) Closing the Chapter 11 Cases of Washington Mutual, Inc. and WMI Investment Corp. and (B) Authorizing the Wind-Up and Dissolution of the WMI Liquidating Trust* [Docket No. 12691], repeating much of the same arguments.  Once again, this objection was overruled at Docket No. 12707, and the Chapter 11 Cases were closed.

21.    The Litigation is just the latest attempt by Griffin to replace reality with her desired outcome.  Through the Litigation, Griffin once again alleges generally that:  (i) the Trust and the Liquidating Trustee improperly settled the claims of certain underwriters by allowing their claims in Class 19, and (ii) an undisclosed "Source" claims that hundreds of billions of dollars' worth of mortgage-backed securities belonging to the Debtors exist and are being withheld from the Liquidating Trust Beneficiaries for unknown reasons.  Firstly, as recognized by this Court, in addition to the District Court and the Third Circuit, the Trust acted in accordance with the terms and provisions of the Plan, the Confirmation Order, and the Liquidating Trust Agreement. Moreover, Griffin continues to fail to appreciate the economics of the challenged settlement, whereby the Trust disposed of a $24 million claim which would otherwise have been senior in right of recovery to holders of interests in Class 19 in an effort to generate value for such interest holders.

22.    Additionally, through the Litigation, Griffin continues to allege that the Trust attempted to mislead the Court by claiming that the execution of the settlement was a stealth operation intended not to be seen by the Court or the Trust's stakeholders.  In reality, however, the execution and effectiveness of the settlement was publicly disclosed in filings with the Securities and Exchange Commission (the "SEC") a mere four (4) days later and in quarterly summary reports filed with the Court, which were also filed under Form 8-K and published in numerous places, including the Trust's website.  This Court has already overruled Griffin on these grounds in its bench decision overruling Griffin's objection to the underwriter claims.

23.    While the Trust appreciates that Griffin and other equity interest holders continue to feel slighted by the FDIC's seizure of WMB, at some point (now over 12 years later), they must accept the fact of the seizure and that everything possible has been done to maximize the value of

the Debtors for parties in interest.  They must accept that the Trust has generated recoveries far beyond those projected years before and, in accordance with the Final Decree (which order was not appealed and is final) is now prepared to distribute its final assets and wind-up its affairs.

24.     Unfortunately, the Court's prior rulings do not seem to have sufficiently sated such equity holders, despite the fact that they received significant value through an exceedingly transparent process in a case where creditors were not paid in full.  The misleading and baseless allegations must come to an end.  The Trust respectfully submits that this can only be done through the issuance of an order (i) enjoining further prosecution of the Litigation, and (ii) imposing sanctions upon Griffin for her frequent harassment of the Trust through prosecution of the same groundless theories this Court has denied.

## RELIEF REQUESTED

25.     By this Motion, the Trust respectfully requests that this Court enter an order (i) finding that Griffin knowingly and intentionally violated this Court's Confirmation Order and Plan, (ii) enforcing the release, injunction, discharge, and exculpation provisions contained in the Plan and Confirmation Order and requiring Griffin to dismiss with prejudice the Litigation, (iii) enjoining Griffin from pursuing enjoined and released claims and causes of action, as well as relitigating collaterally estopped allegations, against the Trust in further violation of the Confirmation Order and Plan, (iv) sanctioning Griffin and requiring her to repay the Trust for all amounts incurred in defending against the Litigation, and (v) granting the Trust all other equitable relief that the Court deems just and proper.

**BASIS FOR RELIEF**

A.     **Griffin is Prohibited from Pursuing the Litigation Pursuant to the Doctrines of Collateral Estoppel and Res Judicata**

26.     Aside from Griffin's purported reliance upon information gleaned from an undisclosed and unknown third-party source, there is nothing new alleged or otherwise contained in the Amended Complaint.  These issues have been addressed *ad nauseum* throughout the decade-plus that these Chapter 11 Cases have been before this Court.  They have been considered, dismissed, and cast aside.  Griffin's displeasure with the Court's rulings does not provide grounds for relitigating these issues in another forum and Griffin, as a lawyer, should therefore be collaterally estopped and enjoined from proceeding with the Litigation.

27.     The crux of the Amended Complaint is that, (i) "[i]nstead of Complying with Section 1.73(b) [of the Plan], the Trust gave the Underwriters Class 19 interests, which, as previously explained, entitled them to (a) approximately 120,000 shares of Mr. Cooper Stock, which they received, and (b) a portion of Class 19's 75% share of any recovery" and (ii) a conspiracy is underfoot to deprive holders of Class 19 interests from any further recovery on account of billions of dollars' worth of mortgage-backed securities that are supposedly siphoned away in Mr. Cooper.  Amended Complaint ¶ 21.  All of the Counts of the Amended Complaint are ground in these two fundamentally incorrect premises, which have already been found to be false by this Court.

28.     The doctrine of collateral estoppel ensures that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979).  "The prerequisites for the application of issue preclusion are satisfied when:  (1) the issue sought to be precluded is the same as that

involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *Burlington N. R. Co. v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995) (citing *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992)).

29.     "Similarly, '[c]laim preclusion, formerly referred to as res judicata, gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding.  Claim preclusion requires:  (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action.'" *In re Summit Metals, Inc.*, 477 B.R. 484, 500 (Bankr. D. Del. 2012) (citing *Bd. of Trs. of Trucking Emps. Of North Jersey Welfare Fund, Inc.-Pension Fund v. Centra*, 984 F.2d 495, 504 (3d Cir. 1992)).

30.     Counts one through five—all of which seek relief relating to Class 19's rights under the Plan—are no more than a window-dressed relitigation of Griffin's Objection to the underwriters' claim and are barred under res judicata.  Amended Complaint pp. 12-17.  Griffin herself admits that the allegations raised in count one of the Amended Complaint were raised in the Griffin Appeal to the Third Circuit and that "[t]he Third Circuit refused to consider th[e] issue because it had not been raised before the Bankruptcy Court."  Amended Complaint ¶ 40.  The Third Circuit determined that Griffin could not raise the issue because, although not litigated, it could have been raised at the earlier stage of litigation and was not.  For the exact same reasons here, Griffin is prohibited under res judicata from asserting the allegations of count one, as well as counts two through five which are premised upon the allegations contained in count one.  Griffin has already challenged the entry into and structure of the underwriter settlement in this Court through the Objection.  Griffin's Objection was necessarily overruled on all grounds by this Court,

which decision was affirmed by both the District Court and the Third Circuit. Griffin has taken her proverbial bite at the apple and cannot now give it another try. *See, e.g., Summit*, 477 B.R. 484, 500 (Bankr. D. Del. 2012) (requiring dismissal of a creditor's post-bankruptcy state-court action because "all of [the creditor's] claims were either asserted as objections during the main bankruptcy case and explicitly rejected by the Court, or directly related to motions approved by the Court after hearings for which he was present, but did not object. [Dismissal was warranted because] [t]he normal rules of res judicata and collateral estoppel apply to decisions of bankruptcy courts.") (internal quotations omitted).

31.    Just like in *Summit*, counts one through five of the Amended Complaint are based in the same issues that have previously been litigated and which cannot subsequently be relitigated in a separate forum. The basis of Griffin's complaints regarding the impacts of the underwriter settlement on her interests is that this Court's decision overruling the Objection was incorrect. Griffin is already in the process of litigating this issue, having lost at every stage of litigation of the Griffin Appeal, and seemingly intends to petition the United States Supreme Court to review the issue. In the unlikely scenario that the Supreme Court were to decide to exercise jurisdiction over the Griffin Appeal, the impact of any such decision will ultimately flow down to this Court for either implementation or further adjudication. But under no circumstances does the pending Griffin Appeal provide Griffin an avenue to start again from the top and retry her failed theories of law and fact from slightly different angles. The issue of whether the settlement providing certain underwriters claims in Class 19 was proper has been actually litigated in this Court, has been determined by a final judgment, and was essential to this Court's overruling of Griffin's Objection. Griffin is therefore collaterally estopped from pursuing counts one through five of the Amended Complaint. In addition, to the extent that the allegations argue the same points from new angles

that could have been asserted in the Objection, but were not, Griffin is equally estopped from asserting such allegations at this late stage. *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) ("In evaluating whether [the elements of res judicata are met], we do not proceed mechanically, but focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out of the same occurrence in a single suit.  In so doing, we avoid piecemeal litigation and conserve judicial resources.  The purpose of res judicata is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources and, by preventing inconsistent decisions, encourage reliance on adjudication.") (internal quotations omitted).  All of these purposes are best served by enjoining the Litigation and requiring dismissal of the Amended Complaint with prejudice.

32.    Furthermore, these counts request that the SDNY interpret and enforce the Plan, which requests violate this Court's exclusive jurisdiction over the Plan and Confirmation Order and collaterally attack this Court's interpretations of its own orders.  *See, e.g.*, *In re Atari, Inc.*, 2016 WL 1618346 at *7-8 (Bankr. S.D.N.Y. 2016) (reopening a debtor's bankruptcy case to enjoin a proceeding in another forum, when such proceeding sought to interpret the effects of the Plan upon two non-debtors, finding that even if neither party was a debtor the alternative forum was not an appropriate venue for adjudication because "pursuant to the jurisdiction retention provisions of the Plan and Confirmation Order, this Court is the exclusive forum for interpreting and enforcing the releases that are the subject of the dispute between [the parties].").  Similarly, here, this Court is the exclusive jurisdiction for interpreting the Plan and its effects on Griffin and other holders of Class 19 interests.  This Court should not permit Griffin to run an end-around to avoid its exclusive jurisdiction or its prior rulings.

33.    Finally, Counts six through nine reassert Griffin's unfounded claims that there is significant unaccounted for value in mortgage-backed securities that the Trust has failed to capture

for the benefit of its stakeholders.  As described further herein and throughout these proceedings, this is simply a figment of Griffin's imagination and a misreading of consolidated historical financial information.  The Trust has exhaustively captured value for its stakeholders through expansive litigation and has determined in its business judgment that there remain no further assets to distribute to stakeholders.  Griffin has raised these claims already in connection with her objection to this Court closing the Debtors' Chapter 11 Cases in the first place, as well as her attempt to withdraw the reference from the District Court.[5]  Once again, Griffin cannot be permitted to relitigate these issues in another forum on the basis of her disappointment.  The issue of whether there was significant unaccounted for value was integral to the Court's determination to close these Chapter 11 Cases and to wind-up the Trust.  Griffin is therefore prohibited from pursuing these claims pursuant to both res judicata and collateral estoppel.

**B.    To the Extent Griffin Seeks to Require the Debtors to Recover Estate Property, Such Claims are Derivative and Have Been Released Under the Plan and Global Settlement Agreement**

34.    As an initial matter, it must be made clear that the Trust has liquidated and distributed all of the Debtors' assets.  In the Trust's reasonable business judgment, there exist no more assets to recover, including Litigation Proceeds.  The collection, negotiation and distribution of assets is the sole responsibility of the Trust, the Liquidating Trustee, and the court-approved administrators, in accordance with the provisions of the Plan and the Liquidating Trust Agreement.  Accordingly, the Trust has engaged in protracted litigation, including one case that spanned over

---

[5] *See e.g.*, *Objection of Alice Griffin to the Application of WMI Liquidating Trust for an Order, Pursuant to Section 350 of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Bankruptcy Rule 3022-1, Authorizing, Among Other Things, (A) Closing the Chapter 11 Cases of Washington Mutual, Inc. and WMI Investment Corp. and (B) Authorizing the Wind-Up and Dissolution of the WMI Liquidating Trust* [Docket No. 12691] at ¶ 13, n. 10 (arguing that the Chapter 11 Cases should not be closed because "[a]s argued by Griffin at the April 22, 2019 hearing before this Court . . . [Griffin believes there exist] $116 billion in mortgage-backed securities [owned by WMI] . . . that were seized by the FDIC and that have never been returned.").

six years and three federal courts, to resolve and capture all of the Debtors' assets for distribution. Griffin's assertion that there are additional assets yet untapped—hundreds of billions of dollars' worth, even—is belied by the facts of the Chapter 11 Cases, and the efforts of the Litigation Subcommittee and the Trust to litigate and collect on all available Causes of Action.

35.    As the Court is well aware, through having presided over these Chapter 11 Cases as well as through regularly-filed Quarterly Summary Reports, the Debtors and the Trust commenced numerous adversary proceedings to recover avoidable transfers, including many actions against former officers and employees of the Debtors.  Each of these actions has been resolved and closed.  Similarly, other claims and causes of action investigated and pursued by the Litigation Subcommittee, including against former officers and directors, were successfully resolved and resulted in significant recoveries for the Debtors' estates.  Based on all such efforts, the Trust determined prior to the closing of these Chapter 11 Cases that there are no additional assets available to the Trust.

36.    This includes the desired recovery of mortgage-backed securities, which, as described above, are not property of the Debtors or their estates, but, if they ever existed, were serviced by WMB and its subsidiaries prior to seizure by the FDIC.  As the Trust and the Debtors have made clear repeatedly, including through their schedules of assets filed in these Chapter 11 Cases, the Debtors only ever maintained a minimal interest in mortgage-backed securities in the amount of $84,000.  However, to the extent that Griffin continues to believe otherwise, it would not matter as any such claims have been released pursuant to the Plan and the Global Settlement Agreement contained therein.  Pursuant to the Global Settlement Agreement, the Debtors released any and all "claims or causes of action that arise in, relate to or have been or could have been asserted in the Chapter 11 Cases, the Receivership, or the Related Actions . . . and claims that

otherwise arise from or relate to the Receivership, the Purchase and Assumption Agreement, the 363 Sale and Settlement, the Plan, the [Global Settlement] Agreement, and the negotiations and compromises set forth in this [Global Settlement] Agreement and the Plan, including, without limitation, in connection with or related to any of the Debtors, the Affiliated Banks, and their respective subsidiaries, assets, liabilities, operations, property or estates, the assets to be received by JPMC pursuant to this [Global Settlement] Agreement, the Debtors' Claims, the JPMC Claims, the FDIC Claim, the WMI/WMB Intercompany Claims, [etc.] . . . ." Global Settlement Agreement at 14. Any return of allegedly-owned mortgage-backed securities would undoubtedly fall within this definition. Accordingly, the Court should enter an order enforcing the releases contained in the Plan and Global Settlement Agreement and prohibiting Griffin from further prosecuting the Litigation or any other action on account of such allegations.

37. The Supreme Court and Third Circuit agree that bankruptcy courts "plainly ha[ve] jurisdiction to interpret and enforce [their] own prior order." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999) ("In the bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court retains jurisdiction, *inter alia*, to enforce its confirmation order."), *aff'd sub nom. In re Cont'l Airlines, Inc.*, 279 F.3d 226 (3d Cir. 2002). This means that the bankruptcy court may order a party to dismiss a suit filed in violation of a plan and confirmation order and may enjoin such a party from taking actions that violate prior court orders or the restructuring process. *See Travelers*, 557 U.S. at 151 (affirming bankruptcy court order enjoining multiple state court lawsuits initiated in violation of third party release in confirmed Chapter 11 plan); *In re Summit Metals, Inc.*, 477 B.R. 484 (Bankr. D. Del. 2012) (entering order enjoining state court lawsuit precluded by the release and injunction provisions of confirmation order and confirmed plan); *In re Earned Capital*

*Corp.*, 393 B.R. 362, 371 (Bankr. W.D. Pa. 2008) (permanently enjoining the prosecution of a state court action that "amount[ed] to a collateral attack on the Order of Confirmation of the Debtor's Plan of Reorganization"); *In re Residential Capital, LLC*, 558 B.R. 838, 848-50 (Bankr. S.D.N.Y. 2014) (granting motion to enjoin plaintiff from prosecuting state court claims against non-debtor pursuant to terms of release and injunction in the Confirmation Order).

38.    The *Travelers* case is illustrative.  In *Travelers*, the bankruptcy court approved a settlement that was the "cornerstone" of the reorganization.  557 U.S. at 141.  Under the settlement, Travelers paid $80 million to the bankruptcy estate in exchange for a release and injunction of "any and all claims, demands, allegations, duties, liabilities and obligations (whether or not presently known) which have been, could have been, or might be, asserted by any Person against" Travelers.  *Id.* at 142.  More than a decade later, various plaintiffs began filing actions against Travelers.  *Ibid.*  Travelers went to the bankruptcy court and asked for an order enforcing the release and injunction provisions of the confirmation order and sought dismissal of the state court actions.

39.    After exhaustive litigation and appeals, the Supreme Court concluded that "the terms of the injunction bar the actions" and that "the finality of the Bankruptcy Court's orders following the conclusion of direct review generally" barred the state court suits, which were essentially "challeng[ing] the enforceability of the injunction."  *Id.* at 140.

40.    Similarly, here, Griffin is seeking to collaterally attack the Court's Confirmation Order.  To the extent that any claims ever existed with respect to mortgage-backed securities, they would have existed equally at the time of the Effective Date of the Plan.  Accordingly, under the plain language of the releases contained in the Plan, the Confirmation Order, and the Global Settlement Agreement, Griffin is enjoined from pursuing such claims and this Court can, and

should, enter an order permanently enjoining Griffin from seeking to once again relitigate these issues.

**C.    To The Extent The Amended Complaint Asserts Direct Claims Against the Debtors' Alleged Assets, Such Claims Have Been Released and Cannot be Prosecuted**

**I.    Claims on Account of Alleged Mortgage-Backed Securities Assets Are Released**

41.    Under the Plan, Griffin and other Class 19 holders received recoveries in the form of equity in the Reorganized Debtors "subject to the execution and delivery of a release in accordance with Section 41.6 of the Plan."  Plan § 23.1.

42.    Section 41.6(a) of the Plan provides that, "[o]n the Effective Date, [each party providing a release under the Plan], shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit and discharge (1) each and all of the Released Parties from any and all Released Claims and/or any claim, act, fact, transaction, occurrence, statement, or omission in connection with or alleged in the Actions . . . that could have been alleged in respect of the foregoing or other similar proceeding, including, without limitation, any such claim, demand, right, liability, or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred by the releasers herein arising directly or indirectly from or otherwise relating thereto . . . ."  Plan § 41.6 (emphasis added); *see also* Confirmation Order ¶ 54 (same).  Furthermore, "all Entities that hold, have held, or may hold . . . an Equity Interest that is released . . . <u>are, and shall be, permanently, forever and completely, stayed, restrained, prohibited, barred, and enjoined</u> from taking any of the following actions, whether directly or indirectly, on account of or based on the subject matter of . . . such Equity Interests: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding in any forum . . . and (v) commencing or continuing in an manner, in any place of any judicial, arbitration, or administrative proceeding in any forum, that <u>does not</u>

comply with or is inconsistent with the provisions of the Plan or the Confirmation Order." Plan § 41.7 (emphasis added); *see also* Confirmation Order ¶ 56(b) (same).

43.     Griffin's theories about hidden value and unaccounted-for recoveries fall squarely within the release provisions of the Plan, as any right to such mortgage-backed securities could have been asserted prior to the Effective Date.  Indeed, Griffin bases the entirety of her claims on her misunderstanding of historical consolidated financial information that was filed in the years leading up to the FDIC's seizure of WMB and the Debtors commencing these Chapter 11 Cases. To the extent Griffin wished to make any claims on this basis, she should have done so prior to providing a release in the Plan in order to receive her significant recovery. *See, e.g.*, *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989) (Confirmation order is "*res judicata* as to all issues decided or which could have been decided at the hearing on confirmation.").

44.     Additionally, the Plan and Confirmation Order also provide for discharge of, and implement an injunction against asserting, released and discharged claims.  Pursuant to Section 41.2 of the Plan, "all distributions and rights afforded under the Plan and the treatment of Claims and Equity Interests under the Plan, shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of . . . all Equity Interests, or other rights of a holder of an Equity Interest, relating to any of the Debtors or the Reorganized Debtors or any of their respective assets, property and estates, or interests of any nature whatsoever . . . regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such . . . Equity Interests or other rights of a holder of an equity security or other ownership interest . . . .  As of the Effective Date, and in consideration for the value provided under the Global Settlement Agreement to effectuate the Plan, each holder of a Claim or Equity Interest in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against

each and any of the Debtors and the Reorganized Debtors, and their respective assets, property, and estates, all such Claims and Interests." Plan § 41.2 (emphasis added); *see also* Confirmation Order ¶ 52 (same).

45.     Section 41.3 of the Plan provides that "all Entities who have held, hold, or may hold . . . Equity Interests or other right of equity interest that is terminated or cancelled pursuant to the Plan or the Global Settlement Agreement . . . are <u>permanently enjoined</u>, from and after the Effective Date from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such . . . Equity Interest that is terminated, cancelled, assumed, or transferred pursuant to the Plan against any of the Released Parties or any of their respective assets, property, or estates . . . . Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets, property, and estates." *See also* Confirmation Order ¶ 56(a) (same).

46.     Pursuant to the release, injunction, and discharge provisions of the Plan, Griffin and all other holders of Class 19 interests exchanged their preferred equity interests for interests in the Liquidating Trust, subject in all respects to the provisions of the Liquidating Trust Agreement. Griffin has already adjudicated the allegations contained in the Amended Complaint in this Court and it has been decided by this Court, and confirmed multiple times on appeal, that such allegations lack merit. Accordingly, and for the same reasons described further above in Part B, the claims asserted here have been released, exculpated, and discharged, and the Court may enter an order enjoining Griffin from pursuing these claims. *See Travelers*, 557 U.S. 137 (2009).

## II.    Griffin Cannot Pursue Claims Against the Trust On Account of The Underwriter Settlement

47.    Among the key aspects of the implementation and approval of the Plan is the approval of the Liquidating Trust Agreement and each party in interest being subject thereto.  As a condition of receiving the significant recoveries already obtained by Griffin and other holders of Class 19 interests, such holders agreed to be bound by the Liquidating Trust Agreement.

48.    Pursuant to Section 27.6 of the Plan and Section 6.2 of the Liquidating Trust Agreement, the Liquidating Trustee shall have the authority to "in the Liquidating Trustee's reasonable business judgment, investigate, prosecute, settle, and/or abandon rights, Causes of Action, Claims, or litigation of the Liquidating Trust, including, without limitation, Avoidance Actions."  Liquidating Trust Agreement § 6.2(b)(iii) (emphasis added); *see also* Plan § 27.6 (same).  Pursuant to this authority, the Trust exercised its reasonable business judgment and determined that it was in the best interests of the Debtors, their estates, and stakeholders, to settle the claims arising under certain securities underwriting agreements.  Notably, Section 6.2(d) of the Liquidating Trust Agreement further provides that, "[e]xcept as otherwise provided in this [Liquidating] Trust Agreement, the Liquidating Trustee will not be required to obtain the order or approval of the Bankruptcy Court, or any other court of competent jurisdiction in, or account to the Bankruptcy Court or any other court of competent jurisdiction for, the exercise of any right, power, or privilege conferred hereunder."  Liquidating Trust Agreement § 6.2(d) (emphasis added).

49.    Apparently believing that the provisions of the Liquidating Trust Agreement were not honored by the Liquidating Trustee in entering into the settlement with certain underwriters, Griffin filed her Objection to such claims.  Following full briefing and a hearing on the issue, this Court overruled the Objection, a decision that has been supported now by the District Court and

the Third Circuit. Without delving once again into the myriad reasons why Griffin's Objection was misguided and failed to comprehend the financial outcome that a victory on the Objection would have,[6] Griffin has already litigated these issues and this Court can and should permanently enjoin Griffin from reasserting them elsewhere in violation of this Court's prior orders.

**D.    Griffin Should be Sanctioned for Intentionally and Knowingly Violating the Plan, Confirmation Order, and Liquidating Trust Agreement With the Purpose of Harassing the Trust**

50.    Griffin commenced the Litigation fully aware that such issues had already been litigated to her dissatisfaction in this Court and seeking to start again anew. Having been informed multiple times that there would be no further distribution to holders of Class 19 interests, Griffin filed the initial complaint knowing that any costs incurred in needlessly defending against the baseless Litigation would not harm her interests, but rather, would only reduce recoveries to other parties and delay the orderly and efficient wind-up of the Trust. Indeed, counsel to the Trust warned Griffin in advance of filing the Litigation that reasserting duplicative issues in a new forum would prejudice the Trust and that the Trust would seek the imposition of sanctions on account of such needless Litigation. Unfortunately for the Trust beneficiaries, Griffin remained intent on harassing the Trust, the Liquidating Trustee, the court-approved administrators, and their professionals. This Court can, and should, sanction Griffin for the delay and harm she has knowingly and intentionally caused by requiring Griffin to compensate the Trust for all costs incurred in defending against the Litigation, including in reopening this Chapter 11 Case.

51.    28 U.S.C. § 1927 provides that "[a]ny attorney or person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any

---

[6] This Court may recall that, pursuant to the settlement, the underwriters' claim for approximately $72 million in Class 19 interests was allowed, while a superior claim for $24 million in Class 18 was withdrawn.

case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Additionally, pursuant to section 105 of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]" and may "tak[e] any action or mak[e] any determination necessary to enforce or implement court orders or rules, or to prevent an abuse of process."  11 U.S.C. § 105(a).  The Trust respectfully submits that both of these provisions are applicable here and authorize the Court to impose sanctions upon Griffin for violating the provisions of the Plan and Confirmation Order, and her vexatious and harassing litigation of issues already decided by this Court.

52.     As this Court is aware, "[c]ivil sanctions are appropriate when (1) a valid order of the court exists, (2) the defendant has knowledge of the order, and (3) the defendant disobeys the order."  Here there is no doubt that Griffin was aware of the Confirmation Order, as well as the Court's orders overruling the Objection or closing the Chapter 11 Cases, or the District Court's order declining to withdraw the reference from this Court.  Fully aware of such orders and the issues litigated therein, Griffin nonetheless sought to disobey such orders by seeking the same relief through another Court.

53.     In fact, attached as Exhibit A to the Amended Complaint are copies of letters delivered to Griffin by Trust counsel (i) on March 4, 2021, months in advance of the commencement of the Litigation (the "March Letter"), and (ii) on May 26, 2021 (the "May Letter"), following the commencement of the Litigation.  The March Letter clearly informs Griffin that the filing of the Litigation will "violat[e] (among other things) the discharge injunction and other provisions of the Plan and Confirmation Order."  Letter at 2.  Additionally, Griffin was warned that "there [] is not any reasonable, good faith basis on which [Griffin] (as plaintiff or

counsel) may file and/or prosecute [the Litigation]" because it "would be precluded by the earlier decisions of the Bankruptcy Court, the Delaware District Court and the Third Circuit, as an impermissible attempt to relitigate matters resolved by those courts."  March Letter at 3.  Finally, the Trust gave Griffin prior notice of the sanctionable nature of her proposed conduct and the Trust's intent to seek any such appropriate relief.  *Ibid.*  Even after Griffin ignored the March Letter and commenced the Litigation, the Trust delivered the May 26 Letter, describing the deficiencies in the complaint and thus providing another opportunity to withdraw the initial complaint without prejudice and without any response.  May Letter at 1-2.  Instead, Griffin filed the Amended Complaint, removing WMI as a party and slightly modifying the requested relief, but continuing to hopelessly litigate the same tired complaints in the SDNY.  The Trust has given Griffin every opportunity to correct her course, but only sanctions and an order enjoining the Litigation will serve to prevent future misconduct by Griffin and remediate the harm already caused to the Trust.

54.    Moreover, sanctions are appropriate under 28 U.S.C. § 1927 when a party has "(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the costs of the proceeding; and (4) doing so in bad faith or by intentional misconduct."  *In re Radnor Holdings Corp.*, 2016 WL 1644499 (Bankr. D. Del. 2016) (citing *Claybrook v. AutoZone Tex. L.P. (In re Am. Remanufacturers, Inc.)*, 435 B.R. 235, 237-38 (Bankr. D. Del. 2011)).  In *Radnor*, the Court found a pro se litigant's conduct to be sanctionable where, following an unfavorable decision and the disposition of appeals, the litigant nonetheless continued to assert the same claims.  Accordingly, the Court issued an order permanently enjoining the litigant from further filing pleadings against the defendants, but did not impose monetary sanctions because the Court did not find that the litigant had multiplied the proceedings "with intent to harass or to cause delay or a needless increase in the cost of litigation."  Similar to the litigant in *Radnor*, Griffin has

already litigated the issues asserted in the Amended Complaint and has received adverse decisions

from this Court and throughout the Griffin Appeal.  Unlike the pro se litigant in *Radnor*, however,

Griffin is not funding the pleadings out of her own pocket, but rather, upon information and belief,

has sought or is being funded through a crowdsourced campaign targeted towards other holders of

Preferred Equity Interests and Class 19 interests.[7]  Griffin also has repeatedly sought payment from

the Trust, not on account of her claim in the case, but specifically based on her actions in pursuing

the Griffin Appeal and the Litigation.  *See, e.g.*, Amended Complaint ¶ 79; *id.*, p. 23 (asking for a

percentage award or $1,295 per hour plus costs and expenses).  Accordingly, Griffin has evidenced

an individual, pecuniary interest in connection with the filing of the Griffin Appeal and the

Litigation.  Griffin also appears well aware of the impermissibility of her actions and to be filing

such actions as a direct result of having encountered adverse verdicts in this Court and other courts.

Griffin also has taken the position that the Trust may not terminate until after Griffin's litigations

are finally concluded, evidencing Griffin's attempt to frustrate the Trust as it attempts to make its

final charitable distribution and terminate.  All of Griffin's actions have increased the costs of the

Trust, including the costs associated with reopening this Chapter 11 Case, and the attorneys' fees

and costs incurred in prosecution the related motions.  This Court should impose financial

sanctions on Griffin for such misconduct.

55.    Griffin's Amended Complaint is frivolous in that, to the extent that she has made

any serious inquiry into the factual basis therefor, she has seemingly ignored the results of such

inquiry.  The Amended Complaint reasserts baseless allegations that have been duly considered

and dismissed by this Court.  Griffin has repeatedly failed to consider the public filings of the

---

[7]  While the initial complaint in the Litigation provided that it was being filed "pro se," the Amended Complaint
removes this designation.

Trust, as well as the Trust's explanations for her misunderstandings, and trudged ahead willingly ignoring the plain and simple truth—that the Debtors do not and never have had any interest in mortgage-backed securities above the $84,000 delineated on their schedules of assets.  And yet, despite multiple presentations to this effect and Court rulings denying her theories of recovery, Griffin has filed the Amended Complaint to harass the Trust and needlessly raise its costs.

56.     For all of the foregoing reasons, the Trust respectfully submits that this Court should impose sanctions upon Griffin and require her to repay the costs associated with reopening the Chapter 11 Case, seeking the relief requested herein, and for defending against the Litigation.

**<u>NOTICE</u>**

57.     Notice of this Motion will be provided to:  (i) the Office of the United States Trustee; (ii) Griffin; (iii) counsel for Mr. Cooper; and (iv) any party that has requested notice pursuant to Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Trust submits that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

## **CONCLUSION**

**WHEREFORE** for the reasons set forth above, the Trust respectfully requests that this

Court grant the relief requested herein, substantially in the form of order attached hereto as **Exhibit**

**1**, and grant such other and further relief as the Court may deem just and proper.

Dated: June 4, 2021                                  Respectfully submitted,
Wilmington, Delaware


                                                    /s/  *Marcos A. Ramos*
                                                    RICHARDS, LAYTON & FINGER, P.A.
                                                    Marcos A. Ramos (No. 4450)
                                                    Cory D. Kandestin (No. 5025)
                                                    One Rodney Square
                                                    920 North King Street
                                                    Wilmington, Delaware 19801
                                                    Telephone: (302) 651-7700
                                                    Facsimile:  (302) 651-7701

                                                        -and-

                                                    PROSKAUER ROSE LLP
                                                    Brian S. Rosen
                                                    Eleven Times Square
                                                    New York, NY 10036
                                                    Telephone: (212) 969-3000
                                                    Facsimile:  (212) 969-2900

**<u>Exhibit 1</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| ***In re*** | Chapter 11 |
| **WASHINGTON MUTUAL, INC., *et al.*,[1]** | Case No. 08-12229 (MFW) |
| **Reorganized Debtors.** | **Ref. Docket No. ___** |

**ORDER GRANTING MOTION OF WMI LIQUIDATING TRUST TO (I) ENFORCE
THE EXCULPATION, INJUNCTION, RELEASE, AND DISCHARGE
PROVISIONS OF THE DEBTORS' JOINT CHAPTER 11 PLAN
AND CONFIRMATION ORDER AND (II) IMPOSE SANCTIONS**

Upon the motion, dated June 4, 2021 (the "Motion")[2], of WMI Liquidating Trust (the

"Trust"), sections 105, 1129, 1141, and 1142 of title 11 of the United States Code (the "Bankruptcy

Code"), Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

28 U.S.C. § 1927, for entry of an order (this "Order") (i) enforcing the exculpation, injunction,

discharge, and release provisions contained in the *Seventh Amended Joint Plan of Affiliated*

*Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 9178] (the

"Plan") and the *Findings of Fact, Conclusions of Law, and Order Confirming the Seventh*

*Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy*

*Code* [Docket No. 9759] (the "Confirmation Order") against Ms. Alice Griffin ("Griffin") and

(ii) imposing sanctions; and the Court having found that the Court has jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated

February 29, 2012; and the Court having found this is a core proceeding pursuant to 28 U.S.C.

---

[1]  The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, were: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395).  The Reorganized Debtors had a former address of 1201 Third Avenue, Suite 3000, Seattle, Washington 98101.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

§ 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and the Court having found that the Trust provided adequate and appropriate notice of the Motion under the circumstances and that no other or further notice is required; and the Court having reviewed the Motion and having heard statements in support of the Motion at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefore,

**IT IS HEREBY FOUND, DETERMINED, AND ORDERED THAT:**

1.      Griffin knowingly and intentionally filed the Amended Complaint in violation of this Court's Confirmation Order and confirmed Plan.

2.      Griffin is hereby barred and enjoined from prosecuting the Amended Complaint, pursuant to the release, injunction, discharge, and exculpation provisions of the Confirmation Order and the Plan, and pursuant to the doctrine of collateral estoppel.

3.      Griffin is hereby directed to dismiss the Amended Complaint with prejudice and to refrain from filing any further pleadings against the Trust, the Liquidating Trustee, the Debtors, their estates, and their respective professionals, employees, affiliates, and agents, on account of any of the allegations contained in the Amended Complaint.

2

4.      Notwithstanding anything otherwise contained herein, nothing contained in this Order shall abridge, limit, or otherwise impact Griffin's rights to pursue the Griffin Appeal and to file a writ of certiorari with the Supreme Court of the United States.

5.      Griffin shall reimburse the Trust for all reasonable costs incurred in defending against the Litigation, including, but not limited to, the costs incurred in reopening this Chapter 11 Case, preparing the Motion, and appearing before this Court.  The Trust shall file a schedule of its fees and expenses for which it seeks reimbursement within ten (10) days of the entry of this Order. Griffin shall have seven (7) days from the filing of such schedule to issue any objections thereto. If any such objections cannot be consensually resolved by the parties, a hearing shall be scheduled before this Court no later than fourteen (14) days after the service of notice of such hearing, to determine the appropriate amount of fees and expenses to be reimbursed pursuant to this Order.

6.      The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**<u>EXHIBIT 2</u>**

**Amended Complaint**

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

**ALICE GRIFFIN**,    :    Index No.1:21-cv-04554 (GHW)

               Plaintiff,    :

          – against –    :

                :    **AMENDED COMPLAINT**

**WMI LIQUIDATING TRUST**[1] and    :
**MR. COOPER GROUP INC.**,    :

          Defendants.    :

-------------------------------------------------------------------- x

Plaintiff, Alice Griffin brings this action for declaratory, injunctive, and other relief. The allegations set forth herein are based on Plaintiff's personal knowledge and on information and belief, including information provided to Plaintiff from credible sources and her review of publicly available information. Plaintiff alleges as follows:

### Nature of the Action

1.    Plaintiff owns a right to receive: (a) a pro rata share of seventy-five percent (75%) of (i) any Liquidating Trust Interests [2] and (ii) Litigation Proceeds Interests [3] (which arise on account of her right to receive Liquidating Trust Interests) (collectively, "Legacy

---

[1] WMI Liquidating Trust (the "Trust") may be named as a defendant in the instant action because it is not a 'Released Party' under Section 1.184 of the Plan (defined herein). (The Plan and its confirmation order (the "Confirmation Order") provide that no action can be brought against any party who is a former holder of a cancelled 'Equity Interest' (as defined in Section 1.103 of the Plan) such as Plaintiff.) Plaintiff brings the instant action against the Trust (a) to enforce terms of the Plan, (b) for post-confirmation acts, and (c) on account of her Legacy Interests (defined herein), which replaced her cancelled Equity Interests. See ¶ 30 and Note 11.

[2] Pursuant to Section 1.144 of the Plan, Liquidating Trust Interests are 'IOUs' issued by the Trust to a class in the waterfall if it is anticipated that there will be sufficient assets to pay that class. Although Plaintiff did not receive any Liquidating Trust Interests (i.e., because the Trust did not have sufficient assets to reach her class) she was granted a contingent right to receive them from under the Plan.

[3] Section 1.146 of the Plan defines 'Litigation Proceeds Interests' as "[t]he interest of a holder of a Claim or Equity Interest in [recovered assets] by virtue of such holder's right to receive Liquidating Trust Interests pursuant to the Plan."

1

Interests") issued by the Trust, the claims adjudication entity of the former Chapter 11 debtor Washington Mutual, Inc. ("WMI") pursuant to its plan of reorganization (the "Plan"); and (b) Defendant Mr. Cooper Group Inc. ("Mr. Cooper") issued common stock ("Mr. Cooper Stock").  The aforementioned Legacy Interests were issued to Plaintiff pursuant to Section 23.1 of the Plan in exchange for her cancelled preferred Equity Interests.  For two years Plaintiff has fought the Trust to prevent a post-confirmation claim of certain securities underwriters from diluting her Legacy Interests; persistently arguing that the Plan forbids any dilution of those Legacy Interests.  Plaintiff's objection has been rejected by three federal courts (the "Objection Litigation") and Plaintiff is preparing a writ of certiorari for the United States Supreme Court (the "Supreme Court").

2.  Plaintiff brings the instant action at this time because she has been credibly informed that Defendant Mr. Cooper will issue and distribute equity in itself to holders of Legacy Interests ("Legacy Holders"; each, a "Legacy Holder") in consideration for assets previously belonging to WMI (beneficially or otherwise) in the possession of, and forthcoming to, Mr. Cooper.  If such equity is distributed prior to final adjudication of Plaintiff's appeal the appeal will probably be mooted as any distribution may be irretrievable.

3.  Moreover, and more importantly, Mr. Cooper's intended distribution may result in excess dilution for certain Legacy Holders.  Law and equity demand that this issue be adjudicated before  any Mr. Cooper Stock is disbursed as such excess dilution will inflict irreparable harm.

4.  Finally, this is not a bankruptcy matter: it is a dispute about a contract created in a bankruptcy case.  Plaintiff is a beneficiary of that contract and is simply enforcing her rights

against (a) her fiduciary under the contract, and (b) Mr. Cooper, a third-party, who may materially harm the interests of thousands of Legacy Holders.

## **The Parties**

5.  Plaintiff is a citizen of New York.  Defendant the Trust is a Delaware statutory trust. Defendant Mr. Cooper is a Delaware corporation with its principal place of business in Coppell, Texas.

## **Jurisdiction**

6.  Plaintiff brings this action under 28 U.S.C. § 1332(a)(1) as there is complete diversity between herself and both Defendants, and the amount in controversy exceeds $75,000. Venue is proper pursuant to 28 U.S.C. § 1391 (b)(3) because Mr. Cooper is subject to this court's personal jurisdiction under N.Y. C.P.L.R. § 302(1), (3)(i), and (3)(ii) due to its (a) myriad contacts with New York City, (b) involvement in interstate commerce, and (c) tortious interference with Plaintiff's contractual right to fully adjudicate her appeal and dilution limit.

7.  Mr. Cooper has more than minimal contacts with New York.  Its involvement with New York includes its transactions with New York City residents, solicitation of business from New York City residents through paid advertising, and upon information and belief, the substantial revenue Mr. Cooper derives from New York represents interstate commerce between New York and Texas, its domicile.

8.  Upon information and belief, Mr. Cooper is in possession of, and maintains control over, property previously owned by WMI[4] (beneficially or otherwise) or the Trust in which

---

[4] WMI has been dissolved.  It was a Washington state corporation and no record of it currently appears in the Washington Secretary of State's database.  On Wednesday, May 15, 2021, Plaintiff had a telephone conference with Marcos Ramos, Esq. and Cory Kandestin, Esq. of Richards, Layton & Finger, PA, counsel for the Trust.  During this conversation Mr. Kandestin stated that WMI was dissolved on the date the Plan was confirmed, i.e., February 23,

Plaintiff and thousands of Legacy Holders all over the United States and internationally have Legacy Interests.

9.    As described herein, Plaintiff has received credible information that Mr. Cooper intends to use said property to capitalize itself and will pay for said property by issuing equity in itself to Legacy Holders.

10.   If Mr. Cooper issues equity to Legacy Holders before Plaintiff (a) adjudicates the claims described herein and (b) exhausts her federal appeal, not only will her (i) federal appeal and (ii) contractual right to a 1% maximum dilution of her Legacy Interests be impaired, but the right of thousands of Legacy Holders (some of whom are located in New York) to avoid dilution (or at least limit it) will be irretrievably lost. Upon information and belief, Mr. Cooper is poised to issue the equity and understands Plaintiff and other Legacy Holders could be injured by its actions.

11.   Accordingly, through its distribution of equity to Legacy Holders Mr. Cooper tortiously interferes with Plaintiff's right to have her claims asserted herein fully adjudicated; rights that have a direct bearing on the proportion of Mr. Cooper equity eventually allocated among Legacy Holders and other matters.

12.   Therefore, Mr. Cooper should reasonably expect its performance under said agreement to have consequences in New York and to convey general jurisdiction unrelated to its normal business of mortgage lending and servicing.

13.   In light of the foregoing, this court's exercise of general jurisdiction over Mr. Cooper comports with constitutional due process principles of fair play and substantial justice, and

---

2012. (Plaintiff took issue with that statement for two reasons: (1) if WMI was dissolved in 2012, it could not have been in Chapter 11 on December 19, 2019, the date WMI's bankruptcy case was closed; and (2) on March 14, 2012, the date it filed two 8-K statements under the Securities and Exchange Act ("'34 Act") reporting entity.)

Mr. Cooper's extensive contacts with New York render it unable to make a compelling case that the presence of some other considerations would render jurisdiction of this court unreasonable. *See Johnson v. UBS AG*, 791 F.App'x 240, 242 (2d Cir. 2019) (quoting *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016); *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 – 165 (2d Cir. 2010).

### **Background**

14.    The Plan was confirmed on February 23, 2012. Pursuant to its terms, the Trust was formed to adjudicate claims and distribute assets granted it under the Plan.

15.    On March 28, 2013, the Trust executed a stipulation (the "Stipulation") settling ligation with fifteen banks who had sued WMI for indemnification under securities underwriting agreements (the "Underwriters"). The Stipulation granted the Underwriters a $72 million claim (the "Claim") in the preferred class of WMI's waterfall ("Class 19").

### **The Effects of the Claim**

16.    As members of Class 19 the Underwriters received (a) 1.4 million shares of common stock in WMI Holdings Corp. ("WMIH"; now Mr. Cooper) and (b) $72 million face in Class 19 (which has a combined face of $7.5 billion). The 1.4 million shares of WMIH common equate to approximately 120,000 shares of Mr. Cooper Stock with an approximate market value as of this date of $4 million.

17.    On April 22, 2019 Plaintiff's objection to the Stipulation (the "Objection") was denied by a bench ruling of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court")[5] on the basis of laches. The United States District Court for the District of Delaware (the "District Court") and the United States Court of Appeals for the

---

[5] The Bankruptcy Court's jurisdiction ended when WMI's Chapter 11 case closed on December 20, 2019.

Third Circuit (the "Third Circuit") affirmed the Bankruptcy Court. The jurisdiction of the three aforementioned federal courts has terminated, and none of the claims or issues underlying Plaintiff's petition before the Supreme Court are raised in the instant action.

18. As background, the Objection was based on the Plan's unambiguous language requiring claims for securities' underwriting liability be placed within common, not preferred, equity. Specifically, Section 1.153 of the Plan, entitled 'Other Subordinated Claim' ("Section 1.153"), provides that "any Claim related to the purchase or sale of an equity security that is subordinated in accordance with section 510(b) of the Bankruptcy Code shall be classified with and receive the treatment provided for the Preferred Equity Interests or Common Equity Interests, as appropriate."

19. Notwithstanding Section 1.153's language that a claim related to issuance of equity securities can be classified as either preferred or common equity, Section 1.73(b) of the Plan, entitled 'Common Equity Interest' limits Section 1.153 by requiring claims relating to issuance of equity securities be compensated with common equity and further specifies the methodology for calculating the amount of common equity. Accordingly, pursuant to Section 1.73, WMI's common equity ("Class 22"), when it voted for the Plan, agreed to accept responsibility for any claims arising from sales of WMI's equity securities.

20. In accordance with Section 1.73(b), the Trust was required to determine the number of Class 22 Legacy Interests payable to the Underwriters by dividing $72 million by the price of WMI common stock on: (a) September 26, 2008; (b) September 25, 2008; (c) December 12, 2011; or (d) a price set by the Bankruptcy Court. [6]

---

[6] Specifically, Section 1.73(b) provides that the amount of an allowed claim must be divided by one of four (4) denominators: "a Claim . . . which . . . has been subordinated to the level of Equity Interest in accordance with section 510 of the Bankruptcy Code . . . shall be determined by dividing the amount of an Allowed Claim by the per share price of WMI common stock as of either (a) the Petition Date, (b) the close of business on the day immediately

21. Instead of complying with Section 1.73(b), the Trust gave the Underwriters Class 19 Legacy Interests, which, as previously explained, entitled them to (a) approximately 120,000 shares of Mr. Cooper Stock, and (b) a portion of Class 19's 75% share of any recovery. (Pursuant to the Plan, Class 19 and Class 22 are *pari passu*, and Class 19 receives 75% of any recovery and Class 22 receives 25% thereof.)[7]

## The MBS

22. In late 2019 Plaintiff received information from another Legacy Holder in communication with an employee of a major securities broker (the "Source"). The Source stated that when Plaintiff's federal appeals are finally adjudicated and the Trust dissolved,[8] Mr. Cooper will distribute Mr. Cooper Stock to Legacy Holders. The Source stated that Defendant Mr. Cooper is in possession of well in excess of $10 billion dollars in mortgage-backed securities and/or mortgages formerly owned by WMI (the "MBS") which assets are subject to interests of Plaintiff and other Legacy Holders.

23. In early April 2021 the Source stated that all the MBS would be given to Mr. Cooper by June 30, 2021 and that the Mr. Cooper Stock would be disbursed by various brokers. The Source further said that Mr. Cooper was obligated to report receipt of the MBS in its' 34 Act filings in the same quarter as the date of receipt but did not do so while Plaintiff's

---

preceding the Petition Date, (c) December 12, 2011, or (3) [sic] such other date as determined by the Bankruptcy Court."

[7] Plaintiff argued in the Objection Litigation that the Plan's definition of 'Preferred Equity Interest' prohibited any dilution. As defined by Section 1.170, a 'Preferred Equity Interest' is "[a]n Equity Interest represented by an issued and outstanding share of preferred stock of WMI *prior to or on [September 26, 2008]*, including, without limitation, those certain (i) Series K Perpetual Non-Cumulative Floating Rate Preferred Stock, (ii) Series R Non-Cumulative Perpetual Convertible Preferred Stock, and (iii) the REIT Series." (Emphasis added.) Accordingly, as the Claim was created post-confirmation and not one of the three types of securities named in Section 1.170. it was ineligible for Class 19 status.

[8] Pursuant to the Final Decree, the Trust is prohibited from dissolving until Plaintiff's appeals are exhausted and its counsel acknowledged this in emails to Plaintiff.

litigation with the Trust survived. According to the Source, Mr. Cooper is planning to disburse the Mr. Cooper Stock regardless of the final decree of the Bankruptcy Court dated December 20, 2019 closing WMI's chapter 11 case (the "Final Decree") which prohibits dissolving the Trust until Plaintiff's appeal is exhausted. The Source indicated that (a) Mr. Cooper's management was very anxious about fulfilling its '34 Act regulatory reporting requirement with respect to the MBS, (b) the value of the MBS had increased by approximately 10%,[9] and (c) in addition to the Mr. Cooper Stock, Legacy Holders will contemporaneously receive a cash payout of 2.5x par.

24.     The Source further revealed that circulating within his/her enterprise was an internal memorandum listing the names of Legacy Holders, their holdings, and indicating these persons would be treated as private wealth clients rather than retail clients once they received the Mr. Cooper Stock.

### Advent of the MBS Requires Protection of Plaintiff's Legacy Holdings

25.     Given (a) his/her employer, (b) the fact that the information he/she has provided is unchanged during the more than two years that he/she has been disseminating information in connection with the matters stated herein, and (c) the potential jeopardy to his/her employment if his/her identity is discovered, Plaintiff has no reason to doubt the Source's veracity.

26.     No information about the existence or whereabouts of the MBS has been provided to Plaintiff or other retail Legacy Holders. Retail Legacy Holders – who are entitled to 30%

---

[9] To illustrate the economic impact of the MBS on Legacy Holders, for each $10 billion recovered each Class 19 security receives par and each Class 22 security receives approximately $2.10.

of any recovery – were neither informed nor consulted about the transaction with Mr. Cooper.

27.     As disclosed during the bankruptcy case, Appaloosa Management LP ("Appaloosa") holds $850 million in Class 19 Legacy Interests and Greywolf Capital Management, LP ("Greywolf") holds approximately $875 million in Class 19 Legacy Interests.  These two funds represent 8.5% and 8.75% of the total $10 billion face, respectively.  During the case Owl Creek Asset Management, L.P., Centerbridge Partners, L.P., and Aurelius Capital Management, LP. (collectively, with Appaloosa, the "Hedge Funds") were revealed as holding substantial Class 19 Legacy Interests.

28.     It was also revealed during the bankruptcy case that the Hedge Funds negotiated the settlement with the Federal Deposit Insurance Corporation (the "FDIC") and J.P. Morgan Chase that served as the foundation for the Plan and appointed the Trustee.  Accordingly, it is Plaintiff's belief that the Hedge Funds probably negotiated the sale of the MBS to Mr. Cooper, which transaction was effected without informing Plaintiff or other similarly situated retail Legacy Holders.  If so, they know the whereabouts, character, and extent of the MBS and any other property formerly owned by WMI, beneficially or otherwise (collectively, the " Disputed Property").

29.     When Plaintiff decided to file the instant litigation she telephoned Mr. Ramos on March 1, 2021 to inquire whether his firm was authorized to accept service of process for the Trust. Mr. Ramos inquired what kind of relief Plaintiff would seek, and Plaintiff told him she would be seeking declaratory relief in this court.  He further stated that his firm was not authorized to accept service of process for the Trust.  By letter dated March 4, 2021 the Trust threatened Plaintiff with sanctions (including for its attorneys' fees) if she brought

the action.  On May 20, 2021 Plaintiff filed a complaint for relief with this court against

WMI, the Trust, and Mr. Cooper (the "Original Complaint").[10]  She served the Original

Complaint on the registered agents for those defendants'.  On May 26, 2021, the Trust

reiterated its threats and further threatened to petition the Bankruptcy Court to reopen

WMI's bankruptcy case to seek injunctive relief and sanctions against Plaintiff in that

forum.  (The March 4, 2021 and May 26, 2021 letters are attached as Exhibit A.)

30.　　Specifically, the Trust contended that the Plan enjoins Plaintiff from bringing *any* litigation

against the Trust.  That is obviously incorrect because, if so, the Plan would have enjoined

Plaintiff from bringing even the Objection Litigation, and the Trust made no such defense

during that litigation.[11]  Further, the Trust argued that res judicata and collateral estoppel

bar Plaintiff's claims.  This is also untrue as, inter alia, (a) none of the relief sought herein

has been sought in any other legal proceeding, (b) the parties in the instant proceeding are

different from those in the Objection Litigation (i.e., the Underwriters – who were parties

in the Objection Litigation – are not parties to the instant action), and (c) the claims and

issues raised herein were not litigated in the Objection Litigation and did not have to be

---

[10] WMI is not a Defendant in this action.

[11] *See* Note 1, supra.  In Mr. Ramos' March 4th letter he refers to injunctions in Paragraph 56(a), Paragraph 56(b), Paragraph 58, and Paragraph 60 (the "Injunctions"), all in the Confirmation Order.  The Injunctions are attached as Exhibit B.  All of the Injunctions enjoin enforcement of released Equity Interests against Released Parties.  As set forth in Footnote 1 herein, the Trust is not a 'Released Party' under the Plan.  (*See* Exhibit B.)

As stated in Paragraph 1 herein, Plaintiff released her Equity Interests to obtain a contingent right to receive Legacy Interests.  These interests are not identical to her extinguished WMI preferred stock (i.e., WMI's cancelled preferred equities were issued by WMI prior to September 25, 2008 and the Legacy Interests were issued by WMI immediately upon confirmation.)  Therefore, the Injunctions do not bar her from suing the Trust to enforce the terms of her Legacy Interests.

Finally, and again, if Plaintiff is forbidden by the Injunctions from instituting *any* litigation against the Trust then the Objection Litigation violated the Plan, because Paragraph 56(b) prohibits persons who executed WMI's releases from litigating in *any* forum, which includes litigating in the Bankruptcy Court on a contested matter.  The Trust never alleged Plaintiff was enjoined from bringing the Objection Litigation.

litigated in those actions.[12] Plaintiff has the legal right to sue the Trust in any court of competent jurisdiction to enforce the rights granted to her under the Plan. Indeed, if she could not sue to enforce her rights then the Trust's obligations under the Plan would be illusory as a matter of law and any enforcement of such a bar by a court would violate due process.

31.     Accordingly, the instant action does not provide 'cause' under 11 U.S.C. § 350(b) to reopen WMI's bankruptcy case and, further, Plaintiff contends the Trust's real motive for petitioning the Bankruptcy Court to reopen the case is to avoid filing an answer in the instant action and submitting to this court's jurisdiction. Doubtless the Trust will incur large legal bills in connection with its effort and will request the Bankruptcy Court to require Plaintiff to pay them as a severe sanction under Federal Rule of Civil Procedure 11. However, there is no basis for any sanctions as: (a) there was no violation of any Plan injunction; (b) this action is not barred by res judicata or collateral estoppel; (c) there is nothing frivolous about the causes of action set forth herein; and (d) Plaintiff's motives are to protect her interests, not to vex or harass either of the Defendants.

32.     Retail Legacy Holders hold 30% of the total face of Legacy Holdings but have no legal representation in connection with their rights therein. By filing the instant action Plaintiff attempts to afford some protection for, and information about, those interests.

---

[12] In the Objection Litigation Plaintiff sought to disallow the Claim in its entirety or to remove it from Class 19. The instant litigation simply seeks to insure the Claim is distributed fairly.

## FIRST CAUSE OF ACTION
## DECLARATORY JUDGMENT THAT CLASS 19 HAS
## THE RIGHT TO CONFIRMATION THAT THE TRUST DISTRIBUTED
## THE CLAIM PRO RATA AMONG CLASS 19 CUSIPS IN 2013

33. Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 32 above as if fully set forth herein.

34. Section 1.175 of the Plan, 'Pro Rata Share', requires that the Claim be distributed among Class 19 pro rata so that the approximately one percent (1%) burden of the Claim (i.e., $72 million out of $7.5 billion total preferreds' face) be imposed proportionately among each of the three (3) types of preferred securities.

35. There are eight (8) varieties of preferred securities with eight (8) corresponding Committee on Uniform Securities Identification Procedures ("CUSIP") numbers. Six of the CUSIP numbers belong to the trust preferred securities ("TPS"), and the other two CUSIPs correspond to the Series R securities ("Series "R) and Series K securities ("Series K"), respectively.

36. The Series R securities' face of $3 billion (each of the 3 million Series R securities has a $1,000 face) comprises 40% of the total preferred face of $7.5 billion, and therefore the Underwriters should have received no more than 40% of the Claim in Series R interests or $28.781 million face.

37. The Series K securities' face of $500 million (each of the 20 million Series K securities has a $25 face) comprises 7% of the total preferred face, and therefore the Underwriters should have received no more than 7% of the Claim in Series K interests or $5.037 million face.

12

38.    The TPS' face of $4 billion comprises 53% of the total preferred face, and therefore the Underwriters should have received no more than 53% of the Claim in TPS interests or $38.135 million face.

39.    The six CUSIPs comprising the TPS (including their original face values) are:

| CUSIP | FACE | Percentage of TPS Face | Percentage of the Claim[13] |
|---|---|---|---|
| 93934WAA3 | $1,250,000,000 | 31.25% | 16.7% |
| 93934VAA5 | $302,300,000 | 7.56% | 4.03% |
| G9463GAA6 | $447,700,000 | 11.19% | 5.97% |
| 93935JAA1 | $500,000,000 | 12.5% | 6.67% |
| 93935RAA3 | $500,000,000 | 12.5% | 6.67% |
| 93936TAA8 | $1,000,000,000 | 25% | 13.33% |

40.    Plaintiff pointed out to the Third Circuit that there was no evidence that the Claim was allocated pro rata.  The Third Circuit refused to consider that issue because it had not been raised before the Bankruptcy Court. Plaintiff is not collaterally estopped to seek a declaratory judgment that the Plan requires pro rata allocation of the Claim among all Class 19 Legacy Interests because the issue was not litigated and its resolution was not necessary to the questions whether (a) the Claim would be disallowed or (b) if allowed, it would remain in Class 19.

41.    Contract law, equity, and good conscience require that each holder of a Class 19 interest know if its dilution exceeded 1%, and if the Trust did not apportion the Claim pro rata as required then Class 19 Legacy Holders who suffered excessive dilution are entitled to reapportionment of the Claim.  To illustrate, if the entire Claim was placed among Series R then each Series R share would lose 2.5% rather than 1%.

---

[13] Accordingly, the Underwriters should have received no more of each TPS CUSIP than the corresponding Claim allocations set forth above.

42.     If the Claim was not disbursed pro rata among all eight CUSIPs then holders of some
        preferred equity securities may sustain up to 250% more dilution than the 1% all preferred
        will suffer if the pro rata requirement is followed.  This result would be a clear violation of
        the Plan and grossly unfair to any Class 19 Legacy Holders whose Legacy Interests are
        diluted by more than 1%.

43.     Plaintiff's request for confirmation that the Claim was allocated pro rata is neither
        unreasonable nor oppressive. As the Trust ignored the express anti-dilution language
        defining Class 19 interests, Plaintiff is justifiably concerned that the Trust or Mr. Cooper
        will not adhere to the strict 1% dilution limit for all holders of Class 19 Legacy Interests.
        As set forth in Paragraph 41 herein, confirmation that the Trust distributed the Claim in
        accordance with the Plan's pro rata definition was not litigated and did not need to be as it
        had no bearing on either the validity of the Claim or whether the Claim belongs in Class
        19.  Therefore, Plaintiff is not collaterally estopped to litigate the pro rata requirement.
        Moreover, execution of the Stipulation is the 'transaction' from which the Claim arises,
        but the pro rata requirement does not arise from that transaction.  Therefore, they are not
        the same claim for res judicata purposes.  Finally, the pro rata claim is ripe because it is the
        allocation in 2013 of Class 19 Legacy Interests that triggered Plaintiff's right to verification
        not payment on those Legacy Interests and, finally, the pro rata claim is valid regardless of
        the veracity or accuracy of the Source's information.

44.     Wherefore, Plaintiff requests a declaratory judgment requiring the Trust to disclose to the
        portion of the Claim placed in each of the Class 19 CUSIPs.

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT THAT NO MEMBER OF CLASS 19
## MAY SUFFER MORE THAN 1% OF DILUTION FROM THE CLAIM

45. Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 44 above as if fully set forth herein.

46. If the Supreme Court denies Plaintiff's certiorari petition or grants it but rules for the Trust and the Underwriters, Plaintiff will have exhausted all her appeals and the Claim will remain in Class 19.

47. However, even if the Claim remains in Class 19 the Plan's definition of 'Pro Rata' requires distribution of the Claim according to the weights set forth in Paragraphs 36 – 39 herein which results in no more than 1% dilution for each of the three types of securities comprising Class 19.

48. Verification that no member of Class 19 may suffer more than 1% dilution from the Claim was not litigated and did not have to be as it had no bearing on either the validity of the Claim or whether the Claim belongs in Class 19.

49. Therefore, Plaintiff requests that this court enter an order against the Trust declaring that if the previous distribution of Class 19 interests did not comport with the definition of Pro Rata, then the Trust must replace Class 19 interests currently held by the Underwriters with all three (3) varieties of Class 19 interests in sufficient quantities of each to comply with the Pro Rata definition.

## THIRD CAUSE OF ACTION
## INJUNCTION FORBIDDING PAYMENTS
## UNTIL THE ALLOCATION OF THE CLAIM IS KNOWN

50. Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 49 above as if fully set forth herein.

51. If any recovery is distributed before the allocation of the Claim among Class 19 CUSIPS is ascertained and it is subsequently determined that some CUSIPs sustained excess dilution, it will be impossible to remedy the excess dilution.

52. Accordingly, to protect all members of Class 19, no distributions on account of the MBS or any other Disputed Property should be permitted until the allocation of the Claim among Class 19 CUSIPs is ascertained.

53. Therefore, Plaintiff requests an order, without requiring posting of a bond, forbidding Mr. Cooper from making any distribution(s) on account of the MBS or any Disputed Property without leave of this court.

## FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT AGAINST MEMBERS OF CLASS 19
### WHOSE CUSIPS WERE NOT AMONG THOSE GIVEN TO THE UNDERWRITERS

54. Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 53 above as if fully set forth herein.

55. If any Class 19 Legacy Holders has sustained in excess of 1% dilution, then Class 19 Legacy Holders who have sustained less than 1% dilution will be unjustly enriched because the Claim will not have been distributed pro rata within Class 19.

56. Plaintiff contends that the Hedge Funds must bear their proportionate share of the dilution. They own almost exclusively TPS and very few retail Legacy Holders own them.  If the Claim was put only in Series R, the Hedge Funds would have suffered no dilution and are therefore unjustly enriched.

57. Unjust enrichment against Class 19 Legacy Holders whose CUSIPs were not among those given to the Underwriters was not litigated and did not need to be as it had no bearing on either the validity of the Claim or whether the Claim belongs in Class 19.

58. Wherefore, Plaintiff prays for an order requiring the Trust to confirm that the Claim was distributed pro rata among Class 19 interests, and if this was not done order the Trust to redistribute the Claim pro rata among Class 19.

## FIFTH CAUSE OF ACTION
### DECLARATORY JUDGMENT THAT THE TRUST, THE TRUSTEE, AND/OR THE TRUST ADMINISTRATORS WERE FIDUCIARIES TO CLASS 19 WHEN THE STIPULATION WAS EXECUTED AND THE TRUST AND TRUST ADMINISTRATORS REMAIN FIDUCIARIES TO CLASS 19

59. Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 58 above as if fully set forth herein.

60. Until 2020, the Trust was managed by a trustee (the "Trustee") and a trust advisory board (the "TAB") and since February 2020 it has been managed by two (2) trust administrators (the "Trust Administrators"). The Trustee was authorized to litigate and settle claims against WMI, and settlement of any claim in excess of $2 million would require approval of the TAB, and so the TAB approved the Stipulation.

61. At the time the Stipulation was executed the Trust, the Trustee, and the TAB owed fiduciary duties to Plaintiff and other members of Class 19 as expressly set forth in the 'WMI Liquidating Trust Agreement' dated March 5, 2012.

62. Marcos Ramos, Esq. of Richards, Layton & Finger, PA, counsel for the Trust, advised Plaintiff that the Trust has no fiduciary duty to Plaintiff or other Legacy Holders and refused to publish the Trust's revised and updated trust agreement. Specifically, the Trust argued that as it will not be making any future distributions to Legacy Holders, it is not required to disseminate the revised trust agreement.

63. Notwithstanding, it is Plaintiff's position that the Trust is obligated to do more than disperse assets. The Trust has a duty to confirm the level of dilution is 1% and to guarantee it will not exceed 1% to any Class 19 CUSIP, both issues relevant to the future

17

disbursement of the Mr. Cooper Stock for the MBS, whenever publicly disclosed. The Trust has never challenged Plaintiff's assertion that it cannot authoritatively state that no assets formerly owned by WMI (beneficially or otherwise) exist. If the Source is correct there will be a substantial distribution and therefore the dilution issue is of paramount importance to Class 19. Accordingly, the Trust's and its administrators' obligations to Legacy Holders continue, and this cause of action cannot be mooted by any ruling of the Supreme Court.

64. Therefore, Plaintiff requests a declaratory judgment that the Trust has fiduciary duties to Legacy Holders, and Legacy Holders have the right to view the revised trust agreement.

**SIXTH CAUSE OF ACTION**
**ADJUDICATION OF OWNERSHIP OF DISPUTED PROPERTY**

65. Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 64 above as if fully set forth herein.

66. If the MBS are property of the Trust and are disclosed as such prior to the Trust's dissolution, then the Trust would have to liquidate and disburse the assets as the Trust cannot engage in any business.

67. Plaintiff and other Legacy Holders have standing to request a determination of who owns the MBS because they have interests in all the Disputed Property and if the Trust is the owner, it must distribute the liquidated value of the MBS immediately. This cause of action cannot be mooted by any ruling of the Supreme Court and was not litigated in the Objection Litigation.

68. Therefore, Plaintiff requests an order of this court adjudicating ownership of the MBS and any other Disputed Property.

## SEVENTH CAUSE OF ACTION
## INTERPLEADER

69. Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 68 above as if fully set forth herein.

70. If it cannot be determined conclusively that the Trust is not the owner of the MBS then the MBS or any other Disputed Property should be interplead to this court for adjudication of ownership because such assets do not belong to Mr. Cooper.  This cause of action cannot be mooted by any ruling of the Supreme Court and was not litigated in the Objection Litigation.

71. Therefore, Plaintiff requests an order directing Mr. Cooper to interplead the MBS and any other Disputed Property in Mr. Cooper's custody or in its control, to this court.

## EIGHTH CAUSE OF ACTION
## INJUNCTION FORBIDDING USE OF THE MBS

72. Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 71 above as if fully set forth herein.

73. Mr. Cooper has not compensated Legacy Holders for the MBS.  Moreover, it is not established that whoever authorized transfer of the MBS to Mr. Cooper had authority to do so.  Accordingly, Mr. Cooper should not be permitted to hold or use the MBS unless it is established that the proper formalities (e.g., authorization, shareholder approval (this would be impossible as WMI's old securities were extinguished when the Plan was confirmed)) were observed before executing the related agreement with Mr. Cooper. This cause of action cannot be mooted by any ruling of the Supreme Court and was not litigated in the Objection Litigation.

74. Therefore, Plaintiff requests an order, without requiring posting of a bond, enjoining Mr. Cooper from assigning, pledging, transferring, hypothecating, distributing, or selling any

or all of the MBS or other Disputed Property, however described, wherever residing, without leave of this court.

## NINTH CAUSE OF ACTION
## ACCOUNTING

75. Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 74 above as if fully set forth herein.

76. Upon information and belief, Mr. Cooper has not disclosed the existence, whereabouts, or value of the MBS. Plaintiff and other Legacy Holders have the right to an accounting. This cause of action cannot be mooted by any ruling of the Supreme Court and was not litigated in the Objection Litigation.

77. Plaintiff requests an order for a full accounting by Mr. Cooper of: (a) the MBS, as well as full disclosure of its custodian(s) and whereabouts; and (b) any Disputed Property in its custody or under its control.

## TENTH CAUSE OF ACTION
## LEGAL FEES

78. Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 77 above as if fully set forth herein.

79. Plaintiff is entitled to legal fees from the Trust because absent the instant action: (a) Legacy Holders would not be considered beneficiaries of the Trust and would have no hope of obtaining the revised and updated trust agreement; and (b) Class 19 Legacy Holders would: (i) not receive confirmation that the Trust distributed the Claim pro rata; and (ii) receive no guarantee that no Class 19 Legacy Holder would sustain more than 1% dilution from the Claim.

80. Plaintiff is entitled to legal fees from Mr. Cooper because absent Plaintiff's efforts Legacy Holders may be harmed if (a) Mr. Cooper disburses the Mr. Cooper Stock before final

adjudication of the dilution issue, and (b) the Disputed Property were used with no corporate accountability to retail Legacy Holders.

81. Wherefore, Plaintiff prays for legal fees from the Trust of one-third of the dilution sustained by any CUSIP in Class 19 in excess of 1% on account of the Claim. These fees are reasonable because (1) if Plaintiff prevails thousands of Class 19 Legacy Holders will benefit and (2) but for the instant action, some Class 19 Legacy Holders could suffer 2.5% dilution rather than 1%.

82. Wherefore, Plaintiff prays for legal fees from Mr. Cooper because by holding the MBS with the intention of distributing Mr. Cooper Stock, Mr. Cooper may destroy Plaintiff's and other Class 19 Legacy Holders' rights to avoid excess dilution.

**WHEREFORE**, Plaintiff respectfully requests judgment:

1) On Plaintiff's first cause of action, for declaratory relief, a declaratory judgment against the Trust that Class 19 Legacy Holders have the right to confirmation that the Trust distributed the Claim pro rata among Class 19 CUSIPS;

2) On Plaintiff's second cause of action, for declaratory relief, a declaratory judgment against the Trust that no Class 19 Legacy Holders may suffer more than 1% dilution from the Claim;

3) On Plaintiff's third cause of action, for injunctive relief, an injunction against Mr. Cooper forbidding any payment to Legacy Holders until the full dilutive effect of the Claim is known;

4) On Plaintiff's fourth cause of action, for an order finding unjust enrichment against the Trust on account of any Class 19 Legacy Holders who suffered no dilution;

5)       On Plaintiff's fifth cause of action, for declaratory relief, a declaratory judgment against the Trust that the Trust, the Trustee, and/or the Trust Administrators were fiduciaries to all Legacy Holders when the Stipulation was executed, and the Trust and the Trust Administrators remain fiduciaries to all Legacy Holders, and must disseminate the Trust's amended and restated trust agreement;

6)       On Plaintiff's sixth cause of action, adjudication of ownership of the MBS and any other Disputed Property;

7)       On Plaintiff's seventh cause of action, for an order directing Mr. Cooper to interplead the MBS and any other Disputed Property in its control into this court;

8)       On Plaintiff's eighth cause of action, for injunctive relief, an injunction against Mr. Cooper from utilizing the MBS or any Disputed Property without leave of this court;

9)       On Plaintiff's ninth cause of action, an order for a full accounting by Mr. Cooper of the total value of the MBS and any other Disputed Property, as well as full disclosure of their custodian(s) and location(s);

10) On Plaintiff's tenth cause of action, for legal fees: (a) respecting the second and fourth causes of action, the monetary equivalent of one-third of the dilution sustained by any CUSIP in Class 19 in excess of 1% on account of the Claim, and if there is no such excess dilution, $1,295 per our plus costs and expenses; and (b) respecting all other causes of action herein, $1,295 per hour plus costs and expenses; and

11) For such other and further relief this Court deems just and proper.

Dated: New York, New York
June 1, 2021

By: _____

Alice Griffin
121 East 12th Street, #7C
New York, New York 10003
griffincounselpc@outlook.com
(646) 337-3577

**EXHIBIT A**



Marcos A. Ramos
Director
302-651-7566
Ramos@rlf.com

March 4, 2021

<u>**Via Email**</u>

Ms. Alice Griffin
121 East 12th Street, #7C
New York, NY 10003
griffincounselpc@outlook.com

      Re:    <u>WMI Liquidating Trust</u>

Dear Ms. Griffin,

      I write further to our conversation of March 1, 2021. During that call, you asked whether I was authorized to accept service of process on behalf of the Trust in connection with a not-yet filed declaratory judgment action that you may file. You also informed me that:

(i)      you may file the declaratory judgment action in New York;

(ii)     the substance of the declaratory judgment will be to seek relief based on your allegations that the Trust improperly resolved the Underwriters'[1] claims, including the allowance of the Underwriter's 72M Claim in Class 19;

(iii)    the relief under such action may include a request for the court to require the Trust to issue or distribute securities, or otherwise provide a requested distribution, to one or more classes of creditors and/or beneficiaries under the Plan, purportedly in conformity with the terms of the Plan; and

---

[1] Terms not otherwise defined herein shall have the meaning accorded to such terms in the *Brief of Appellee WMI Liquidating Trust* filed in the United States Court of Appeals for the Third Circuit, on September 8, 2020.

Ms. Alice Griffin
March 4, 2021
Page 2

      (iv)    you also intend otherwise to rely on the Plan in connection with your claims.[2]

      <u>First</u>, I confirm to you that I am **not** authorized to accept service of process on behalf of the Trust or the Trust Administrators.

      <u>Second</u>, if you file the declaratory action described above (or any similar action or proceeding), you will be violating (among other things) the discharge injunction and other provisions of the Plan and Confirmation Order. The Confirmation Order provides that:

> all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or Equity Interests or other right of equity interest that is terminated or cancelled pursuant to the Plan or the Global Settlement Agreement, or who have held, hold or may hold Claims or any other debt or liability that is discharged or released . . . . are permanently enjoined, from and after the Effective Date, from (a) commencing . . . in any manner, any action or other proceeding . . . of any kind on any such Claim or other debt or liability that is discharged or Equity Interest that is terminated, cancelled, assumed or transferred pursuant to the Plan against any of the Released Parties or any of their respective assets, property or estates, . . .

Confirmation Order, ¶ 56(a). The Confirmation Order further provides all such Entities are "permanently, forever and completely stayed, restrained, prohibited, barred and enjoined" from pursuing or taking any such actions. Confirmation Order, ¶ 56(b); *see also* Confirmation Order ¶ 58 ("each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with . . . [among other things] confirmation and consummation of the Plan, . . ."); Confirmation Order ¶ 60 ("all Entities . . . who currently hold or assert . . . any Released Claims or Equity Interests against any of the Released Parties based upon, attributable to, arising out of or relating to any Claim against or Equity Interest in any of the Debtors . . . shall be, and shall be deemed to be, permanently stayed, restrained and enjoined . . .").

      You allege that you were a former holder of an Equity Interest in the Debtors. As such, the Plan and Confirmation Order enjoin you from commencing an action to, in effect, receive a further distribution on that Equity Interest.

      As well, the Confirmation Order also provides that the Bankruptcy Court "shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases to the fullest extent as is legally permissible." Confirmation Order, ¶ 83. Similarly, the Plan provides that the Bankruptcy Court has the "exclusive jurisdiction" over any matter "arising in or

---

[2] I note that the foregoing summary is based on our limited discussion and we have not received a draft proposed complaint.

Ms. Alice Griffin
March 4, 2021
Page 3

related to the Chapter 11 Cases or the Plan" including to "enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan" and to "issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan . . ." Plan ¶¶ 38.1, 38.1(b) and 38.1(k). Your filing of the declaratory judgment action in New York, therefore, also would violate the terms of the Plan and provide additional grounds (as described below) to seek injunctive or other relief against you.

In addition to the matters discussed above, your proposed action is plainly inconsistent with the pendency of your appeal. You currently have an appeal pending before the Third Circuit, and you have threatened to seek further relief from the United States Supreme Court, all for the very matters at issue under the threatened declaratory judgment action. Your filing and/or prosecution of the declaratory judgment action would interfere with and/or be precluded by the jurisdiction of the applicable appellate court for the entirety of the time that your appeal is outstanding in any court. *See, e.g.*, *Thomas v. Northeastern Univ.*, 470 Fed. Appx. 70, 71 (3d Cir. 2012) (filing of appeal conferred jurisdiction on appellate court and "divested the [lower court] of its control over those aspects of the case involved in the appeal."); *see also E.E.O.C. v. Univ. of Penn.*, 850 F.2d 969, 971 (3d Cir. 1978) ("[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.") (quotation omitted). The filing of the proposed declaratory judgment action also would be precluded by the earlier decisions of the Bankruptcy Court, the Delaware District Court and the Third Circuit, as an impermissible attempt to relitigate matters resolved by those courts. *See Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007) (issue preclusion "prevents parties from relitigating an issue that has already been actually litigated."); *Richardson v. Monaco (In re Summit Metals, Inc.)*, 477 B.R. 488, 499-500 (Bankr. D. Del. 2012) (issue and claim preclusion required dismissal of claims that were "asserted as objections during the main bankruptcy cases and explicitly rejected by the Court").

Given the rulings by the Bankruptcy Court, the Delaware District Court and the Third Circuit, there also is not any reasonable, good faith basis on which you (as plaintiff or counsel) may file and/or prosecute the threatened declaratory judgment action. Accordingly, this letter constitutes prior notice to you (as applicable) pursuant to Rule 11 of the Federal Rules of Civil Procedure or any similar rule as may apply.

* * *

In conclusion, the Trust advises you that, if you file the threatened declaratory injunction or any similar action, the Trust will seek appropriate relief that may include an injunction to prevent you from prosecuting any such action, as well as sanctions or costs (which may include attorneys' fees) as permitted and as may be awarded to the Trust.

Very truly yours,

/s/ *Marcos A. Ramos*

Marcos A. Ramos

**RICHARDS**
**LAYTON &**
**FINGER**

Marcos A. Ramos
Director
302-651-7566
Ramos@rlf.com

May 26, 2021

**Via Email**

Ms. Alice Griffin
121 East 12ᵗʰ Street, #7C
New York, NY 10003
griffincounselpc@outlook.com

   Re: WMI Liquidating Trust

Dear Ms. Griffin,

   I write on behalf of the WMI Liquidating Trust (the "Trust"). Last week, you filed a complaint ("Complaint") against the Trust (and others) in the United States District Court for the Southern District of New York, case number 21-cv-04554-GHW. The Trust demands that you withdraw the Complaint with prejudice by no later than Tuesday, June 1, 2021. If you do not withdraw the Complaint, with prejudice by that date, the Trust will seek the imposition of sanctions against you and the assessment of damages, including under Rule 11 of the Federal Rule of Civil Procedure 11, Federal Rule of Bankruptcy Procedure 9011 and 28 U.S.C. § 1927.

   In its March 4, 2021 letter to you (attached as **Exhibit A**), the Trust advised that your then-proposed claims were plainly barred by res judicata and violated the injunctions and releases contained in the Plan and the Confirmation Order entered by the United States Bankruptcy Court for the District of Delaware. After you received our letter, the United States Court of Appeals for the Third Circuit denied your request for rehearing. The Third Circuit was the *third* court to reject your various claims against the Trust. Yet, in your Complaint, you seek to re-litigate in a different court the same claims that already have been resolved against you and that you are enjoined from bringing under the terms of the Plan. Indeed, you:

   (i)  seek relief based on your allegations that the Trust improperly resolved the Underwriters' claims, including the allowance of the Underwriter's 72M Claim in Class 19 (*see* Complaint, First through Ninth Causes of Action);

Ms. Alice Griffin
May 26, 2021
Page 2

    (ii)    seek to require the Trust to issue or distribute securities, or otherwise provide a requested distribution, to one or more classes of creditors and/or beneficiaries under the Plan, purportedly in conformity with the terms of the Plan (*see* Complaint, First, Second, Fourth, Fifth, and Seventh through Ninth Causes of Action);

    (iii)    seek relief precluded by (a) the Court's approval of the Stipulation and allowance of the Underwriter's 72M Claim in Class 19, (b) the Court's determination that the Stipulation was a proper exercise of the liquidating trust's obligations and not a breach of fiduciary duty, and (c) the Court's approval of the closure of the bankruptcy case, the Trust's final distribution and the Trust's winding up and cancellation (*see* Complaint, Third, Fifth, Sixth and Ninth through Fourteenth Causes of Action);

    (iv)    seek relief precluded under the Plan and Confirmation Order (*see* Complaint, First through Fourteenth Causes of Action); and

    (v)    seek relief that has been denied by each of the United States District Court for the District of Delaware and the Third Circuit (*see* Complaint, Fifteenth Cause of Action).

The Trust incorporates the discussion in its March 4 letter, as well as its March 5 email (attached as **Exhibit B**) regarding the same subject matters. Plainly, the Plan, Confirmation Order, and other court orders are law of the case, collateral estoppel and res judicata, and legal bars to your Complaint. As such, your Complaint is objectively vexatious, frivolous and sanctionable. *See, e.g.*, Ex. A, p. 3; *Napier v. Thirty or More Unidentified Fed. Agents. Emps. or Officers*, 855 F.2d 1080, 1091 (3d Cir. 1988) (claims legally frivolous when identical to ones already adjudicated on plaintiff's behalf); *In re Olick*, 2012 WL 4239423 at *5 (3d Cir. Sept. 21, 2012) ("We see nothing amiss in the imposition of sanctions based on a violation of res judicata, nor in the procedure utilized by the Bankruptcy Court pursuant to Fed. R. Bank. P. 9011"); 28 U.S.C. § 1927.

\* \* \*

Accordingly, the Trust demands that you withdraw the Complaint with prejudice by no later than Tuesday, June 1, 2021. If you fail to do so, the Trust will seek sanctions and damages. Those damages will include all attorneys' fees and costs incurred in connection with the Complaint and the Trust's efforts to enjoin you from proceeding with the Complaint, including (but not limited to) any amounts that may be required to be paid to the Office of the United States Trustee in connection with any motions to reopen the bankruptcy case and enforce terms of the Plan and Confirmation Order.

          Very truly yours,

          /s/ *Marcos A. Ramos*

          Marcos A. Ramos

Encls.

Ms. Alice Griffin
May 26, 2021
Page 3


cc:     Brian S. Rosen, Esq.
        Cory D. Kandestin, Esq.

**EXHIBIT B**

55.     Release and Exculpation Provisions.  All release and exculpation provisions, including, but not limited to, those contained in Article XLIII of the Plan, are approved and shall be effective and binding on all Entities, to the extent provided herein.

56.     **Injunctions and Stays.**

a.      **Injunctions on Claims.  Except as otherwise expressly provided in Sections 41.6 and 41.12 of the Plan, this Order or such other order of this Court that may be applicable, all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or Equity Interests or other right of equity interest that is terminated or cancelled pursuant to the Plan or the Global Settlement Agreement, or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the Plan, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged or Equity Interest that is terminated, cancelled, assumed or transferred pursuant to the Plan against any of the Released Parties or any of their respective assets, property or estates, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets, property or estates on account of any Claim or other debt or liability that is discharged or Equity Interest that is terminated, cancelled, assumed or transferred pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released**

Parties or any of their respective assets, property or estates on account of any Claim or other debt or liability that is discharged or Equity Interest that is terminated, cancelled, assumed or transferred pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets, property or estates, with respect to any such Claim or other debt or liability that is discharged or Equity Interest that is terminated, cancelled, assumed or transferred pursuant to the Plan; provided, however, that such injunction shall not preclude the United States of America, any state or any of their respective police or regulatory agencies from enforcing their police or regulatory powers; and, provided, further, that, except in connection with a properly filed proof of Claim, the foregoing proviso does not permit the United States of America, any State or any of their respective police or regulatory agencies from obtaining any monetary recovery, including fines, restitution or forfeiture, from any of the Released Parties, including, without limitation, the Debtors, the Debtors in Possession or the Reorganized Debtors, or any of their respective assets, property or estates, with respect to any such Claim or other debt or liability that is discharged or Equity Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan, including, without limitation, any monetary claim or penalty in furtherance of a police or regulatory power; and, provided, further that, subject to Section 3.8 of the Global Settlement Agreement, such injunction shall not preclude the JPMC Entities, the Receivership,

the FDIC Receiver and the FDIC Corporate from pursuing any and all claims against each other or any other defenses thereto pursuant to the Purchase and Assumption Agreement. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets, property and estates.

b. **Injunction Related to Releases.** As of the Effective Date, all Entities that hold, have held, or may hold a Released Claim, an Estate Claim, any Released Third Party Cause of Action or an Equity Interest that is released pursuant to Sections 41.5 and 41.6 of the Plan, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Released Claims, Estate Claims, Released Third Party Causes of Action or such Equity Interests: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under Sections 41.5 and 41.6 of the Plan; and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in

any forum, that does not comply with or is inconsistent with the provisions of the
the Plan or this Order.

57. <u>Exculpation</u>. The Debtors, the Debtors' officers and directors serving
during the period from the Petition Date up to and including the Effective Date, the Creditors'
Committee and each of its members in their capacity as members of the Creditors' Committee,
the Equity Committee and each of its members in their capacity as members of the Equity
Committee, and each of their respective professionals shall not have or incur any liability to any
Entity for any act taken or omitted to be taken in connection with the Chapter 11 Cases
(including any actions taken by the Creditors' Committee or the Equity Committee after the
Effective Date), the formulation, preparation, dissemination, implementation, confirmation or
approval of the Plan or any compromises or settlements contained therein, the Disclosure
Statement and the Supplemental Disclosure Statement related thereto, the Global Settlement
Agreement, or any contract, instrument, release or other agreement or document provided for or
contemplated in connection with the consummation of the transactions set forth in the Plan and
the Global Settlement Agreement; <u>provided</u>, <u>however</u>, that the foregoing provisions, set forth in
Section 41.8 of the Plan, shall not affect the liability of any Entity that otherwise would result
from any such act or omission to the extent that such act or omission is determined in a Final
Order to have constituted gross negligence or willful misconduct. Nothing in Section 41.8 of the
Plan shall prejudice the right of any of the Debtors, the Debtors' officers and directors serving
during the period from the Petition Date up to and including the Effective Date, the Creditors'
Committee and each of its members in their capacity as members of the Creditors' Committee,
the Equity Committee and each of its members in their capacity as members of the Equity

Committee, and each of their respective professionals to assert reliance upon advice of counsel as a defense with respect to their duties and responsibilities under the Plan.

58. **Bar Order.** To the limited extent provided in Section 41.6 of the Plan and decretal paragraph 54 of this Order, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, the Debtors' Claims, the JPMC Claims, the FDIC Claim, the Purchase and Assumption Agreement (other than any rights or claims the JPMC Entities, the Receivership, the FDIC Receiver or the FDIC Corporate may have under the Purchase and Assumption Agreement), confirmation and consummation of the Plan, the negotiation and consummation of the Global Settlement Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Related Actions, including, without limitation, any such claim, demand, right, liability, or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Related Actions, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the Related Actions or any other action brought or that might be brought by, through, on

behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted).

59.    Deemed Consent.  By submitting a Ballot or election form and receiving a distribution under or any benefit pursuant to this Plan and not electing to withhold consent to the releases of the applicable Released Parties and the Entities set forth in Section 41.6 of the Plan, or by order of this Court, each holder of a Claim or Equity Interest shall be deemed, to the fullest extent permitted by applicable law, to have specifically consented to the releases set forth in Section 41.6 of the Plan.

60.    **Supplemental Injunction.**  Notwithstanding anything contained herein or in the Plan to the contrary, except to the limited extent provided in Section 41.6 of the Plan, all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims or Equity Interests against any of the Released Parties based upon, attributable to, arising out of or relating to any Claim against or Equity Interest in any of the Debtors, whenever and wherever arising or asserted, whether in the U.S. or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims or Equity Interests arising prior to the Effective Date (including prior to the Petition Date), including, but not limited to:

(a)    Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim or Equity Interest against any of the Released Parties or the assets or property of any Released Party;

(b)     Enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim or Equity Interest;

(c)     Creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim or Equity Interest;

(d)     Except as otherwise expressly provided in the Plan, this Order, or the Global Settlement Agreement, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim or Equity Interest; and

(e)     Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, this, or the Global Settlement Agreement relating to such Released Claim or Equity Interest;

provided, however, that the Debtors' compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code and, provided, further, that the supplemental injunction provided pursuant to the terms of this Section 41.12 shall not preclude any current or former officers or directors of WMI from asserting any setoff or recoupment rights against any judgment or other obligation due to the Debtors, the Debtors' estates, or the Liquidating Trust or against the property of the Debtors or the Debtors' estates, to the extent such individuals have such rights pursuant to applicable non-bankruptcy law.

61.     Term of Existing Injunctions or Stays.  Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105, 362, or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until entry of an order in accordance with Section 41.23 of the Plan or such other Final Order of the Court; provided, however, that the terms of the Stock Trading Order