## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ------------------------------------------------------- x | |
| : | **Chapter 11** |
| In re: : | **Case No. 08-12229 (MFW)** |
| : | **(Jointly Administered)** |
| **WASHINGTON MUTUAL, INC., et al.,**[1] : | |
| : | |
| **Reorganized Debtors**. : | |
| : | |
| ------------------------------------------------------- x | |

### OBJECTION OF ALICE GRIFFIN TO EMERGENCY MOTION OF WMI LIQUIDATING TRUST TO REOPEN THE CHAPTER 11 CASE OF WASHINGTON MUTUAL, INC. FOR THE LIMITED PURPOSE OF (I) ENFORCING THE EXCULPATION, INJUNCTION, RELEASE, AND DISCHARGE PROVISIONS OF THE DEBTORS' JOINT CHAPTER 11 PLAN AND CONFIRMATION ORDER AND (II) IMPOSING SANCTIONS

Alice Griffin ("Griffin"), Pro Se, former owner of Washington Mutual, Inc. ("WMI") preferred

equity and owner of WMI Liquidating Trust (the "Trust") interests, files this objection to the

motions of the Trust for orders (i) reopening WMI's Chapter 11 case, (ii) shortening the notice and

objection period for its emergency motions (A) to reopen WMI's Chapter 11 case (the "Shortening

Motion") and (B) to enforce the exculpation, injunction, release, and discharge provisions of

WMI's Chapter 11 plan of reorganization (the "Plan") against Griffin (the "Enforcement Motion"),

(iii) granting the Enforcement Motion, and (iv) imposition of sanctions against Griffin

(collectively, the "Motions"), and moves for additional relief described herein.

---

[1] The Reorganized Debtors, along with the last four digits of each Debtor's federal tax identification number, were: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395).  The Debtor's principal offices are located at 1201 Third Avenue, Suite 3000, Seattle, Washington 98101.  Former debtor WMI Investment Corp. has been dissolved.

1

## The Amended Complaint

1.      On May 20, 2021, Plaintiff commenced an action in the United States District Court for the Southern District of New York (the "New York Action") which the Trust seeks to dismiss. The amended complaint (the "Amended Complaint") states ten (10) causes of action against the defendants therein (the "Counts"; each, a "Count"), the Trust and Mr. Cooper Group Inc. ("Mr. Cooper"), respectively, with (a) the first five Counts applying exclusively to the Trust, (b) Counts six through nine applying exclusively to Mr. Cooper, and (c) the tenth Count – for fees related to bringing the New York Action – applying to both defendants.

2.      Counts one through four of the Amended Complaint relate solely to the pro rata issue described herein and Count five requests declaratory relief that: (a) the Trust was a fiduciary to anyone who received (i) stock in Reorganized WMI (defined in Section 1.192 of the Plan and also referred to as 'WMI Holdings Corp.') which eventually became Mr. Cooper and (ii) the contingent right to receive interests from the Trust on account of releasing interests in WMI's cancelled preferred equity class ("Class 19"); and (b) the Trust and its new management (the "Trust Administrators") remain fiduciaries to Class 19.

3.      Count five results from a letter dated January 26, 2021 from Griffin to Marcos Ramos, Esq. of Richards, Layton & Finger, PA, wherein Griffin requested a copy of the Trust's amended and restated trust agreement ("A&R Trust Agreement") issued in February 2020.  Griffin made this request after Mr. Ramos advised her that because the Trust will not be making further distributions it has no duty to disseminate the A&R Trust Agreement.  Count five argues that as the Trust has an affirmative duty to guarantee to Class 19 that the dilution caused by giving 1% of Class 19's recovery to 15 underwriters of WMI's securities (the "Claim") did not exceed 1%, and (a) that affirmative duty is a fiduciary obligation, (b) Class 19 members remain beneficiaries under

2

the Trust, and (c) the Trust has a duty to disseminate the A&R Trust Agreement.  (Counts six through nine apply only to Mr. Cooper, which is not, and never has been, under this court's jurisdiction.)[2]

### The Injunctions

4.      As set forth in the Amended Complaint, on March 1, 2021, Griffin called Mr. Ramos to inquire whether he was authorized to accept service of process relating to the then prospective New York Action.  He replied that he was not.  Three days later, on March 4, 2021, he sent the letter to Griffin that appears in Exhibit A to the Amended Complaint.  Griffin subsequently informed Mr. Ramos by telephone that the Trust was not among the 'Released Parties' as set forth in Section 1.183 of the Plan and those injunctions apply only to Released Parties.  He stated his disagreement with that assertion.

**A.      The Amended Complaint Does Not Violate the Plan's or Confirmation Order's Injunctions**

5.      Paragraph 22 of the Trust's emergency motion (the "Emergency Motion") is identical to Paragraph 15 of the Enforcement Motion.  Subsections a – f of those Paragraphs list various, lengthy provisions from the Plan, the Plan's confirmation order (the "Confirmation Order"), and the Trust's trust agreement (the "Trust Agreement") establish that Griffin violated by filing the Amended Agreement as follows:

---

[2] In ¶15c of the Enforcement Motion the Trust falsely claims that Griffin is enjoined from suing Mr. Cooper as successor-in-interest of Reorganized WMI (defined in Section 1.192 of the Plan).  Reorganized WMI (now, Mr. Cooper) is not a Released Party under Section 1.184 of the Plan and, therefore, the injunction in Section 41.3 does not bar Griffin from suing Mr. Cooper.  See ¶5c  herein.  Though the Trust relies on *Travelers Indemnity. Co. v. Bailey*, 557 U.S. 137 (2009), the U.S. Supreme Court enforced the injunctions in that case because it held that "the terms of [those] injunctions bar[red Travelers' actions]." *Id.* at 140.  In the instant case the Plan and Confirmation Order do not bar any holder of Legacy Interests from suing the Trust to enforce their rights as holders of Legacy Interests.

Finally, Griffin also has standing to sue Mr. Cooper as a shareholder and said so in the Amended Complaint.

a. <u>Trust Authority to Settle Claims</u>:  Nothing in this Paragraph lends support to the Trust's arguments for injunctive relief or sanctions against Griffin, who has never disputed the Trust's authority to settle litigation.

b. <u>Release</u>:  This Paragraph cites Section 41.6(a) of the Plan ("Section 41.6").  Pursuant to subsection 41.6(a)(ii) and (iii) Griffin "irrevocably and unconditionally, fully, finally and forever waive[d], release[d], acquit[ted] and discharge[d] (1) each and all of the <u>Released Parties</u>, from any and all Released Claims and/or any claim, act, fact, transaction, occurrence, statement, or omission in connection with or alleged in [the litigation described in Section 1.5 of the Plan] or in [the litigation described in Section 1.226 of the Plan], or that could have been alleged in respect of the foregoing or other similar proceeding".  (Emphasis added.)  As previously stated, the Trust is not a Released Party so this lends no support to the Trust's arguments for injunctive relief or sanctions against Griffin.

c. <u>Injunction</u>: This Paragraph cites Section 41.3 of the Plan which only enjoins actions against Released Parties and therefore lends no support to the Trust's arguments for injunctive relief or sanctions against Griffin.

d. <u>Discharge</u>: This Paragraph cites Section 41.2 of the Plan and relates only to discharges of liabilities against WMI, who is not a defendant in the New York Action.

e. <u>Exculpation</u>: This Paragraph cites Section 41.8 of the Plan and Section 7.4 of the Trust Agreement and prohibits Griffin from suing the Trust or its trustee for "making payments in accordance with, or for implementing, the provisions of the Plan, the Confirmation Order, or [the] Trust Agreement".  By suing the Trust to enforce the

4

pro rata requirement Griffin contends it is <u>not</u> fulfilling its obligations and she is attempting to impel the Trust to execute its duties under the Plan, not to try to punish it for past actions.  Further, as discussed herein, if this provision prohibits Griffin from bringing any litigation she would not have been able to bring her objection before this court on April 22, 2019 (the "Objection").  This provision this lends no support to the Trust's arguments for injunctive relief or sanctions against Griffin.

f.     <u>Retention of Jurisdiction</u>:  Griffin filed the Amended Complaint over one year after this court closed the bankruptcy case, which ended this court's jurisdiction over the matters set forth in that complaint.  As there was no violation of the Plan, Confirmation Order, or Trust Agreement provisions conveying jurisdiction on this court, this provision this lends no support to the Trust's arguments for injunctive relief or sanctions against Griffin.

**B.     Suing to Enforce Rights of Legacy Interests is Not Prohibited Under the Plan, the Confirmation Order, or the Trust Agreement**

6.     Neither Griffin's cancelled Equity Interests (defined in Section 1.103 of the Plan) nor her Legacy Interests (defined herein) are 'Released Claims' as defined in Section 1.183(b) of the Plan ("Section 1.183").  First, Section 1.183 releases only "claims or causes of action that arise in, relate to or have been or could have been asserted . . . (ii) by. . . holders of Equity Interests relating to Equity Interests, as the case may be . . .  <u>against the Debtors</u> (with respect to releases given by . . . Holders of Equity Interests, as the case may be). . . ."  (Emphasis added.)  This means that even if Griffin attempted to sue the Trust on account of her cancelled Equity Interests as the Trust is not WMI such action would not be prohibited.

7.     Second, her Legacy Interests are not 'Released Claims' under Section 1.183. Therefore, nothing in Section 1.183 immunizes *the Trust* from any litigation by holders of Legacy

5

Interests who are former holders of Equity Interests.[3]  Further, though Paragraph 56(b) of the Confirmation Order, entitled 'Injunction Related to Releases', enforces Section 41.6, it does not bar Griffin from instituting litigation unless such litigation is against one of the Released Parties as set forth in Section 1.183(b).

8.      Accordingly, as in the New York Action Griffin is suing to enforce the rights she received under the Plan, which did not exist prior to confirmation and she is asserting them against the Trust, the New York Action is not enjoined.

9.      As argued exhaustively in Paragraph 30 of the Amended Claim, nothing in the Plan precludes Griffin from suing the Trust to enforce rights granted to her under the Plan, which are not identical to those extinguished under the Plan.[4]  Indeed, if the reverse were true she violated the Plan's injunctions by bringing the Objection before this court because the injunction provisions forbid litigation against Released Parties in any forum.  Neither in filings nor at the hearing on the Objection (the "Hearing") did the Trust suggest Griffin violated the Plan's injunctions by instituting and prosecuting the Objection.

10.     Accordingly, nothing in the Plan (a) extinguished Griffin's right to (i) sue the Trust to enforce the Trust's obligations, (ii) bring the Objection, or (b) enjoins the New York Action. Indeed, if Griffin were forbidden to sue the Trust to enforce the Plan any purported rights granted

---

[3] In ¶15b of the Enforcement Motion the Trust concedes that Griffin released her cancelled "preferred equity interests in exchange for rights under the Plan", i.e., the Legacy Interests.  Those rights – not the Equity Interests  – are the basis for the relief she seeks in the New York Action.  While the Plan and Confirmation Order contain injunctions barring holders of released preferred equity interests – i.e., Griffin – from suing, none of them provide that immunity to the Trust.  They protect only 'Released Parties'.

[4] Under the Plan Griffin received (a) a pro rata share of seventy-five percent (75%) of (i) any Liquidating Trust Interests (Section 1.144 of the Plan) and (ii) Litigation Proceeds Interests (Section 1.146 of the Plan) (which arise on account of her right to receive Liquidating Trust Interests) (collectively, "Legacy Interests") issued by the Trust; and (b) common stock in WMI Holdings Corp. (now "Mr. Cooper Stock").

to Griffin under the Plan would be illusory.  Moreover, there is nothing in the Plan conveying exclusive jurisdiction on this court to interpret and enforce its provisions <u>after</u> a final decree has been entered closing WMI's bankruptcy case, so Griffin did not violate the Plan in that way either. Finally, in the original complaint in the New York Action, Griffin included WMI as a defendant because she believed that the Plan's injunctions did not protect WMI against claims arising <u>post-confirmation</u>.  However, upon review of the letter from Mr. Ramos on behalf of the Trust dated May 26, 2021, Griffin agreed that WMI should be dismissed as a defendant despite the fact that the matters in question arose post-confirmation and her rights under the Plan did not exist prior to confirmation.  She dismissed the New York Action against WMI solely because WMI <u>is</u> among the 'Released Parties' under the Plan.[5]

**Res Judicata and Collateral Estoppel**

11.     Griffin does not dispute that the Objection and the subsequent appeals (the "Previous Litigation") arise from the execution of the stipulation granting the Claim (the "Stipulation").  However, the claims asserted in Counts one through five of the Amended Complaint do not.

---

[5] As set forth in the Trust's March 4, 2021 letter, it would have commenced the instant Motions even if Griffin had not named WMI as a defendant. Indeed, during the March 1, 2021 telephone call between Griffin and Marcos Ramos Griffin explicitly asked Ramos if he had authority to accept service of process on behalf of the Trust.  Griffin did not mention WMI in that conversation.  Accordingly, as the Trust expended the same resources to review the Plan and Confirmation Order provisions to bring the Motions when only the Trust is named in the New York Action, Griffin's original inclusion of WMI as a defendant was harmless error.

7

**A.    Griffin's Assertion of Her Right to No More than 1% Dilution is Not Barred By Res Judicata or Collateral Estoppel**

12.    Griffin's right to no more than 1% dilution arises from the Plan's definition of 'Pro Rata Share' ("Section 1.175"), which was not adjudicated in any court as either a claim or an issue. As there was no ruling on this Plan-created right, it is not subject to res judicata.

13.    Simply stated, Section 1.175 requires that the Claim be apportioned within Class 19 as follows:  (a) 53% to the Trust Preferred Securities; (b) 40% to the Series R securities; and (c) 7% to the Series K securities.  The Amended Complaint assumes the 1% dilution of the Claim is fait accompli and merely seeks to insure that the Trust applied the Claim pro rata.  The Trust correctly points out that Griffin raised this concern with the Third Circuit but not before this court. Griffin is not collaterally estopped, however, to raise that issue in the New York Action because whether the Claim was distributed pro rata was not necessary to adjudicate (a) the validity of the Claim or (b) the appropriateness of placement of the Claim in Class 19, the only matters before this court when determining the Objection at the Hearing.  This is a vital issue because, as Griffin explained to the Third Circuit, it is possible to apportion the Claim among Class 19 Legacy Interests in a manner that unfairly burdens those interests (i.e., Series R and Series K) that are held almost exclusively by retail Legacy Interests.  Griffin further argued before the Third Circuit that if the Claim was placed exclusively among Series R securities it would result in 2.5% dilution, which is 250% more than 1%.

14.    Collateral estoppel requires that an issue have actually been litigated by the same parties or their privities and that the issue have been necessarily litigated.  First, the same parties are not involved in the New York Action because the above-mentioned underwriters (the "Underwriters"), who filed a joinder with respect to Griffin's objection and in the two subsequent appeals, are not a party to that action because they have no interest in the outcome.  Second, as

previously stated, the pro rata issue was not necessary to resolving those issues and was not litigated.  *See In re Summit Metals, Inc.* (*Richardson v. Francis Monaco et. al.*, 477 B.R. 484, 499 – 500 (Bankr. D. Del. 2012) (citing *Peloro v. United States*, 488 F.3d 163, 174 (3d. Cir. 2007)).  If the pro rata issue had been (a) actually litigated in the Objection, (b) determined by a final judgment of this court, and (c) essential to the Objection, then Griffin would be collaterally estopped to pursue the pro rata issue in any forum.  *Burlington N.R.R. Co. v. Hyundai Merck Marine Co.*, 63 F.3d 1227, 1231 – 1232 (3d Cir. 1995).  As the pro rata issue is not destroyed in Griffin's hands,[6] Griffin must be allowed to prosecute that issue whether in the New York Action or some other forum.

15.    Res judicata "gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding" if there was a final judgment on the merits.  *Summit Metals*, at 500.  Its imposition to bar a claim requires identical parties (or their privities), the same transaction, and claims for recovery that were made or could have been made in the Objection.[7]

---

[6] Griffin is not in privity with any other holder of Legacy Interests, so, presumably, one or other such holders can raise the issue in this court if WMI's case is reopened.

[7] *Summit Metals* follows a line of Third Circuit precedent holding that res judicata or claim preclusion requires the presence of three (3) conditions:  "(1) a final judgment <u>on the merits</u> in a prior suit involving (2) <u>the same parties</u> or their privies and (3) a subsequent suit based on the <u>same cause of action</u>." *In re Mullarkey, 536 F. 3d 215, 225 (3ʳᵈ Cir. 2008) (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)).* (Emphasis added.)  By any measure, the three prongs of *Mullarkey* are missing in the instant case. First, the merits of apportioning the Claim among Class 19 were not litigated as they did not have to be given that in the Objection Griffin fought to keep the Claim from retaining Class 19 status.  Second, the New York Action does not involve the Trust <u>and</u> the Underwriters.  Third, a request for declaratory relief regarding the pro rata issue is not the same cause of action as litigation to remove the Claim from Class 19.The former promotes equity within Class 19 and the latter might have resulted in a serious financial loss for the Underwriters, who have nothing to lose in the New York Action and are not parties.

16.     As to party identity, again, the parties in the New York Action are not identical to those in the Previous Litigation.[8]  As to prior adjudication, though this court's bench ruling at the Hearing was a final judgment on the merits relating to the Claim's validity and placement, no litigation whatsoever about appropriating the Claim within Class 19 occurred as Griffin brought the Objection to remove the Claim from Class 19 and/or to get it extinguished altogether.

17.     Finally, Griffin's right to enforce the definition of 'Pro Rata Share' with respect to her Legacy Interests arose by operation of the Plan upon confirmation.   As a beneficiary Griffin had the right to demand that the Trust prove she will suffer no more than 1% dilution.  Even if the Claim had never been allowed Griffin would have enjoyed (a) the right to know the pro rata share due each of her Series R interests and (b) to take action against the Trust in connection therewith. Accordingly, the Claim and any rulings in connection therewith do not affect her right to prosecute Counts one through four in the New York Action.

18.     The first four Counts in the New York Action are based solely on the pro rata issue. As that issue is not extinguished by collateral estoppel or res judicata the New York Action to adjudicate that issue as a claim is not precluded.  Finally, res judicata and collateral estoppel are issues the Trust can try to dispose of in the New York Action by a motion to dismiss, so reopening WMI's bankruptcy case to adjudicate those issues is unnecessary.

**B.     Count Five of the New York Action Cannot Be Barred By Res Judicata, Collateral Estoppel, or any Plan Injunctions**

19.     As previously stated, Count five of the New York Action seeks declaratory relief that the Trust must disseminate the A&R Trust Agreement.  This cause of action is unrelated to

---

[8] In the Previous Litigation the Underwriters were the real parties in interest because they, not the Trust, would have suffered if Griffin had prevailed in the Objection.

the Previous Litigation because the A&R Trust Agreement did not exist until 2020. Further, it is irrelevant that the Trust will not make further distributions as upon confirmation though it was not certain that all classes in the waterfall north of equity would receive distributions, the original Trust Agreement was disseminated anyway. The original Trust Agreement is virtually meaningless without the A&R Trust Agreement and the Trust's recalcitrance in this nondisclosure is an inexcusable lack of good faith towards holders of Legacy Interests.[9]

### The Court Should Deny the Motion to Shorten Time

20.     Griffin objects to issuance of an order granting the Trust's Shortening Motion as well as (i) its motion to reopen WMI's bankruptcy case and (ii) the Enforcement Motion. As explicitly set forth in the preceding motions, the Trust wants an injunction against Griffin requiring her to dismiss the New York Action with prejudice prior to the time it is required to file its answer to the Amended Complaint. The obvious reason for the urgency is that the Trust wants to avoid filing an answer in the New York Action which, as discussed herein, could address its same arguments about res judicata and the Plan's injunctions and could also include a request for sanctions. As the Trust can raise the same defenses in the New York Action there is no urgency with respect to the Motions except to thwart Griffin's right to seek relief in the U.S. District Court for the Southern District of New York.

---

[9] Contrary to the Trust's assertion in ¶¶14 and 15e of the Enforcement Motion, Griffin is not suing the Trust "for making payments in accordance with, or for implementing, the provisions of the Plan, the Confirmation Order [or] the Trust Agreement." Counts one through four seek relief requiring the Trust to confirm that the Trust did not unduly dilute Legacy Interests in Class 19. Again, if Griffin is enjoined from suing the Trust on any basis the Objection before this court was a violation of the Plan and the Trust Agreement.

## The Trust Should Not Receive Any of the Relief Requested in the Motions

21.    As set forth herein, none of the Plan's injunctions bar Griffin from suing the Trust to enforce (a) her rights with respect to her Legacy Interests granted under the Plan or (b) the Trust's existing fiduciary duties to holders of Legacy Interests.  Once the issue of violating the Plan's injunctions is removed there remains only res judicata and collateral estoppel, and as the Trust's primary counsel, Proskauer LLP, is headquartered in New York, it can conveniently defend the Trust in that venue and raise those arguments in the New York Action.  Further, if the Trust simply (x) provides written assurances that the Claim was apportioned to Class 19 pro rata and (y) disseminates the A&R Trust Agreement there will be no further litigation between Griffin and the Trust.  The Trust, however, has never been interested in holding a meet and confer with Griffin and adamantly refused the mediation the Third Circuit ordered, upon which the Third Circuit rescinded that order. [10]

22.    As for Griffin's request for legal fees in the New York Action, they are entirely reasonable as Griffin has expended hundreds of hours working on the New York Action to protect her and other Legacy Interest holders' right to assurance that (a) their Legacy Interests have not been diluted in excess of 1% and (b) the receive the A&R Trust Agreement.

## Sanctions

23.    In its Motions the Trust seeks sanctions (including attorneys' fees related to bringing the Motions and reopening WMI's Chapter 11 case) against Griffin for commencing the New York Action which allegedly (a) violates the Plan's myriad injunctions, (b) presents claims

---

[10] In an email to Griffin dated June 9, 2020, Cory Kandestin, Esq. expressed the Trust's unwillingness to mediate.  *See* Exhibit A.

and issues barred by the doctrines of res judicata and collateral estoppel, respectively, and (c) vexes and harasses the Trust and has caused it to incur excess costs, expenses, and attorneys' fees.[11]

24.    As discussed exhaustively herein, none of the Counts in the Amended Complaint leveled against the Trust are barred by res judicata, collateral estoppel, or any other legal or equitable theory, and none of those Counts (or the New York Action itself) is barred by the Plan's injunctions.  Even if Griffin's legal analysis supporting one or more Counts in the Amended Complaint is erroneous, such error would not justify sanctions as each Count was brought in good faith belief that none were barred by the Plan's injunctions or the doctrines of res judicata or collateral estoppel.  This good faith belief is in no way discredited by the Trust's March 4, 2021 letter or the May 26, 2021 letter as attorneys – whether or not adversaries – frequently disagree on legal points.

25.    Accordingly, there is nothing in the Amended Complaint that could support an order of sanctions under 28 U.S. Code § 1927 or Bankruptcy Rule 9011(b). [12]

## Conclusion

Counts one through four of the Amended Complaint do not attempt to resurrect rights Griffin had under WMI's cancelled preferred equity, but to make sure if she ever receives another distribution under the rights she was granted in the Plan (regardless of who makes the distribution or how it is made) that the distribution(s) comport to the Plan.  It is very little for the Trust to examine its claims' register to determine if the Claim was allocated 53% among Trust Preferred

---

[11] As set forth herein, this court has no jurisdiction over Mr. Cooper, so this court cannot enter an order granting sanctions against Griffin respecting Counts six through nine or Count ten with respect to Mr. Cooper.

[12] Normally sanctions are sought under Bankruptcy 9011 but given its haste obviously the Trust could not satisfy that rule's 21-day 'safe harbor' window.

Securities, 40% among Series R securities, and 7% among Series K securities, but that is precisely what the Trust refuses to do.

Griffin filed the New York Action because the bankruptcy case was closed and this court's jurisdiction over interpretation of the Plan was extinguished. Had it been open Griffin would have filed an adversary proceeding seeking the relief requested in the New York Action. Further, Griffin saw no reason to seek an order to reopen WMI's case because the matters in Counts one through five of the New York Action relate solely to enforcement of the Plan's – a contract's – terms, and the New York court is as capable of interpreting its provisions as any other court.

Counts six through nine in the New York Action have nothing whatever to do with the Trust which has no interest in any of the matters set forth described in those Counts. This court has no jurisdiction over Mr. Cooper and cannot enter an order restraining Griffin from prosecuting Counts six through nine and Count ten with respect to Mr. Cooper. The Trust makes an elaborate and specious argument that this court has jurisdiction over those Counts because the assets discussed in them may have once belonged to WMI.[13] Griffin disagrees. All WMI's legally owned assets were disclosed in its bankruptcy schedules. If WMI *beneficially* owned assets, then such assets held in trust were beyond its reach and remain beyond the reach of this court. Further, as the Trust has said many times that it owns nothing beyond what is now in its control, it can have no interest in Counts six through nine in the New York Action. Finally, per Cory Kandestin, Esq.

_____

[13] The Trust admits in ¶36 of the Enforcement Motion that any assets in the possession of Mr. Cooper in which WMI may have had a legal or beneficial interest are not the property of WMI or its estate. Accordingly, this court has no jurisdiction over them and therefore cannot issue any order respecting Counts six through nine and Count ten of the Amended Complaint.

of Richards, Layton & Finger, PA, WMI was dissolved in 2012 and as WMI Investment Corp. was dissolved years ago there are no 'debtors'.

The Trust's real motive for filing the motions has nothing whatever to do with enforcing the Plan as all its arguments therein (i.e., res judicata/collateral estoppel, and the Plan's injunctions) could be asserted in an answer and a motion to dismiss in the New York Action.  It obviously wants to avoid the jurisdiction of the court in the New York Action altogether.  Griffin further contends the Trust's other aim is to punish her for the Previous Litigation and the New York Action by imposing the Trust's attorneys' fees (which it could have avoided by simply disseminating the A&R Trust Agreement and providing written assurance that in the records of the Trust the Claim is apportioned pro rata among all Class 19 Legacy Interests).  It is not Griffin, but the Trust's recalcitrance, that is the real reason for the New York Action and the Trust's declining financial resources.

In ¶54 of the Enforcement Motion the Trust alleges that "Griffin is not funding the pleadings out of her own pocket".  This is false.  Out of her own pocket Griffin has financed (a) both appeals in the Previous Litigation and (b) the New York Action.  Also false is the Trust's contention that Griffin is not proceeding pro se in the New York Action.  Except for local counsel related to the Hearing, Griffin has proceeded pro se in the Previous Litigation and the New York Action.  It is precisely because the Trust knows or suspects that Griffin's actions to enforce her rights as a holder of Legacy Interests are self-funded that the Trust hoped to deter her from pursuing the New York Action by inflicting crippling sanctions in the form of attorneys' fees.  Again, it would have economical to have simply (a) provided members of Class 19 with a written statement on the Trust's website that the Claim was apportioned pro rata and (b) posted the A&R

15

Trust Agreement.  As Griffin related to Marcos Ramos, Esq., she was always willing to discuss settlement with the Trust. It was the Trust that refused to give Griffin the time of day.[14]

Finally, given the inapplicability of (a) the Plan's injunctions to the Trust and the New York Action and (b) res judicata and collateral estoppel to any of the Counts in the New York Action, the New York Action is not (x) frivolous, or (y) intended to vex, harass, or inflict financial strain upon the Trust.  As set forth in ¶¶22 – 25 of the Amended Complaint, instigation of the New York Action was based on Griffin's good faith belief in a recovery as described therein.  Griffin's 'Source', of whom the Trust speaks disparagingly, has risked his/her job and reputation to disclose information about Mr. Cooper which will benefit Legacy Interests.  It was this information that prompted Griffin to commence the New York Action because she realized that her Legacy Interests could be diluted by more than 1%.  The Trust and its administrator, Kurzman Carson Consultants LLC know how the Claim was apportioned among Class 19 and rather than making threats and

---

[14] On March 1, 2021, during her conversation with Marcos Ramos, to encourage settlement Griffin offered to forgo her demand that the Trust reimburse Class 19 for the 120,000 shares of Mr. Cooper stock the Underwriters received from the Trust.  Priced at between $33 and $36 that would have been a savings of about $4 million for the Trust;  a substantial portion of what Griffin knew (from the Trust's published financial statements) to be the Trust's remaining resources.  She requested that the Trust compensate Class 19 with only Class 22 interests (which the Trust has steadfastly maintained have no value) and which is permissible under the Plan.  Without explanation or dialogue, the Trust refused this offer.

seeking sanctions the Trust should be compelled to confirm that the Claim has been apportioned pro rata and to disseminate the A&R Trust Agreement.

**WHEREFORE**, Griffin requests the court deny all the motions.

Dated: June 7, 2021
New York, New York

Respectfully Submitted,
/s/ Alice Griffin_____

121 East 12th Street, #7C
New York, New York 10003
(646) 337-3577
griffincounselpc@earthlink.net

## CERTIFICATE OF SERVICE

I, Alice Griffin, certify that on June 7, 2021, I caused the foregoing objection to be served upon the parties named below in the manner indicated.

### Via Email

Brian S. Rosen, Esq.
Proskauer Rose LLP
Eleven Times Square
8th Avenue and 41st St
New York, New York 10036-8299
brosen@proskauer.com

Marcos Ramos, Esq.
Cory Kandestin, Esq.
Richards Layton & Finger PA
One Rodney Square
920 N King Street
Wilmington, Delaware 19801
ramos@rlf.com
Kandestin@rlf.com

T. Patrick Tinker, Esq.
Office of the United States Trustee
United States District Court
J. Caleb Boggs Federal Building
844 N. King Street, Ste. 2207
Wilmington, Delaware 19801
thomas.p.tinker@usdoj.gov

**<u>EXHIBIT A</u>**

**griffincounselpc@earthlink.net**

| | |
|---|---|
| **From:** | Kandestin, Cory D. <Kandestin@rlf.com> |
| **Sent:** | Tuesday, June 9, 2020 9:01 AM |
| **To:** | 'griffincounselpc@earthlink.net' |
| **Cc:** | Ramos, Marcos A. |
| **Subject:** | Griffin v. WMI Liquidating Trust |
| **Attachments:** | 20-1725 - Mediation Instructions.pdf |

Dear Ms. Griffin,

I'm writing in reference to the appeal pending in the Third Circuit Court of Appeals (Griffin v. WMI Liquidating Trust, Case No. 20-1725).

Yesterday the attached mediation notice was docketed in the Third Circuit appeal. Given the issues and the parties' positions, the WMI Liquidating Trust does not believe that a mediation would be fruitful, and intends to request cancellation of the mediation. Please let us know by noon tomorrow, Wednesday, June 10, whether you agree.

Best regards,

Cory

Cory D. Kandestin
Richards, Layton & Finger, P.A.
302-651-7802

---

The information contained in this electronic communication is intended only for the use of the individual or entity named above and may be privileged and/or confidential. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copying of this communication is strictly prohibited by law. If you have received this communication in error, please immediately notify us by return e-mail or telephone (302-651-7700) and destroy the original message. Thank you.

---