# EXHIBIT 2

**Enforce Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **WASHINGTON MUTUAL, INC., *et al.*,**[1] | Case No. 08-12229 (MFW) |
| **Reorganized Debtors.** | **Ref. Docket No. 12715** |

**ORDER GRANTING MOTION OF WMI LIQUIDATING TRUST TO (I) ENFORCE THE EXCULPATION, INJUNCTION, RELEASE, AND DISCHARGE PROVISIONS OF THE DEBTORS' JOINT CHAPTER 11 PLAN AND CONFIRMATION ORDER AND (II) IMPOSE SANCTIONS**

Upon the motion, dated June 4, 2021 (the "Motion")[2], of WMI Liquidating Trust (the "Trust"), sections 105, 1129, 1141, and 1142 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and 28 U.S.C. § 1927, for entry of an order (this "Order") (i) enforcing the exculpation, injunction, discharge, and release provisions contained in the *Seventh Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 9178] (the "Plan") and the *Findings of Fact, Conclusions of Law, and Order Confirming the Seventh Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 9759] (the "Confirmation Order") against Ms. Alice Griffin ("Griffin") and (ii) imposing sanctions; and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012; and the Court having found this is a core proceeding pursuant to 28 U.S.C.

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, were: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Reorganized Debtors had a former address of 1201 Third Avenue, Suite 3000, Seattle, Washington 98101.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

§ 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and the Court having found that the Trust provided adequate and appropriate notice of the Motion under the circumstances and that no other or further notice is required; and the Court having reviewed the Motion and having heard statements in support of the Motion at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefore,

**IT IS HEREBY FOUND, DETERMINED, AND ORDERED THAT:**

1. Griffin knowingly and intentionally filed the Amended Complaint in violation of this Court's Confirmation Order and confirmed Plan.

2. Griffin is hereby barred and enjoined from prosecuting the Amended Complaint, pursuant to the release, injunction, discharge, and exculpation provisions of the Confirmation Order and the Plan, and pursuant to the doctrine of collateral estoppel.

3. Griffin is hereby directed to dismiss the Amended Complaint with prejudice and to refrain from filing any further pleadings against the Trust, the Liquidating Trustee, the Debtors, their estates, and their respective professionals, employees, affiliates, and agents, on account of any of the allegations contained in the Amended Complaint.

4. Attached hereto as **Exhibit A** is a form of settlement and general release agreement (the "Agreement") entered into by the Trust and Griffin. Among other things, the Agreement

incorporates the Trust's and Griffin's consensual resolution of the amount of sanctions to be awarded to the Trust. Griffin is directed to comply with the terms of the Agreement, including, without limitation, (i) paragraph 4 of the Agreement, under which (among other things) Griffin has agreed to waive and release any appeal related to the Underwriter Objection, (ii) paragraph 5 of the Agreement, under which Griffin has agreed (among other things) to waive any appeal from entry of this Order and not take any action to breach the terms of the Agreement or impede or preclude the dissolution of the Trust, and (iii) paragraph 6 of the Agreement, under which (among other things) Griffin has agreed to pay the Amount to the Trust, and the Fees to the Trust if Griffin violates any term or condition of the Agreement or this Order. Without limitation, the Agreement is hereby approved and entered as an order of this Court. For the avoidance of any doubt, the Court sanctions Griffin and adopts and approves the Amount of sanctions set forth in paragraph 6 of the Agreement, including the payment of the Fees to the Trust if Griffin violates any term or condition of the Agreement or this Order.

5. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order, including any action or proceeding that the Trust may file in order to determine its right to additional monetary sanctions as provided in paragraph 6 of the Agreement.

# **Exhibit A**

Settlement and Release Agreement

**SETTLEMENT AND GENERAL RELEASE AGREEMENT** (the "Agreement"), dated June 23, 2021 (the "Effective Date"), by and between WMI Liquidating Trust (the "Trust"), as successor to Washington Mutual, Inc. ("WMI") and WMI Investment Corp. (together with WMI, the "Reorganized Debtors," and prior to the effective date of the Plan (as defined below), the "Debtors") and Alice Griffin ("Griffin," and together with the Trust, the "Parties").

**RECITALS**

A. On September 26, 2008 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

B. On February 24, 2012, the Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming the Seventh Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 9759] (the "Confirmation Order"), pursuant to which the Court confirmed the Debtors' *Seventh Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 9178] (the "Plan")[1] in accordance with the provisions of section 1129 of the Bankruptcy Code and authorized the consummation of the transactions contemplated therein, including, without limitation, approval and consummation of the Global Settlement Agreement and the exchange of mutual releases provided for therein between, among others, the Debtors and the FDIC.

C. On March 19, 2012, the Plan became effective and the transactions contemplated by the Plan were consummated, including, without limitation, initial distributions of over $6.5 billion to holders of Allowed Claims and distributions of equity in Reorganized WMI. Subsequent thereto, additional distributions in the approximate amount of $932 million were made to holders of Allowed Claims.

D. The Trust was formed pursuant to the Plan and Confirmation Order and the Court's related approval of the Trust's Liquidating Trust Agreement, and its actions were effectuated by the Liquidating Trustee, the Trust Advisory Board and the Trust's officers and employees.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

E.  On or about July 31, 2018, Reorganized WMI announced that it had concluded its acquisition of Nationstar Mortgage Holdings Inc., and later changed its name to Mr. Cooper Group ("Mr. Cooper").

F.  On March 22, 2019, Griffin objected to the underwriters' allowed Class 19 interests pursuant to that certain *First Omnibus Objection (Substantive) of Alice Griffin, Class 19 Interest Holder, to Claims (Nos. 3935 and 4045) Allowed Pursuant to a Stipulation Dated March 28, 2013 Between the WMI Liquidating Trust and Morgan Stanley & Co., Incorporated, Credit Suisse Securities (USA) LLC, and Goldman, Sachs & Co., on Behalf of Themselves and Certain Underwriters* [Docket No. 12595] (the "Underwriter Objection").

G.  On April 24, 2019, the Court overruled the Underwriter Objection following full briefing and a hearing and entered that *Order Overruling First Omnibus Objection of Alice Griffin with Respect to Allowed Claims of Morgan Stanley & Co., Incorporated, Credit Suisse Securities (USA) LLC, and Goldman, Sachs & Co., on behalf of themselves and Certain Underwriters* [Docket No. 12619] (the "Order").

H.  Griffin filed a notice of appeal from the Order and, on March 23, 2020, the United States District Court for the District of Delaware affirmed the Order and found that the Trust acted within its authority and in the best interests of the Trust Beneficiaries in settling the subject claims (*Griffin v. WMI Liquidating Trust (In re Washington Mutual, Inc.)*, C.A. No. 19-775-RGA, 2020 WL 1332922 (D. Del. Mar. 23, 2020) (the "DC Decision").

I.  Griffin appealed the DC Decision to the United States Court of Appeals for the Third Circuit, which affirmed the Order and the DC Decision, and, upon Griffin's further application, refused to reconsider the issue *en banc* (*In re Washington Mutual, Inc.*, No. 20-1725, 835 F. App'x 667 (3d Cir. Feb. 11, 2021), *amended and superseded by* 848 F. App'x 84 (Mar. 23, 2021).

J.  Griffin has stated that she intends to file a petition for a writ of certiorari with the United States Supreme Court on this issue (collectively with all prior proceedings related to the Underwriter Objection, hereinafter the "Griffin Appeal").

K.  On December 2, 2019, Griffin filed in the Debtors' bankruptcy case that certain *Objection of Alice Griffin to the Application of WMI Liquidating Trust for an Order, Pursuant to Section 350 of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Bankruptcy Rule 3022-1, Authorizing, Among Other Things, (A) Closing the Chapter 11 Cases of Washington Mutual, Inc.*

and WMI Investment Corp. and (B) Authorizing the Wind-Up and Dissolution of the WMI Liquidating Trust [Docket No. 12691] (the "Case Closing Objection").

L. On December 20, 2019, the Court overruled the Case Closing Objection and entered that certain *Final Decree and Order Closing Reorganized Debtors' Chapter 11 Cases and Terminating Certain Claims and Noticing Services* [Docket No. 12707] (the "Final Decree"). The Final Decree was entered "without prejudice to the rights of [the Trust], the Reorganized Debtors or other parties in interest to seek to reopen any of the Debtors' chapter 11 cases for cause pursuant to section 350(b) of the Bankruptcy Code." (Final Decree ¶ 3).

M. After entry of the Final Decree and as authorized thereunder, among other things, (i) the Trust made its final distribution, (ii) the Trust initiated the process of winding up and dissolving and (iii) each of Charles Edward Smith and Doreen Logan was designated as a Liquidating Trust Administrator (individually and collectively, the "Administrator" or "Administrators").

N. On May 20, 2021, Griffin commenced an action (the "Litigation") in the United States District Court for the Southern District of New York against the Trust and Mr. Cooper, related to the Underwriter Objection and the Griffin Appeal (*Griffin v. WMI Liquidating Trust and Mr. Cooper Group, Inc.*, Case No. 1:21-cv-04554 (S.D.N.Y.)).

O. On June 1, 2021, Griffin filed an amended complaint in the Litigation.

P. On June 4, 2021, the Trust filed an emergency motion to reopen the bankruptcy cases [Docket No. 12715] (the "Motion to Reopen") and a motion to enforce the Plan's provisions, including, without limitation, the Plan's injunction, release and exculpation provisions [Docket No. 12707, Exhibit B] (the "Motion to Enforce" and together with the Motion to Reopen, the "Motions"), and a request for sanctions against Griffin (the "Sanctions").

Q. On June 7, 2021, Griffin filed an objection to the Motions [Docket No. 12718], and, on June 8, 2021, Griffin filed a supplemental objection to the Motions [Docket No. 12725] (together, the "Objection").

R. On June 10, 2021, the Trust filed its Reply in support of the Motion to Reopen [Docket No. 12727].

S. On June 11, 2021, the Court held a hearing (the "Hearing") to consider the Motions and the Objection. At the Hearing, the Court overruled the Objection and granted the relief sought by the Trust in the Motions, including, without limitation, requiring Griffin to dismiss the

Litigation with prejudice, and granting the Trust's request for the imposition of Sanctions as against Griffin (the "Ruling").

T.  The Trust has incurred in excess of $35,000.00 in connection with or related to the Litigation and the Motions (collectively, the "Fees").

U.  After the Hearing, Griffin and the Trust discussed a consensual resolution of the Sanctions, Griffin Appeal, Litigation and related issues.

**NOW, THEREFORE**, the Parties, in consideration of the promises, covenants and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

**AGREEMENT**

1.  Recitals. The recitals above are incorporated herein by reference and are explicitly made a part of this Agreement.

2.  Effective Date. This Agreement is effective as of the date provided above immediately upon the Parties' execution of this Agreement.

3.  Court Order. Upon execution of this Agreement, the Trust shall seek entry of an order of the Court consistent with the Ruling, as modified by the terms of this Agreement, and in connection therewith, Griffin agrees to (and waives and releases any right that she may have to file, prosecute or join in any appeal from) the entry of an order by the Court on the Motion to Enforce that: (i) includes the provisions in the form of proposed order filed by the Trust with the Motion to Enforce; (ii) directs Griffin within five (5) days to dismiss with prejudice the Litigation; (iii) sanctions Griffin in the amount of the award to the Trust of monetary sanctions as provided in paragraph 6 below; (iv) enters this Agreement as an order of the Court; and (v) reserves jurisdiction in the Court for any further or different proceedings that the Trust may initiate under the order on the Motion to Enforce or otherwise, including any action or proceeding that the Trust may file in order to determine its right to additional monetary sanctions as provided in paragraph 6 below.

4.  Griffin Appeal. On the Effective Date, Griffin foregoes, waives and releases any appeal from, related to or in connection with the Underwriter Objection, including, but not limited to, the Griffin Appeal and any right that Griffin may have to file a petition for a writ of certiorari with the United States Supreme Court, and Griffin covenants and agrees that she will not file a

petition for a writ of certiorari with the United States Supreme Court in connection with the Underwriter Objection or the Griffin Appeal.

5. <u>Motions</u>. On the Effective Date, Griffin forever foregoes, waives and releases any right that she may have to file, prosecute or join in any appeal from, related to or in connection with the Motions, Objection and Ruling, and Griffin covenants and agrees that she will not, nor shall she support or encourage any other person to, take any action which would, or would reasonably be expected to, breach or be inconsistent with the terms herein, or impede or preclude the dissolution of the Trust, including, but not limited to, the filing, prosecution or joining in any appeal from any order entered by the Court granting relief requested in the Motions.

6. <u>Agreed Monetary Sanctions</u>. Within five (5) days after the Court's entry of its order with respect to the Motion to Enforce, Griffin shall deliver payment to the Trust, by wire transfer of immediately available funds, U.S. Postal money order or certified bank check, the amount of $1,000 (the "<u>Amount</u>"). Notwithstanding the foregoing, the Trust and Griffin agree that, if Griffin violates any term or condition of this Agreement or the Court's order with respect to the Ruling or the matters covered herein, the Trust shall be entitled to the full amount of the Fees and, upon entry of an order of the Court, which Griffin shall not oppose, Griffin shall pay such.

7. <u>Releases</u>.

a. Upon execution of this Agreement, Griffin, for herself and on behalf of her predecessors, successors and assigns, hereby releases the Trust, and as direct third-party beneficiaries thereof, its respective present, former and future trustees, trust administrators, administrators, officers, directors, members, managers, partners, employees, affiliates, agents, attorneys, other representatives, predecessors, successors and assigns, including but not limited to the Liquidating Trustee, Administrators, Trust Advisory Board (including the members thereof), the Trust's officers and employees, and retained professionals of the foregoing (collectively, the "<u>Trust Releasees</u>"), from and against any and all actions associated with the administration of the Trust, including all claims, liens, demands, charges, actions, causes of action, suits, appeals, arbitrations, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, indemnities, variances, trespasses, damages, costs, expenses, attorneys' fees, compensation, fines, penalties, losses, judgments, executions, obligations, complaints, and liabilities of any kind, nature or description, in any capacity whatsoever, whether in law or in equity, whether compulsory or permissive, whether sounding in tort, contract, statutory

or regulatory violation or otherwise (collectively, the "Claims"), that Griffin ever had or now has, whether known or unknown, discovered or undiscovered, suspected or unsuspected, vested or contingent, accrued or unaccrued, liquidated or unliquidated, direct, derivative or subrogated, from the beginning of the world to the date of this release against the Trust Releasees, including, but not limited to, the Debtors, Reorganized Debtors, Plan, Confirmation Order, Trust, Underwriter Objection, Griffin Appeal, the Motions and the Ruling; provided further, however, that (a) in the event that former beneficiaries of the Trust receive a further distribution, and (b) Griffin is a former beneficiary of the Trust, Griffin shall be entitled to receive her allocated portion of any such distribution.

    b.    Effective after the later of (i) the Trust's receipt of the agreed sanction amount under paragraph 6 hereof and (ii) Griffin's dismissal with prejudice of the Litigation, the Trust agrees to release Griffin from and against any and all actions associated with the administration of the Trust, including all claims, liens, demands, charges, actions, causes of action, suits, appeals, arbitrations, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, indemnities, variances, trespasses, damages, costs, expenses, attorneys' fees, compensation, fines, penalties, losses, judgments, executions, obligations, complaints, and liabilities of any kind, nature or description, in any capacity whatsoever, whether in law or in equity, whether compulsory or permissive, whether sounding in tort, contract, statutory or regulatory violation or otherwise, that the Trust ever had or now has, whether known or unknown, discovered or undiscovered, suspected or unsuspected, vested or contingent, accrued or unaccrued, liquidated or unliquidated, direct, derivative or subrogated, from the beginning of the world to the date of this release against Griffin, including, but not limited to, the Debtors, Reorganized Debtors, Plan, Confirmation Order, Trust, Underwriter Objection, Griffin Appeal, the Motions and the Ruling; provided further, however, that (iii) the foregoing release will terminate immediately if Griffin breaches any term of this Agreement, and (iv) Griffin acknowledges and agrees that a "breach of this Agreement" includes, without limitation, any action taken by Griffin to (1) continue the Litigation or to initiate one or more proceedings similar to the Litigation in a different jurisdiction, or (2) assist, in any manner whatsoever, one or more third parties with any claims, suits, actions, litigation or proceedings of any nature whatsoever against the Trust Releasees.

    8.    <u>General Release</u>. With respect to any of the Claims, Griffin stipulates and agrees that she shall have expressly waived, relinquished and released any and all provisions, rights and

benefits conferred by or under Cal. Civ. Code § 1542 or any other similar statute, rule or regulation, that provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

9. <u>Governing Law</u>. The Parties acknowledge that this Agreement shall be deemed made and entered into in the State of Delaware and shall be governed by the laws of the State of Delaware, without regard to the conflict of law provisions thereof.

10. <u>Bankruptcy Court Jurisdiction</u>. Griffin irrevocably consents to the jurisdiction of the Court with respect to any action to enforce the terms and provisions of this Agreement. Griffin waives any rights to assert that the Court lacks jurisdiction to consider any dispute brought hereunder or to enter final orders in connection with disputes arising out of, under or in connection with this Agreement. To the extent the Court declines to exercise jurisdiction over any dispute arising out of, under or in connection with this Agreement, Griffin irrevocably consent to the jurisdiction of the courts of the State of Delaware located in New Castle County, and any United States federal courts located in New Castle County, of the State of the Delaware.

11. <u>Authority</u>. The undersigned persons represent and warrant that they have full authority to execute this Agreement.

12. <u>Advice of Counsel; No Reliance</u>. Each of the Parties acknowledges and agrees that it has obtained, or had the opportunity to obtain, the advice of counsel before entering into this Agreement and is not relying upon any other Party concerning this Agreement or any aspect of the transactions contemplated herein. No Party is relying upon any statement, advice, counsel, disclosure or representations of any other Party or such other Party's counsel other than as expressly set forth in this Agreement.

13. <u>Headings</u>. Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

14. <u>Amendments, Waivers, Modifications</u>. No amendment, modification or waiver of any of the provisions of this Agreement shall be effective unless the same shall be in writing and signed by the Party or Parties against whom it is to be enforced, and then such amendment, modification or waiver shall be effective only in the specific instance and for the specific purpose for which it is given. The failure of any Party to enforce any provision of this Agreement in the event of a breach/default shall not constitute a waiver of the breach/default or a waiver of any remedy available to the non-breaching Party.

15. <u>Construction of Agreement</u>. This Agreement shall not be construed more strictly against one Party on the grounds that it, or any part of it, may have been prepared by one Party or another, it being recognized that this Agreement is the result of arm's length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Agreement.

16. <u>Severability</u>. If any provision of this Agreement is found to be invalid by any judicial, administrative or other governmental authority, local, state or federal, the invalidity of such provision shall not affect the validity of any other provision hereof.

17. <u>Entire Agreement</u>. This Agreement constitutes the complete and entire agreement between the Parties pertaining to the subject matter contained herein and supersedes all prior and contemporaneous discussions, negotiations, understandings, representations, and agreements of the Parties, whether oral or written, expressed or implied. Each of the Parties acknowledges that no other Party, nor any agent or attorney of any other Party, has made any promise, representation, or warranty whatsoever, express or implied, and not contained herein, concerning the subject matter hereof to induce the Party to execute or authorize the execution of this Agreement, and acknowledges that the Party has not executed or authorized the execution of this instrument in reliance upon any such promise, representation, or warranty not contained herein.

18. <u>Binding Effect</u>. This Agreement shall be binding on the Parties and their respective heirs, successors and assigns.

19. <u>Counterparts</u>. This Agreement may be executed in counterparts (whether by hand, electronically or other means), any of which may be transmitted by facsimile, electronic mail or other electronic transmission, and each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

Dated: June 23, 2021

*/s/ Marcos A. Ramos*
RICHARDS, LAYTON & FINGER, P.A.
Marcos A. Ramos (No. 4450)
Cory D. Kandestin (No. 5025)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

PROSKAUER ROSE LLP
Brian S. Rosen
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

Dated: June 23, 2021

*/s/ Alice Griffin*
Alice Griffin
121 East 12th Street, #7C
New York, New York 10003
Telephone: (646) 337-3577